# **<u>EXHIBIT D</u>**

THE ISSUANCE AND SALE OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED (I) IN THE ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR (B) AN OPINION OF COUNSEL, IN A FORM REASONABLY ACCEPTABLE TO THE COMPANY, THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR (II) UNLESS SOLD PURSUANT TO RULE 144 OR RULE 144A UNDER SAID ACT. NOTWITHSTANDING THE FOREGOING, THE SECURITIES MAY BE PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER LOAN OR FINANCING ARRANGEMENT SECURED BY THE SECURITIES.

## 5% SENIOR SECURED NOTE

No.: SSN-11-1

Original Issue Date: August 8, 2011

Principal Amount: **$3,000,000**

THIS 5% SENIOR SECURED NOTE is a duly authorized and validly issued note of Stream TV Networks, Inc, a Delaware corporation, having its principal place of business at 2009 Chestnut Street, Philadelphia, Pennsylvania (the "Company"), designated as its 5% Senior Secured Note, due August 8, 2014 (the "Note").

FOR VALUE RECEIVED, the Company promises to pay to SLS Holdings VI, LLC, or its registered assigns (the "Holder"), or shall have paid pursuant to the terms hereunder, the principal sum of $3,000,000 by the earlier of (i) August 8, 2014, (ii) the consummation of a Qualified Public Offering (as defined in the Warrant) or a Corporate Change (as defined below) or (iii) such other date as this Note is required or permitted to be repaid as provided hereunder (the "Maturity Date"), and to pay interest to the Holder on the aggregate then outstanding principal amount of this Note in accordance with the provisions hereof. This Note is subject to the following additional provisions:

Section 1.    Definitions. For the purposes hereof, in addition to the terms defined elsewhere in this Note, (a) capitalized terms not otherwise defined herein shall have the meanings set forth in the Purchase Agreement (as defined below) and (b) the following terms shall have the following meanings:

"Bankruptcy Event" means any of the following events: (a) the Company or any Significant Subsidiary (as such term is defined in Rule 1-02(w) of Regulation S-X) thereof commences a case or other proceeding under any bankruptcy, reorganization, arrangement, adjustment of debt, relief of debtors, dissolution, insolvency or liquidation or similar law of any jurisdiction relating to the Company or any Significant Subsidiary thereof; (b) there is commenced against the Company or any Significant Subsidiary thereof any such case or proceeding that is not dismissed within 60 days after commencement; (c) the Company or any Significant Subsidiary thereof is adjudicated insolvent or bankrupt or any order of relief or other

QB\13966391.4

SLS-BKR-000177

order approving any such case or proceeding is entered; (d) the Company or any Significant Subsidiary thereof suffers any appointment of any custodian or the like for it or any substantial part of its property that is not discharged or stayed within 60 calendar days after such appointment; (e) the Company or any Significant Subsidiary thereof makes a general assignment for the benefit of creditors; (f) the Company or any Significant Subsidiary thereof calls a meeting of its creditors with a view to arranging a composition, adjustment or restructuring of its debts; or (g) the Company or any Significant Subsidiary thereof, by any act or failure to act, expressly indicates its consent to, approval of or acquiescence in any of the foregoing or takes any corporate or other action for the purpose of effecting any of the foregoing.

"Business Day" means any day except Saturday, Sunday, any day which shall be a federal legal holiday in the United States or any day on which banking institutions in the State of New York are authorized or required by law or other governmental action to close.

"Common Stock" means the Company's Common Stock, par value $0.001 per share.

"Corporate Change" means the occurrence at any time after the Original Issue Date, of any of (i) any reclassification or change of the outstanding shares of Common Stock, (ii) any consolidation or merger of the Company with any other entity (other than a merger in which the Company is the surviving or continuing entity and its capital stock is unchanged), (iii) any sale or transfer of all or substantially all of the assets of the Company, (iv) any share exchange or tender offer pursuant to which all of the outstanding shares of Common Stock are effectively converted into other securities or property; or (v) any distribution of the Company's assets to holders of the Common Stock as a liquidation or partial liquidation dividend or by way of return of capital.

"Event of Default" means an Event of Default as defined by the Purchase Agreement.

"Interest Payment Date" shall have the meaning set forth in Section 2(a).

"Late Fees" shall have the meaning set forth in Section 2(c).

"Mandatory Default Amount" means the sum of (i) 110% of the outstanding principal amount of this Note, plus all accrued and unpaid interest hereon, and (ii) all other amounts, costs, expenses and liquidated damages due in respect of this Note.

"New York Courts" shall have the meaning set forth in Section 5(d).

"Note Register" shall have the meaning set forth in Section 2(b).

"Original Issue Date" means the date of the first issuance of the Note, regardless of any transfers of any Note and regardless of the number of instruments which may be issued to evidence such Note.

"Permitted Indebtedness" means the Permitted Indebtedness as defined by the Purchase Agreement.

"Permitted Liens" means the Permitted Liens as defined by the Purchase Agreement.

SLS-BKR-000178

"Purchase Agreement" means the Securities Purchase Agreement between the Company and the original Holder, dated as of August 8, 2011 as is amended, modified or supplemented from time to time in accordance with its terms.

"Subsidiary" shall have the meaning set forth in the Purchase Agreement.

"Transaction Documents" shall have the meaning set forth in the Purchase Agreement.

"Warrant" shall have the meaning set forth in the Purchase Agreement.

Section 2.    Interest.

a)    Payment of Interest in Cash. The Company shall pay interest to the Holder on the aggregate then outstanding principal amount of this Note at the rate of 5% per annum, compounded quarterly, payable in cash on the Maturity Date (except that, if any such date is not a Business Day, then such payment shall be due on the next succeeding Business Day).

b)    Interest Calculations. Interest shall be calculated on the basis of a 360-day year and shall accrue daily commencing on the Original Issue Date until payment in full of the principal sum, together with all accrued and unpaid interest, liquidated damages and other amounts which may become due hereunder, has been made. Interest hereunder will be paid to the Person in whose name this Note is registered on the records of the Company regarding registration and transfers of this Note (the "Note Register").

c)    Late Fee. All overdue accrued and unpaid interest to be paid hereunder shall be subject to a late fee at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted by applicable law ("Late Fees") which shall accrue daily from the date such interest is due hereunder through and including the date of payment in full.

d)    Prepayment. Without the consent of the Holder, the Company shall have the privilege and the option to prepay all, and not a portion of all, amounts outstanding under this Note upon payment of 100% of the then outstanding principal amount, plus all accrued and unpaid interest hereon, plus all other amounts, costs, expenses and liquidated damages, if any, due in respect of this Note. The Company may not prepay any portion of the principal amount of this Note without the prior written consent of the Holder.

Section 3.    Registration of Transfers and Exchanges.

a)    Transfers; Denominations. Without the consent of the Company, the Holder shall have the option to transfer all, and not a portion of all, amounts outstanding under this Note; provided that SLS Holdings VI, LLC, as initial Holder (the "Initial Holder"), shall have the option, without the consent of the Company, to assign the Note in three portions to the three members of the Initial Holder. Except as set forth in the preceding sentence, the Holder may not transfer portions of the Note without the prior written consent of the Company. If the Holder gives its consent to the assignment of a portion of the Note, or the Holder's consent is not required for such assignment as described above, the Note may be exchanged for an equal aggregate principal amount of Notes of different authorized denominations as requested by the

SLS-BKR-000179

Holder surrendering the same. No service charge will be payable for such registration of transfer or exchange.

b) <u>Investment Representations</u>. This Note has been issued subject to certain investment representations of the original Holder set forth in the Purchase Agreement and may be transferred or exchanged only in compliance with the Purchase Agreement and applicable federal and state securities laws and regulations.

c) <u>Reliance on Note Register</u>. Prior to due presentment for transfer to the Company of this Note, the Company and any agent of the Company may treat the Person in whose name this Note is duly registered on the Note Register as the owner hereof for the purpose of receiving payment as herein provided and for all other purposes, whether or not this Note is overdue, and neither the Company nor any such agent shall be affected by notice to the contrary.

<u>Section 4</u>.    <u>Remedies Upon Events of Default</u>. If any Event of Default occurs, the outstanding principal amount of this Note, plus accrued but unpaid interest, liquidated damages and other amounts owing in respect thereof through the date of acceleration, shall become, at the Holder's election, immediately due and payable in cash at the Mandatory Default Amount. Commencing five (5) days after the occurrence of any Event of Default that results in the eventual acceleration of this Note, the interest rate on this Note shall accrue at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted under applicable law. Upon the payment in full of the Mandatory Default Amount, the Holder shall promptly surrender this Note to or as directed by the Company. In connection with such acceleration described herein, the Holder need not provide, and the Company hereby waives, any presentment, demand, protest or other notice of any kind, and the Holder may immediately and without expiration of any grace period enforce any and all of its rights and remedies hereunder and all other remedies available to it under applicable law. Such acceleration may be rescinded and annulled by Holder at any time prior to payment hereunder and the Holder shall have all rights as a holder of the Note until such time, if any, as the Holder receives full payment pursuant to this Section 4. No such rescission or annulment shall affect any subsequent Event of Default or impair any right consequent thereon. Any remedy conferred by this Section shall not be exclusive of any other remedy provided by this Note or any other Transaction Document or now or hereafter available at law, in equity, by statute or otherwise.

