# **EXHIBIT I**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| Stream TV Networks, Inc. | : Case No. 21-10433 (KBO) |
| | : |
| Debtor. | : Hearing Date: March 22, 2021 at 10:00 a.m. |
| | : Objections Due: March 15, 2021 at 4:00 p.m. |

**MOTION OF STREAM TV NETWORKS, INC. FOR ENTRY OF ORDER: (I) AUTHORIZING IT TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING IT TO ENTER INTO THE SUPPORT AGREEMENT, AND (III) GRANTING ADMINISTRATIVE PRIORITY CLAIMS TO LENDER PURSUANT TO SECTION 364 OF BANKRUPTCY CODE AND MODIFYING THE AUTOMATIC STAY TO IMPLEMENT THE TERMS OF THE ORDER**

Stream TV Networks, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor" or "Stream" or "Payee"), by undersigned proposed counsel, respectfully represents:

**Bankruptcy Rule 4001 and Local Rule 4001-2 Concise Statement**

1. By this motion (this "Motion"), the Debtor requests (a) entry of an order (the "Order") authorizing the Debtor to, among other things: (i) obtain loans and advances and such other financial accommodations in an initial principal amount not to exceed $200,000, and a total amount not to exceed $1,000,000 unless otherwise increased by consent of Visual Technology Innovations, Inc. ("VTI" or "Payor") in a signed writing (the "Facility" or "Loan"), pursuant to sections 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) enter into the Support Agreement and the agreements and instruments contemplated thereby (the "Support Agreement") and to perform such other and further acts as may be required in connection with the Support Agreement, and (iii) grant administrative priority claims to VTI in accordance with the Support Agreement and the Order to secure the Loan; (b) modification of

122148638_3

the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and VTI to implement the terms of the Order; and (c) requesting that this Court (the "Bankruptcy Court") schedule the Hearing for the entry of the Order on the Motion within twenty-one days. A copy of the proposed Order is attached hereto as **Exhibit A**. A copy of the Support Agreement is attached hereto as **Exhibit B**.

2. Material provisions of the Support Agreement are set forth in the following sections of the Support Agreement and/or the Order.

    a. ***Borrower***: Stream TV Networks, Inc. ("Stream" or "Debtor") [Support Agreement, Recitals, page 1].

    b. ***Lender***: Visual Technology Innovations, Inc. ("VTI" or "Payor") [Support Agreement, Recitals, page 1].

    c. ***Facility Amount***: Total commitment of up to the amount of $1,000,000 unless otherwise increased by consent of the Payor in a signed writing (the "Payment Cap"). [Support Agreement, Section 2(a)(1), p. 5]. An initial sum of $200,000.00 in cash will be deposited into the Support Account[1] of the Debtor on or before March 5, 2021, subject to mutual extension thereof (the "**Initial Payment**") upon the request of the Payee from time to time in accordance with the requirements of Section 2(b) of the Support Agreement. [Support Agreement, Section 2(a)(2), Support Obligations and Procedures, p. 5].

    d. ***Interest Rates***: Interest on each Payment shall accrue at six percent per annum [Support Agreement, Section 2(e), Support Obligations and Procedures, p. 6].

    e. ***Payment of Interest***: Interest shall be payable immediately if and to the extent of cash proceeds generated from projects of the Payee and will otherwise accrue until the repayment of the Payments as referenced in Section 2(f) of the Support Agreement.

    f. ***Repayment of Loan***: The repayment to VTI of all the Payments plus any unpaid interest accrued thereon shall be pursuant to the Plan as approved by the Bankruptcy Court, or upon conversion or dismissal of the Bankruptcy Court [Support Agreement, Section 2(f), Support Obligations and Procedures, p. 6].

    g. ***Carve-Outs***: The administrative priority claims granted hereunder to VTI, and any post-petition claims or interests ranking *pari passu* with or junior in priority

---

[1] All terms not defined herein are ascribed the meaning given to them in the Support Agreement

2

122148638_3

    to such claims of VTI shall be subject to payment of the Carve-Outs. As used herein, "Carve-Outs" shall mean (a) a payment of an additional retainer of $100,000 to counsel for the Debtor in the Bankruptcy Case; and (b) fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and to the Clerk of the Bankruptcy Court; provided, that nothing herein shall be deemed as a waiver of the rights of VTI to object to any requests for allowance of any fees or expenses [Support Agreement, Section 1, Definitions, page 4].

h.    *Allowed Professional Fees*: All (a) administrative expenses incurred during the pendency of any Bankruptcy Case that have been allowed by an order of the Bankruptcy Court as well as the payment of an additional retainer of $100,000 to counsel for the Payee in the Bankruptcy Case and (b) other costs and expenses of the Payee incurred during the pendency of any Bankruptcy Case that are necessary or appropriate in the judgment of the Payee's Board, collectively including the costs of administering the Bankruptcy Case and any and all other costs and expenses of the Payee incurred in the normal course of its business during the pendency of the Bankruptcy Case. [Support Agreement, Section 1, Definitions, page 4].

