# **<u>EXHIBIT M</u>**

EFiled: Oct 20 2022 02:32PM EDT
Transaction ID 68282642
Case No. 2022-0930-JTL

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| HAWK INVESTMENT HOLDINGS LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STREAM TV NETWORKS, INC., AND ) <br> TECHNOVATIVE MEDIA, INC. ) <br> ) <br> Defendants. ) <br> ) | C.A. No. 2022-0930-JTL |

## STATUS QUO ORDER

WHEREAS:

A. On October 17, 2022, plaintiff Hawk Investment Holdings, Ltd. filed a Verified Complaint for Declaratory Relief and pursuant to 8 *Del. C.* § 225. Through its action, among other things, Hawk seeks a determination that it has validly exercised its creditor rights to vote the shares of Technovative Media, Inc. (the "Company") and reconstitute its board of directors with Shad Stastney as its sole director.

B. The complaint alleges that the Company has rejected Hawk's position and maintains that Mathu Rajan is the Company's sole director.

C. In conjunction with its complaint, Hawk filed a Motion for Expedited Proceedings, a Motion for Injunction, and an Opening Brief in Support of the Motion for Injunction and Expedited Proceedings.

D. On October 19, 2022, the defendants filed an opposition to the Motion to Expedite.

E.    On October 20, 2022, Hawk provided the court with information indicating that one of the Company's subsidiaries faced a risk of missing payroll because of disputes over control of the Company.

F.    On October 22, 2022, the Court of Chancery heard oral argument on the Motion.

G.    For the reasons discussed during the hearing, the defendants' grounds for opposing expedition are meritless.

H.    As in most Section 225 actions, a status quo order is warranted, but Hawk's proposed injunction is not appropriate. It goes too far in granting relief.

**NOW, THEREFORE, THE COURT FINDS AND ORDERS AS FOLLOWS:**

1.    A bona fide dispute exists over the composition of the board of directors of the Company (the "Board").

2.    Section 225 exists to address precisely this type of dispute. It is a specialized, summary proceeding under Delaware law designed to determine, among other things, who holds office as a director of a Delaware corporation.

3.    A Section 225 proceeding is an *in rem* proceeding, because the Delaware corporation is a *res* over which this court can exercise jurisdiction. *Genger v. TR Invs., LLC*, 26 A.3d 180, 200 (Del. 2011). More precisely, when a Section 225 action seeks to adjudicate the status to director and officer positions at a Delaware corporation, the director and officer positions constitute a *res* over which this court can exercise *in rem* jurisdiction. *Id.* at 199–200 (noting that defendants in a Section 225 action appear "not individually, but

rather as respondents being invited to litigate their claims to the *res* (here, the disputed corporate office) or forever be barred from doing so"); *see Feeley v. NHAOCG, LLC*, 2012 WL 966944, at *5 (Del. Ch. Mar. 20, 2012) (discussing analogous provision of Delaware Limited Liability Company Act).

4.  This court takes jurisdiction over the *res* consisting of the director positions at the Company. This court will adjudicate the claims that Hawk has advanced, which bear on the determination of entitlement to the *res* and are necessary to decide that issue. *See Kahn Bros. & Co. v. Fishbach Corp.*, 1988 WL 122517, at *5 (Del. Ch. Nov.15, 1988) ("[T]he question whether an issue is properly litigable in a Section 225 action turns . . . upon a determination of whether it is necessary to decide in order to determine the validity of the election or designation by which the defendant claims to hold office."). This court commonly addresses the consequences that other agreements have on the outcome of director elections or removal efforts, including arguments about the validity of those agreements. *See id.* (collecting cases).

5.  This court customarily enters an interim status quo order in a Section 225 proceeding that limits the entity to operating in the ordinary course of business. *See, e.g., Klaassen v. Allegro Dev. Corp.*, 2013 WL 5967028, at *2 (Del. Ch. Nov. 7, 2013); *Arbitrium (Cayman Islands) Handels AG v. Johnson*, 1994 WL 586828, at *3 (Del. Ch. Sept. 23, 1994). The grounds for that relief are well understood and need not be repeated. Those reasons apply in this case.

3

6. Accordingly, pending further order of the court, the Company shall operate only in the ordinary course of business.

7. The following actions are outside the ordinary course of business. The Company may not take any of the following actions without leave of court, and the parties and anyone acting in conjunction with them are enjoined from taking or purporting to cause the Company to take any of the following:

(a) any action that would require the consent, approval or vote of the Board or the Company's stockholders;

(b) any action that would result in any change to the size or composition of the Board;

(c) any action that would result in the termination, suspension, or modification of the employment status or terms of employment of any officer of the Company;

(d) any action that would result in the hiring of any new officer of the Company or its subsidiaries;

(e) any action that would result in the appointing any new director of the Company or its subsidiaries;

(f) the issuing, selling, distributing, authorizing, establishing, creating, changing, or disposing of any securities of, or interest in securities of, the Company;

