# **EXHIBIT O**

EFiled: Feb 06 2023 11:09AM EST
Transaction ID 69077192
Case No. 2022-0930-JTL

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HAWK INVESTMENT HOLDINGS LTD., | : | |
| Plaintiff, | : | C.A. No. 2022-0930-JTL |
| | : | |
| v. | : | |
| | : | |
| STREAM TV NETWORKS, INC. and TECHNOVATIVE MEDIA INC., | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT[1]

### INTRODUCTION

1.    Stream does not consent to Hawk's Motion to File An Amended Complaint ("Motion"), per Ch. Ct. R. 15(b).

2.    The Motion presents Hawk abandoning its stated claims and theory of the case in the Complaint it actually filed, after the close of written discovery and third party discovery, in an inexplicably belated effort to follow along with the Court's novel standing interpretation of 8 *Del. C.* § 225 ("Section 225") made last November.  That gambit is not supported by Rule 15(b), the only proffered basis for the Motion.  It further is unduly prejudicial to abandon the Complaint's theory of this contract case to litigate a different set of contractual instruments not mentioned

---

[1] Capitalized terms have the meanings ascribed in the parties' motion to dismiss briefing and throughout the long course of this litigation, unless otherwise defined herein.

in the Complaint at all, upon which no discovery has been taken, entered at different times with different non-present parties, and conferring different rights and obligations, after all discovery except party depositions is closed, and six weeks before a summary trial.

3.    The case that Hawk chose to file is based entirely on the validity of a certain October 17, 2022 document cited as the October Marshalling Directive. "October Marshalling Directive"). (Compl., Ex. C; Compl. ¶7). The October Marshalling Directive in turn asserts that Hawk owns the former Hawk debt, holds the right to enforce the former Hawk Pledge Agreement, and therefore holds the right to vote the shares of Technovative to elect its directors. Had those allegations been true, it would have been a fairly straightforward complaint to enforce a *specific* Pledge Agreement via a *specific* UCC procedure that had already occurred, through invocation of Section 225.[2] The Complaint does not mention SLS or its former debt at all, even once.

4.    The problem was that Hawk's Section 225 allegations were knowingly false. Though conspicuously omitted from the Complaint, it is now conceded that Hawk assigned 100% of its rights in the former Hawk debt including the former

_____

[2] Indeed, the Complaint as written was the Court's idea rather than Hawk's or SeeCubic's. The Court *sua sponte* laid out the litigation strategy it recommended that Hawk pursue during a September 21, 2022 hearing on Stream's motion to enforce the final judgment in the parallel SeeCubic case, without any suggestion by Hawk or SeeCubic that Section 225 was invoked.

Hawk Pledge Agreement to SeeCubic, including each and every enforcement right thereunder, without reservation of any right whatsoever.  If "Hawk" wins this case, then SeeCubic, not Hawk, receives the shares of Technovative.

5.      Hawk now asks the Court to reward its duplicitous failure to put the contracts that control the case into its Complaint, and after discovery to boot.  The Motion proposes a new complaint grounded on a legal theory that SeeCubic may deputize Hawk as a collateral agent to enforce <u>any</u> SeeCubic contractual debt claim against Stream qua Section 225, including claims that have nothing to do with the former Hawk debt, in which Hawk never had any independent interest, and which have been affirmatively litigated by their actual holders in other forums.

6.      The Court did not opine on such a wild expansion of Section 225.  The plain text of Section 225 does not contemplate a creditor deputizing any old stockholder without any interest in the underlying debt contract to sue as a strawman plaintiff agent for an undisclosed principal on contracts omitted from the Complaint. Such a ruling would write the words "any stockholder" out of the statute entirely.

7.      The Court need not turn a blind eye to what is really occurring here. Stream converted the former Hawk debt.  Hawk will lose its current claims at trial,

and knows it.  The proposed amendment therefore tries to inject different former SLS debt contracts into the case, in the hope of a different contractual result.[3]

8.    A plaintiff is master of its complaint.  Hawk and SeeCubic are represented by skilled counsel.  Hawk could have pled its new collateral agent theory or the SLS contracts as the basis for its Complaint, rather than its disingenuous theory that Hawk did not unreservedly assign away the former Hawk debt.  The Court should not keep rescuing these well-represented creditors from their repeated failures to plead winning, or even factually grounded, claims.  Stream's defense is grounded upon defending Hawk's stated claim that Hawk owns the right to vote Technovative's shares based upon the former Hawk debt, which actually no longer exists.  Stream is entitled to defend the case as Hawk chose to plead it, and would be unfairly prejudiced in defense of a wholly different contract case.

## **LEGAL STANDARDS**

9.    Court of Chancery Rule 15(b)[4] states:

> Amendments to conform to the evidence. -- *When issues not raised by the pleadings are tried by express or implied consent of the parties*, they shall be treated in all respects as if they had been raised in the pleadings.  Such

---

[3] The gambit also seeks to extract the SLS claims from proper Superior Court jurisdiction, where Judge Johnston easily saw through the creditor's bad faith engineering of various false default events.

[4] Stream believes that Rule 15(b) is procedurally the wrong rule for this motion, but perhaps it was chosen by Hawk to avoid unfavorable timeliness and prejudice analysis under Rules 15(a) or (d).

amendment of the pleadings as may be necessary to cause
them to conform to the evidence and to raise these issues
may be made upon motion of any party at any time, even
after judgment; but failure so to amend does not affect the
result of the trial of these issues. *If evidence is objected to
at the trial on the ground that it is not within the issues
made by the pleadings*, the Court may allow the pleadings
to be amended and shall do so freely when the presentation
of the merits of the action will be subserved thereby and
the objecting party fails to satisfy the Court that the
admission of such evidence would prejudice the party in
maintaining an action or defense upon the merits. The
Court may grant a continuance to enable the objecting
party to meet such evidence.

Ct. Ch. R. 15(b) (emphasis added).

