# **EXHIBIT G**

SLS Conversion Agreement

20230321_01

180630

# 2018 AGREEMENT

THIS AGREEMENT (this "**Agreement**") with an effective date of January 29, 2018 (the "**Effective Date**") regardless of when it is mutually executed, by and among STREAM TV NETWORKS, INC., a Delaware corporation (the "**Company**") and SLS HOLDINGS VI, LLC, a Delaware limited liability company ("**SLS**"), (both collectively may be referred to as "**Parties**").

## RECITALS

  WHEREAS, the Company and SLS have entered into that certain (i) Securities Purchase Agreement, dated August 8, 2011 (the "**First Securities Purchase Agreement**"); (ii) Securities Purchase Agreement, dated February 8, 2012 (the "**Second Securities Purchase Agreement**", together with the First Securities Purchase Agreement, the "**Purchase Agreements**" and each a "**Purchase Agreement**"); (iii) 5% Senior Secured Note, dated August 8, 2011, in the principal amount of US$3,000,000 ("**SLS Note 1**"); (iv) 5% Senior Secured Note, dated February 8, 2012, in the principal amount of US$1,500,000 ("**SLS Note 2**"); (v) 5% Senior Secured Note, dated May 1, 2012, in the principal amount of US$500,000 ("**SLS Note 3**"); (vi) 5% Senior Secured Note, dated July 5, 2012, in the principal amount of US$500,000 ("**SLS Note 4**"); (vii) 5% Senior Secured Note, dated May 29, 2012, in the principal amount of US$500,000 ("**SLS Note 5**", together with SLS Note 1, SLS Note 2, SLS Note 3 and SLS Note 4, the "**SLS Notes**"); (viii) Consent, Waiver and Amendment Agreement, dated March 25, 2014; (ix) Amendment Agreement dated as of March 4, 2015 ("**2015 Amendment**"); (x) Amendment Agreement dated as of July 25, 2016 ("**2016 Amendment**"); and (xi) Amendment Agreement dated as of February 6, 2017 ("**February 2017 Amendment**"), and

  WHEREAS, each of the SLS Notes was issued a right to purchase warrants (individually, the "**Old Warrant**" and collectively, the "**Old Warrants**") which entitled SLS to subscribe for and purchase from the Company shares of the Company's Class A common stock (the "**Common Stock**") constituting a stated percentage of the fully diluted shares, as defined in each of the Old Warrants, and

  WHEREAS, each of the SLS Notes was issued pursuant to a Purchase Agreement together with supporting documents including security and pledge agreements (together, with the Purchase Agreements, the "**Supporting Agreements**"), and

  WHEREAS, the Company and SLS entered into an amendment on or about August 23, 2017 which was entirely replaced by an agreement dated as of December 1, 2017 (the "**Amended and Restated Amendment Agreement**"), and

180630

**WHEREAS**, Hawk Investment Holdings Limited, a Guernsey holding company registered in Guernsey with registered number 44994, with its registered office at Newport House, 15 The Grange, St. Peter Port, Guernsey GY1 2QL, Channel Islands ("**Hawk**"), has executed of even date herewith that certain "Notes 1 Through 10 – May 2018 Agreement" (the "**Hawk Conversion Agreement**"), the execution and continued effectiveness of which is a precondition to SLS's obligations under this Agreement, and

**WHEREAS**, the Parties intend to extinguish and/or convert the SLS Notes as described below.

**NOW THEREFORE**, in consideration of the premises and the agreements herein contained, and intending to be legally bound hereby, the Company and SLS agree as set forth herein:

1.      Definitions. All capitalized terms used, but not defined herein, shall have the respective meanings ascribed to them in the SLS Notes and their Supporting Documents, save where otherwise defined in this Agreement.

2.      New Warrants. The Amended and Restated Amendment Agreement provided for Termination Warrants in an amount equal to 8,810,403 plus 552,750 as Additional Warrants (a total of 9,363,153 warrants, referred to hereafter as "**New Warrants**") which have been issued to SLS with a strike price of $4.00 per share. Those New Warrants in total shall be deemed permanent in exchange for termination of any and all of the Old Warrants, defined above, issued on or before the Effective Date, notwithstanding anything to the contrary.

3.      Bonus Warrants. SLS will be entitled to additional warrants (the "**Bonus Warrants**") in the same format as the New Warrants as follows: (a) 2,000,000 Bonus Warrants upon the execution of this Agreement, and (b) an additional 2,000,000 Bonus Warrants if the Company is unsuccessful in raising as investment at least USD one hundred million ($100,00,000) total since the Effective Date of this Agreement. The Bonus Warrants identified at Section 3(b) above shall not be issued to SLS unless and until the issuance of the 2,000,000 warrants identified at Section 8(b) of the Hawk Conversion Agreement.

