# **EXHIBIT P**

Letter Agreement

20230321_01

# LETTER AGREEMENT

AGREEMENT (this "Agreement"), dated as of May 6, 2020, by and among SLS Holdings VI, LLC, a Delaware limited liability company ("SLS"), Hawk Investment Holdings Limited, an entity registered in Guernsey ("Hawk"), and certain equity investors of the Company listed on Annex I attached hereto (each an "Investor" and collectively, the "Investors").

WHEREAS, of even date herewith, the parties hereto have also executed that certain OMNIBUS AGREEMENT (the " Omnibus Agreement"), dated as of May 6, 2020, by and among Stream TV Networks, Inc., a Delaware corporation (the "Company"), SLS Holdings VI, LLC, a Delaware limited liability company ("SLS"), Hawk Investment Holdings Limited, an entity registered in Guernsey ("Hawk"), and certain equity investors of the Company listed on Annex I attached hereto (each an "Investor" and collectively, the "Investors").  All terms not defined herein shall be used according to their definitions in the Omnibus Agreement.

WHEREAS, the parties hereto wish to agree among themselves to certain additional matters related to the Omnibus Agreement, and on which their execution of the Omnibus Agreement is conditioned; and

WHEREAS, the parties desire to memorialize in this Agreement the terms and conditions of certain other actions to be performed by the parties, and this Agreement shall govern the respective rights and obligations of the parties in connection with such actions.

## ARTICLE I

## THE TRANSACTIONS

1.1    Transactions.  Subject to the terms and conditions set forth herein, and on the basis of and in reliance upon the representations, warranties, covenants and agreements set forth herein, the parties hereto shall promptly take the actions described in this Section 1.1 in addition to all such transactions to be taken by each of them pursuant to the Omnibus Agreement (each, a "Transaction" and, collectively, the "Transactions"):

(a)    SLS and Hawk shall form Newco in accordance with the applicable laws of its jurisdiction of formation.  Newco shall issue (i) a promissory note to SLS as provided in Annex II, and (ii) a promissory note to Hawk as provided in Annex II.  The holders of such promissory notes shall jointly determine the size and composition of the initial Board of Directors of Newco, and shall name the initial executive officers of Newco.  Each promissory note issued by Newco referenced in clauses (i) and (ii) above shall have such other terms and conditions as set forth on Annex II.

(b)    Hawk shall receive 40,000,000 shares of Class A Common Stock of the Company in respect of any and all foregone accrued interest, penalties and

fees (including placement, brokerage, finder's or similar fees) applicable to the Hawk Notes (the "Hawk Issuance").  Immediately following the Hawk Issuance, Hawk shall be entitled to exchange its shares of Class A Common Stock of the Company for a pro rata portion of the common shares or equity interests of Newco on the terms and conditions as set forth on Annex II.

        (c)    SLS shall receive 4,000,000 shares of Class A Common Stock of the Company in respect of any and all foregone accrued interest, penalties and fees (including placement, brokerage, finder's or similar fees) applicable to the SLS Notes (the "SLS Issuance").  Immediately following the SLS Issuance, SLS shall be entitled to exchange its shares of Class A Common Stock of the Company for a pro rata portion of the common shares or equity interests of Newco on the terms and conditions as set forth on Annex II.

        (d)    In consideration of the Investors signing the Omnibus Agreement the Investors shall receive (i) 4,000,000 shares of Class A Common Stock of the Company, and (ii) 2,000,000 warrants of the Company, with a three-year term and a strike price of $1.00 per common share, in respect of any and all legal or other fees and expenses incurred in connection with the Lawsuit or the transactions contemplated hereby (the "Investor Issuance").  Immediately following the Investor Issuance, each Investor shall be entitled to exchange its shares of Class A Common Stock of the Company for a pro rata portion of the common shares or equity interests of Newco as on the terms and conditions as set forth on Annex II; provided, however, that the warrants included in the Investor Issuance shall be carried over in exactly the same number and terms.

