**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (MDC) |
| In re:<br><br>Technovative Media, Inc.,<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (MDC)<br><br>(Joint Administration Requested) |

**EMERGENCY MOTION FOR ENTRY OF AN ORDER ENFORCING THE**
**AUTOMATIC STAY AND FOR SANCTIONS FOR WILLFUL STAY VIOLATION**

Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative"), the above-captioned debtors and debtors-in-possession (collectively, "Debtors"), file this emergency motion for entry of an order enforcing the automatic stay and for sanctions for a willful violation (the "Motion"), and in support state:

**PRELIMINARY STATEMENT**

Through these chapter 11 cases, Debtors intend to restructure their debt so that their debt service is reduced to a level that will allow Debtors to sustain long term operations, and Debtors have also identified investors who are willing to invest in Debtors in conjunction with these chapter 11 cases. Debtors should be afforded all protections under the Bankruptcy Code to allow Debtors an opportunity to propose their plan that will address the claims of all creditors during Debtors' exclusivity period to propose a plan of reorganization. These protections include the benefit of the section 362 automatic stay, which is designed to provide Debtors with a "breathing spell" from

1

92528521.3

litigation and provide Debtors with an opportunity to formulate a plan of reorganization for the benefit of all creditors.

In order for Debtors to be successful in these chapter 11 cases, Debtors need possession and use of all estate property, including their Bonding Equipment (defined below), which is essential to Debtors' ability to receive client orders and commence production to fulfill such orders. After obtaining information from Technovative's displaced state court receiver regarding the location of the Bonding Equipment in China, Debtors quickly located the Bonding Equipment and attempted to make arrangements for the retrieval of the Bonding Equipment. However, Debtors were met with opposition to their possession and control over the Bonding Equipment which is owned by Stream. Stream was advised by the landlord in China that the Bonding Equipment would not be released to Stream until the landlord received the consent of "the U.S. Company," which consent the landlord said was not given. Mr. Shadron L. Stastney, along with SeeCubic, Inc. and SeeCubic B.V., have direct knowledge of Debtors' bankruptcy filing, yet the actions of Mr. Stastney, acting on behalf of SeeCubic, Inc. and purportedly on behalf of SeeCubic B.V., evidence his intent to exercise control over estate property and interfere with Debtors' possession and control over property of the estate in clear violation of the automatic stay. Their actions have caused and continue to substantial damages to Debtors' estates and necessitated the filing of this Motion.

## BACKGROUND

**A. The Bankruptcy Filing**

1. On March 15, 2023 (the "Petition Date"), Debtors filed voluntary petitions for relief with the Court under chapter 11 of title 11 of the Bankruptcy Code.

2

92528521.3

2.  Since the Petition Date, Debtors have been operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases") and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

**B. Overview of Debtors**

4.  Debtors were founded in 2009 as "new media" companies to pursue new technologies that enhance user entertainment and communications experiences. The technology that Debtors are currently seeking to launch allows TV and tablet manufacturers to convert two dimensional devices into three dimensional without the need for viewing glasses. Debtors are incorporated in Delaware and have a principal executive office located in Philadelphia, Pennsylvania.

5.  Technovative Media, Inc. is a wholly owned subsidiary of Stream TV Networks, Inc. Through their global engineering team, Debtors have developed breakthrough glasses-free 3D display technology launched under the trade name Ultra-D™ ("Ultra-D"). Ultra-D is a proprietary combination of hardware and software which creates a natural, comfortable and immersive Glasses-Free 3D viewing experience. Resulting from years of research and development in the field of 3D optics, multi-view rendering and content development solutions, Ultra-D solves the two biggest limitations of the market's current 3D technology: the need to wear special glasses and the scarcity of 3D content.

6.  As a core technology, Ultra-D can be applied to panels of nearly any type and size and is compatible with touch screen features as well. This means that consumers can have a seamless experience with virtually any device – televisions, tablets, smartphones, portable game

players, laptops, all-in-one computers and more. Stream's mission is to enable superior consumer media experiences by advancing the evolution of display technology from a flat 2D world to an immersive one made possible in 3D without glasses.

7. Debtors intend to generate revenue from providing 3D components to final market assemblers (such as TV manufacturers and tablet makers). Debtors view their approach as similar to the way in which major computer manufacturers use processors in their products and note their products as such. Debtors have a term sheet for a distribution and supply chain finance agreement with Visual Semiconductor, Inc. which they intend to consummate in the ordinary course of business and with court approval as applicable.

