## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (MDC) |
| In re:<br><br>Technovative Media, Inc.,<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (MDC)<br><br>(Joint Administration Requested) |

**DEBTORS' (I) OBJECTION TO REQUEST FOR EXPEDITED CONSIDERATION PURSUANT TO LOCAL RULE 5070-1(g) OF THE MOTION OF HAWK INVESTMENT HOLDINGS LTD.  (I) PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE EITHER (A) (1) TO DISMISS THE DEBTORS' CHAPTER 11 CASES OR (2) TO CONVERT SUCH CASES TO CASES UNDER CHAPTER 7 OR, (B) IN THE ALTERNATIVE, PURSUANT TO SECTION 1104(a) OF THE BANKRUPTCY CODE TO APPOINT A CHAPTER 11 TRUSTEE; AND (II) REQUEST FOR STATUS CONFERENCE[1]**

Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative"), the above-captioned debtors and debtors-in-possession (collectively, "Debtors"), hereby object to Hawk Investment Holding Ltd.'s ("Hawk") request for an expedited hearing on the *Motion of Hawk Investment Holdings Ltd. (I) Pursuant to Section 1112(b) of the Bankruptcy Code Either (A)(1) to Dismiss the Debtors' Chapter 11 Cases or (2) to Convert Such Cases to Cases Under Chapter 7 or, (B) in the alternative, Pursuant to Section 1104(a) of the Bankruptcy Code to Appoint a Chapter 11 Trustee* (the "Motion")[2], and in opposition state:

---

[1] Debtors reserve all rights to object to the substance of the Motion.

[2] The Motion was filed in each of Debtors cases, D.I. 83 in Bky. No. 23-10763 (MDC) and D.I. 71 in Bky. No. 23-10764 (MDC).

93180480.3

## PRELIMINARY STATEMENT

In the Motion, Hawk argues that these Chapter 11 Cases should either be dismissed or converted to chapter 7 cases or a chapter 11 trustee should be appointed. Debtors take the allegations and relief sought in the Motion very seriously. However, Debtors believe that the Motion lacks merit and is just another wrongful attempt by Hawk and other parties, including, SeeCubic, Inc., Shadron L. Stastney, and SLS Holdings VI, LLC (collectively, the "Hawk Parties"), to usurp control of Debtors and strip Debtors of their valuable assets for the Hawk Parties' benefit and to the detriment of all other interested parties in these Chapter 11 Cases. Moreover, the wrongful actions of the Hawk Parties have created a false sense of urgency in addressing the Motion.  Debtors should have more than 6 days to respond to the legal and factual issues raised in the 66 page Motion, as such a short time frame to respond is unfairly prejudicial to Debtors.

Since these Chapter 11 Cases were filed, the Hawk Parties have sought to disrupt Debtors' reorganization efforts. As detailed in Debtors' previous filings with this Court, the Hawk Parties have committed numerous violations of the automatic stay and have refused to turn over Debtors' assets despite repeated demands. Additionally, the Hawk Parties seem intent on engaging in scorched earth litigation tactics in order to prevent Debtors from being able to focus on their business operations. The Court should not allow this conduct to continue and should reign in the Hawk Parties to allow Debtors a meaningful opportunity to reorganize.

Through these Chapter 11 Cases, Debtors intend to restructure their debt so that their debt service is reduced to a level that will allow Debtors to sustain long term operations. Indeed, a successful reorganization would result in any claims of the Hawk Parties' being addressed as part of Debtors' chapter 11 plan. Debtors have already obtained a purchase order in excess of $12

93180480.3

million with more to come. The additional purchase orders would come much quicker if the Hawk

Parties ceased interfering with Debtors' business operations and allowed Debtors to obtain their

assets, including an optical bonding machine located in China and access to intellectual property

in Debtors' subsidiaries in the Netherlands. The current purchase order, once fulfilled, will be more

than sufficient to wipe out any claim of SLS, and Debtors believe that there will be adequate value

to address the claims of Hawk (whether Hawk's claim is determined to be debt and/or equity) and

other secured and unsecured creditors through Debtors' eventual chapter 11 plan. If the Hawk

Parties truly wanted to be repaid to the extent of any valid debt, then their interference with these

Chapter 11 Cases would cease immediately. Instead, the Hawk Parties continue to create false

emergencies to interfere with Debtors' ability to reorganize and operate their subsidiaries with the

goal of attempting to take over Debtors.

