**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: <br><br> STREAM TV NETWORKS, INC., <br><br> Debtor, <br><br> HAWK INVESTMENT HOLDINGS LTD., <br><br> Movant, <br><br> v. <br><br> STREAM TV NETWORKS, INC., <br><br> Debtor/Respondent. | CHAPTER 11 <br><br> CASE NO.: 23-10763 MDC |

## **DECLARATION OF CHRISTOPHER A. MICHAELS**

Christopher A. Michaels, of full age, hereby declares pursuant to 28 U.S.C. §1746:

1. My name is Christopher Michaels. I am the President/CEO of Brown & Michaels, PC and represent Rembrandt 3D Holding Ltd. ("Rembrandt") a Nevis corporation. I also represent Rembrandt 3D Corp. ("Rembrandt – Delaware") a Delaware corporation and Stephen Blumenthal personally.

2. I am authorized to make this declaration in opposition to Hawk Investment Holdings LTD.'s ("Hawk") *Emergency Motion for Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code* (the "Motion"), however, I am not admitted to practice in Pennsylvania or before the Eastern District of Pennsylvania District Court.

3. Rembrandt has filed a Complaint For Injunctive Relief And Misappropriation Of Trade Secrets (the "Delaware Complaint") in the United States District Court For The District Of Delaware against Technovative Media, Inc ("Technovative"), Hawk Investment Holdings Ltd. ("Hawk"), and SeeCubic, Inc.("SeeCubic"), and a true copy along with the exhibits is attached as

Exhibit A.

4. In particular, I note exhibit 26 to the Delaware Complaint my prior e-mail to Mr. Caponi, acting as attorney for Hawk, dated August 29, 2022 summarizing Rembrandt's position with respect to protecting Rembrandt's IP and proposing a number of ways that Hawk and Rembrandt could work together.

5. On December 18, 2022 I wrote an email to Ian Liston, Receiver for Technovative, requesting communication about Rembrandt purchasing a large quantity of consumer TVs a and a copy is attached as Exhibit C. While I knew that Rembrandt would have to pay for the entire cost of a production line as our settlement agreement with Stream provides for the right to purchase product "at cost", our project would have justified this expense and Stream and Technovative would have fully covered the cost of starting a production line and be able to generate additional revenue. We received no response to our inquiry and proceeded with our meetings without any information from Technovative. I am not sure how Mr. Liston justified not responding to a request to discuss a large sale, but clearly Technovative and Stream would not have needed to file for bankruptcy if the sale proceeded.

6. Hawk's attorney lists all the people he contacted and provided notice of his motion and notably Rembrandt's attorneys are completely absent from any such notice or communication, yet he clearly is aware of Rembrandt and even identifies Rembrandt as the only creditor of Technovative.

7. Rembrandt's attorney, Neil Wallace, requested an extension of time to respond to Hawk's motion to allow Rembrandt to find Delaware counsel action and a copy of the request and Hawk's denial of our request is attached as Exhibit B. Rembrandt had voluntarily granted Technovative Media, Inc, Hawk Investment Holdings Ltd., and SeeCubic, Inc. requests for extensions in the Delaware Court action.

8. If Hawk is successful in obtaining emergency relief from the automatic stay in this proceeding, then is successful in having the status quo order lifted in Delaware Chancery Court, then Rembrandt will seek emergency relief in the Delaware District Court enjoining any attempts

by Hawk and the other defendants to transfer Rembrandt's IP to others. In other words, granting Hawk's emergency relief in this court, just means requests for emergency relief effectively negating the extraordinary relief requested by Hawk now.

9.  Hawk is a lender that seeks to be repaid its monetary rights to principal and interest by selling assets pledged as security. There seems to be a great deal of dispute regarding whether Hawk's debt has been converted to equity thereby completely removing it as a creditor. Full repayment of Hawk either by monetary compensation or by conversion to equity easily covers any and all harm suffered by Hawk.

10. In contrast, Rembrandt's rights are intellectual property and loss of Rembrandt's trade secrets are inherently not the type of loss that can recovered by monetary relief.

11. Hawk could easily avoid the need for Rembrandt seeking injunctive relief by either agreeing to remove Rembrandt IP from the assets to be transferred or by taking an assignment of the Rembrandt-Stream settlement agreement (see exhibit 2 to the Delaware Complaint). However, removing the Rembrandt IP from the assets of Technovative, Inc. that Hawk is seeking to sell, would leave little if anything of value to be sold, so my guess is that Hawk will continue to seek court assistance to continue with its misappropriation.

12. It is my opinion, that the value of the combined Philips, Rembrandt, and Stream technology is far in excess of the value of any debt owed to Hawk and other creditors of Stream. However, attempting to sell the technology without licenses from Philips and Rembrandt would compromise the valuation of the technology to be almost worthless.

