UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (MDC) |
| In re:<br><br>Technovative Media, Inc.,<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (MDC) |

**REMBRANDT 3D HOLDING LTD'S OBJECTION TO REQUEST FOR EXPEDITED CONSIDERATION OF HAWK INVESTMENT HOLDINGS LTD.'S MOTION TO DISMISS THE DEBTORS' CHAPTER 11 CASES OR TO CONVERT THE CASES TO CASES UNDER CHAPTER 7 OR IN THE ALTERNATIVE TO APPOINT A CHAPTER 11 TRUSTEE**

Rembrandt 3D Holding Ltd ("Rembrandt"), hereby objects to Hawk Investment Holding Ltd.'s ("Hawk") request for an expedited hearing on the *Motion of Hawk Investment Holdings Ltd. (I) Pursuant to Section 1112(b) of the Bankruptcy Code Either (A)(1) to Dismiss the Debtors' Chapter 11 Cases or (2) to Convert Such Cases to Cases Under Chapter 7 or, (B) in the alternative, Pursuant to Section 1104(a) of the Bankruptcy Code to Appoint a Chapter 11 Trustee* (the "Motion"), and in opposition states:

At its inception, Stream did not have any technology of its own, but licensed in technology from Philips and 3D Fusion (Rembrandt's predecessor). As the term sheet with 3D Fusion shows, the combination of Rembrandt's technology and the Philips technology was expected to raise many tens of millions of dollars in investment with 3D Fusion to retain 60-80% control of the resulting entity. (*See attached* Exh. 1, Agreement at Doc. 15-1).

1

Even if Hawk was allowed to take control of Technovative, Stream would still have at least the value contemplated back in 2010, but with far less risk because it is known that it is possible to implement both Rembrandt's and Philips technology. Importantly, the value of these raw technology licenses exceeds the value of the bankruptcy creditor claims.

If Hawk and SeeCubic are successful in exercising their secured creditor claims, they will only get rights to technology that is not owned by Philips or Rembrandt and those rights will not be sufficient to produce or to license others to produce a capable glasses free 3DTV, whereas Stream would have all the rights its needs to produce a capable glasses free 3DTV.

Rembrandt has used its technology with other 3D TV manufacturers and those products are currently in use in museums and airports. Put simply, Stream needed a license from Rembrandt, but Rembrandt does not need a license from Stream.

Now that Stream has licensed Rembrandt's technology, it does not need access to the IP that is rightly owned by Technovative to make a glasses free 3D TV so Hawk's premise that all value disappears from Stream if they are successful in perfecting their security interest is completely false. Note that all improvements to the 3D Fusion technology were required to by assigned to 3D Fusion under the 2010 agreement, so it is Rembrandt's position that Rembrandt owns all the intellectual property related to UltraD.

Hawk and SeeCubic might take a small amount of patents and software from Stream in exercising their secured creditor claims if they can show that those patents and software were not improvements on the 3D Fusion technology, but they will still need a license from both Philips and Rembrandt to use that technology. While SeeCubic and Hawk could show some TVs that look impressive and generate interest from large technology companies, any license attempts will not survive any reasonable due diligence by a reputable company. Even if they were to negotiate

a purchase agreement, the standard warranty clauses would require Hawk to make the purchaser whole for any intellectual property claims known to the seller. One can imagine that Rembrandt will demand at a minimum every dollar of the sale price to grant the purchaser a license or the deal will not close.

In other words, the value of Technovative is vastly higher when held by Stream that also has licenses to the Philips and Rembrandt technology. By allowing the secured assets to be split from the underlying and necessary IP licenses, it will eviscerate the value of those assets.

Hawk also presumes that if this court grants the relief that it requests, Hawk will be able to proceed in Chancery court and to take control of Technovative. However, it is certainly aware of, yet failed to notify this court of, the fact that Rembrandt has filed a lawsuit in the Delaware District Court seeking a permanent injunction against SeeCubic, Inc. ("SeeCubic"), Technovative Media, Inc., and Hawk. The case against Technovative Media, Inc. is stayed due to this bankruptcy case, but Rembrandt has filed a motion for a Temporary Restraining Order and Preliminary Injunction pursuant to the Federal Rule of Civil Procedure 65 preventing SeeCubic and Hawk from selling, licensing, transferring or marketing Rembrandt's technology without a license until this matter is adjudicated. (*Rembrandt 3D Holding Ltd v Technovative Media, Inc, et al, 1:23-cv-00193 Delaware District Court*, D-1).

SeeCubic and Hawk have made no secret of their intent to sell, transfer, and disclose Rembrandt's technology once they acquire control of Technovative, which includes Rembrandt's IP. (*Hawk Investment Holdings LTD v Stream TV Networks et al*, C.A. No. 2022-0930 Delaware Chancery Court. *See Rembrandt*, D-4. *See also* D-7, D-8, and D-27). Rembrandt licensed this IP pursuant to a license granted to its parent company, Stream TV Networks. However, Technovative cannot sell or transfer the license and can only distribute products for the benefit of Stream.

