```
                   UNITED STATES BANKRUPTCY COURT

                FOR THE DISTRICT OF PENNSYLVANIA

                                       :
 IN RE:                                : Case No.  23-10764
                                       :           23-10763
 TECHNOVATIVE MEDIA, INC.   CH: 11 :
 / STREAM TV NETWORKS INC              : Philadelphia, Pennsylvania
                                       : March 16, 2023
 . . . . . . . . . . . . . . . . . : 2:01 p.m.


              BEFORE THE HONORABLE MAGDELINE D. COLEMAN
                 UNITED STATES BANKRUPTCY JUDGE


 APPEARANCES:

 For the Debtor:                 Rafael X. Zahralddin, Esq.
                                 Lewis Brisbois
                                 500 Delaware Avenue, Suite 700
                                 Wilmington, DE 19801
                                 302-985-6004

                                 Vincent F. Alexander, Esq.
                                 Lewis Brisbois Bisgaard & Smith
                                 110 SE 6th Street, Suite 2600
                                 Fort Lauderdale, FL 33301
                                 954-728-1280

 For Hawk Investment Holdings    Steven Caponi
 Ltd:                            K&L Gates
                                 600 N. King Street, Suite 901
                                 Wilmington, DE 19801
                                 302-416-7080

                                 Aaron Rothman, Esq.
                                 Margaret R. Westbrook, Esq.
                                 K&L Gates LLP
                                 300 South Tryon Street, Suite
                                 1000
                                 Charlotte, NC 28202
                                 704-331-7400

 For Ian Liston:                 Erin Fay, Esq.
                                 Wilson Sonsini Goodrich &
                                 Rosati
                                 222 Delaware Avenue, #800
                                 Wilmington, DE 19801
```

```
For Rembrandt 3D Corp:        Chris Michaels

For Stream and Technovative:  Andrew S. Dupre, Esq.
                              McCarter & English, LLP
                              Renaissance Centre
                              405 North King Street
                              8th Floor
                              Wilmington, DE 19801
                              302-984-6300

For the United States         Kevin P. Callahan, Esq.
Trustee:                      John Henry Schanne, Esq.
                              Office of The United States
                              Trustee
                              Robert N.C. Nix Federal
                              Building
                              900 Market Street, Suite 320
                              Philadelphia, PA 19107
                              202-934-4154


Proceedings recorded by electronic sound recording;
transcript produced by TheRecordXchange.
```

1

<u>MARCH 16, 2023</u>

1

2          THE COURT:  Good afternoon.

3          MR. ZAHRALDDIN:  Good afternoon, Your Honor.

4          THE COURT:  Okay.  This is an emergency motion in the

5    case of Technovative Media Inc.

6          Counsel, before we begin, I would ask that you keep

7    your telephone on mute until you speak.  I would also ask that

8    you please state your name for the record before you speak.

9    Okay.  And as I said, this is a Debtors, it's a Debtors.  So

10   I'm not sure if this is -- it only has one caption that this is

11   meant to be in the case of what I think is a related case.

12   Request for an emergency hearing to enforce the stay.

13          All right.  Who's here for the Debtor?

14          MR. ZAHRALDDIN:  Your Honor, good afternoon.  Thank

15   you for making time to hear us.  This is Rafael Zahralddin,

16   counsel -- proposed counsel for the Debtor from the law firm of

17   Lewis Brisbois.  I also have on the line Vincent Alexander,

18   who -- and we're also representing the Debtor.  And just to

19   quickly answer your question as to which case to which this

20   applies, we're speaking to an administration but haven't had a

21   time to obviously have that heard.  But the only debtor in

22   question under the underlying receivership order and the

23   hearing pending for sanctions is Technovative.  It does not

24   involve Stream TV Networks directly.

25          THE COURT:  Okay.  All right.  Who else is here on

1  this matter?

2         MR. CAPONI:  Good afternoon, Your Honor.  My name is

3  Steven Caponi from the law firm of K&L Gates.  And I represent

4  Hawk Investment Holdings Ltd, as well as speaking for behalf of

5  SeeCubic, Inc.  SeeCubic and Hawk are the secured creditors of

6  the Debtors.  I believe I also have with me on the line

7  listening for various jurisdictions, Aaron Rothman and Margaret

8  Westbrook, also from K&L Gates.

9         THE COURT:  Okay.  So we have -- who are the -- Aaron

10 Watson (sic) and who else, Counsel?

11        MR. CAPONI:  Margaret Westbrook.

12        THE COURT:  And you all represent Hawk Investment

13 who?

14        MR. CAPONI:  Holdings Ltd and SeeCubic, Inc.

15        THE COURT:  Okay.  Anyone else here?

16        MS. FAY:  Good afternoon, Your Honor.

17        UNIDENTIFIED SPEAKER:  Yes.

18        MS. FAY:  You have Erin Fay from Wilson Sonsini

19 Goodrich & Rosati.  I represent Ian Liston, who is the receiver

20 appointed in the Delaware Chancery Court matter.  Mr. Liston, I

21 believe, is also on the line this afternoon.

22        THE COURT:  Could you say the name again?  You said

23 Ian Liston?

24        MS. FAY:  My -- my name is Erin Fay.  And the

25 receiver's name is Ian Liston.

1          THE COURT:  Okay.  And you said the receiver is

2    also -- the Delaware receiver is also on the line?

3          MS. FAY:  Yes, Mr. Liston is on the line.

4          THE COURT:  Okay.  Anyone else?

5          MR. MICHAELS:  Yes.  This is Chris Michaels

6    (phonetic) representing Rembrandt 3D Corp.  We have -- we would

7    effectively be a creditor in this action and own the underlying

8    technology.

9          THE COURT:  Okay.  Anyone else?

10         MR. DUPRE:  Your Honor, this is Andrew Dupre of

11   McCarter & English.  I was the Debtor's counsel in the

12   underlying Chancery action that's the subject of this motion.

13         THE COURT:  I'm sorry.  All I heard was Andrew.

14   What's your last name, Counsel?

15         MR. DUPRE:  Dupre D-U-P-R-E, Your Honor.  I

16   represented Stream and Technovative in the Chancery action.

17         THE COURT:  Okay.  Anyone else?

18         MR. MAZZA:  Yes, Your Honor.  This is Jim Mazza from

19   Skadden Arps.  I'm with -- as you know, Skadden Arps, we are

20   coordinating with Mr. Caponi from K&L Gates and have the mutual

21   interest with SeeCubic, as he mentioned previously.

22         THE COURT:  So you represent the -- what do you mean?

23         MR. MAZZA:  SeeCubic, Your Honor.

24         THE COURT:  Uh-huh.  You represent SeeCubic?

25         MR. MAZZA:  Correct.

1          THE COURT:  Okay.  So you're co-counsel with Mr.

2   Capara (sic)?  Did I spell that right?

3          MR. CAPONI:  Caponi, Your Honor.  Sorry.  It's C-A-P-

4   O-N-I.

5          THE COURT:  Mr. Watson (sic) and Ms. Westbrook, you

6   are co-counsel with Mr. Mazza with respect to SeeCubic?

7          MR. MAZZA:  That's right.

8          THE COURT:  Okay.  All right.  Anybody else?

9          MS. BRUMME:  Your Honor, this is Marley Ann Brumme.

10  I'm also from Skadden Arps.  I'm a colleague of Mr. Mazza.

11         THE COURT:  Okay.  Anybody else?

12         MR. SCHANNE:  Good afternoon, Your Honor.  This is

13  John Schanne on behalf of the United States Trustee.

14         THE COURT:  Okay.  Anyone else appearing today?

15  Okay, I don't hear anyone else.  All right.  Counsel --

16         MR. CALLAHAN:  Your Honor, yeah.  Kevin --

17         THE COURT:  Yes?

18         MR. CALLAHAN:  Kevin Callahan for the United States

19  Trustee.

20         THE COURT:  Anyone else?  All right.

21         Proposed counsel for the Debtor, tell me why is it

22  that I should -- what is it that you're looking for this court

23  to do and why I should grant it?

