**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>STREAM TV NETWORKS, INC.,<br><br>Debtor, | CHAPTER 11<br><br>CASE NO.: 23-10763 MDC |
| IN RE:<br><br>TECHNOVATIVE MEDIA, INC.,<br><br>Debtor. | CHAPTER 11<br><br>CASE NO.: 23-10764 MDC<br><br>(Jointly Administered) |

**HAWK INVESTMENT HOLDINGS LTD.'S REPLY IN FURTHER SUPPORT OF EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE**

Hawk Investment Holdings Ltd. ("Hawk") as Collateral Agent for the secured noteholders of SeeCubic, Inc. ("SeeCubic"), a secured creditor of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative" and, together with Stream, the "Debtors") in the above-captioned chapter 11 cases (together, the "Chapter 11 Cases"), by and through its undersigned counsel, K&L Gates LLP, respectfully submits this reply in support of Hawk's motion for entry of an Order pursuant to 11 U.S.C. § 362(d), modifying the automatic stay for the purposes of allowing the Delaware Court of Chancery to proceed to a bench trial originally scheduled for March 23, 2023 (the "Stay Relief Motion"). In further support of the Stay Relief Motion and in reply to the Debtors' response filed on April 5, 2023, Hawk respectfully submits as follows:

**PRELIMINARY STATEMENT**

Hawk does not seek to relief to exercise any of its creditor remedies under Delaware state law at this time. Hawk only seeks relief to conclude the six-month litigation that will establish the amount and nature of the Secured Creditors' claims (the "Secured Claims"). The issues to be decided in the 225 Action are the key issues to be determined in the instant Chapter 11 cases,

1

permeating the strategy and posture throughout. The importance of these issues is underscored by the Debtors' own schedules, pleadings, and responses to date, nearly all of which refer to or assume conversion of the Secured Claims and potential set off claims that would all be resolved in the 225 Action. Knowing that these issues must be dealt with, the Debtors ask this Court to take the time and energy to restart the nearly-done litigation in the Court of Chancery, which was set for hearing within one week following the Petition Date (March 23, 2023).

This Court has the ability to have these issues resolved by a specialized court prepared for trial on an expedited basis and without further burdening this Court with continued litigation. The parties have expended millions of dollars in legal fees in the 225 Action preparing the case for trial, including completed written discovery, extensive motion practice, several interim orders and numerous depositions. Redoing the same legal work again before this Court is wasteful of the Court's capacity and detrimental to the Debtors' estates and creditors, who would bear the financial burden of this repeat process. Currently, the Debtors have no operating capital and have filed no motions for debtor-in-possession financing. Therefore, it is unclear what resources the Debtors would have to redo the extensive litigation work on these same issues.

Completing the 225 Action brings clarity and efficiency to the estates. It allows the Debtors to focus on valid reorganization efforts (if any) which would benefit all stakeholders, rather than engaging in another long litigation process. Given the extensive and expensive preparations for trial and crucial nature of the underlying issues to be determined with respect to the Secured Claims, this Court should grant Hawk relief from the automatic stay so that the nearly complete 225 Action can be brought to a conclusion.

## ARGUMENT

On April 5, 2023, the Debtors filed the *Debtors' (I) Objection to Emergency Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d) and (II) Cross-Motion for Turnover of*

*Property by a Custodian* (the "Stay Relief Objection"), objecting to Hawk's requested relief. *See* ECF No. 71. In the Stay Relief Objection, the Debtors generally propound two arguments: (1) the automatic stay applies to the 225 Action and (2) the automatic stay should not be lifted considering the factors some courts consider in analyzing this questions. Each of these arguments is addressed below.

### A. Hawk is not seeking relief to exercise its Delaware state law remedies against its Collateral at this time.

Hawk made a narrow request of this Court, for relief from the automatic stay to proceed with the trial scheduled in the 225 Action. As clearly explained in the Stay Relief Motion, Hawk seeks to modify the automatic stay only to conclude the 225 Action—an action in which Hawk has not requested or sought the sale of any of the Debtors' assets. In the 225 Action, Hawk seeks a declaration that: (1) its debt remains outstanding; (2) it possesses valid security interests in the Collateral; (3) the Debtors have failed to convert the debt; (4) there are strict requirements with which the Debtors must comply in order to effectuate such a conversion; and (5) the proxy notice sent on October 17, 2022 removed Mr. Rajan as director of Technovative. While Hawk had intended to complete an Article 9 sale of the Collateral if successful in the 225 Action, that was prior to the commencement of these Chapter 11 cases. Now, any further action with respect to the Collateral would be subject to the Bankruptcy Code and this Court's purview. But at least this Court and all stakeholders will have clarity as to the Secured Creditors' roles and rights in these Chapter 11 cases.

