LQKP VN<"CF O K RUVGTF" Y KVJ "UVTGCO "VX" PGVYQTMU" RE<"2c3-17063"

# UNITED STATES BANKRUPTCY COURT
## EASTERN  DISTRICT OF  PENNSYLVANIA

In re Technbovative Media, Inc.

Debtor

**Case No. 23-10764**

### INITIAL MONTHLY OPERATING REPORT

**File report and attachments with Court and submit copy to United States Trustee within 15 days after order for relief.**

Certificates of insurance must name United States Trustee as a party to be notified in the event of policy cancellation.
Bank accounts and checks must bear the name of the debtor, the case number, and the designation "Debtor in Possession."
Examples of acceptable evidence of Debtor in Possession Bank accounts include voided checks, copy of bank deposit
agreement/certificate of authority, signature card, and/or corporate checking resolution.

| REQUIRED DOCUMENTS | Document Attached | Explanation Attached |
|---|---|---|
| **12-Month Cash Flow Projection  (Form IR-1)** | | |
| **Certificates of Insurance:** | | |
|   Workers Compensation | | |
|   Property | | |
|   General Liability | DECLARATIONS PAGE ATTACHED | |
|   Vehicle | | |
|   Other:_____ | | |
|   Identify areas of self-insurance w/liability caps | | |
| **Evidence of Debtor in Possession Bank Accounts** | | |
|   Tax Escrow Account | | |
|   General Operating Account | None. | |
|   Money Market Account pursuant to Local Rule 4001-3 for the | | |
|   District of Delaware only.  Refer to: | | |
|   http://www.deb.uscourts.gov/ | | |
|   Other:_____ | | |
| **Retainers Paid (Form IR-2)** | ATTACHED | |
| | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the documents attached
are true and correct to the best of my knowledge and belief.

_____
Signature of Debtor

Apr 20, 2023
_____
Date

_____
Signature of Joint Debtor

_____
Date

_____
Signature of Authorized Individual*

Apr 20, 2023
_____
Date

Mathu Rajan
_____
Printed Name of Authorized Individual

President
_____
Title of Authorized Individual

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

FORM IR
(4/07)

Case No. 23-10764

Reporting Period: March 15 - March 31, 2023

In re: Technovative Media, Inc.

Debtor

## SCHEDULE OF RETAINERS PAID TO PROFESSIONALS

(This schedule is to include each Professional paid a retainer [1])

| Payee | Check Date | Number | Name of Payor | Amount | Amount Applied to Date | Balance |
|-------|------|--------|---------------|--------|------------------------|---------|
| Lewis Brisbois | 3/14/23 | Wire | Visual Semi Conductor | See below | | |
| BMC Group | 3/23/23 | Wire | Visual Semi Conductor | See below | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

[1]  Identify all Evergreen Retainers

On March 14, 2023, prior to the filing of the Petition, LBBS received a retainer $50,000 to include both the Stream TV Networks, Inc. bankruptcy case and the Techovative Media, Inc. bankruptcy case.
On March 23, 2023, BMC Group received a retainer $5,000 to include both the Stream TV Networks, Inc. bankruptcy case and the Techovative Media, Inc. bankruptcy case.

Form IR-2

(4/07)

**UNITED STATES BANKRUPTCY COURT**
Eastern____ **DISTRICT OF** Pennsylvania

In re Technovative Media, Inc.
    Debtor

**Case No.  23-10764**
**Reporting Period:** March 15 - March 31, 2023

**MONTHLY OPERATING REPORT**
**File with Court and submit copy to United States Trustee within 20 days after end of month.**

Submit copy of report to any official committee appointed in the case.

| REQUIRED DOCUMENTS | Form No. | Document Attached | Explanation Attached | Affidavit/Supplement Attached |
|---|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | 0.00 | | | |
|   Bank Reconciliation (or copies of debtor's bank reconciliations) | | | | |
|   Schedule of Professional Fees Paid | | | | |
|   Copies of bank statements | | | | |
|   Cash disbursements journals | | | | |
| Statement of Operations | | | | |
| Balance Sheet | | | | |
| Status of Postpetition Taxes | | | | |
|   Copies of IRS Form 6123 or payment receipt | | | | |
|   Copies of tax returns filed during reporting period | | | | |
| Summary of Unpaid Postpetition Debts | | | | |
|   Listing of aged accounts payable | | | | |
| Accounts Receivable Reconciliation and Aging | | | | |
| Debtor Questionnaire | | | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents
are true and correct to the best of my knowledge and belief.

_____
Signature of Debtor

Apr 20, 2023
_____
Date

_____
Signature of Joint Debtor

_____
Date

_____
Signature of Authorized Individual*

Apr 20, 2023
_____
Date

Mathu Rajan
_____
Printed Name of Authorized Individual

President
_____
Title of Authorized Individual

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

Case No. 23-10764

Reporting Period: March 15 - March 31, 2023

**In re Technovative Media, Inc.**

Debtor

## SCHEDULE OF CASH RECEIPTS AND DISBURSEMENTS

Amounts reported should be per the debtor's books, not the bank statement.  The beginning cash should be the ending cash from the prior month or, if this is the first report,  the amount should be the balance on the date the petition was filed.  The amounts reported in the "CURRENT MONTH - ACTUAL" column must equal the sum of the four bank account columns.   The amounts reported in the "PROJECTED" columns should be taken from the SMALL BUSINESS INITIAL REPORT (FORM IR-1) .  Attach copies of the bank statements and the cash disbursements journal.  The total disbursements listed in the disbursements journal must equal the total disbursements reported on this page.   A bank reconciliation must be attached for each account.  [See MOR-1 (CONT)]

| | BANK ACCOUNTS | | | | CURRENT MONTH | | CUMULATIVE FILING TO DATE | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | OPER. | PAYROLL | TAX | OTHER | ACTUAL | PROJECTED | ACTUAL | PROJECTED |
| **CASH BEGINNING  OF MONTH** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **RECEIPTS** | | | | | | | | |
| CASH  SALES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ACCOUNTS RECEIVABLE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| LOANS AND ADVANCES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SALE  OF  ASSETS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| OTHER  (ATTACH LIST) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TRANSFERS  (FROM DIP ACCTS) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | |
| **TOTAL  RECEIPTS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **DISBURSEMENTS** | | | | | | | | |
| NET PAYROLL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| PAYROLL TAXES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SALES, USE, & OTHER TAXES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INVENTORY PURCHASES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SECURED/ RENTAL/ LEASES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INSURANCE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ADMINISTRATIVE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SELLING | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| OTHER  (ATTACH LIST) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | |
| OWNER DRAW * | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TRANSFERS (TO DIP ACCTS) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | |
| PROFESSIONAL FEES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| U.S. TRUSTEE  QUARTERLY FEES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| COURT COSTS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **TOTAL DISBURSEMENTS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **NET CASH FLOW** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| (RECEIPTS LESS DISBURSEMENTS) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **CASH - END OF MONTH** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

