**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Chapter 11 |
| STREAM TV NETWORKS, INC., | Case No. 23-10763 (MDC) |
| Debtor.[1] | |
| In re: | Chapter 11 |
| TECHNOVATIVE MEDIA, INC., | Case No. 23-10764 (MDC) |
| Debtor. | (Jointly Administered) |

**SEECUBIC, INC.'S (I) MOTION IN THE ALTERNATIVE FOR (A) ENTRY OF AN
ORDER APPROVING SEECUBIC, INC.'S EMERGENCY FUNDING TO NON-
DEBTOR SEECUBIC B.V. AND DIRECTING PUTATIVE SEECUBIC B.V.
DIRECTORS TO EXECUTE PROMISSORY DRAW REQUEST OR
(B) APPROVAL OF COMPETING DIP FINANCING AND (II) PRELIMINARY
RESPONSE TO DEBTORS' ANTICIPATED DIP FINANCING PROPOSAL**

SeeCubic, Inc. ("***SeeCubic***"), a secured creditor of the debtors Stream TV Networks, Inc.

("***Stream***") and Technovative Media, Inc. ("***Technovative***" and, together with Stream, the

"***Debtors***") in the above-captioned chapter 11 cases (together, the "***Chapter 11 Cases***"), by and

through its undersigned counsel, hereby submits this (a) motion (this "***Motion***") for an order,

substantially in the form attached hereto as ***Exhibit A*** approving SeeCubic's emergency funding

to SeeCubic B.V. ("***SCBV***") to fund SCBV'S payroll and other critical obligations (the "***SCBV***

***Critical Expenses***," a summary of which is attached hereto as ***Exhibit B***) and, in the alternative,

approving and directing the Debtors' entry into a financing facility (the "***SeeCubic DIP***") on the

---

[1]    The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV
Networks, Inc. (4092) and Technovative Media, Inc. (5015). The location of the Debtors' service address is 2009
Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

terms substantially similar to those set forth in the Promissory Note attached hereto as ***Exhibit C***

and (b) preliminary response to the Debtors' anticipated DIP financing proposal.[2]  In support of

this Motion, SeeCubic hereby states as follows:

## PRELIMINARY STATEMENT

SeeCubic and the Debtors agree that funding the SCBV Critical Expenses is essential to

preserve value in these Chapter 11 Cases.  While the Debtors did not run a DIP financing process

and had no viable plan to fund the SCBV Critical Expenses coming due this week, SeeCubic stands

ready to step into the breach.

Indeed, the simple solution to fund SCBV Critical Expenses would have been immediately

obvious had the Debtors made a good faith attempt to procure funding for SCBV instead of

pursuing an insider equity raise that, as of 3:57 P.M. ET yesterday had not produced enough

funding to cover the SCBV Critical Expenses coming due this week alone, not to mention the

€569,512.00 coming due by the end of May.[3]

As discussed at this Court's hearing on April 24, 2023 (the "***April 24 Hearing***"), that

solution was the remaining availability on a promissory note (the "***Promissory Note***") previously

agreed by the prepetition receiver and Messrs. Stastney and Rajan through which SCBV had been

funded prior to the Debtors' filing of these Chapter 11 Cases.  This Court should put an end to the

Debtors' perilous quest to fund SCBV through an insider deal (the "***Potential Insider DIP***"), which

---

[2]    In light of the timing for filing motions and objections in this matter, SeeCubic includes a preliminary objection to the anticipated Debtors' proposed DIP financing. However, all rights of SeeCubic with respect to any proposed financing, including any and all objections, are expressly reserved.

[3]    SeeCubic received a bank print out from the Debtors' proposed related-party funding source, dated April 23, 2023 at 3:57 P.M., purporting to show a balance of $233,041.55. A copy of this document attached hereto as ***Exhibit D.***

does not withstand the slightest scrutiny, and order the Debtors' principal to consent to SCBV's

access to the available funds under the Promissory Note to ensure preservation of SCBV's value.

## **RELIEF REQUESTED**

SeeCubic requests that this Court direct Mr. Stastney and Mr. Rajan as putative directors

of non-debtor SCBV to draw on the Promissory Note to cover the SCBV Critical Expenses listed

in Exhibit B hereto.[4]

## **BASIS FOR RELIEF**

Given that SCBV is a non-debtor and the Promissory Note was already entered into by the

parties under the oversight of the Delaware Court of Chancery and independent receiver, the basis

for the relief requested herein is section 105(a) of the Bankruptcy Code to ensure preservation of

value.

