**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,[1]<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (MDC) |
| In re:<br><br>Technovative Media, Inc.,<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (MDC)<br><br>(Jointly Administered) |

**SUPPLEMENTAL DECLARATION OF RAFAEL X. ZAHRALDDIN-ARAVENA IN SUPPORT OF DEBTORS' APPLICATION TO EMPLOY LEWIS BRISBOIS BISGAARD & SMITH LLP AS COUNSEL FOR THE DEBTORS**

I, Rafael X. Zahralddin-Aravena, hereby declare, under penalty of perjury, as follows:

1. I am a partner in the firm of Lewis Brisbois Bisgaard & Smith LLP ("LBBS"), a law firm that maintains an office at 550 E. Swedesford Road, Suite 270 Wayne, PA 19087.

2. I am duly authorized to make this Supplemental Declaration on behalf of LBBS, and I make this Declaration in support of the Application to Employ Lewis Brisbois Bisgaard & Smith LLP as General Bankruptcy Counsel (the "Application") [D.I. 70] to the above-captioned debtors ("Debtors") and as a supplement to my initial declaration (the "Declaration") [D.I. 70-1]. The facts set forth in this Supplemental Declaration are personally known to me, unless otherwise stated, and, if called as a witness, I could and would testify thereto. All capitalized terms used but not defined herein shall have the meanings given to them in the Application.

---

[1] The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

1

93837002.5

3. LBBS has determined that the Debtors do not qualify for Larger Chapter 11 Case treatment. Therefore, LBBS does not believe that the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330 by Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013, apply to LBBS's engagement in these bankruptcy cases.

4. LBBS did not agree to any variations from, or alternatives to, its standard or customary billing arrangements for this engagement.

5. LBBS professionals included in this engagement do not vary their rate based on the geographic location of the bankruptcy case. To the contrary, when appropriate, our national bankruptcy practice utilizes experienced professionals across various jurisdictions with lower market rates to enhance value for the Debtors and their estates.

6. On or about March 3, 2023, Mathu Rajan, Chief Executive Officer of Debtor Stream TV Networks, Inc. ("Stream"), contacted me regarding a potential bankruptcy filing for Stream and its subsidiaries, including Technovative. LBBS prepared and discussed an estimate based on the scope of work needed for a bankruptcy filing(s), conducted a conflict search and search for connections, and prepared an engagement letter dated March 7, 2023 (the "Engagement Letter"). *See* **Exhibit A**. Stream executed the Engagement Letter and agreed to a prepaid flat fee of $50,000.00, inclusive of the filing fee (the "Flat Fee Advance"). The scope of services in the Engagement Letter included representation of Stream and its subsidiaries, including Technovative, its wholly owned subsidiary. LBBS did not provide any services to the Debtors prior to March 14, 2023. Because LBBS agreed to the Flat Fee Advance, the fees incurred in connection with prepetition work for the bankruptcy filings were capped at $50,000.00. If billed on an hourly basis, LBBS's fees would have exceeded $50,000.00 in hourly time incurred by its attorneys and other

professionals and expenses incurred in connection with the bankruptcy filings. The Advance Flat Fee was utilized so that LBBS would be disinterested in these bankruptcy cases and appropriate disclosure was made in the Engagement Letter.

7. The Debtors were obligated to pay the Flat Fee Advance, and LBBS expected the Flat Fee Advance to be paid by and delivered to LBBS by the Debtors. However, the Flat Fee Advance was ultimately wired to LBBS's operating account from a bank account of Visual Semiconductor, Inc. ("VSI"). VSI is a Wyoming corporation and an investor in Stream in which Mr. Rajan is the president. The Debtors advised LBBS that VSI purchased and received equity in Stream pursuant to subscription agreements that were executed prior to and unrelated to entry into the Engagement Agreement and, at the instruction of Stream, VSI transferred the Flat Fee Advance directly to LBBS's operating account instead of the funds first going to Stream and then Stream wiring the funds to LBBS. The Debtors advised LBBS that this was done for convenience and to expedite LBBS's receipt of the Flat Fee Advance. LBBS is unaware of any agreement between the Debtors and VSI specifically for the payment of the Flat Fee Advance. LBBS advised representatives of VSI that LBBS does not represent VSI, and that LBBS's duty of undivided loyalty is owed to the Debtors. On April 20, 2023, LBBS filed with the Court an *Amended Disclosure of Compensation of Attorney for Debtor* to more accurately reflect these disclosures. *See* D.I. 126.

