# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | Chapter 11 |
| Stream TV Networks, Inc.,[1] | Case No. 23-10763 (MDC) |
| Debtor. | Chapter 11 |
| and | Case No. 23-10764 (MDC) |
| In re | (Jointly Administered) |
| Technovative Media, Inc. | Hearing Date: June 21, 2023 at 11:30 a.m. (ET) |
| Debtor. | Objection Deadline: June 16, 2023 at 4:00 p.m. (ET) |

**RECEIVER'S MOTION, PURSUANT TO 11 U.S.C. §§ 105(a) AND 543(b) AND BANKRUPTCY RULE 6002, FOR ENTRY OF AN ORDER (A) APPROVING THE RECEIVER'S FINAL REPORT, (B) GRANTING POST-PETITION DISCHARGE OF THE RECEIVER AND THE RECEIVER PROFESSIONALS, (C) FINDING THAT THE RECEIVER COMPLIED WITH 11 U.S.C. § 543, (D) APPROVING AND DIRECTING PAYMENT OF THE PREPETITION FEES AND EXPENSES OF THE RECEIVER AND THE RECEIVER PROFESSIONALS, AND (E) GRANTING RELATED RELIEF**

In accordance with sections 105(a) and 543(b) of title 11 of the United States Code, as amended (the "Bankruptcy Code") and rule 6002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Ian R. Liston, in his capacity as the state court-appointed *receiver pendente lite* (the "Receiver") of the operations of Technovative Media, Inc. (the "Company"), files this motion (the "Motion") requesting entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit B**: (a) approving the *Final Report and Accounting of Ian R. Liston, Receiver*, attached hereto as **Exhibit A** (the "Final Report"); (b) finding that the Receiver has complied with his obligations under section 543 of the Bankruptcy Code, as supplemented by Rule 6002 of the Bankruptcy Rules; (c) discharging the Receiver and the Receiver Professionals (defined below) from any further obligations with

---

[1] The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

respect to the Company under the Bankruptcy Code and from any liability (except if resulting from the fraud, willful misconduct, or gross negligence of the Receiver or the Receiver Professionals) relating to or arising from services performed by, or at the direction of, the Receiver with respect to the Company on or after March 15, 2023 (the "Petition Date"); (d) approving and directing payment of the prepetition fees and expenses of the Receiver and the Receiver Professionals incurred prior to the Petition Date; and (e) granting such further relief as this Court deems just and proper.

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). In accordance with rule 9014-3 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Pennsylvania, the Receiver consents to the entry of a final order or judgment by the Court in connection with the Motion if it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. Venue of these chapter 11 cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 543(b) and Bankruptcy Rule 6002.

## BACKGROUND

### A. Establishment of the Receivership

2. On October 17, 2022, plaintiff Hawk Investment Holdings, Ltd. ("Hawk") filed a Verified Complaint for Declaratory Relief (the "Complaint") pursuant to *8 Del. C.* § 225 with the Delaware Court of Chancery (the "Court of Chancery"). Through its action, among other things, Hawk sought a determination that it had validly exercised its creditor rights to vote the shares of the Company and reconstitute the Company's board of directors with a sole director, Shad Shastney. In connection therewith, Hawk also filed a *Motion for Expedited Proceedings* (the "Motion to Expedite"), a *Motion for Injunction*, and an *Opening Brief in Support of the Motion for*

*Injunction and Expedited Proceedings*. The Complaint alleged, among other things, that the Company rejected Hawk's position and maintained that Mathu Rajan was the sole director of the Company.

3. Also on October 17, 2022, Hawk provided the Court of Chancery with information indicating that one of the Company's subsidiaries faced a risk of missed payroll due to disputes over control of the Company.

4. On October 20, 2022, Vice Chancellor J. Travis Laster heard oral argument on the Motion to Expedite. Thereafter, Vice Chancellor Laster entered that certain *Status Quo Order* (the "Status Quo Order"). Among other things, the Status Quo Order required the Company to operate only in the ordinary course of business and enjoined the Company from taking any actions outside the ordinary course of business without first obtaining leave of the Court of Chancery.

