```
                    UNITED STATES BANKRUPTCY COURT

                   FOR THE DISTRICT OF PENNSYLVANIA

                                           :
IN RE:                                     : Case No.  23-10763
                                           :
STREAM TV NETWORKS, INC.    CH: 11         :
                                           : Philadelphia, Pennsylvania
Status Conference                          : September 11, 2023
                                           : 10:34 a.m.
. . . . . . . . . . . . . . . . . .


             BEFORE THE HONORABLE MAGDELINE D. COLEMAN
                  UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:                  Rafael X. Zahralddin, Esq.
                                 Lewis Brisbois
                                 500 Delaware Avenue
                                 Suite 700
                                 Wilmington, DE 19801
                                 302-985-6004


For Hawk Investment Holdings     Steven Caponi, Esq.
Ltd:                             K&L Gates
                                 600 N. King Street, Suite 901
                                 Wilmington, DE 19801
                                 302-416-7080

                                 Thomas A. Warns, Esq.
                                 K&L Gates LLP
                                 599 Lexington Avenue
                                 Suite 1000
                                 New York, NY 10022
                                 212-536-3901

                                 Jonathan N. Edel, Esq.
                                 300 South Tryon St., Suite 1000
                                 Charlotte, NC 28202

For SeeCubic, Inc.:              Eben P. Colby, Esq.
                                 Marley Ann Brumme
                                 Skadden Arps Slate Meagher &
                                 Flom, LLP
                                 500 Boylston Street, 23rd Floor
                                 Boston, MA 021116
                                 617-573-4800
```

```
For the United States          Frederic Baker, Esq.
Trustee:                       Office of The United States
                               Trustee
                               Robert N.C. Nix Federal
                               Building
                               900 Market Street, Suite 320
                               Philadelphia, PA 19107
                               202-934-4154

For Rembrandt:                 Andrew Peter Demarco
                               Devlin Law Firm, LLC
                               1526 Gilpin Avenue
                               Wilmington, DE 19806
                               302-449-9010
```

Proceedings recorded by electronic sound recording; transcript produced by TheRecordXchange.

```
 1  SEPTEMBER 11, 2023                                      10:34 A.M.
 2             THE COURT:  So that only leaves us with number two,
 3  which is the Stream TV Network and Technovative status
 4  conference.  Counsel, for the movant please?
 5             MR. CAPONI:  Good morning, Your Honor.  Steven Caponi
 6  from K&L Gates on behalf of the secured creditors.  And I
 7  believe also on the line from K&L Gates are Tom Warns, W-A-R-N-
 8  S, and Jon Edel, E-D-E-L.
 9             THE COURT:  Okay.  Who else is here?
10             MR. COLBY:  Your Honor, Eben Colby from SeeCubic from
11  Skadden representing SeeCubic.
12             THE COURT:  Who else is with you, Mr. Colby?
13             MR. COLBY:  Marley Brumme.
14             THE COURT:  Okay.  Who's here for the Debtors?
15             MR. ZAHRALDDIN:  Your Honor, Rapheal Zahralddin from
16  Lewis Brisbois on behalf of the Debtors.  Good morning.
17             THE COURT:  Good morning.  Okay.  Anybody else here?
18             MR. MICHAELS:  Chris Michaels representing Rembrandt.
19             THE COURT:  Anyone else?
20             MR. BAKER:  Good morning, Your Honor.  Frederic Baker
21  on behalf of the United States Trustee.
22             THE COURT:  Anyone else?
23             MR. DEMARCO:  Yes, Your Honor.  This is Andrew
24  DeMarco from Devlin Law Firm representing Rembrandt.
25             THE COURT:  Anyone else?  All right.  Mr. Caponi,
```

1  you requested a status conference, so you may proceed.

2              MR. CAPONI:  Thank you, Your Honor.  Your Honor, when

3  we filed the letter, there really were three reasons we were

4  seeking a conference.  One, to try to obtain an earlier hearing

5  date.  Two, to decide how to allocate the time to set a firm

6  conclusion to the hearing on the outstanding motions.  And

7  three, relief from stay.  I think in light of Mr. Zahralddin's

8  submission indicating that Mr. Rajan is in for medical

9  procedures on the 13th or 14th, I think that takes that issue

10 off the table.  And I won't waste any more time on it other

11 than to say we're unaware of Mister -- we were unaware of Mr.

