# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>STREAM TV NETWORKS, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 23-10763 (MDC) |
| In re:<br><br>TECHNOVATIVE MEDIA, INC.,<br><br>Debtor. | Case No. 23-10764 (MDC) |

### SHADRON L. STASTNEY'S OBJECTION TO DEBTORS' MOTION TO COMPEL COMPLIANCE WITH AND FOR RELIEF AND REMEDIES UNDER RULE 2019

Shadron L. Stastney, in his individual capacity, by and through his undersigned counsel, files this objection (the "Objection") to Debtor's Motion to Compel Compliance with and for Relief and Remedies under Rule 2019 [Docket No. 447] (the "2019 Motion").

## DISCUSSION

### A. Stream's Efforts to Undermine the Judicial Process

1. In courts throughout the state and federal judicial systems of both Delaware and Pennsylvania, Stream and the Rajan Brothers who control it, have employed every scheme and artifice available to it to distract and neutralize the judges presiding over this dispute and stave off adjudications that will finally provide relief to its secured creditors and end its vexatious litigation.

2. After Vice Chancellor Laster issued a preliminary injunction upholding the Omnibus Agreement, the Rajans caused Stream to file for bankruptcy, which was later dismissed as having been brought in bad faith. Just prior to Vice Chancellor Laster issuing a permanent injunction, Stream recruited a Stream creditor to attempt a second forced, bad faith, bankruptcy.

When that gambit failed, the Rajans attempted to relitigate Vice Chancellor Laster's findings in separate, identical *pro se* litigations in Pennsylvania.

3.  After the Delaware Supreme Court vacated Vice Chancellor Laster's permanent injunction order and remanded that litigation back to the Court of Chancery, and with their Pennsylvania actions on the verge of dismissal, Stream then commenced a virtually identical litigation in the District of Delaware, looking for a third bite at the apple. With Hawk and SLS pursuing their creditor rights before Vice Chancellor Laster, Stream repeatedly contended that the District of Delaware should instead resolve the entire dispute among the Parties, starting again from the beginning. When Vice Chancellor Laster made clear he was retaining jurisdiction over the dispute and with his ruling likely upholding the secured creditors' rights imminent, Stream entered a third bankruptcy, blocking Vice Chancellor Laster from issuing a final ruling.

4.  For months, Stream and its creditors have been engaged in litigation in this Court over the propriety of Stream's bankruptcy filing. Then, just as evidence closed and this Court became positioned to rule upon a pending motion to dismiss the bankruptcy or appoint a trustee (the "Hawk Motion"), Stream filed another duplicate adversary complaint (the "Adversary Action") arguing the same conspiracy claims precluded by Vice Chancellor Laster's prior rulings. Fearful that this Court might finally rule upon the Hawk Motion, Stream then attempted to withdraw the Adversary Action to yet another Court and yet another Judge in the Eastern District of Pennsylvania by filing a motion to withdraw bankruptcy reference (the "Withdrawal Motion") on September 1, 2023.

5.  Stream then attempted to coerce the District Court into assuming jurisdiction over the Adversary Action by filing a motion for a temporary restraining order ("TRO") in the District Court on September 28, 2023. The District court *sua sponte* denied the TRO pointing out

2

jurisdiction over the Adversary Action was still with this Court. With the District Court having declined to rule on the Withdrawal Motion, Stream has opted to bombard this Court with additional baseless litigation to prevent its resolution of the Hawk Motion.

6. Nearly seven weeks ago, Stream refiled its motion for a TRO here, kicking-off yet another round of briefing and evidentiary hearings on an alleged "emergency" requiring injunctive relief. All things must come to an end, however, and evidence will soon close on that latest flurry of litigation.

7. Unable to resort to another bankruptcy to suspend Court action on dispositive motions and with the District Court not intervening to assume then restart this litigation once again, Stream is left to resort to a farfetched effort to wipe out all filings and claims made against it both in these bankruptcy proceedings and in the Adversary Action.

### B. The 2019 Motion

8. Invoking Fed. R. Bank. P. 2019, Stream vaguely argues that the collection of Defendants it sued in the Adversary Action are operating as an entity, group, or committee "acting in concert to advance their common interests" in these bankruptcy proceedings without having disclosed pertinent facts concerning their organization.

9. As a consequence of this purported disclosure violation, Stream seeks never-before-seen sanctions including corrective disclosures; expansive discovery; striking "from the chapter 11 proceeding docket any and all of the Uncompliant Parties' pleadings, papers, and motions in their entirety"; striking "from the adversary proceeding docket any and all of the Uncompliant Parties pleadings, papers, and motions relating to the Debtors' Motion for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction in their entirety"; "attorneys' fees, costs, and expenses"; prohibitions against the Defendants from making filings in

these bankruptcy proceedings or the Adversary Action; and entry of default judgment against the Defendants in the Adversary Action.

