UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>STREAM TV NETWORKS, INC.,[1]<br><br>Debtor,<br><br>and<br><br>IN RE:<br><br>TECHNOVATIVE MEDIA, INC.,<br><br>Debtor. | Chapter 11<br><br>CASE NO.: 23-10763 MDC<br><br><br>Chapter 11<br><br>CASE NO.: 23-10764 MDC<br><br>(Jointly Administered) |

HAWK INVESTMENT HOLDINGS LTD.'S OBJECTION
TO LOCAL RULE 2016-5 SECOND REQUEST FOR PAYMENT
ON ACCOUNT FOR COMPENSATION AND REIMBURSEMENT OF
EXPENSES OF LEWIS BRISBOIS BISGAARD & SMITH, LLP, COUNSEL
FOR THE DEBTORS, FOR THE PERIOD MAY 1, 2023 THROUGH MAY 31, 2023

Hawk Investment Holdings, Ltd. ("Hawk"), as Collateral Agent for the secured noteholders of SeeCubic, Inc. ("SeeCubic"), a secured creditor of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative" and, together with Stream, the "Debtors") in the above-captioned chapter 11 cases (together, the "Chapter 11 Cases"), by and through its undersigned counsel, files this objection (this "Second Objection") to the *Local Rule 2016-5 Second Request for Payment on Account for Compensation and Reimbursement of Expenses of Lewis Brisbois Bisgaard & Smith, LLP, Counsel for the Debtors, for the Period May 1, 2023 Through May 31, 2023* [ECF No. 461] (the "Second Fee Application").

---

[1] The Debtors, along with the last four digits of the Debtors' federal tax identification numbers are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

In the Second Fee Application, the Debtors' counsel, Lewis Brisbois Bisgaard & Smith, LLC (the "Firm" or "LBBS"), requests interim[2] approval of LBBS's fees in the amount of $214,386.50 (the "Fees") and $102.57 for expenses (the "Expenses") incurred during the period from May 1, 2023 to May 31, 2023 (the "Compensating Period"). The Application further requests authority for the Debtors to pay the Firm a total of $171,611.77 for the Compensation Period (the "Requested Payment"), including $171,509.20 (*i.e.*, 80% of the Fees incurred) and $102.57 (100% of the Expenses incurred). In support of this Second Objection, Hawk respectfully represents as follows:

## **OBJECTION**

1.　On September 12, 2023, the Debtor filed *Local Rule 2016-5 First Request for Payment on Account for Compensation and Reimbursement of Expenses of Lewis Brisbois Bisgaard & Smith, LLP, Counsel for the Debtors, for the Period March 15, 2023 through April 30, 2023* [ECF No. 409] (the "First Fee Application"). On September 26, 2023, Hawk filed an objection to the First Fee Application [ECF No. 424] (the "First Objection"),[3] objecting to, among other things, the Debtors' failure to disclose the source of the requested payment and the Firm's activities primarily benefitting the Debtors' affiliate, VSI.

2.　On October 29, 2023, the Debtors filed a Response to the First Objection [ECF No. 446] (the "Response"), wherein they explained that VSI would be providing the funding for the Debtors to pay the Firm's fees pursuant to an unauthorized financing arrangement that the Debtors had previously failed to disclose as the source of the Firm's compensation.

---

[2] The Firm failed to provide a proposed order with the Second Fee Application. Hawk requests LBBS also file the proposed order with time for parties in interest to review and analyze the proposed language prior to its entry and reserves its rights to supplement this Second Objection pending review of the proposed order.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Objection.

2

3. Hawk hereby incorporates in its entirety its First Objection as an objection to the Second Fee Application for the same reasons set forth above, namely that the Firm's activities appear to primarily benefit the Debtors' affiliate, VSI, instead of Debtors. Additionally, Hawk argues that the Response does not rectify the concerns raised in the First Objection and continues the Firm's pattern of downplaying inaccuracies and lack of candor only after being caught in the act.