<u>Section 5</u>.    <u>Miscellaneous</u>.

a) <u>Notices</u>. Any and all notices or other communications or deliveries to be provided by the Holder hereunder shall be in writing and delivered personally, by facsimile, or sent by a nationally recognized overnight courier service, addressed to the Company, at the address set forth above, or such other address as the Company may specify for such purpose by notice to the Holder delivered in accordance with this Section 5. Any and all notices or other communications or deliveries to be provided by the Company hereunder shall be in writing and delivered personally, by facsimile, or sent by a nationally recognized overnight courier service addressed to each Holder at the facsimile number or address of such Holder appearing on the

4

SLS-BKR-000180

books of the Company, or if no such facsimile number or address appears, at the principal place of business of the Holder. Any notice or other communication or deliveries hereunder shall be deemed given and effective on the earliest of (i) the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section 5 prior to 5:30 p.m. (New York City time), (ii) the date immediately following the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section 5 between 5:30 p.m. (New York City time) and 11:59 p.m. (New York City time) on any date, (iii) the second Business Day following the date of mailing, if sent by nationally recognized overnight courier service, or (iv) upon actual receipt by the party to whom such notice is required to be given.

b)  Absolute Obligation. Except as expressly provided herein, no provision of this Note shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of, liquidated damages and accrued interest, as applicable, on this Note at the time, place, and rate, and in the coin or currency, herein prescribed. This Note is a direct debt obligation of the Company. This Note ranks pari passu with all other Notes now or hereafter issued under the terms set forth herein.

c)  Lost or Mutilated Note. If this Note shall be mutilated, lost, stolen or destroyed, the Company shall execute and deliver, in exchange and substitution for and upon cancellation of a mutilated Note, or in lieu of or in substitution for a lost, stolen or destroyed Note, a new Note for the principal amount of this Note so mutilated, lost, stolen or destroyed, but only upon receipt of evidence of such loss, theft or destruction of such Note, and of the ownership hereof, reasonably satisfactory to the Company.

d)  Governing Law. All questions concerning the construction, validity, enforcement and interpretation of this Note shall be governed by and construed and enforced in accordance with the internal laws of the State of Delaware, without regard to the principles of conflict of laws thereof. Each party agrees that all legal proceedings concerning the interpretation, enforcement and defense of the transactions contemplated by any of the Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, employees or agents) shall be commenced in the state and federal courts sitting in the City of New York, Borough of Manhattan (the "New York Courts"). Each party hereto hereby irrevocably submits to the exclusive jurisdiction of the New York Courts for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such New York Courts, or such New York Courts are improper or inconvenient venue for such proceeding. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Note and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any other manner permitted by applicable law.

SLS-BKR-000181

e)    WAIVER OF JURY TRIAL.    EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY. IF EITHER PARTY SHALL COMMENCE AN ACTION OR PROCEEDING TO ENFORCE ANY PROVISIONS OF THIS NOTE, THEN THE PREVAILING PARTY IN SUCH ACTION OR PROCEEDING SHALL BE REIMBURSED BY THE OTHER PARTY FOR ITS ATTORNEYS' FEES AND OTHER COSTS AND EXPENSES INCURRED IN THE INVESTIGATION, PREPARATION AND PROSECUTION OF SUCH ACTION OR PROCEEDING.

f)    Waiver. Any waiver by the Company or the Holder of a breach of any provision of this Note shall not operate as or be construed to be a waiver of any other breach of such provision or of any breach of any other provision of this Note. The failure of the Company or the Holder to insist upon strict adherence to any term of this Note on one or more occasions shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Note. Any waiver by the Company or the Holder must be in writing.

g)    Severability. If any provision of this Note is invalid, illegal or unenforceable, the balance of this Note shall remain in effect, and if any provision is inapplicable to any Person or circumstance, it shall nevertheless remain applicable to all other Persons and circumstances. If it shall be found that any interest or other amount deemed interest due hereunder violates the applicable law governing usury, the applicable rate of interest due hereunder shall automatically be lowered to equal the maximum rate of interest permitted under applicable law. The Company covenants (to the extent that it may lawfully do so) that it shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law or other law which would prohibit or forgive the Company from paying all or any portion of the principal of or interest on this Note as contemplated herein, wherever enacted, now or at any time hereafter in force, or which may affect the covenants or the performance of this indenture, and the Company (to the extent it may lawfully do so) hereby expressly waives all benefits or advantage of any such law, and covenants that it will not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Holder, but will suffer and permit the execution of every such as though no such law has been enacted.

h)    Next Business Day. Whenever any payment or other obligation hereunder shall be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day.

i)    Headings of Subdivisions. The headings contained herein are for convenience only, do not constitute a part of this Note and shall not be deemed to limit or affect any of the provisions hereof.

j)    Assumption. Any successor to the Company or any surviving entity in a Corporate Change shall (i) assume, prior to such Corporate Change, all of the obligations of the Company under this Note and the other Transaction Documents pursuant to written agreements

QB\13966391.4

SLS-BKR-000182

in form and substance satisfactory to the Holder (such approval not to be unreasonably withheld or delayed) and (ii) issue to the Holder a new note of such successor entity evidenced by a written instrument substantially similar in form and substance to this Note, including, without limitation, having a principal amount and interest rate equal to the principal amount and the interest rate of this Note and having similar ranking to this Note, which shall be satisfactory to the Holder (any such approval not to be unreasonably withheld or delayed). The provisions of this Section 5(j) shall apply similarly and equally to successive Fundamental Transactions and shall be applied without regard to any limitations of this Note.

k)   <u>Secured Obligation.</u> The obligations of the Company under this Note are secured by all assets of the Company pursuant to that certain Security Agreement, dated as of August 8, 2011, between the Company and the Holder.

*********************

7

SLS-BKR-000183

IN WITNESS WHEREOF, the Company has caused this Note to be duly executed by a duly authorized officer as of the date first above indicated.

**STREAM TV NETWORKS, INC**

By: _____

Name: Raja Rajan

Title:  E.V.P. and Chief Operating Officer

8

QB\13966391.4

SLS-BKR-000184

THE ISSUANCE AND SALE OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED (I) IN THE ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR (B) AN OPINION OF COUNSEL, IN A FORM REASONABLY ACCEPTABLE TO THE COMPANY, THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR (II) UNLESS SOLD PURSUANT TO RULE 144 OR RULE 144A UNDER SAID ACT. NOTWITHSTANDING THE FOREGOING, THE SECURITIES MAY BE PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER LOAN OR FINANCING ARRANGEMENT SECURED BY THE SECURITIES.

## 5% SENIOR SECURED NOTE

No.: SSN-12-1

Original Issue Date: February 8, 2012

Principal Amount: **$1,500,000**

THIS 5% SENIOR SECURED NOTE (this "Note") is a duly authorized and validly issued note of Stream TV Networks, Inc, a Delaware corporation, having its principal place of business at 2009 Chestnut Street, Philadelphia, Pennsylvania (the "Company").

FOR VALUE RECEIVED, the Company promises to pay to SLS Holdings VI, LLC, or its registered assigns (the "Holder"), or shall have paid pursuant to the terms hereunder, the principal sum of $1,500,000 by the earlier of (i) February 8, 2015, (ii) the consummation of a Qualified Public Offering (as defined in the Initial Warrant) or a Corporate Change (as defined below) or (iii) such other date as this Note is required or permitted to be repaid as provided hereunder (the "Maturity Date"), and to pay interest to the Holder on the aggregate then outstanding principal amount of this Note in accordance with the provisions hereof. This Note is subject to the following additional provisions:

Section 1.    Definitions. For the purposes hereof, in addition to the terms defined elsewhere in this Note, (a) capitalized terms not otherwise defined herein shall have the meanings set forth in the Purchase Agreement (as defined below) and (b) the following terms shall have the following meanings:

"Bankruptcy Event" means any of the following events: (a) the Company or any Significant Subsidiary (as such term is defined in Rule 1-02(w) of Regulation S-X) thereof commences a case or other proceeding under any bankruptcy, reorganization, arrangement, adjustment of debt, relief of debtors, dissolution, insolvency or liquidation or similar law of any jurisdiction relating to the Company or any Significant Subsidiary thereof; (b) there is commenced against the Company or any Significant Subsidiary thereof any such case or proceeding that is not dismissed within 60 days after commencement; (c) the Company or any Significant Subsidiary thereof is adjudicated insolvent or bankrupt or any order of relief or other order approving any such case or proceeding is entered; (d) the Company or any Significant Subsidiary thereof suffers any appointment of any custodian or the like for it or any substantial

1

SLS-BKR-000185

part of its property that is not discharged or stayed within 60 calendar days after such appointment; (e) the Company or any Significant Subsidiary thereof makes a general assignment for the benefit of creditors; (f) the Company or any Significant Subsidiary thereof calls a meeting of its creditors with a view to arranging a composition, adjustment or restructuring of its debts; or (g) the Company or any Significant Subsidiary thereof, by any act or failure to act, expressly indicates its consent to, approval of or acquiescence in any of the foregoing or takes any corporate or other action for the purpose of effecting any of the foregoing.

"Business Day" means any day except Saturday, Sunday, any day which shall be a federal legal holiday in the United States or any day on which banking institutions in the State of New York are authorized or required by law or other governmental action to close.

"Common Stock" means the Company's Common Stock, par value $0.001 per share.

"Corporate Change" means the occurrence at any time after the Original Issue Date, of any of (i) any reclassification or change of the outstanding shares of Common Stock, (ii) any consolidation or merger of the Company with any other entity (other than a merger in which the Company is the surviving or continuing entity and its capital stock is unchanged), (iii) any sale or transfer of all or substantially all of the assets of the Company, (iv) any share exchange or tender offer pursuant to which all of the outstanding shares of Common Stock are effectively converted into other securities or property; or (v) any distribution of the Company's assets to holders of the Common Stock as a liquidation or partial liquidation dividend or by way of return of capital.