i.    *Use of Proceeds*: The proceeds of the Loan shall be used solely (i) in accordance with the Order, (ii) the payment of any and all costs and expenses of the Payee incurred in the normal course of its business (including, without limitation, the payment of any indemnification or other obligations of the Payee owing to any managers or officers of the Payee) at any time when there is no Bankruptcy Case pending; (iii) the payment of any and all (a) administrative expenses incurred during the pendency of any Bankruptcy Case that have been allowed by an order of the Bankruptcy Court as well as the payment of an additional retainer of $100,000 to counsel for the Payee in the Bankruptcy Case and (b) other costs and expenses of the Payee incurred during the pendency of any Bankruptcy Case that are necessary or appropriate in the judgment of the Payee's Board, collectively including the costs of administering the Bankruptcy Case and any and all other costs and expenses of the Payee incurred in the normal course of its business during the pendency of the Bankruptcy Case; and (iv) the funding of any amounts necessary to cause the Support Account to contain at least $50,000 at all times prior to the effective date of a Plan; in the case of clauses (i) through (iii) above, solely to the extent that any cash distributions theretofore received by the Payee from any Payee Subsidiary are insufficient to pay such costs and expenses and fund such amounts and obligations in full. [Support Agreement, Section 1, Definitions (page 1)].

j.    *Conditions Precedent*: The Payor's obligation to make any Payment is subject to the satisfaction of the following conditions as of the date of the Support Request relating to such Payment: (i) the representations and warranties of the Payee set forth in Section 3 of the Support Agreement shall be true and correct without regard to the impact of any Bankruptcy Case, including any notices or other actions that may be required therein; and (ii) there shall have been no uncured violation by the Payee of the covenants set forth in Section 5 of the Support

3

    Agreement. [Support Agreement, Section 2(d), Support Obligations and Procedures (pages 5-6)].

k.  ***Events of Default***: (a) The Payee defaults in the performance of, or breaches, any covenant or representation or warranty of the Payee in this Agreement and such default or breach continues for a period of five (5) Business Days after there has been given to the Payee by the Payor a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "Notice of Default" hereunder; (b) the Payor defaults in its funding obligations pursuant to Section 2 and such default continues for a period of five (5) Business Days; (c) the Payor defaults in the performance of, or breaches, any covenant or representation or warranty of the Payor in this Agreement (other than a covenant or representation or warranty which is specifically dealt with elsewhere in this Section 6) and such default or breach continues for a period of 90 days, or, in the case of any failure to comply with Section 4(a) of this Agreement, 180 days, in each case after there has been given to the Payor by the Payee a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "Notice of Default" hereunder; (d) the Payor, pursuant to or within the meaning of the Bankruptcy Code or any similar federal or state law for the relief of debtors, (i) commences a voluntary case, (ii) consents to the entry of an order for relief against it in an involuntary case, (iii) consents to the appointment of a custodian of it or for all or substantially all of its property, (iv) makes a general assignment for the benefit of its creditors, or (v) generally is not paying its debts as they become due; and (e) a court of competent jurisdiction enters an order or decree under the Bankruptcy Code or any similar federal or state law for the relief of debtors that (i) is for relief against the Payor in the nature of an exercise of jurisdiction over all or the majority of Payor's assets, (ii) appoints a custodian of the Payor for all or substantially all of the property of the Payor, or (iii) orders the liquidation of the Payor, and, in each case of (i) through (iii) above, such order or decree remains unstayed and in effect for 60 consecutive days. Upon becoming aware of any Default or Event of Default, the Payor or the Payee, as applicable, shall promptly deliver to the Payee [Support Agreement, Section 6 (pages 7-8)].

l.  ***Grant of Security Interest***: None.

m.  ***Roll-up of Pre-petition Debt:*** None.

n.  ***Priority***: The Support Agreement shall constitute allowed administrative expenses in the Bankruptcy Case, pursuant to section 364(b) and 503(b)(1) of the Bankruptcy Code, to the extent set forth in the Order or any subsequent order of the Bankruptcy Court. ***Remedies***: Upon the occurrence of any Event of Default, and at any time thereafter during the continuance of any such Event of Default, the non-defaulting Party may continue to enforce the performance of any provision of this Agreement, as applicable, and the Payee, if a non-defaulting Party may pursue any available remedy to collect any unfunded Payments due and owing to the Payee. [Support Agreement, Section 7 (page 8)].**Jurisdiction**

4

122148638_3

3. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**Background**

6. On February 24, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtor is a debtor-in-possession and remains in possession of its assets. No official committee of unsecured creditors has been appointed.