(g) the authorizing, entering into any contract or arrangement or otherwise binding the Company, directly or indirectly, to sell, transfer, contribute, or

4

otherwise dispose of, pledge, materially encumber or otherwise materially restrict or limit any interest in the Company, or any asset (whether tangible or intangible) in which the Company has an interest, except in the ordinary course of business;

(h) modifying, amending, or abandoning any contract or arrangement to which the Company is currently a party, except in the ordinary course of business;

(i) authorizing, issuing, incurring, or assuming new debt or changing the terms of the Company's debt, except in the ordinary course of business;

(j) undertaking, authorizing, approving, or directing any action in furtherance of a merger, consolidation, liquidation, dissolution, winding-up, or restructuring of the Company, a sale, transfer, exclusive license, or other disposition of all or substantially all of the assets of the Company;

(k) undertaking, authorizing, approving or directing any action in furtherance of amending, altering, modifying, repealing, or adopting any provision of the By-laws or the Certificate of Incorporation of the Company;

(l) making, or directing any person to make, changes to the contents of the Company's website;

(m) declaring any dividend or distribution with respect to the common stock of the Company;

(n) filing a bankruptcy petition or acquiring or selling any business or operation of the Company, whether by merger, purchase of assets or equity interest, or otherwise;

5

(o) entering into any legally binding commitment with respect to, or agreeing to do, any of the foregoing, except to the extent required by an existing contract or applicable law; or

(p) advancing or otherwise using any funds of the Company or its subsidiaries to pay the fees or expenses (including but not limited to attorneys' fees) of a party in this action.

8. The following actions fall within the ordinary course of business. The Company and its subsidiaries may take any of the following actions:

(a) payment of payroll, including standard employee benefits;

(b) payment of recurring costs related to operating infrastructure including rent, information systems and technology, and utilities;

(c) payment of fees and expenses to professional advisors related to Company business and unrelated to this action, including without limitation, corporate attorneys' and accountant fees;

(d) maintenance and update of Company systems; and

(e) service to existing clients, and solicitation and onboarding of new clients.

9. The parties shall not knowingly tamper with, destroy, relocate, or discard any documents or electronic data in their possession, custody, or control relating in any way to the matters alleged in the complaint. Nothing herein shall waive any parties' right to attorney-client or work product protections and privileges.

10. In this action, the court believes that a status quo order, standing alone, is insufficient to ensure that the Company operates in the ordinary course of business pending the outcome of this proceeding. This action is part of a larger dispute between Stream TV Networks, Inc. and its secured creditors. The court is familiar with the parties as a result of having presided over aspects of the larger dispute, including in C.A. No. 2020-0766-JTL. The parties have had numerous disputes, and the court expects those disputes to continue. It is highly likely that those disputes will interfere with the Company's ability to operate in the ordinary course, which creates a threat of irreparable harm to the Company. It is highly likely that those disputes will impose a significant burden on the court.

11. Accordingly, in addition to imposing a status quo order, the court is appointing Ian Liston of Wilson, Sonsini, Goodrich & Rosati P.C. as receiver pendente lite (the "Receiver").

12. The Receiver shall take charge of the Company and ensure that it operates in the ordinary course of business and in conformity with this order.

13. Pending further order of this court, the Receiver shall exercise (i) all of the power and authority afforded to the Board under Section 141 of the Delaware General Corporation Law and (ii) all of the power and authority afforded to a receiver appointed under Section 279 of the Delaware General Corporation Law. The court will enter a separate order elaborating on the Receiver's authority.

14. The parties and their respective affiliates, directors, agents, employees, attorneys, and any other person acting in concert with them shall cooperate fully with the

Receiver to assist the Receiver in ensuring that the Company continues to operate in the ordinary course of business, but only in the ordinary course of business.

15. The appointment of the Receiver displaces the ability of the parties to cause the Company to take actions outside of the ordinary course of business. Nevertheless, the restrictions are salutary and provide an additional layer of protection.

16. This order applies to the parties and their respective affiliates, directors, agents, employees, attorneys, and any other person acting in concert with them.

17. To the extent that any party contends that another party has failed to comply with the requirements under this order, or that exigent circumstances require that this order be modified or vacated for good cause, that party shall give notice to the Receiver. With the Receiver's assistance, the parties shall attempt to negotiate a resolution in good faith. If no resolution has been reached within five days, the party who served the notice may file a motion seeking relief from the court. The parties will brief the motion on an expedited basis. The parties should expect the court to ask the Receiver for input on how to resolve the dispute.

18. Nothing in this order shall waive, modify, relinquish or otherwise affect any claim or defense filed or asserted by any party in connection with this action.

19.     The provisions of this Order may be amended on a case-by-case basis by written agreement of the parties and the Receiver. As with all orders, the Court can modify this one for good cause shown.

_____
Vice Chancellor J. Travis Laster
October 20, 2022