10.     Rule 15(b) has two parts, which the Court of Chancery reads separately.

Hawk moves pursuant to the first part that "authorizes amendment of the pleadings

to conform to issues tried by express or implied consent of the parties." *Those

Certain Underwriters at Lloyd's v. Nat'l Installment Ins. Servs., Inc.*, 2008 WL

2133417, at *9 (Del. Ch. May 21, 2008) (quotations omitted).  This requires a

showing that the parties consented, either explicitly or implicitly, to the introduction

of evidence of the unpled issue.  *Id.*  In this context, "Rule 15(b) is designed to cure

the situation where the course of the trial departs so materially from the image of the

controversy pictured in the pleadings or by the discovery process that it becomes

necessary to adjust the pleadings to reflect the case as it actually was litigated in the

courtroom." *Id.* (quotations omitted).[5]  Hawk does not move pursuant to the second

part of Rule 15(b).

## **ARGUMENT**

Hawk's Proposed Amendment Seeks to Add New and Irrelevant Matter

11.     The Proposed Amendment seeks to enforce rights under the SLS Notes,

which were neither attached to, nor discussed in, the Complaint.  Further, the SLS

Notes were not cited by Hawk in the October Marshalling Directive as a basis for its

right to take the shares of Technovative.  (Compl., Ex. C).  Thus, these agreements

have not been a part of this case, and are irrelevant to the rights Hawk seeks to

enforce.

12.     The parties have not acted as if (not present) SeeCubic's alleged rights

under the (not present) SLS Notes are in this case.  Stream did not seek discovery

from SLS in the second phase of discovery, and SLS did not produce any discovery

during the second phase of this case.  Stream neither sought nor received discovery

relating to the SLS Notes because the SLS notes have never been cited as grounds

for relief by the plaintiff in this case.

13.     Consistently, Hawk's original interrogatory responses, served on

December 19, did not mention the SLS Notes at all.  It wasn't until Hawk provided

---

[5] The second half of Rule 15(b) only applies where "evidence is objected to at trial,"
and is therefore inapplicable here.

its Second Supplemental Interrogatory Responses on January 19, 2023, that Hawk first formally stated a new theory that Hawk (rather than SLS or SeeCubic) holds the right to enforce the SLS Notes.[6]  (Ex. A).  Prior to a January 12, 2023, meet and confer, there was no indication from Hawk that it was seeking to enforce any rights under the SLS Notes in this case.

14.     Simply put, the SLS Notes have not been a part of this case because Hawk did not seek to enforce any rights in the SLS Notes until mid-January, three months after filing its Complaint, two months after the Court issued the Collateral Estoppel Opinion that supposedly gives rise to this new theory, at the document production deadline, and only weeks before the close of fact discovery.

<u>Hawk Cannot Amend Pursuant to Rule 15(b) Because Stream did not Consent to the Amendment</u>

15.     Hawk seeks to amend its Complaint pursuant to the first part of Rule 15(b), under which "the parties must consent, explicitly or implicitly, to the introduction of evidence of the unpleaded issue." *Lloyd's,* 2008 WL 2133417, *at *9.*[7]

---

[6] Despite multiple requests, Hawk has still not verified these responses.

[7] Hawk chose to move only under Rule 15(b), and thus an analysis under Rules 15(a) or (d) are unnecessary.  However, had Hawk chose to move under those Rules, the Motion should still be denied because the Proposed Amendment creates undue prejudice to Stream.

16.    Hawk does not argue that Stream has consented to the Proposed Amendment.  Stream does not and has not consented, and Hawk's Motion should be denied for that reason alone.  Indeed, Hawk admits that Stream affirmatively opposed the Amendment "several times."  (Motion at ¶6).  Therefore, there is no argument that Stream expressly consented to the Proposed Amendment.

17.    Nor did Stream implicitly consent.  "Implied consent generally arises in two situations: (1) where unpleaded issues are introduced outside the complaint in another pleading or document and then treated by the opposing party as if pleaded; or (2) where the opposing party acquiesced to the introduction of evidence that related only to the unpleaded issue." *Lloyds*, 2008 WL 2133417, at *9.  Here, Hawk incorrectly argues that the unpleaded issue was raised in the Collateral Estoppel Decision.  (Motion at ¶3).  Putting aside the fact that the Court's Opinion did not automatically make SLS's rights under the SLS Notes a part of this case, after the Collateral Estoppel Decision, neither party proceeded as if the Proposed Amendment was a part of this case until Hawk served its Second Supplemental Responses to Interrogatories on January 20.  Stream did not seek discovery from SLS, and SLS did not provide discovery. And Hawk's original Interrogatory Responses, served on December 19, 2022, did not mention the SLS Notes, only Hawk's Second Supplemental Responses that were served on January 20.

18.     Accordingly, Stream did not take any discovery of or relating to SLS during the second phase of the case, and further did not search for or produce documents related to SLS.  Indeed, Stream expressly objected to search terms related to SLS on the grounds that nothing related to SLS was relevant to the narrow scope of this 225 Action, and Hawk did not challenge that objection.  (Ex. B).  Stream similarly has not acquiesced to the introduction of any evidence by Hawk related to the SLS Notes.

<u>The Proposed Amendment Unduly Prejudices Stream</u>

19.     While lack of consent alone is all that is required to deny amendment under the applicable portion of Rule 15(b), the Court of Chancery has repeatedly held that discretion also cannot be exercised to allow amendment upon a showing of prejudice.  *See Lillis v. AT&T Corp.*, 2007 WL 2110587, at n. 54 (Del. Ch. July 20, 2007) (citing *Norberg v. Security Storage Co*., 2000 WL 1375868, at *5 (Del. Ch. Sept. 19, 2000) ("It is within my discretion to allow the pleadings to be amended to reflect any new issues not asserted in the pleadings so long as the responding party is not prejudiced by its admission.")); *Cantor Fitzgerald, L.P. v. Cantor*, 1999 WL 413394, at *2 (Del. Ch. June 15, 1999) (Rule 15(b) "allows this Court to deem a complaint amended to conform to the evidence in the absence of prejudice."); *Nufarm v. RAM Research*, 1998 WL 668648, at *3 (Del. Ch. Sept. 15, 1998); *see*

9

*also Vichi v. Koninklijke Philips Elecs*, N.V., 85 A.3d 725 at n. 230 (Del. Ch. Feb.

18, 2014) (prejudice as additional consideration under federal version of Rule 15(b)).

20.    Here, the Motion should also be denied because allowing the Proposed

Amendment would unfairly prejudice Stream, and because Hawk has delayed in

moving for the Proposed Amendment.