4.      Conversion and Extinguishment. The principal amount and accrued interest thereon of all of the SLS Notes shall be converted and extinguished **("Extinguishment")** into securities of the company ("**New Shares**"), on a "first in first out" basis, according to the chronological dates of such SLS Notes, pro rata with the Extinguishment and Conversion of all Hawk Notes (as defined in the Hawk Conversion Agreement). The principal amount and accrued interest of all of the SLS Notes totals $ 8,565,180.25 through February 1, 2019, and such amount will continue to accrue under the terms of the relevant SLS Notes until extinguished in full (such value at any time, the "**Total Accrued Value**"). The conversion into New Shares shall be at a price per share equal to the price per share of the concurrent pro-rated Hawk Conversion and on the same terms for the price per share, cumulative dividend rate, drag rights, conversion rights and any other economic rights as the same class of stock, and otherwise on the same terms as the concurrent pro-rated Hawk Conversion.

180630

5. Notice:  The Company will provide SLS with notice in a form similar to that attached hereto as Exhibit A ("**Notice**") with respect to the Extinguishment and Conversion of the SLS Notes.

6. Security: Upon (i) conversion of all of the of the SLS Notes pursuant hereto and all Hawk Notes pursuant to the Hawk Conversion Agreement, and (ii) the effectiveness of the full release of all security relating to all Hawk Notes,  SLS (i) agrees to submit for recording among the financing statement records of the appropriate state government office a UCC-3 termination statement to terminate the financing statements of record perfecting the security interests granted in connection with the converted SLS Notes, and (ii) hereby authorizes, the Company, at the Company's sole expense, to submit such other UCC-3 termination statements necessary or required to terminate the financing statements of record perfecting the security interests granted in connection with the applicable converted SLS Notes naming the Company, as debtor, and SLS, as secured party, in the appropriate state government filing office.  Further, upon conversion of the SLS Notes, SLS shall promptly return to the Company the original documents evidencing the SLS Notes marked "paid in full" or "canceled.

7. Remaining SLS Notes.  If the offering of new capital is terminated prior to the Extinguishment and/or Conversion of all of the Hawk Notes and all SLS Notes, any of the remaining SLS Notes which have not been extinguished shall remain in full force.  Nothing contained in this Agreement shall be construed as conferring upon SLS the right to vote, receive distributions or any other rights with respect to stock issuable upon conversion of any of the SLS Notes prior to the actual Conversion of any of the SLS Notes.

8. Call Right.  The Company may, in its sole discretion, pay up to and including the Total Accrued Value at the time of such exercise that would have been applicable had the SLS Notes not been converted hereunder to buy back all or any part of the New Shares issued to SLS upon conversion of the SLS Notes hereunder.  If not executed beforehand, such Call Right will terminate as to any New Shares sold by SLS to any third party upon the Company's prior written consent, but will otherwise continue in force until executed by the Company.

9.  No Other Amendments. Except as amended by this Agreement, each of the SLS Notes and their Supporting Documents shall remain unchanged and in full force and effect.  In the event of any conflict between this Agreement and the SLS Notes and their Supporting Documents, the terms and provisions of this Agreement shall govern and control.

10. Counterparts. This Agreement may be executed in any number of counterparts with the same effect as if all signing Parties had signed the same document. All counterparts shall be construed together and shall constitute the same instrument.

11. Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAW.

12. Effectiveness.  This Agreement shall be deemed effective as of the date first set forth above, regardless of its date of execution.  This Agreement shall cease to be effective as to any

180630

pending or future Extinguishment or Conversion of the SLS Notes, and shall immediately terminate in full, upon any amendment to, or any full or partial termination (whether voluntary or involuntary) of the Hawk Conversion Agreement.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the Effective Date first above written.

**STREAM TV NETWORKS, INC**.

By: _____
    Name: Mathu Rajan
    Title:  CEO


**SLS HOLDINGS VI, LLC**

By: _____
    Name: Shad Stastney
    Title: Managing Member

180630

# EXHIBIT A

# FORM OF NOTICE FOR EXTINGUISHMENT

Date of Notice:

**TO:** SLS HOLDINGS VI, LLC ("SLS")

**ATTENTION:**

The undersigned Stream TV Networks, Inc. (the "**Company**") hereby informs SLS that the following total of SLS Note(s) have this date been extinguished by conversion into the Company's Common Stock pursuant to the Agreement by and between SLS and the Company dated effective January 29th, 2018:

|  | **Amount** | **Number of shares and/or Warrants** |
|---|---|---|
| **SLS Notes Principal and Accrued Interest (Total Accrued Value)** |  |  |
|  |  |  |

**Stream TV Networks, Inc.**

2009 Chestnut Street, 3rd Floor

Philadelphia, PA 19103 USA

_____        _____

(Date)                                                              (Signature)

                                                                         _____

                                                                         (Printed name) Raja Rajan