    1.2    Investors' Expenses.  Each of the Investors has funded or agreed to fund a pro rata portion of the fees and expenses related to the Lawsuit, this Agreement and the Transactions pursuant to one or more Inter-Party Agreements among the Investors.  Each of the Investors, SLS, Hawk and Newco hereby agree that all such amounts shall constitute contributions made by such Investors to Newco respectively on the same terms and conditions and in exchange for notes of the same term and tenor as those to be issued by Newco to SLS and Hawk; provided, however, that any Investor may choose to instead forego all or a portion of such note in exchange for and in satisfaction of any future subscription for shares of Newco.

### ARTICLE II

### REPRESENTATIONS AND WARRANTIES

    2.1    Representations and Warranties.  Each party hereto hereby represents and warrants to all of the other parties hereto as follows:

        (a)    The execution, delivery and performance by such party of this Agreement and of the other documents contemplated hereby, to the extent a party thereto, has been duly authorized by all necessary action (subject to receipt by the Company of all of the applicable approvals).  If such party is not an individual, such party

is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization or incorporation.

(b)     Such party has the requisite power, authority, legal right and, if such party is an individual, legal capacity, to execute and deliver this Agreement and each of the other documents contemplated hereby, to the extent a party thereto, and to consummate the transactions contemplated hereby and thereby, as the case may be.

(c)     This Agreement and each of the other documents contemplated hereby, to the extent a party thereto, has been duly executed and delivered by such party and constitutes the legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally and (ii) general equitable principles (whether considered in a proceeding in equity or at law).

(d)     Neither the execution, delivery and performance by such party of this Agreement and the other documents contemplated hereby, to the extent a party thereto, nor the consummation by such party of the transactions contemplated hereby, nor compliance by such party with the terms and provisions hereof, will, directly or indirectly (with or without notice or lapse of time or both), (i) if such party is not an individual, contravene or conflict with, or result in a breach or termination of, or constitute a default under (or with notice or lapse of time or both, result in the breach or termination of or constitute a default under) the organizational documents of such party, (ii) constitute a violation by such party of any existing requirement of law applicable to such party or any of its properties, rights or assets or (iii) require the consent or approval of any person or entity, except, in the case of clauses (ii) and (iii), as would not reasonably be expected to be material to the ability of such party to consummate the transactions contemplated by this Agreement.

## ARTICLE III

## MISCELLANEOUS

3.1     <u>Amendments and Waivers</u>.  This Agreement may be modified, amended or waived only with the written approval of each of the parties hereto.  The failure of any party to enforce any of the provisions of this Agreement shall in no way be construed as a waiver of such provisions and shall not affect the right of such party thereafter or any other party hereto to enforce each and every provision of this Agreement in accordance with its terms.

3.2     <u>Successors and Assigns</u>.  This Agreement shall bind and inure to the benefit of and be enforceable by the parties hereto and their respective successors and permitted assigns.  No rights or obligations under this Agreement may be assigned by any party hereto without the prior written consent of each other party hereto.

3

    3.3  <u>Notices</u>.  All notices, requests and other communications to any party hereunder shall be in writing (including electronic mail ("e-mail") transmission, so long as a receipt of such e-mail is requested and not received by automated response or notice is given on the next business day by alternative means permitted by this <u>Section 3.3</u>).  All such notices, requests, and other communications shall be deemed received on the date of receipt by the recipient thereof if received prior to 5:00 p.m. on a business day in the place of receipt.  Otherwise, any such notice, request or communication shall be deemed to have been received on the next succeeding business day in the place of receipt.  All such notices, requests and other communications to any party hereunder shall be given to such party as follows:

    If to the Investors:

    Alastair Crawford
    c/o Adams & Remers LLP
    55-58 Pall Mall
    London, United Kingdom SW1Y 5JH
    Attention: Alastair Crawford
    Email: alastair.crawford@gmail.com

    with a copy (which shall not constitute notice) by email to:

    Skadden, Arps, Slate, Meagher & Flom LLP
    920 North King Street
    Wilmington, Delaware 19801
    Attention: Faiz Ahmad
    Email: faiz.ahmad@skadden.com