8. Debtors intend to restructure their debt through these Chapter 11 Cases so that their debt service is reduced to a level that will allow Debtors to sustain their operations for the long term and have identified investors who are willing to invest in Debtors once Debtors pursue these Chapter 11 Cases. Debtors also intend to complete recovery of assets which were previously and improperly transferred in contravention of express provisions of its corporate charter as confirmed by the Delaware Supreme Court through a decision in June 15, 2022. *See Stream TV Networks, Inc. v. Seecubic, Inc.*, No. 360, 2021, p. 3 (Del. June 15, 2022) (Holding that "a majority vote of Class B stockholders is required under Stream's charter" to "transfer pledged assets to secured creditors in connection with what was, in essence, a privately structured foreclosure transaction").[1] In holding that its corporate charter had been violated, the Delaware Supreme Court noted that

---

[1] The Delaware Supreme Court also held that the "agreement authorizing the secured creditors to transfer Stream's pledged assets . . . is invalid because Stream's unambiguous certificate of incorporation required the approval of Stream's Class B stockholders" and there was no "Board Only insolvency exception" to Section 271 of the DGCL, and even if there had been a board-only insolvency exception to Section 271, it had been superseded. *Id.*. at p. 34. The Delaware Supreme Court's opinion definitively established that there had been a improper transfer of assets, in violation of Debtor's corporate charter. *Id.* at p. 53 n. 180 ("We note that Section 271 presents no barrier to the parties' foreclosure proceedings in Superior Court (which are presently stayed pending this appeal), and no party has argued that judicial foreclosure proceedings implicate Section 271").

4

92528521.3

Stream's charter was "unambiguous" and, ergo, "enforcing the unambiguous [c]harter provision [requiring Class B stockholders be allowed to vote on the asset transfer] is consistent with our policy of seeking to promote stability and predictability in our corporate laws. . . ." *Id*. at pp. 53-54.  Debtors had grave concerns that the Supreme Court mandate was not being followed, particularly due to the passage of time without full return of its assets, and those fears were confirmed recently. Valuable intellectual property and trade secrets are in danger of being transferred to third parties or are not being properly monitored and exposure to liability from the collapse of operations of Debtors' foreign subsidiaries due to the failure to make payments by third parties mandated by the Delaware Chancery Court to preserve those assets.

9. A detailed description of Debtors and their businesses, including facts and circumstances giving rise to these Chapter 11 Cases, is set forth in the *Declaration of Mathu Rajan in Support of Stream TV Networks, Inc. and Technovative Media, Inc. Chapter 11 Petition, Supporting Emergency Relief, and First Day Motions.*

**C. Debtors' Bonding Equipment**

10. On March 12, 2015, Stream entered into a purchase agreement for bonding equipment (the "Bonding Equipment") from Iinuma Gauge Manufacturing Company. The cost for two systems – a Small Production Line ("SPL") and a Mass Production Line ("MPL") – was a total of 935,000,000 Japanese yen.[2] A true and correct copy of the Sales Agreement between Stream and Iinuma is attached hereto as **Exhibit A**. The Bonding Equipment is essential to Debtors' business.  The SPL has certain manual operation functions and limited capacity, and it was previously used by Stream for small production runs while the MPL was being built. The MPL

---

[2] Based on the then-conversion rate of 116.4:1, the purchase price was approximately USD $8,032,646.

5

92528521.3

is much larger (the size of a room with many separate robotic stations), includes more automation, and has the capacity to bond 14,000 units per month. Stream installed and tested the MPL at a Chinese OEM production facility beginning in 2016 and achieved a 96% yield while bonding 4,000 units for its initial customers. Photos of the bonding equipment – installed at the OEM factory and subsequently packed for transport to a planned Stream facility – are shown in the attached **Exhibit B**.

11. At no time has Stream voluntarily transferred, sold, or otherwise disposed of the Bonding Equipment. Indeed, as the Delaware Supreme Court held, any transfer of Debtors' assets, including the Bonding Equipment, to Debtors' secured creditors in conjunction with a collusive and illegal agreement, was impermissible as it was not approved by Stream's necessary shareholders pursuant to its corporate charter.