No basis exists to consider the Motion on an expedited basis, and the Court should enter

an appropriate briefing and hearing schedule on the Motion to allow Debtors adequate time to

respond to the 66 page Motion and engage in the necessary discovery to resolve the myriad of

legal and factual issues raised by the Motion. Debtors respectfully request that the Court conduct

a status conference on April 11, 2023, to discuss continuing the hearing on the Motion currently

scheduled for April 14, 2023, and Debtors' related response deadline.

## BACKGROUND

### A.  The Bankruptcy Filing

1.      On March 15, 2023 (the "Petition Date"), Debtors filed voluntary petitions for relief

with the Court under chapter 11 of title 11 of the Bankruptcy Code. Debtors filed in the Eastern

District of Pennsylvania because that is the location of their principal place of business.

93180480.3

2.      Since the Petition Date, Debtors have been operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases") and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

**B.  Overview of Debtors**

4.      Debtors were founded in 2009 as "new media" companies to pursue new technologies that enhance user entertainment and communications experiences.  The technology that Debtors are currently seeking to launch allows TV and tablet manufacturers to convert two dimensional devices into three dimensional without the need for viewing glasses. Debtors are incorporated in Delaware and have a principal executive office located in Philadelphia, Pennsylvania.

5.      Technovative Media, Inc. is a wholly owned subsidiary of Stream TV Networks, Inc. Through their global engineering team, Debtors have developed breakthrough glasses-free 3D display technology launched under the trade name Ultra-D™ ("Ultra-D"). Ultra-D is a proprietary combination of hardware and software which creates a natural, comfortable and immersive Glasses-Free 3D viewing experience. Resulting from years of research and development in the field of 3D optics, multi-view rendering and content development solutions, Ultra-D solves the two biggest limitations of the market's current 3D technology: the need to wear special glasses and the scarcity of 3D content.

6.      As a core technology, Ultra-D can be applied to panels of nearly any type and size and is compatible with touch screen features as well. This means that consumers can have a seamless experience with virtually any device – televisions, tablets, smartphones, portable game

93180480.3

players, laptops, all-in-one computers and more. Stream's mission is to enable superior consumer media experiences by advancing the evolution of display technology from a flat 2D world to an immersive one made possible in 3D without glasses.

7.      Debtors intend to generate revenue from providing 3D components to final market assemblers (such as TV manufacturers and tablet makers). Debtors view their approach as similar to the way in which major computer manufacturers use processors in their products and note their products as such. Debtors have a term sheet for a distribution and supply chain finance agreement with Visual Semiconductor, Inc. which they intend to consummate in the ordinary course of business and with court approval as applicable.

8.      Debtors intend to restructure their debt through these Chapter 11 Cases so that their debt service is reduced to a level that will allow Debtors to sustain their operations for the long term and have identified investors who are willing to invest in Debtors once Debtors pursue these Chapter 11 Cases. Debtors also intend to complete recovery of assets, including assets which were previously and wrongfully transferred to SeeCubic, Inc. ("SeeCubic") in contravention of express provisions of Stream's corporate charter as confirmed by the Delaware Supreme Court through a decision on June 15, 2022. *See Stream TV Networks, Inc. v. Seecubic, Inc.*, No. 360, 2021, p. 3 (Del. June 15, 2022) (Holding that "a majority vote of Class B stockholders is required under Stream's charter" to "transfer pledged assets to secured creditors in connection with what was, in essence, a privately structured foreclosure transaction").[3] In holding that its corporate charter had