13. It appears that this potential destruction of value is purposeful. While Hawk alleges that it is owed a large amount of money, the only thing better than receiving $160,000,000 in alleged principal and interest, is getting all the technology from a company that was recently valued at over $400,000,000 ($4/share with over a 1,000,000 shares and warrants outstanding prior to Rembrandt litigation).

14. After Rembrandt initiated its litigation to enforce contracts including and NDA and

term sheet the provided for Rembrandt to get 60-80% of Stream in exchanging for providing its technology, Stream's shares dropped to $1.50/share by the time Rembrandt negotiated its settlement term sheet on April 12, 2019 with Shad Stastney acting as Stream's CFO at the time (See exhibit 5 to the Delaware Complaint). The share price had dropped by 62.5% and Stream had lost $250,000,000 in valuation.

15. Rembrandt has closely evaluated the quality of the Stream products and even in the midst of its controversies with Stream purchased early versions of Stream's TVs and Stream provided additional units during and post bankruptcy. The quality of the product has improved over time so the loss in value is not due to the underlying value of the combined Philips/Rembrandt/Stream technology.

16. Hawk and SeeCubic have announced their intention to sell the technology within Technovative in an Article 9 sale. I do not know of any reputable technology company that would purchase rights to the technology with the Rembrandt claims unresolved, so I can not conceive of any reasonable attempt to sell the technology through an Article 9 sale with the fair market value of the technology intact without a license from Philips and Rembrandt.

17. Hawk is seeking to continue to misappropriate Rembrandt's technology, it has not asserted any ownership interest in Rembrandt's trade secrets or patents, so it is either planning to remove Rembrandt's technology, misappropriate Rembrandt's trade secrets, or sell the technology to related party at a purposefully depressed value. If SeeCubic and Hawk are intending to sell the technology at a diminished value to a related party then resolve all the legal deficiencies that they have created and profit from the recovered value, such action needlessly allow them to profit at the expense of all Stream creditors and shareholders.

18. It is my understanding that Stream already has a license from Philips. If the technology assets are left in Technovative and control/ownership of Technovative is left with Stream TV Networks, Inc. ("Stream") then the settlement agreement with Rembrandt would apply and be treated as an executory contract providing both Stream and Technovative with the right to make and sell product under the license from Rembrandt such that Stream and Technovative

would be able to operate as a going concern and provide products to Rembrandt and other customers.

19. If Stream and Technovative were unable to create a viable going concern, a bankruptcy proceeding would have the possibility of a sale of assets that included an assignment of the Rembrandt-Stream settlement agreement with any technology owned by Stream and Technovative thereby maximizing the value of the technology that was being sold thereby paying any and all debt owed to Hawk and other creditors to Stream.

Executed under penalty of perjury this 3rd day of April, 2023.

/Christopher A. Michaels/
Christopher A. Michaels (NY Bar No. 2597375)


/s/ Andrew DeMarco
Andrew DeMarco, Esq. (PA Bar No. 326294)
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
ademarco@devlinlawfirm.com

*Attorneys for Rembrandt 3D Holding Ltd.*

**CERTIFICATE OF SERVICE**

I certify that on April 3, 2023, I caused the attached Declaration to be electronically filed with the Clerk, United States Bankruptcy Court, Eastern District of Pennsylvania, by ECF and one copy of the aforementioned document by way of first class mail or ECF to those persons listed on the attached service list. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me is willfully false, I am subject to punishment.

*/s/ Andrew DeMarco*
Andrew DeMarco, Esq. (PA Bar No. 326294)

**SERVICE LIST**

<u>Attorneys for Hawk Investment Holdings Ltd.</u>
Steven L. Caponi (No. 91881)
K&L Gates LLP
600 King Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 416-7000
steven.caponi@klgates.com
VIA ECF

<u>Attorneys for Debtor</u>
Rafael X. Zahralddin-Aravena
Asher A. Block
LEWIS BRISBOIS BISGAARD & SMITH, LLP
550 E. Swedesford Road, Suite 270
Wayne, PA 19087
Rafael.Zahralddin@lewisbrisbois.com
Asher.Block@lewisbrisbois.com
Via ECF

Vincent F. Alexander (*pro hac vice* pending)
LEWIS BRISBOIS BISGAARD & SMITH, LLP
110 SE 6th Street, Suite 2600
Fort Lauderdale, FL 33301
Vincent.alexander@lewisbrisbois.com
VIA ECF

<u>US Trustee</u>
KEVIN P. CALLAHAN
DOJ-UST
JOHN HENRY SCHANNE
DOJ-UST
Office of The United States Trustee
Robert N.C. Nix Federal Building
900 Market Street Ste. 320
Philadelphia, PA 19107
Kevin.p.callahan@usdoj.gov
John.Schanne@usdoj.gov
VIA ECF

<u>Debtors</u>
Stream TV Networks, Inc.
2009 Chestnut Street, 3rd Floor
Philadelphia, PA 19103
VIA FEDERAL EXPRESS