3

(Settlement Agreement dated May 23, 2021, *Rembrandt* D-2, paragraph 14). Hawk and SeeCubic were likely to gain control at a hearing scheduled in Chancery Court for March 23, 2023, but that hearing was stayed when Stream TV Networks (Technovative's owner) and Technovative filed for bankruptcy protection in the Eastern District of Pennsylvania, (*In re Stream TV Networks, Debtor*, Case Nos. 23 -10763 and 10764).

The bankruptcy action created an automatic stay preventing any technology transfer from Technovative to Hawk or SeeCubic. In an effort to circumvent the stay, Hawk and SeeCubic have filed an emergency lawsuit in the Netherlands seeking to take control of Stream's subsidiary companies which also possess Rembrandt's technology. Once in control, they have made clear they intend to sell Rembrandt's technology. They have asked the Dutch Court to hear their case on April 11, 2023 and render a quick decision, preferably on April 11th or April 12th. This filing created a need for Rembrandt to pursue the temporary restraining order as Hawk and SeeCubic seem intent on pursuing their path of misappropriating Rembrandt's technology and Rembrandt's trade secrets are in imminent danger of being sold or transferred. (Exh. 1).

Rembrandt has submitted volumes of documentation and a declaration by the inventor proving Rembrandt's ownership. (*See* Exh. 1, Blumenthal Decl. at Ex. 2 and the Rembrandt Complaint). But this Court need not believe only this proof. Rembrandt's documentation includes agreements signed by Mathu Rajan, CEO of Stream TV Networks (and thus Technovative) and Shadron Stastney, current CEO of SeeCubic, which provide for a license for Stream to possess and use Rembrandt's technology. In fact, the agreement negotiated by Mr. Stastney on behalf of Stream in front of Federal Magistrate Parker was to pay Rembrandt $5.8 million plus more than 3 million TVs *at cost* with a resale profit conservatively calculated to be more than $300 million. (*See* initial Settlement Agreement dated April 9, 2019, *Rembrandt* D-5).Thus Mr. Stastney and Mathu Rajan

4

both agreed that a license was required and worth more than $300 million in value to the Rembrandt. Mathu Rajan reaffirmed Rembrandt's rights and the need for a license in a Declaration filed in the pending bankruptcy proceeding on March 28, 2023. (*In re Stream* D-48, 95-103.)

Hawk and SeeCubic have been in litigation with Stream and Technovative for several years seeking control of Technovative and the IP assets and have stated in court on numerous occasions that once this occurs, they will sell and/or license the technology. Now stymied by the bankruptcy, Defendants seek to do an "end run" in the Netherlands. As stated in Rembrandt's Complaint, SeeCubic has already marketed the technology on its website and at a trade show in Belgium. (*Rembrandt* D-7, D-8 and D-27).

Rembrandt has no proof (yet) that SeeCubic has sold or licensed the Technology, which will be a primary focus of discovery. The Delaware Code prohibits threatened misappropriation. (DE Code Title 6, Subtitle II, Chapter 20). The evidence is indisputable the SeeCubic and Hawk have threatened to do so and when they gain control of Technovative (and/or the Dutch subsidiaries), they will participate in the unlawful conduct.

With the bankruptcy blocking Technovative's ability to sell Rembrandt's technology, (but not SeeCubic and Hawk), SeeCubic has now tried to circumvent the stay provisions by filing an action in the Netherlands to give them control of Stream's Dutch subsidiaries. These subsidiaries possess the technology owned by Rembrandt. If successful, SeeCubic will act as they have said they intend to act and sell Rembrandt's technology.

Even if Hawk was to gain control of Technovative, Stream would still have the license from Rembrandt and Philips such that it would be right back to its potential value in 2010 when the parties agreed the total value of the company with those licenses would exceed the value of the current creditor claims. Further, the technology related to components of the products like lens,

5

8K OLED TVs, connectivity, are all owned and controlled by other companies and do not involve rights that would go to Hawk or SeeCubic by taking over Technovative. In other words, a dismissal of the bankruptcy is inappropriate as Stream would have value as a business with just a license from Philips and Rembrandt.

## **OBJECTION**

Hawk argues that expedited relief is required, however, Hawk and SeeCubic have flagrantly infringed on the IP rights of both Philips and Rembrandt. In both cases, Shadron Stastney, as well as the attorneys for SeeCubic and Hawk have all been well aware that a license from both entities is required to proceed with any development but have failed to obtain those licenses. Hawk's request is equivalent to a number of bank robbers asking for emergency relief to allow them to perfect their secured interest in the getaway car so they can continue loading their bags with cash before the police arrive. Hawk and SeeCubic are actively stealing Rembrandt's and Philips technology and asking this court to act on an emergency basis to help them do so before other courts can enjoin them from doing so.