24         MR. ZAHRALDDIN:  So Your Honor, our position is

25  fairly simple.  We filed the case yesterday.  The automatic

1    stay arises by operation of law.  That should stay any

2    proceeding, any proceeding, that implicates the Debtor.  And

3    the action below implicates the Debtor directly.  The language

4    in the notation on the order for the 3:00 hearing indicated the

5    receiver has informed Media Stream TV Networks and Technovative

6    Media, Inc. filed for bankruptcy just before midnight last

7    night in the Eastern District of Pennsylvania.

8            During today's pre-trial conference, Mr. Dupre will

9    address the extent to which he or any attorney from his firm

10   was involved in the filing and how Technovative could file the

11   petition in light of the receiver's authority and the status

12   quo order.  Counsel for both sides will address the

13   implications for the case.  Our concern is that the status quo

14   order had an absolute restriction on even the receiver filing

15   for Chapter 11, which is a void order under federal preemption

16   and United States bankruptcy laws and, you know, I think

17   decades of jurisprudence.  And certainly, you know, we would be

18   happy to brief that issue if we had time, Your Honor.  But

19   because there is a pending sanctions --

20           THE COURT:  Well, what is this -- I mean, I --

21   counsel, I did read that docket entry and I didn't hear the

22   word -- I didn't see the word sanction, so I wasn't quite sure

23   whether --

24           Instead of -- give me just --

25           Status hearing, from what I could gather.  Maybe I

1   misread it, but it says that counsel will address the

2   implications for the case.  Does that mean -- I don't -- I

3   mean, how does that translate to a sanctions hearing?

4          MR. ZAHRALDDIN:  Well, Your Honor, I don't know if

5   Mr. Dupre's heard that et cetera, but that is our concern.  Our

6   concern is that there's going to be a sanction given to the

7   parties who filed or authorized the case, and that would

8   violate the stay.  I also believe the proceeding violates the

9   stay because it is an action regarding Technovative, which has

10  filed bankruptcy.  To the extent that there's any issue, it

11  needs to be handled in front of Your Honor and not a state

12  court.

13         THE COURT:  Well, Counsel, you didn't attach -- other

14  than this order, I mean, some kind of background as to what

15  this involves or why it's -- I understand they filed

16  bankruptcy.  I understand the implications from the stay.  I

17  know what it says.  I don't know ultimately to get anybody

18  where they're trying to go.  Because to the extent the case is

19  filed, there's some implications about the stay.  And whether

20  this is an authorized filing or unauthorized filing, that's to

21  be determined.

22         MR. ZAHRALDDIN:  Uh-huh.

23         THE COURT:  It doesn't mean any of that.  It just

24  means whatever the stay means.  But I would -- you know,

25  some -- at least some background would be helpful for this

1    Court.

2            MR. ZAHRALDDIN:  I know, Your Honor, and I apologize

3    for that.  It came up on us pretty quickly.  And when we -- if

4    we were given the breathing spell that the state would give us,

5    we are going to put plenty of paper in front of you to discuss

6    the issues here.  And including -- you know, we have folks on

7    the line who can give you a variety of different -- you know,

8    different color on the case; not just the two secured

9    creditors.

10            But also, there's an underlying Delaware Supreme

11   Court opinion, which instructed over a year ago for the assets

12   of this company to be fully returned.  And we're still in the

13   process of that, which has frustrated customers and suppliers

14   and everyone else.  And that's one of the reason we believe

15   this should be up and we filed the case in a bankruptcy court.

16   But we also have implications with federal Trade Secret law,

17   which is another federal issue.  We have the interested party

18   for that on the line.  They also have tried to intervene below

19   and have not been able to get very far.

20            And we have a receiver pendente lite who was put into

21   place, in some part, to also preserve the assets and we're

22   concerned about what's happening with the assets overseas.  But

23   for all those reasons and because the order itself should be

24   void in the underlying -- at least the portion of it that

25   restricts someone from filing federal bankruptcy, we were very

1  concerned that there was a hearing set this quickly in which

2  Mr. Dupre was going to be asked how his firm was involved.

3  That only -- to me, that implicates a sanctions or some sort of

4  reprimand because that -- you know, the vice chancellor has

5  jurisdiction over Mr. Dupre.

6          And then also, there'd be some sort of sanction or

7  other adverse activity by the court against the officers and

8  directors who have the right to file for bankruptcy.  If -- and

9  they have a remedy if -- as you said, if there's an authority

10  to file issue or something else, they can come up in front of

11  you, present their case.  But it should not be adjudicated

12  further in this state court matter, and that was our concern.

13          MR. CAPONI:  Your Honor.

14          THE COURT:  Hold on.

15          Ultimately, Counsel, I don't want anybody to think

16  that whatever my ruling is, is that whether this filing was

17  authorized or unauthorized.  We're not there.

18          MR. ZAHRALDDIN:  Yes, ma'am.

19          THE COURT:  So I want to make it clear that the only

20  thing I'm going to look at is what is the implication, when the

21  case was filed and what does that mean for the automatic stay?

22  So I want everybody to be clear; that is all I'm going to look

23  at.

24          MR. ZAHRALDDIN:  That's all we're asking, Your Honor.

25          THE COURT:  That's all the stay needs.  And anything

1    else that, you know, that's down the road somewhere.  That's

2    for a later date.  Definitely not for today.

3         All right.  So someone else was starting to speak.

4    Who was that?

5         MR. CAPONI:  Yes, Your Honor.  Sorry.  That was Steve

6    Caponi.  I wanted to briefly just give Your Honor the relevant

7    background that you had asked for.  The background is as

8    follows.

9         Stream borrowed tens of millions of dollars, owes

10   hundreds of millions of dollars to its secured creditors.  The

11   Delaware Supreme Court has already adjudicated that it was

12   valid and there was a default.  And there exists and remains a

13   default under the debt.  The pending case in the Court of

14   Chancery was the secured creditors exercising their rights to

15   assume control of the board of Technovative.  It's called 225

16   action.  That case was set for trial next week.  A jury -- a

17   bench trial only.  Oral argument is being submitted on the

18   papers.

19        Today, counsel incorrectly indicates that there was

20   some hearing scheduled too quickly.  It was the pre-assigned

21   pre-trial conference date this afternoon.  When the 225 action

22   was filed, Mr. Liston, the receiver, was appointed by the court

23   pursuant to a receivership order and there was separately a

24   status quo order.  The status quo order has the language

25   referencing you're not allowed to file a bankruptcy.  There was

```
 1   separately a receivership order which appointed Mr. Liston to
 2   control the company.
 3          The hearing today -- I shouldn't say hearing --
 4   status conference before Vice Chancellor Laster, as I read the
 5   docket as lead trial counsel, is to understand the implications
 6   of the stay on the trial.  Vice Chancellor Laster is very
 7   experienced, been on the bench many years.  This is not his
 8   first rodeo at this nor mine.  We all understand the automatic
 9   stay and that the trial will not be going forward, absent
10   relief from Your Honor.
11          But Vice Chancellor Laster wanted to understand Mr.
12   Dupre, Delaware litigation counsel's role and if any in how a
13   bankruptcy could have been authorized without the consent or
14   approval of the receiver, who is the sole authority
15   pre-bankruptcy to speak for the company.  The last bit of
16   background I would note for Your Honor is this is the third
17   bankruptcy filed by this debtor to avoid the secured creditors.
18   The first two were filed in Delaware and were dismissed as bad
19   faith filings.  We think this is also -- I know this is a --
20          THE COURT:  Wait a minute, Counsel.  Counsel, hold
21   on.
22          MR. CAPONI:  -- for another day.
23          THE COURT:  Counsel, hold on.  So two -- the Debtors,
24   debtor or debtors, filed two cases and both were dismissed as
25   an -- dismissed as bad faith?
```

1          MR. CAPONI:  Yes, Your Honor.  And I believe the same

2     counsel --

3          MR. ZAHRALDDIN:  No, Your Honor.  That's incorrect.

4          MR. CAPONI:  Excuse me.  I was speaking, sir.

5     Rafael, if you don't mind?

6          THE COURT:  Okay.  I will figure that out.  You

7     believe that they were both voluntary filings that were

8     dismissed for bad faith?