If Hawk prevails in the 225 Action, Stream will still own the equity of Technovative.[1] Even if the 225 Action results in Hawk's slate of directors having been appointed in October 2022, Hawk

---

[1] Hawk currently has a motion pending seeking dismissal, conversion, or appointment of a chapter 11 trustee. For the purposes of this Reply, Hawk assumes the Court has not granted dismissal and the Court retains jurisdiction over the Debtors in some form.

3

would remain subject to the limitations on a secured creditor to a company in bankruptcy, and its slate of directors would be subject to limitations attendant to their positions as directors of a company in bankruptcy. In short, neither Technovative nor Hawk would be able to take any further action without this Court's prior approval. Hawk expressly explained the limited nature of this request in its Stay Relief Motion.

The 225 Action would complement the Chapter 11 Cases rather than confuse or frustrate them. The issues to be determined in the 225 Action are central issues to these cases, which the Debtors have several times brought to the Court's attention. In fact, over the short life of these Chapter 11 cases, on at least *nine* separate occasions allegations have been made with respect to legal questions and determinations that would already have been resolved in 225 Action. Examples include:

- *Response in Opposition to Hawk Investment Holding Ltd.'s Request for an Emergency/Expedited Hearing on Emergency Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)* at 3 [ECF No. 28] (questioning whether "Hawk's claim is determined to be debt and/or equity");

- *Declaration of Mathu Rajan in Support of Stream TV Networks, Inc. and Technovative Media, Inc. Chapter 11 Petition, Supporting Emergency Relief, and First Day Motions* at ¶ 28 [ECF No. 48] ("For purposes of this filing, the Hawk Notes and SLS Insider Notes are characterized as debt that has not yet been converted pursuant to the Conversion Agreements, although this characterization is disputed by the Debtor.");

- *Schedule D: Creditors Who Have Claims Secured by Property* [ECF No. 53] (failing to include Hawk as a secured creditor);

- *Schedule E/F: Creditors Who Have Unsecured Claims* [ECF No. 54] (failing to include Hawk as an unsecured creditor);

- *Declaration of Christopher A. Michaels* at ¶ 9 [ECF No. 69] ("There seems to be a great deal of dispute regarding whether Hawk's debt has been converted to equity thereby completely removing it as a creditor.");

- *Debtors' Motion for Expedited Hearing on Emergency Motion Directing the Turnover of Property of Debtors' Estate* at ¶ 1 n.2 [ECF No. 77] ("Hawk Investment Holdings Limited's secured loan has been converted to equity.");

4

- *Debtors' (I) Objection to Emergency Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d) and (II) Cross-Motion for Turnover of Property by a Custodian*, at Introduction [ECF No. 78] ("Even if pre-petition Hawk could have validly taken the actions that it seeks in the 225 Action—which Debtors dispute because any claim of Hawk has been converted to equity….");

- *Supplement to Motion for Sanctions for Violation of the Automatic Stay*, at ¶ 13 [ECF No. 98] ("The Purported Secured Creditors signed conversion agreements effective January 2018, whereby they were supposed to become equity, not debt."); and

- *Declaration of Mathu Rajan in Support of Stream TV Networks, Inc. and Technovative Media, Inc. Motions for Entry of an Order: (1) Enforcing the Automatic Stay; (2) Directing the Turnover of Property of the Debtors' Estate; and (3) Imposing Sanctions for Willful Stay Violations*, at ¶ 13 [ECF No. 114-1] ("The alleged secured debt of Hawk Investment Holdings Limited … is undisputedly subject to a debt-to-conversion [sic] agreement effective January 2018 in which Stream has the unilateral right to convert the Hawk debt subject to new capital raises. The exact amount of the Hawk debt remaining, if any, has yet to be adjudicated.").

As the record in these cases makes clear, the nature and extent of Hawk's debt is vitally important to the strategy to be implemented in—and the ultimate outcome of—these Chapter 11 Cases. These issues are core and central to the Chapter 11 cases—the rights and liens of the Secured Creditors are relevant to almost every aspect of a reorganization case under the Bankruptcy Code.