* COMPENSATION TO SOLE PROPRIETOR FOR SERVICES RENDERED TO BANKRUPTCY ESTATE

### THE FOLLOWING SECTION MUST BE COMPLETED

| DISBURSEMENTS FOR CALCULATING U.S. TRUSTEE QUARTERLY FEES:  (FROM CURRENT MONTH  ACTUAL COLUMN) | |
| --- | --- |
| **TOTAL DISBURSEMENTS** | $  0.00 |
| LESS:  TRANSFERS TO DEBTOR IN POSSESSION  ACCOUNTS | $  0.00 |
| PLUS:  ESTATE DISBURSEMENTS MADE BY OUTSIDE SOURCES  (i.e. from escrow accounts) | $  0.00 |
| **TOTAL DISBURSEMENTS FOR CALCULATING U.S. TRUSTEE QUARTERLY FEES** | $  0.00 |

In re Technovative Media, Inc.

Debtor

Case No. 23-10764
Reporting Period: March 15 - March 31, 2023

### BANK RECONCILIATIONS

**Continuation Sheet for MOR-1**

A bank reconciliation must be included for each bank account.  The debtor's bank reconciliation may be substituted for this page.

| | Operating | | Payroll | | Tax | | Other | |
|---|---|---|---|---|---|---|---|---|
| | # | | # | | # | | # | |
| **BALANCE PER BOOKS** | | | | | | | | |
| | | | | | | | | |
| BANK BALANCE | N/A | | | | | | | |
| (+) DEPOSITS IN TRANSIT (ATTACH LIST) | 0.00 | | | | | | | |
| (-)  OUTSTANDING CHECKS (ATTACH LIST) | 0.00 | | | | | | | |
| OTHER  (ATTACH EXPLANATION) | | | | | | | | |
| ADJUSTED BANK BALANCE * | | | | | | | | |
| * Adjusted bank balance must equal | | | | | | | | |
|    balance per books | 0.00 | | | | | | | |
| | | | | | | | | |
| **DEPOSITS IN TRANSIT** | Date | Amount | Date | Amount | Date | Amount | Date | Amount |
| None | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **CHECKS OUTSTANDING** | Ck. # | Amount | Ch. # | Amount | Ck. # | Amount | Ck. # | Amount |
| None | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **OTHER** | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

In re Technovative Media, Inc.
Debtor

Case No. 23-10764
Reporting Period: March 15 - March 31, 2023

### SCHEDULE OF PROFESSIONAL FEES AND EXPENSES PAID

This schedule is to include all retained professional payments from case inception to current month.

| Payee | Period Covered | Amount Approved | Payor | Check Number | Date | Amount Paid Fees | Expenses | Year-To-Date Fees | Expenses |
|---|---|---|---|---|---|---|---|---|---|
| N/A | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

FORM MOR-1b
(04/07)

Case No. 23-10764
Reporting Period: March 15 - March 31, 2023

In re Technovative Media, Inc.

Debtor

## STATEMENT OF OPERATIONS
(Income Statement)

The Statement of Operations is to be prepared on an accrual basis.  The accrual basis of accounting recognizes revenue when it is realized and expenses when they are incurred, regardless of when cash is actually received or paid.

| REVENUES | Month | Cumulative Filing to Date |
|---|---|---|
| Gross Revenues | $ 0.00 | $ 0.00 |
| Less:  Returns and Allowances | | |
| Net Revenue | $ 0.00 | $ 0.00 |
| **COST OF GOODS SOLD** | | |
| Beginning Inventory | 0.00 | 0.00 |
| Add: Purchases | 0.00 | 0.00 |
| Add: Cost of Labor | 0.00 | 0.00 |
| Add: Other Costs (attach schedule) | 0.00 | 0.00 |
| Less: Ending Inventory | 0.00 | 0.00 |
| Cost of Goods Sold | | |
| Gross Profit | 0.00 | 0.00 |
| **OPERATING EXPENSES** | | |
| Advertising | 0.00 | 0.00 |
| Auto and Truck Expense | 0.00 | 0.00 |
| Bad Debts | 0.00 | 0.00 |
| Contributions | 0.00 | 0.00 |
| Employee Benefits Programs | 0.00 | 0.00 |
| Insider Compensation* | 0.00 | 0.00 |
| Insurance | 0.00 | 0.00 |
| Management Fees/Bonuses | 0.00 | 0.00 |
| Office Expense | 0.00 | 0.00 |
| Pension & Profit-Sharing Plans | 0.00 | 0.00 |
| Repairs and Maintenance | 0.00 | 0.00 |
| Rent and Lease Expense | 0.00 | 0.00 |
| Salaries/Commissions/Fees | 0.00 | 0.00 |
| Supplies | 0.00 | 0.00 |
| Taxes - Payroll | 0.00 | 0.00 |
| Taxes - Real Estate | 0.00 | 0.00 |
| Taxes - Other | 0.00 | 0.00 |
| Travel and Entertainment | 0.00 | 0.00 |
| Utilities | 0.00 | 0.00 |
| Other (attach schedule) | 0.00 | 0.00 |
| Total Operating Expenses Before Depreciation | 0.00 | 0.00 |
| Depreciation/Depletion/Amortization | 0.00 | 0.00 |
| Net Profit (Loss) Before Other Income & Expenses | 0.00 | 0.00 |
| **OTHER INCOME AND EXPENSES** | | |
| Other Income (attach schedule) | 0.00 | 0.00 |
| Interest Expense | 0.00 | 0.00 |
| Other Expense (attach schedule) | 0.00 | 0.00 |
| Net Profit (Loss) Before Reorganization Items | 0.00 | 0.00 |
| **REORGANIZATION ITEMS** | | |
| Professional Fees | 0.00 | 0.00 |
| U. S. Trustee Quarterly Fees | 0.00 | 0.00 |
| Interest Earned on Accumulated Cash from Chapter 11 (see continuation sheet) | 0.00 | 0.00 |
| Gain (Loss) from Sale of Equipment | 0.00 | 0.00 |
| Other Reorganization Expenses (attach schedule) | 0.00 | 0.00 |
| Total Reorganization Expenses | 0.00 | 0.00 |
| Income Taxes | 0.00 | 0.00 |
| Net Profit (Loss) | $ 0.00 | $ 0.00 |

*"Insider" is defined in 11 U.S.C. Section 101(31).