## **FACTUAL BASIS AND LEGAL AUTHORITY**

### I.    **BACKGROUND OF PROMISSORY NOTE**

####    A.    **History of Promissory Note**

1.    On October 17, 2022, Hawk filed suit against Stream and Technovative in the Court

of Chancery under Delaware corporate law section 225 (the "***225 Action***"), to enforce its secured

creditor rights after the Delaware Supreme Court invalidated an omnibus agreement that

transferred Stream's assets to SeeCubic.  On October 20, 2022, the Court of Chancery appointed

a receiver to oversee Technovative (the "**Receiver**") and ensure that it operated only in the ordinary

course.

---

[4]    Given that there is a dispute as to the directorship of SCBV, SeeCubic requests that this Court direct both Mr.
Stastney and Mr. Rajan to execute the Promissory Note draw as did the receiver during his tenure.

2.      After Stream's ownership of Technovative was restored on October 3, 2022, SCBV's senior management reached out to Stream to inform Stream that SCBV immediately needed capital to pay wages and other key expenses for October 2022.

3.      In order to protect their collateral and retain the critical human capital (*i.e.*, SCBV's employees and contractors), SeeCubic's counsel informed the Receiver that SeeCubic would be willing to provide necessary funding to SCBV during the pendency of the 225 Action via a promissory note (the "***Promissory Note***") with SCBV if Stream was unwilling or unable to fund SCBV.[5]  Stream never indicated to the Receiver that it would be willing—much less able—to provide funding, nor did it object to SeeCubic's offer to fund.

4.      Over the next several weeks, the Receiver negotiated the Promissory Note, with counsel for Stream and counsel for SeeCubic.  The Receiver required that both Mr. Rajan and Mr. Stastney sign the Promissory Note on SCBV's behalf as a result of a dispute between the parties regarding the composition of SCBV's board and, accordingly, who had authority to sign for SCBV. The Receiver also approved and signed the Promissory Note. The budget governing the use of proceeds of the Promissory Note was agreed among the Receiver, Mr. Rajan, and Mr. Stastney.

5.      To date, SeeCubic has funded at least €2,900,000 under the Promissory Note and has over €500,000 remaining in funding capacity. In addition, SeeCubic would be willing, subject to agreement on satisfactory agreement on sources and uses to increase the 3.5 million Euro cap at a later time as necessary to cover any additional SCBV Critical Expenses.

6.      On March 15, 2023, Mr. Rajan initiated the chapter 11 filings of Stream and Technovative in this Court.  SCBV is not a debtor in these cases.

**B.      Summary of Key Promissory Note Terms**

---

[5]    Hawk agreed to provide a portion of those funds; the rest was sourced from other SeeCubic investors.

7.      The below table summarizes the key terms of the Promissory Note:

| Borrower | SCBV |
|---|---|
| Amount | Initial advance of €600,000; SCBV may request one or more additional advances (each of no more than €750,000) up to a maximum principal amount of €3,500,000. |
| Security | Unsecured. |
| Interest Rate | 4.03% per annum, or if different, 100% of the Applicable Federal Rate. Upon the occurrence and continuation of any Event of Default, any amounts due hereunder shall bear interest at a rate equal to sum of the Interest Rate and two percent (2%) per annum. |
| Maturity | The earlier of (i) December 31, 2023 and (ii) the date that is 45 days following termination of Receiver's appointment, unless extended in writing by SeeCubic. |
| Use of Proceeds: | SCBV shall use the proceeds solely for payment of the expenses set forth in the applicable notice to SeeCubic. |
| Events of Default: | (a) SCBV fails to pay any of the principal balance on the date the same becomes due and payable or any unpaid and accrued interest thereon or other amounts due on the date the same becomes due and payable; (b) SCBV shall violate limitations on the use of proceeds; (c) SCBV shall materially fail to perform or observe any covenant and such failure shall continue unremedied for a period of five (5) days after receipt of written notice of such failure by SeeCubic; (d) certain bankruptcy related events[6]; or (e) SCBV shall incur certain senior debt to the debt under the Promissory Note. |

## II.      STREAM AND TECHNOVATIVE HAVE NO INDEPENDENT OBLIGATION TO FUND THE SCBV CRITICAL EXPENSES THAT WOULD REQUIRE DIP FINANCING.

8.      The Debtors cannot point to any contractual obligations to fund the SCBV Critical

Expenses and their corporate structure and contractual relationships were specifically designed to

make this clear.

---

[6]      The lenders under the Promissory Note are prepared to fund the SCBV Critical expenses notwithstanding these bankruptcy defaults.