8. LBBS's hourly rates for the primary attorneys and paralegals involved in this engagement are as follows:[2]

| Rafael Zahralddin | $975 | Partner |
| Vincent Alexander | $695 | Partner |

---

[2] LBBS anticipates that other attorneys and paralegals will work on these matters.

3

93837002.5

| | | |
|---|---|---|
| Sean Shecter | $650 | Partner |
| Bennett Fisher | $550 | Partner |
| Karen Poppel | $550 | Associate |
| Aimee M. Czachorowski | $450 | Associate |
| Anh Nguyen | $350 | Associate |
| Christina Freeman | $275 | Paralegal |
| Candace Russell | $275 | Paralegal |

8. Post-petition, the Debtors will pay LBBS on an hourly basis, subject to Court approval. LBBS anticipates that the funds utilized to pay LBBS any court approved fees will be paid by the Debtors, either through receipt of court-approved debtor-in-possession funding, a sale of shares in Stream, revenue generated from Debtors' business operations, and/or a to be determined plan sponsor. LBBS has no agreement in place with any third party for the payment of its fees incurred in these bankruptcy cases.

9. In accordance with ordinary practice, the billing rates for LBBS attorneys and paralegals are subject to annual review and increase by LBBS.

10. In the Declaration, a potential connection was noted between LBBS and Robert Half Management Services, a creditor in these bankruptcy cases. Upon further review, LBBS has found no connection to Robert Half Management Services.

11. In 2020, while I was a partner at Elliott Greenleaf, P.C. ("Elliott Greenleaf"), I served as counsel to Stream and Mathu and Raja Rajan as counterclaimants, in *Stream TV Networks, Inc. v. SeeCubic, Inc.*, C.A. No. 2020-0766 (the "Chancery Case"). Elliott Greenleaf entered its appearance on October 8, 2020, through a substitution of counsel for Buchanan Ingersoll. Jonathan Stemerman served as the primary lawyer in the Chancery Case and Brian

4

93837002.5

Grady served as the lead litigator. I provided bankruptcy and creditors' rights advice on the matter. Elliott Greenleaf filed a motion to withdraw on November 8, 2020, which was granted on November 10, 2020. Scott Cousins, P.C. and Salazar & Associates substituted for Elliott Greenleaf after the firm's withdrawal (I did not have any affiliation with either firm). Elliott Greenleaf's representation was limited to the Chancery Case. I hold no claim against the Debtors, either directly or in connection with Elliott Greenleaf's brief representation in the Chancery Case while I was a lawyer at Elliott Greenleaf. I did not receive any compensation from Stream, Mr. Rajan, or any related entity while I was employed at Elliott Greenleaf. Further, to the extent Elliott Greenleaf is a creditor of the Debtors, I am not entitled to any portion of any potential recovery on such claim, and I am unaware of any basis that Elliot Greenleaf would have a claim against me personally relating to any claim that Elliot Greenleaf may have in these bankruptcy cases.[3]

      12.     While I was employed at Armstrong Teasdale, LLP ("Armstrong Teasdale"), Armstrong Teasdale represented Visual Technology Inc. ("VTI") in *In re Stream TV Networks, Inc.*, Case No. 20-10766(KBO) (Bankr. D. Del.), which was a chapter 11 bankruptcy filing by Stream. VTI is a Nevada corporation that was formed in January 2021. VTI is owned by numerous investors, including Mr. Rajan. Armstrong Teasdale was introduced to VTI through Lawrence G. McMichael, Stream's bankruptcy counsel in the case, and Mr. Rajan. VTI had a six member board at the time, including Mr. Rajan. For the representation of VTI, Armstrong Teasdale took instruction from Tim McCarthy, who was also a VTI board member and was to have a controlling interest in VTI through Burlington Resources Asia Limited. Armstrong Teasdale and its attorneys, including myself, filed notices of appearance in the bankruptcy case on behalf of VTI on March

---

[3] Treatment of claims will be reviewed and schedules and statements revised before the pending bar date.