5. In connection with the entry of the Status Quo Order, Vice Chancellor Laster appointed the Receiver to take charge of the Company and empowered the Receiver to "exercise all of the power and authority afforded to the Board under section 141 of the Delaware General Corporation Law and (ii) all the power and authority afforded to a receiver appointed under section 279 of the Delaware General Corporation Law."[2]

6. On October 21, 2022, in furtherance of the Status Quo Order, the Court of Chancery issued the *Order Regarding Receiver Pendente Lite* (the "Receiver Appointment Order"), which appointed the Receiver.

7. Pursuant to the authority provided by the Receiver Appointment Order, the Receiver retained Wilson Sonsini Goodrich & Rosati, P.C. ("Wilson Sonsini"), as his counsel and Stibbe N.V., as his Netherlands counsel ("Stibbe" and together with Wilson Sonsini, the "Receiver Professionals").

---

[2] Status Quo Order ¶ 13.

**B.     Commencement of the Chapter 11 Cases**

8.      On the Petition Date, the Company and Stream TV Networks, Inc. ("Stream" and together with the Company, the "Debtors") filed voluntary petitions with the Court under chapter 11 of the Bankruptcy Code.³ An order was entered jointly administering the Debtors' chapter 11 cases for procedural purposes only on April 11, 2023. *See* Docket No. 81. The Debtors are managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On April 6, 2023, Hawk filed a motion requesting, among other things, that a chapter 11 trustee be appointed with respect to the Debtors' operations. *See* Docket No. 83. As of the date of the filing of this Motion, the Court has not yet ruled on this motion and no official committees have been appointed or designated.

**RELIEF REQUESTED**

9.      By this Motion, the Receiver requests that this Court enter the Proposed Order, substantially in the form annexed hereto as **Exhibit B**: (a) approving, pursuant to sections 105(a) and 543(b) of the Bankruptcy Code and Bankruptcy Rule 6002, the Final Report, which is annexed hereto as **Exhibit A**; (b) finding that the Receiver has complied with his obligations under section 543 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 6002; (c) discharging the Receiver and the Receiver Professionals from any further obligations with respect to the Company or the receivership and from any liability (except if resulting from the fraud, willful misconduct, or gross negligence of the Receiver or the Receiver Professionals) relating to or arising from services performed by, or at the direction of, the Receiver with respect to the Company on or after the Petition Date; (d) approving and directing the payment of the fees and expenses of the Receiver and the Receiver Professionals incurred prior to the Petition Date; and (e) granting such other and further relief as this Court deems just and proper.

---

³ As set forth in the *Declaration of Mathu Rajan in Support of Stream TV Networks, Inc. and Technovative Media, Inc. Chapter 11 Petition, Supporting Emergency Relief, and First Day Motions* (the "First Day Declaration") [Docket No. 45], the Company is a wholly owned subsidiary of Stream and holds the majority of Stream's assets.

-4-

**BASIS FOR RELIEF**

10. Section 543 of the Bankruptcy Code provides, in relevant part:

(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

(b) A custodian shall –

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, products, offspring, rents, or profits of such property, that is in such custodian's possession, custody or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

11 U.S.C. § 543.[4]

11. This Court's authority to discharge a superseded state court custodian pursuant to section 543 of the Bankruptcy Code and Bankruptcy Rule 6002 flows from its jurisdiction over both the custodian and the estate property under such custodian's control following commencement of a case under the Bankruptcy Code. *See* 11 U.S.C. § 543(c); *In re Sundance Corp., Inc.*, 149 B.R. 641, 649-50 (Bankr. D. Wash. 1993) ("Through § 543, Congress has apparently authorized bankruptcy courts to review and conclude matters relating to a state court receivership."); *In re Weldon F. Stump & Co., Inc.*, Case No. 05-32505, slip op. (Bankr. N.D.