12 Rajan's medical situation where you filed the request.  But if

13 he's unavailable due to treatment, you know, that is what it is

14 and we wish him all the best.  And I think that issue is off

15 the table.

16             Other than, I think, you know, it does raise some

17 questions to whether or not he'll be available on the 22nd or

18 25th.  We had to ask for clarification on that but haven't yet

19 gotten a response.

20             The two subjects that I think that are on the table

21 and the primary one I think we can address today goes to

22 putting a conclusion to these hearings.  These motions have

23 been pending for many months and the hearing itself has gone on

24 for many months.  And we're -- while the secure creditors

25 weren't thrilled that the next available dates were the end of

1  September, we appreciate, you know, that is what it is.  But we
2  would like to make sure that they are in fact, you know, the
3  final two days of this proceeding so that the Court can rule,
4  and these motions can be adjudicated.
5            They're very important motions that go to the core in
6  how this estate has operated.  In our papers, Your Honor, our
7  proposal is that the Court can inform the parties -- well, let
8  me say this.  I think up until now the Court has been extremely
9  gracious with its time.  Giving us, you know, time for the
10 lawyers to present their case.  But lawyers as they often
11 analogize to goldfish we'll get as big as our bowl.  So if it's
12 up to the lawyers, this thing is never going to end.  And
13 that's why we're respectfully asking the Court to set the 25th
14 as the end of it.  And then if the Court can give us the amount
15 of time that would be available.
16           All that's left is to finish my cross of Mr. Rajan,
17 some redirect, and then the Rembrandt witness, who the Court
18 has already limited the scope of that examination, and then
19 closings.  And we think that can all be done on the 22nd and
20 the 25th.  But if we don't have much time, I think we can then
21 amongst the lawyers just whack it out.  And, you know, it is --
22 you get the amount of time that's left, not all the time you
23 wish you had.  And we think that, you know, given this -- how
24 long it's taken to get to this point and how much witness
25 testimony the Court has already had, this final last slug of

1  evidence, followed by argument, we'd like to see it conclude by
2  the 25th.
3          So that's -- unless, you know, the Court has
4  questions, that's what we're hoping to accomplish today on that
5  point.  And then the last point is just as we point out in our
6  papers, given how long the process has taken, taking in the
7  statutory requirements with regard to the motion for relief
8  from stay, and the fact that the Debtors have now filed a
9  motion to take the core issue of whether their secured debt and
10 the amount of secured debt and who controlled Technovative and
11 have that heard by someone other than Your Honor.  The debate
12 up until now has been we believe it should have gone back and
13 should be concluded in front of the court of chancery where it
14 started, and then come back to Your Honor for Your Honor to
15 determine what affect Vice Chancellor Laster's determinations
16 would have on the estate.
17         And that was -- the Debtor's position was, no, Your
18 Honor should decide that.  Well, now the Debtors are saying
19 Your Honor should not decide that.  It should be by the
20 district court.  And since the Debtor's now have walked away
21 from their position that Your Honor should handle it, we think
22 there's no reason that Your Honor doesn't grant that request
23 and allow to go back to the Vice Chancellor and at least get on
24 his calendar to conclude this one day trial.  Again, then come
25 back so then Your Honor can determine what impact it has, if

1  any, on the bankruptcy.  I'll pause there, Your Honor.

2          THE COURT:  Okay.  And let me just ask a follow up

3  question.  I understand, if I recall correctly, that what was

4  up before the Vice Chancellor Lasiter simply an issue of

5  control over Technovative.  I don't recall, and maybe I just

6  don't recall at the moment because I don't recall a lot right

7  now.  Is that the amount of the amount that's owed or claimed,

8  was that also going to be part of the 225 action or it was just

9  to determine who was in control or who is the proper board?