10. That Stream has failed to proffer either a legal or factual basis for the astonishing relief it seeks goes without saying. As is Stream's tendency, the Motion instead relies upon half-truths and outright fabrications, conclusory statements, vague generalities and a dearth of supporting case law. Indeed, Stream offers no legal analysis of the claimed violation of Rule 2019 beyond multiple repetitions of the Rule itself and its own spin on the Rule's interpretation.

### C. Stream Asserts No Right to Relief against Mr. Stastney

11. As to Mr. Stastney in his personal capacity, Rule 2019 does not apply.

12. Rule 2019 provides in pertinent part:

> In a chapter 9 or 11 case, a verified statement setting forth the information specified in subdivision (c) of this rule shall be filed by every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another.

Fed. R. Bank. P. 2019(b).

13. Rule 2019 "requires certain disclosures to be made by both statutory and non-statutory committees." *In re Wash. Prime Grp., Inc.*, No. 21-31948, 2022 Bankr. LEXIS 2952, at *8 (S.D. Tex. Bank. Oct. 18, 2022). The make-up of such committees must be disclosed where they "represent" "multiple creditors or equity holders" in the bankruptcy proceeding. Fed. R. Bank. P. 2019(b)(1). In turn, "represent" "means to take a position before the court or to solicit votes regarding the confirmation of a plan on behalf of another."

14. "The purpose of Rule 2019 is to ensure that plans of reorganization are negotiated and voted upon by people who are authorized to act on behalf of the real parties in interest." *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 559 (Bankr. D. Del. 2005). Mr. Stastney has not entered

4

into these bankruptcy proceedings to take any position whatsoever in his personal capacity. Nor will Mr. Stastney as an individual have any influence upon any potential plan of reorganization.

15. Instead, Mr. Stastney has appeared as a witness on behalf of SeeCubic, Inc. and SLS Holdings VI, LLC. However, Rule 2019 expressly exempts from its requirements individuals acting as "affiliates or insiders" of a creditor. Thus, Rule 2019 is inapplicable to Mr. Stastney.

16. Of course, Stream's purpose with the 2019 Motion and this bankruptcy generally is not to in good faith reorganize Stream; it is to frustrate the efforts of Stream's secured creditors to execute on the collateral underlying their defaulted notes. Stream makes no effort to define the alleged "committee" "acting in concert" in these bankruptcy proceedings. Instead, Stream relies on its own efforts to expand and extend this litigation through the Adversary Action, merges the litigation of the Adversary Action with litigation of these bankruptcy cases and claims that parallel defenses in the Adversary Action constitute coordinated action in these bankruptcies.

17. Effectively, Stream is complaining that because it chose to bring a separate action against Mr. Stastney and others, the Defendants' actions in response, in crafting their defenses in that Action prove they are acting as an *ad hoc* committee in these bankruptcy proceedings. Predictably, Stream has not, because it cannot, conjure any legal basis for merging these separate actions for purposes of Rule 2019.

18. To be clear, Mr. Stastney has appeared personally in the Adversary Action and has taken positions in the Adversary Action – *to wit*, that it is a frivolous and bad faith effort to undermine the rights of Stream's secured creditors. Mr. Stastney has staked these positions independently of the other Adversary Action Defendants and through independent counsel. That the other Defendants may or do also independently contend that the Adversary Action is frivolous and was brought in bad faith does not render the defendants a "committee" within the meaning of

Rule 2019[1] nor can those defenses in the Adversary Action constitute positions taken in these bankruptcy proceedings. *See In re Ditech Holding Corp.*, 2023 Bankr. LEXIS 1940, at *15-16 (distinguishing between rules governing bankruptcy proceedings and rules governing adversary proceedings); *LTL Mgmt., LLC v. New Mexico*, 645 B.R. 59, 74 (D.N.J. Bank. 2022) (distinguishing between parties' membership in ad hoc committee in the bankruptcy proceeding from status as defendant in adversary action).

19. In short, Stream's overriding tactic has been and continues to be to exploit the Courts to sow chaos, confuse issues, distract the Court, and frustrate the rights of its creditors.

## CONCLUSION

For the reasons set forth above, Mr. Stastney respectfully requests that the 2019 Motion be denied.

Dated: November 13, 2023                **BALLARD SPAHR LLP**

/s/ Margaret A. Vesper
Tobey M. Daluz (No. 60685)
Terence M. Grugan (No. 307211)
Emilia McKee Vassallo (No. 318428)
Margaret A. Vesper (No. 329793)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
E-mail: daluzt@ballardspahr.com
    grugant@ballardspahr.com
    mckeevassalloe@ballardspahr.com
    vesperm@ballardspahr.com

*Counsel for Defendant Shadron L. Stastney*

---

[1] Indeed, Adversary Proceedings are governed by Part VII of the Federal Rules of Bankruptcy Procedure, which incorporates in part the Federal Rules of Civil Procedure.