4. The Third Circuit has required that "[u]nder the rule, all facts that *may* be pertinent to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate must be disclosed." *In re Vascular Access Cntrs., L.P.*, 613 B.R. 613, 625 (Bankr. E.D. Pa. 2020) (quoting *In re Jade Mgmt. Servs.*, 386 F. App'x 145, 150 (3d Cir. 2010) (internal quotation marks and citations omitted)). These disclosures are pertinent to fee applications with respect to potential financing and compensation arrangements. "A fee applicant must disclose the 'precise nature of the fee arrangement' and disclose any 'potential for a conflict of interest.'" *In re Gabbidon Builders LLC*, No. 20-30845, 2021 WL 3610344, at *3 (Bankr. W.D.N.C. Aug. 13, 2021) (quoting *In re Glenn Elec. Sales Corp.*, 99 B.R. 596, 600 (D.N.J. 1988)).

5. Courts have found counsel's "failure to disclose forthrightly the *source* of its compensation should warrant denial of all compensation." *See In re Crimson Invs., N.V.*, 109 B.R. 397, 402 (Bankr. D. Ariz. 1989) (collecting cases finding denial of compensation for failure to disclose fee arrangements). Denial is justified, because, as one court explained, "by receiving compensation from Debtor's creditors, Debtor's Counsel had, and has, a pecuniary interest materially adverse to the interest of the secured creditors and the interests of the estate—a conflict of interest that requires a denial of all compensation to Debtor's Counsel." *Id.*

6. Rejection of the Second Fee Application in its entirety is warranted because of the Firm's failure to disclose any fee or compensation arrangement with VSI in the Second Fee

3

Application. In their Retention Application,[4] the Firm represented that "LBBS has no agreement in place with any third party for the payment of its fees incurred in these bankruptcy cases." *See Supplemental Declaration of Rafael X. Zahralddin-Aravena in Support of Debtors' Application to Employ Lewis Brisbois Bisgaard & Smith LLP as Counsel for the Debtors* ¶ 8 [ECF No. 180]. This was not true (unless the representations in the Response were false), yet the Firm has not corrected it. The terms of the Firm's unauthorized financing arrangement with Debtors have still not been provided to this Court or creditors, and the Firm only informed the Court and creditors of the unauthorized financing arrangement after Hawk forced the Debtors' hand by filing the First Objection. That failure to disclose, by itself, warrants denial of the Second Fee Application. *See In re Crimson Invs.*, 109 B.R. at 402; *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236-38 (Bankr. E.D. Cal. 1988) ("Defective disclosure is not a minor matter. It goes to the heart of the integrity of the bankruptcy system….").

       7.    Indeed*, Debtors' own lead counsel* is aware that defective disclosure in a retention application is grounds for disqualification, even if subsequent disclosures are made. *In re Universal Building Products*, 486 B.R. 650, 664 (Bankr. D. Del. 2010) ("The Court agrees with the UST, however, that the subsequent disclosures by AF [Arent Fox LLP] and EG [Elliott Greenleaf] (filed only after concerns about them were expressed by the Debtors and the UST and after discovery revealed what had occurred) were not enough to cure the original."). Mr. Zahralddin, while counsel at a prior firm, submitted an unsecured creditors committee retention application that was denied because it "fail[ed] to provide complete and accurate disclosure at the outset" of connections with creditors and individuals serving on the committee. *Id.*; *see also id.* at 652 (noting "Rafael X. Zahralddin-Aravena, Esquire … Elliot Greenleaf …

---

[4] The "Retention Application" is *Application Pursuant to 11 U.S.C. § 327(a) of the Bankruptcy Code for Authority to Employ Lewis Brisbois Bisgaard & Smith LLP as Counsel for the Debtors* [ECF No. 70].

Proposed Co-Counsel for the Official Committee of Unsecured Creditors."). The unauthorized financing arrangement that the Firm withheld from the Retention Application, First Fee Application, and Second Fee Application is even more troubling than the fact that the retention application in *In re Universal Building Products* withheld the efforts of Mr. Zahralddin's law firm to solicit proxies from creditors to act at a committee formation meeting.