"Event of Default" means an Event of Default as defined by the Purchase Agreement.

"Initial Warrant" shall have the meaning set forth in the Purchase Agreement.

"Interest Payment Date" shall have the meaning set forth in Section 2(a).

"Late Fees" shall have the meaning set forth in Section 2(c).

"Mandatory Default Amount" means the sum of (i) 110% of the outstanding principal amount of this Note, plus all accrued and unpaid interest hereon, and (ii) all other amounts, costs, expenses and liquidated damages due in respect of this Note.

"New York Courts" shall have the meaning set forth in Section 5(d).

"Note Register" shall have the meaning set forth in Section 2(b).

"Original Issue Date" means the date of the first issuance of this Note, regardless of any transfers of this Note and regardless of the number of instruments which may be issued to evidence this Note.

"Permitted Indebtedness" means the Permitted Indebtedness as defined by the Purchase Agreement.

"Permitted Liens" means the Permitted Liens as defined by the Purchase Agreement.

2

SLS-BKR-000186

"Purchase Agreement" means the Securities Purchase Agreement by and between the Company and the original Holder, dated as of February 8, 2012, as is amended, modified or supplemented from time to time in accordance with its terms.

"Subsidiary" shall have the meaning set forth in the Purchase Agreement.

"Transaction Documents" shall have the meaning set forth in the Purchase Agreement.

Section 2.    Interest.

a)    Payment of Interest in Cash. The Company shall pay interest to the Holder on the aggregate then outstanding principal amount of this Note at the rate of 5% per annum, compounded quarterly, payable in cash on the Maturity Date (except that, if any such date is not a Business Day, then such payment shall be due on the next succeeding Business Day).

b)    Interest Calculations. Interest shall be calculated on the basis of a 360-day year and shall accrue daily commencing on the Original Issue Date until payment in full of the principal sum, together with all accrued and unpaid interest, liquidated damages and other amounts which may become due hereunder, has been made. Interest hereunder will be paid to the Person in whose name this Note is registered on the records of the Company regarding registration and transfers of this Note (the "Note Register").

c)    Late Fee. All overdue accrued and unpaid interest to be paid hereunder shall be subject to a late fee at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted by applicable law ("Late Fees") which shall accrue daily from the date such interest is due hereunder through and including the date of payment in full.

d)    Prepayment. Without the consent of the Holder, the Company shall have the privilege and the option to prepay all, and not a portion of all, amounts outstanding under this Note upon payment of 100% of the then outstanding principal amount, plus all accrued and unpaid interest hereon, plus all other amounts, costs, expenses and liquidated damages, if any, due in respect of this Note.  The Company may not prepay any portion of the principal amount of this Note without the prior written consent of the Holder.

Section 3.    Registration of Transfers and Exchanges.

a)    Transfers; Denominations. Without the consent of the Company, the Holder shall have the option to transfer all, and not a portion of all, amounts outstanding under this Note; provided that SLS Holdings VI, LLC, as initial Holder (the "Initial Holder"), shall have the option, without the consent of the Company, to assign the Note in three portions to the three members of the Initial Holder. Except as set forth in the preceding sentence, the Holder may not transfer portions of the Note without the prior written consent of the Company.  If the Holder gives its consent to the assignment of a portion of the Note, or the Holder's consent is not required for such assignment as described above, the Note may be exchanged for an equal aggregate principal amount of Notes of different authorized denominations as requested by the Holder surrendering the same. No service charge will be payable for such registration of transfer or exchange.

3

SLS-BKR-000187

b)    <u>Investment Representations</u>. This Note has been issued subject to certain investment representations of the original Holder set forth in the Purchase Agreement and may be transferred or exchanged only in compliance with the Purchase Agreement and applicable federal and state securities laws and regulations.

c)    <u>Reliance on Note Register</u>. Prior to due presentment for transfer to the Company of this Note, the Company and any agent of the Company may treat the Person in whose name this Note is duly registered on the Note Register as the owner hereof for the purpose of receiving payment as herein provided and for all other purposes, whether or not this Note is overdue, and neither the Company nor any such agent shall be affected by notice to the contrary.

<u>Section 4.    Remedies Upon Events of Default</u>. If any Event of Default occurs, the outstanding principal amount of this Note, plus accrued but unpaid interest, liquidated damages and other amounts owing in respect thereof through the date of acceleration, shall become, at the Holder's election, immediately due and payable in cash at the Mandatory Default Amount. Commencing five (5) days after the occurrence of any Event of Default that results in the eventual acceleration of this Note, the interest rate on this Note shall accrue at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted under applicable law. Upon the payment in full of the Mandatory Default Amount, the Holder shall promptly surrender this Note to or as directed by the Company. In connection with such acceleration described herein, the Holder need not provide, and the Company hereby waives, any presentment, demand, protest or other notice of any kind, and the Holder may immediately and without expiration of any grace period enforce any and all of its rights and remedies hereunder and all other remedies available to it under applicable law. Such acceleration may be rescinded and annulled by Holder at any time prior to payment hereunder and the Holder shall have all rights as a holder of the Note until such time, if any, as the Holder receives full payment pursuant to this Section 4. No such rescission or annulment shall affect any subsequent Event of Default or impair any right consequent thereon. Any remedy conferred by this Section shall not be exclusive of any other remedy provided by this Note or any other Transaction Document or now or hereafter available at law, in equity, by statute or otherwise.

<u>Section 5.    Miscellaneous</u>.

a)    <u>Notices</u>.    Any and all notices or other communications or deliveries to be provided by the Holder hereunder shall be in writing and delivered personally, by facsimile, or sent by a nationally recognized overnight courier service, addressed to the Company, at the address set forth above, or such other address as the Company may specify for such purpose by notice to the Holder delivered in accordance with this Section 5. Any and all notices or other communications or deliveries to be provided by the Company hereunder shall be in writing and delivered personally, by facsimile, or sent by a nationally recognized overnight courier service addressed to each Holder at the facsimile number or address of such Holder appearing on the books of the Company, or if no such facsimile number or address appears, at the principal place of business of the Holder. Any notice or other communication or deliveries hereunder shall be deemed given and effective on the earliest of (i) the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section 5 prior to 5:30 p.m. (New York City time), (ii) the date immediately following the date of

4

SLS-BKR-000188

transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section 5 between 5:30 p.m. (New York City time) and 11:59 p.m. (New York City time) on any date, (iii) the second Business Day following the date of mailing, if sent by nationally recognized overnight courier service, or (iv) upon actual receipt by the party to whom such notice is required to be given.

b)    <u>Absolute Obligation</u>. Except as expressly provided herein, no provision of this Note shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of, liquidated damages and accrued interest, as applicable, on this Note at the time, place, and rate, and in the coin or currency, herein prescribed. This Note is a direct debt obligation of the Company. This Note ranks <u>pari passu</u> with the 2011 Note and all other Notes now or hereafter issued under the terms set forth in the Purchase Agreement.

c)    <u>Lost or Mutilated Note</u>. If this Note shall be mutilated, lost, stolen or destroyed, the Company shall execute and deliver, in exchange and substitution for and upon cancellation of a mutilated Note, or in lieu of or in substitution for a lost, stolen or destroyed Note, a new Note for the principal amount of this Note so mutilated, lost, stolen or destroyed, but only upon receipt of evidence of such loss, theft or destruction of such Note, and of the ownership hereof, reasonably satisfactory to the Company.

d)    <u>Governing Law</u>. All questions concerning the construction, validity, enforcement and interpretation of this Note shall be governed by and construed and enforced in accordance with the internal laws of the State of Delaware, without regard to the principles of conflict of laws thereof. Each party agrees that all legal proceedings concerning the interpretation, enforcement and defense of the transactions contemplated by any of the Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, employees or agents) shall be commenced in the state and federal courts sitting in the City of New York, Borough of Manhattan (the "<u>New York Courts</u>"). Each party hereto hereby irrevocably submits to the exclusive jurisdiction of the New York Courts for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such New York Courts, or such New York Courts are improper or inconvenient venue for such proceeding. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Note and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any other manner permitted by applicable law.