7. Stream TV was founded in 2009 as a "new media" company to pursue new technologies that enhance user entertainment and communications experiences. The technology that the Company is currently seeking to launch allows TV and tablet manufacturers to convert two dimensional devices into three dimensional ("3D") without the need for viewing glasses.

8. On February 24, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief with the Court under chapter 11 of title 11 of the Bankruptcy Code. The Debtor is a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case (the "Chapter 11 Case") and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

5

122148638_3

9. The Debtor intends to generate revenue from providing 3D components to final market assemblers (such as TV manufacturers and tablet makers). The Debtor views its approach as similar to how major computer manufacturers use processors in their products and note their products as such.

10. The Debtor intends to restructure its debt through this Chapter 11 Case so that its debt service is reduced to a level that will allow the Company to sustain its operations for the long term.

**Relief Requested**

11. The Debtor requests that the Court authorize it to obtain unsecured, administrative priority post-petition financing in the aggregate not to exceed $1,000,000 pursuant to the terms of this Motion, the Support Agreement and the Order. The proposed financing will be provided by VTI.

12. Specifically, the Debtor requests that the Court authorize it to: (i) obtain loans and advances and such other financial accommodations in the initial amount of $200,000, and in aggregate principal amount not to exceed $1,000,000; (ii) enter into the Support Agreement and the agreements and instruments contemplated thereby and to perform such other and further acts as may be required in connection with the Support Agreement, and (iii) grant administrative priority claims to VTI in accordance with the Support Agreement documents and the Order to secure any and all of the Support Agreement obligations; and modify the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and VTI to implement the terms of the Support Agreement Order.

**The Debtor's Current Support Agreement proposal**

13. In the absence of post-petition funding, the Debtor lacks sufficient cash to continue its operations uninterrupted and preserve going concern value.

6

14. Since 2009, the Debtor has raised approximately $150 million from third party investors to help fund its operations. The investments have taken the forms of both debt and equity. The Debtor's senior secured creditor is SLS Holdings VI, LLC ("SLS"). Between 2011 and 2012, SLS loaned $6 million to the Debtor through a series of secured notes (the "SLS Notes"). The Debtor pledged substantially all of its assets and the assets of its wholly owned subsidiaries as security for the SLS Notes.

15. The Debtor's junior secured creditor is Hawk Investment Holdings Limited ("Hawk"). Between 2014 and 2020, Hawk loaned more than £50 million to the Debtor, plus another $1.336 million, through a series of junior secured notes (the "Hawk Notes"). Subject to the senior security interest held by SLS, the Debtor pledged substantially all of its assets as security for the Hawk Notes. The Debtor executed a security agreement in connection with the Hawk Notes.

16. During the early stages of productizing its Ultra-D solution, Stream engaged the engineering services of Intrinysc Technologies Corporation of Canada ("Intrinsyc"). The companies worked closely together on multiple projects spanning several years at a cost of several million dollars. In October 2014, Intrinsyc made a loan in the amount of USD $1.5 million to Stream in exchange for Stream's commitment to place purchase orders with Intrinsyc for guaranteed future work. From 2015 to 2018, the maturity date of the debt was extended multiple times in exchange for Stream warrants. In Spring 2018, knowing that similar conversion agreements were being negotiated with SLS and Hawk, Intrinsyc signed a conversion agreement (the "Intrinsyc Conversion Agreement"), which was executed in May 2018.

17. In 2018, the Debtor entered into an agreement with Hawk, which provided that the Hawk Notes would convert into equity if and when the Debtor raised additional equity capital

7

(the "Hawk Conversion Agreement"). The Debtor and SLS contemporaneously entered into a parallel agreement governing the SLS Notes (the "SLS Conversion Agreement" and collectively with the Hawk Conversion Agreement and the Intrinsyc Conversion Agreement, the "Conversion Agreements"). For purposes of this filing, the Hawk Notes and the SLS Notes are characterized as debt that has not yet been converted pursuant to the Conversion Agreements, although this characterization is disputed by the Debtor. Per the Conversion Agreements, conversion of debt to equity is at the discretion of the Debtor. To date, neither SLS nor Hawk have completed execution of the conversions.

18. Knowing that the Debtor was in need of funds to fund its operations in bankruptcy, the Debtor commenced discussions with VTI, whose principal is Mathu Rajan (who is also the principal of Debtor), regarding the need and possibilities for DIP financing.[2]

19. To facilitate operations of the Debtor and to preserve going concern value pending, VTI has offered to provide the Debtor with a Loan Facility requiring administrative priority claims as referenced in the Support Agreement.

20. The Debtor has reasonably determined that the Loan Facility offered by VTI provides terms most favorable to the Debtor and its estate.