21.    First, Stream's legal strategy in this case is based on the fact that

Hawk's efforts to appoint the sole director of Technovative are ineffective because

Stream converted the debt underlying the Hawk Notes to equity pursuant to the

Conversion Agreements.   There is no former Hawk debt left to enforce.

22.    The Hawk note contractual conversion process obviously does not

apply to the different SLS notes.   Thus, Stream has not had the opportunity to

develop a legal strategy relating to the SLS Notes, and did not have an opportunity

to pursue discovery relating to the SLS Notes. *See Lloyds*, 2008 WL 2133417, at *9

(denying amendment in part because the nonmoving party might have proceeded

differently had the proposed amendment been a part of the case from the start).

23.    Second, Stream faces prejudice because SLS is already enforcing its

rights under the SLS Notes.  SLS previously filed an action in the Delaware Superior

Court on March 23, 2020 (the "Foreclosure Action").   In the Foreclosure Action,

SLS seeks Replevin of Collateral, including rights under the Pledge Agreements

where Stream and Technovative pledged their interests in Technovative as security

for the SLS Notes.  *See id.*, at *8 (noting that a prior lawsuit included claims sought to be added in Delaware litigation post-trial and that failure to add claims in Delaware was "purposeful").

24.    Finally, Stream is prejudiced because it did not take discovery from SLS during the second phase of the 225 Action.  The deadline to serve third party discovery was December 20, 2022, the deadline to produce documents was January 18, 2023, and discovery is set to close on February 10.  Allowing the Proposed Amendment robs Stream of the ability to take additional discovery to defend against a different suite of contract allegations and is highly prejudicial.[8]

25.    Further, Hawk has unnecessarily delayed in this expedited case.  Hawk waited more than two months from the Court's Collateral Estoppel Decision before seeking the Proposed Amendment, and did nothing at all until mid-January to signal its position that the SLS Notes were relevant.  The Complaint is devoid of any mention of the SLS Notes, much less enforcing the rights associated with the SLS Notes, and thus Hawk should have moved sooner.  Indeed, Hawk did not include the

---

[8] Stream opposes trial delay.  As the Court has already ruled, the point of a Section 225 summary proceeding is to remove clouds upon the right to act for a Delaware corporation.  Stream has rightfully owned all of Stream's subsidiaries since the Delaware Supreme Court's opinion in June 2022, but has been wrongfully denied the use of assets held within those subsidiaries throughout the eight months that have since elapsed, as the former creditors continue their rear-guard attempts to usurp Stream's property.  Stream wants undisputed control of and title to Stream's property with a clear and final ruling of this Court in March 2023.

SLS notes in its original interrogatory responses, signaling Hawk's understanding that the SLS Notes were not a part of this case.

<u>The Court Did Not Rule that Hawk Could Enforce SLS's Notes</u>

26.    Contrary to Hawk's assertion, the Collateral Estoppel Decision did not state that Hawk can enforce rights under the SLS Notes as Collateral Agent for SeeCubic in the current 225 Action.  To the contrary, the Court expressly stated that "Hawk had the power to exercise SeeCubic's rights under the Assignment Agreement by enforcing the Hawk Pledge Agreements."  *Hawk Inv. Holdings Ltd. v. Stream TV Networks, Inc.*, 2022 WL 17258460, at *11 (Del. Ch. Nov. 29, 2022).  The Court never stated that Hawk can enforce any of SLS's rights in this 225 Action, or that this 225 Action includes any claim by Hawk to enforce SLS's rights.  *Id.* at *1 ("Hawk claims that it validly exercised its rights under the pledge agreements to remove Mathu and elect Shad L. Stastney as the sole director of the Company.  Hawk filed this action under Section 225 of the [DGCL] to obtain a determination that Stastney was validly elected as the Company's sole director.").  The Court did not put the former SLS notes into this case unprompted, Hawk did not ask, and Stream certainly did not consent.

## **CONCLUSION**

27.    Hawk and SeeCubic chose to file this action upon a singular assertion that Hawk owned rights in the former Hawk debt sufficient to seize Technovative's

shares and vote its directors under Section 225. That litigation strategy had the obvious value of dressing undisclosed principal SeeCubic's rights in a different costume, as a ruse to further thwart final judgment in the parallel SeeCubic case. But the strategy also had a cost: the former Hawk debt was a weak foundation for any creditor claim, and all rights thereunder have since been eliminated entirely. Belatedly understanding that reality, SeeCubic (the real party in interest) directed Hawk to ask the Court for yet another do-over to advance yet another seriatim legal theory it could have pursued months ago, but tactically eschewed. Rule 15(b) does not support that sort of gamesmanship.

28.    For all the reasons stated above, Stream respectfully requests that the Court deny the Motion.

Dated:  February 6, 2023

**McCARTER & ENGLISH, LLP**

*/s/ Brian R. Lemon*
Andrew S. Dupre (No. 4621)
Brian R. Lemon (No. 4730)
Stephanie H. Dallaire (No. 5184)
Travis J. Ferguson (No. 6029)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
Tel.:  (302) 984-6300
Fax:  (302) 984-6399

*Attorneys for Defendants Stream TV
Networks, Inc. and Technovative
Media Inc.*

**WORDS: 2,986**

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2023, I caused a true and correct copy of

the foregoing **Defendants' Opposition to Plaintiff's Motion for Leave to File**

**Amended Complaint** to be served via File & Serve*Xpres*s on the following

counsel of record, or in the manner so indicated:


Steven L. Caponi, Esquire
Matthew B. Goeller, Esquire
Megan E. O'Connor, Esquire
K&L GATES LLP
Courthouse Square
600 N. King St., #901
Wilmington, DE  19801

Ian R. Liston, Esquire
WILSON SONSINI GOODRICH &
ROSATI
222 Delaware Avenue
Suite 800
Wilmington, DE 19801-5225


*/s/ Brian R. Lemon*
Brian R. Lemon (No. 4730)

EFiled:  Feb 06 2023 11:09AM EST
Transaction ID 69077192
Case No. 2022-0930-JTL

# EXHIBIT A

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| HAWK INVESTMENT HOLDINGS LTD., | C.A. No. 2022-0930-JTL |
| Plaintiff, | |
| v. | |
| STREAM TV NETWORKS, INC. and TECHNOVATIVE MEDIA INC., | |
| Defendants. | |

## PLAINTIFF'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Court of Chancery Rules 26 and 33, Plaintiff Hawk Investment Holdings Ltd. ("Hawk"), by and through their undersigned counsel, hereby supplement their responses and objections to Defendants Stream TV Networks, Inc. ("Stream") and Technovative Media Inc.'s ("Technovative," and collectively with Stream "Defendants") First Set of Interrogatories directed to Plaintiff (the "Interrogatories," and each an "Interrogatory"). Nothing herein shall be construed as an admission by Hawk concerning (i) the existence or nonexistence of any information or documents, (ii) the relevance or admissibility of any information or documents, or (iii) the truth or accuracy of any statement in the Interrogatories.