    If to SLS:

    SLS Holdings VI, LLC
    392 Taylor Mills Road
    Marlboro, New Jersey 07746
    Attention: Shad Stastney
    Email: slstastney@hotmail.com

    with a copy (which shall not constitute notice) by email to:

    Quarles & Brady
    411 E. Wisconsin Avenue, Suite 2400
    Milwaukee, Wisconsin 53202-4426
    Attention: Jonathan Hackbarth, Esq.
    Email: jon.hackbarth@quarles.com

    If to Hawk:

                    Hawk Investment Holdings Limited
                    Newport House
                    15 The Grange
                    St. Peter Port, Guernsey GY1 2QL, Channel Islands
                    Attention: [●]
                    Email:a.holt@albanytrustee.com; r.maunder@albanytrustee.com

                    with a copy (which shall not constitute notice) by email to:

                    First Sentinel
                    Attention: Colin Maltby
                    Email: colin@first-sentinel.com

        3.4     <u>Entire Agreement</u>.  Except as otherwise expressly set forth herein, this Agreement, together with the other documents contemplated hereby and the Omnibus Agreement, embodies the complete agreement and understanding among the parties hereto with respect to the subject matter hereof and supersedes and preempts any prior understandings, agreements, or representations by or among the parties, written or oral, that may have related to the subject matter hereof in any way. Each party acknowledges that it is not entering into this Agreement on the basis of or in reliance upon any promise, representation, or warranty other than as explicitly contained in this Agreement.  This Agreement shall be valid, binding and enforceable among the parties that have executed this Agreement as between such parties, notwithstanding the failure of any other person expected to be a party to this Agreement to so execute.

        3.5     <u>No Third Party Beneficiary</u>.  Nothing in this Agreement shall confer any rights, remedies or claims upon any creditors of a party hereto or any other natural person, corporation, company, partnership, association, limited liability company, limited partnership, limited liability partnership, joint venture, business enterprise, trust, or other legal entity not a party or a permitted assignee of a party to this Agreement.

        3.6     <u>Governing Law; Jurisdiction; Enforceability</u>.  This Agreement shall be governed in all respects by the laws of the State of Delaware, without regard to the conflicts of law rules of such State that would result in the application of the laws of any other State.  Each party hereby agrees and consents to be subject to the exclusive jurisdiction of the Court of Chancery of the State of Delaware or, if the Court of Chancery lacks subject matter jurisdiction, any court of the State of Delaware situated in New Castle County or the United States District Court for the District of Delaware in any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby.  Each of the parties irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of or in connection with this Agreement in the Court of Chancery of the State of Delaware or, if the Court of Chancery lacks subject matter jurisdiction, any court of the State of Delaware situated in New Castle County or the United States District Court for the District of Delaware and hereby

5

further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit, or proceeding brought in any such court has been brought in an inconvenient forum, and agrees not to raise any other objection to venue in any such court.  It is agreed and understood that monetary damages would not adequately compensate an injured party for the breach of this Agreement, that this Agreement shall be specifically enforceable, and that any breach or threatened breach of this Agreement shall be the proper subject of a temporary or permanent injunction or restraining order.  Further, each party hereto waives any claim or defense that there is an adequate remedy at law for such breach or threatened breach.

    3.7  <u>WAIVER OF JURY TRIAL</u>.  FOR THE AVOIDANCE OF DOUBT, EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

    3.8  <u>Counterparts; Facsimile Signatures</u>.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.  This Agreement may be executed by facsimile, e-mail or .pdf format signature(s).