12. Immediately following the Petition Date, upon the request of Stream, the state court receiver provided Stream with the location of the Bonding Equipment in China so that Stream could retrieve it. Stream contacted the landlord at the address provided by the receiver and the landlord confirmed that the Bonding Equipment was located at such address. Then, on March 24, 2023, when Stream contacted the landlord again to coordinate the removal of the Bonding Equipment to a new factory location, the landlord informed Stream that it would not release the equipment to Stream without express permission from "the U.S. company" that placed the Bonding Equipment in the storage facility and "the U.S. company" was not providing such consent. Upon information and belief, the warehouse lease where the Bonding Equipment is being stored was executed by SeeCubic B.V., a subsidiary of Stream, in coordination with SeeCubic, Inc., an entity controlled by Shadron Stastney. In any event, no company, other than Debtors, controls the Bonding Equipment which is under the jurisdiction of this Court.

6

92528521.3

13. Despite there being no dispute that Stream is the owner of the Bonding Equipment, Mr. Stastney, SeeCubic, Inc., and SeeCubic, B.V. are inexcusably exercising control over the Bonding Equipment—property of the estate—in violation of the automatic stay and interfering with the landlord's release of the Bonding Equipment to Stream.

14. On March 27, 2023, Debtors' counsel sent an email to counsel for SeeCubic, Inc., Eben P. Colby, Esq., advising Mr. Colby that Mr. Stastney was preventing Stream from taking possession of its Bonding Equipment located in China, and that this was a clear violation of the automatic stay and such conduct should cease immediately, as it is causing substantial damages to Stream. Prior to the filing of this Motion, Debtors' counsel received no response to the March 27 email. Yet, Debtors still do not have access to their Bonding Equipment.

15. The failure of Debtors to immediately obtain possession and use of the Bonding Equipment will likely result in Debtors not being able to fulfill current customer orders that they have received post-petition and also prevent Debtors from obtaining additional customer orders. Debtors' advancement and timelines in these Chapter 11 Cases will also be delayed because Debtors' exit from bankruptcy will be impacted by its inability to fulfill its customers' demands.

**RELIEF REQUESTED AND BASIS THEREFOR**

**A. The Court Should Enforce the Automatic Stay to Protect Debtors' Estate Property**

The automatic stay in section 362(a) is essential to the effective reorganization of a debtor and is one of the fundamental protections provided by the bankruptcy laws. Indeed, as the legislative history explains:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors . . . . The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted

7

92528521.3

>first would obtain payment of the claims in preference to and to the detriment of other creditors.

*See* H.R. REP. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6313. The automatic stay is one of the most significant protections that the Bankruptcy Code affords a debtor. *Midlantic Nat'l Bank. v. N.J. Dep't of Envt'l Prot.,* 474 U.S. 494, 503 (1986); *see also In re Drexel Burnham Lambert Group Inc.,* 113 B.R. 830, 837 (Bankr. S.D.N.Y. 1990) ("automatic stay is key to the collective and preservative nature of a bankruptcy proceeding"). The automatic stay is designed to, among other things, give the debtor a "breathing spell" after the commencement of a chapter 11 case, shielding debtors from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring. *See Taylor v. Slick,* 178 F.3d 698, 702 (3d Cir. 1999), *cert. denied,* 528 U.S. 1079 (2000).

The automatic stay broadly extends to all matters which may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtors have the opportunity to rehabilitate and reorganize their operation. *See Manville Corp. v. Equity Sec. holders Comm.* (*In re Johns-Manville Corp.*), 801 F.2d 60, 62-64 (2d Cir. 1986); *see also Fid. Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 53 (2d Cir. 1976) ("Such jurisdiction is 'necessary to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.'") (citation omitted). Indeed, the automatic stay is "undeniably broad" and encompasses "all legal obligations of the debtor, no matter how remote or contingent." *In re Baldwin-United Corp.,* 57 B.R. 759, 763-64 (S.D. Ohio 1985) (*quoting* H.R. Rep. No. 595, 95th Cong., 2d Sess. 309).