---

[3] The Delaware Supreme Court also held that the "agreement authorizing the secured creditors to transfer Stream's pledged assets . . . is invalid because Stream's unambiguous certificate of incorporation required the approval of Stream's Class B stockholders" and there was no "Board Only insolvency exception" to Section 271 of the DGCL, and even if there had been a board-only insolvency exception to Section 271, it had been superseded. *Id.*. at p. 34. The Delaware Supreme Court's opinion definitively established that there had been an improper transfer of assets, in violation of Debtor's corporate charter. *Id*. at p. 53 n. 180 ("We note that Section 271 presents no

93180480.3

been violated, the Delaware Supreme Court noted that Stream's charter was "unambiguous" and, ergo, "enforcing the unambiguous [c]harter provision [requiring Class B stockholders be allowed to vote on the asset transfer] is consistent with our policy of seeking to promote stability and predictability in our corporate laws. . . ." *Id*. at pp. 53-54. Debtors had grave concerns that the Delaware Supreme Court mandate was not being followed, particularly due to the passage of time without full return of their assets, and those fears were confirmed recently. Valuable intellectual property and trade secrets are in danger of being transferred to third parties or are not being properly monitored and exposure to liability from the collapse of operations of Debtors' foreign subsidiaries due to the failure to make payments by third parties mandated by the Delaware Chancery Court to preserve those assets.

9.    A detailed description of Debtors and their businesses, including facts and circumstances giving rise to these Chapter 11 Cases, is set forth in the *Declaration of Mathu Rajan in Support of Stream TV Networks, Inc. and Technovative Media, Inc. Chapter 11 Petition, Supporting Emergency Relief, and First Day Motions* [ECF No. 48 in Bky. No. 23-10763 (MDC)], which is incorporated herein by reference.

## OBJECTION

In the Motion, Hawk argues that expedited relief is required in order to protect the Debtors' subsidiaries located in the Netherlands. However, as noted in Debtors' previous filings with the Court, it is the Hawk Parties that are interfering with Debtors' efforts to manage its subsidiaries, including those in the Netherlands. Indeed, Mr. Rajan, also the CEO of SeeCubic, B.V., one of Debtors' subsidiaries in the Netherlands, recently flew to the Netherlands to assess the situation

---

barrier to the parties' foreclosure proceedings in Superior Court (which are presently stayed pending this appeal), and no party has argued that judicial foreclosure proceedings implicate Section 271").

93180480.3

and manage the entity on the ground. Upon his arrival, Mr. Rajan was met with immediate resistance from employees and vendors who refused to cooperate, citing recent communications from the Hawk Parties' Dutch law firm which claimed that Mr. Stastney, not Mr. Rajan, was the empowered CEO and director. Further, although with no valid basis to do so and in violation of Debtors' automatic stay, the Hawk Parties initiated proceedings in the Netherlands to interfere with Debtors' operations of SeeCubic B.V. by moving the court there to remove Mr. Rajan as a duly appointed officer and director.

Of significance is the resulting inability of Stream to obtain possession of its valuable optical bonding equipment currently stored in a China warehouse. The only way Stream can gain access to the equipment is with the help of the management of its Dutch subsidiary, but such cooperation has been completely blocked by the Hawk Parties through their interference in the Netherlands. Patric Theune, SeeCubic B.V.'s Head of Technology, specifically stated that he believes Mr. Stastney and the Hawk Parties are the rightful directors and owners of Debtors' equipment and operations based on Mr. Stastney's communications through Dutch law firm De Brauw. Debtors' inability to access, move, and re-install its equipment at the facility of its strategic partner threatens current and future purchase orders that will generate revenue allowing Debtors to reorganize and emerge successfully from chapter 11.

It is the actions of the Hawk Parties that are unnecessarily creating issues in the Netherlands, not any action or inaction by Debtors. Once the Court addresses the Hawk Parties' impermissible interference with Debtors' foreign subsidiaries (a hearing is scheduled for April 14 on Debtors' requested relief), then Debtors will be able to assess and address any operational issues at the subsidiary level and also address any purported funding issues.