SeeCubic and Hawk have acted in concert in an effort to gain control of Rembrandt's technology through litigation against Stream and Technovative. This despite their knowledge that Stream and Technovative do not own the technology, but merely have a license. As previously mentioned, SeeCubic CEO Shadron Stastney negotiated the Stream license when he was on Stream's board of directors. Mr. Stastney cannot now argue he had no knowledge of Rembrandt's ownership rights. Several emails were sent to counsel for SeeCubic and Hawk as well as the receiver appointed by the court for Technovative, Ian Liston. These emails laid out the proof of Rembrandt's ownership, but no one replied to Rembrandt forcing Rembrandt to file its lawsuit. (*Rembrandt* D-20, D-21, D-25 and D-26).

6

Mr. Blumenthal's Declaration comprehensively details his development of the foundation technology, his patent applications prior to any meeting with Stream and the June 9, 2010 Confidentiality Agreement with Stream whereby Stream agreed that Rembrandt was entitled to own all improvements made by Stream. In effect, Stream assigned ownership of those improvements to Rembrandt. (*Rembrandt* D-16):

> **2.3.2 all inventions, improvements….., technology, or products of the disclosing party directly resulting from or related to the Confidential Information…shall be the exclusive property of the Disclosing Party and the Recipient has no right or title thereto.**

There is no dispute that Stream has an (as yet unpaid-for) license to possess Rembrandt's technology. Hawk and SeeCubic do not. While SeeCubic has claimed it has made improvements, it admitted they were derivative of Stream's technology—that is, Rembrandt's technology and thus owned by Rembrandt. (*Rembrandt* D-6 at 2-3).

The Defendants threatened misappropriation is evidenced by numerous statements made by their counsel in the Chancery Court proceedings. They have made clear that once they get control, they will sell the technology.

The Settlement Agreement signed by Mathu Rajan on May 23, 2021 cites the trade secrets owned by Rembrandt that Stream has licensed. (*Rembrandt* D-2). This technology is embedded in the 3D no glasses screens and TVs. The statements of the defendants that they will sell the technology which necessarily includes Rembrandt's embedded technology is irrefutable proof of their threatened misappropriation.

While Rembrandt contends that all the technology is owned by the Rembrandt, there is no dispute that Rembrandt's trade secrets are owned by the Rembrandt and are essential to the functionality of the 3D no glasses screens and TVs. SeeCubic and Hawk do not have a license to possess and sell or license Rembrandt's technology.

Rembrandt approached Ian Liston, the receiver for Technovative, on December 18, 2022, stating: "*We would like to obtain terms for purchasing a large volume of units for this program and we are on a relatively short time line. If Stream is not currently producing product, we would like to discuss terms for our team to initiate production to satisfy the supply obligation or our agreement and to support this potential deal.*" Rembrandt proposed a business deal that would have made Stream and Technovative cash solvent yet received no response.

Steve Blumenthal has provided a declaration attached to this document that states that Rembrandt's primary objectives entering mediation years ago was to be one of Stream's largest customers and that the most important aspect of the deal was the right to purchase products. Nothing has changed in that regard. Rembrandt is interested in seeing the terms of its settlement agreement fulfilled and purchasing TV's in volumes that would make any on-going manufacturing operations for product going to Rembrandt solvent. Rembrandt would consider participating in a rights offering through the bankruptcy process. If the bankruptcy were converted from a Chapter 11 proceeding to a Chapter 7 proceeding, Rembrandt intends to put together a consortium to enter a bid again depending on the terms. No other bidder for the technology will have a license to Rembrandt's technology, such that it is highly likely that Rembrandt will be the highest bidder and quite possible the only bidder.

Hawk has no basis for emergency relief and while Technovative was controlled by SeeCubic and the receiver, it willfully infringed intellectual property rights and turned away potentially lucrative business. This is not good business stewardship and certainly can not be considered reasonably related to managing Technovative to solvency. Certainly, there is no emergency relief necessary to allow them to get back to misappropriating technology and turning away potential customers. Hawk's current motion, and the prior efforts of SeeCubic are clearly

8

designed to compromise the business interests of Stream and Technovative, so SeeCubic and Hawk can take technology worth far more than the value of the principal and interest owed to them while harming the existing creditors of Stream.

## CONCLUSION

Rembrandt respectfully request that the Court entering an order (i) denying Hawk's request to consider the Motion on an expedited basis; (ii) denying the motion to dismiss the bankruptcy; and to (iii) deny the motion to convert the case to a Chapter 7 liquidation.

Dated: April 12, 2023

*/s/ Andrew DeMarco*
Andrew DeMarco, Esq. (PA Bar No. 326294)
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
ademarco@devlinlawfirm.com

*Attorneys for Rembrandt 3D Holding Ltd.*

## CERTIFICATE OF SERVICE

I certify that on April 12, 2023, I caused the foregoing documents to be electronically filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notice of Electronic Filing generated by CM/ECF on all parties who are authorized to receive electronically Notice of Electronic Filing in this bankruptcy case.

*/s/ Andrew DeMarco*
Andrew DeMarco, Esq. (PA Bar No. 326294)