9          MR. CAPONI:  It was this -- I believe, Your Honor, it

10    was Stream.  And the first one was bad faith and the second one

11    was also dismissed because it was an involuntary in collusion

12    with Rembrandt, who also appears as the -- in this matter, Your

13    Honor.  And they were both filed in Delaware and both were

14    dismissed.

15         THE COURT:  Okay.  So one was --

16         MR. ZAHRALDDIN:  Your Honor, can I speak to that?

17         THE COURT:  Wait a minute.  No, hold on.  Let me

18    clarify.  Just hold on.

19         MR. ZAHRALDDIN:  Okay.

20         THE COURT:  So one case was a voluntary petition that

21    was dismissed as a bad faith filing?  And the second was an

22    involuntary that was dismissed?

23         MR. CAPONI:  Correct, Your Honor.

24         THE COURT:  Was that also dismissed?  Was that

25    also --

```
1              MR. CAPONI:  Yeah.

2              THE COURT:  -- dismissed as a bad faith filing, the

3    involuntary?

4              MR. CAPONI:  Yes, Your Honor.  And I would, on this

5    point, defer to my colleagues at Skadden, who I believe were

6    the ones instrumental to having those dismissed.  I came in

7    after the fact, but that is my understanding, yes.

8              THE COURT:  Okay.  So they were both dismissed as bad

9    faith, one was voluntary.  So the Debtor didn't file -- so the

10   Debtor filed one and then creditors presumably, however it

11   happened filed the involuntary, correct?

12             MR. CAPONI:  That is my understanding.

13             UNIDENTIFIED SPEAKER:  Correct, Your Honor.

14             THE COURT:  Okay.  All right.

15             Counsel, don't interrupt.  I forgot to give my

16   standard instructions, which were don't speak -- keep your

17   phone on mute until you speak, don't interrupt each other and

18   definitely do not interrupt the Court.  I'm the only one who

19   gets to interrupt.  And so I didn't give that instruction, but

20   I would, counsel, ask that you not interrupt.  I will give

21   everyone an opportunity to get their say, okay?

22             Mr. Caponi, you're telling me that today was a status

23   hearing on the litigation?

24             MR. CAPONI:  Yes, Your Honor.  The case --

25             THE COURT:  Counsel -- so Counsel, do you believe
```

1    that the automatic stay applies to this status hearing?

2              MR. CAPONI:  No, Your Honor.  I do --

3              THE COURT:  And if not, why not?

4              MR. CAPONI:  I do not believe that the automatic

5    stay -- because it is a status conference not to address the --

6              First, let me -- I should say I'm reading the same

7    docket Your Honor reads, which is, as I read the docket entry

8    by Vice Chancellor Laster, he is not holding a pre-trial

9    conference.  He wants to hear individually from Mr. Dupre as to

10   Mr. Dupre's involvement, if any, with the violation of his

11   order which placed the receiver in charge.

12             THE COURT:  Well, but that's the point.  He's having

13   a hearing in a matter that -- I am asking you don't believe the

14   automatic stay operates as a stay of any actions involving

15   the -- of Debtor?  Putting aside the issue of what it is that

16   he wants to do, ultimately, this is my concern.  Is he going to

17   make some determination that it was unauthorized?  That it

18   shouldn't have been filed?

19             Isn't that something that -- you know, to the extent

20   that there's an issue of whether this is a proper filing, that

21   would be properly be for me.  That doesn't mean that I would

22   ignore the chancellor's order or -- I mean, because any time

23   someone challenges the authority to file, you would give me

24   what evidence that you would have and I would make a ruling.

25   I'm not going to overrule the chancellor or anything to that

```
 1   effect.

 2          But what would happen is everybody would come and

 3   say, well, this is not a proper filing because -- you know, for

 4   in a simple case where say a corporation, well, or a

 5   partnership or the parties who filed were not -- did not have

 6   the authority.  So that ultimately will get decided.  But

 7   putting that, you know, for down the road, the issue for me is

 8   does the stay stay everything?  And tell me if it doesn't stay

 9   this, why is it an exception to the automatic stay that stays

10   everything?

11          MR. CAPONI:  Yes, Your Honor.  So to be clear, yes,

12   the automatic stay applies.  We have -- we are not seeking any,

13   and will not seek at 3:00, any relief involving the Debtors.

14   We're not -- we don't have any motions pending, any requests

15   for relief pending.  We are there to listen to Vice Chancellor

16   Laster.  So we absolutely respect the automatic stay.  We

17   respect the court, your court and Your Honor.  And we agree

18   that any issue as to whether or not this was an appropriate

19   filing or authorized filing or fraudulent filing.  That is all

20   going to ultimately be resolved by Your Honor.  And that is if

21   Vice Chancellor Laster would even dream of stepping on that

22   area.  I would encourage him not to.

23          THE COURT:  That is --

24          MR. CAPONI:  I don't imagine that he would.

25          THE COURT:  I'm not suggesting that he would.  What I
```

1    am suggesting is that does the automatic stay stop even this?

2    Nothing goes forward?

3              MR. CAPONI:  No.  Yes, Your Honor.

4              THE COURT:  Why not?

5              MR. CAPONI:  I do not believe the automatic stay

6    stays this because this, as I read Vice Chancellor Laster's

7    docket entry in my almost 30 years' experience in the Delaware

8    bar here, he wants to -- this is a matter between the vice

9    chancellor and a member of the Delaware bar, Mr. Dupre.  Where

10   the court wants to understand Mr. Dupre's role as counsel of

11   the bar of Delaware standing before Vice Chancellor Laster, to

12   understand if Mr. Dupre was involved with violating the order

13   as pertains to the appointment of the receiver or if Mr. Dupre

14   knew anything about that.  I'm not even assuming that the Court

15   is accusing Mr. Dupre.  This is simply --

16             THE COURT:  That's the point.

17             MR. CAPONI:  -- what I would view as a housekeeping

18   matter with the Court and a member of the bar.

19             THE COURT:  Counsel, I think it's more than a

20   housekeeping matter.  He would have to determine whether Mr.

21   Dupre violated an order.  And so I think that's a little

22   putting the cart before the horse.  If ultimately the Debtor

23   was barred from filing this and that's what I ultimately

24   determine, that's something the court would have jurisdiction

25   over to say, as a member of the bar, I told you not to do this

 1   and why did you?  So I think it's a little -- I think it's a

 2   little premature to be asking why you did something without his

 3   being -- he would have to determine that the filing -- he wants

 4   to understand why it was done.  And to me, it would implicate

 5   his order and some determination as to why you did what you

 6   did.  That's -- so a broader issue for me is that when the stay

 7   happens, can a court do anything and everything stay?  Now, I

 8   get there are some things that are stayed.  And I haven't heard

 9   that this is in one of the exceptions to the state.  I don't

10   know.  And I'm trying to -- you're saying that it's not safe

11   because this is just -- is it Chancellor or Vice Chancellor?

12              MR. CAPONI:  Vice Chancellor, Your Honor.

13              THE COURT:  Vice Chancellor.  Laster or Laster?

14              MR. CAPONI:  Laster.

15              THE COURT:  Laster.  Is it Vice Chancellor Laster, is

16   he -- I get what you're saying.  Does the Court bring in a

17   member of the bar and say, well, why did you do this when I

18   told you not to or what authority you had?  But that also would

19   go to whether he had the authority or not.  I'm not saying that

20   he did.  I'm not saying that he didn't do anything in violation

21   of the court order.  I just -- from my concern is, we're

22   starting to have -- if there's something other than some record

23   as to why you did what you did, that that somehow is something

24   I'm openly have to look at.  And am I going to be bound by Vice

25   Chancellor Laster that this was unauthorized because the

1   parties have already litigated it and it has already been

2   resolved?