These questions, which the parties have already briefed before the Court of Chancery, will need to be adjudicated eventually. This Court may endeavor to determine the questions, but it would be required to start over from scratch and the parties' efforts thus far in the 225 Action would have been for naught—a waste. Conversely, allowing the Court of Chancery to make a determination of Hawk's claims against the Debtors in the 225 Action will serve the interest of judicial economy and allow for the nature of Hawk's claim to be expeditiously determined under state law. As noted, the 225 Action is ready to proceed to a short trial, without any additional witness testimony or fact finding.

5

There will be no prejudice to the Debtor or the estate if the litigation is allowed to proceed. Contrary to relief sought by the Debtors in various motions, Hawk does not seek to remove or execute on property from the estates through this Motion. The 225 Action will resolve all issues surrounding the nature and extent of claims arising from the Hawk Notes and the SLS Notes. It will also crystallize and resolve any defense the Debtors may have thereto, making these claims known, and not otherwise altering any other party's rights in these cases. Rather than harm the estates, they will be benefitted from a faster, less costly resolution of these issues.

### B. The Debtors argue this Court should apply a different standard to determine "cause."

The Debtors failed entirely to respond to the factors and arguments outlined by Hawk in the Stay Relief Motion. Instead, the Debtors rely on the decision of a federal court in *Delaware* for the proposition that a three-pronged test to determine whether cause exists for granting relief from the automatic stay to continue litigation in another forum applies. *See* Objection to Stay Relief, ¶ 17 (citing *In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009)). The Debtors do not address the case law in this jurisdiction that Courts apply, which includes a totality of the circumstances analysis and consideration of a number of factors to determine whether there is cause to grant a motion for relief from stay. *See*, *e.g.*, *In re Chan,* 355 B.R. 494, 499–500 (Bankr. E.D. Pa. 2006); *see also In re Stone Res., Inc.*, 482 F. App'x 719, 722 (3d Cir. 2012) (holding that bankruptcy courts examine the totality of the circumstances when determining whether a creditor is entitled to stay relief).

As set forth in further detail below, however, even if the Court applies the test championed by the Debtors, the balance of the hardships and totality of the circumstances strongly favor granting relief from the stay to allow a continuation of the 225 Action.

6

### (1) Lifting the Stay Would Not Greatly Prejudice Debtors and the Estates.

As discussed in the Stay Relief Motion, where discovery is complete and the parties have fully prepared for trial, lifting the automatic stay does not impose a burden on the debtor. *Matter of Rexene Prod. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992). Courts have expressly held that where a "bankruptcy case was filed on the eve of trial" and "both parties have already spent all of the necessary time and resources in preparation," lifting the stay to continue the civil suit is not prejudicial to the Debtor, and in fact, "[t]he longer the trial is delayed, the more burdensome it is to both parties to ready themselves again." *See In re SCO Grp., Inc.*, 395 B.R. 852, 858 (Bankr. D. Del. 2007). Accordingly, failure to grant the relief requested by Hawk would be more prejudicial *to the Debtors* than would be granting the relief.

The 225 Action will resolve all issues surrounding the nature and extent of claims arising from the Hawk Notes and the SLS Notes, so this Court does not have to do so. It will also crystallize and resolve any defenses the Debtors may have thereto, making these claims known, and not otherwise altering any other party's rights in these cases—as explained above, the 225 Action will not affect any of the Debtors' rights in the Collateral. Additionally, no plan of reorganization that this Court would reasonably expect to be confirmed under Section 1129 could be formulated by the Debtors without determining the amount of the Debtors' liability and the extent of the liens of the Secured Creditors.

Rather than prejudicing the Debtors, the 225 Action would only clarify issues before this Court and save the Debtors' estates precious resources by not having to engage in a lengthy and expensive discovery process for the second time. This ground has already been tread. The Court of Chancery is ready to hear the case and render its ruling; it merely needs the relief requested in the Stay Relief Motion to do so.

### (2) The Automatic Stay Imposes Hardship on Hawk

Any delay in granting Hawk relief from the automatic stay imposes a serious hardship on Hawk, and in fact, the Debtors filed these Chapter 11 cases specifically to impose this hardship on Hawk as a litigation tactic. As noted above, the parties have already incurred significant costs over the course of six months—including multiple depositions, producing and reviewing thousands of pages of document discovery, numerous hearings and rulings from the Court of Chancery, and the finalization of pretrial briefing. All the work explained above would need to be re-done were litigation on those issues to restart in this Court. Such an immense cost and delay would not only be a hardship on Hawk, but also on these Debtors' estates as a drain on their resources.