In re Technovative Media, Inc.

Debtor

Case No. 23-10764
Reporting Period: March 15 - March 31, 2023

## STATEMENT OF OPERATIONS - continuation sheet

| BREAKDOWN OF "OTHER" CATEGORY | Month | Cumulative Filing to Date |
|---|---|---|
| N/A | | |
| **Other Costs** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Other Operational Expenses** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Other Income** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Other Expenses** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Other Reorganization Expenses** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Reorganization Items - Interest Earned on Accumulated Cash from Chapter 11:**
Interest earned on cash accumulated during the chapter 11 case, which would not have been earned but for the
bankruptcy proceeding, should be reported as a reorganization item.

In re Technovative Media, Inc.

Debtor

Case No. 23-10764
Reporting Period: March 15 - March 31, 2023

## BALANCE SHEET

The Balance Sheet is to be completed on an accrual basis only.  Pre-petition liabilities must be classified separately from postpetition obligations.

| ASSETS | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|
| **CURRENT ASSETS** | | |
| Unrestricted Cash and Equivalents | $0.00 | $0.00 |
| Restricted Cash and Cash Equivalents (see continuation sheet) | | |
| Accounts Receivable (Net) | $0.00 | $0.00 |
| Notes Receivable | $0.00 | $0.00 |
| Inventories | | |
| Prepaid Expenses | | |
| Professional Retainers | | |
| Other Current Assets (attach schedule) | | |
| *TOTAL CURRENT ASSETS* | $0.00 | $ 0.00 |
| **PROPERTY AND EQUIPMENT** | | |
| Real Property and Improvements | | |
| Machinery and Equipment | $0.00 | $0.00 |
| Furniture, Fixtures and Office Equipment | $0.00 | $0.00 |
| Leasehold Improvements | | |
| Vehicles | | |
| Less Accumulated Depreciation | $0.00 | 0.00 |
| *TOTAL PROPERTY & EQUIPMENT* | $ 0.00 | $ 0.00 |
| **OTHER ASSETS** | | |
| Loans to Insiders* | | |
| Other Assets (attach schedule) | $ 0.00 | $0.00 |
| *TOTAL OTHER ASSETS* | $0.00 | $ 0.00 |
| **TOTAL ASSETS** | $ 0.00 | $ 0.00 |

| LIABILITIES AND OWNER EQUITY | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|
| *LIABILITIES NOT SUBJECT TO COMPROMISE (Postpetition)* | | |
| Accounts Payable | | |
| Taxes Payable (refer to FORM MOR-4) | | |
| Wages Payable | | |
| Notes Payable | | |
| Rent / Leases - Building/Equipment | | |
| Secured Debt / Adequate Protection Payments | | |
| Professional Fees | | |
| Amounts Due to Insiders* | | |
| Other Postpetition Liabilities (attach schedule) | | |
| *TOTAL POSTPETITION LIABILITIES* | $0.00 | $ 0.00 |
| *LIABILITIES SUBJECT TO COMPROMISE (Pre-Petition)* | | |
| Secured Debt | $0.00 | $0.00 |
| Priority Debt | | |
| Unsecured Debt | $0.00 | $0.00 |
| *TOTAL PRE-PETITION LIABILITIES* | $ 0.00 | $ 0.00 |
| *TOTAL LIABILITIES* | $ 0.00 | $ 0.00 |
| *OWNER EQUITY* | | |
| Capital Stock | $0.00 | $0.00 |
| Additional Paid-In Capital | $0.00 | $0.00 |
| Partners' Capital Account | | |
| Owner's Equity Account | | |
| Retained Earnings - Pre-Petition | $0.00 | $0.00 |
| Retained Earnings - Postpetition | | |
| Adjustments to Owner Equity (attach schedule) | | |
| Postpetition Contributions (Distributions) (Draws) (attach schedule) | | |
| *NET OWNER EQUITY* | $0.00 | $0.00 |
| **TOTAL LIABILITIES AND OWNERS' EQUITY** | $ 0.00 | $ 0.00 |

*"Insider" is defined in 11 U.S.C. Section 101(31).

In re Technovative Media, Inc.

    Debtor

Case No. 23-10764

Reporting Period: March 15 - March 31, 2023

**BALANCE SHEET - continuation sheet**

| ASSETS | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|
| **Other Current Assets** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Other Assets** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| LIABILITIES AND OWNER EQUITY | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|
| **Other Postpetition Liabilities** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Adjustments to Owner Equity** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Postpetition Contributions (Distributions) (Draws)** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Restricted Cash is cash that is restricted for a specific use and not available to fund operations.  Typically, restricted cash is segregated
into a separate account, such as an escrow account.

Case No. 23-10764
Reporting Period: March 15 - March 31, 2023

In re Technovative Media, Inc.