9.      Indeed, when the Parties to the Promissory Note were negotiating the appropriate borrower thereunder, the Debtors' then-counsel at McCarter & English wrote that Technovative was not responsible for SCBV liabilities:

> The correct counterparty for this [Promissory Note] is SCBV, not Technovative. We do not want to break the corporate form protection between SCBV and Technovative, **nor render Technovative liable for SCBV liabilities**. Long before all these disputes, the liability protections for the entities were set up in their corporate structure across different subsidiaries, for good reasons. Doing a funding this way would be inconsistent with the corporate structure of the business and the past funding behavior.

*See Exhibit E* (emphasis added).  As a result, the Promissory Note was set up so that SeeCubic funded proceeds directly to SCBV.

10.      Indeed, the Promissory Note has been approved in a process overseen by the Delaware Chancery Court, administered by the independent receiver appointed in the currently stayed 225 Action, and has resulted in collaboration among SeeCubic and the Debtors regarding the use of proceeds of the Promissory Note. In addition, utilizing the Promissory Note is consistent with the Debtors' and their non-debtor subsidiaries' corporate structure, insofar as it allows SCBV to use its own asset (the commitments under the Promissory Note) to fund its obligations, as opposed to relying on its bankrupt indirect parent with $2,500 in cash to do so.[7]

11.      Determining that the Debtors are obligated to pay the SCBV Critical Expenses and approving DIP financing in this case would not be without consequences. Stream itself, according to its schedules and statements, has over $20,000,000 in unsecured claims,[8] and approval of a DIP and a finding that the Debtors are obligated on the SCBV Critical Expenses opens the Debtors to

---

[7]    *See* Stream Monthly Operating Report (ECF No. 132).

[8]    *See* Docket No. 54

potentially substantial additional administrative claims from SCBV, all of which would need to be satisfied in full before the Debtors' general unsecured claims could receive any recovery.[9]

## III.   THE FUNDING UNDER THE PROMISSORY NOTE IS SUPERIOR TO ANY ALTERNATIVE THE DEBTORS CAN PROPOSE.

12.     As set forth above, DIP financing is not required to address the SCBV Critical Expenses, as the Debtors have no obligation to pay for SCBV's obligations. That should end the inquiry, and this Court should direct Mr. Stastney and Mr. Rajan to draw on the Promissory Note to cover SCBV's Critical Expenses and thereby preserve the value of non-debtor SCBV.

### A.     The Terms of the Promissory Note are Fair and Reasonable.

13.     However, to the extent the Court might believe the Debtors have an obligation to fund the SCBV Critical Expenses, the Promissory Note still provides the Debtors' best finance option.[10] The Promissory Note is committed financing, already in place, that reduces any of the Debtors' obligations to cover the SCBV Critical Expenses (to the extent those obligations exist).

14.     The terms of the Promissory Note have been (a) overseen by the Delaware Chancery Court, (b) administered by the independent receiver, and (c) resulted in cooperation between SeeCubic and Stream regarding funding of the expenses of SCBV. As summarized in Part I.B above, the terms of the Promissory Note are fair and reasonable.

### B.     The Potential Insider DIP Is Subject to Heightened and Rigorous Scrutiny and Cannot Withstand Such Scrutiny.

15.     By contrast, even on the same economic terms, the Potential Insider DIP violates established case law regarding both DIP financing and fiduciary duties of Delaware corporations.

---

[9]   For the avoidance of doubt, SeeCubic reserves the right to object to the amount, nature, extent, and priority of any asserted administrative claim, whether for any SCBV Critical Expenses, DIP financing, or otherwise.

[10]   To the extent this Court believes it appropriate for the Promissory Note to be adapted into a DIP facility, SeeCubic would entertain that modification.

The Potential Insider DIP is to be provided by VSI, an entity which, according to the Debtors' schedule of equity security holders owns 80.06% of the equity interests of Stream.[11] It is a textbook insider transaction.

16.     Courts demand that financing provided by insiders be subject to a heightened standard of scrutiny, including fair process and fair price. *In re Papercraft Corp.*, 211 B.R. 813, 823 (W.D. Pa. 1997) ("[I]nsider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein.") (citing *Pepper v. Litton*, 308 U.S. 295, 306 (1939), *aff'd*, 160 F.3d 982 (3d Cir. 1998)); *See, e.g., In re Innkeepers USA Tr.*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010) ("In applying heightened scrutiny, courts are concerned with the integrity and entire fairness of the transaction at issue, typically examining whether the process and price of a proposed transaction not only appear fair but are fair and whether fiduciary duties were properly taken into consideration.").

17.     The Potential Insider DIP does not stand up to any scrutiny and certainly cannot satisfy the rigorous or strict scrutiny to which it is subject. Among other reasons:

(a)     The Debtors have conducted no process to market the Potential Insider DIP. The Debtors never approached SeeCubic for financing and have not demonstrated that they approached any other lender or other party to finance their cases.