17, 2021. VTI sought to provide debtor in possession financing in the bankruptcy case to Stream and ultimately serve as a plan sponsor. However, the bankruptcy case was dismissed on May 17, 2021, before any financing or chapter 11 plan was approved. To my knowledge, VTI received no payment or any consideration for services it performed, if any, and it is not owed anything from the Debtors and is not a creditor or interested party in these chapter 11 bankruptcy cases as a result of this matter or otherwise. VTI paid fees to Armstrong Teasdale for the representation, and no fees were paid to me for the representation. Armstrong Teasdale's representation of VTI in this matter ceased upon dismissal of the bankruptcy case.

13. While I was employed at Armstrong Teasdale, Armstrong Teasdale also represented VTI in *In re Stream TV Networks, Inc.*, Case No. 20-10848(KBO) (Bankr. D. Del.), which was an involuntary bankruptcy filing against Stream. The case was filed on May 23, 2021. Armstrong Teasdale and its attorneys, including myself, filed notices of appearance in the bankruptcy case on behalf of VTI on June 8, 2021. VTI served a similar role in this bankruptcy case as in Case No. 20-10766(KBO). The bankruptcy was dismissed on June 10, 2021. To my knowledge, VTI received no payment or any consideration for services it performed, if any, and it is not owed anything from the Debtors and is not a creditor or interested party in these chapter 11 bankruptcy cases as a result of this matter or otherwise. VTI paid fees to Armstrong Teasdale for the representation, and no fees were paid to me for the representation. Armstrong Teasdale's representation of VTI in this matter ceased upon dismissal of the bankruptcy case. While I was employed at Armstrong Teasdale, Armstrong Teasdale's representation of VTI was limited to Case No. 20-10766(KBO) and Case No. 20-10848(KBO), and Armstrong Teasdale did not represent Mr. Rajan, individually, or any related entity during my employment at Armstrong Teasdale.

14. Other than as disclosed in the Declaration and this Supplemental Declaration, I have never represented or received payment from Mr. Rajan or any related entity.

15. LBBS has never represented VSI, VTI, or Mr. Rajan. LBBS has no other connection, if any, with VSI, VTI, or Mr. Rajan other than has been disclosed in the Declaration and this Supplemental Declaration. And, other than in connection with these chapter 11 cases, LBBS has never represented the Debtors.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: April 28, 2023                              /s/ Rafael X. Zahralddin-Aravena
                                                          Rafael X. Zahralddin-Aravena

93837002.5

**EXHIBIT A**



500 Delaware Avenue, Suite 700
Wilmington, Delaware 19801
Rafael.Zahralddin@lewisbrisbois.com
Direct: 302.985.6004

March 7, 2023

CONFIDENTIAL COMMUNICATION

*Via Email Only*

mathu@streamacquisitiongroup.com

Re:   Engagement Letter/Fee Agreement

Dear Mathu:

The purpose of this correspondence is to, upon execution: 1) establish an attorney client relationship between Lewis Brisbois Bisgaard & Smith LLP ("LBBS" or the "Firm") and Stream TV Networks Inc. (hereinafter referred to as "You," "Your" or the "Client"); 2) define the scope of the Firm's representation of the Client; and 3) establish other material terms and conditions of the representation, including but not limited to the financial terms. This correspondence may be referred to as the "Engagement Letter" or the "Agreement."  *See* Schedule "A" for the limited scope of engagement parameters, and Schedule "B" for rates and costs.

Please read the Engagement Letter with care. By executing this Engagement Letter, You are entering into a contract that is binding on both the Firm and You, on the following terms and conditions.

1. PARTIES TO ENGAGEMENT LETTER

The parties to the Agreement are LBBS and You.  No other person or entity shall be entitled to claim an attorney client relationship with the Firm with respect to the legal services to be provided pursuant to the Engagement Letter.

2. INCEPTION OF ATTORNEY CLIENT RELATIONSHIP

No attorney client relationship will exist between LBBS and You until You have executed the Agreement, nor will LBBS be obligated to provide legal services, until You have returned a signed copy of this Agreement and paid the flat fee called for under Paragraph 8.