---

[4] Bankruptcy Rule 6002 provides, in relevant part, that "[a]ny custodian required by the [Bankruptcy] Code to deliver property in the custodian's possession or control to the trustee shall promptly file and transmit to the United States trustee a report and account with respect to the property of the estate and administration thereof." Fed. R. Bankr. P. 6002(a). Further, "[o]n the filing and transmittal of the report and account required by subsection (a) of this rule and after an examination has been made into the superseded administration, after notice and a hearing, the court shall determine the propriety of the administration, including the reasonableness of all disbursements." Fed. R. Bankr. P. 6002(b).

Ohio Nov. 8, 2005) ("[T]he authority to discharge a receiver necessarily flows from the bankruptcy court's jurisdiction over both the 'custodian' and the estate property which came under their control.").

12. Further, section 543(c)(2) of the Bankruptcy Code provides that the outstanding prepetition fees and expenses of a superseded receiver may be paid by the Debtors' estates and enjoy administrative expense priority. *See In re Lake Region Operating Corp.*, 238 B.R. 99, 101 (Bankr. M.D. Pa. 1999) ("It has long been the policy of the courts to utilize the funds of the estate to pay a superceded [sic] custodian . . . [i]n [f]act, specific provisions allowing compensation to a superceded [sic] receiver provide *that* extraordinary circumstances where a prepetition expense enjoys administrative status . . . This is so because the court views the superceded [sic] receiver as being entitled to 'deduct' the expenses of the receivership from the property surrendered to the bankruptcy court.") (internal citations and quotations omitted).[5] As the United States Bankruptcy Court for the Southern District of New York observed in *In re Snergy Properties, Inc.*, section 543 of the Bankruptcy Code "is an exception to the general rule with respect to the allowance of compensation for exclusively post-petition activities as an administrative expense" and "the costs and expenses of a prepetition custodian or receiver superseded under 11 U.S.C. § 543 include the expense of counsel fees incurred by the custodian or receiver, for which prior court approval is not expressed as a prerequisite for allowance."[6]

13. Whether the superseded receiver's request for compensation is reasonable "is a determination of federal, not state law."[7] Bankruptcy courts have traditionally considered five factors when assessing the reasonableness of a superseded custodian's request for compensation: "the time and labor expended by the custodian; the benefit of the custodian's services to the debtor

---

[5] *See also In re 29 Brooklyn Ave., LLC*, 535 B.R. 36, 41 (Bankr. E.D.N.Y. 2015) ("A state court receiver is a 'custodian' within the meaning of the Bankruptcy Code . . . Pursuant to § 543(c)(2), a superseded custodian may receive payment of 'reasonable compensation' for prepetition services rendered, and costs and expenses incurred, and such compensation and reimbursement of expenses is entitled to first priority administrative expense status pursuant to § 503(b)(3)(E).") (internal citations omitted).

[6] 130 B.R. 700, 704 (Bankr. S.D.N.Y. 1991).

[7] *In re 29 Brooklyn Ave.*, 535 B.R. at 41 (internal citations and quotations omitted).

and the estate; the size and/or complexity of the estate; what the custodian would have received if he or she had been appointed as trustee for the debtor; and the quality of the custodian's services."[8] Of these factors, the most important consideration is whether the custodian's actions benefitted the estate.[9] Here, as set forth in greater detail below, the requested compensation and reimbursement of the Receiver and the Receiver Professionals is reasonable and provided value to the Debtors' estates.

14. In addition, section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Pursuant to section 105(a) of the Bankruptcy Code, this Court has expansive equitable powers to fashion any order or decree that is reasonable and equitable. *See, e.g., Bird v. Crown Convenience (IN re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principals govern.").

15. The Receiver respectfully submits that he has complied with the requirements of section 543 of the Bankruptcy Code. As described more fully in the attached Final Report, following the Petition Date, the Receiver and the Receiver Professionals limited their activities to those necessary for the preservation of the Debtors' estates, and did not make any disbursements of funds. The Final Report accounts for all property and funds received and/or disbursed by the Receiver since his appointment by the Court of Chancery.