10         MR. CAPONI:  The fundamental legal question is who

11 controls the board.  The -- Stream's defense -- I'm trying to

12 give a concise answer.  It's who controls the board, but

13 whether or not there's secured debt.  If there's secured debt

14 and there was a default, the secured debt has proxy rights to

15 install the board.  The Debtor's defense was this secured debt

16 had been converted to equity.  And therefore, it was no longer

17 -- there was no longer any secured debt.

18         So the primary -- the only defense I should say, that

19 would be primary defense.  The only defense because the Court

20 had already determined there were defaults, the only defense by

21 the Debtor was that the debt had been converted.  Therefore,

22 there was no secure debt.  So that's a factual issue the Court

23 must resolve in order to resolve the ultimate legal issue of

24 who controls the stock, and therefore able to appoint the board

25 member.

1       THE COURT:  Right.  And so in doing so, that court
2  would be required to determine whether in fact that's secured
3  debt or whether in fact that is equity.  And that number -- is
4  the Court going to or do the parties anticipate the court
5  simply saying there is a secured debt default or there is none
6  in its equity?  And when in saying there is secured debt, make
7  a determination as to the amount?
8       MR. CAPONI:  My -- I do not know what the Vice
9  Chancellor ultimately will do.  But the way the case was teed
10 up for trial was that the Debtor had raised two to three
11 buckets of payments that it claimed counted towards conversion.
12 And we had argued that, no, those individual payments or
13 buckets of money were not buckets that you could use to
14 convert.
15      So I think the Court is going to either -- is going
16 to determine whether each of those dollars could be used, the
17 debtor identified could be used to support a conversion.  So I
18 think more likely than not, the Court is going -- the Court
19 didn't in a vacuum say none of the debt was converted as of
20 this date.  And if not, the Court will end up saying what the
21 amount I believe the conversion was, whether there was a dollar
22 left or $100, you know, $100,000,000 left.
23      THE COURT:  Right, okay.  I understand.  All right.
24 I'm sorry.  All right.  So -- and you said Debtors are now
25 requesting that the district determine what?  The same issues

1  they are going --

2          MR. CAPONI:  Yes, Your Honor.  The Debtor filed a
3  adversary action.  And in the adversary complaint is arguing
4  the same issue that the secured debt was converted, and it was
5  -- so therefore, there is no secured debt.  And it goes to
6  their underlying claims of torts against Stream.  So by seeking
7  to withdraw the reference back to the district court, that
8  issue would be resolved part and parcel of the adversary
9  complaint.

10         THE COURT:  And when was that filed?  Let me just
11 say, counsel.  I don't see everything that's filed, and I don't
12 look at it until I absolutely have to.  So this complaint,
13 while it may have been noted on the docket it was filed, it
14 wouldn't have been something that I went and looked at.  When
15 was this filed?

16         MR. ZAHRALDDIN:  Your Honor, we filed the complaint
17 about two weeks ago.

18         THE COURT:  Okay.

19         MR. ZAHRALDDIN:  And the complaint, Your Honor,
20 doesn't just -- it's not just this issue and it's explained in
21 our response.  As we all know, the district court has the
22 original jurisdiction over all bankruptcy cases.  And as we
23 argued in our motion to withdraw the reference, which you may
24 have not seen, when you have intertwined stocks --

25         THE COURT:  No.  I haven't seen it.

1        MR. ZAHRALDDIN:  -- the stocks are kind of pulled

2   together.  You almost have to go up and let the district court

3   make a determination.  And we fully expect that the district

4   court could easily come back and say we would like Judge

5   Coleman to look at these issues because they're really court

6   issues, and we'll hear the jury trial and/or the trade secret,

7   and/or some of the other issues we put into the document.

8        But it's very difficult because of the structure of

9   the takeover scheme to separate the two.  And so, it it's

10  disingenuous, I think, for anyone to say that we're just trying

11  to go find another form.  I think that Your Honor and I both

12  know a bankruptcy judgment, bankruptcy practitioner, that if

13  you have core and noncore issues, we have to send that up

14  because it will end up with the bankruptcy administration

15  problem.  So it was not our intent to go look for another

16  form.  That's completely not the case.