8. Perhaps even more disconcerting is that the undisclosed funding arrangement also creates a direct conflict of interest for LBBS—especially given the Debtors' proposals to have VSI serve as plan sponsor and operate as sole distributor of the Debtors' future products (if any). *In re Harris Agency, LLC*, 468 B.R. 702, 710 (Bankr. E.D. Pa. 2010) (disqualifying debtor's counsel due to an actual conflict of interest arising from a creditor of the debtor paying attorney's fees, and where such creditor was a "proposed contributor to the Plan" and would be "a 50% owner of the reorganized debtor" thereafter). The Firm is conflicted between serving the interests of VSI, and serving the interests of Debtors. Debtors' decision not to disclose its presumed compensation or fee arrangement with VSI as part of its Second Fee Application is deeply troubling, as it prevents the Court from determining how deeply the Firm's conflicts of interest run, and continues a pattern of nondisclosure by the Debtors' concerning the Debtors' relationship with VSI. Indeed, the time entries noted in the First and Second Fee Applications suggest that the true client of the Firm is Mathu Rajan, whether acting through VSI or Debtors, and not solely the Debtors.

9. In the Response, the Debtors have argued that *Harris Agency* is inapposite because it related to "direct payments" made by a third party to debtors' counsel without disclosure thereof, whereas the Debtors have proposed VSI "financing" the Firm's fees as part of the RSA by purchasing equity in the Debtors. *See* Response, at ¶ 20. Nevertheless, the RSA has not been approved by this Court; the Debtors did not mention the unapproved RSA as the basis for the financing to pay the Firm's fees in the Retention Application, the First Fee Application, or the

5

Second Fee Application; and such financing is by *equity* infusions, which is tantamount to a direct payment from VSI to the Firm. *See In re Lotus Props LP*, 200 B.R. 388, 395 (Bankr. C.D. Cal. 1996) ("In practicality, a capital contribution is merely an end-run around making a direct payment of fees to counsel by an insider."). VSI retains the sole right to "cut off the spigot" at any moment if the Firm does not do exactly as it wishes, rendering VSI the actual "master" of LBBS and directly conflicted with the best interests of the Debtors' creditors and their estates.

10.    Hawk expects the Debtors to have a similar response to this Objection as to the First Objection—asserting the Debtors had made these disclosures previously (relying on previous vague statements) and downplaying the impact of any omissions from such disclosures. This is a serious matter, however, and the Debtors (through LBBS) have an established record of refusing to make full disclosure until they have been forced to do so. The record in these Chapter 11 Cases is full of inconsistencies, half-truths, and complete lies propagated by the Debtors, including conflicting testimony from Mr. Park and Mr. Rajan; admittedly false information included in schedules, declarations, and monthly operating reports (that have not been corrected); and fabricating the existence of various documents filed with the Court. *See generally Hawk Investment Holdings Ltd.'s Post-Hearing Brief in Support of (1) Motion for Relief from Stay and (2) Motion to Dismiss, Convert, or Appoint a Chapter 11 Trustee* [ECF No. 431].

11.    Only a few days ago, Mr. Zahralddin admitted on the record that declarations and reports filed under penalty of perjury *remain* incorrect over ten months into these cases. In Debtors' Employee Motion [ECF No. 134], Debtors asserted that Stream is an operating company that needs to rehire employees from VSI in order to continue their alleged operations. When Hawk's counsel, in opposition to the Debtors' Employee Motion, argued that Mr. Rajan declared in the Debtors' First Day Declaration that Stream was a holding company with no employees, Mr. Zahralddin nakedly admitted:

6

> [A]s Mr. Caponi brings up often, this was done on the eve of trial.[5] We received this file more -- no more than ten days beforehand with -- even though I'd been at a prior firm, we were involved for a few weeks, I had no knowledge, nor did anyone at my firm of the voluminous activity that occurred below. We knew there was an emergency.[6] We filed what we filed, then we struggled and put together books and records -- schedules and statements without books and records.

*See* November 15, 2023 Hearing Transcript (Zahralddin), at 43:4–16.[7] Mr. Zahralddin thus admits to one of two sins, either that (i) the Firm was completely unaware of Stream's operations, allowed incorrect MORs and a First Day Declaration to be filed stating that Stream had no employees and no operations, and failed to correct those documents for almost eight months, or (ii) the MORs and First Day Declaration are correct, but the Firm has failed to correct Mr. Rajan's false testimony when he insisted that Stream has operations and numerous employees.[8] *See, e.g.*, September 25 Transcript [ECF No. 427] (Rajan), at 18:7–9; see also August 15 Transcript [ECF No. 367] (Rajan), at 127:2–7 (testimony of Mathu Rajan claiming that Debtors have approximately 50 employees that are working in Silicon Valley and Asia). Either scenario confirms, however, that the Retention Application and First and Second Fee Applications are not the first time that the Firm has failed to be candid with the Court.