SLS-BKR-000189

e)   <u>WAIVER OF JURY TRIAL</u>.   EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY. IF EITHER PARTY SHALL COMMENCE AN ACTION OR PROCEEDING TO ENFORCE ANY PROVISIONS OF THIS NOTE, THEN THE PREVAILING PARTY IN SUCH ACTION OR PROCEEDING SHALL BE REIMBURSED BY THE OTHER PARTY FOR ITS ATTORNEYS' FEES AND OTHER COSTS AND EXPENSES INCURRED IN THE INVESTIGATION, PREPARATION AND PROSECUTION OF SUCH ACTION OR PROCEEDING.

f)   <u>Waiver</u>. Any waiver by the Company or the Holder of a breach of any provision of this Note shall not operate as or be construed to be a waiver of any other breach of such provision or of any breach of any other provision of this Note. The failure of the Company or the Holder to insist upon strict adherence to any term of this Note on one or more occasions shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Note. Any waiver by the Company or the Holder must be in writing.

g)   <u>Severability</u>. If any provision of this Note is invalid, illegal or unenforceable, the balance of this Note shall remain in effect, and if any provision is inapplicable to any Person or circumstance, it shall nevertheless remain applicable to all other Persons and circumstances. If it shall be found that any interest or other amount deemed interest due hereunder violates the applicable law governing usury, the applicable rate of interest due hereunder shall automatically be lowered to equal the maximum rate of interest permitted under applicable law. The Company covenants (to the extent that it may lawfully do so) that it shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law or other law which would prohibit or forgive the Company from paying all or any portion of the principal of or interest on this Note as contemplated herein, wherever enacted, now or at any time hereafter in force, or which may affect the covenants or the performance of this indenture, and the Company (to the extent it may lawfully do so) hereby expressly waives all benefits or advantage of any such law, and covenants that it will not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Holder, but will suffer and permit the execution of every such as though no such law has been enacted.

h)   <u>Next Business Day</u>. Whenever any payment or other obligation hereunder shall be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day.

i)   <u>Headings of Subdivisions</u>. The headings contained herein are for convenience only, do not constitute a part of this Note and shall not be deemed to limit or affect any of the provisions hereof.

j)   <u>Assumption</u>. Any successor to the Company or any surviving entity in a Corporate Change shall (i) assume, prior to such Corporate Change, all of the obligations of the Company under this Note and the other Transaction Documents pursuant to written agreements

6

SLS-BKR-000190

in form and substance satisfactory to the Holder (such approval not to be unreasonably withheld or delayed) and (ii) issue to the Holder a new note of such successor entity evidenced by a written instrument substantially similar in form and substance to this Note, including, without limitation, having a principal amount and interest rate equal to the principal amount and the interest rate of this Note and having similar ranking to this Note, which shall be satisfactory to the Holder (any such approval not to be unreasonably withheld or delayed). The provisions of this Section 5(j) shall apply similarly and equally to successive Fundamental Transactions and shall be applied without regard to any limitations of this Note.

     k)    <u>Secured Obligation.</u> The obligations of the Company under this Note are secured by all assets of the Company pursuant to that certain Amended and Restated Security Agreement, dated as of February 8, 2012, by and between the Company and the Holder.

*********************

SLS-BKR-000191

IN WITNESS WHEREOF, the Company has caused this Note to be duly executed by a duly authorized officer as of the date first above indicated.

**STREAM TV NETWORKS, INC**

By: _Mathu Rajan_

Name: MATHU RAJAN

Title: CEO

QB\15729595.2

THE ISSUANCE AND SALE OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED (I) IN THE ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR (B) AN OPINION OF COUNSEL, IN A FORM REASONABLY ACCEPTABLE TO THE COMPANY, THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR (II) UNLESS SOLD PURSUANT TO RULE 144 OR RULE 144A UNDER SAID ACT. NOTWITHSTANDING THE FOREGOING, THE SECURITIES MAY BE PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER LOAN OR FINANCING ARRANGEMENT SECURED BY THE SECURITIES.

## 5% SENIOR SECURED NOTE

No.: SSN-12-2

Original Issue Date: May 1, 2012

Principal Amount: **$500,000**

THIS 5% SENIOR SECURED NOTE (the "Note") is a duly authorized and validly issued note of Stream TV Networks, Inc, a Delaware corporation, having its principal place of business at 2009 Chestnut Street, Philadelphia, Pennsylvania (the "Company").

FOR VALUE RECEIVED, the Company promises to pay to SLS Holdings VI, LLC, or its registered assigns (the "Holder"), or shall have paid pursuant to the terms hereunder, the principal sum of $500,000 by the earlier of (i) May 1, 2015, (ii) the consummation of a Qualified Public Offering (as defined in the Initial Warrant) or a Corporate Change (as defined below) or (iii) such other date as this Note is required or permitted to be repaid as provided hereunder (the "Maturity Date"), and to pay interest to the Holder on the aggregate then outstanding principal amount of this Note in accordance with the provisions hereof. This Note is subject to the following additional provisions:

Section 1.    Definitions. For the purposes hereof, in addition to the terms defined elsewhere in this Note, (a) capitalized terms not otherwise defined herein shall have the meanings set forth in the Purchase Agreement (as defined below) and (b) the following terms shall have the following meanings:

"Bankruptcy Event" means any of the following events: (a) the Company or any Significant Subsidiary (as such term is defined in Rule 1-02(w) of Regulation S-X) thereof commences a case or other proceeding under any bankruptcy, reorganization, arrangement, adjustment of debt, relief of debtors, dissolution, insolvency or liquidation or similar law of any jurisdiction relating to the Company or any Significant Subsidiary thereof; (b) there is commenced against the Company or any Significant Subsidiary thereof any such case or proceeding that is not dismissed within 60 days after commencement; (c) the Company or any Significant Subsidiary thereof is adjudicated insolvent or bankrupt or any order of relief or other order approving any such case or proceeding is entered; (d) the Company or any Significant Subsidiary thereof suffers any appointment of any custodian or the like for it or any substantial

SLS-BKR-000193

part of its property that is not discharged or stayed within 60 calendar days after such appointment; (e) the Company or any Significant Subsidiary thereof makes a general assignment for the benefit of creditors; (f) the Company or any Significant Subsidiary thereof calls a meeting of its creditors with a view to arranging a composition, adjustment or restructuring of its debts; or (g) the Company or any Significant Subsidiary thereof, by any act or failure to act, expressly indicates its consent to, approval of or acquiescence in any of the foregoing or takes any corporate or other action for the purpose of effecting any of the foregoing.

"Business Day" means any day except Saturday, Sunday, any day which shall be a federal legal holiday in the United States or any day on which banking institutions in the State of New York are authorized or required by law or other governmental action to close.

"Common Stock" means the Company's Common Stock, par value $0.001 per share.

"Corporate Change" means the occurrence at any time after the Original Issue Date, of any of (i) any reclassification or change of the outstanding shares of Common Stock, (ii) any consolidation or merger of the Company with any other entity (other than a merger in which the Company is the surviving or continuing entity and its capital stock is unchanged), (iii) any sale or transfer of all or substantially all of the assets of the Company, (iv) any share exchange or tender offer pursuant to which all of the outstanding shares of Common Stock are effectively converted into other securities or property; or (v) any distribution of the Company's assets to holders of the Common Stock as a liquidation or partial liquidation dividend or by way of return of capital.

"Event of Default" means an Event of Default as defined by the Purchase Agreement.

"Interest Payment Date" shall have the meaning set forth in Section 2(a).

"Late Fees" shall have the meaning set forth in Section 2(c).

"Mandatory Default Amount" means the sum of (i) 110% of the outstanding principal amount of this Note, plus all accrued and unpaid interest hereon, and (ii) all other amounts, costs, expenses and liquidated damages due in respect of this Note.

"New York Courts" shall have the meaning set forth in Section 5(d).

"Note Register" shall have the meaning set forth in Section 2(b).

"Original Issue Date" means the date of the first issuance of this Note, regardless of any transfers of this Note and regardless of the number of instruments which may be issued to evidence this Note.

"Permitted Indebtedness" means the Permitted Indebtedness as defined by the Purchase Agreement.

"Permitted Liens" means the Permitted Liens as defined by the Purchase Agreement.

"Purchase Agreement" means the Securities Purchase Agreement between the Company and the original Holder, dated as of August 8, 2011 as is amended, modified or supplemented from time to time in accordance with its terms.

"Subsidiary" shall have the meaning set forth in the Purchase Agreement.

"Transaction Documents" shall have the meaning set forth in the Purchase Agreement.

"Warrant" shall have the meaning set forth in the Purchase Agreement.

Section 2.    Interest.

a)    Payment of Interest in Cash. The Company shall pay interest to the Holder on the aggregate then outstanding principal amount of this Note at the rate of 5% per annum, compounded quarterly, payable in cash on the Maturity Date (except that, if any such date is not a Business Day, then such payment shall be due on the next succeeding Business Day).

b)    Interest Calculations. Interest shall be calculated on the basis of a 360-day year and shall accrue daily commencing on the Original Issue Date until payment in full of the principal sum, together with all accrued and unpaid interest, liquidated damages and other amounts which may become due hereunder, has been made. Interest hereunder will be paid to the Person in whose name this Note is registered on the records of the Company regarding registration and transfers of this Note (the "Note Register").

c)    Late Fee. All overdue accrued and unpaid interest to be paid hereunder shall be subject to a late fee at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted by applicable law ("Late Fees") which shall accrue daily from the date such interest is due hereunder through and including the date of payment in full.

d)    Prepayment. Without the consent of the Holder, the Company shall have the privilege and the option to prepay all, and not a portion of all, amounts outstanding under this Note upon payment of 100% of the then outstanding principal amount, plus all accrued and unpaid interest hereon, plus all other amounts, costs, expenses and liquidated damages, if any, due in respect of this Note. The Company may not prepay any portion of the principal amount of this Note without the prior written consent of the Holder.

Section 3.    Registration of Transfers and Exchanges.

a)    Transfers; Denominations. Without the consent of the Company, the Holder shall have the option to transfer all, and not a portion of all, amounts outstanding under this Note; provided that SLS Holdings VI, LLC, as initial Holder (the "Initial Holder"), shall have the option, without the consent of the Company, to assign the Note in three portions to the three members of the Initial Holder. Except as set forth in the preceding sentence, the Holder may not transfer portions of the Note without the prior written consent of the Company.  If the Holder gives its consent to the assignment of a portion of the Note, or the Holder's consent is not required for such assignment as described above, the Note may be exchanged for an equal aggregate principal amount of Notes of different authorized denominations as requested by the Holder surrendering the same. No service charge will be payable for such registration of transfer or exchange.

b)    Investment Representations. This Note has been issued subject to certain investment representations of the original Holder set forth in the Purchase Agreement and may be transferred or exchanged only in compliance with the Purchase Agreement and applicable federal and state securities laws and regulations.

c)    Reliance on Note Register. Prior to due presentment for transfer to the Company of this Note, the Company and any agent of the Company may treat the Person in whose name

this Note is duly registered on the Note Register as the owner hereof for the purpose of receiving payment as herein provided and for all other purposes, whether or not this Note is overdue, and neither the Company nor any such agent shall be affected by notice to the contrary.