21. In the sound exercise of its business judgment and fiduciary duties, the Debtor has determined to proceed under the Loan Facility offered by VTI.

### The Loan Facility Should Be Authorized

---

[2] VTI is independent of Stream and Stream is and intends to be treated as an entity separate from VTI. The principal of both VTI and Stream is Mathu Rajan, who presently owns or controls approximately 11.5% of VTI but anticipates that amount will exceed 98%. Mathu Rajan also owns 18,200 shares of Stream and is the 40% owner of Akshaya Holdings LLC. Akshaya Holdings LLC is owned by members of the Rajan family and owns approximately 8.78% of Stream.

8

22. Approval of the Loan Facility will provide the Debtor with immediate and ongoing access to borrowing availability to pay its current and ongoing operating expense. Unless these expenses are paid, the Debtor will be forced to discontinue any efforts to operate, which would likely result in irreparable harm to its business and jeopardize the Debtor's ability to reorganize and maximize value for all interested parties.

23. The credit provided under the Support Agreement will enable the Debtor to continue to operate in the ordinary course to preserve the value of the estate while the Debtor pursues its reorganization strategy. The availability of credit under the Support Agreement will provide confidence to the Debtor's creditors that will enable and encourage them to continue their relationships with the Debtor. Accordingly, the timely approval of the relief requested herein is imperative.

24. Section 364(b) of the Bankruptcy Code provides that the court, after notice and a hearing, may authorize the debtor to obtain unsecured credit or unsecured incur debt allowable under section 503(b)(1) as an administrative expense of the estate. 11 U.S.C. § 364(b). The Debtor proposes to obtain the financing set forth in the Support Agreement by providing unsecured administrative priority claims pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code.

25. The Debtor's liquidity needs can be satisfied only if the Debtor is authorized to borrow under the Loan Facility and to use such proceeds to fund its operations. VTI is willing to provide the Loan Facility in exchange for the grant of an administrative priority expense claim pursuant to section 364(b).

26. The Debtor believes it would not be able to obtain post-petition financing or other financial accommodations from any alternative to VTI or on more favorable terms and conditions than those for which approval is sought herein.

27. Bankruptcy courts grant a debtor considerable deference in acting in accordance with its business judgment. *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In re Funding Sys. Asset Mgmt. Corp.*, 72 B.R. 87 (Bankr. W.D. Pa. 1987); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985).

28. Even under an entire fairness standard, see *In re Latam Airlines Grp. S.A.*, 620 B.R. 722, 769 (Bankr. S.D.N.Y. 2020), the instant transaction should be approved as the terms of the arrangement are extremely favorable to the Debtor. Indeed, the financing here is unsecured and the interest rate is relatively modest. In addition, the Debtor does not have many of the stringent requirements placed on a debtor in a more traditional DIP financing arrangement.

29. The Debtor has been unable to procure the funding required to meet its ongoing operational needs absent granting the proposed administrative priority claims as set forth in the Support Agreement. The Debtor submits that the circumstances of this case require the Debtor to obtain financing pursuant to section 364(b) and, accordingly, the Support Agreement reflects the exercise of its sound business judgment.

30. The terms and conditions of the Support Agreement are fair and reasonable and, while they were negotiated with an insider, they are sufficiently favorable to the Debtor under the circumstances that they should be considered to be in good faith. Accordingly, VTI and all obligations incurred under the Support Agreement should be accorded the benefits of section 364(e) of the Bankruptcy Code.

### The Automatic Stay Should Be Modified on a Limited Basis

31. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to: (i) grant the administrative priority claims described above with respect to VTI and to perform such acts as may be requested to assure such priority status; and (ii) implement the terms of the proposed Order.

32. Stay modifications of this kind are ordinary features of post-petition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

### Notice

33. This Motion has been served upon (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for secured creditors believed to be claiming an interest in cash collateral; (c) the Internal Revenue Service; (d) the twenty (20) largest unsecured creditors (by email only);[3] and (e) the Payor. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**; and grant such other and further relief as is just and proper.

---

[3] Many of the twenty largest creditors are foreign entities which would be expensive to serve by mail and would not likely receive the mailings prior to the hearing.

11

Dated: March 1, 2021                    /s/ Martin J. Weis

**DILWORTH PAXSON LLP**
Martin J. Weis (I.D. No. 4333)
One Customs House – Suite 500
704 King Street
P.O. Box 1031
Wilmington, DE 19899-1031
Telephone: (302) 571-9800
Facsimile: (302) 655-1480

-and-

**DILWORTH PAXSON LLP**
Lawrence G. McMichael (*admitted pro hac vice*)
Anne M. Aaronson (*admitted pro hac vice*)
Yonit A. Caplow (*admitted pro hac vice*)
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200

*Proposed Counsel for the Debtor and Debtor in Possession*

12

122148638_3