## <u>GENERAL OBJECTIONS</u>

Plaintiff incorporates the General Objections and Specific Objections to the Definitions and Instructions set forth in Plaintiff's Responses and Objections to Defendants' First Set of Interrogatories served on December 19, 2022.

## **SUPPLEMENTAL RESPONSES AND OBJECTIONS<br>TO SPECIFIC INTERROGATORIES**

### <u>Interrogatory Number 7</u>

For each of the Notes, identify the following:  (i) the principal amount due, (ii) the amount of actual cash received, (iii) the time period during which interest accrues, (iv) the total amount of interest due, (v) the total amount of penalties due, and (vi) the total amount due.

### <u>RESPONSE:</u>

Hawk initially objected to this Interrogatory as vague as to item (ii), as it does not specify whether it refers to cash received by Hawk or funded by Hawk.  At the parties' meet and confer on January 2, 2023, Defendants' counsel clarified that Defendants seek the amount of cash actually received by Stream, and funded by Hawk, under each of the Hawk Notes.  Thus, for purposes of this response, Hawk responds as though the interrogatory requests the amount of cash funded by Hawk and actually received by Stream pursuant to each Note.  Subject to and without waiver of the foregoing objections, and as further explained in Hawk's response to

2

Interrogatory No. 8, the current amounts due as of December 15, 2022 are as set forth below.  All amounts in clause (i) represent the initial face amount of the applicable Note (which, for Notes marked with * include certain pre-agreed interest accrual amounts as discussed in the response to Interrogatory No. 8), and interest accruals reflected in clause (iv) include interest that has compounded and has been added to the principal amount of the applicable Note during its term in accordance with the terms of the applicable Note.  See Annex 1 for a breakdown of the current balances that are accruing interest.

- Note 1:  (i) £6,000,000.00, (ii) £3,960,000.00, (iii) since March 26, 2014,* (iv) £16,970,064.28, (v) $0.00, and (vi) £22,970,064.28.

- Note 2:  (i) £3,000,000.00, (ii) £2,039,500.00, (iii) since October 15, 2014,* (iv) £6,625,161.49, (v) $0.00, and (vi) £9,625,161.49.

- Note 3:  (i) £8,000,000.00, (ii) £5,280,000.00, (iii) since January 2, 2015,* (iv) £16,362,936.73, (v) $0.00, and (vi) £24,362,936.73.

- Note 4:  (i) £8,000,000.00, (ii) £5,360,000.00, (iii) since August 6, 2015,* (iv) £13,111,289.34, (v) $0.00, and (vi) £21,111,289.34.

- Note 5:  (i) £5,000,000.00, (ii) £3,961,500.00, (iii) since October 12, 2015,** (iv) £9,244,551.27, (v) $0.00, and (vi) £14,244,551.27.

- Note 6:  (i) £3,000,000.00, (ii) £1,980,000.00, (iii) since February

15, 2016,* (iv) £3,974,369.09, (v) $0.00, and (vi) £6,974,369.09.

- Note 7: (i) £3,500,000.00, (ii) £2,310,000.00, (iii) since July 8, 2016,* (iv) £3,898,963.62, (v) $0.00, and (vi) £7,398,963.62.

- Note 8: (i) £2,500,000.00, (ii) £1,650,000.00, (iii) since September 27, 2016,* (iv) £2,509,823.04, (v) $0.00, and (vi) £5,009,823.04.

- Note 9:  (i) £650,000.00, (ii) £429,000.00, (iii) since May 3, 2017,* (iv) £479,497.75, (v) $0.00, and (vi) £1,129,497.75.

- Note 10: (i) £3,500,000.00, (ii) £2,310,000.00, (iii) since December 11, 2017,* (iv) £2,426,257.02, (v) $0.00, and (vi) £5,926,257.02.

- Note 11: (i) £600,000.00, (ii) £396,000.00, (iii) since July 3, 2018,* (iv) £346,521.28, (v) $0.00, and (vi) £946,521.28.

- Note 12: (i) £1,250,000.00, (ii) £825,000.00, (iii) since December 6, 2018,* (iv) £545,525.38, (v) $0.00, and (vi) £1,795,525.38.

- Note 13: (i) £3,000,000.00, (ii) £1,980,000.00, (iii) since July 2, 2019,* (iv) £1,024,457.97, (v) $0.00, and (vi) £4,024,457.97.

- Note 14: (i) $770,000.00, (ii) $700,000.00, (iii) since September 18, 2019, (iv) $473,531.09, (v) $0.00, and (vi) $1,243,531.09.

- Note 15: (i) £2,000,000.00, (ii) £1,710,000.00, (iii) since October 3, 2019,** (iv) £763,143.23, (v) $0.00, and (vi) £2,763,143.23.

4

- Note 16: (i) £600,000.00, (ii) £513,000.00, (iii) since January 16, 2020,** (iv) £201,223.07, (v) $0.00, and (vi) £801,223.07.

- Note 17A: (i) €183,601.19, (ii) €154,225.00, (iii) since February 26, 2020,** (iv) €75,253.62, (v) $0.00, and (vi) €258,854.81.

- Note 17B: (i) $382,757.14, (ii) $321,000.00, (iii) since February 26, 2020,** (iv) $146,828.47, (v) $0.00, and (vi) $529,585.61.

In response to clause (ii), Hawk has not received any cash payments from Stream or any other person in respect to the Notes.