    3.9  <u>Other Definitional and Interpretative Provisions</u>.  The words "hereof", "herein" and "hereunder" and words of like import used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.  The captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof.  References to Sections and Exhibits are to Sections and Exhibits of this Agreement unless otherwise specified.  All Exhibits annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.  Any capitalized terms used in any Exhibit but not otherwise defined therein shall have the meaning as defined in this Agreement.  Any singular term in this Agreement shall be deemed to include the plural, and any plural term the singular.  Whenever the words "include", "includes", or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import.  "Writing", "written", and comparable terms refer to printing, typing, and other means of reproducing words (including electronic media) in a visible form.  References to any statute shall be deemed to refer to such statute as amended from time to time and to any rules or regulations promulgated thereunder.  References to any agreement or contract are to that agreement or contract as amended, modified, or supplemented from time to time in accordance with the terms hereof and thereof.  References to any person or entity include the successors and permitted assigns of that person or entity.  References from or through any date mean, unless otherwise specified, from and including or through and including, respectively.  This Agreement is being entered into between sophisticated parties, each of which or whom has reviewed the Agreement, had the opportunity to discuss it with its, his or her counsel, and is fully knowledgeable about its terms and conditions.  The parties therefore agree that this

Agreement shall be construed without regard to the authorship of the language and without any presumption or rule of construction in favor of any of them.

       5.10    Expenses.  Except as set forth in Section 1.2 above, each party shall bear its own expenses in connection with the Transactions contemplated by this Agreement, including costs of their respective attorneys, accountants, investment bankers, brokers, and other representatives.

       5.11    Non-Disparagement.  In consideration of the transactions contemplated hereunder, each party hereto agrees that, as long as the other parties comply with each of their respective obligations under this Agreement, such party shall not, directly or indirectly, (i) make any public statement concerning the circumstances resulting in the execution of this Agreement or (ii) make comments which are intended to disparage any other party hereto.

       5.12    Confidentiality.  All information contained herein or related to the contents of this Agreement, including the terms and existence of this Agreement, is confidential, and shall not be disclosed to anyone including to any stockholder or investor of the Company not a party hereto, other than the parties hereto and their legal or financial advisors who (a) need to know the information to evaluate the Transactions or perform their respective obligations hereunder and (b) are bound to keep such information confidential, unless disclosure is expressly required in order to comply with, law, regulatory authority or judicial, legal or regulatory process, or in order to enforce a party's rights hereunder, in which case the other parties shall be notified in advance to the extent practicable and permitted by law.

       [Signature Page to Follow.]

IN WITNESS WHEREOF, the parties hereto have executed this Omnibus Agreement as of the date first above written.

        **SLS HOLDINGS VI, LLC**

By: _____
    Name:   Shad L. Stastney
    Title:    Managing Member

**HAWK INVESTMENT HOLDINGS LIMITED**

By: _____
    Name:
    Title:

[Signature Page to the Letter Agreement]

IN WITNESS WHEREOF, the parties hereto have executed this Omnibus Agreement as of the date first above written.

SLS HOLDINGS VI, LLC

By: _____
Name:
Title:

HAWK INVESTMENT HOLDINGS LIMITED

By: [signature]
Name: EMMA MCINTOSH + LEE MEALING
Title: AUTHORISED SIGNATORIES FOR ALBANY DIRECTORS LIMITED AS SOLE DIRECTOR OF HAWK INVESTMENT HOLDINGS LIMITED

[Signature Page to the Omnibus Agreement]