The automatic stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Pursuant to Section 541(a) of the Bankruptcy Code, "property of the estate" includes "all legal or

8

92528521.3

equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *see also ACandS, Inc. v. Travelers Cas. and Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) ("The interests classified as 'property of the estate' protected by § 362(a)(3) are defined by 11 U.S.C. § 541."). Further, Section 541 of the Bankruptcy Code comprises such property "wherever located and by whomever held." 11 U.S.C. § 541. In accord with the broad language of this section, courts have universally held that property of the estate extends to any property located worldwide. *See, e.g., Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir. 1998) (explaining that property of the estate "includes property outside the territorial jurisdiction of the United States"); *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996) (noting that "wherever located" is broadly construed "to include property located in and outside of the U.S.").

As noted above, the scope of an estate's property interests is broad. Here, despite the Bonding Equipment being located in China, it is indisputable that the Bonding Equipment is property of the estate and subject to the protections of the automatic stay and the jurisdiction of this Court. Despite this, Mr. Stastney, SeeCubic, Inc., and SeeCubic, B.V. are impermissibly and unlawfully attempting to exert control over Debtors' Bonding Equipment and prevent Debtor from exercising its control. Their goal is clear, as they want to prevent Debtors from succeeding in these Chapter 11 Cases and be unable to timely fulfill current and future customer purchase orders.

Debtors respectfully request that this Court enter an order enforcing the automatic stay, instructing Mr. Stastney, SeeCubic, Inc., and SeeCubic, B.V. to cease taking any act to obtain possession of the Bonding Equipment or to exercise control over the Bonding Equipment, and compelling Mr. Stastney, SeeCubic, Inc., and SeeCubic, B.V. to cooperate in the release of the Bonding Equipment to Debtors.

### B. The Violations of the Automatic Stay Warrant an Award of Damages in Favor of Debtors

Section 362(k)(1) of the Bankruptcy Code mandates that "an individual injured by any willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added). The term "individual" in Section 362(k) of the Bankruptcy Code includes corporate debtors. *See In re Atl. Bus. & Cmty. Dev. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990) (citing *Budget Service Co. v. Better Homes of Va.*, 804 F.2d 289, 292 (4th Cir. 1985)).

"To succeed on a 'willful' stay-violation claim, the debtor must prove: (1) a violation of the stay occurred; (2) the creditor had knowledge of the bankruptcy case when acting; and (3) the violation caused actual damages." *Marzullo v. Rubin*, 2014 WL 3844676, *2 (Bankr. D.N.J. 2014) (citing *Lienhard v. Leighton Ambulance Assoc. (In re Lienhard)*, 498 B.R. 443, 450 (Bankr. M.D. Pa. 2013)). Moreover, "[a] debtor must prove these elements by a preponderance of the evidence." *Id.* All three elements are present here.

First, as noted above, a stay violation has occurred.

Second, Mr. Stastney, SeeCubic, Inc., and SeeCubic, B.V. cannot feign ignorance of the Chapter 11 Cases, as they have knowledge of the Chapter 11 Cases through direct communication from Debtors' representatives and through counsel. Willfulness is satisfied "by showing simply that the offending party knew about a debtor's bankruptcy but proceeded with the stay violation nonetheless." *In re Miller*, 447 B.R. 426, 433 (Bankr. E.D. Pa. 2011) (citations omitted). Whether Mr. Stastney, SeeCubic, Inc., or SeeCubic, B.V. had a "good faith" belief that they had the right to take any act to obtain possession of the Bonding Equipment or to exercise control over the Bonding Equipment post-petition is "irrelevant" to the question of whether the creditor has willfully violated the stay. *See*, *e.g.*, *In re Dean*, 490 B.R. 662, 673 (Bankr. M.D. Pa. 2013) ("It is

axiomatic that 'a creditor's good faith belief that it had a right to [a debtor's] property is irrelevant' to the question of whether the creditor has willfully violated the stay.") (quoting *In re Johnson,* 501 F.3d 1163, 1172 (10th Cir. 2007)). "A creditor who presumes to 'unilaterally determine the scope and effect of the automatic stay' does so at his peril." *Dean*, 490 B.R. 662, 673 (citing *In re Diviney,* 225 B.R. 762, 777 (10th Cir. BAP 1998); *In re Pachman,* 2010 WL 1489914, *4 (No. 09–37475, Bankr. S.D.N.Y. April 14, 2010)).