93180480.3

The Hawk Parties should not be able to benefit from their own misconduct. On the one hand, the Hawk Parties state that Debtors are not fulfilling their duties by properly managing their subsidiaries, but, on the other hand, the Hawk Parties are actively preventing Debtors from being able to manage subsidiaries which Debtors' own. To be clear, the Hawk Parties have no management rights or ownership interests in any of Debtors' foreign subsidiaries and are merely creditors with disputed claims that will be addressed in these Chapter 11 Cases. The Hawk Parties are the cause of any purported issues in the Netherlands at Debtors' subsidiaries and should not be able to use issues of their own creation as the basis for this Court considering the Motion on an expedited schedule, especially the current schedule.

Given the number of issues raised in the Motion, the scope of relief sought, and the potential impact of any ruling on Debtors' ability to continue with these Chapter 11 Cases, Debtors require more than six days to adequately respond to and defend against the Motion and also take any necessary discovery and obtain evidence to rebut assertions made in the Motion by the Hawk Parties. The current schedule with regards to the Motion is unfairly prejudicial to Debtors and does not allow Debtors sufficient time to adequately defend the Motion.

Just like Hawk's other requests for expedited relief in these Chapter 11 Cases, Hawk seeks to blow up Debtors Chapter 11 Cases and proceed on a path of its choosing solely to benefit itself and in an effort to destroy Debtors' valuable businesses. The Court should deny Hawk's request to consider the Motion on an expedited basis. The Court should enter an appropriate briefing and hearing schedule which allows Debtors sufficient time to adequately respond to the Motion and engage in discovery necessary to resolve the issues raised in the Motion. No basis exists for expedited relief.

93180480.3

## **REQUEST FOR STATUS CONFERENCE**

The Court has scheduled a hearing on the Motion for April 14, 2023, and provided Debtors with a deadline of April 12, 2023, to respond to the Motion. As noted above, the Motion, excluding exhibits, is 66 pages and raises numerous legal and factual issues that Debtors need to and intend to address. However, Debtors submit that 6 days to respond to the Motion is insufficient, especially given the recent holidays (Passover and Easter) and the fact that Debtors' principal, Mathu Rajan, has been traveling internationally in an effort to address issues at Debtors' subsidiaries that were caused by Mr. Stastney and the Hawk Parties. Debtors request that the Court conduct a status conference on April 11, 2023, to discuss a more appropriate hearing date and briefing schedule.

**WHEREFORE**, Debtors respectfully request that the Court entering an order (i) denying Hawk's request to consider the Motion on an expedited basis; (ii) canceling the hearing on the Motion currently scheduled for April 14, 2023; (iii) providing for a briefing schedule more in line with the numerous issues raised in the Motion so that Debtors can adequately respond to the Motion and take any necessary discovery; and (iv) scheduling a status conference on the Motion for April 11, 2023.

Date: April 10, 2023

Respectfully submitted,

/s/ Rafael X. Zahralddin-Aravena
Rafael X. Zahralddin-Aravena (PA Bar No. 71510)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
550 E. Swedesford Road, Suite 270
Wayne, PA 19087
Telephone: (302) 985-6000
Facsimile: (302) 985-6001
Rafael.Zahralddin@lewisbrisbois.com

-and-

Vincent F. Alexander (admitted *pro hac vice*)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
110 SE 6th Street, Suite 2600

9

93180480.3

Fort Lauderdale, FL 33301
Telephone: (954) 728-1280
Facsimile: (954) 678-4090
Vincent.Alexander@lewisbrisbois.com

-and-

Bennett G. Fisher (pro hac pending)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
24 Greenway Plaza, Suite 1400
Houston, TX 77046
Telephone: (346) 241-4095
Bennett.Fisher@lewisbrisbois.com

*Proposed Counsel to Debtors*

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on April 10, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notice of Electronic Filing generated by CM/ECF on all parties who are authorized to receive electronically Notice of Electronic Filing in this bankruptcy case.

        /s/ Rafael X. Zahralddin-Aravena
        Rafael X. Zahralddin-Aravena

93180480.3