3           I mean, this is just a fact finding.  I'm not quite

4   sure.  The fact that there might not be sanctions, the fact

5   that there may be no consequences, the ultimate question for me

6   is everything is stayed.  You can't do anything in this State

7   Court, not even a status conference.  Nothing until it

8   ultimately resolved whether this bankruptcy is going to be

9   allowed to go forward.  Because I am pretty sure what I am

10  hearing is that the position is it's unauthorized.  And

11  ultimately, it may not -- whether it is or isn't, I don't know

12  the answer to that.  I haven't seen the orders. And even if I

13  saw them, I wouldn't do anything with them because I need an

14  evidentiary hearing.

15          So my concern I when the automatic stay applies, is

16  there an exception, and you need to tell me what the exception

17  is.  And you're saying it supports wanting to know whether a

18  member of the bar violated his order.  And that's putting the

19  -- I mean, ultimately, he may be able to do that.  I don't

20  know.  The question is can you do it today or does he have to

21  wait until there's an issue whether this is a properly and

22  authorized filing.

23          MR. CAPONI:  Yes, Your Honor.

24          THE COURT:  Just assume.  Assume that I found that --

25  and I want everybody to focus on the word assume.  Assume that

```
 1   I find that it was.  What then would the Chancellor be

 2   authorized to do with respect to Mr. Dupre?  Because I find

 3   that it was.

 4           MR. CAPONI:  Your Honor --

 5           THE COURT:  Would he not be bound by that?  I mean,

 6   I'm just assuming.  I could also assume that it's not and then

 7   he would be able to do what exactly it is he's doing today.  So

 8   that's my concern.  Are we -- is everything stayed or is this

 9   something that is an exception to the stay?

10           MR. CAPONI:  Your Honor, again, I will give you my

11   answer and then I obviously would invite any of the real

12   bankruptcy lawyers from this call to jump in.  But the

13   automatic stay applies to the Debtors. The status conference

14   today is nothing but a status conference to gather information

15   on behalf Vice Chancellor Laster.  He's not asking to hear from

16   either one of the Debtors, so I don't believe the stay applies.

17   No one is moving to take any action against the assets of the

18   Debtor, and no one is making a determination as to whether or

19   not this was an authorized filing.  Your Honor will make that

20   determination.

21           I think Vice Chancellor Laster is always free to

22   interpret his own order and the automatic stay does not

23   preclude a state court from interpreting the order or

24   understanding the implications of his order or whether it's

25   even being followed.  I think Vice Chancellor Laster were to
```

1    take action, maybe an action that would affirmatively impact

2    the Debtor, that would impact the automatic stay.  But him

3    gathering information would not.

4            And I think lastly, Your Honor, there are two

5    separate orders at play here, which is important to understand.

6    One, there is an order appointing a receiver.  Prior to the

7    filing of this bankruptcy for many months, Mr. Liston has been

8    the receiver solely in charge of Technovative and its operating

9    subsidiaries.  The ordinary course is that Mr. Liston operates

10   this entity prebankruptcy.  He was appointed by Vice Chancellor

11   Laster to run that.

12           Presumably, as ordinary course, Mr. Liston remains in

13   place running Technovative.  And again, ordinary course

14   prefiling was answerable to the Vice Chancellor.  So I would

15   say the automatic does not -- stay does not implicate the Vice

16   Chancellor understanding to what extent the receiver he put in

17   place is still operating the assets in the ordinary course as

18   they existed prebankruptcy.

19           THE COURT:  Well, counsel, I don't think that's how

20   that happens.  Anyone can file when there's a receiver in

21   place.  And when you file, there's some implications for that

22   receivership.  And so, that's what the stay does.  It says,

23   okay, whatever exists in state court -- because I think,

24   counsel, what you're painting this is, is it's some kind of

25   disciplinary hearing against the attorney as opposed to some

1    action involving the Debtor.  This is a pending action

2    involving the Debtor in chancery court.  And however you want

3    to characterize it, this involves what is going to happen to

4    that case.

5            And I think that once the bankruptcy is -- typically,

6    when it's filed and there's a receiver and the bankruptcy

7    filing is proper, receivership is terminated.  It doesn't

8    matter what the state court says.  It's done.  I mean in

9    typical -- I don't know what the order says.  I haven't seen

10   them.

11           But typically, that's what happens.  That happens all

12   the time.  There's a receiver.  Debtor doesn't like the

13   receivership.  Some secure creditor has got a receiver

14   appointed and they file.  Then the Debtors go on with their

15   case and the receiver turns over all the assets and that's the

16   end of it.  That doesn't mean a receiver can go in state court

17   and say I want a hearing or does the state court continue to

18   have -- can do anything with respect to the receivership

19   because there's a pending bankruptcy.

20           And so, what I hear you characterizing this is this

21   is some sort of disciplinary action against Mr. Dupre, I think

22   I'm saying his name correctly, as opposed to something

23   involving a matter before the Court involving the Debtor.

24           MR. CAPONI:  No, Your Honor.

25           THE COURT:  And ultimately, that hearing may happen.

1    I don't know.  But the question is, can it happen today?

2            MR. CAPONI:  Your Honor, to be abundantly clear, I am

3    not characterizing the hearing at all other than it is -- the

4    only thing I can read from the docket is the Vice Chancellor

5    wants to have counsel appear before him to provide him

6    information only.  I don't see how that, in any way, violates

7    the automatic stay.  There's no relief being sought.  No

8    motions being sought.  No one demanding sanctions.  No one

9    indicating sanctions are coming.  This is a Vice Chancellor

10   duly authorized asking to speak to the two Delaware lawyers

11   he's been dealing with to gather information.

12           What he does with that, I have no idea.  He's not

13   graced us with his thought process.  But I don't see how --

14           THE COURT:  Well, that's the whole point, counsel.

15           MR. CAPONI:   -- respectfully that we can enjoin the

16   Vice Chancellor from gathering information.

17           THE COURT:  Well that's not the point.  The point of

18   the matter is it may be premature.  Because if I find that this

19   is a valid filing, what would his inquiry be as to why they

20   were involved?  Why would he even want to ask that?  Why would

21   he -- if I find, based on my review of the Chancellor's order

22   and my review -- whatever the true order is, that this is a

23   valid filing, what role would the Chancellor then have because

24   it would be terminated.  So I'm not quite sure why he needs to

25   do anything today until its figured out whether this is valid

1    or not.

2          Now if I find this is invalid or not properly

3    authorized, then the Court would be in a position to haul

4    everybody in and say, I didn't authorize this.  Bankruptcy

5    court and -- based on their review of my order, said it wasn't

6    authorized.  Now tell me why were you involved and why did you

7    not comply with my order?  So that's the concern I have is that

8    it may be premature to have that inquiry.

9          MR. CAPONI:  Your Honor, I would answer it this way.

10   The two are not mutually exclusive.  There is -- you know, I

11   don't know what the Vice Chancellor is thinking, but there is

12   no reading of the order that -- where one would conclude that

13   the order was not violated.  That does not mean the bankruptcy

14   is not authorized.  It doesn't mean Your Honor can't find that

15   the bankruptcy is authorized.  But the Vice Chancellor could,

16   even if the bankruptcy is authorized, determine that an officer

17   of the court violated an order of the court and deal with that.

18   That as --

19         THE COURT:  Well, we would all -- counsel --

20         MR. CAPONI:  One is not mutually exclusive.

21         THE COURT:  It is mutually exclusive, because if I

22   find it was authorized under his order, he can't find

23   otherwise, and he wouldn't be able to do anything with respect.

24   Because in order to find that they violated his order, the

25   first thing that has to happen, is this case has to be found to

1   be an unauthorized filing.  He doesn't get to do anything yet.

2          MR. CAPONI:  Your Honor --

3          THE COURT:  He has to find that it was on counsel.

4   He would have to find that it was unauthorized, and that the

5   Delaware lawyer violated his order.  Until this is found to be

6   an unauthorized filing, I think it's premature for the

7   Chancellor to be doing anything.

8          MR. CAPONI:  Yes, Your Honor.

9          THE COURT:  If it's authorized, how in the world is

10  he going to have anybody come and say you violated my order?