As discussed above, while these issues remain unresolved, no valid Chapter 11 reorganization efforts can proceed, and no determinations can be made as to potential debtor-in possession financing or use of the Debtors' assets in the ordinary course of its business. And, the lack of funding (either DIP financing or funding from the Secured Creditors) will damage the Debtors and jeopardize any possible recoveries for creditors of the Debtors' estates. During the duplicative litigation, the assets of the Debtors, the technology owned by the non-debtor subsidiaries, will decline in value. Disruption to the operating entities will damage the value of the Collateral and ongoing business operations, including without limitation, potentially causing losses of critical employees and managers who understand and are marketing and developing the technology. The speed and efficiency of the Court of Chancery in resolving these questions is particularly valuable here where the Secured Creditors have been funding Technovative and its subsidiaries from the inception of the 225 Action to present and the value of the Estate should be preserved for all creditors.

### (3) By the Debtors Own Admission, Hawk Will Likely Succeed on the Merits in the 225 Action

Although the Debtors argue in their Objection that they would prevail in the 225 Action and have strong defenses (Objection to Stay Relief, ¶¶ 27–30), the Debtors have ***admitted*** that they commenced these Chapter 11 Cases as a litigation tactic in order to avoid an anticipated adverse ruling in the 225 Action. The Debtors have made this representation both in sworn statements as part of these Chapter 11 cases and otherwise to investors.

First, in the First Day Declaration filed in these Chapter 11 Cases, Mr. Rajan stated that the "Chancery Court … has allowed [the Secured Creditors, SeeCubic and Mr. Stastney] to unlawfully seice, retain, and use the Debtor's assets…. The irreparable harm has necessitated the Debtor and its primary subsidiary, TechnoVative USA, to seek chapter 11 relief." *See Declaration of Mathu Rajan in Support of Stream TV Networks, Inc. and Technovative Media, Inc. Chapter 11 Petition, Supporting Emergency Relief, and First Day Motions*, at ¶¶ 90–94 [ECF No. 48]. Such a statement clearly does not exude confidence in the Debtors' chances before the Court of Chancery.

Furthermore, on March 11, 2023, four days before commencing the bankruptcy cases at bar, Stream communicated with its investors through an email from Marc Dannenberg, a broker working with the Rajans on behalf of Stream and VSI, in which he stated:

> Hey there,
>
> * * * *
>
> Here is the fair warning.
>
> We have been forced into a corner by the Chancery court due to their leniency towards Creditors and the little boy mafia at SeeCubic…. We are not getting a fair shake in Chancery…as shown by both the original ruling which was overturned in the Supreme Court, and the rulings in this current case.

9

Stay Decl. Ex. Q.

Further, it is ironic that the Debtors appear to now be confident in succeeding on the merits in the 225 Action. The Debtors had the opportunity proceed with the trial in the 225 Action where their success would have meant the elimination of 90% of their Secured Debt, relieving the Debtors of their secured debt burden and rendering the commencement of these cases unnecessary. The Debtors' lack of faith in their own case is self-evident, and their representations to the contrary are disingenuous at best.

## **CONCLUSION**

As addressed above, no matter the standard applied by this Bankruptcy Court, Hawk should be entitled to stay relief to conclude the 225 Action. It is in the best interest of all creditors that the 225 Action be resolved in order for the Debtor to move forward with any plan of reorganization. It is the most expeditious path forward. Accordingly, Hawk respectfully requests that the Court grant Hawk relief from the automatic stay.

Dated: April 14, 2023                **K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi, Esq. (No. 91881)
K&L Gates LLP
600 King Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 416-7000
Facsimile: (302) 416-7020
Email: Steven.caponi@klgates.com


*/s/ Margaret R. Westbrook*
Margaret R. Westbrook, Esq.
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, NC 28202
Telephone: (704) 331-7400

Email: margaret.westbrook@klgates.com

*/s/ Aaron S. Rothman*
Aaron S. Rothman, Esq.
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, NC 28202
Telephone: (704) 331-7400
Email: aaron.rothman@klgates.com

*/s/ Jonathan N. Edel*
Jonathan N. Edel, Esq.
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, NC 28202
Telephone: (704) 331-7400
Email: jon.edel@klgates.com

*Attorneys for Hawk Investment Holdings Ltd.*

## **CERTIFICATE OF SERVICE**

I, Steven L. Caponi, certify that on April 14, 2023 I caused a copy of the forgoing *Hawk Investment Holdings Ltd.'s Reply in Further Support of Emergency Motion for Relief from the Automatic Stay Pursuant To Section 362(d) of the Bankruptcy Code* to be served on those persons receiving notice through CM/ECF.

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 91881)