Debtor

## STATUS OF POSTPETITION TAXES

The beginning tax liability should be the ending liability from the prior month or, if this is the first report, the amount should be zero.
Attach photocopies of IRS Form 6123 or payment receipt to verify payment or deposit of federal payroll taxes.
Attach photocopies of any tax returns filed during the reporting period.

| | Beginning Tax Liability | Amount Withheld or Accrued | Amount Paid | Date Paid | Check No. or EFT | Ending Tax Liability |
|---|---|---|---|---|---|---|
| **Federal** | | | | | | |
| Withholding | N/A | | | | | |
| FICA-Employee | | | | | | |
| FICA-Employer | | | | | | |
| Unemployment | | | | | | |
| Income | | | | | | |
| Other:_____ | | | | | | |
|   Total Federal Taxes | | | | | | |
| **State and Local** | | | | | | |
| Withholding | | | | | | |
| Sales | | | | | | |
| Excise | | | | | | |
| Unemployment | | | | | | |
| Real Property | | | | | | |
| Personal Property | | | | | | |
| Other:_____ | | | | | | |
|   Total State and Local | | | | | | |
| **Total Taxes** | | | | | | |

## SUMMARY OF UNPAID POSTPETITION DEBTS

Attach aged listing of accounts payable.

| | Number of Days Past Due | | | | | |
|---|---|---|---|---|---|---|
| | Current | 0-30 | 31-60 | 61-90 | Over 90 | Total |
| Accounts Payable | | | | | | |
| Wages Payable | | | | | | |
| Taxes Payable | | | | | | |
| Rent/Leases-Building | | | | | | |
| Rent/Leases-Equipment | | | | | | |
| Secured Debt/Adequate Protection Payments | | | | | | |
| Professional Fees | | | | | | |
| Amounts Due to Insiders* | | | | | | |
| Other:_____ | | | | | | |
| Other:_____ | | | | | | |
| **Total Postpetition Debts** | | | | | | |

**Explain how and when the Debtor intends to pay any past-due postpetition debts.**

*"Insider" is defined in 11 U.S.C. Section 101(31).

In re Technovative Media, Inc.

      Debtor

# ACCOUNTS RECEIVABLE RECONCILIATION AND AGING

| Accounts Receivable Reconciliation | Amount | |
| --- | --- | --- |
| Total Accounts Receivable at the beginning of the reporting period | $0.00 | $0.00 |
| + Amounts billed during the period | $0.00 | $0.00 |
| - Amounts collected during the period | $0.00 | $0.00 |
| Total Accounts Receivable at the end of the reporting period | $0.00 | $0.00 |
| | | |

| Accounts Receivable Aging | Amount | |
| --- | --- | --- |
| 0 - 30 days old | | |
| 31 - 60 days old | | |
| 61 - 90 days old | | |
| 91+ days old | $0.00 | $0.00 |
| Total Accounts Receivable | $0.00 | $0.00 |
| Amount considered uncollectible (Bad Debt) | $0.00 | $0.00 |
| Accounts Receivable (Net) | $0.00 | $0.00 |

# DEBTOR QUESTIONNAIRE

| Must be completed each month | Yes | No |
| --- | --- | --- |
| 1. Have any assets been sold or transferred outside the normal course of business this reporting period?  If yes, provide an explanation below. | | X |
| 2. Have any funds been disbursed from any account other than a debtor in possession account this reporting period?  If yes, provide an explanation below. | | X |
| 3. Have all postpetition tax returns been timely filed?  If no, provide an explanation below. | | X |
| 4. Are workers compensation, general liability and other necessary insurance coverages in effect?  If no, provide an explanation below. | | X |
| 5. Has any bank account been opened during the reporting period?  If yes, provide documentation identifying the opened account(s).  If an investment account has been opened provide the required documentation pursuant to the Delaware Local Rule 4001-3. | | X |

*Delaware Franchise Tax Returns for Tax Year 2019-2023 have not yet been filed.  Also, the Debtor's corporate Income Tax Returns for Federal, Pennsylvania, Delaware, California and Philadelphia purposes have not been filed for the tax years 2019 and later.

| ASSETS | Month | Month |
|---|---|---|
| Cash (Unrestricted) | | |
| Cash (Restricted) | | |
| Accounts Receivable (Net) | | |
| Inventory | | |
| Notes Receivable | | |
| Prepaid Expenses | | |
| Other (Attach List) | Undetermined, see attached | |
| Total Current Assets | | |
| **Property, Plant & Equipment** | | |
| Real Property & Improvements | | |
| Machinery & Equipment | | |
| Furniture, fixtures & Office Equipment | | |
| Vehicles | | |
| Leasehold Improvements | | |
| Less: Accumulated Depreciation/Depletion | | |
| Total Property, Plant & Equipment | | |
| Due from Affiliates & Insiders | | |
| Other (Attach List) | | |
| Total Assets | | |
| **Liabilities Not Subject to Compromise (Postpetition Liabilities)** | | |
| Accounts Payable | | |
| Taxes Payable | | |
| Notes Payable | | |
| Professional Fees | | |
| Secured Debt | | |
| Due to Affiliates & Insiders | | |
| Other (Attach List) | | |
| Total Postpetition Liabilities | | |
| **Liabilities Subject to Compromise (Pre-petition Liabilities)** | | |
| Secured Debt - Per Plan | | |
| Priority Debt - Per Plan | | |
| Unsecured Debt - Per Plan | | |
| Other (Attach List) - Per Plan | | |
| Total Pre-petition Liabilities | | |
| Total Liabilities | | |
| **Equity** | | |
| Common Stock | | |
| Retained Earnings (Deficit) | | |
| Total Equity (Deficit) | | |
| Total Liabilities & Owners' Equity | | |

Assets (Other, Attach List), page 2

Stream owns a 100% interest in TechnoVative Media, Inc.;
Technovative owns a 100% interest in Media Holdings Co, LLC and a 99.9% interest in Ultra-D
Ventures C.V.;
Ultra-D Ventures C.V. owns a 100% interest in Technology Holdings, LLC and a 99.9% interest
in Ultra-D Cooperative U.A.;
Ultra-D Cooperative U.A. owns 100% of Stream TV International B.V. and SeeCubic B.V.;
Stream TV International B.V. owns 100% of: Suzhou Trading Company and Shanghai Ruishi
Technology Development.