(b)     The Debtors' counsel acknowledged during the April 24 Hearing that he was taking direction from Mr. Rajan both as a decision-maker at VSI and a decision-maker for the Debtors,

---

[11]     *See* ECF No. 58.

leading to a deeply conflicted process. As such, the Potential Insider DIP was not and could not have been negotiated at anything resembling arms'-length.[12]

(c)    The Debtors first disclosed the existence of the Potential Insider DIP during the April 24 Hearing, and only after the Court refused to take up the Debtors' emergency request to sell unissued shares to VSI.

(d)    The entire purported need for the DIP financing is the result of the Debtors' refusal to plan for the SCBV Critical Expenses and the refusal to accept a stable and available status quo treatment of having the SCBV Critical Expenses funded pursuant to the Promissory Note.

(e)    The Debtors and their counsel have closed their eyes to significant infirmities of the Potential Insider DIP, including that (i) no documentation governing the Potential Insider DIP has been provided, (ii) VSI's purported source of funding for the Potential Insider DIP was $100,000 short to pay the SCBV Critical Expenses due this week at the time the Debtors asked this Court to approve the Potential Insider DIP at the April 24, Hearing, (iii) the proposed provider of the Potential Insider DIP appears to be from an entity—VSI—which has not filed a notice of appearance in this case and is not represented by counsel, (iv) VSI has no assets and is funded by unknown investors.

18.    Moreover, the Potential Insider DIP appears to run afoul of Delaware law fiduciary duties (in particular, the duty of loyalty).[13]    Mr. Rajan (a director and the chief executive of

---

[12]    Indeed, at the time the Debtors asked the Court to approve the Potential Insider DIP, and as of the time of the filing of this Motion, VSI is not represented by separate counsel, and the only information regarding the Potential Insider DIP has been provided by the Debtors' counsel (whose fees, to date, have been paid by VSI).  *See Application Pursuant to 11 U.S.C. § 327(a) of the Bankruptcy Code for Authority to Employ Lewis Brisbois Bisgaard & Smith LLP as Counsel for the Debtors* (ECF 70) at ¶ 8.

[13]    *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)("[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."); *see also In re Walt Disney Co. Deriv. Litig. (Disney II)*, 906 A.2d 27, 67 (Del. 2006) (holding that the duty of loyalty includes a requirement to act in good faith, which is "a subsidiary element, *i.e.*, a condition, of the fundamental duty of loyalty." *Stone*, 911 A.2d
*(cont'd)*

Stream), with the assistance of the Debtors and their counsel, is attempting to saddle the Company

with an unnecessary DIP, disclosed at the eleventh hour, without any meaningful opportunity to

negotiate or market the financing, all to pay the SCBV Critical Expenses (an obligation that is not

owed by the Debtors). This is not in the best interest of the Debtors, particularly when the

Promissory Note was already available to cover the SCBV Critical Expenses.[14]

[*Remainder of Page Left Intentionally Blank* ]

---

at 370. "A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation)

[14]    SeeCubic expressly reserves all rights against Mr. Rajan.

## CONCLUSION

SeeCubic respectfully requests that this Court enter an order (a) determining that the SCBV Critical Expenses are not an obligation of the Debtors and allowing the Debtors and SeeCubic to proceed to fund the SCBV Critical Expenses pursuant to the Promissory Note, or, in the alternative (b) approving the SeeCubic DIP.

Dated: April 25, 2023

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/       Joseph O. Larkin
Joseph O. Larkin (I.D. No. 206047)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Fax: (302) 651-3001
Joseph.Larkin@skadden.com

- and -

James J. Mazza, Jr. (admitted *pro hac vice*)
Justin M. Winerman (admitted *pro hac vice*)
Rebecca Ritchie (admitted *pro hac vice*)
155 North Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0549
Fax: (312) 407-8641
James.Mazza@skadden.com
Justin.Winerman@skadden.com
Rebecca.Ritchie@skadden.com

- and –

Eben P. Colby (admitted *pro hac vice*)
Marley Ann Brumme (admitted *pro hac vice*)
500 Boylston Street, 23rd Floor
Boston, Massachusetts 02116
Telephone: (617) 573-4800
Fax: (617) 573-4822
Eben.Colby@skadden.com
Marley.Brumme@skadden.com

*Counsel to SeeCubic, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the United States Bankruptcy Court for the Eastern District of Pennsylvania on April 25, 2023, with notice sent electronically to all parties receiving electronic notices in this case pursuant to the local rules of this Court, and that no further notice or service is necessary.

*/s/ Joseph O. Larkin*
Joseph O. Larkin