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA
MARYLAND • MASSACHUSETTS • MINNESOTA • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA • OHIO
OREGON • PENNSYLVANIA • RHODE ISLAND • TENNESSEE • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA
4870-0864-7491.1

March 7, 2023
Page 2

3. SCOPE OF REPRESENTATION: SCHEDULE A

LBBS will perform only those legal services set forth in the Scope of Representation attached as Schedule A.  The Client shall have no expectation that the Firm will provide legal services beyond those set forth in Schedule A, unless LBBS and the Client amend the Engagement Letter in writing or execute a separate agreement with respect to any such additional legal services.  The Client is generally required by law to retain documents, including electronically stored information ("ESI"), which may be relevant to the matter which is the subject of the representation.  Preservation of documents including ESI is the Client's responsibility, and it is important that the Client take all necessary and reasonable steps to preserve this information.  The Firm is available to discuss the scope of the Client's obligations and to provide advice or recommendations in this regard.  Nothing in this paragraph shall in any way limit the Client's obligation to pay for or the Firm's right to receive payment for any services provided by the Firm at the Client's request.

4. DUTIES OF CLIENT

You agree to be truthful and to cooperate, to keep us informed of relevant developments, to abide by the Agreement, to pay our bills on time, and to keep us advised at all times of Your current address, telephone number and whereabouts.

5. LEGAL FEES

We will charge You for the services provided pursuant to the Agreement based on the amount of time (including travel) we devote to the matter at the hourly rates for the particular professionals involved as are set forth in Schedule B.  We bill in minimum units of 6 minutes, or .1 hour, unless otherwise specified to adhere to applicable bankruptcy laws relevant to the retention of debtor's counsel..

We reserve the right to reasonable annual rate increases up to 10% per annum and will request for consent if any annual increase exceeds 10% subject to applicable bankruptcy laws relevant to the retention of debtor's counsel. .  We reserve the right to staff the handling of the matter with the partners, associates, paralegals and/or other personnel of our choice, at the rate we establish for each such timekeeper, although we will discuss the staffing of Your matter with You at any time, and will consider Your input in the staffing of the matter. Each of the undersigned individuals agree to be jointly and severally liable for all fees, costs and disbursements in connection with this representation.

6. COSTS, EXPENSES AND OTHER CHARGES

A. COSTS AND EXPENSES: SCHEDULE B

We will incur on Your behalf various costs and expenses in performing legal services under the Agreement.  You agree to pay for those costs and expenses, in addition to the hourly fees.  Schedule B, attached, includes a non-exhaustive list of costs we may incur on Your behalf.

March 7, 2023
Page 3

### B. OUTSIDE CONSULTANTS/OTHER VENDORS

In addition to the costs of the type set forth in Schedule B, it may become necessary to hire persons or entities outside LBBS, including but not limited to consultants, experts, investigators, co-counsel, or other professionals.  We will select any consultants or investigators to be hired after notice to and approval from You, and You agree to honor the terms and conditions of any agreement that we enter into on Your behalf with any such outside person or entity.

### C. REIMBURSEMENT OR DIRECT PAY

Unless we agree in writing, and in our sole discretion, to pay directly any of the external costs incurred such as those set forth in Schedule "B", and/or for outside consultants or other vendors, You agree to pay any such expense directly.  Our compensation arrangement with the third-party will provide that our Firm is not financially liable for the costs involved, and that You are solely responsible for payment.  When You are responsible to directly pay an outside consultant or vendor invoice we will work with You and the consultant or vendor to give effect to payment arrangements, including Your payment of estimated costs in advance or a deposit against these costs.  If You fail to make direct payments as required by this Letter Agreement, You agree to defend and indemnify our Firm with respect to any claim, demands or suit brought against our Firm as a result of Your failure to pay such invoice and that indemnity includes our attorney's fees and costs incurred in defending the claim against our Firm.  Payment directly by our Firm of any such expense on one or more occasions shall not be construed as a waiver of our right to require You in the future to pay any similar expense directly or in advance.  In addition, even if we pay these outside costs directly, we may require You to reimburse us immediately rather than waiting for the normal billing cycle to be completed.

### 7. PERIODIC STATEMENTS AND BILLING TERMS

Our practice is to send periodic statements for services rendered and for costs incurred during the previous month or months on our client's behalf.  The detail in the periodic statement will inform You of both the nature and progress of work and of the fees and costs being incurred.

Our fee structure is based upon Your promise to pay all statements, as applicable, no later than 30 days after receipt.

We do our best to see that our clients are satisfied not only with our services, but also with the reasonableness of the fees and costs.  Therefore, while we urge You to raise any question about or objection to a fee statement, You must do so promptly.  Such inquiry shall be timely only if made, in writing, within thirty (30) days after the date of the invoice.  In the absence of a timely written inquiry, You will be deemed to have accepted the invoice and to have acknowledged that You are satisfied with it, in the absence of good cause for not having objected more timely.