16. By this Motion, the Receiver respectfully requests that this Court approve the Final Report and discharge the Receiver and the Receiver Professionals from any further obligations with respect to the Company or under the Bankruptcy Code and from any liability (except if resulting from the fraud, willful misconduct, or gross negligence of the Receiver or the Receiver Professionals) relating to or arising from services performed by, or at the direction of, the Receiver with respect to the Company on or after the Petition Date.

---

[8] *Id.* at 41-42 (internal citations and quotations omitted).

[9] *Id.* at 42.

4878-9261-1932.5

17. By this Motion, the Receiver further requests that the Court authorize and approve the payment of all prepetition fees and expenses incurred by the Receiver and the Receiver Professionals prior to the Petition date. The Receiver Appointment Order made clear that "[t]he Company shall pay the expenses of the Receivership" including "the fees of the Receiver and those of other professionals at [Wilson Sonsini] who provide services or counsel to the Receiver, which may be billed at their customary hourly rates" and "out-of-pocket expenses, which shall be reimbursed" by paying "the invoices submitted by all experts, advisors and other professionals retained by the Receiver, who shall submit invoices to the Receiver on a monthly basis."[10] Moreover, although the Company may dispute the expenses of the Receivership, it must first "make payment notwithstanding the dispute."[11] The Receiver will then apply to the Court of Chancery for approval of any disputed expenses.[12] To ensure the prompt payment of the expenses of the Receiver and the Receiver Professionals, the Receiver Appointment Order gave such expenses "priority [in payment] over all other obligations, payments, claims, and distributions of the Company" and provided that if the Company failed to pay the expenses of the Receiver and the Receiver Professionals then such expenses would become costs borne by the Company's counsel and the Court of Chancery was empowered to "bar counsel from making filings with the [Court of Chancery] not only in this action but in other actions, if court costs go unpaid."[13]

18. All services for which compensation is requested by the Receiver and the Receiver Professionals were performed prior to the Petition Date and on the Company's behalf. From the period spanning the appointment of the Receiver through the Petition Date, the Receiver and the Receiver Professionals performed significant services on behalf of the Company, including, but not limited to, the following: (i) addressing and negotiating disputes between and among Stream, Hawk, and SeeCubic, Inc. ("SeeCubic") regarding their respective requests

---

[10] Receiver Appointment Order ¶ 11.

[11] Receiver Appointment Order ¶ 12.

[12] *Id.*

[13] Receiver Appointment Order ¶ 13.

-8-

concerning the operation of one of the Company's indirect wholly-owned subsidiaries, SeeCubic BV, a *Besolten venootschap* organized under the laws of the Netherlands ("SCBV"), or the use and disposition of SCBV's property; (ii) approving SCBV's decision to enter into that certain *Senior Promissory Note*, dated as of November 14, 2022, pursuant to which SeeCubic agreed to advance funds to SCBV in an aggregate principal amount of up to €3,500,000 in exchange for SCBV's agreement to repay the outstanding principal thereunder along with any accrued and unpaid interest thereon (as the same shall be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Note"); (iii) conducting meetings on a weekly or more frequent basis with SCBV's leadership team to discuss the status of SCBV's operations as well as its business and funding needs and to facilitate operation of SCBV in the ordinary course of business; (iv) following a review of a duly presented report showing SCBV's expenses for the prior calendar month and a budget for the proposed use of funds, approving certain monthly advance requests (each, an "Advance Request" and collectively, the "Advance Requests") under the Note; (v) taking steps to ensure that another of the Company's wholly owned indirect subsidiaries, Ultra-D Cooperatief U.A., a *cooperatief* organized under the laws of the Netherlands ("Ultra-D"), filed the paperwork necessary to extend European patents owned by Ultra-D; (vi) upon receipt of funds pursuant to the Advance Requests, overseeing and authorizing certain disbursements on behalf of the Company, including payments made in respect of SCBV's payroll obligations, amounts owed to independent contractors, wage tax and pension obligations, rental obligations for SCBV's leased premises, and certain software license fees and obligations vital to the continuity of SCBV's business; (vii) assessing projects and other opportunities that had been presented to SCBV prior to the Receiver's appointment, to determine whether work on such projects should continue during the pendency of the 225 Action; (viii) assessing potential projects and other opportunities presented to SCBV after the Receiver's appointment to determine if they (a) fell within the ordinary course of SCBV's business and (b) if so, whether they could be completed before the conclusion of the 225 Action, and, if not, whether both SCBV and the potential project partner would agree to undertake the project under the circumstances; (ix)