17        THE COURT:  Okay.  And that is -- let's see,

18  associated case is -- where's it at?  Okay, that's 23-57?

19        MR. ZAHRALDDIN:  Yes, ma'am.

20        THE COURT:  Okay. Again --

21        MR. ZAHRALDDIN:  I believe that's correct.

22        THE COURT:  Oh, let's see. Barring -- fraudulent

23  transfer or recovery of money, validity, party, extent of lien

24  and injunctive relief.  That's what the little nature of --

25  says, okay.  And you file a withdrawal of the reference on the

1  first.  And apparently it's been assigned to someone in the --
2  the Judge Marsden.
3            MR. ZAHRALDDIN:  Yes.  It's with Judge Marsden.
4            THE COURT:  Okay.  Again, I mean, I don't look at
5  them unless I -- see, I don't look at everything that's filed.
6  There's no reason I need to unless the parties have some issues
7  that I need to address, okay.  And apparently there's a
8  stipulation by the parties for the deadline to respond that was
9  filed on --
10           MR. ZAHRALDDIN:  Yes, Your Honor.  Yeah, I've
11 extended until the 20th.  You know, unfortunately, Mr. Rajan,
12 because of his condition, is susceptible to any sort of virus
13 or flu.  He has a little bit of an immune deficiency issue
14 right now.  And when he caught the flu last week, he was taken
15 into the hospital and his doctor safely took away his phone and
16 his laptop and said you need to really rest up and we have to
17 observe you.  So I wasn't -- he wasn't released from the
18 hospital until late Saturday, I think maybe even Sunday
19 morning.  That's the first time I got some messages back from
20 him.
21           That's why I really was kind of in a holding pattern
22 with some of these things.  But I did indicate to all the
23 parties who asked for an extension that I would grant it for
24 the 20th.  I needed to talk to Mr. Rajan.  I'm going to talk to
25 him again today and then figure out whether we give a further

1  extension on the answer deadline.

2          THE COURT:  Well, let's talk about the deadlines here
3  because that sort was in the outside issue.  Mr. Caponi is
4  asking that we have firm dates for completing the trial, at
5  least with respect to the motion for relief -- the other
6  issues.  And if I recall, the motion to dismiss -- well,
7  there's a couple issues.  I don't think the authority issue --
8  they're for Stream if I recall correctly, but only the issue of
9  who's the board of directors for Technovative.  And that's
10 really sort of what is one of the driving factors with respect
11 to that bankruptcy.

12         With respect to Stream, that's a different issue.  I
13 don't think it's the authority issue.  It is in good faith and
14 all of those other related issues.  So I understand that, you
15 know, we need to have the motion for relief to go back to the
16 chancery court.  That issue needs to be resolved.  That motion
17 needs to be resolved sooner rather than later.

18         Now, I think the parties had proposed that given the
19 urgency of completing this, that it needs a, if I recall from
20 Mr. Caponi, a letter that they were willing to do this by Zoom.
21 And that should, absent some restrictions by Mr. Rajan's
22 doctor, should at least address some issues about his immune,
23 you know, if he's immune compromise, whether, you know, this
24 could be done from his home via Zoom as opposed to coming into
25 court.  With that being said, the dates we presently have, I

1  think, are the 23rd and the 25th .  And let me pull my calendar
2  up because for whatever reason --
3           MR. CAPONI:  I believe it's the 22nd, Your Honor, and
4  the 25th, which is a Friday and a Monday.
5           THE CLERK:  That's correct.  And it's the 22nd --
6           THE COURT:  Why do I have the 23rd?  That's a
7  Saturday.
8           THE CLERK:  It's a Saturday, right.
9           THE COURT:  I have no clue.
10          THE CLERK:  The only problem --
11          THE COURT:  I'm not -- I'm sorry, what?
12          THE CLERK:  Judge, the only problem with the 24th
13 begins Yom Kippur sundown.  So I didn't know if the parties
14 were available on the 25th.
15          THE COURT:  Well, what days do we have them scheduled
16 for right now?
17          THE CLERK:  I have them definitely scheduled for the
18 22nd, Judge.
19          THE COURT:  That's it?  I thought we had --
20          THE CLERK:  That --
21          THE COURT:  I don't know I thought we had two days.
22          THE CLERK:  Well, I did say -- .
23          MR. CAPONI:  Well, I thought we had -- Your Honor, I
24 think you were right.  I think you had the 25th originally, but
25 then it was brought up that Yom Kippur was pretty close to that

1  day.  And then for some reason I thought there was like a 28th

2  or something, but I could be wrong about that.