12. Debtors also often claim that they "are in the process" of updating, amending, or correcting incorrect and false statements, but, once again, any such correction only comes after

---

[5] By "the trial," Mr. Zahralddin was presumably referring to the dispositive trial scheduled in the 225 Action, which the Debtors have repeatedly denied being the impetus for the commencement of these Chapter 11 Cases (or risk having the cases dismissed as a bad faith litigation tactic). It appears, however, they are now admitting that the trial in the 225 Action was, in fact, the impetus for the commencement of these cases.

[6] Again, the "emergency" that Mr. Zahralddin appears to have referred to was the Debtors' desire to thwart the Delaware Court of Chancery's ability to determine the merits of the 225 Action.

[7] Mr. Zahralddin's statements also ignore the fact that Mr. Rajan was the declarant for the First Day Declaration, and though LBBS may have been under pressure from the Debtors to thwart the scheduled trial in the 225 Action by the filing, Mr. Rajan should have been fully aware of the status of the Debtors' prior operations (or lack thereof).

[8] Once again, Mr. Rajan's testimony at trial apparently conflicted directly with his own statements in the First Day Declaration.

7

Hawk or another party in interest files an objection or asks a question. *This is not how disclosure works under the Bankruptcy Code and Rules. See Vascular Access*, 613 B.R. at 625 (noting disclosure obligations are robust and that counsel must disclose all facts that "may be pertinent" to assessing conflicts of interest). The Debtors are obligated to make these types of relevant disclosures proactively so the Court and parties in interest can assess any potential risks of conflicts of interests. Because they have failed to do so, the Second Fee Application should be denied.

## **RESERVATION OF RIGHTS**

13. The issues raised by Hawk in this Objection and the First Objection run deeper than merely the fee applications—the issues strike directly at the heart of the Firm's qualifications to serve as counsel in these Chapter 11 Cases, given the lack of candor demonstrated to date and the specter of a conflict of interest that haunts such lack of candor. As such, even if the Court decides that LBBS is entitled to payment on the First and Second Fee Applications, Hawk asserts that it has raised sufficient questions as to the Firm's disinterestedness and potential conflicts of interest to warrant further investigation and discovery into these matters.

14. Hawk reserves all rights to supplement this Second Objection or lodge any further objections as it deems fit upon the disclosure or discovery (or not) of additional information, subsequent interim requests for compensation, or the final request for compensation. Nothing herein shall be deemed a waiver of Hawk's right to object to the proposed final award of compensation to LBBS for any reason, and Hawk expressly reserves its full rights to have any amounts paid to LBBS on an interim basis disgorged if its investigation establishes the existence of the conflicts of interest that the record so far suggests.

## **CONCLUSION**

Accordingly, Hawk respectfully requests that the Second Fee Application be denied in its entirety and that the Court grant any other and further relief as it may deem just and appropriate.

Dated:  November 24, 2023

**K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi, Esq. (No. 91881)
Megan E. O'Connor, Esq.
K&L Gates LLP
600 King Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 416-7000
Facsimile: (302) 416-7020
Email:  steven.caponi@klgates.com
         megan.oconnor@klgates.com


Margaret R. Westbrook, Esq.
Aaron S. Rothman, Esq.
Jonathan N. Edel, Esq.
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, NC 28202
Telephone:  (704) 331-7400
Email:  margaret.westbrook@klgates.com
         aaron.rothman@klgates.com
         jon.edel@klgates.com

Thomas A. Warns
K&L Gates LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 536-4009
Email: tom.warns@klgates.com


*Attorneys for Hawk Investment Holdings Ltd.*

9

**CERTIFICATE OF SERVICE**

I, Steven L. Caponi, certify that on November 24, 2023 I caused a copy of the forgoing *Hawk Investment Holdings Ltd.'s Objection to Local Rule 2016-5 Second Request for Payment on Account for Compensation and Reimbursement of Expenses of Lewis Brisbois Bisgaard & Smith, LLP, Counsel for the Debtors, for the Period May 1, 2023 Through May 31, 2023* to be served on those persons receiving notice through CM/ECF.

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 91881)