Section 4.    Remedies Upon Events of Default. If any Event of Default occurs, the outstanding principal amount of this Note, plus accrued but unpaid interest, liquidated damages and other amounts owing in respect thereof through the date of acceleration, shall become, at the Holder's election, immediately due and payable in cash at the Mandatory Default Amount. Commencing five (5) days after the occurrence of any Event of Default that results in the eventual acceleration of this Note, the interest rate on this Note shall accrue at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted under applicable law. Upon the payment in full of the Mandatory Default Amount, the Holder shall promptly surrender this Note to or as directed by the Company. In connection with such acceleration described herein, the Holder need not provide, and the Company hereby waives, any presentment, demand, protest or other notice of any kind, and the Holder may immediately and without expiration of any grace period enforce any and all of its rights and remedies hereunder and all other remedies available to it under applicable law. Such acceleration may be rescinded and annulled by Holder at any time prior to payment hereunder and the Holder shall have all rights as a holder of the Note until such time, if any, as the Holder receives full payment pursuant to this Section 4. No such rescission or annulment shall affect any subsequent Event of Default or impair any right consequent thereon.  Any remedy conferred by this Section shall not be exclusive of any other remedy provided by this Note or any other Transaction Document or now or hereafter available at law, in equity, by statute or otherwise.

Section 5.    Miscellaneous.

a)    Notices. Any and all notices or other communications or deliveries to be provided by the Holder hereunder shall be in writing and delivered personally, by facsimile, or sent by a nationally recognized overnight courier service, addressed to the Company, at the address set forth above, or such other address as the Company may specify for such purpose by notice to the Holder delivered in accordance with this Section 5. Any and all notices or other communications or deliveries to be provided by the Company hereunder shall be in writing and delivered personally, by facsimile, or sent by a nationally recognized overnight courier service addressed to each Holder at the facsimile number or address of such Holder appearing on the books of the Company, or if no such facsimile number or address appears, at the principal place of business of the Holder. Any notice or other communication or deliveries hereunder shall be deemed given and effective on the earliest of (i) the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section 5 prior to 5:30 p.m. (New York City time), (ii) the date immediately following the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section 5 between 5:30 p.m. (New York City time) and 11:59 p.m. (New York City time) on any date, (iii) the second Business Day following the date of mailing, if sent by nationally recognized overnight courier service, or (iv) upon actual receipt by the party to whom such notice is required to be given.

SLS-BKR-000196

b)    _Absolute Obligation_. Except as expressly provided herein, no provision of this Note shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of, liquidated damages and accrued interest, as applicable, on this Note at the time, place, and rate, and in the coin or currency, herein prescribed. This Note is a direct debt obligation of the Company. This Note ranks _pari passu_ with the 2011 Note and all other Notes now or hereafter issued under the terms set forth herein.

c)    _Lost or Mutilated Note_. If this Note shall be mutilated, lost, stolen or destroyed, the Company shall execute and deliver, in exchange and substitution for and upon cancellation of a mutilated Note, or in lieu of or in substitution for a lost, stolen or destroyed Note, a new Note for the principal amount of this Note so mutilated, lost, stolen or destroyed, but only upon receipt of evidence of such loss, theft or destruction of such Note, and of the ownership hereof, reasonably satisfactory to the Company.

d)    _Governing Law_. All questions concerning the construction, validity, enforcement and interpretation of this Note shall be governed by and construed and enforced in accordance with the internal laws of the State of Delaware, without regard to the principles of conflict of laws thereof. Each party agrees that all legal proceedings concerning the interpretation, enforcement and defense of the transactions contemplated by any of the Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, employees or agents) shall be commenced in the state and federal courts sitting in the City of New York, Borough of Manhattan (the "New York Courts"). Each party hereto hereby irrevocably submits to the exclusive jurisdiction of the New York Courts for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such New York Courts, or such New York Courts are improper or inconvenient venue for such proceeding. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Note and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any other manner permitted by applicable law.

e)    WAIVER OF JURY TRIAL.    EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY. IF EITHER PARTY SHALL COMMENCE AN ACTION OR PROCEEDING TO ENFORCE ANY PROVISIONS OF THIS NOTE, THEN THE PREVAILING PARTY IN SUCH ACTION OR PROCEEDING SHALL BE REIMBURSED BY THE OTHER PARTY FOR ITS ATTORNEYS' FEES AND OTHER COSTS AND EXPENSES INCURRED IN THE INVESTIGATION, PREPARATION AND PROSECUTION OF SUCH ACTION OR PROCEEDING.

f)    Waiver. Any waiver by the Company or the Holder of a breach of any provision of this Note shall not operate as or be construed to be a waiver of any other breach of such provision or of any breach of any other provision of this Note. The failure of the Company or the Holder to insist upon strict adherence to any term of this Note on one or more occasions shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Note. Any waiver by the Company or the Holder must be in writing.

g)    Severability. If any provision of this Note is invalid, illegal or unenforceable, the balance of this Note shall remain in effect, and if any provision is inapplicable to any Person or circumstance, it shall nevertheless remain applicable to all other Persons and circumstances. If it shall be found that any interest or other amount deemed interest due hereunder violates the applicable law governing usury, the applicable rate of interest due hereunder shall automatically be lowered to equal the maximum rate of interest permitted under applicable law. The Company covenants (to the extent that it may lawfully do so) that it shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law or other law which would prohibit or forgive the Company from paying all or any portion of the principal of or interest on this Note as contemplated herein, wherever enacted, now or at any time hereafter in force, or which may affect the covenants or the performance of this indenture, and the Company (to the extent it may lawfully do so) hereby expressly waives all benefits or advantage of any such law, and covenants that it will not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Holder, but will suffer and permit the execution of every such as though no such law has been enacted.

h)    Next Business Day. Whenever any payment or other obligation hereunder shall be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day.

i)    Headings of Subdivisions. The headings contained herein are for convenience only, do not constitute a part of this Note and shall not be deemed to limit or affect any of the provisions hereof.

j)    Assumption. Any successor to the Company or any surviving entity in a Corporate Change shall (i) assume, prior to such Corporate Change, all of the obligations of the Company under this Note and the other Transaction Documents pursuant to written agreements in form and substance satisfactory to the Holder (such approval not to be unreasonably withheld or delayed) and (ii) issue to the Holder a new note of such successor entity evidenced by a written instrument substantially similar in form and substance to this Note, including, without limitation, having a principal amount and interest rate equal to the principal amount and the interest rate of this Note and having similar ranking to this Note, which shall be satisfactory to the Holder (any such approval not to be unreasonably withheld or delayed). The provisions of this Section 5(j) shall apply similarly and equally to successive Fundamental Transactions and shall be applied without regard to any limitations of this Note.

k)    Secured Obligation. The obligations of the Company under this Note are secured by all assets of the Company pursuant to that certain Amended and Restated Security Agreement, dated as of February 8, 2012, between the Company and the Holder.

SLS-BKR-000198

*********************

IN WITNESS WHEREOF, the Company has caused this Note to be duly executed by a duly authorized officer as of the date first above indicated.

STREAM TV NETWORKS, INC

By: _____

Name: 

Title: Chief Operating Officer

SLS-BKR-000199

THE ISSUANCE AND SALE OF THE SECURITIES REPRESENTED BY THIS
CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933,
AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THE SECURITIES MAY
NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED (I) IN THE
ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES
UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR (B) AN OPINION OF
COUNSEL, IN A FORM REASONABLY ACCEPTABLE TO THE COMPANY, THAT
REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR (II) UNLESS SOLD
PURSUANT TO RULE 144 OR RULE 144A UNDER SAID ACT. NOTWITHSTANDING
THE FOREGOING, THE SECURITIES MAY BE PLEDGED IN CONNECTION WITH A
BONA FIDE MARGIN ACCOUNT OR OTHER LOAN OR FINANCING ARRANGEMENT
SECURED BY THE SECURITIES.

## 5% SENIOR SECURED NOTE

No.: SSN-12-3

Original Issue Date: May 29, 2012

Principal Amount: **$500,000**

THIS 5% SENIOR SECURED NOTE (the "Note") is a duly authorized and validly
issued note of Stream TV Networks, Inc, a Delaware corporation, having its principal place of
business at 2009 Chestnut Street, Philadelphia, Pennsylvania (the "Company").