While this Interrogatory does not request information related to the SLS Notes[1] and therefore no further response is needed, that information would be irrelevant in any event. For the reasons described in the response to Interrogatory Number 11 below, the SLS Notes cannot be converted.

**Interrogatory Number 11**

Assuming that the Conversion Notices properly converted all debt owed by Stream to equity, (i) identify the number of shares of Stream's stock to which You contend You are entitled to receive as a result of this debt conversion, and (ii) state whether You intend to transfer or assign those shares to SeeCubic.

---

[1] The SLS Notes, executed by and between Stream and SLS Holdings VI, LLC ("SLS"), were produced in this Action at HAWK-003652 through HAWK-003688.

**RESPONSE:**

Hawk objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the work product privilege, and/or any other applicable privilege. Hawk further objects to this Interrogatory as overbroad and unduly burdensome and neither relevant nor proportional to the needs of this case to the extent it requires Hawk to speculate about future events that may or may not occur. Hawk further objects to this Interrogatory on the basis that it lacks knowledge or information sufficient to meaningfully respond to this Interrogatory. Subject to and without waiver of the foregoing objections, Hawk responds as follows:

Hawk reiterates that none of the Notes have been converted, and all remain outstanding in the amounts set forth in Hawk's response to Interrogatory No. 7, and continue to accrue interest and remain in default.

By way of further response, the Conversion Agreement expressly contemplates that Notes 1 through 10 may be converted pursuant to the terms of the Conversion Agreement. Notes 11 and 12 include provisions stating that they are subject to conversion pursuant to the terms of the Conversion Agreement. Notes 13 and 14 are not subject to conversion because both Notes expressly state in Section 15 therein that "no conversion rights are granted to the holder under this Note." In addition, Notes 15 and 16 cannot be converted because they do not state that they

are subject to conversion pursuant to the terms of the Conversion Agreement.  Note 17 is subject to conversion because it does contain a provision stating that it is subject to conversion pursuant to the terms of the Conversion Agreement.

In addition, the SLS Notes which Hawk is enforcing as Collateral Agent for SeeCubic are also not subject to conversion. In 2018, SLS and Stream entered into the SLS-Stream Conversion Agreement.[2] Pursuant to the SLS-Stream Conversion Agreement, the SLS Notes were subject to conversion in certain circumstances. However, the SLS-Stream Conversion Agreement terminated by its own terms (*see* Section 12 therein) when the Conversion Agreement between Stream and Hawk was amended.  Therefore, the SLS Notes are no longer subject to conversion.

As stated in its objections, and assuming *arguendo* that all of the Notes are subject to conversion, Hawk lacks sufficient information to meaningfully respond to this Interrogatory.  For example, Hawk has not been provided information substantiating that the prerequisites for a "conversion event" occurred.  Furthermore, pursuant to Section 2 of the "Notes 1 Through 10 – May 2018 Agreement" between Stream and Hawk, dated January 28, 2018 (as amended, the "Conversion Agreement"), upon a conversion event Stream is required to provide a valuation that would be used to determine an agreed upon conversion ratio, together with evidence

---

[2] The SLS-Stream Conversion Agreement was produced in this Action at HAWK-003647 through HAWK-003651.

of a new cash equity financing, and the class, type and terms of any securities issued in connection therewith.  To date, Stream has not provided any such information as required under the Conversion Agreement.  By way of further response, Hawk lacks access to documents sufficient to construct an accurate picture of Stream's financial position, has not been provided an accurate current capitalization table for Stream, and lacks information necessary to construct a proper valuation of Stream from which a conversion ratio could be developed.

Dated: January 19, 2023                    **K&L GATES LLP**

                                           */s/ Steven L. Caponi*
                                           Steven L. Caponi (No. 3484)
                                           Matthew B. Goeller (No. 6283)
                                           Megan E. O'Connor (No. 6569)
                                           600 N. King Street, Suite 901
                                           Wilmington, DE 19801
                                           Phone: (302) 416-7080
                                           steven.caponi@klgates.com
                                           matthew.goeller@klgates.com
                                           megan.oconnor@klgates.com

                                           *Attorneys for Plaintiff*

# EXHIBIT B

| | |
|---|---|
| **From:** | Lemon, Brian |
| **Sent:** | Friday, January 13, 2023 1:31 PM |
| **To:** | 'Warns, Tom A.'; Dallaire, Stephanie; Caponi, Steven L. |
| **Cc:** | Goeller, Matthew B.; O'Connor, Megan E. |
| **Subject:** | RE: Hawk/Stream 225 - meet and confer |

Hi Tom,

Stream will run the terms associated with VTI, VS, and GFT, and will produce any relevant documents found.

Stream disagrees that the Court's decision on standing stated that Hawk could enforce whatever rights SeeCubic has in the SLS Notes as a part of this case.  As we discussed, the SLS Notes are not mentioned in the Complaint, the parties did not brief this issue, and the Court's decision did not rule on this issue.  Further, rights under the SLS Notes and SLS Pledge Agreement are already being asserted in a separate lawsuit still pending in Delaware.   Unless the terms are relevant for some other reason, and we do not think that they are, Stream will not use SLS related search terms.

Best,
Brian

**From:** Warns, Tom A. <Tom.Warns@klgates.com>
**Sent:** Thursday, January 12, 2023 2:09 PM
**To:** Dallaire, Stephanie <sdallaire@mccarter.com>; Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian <blemon@McCarter.com>; O'Connor, Megan E. <Megan.OConnor@klgates.com>
**Subject:** RE: Hawk/Stream 225 - meet and confer

**\*\*External Message\*\***

Brian and Stephanie,

I meant to hit send on this email right before the call, but I realized just now that I did not send it. My apologies. This is more or less what we discussed from our end on the meet and confer call, but I figured it would not hurt for you to have this email and have our thoughts in writing.

Tom

_____

Stephanie,

With respect to the first set of search terms below, we do not agree that those searches are not relevant. Stream has produced documents reflecting that it entered into Stock Purchase Agreements within the last two months with VTI, VS, and Glasses Free. It is our further understanding based on Stream's decision to produce these documents that Stream contends that these Stock Purchase Agreements are relevant to the conversion of the debt underlying the Hawk Notes. Therefore, those Stock Purchase Agreements and the circumstances surrounding them, the negotiations, whether actual funds were transferred to Stream, etc., are central to Defendants' conversion defense. It is difficult to understand how the search terms would not yield relevant documents and information unless Stream is not contending that the Stock Purchase Agreements (produced at, *inter alia*, STREAM225-05314, STREAM225-05327, STREAM225-05341) are related to Stream's alleged conversion defense.