Signed for and behalf of the Investors
listed in Annex I

_____
Alastair Crawford

_____
Robert Petch

_____
Patrick Miles

# Annex I

| Holder ID | Investor Name | Gross Investment | Class A Common | Series B Preferred | Warrants | Options | Voting Only (if Proxy Given) |
|---|---|---|---|---|---|---|---|
| | Adam Bidwell | $26,000 | 24,000 | | 13,350 | | Adam Richard Bidwell |
| | Adrian Conrad Holmes | $795,000 | 323,333 | | 676,001 | | Adrian Conrad Holmes |
| | Alan Wood | $50,000 | 33,333 | | 71,406 | | Alan James Wood |
| | Alastair Duncan Hadfield Crawford | $3,232,040 | 1,131,030 | | 1,264,872 | | Alastair Duncan Hadfield Crawford |
| | Antin Investments Ltd | $295,000 | 196,666 | | 423,301 | | Antin Investments Limited |
| | Andrew Charles Fitzpatrick Capon | $50,000 | 33,333 | | 26,875 | | Andrew Charles Fitzpatrick Capon |
| | Andrew Mark Singer | $30,000 | 20,000 | | 109,080 | | Andrew Mark Singer |
| | Anthony Wigram | $146,000 | 97,336 | | 208,575 | | Anthony Francis Wigram |
| | Bottea Trustee Ltd as Trustee of th | $400,000 | 800,000 | | 903,335 | | Bottea Trustee Limited as Trustee of the Arrow Trust |
| | Broughton Ltd | $106,200 | 70,833 | | 153,007 | | Broughton Limited |
| | Charles J Commado | $150,000 | 100,000 | | 88,675 | | Charles (Charlie) Jerome Commado |
| | Charles William David Birchall | $2,300,000 | 1,333,330 | | 4,452,322 | | Charles William David (Bill) Birchall |
| | David Taylor | $300,000 | 200,000 | | 302,250 | | David Anthony Taylor |
| | DEAR SPA | $100,000 | 65,667 | | 333,335 | | Dear Spa |
| | Keith Owen Claude Merrick | $400,000 | 266,666 | | 471,400 | | Keith Owen Claude Merrick |
| | Eamonn Mason | $301,625 | 234,817 | | 208,575 | | Eamonn George Mason |
| | Edward Hunter Tremayne Miles | $44,250 | 29,500 | | 162,750 | | Edward Hunter Tremayne Miles |
| | Framco Holding GmbH | $515,000 | 343,333 | | 1,500,750 | | Framco Holding GmbH |
| | Guy Henry Taller | $75,000 | 50,000 | | 102,500 | | Guy Henry Taller |
| | Rayter Nominees Limited | $303,277 | 202,184 | | 252,506 | | Chermond Wealth Limited |
| | Hudson Master Fund | $3,000,000 | 2,000,000 | | 3,745,000 | | Hudson Master Fund |
| | Hatfield Holdings SA | $1,250,000 | 833,334 | | 1,336,450 | | Hatfield Holdings S.A. |
| | Hanmore Holdings Lux S.à r.l. | $200,000 | 66,667 | | 53,750 | | Arlington Holdings Luxembourg s.àr.l |
| | Guy H.A. Chiswlate-Marsh | $255,000 | 170,000 | | 201,125 | | Guy Chisolate-Marsh |
| | Jacopo Franzan | $30,000 | 21,333 | | 105,665 | | Jacopo Franzan |
| | Keith Gordon Marsden | $301,321 | 201,564 | | 141,335 | | Keith Marsden |
| | Keith Young | $250,000 | 113,100 | | - | | Keith Young |
| | Lapis Ventures SAC Limited | $250,000 | 166,667 | | 125,000 | | Lapis Ventures SAC Limited |
| | Leman Management Nominees Ltd | $200,000 | 133,333 | | 108,000 | | Leman Management Nominees Limited |
| | Leonardo Zampetti | $500,000 | 333,333 | | 250,000 | | Leonardo Valentino Zampetti |
| | Lander Securities S.A. | $500,000 | 333,333 | | 254,250 | | Lander Investments S.A |
| | Mark Andrew Volly De Candole | $400,000 | 216,667 | | 162,745 | | Mark Andrew Volly De Candole |
| | Mark Dyer | $401,024 | 267,349 | | 215,550 | | Mark William Barry Galloway Dyer |
| | Joel Pace Kallan | $100,000 | 66,667 | | 303,335 | | Joel Pace Kallan |
| | Michael Higgins Family Trust u/a d | $325,000 | 216,667 | | 475,000 | | The Michael Higgins Family Trust |
| | Hugh Rolesby Holland | $75,000 | 50,000 | | 62,700 | | Hugh Rolesby Holland |
| | Nicholas P Wentworth-Stanley | $75,001 | 50,000 | | 62,700 | | Nicholas Philip Wentworth-Stanley |
| | Olmoma Holdings SRL | $75,000 | 50,000 | | 150,000 | | Olmoma Holding Srl |
| | Patrick Miles | $75,000 | 50,000 | | 305,000 | | Patrick (Paddy) William Miles |
| | Pepper Grove Holdings Limited | $1,100,511 | 730,004 | | 1,360,795 | | Pepper Grove Holdings Limited |
| | Kathryn Toller | $67,500 | 45,000 | | 207,000 | | Kathryn Toller |
| | Pershing Nominees Ltd a/c COLT | $1,900,135 | 1,467,594 | | 1,251,458 | | ROY GRANGER WILLIAMS |
| | Puddles 2 Limited | $1,733,662 | 706,327 | | 71,077 | | Puddles 2 Limited |
| | Richard F.B. Milligan-Manby | $50,000 | 33,333 | | 26,874 | | Richard Milligan-Manby |
| | Rupert Corfield | $300,000 | 20,000 | | - | | Rupert John Conyngham Corfield |
| | S F Booth | $213,310 | 87,689 | | 10,600 | | Simon Finch Booth |
| | Tarlton Parsons | $100,000 | 47,667 | | - | | Tarlton (Terry) Fleming Parsons III |
| | Timothy D.K. Simond | $292,500 | 195,000 | | 643,634 | | Timothy David Kyrle Simond |
| | Tracy Anne Pernice | $25,000 | 16,667 | | 35,694 | | Tracy Anne Pernice |
| | Victoria Alice Singer | $30,000 | 20,000 | | 108,020 | | Victoria Alice Singer |
| | Walmer Capital Limited | $53,125 | 35,417 | | 321,300 | | Walmer Capital Limited |
| | Windsor International Corporation | $600,000 | 400,000 | | 2,500,000 | | Windsor International Corporation |
| | Total | $23,338,636 | 14,653,720 | | 28,300,363 | | |