Finally, the stay violations have caused damage to Debtors and may cause additional damage if the stay violation is not immediately remedied. While Debtors are still attempting to determine the full scope of damages, at a minimum, the damages thus far have been the incurrence of attorneys' fees and costs to draft and prosecute this Motion. "[E]ven innocent and well-grounded violations of the automatic stay should give rise to recovery of attorneys' fees when a debtor is required to resort to a court action to vindicate rights." *Rodriguez*, 2012 WL 589553, *4 (quoting *In re McNeil*, 128 B.R. 603, 614 (Bankr. E.D. Pa. 1991) (internal citation omitted)). Indeed, "[s]ome courts have required the payment of attorneys' fees and costs for a creditor's willful violation of the automatic stay even if the debtor suffered no other compensable harm." *Rodriguez*, 2012 WL 589553, *4 (citing *In re Heidkamp,* 334 B.R. 713 (Bankr. M.D. Fla. 2005)). Section 362(k) is not a typical fee-shifting statute, but rather provides for recovery of damages *including* attorneys' fees, not damages *and* attorneys' fees. *Rodriguez*, 2012 WL 589553, *5 (citing *In re Thompson,* 426 B.R. 759, 765 (Bankr. N.D. Ill. 2010)). Thus, "attorneys' fees under § 362(k) are an element of damages when a party seeks to remedy an automatic stay violation." *Rodriguez*, 2012 WL 589553, *5 (citing *In re Butts,* 350 B.R. 12, 24 n. 12 (Bankr. E.D. Pa. 2006)).

Debtors have established all elements of a willful violation of the automatic stay.

11

## CONCLUSION

For the reasons set forth above, Debtors respectfully request that the Court enter an order (i) enforcing the automatic stay, (ii) requiring SeeCubic, Inc. and SeeCubic B.V., and all agents or representatives of the foregoing, including Shadron Stastney, to cease from taking any action to obtain possession of or exercise control over the Bonding Equipment and from interfering with Debtors' possession and use of the Bonding Equipment, and (iii) reserve ruling on Debtors' request for an award of damages, including punitive damages and attorneys' fees and costs, based on the willful violations of the automatic stay; and (iv) granting such other and further relief as the Court deems just and appropriate.

## REQUEST FOR AN EMERGENCY HEARING

Debtors request a hearing on an emergency basis. The Bonding Equipment is integral to the success of Debtors and their ability to achieve a successful plan of reorganization. The failure to immediately have the Bonding Equipment will likely result in Debtors losing current client purchase orders and will impact Debtors' ability to obtain future purchase orders. Further, Debtors' ability to obtain funding in these Chapter 11 Cases is premised on Debtors' ability to commence production of glasses-free 3D modules for integration in consumer and commercial video products, which cannot be achieved unless and until Debtors have possession of the Bonding Equipment.

On March 27, 2023, Debtors' counsel reached out to counsel for Mr. Stastney and SeeCubic, Inc., Eben P. Colby, Esq., advising him of the stay violation and Debtors' counsel received no response. On the evening of March 28, 2023, Debtors' counsel advised Mr. Colby that Debtors would be seeking expedited relief with the Court to remedy the stay relief violation regarding the Bonding Equipment.

12

92528521.3

Date: March 28, 2023 	Respectfully submitted,

/s/ Rafael X. Zahralddin-Aravena
Rafael X. Zahralddin-Aravena (PA Bar No. 71510)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
550 E. Swedesford Road, Suite 270
Wayne, PA 19087
Telephone: (302) 985-6000
Facsimile: (302) 985-6001
Rafael.Zahralddin@lewisbrisbois.com

-and-

Vincent F. Alexander (admitted *pro hac vice*)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
110 SE 6th Street, Suite 2600
Fort Lauderdale, FL 33301
Telephone: (954) 728-1280
Facsimile: (954) 678-4090
Vincent.Alexander@lewisbrisbois.com

-and-

Bennett G. Fisher (pro hac pending)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
24 Greenway Plaza, Suite 1400
Houston, TX 77046
Telephone: (346) 241-4095
Bennett.Fisher@lewisbrisbois.com

*Proposed Counsel to Debtors*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 28, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notice of Electronic Filing generated by CM/ECF on all parties who are authorized to receive electronically Notice of Electronic Filing in this bankruptcy case.

/s/ Rafael X. Zahralddin-Aravena
Rafael X. Zahralddin-Aravena

13

92528521.3