11         MR. CAPONI:  Because, Your Honor --

12         THE COURT:  Now I'm not saying, I am -- that would

13  mean that he would have a different interpretation than my

14  interpretation of his order.  And I'm not saying that

15  ultimately this may be unauthorized.  I'm just saying at this

16  point we don't know, so I don't know why there would be any

17  fact finding for anybody at this point.  Because the first

18  thing that has to happen is to determine whether this was

19  authorized.  And it's still a more broader issue, is if the

20  state stays everything, status conference, inquiries, anything.

21  And the stay is pretty broad if you ask me.

22         And even if a filing is determined to be

23  unauthorized, that doesn't the stay didn't go into effect.  It

24  doesn't mean that.  All it says is automatic with certain

25  exceptions.  And so, that's where my focus is.  Is this an

1    exception?  And it seems to me what the inquiry is what was

2    your involvement and why did you do this?  It doesn't even

3    matter whether he intends to sanction whatever.  It doesn't

4    matter at this point because if it's an authorized filing, what

5    does it matter to the Chancellor, Vice Chancellor, what their

6    role was?

7              MR. CAPONI:  Yes, Your Honor.  I can answer that.

8              THE COURT:  It doesn't matter to the Vice Chancellor.

9    It only matters to the Vice Chancellor if they violated his

10   order, and I don't know if they did or didn't.  He doesn't get

11   to say that yet until I decide whether this was authorized or

12   not.

13             And again, I want to emphasize, I'm not finding one

14   way or the other.  I don't have the order.  I don't have

15   anything.  This is just simply my trying to understand what the

16   scope of the automatic stay is and whether anything, anything

17   can go forward in litigation involving the Debtor.

18             Now, I mean, there are certain exceptions.  But I

19   haven't heard where this one.

20             MR. CAPONI:  Your Honor, if I --

21             THE COURT:  And again -- yes?

22             MR. CAPONI:  I'm sorry.  Your position is clear, Your

23   Honor.  I'll just take one last shot at this and then I'll

24   yield.  There are two orders in place.

25             THE COURT:  Okay.

1          MR. CAPONI:  There is one that appoints the receiver

2    and spells out what the receiver does.  There's separately a

3    status quo order which says no one can facilitate a bankruptcy.

4    So there's two separate orders.  I believe, as I read the

5    docket entry, the Court is interested in the receivership

6    order, which says nothing about bankruptcy, and it indicates

7    that the receiver runs the company, he runs the Board of

8    Directors, et cetera.  That order can be violated regardless of

9    the bankruptcy.

10          So if someone calls a board meeting, if someone

11   orders stationary, if someone does anything with Technovative

12   assets without running it by Mr. Liston, they will be in

13   violation of that order.  It has nothing to do with bankruptcy

14   because there's nothing in that order about precluding a

15   bankruptcy.  I understand the Vice Chancellor as being focused

16   only on the receivership order and whether actions were taken

17   that violate that order or what Mr. Dupre's role was in

18   respecting that order not related to the bankruptcy.

19          THE COURT:  Well, it doesn't say that.  It just says

20   I want to know what role was with counsel.  I don't know what

21   his intentions are.  And that's the whole point of the matter

22   is if in fact it's a proper filing, I don't know how he would

23   say that you didn't do -- you violated the receivership order.

24          Ultimately, the receivership -- the receiver either

25   violated the order or he didn't, okay.  And I don't think that

1   we get to that yet.  Because ultimately, the Vice Chancellor

2   would have to -- I'm not sure why he would need to know that at

3   this point until I make a determination based on my review.

4   And of course, I'm going to read what the judge said.  I'm not

5   going to overrule his order.  I'm not going to do anything

6   except look at it and say, you know, it's a straight forward

7   order.  Again, I don't know if it is or isn't.  I don't know

8   what that means.

9           Ultimately, it could be that, you know, it's no

10  different than if you have an order from the -- an

11  interpretation from the court, another court on an agreement.

12  Say the parties have a partnership agreement, whatever, that

13  says you can't file bankruptcy without the vote of whatever.

14  And some court has said, okay, this what this means, and this

15  is who has the authority.  That's pretty easy for me.  I look

16  at it and say, well, this court says this person has the

17  authority.  This person didn't file.  Bankruptcy dismissed.  He

18  didn't  have the authority.  And then you have to go back to

19  the court that issued the order, and that court then gets to

20  say, I said you couldn't do this, and you did it anyway.  Well,

21  there's consequences for that.

22          And so, that's why I'm saying at this point, your

23  position is, well, he told the receiver not to do something and

24  he has the authority to determine whether he did it or not.  I

25  think it's premature.  Ultimately, it may end up the same way.

1    I'm just saying, I'm not quite sure that that makes sense for

2    that to go forward until there's a determination that the

3    receiver did something that violated some order.

4            You know, I think it's a little premature.  That's

5    all I'm saying.  And I understand what you're saying.  And I

6    understand what you're saying.  I get if he said, listen, we're

7    going to have status conference to determine what the status of

8    this case is and what we're going to do with it now that

9    bankruptcy has been filed.  There's nothing wrong with someone

10   going and saying, bankruptcy -- and this is a Vice Chancellor

11   in Delaware.  We're not saying that this isn't some

12   sophisticated party who doesn't understand the automatic stay.

13   I would be remised in thinking that he isn't.

14           And so, that's why I'm saying I'm not quite sure, you

15   know, and I don't know.  I can't call the Vice Chancellor and

16   say, well, what do you intend to do with this?  My concern only

17   is, is when the stay is imposed, can anyone do anything

18   involving the -- that needs to wait is stayed.  Doesn't mean

19   you can't get to it later.  It just means you can't do it now.

20   And that's what I'm trying to figure out.  Is it an absolute

21   bar to anything involving the Debtor?

22           And ultimately, what -- he wants to know what his

23   involvement was.  We can't get around that.  He wants to know;

24   did you authorize this?  Did you participate in this?  And if

25   he violated the court order, the Court gets to say that.  But

1    that doesn't happen until I figure out whether this was

2    authorized or not.  And so --

3              MR. ZAHRALDDIN:  Your Honor.

4              THE COURT:  -- there's no getting around that.  Yes?

5              MR. ZAHRALDDIN:  Your Honor, can I have one point of

6    clarification here?  I have to say there's a second part of the

7    language here.  And this is again Rafael Zahralddin for the

8    Debtor.  The second prong of the language here in this order is

9    a question as to exactly that.  How could Technovative file the

10   petition in light of the order and the status quo?  That goes

11   to the heart of whether there's authority.  And I agree with

12   you that's premature.

13             THE COURT:  Of course you do.

14             MR. ZAHRALDDIN:  And I have one other point just to

15   clarify things, and I'm sorry that we couldn't get more

16   information to you.  Let me clarify and correct Mr. Caponi on

17   one thing.  There was a bankruptcy for Stream that is not the

18   Debtor entity which is in front of you right now.  We're

19   talking about Technovative.  Technovative was not filed in the

20   first bankruptcy.  I can't remember if they were filed in the

21   involuntary.

22             The reason that those two bankruptcies were dismissed

23   as bad faith filings is because there was a -- the Judge, Judge

24   Owens in that case decided that it was better for the case to

25   be completed in chancellery court.  There was a preliminary

1   injunction.  She made a judgment call to dismiss the cases.

2   Have it adjudicated.  Vice Chancellor Laster put in a permanent

3   injunction giving the assets to the secured creditors.  That

4   was then appealed by Mr. Dupre.  And in the unanimous five to

5   zero decision, the Court remanded it back with a directive to

6   strike the transfer of the assets and the private foreclosure a

7   invalid in violation of Delaware law on its face because they

8   didn't get the preferred shareholder's votes in order to do

9   that transaction and to return the assets.

10         So the only reason those were unauthorized bad faith

11  filings was because something needed to be done in chancery.

12  Now we're back a year later, and the assets still hadn't been

13  returned.  And for a variety of other reasons, which we will

14  get in front of you when we have the right breathing spell, we

15  will explain why this bankruptcy was filed at this point.

16         Also, today was a pretrial conference originally at

17  3:00.  I realize that the space was set up for that and it had

18  been there for a while.  It has been changed now to focus on

19  this issue of the bankruptcy filing and that's what I meant

20  when I said we were surprised.  I didn't -- I just wanted to

21  clarify those couple of things because I didn't want you to

22  think that this was -- you know, this is a serious law firm.