STRETVN-01                                                                                          DTERLIZZI

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 3/31/2023 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | |
|---|---|---|
| INSURICA Express<br>2420 Springer Dr, Suite 105<br>Norman, OK 73069 | PHONE (A/C, No, Ext): (405) 310-1583 | FAX (A/C, No): (405) 556-2332 |
| | E-MAIL ADDRESS: certs@INSURICAexpress.com | |
| | INSURER(S) AFFORDING COVERAGE | NAIC # |
| | INSURER A : Hiscox Insurance Company Inc. | 10200 |
| INSURED | INSURER B : | |
| Stream TV Networks Inc; TechnoVative Media, Inc.<br>2009 Chestnut St<br>Philadelphia, PA 19103 | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X **COMMERCIAL GENERAL LIABILITY** | X | X | P101.635.923.1 | 3/21/2023 | 3/21/2024 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE  X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | X POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Professional | | | P101.635.925.1 | 3/21/2023 | 3/21/2024 | Each Claim | 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
**Certificate holder listed as additional insured when required by written contract. Coverage is primary and non-contributory and a waiver of subrogation is in favor. 30 day notice of cancellation shall be provided to the holder.**

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| **U.S. Trustee**<br>**U.S. Department of Justice**<br>**Office of the United States Trustee Robert N.C. Nix Federal**<br>**900 Market Street, Suite 320**<br>**Philadelphia, PA 19107** | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

ACORD 25 (2016/03)                                                    © 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD



**March 8, 2023**

**Matter:** Stream TV Network

**Request for Advance/Retainer**

Five Thousand and 00/100 Dollars                    $5,000

Payment is requested via wire transfer. Wire transfer info:

Bank Name -          Bridge Bank, N.A.
ABA/Routing # -      121143260
Account Name -       BMC Group, Inc.
Account # -          0102705027

BMC Group, Inc.
**EIN 52-2083477**
600 First Avenue
Seattle, WA 98104

Thank you
Tinamarie Feil 206.499.2169
tfeil@bmcgroup.com



500 Delaware Avenue, Suite 700
Wilmington, Delaware 19801
Rafael.Zahralddin@lewisbrisbois.com
Direct: 302.985.6004

March 7, 2023

CONFIDENTIAL COMMUNICATION

*Via Email Only*

   mathu@streamacquisitiongroup.com

   Re:    Engagement Letter/Fee Agreement

Dear Mathu:

The purpose of this correspondence is to, upon execution: 1) establish an attorney client relationship between Lewis Brisbois Bisgaard & Smith LLP ("LBBS" or the "Firm") and Stream TV Networks Inc. (hereinafter referred to as "You," "Your" or the "Client"); 2) define the scope of the Firm's representation of the Client; and 3) establish other material terms and conditions of the representation, including but not limited to the financial terms. This correspondence may be referred to as the "Engagement Letter" or the "Agreement."  *See* Schedule "A" for the limited scope of engagement parameters, and Schedule "B" for rates and costs.


       Please read the Engagement Letter with care. By executing this Engagement Letter, You are entering into a contract that is binding on both the Firm and You, on the following terms and conditions.

       1.    PARTIES TO ENGAGEMENT LETTER

       The parties to the Agreement are LBBS and You.  No other person or entity shall be entitled to claim an attorney client relationship with the Firm with respect to the legal services to be provided pursuant to the Engagement Letter.

       2.    INCEPTION OF ATTORNEY CLIENT RELATIONSHIP

       No attorney client relationship will exist between LBBS and You until You have executed the Agreement, nor will LBBS be obligated to provide legal services, until You have returned a signed copy of this Agreement and paid the flat fee called for under Paragraph 8.

---

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA

MARYLAND • MASSACHUSETTS • MINNESOTA • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA • OHIO

OREGON • PENNSYLVANIA • RHODE ISLAND • TENNESSEE • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA
       4870-0864-7491.1

March 7, 2023
Page 2

3.      <u>SCOPE OF REPRESENTATION: SCHEDULE A</u>

LBBS will perform only those legal services set forth in the Scope of Representation attached as Schedule A.  The Client shall have no expectation that the Firm will provide legal services beyond those set forth in Schedule A, unless LBBS and the Client amend the Engagement Letter in writing or execute a separate agreement with respect to any such additional legal services.  The Client is generally required by law to retain documents, including electronically stored information ("ESI"), which may be relevant to the matter which is the subject of the representation.  Preservation of documents including ESI is the Client's responsibility, and it is important that the Client take all necessary and reasonable steps to preserve this information.  The Firm is available to discuss the scope of the Client's obligations and to provide advice or recommendations in this regard.  Nothing in this paragraph shall in any way limit the Client's obligation to pay for or the Firm's right to receive payment for any services provided by the Firm at the Client's request.

4.      <u>DUTIES OF CLIENT</u>

You agree to be truthful and to cooperate, to keep us informed of relevant developments, to abide by the Agreement, to pay our bills on time, and to keep us advised at all times of Your current address, telephone number and whereabouts.

5.      <u>LEGAL FEES</u>

We will charge You for the services provided pursuant to the Agreement based on the amount of time (including travel) we devote to the matter at the hourly rates for the particular professionals involved as are set forth in Schedule B.  We bill in minimum units of 6 minutes, or .1 hour, unless otherwise specified to adhere to applicable bankruptcy laws relevant to the retention of debtor's counsel..

We reserve the right to reasonable annual rate increases up to 10% per annum and will request for consent if any annual increase exceeds 10% subject to applicable bankruptcy laws relevant to the retention of debtor's counsel. .  We reserve the right to staff the handling of the matter with the partners, associates, paralegals and/or other personnel of our choice, at the rate we establish for each such timekeeper, although we will discuss the staffing of Your matter with You at any time, and will consider Your input in the staffing of the matter. Each of the undersigned individuals agree to be jointly and severally liable for all fees, costs and disbursements in connection with this representation.

6.      <u>COSTS, EXPENSES AND OTHER CHARGES</u>

A.  <u>COSTS AND EXPENSES: SCHEDULE B</u>

We will incur on Your behalf various costs and expenses in performing legal services under the Agreement.  You agree to pay for those costs and expenses, in addition to the hourly fees.  Schedule B, attached, includes a non-exhaustive list of costs we may incur on Your behalf.

---

LEWIS BRISBOIS BISGAARD & SMITH LLP
www.lewisbrisbois.com

March 7, 2023
Page 3

           B.  <u>OUTSIDE CONSULTANTS/OTHER VENDORS</u>

In addition to the costs of the type set forth in Schedule B, it may become necessary to hire persons or entities outside LBBS, including but not limited to consultants, experts, investigators, co-counsel, or other professionals. We will select any consultants or investigators to be hired after notice to and approval from You, and You agree to honor the terms and conditions of any agreement that we enter into on Your behalf with any such outside person or entity.