In the event You fail to pay any invoice within thirty (30) days of the statement date, You agree to pay interest at the rate of ten percent (10%) per annum on the amount of such invoice, from the statement date until paid in full.  If we accept late payment of any invoice without interest, we shall not be deemed to have waived any claim in the future for interest on other invoices.  If

March 7, 2023
Page 4

You timely object in writing to a portion of a statement, You agree to pay the remainder of the statement which is not in dispute.  We agree to accept such partial payment without claiming You have waived Your right to contest the unpaid portion of the bill.

Failure to pay the undisputed amount of any invoice in full within 30 days shall constitute grounds for termination of this Engagement Letter and withdrawal of the Firm from representation, as more fully discussed in Paragraph 11 ahead.

8. RETAINER AND ADVANCE FLAT FEE

This Engagement Letter shall not be effective until both You and LBBS have signed it and You have delivered to LBBS any advance payment fee described in Schedule "A" and "B" attached. You have agreed to advance a payment in the total amount of $50,000 as an advance payment flat fee as more fully described in Schedule "B."

We reserve the right to request a retainer and such retainer is not an estimate of the total charges which may be incurred.   We will apply any balance after we subtract the advance flat fee payment to a retainer in anticipation of your post chapter 11 filing needs. The retainer is: 1) a sum to be held as security for the Firm with respect to Your obligations to pay the fees and costs incurred by the Firm pursuant to the Engagement Letter; and 2) an advance payment to be applied to the Firm's final invoice in this matter. We will refund any unearned amounts of the retainer, if any, at the conclusion of our representation. We expect that You will live up to the terms and conditions of the Engagement Letter in full, in which case the full amount of the remaining retainer (if any) will be applied against the final invoice and any excess returned to You. However, as noted, should You become delinquent on the payment of any statement, we may in our discretion apply the retainer to the payment of that statement. In the event that the retainer is for any reason applied You shall immediately restore the retainer to its full amount upon our request. Failure to restore the retainer upon our request shall constitute grounds for termination of this Engagement Letter and withdrawal from representation, as more fully discussed in Paragraph 11 ahead.

We also reserve the right to require, and You agree to provide, increases to the retainer should the time and expense required to carry out the representation contemplated by this Engagement Letter increase beyond that reasonably anticipated at the beginning of the engagement.

For example, in the event that You were to request and we were to agree to undertake to represent You in connection with potential or actual litigation, such a matter could resolve in one of a variety of different ways, including dismissal, settlement, or trial. Trial preparation and the actual trial of a case are the most time consuming part of any litigation engagement. We would likely, therefore, require an increased retainer before we would begin trial preparation. We would determine the amount of the increase in the retainer prior to the trial, based upon an estimate of time and costs that may be involved for trial preparation and trial. In any event failure to provide the increased retainer upon our request shall constitute grounds for termination of this Engagement Letter and withdrawal of the Firm from the representation as more fully discussed in Paragraph 11 ahead.

---

March 7, 2023
Page 5

9. <u>ATTORNEY LIEN</u>

In consideration of the terms of this Agreement, as security for the payment of the fees, costs, and out-of-pocket expenses incurred on Your behalf pursuant to its terms, and without prejudice to any other rights, recourse, or remedies we may have, You hereby grant us a lien upon any sum or sums recovered by You, or on Your behalf (or which You are entitled to recover) in this or any other matter to which this or a similar agreement may pertain, and upon any sum or sums which may be on deposit with the Firm pursuant to this Agreement. You expressly authorize us to resort to such lien to obtain partial or total satisfaction of any obligation or debt which You may have to us arising from this Agreement.

10. <u>TERMINATION OF THE FIRM BY THE CLIENT</u>

You shall have the right to terminate this Engagement Letter and discharge the Firm at any time. However, to be effective, termination or discharge of the Firm must be in writing. In such event, You authorize the Firm to make and retain a duplicate of Your file.

The Client shall bear all reasonable costs of transferring the new matter to counsel chosen by the Client.

The attorney client relationship between the Firm and the Client shall end upon discharge of the Firm by the Client pursuant to this paragraph. However, such discharge shall not relieve the Client of any obligation to pay fees and costs incurred prior to the discharge, as well as any fees and costs expended after the discharge to the extent reasonably required in the Firm's sole discretion to protect the Client's interests prior to court order substituting new counsel or permitting withdrawal of the Firm from the litigation.