working with Stream, Hawk, SeeCubic, SCBV, Ultra-D, and another of the Company's wholly owned indirect subsidiaries, Stream TV International B.V., a *Besolten venootschap* organized under the laws of the Netherlands ("Stream TV Intl."), to ensure that SCBV, Ultra-D, and Stream TV Intl. filed their respective financial statements for 2021 with the Dutch authorities prior to December 31, 2022; (x) restructuring SCBV's operational structure to clarify and/or redefine the titles, roles, and responsibilities of certain key personnel after providing requisite notice of the same to affected parties; (xi) after discovering in January 2023 that the Chinese warehouse housing certain Ultra-D optical bonding equipment (the "Bonding Equipment"), that was currently under SCBV's control, was about to be demolished by the Chinese government, working with employees of SCBV to safeguard the Bonding Equipment from destruction; (xi) filing that certain *Receiver's Motion for an Order Setting a Cash Bond* (the "Cash Bond Motion") on January 27, 2023, requesting, among other things, that the Court of Chancery enter an order requiring Stream to post a $1,500,000 cash bond (the "Cash Bond") in the 225 Action as a condition of its receipt of the Bonding Equipment and filing a reply in support of the Cash Bond Motion and in response to that certain *Plaintiff's Response and Objection to Receiver's Motion for an Order Setting a Cash Bond* with the Court of Chancery; and (xii) monitoring various actions and litigation commenced against the Company in various fora, including the complaint for injunctive relief and misappropriation of trade secrets filed by Rembrandt 3d Holding Ltd. against Technovative, Hawk, and SeeCubic in the United States District Court for the District of Delaware on February 21, 2023 under case caption 1:23-cv-00193-GBW.

19.    The Receiver and Wilson Sonsini, as legal professionals, commonly bill in one tenth of an hour increments and have kept track of their prepetition time in accordance therewith. Stibbe's professionals also bill by the hour and Stibbe has kept track of its prepetition time in accordance with the terms of its Engagement Letter. In total, by this Motion, the Receiver is requesting approval of and direction for the Debtors to pay, legal fees and expenses in the amount of $89,007.15 to Wilson Sonsini and legal fees and expenses in the amount of €11,478.14 to Stibbe.

20. There is no agreement or understanding between the Receiver and any other person, other than between the Receiver and Wilson Sonsini, for the sharing of compensation to be received for services rendered in connection with the receivership.

*[Remainder of Page Intentionally Left Blank]*

-12-

## **CONCLUSION**

WHEREFORE, the Receiver respectfully requests that this Court enter the Proposed Order, substantially in the form annexed hereto as **Exhibit B**: (a) approving, pursuant to sections 105(a) and 543(b) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 6002, the Final Report, annexed hereto as **Exhibit A**; (b) finding that the Receiver has complied with his obligations under section 543 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 6002; (c) discharging the Receiver and the Receiver Professionals from any further obligations with respect to the Company or the receivership and from any liability (except if resulting from the fraud, willful misconduct, or gross negligence of the Receiver or the Receiver Professionals) relating to or arising from services performed by, or at the direction of, the Receiver with respect to the Company on or after the Petition Date; and (d) granting such further relief as this Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

-13-

Dated: May 17, 2023
      Wilmington, Delaware

*/s/ Nicholas E. Hakun*
Nicholas E. Hakun (PA Bar #325901)
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1700 K Street, NW
Washington, DC 20006-3814
Telephone: (650) 461-6568
Email: nhakun@wsgr.com

and

Erin R. Fay (*pro hac vice* admission pending)
Catherine C. Lyons (*pro hac vice* admission pending)
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
222 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 304-7600
Emails: efay@wsgr.com
        clyons@wsgr.com

*Counsel to the Receiver*