3         THE COURT:  I think at least from my part, there was

4  -- for me, I was a little confused about -- and I suffered a

5  severe concussion.  I still have some lingering effects, so

6  bear with me.  I, for whatever reason, had different dates.  I

7  think it may have been that we talked about these different

8  dates.  And I wrote down in my notes, just to keep things

9  straight, that I thought -- I don't know why I thought it was

10 the 20 -- we had thought the 23rd, but that may have been

11 something else we were talking about, Irene, not even in

12 September.

13        But right now we only have the 22nd.  What other

14 dates do the parties have because we're going to need -- I

15 would think based on what I recall was that we needed at least

16 two full days to complete Mr. Rajan's testimony, to hear the

17 one witness from Rembrandt, and for closing argument.  That

18 that should -- two full days should get us to there, to that

19 end.  So we're doing the 22nd.  Have the parties discussed

20 another date that we would -- a full day that we could have?

21        Well one, whether we can do this by Zoom.  And two,

22 what is the second date that the parties -- that would work for

23 everybody?

24        MR. DEMARCO:  Your Honor, we were not aware of a

25 second date.  Yeah, other than the 22nd, possibly the 25th, we

1  were not provided any other dates to consider that I'm aware
2  of.
3         THE COURT:  Okay.  All right.  Well, does the 25th
4  work or is that going to be an issue?
5         MR. DEMARCO:  That works for me, Your Honor.
6         THE COURT:  Mr. Zahralddin --
7         MR. ZAHRALDDIN:  I thought that was a -- when is Yom
8  Kippur?  I'm not practicing, but we have folks on our team that
9  are.
10        THE CLERK:  Counsel, this is Ilene.  It's at sundown
11 on the 24th, the Sunday it beings.
12        MR. ZAHRALDDIN:  Right.
13        THE COURT:  Well, it's usually on my calendar.
14        MR. ZAHRALDDIN:  That means it's the 24th to the
15 25th, right?  So it knocks out the 25th for Mr. Fisher
16 certainly and perhaps for Mr. David.  I'm not -- I just know
17 Mr. Fisher is the one who noticed it, and I believe he is
18 practicing, so.  That's why the 25th was an issue.
19        MR. CAPONI:  Your Honor, I don't think neither Vince
20 -- Mr. Vincent Alexander has been doing all the talking and I
21 expect he's going to handle everything, if not practicing.
22 Neither am I.
23        MR. ZAHRALDDIN:  I understand that, Your Honor.
24 Whenever there's a religious holiday, we try to respect that.
25 But that's been part of that discussion before, so I'm open to

1  it.  We'll try to work with that if it's an issue if there's
2  not a lawyer.
3              THE COURT:  Well, all right.  Let's schedule the
4  second day for the 25th of September at 10:30.  You know what,
5  let me check my calendar.  I don't see anything.  You know
6  again, we've been having some of our own issues in terms of
7  making sure our calendar is coordinated.  Hold on.  Okay, I
8  have the 22nd.  And on my calendar is yes, Yom Kippur.  All
9  right.  And I don't have anything -- yeah, that works for me.
10 The 25th is fine if that works for everybody.
11             MR. ZAHRALDDIN:  We'll work around it, Your Honor.
12             THE COURT:  All right.  We will need to finish
13 everything by the 25th.  The only thing is we may have to take
14 a break between like 2:45.  That's a Monday, 2:45 to maybe
15 3:30.  Let's plan for -- I may have to make some arrangements
16 around there, but let's plan for that being the break period on
17 both the Friday the 22nd and Monday the 25th, 2:45 to about
18 3:30.  I will need -- we'll take that as lunch.
19             MR. ZAHRALDDIN:  And we can do that live.  Mr.
20 Rajan's issue is not necessarily, at least at this point, that
21 he can't make it in.  It's just because of his medication and
22 because of his procedures, he wanted to set those up so that he
23 was rested, clear, lucid, and not suffering from side effects
24 from the medication.  So there's not an issue about doing it in
25 person.  I just think they prefer to do that in person as

1  opposed to Zoom.