FOR VALUE RECEIVED, the Company promises to pay to SLS Holdings VI, LLC, or its
registered assigns (the "Holder"), or shall have paid pursuant to the terms hereunder, the principal
sum of $500,000 by the earlier of (i) May 29, 2015, (ii) the consummation of a Qualified Public
Offering (as defined in the Initial Warrant) or a Corporate Change (as defined below) or (iii) such
other date as this Note is required or permitted to be repaid as provided hereunder (the "Maturity
Date"), and to pay interest to the Holder on the aggregate then outstanding principal amount of this
Note in accordance with the provisions hereof. This Note is subject to the following additional
provisions:

Section 1.    Definitions. For the purposes hereof, in addition to the terms defined elsewhere
in this Note, (a) capitalized terms not otherwise defined herein shall have the meanings set forth
in the Purchase Agreement (as defined below) and (b) the following terms shall have the
following meanings:

"Bankruptcy Event" means any of the following events: (a) the Company or any
Significant Subsidiary (as such term is defined in Rule 1-02(w) of Regulation S-X) thereof
commences a case or other proceeding under any bankruptcy, reorganization, arrangement,
adjustment of debt, relief of debtors, dissolution, insolvency or liquidation or similar law of any
jurisdiction relating to the Company or any Significant Subsidiary thereof; (b) there is
commenced against the Company or any Significant Subsidiary thereof any such case or
proceeding that is not dismissed within 60 days after commencement; (c) the Company or any
Significant Subsidiary thereof is adjudicated insolvent or bankrupt or any order of relief or other
order approving any such case or proceeding is entered; (d) the Company or any Significant
Subsidiary thereof suffers any appointment of any custodian or the like for it or any substantial

part of its property that is not discharged or stayed within 60 calendar days after such appointment; (e) the Company or any Significant Subsidiary thereof makes a general assignment for the benefit of creditors; (f) the Company or any Significant Subsidiary thereof calls a meeting of its creditors with a view to arranging a composition, adjustment or restructuring of its debts; or (g) the Company or any Significant Subsidiary thereof, by any act or failure to act, expressly indicates its consent to, approval of or acquiescence in any of the foregoing or takes any corporate or other action for the purpose of effecting any of the foregoing.

"Business Day" means any day except Saturday, Sunday, any day which shall be a federal legal holiday in the United States or any day on which banking institutions in the State of New York are authorized or required by law or other governmental action to close.

"Common Stock" means the Company's Common Stock, par value $0.001 per share.

"Corporate Change" means the occurrence at any time after the Original Issue Date, of any of (i) any reclassification or change of the outstanding shares of Common Stock, (ii) any consolidation or merger of the Company with any other entity (other than a merger in which the Company is the surviving or continuing entity and its capital stock is unchanged), (iii) any sale or transfer of all or substantially all of the assets of the Company, (iv) any share exchange or tender offer pursuant to which all of the outstanding shares of Common Stock are effectively converted into other securities or property; or (v) any distribution of the Company's assets to holders of the Common Stock as a liquidation or partial liquidation dividend or by way of return of capital.

"Event of Default" means an Event of Default as defined by the Purchase Agreement.

"Interest Payment Date" shall have the meaning set forth in Section 2(a).

"Late Fees" shall have the meaning set forth in Section 2(c).

"Mandatory Default Amount" means the sum of (i) 110% of the outstanding principal amount of this Note, plus all accrued and unpaid interest hereon, and (ii) all other amounts, costs, expenses and liquidated damages due in respect of this Note.

"New York Courts" shall have the meaning set forth in Section 5(d).

"Note Register" shall have the meaning set forth in Section 2(b).

"Original Issue Date" means the date of the first issuance of this Note, regardless of any transfers of this Note and regardless of the number of instruments which may be issued to evidence this Note.

"Permitted Indebtedness" means the Permitted Indebtedness as defined by the Purchase Agreement.

"Permitted Liens" means the Permitted Liens as defined by the Purchase Agreement.

"Purchase Agreement" means the Securities Purchase Agreement between the Company and the original Holder, dated as of August 8, 2011 as is amended, modified or supplemented from time to time in accordance with its terms.

"Subsidiary" shall have the meaning set forth in the Purchase Agreement.

"Transaction Documents" shall have the meaning set forth in the Purchase Agreement.

"Warrant" shall have the meaning set forth in the Purchase Agreement.

Section 2.   Interest.

a)   Payment of Interest in Cash. The Company shall pay interest to the Holder on the aggregate then outstanding principal amount of this Note at the rate of 5% per annum, compounded quarterly, payable in cash on the Maturity Date (except that, if any such date is not a Business Day, then such payment shall be due on the next succeeding Business Day).

b)   Interest Calculations. Interest shall be calculated on the basis of a 360-day year and shall accrue daily commencing on the Original Issue Date until payment in full of the principal sum, together with all accrued and unpaid interest, liquidated damages and other amounts which may become due hereunder, has been made. Interest hereunder will be paid to the Person in whose name this Note is registered on the records of the Company regarding registration and transfers of this Note (the "Note Register").

c)   Late Fee. All overdue accrued and unpaid interest to be paid hereunder shall be subject to a late fee at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted by applicable law ("Late Fees") which shall accrue daily from the date such interest is due hereunder through and including the date of payment in full.

d)   Prepayment. Without the consent of the Holder, the Company shall have the privilege and the option to prepay all, and not a portion of all, amounts outstanding under this Note upon payment of 100% of the then outstanding principal amount, plus all accrued and unpaid interest hereon, plus all other amounts, costs, expenses and liquidated damages, if any, due in respect of this Note. The Company may not prepay any portion of the principal amount of this Note without the prior written consent of the Holder.

Section 3.   Registration of Transfers and Exchanges.

a)   Transfers; Denominations. Without the consent of the Company, the Holder shall have the option to transfer all, and not a portion of all, amounts outstanding under this Note; provided that SLS Holdings VI, LLC, as initial Holder (the "Initial Holder"), shall have the option, without the consent of the Company, to assign the Note in three portions to the three members of the Initial Holder. Except as set forth in the preceding sentence, the Holder may not transfer portions of the Note without the prior written consent of the Company. If the Holder gives its consent to the assignment of a portion of the Note, or the Holder's consent is not required for such assignment as described above, the Note may be exchanged for an equal aggregate principal amount of Notes of different authorized denominations as requested by the Holder surrendering the same. No service charge will be payable for such registration of transfer or exchange.

b)   Investment Representations. This Note has been issued subject to certain investment representations of the original Holder set forth in the Purchase Agreement and may be transferred or exchanged only in compliance with the Purchase Agreement and applicable federal and state securities laws and regulations.

c)   Reliance on Note Register. Prior to due presentment for transfer to the Company of this Note, the Company and any agent of the Company may treat the Person in whose name

this Note is duly registered on the Note Register as the owner hereof for the purpose of receiving payment as herein provided and for all other purposes, whether or not this Note is overdue, and neither the Company nor any such agent shall be affected by notice to the contrary.

Section 4.    Remedies Upon Events of Default. If any Event of Default occurs, the outstanding principal amount of this Note, plus accrued but unpaid interest, liquidated damages and other amounts owing in respect thereof through the date of acceleration, shall become, at the Holder's election, immediately due and payable in cash at the Mandatory Default Amount. Commencing five (5) days after the occurrence of any Event of Default that results in the eventual acceleration of this Note, the interest rate on this Note shall accrue at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted under applicable law. Upon the payment in full of the Mandatory Default Amount, the Holder shall promptly surrender this Note to or as directed by the Company. In connection with such acceleration described herein, the Holder need not provide, and the Company hereby waives, any presentment, demand, protest or other notice of any kind, and the Holder may immediately and without expiration of any grace period enforce any and all of its rights and remedies hereunder and all other remedies available to it under applicable law. Such acceleration may be rescinded and annulled by Holder at any time prior to payment hereunder and the Holder shall have all rights as a holder of the Note until such time, if any, as the Holder receives full payment pursuant to this Section 4. No such rescission or annulment shall affect any subsequent Event of Default or impair any right consequent thereon. Any remedy conferred by this Section shall not be exclusive of any other remedy provided by this Note or any other Transaction Document or now or hereafter available at law, in equity, by statute or otherwise.

Section 5.    Miscellaneous.

a)    Notices. Any and all notices or other communications or deliveries to be provided by the Holder hereunder shall be in writing and delivered personally, by facsimile, or sent by a nationally recognized overnight courier service, addressed to the Company, at the address set forth above, or such other address as the Company may specify for such purpose by notice to the Holder delivered in accordance with this Section 5. Any and all notices or other communications or deliveries to be provided by the Company hereunder shall be in writing and delivered personally, by facsimile, or sent by a nationally recognized overnight courier service addressed to each Holder at the facsimile number or address of such Holder appearing on the books of the Company, or if no such facsimile number or address appears, at the principal place of business of the Holder. Any notice or other communication or deliveries hereunder shall be deemed given and effective on the earliest of (i) the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section 5 prior to 5:30 p.m. (New York City time), (ii) the date immediately following the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section 5 between 5:30 p.m. (New York City time) and 11:59 p.m. (New York City time) on any date, (iii) the second Business Day following the date of mailing, if sent by nationally recognized overnight courier service, or (iv) upon actual receipt by the party to whom such notice is required to be given.