The search terms related to SLS are clearly relevant, as the Court's decision on standing made clear that we have stepped into the shoes of SeeCubic to enforce SeeCubic's rights, including the SLS Notes. Those search terms are narrowly tailored to pick up documents related to the conversion of the SLS Notes.

Finally, with respect to the second set of search terms below, we are fine with your proposed edits.

Best,
Tom

---

**From:** Dallaire, Stephanie <sdallaire@mccarter.com>
**Sent:** Thursday, January 12, 2023 10:13 AM
**To:** Warns, Tom A. <Tom.Warns@klgates.com>; Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian <blemon@McCarter.com>; O'Connor, Megan E. <Megan.OConnor@klgates.com>
**Subject:** RE: Hawk/Stream 225 - meet and confer

Tom,

Thank you for the additional search terms.   We will agree to run all of the terms except those relating to SLS, Visual Technologies, Visual Semiconductor, and Glasses Free.  We do not see how these terms can be used to find documents relevant to this 225 Action.  Please explain why you think that the following terms will return relevant documents.

- "conver* /5 SLS"
- "SLS /5 Note"
- "Visual Technologies" /10 "Stock Purchase" or invest*
- "Visual Semiconductor"  /10 "Stock Purchase" or invest*
- "Glasses Free" /10 "Stock Purchase" or invest*

We agree to apply the below search terms and review the documents yielded by them.  We revised the first two slightly – changing conver* to convert* OR conversion:

- (convert* OR conversion) /5 Hawk
- (convert* OR conversion) /5 Note
- Notice /5 Hawk
- "Form for Notice for Conversion"
- Hawk /5 Note

Thanks,

Stephanie

---

**From:** Warns, Tom A. <Tom.Warns@klgates.com>
**Sent:** Wednesday, January 11, 2023 1:42 PM
**To:** Dallaire, Stephanie <sdallaire@mccarter.com>; Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian <blemon@McCarter.com>; O'Connor, Megan

E. <[Megan.OConnor@klgates.com](mailto:Megan.OConnor@klgates.com)>
**Subject:** RE: Hawk/Stream 225 - meet and confer

**\*\*External Message\*\***

Stephanie,

Thank you for providing a list of the search terms that Stream intends to use. We would propose the following search terms in addition:

- Notice /5 Hawk
- "Form for Notice for Conversion"
- "conver\* /5 Hawk"
- "conver\* /5 SLS"
- "conver\* /5 Note"
- "Hawk /5 Note"
- "SLS /5 Note"
- "Visual Technologies" /10 "Stock Purchase" or invest\*
- "Visual Semiconductor"  /10 "Stock Purchase" or invest\*
- "Glasses Free" /10 "Stock Purchase" or invest\*

We have no concerns with your list of proposed custodians, and find them acceptable.

Best,
Tom

**From:** Dallaire, Stephanie <[sdallaire@mccarter.com](mailto:sdallaire@mccarter.com)>
**Sent:** Sunday, January 8, 2023 5:05 PM
**To:** Warns, Tom A. <[Tom.Warns@klgates.com](mailto:Tom.Warns@klgates.com)>; Caponi, Steven L. <[Steven.Caponi@klgates.com](mailto:Steven.Caponi@klgates.com)>
**Cc:** Goeller, Matthew B. <[Matthew.Goeller@klgates.com](mailto:Matthew.Goeller@klgates.com)>; Lemon, Brian <[blemon@McCarter.com](mailto:blemon@McCarter.com)>; O'Connor, Megan E. <[Megan.OConnor@klgates.com](mailto:Megan.OConnor@klgates.com)>
**Subject:** RE: Hawk/Stream 225 - meet and confer

Tom,

Attached is Defendants' search protocol which lists Defendants' custodians and the search terms we will apply to the collected data.

With respect to Hawk's custodians, please identify the custodians for Albany Directors and let us know when you expect to determine whether you will be using search terms.

Thanks,

Stephanie

**From:** Warns, Tom A. <[Tom.Warns@klgates.com](mailto:Tom.Warns@klgates.com)>
**Sent:** Friday, January 6, 2023 3:19 PM
**To:** Dallaire, Stephanie <[sdallaire@mccarter.com](mailto:sdallaire@mccarter.com)>; Caponi, Steven L. <[Steven.Caponi@klgates.com](mailto:Steven.Caponi@klgates.com)>

Cc: Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian <blemon@McCarter.com>; O'Connor, Megan
E. <Megan.OConnor@klgates.com>
**Subject:** RE: Hawk/Stream 225 - meet and confer

**\*\*External Message\*\***

Stephanie,

Plaintiff is currently collecting documents from Colin Malty and Albany Directors. Both Mr. Maltby and Albany Directors have each saved all of their documents and communications related to Hawk in a central location.

With respect to Mr. Maltby, the volume is such that we intend to review all of the documents and thus no search terms are needed.

With respect to Albany Directors' documents, once we obtain all of those documents, we can determine if the volume is such that the use of search terms is warranted.

In the meantime, if you would like to send us proposed search terms and the custodians you propose to collect documents from, and we are happy to review.

Finally, as we previously noted, Mr. Morton is not a principal or under control of Hawk. However, we have reached out to his counsel to see if he has responsive documents and to see if he is willing to produce them. We will let you know what the response is promptly.

We believe the date range for both parties should be April 1, 2020 (one month prior to the Letter Agreement) to present.

Best,
Tom

**From:** Dallaire, Stephanie <sdallaire@mccarter.com>
**Sent:** Wednesday, January 4, 2023 11:01 AM
**To:** Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Warns, Tom A. <Tom.Warns@klgates.com>; Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian <blemon@McCarter.com>; O'Connor, Megan E. <Megan.OConnor@klgates.com>
**Subject:** RE: Hawk/Stream 225 - meet and confer

Steve,

Further to our meet and confer on January 2, please let us know if we can agree to exchange lists of custodians and search terms (including the date range to be applied) this week.  Given that the parties must complete their document productions by Jan. 18, it is imperative that we engage in this process this week. As we discussed, Stream's position is that Hawk should collect and search documents belonging to Mr. Morton.  Please let us know if Hawk will do so.