## ANNEX II

## NEWCO CAPITALIZATION TERMS AND CONDITIONS

- Incorporation.  Newco shall be incorporated as a Delaware entity.

- Bylaws.  Newco shall be governed by bylaws or an operating agreement (the "Bylaws") in form and substance reasonably and mutually satisfactory to the Parties and shall include customary minority shareholder protections including tag along rights and pre-emption rights.

- Board of Managers.  With respect to the management of Newco, the Bylaws shall provide, among other things:
    - Newco shall be managed by a board of directors (the "Board").
    - The Board shall initially consist of three (3) persons.
    - SLS shall have the power to nominate not more than one (1) person to the Board (who shall be the Executive Chairman of the Board).
    - Hawk shall have the power to nominate not more than two (2) persons to the Board (one of whom shall be the Chief Executive Officer of Newco).
    - Each of the Executive Chairman and the Chief Executive Officer of Newco shall earn an annual salary of not more than $250,000 per year (unless otherwise agreed to by the unanimous consent of the Board).

- Business Plan. The board will provide a detailed business plan to all parties within 30 days of incorporation including a pro-forma balance sheet.

## CONTRIBUTION AND EXCHANGE

- Contribution of SLS Obligations.

    - Simultaneously upon the formation of Newco as described in Section 2(a), SLS shall contribute to Newco all of the outstanding SLS Obligations as of the date of the formation of Newco (the "Formation Date"), including all accrued but unpaid interest, fees and expenses allowable under the SLS documentation through such date (the "SLS Contributed Obligations").

    - In exchange for the contribution of the SLS Contributed Obligations, SLS shall receive from Newco: (i) a secured promissory note, executed by Newco in favor of SLS, maturing on the date that is three (3) years following its execution, in a principal amount equal to the total amount of the net amount funded in cash by SLS to StreamTV (the "SLS Net Funded Amount") and bearing interest at 3.00% per annum (the "New SLS Note"); (ii) Common Stock of Newco in an amount equal to its current StreamTV common shares, plus a number of common shares as set forth in Section

[Exhibit A]

> 1.1(g) hereof, and (iii) Warrants of Newco in an amount equal to SLS's current Warrants issued to it by StreamTV on the terms described below.