23  These are serious issues, and this is a serious company.  We're

24  not lightly coming into bankruptcy court and asking for relief.

25         THE COURT:  Well let me just say that if it was just

1    a simple pretrial, that would have been stayed.  No one would

2    be saying it wasn't.  It would be stayed.  So the question is,

3    is because he added this on to the pretrial, does that now take

4    it out of the stay?  And what I'm hearing from counsel is,

5    well, this is because he believes that the attorney or Mr.

6    Dupre, I'm assuming he's an attorney because he said it had to

7    do with the bar, the Delaware bar, violating a judge's order.

8              MR. DUPRE:  I am an attorney.

9              THE COURT:  I don't know -- I mean, at some point

10   does he have the authority to inquire whether somebody violated

11   his order?  And I don't know.  I mean, at the end of the day,

12   they could be right.  This was prohibited.  And then if it was,

13   you guys all go back to chancellery court.  And if it isn't,

14   it'll never go back there.

15             MR. ZAHRALDDIN:  And, Your Honor, I have quotes from

16   Vice Chancellor Lamb as to why that would be impossible.  We

17   have other cases on point.  As you have mentioned, this is not

18   an uncommon issue.  This was a receiver pendente lite.

19             And again, I don't think that's before you today.

20   The real issue is particularly, and not to discount the

21   pressure on Mr. Dupre because I think that that is enough as it

22   is to deny any -- or enforce the stay.  But the second prong is

23   more concerning to me because it's an inquiry into matters that

24   should be in front of you and not the Vice Chancellor.

25             MR. DUPRE:  Your Honor, may -- may I?

1           THE COURT:  Who's this?  Yes, who's this?

2           MR. DUPRE:  Your Honor, may I speak?  This is Mr.

3    Dupre.  So I somehow became the star of the show of this

4    hearing to my chagrin.  I only need to tell you, this is our

5    pretrial conference.  It says it in the second sentence of this

6    order.  So I was prepared before there was a bankruptcy to go

7    do the joint exhibit list and the questions of law to be tried

8    and all the other things that you do at a pretrial conference.

9    That's what I intended to do today.  The Court just added this

10   on there.  Unless you tell me otherwise within the next eight

11   minutes, I am supposed to go to a pretrial conference.  It's

12   not cancelled.  It's not modified.  This thing is still going.

13          THE COURT:  Well, and it's a pretrial conference

14   involving the Debtor, correct?

15          MR. DUPRE:  Yes, Your Honor.  That is correct, Your

16   Honor.

17          THE COURT:  Then a pretrial conference involving the

18   Debtor is stayed.  I don't care what the subject is.  It's

19   stayed.  This is about the upcoming trial.  That trial --

20   anything in connection with that trial is stayed until we

21   figure out whether this is an authorized filing.  Because what

22   I already am hearing is that the Debtor believes is authorized,

23   other parties believe it's not prohibited by the judge's order.

24   I don't need to determine that today.  All I need to determine

25   is does the stay stop anything.  And this is a -- the pretrial

1    conference is stayed.

2           I don't care what you're going to go talk about over

3    there.  It is stayed because there is a valid filing in terms

4    of it was filed of record.  I don't want anybody to use the

5    word valid as it was authorized and proper.  Valid means a

6    petition -- let me back off.  A petition was filed.  The

7    lawyers, when the petition is filed, the automatic stay

8    automatically applies. It does not say it only applies in a

9    properly filed.  It does not say that.  And it's stayed until

10   either the case is dismissed, or relief is granted.  But

11   nothing can happen involving these Debtors.  Everything stays.

12   And the fact that he may have added on a different subject

13   matter in connection with the pretrial doesn't change that it's

14   a pretrial conference that is stayed.

15          I'm not quite sure what you guys want me to do.  I

16   mean, this is just brain -- if you were involved in any

17   litigation, district court, federal court, wherever.  That

18   litigation is stayed, when a -- when the stay goes into effect.

19   You either get the case dismissed, or you get the -- or you get

20   relief from the stay to go forward.

21          I have often said, okay, case is stayed, but I'm

22   going to send you guys back to state court to go litigate and

23   then come back here, and I'll figure out what I'm going to do

24   with it in bankruptcy, or from the very beginning, whether it's

25   an authorized filing or not, or it's a -- all of those things

1    are issues that have to be addressed, but they have no impact

2    on the automatic stay.  the  stay comes in unless it's like

3    some governmental, you know, there's some exceptions for

4    emergencies and all those other things.  I don't see how that

5    happens.  I don't see how the fact that the pretrial may

6    include some specific issue, transforming out of some continued

7    action in pending litigation.

8           So my understanding is this was what I heard from

9    debtor's counsel, and I think Mr. Dupre is that this was

10   scheduled.  Whatever was scheduled for today is stayed.  It

11   cannot go forward.  I'm not quite sure why anybody wouldn't

12   know that.  I don't know.  I don't -- and I'm not hearing an

13   exception.  And ultimately, if the Court believes that somebody

14   violated its order, then they could do a pre-trial -- I mean,

15   do a show cause hearing or something, but not in this case,

16   because the case that it's in is an action involving the

17   Debtor.

18          And to the extent that this is about some attorney

19   violating or a supervision of an attorney, then that needs to

20   be done separately and then somebody can come and tell me, why

21   or they grieve the stay?  Although I don't know it would

22   be -- I'm not -- I'm not even going to offer any -- I'm not

23   even addressing that.  That's if somebody thinks that, you

24   bring it to me.  But for today's purpose, there's no way a

25   pretrial conference can go forward.

1        Unless somebody else wants to chime in and say

2   something and tell me how a pretrial conference goes forward, I

3   want to hear it, but we're pushing up on four minutes before

4   this is supposed to go forward.  And presumably, let me back

5   off -- and Mr. Dupre wouldn't be the only one that would be

6   required to show up.  Debtors would be required -- how would

7   debtors not show up in a matter involving them?

8        So this isn't just going to be a hearing where it's

9   just Mr. Dupre showing up.  Debtors would have to show up.  And

10  debtors are not required to show up.  So how are you going to

11  go forward when the Debtors don't -- aren't even required to

12  show up?  That's another issue.  Debtors don't have to

13  participate in this.  And I don't see how you have a pretrial

14  where the -- are the Debtors the plaintiffs?  The defendants?

15  What are the in this action?  I don't even know that.

16        MR. CAPONI:  Defendant, Your Honor.

17        MR. ZAHRALDDIN:  I'll let Mr. Dupre answer that, Your

18  Honor.

19        THE COURT:  Mr. Dupre, the Debtors are what?

20        MR. DUPRE:  The Debtors -- the Debtors were the

21  defendants, Your Honor, or are the defendants I guess in the

22  stay.

23        THE COURT:  Well, how are you going to have a

24  pretrial conference when the defendants are in bankruptcy and

25  you can't proceed without them?  I don't even see how this goes

1    forward.  I mean, just common sense.  So I don't even -- I'm

2    not quite sure what it is.

3          All actions involving the Debtor are stayed.  That's

4    what the stay says.  And I don't know how you get around it.

5    Again, if the vice chancellor wants to say he has some action

6    involving Mr. Dupre, and he does something separately, well,

7    that's all fine and well, but that's not what we have here.  We

8    have a pretrial conference in a matter where the Debtors are

9    the defendants.

10          And in any case that is stayed, I don't know what's

11   different here.  I haven't heard anything that's different.

12   Debtors aren't required to show -- they have the protection of

13   the automatic stay.  So they don't have to show up, and I don't

14   know how you have a pretrial conference where the defendants

15   don't participate.  Anybody can tell me otherwise?

16          Okay.  The only thing I'm going to say is any matter

17   or pending actions involving the Debtor are stayed by the

18   automatic stay, which is what this automatic stay says.  I

19   don't think -- I don't even know why you guys need me to tell

20   you that.