           C.  <u>REIMBURSEMENT OR DIRECT PAY</u>

Unless we agree in writing, and in our sole discretion, to pay directly any of the external costs incurred such as those set forth in Schedule "B", and/or for outside consultants or other vendors, You agree to pay any such expense directly. Our compensation arrangement with the third-party will provide that our Firm is not financially liable for the costs involved, and that You are solely responsible for payment. When You are responsible to directly pay an outside consultant or vendor invoice we will work with You and the consultant or vendor to give effect to payment arrangements, including Your payment of estimated costs in advance or a deposit against these costs. If You fail to make direct payments as required by this Letter Agreement, You agree to defend and indemnify our Firm with respect to any claim, demands or suit brought against our Firm as a result of Your failure to pay such invoice and that indemnity includes our attorney's fees and costs incurred in defending the claim against our Firm. Payment directly by our Firm of any such expense on one or more occasions shall not be construed as a waiver of our right to require You in the future to pay any similar expense directly or in advance. In addition, even if we pay these outside costs directly, we may require You to reimburse us immediately rather than waiting for the normal billing cycle to be completed.

       7.  <u>PERIODIC STATEMENTS AND BILLING TERMS</u>

Our practice is to send periodic statements for services rendered and for costs incurred during the previous month or months on our client's behalf. The detail in the periodic statement will inform You of both the nature and progress of work and of the fees and costs being incurred.

Our fee structure is based upon Your promise to pay all statements, as applicable, no later than 30 days after receipt.

We do our best to see that our clients are satisfied not only with our services, but also with the reasonableness of the fees and costs. Therefore, while we urge You to raise any question about or objection to a fee statement, You must do so promptly. Such inquiry shall be timely only if made, in writing, within thirty (30) days after the date of the invoice. In the absence of a timely written inquiry, You will be deemed to have accepted the invoice and to have acknowledged that You are satisfied with it, in the absence of good cause for not having objected more timely.

In the event You fail to pay any invoice within thirty (30) days of the statement date, You agree to pay interest at the rate of ten percent (10%) per annum on the amount of such invoice, from the statement date until paid in full. If we accept late payment of any invoice without interest, we shall not be deemed to have waived any claim in the future for interest on other invoices. If

March 7, 2023
Page 4

You timely object in writing to a portion of a statement, You agree to pay the remainder of the statement which is not in dispute.  We agree to accept such partial payment without claiming You have waived Your right to contest the unpaid portion of the bill.

Failure to pay the undisputed amount of any invoice in full within 30 days shall constitute grounds for termination of this Engagement Letter and withdrawal of the Firm from representation, as more fully discussed in Paragraph 11 ahead.

       8.      <u>RETAINER AND ADVANCE FLAT FEE</u>

This Engagement Letter shall not be effective until both You and LBBS have signed it and You have delivered to LBBS any advance payment fee described in Schedule "A" and "B" attached. You have agreed to advance a payment in the total amount of $50,000 as an advance payment flat fee as more fully described in Schedule "B."

We reserve the right to request a retainer and such retainer is not an estimate of the total charges which may be incurred.   We will apply any balance after we subtract the advance flat fee payment to a retainer in anticipation of your post chapter 11 filing needs. The retainer is: 1) a sum to be held as security for the Firm with respect to Your obligations to pay the fees and costs incurred by the Firm pursuant to the Engagement Letter; and 2) an advance payment to be applied to the Firm's final invoice in this matter. We will refund any unearned amounts of the retainer, if any, at the conclusion of our representation. We expect that You will live up to the terms and conditions of the Engagement Letter in full, in which case the full amount of the remaining retainer (if any) will be applied against the final invoice and any excess returned to You. However, as noted, should You become delinquent on the payment of any statement, we may in our discretion apply the retainer to the payment of that statement. In the event that the retainer is for any reason applied You shall immediately restore the retainer to its full amount upon our request. Failure to restore the retainer upon our request shall constitute grounds for termination of this Engagement Letter and withdrawal from representation, as more fully discussed in Paragraph 11 ahead.

We also reserve the right to require, and You agree to provide, increases to the retainer should the time and expense required to carry out the representation contemplated by this Engagement Letter increase beyond that reasonably anticipated at the beginning of the engagement.

For example, in the event that You were to request and we were to agree to undertake to represent You in connection with potential or actual litigation, such a matter could resolve in one of a variety of different ways, including dismissal, settlement, or trial. Trial preparation and the actual trial of a case are the most time consuming part of any litigation engagement. We would likely, therefore, require an increased retainer before we would begin trial preparation. We would determine the amount of the increase in the retainer prior to the trial, based upon an estimate of time and costs that may be involved for trial preparation and trial. In any event failure to provide the increased retainer upon our request shall constitute grounds for termination of this Engagement Letter and withdrawal of the Firm from the representation as more fully discussed in Paragraph 11 ahead.

---

4870-0864-7491.1

9.      <u>ATTORNEY LIEN</u>

In consideration of the terms of this Agreement, as security for the payment of the fees, costs, and out-of-pocket expenses incurred on Your behalf pursuant to its terms, and without prejudice to any other rights, recourse, or remedies we may have, You hereby grant us a lien upon any sum or sums recovered by You, or on Your behalf (or which You are entitled to recover) in this or any other matter to which this or a similar agreement may pertain, and upon any sum or sums which may be on deposit with the Firm pursuant to this Agreement. You expressly authorize us to resort to such lien to obtain partial or total satisfaction of any obligation or debt which You may have to us arising from this Agreement.

10.     <u>TERMINATION OF THE FIRM BY THE CLIENT</u>

You shall have the right to terminate this Engagement Letter and discharge the Firm at any time. However, to be effective, termination or discharge of the Firm must be in writing. In such event, You authorize the Firm to make and retain a duplicate of Your file.

The Client shall bear all reasonable costs of transferring the new matter to counsel chosen by the Client.

The attorney client relationship between the Firm and the Client shall end upon discharge of the Firm by the Client pursuant to this paragraph. However, such discharge shall not relieve the Client of any obligation to pay fees and costs incurred prior to the discharge, as well as any fees and costs expended after the discharge to the extent reasonably required in the Firm's sole discretion to protect the Client's interests prior to court order substituting new counsel or permitting withdrawal of the Firm from the litigation.