11. <u>WITHDRAWAL FROM REPRESENTATION BY THE FIRM</u>

The Firm shall be permitted to withdraw from representation whenever required or permitted to do so by law. In addition, the Firm may withdraw as counsel at any time if withdrawal can be accomplished without material adverse effects on the interests of the Client, or if: 1) the Client persists in a course of action involving a lawyer's services that the lawyer reasonably believes to be criminal or fraudulent; 2) the Client has used the lawyer's services to perpetrate a crime or fraud; 3) the Client insists upon pursuing an objective that the lawyer considers repugnant or imprudent; 4) the Client fails substantially to fulfill an obligation to LBBS regarding the Firm's services (including, but not limited to, the Client's financial obligations under this Engagement Letter) after reasonable warning from the lawyer that the lawyer will withdraw unless the obligation is fulfilled; 5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the Client; or 6) where other good cause for withdrawal exists.

12. <u>DOCUMENT STORAGE POLICY</u>

On termination of a matter, the Firm will maintain file documents for 10 years, or any alternate period as determined by the State of Delaware (or the state governing the location for

---

LEWIS BRISBOIS BISGAARD & SMITH LLP

www.lewisbrisbois.com

4870-0864-7491.1

March 7, 2023
Page 6

where work will be conducted). Upon termination of the matter, You have the right to take possession of the file. If You choose to take possession of the file, the Firm may copy all or any part of the file. If You choose not to take possession of the file, the Firm will retain the file pursuant to its document storage policy stated above.

13. CONFLICTS

You should be aware that the Firm represents many other companies and individuals. It is possible that during the time that we are representing You, some of our present or future clients will have transactions or disputes with You. You agree that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to our work for You even if the interests or legal positions of such clients in those other matters are directly adverse. We agree, however, that Your prospective consent to conflicting representation contained in the preceding sentence shall not apply in any instance where, as a result of our representation of You, we have obtained proprietary or other confidential information of a non-public nature, that, if known to such other client, could be used in any such other matter by such client to Your material disadvantage.

14. CHOICE OF LAW/FORUM SELECTION

This Agreement is deemed to have been executed, and is intended to be performed in the State of Delaware, subject to its laws, regardless of whether services are actually rendered outside of the State of Delaware. Any dispute arising from this agreement shall be governed by the laws of the State of Delaware. The venue for the judicial resolution of such dispute shall be proper within the State of Delaware.

15. NO PROMISES OR GUARANTEES

The Client understands that the Firm has made no representation or guarantee concerning the outcome of any legal proceedings that may be filed or defended on behalf of the Client.

16. LEGAL MALPRACTICE INSURANCE

As of the date of this letter, Lewis Brisbois Bisgaard & Smith LLP has errors and omissions (legal malpractice) insurance applicable to the services to be rendered pursuant to this Agreement, subject to any applicable deductible or self-insured retention.

17. MODIFICATION IN WRITING ONLY

No change to this Agreement shall be effective unless and until confirmed in writing and signed and acknowledged by the Firm and the Client making express reference to this Agreement. This Engagement Letter embodies the whole agreement of the parties. There are no promises, terms, conditions or obligations other than those contained herein, and this contract shall supersede all previous communications, representations, or other agreements, either oral or written, between the Firm and the Client.

---

LEWIS BRISBOIS BISGAARD & SMITH LLP
www.lewisbrisbois.com

4870-0864-7491.1

March 7, 2023
Page 7

18. COUNTERPARTS AND FACSIMILES EFFECTIVE

This Agreement may be signed in counterpart. Facsimile or imaged signature pages executed by the Firm or the Client shall be effective as original signatures.

Thank you for choosing Lewis Brisbois Bisgaard & Smith LLP as Your counsel with respect to the matter set forth in Schedule A.

We look forward to working with You and thank you once again for the opportunity to serve You, upon execution of this Engagement Letter.