2           THE COURT:  Mr. Caponi?

3           MR. CAPONI:  That's fine, Your Honor.  As long as we

4  have firm dates to end this and that's what I'm looking for.

5           THE COURT:  All right.  Well, what I would suggest is

6  the parties try -- oh wait.  What about -- anybody else want to

7  have any comments that they want to put on the record with

8  respect to timing?  And I think that's the primary issue is

9  timing and getting the hearing on the matters concluded.

10 Anybody else have any thoughts or anything else they want to

11 put on the record?

12          MR. DEMARCO:  Your Honor, this Andrew DeMarco from

13 Rembrandt.  I just wanted to ensure that, you know, during this

14 two day time Your Honor is granting Rembrandt the right to have

15 its rebuttal witness.  I just want to ensure that because

16 Rembrandt can't control how the other two parties proceed with

17 their cases, that just so long as we're allowed to put on our

18 witness.  I just want to make sure that that is included in the

19 calculation, which I believe it has been based on what I've

20 heard so far.  But that's just the one thing I want to put on

21 the record.

22          THE COURT:  And that's what I think the parties need

23 to figure out.  They want this done and completed by the end of

24 the day on the 25th, you're going to have to streamline what

25 you do and try to allocate some time, or I may have to go and

1  say, okay.  You get this much time.  You get this, and you get
2  that.  But I don't know without the parties telling me.  For
3  instance, I have no idea how long Rembrandt needs the time for
4  its witness would take.  So what I would ask the parties to do
5  is this.  To discuss among themselves how much time you think,
6  or you tell me and then I'll figure it out.  And at the
7  beginning say you get this much time.  You get this much time.
8  And you get this much time.  And if it turns out that that
9  doesn't work, I mean, I don't know what else to say.
10          MR. CAPONI:  Your Honor, this is Steve Caponi.  Now
11 that we know what the dates are, I will convene with all
12 counsel and I'm sure that we'll be able to work it out now that
13 we know how big our fishbowl is.  We'll allocate the time.
14          THE COURT:  Right.
15          MR. CAPONI:  And if there's a disagreement, we will
16 let you know.  Well, we should be able to figure it out.
17          MR. DEMARCO:  I agree with Mr. Caponi.  We'll figure
18 that part out.
19          THE COURT:  Okay.  And with that --
20          MR. ZAHRALDDIN:  Hopefully, Mr. DeMarco too since he
21 obviously has a witness to deal with.
22          THE COURT:  Okay.  And the 240 -- 2:45 to 3:30, that
23 was -- said that that was the time because I thought we were
24 doing it by Zoom.  So we may not -- if we're in court, we may
25 not need that specific time because I will make other

1  arrangements and not have to leave during that time period.
2          Okay.  Anything else that anybody else thinks that I
3  need to hear with respect to these matters?
4          MR. ZAHRALDDIN:  No, Your Honor.  Not from the
5  Debtor.
6          THE COURT:  That was the status for today.  I'm sure
7  there are lots of other things, but only on the status for
8  today.
9          MR. ZAHRALDDIN:  Yes, ma'am.  That's all for the
10 Debtor unless Mr. Caponi has another issue to discuss for this.
11         MR. CAPONI:  No, Your Honor.  I think we've covered
12 everything and appreciate your time and hope you're feeling
13 better.  I know that concussion is a tough thing.  Thank you.
14         THE COURT:  Thanks.  Have a good day.  That concludes
15 the matters that are scheduled before the Court today.  Court
16 is adjourned until tomorrow at 10:30.  Thank you.
17     [Proceedings adjourned at 11:01 a.m.]

C E R T I F I C A T E

      I hereby certify that the foregoing is a true and correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*John Buckley*
John Buckley, CET-623
Digital Court Proofreader