SLS-BKR-000203

b)    Absolute Obligation. Except as expressly provided herein, no provision of this Note shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of, liquidated damages and accrued interest, as applicable, on this Note at the time, place, and rate, and in the coin or currency, herein prescribed. This Note is a direct debt obligation of the Company. This Note ranks pari passu with the 2011 Note and all other Notes now or hereafter issued under the terms set forth herein.

c)    Lost or Mutilated Note. If this Note shall be mutilated, lost, stolen or destroyed, the Company shall execute and deliver, in exchange and substitution for and upon cancellation of a mutilated Note, or in lieu of or in substitution for a lost, stolen or destroyed Note, a new Note for the principal amount of this Note so mutilated, lost, stolen or destroyed, but only upon receipt of evidence of such loss, theft or destruction of such Note, and of the ownership hereof, reasonably satisfactory to the Company.

d)    Governing Law. All questions concerning the construction, validity, enforcement and interpretation of this Note shall be governed by and construed and enforced in accordance with the internal laws of the State of Delaware, without regard to the principles of conflict of laws thereof. Each party agrees that all legal proceedings concerning the interpretation, enforcement and defense of the transactions contemplated by any of the Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, employees or agents) shall be commenced in the state and federal courts sitting in the City of New York, Borough of Manhattan (the "New York Courts"). Each party hereto hereby irrevocably submits to the exclusive jurisdiction of the New York Courts for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such New York Courts, or such New York Courts are improper or inconvenient venue for such proceeding. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Note and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any other manner permitted by applicable law.

e)    WAIVER OF JURY TRIAL.    EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY. IF EITHER PARTY SHALL COMMENCE AN ACTION OR PROCEEDING TO ENFORCE ANY PROVISIONS OF THIS NOTE, THEN THE PREVAILING PARTY IN SUCH ACTION OR PROCEEDING SHALL BE REIMBURSED BY THE OTHER PARTY FOR ITS ATTORNEYS' FEES AND OTHER COSTS AND EXPENSES INCURRED IN THE INVESTIGATION, PREPARATION AND PROSECUTION OF SUCH ACTION OR PROCEEDING.

f)    <u>Waiver</u>. Any waiver by the Company or the Holder of a breach of any provision of this Note shall not operate as or be construed to be a waiver of any other breach of such provision or of any breach of any other provision of this Note. The failure of the Company or the Holder to insist upon strict adherence to any term of this Note on one or more occasions shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Note. Any waiver by the Company or the Holder must be in writing.

g)    <u>Severability</u>. If any provision of this Note is invalid, illegal or unenforceable, the balance of this Note shall remain in effect, and if any provision is inapplicable to any Person or circumstance, it shall nevertheless remain applicable to all other Persons and circumstances. If it shall be found that any interest or other amount deemed interest due hereunder violates the applicable law governing usury, the applicable rate of interest due hereunder shall automatically be lowered to equal the maximum rate of interest permitted under applicable law. The Company covenants (to the extent that it may lawfully do so) that it shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law or other law which would prohibit or forgive the Company from paying all or any portion of the principal of or interest on this Note as contemplated herein, wherever enacted, now or at any time hereafter in force, or which may affect the covenants or the performance of this indenture, and the Company (to the extent it may lawfully do so) hereby expressly waives all benefits or advantage of any such law, and covenants that it will not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Holder, but will suffer and permit the execution of every such as though no such law has been enacted.

h)    <u>Next Business Day</u>. Whenever any payment or other obligation hereunder shall be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day.

i)    <u>Headings of Subdivisions</u>. The headings contained herein are for convenience only, do not constitute a part of this Note and shall not be deemed to limit or affect any of the provisions hereof.

j)    <u>Assumption</u>. Any successor to the Company or any surviving entity in a Corporate Change shall (i) assume, prior to such Corporate Change, all of the obligations of the Company under this Note and the other Transaction Documents pursuant to written agreements in form and substance satisfactory to the Holder (such approval not to be unreasonably withheld or delayed) and (ii) issue to the Holder a new note of such successor entity evidenced by a written instrument substantially similar in form and substance to this Note, including, without limitation, having a principal amount and interest rate equal to the principal amount and the interest rate of this Note and having similar ranking to this Note, which shall be satisfactory to the Holder (any such approval not to be unreasonably withheld or delayed). The provisions of this Section 5(j) shall apply similarly and equally to successive Fundamental Transactions and shall be applied without regard to any limitations of this Note.

k)    <u>Secured Obligation.</u> The obligations of the Company under this Note are secured by all assets of the Company pursuant to that certain Amended and Restated Security Agreement, dated as of February 8, 2012, between the Company and the Holder.

**********************

IN WITNESS WHEREOF, the Company has caused this Note to be duly executed by a duly authorized officer as of the date first above indicated.

STREAM TV NETWORKS, INC

By: _____

Name: RAJA RAJAN

Title: Chief operating officer

THE ISSUANCE AND SALE OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED (I) IN THE ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR (B) AN OPINION OF COUNSEL, IN A FORM REASONABLY ACCEPTABLE TO THE COMPANY, THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR (II) UNLESS SOLD PURSUANT TO RULE 144 OR RULE 144A UNDER SAID ACT. NOTWITHSTANDING THE FOREGOING, THE SECURITIES MAY BE PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER LOAN OR FINANCING ARRANGEMENT SECURED BY THE SECURITIES.

## 5% SENIOR SECURED NOTE

No.: SSN-12-4

Original Issue Date: July _5_ , 2012

Principal Amount: **$500,000**

THIS 5% SENIOR SECURED NOTE (the "Note") is a duly authorized and validly issued note of Stream TV Networks, Inc, a Delaware corporation, having its principal place of business at 2009 Chestnut Street, Philadelphia, Pennsylvania (the "Company").

FOR VALUE RECEIVED, the Company promises to pay to SLS Holdings VI, LLC, or its registered assigns (the "Holder"), or shall have paid pursuant to the terms hereunder, the principal sum of $500,000 by the earlier of (i) July _5_ , 2015, (ii) the consummation of a Qualified Public Offering (as defined in the Initial Warrant) or a Corporate Change (as defined below) or (iii) such other date as this Note is required or permitted to be repaid as provided hereunder (the "Maturity Date"), and to pay interest to the Holder on the aggregate then outstanding principal amount of this Note in accordance with the provisions hereof. This Note is subject to the following additional provisions:

Section 1.    Definitions.  For the purposes hereof, in addition to the terms defined elsewhere in this Note, (a) capitalized terms not otherwise defined herein shall have the meanings set forth in the Purchase Agreement (as defined below) and (b) the following terms shall have the following meanings:

"Bankruptcy Event" means any of the following events: (a) the Company or any Significant Subsidiary (as such term is defined in Rule 1-02(w) of Regulation S-X) thereof commences a case or other proceeding under any bankruptcy, reorganization, arrangement, adjustment of debt, relief of debtors, dissolution, insolvency or liquidation or similar law of any jurisdiction relating to the Company or any Significant Subsidiary thereof; (b) there is commenced against the Company or any Significant Subsidiary thereof any such case or proceeding that is not dismissed within 60 days after commencement; (c) the Company or any Significant Subsidiary thereof is adjudicated insolvent or bankrupt or any order of relief or other order approving any such case or proceeding is entered; (d) the Company or any Significant Subsidiary thereof suffers any appointment of any custodian or the like for it or any substantial

SLS-BKR-000207

part of its property that is not discharged or stayed within 60 calendar days after such appointment; (e) the Company or any Significant Subsidiary thereof makes a general assignment for the benefit of creditors; (f) the Company or any Significant Subsidiary thereof calls a meeting of its creditors with a view to arranging a composition, adjustment or restructuring of its debts; or (g) the Company or any Significant Subsidiary thereof, by any act or failure to act, expressly indicates its consent to, approval of or acquiescence in any of the foregoing or takes any corporate or other action for the purpose of effecting any of the foregoing.

"Business Day" means any day except Saturday, Sunday, any day which shall be a federal legal holiday in the United States or any day on which banking institutions in the State of New York are authorized or required by law or other governmental action to close.

"Common Stock" means the Company's Common Stock, par value $0.001 per share.

"Corporate Change" means the occurrence at any time after the Original Issue Date, of any of (i) any reclassification or change of the outstanding shares of Common Stock, (ii) any consolidation or merger of the Company with any other entity (other than a merger in which the Company is the surviving or continuing entity and its capital stock is unchanged), (iii) any sale or transfer of all or substantially all of the assets of the Company, (iv) any share exchange or tender offer pursuant to which all of the outstanding shares of Common Stock are effectively converted into other securities or property; or (v) any distribution of the Company's assets to holders of the Common Stock as a liquidation or partial liquidation dividend or by way of return of capital.

"Event of Default" means an Event of Default as defined by the Purchase Agreement.

"Interest Payment Date" shall have the meaning set forth in Section 2(a).

"Late Fees" shall have the meaning set forth in Section 2(c).

"Mandatory Default Amount" means the sum of (i) 110% of the outstanding principal amount of this Note, plus all accrued and unpaid interest hereon, and (ii) all other amounts, costs, expenses and liquidated damages due in respect of this Note.

"New York Courts" shall have the meaning set forth in Section 5(d).

"Note Register" shall have the meaning set forth in Section 2(b).

"Original Issue Date" means the date of the first issuance of this Note, regardless of any transfers of this Note and regardless of the number of instruments which may be issued to evidence this Note.

"Permitted Indebtedness" means the Permitted Indebtedness as defined by the Purchase Agreement.

"Permitted Liens" means the Permitted Liens as defined by the Purchase Agreement.

"Purchase Agreement" means the Securities Purchase Agreement between the Company and the original Holder, dated as of August 8, 2011 as is amended, modified or supplemented from time to time in accordance with its terms.

"Subsidiary" shall have the meaning set forth in the Purchase Agreement.

"Transaction Documents" shall have the meaning set forth in the Purchase Agreement.

"Warrant" shall have the meaning set forth in the Purchase Agreement.