Thanks,

Stephanie

**From:** O'Connor, Megan E. <Megan.OConnor@klgates.com>
**Sent:** Thursday, December 29, 2022 5:01 PM
**To:** Dallaire, Stephanie <sdallaire@mccarter.com>; Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Warns, Tom A. <Tom.Warns@klgates.com>; Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian
<blemon@McCarter.com>
**Subject:** RE: Hawk/Stream 225 - meet and confer

**\*\*External Message\*\***

Thank you, I hope you have a happy new year as well!


**K&L GATES**

**Megan E. O'Connor**
Associate
K&L Gates LLP
600 N. King Street
Suite 901
Wilmington, DE  19801
Phone:  302-416-7014
Fax: 302-416-7020
megan.o'connor@klgates.com
www.klgates.com

**From:** Dallaire, Stephanie <sdallaire@mccarter.com>
**Sent:** Thursday, December 29, 2022 5:00 PM
**To:** O'Connor, Megan E. <Megan.OConnor@klgates.com>; Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Warns, Tom A. <Tom.Warns@klgates.com>; Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian
<blemon@McCarter.com>
**Subject:** RE: Hawk/Stream 225 - meet and confer


Megan – thank you, 2 pm on Monday is fine with us.  Below is a dial-in we can use. Hope you all have a happy new year!

Local number: (267) 930-4000
Toll Free number: (888) 551-1322

Participant Code: 862 034 639

**From:** O'Connor, Megan E. <Megan.OConnor@klgates.com>
**Sent:** Thursday, December 29, 2022 4:44 PM
**To:** Dallaire, Stephanie <sdallaire@mccarter.com>; Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Warns, Tom A. <Tom.Warns@klgates.com>; Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian
<blemon@McCarter.com>
**Subject:** RE: Hawk/Stream 225 - meet and confer

**\*\*External Message\*\***

Stephanie,

We have conferred and in light of your below email and the holidays we retract our previous email and will agree to meet and confer with you on Monday as you suggested. Does 2pm work for you? If so please send around a dial-in.

We will provide responses to your December 21 email before the meet and confer.

Best,

Megan



**Megan E. O'Connor**
Associate
K&L Gates LLP
600 N. King Street
Suite 901
Wilmington, DE  19801
Phone:  302-416-7014
Fax: 302-416-7020
megan.o'connor@klgates.com
www.klgates.com

**From:** Dallaire, Stephanie <sdallaire@mccarter.com>
**Sent:** Wednesday, December 28, 2022 5:18 PM
**To:** O'Connor, Megan E. <Megan.OConnor@klgates.com>; Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Warns, Tom A. <Tom.Warns@klgates.com>; Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian <blemon@McCarter.com>
**Subject:** RE: Hawk/Stream 225 - meet and confer

Megan,

On Wednesday (12/21), we offered to meet and confer on discovery issues at any time on Thursday (12/22) or Friday (12/23).  Your ignored our offer.  What is the justification for demanding that a meet and confer happen by this Friday (12/30), instead of next Monday, when you ignored our offer to meet and confer more than a week prior to your Friday deadline?  If there is a legitimate reason why it must be Friday, we will consider your request.

As you can imagine, many of our team are on vacation this week, which is why we tried to meet and confer last week.  In addition, while we responded to Hawk's deficiency letter the day after we received it, Hawk has failed to respond to Stream's deficiency e-mail for more than a week (you have now offered to provide a response soon).   Stream's discovery requests also go to the core of this case, yet Hawk has delayed in responding.  The parties cannot meaningfully meet and confer until we have your response and have time to discuss it internally.  Hawk has "delayed" far longer than Stream.

In addition, we still have not received any further response to our inquiry regarding Mr. Morton testifying at trial.  Steve stated on 12/12 that your side would be able to consider this request when you received our clients' discovery responses, which you have now had for over a week.  Please let us know if Hawk agrees that Mr. Morton will testify at trial.

Thank you,

Stephanie

---

**From:** O'Connor, Megan E. <Megan.OConnor@klgates.com>
**Sent:** Wednesday, December 28, 2022 10:26 AM
**To:** Dallaire, Stephanie <sdallaire@mccarter.com>; Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Warns, Tom A. <Tom.Warns@klgates.com>; Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian <blemon@McCarter.com>
**Subject:** RE: Hawk/Stream 225 - meet and confer

**\*\*External Message\*\***

Hi Stephanie,

We are sorry for the delay and will get you a response to your Wednesday email today or tomorrow. If you would like to wait until next week to meet and confer on the deficiencies you identified from our responses that is fine but it is unacceptable for us to wait until next week to meet and confer on the deficiency we identified in Defendants' response to Interrogatory No. 1. This is an expedited schedule and Defendants' response to Interrogatory No. 1 goes to Defendants' core defense in this case. We do not have time to wait another week considering that you have had our interrogatories for over two weeks.

We expect a substantive and comprehensive written response to Interrogatory No. 1 by this Friday at 12:00pm eastern. If we do not receive a substantive and comprehensive written response to Interrogatory No.1 by then we will consider a lack of a response as an affirmative denial and will be filing a motion to compel. We are happy to meet and confer with you as to Defendants' response to Interrogatory No. 1 anytime today and tomorrow. Again we will view a failure to meet and confer as an affirmative refusal. If you plan on submitting documents in response to Interrogatory No. 1 to supplement your written response that is fine but we need a substantive written response by Friday.

Additionally, we requested that Defendants send an updated document production in the appropriate format. It has been over a week and due to the expedited nature of the case we expect the properly formatted document production to also be produced by Friday at 12:00pm eastern.