- Contribution of Hawk Obligations.

    o Simultaneously upon the formation of Newco as described in Section 2(a), Hawk shall contribute to Newco all of the outstanding Hawk Obligations as of the Formation Date, including all accrued by unpaid interest, fees and expenses allowable under the Hawk documentation through such date (the "Hawk Contributed Obligations"; and, together with the SLS Contributed Obligations, the "Contributed Obligations").

    o In exchange for the contribution of the Hawk Contributed Obligations, Hawk shall receive from Newco: (i) a secured promissory note, executed by Newco in favor of Hawk, maturing on a date that is three (3) years following its execution, in a principal amount equal to the total amount of the net amount funded in cash by Hawk to StreamTV (the "Hawk Net Funded Amount"), and bearing interest at 3.00% per annum (the "New Hawk Note"); (ii) Common Stock of Newco in an amount equal to Hawk's current share ownership of Newco, plus a number of common shares equal to the number of common shares as set forth in Section 1.1(f) hereof; and (iii) Warrants of Newco in an amount equal to Hawk's current Warrants issued to it by StreamTV on the terms described below.

- Pari Passu. Any and all of the liens and security interests granted to SLS and Hawk in connection with the New SLS Note and New Hawk Note, respectively, shall be of equal priority and rank *pari passu* in all respects.

- Conversion Option. Each of the New SLS Note and New Hawk Note shall be convertible at any time by the holder thereof into such number of common units of Newco at the greater of (i) $1.50 per common share, or (ii) the same terms and conditions as the most recent offering by the Company (the "Conversion Option"); provided, however, that in the case of (ii), the amount convertible by each of SLS and Hawk in respect to any particular offering shall be no greater than the total amount of such offering. The New SLS Note and New Hawk Note may be converted in whole or in part from time to time. Other terms and conditions of the Conversion Option shall be set forth in the definitive documentation governing the New SLS Note and New Hawk Note, and the terms of the Conversion Option shall be identical as to the New SLS Note and the New Hawk Note.

- Amendments to the New SLS Note and the New Hawk Note. No amendment, modification or other change may be made to any of the terms and conditions contained in, and no action may be made by either SLS or Hawk to enforce, the New SLS Note or the New Hawk Note without the unanimous written consent of both SLS and Hawk.

[Exhibit A]

- Additional Shareholders. Promptly following the Formation Date, SLS and Hawk shall be issued shares in Newco equal to their previously-issued shares and warrants in the Company, and shall cause Newco to offer to all other shareholders of Stream TV as of the date Newco is incorporated (including the Investors as per Annex I and other than, for the avoidance of doubt, any person or entity affiliated with Mathu and/or Raja Rajan, or any such other party as deemed necessary by both SLS and Hawk, and any affiliated entities) for subscription Common Stock and Warrants at a price of $0.00 per share of Common Stock (with no additional payment for a number of such Stream TV shareholders' associated Warrants pro rata to the number of its shares so purchased), and otherwise on the terms and conditions set forth herein, but only upon the execution and delivery by each such shareholder of a release for the benefit of the Investors, SLS and Hawk, on terms and conditions mutually agreeable to each of the Investors, SLS and Hawk; provided, however, that the issued and outstanding shares of Common Stock (following any issuances pursuant to this Section 2(g)), may not exceed 150,000,000 shares.

- Warrant Terms.

    - 1/2 of Warrants exercisable at $1.00/share with a maturity date 3 months after the Formation Date
    - 1/2 of Warrants exercisable at $1.50/share with a maturity date 12 months after the formation date.
    - Warrant holders to have the option prior to maturity of any option to exchange any 6 such warrants for 1 warrant with the same strike price, expiring 3 years from the date of original issuance

- Shareholders Agreement.   Subject to final terms set forth in definitive documentation, each shareholder shall, as part of its subscription for shares or otherwise, enter into a Shareholders Agreement that shall govern the material terms of ownership of Newco, including but not limited to control of Newco, protections from anti-dilution and transferability of shares.

[Exhibit A]