21          Counsel, did you submit an order?  I mean, I'm pretty

22   sure that, as I said, I'm sure Vice Chancellor Laster is a very

23   sophisticated judge.  And I'm not quite sure what -- you know,

24   as I said, no pretrial conference is going forward.  Nothing

25   involving the Debtor and the Debtors don't even have to show up

1    because they're protected by the stay.  And I don't know how

2    you have an action where the Debtor -- the Debtor defendants,

3    who are not required to show up gets to go forward.

4            Now, is that -- listen, I can't see -- I can't

5    tell -- I mean, I can only say it's stayed, and it's

6    been -- nothing can go forward in a matter pending before

7    involving the Debtor.  Now, what that judge wants to do with

8    it, I can't -- you know, I can't force him.  But I don't see

9    how he can penalize the Debtors for not showing up or for

10   saying that they -- that anybody who is involved in this

11   litigation is required to show up when the defendants aren't.

12   I mean, it's stayed.  So is there an order or something that

13   somebody wanted for me to sign?  Is there --

14           MR. CAPONI:  Yes, Your Honor.  We can submit a very

15   simple order that grants the enforcement of the stay, and I

16   will submit it in the next 10 or 15 minutes.

17           THE COURT:  Okay.  And that's in the -- no wonder I

18   couldn't find it.  I'm in the wrong case.  I put --

19           MR. CAPONI:  Yes.  It's in the Technovative case,

20   Your Honor.

21           THE COURT:  23-10764.  I had 762.  23-10764.  Okay.

22   And counsel, I don't want anyone to think that this is some

23   determination.  I'll repeat myself.  That whether this was a

24   properly or authorized filing.  I'm not making any such

25   finding.  I'm only limiting to that the stay precludes any

1  action from going forward.  That is it.  All right.  I see you

2  proposed --

3          MR. CAPONI:  Yes, Your Honor.

4          THE COURT:  Let's see.  Order granting and let's see

5  what it says.  Okay.  Oh, no.  That's the order granting the

6  emergency hearing.  Motion filed.

7          Did you submit an order counsel?  I don't see one.

8          MR. CAPONI:  We haven't submitted one yet, Your

9  Honor, because we simply submitted the ones to get the

10 emergency hearing first.

11         THE COURT:  All right.  Counsel, next time --

12         MR. CAPONI:  I can get you one --

13         THE COURT:  Right.  When you do the emergency

14 hearing, you next time include both the hearings, the order

15 authorizing the motion and an order that would address the

16 actually underlying motion.  So all I can do is, it's 3:00.  I

17 don't know what to tell you except I'm saying it's stayed.  No

18 pretrial conference can go forward.  And if Judge Laster --

19 vice Chancellor Laster thinks there's something different that

20 does not involve the Debtors, he's free to do anything he

21 wants.  That's all I'm saying.  Okay.

22         MR. CAPONI:  Your Honor.  Thank you.  This is Steve

23 Caponi again.  Thank you for your guidance.  My assistant

24 called chambers, and let him know that Your Honor's decision

25 here today, but I'd be remissive while we have you on the phone

1   if I could just address one other issue briefly, which is, you

2   know, the matters that are contested whether this is a, you

3   know, another fraudulent filing or not, or it's a big issue,

4   relief from the stay, which we'll be most likely filing

5   tomorrow to let the trial go forward.  We'll get in front of

6   you.

7           A bigger issue, Your Honor, is for the last I want to

8   say six months or so during Mr. Liston's tenure as the

9   receiver, this entity has only been functioning through a funds

10  from the secured creditors and there's not going to be any

11  assets left.  They were talking to the tune of I think in

12  excess of a million dollars a month.  And I think we're going

13  to like to see how quickly we can get in front of Your Honor on

14  both whether this was an authorized filing and also relief from

15  the stay.  And Your Honor may not have any guidance to provide,

16  but any that you do I would appreciate.

17          THE COURT:  Well, the other issue, counsel, is you're

18  saying, you know, is this your cash collateral.  They can't use

19  it without your consent.  So that's another issue that the

20  Debtor would have that while this is pending, and they want to

21  use your asset.  And counsel, I have until 3:00 for this, only

22  because I have an obligation that I have to run off for.

23          MR. CAPONI:  I appreciate your help today, Your

24  Honor.  And we will address those issues --

25          THE COURT:  Well, counsel, I'm just

1   saying -- counsel, you can keep talking, I just want to tell

2   you --

3         MR. CAPONI:  Okay.

4         THE COURT:  -- that I will have to switch you to my

5   car phone.  So I will --

6         MR. CAPONI:  Okay.

7         THE COURT:  -- listen.  I just want everybody to know

8   if you hear that -- and you know, I have a 3:00 obligation

9   every day.

10        MR. CAPONI:  Okay.

11        THE COURT:  I am for the record if anybody -- if we

12  have anything from 3 to 4, I usually have to leave.  I now have

13  the pleasure of raising my well now 13-year-old grandson, and

14  I'm back to the parent mode.  So I get a child from school

15  every day, but I can talk.

16        So with respect to a hearing on a expedited basis, as

17  to getting relief from the stay to continue -- and counsel,

18  again, I have often when the issues are in state court, and/or

19  issues that the state court is familiar with, I often defer to

20  the state courts to address the underlying issues.  And then

21  when those issues are decided to the extent they impact or then

22  be addressed through bankruptcy, that happens also.

23        So even if I found this was a valid filing -- which I

24  don't know if I will or will not -- that does not mean that

25  relief could not be granted to continue.  Because if those are

1    underlying issues that ultimately would have to be decided to

2    this -- by this Court, I don't try to rewrite the litigation.

3    It's a waste of judicial resources.  And more importantly, I

4    just heard two courts who are much more familiar, and have the

5    expertise in a specific area.

6              Counsel, I'm going to have to put you on hold a

7    minute.

8              MR. CAPONI:  Certainly, Your Honor.

9              THE COURT:  Counsel, I'm back.  I apologize.  So --

10             MS. FAY:  Your Honor.

11             THE COURT:  -- counsel.  Yes.

12             MS. FAY:  This Erin Fay on behalf of the receiver.

13   And I apologize for being out of order here.  But I've been

14   patiently waiting and there's been no downtime to speak up.

15             THE COURT:  That's fine.

16             MS. FAY:  So I just wanted to note a couple of

17   things.  First, the receiver is keenly interested in following

18   all orders and applicable law of this Court and the chancery

19   court, whatever is applicable.  That's our goal is to figure it

20   out as quickly as possible.  But I would also be remiss to note

21   that Mr. Liston has been running this company for five months

22   now.  And that includes running real foreign operating

23   companies.

24             And so we're going to need to work together with the

25   Debtor to figure out how this can continue to work in the

1   transition period so that all value is maximized and all assets

2   are preserved.  The receivership order here goes beyond maybe

3   just operating assets and gives Mr. Liston all powers of the

4   board.  You know, we need to figure out how that all works

5   together.

6          THE COURT:  What about --

7          MS. FAY:  So that we can --

8          UNIDENTIFIED SPEAKER:  The --

9          THE COURT:  What are you talking about?  What carpet?

10  I'm sorry, counsel.  I didn't realize I wasn't on mute.

11         MS. FAY:  No problem, Your Honor.  We're not asking

12  for an advisory opinion today, but I just wanted to note that

13  these are real operating companies.  And if we can't agree on

14  the answer and the process, we may be back before Your Honor

15  very, very shortly.  So we'll put that in the potential need

16  for an emergency hearing.  Hopefully not.

17         I would also note that while we are -- while we've

18  been on the phone, the vice chancellor has entered a docket

19  entry that notes the pretrial conference is canceled, so it may

20  well be that the release is mooted for purposes of today.

21         THE COURT:  As I said, I would be remiss if I did not

22  assume -- oh, no.  Hold on.

23         All right, counsel.  So it was cancelled.  Before as

24  I said, I assume that the vice chancellor is very familiar with

25  bankruptcy, the implications and that this hearing may have

1   been whatever.  In terms of the receivership, I mean,

2   typically, typically, the -- I mean, the code says what

3   happens, although there is some provisions if I recall,

4   correctly, that apply or relate to what happens to

5   receiverships when a bankruptcy is filed.