11.     <u>WITHDRAWAL FROM REPRESENTATION BY THE FIRM</u>

The Firm shall be permitted to withdraw from representation whenever required or permitted to do so by law. In addition, the Firm may withdraw as counsel at any time if withdrawal can be accomplished without material adverse effects on the interests of the Client, or if: 1) the Client persists in a course of action involving a lawyer's services that the lawyer reasonably believes to be criminal or fraudulent; 2) the Client has used the lawyer's services to perpetrate a crime or fraud; 3) the Client insists upon pursuing an objective that the lawyer considers repugnant or imprudent; 4) the Client fails substantially to fulfill an obligation to LBBS regarding the Firm's services (including, but not limited to, the Client's financial obligations under this Engagement Letter) after reasonable warning from the lawyer that the lawyer will withdraw unless the obligation is fulfilled; 5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the Client; or 6) where other good cause for withdrawal exists.

12.     <u>DOCUMENT STORAGE POLICY</u>

On termination of a matter, the Firm will maintain file documents for 10 years, or any alternate period as determined by the State of Delaware (or the state governing the location for

March 7, 2023
Page 6

where work will be conducted).  Upon termination of the matter, You have the right to take possession of the file.  If You choose to take possession of the file, the Firm may copy all or any part of the file.  If You choose not to take possession of the file, the Firm will retain the file pursuant to its document storage policy stated above.

13.   <u>CONFLICTS</u>

You should be aware that the Firm represents many other companies and individuals. It is possible that during the time that we are representing You, some of our present or future clients will have transactions or disputes with You. You agree that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to our work for You even if the interests or legal positions of such clients in those other matters are directly adverse. We agree, however, that Your prospective consent to conflicting representation contained in the preceding sentence shall not apply in any instance where, as a result of our representation of You, we have obtained proprietary or other confidential information of a non-public nature, that, if known to such other client, could be used in any such other matter by such client to Your material disadvantage.

14.   <u>CHOICE OF LAW/FORUM SELECTION</u>

This Agreement is deemed to have been executed, and is intended to be performed in the State of Delaware, subject to its laws, regardless of whether services are actually rendered outside of the State of Delaware.  Any dispute arising from this agreement shall be governed by the laws of the State of Delaware.  The venue for the judicial resolution of such dispute shall be proper within the State of Delaware.

15.   <u>NO PROMISES OR GUARANTEES</u>

The Client understands that the Firm has made no representation or guarantee concerning the outcome of any legal proceedings that may be filed or defended on behalf of the Client.

16.   <u>LEGAL MALPRACTICE INSURANCE</u>

As of the date of this letter, Lewis Brisbois Bisgaard & Smith LLP has errors and omissions (legal malpractice) insurance applicable to the services to be rendered pursuant to this Agreement, subject to any applicable deductible or self-insured retention.

17.   <u>MODIFICATION IN WRITING ONLY</u>

No change to this Agreement shall be effective unless and until confirmed in writing and signed and acknowledged by the Firm and the Client making express reference to this Agreement. This Engagement Letter embodies the whole agreement of the parties.  There are no promises, terms, conditions or obligations other than those contained herein, and this contract shall supersede all previous communications, representations, or other agreements, either oral or written, between the Firm and the Client.

---

March 7, 2023
Page 7

18.     <u>COUNTERPARTS AND FACSIMILES EFFECTIVE</u>

This Agreement may be signed in counterpart.  Facsimile or imaged signature pages executed by the Firm or the Client shall be effective as original signatures.

Thank you for choosing Lewis Brisbois Bisgaard & Smith LLP as Your counsel with respect to the matter set forth in Schedule A.

We look forward to working with You and thank you once again for the opportunity to serve You, upon execution of this Engagement Letter.

Sincerely,

*/s/ Rafael X. Zahralddin*

Rafael X. Zahralddin
LEWIS BRISBOIS BISGAARD & SMITH LLP

RXZA
Cc:     Vincent Alexander

Accepted and agreed to:

Stream TV Networks Inc.
By: _____
Name: <u>Mathu Rajan</u>
Title: <u> CEO </u>
Phone: <u> 267-469-3858 </u>
E-mail: <u> mathu@streamacquisitiongroup.com</u>
Dated: <u> March 8, 2023 </u>

March 7, 2023
Page 8

<u>SCHEDULE "A":</u>

SCOPE OF REPRESENTATION

Representation of You with respect to restructuring and insolvency advice and the potential filing of a bankruptcy petition and all other matters related thereto, and such other matters as are assigned by the Client and accepted by the Firm, from time to time.

I have further specified the bankruptcy services to be as follows:

(a) To advise Debtor with respect to its powers and duties as debtor-in possession and the continued management of its affairs;
(b) To advise Debtor with respect to its responsibilities in complying with the U.S. Trustee's Operating Guidelines and Reporting Requirements and with the rules of the Court;
(c) To prepare motions, pleadings, orders, applications, adversary proceedings, and other legal documents necessary in the administration of the case;
(d) To protect the interests of Debtor and the estate in all matters pending before the court;
(e) take all necessary actions in connection with any chapter 11 plan and related disclosure statement, and all related documents, and such further actions as may be required in connection with the administration of the Debtor's estate; and
(f) perform all other necessary legal services in connection with the prosecution of any chapter 11 case.

\*\*\*

---

<u>SCHEDULE "B":</u>

RATE SCHEDULE AND COST/EXPENSE ITEMS SCHEDULE

A.     **Identification**

Client(s):      Stream TV Networks Inc.

Matter:         Chapter 11 Bankruptcy

B.     **Hourly rates for legal personnel are assigned from practice leader approved rate
       ranges applied by Billing Partner:**

       $500+ for Partners;
       $300+ for Associates;
       $200+ for Paralegals and Assistants; and
       $100+ for Law Clerks.

       **<u>Specific Example Applicable Rates to this Engagement:</u>**

       | | |
       |---|---|
       | Rafael Zahralddin | $975 |
       | Sean M. Brennecke | $600 |
       | Kevin Shaw | $450 |
       | Aimee M. Czachorowski | $450 |
       | Vincent Alexander | $695 |
       | Bennett Fisher | $550 |
       | Daniel David | $350 |
       | Christina Freeman | $275 |
       | Candice Russell | $275 |

       *We may from time to time add other attorneys within the aforesaid rate ranges as needed,
as determined by LBBS.

       You have agreed to pay for our services with a $50,000 advance to be deposited into our
operating account. We will calculate the amount due for this advance payment after our initial
scope of work call and make a flat fee payment for our services and apply any balance to your
retainer for post chapter 11 filing legal services.