Sincerely,

/s/ Rafael X. Zahralddin

Rafael X. Zahralddin
LEWIS BRISBOIS BISGAARD & SMITH LLP

RXZA
Cc:   Vincent Alexander

Accepted and agreed to:

Stream TV Networks Inc.
By: *[signature]*
Name: Mathu Rajan
Title: CEO
Phone: 267-469-3858
E-mail: mathu@streamacquisitiongroup.com
Dated: March 8, 2023

March 7, 2023
Page 8

## SCHEDULE "A":

## SCOPE OF REPRESENTATION

Representation of You, including any subsidiaries, with respect to restructuring and insolvency advice and the potential filing of a bankruptcy petition and all other matters related thereto, and such other matters as are assigned by the Client and accepted by the Firm, from time to time. I have further specified the bankruptcy services to be as follows:

(a) To advise Debtor with respect to its powers and duties as debtor-in possession and the continued management of its affairs;
(b) To advise Debtor with respect to its responsibilities in complying with the U.S. Trustee's Operating Guidelines and Reporting Requirements and with the rules of the Court;
(c) To prepare motions, pleadings, orders, applications, adversary proceedings, and other legal documents necessary in the administration of the case;
(d) To protect the interests of Debtor and the estate in all matters pending before the court;
(e) take all necessary actions in connection with any chapter 11 plan and related disclosure statement, and all related documents, and such further actions as may be required in connection with the administration of the Debtor's estate; and
(f) perform all other necessary legal services in connection with the prosecution of any chapter 11 case.

\*\*\*

March 7, 2023
Page 9

## SCHEDULE "B":

## RATE SCHEDULE AND COST/EXPENSE ITEMS SCHEDULE

A. **Identification**

Client(s):    Stream TV Networks Inc.

Matter:    Chapter 11 Bankruptcy

B. **Hourly rates for legal personnel are assigned from practice leader approved rate ranges applied by Billing Partner:**

$500+ for Partners;
$300+ for Associates;
$200+ for Paralegals and Assistants; and
$100+ for Law Clerks.

**Specific Example Applicable Rates to this Engagement:**

| Name | Rate |
|---|---|
| Rafael Zahralddin | $975 |
| Sean M. Brennecke | $600 |
| Kevin Shaw | $450 |
| Aimee M. Czachorowski | $450 |
| Vincent Alexander | $695 |
| Bennett Fisher | $550 |
| Daniel David | $350 |
| Christina Freeman | $275 |
| Candice Russell | $275 |

*We may from time to time add other attorneys within the aforesaid rate ranges as needed, as determined by LBBS.

You have agreed to pay for our services with a $50,000 advance to be deposited into our operating account. We will calculate the amount due for this advance payment after our initial scope of work call and make a flat fee payment for our services and apply any balance to your retainer for post chapter 11 filing legal services.

Client agrees to provide to the Firm an advance against a flat fee. This is analogous to an "advance payment retainer," as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct, Dowling v. Chicago Options Assoc., Inc., 875 N.E.2d 1012, 1018 (Ill. 2007), and In re Caesars Entm't Operating Co., Inc., No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein). In addition, Client agrees to provide one or more additional advance payment retainers upon request by the Firm, so that the amount of any advance payment retainers remains

March 7, 2023
Page 10

at or above the Firm's estimated fees and expenses. The Firm may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred. Client understands and acknowledges that any advance payment retainers are earned by the Firm upon receipt, any advance payment retainers become the property of the Firm upon receipt, Client no longer has a property interest in any advance payment retainers upon the Firm's receipt, any advance payment retainers will be placed in the Firm's general account and will not be held in a client trust account, and Client will not earn any interest on any advance payment retainers; provided, however, that solely to the extent required under applicable law, at the conclusion of the Engagement, if the amount of any advance payment retainers held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, expenses, and costs, the Firm will pay to Client the amount by which any advance payment retainers exceed such fees, expenses, and costs. Client further understands and acknowledges that the use of advance payment retainers is an integral condition of the Engagement, and is necessary to ensure that: Client continues to have access to the Firm's services; the Firm is compensated for its representation of Client; the Firm is not a pre-petition creditor in the event of a restructuring case; and that in light of the foregoing, the provision of the advance payment retainers is in Client's best interests. The fact that Client has provided the Firm with an advance payment retainer does not affect Client's right to terminate the client-lawyer relationship.