Section 2.    Interest.

a)    Payment of Interest in Cash. The Company shall pay interest to the Holder on the aggregate then outstanding principal amount of this Note at the rate of 5% per annum, compounded quarterly, payable in cash on the Maturity Date (except that, if any such date is not a Business Day, then such payment shall be due on the next succeeding Business Day).

b)    Interest Calculations. Interest shall be calculated on the basis of a 360-day year and shall accrue daily commencing on the Original Issue Date until payment in full of the principal sum, together with all accrued and unpaid interest, liquidated damages and other amounts which may become due hereunder, has been made. Interest hereunder will be paid to the Person in whose name this Note is registered on the records of the Company regarding registration and transfers of this Note (the "Note Register").

c)    Late Fee. All overdue accrued and unpaid interest to be paid hereunder shall be subject to a late fee at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted by applicable law ("Late Fees") which shall accrue daily from the date such interest is due hereunder through and including the date of payment in full.

d)    Prepayment. Without the consent of the Holder, the Company shall have the privilege and the option to prepay all, and not a portion of all, amounts outstanding under this Note upon payment of 100% of the then outstanding principal amount, plus all accrued and unpaid interest hereon, plus all other amounts, costs, expenses and liquidated damages, if any, due in respect of this Note. The Company may not prepay any portion of the principal amount of this Note without the prior written consent of the Holder.

Section 3.    Registration of Transfers and Exchanges.

a)    Transfers; Denominations. Without the consent of the Company, the Holder shall have the option to transfer all, and not a portion of all, amounts outstanding under this Note; provided that SLS Holdings VI, LLC, as initial Holder (the "Initial Holder"), shall have the option, without the consent of the Company, to assign the Note in three portions to the three members of the Initial Holder. Except as set forth in the preceding sentence, the Holder may not transfer portions of the Note without the prior written consent of the Company. If the Holder gives its consent to the assignment of a portion of the Note, or the Holder's consent is not required for such assignment as described above, the Note may be exchanged for an equal aggregate principal amount of Notes of different authorized denominations as requested by the Holder surrendering the same. No service charge will be payable for such registration of transfer or exchange.

b)    Investment Representations. This Note has been issued subject to certain investment representations of the original Holder set forth in the Purchase Agreement and may be transferred or exchanged only in compliance with the Purchase Agreement and applicable federal and state securities laws and regulations.

c)    Reliance on Note Register. Prior to due presentment for transfer to the Company of this Note, the Company and any agent of the Company may treat the Person in whose name

SLS-BKR-000209

this Note is duly registered on the Note Register as the owner hereof for the purpose of receiving payment as herein provided and for all other purposes, whether or not this Note is overdue, and neither the Company nor any such agent shall be affected by notice to the contrary.

Section 4.   Remedies Upon Events of Default. If any Event of Default occurs, the outstanding principal amount of this Note, plus accrued but unpaid interest, liquidated damages and other amounts owing in respect thereof through the date of acceleration, shall become, at the Holder's election, immediately due and payable in cash at the Mandatory Default Amount. Commencing five (5) days after the occurrence of any Event of Default that results in the eventual acceleration of this Note, the interest rate on this Note shall accrue at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted under applicable law. Upon the payment in full of the Mandatory Default Amount, the Holder shall promptly surrender this Note to or as directed by the Company. In connection with such acceleration described herein, the Holder need not provide, and the Company hereby waives, any presentment, demand, protest or other notice of any kind, and the Holder may immediately and without expiration of any grace period enforce any and all of its rights and remedies hereunder and all other remedies available to it under applicable law. Such acceleration may be rescinded and annulled by Holder at any time prior to payment hereunder and the Holder shall have all rights as a holder of the Note until such time, if any, as the Holder receives full payment pursuant to this Section 4. No such rescission or annulment shall affect any subsequent Event of Default or impair any right consequent thereon.  Any remedy conferred by this Section shall not be exclusive of any other remedy provided by this Note or any other Transaction Document or now or hereafter available at law, in equity, by statute or otherwise.

Section 5.   Miscellaneous.

a)   Notices. Any and all notices or other communications or deliveries to be provided by the Holder hereunder shall be in writing and delivered personally, by facsimile, or sent by a nationally recognized overnight courier service, addressed to the Company, at the address set forth above, or such other address as the Company may specify for such purpose by notice to the Holder delivered in accordance with this Section 5. Any and all notices or other communications or deliveries to be provided by the Company hereunder shall be in writing and delivered personally, by facsimile, or sent by a nationally recognized overnight courier service addressed to each Holder at the facsimile number or address of such Holder appearing on the books of the Company, or if no such facsimile number or address appears, at the principal place of business of the Holder. Any notice or other communication or deliveries hereunder shall be deemed given and effective on the earliest of (i) the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section 5 prior to 5:30 p.m. (New York City time), (ii) the date immediately following the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified in this Section 5 between 5:30 p.m. (New York City time) and 11:59 p.m. (New York City time) on any date, (iii) the second Business Day following the date of mailing, if sent by nationally recognized overnight courier service, or (iv) upon actual receipt by the party to whom such notice is required to be given.

SLS-BKR-000210

b)    <u>Absolute Obligation</u>. Except as expressly provided herein, no provision of this Note shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of, liquidated damages and accrued interest, as applicable, on this Note at the time, place, and rate, and in the coin or currency, herein prescribed. This Note is a direct debt obligation of the Company. This Note ranks <u>pari passu</u> with the 2011 Note and all other Notes now or hereafter issued under the terms set forth herein.

c)    <u>Lost or Mutilated Note</u>. If this Note shall be mutilated, lost, stolen or destroyed, the Company shall execute and deliver, in exchange and substitution for and upon cancellation of a mutilated Note, or in lieu of or in substitution for a lost, stolen or destroyed Note, a new Note for the principal amount of this Note so mutilated, lost, stolen or destroyed, but only upon receipt of evidence of such loss, theft or destruction of such Note, and of the ownership hereof, reasonably satisfactory to the Company.

d)    <u>Governing Law</u>. All questions concerning the construction, validity, enforcement and interpretation of this Note shall be governed by and construed and enforced in accordance with the internal laws of the State of Delaware, without regard to the principles of conflict of laws thereof. Each party agrees that all legal proceedings concerning the interpretation, enforcement and defense of the transactions contemplated by any of the Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, employees or agents) shall be commenced in the state and federal courts sitting in the City of New York, Borough of Manhattan (the "<u>New York Courts</u>"). Each party hereto hereby irrevocably submits to the exclusive jurisdiction of the New York Courts for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such New York Courts, or such New York Courts are improper or inconvenient venue for such proceeding. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Note and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any other manner permitted by applicable law.

e)    <u>WAIVER OF JURY TRIAL</u>.    EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY. IF EITHER PARTY SHALL COMMENCE AN ACTION OR PROCEEDING TO ENFORCE ANY PROVISIONS OF THIS NOTE, THEN THE PREVAILING PARTY IN SUCH ACTION OR PROCEEDING SHALL BE REIMBURSED BY THE OTHER PARTY FOR ITS ATTORNEYS' FEES AND OTHER COSTS AND EXPENSES INCURRED IN THE INVESTIGATION, PREPARATION AND PROSECUTION OF SUCH ACTION OR PROCEEDING.

f)    <u>Waiver</u>. Any waiver by the Company or the Holder of a breach of any provision of this Note shall not operate as or be construed to be a waiver of any other breach of such provision or of any breach of any other provision of this Note. The failure of the Company or the Holder to insist upon strict adherence to any term of this Note on one or more occasions shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Note. Any waiver by the Company or the Holder must be in writing.

g)    <u>Severability</u>. If any provision of this Note is invalid, illegal or unenforceable, the balance of this Note shall remain in effect, and if any provision is inapplicable to any Person or circumstance, it shall nevertheless remain applicable to all other Persons and circumstances. If it shall be found that any interest or other amount deemed interest due hereunder violates the applicable law governing usury, the applicable rate of interest due hereunder shall automatically be lowered to equal the maximum rate of interest permitted under applicable law. The Company covenants (to the extent that it may lawfully do so) that it shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law or other law which would prohibit or forgive the Company from paying all or any portion of the principal of or interest on this Note as contemplated herein, wherever enacted, now or at any time hereafter in force, or which may affect the covenants or the performance of this indenture, and the Company (to the extent it may lawfully do so) hereby expressly waives all benefits or advantage of any such law, and covenants that it will not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Holder, but will suffer and permit the execution of every such as though no such law has been enacted.

h)    <u>Next Business Day</u>. Whenever any payment or other obligation hereunder shall be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day.

i)    <u>Headings of Subdivisions</u>. The headings contained herein are for convenience only, do not constitute a part of this Note and shall not be deemed to limit or affect any of the provisions hereof.

j)    <u>Assumption</u>. Any successor to the Company or any surviving entity in a Corporate Change shall (i) assume, prior to such Corporate Change, all of the obligations of the Company under this Note and the other Transaction Documents pursuant to written agreements in form and substance satisfactory to the Holder (such approval not to be unreasonably withheld or delayed) and (ii) issue to the Holder a new note of such successor entity evidenced by a written instrument substantially similar in form and substance to this Note, including, without limitation, having a principal amount and interest rate equal to the principal amount and the interest rate of this Note and having similar ranking to this Note, which shall be satisfactory to the Holder (any such approval not to be unreasonably withheld or delayed). The provisions of this Section 5(j) shall apply similarly and equally to successive Fundamental Transactions and shall be applied without regard to any limitations of this Note.

k)    <u>Secured Obligation.</u> The obligations of the Company under this Note are secured by all assets of the Company pursuant to that certain Amended and Restated Security Agreement, dated as of February 8, 2012, between the Company and the Holder.

**********************

IN WITNESS WHEREOF, the Company has caused this Note to be duly executed by a duly authorized officer as of the date first above indicated.

STREAM TV NETWORKS, INC

By: _____

Name: RAJA RATAN

Title: COO