Best,

Megan

**K&L GATES**

**Megan E. O'Connor**
Associate
K&L Gates LLP
600 N. King Street
Suite 901
Wilmington, DE  19801
Phone:  302-416-7014
Fax: 302-416-7020
megan.o'connor@klgates.com
www.klgates.com

**From:** Dallaire, Stephanie <sdallaire@mccarter.com>
**Sent:** Wednesday, December 28, 2022 7:48 AM
**To:** O'Connor, Megan E. <Megan.OConnor@klgates.com>; Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Warns, Tom A. <Tom.Warns@klgates.com>; Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian
<blemon@McCarter.com>
**Subject:** RE: Hawk/Stream 225 - meet and confer

Hi Megan,

Thank you.  We are free on Monday after 12 pm.  Please let us know some times that work for you.  In addition, please
respond to the deficiency email we sent on Wed., 12/21 (attached) so that the meet and confer can be more productive
and meaningful.

Stephanie

**From:** O'Connor, Megan E. <Megan.OConnor@klgates.com>
**Sent:** Tuesday, December 27, 2022 1:23 PM
**To:** Dallaire, Stephanie <sdallaire@mccarter.com>; Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Warns, Tom A. <Tom.Warns@klgates.com>; Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian
<blemon@McCarter.com>
**Subject:** RE: Hawk/Stream 225 - meet and confer

**\*\*External Message\*\***

Hi Stephanie,

I hope you had a great holiday. We wanted to circle back about the meet and confer you proposed below. We are
available at 10am on Thursday if that works for you.

Best,

Megan

**K&L GATES**

**Megan E. O'Connor**
Associate
K&L Gates LLP
600 N. King Street
Suite 901
Wilmington, DE  19801
Phone:  302-416-7014
Fax: 302-416-7020
megan.o'connor@klgates.com
www.klgates.com

**From:** Dallaire, Stephanie <sdallaire@mccarter.com>
**Sent:** Wednesday, December 21, 2022 8:46 AM
**To:** Caponi, Steven L. <Steven.Caponi@klgates.com>
**Cc:** Warns, Tom A. <Tom.Warns@klgates.com>; O'Connor, Megan E. <Megan.OConnor@klgates.com>; Goeller, Matthew B. <Matthew.Goeller@klgates.com>; Lemon, Brian <blemon@McCarter.com>
**Subject:** Hawk/Stream 225 - meet and confer

Steve,

We write regarding deficiencies in Hawk's responses and objections to Defendants' interrogatories and document requests.

Interrogatories

Hawk raised objections based on relevance and undue burden/breadth with respect to almost all of the interrogatories.  Please identify whether Hawk is withholding non-privileged, responsive information on the basis of any of these objections.

Hawk did not fully answer Interrogatory Nos. 1-6, 7, and 11, and must supplement its answers.  In particular, Interrogatory No. 1 is not vague or ambiguous, nor can Hawk credibly claim that "[i]t is unclear how Stream is utilizing the term 'valid.'"  Indeed, Hawk agreed that an Event of Default would occur under the Note Purchase Agreement that it entered into with SeeCubic if the Letter Agreement was "invalidat[ed]."   If Hawk understood the concept of the Letter Agreement being invalid when it signed the NPA, then it understands the use of the world "valid" in our Interrogatory.  Hawk's response that the Letter Agreement "is no longer an executory contract or the operative document governing the matters addressed in the Letter Agreement" is not responsive.

For the same reasons, Hawk must supplement its answers to Interrogatory Nos. 2 and 3 which refer back to Hawk's deficient response to Interrogatory No. 1.

With respect to Interrogatory No. 4, Hawk has only answered one portion of the request (regarding the 40 million shares identified in the Letter Agreement) and has otherwise only pointed to certain unidentified documents "sufficient to identify the number of shares/warrants received and the date they were received" as being in Stream's possession.  Hawk must identify the number of shares of Stream's Class A Stock that Hawk believe it owns.

With respect to Interrogatory No. 6, Hawk has only answered one portion of the request (the number of shares of SeeCubic's stock it believes it owns).  Hawk must completely answer the request, including the date(s) Hawk received these shares and the consideration paid or provided for them.

With respect to Interrogatory No. 7, Hawk must supplement its response and identify the amount of actual cash received by Stream in connection with each of the Hawk Notes.

Document Requests

Like the responses to the Interrogatories, almost all of Hawk's responses to Defendants' document requests include objections that the requests are overly broad or not proportional to the needs of the case and seek irrelevant information.  Please let us know whether Hawk is withholding non-privileged, responsive documents on the basis of any of these objections.

Furthermore, with respect to RFP No. 15, please identify Hawk's definition of "validity" that it will be using in connection with its search for responsive documents.  Please also confirm that Hawk will search for documents relating to whether Hawk contends that the Letter Agreement is valid.  Again, Hawk understands the concept of validity as it relates the Letter Agreement.

With respect to RFP Nos. 17, 20-22, 24, Hawk is obligated to produce responsive documents in its possession, custody or control.  That Defendants may have relevant documents in their possession does not alleviate Hawk's discovery obligations.  Please confirm that Hawk will search for, and produce, responsive documents.

With respect to RFP No. 18, Hawk is obligated to search for responsive documents relating to the conversion of any shares of Stream's stock to shares of SeeCubic's stock.  This includes searching for documents relating to the potential conversion of shares, even if no such conversion actually occurred.  Please confirm whether Hawk has undertaken such a search and confirm that Hawk will produce any responsive documents yielded by that search.

With respect to RFP Nos. 23-25, please confirm whether Hawk has already performed a search for responsive documents in its possession, custody or control.   If so, please identify the parameters of that search, including any search terms used, any date restriction applied, and the locations that Hawk searched.  If not, please confirm that Hawk will search for, and produce, any responsive documents.

We are available to meet and confer tomorrow before 12 or after 1:30.  Let us know some times that work for you.

Regards,

Stephanie



**Stephanie H. Dallaire | Associate**
McCarter & English, LLP
Renaissance Centre, 405 N. King Street, 8th Floor | Wilmington, DE 19801

sdallaire@mccarter.com | www.mccarter.com | V-Card
T 302.984.6379    M 610.731.7087

Boston | East Brunswick | Hartford | Indianapolis | Miami | Newark | New York | Philadelphia | Stamford | Washington, DC | Wilmington

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Megan.OConnor@klgates.com.

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Megan.OConnor@klgates.com.

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Megan.OConnor@klgates.com.

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Megan.OConnor@klgates.com.

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Tom.Warns@klgates.com.

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Tom.Warns@klgates.com.

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Tom.Warns@klgates.com.