6           So I'm not quite sure, given the concern about, I

7   heard you say either international is involved.  International

8   services and various issues that need to be addressed quickly.

9   Obviously, I will try to schedule if the parties ask for an

10  emergency hearing.

11          The issue may be is that I will be unavailable

12  from -- I think I have the -- we have a annual bankruptcy

13  conference on the 27th through the 29th.  And I will be away

14  from the 2nd through the 11th.  So that doesn't give us, you

15  know, within at least the next two weeks, a lot of available

16  time.

17          If that answers your question as to how quickly we

18  could get to a stay relief hearing, a concern for the receiver,

19  a properly authorized filing, all of those things, which I

20  anticipate would require -- you know, I'm not sure how lengthy,

21  but some time for an evidentiary record to be made.

22          MR. ZAHRALDDIN:  Yes, Your Honor.  And I also

23  appreciate if we would maybe also think about any sort of

24  relief that the Debtor actually wants, as opposed to the people

25  who want to throw us out of bankruptcy.  Because we have issues

1    and we'll work cooperatively with the receiver.

2            And we're not going to be using the cash collateral

3    of the lenders, because those were investments.  They were

4    secured in their convertible notes, which is another issue.

5    That's the purpose of some of the things that we're talking

6    about today.

7            But just please keep an open mind, Your Honor,

8    because once we have a second to breathe, and we're not

9    fighting to stay in the bankruptcy, we're going to be filing

10   some motions.  And I appreciate you letting us know your

11   availability.  But we'll work with the receiver to make sure we

12   don't -- we of course, are the most worried about these assets

13   and what's happening overseas.  And we'll present to Your Honor

14   evidence as to why we think the bankruptcy is a better place

15   for all that to get sorted out.

16           THE COURT:  Well, that's fine, counsel, but what I

17   was, I guess I'm hearing from -- I'm going to call them secured

18   creditors because that's just what I'm going to call them.  I

19   don't want anybody --

20           MR. ZAHRALDDIN:  Sure.

21           THE COURT:  -- to say that I'm finding that they are,

22   but they're the parties who has an interest in the cash from

23   what I'm gathering.  They have an interest in the cash.  And as

24   a result, they're concerned about what happens to their cash,

25   that they would need --

1              MR. ZAHRALDDIN:  There's no cash, Your Honor.

2              THE COURT:  -- some --

3              MR. ZAHRALDDIN:  There's no cash, Your Honor.

4              THE COURT:  Well, assets.

5              MR. ZAHRALDDIN:  The assets.  Yes.

6              THE COURT:  Well, he's saying that they're using

7      them?

8              MR. ZAHRALDDIN:  Yeah.

9              THE COURT:  Well, a million dollars in assets.

10             MR. ZAHRALDDIN:  It's intellectual property, Your

11     Honor.  Yeah.

12             THE COURT:  Okay.  Well, how is --

13             MR. CAPONI:  Your Honor.

14             THE COURT:  -- it being dissipated?  Yeah.  Okay.

15             MR. CAPONI:  Real briefly, Your Honor.  Steve Caponi

16     just so the record is clear.  The assets.  There is no cash.

17     They're hard assets.  It's IP.  This is a pre-production

18     company, pre-revenue.  There are many employees as well.  I

19     mean, there is a -- there the -- everything is done through an

20     operating subsidiary overseas.  And once those employees start

21     to question whether they're going to get paid or anything else,

22     everything evaporates.  So this is a very, very delicate

23     situation to say the least.  Very critical.

24             THE COURT:  Well, counsel, when you said that your

25     clients were losing a million dollars in assets a month or

1   something to that effect, I guess I assumed when you said a

2   million dollars in assets being used a month that that was

3   cash.  What assets of a million dollars are being used that is

4   be dissipated, reduced, whatever words you want to use?

5          MR. CAPONI:  Yes, Your Honor.  I'm sorry.  Maybe I

6   was not precise in my language.  The company operating needs

7   are approximately a million dollars a month.  My client has

8   been funding that million dollars a month through Mr. Liston as

9   the receiver.  If my client ceases to fund the million dollars

10  a month because this is a pre-revenue company, everything shuts

11  down immediately.

12         The companies are already -- and Mr. Liston is more

13  qualified to speak to this than am I.  But we've had several

14  situations where because again, this is overseas, they're very

15  regimented.  Tax payments needed to be made, and this entity

16  has been threatened to be shut down numerous times.  So if

17  the -- this were to drag out, we're not talking about, you

18  know, fighting over a car that's going to have inherent value.

19  The minute the weekly checks don't come from my client,

20  everything evaporates.  That's what I was referring to.

21         THE COURT:  Okay.

22         MR. ZAHRALDDIN:  And Your Honor, the reason that the

23  money's coming over is because the -- remember the assets were

24  supposed to come back to my client.  And so the -- while this

25  dispute is growing over this last year, which is we believe in

48

1    contravention of the clear direction from the Delaware Supreme

2    Court, the assets needed to be maintained.  So we had to put up

3    a bond, I believe Mr. Dupre can clarify that and the ask from

4    the secured creditors was to help to maintain the assets.  So

5    that's a directive to preserve the assets.  It's not a use of

6    their cash collateral.

7             THE COURT:  Okay.  All right.  So that's -- so I

8    guess I should, I violated my own rule of assuming, but I heard

9    a million dollars being used every month, and cash being

10   involved, that was the assumption.  So it was a wrong

11   assumption on my part.  So what --

12            MR. ZAHRALDDIN:  It's just very early, Your Honor.

13   That's why.  It's very early in all this.  We want to give

14   our -- we want to get an opportunity to get you all the facts.

15   And I'm sure the other side does, too.  That's kind of where we

16   are now.  So apologies for that.

17            THE COURT:  Okay.  Well, what I would suggest the

18   parties do is get together and try to come up with a time line.

19   Get some dates from my courtroom deputy, Ms. Godfrey from dates

20   that would work.  And I guess we're looking at next week and

21   the week after for being able to have hearings, and whether you

22   guys can get that done in that time period so that you can make

23   a proper evidentiary record.  I don't know.

24            MR. ZAHRALDDIN:  I don't think we can, Your Honor.

25   But --

```
1            MR. CAPONI:  We absolutely will, Your Honor.  No

2    surprise t0 --

3            MR. ZAHRALDDIN:  I don't think the Debtor should be

4    forced to try to force that in there.  I don't think with the

5    seriousness we have here that we can get depositions in and

6    discovery and all that that we'd have to do to defend whatever

7    is going to be sent to us.  There's no emergency here.  There's

8    no-- we can -- we'll show you that there's no need for that

9    type of -- we want to move things along, but we don't want to

10   be forced to be restricted from our breathing spell, which is

11   what the automatic stay is supposed to grant us.

12           MR. CAPONI:  Your Honor, we appreciate your guidance.

13   This is Mr. Caponi again.  We'll have a motion on file for

14   relief from stay tomorrow.  We anticipated that this was likely

15   to happen given the past conduct, and we'll demonstrate with

16   seriousness why actions need to happen more promptly and Your

17   Honor will make the decision ultimately, and we appreciate your

18   time.

19           THE COURT:  And counsel, if you need expedited

20   relief, please reach out to my courtroom deputy.  You know my

21   schedule.  I've already said, you know, after the next two

22   weeks -- after next week, and the following week starting on

23   the 27th, I'm pretty much going to be unavailable until the --

24           I'm back on the 12th right, Eileen?

25           THE CLERK:  Yes, Judge.  You are.
```

```
1              THE COURT:  All right.  Counsel, I'm going to hang up

2    because right now I don't think you want to hear a bunch of

3    screaming kids.  Thank you.

4              MR. CAPONI:  Thank you, Your Honor.  Bye-bye.

5              THE COURT:  Bye-bye.

6        (Proceedings adjourned at 3:15 p.m.)

7

8

9

10

11

12

13

14                      C E R T I F I C A T E

15

16        I hereby certify that the foregoing is a true and

17   correct transcript from the electronic sound recording of the

18   proceedings in the above-entitled matter.

19

20

21

22        /s/
          _____
          John Buckley, CET-623
23        Digital Court Proofreader

24

25
```