       Client agrees to provide to the Firm an advance against a flat fee.  This is analogous to an
"advance payment retainer," as defined in Rule 1.15(c) of the Illinois Rules of Professional
Conduct, Dowling v. Chicago Options Assoc., Inc., 875 N.E.2d 1012, 1018 (Ill. 2007), and In re
Caesars  Entm't  Operating  Co.,  Inc.,  No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and
cases cited therein). In addition, Client agrees to provide one or more additional advance payment
retainers upon request by the Firm,  so that the amount of any advance payment retainers remains

---

March 7, 2023
Page 10

at or above the Firm's estimated fees and expenses. The Firm may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred. Client understands and acknowledges that any advance payment retainers are earned by the Firm upon receipt, any advance payment retainers become the property of the Firm upon receipt, Client no longer has a property interest in any advance payment retainers upon the Firm's receipt, any advance payment retainers will be placed in the Firm's general account and will not be held in a client trust account, and Client will not earn any interest on any advance payment retainers; provided, however, that solely to the extent required under applicable law, at the conclusion of the Engagement, if the amount of any advance payment retainers held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, expenses, and costs, the Firm will pay to Client the amount by which any advance payment retainers exceed such fees, expenses, and costs. Client further understands and acknowledges that the use of advance payment retainers is an integral condition of the Engagement, and is necessary to ensure that: Client continues to have access to the Firm's services; the Firm is compensated for its representation of Client; the Firm is not a pre-petition creditor in the event of a restructuring case; and that in light of the foregoing, the provision of the advance payment retainers is in Client's best interests. The fact that Client has provided the Firm with an advance payment retainer does not affect Client's right to terminate the client-lawyer relationship.

Please be advised that there is another type of retainer known as a "security retainer," as defined in Dowling v. Chicago Options Assoc., 875 N.E.2d at 1018, and In re Caesars Entm't Operating Co., Inc., No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein). A security retainer remains the property of the client until the lawyer applies it to charges for services that are actually rendered and expenses that are incurred. Any unearned funds are then returned to the client. In other circumstances not present here, the Firm would consider a security retainer and Client's funds would be held in the Firm's segregated client trust account until applied to pay fees and expenses. Funds in a security retainer, however, can be subject to claims of Client's creditors and, if taken by creditors, may leave Client unable to pay for ongoing legal services, which may result in the Firm being unable to continue the Engagement. Moreover, a security retainer creates clawback risks for the Firm in the event of an insolvency proceeding. The choice of the type of retainer to be used is Client's choice alone, but for the Engagement and for the reasons set forth above, the Firm is unwilling to represent Client in the Engagement without using the advance payment retainer

Pennsylvania Bar Association Formal Opinion 95-100 provides that in the absence of a clear written statement or agreement to the contrary, client retainers must be deposited into a proper attorney trust account. This PBA opinion also distinguished between refundable and nonrefundable retainers and concluded that nonrefundable retainers are permissible if the arrangement is properly documented. The opinion made clear that any arrangement that includes a nonrefundable retainer must be confirmed by a clear and unambiguous written statement provided to the client, or by a written agreement between the attorney and client.  Fees and costs paid in advance are considered trust funds in the absence of an agreement to the contrary and must be maintained in a trust account separate from the attorney's funds until they are earned or become payable and can be withdrawn with the client's consent.  In In Re Anonymous, No. 98 DB

92, 23 Pa. D.& C. 4th 452 (1994)(the Disciplinary Board set forth at length how it expects attorneys to deal with advances of fees and expenses).

California Rule of Professional Conduct Rule 1.15(a) provides that unearned flat fees must be deposited into a client trust account *unless*, as 1.15(b) provides:

> Notwithstanding paragraph (a), a flat fee paid in advance for legal services may be deposited in a lawyer's or law firm's operating account, provided:(1) the lawyer or law firm discloses to the client in writing (i) that the client has a right under paragraph (a) to require that the flat fee be deposited in an identified trust account until the fee is earned, and (ii) that the client is entitled to a refund of any amount of the fee that has not been earned in the event the representation is terminated or the services for which the fee has been paid are not completed; and (2) if the flat fee exceeds $1,000.00, the client's agreement to deposit the flat fee in the lawyer's operating account and the disclosures required by paragraph (b)(1) are set forth in a writing signed by the client.

In order to assure that the Firm is not disqualified as your counsel in a chapter 11, you have agreed to an advance payment and flat fee. For the avoidance of doubt, the Firm and Client agree that the fee in this matter (1) is a flat, non-refundable fee which is earned upon receipt and covers the work described in Schedule "A" and "B," (2) will not be deposited into an attorney IOLTA or other Trust account to be billed against, and (3) will be deposited in the lawyer's operating account."

Please note that in appropriate circumstances, the Firm's charges may include a reasonable premium fee, which will be noted on any invoice in which it is included, in addition to the minimum fees calculated on the Firm's usual hourly rates. A premium amount may be based upon the novelty or difficulty of the issues raised during the representation, the time limitations imposed by the Client or the results obtained.

Prior written notice must be given to Client for any work outside the scope covered by the flat fee with proposed applicable rates of the legal personnel to be engaged; and any such extra work must then be agreed to by Client in writing.

C.   **Standard charges**

We charge for our time in minimum units of .1 hours (6 minutes).

D.   **Costs and expenses incurred on Client's behalf may include but are not limited to:**

| | |
|---|---|
| Process server fees | At cost |
| Filing fees or other fees fixed by law or assessed by public agencies | At cost |
| Meals | At cost |

---

March 7, 2023
Page 12

| | |
|---|---|
| Parking | At cost |
| Travel expenses including  e.g., lodging, air fare, taxis, public transportation, car rental, and meals | At cost |
| Facsimiles | $.25 per page |
| Deposition costs | At cost |
| Experts, consultants or investigators | At cost |
| Computer Research | At cost, plus facilities surcharge (approximately $5.00/minute) |
| Word processing support | $35.00 per hour |
| Mileage | At the Internal Revenue Service's business mileage reimbursement guidelines |
| Messenger and other delivery fees | At cost |
| Photocopying and other reproduction costs | In-house - $0.10 per page Outside service-At cost |
| After hours building services (when dictated by special client need) | At cost |
| Publication costs | At cost |
| Video costs | At cost |

Details of these costs and expenses will be reported to Client.