Please be advised that there is another type of retainer known as a "security retainer," as defined in Dowling v. Chicago Options Assoc., 875 N.E.2d at 1018, and In re Caesars Entm't Operating Co., Inc., No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein). A security retainer remains the property of the client until the lawyer applies it to charges for services that are actually rendered and expenses that are incurred. Any unearned funds are then returned to the client. In other circumstances not present here, the Firm would consider a security retainer and Client's funds would be held in the Firm's segregated client trust account until applied to pay fees and expenses. Funds in a security retainer, however, can be subject to claims of Client's creditors and, if taken by creditors, may leave Client unable to pay for ongoing legal services, which may result in the Firm being unable to continue the Engagement. Moreover, a security retainer creates clawback risks for the Firm in the event of an insolvency proceeding. The choice of the type of retainer to be used is Client's choice alone, but for the Engagement and for the reasons set forth above, the Firm is unwilling to represent Client in the Engagement without using the advance payment retainer

Pennsylvania Bar Association Formal Opinion 95-100 provides that in the absence of a clear written statement or agreement to the contrary, client retainers must be deposited into a proper attorney trust account. This PBA opinion also distinguished between refundable and nonrefundable retainers and concluded that nonrefundable retainers are permissible if the arrangement is properly documented. The opinion made clear that any arrangement that includes a nonrefundable retainer must be confirmed by a clear and unambiguous written statement provided to the client, or by a written agreement between the attorney and client.  Fees and costs paid in advance are considered trust funds in the absence of an agreement to the contrary and must be maintained in a trust account separate from the attorney's funds until they are earned or become payable and can be withdrawn with the client's consent.  In In Re Anonymous, No. 98 DB

March 7, 2023
Page 11

92, 23 Pa. D.& C. 4th 452 (1994)(the Disciplinary Board set forth at length how it expects attorneys to deal with advances of fees and expenses).

California Rule of Professional Conduct Rule 1.15(a) provides that unearned flat fees must be deposited into a client trust account **unless**, as 1.15(b) provides:

> Notwithstanding paragraph (a), a flat fee paid in advance for legal services may be deposited in a lawyer's or law firm's operating account, provided:(1) the lawyer or law firm discloses to the client in writing (i) that the client has a right under paragraph (a) to require that the flat fee be deposited in an identified trust account until the fee is earned, and (ii) that the client is entitled to a refund of any amount of the fee that has not been earned in the event the representation is terminated or the services for which the fee has been paid are not completed; and (2) if the flat fee exceeds $1,000.00, the client's agreement to deposit the flat fee in the lawyer's operating account and the disclosures required by paragraph (b)(1) are set forth in a writing signed by the client.

In order to assure that the Firm is not disqualified as your counsel in a chapter 11, you have agreed to an advance payment and flat fee. For the avoidance of doubt, the Firm and Client agree that the fee in this matter (1) is a flat, non-refundable fee which is earned upon receipt and covers the work described in Schedule "A" and "B," (2) will not be deposited into an attorney IOLTA or other Trust account to be billed against, and (3) will be deposited in the lawyer's operating account."

Please note that in appropriate circumstances, the Firm's charges may include a reasonable premium fee, which will be noted on any invoice in which it is included, in addition to the minimum fees calculated on the Firm's usual hourly rates. A premium amount may be based upon the novelty or difficulty of the issues raised during the representation, the time limitations imposed by the Client or the results obtained.

Prior written notice must be given to Client for any work outside the scope covered by the flat fee with proposed applicable rates of the legal personnel to be engaged; and any such extra work must then be agreed to by Client in writing.

C.  **Standard charges**

We charge for our time in minimum units of .1 hours (6 minutes).

D.  **Costs and expenses incurred on Client's behalf may include but are not limited to:**

| | |
|---|---|
| Process server fees | At cost |
| Filing fees or other fees fixed by law or assessed by public agencies | At cost |
| Meals | At cost |

---

March 7, 2023
Page 12

| | |
|---|---|
| Parking | At cost |
| Travel expenses including e.g., lodging, air fare, taxis, public transportation, car rental, and meals | At cost |
| Facsimiles | $.25 per page |
| Deposition costs | At cost |
| Experts, consultants or investigators | At cost |
| Computer Research | At cost, plus facilities surcharge (approximately $5.00/minute) |
| Word processing support | $35.00 per hour |
| Mileage | At the Internal Revenue Service's business mileage reimbursement guidelines |
| Messenger and other delivery fees | At cost |
| Photocopying and other reproduction costs | In-house - $0.10 per page Outside service-At cost |
| After hours building services (when dictated by special client need) | At cost |
| Publication costs | At cost |
| Video costs | At cost |

Details of these costs and expenses will be reported to Client.