# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re: | Chapter 11 |
| Stream TV Networks, Inc.,[1] | Bky. No. 23-10763 (MDC) |
| Debtor. | |

|  |  |
|---|---|
| In re: | Chapter 11 |
| Technovative Media, Inc., | Bky. No. 23-10764 (MDC) |
| Debtor. | (Jointly Administered) |

**DEBTORS' BRIEF IN SUPPORT OF FIRST REQUEST FOR PAYMENT ON ACCOUNT FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF LEWIS BRISBOIS BISGAARD & SMITH, LLP, COUNSEL FOR THE DEBTORS, FOR THE PERIOD MARCH 15, 2023 THROUGH APRIL 30, 2023**

Dated:  December 7, 2023

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Rafael X. Zahralddin-Aravena (PA Bar No. 71510)
550 E. Swedesford Road, Suite 270
Wayne, PA 19087
Telephone: (302) 985-6000
Facsimile: (302) 985-6001
Email: Rafael.Zahralddin@lewisbrisbois.com

Keith Kodosky *(pro hac vice)*
600 Peachtree Street NE, Suite 4700
Atlanta, GA 30308
Telephone: (404) 991-2183
Facsimile: (404) 467-8845
Email: Keith.Kodosky@lewisbrisbois.com

-and-

Kevin Shaw *(pro hac vice)*
500 Delaware Avenue, Suite 700

---

[1]     The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015).  The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

-and-

Bennett G. Fisher *(pro hac vice)*
24 Greenway Plaza #1400
Houston, TX 77046
Telephone: (346) 241-4095
Facsimile: (713) 759-6830
Email: Bennett.Fisher@lewisbrisbois.com

Wilmington, DE 19801
Telephone: (302) 985-6000
Facsimile: (302) 985-6001
Email: Kevin.Shaw@lewisbrisbois.com

*Counsel to the Debtors*

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    ARGUMENT ...........................................................................................................2

    **A.**     **Introduction** ............................................................................................2

    **B.**     **Fee Objections Must be Reviewed Prospectively** .................................6

        *1.*     *Third Circuit Rejects the Hindsight Approach to Fees and Adopts the Prospective Approach* .......................................................... 6

        *2.*     *The Majority of Circuits and Lower Courts Are United in Rejection of the Hindsight Approach to Fees and Adopts the Prospective Approach* ................................................................. 8

    **C.**     **A Generalized or Gestalt Fee Objection is Invalid** ...........................14

    **D.**     **The Filing of the Fee Objection Had No Reasonable Basis and Triggers Bankruptcy Rule 9011** .......................................................22

III.   CONCLUSION ....................................................................................................26

# TABLE OF AUTHORITIES

## Statutes

11 U.S.C. § 329..................................................................................................................... 15
11 U.S.C. § 330............................................................................................................... passim
11 U.S.C. § 541..................................................................................................................... 12
28 U.S.C. § 1927............................................................................................................... 24, 25

## Cases

*Andrews & Kurth L.L.P. v. Family Snacks (In re Pro-Snax Distribs.)*, 157 F.3d 414 (5th Cir. 1998).................................................................................................................... 5, 6, 9, 23
*Asarco, L.L.C. v. Barclays Capital, Inc. (In re ASARCO, L.L.C.)*, 702 F.3d 250 (5th Cir. 2012).. 3, 25
*Bachman v. Pelofsky (In re Peterson)*, 251 B.R. 359 (Bankr. 8th Cir. 2000)............................... 16
*Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266 (5th Cir. 2015) ................................................................................................................................... passim
*Chamberlain v. Kula (In re Kula)*, 213 B.R. 729 (Bankr. 8th Cir. 2000)...................................... 16
*Chavis v. Spaulding (In re Chavis)*, 2004 Bankr. LEXIS 2648 (Bankr. S.D. Ga. 2004)........ 21, 22
*Cohen & Thiros, P.C. v. Keen Enterprises, Inc.*, 44 B.R. 570 (N.D. Ind. 1984)......................... 14
*Comm. of Equity Sec. Holders of Federal-Mogul Corp. v. Official Comm. of Unsecured Creditors (In re Fed. Mogul-Global, Inc.)*, 348 F.3d 390 (3d Cir. 2003) .................................. 4
*Donaldson Lufkin & Jenrette Sec. Corp. v. National Gypsum Co. (In re National Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997)................................................................................................... 3
*Edwards Family P'ship v. Johnson (In re Cmty. Home Fin. Servs.)*, 990 F.3d 422 (5th Cir. 2021) ............................................................................................................................... 10, 11, 12
*FTC v. Capital Acquisitions & Mgmt. Corp.*, 2005 U.S. Dist. LEXIS 18504 (D.N.D. Ill. 2005) 20, 21
*Grunau v. Waage (In re Grunau)*, 376 B.R. 322 (M.D. Fla. 2007)............................................. 16
*In re Abel*, 2001 Bankr. LEXIS 2305 (Bankr. D. Vt. May 29, 2001).................................... 19, 20
*In re Affinito & Son, Inc.*, 63 B.R. 495 (Bankr. W.D. Pa. 1986)......................................... 14, 24
*In re Ames Dept. Stores, Inc.*, 76 F.3d 66 (2d Cir. 1996), *overruled on other grounds*, *Lamie v. United States Tr.*, 540 U.S. 526 (2003) ................................................................... passim
*In re Anderson*, 49 B.R. 725 (Bankr. D. Haw. 1985) ................................................................. 14
*In re Angelika Films 57th, Inc.*, 227 B.R. 29 (Bankr. S.D.N.Y. 1998), *aff'd*, 246 B.R. 176 (S.D.N.Y. 2000) ................................................................................................................... 8, 9
*In re Bechtold*, 2007 Bankr. LEXIS 1838 (Bankr. E.D. Pa. 2007)............................................. 15
*In re Blackwood Assocs., L.P.*, 165 B.R. 108 (Bankr. E.D.N.Y. 1994)............................... passim
*In re Borders Group, Inc.*, 453 B.R. 459 (Bankr. S.D.N.Y. 2011)............................................. 11
*In re Boyce*, 2006 U.S. Dist. LEXIS 78680 (E.D. Pa. 2006) ....................................................... 4
*In re Broughton Ltd. P'ship*, 474 B.R. 206 (Bankr. N.D. Tex. 2012) .................................. passim
*In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833 (3d Cir. 1994) ................................................. passim
*In re C & A Enterprises, Inc.*, 132 B.R. 303 (Bankr. W.D. Pa. 1991)................................... 14, 24
*In re Continental Illinois Sec. Litigation*, 962 F.2d 566 (7th Cir. 1992) .......................... 18, 19, 20

## TABLE OF AUTHORITIES (cont'd)

*In re Delta Petrol. (P.R.), Ltd.*, 193 B.R. 99 (D.P.R. 1996) ............................................ 4

*In re DLC, Ltd.*, 295 B.R. 593 (8th Cir. 2003)........................................................... 13, 14

*In re Double J Cattle Co.*, 226 B.R. 284 (Bankr. 10th Cir. 1997) ............................... 13

*In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13 (Bankr. S.D.N.Y. 1991) .................... 8, 9

*In re Ellipso, Inc.*, 462 B.R. 241 (Bankr. D.D.C. 2011) ............................................... 4

*In re Garcia*, 335 B.R. 717 (Bankr. 9th Cir. 2005 ...................................................... 13

*In re Grasso*, 586 B.R. 110 (Bankr. E.D. Pa. 2018) ..................................................... 7

*In re Hosp. Partners of Am., Inc.*, 597 B.R. 763 (Bankr. D. Del. 2019) ........................... 7

*In re Hunt's Health Care*, 161 B.R. 971 (Bankr. N.D. Ind. 1993) ........................... 16, 18, 19, 21

*In re Jankowski*, 382 B.R. 533 (Bankr. M.D. Fla. 2007) ............................................... 4

*In re Jeffery*, 2023 Bankr. LEXIS 2671 (Bankr. E.D. Pa. 2023) ....................................... 7, 17, 18

*In re Keene Corp.*, 205 B.R. 690 (Bankr. S.D.N.Y. 1997) ............................................. 8, 9

*In re Klika*, 2008 Bankr. LEXIS 462 (Bankr. D. Del. 2008) ......................................... 15, 16

*In re Lindberg Products, Inc.*, 50 B.R. 220 (Bankr. N.D. Ill. 1985).................................. 14

*In re Mapson*, 93 B.R. 161 (Bankr. C.D. Ill. 1988) ..................................................... 23

*In re Murray*, 2007 Bankr. LEXIS 2737 (Bankr. E.D. Pa. 2007)...................................... 15

*In re Pilgrim's Pride Corp.*, 403 B.R. 413 (Bankr. N.D. Tex. 2009)................................. 11

*In re Quigley Co.*, 500 B.R. 347 (Bankr. S.D.N.Y. 2013)............................................. 9, 19, 20

*In re Racing Servs., Inc.*, 2008 Bankr. LEXIS 1006 (Bankr. D.N.D. Mar. 26, 2008)................. 14

*In re Raygoza*, 556 B.R. 813 (Bankr. S.D. Tex. 2016)................................................. 12

*In re Ronco, Inc.*, 838 F.2d 212 (7th Cir. 1988) ....................................................... 23

*In re S.T.N. Enterprises, Inc.*, 70 B.R. 823 (Bankr. D. Vt. 1987)................................... 20

*In re Smith, 317 F.3d 918 (9th Cir. 2002), overruled on other grounds, Lamie v. United States Tr., 540 U.S. 526 (2003)*................................................................... 12, 13

*In re Sowers*, 97 B.R. 480 (Bankr. N.D. Ind. 1989) ................................................... 22

*In re Sylvester*, 23 F.4th 543 (5th Cir. 2022)........................................................... 23, 24

*In re Taxman Clothing Co.*, 49 F.3d 310 (7th Cir. 1995), *overruled on other grounds*, *Lamie v. United States Tr.*, 540 U.S. 526 (2003)............................................... 8, 9

*In re Top Grade Sausage, Inc.*, 227 F.3d 123 (3d Cir. 2000), *overruled on other grounds, Lamie v. United States Tr.*, 540 U.S. 526 (2003) .............................................. 6, 7

*In re Two Star Surgical Supply Inc.*, 70 B.R. 241 (Bankr. E.D.N.Y. 1987)......................... 22

*In re Value City Holdings, Inc.*, 436 B.R. 300 (Bankr. S.D.N.Y. 2010) ........................... 4

*In re Vu*, 366 B.R. 511 (D. Md. 2007)..................................................................... 4

*In re West End Fin. Advisors, LLC*, No. 11-11152 (SMB), 2012 Bankr. LEXIS 3045, 2012 WL 2590613 (Bankr. S.D.N.Y July 3, 2012)........................................................ 9

*In re Wireless Telecomms., Inc.*, 449 B.R. 228 (Bankr. M.D. Pa. 2011)............................ 7

*In re Wise*, 365 B.R. 516 (Bankr. E.D. Pa. 2007) ...................................................... 15

*In Volpert*, 110 F.3d 494 (7th Cir. 1997) ............................................................... 25

*Kemp, Klein, Umphrey, Endelman & May v. Bankruptcy Estate of Veltri Metal Prods. (In re Veltri Metal Prods.)*, 189 Fed. Appx. 385 (6th Cir. 2006)....................................... 12

*Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) (en banc)................................................................................... 18

*McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir. 1996)................... 12

# TABLE OF AUTHORITIES (cont'd)

*Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985) ............................ 11

*Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co.(In re Mednet)*, 251 B.R. 103 (Bankr. 9th Cir. 2000) ............................................................................................................. 13

Section 330(a) ............................................................................................................................ 7

*See Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223 (5th Cir. 1986) ............................................................................................ 10

*Szabo Food Service Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir. 1987) ................................ 23

*Top Sausage* ............................................................................................................................. 24

*Walton v. Houlihan, Lokey, Howard & Zukin (In re UA Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003) ......................................................................................................................................... 4

## Rules

Bankruptcy Rule 2016 .............................................................................................................. 17

Bankruptcy Rule 2017(b) .......................................................................................................... 15

Bankruptcy Rule 9011 ........................................................................................................ 24, 25

Federal Rule of Civil Procedure Rule 11 .............................................................................. 22, 23

## Other Authorities

1 Bankruptcy Law Manual (5th ed. 2020) ................................................................................. 12

Stream TV Networks, Inc. ("**Stream**") and Technovative Media, Inc. ("**Technovative**," and together with Stream, the "**Debtors**"), respectfully submit this brief in support of its *Local Rule 2016-5 First Request for Payment on Account for Compensation and Reimbursement of Expenses of Lewis Brisbois Bisgaard & Smith, LLP, Counsel for the Debtors, for the Period March 15, 2023 Through April 30, 2023* [D.I. 409] (the "**Application**").[2]

## I.    PRELIMINARY STATEMENT

On November 27, 2023, the Court requested the parties submit briefing on the merits of *Hawk Investment Holdings Ltd.'s Objection to Local Rule 2016-5 First Request for Payment on Account for Compensation and Reimbursement of Expenses of Lewis Brisbois Bisgaard & Smith, LLP, Counsel for the Debtors, for the Period March 15, 2023 Through April 30, 2023* [D.I. 424] (the "**Fee Objection**").

On September 12, 2023, Lewis Brisbois Bisgaard & Smith, LLP ("**LBBS**") filed its first Application for Compensation for the period March 15, 2023 through April 30, 2023 (the "**Compensation Period**"), in accordance with Federal Rule of Bankruptcy Procedure 2016 and Local Rule 20126-5, for payment of fees and reimbursement of expenses on account, incurred during the Compensation Period.  Local Rule 2016-1 allows professionals, in this case, LBBS, to file a fee application without the need for hearing for up to four months of fees.

Once Debtor files an interim application pursuant to 11 U.S.C. § 330, then further applications on account can be submitted.  Debtors' counsel has been properly retained including but not limited to the approval of and the terms of engagement which is an hourly retention.  The

---

[2]    The Debtors reserve the right to supplement this brief for any future fee applications.

Court entered an Order on May 3, 2023, approving LBBS's retention.[3]  Debtor's Fee Application

conforms with the requirements of section 330(a)(3) of the Bankruptcy Code and Federal Rule of

Bankruptcy Procedure 2016(a), setting forth the time expended, the rates charged for such services,

professional services rendered under the categories of service governed by Local Rule 2016-2(e),

and the expenses incurred.

The Debtor incorporates by reference herein its prior Declarations of Rafael X. Zahralddin-

Aravena in Support of Debtors' Application to Employ Lewis Brisbois Bisgaard & Smith, LLP,

as Counsel for the Debtors.  [*See* D.I. 70-1; 180; 499].  The retention application and any revisions

to the retention order were the subject of extensive and cooperative negotiations with the United

States Trustee.

## II.    ARGUMENT

### A.    <u>Introduction</u>

Fee objections cannot be reviewed in hindsight and cannot be disallowed based on a

general objection.  The statutory standard requires a retrospective review of a professional's

request for approval of fees and expenses, one which assesses the work completed as of the time

it was planned and executed, and not in hindsight based on "actual results."  The retrospective

standard was also the majority rule amongst both Circuits and lower courts in Circuits which had

not engaged in appellate review of standards for review of fee applications.  Only one Circuit, the

Fifth Circuit retained a standard based upon "actual results," also known as a review in hindsight.

Once Congress amended the statute in 1994 to eliminate the review of fees based on results, as

opposed to retrospectively, the Fifth Circuit overruled its prior precedent as inconsistent with the

---

[3]      *See* Order Granting Motion to Approve Application to Employ and Retain Lewis Brisbois
Bisgaard & Smith, LLP as Counsel to the Debtors and Debtors-in-Possession.  [D.I. 185].

amendments.   Significantly, the Third Circuit followed the majority rule before the 1994 amendments to the Bankruptcy Code and after.

The majority rule in the United States is that professional fees must be assessed using a prospective analysis that considers whether the services were "reasonably likely to benefit the estate" at the time they were performed, and "is an objective test based on the services that a reasonable lawyer would have performed in the same circumstances." *In re Broughton Ltd. P'ship*, 474 B.R. 206 (Bankr. N.D. Tex. 2012).

The majority rule is not just consistent with a plain meaning interpretation of section 330 of the Bankruptcy Code.  11 U.S.C. § 330.  Congress amended the statutory provision in 1994 to specifically abrogate any test that would review fees in hindsight, any test that assessed and approved fees using a standard which relied on the actual results of a professional's actions as opposed to an objective assessment of fees, taking into account the circumstances existing at the time the reviews were rendered.

The Third, Second, Fifth, Sixth, Seventh, and Ninth Circuit Courts and the Eighth and Tenth Circuit Bankruptcy Appellate Panels,[4] flatly rejected the practice of hindsight review of professional fees. Any objection rooted in hindsight regarding whether an estate professional satisfies the actual benefit to the estate test has been held to *impermissibly* convert an hourly engagement into a de facto contingency case.[5]

---

[4]     The overwhelming majority of courts adopting the majority rule are discussed in detail herein.

[5]     The Supreme Court has held that retention agreements with estate professionals are contracts.  *See, e.g., Asarco, L.L.C. v. Barclays Capital, Inc. (In re ASARCO, L.L.C.)*, 702 F.3d 250, 268 (5th Cir. 2012) ("In disputes governed by § 328(a), the contractual arrangement is supreme, and we shall enforce the contract as written.") (emphasis added); *Donaldson Lufkin & Jenrette Sec. Corp. v. National Gypsum Co. (In re National Gypsum Co.)*, 123 F.3d 861, 863 (5th Cir. 1997) ("Courts must protect [§ 328(a)] agreements and expectations, once found to be

- 3 -

Lower courts in the First, Fourth, Eleventh, and D.C. Circuits, where the issue has not yet

received appellate review, also adopted the majority position.[6]

---

acceptable.") (emphasis added).  Under the Bankruptcy Code, any employment agreement must be filed with and approved by the Court. 11 U.S.C. §§ 327, 328 & 1103.  Retention agreements are contracts subject to objection by other parties and is ultimately subject to approval by the Court. *See, e.g., Comm. of Equity Sec. Holders of Federal-Mogul Corp. v. Official Comm. of Unsecured Creditors (In re Fed. Mogul-Global, Inc.)*, 348 F.3d 390, 397-98 (3d Cir. 2003); *Walton v. Houlihan, Lokey, Howard & Zukin (In re UA Theatre Co.)*, 315 F.3d 217, 234 (3d Cir. 2003).  If the Court finds that a contract with the Debtor or the Committee negotiated is impermissible, the Court may not approve it or may modify it.  *See, e.g., Federal-Mogul*, 348 F.3d at 397-98 (holding that bankruptcy court could approve professional's employment on terms and conditions different from those proposed by the committee that the court found were necessary to satisfy the requirement of reasonableness under section 328(a)); *UA Theatre*, 315 F.3d at 234 (affirming approval of indemnification agreement in financial advisors' retention application but with two modifications required by the Court).

[6]    The United States Bankruptcy Court for the Northern District of Texas summarized the position of lower courts in Circuits which had not reached the issue at the Circuit Court level:

Courts of Appeals in the First, Fourth, Eleventh, and D.C. Circuits have yet to adopt a position on the issue, *though the clear trend among lower courts that have addressed the issue is to embrace a prospective analysis similar to Ames.  See, e.g., In re Ellipso, Inc.*, 462 B.R. 241, 252 (Bankr. D.D.C. 2011) (citing Second Circuit precedent and stating that "'courts objectively consider whether the services rendered were reasonably likely to benefit the estate from the perspective of the time when such services were rendered.'") (quoting *In re Value City Holdings, Inc.*, 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010)); *In re Vu*, 366 B.R. 511 (D. Md. 2007) (citing to *Ames* and *Mednet* and stating that "the benefit to the estate requirement under § 330 requires only that a reasonable attorney would have believed that the services were reasonably likely to benefit the estate at the time they were rendered."); *In re Jankowski*, 382 B.R. 533, 545 (Bankr. M.D. Fla. 2007) (stating that "[s]ection 330 of the Bankruptcy Code 'requires only that the services in question had a reasonable likelihood of benefitting the estate at the time they were provided, not that they actually provide a benefit.'") (citing *In re Boyce*, 2006 U.S. Dist. LEXIS 78680, at *3 (E.D. Pa. 2006)); *In re Delta Petrol. (P.R.), Ltd.*, 193 B.R. 99, 108 (D.P.R. 1996) (affirming a bankruptcy court order allowing compensation of a chapter 11 trustee and stating that, by "negative implication," under § 330(a)(4)(A)(ii)(I) and (II), "a bankruptcy judge may award compensation for services that were:  reasonably likely to benefit the estate, necessary to its administration, or [sic] not unnecessarily duplicative.").

*Broughton*, 474 B.R. at 213 (emphasis added).

Perhaps most significantly, these decisions are consistent with the plain language of the 1994 amendments to section 330(a).[7]  The text of section 330(a) of the Bankruptcy Code directs Bankruptcy Courts to consider "whether the services were necessary to the administration of, or beneficial *at the time at which the service was rendered*" in determining fee compensation. 11 U.S.C. § 330(a)(3)(c).   The temporal language in § 330(a)(3)(C) was added by the 1994 Amendments to the Bankruptcy Code (the "**Bankruptcy Code**").   Additionally, section 330(a)(4)(A)(ii) of the Bankruptcy Code requires a Bankruptcy Court to disallow compensation for services "not reasonably likely to benefit the debtor's estate."  11 U.S.C. § 330(a)(4)(A)(ii). Read together, the plain language of these texts foreclosed the use of a retrospective, material benefit standard.[8]

---

[7]      Initially, the Fifth Circuit set out what was a standard that required professionals to do the work and then hope that it "resulted" in something the bankruptcy court would deem of "material benefit. *Andrews & Kurth L.L.P. v. Family Snacks (In re Pro-Snax Distribs.)*, 157 F.3d 414 (5th Cir. 1998).  Subsequently the Fifth Circuit unanimously reversed *Pro-Snax* and set out new guidelines for the compensation of professionals working for bankruptcy debtors. The new less-draconian standard is whether the work was "reasonably likely to benefit the estate" at the time it was done by the professional. *Woerner*, 783 F.3d at 276.  The Court explained that both the text and legislative history of 11 U.S.C. § 330 showed that a "prospective" standard, rather than a "hindsight" standard was appropriate.  If a fee applicant establishes that its services were "necessary to the administration" of a bankruptcy case or "reasonably likely to benefit" the bankruptcy estate "at the time at which [they were] rendered," then the court should grant the payment of those fees.

[8]      Prior to the enactment of the Bankruptcy Code in 1978, the Fifth Circuit took a hard line position regarding payment of attorney's fees holding that public policy supported restricting attorney compensation in bankruptcy cases and that attorneys should not expect to receive the same compensation as if working outside of bankruptcy.

Congress enacted section 330 of the Bankruptcy Code to abrogate this policy and to allow bankruptcy attorneys to receive reasonable compensation comparable to compensation allowed in non-bankruptcy cases.  Congress, however, did not define reasonable compensation, and some courts, notably the Fifth Circuit developed the actual, or material, benefit standard under which compensation was awarded if the services provided actually resulted in an identifiable benefit to the bankruptcy estate.

Courts, including those in the Third Circuit, are also uniform in rejecting generalized objections. A properly prepared fee application which identifies timekeepers, tasks, and rates is presumptively valid. Objectors who wish to overcome that presumption can only meet their burden with a particularized objection and failure to do so is fatal to their objection. Significantly, a "gestalt objection" or "generalized objection" is invalid. Moreover, Appellate Courts have held that it is not for a trial Court to rehabilitate a generalized objection.

**B.**    **Fee Objections Must be Reviewed Prospectively**

    *1.*    *Third Circuit Rejects the Hindsight Approach to Fees and Adopts the Prospective Approach*

The Third Circuit rejected the actual-material-benefit standard in 2000, concluding that it departed from the statute by imposing a "heightened standard" and requiring evaluation "by hindsight." *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 131-32 (3d Cir. 2000), *overruled on other grounds, Lamie v. United States Tr.*, 540 U.S. 526 (2003).

The Third Circuit in *Top Grade Sausage* flatly rejected and overturned both the Bankruptcy Court and District Court which had ruled and affirmed, respectively, that a law firm had to show an actual benefit to the estate to recover fees, holding:

> We do not agree . . . . We will, therefore, adopt the test proposed by Hellring Lindeman that its application be evaluated pursuant to the standards set forth in §

---

Congress stepped in, again, in 1994, amending section 330 to foreclose the actual benefit test. Following the 1994 amendments to section 330, the Second, Third and Ninth Circuits all dropped the actual benefit standard. In the *Pro-Snax* decision in 1998, the Fifth Circuit adopted the actual benefit standard and, since that decision, applications for compensation under section 330 of the Bankruptcy Code in the Fifth Circuit were evaluated retrospectively under the "hindsight" or "material benefit" standard. See *Pro-Snax*, 157 F.3d 414 (5th Cir. 1998).

    *Woerner* overturned *Pro-Snax* and held that *Pro-Snax* conflicts with the plain language of section 330 and confused lower courts within the circuit, mandating that the Fifth Circuit Court overrule *Pro-Snax* and the material benefit standard. The Court instead adopted a standard consistent with the plain language of the 1994 amendments so that fees will be evaluated prospectively based on, among other factors, whether the services rendered were reasonably likely to benefit the estate at the time the services were performed.

330(a)(4)(A) and not by some heightened standard or by hindsight. Accordingly, the debtor's attorney must show that the representation was reasonably likely to benefit the debtor's estate.

*Top Grade Sausage, Inc.*, 227 F.3d at 132.

Lower Courts in the Third Circuit, including the United States Bankruptcy Court for the Eastern District of Pennsylvania, have also used the prospective standard. *In re Hosp. Partners of Am., Inc.*, 597 B.R. 763 (Bankr. D. Del. 2019) ("The standards set forth in § 330 reflect the realities of legal practice, where trustees or professionals often act without complete information about what the ultimate results of those actions might be"); *In re Grasso*, 586 B.R. 110, 145 (Bankr. E.D. Pa. 2018) ("In evaluating the value the Firm's services, this Court has been careful not to apply the benefit of hindsight."); *In re Wireless Telecomms., Inc.*, 449 B.R. 228, 232 (Bankr. M.D. Pa. 2011) ("The Objector has misunderstood the concept of benefit. It is the prospective likelihood of benefit to the estate that is critical, not the actual results").

The United States Bankruptcy Court for the Eastern District of Pennsylvania in *Jeffrey* emphasized, quoting from a decision by Judge Brendan Shannon of the United States Bankruptcy Court of the District of Delaware, that lawyers are not guarantors of the Debtors' success, whether through a "theory, proceedings, or strategy." *In re Jeffery*, 2023 Bankr. LEXIS 2671, *12 (Bankr. E.D. Pa. 2023):

> Section 330(a)(4)(A) does not require a trustee or their professional show their services provided an actual benefit to the estate. *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 132 (3d Cir. 2000). Instead, they must show their services were "*reasonably likely to benefit the debtor's estate*" at the time they were rendered. *Id.* (emphasis added); *see also In re Hosp. Partners of Am., Inc.*, 597 B.R. 763, 767 (Bankr. Del. 2019) ("As a practical matter, bankruptcy professionals are not guarantors of the success of a particular theory, proceeding, or strategy."); *In re Grasso*, 586 B.R. 110, 144 (Bankr. E.D. Pa. 2018) (Section 330(a) "must be applied without the benefit of hindsight.")

*Id.*

The Third Circuit has been part of the retrospective majority rule advocated by the Second Circuit.

      2.      *The Majority of Circuits and Lower Courts Are United in Rejection of the Hindsight Approach to Fees and Adopts the Prospective Approach*

The Second Circuit adopted the retrospective approach early in *Ames Department Store* case.  Fees filed by Skadden Arps had been disallowed because the District Court held that the firm's failure to win an appeal did not benefit to the estate.  *In re Ames Dept. Stores, Inc.,* 76 F.3d 66 (2d Cir. 1996), *overruled on other grounds*, *Lamie*, 540 U.S. 526; *accord In re Angelika Films 57th, Inc*., 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998), *aff'd*, 246 B.R. 176 (S.D.N.Y. 2000); *In re Keene Corp*., 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997); *In re Drexel Burnham Lambert Grp., Inc*., 133 B.R. 13, 23 (Bankr. S.D.N.Y. 1991).

The *Ames* District Court disallowed fees by Skadden because an appeal the firm had pursued "accomplished nothing, and was worth nothing to the estate."  *Ames,* 76 F.3d at 70.  The Second Circuit rejected the District Court's application of the "actual benefit" test to professional fees.  *Id.* at 71-72.  The court believed that if the services in question were "reasonably likely to benefit the debtor's estate, they should be compensable."  *Id.* at 72.  The Second Circuit held that the lower courts should apply this standard in an objective manner, considering "what services a reasonable lawyer or legal firm would have performed in the same circumstances."  *Id.* (citing *In re Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995), *overruled on other grounds*, *Lamie v. United States Tr.*, 540 U.S. 526 (2003)).

Subsequent trial courts in the Second Circuit have followed *Ames*.  The Southern District of New York, in *Quigley* held that:

    Important to the present dispute, a court does not determine "reasonableness" through hindsight, *Brous*, 370 B.R. at 570, or penalize counsel simply because it

> rendered services prosecuting an application that failed or opposing one that succeeded.  *See JLM*, 210 B.R. at 25; *In re West End Fin. Advisors, LLC*, No. 11-11152 (SMB), 2012 Bankr. LEXIS 3045, 2012 WL 2590613, at *6 (Bankr. S.D.N.Y July 3, 2012). The test is an objective one, and considers 'what services a reasonable lawyer or legal firm would have performed in the same circumstances.' *In re Ames Dep't Stores, Inc*., 76 F.3d 66, 72 (2d Cir. 1996) (*citing In re Taxman Clothing Co*., 49 F.3d 310, 315 (7th Cir. 1995) (Posner, C.J.)); *accord In re Angelika Films 57th, Inc*., 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998), *aff'd*, 246 B.R. 176 (S.D.N.Y. 2000); *In re Keene Corp*., 205 B.R. at 696; *In re Drexel Burnham Lambert Grp., Inc*., 133 B.R. 13, 23 (Bankr. S.D.N.Y. 1991).

*In re Quigley Co.*, 500 B.R. 347, 357 (Bankr. S.D.N.Y. 2013).

The Fifth Circuit had been the long holdout amongst the Circuits, applying a test which required a hindsight review.  In the case of *Pro-Snax* case, the Fifth Circuit set out a standard that required professionals to do the work and then hope that it "resulted" in something the bankruptcy court would deem of "material benefit."  *See Andrews & Kurth L.L.P. v. Family Snacks (In re Pro-Snax Distribs.)*, 157 F.3d 414 (5th Cir. 1998).

The Court of Appeals explained, in overturning its prior precedent in *Pro-Snax*, the *Pro-Snax* was inconsistent with section 330 as amended, and that the policy behind the prospective approach of section 330 was rooted in the clear rejection of "success" as a basis for compensation.

> Section 330, then, explicitly contemplates compensation for attorneys whose services were reasonable when rendered but which ultimately may fail to produce an actual, material benefit.  "Litigation is a gamble, and a failed gamble can often produce a large net loss even if it was a good gamble when it was made."  *In re Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir. 1995).  The statute permits a court to compensate an attorney not only for activities that were "necessary," but also for good gambles-that is, services that were objectively reasonable at the time they were made-even when those gambles do not produce an "identifiable, tangible, and material benefit." What matters is that, prospectively, the choice to pursue a course of action was reasonable.

*Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 273-274 (5th Cir. 2015).

The Fifth Circuit further strengthened its rejection of the retrospective standard in the case of *Community Home.  See Edwards Family P'ship v. Johnson (In re Cmty. Home Fin. Servs.)*, 990

F.3d 422, 427 (5th Cir. 2021). The Court recounted that in the *Woerner*, decision the Fifth Circuit held that "if a fee applicant establishes that its services were 'necessary to the administration' of a bankruptcy case or 'reasonably likely to benefit' the bankruptcy estate 'at the time at which [they were] rendered,' then the services are compensable." *Id.* (quoting *Woerner*, 783 F.3d at 276 (quoting 11 U.S.C. § 330(a)(3)(C), (4)(A)).

The Court's holding in *Community Home* was direct and explicit. The Fifth Circuit held that "In awarding fees, hindsight is *irrelevant*; retrospect is *irrelevant*; 'material benefit to the bankruptcy estate' is *irrelevant*." *Cmty. Home*, 990 F.3d at 428 (emphasis added). The Court further held "What matters is that, prospectively, the choice to pursue a course of action was reasonable." *Id.*

The United States Bankruptcy Court for the Northern District of Texas in *Broughton* rejected the idea that an identifiable, tangible, and material benefit had to be something that directly augmented the estate. *Broughton*, 474 B.R. at 219. The court pointed out that many critical functions performed by professionals do not reduce claims or increase the estate, yet are required in administering a chapter 11 case. *Id.* at 213-14. Work professionals undertake is not guaranteed to succeed, *i.e.*, litigation may offer a potential for substantial recovery but is not sure to be won. *Id.* at 214. The fact that the Code permits, but does not require, a professional to take a matter on a contingency basis is an indication that it was not Congress's intent to make compensation for all professional services contingent on success. *Id.* Significantly, the Court's holding stated that as long as the Debtor is exercising its business judgment, the Court should and the Debtors' professionals should be able to rely on that judgment. *Id*. at 219.

> With regard to the latter, the court relies on an estate representative's sound business judgment in approving acts outside the ordinary course of business. *See Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (discussing the "sound business

judgment" test for transactions outside the ordinary course of business); *In re Borders Group, Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011).  Unless the manner in which an estate representative arrives at a decision is seriously flawed, the court will defer to the estate representative.  *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Pilgrim's Pride Corp.*, 403 B.R. 413, 426, 427 (Bankr. N.D. Tex. 2009).  *A professional should similarly be able to rely on its client's business judgment in acting in accordance with the client's instructions.*

*Broughton*, 474 B.R. at 219 (emphasis added).  Significantly, the Court also held that:

[P]rofessionals are retained by an estate representative to advise and assist the representative in carrying out his, her or its duties under the Code.  *To burden professionals by making their compensation contingent upon the result of the estate representative's decisions must necessarily skew the regime intended in the Code* and will surely create conflicts where a professional believes its client's decision, though arrived at through due diligence, is not the right one.  *Had Congress wished professionals retained under section 327 of the Code to second-guess and perhaps veto decisions of a trustee or debtor in possession, it surely would have said so.*

*Id.* (emphasis added).

The *Community Home* Court held that the District Court committed reversible error by ignoring the "clear Fifth Circuit precedent" that "services must be reasonable at the time they were rendered," and vacating fee awards to estate professionals approved by the Bankruptcy Court. *Cmty. Home*, 990 F.3d at 427.  The Fifth Circuit held that the District Court impermissibly substituted its "retrospective" assessment of whether or not it was appropriate for the client to pursue litigation on the part of the estate.[9]  *Id.*  The Court admonished the District Court, saying it was "wrong to vacate the bankruptcy court award based on its own retrospective assessment of the propriety of the adversary proceedings.'"  *Id.*  The District Court committed reversible error by

---

[9]      The Circuit Court found the District Court's reasoning behind its denial of fees was reversible error.  "The District Court reasoned that the "decision to pursue adversary proceedings 'was an expensive course of action. from the outset . . . . [I]t would have been more cost-effective, faster, and better for the estate to pay off the few unsecured creditors rather than hire professionals to litigate Adversary Proceedings quibbling about their priority.'  'This was not a good gamble.'" *Id*. at 428.

not looking at the "reasonableness of pursuing the adversary proceedings from the time Henderson and Wells Marble provided their services." *Id.* at 424. (citing *In re Raygoza*, 556 B.R. 813, 824 (Bankr. S.D. Tex. 2016); 1 Bankruptcy Law Manual § 4:38 n.10 (5th ed. 2020)). The Fifth Circuit concluded that "[v]iewed prospectively, pursuit of the adversary proceedings was 'necessary to the administration of the case' to resolve otherwise unsettled disputes about the priority of claims." *Cmty. Home*, 990 F.3d at 427 (quoting 11 U.S.C. § 330(a)(1)(A), (a)(3), (a)(4)(A)(ii)).

The Sixth Circuit agreed that services must be reasonably likely to benefit the estate to be compensable but emphasized that benefit was neither retrospective or purely economic. *Kemp, Klein, Umphrey, Endelman & May v. Bankruptcy Estate of Veltri Metal Prods. (In re Veltri Metal Prods.)*, 189 Fed. Appx. 385, 389 (6th Cir. 2006). The court stated an attorney's work may benefit the case even where there is no reasonable probability of distribution to the class of unsecured creditors. *Id.* The court stated an attorney's work may benefit the case even where there is no reasonable probability of distribution to the class of unsecured creditors. *Id.* The Court held that "[t]he Code speaks of a 'benefit [to] the debtor's estate,' and 'the . . . estate is comprised of 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Id.* (citing *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 196 (6th Cir. 1996) (quoting 11 U.S.C. § 541(a)(1)). The Sixth Circuit found reversible error where the Court had examined only a benefit to the debtor's estate, and overlooked administrative necessity as an alternative basis for awarding fees. *Id.*

The Ninth Circuit in *Smith* considered whether § 330 requires a showing of an actual "identifiable, tangible, and material benefit" to the estate for attorney's fees to be awarded. *In re Smith*, 317 F.3d 918, 926 (9th Cir. 2002), *overruled on other grounds*, *Lamie*, 540 U.S. 526. Services that were reasonably likely to provide a benefit may be compensated, regardless of

whether they actually provide an "identifiable, tangible, and material benefit." *Id.* The court stated that prior cases in the Fifth Circuit which followed the actual benefit test had been superseded and overruled because the doctrine was inconsistent with § 330(a)(4)(A). *Id.* at 926-27; *see also In re Garcia*, 335 B.R. 717, 724 (Bankr. 9th Cir. 2005) (holding that a professional needs only to show that the services rendered were "reasonably likely" to benefit the estate at the time they were rendered); *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co.(In re Mednet)*, 251 B.R. 103, 107 (Bankr. 9th Cir. 2000) (adopting the objective, prospective test of *Ames).*

Other appellate courts have followed suit. The Tenth Circuit Bankruptcy Appellate Panel held that it was reversible error for the Bankruptcy Court to deny fees on a *per se* basis that there was no actual benefit to the estate. *In re Double J Cattle Co.,* 226 B.R. 284 (Bankr. 10th Cir. 1997). The court is obligated to consider whether or not it was reasonably likely to benefit the estate and benefit to the estate is not limited to economics. *Id.* at *6. The Bankruptcy Appellate Panel also held that it was reversible error to deny an entire application without the requisite review of the details in the fee application. *Id.* at *12.

The Eighth Circuit Bankruptcy Appellate Panel held that it was a mischaracterization of the standard laid forth in § 330 to require that the services actually benefit the estate for the fees to be compensable. *In re DLC, Ltd.,* 295 B.R. 593, 608 (8th Cir. 2003). *In re DLC* is particularly relevant to this current case which has been burdened with litigation and objections on a constant basis since the case was filed on March 15. Similar to the docket in the above captioned matter, the court further noted that the trustee's attorney had been met with "vociferous opposition" to what was "a good case" and had been "challenged by the appellants at every turn, causing litigation expenses to explode." *Id.* at 609. Accordingly, the court believed that while the fees were high, under the special circumstances of the case, they were reasonable and necessary and the

bankruptcy estate was benefitted. *Id.* The Court approved the fees even if the trustee and his counsel were the only ones to be compensated in the end because otherwise the debtor would have had no incentive to settle with the primary creditor. *Id.* The Debtors' current situation is far more optimistic, with exit financing and pending purchase orders in the amount of $160 million, Stream and Technovative are in a much better position than the Debtor in the *DLC* matter.

Lower courts in the Eighth Circuit generally apply a prospective, reasonableness test similar to *Ames*, based however on the language of 11 U.S.C. § 330(a)(4)(A)(ii)(I) and (II). *See, e.g., In re Racing Servs., Inc.*, 2008 Bankr. LEXIS 1006, at *3 (Bankr. D.N.D. Mar. 26, 2008) (stating that "the Court shall not allow compensation if the services rendered were not reasonably likely to benefit the estate or were unnecessary for the administration of the estate.") (citations omitted).

### C.    <u>A Generalized or Gestalt Fee Objection is Invalid</u>

A proper fee application must list each activity, its date, the attorney who performed the work, a description of the nature and substance of the work performed, and the time spent on the work. *In re C & A Enterprises, Inc.*, 132 B.R. 303, 308 (Bankr. W.D. Pa. 1991); *In re Affinito & Son, Inc.*, 63 B.R. 495, 497 (Bankr. W.D. Pa. 1986); *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985); *In re Anderson*, 49 B.R. 725, 733 (Bankr. D. Haw. 1985); *Cohen & Thiros, P.C. v. Keen Enterprises, Inc.*, 44 B.R. 570, 573 (N.D. Ind. 1984).

The Third Circuit requires particularized objections by the trial court and a hearing so that a good faith applicant can have an opportunity to address any objection and to supplement their fee applications to address any deficiencies. *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 846 (3d Cir. 1994). The Third Circuit allows the Court to provide guidance and allow for a resubmission, even multiple resubmissions, to address any shortcomings in a fee application, a practice the Court

- 14 -

acknowledged can be used to alleviate the use of court time for fee disputes. *Id.* The Third Circuit

also held that if a Court disallows fees of a "good faith applicant," 11 U.S.C. §§ 329(b), 330(a);

Rule 2017(b), and the Fifth Amendment of the United States Constitution all "mandate" a hearing.

*Id.* The Third Circuit held that the hearing is a requirement so that an applicant can "present

evidence or argument that the fee application meets the prerequisites for compensation." *Id.* The

*Busy Beaver* Court defined a "good faith applicant" as "a fee applicant who reasonably and in good

faith attempts to comply with the applicable rules governing the format and substance of fee

applications." *Id.*

The Court summarized the process it required with the following:

In sum, if after initial review the bankruptcy court determines that, while the fee applicant made a good faith effort to comply with the particularization requirements of § 330(a), Rule 2016(a), and applicable local rules, either the information provided does not allow for a reliable determination of compensability (because it is too vague or otherwise), or that the court would benefit from legal argument, it may allow the professional a reasonable time to supplement the application with either a more detailed description of the questionable services, or with a memorandum of points and authorities in support of the application. If the bankruptcy court at any time, irrespective of any opportunity to supplement, denies some amount of the requested compensation, and if it determines the applicant sought in good faith to comply with the aforementioned specificity requirements, it should notify the applicant of its particular reasons for denying the fees, and, should he or she make a timely request for one, allow the professional the occasion to defend his or her fee application with legal arguments and/or evidence (of market practices, etc.) at a hearing. Moreover, if after the hearing the court adheres to its views and disallows some of the requested compensation, it should enter sufficient findings of fact and conclusions of law in the record to facilitate appellate review.

*Busy Beaver*, 19 F.3d at 847.

*Busy Beaver*, as controlling precedent, is adhered to by Courts in the Third Circuit. *See,*

*e.g., In re Klika*, 2008 Bankr. LEXIS 462, *10-11 (Bankr. D. Del. 2008); *In re Murray*, 2007

Bankr. LEXIS 2737, *9 (Bankr. E.D. Pa. 2007); *In re Bechtold*, 2007 Bankr. LEXIS 1838, *33

(Bankr. E.D. Pa. 2007); *In re Wise*, 365 B.R. 516, 528 (Bankr. E.D. Pa. 2007). The *Busy Beaver*

requirement for particularized fee objections has also been adopted by other Courts, including

Circuit Bankruptcy Appellate Panels. *See Bachman v. Pelofsky (In re Peterson)*, 251 B.R. 359, 366 (Bankr. 8th Cir. 2000) ("We agree with the *Busy Beaver* Court that fee applicants are entitled to a meaningful hearing regarding the reasonableness of their requested fees"); *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 742 (Bankr. 8th Cir. 2000); *Grunau v. Waage (In re Grunau)*, 376 B.R. 322, 331 (M.D. Fla. 2007).

Objecting Parties are prohibited from generalized or "gestalt objections."  An objecting party has an obligation, a "responsibility," to challenge the specific, detailed information included in a fee application and provide evidence to support its objection.  A generalized objection fails to meet the objecting parties burden and will be denied.  Notably, *Busy Beaver*, in its analysis of the requirement that Court objections must be particularized, also discussed the various reasons that objections by the client, creditors, and the United States Trustee were often not forthcoming, stated that "[c]onsequently, the task of reviewing fee applications falls by default onto the bankruptcy courts." *Busy Beaver*, 19 F.3d at 843.  However, courts in the Third Circuit and outside of the Circuit all apply the particularized objection requirement to any objecting party.  *See, e.g., Klika*, 2008 Bankr. LEXIS 462 at *10-11 (objection by debtor to Trustee's counsel fees); *In re Hunt's Health Care*, 161 B.R. 971, 982 (Bankr. N.D. Ind. 1993) (applying the requirements of a particularized objection to both the District Court and a creditor stating:  "Just as the district court . . . could not properly reduce fees for 'inarticulable and unsubstantiated dissatisfaction with the lawyers' efforts to economize, this court should not heed a creditor's unexplained dissatisfaction.'"); *In re Blackwood Assocs., L.P.*, 165 B.R. 108, 111 (Bankr. E.D.N.Y. 1994) (applying the requirements of objecting with particularity to "any entity" making an objection).

In the Eastern District of Pennsylvania, professionals in complex chapter 11 cases are allowed to receive payment "on account" under Local Rule 2016-5(c).  To receive payment the applicant must:

> (1) a list by name of each professional or paraprofessional, their billing rate, number of hours billed, and the total amount requested for the period; (2) a general description of the services rendered during the period by the applicant in the categories of service listed in L.B.R. 2016-2 (e); and (3) a list of the type and amount of expenses for which reimbursement is requested.

Local Rule 2016-5(c).  Notably, there are no other requirements for disclosure under the Local Rules related to fee applications.

When an estate professional files an interim or final application for fees, the requirements are very similar.  Federal Rules of Bankruptcy Procedure 2016 requires, in relevant part:

> (a) APPLICATION FOR COMPENSATION OR REIMBURSEMENT. An entity seeking ***interim or final compensation*** for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

*Id.*

Judge Mayer recently wrote in November 2023 when discussing the Third Circuit's directive to Bankruptcy Courts regarding fee review: "The role of this Court is not to calculate a professional's compensation to an unblemished exactitude. Rather, this Court's primary responsibility is to review, prevent, and correct '*reasonably discernable* abuses' in a professional's fee application." *Jeffery*, 2023 Bankr. LEXIS 2671 at *12-13 (emphasis added).

Judge Mayer also noted that the Third Circuit has instructed Bankruptcy Courts to not "become enmeshed in a meticulous analysis of every detailed facet of the professional

representation."[10] *Jeffery*, 2023 Bankr. LEXIS 2671 at *12 (citing *Busy Beaver*, 19 F.3d at 844-

845) (quoting *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 116

(3d Cir. 1976) (en banc)). "Because its time is precious, the reviewing court need only correct

reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the

professional is ideally entitled." *Id.*

*Hunt's Health* noted that the Seventh Circuit in *Continental* provided guidance to trial

courts very similar to that given by the Third Circuit to its trial courts:

> A judge is not permitted to destroy substantial entitlements to attorneys' fees on the basis
> of his inarticulable and unsubstantiated dissatisfaction with the lawyers' efforts to
> economize on their time and expenses.

*Hunt's Health Care*, 161 B.R. at 977 (citing *In re Continental Illinois Sec. Litigation*, 962 F.2d

566, 570 (7th Cir. 1992)).

The United States Bankruptcy Court for the Eastern District of New York stated it plainly:

"The fee application process should be elementary.  An entity making an application for fees must

make a prima facie case in support of the requested award."  *Blackwood*, 165 B.R. at 111 (citing

*Hunt's Health Care*, 161 B.R. at 980-981); 11 U.S.C. § 330(a), 331 (1994); Fed. R. Bankr. P. 2016

(1994).  "What follows is that an objecting party must 'substantively confront[] the time

allotments and tasks performed.'"  *Blackwood*, 165 B.R. at 111-112.

> The amount requested by a fee application cannot be considered unreasonable simply
> because *one party feels* it is excessive: "Objectors *have the responsibility to challenge
> [the] information* [presented in a fee application] and *to produce evidence controverting
> that produced by the applicant. . . . '[A] gestalt reaction that there was too much time
> spent . . . isn't good enough.'"  *Hunt's Health Care*, 161 Bankr. at 981-982 (quoting

---

[10]    The Third Circuit stated that we "deem it necessary at this juncture to restate in this
context what we have stressed in another: that we do not intend that a district [or bankruptcy] court,
in setting an attorney['s] fee, become enmeshed in a meticulous analysis of every detailed facet of
the professional representation. It . . . is not our intention that the inquiry into the adequacy of the
fee assume massive proportions, perhaps even dwarfing the case in chief."  *Busy Beaver*, 19 F.3d
at 844-845.

*Steinlauf v. Continental Ill. Corp. (In re Continental Ill.* Sec. Litig.) 962 F.2d 566, 570 (7th Cir. 1992))

*Id*.

In each case cited, *Blackwood*, *Hunt's Health*, and *Continental* the objections were denied because the objecting party failed to meet its burden to show that the time articulated in the fee applications were not reasonable. "A party opposing a fee application must carry the burden of explaining what therein is unreasonable or, at least, what would be reasonable under the circumstances. Absent such evidence by the objectant, the opposition fails." *Blackwood*, 165 B.R. at 112.

Additionally, the Court noted that it is not for the reviewing court to supply the evidence or the detail required to support a general pleading objection. Thus, "just as the court should not justify a fee for the applicant, it should not have to fashion an objection for a complaining party." *Blackwood*, 165 B.R. at 111-112; *Hunt's Health*, 161 B.R. at 983.

The United States Bankruptcy Court for the Southern District of New York adopted the same reasoning in the *Quigley* case. *Quigley*, 500 B.R. at 357; *In re Abel*, 2001 Bankr. LEXIS 2305, at *3 (Bankr. D. Vt. May 29, 2001) ("A party objecting to a fee application has a responsibility to challenge with specificity the information presented and to produce evidence controverting that produced by the applicant."); *Blackwood*, 165 B.R. at 112 ("A party opposing a fee application must carry the burden of explaining what therein is unreasonable or, at least, what would be reasonable under the circumstances. Absent such evidence by the objectant, the opposition fails. It is not for the Court to supply such evidence or the detail required to support the objectant's overly general pleading." (citations omitted)).

*Quigley* also held that "the Court has an independent duty to review the fee application, but it does not have the duty to search for evidence to support the UST's general objection." *Id*.

at 358.   The Court held that the professionals time records allow the Court to determine the reasonableness and necessity of the services rendered, and no further reduction was warranted.   *Id.*

Conversely, a party objecting to the amount of time spent on services has the burden of proving that too much time was spent, and cannot meet his or her burden merely by alleging a general dissatisfaction with the results.   *See In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 840 (Bankr. D. Vt. 1987); *Blackwood*, 165 B.R. at 112.   A party objecting to a fee application has a responsibility to challenge with specificity the information presented and to produce evidence controverting that produced by the applicant.   *See S.T.N. Enterprises*, 70 B.R. at 840; *Blackwood*, 165 B.R. at 112 (quoting *In re Continental Illinois Security Litigation*, 962 F.2d 566, 570 (7th Cir. 1992)).

The United States Bankruptcy Court for the District of Vermont also adopted the requirement that generalized objections shall be denied.   *Abel*, 2001 Bankr. LEXIS 2305 at *1. The Court held that the applicant is required to provide detailed support for its fee application and "[c]onversely, a party objecting to the amount of time spent on services has the burden of proving that too much time was spent, and cannot meet his or her burden merely by alleging a general dissatisfaction with the results."   *Id.* at *7-8 (citing to *S.T.N. Enterprises*, 70 B.R. at 840; *Blackwood*, 165 B.R. at 112.

The United States District Court for the Northern District of Illinois, in *Capital Acquisitions*, also applied the same restriction on generalized objections by a party to a law firm's fee application.   *See FTC v. Capital Acquisitions & Mgmt. Corp.*, 2005 U.S. Dist. LEXIS 18504 (D.N.D. Ill. 2005).   The Court found that the objector did not "challenge any specific time or billing rates, and does not even suggest what fees and expenses would be reasonable under the circumstances."   *Capital Acquisitions*, 2005 U.S. Dist. LEXIS 18504 at *20.   The Court quoted

the *Continental* Court stating that "a gestalt reaction that there was too much [time spent or that

fees are excessive] . . . isn't good enough. Rather, 'the objector must, at some point, identify any

allegedly improper, insufficient, or excessive entries and direct the court's attention to them.'" *Id.*

at *15. The Court gave specific instructions:

> None of Welland's objections rebut the presumptive reasonableness of the fees and
> expenses sought by the Receiver on behalf of its counsel. Welland does not
> challenge any specific time or billing rates, and does not even suggest what fees
> and expenses would be reasonable under the circumstances. *See In re Blackwood
> Assoc.,* 165 B.R. at 111-112; *In re Hunt's Health Care,* 161 F.R.D. at 982. His
> objections to Foley's fees and expenses amount to nothing more than an
> 'unsubstantiated dissatisfaction' with the Fee Motions, and thus fail to establish that
> the fees and expenses are unreasonable.

*Capital Acquisitions*, 2005 U.S. Dist. LEXIS 18504 at *20.

Similarly, the United States Bankruptcy Court for the Southern District of Georgia in

*Chavis* also held that a general objection was illegitimate and did not meet the burden required of

a party objecting to a fee application. *Chavis v. Spaulding (In re Chavis)*, 2004 Bankr. LEXIS

2648 (Bankr. S.D. Ga. 2004). The Court noted that the applicant had met its burden with a properly

detailed fee application. *Id.* The Defendant's counsel failed to make a specific objection to the

fee application, only arguing that fees were "generally excessive." *Chavis* began its analysis by

stating that:

> "[a]s one court noted,' [T]he amount requested by a fee application cannot be considered
> unreasonable simply because one party feels it is excessive: 'Objectors have the
> responsibility to challenge [the] information [presented in a fee application] and to
> produce evidence controverting that produced by the applicant . . . [A] gestalt reaction
> that there was too much time spent . . . isn't good enough.'"

*Id.* at *8-9 (quoting *Blackwood*, 165 B.R. at 111-12).

The Court then held that it reviewed the fee application and found it to be reasonable with

the exception of a combined 1.75 hours the Court found to be clerical in nature and approved the

remaining fees as the objecting party did not meet its burden by failing to make any specific objection. *Id*. at *9.

### D.      The Filing of the Fee Objection Had No Reasonable Basis and Triggers Bankruptcy Rule 9011

Courts have repeatedly stated that counsel must "undertake a proper inquiry into the law and facts" and, that in the event that a position is "without merit," proceeding in spite of known facts and law without a good faith basis (as is the case here), liability under Rule 9011 adheres to counsel as an operation of law. *In re Sowers*, 97 B.R. 480, 485 (Bankr. N.D. Ind. 1989). As such, counsel is mandated to undertake efforts to make certain an attorney or attorneys are not behaving in a manner that lacks even rudimentary support in both law and fact. The present litigation over the Fee Objection is the result of Hawk and its counsel failing to undertake the requisite analysis of case law on fee applications. Hawk ignores binding precedent in the Third Circuit. The Fee Objection is a paradigmatic example of a pleading that was filed in violation of Rule 9011.

Bankruptcy Rule 9011 adapts Federal Rule of Civil Procedure Rule 11 to bankruptcy proceedings. As such, it is implicated by the Fee Objection. *See generally Sowers*, 97 B.R. 480. Rule 9011 differs from Rule 11 in crucial ways, salient to the Fee Objection. *See generally id*. at 484 (discussing Rule 9011, the court noted that "Rule 9011 comes into play when an attorney or a party signs and submits a pleading or paper, the contents of which have not been subject to a reasonable inquiry or which is not well-grounded in fact and warranted by existing law."). Courts have held that Bankruptcy Rule 9011 triggers automatically, the moment an attorney applies his or her signature to a pleading. *See In re Two Star Surgical Supply Inc.*, 70 B.R. 241 (Bankr. E.D.N.Y. 1987) (holding that a violation of Rule 9011 is *immediate* upon the signing and filing of – in that case – a complaint that denied allegations that were known to be irrefutably and indisputably true). The automatic trigger of Rule 9011 is a crucial differentiating factor from Rule

11, though they have been deemed to be similar enough on a substantive level for the case law of Rule 11 to apply in Rule 9011 contexts as well. *See, e.g., In re Mapson*, 93 B.R. 161, 168 (Bankr. C.D. Ill. 1988); *see also Szabo Food Service Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987) (noting that, since Rule 11 and Rule 9011 are designed to discourage unnecessary filings, its violation *is complete the moment the offending paper is filed*).

Discussing the shared aspects of Rule 9011 and Rule 11, courts have found that the "test under Rule 11 is objective: litigation must be grounded in an objectively reasonable view of the facts and the law, and, if it is not, the lawyer or party proceeding recklessly must foot the bill." *In re Ronco, Inc.*, 838 F.2d 212, 217 (7th Cir. 1988). The Fee Objection is grounded in neither an objectively reasonable view of the facts nor prevailing law. It is clear from the law cited *supra* discussing the development of the "prospective" view of fee applications and what constitutes "reasonable" work at any given time in a bankruptcy case that the objecting party any other party joining in the Fee Objection had no reasonable or otherwise defensible basis for the Fee Objection. As such, the objecting party and its counsel have violated Rule 9011 and are subject to sanction by this Court.

For the avoidance of doubt: Hawk and its counsel should have been aware that the standard for fee applications has changed nationwide since the implementation of the Bankruptcy Code, and, even prior to the resolution of various circuit splits on the subject, only the Fifth Circuit, which decisively reversed its prior rulings, not just once, but twice, was a holdout regarding examining professional fees. *See, e.g., Woerner*, 783 F.3d 266; *In re Sylvester*, 23 F.4th 543 (5th Cir. 2022); *Pro-Snax*, 157 F.3d 414 (none of which is cited in the Fee Objection).

Given the Fee Objection's lack of support, both factually and legally, its filing was a violation of Rule 9011, particularly given its failure to cite applicable case law and its failure to

acknowledge the "prospective" view of professional fees, as indicated by its omission of any mention of *Top Sausage*, *Ames*, *Woerner*, *Sylvester*, and similar cases.

The filing of a pleading that is unsupported – or insufficiently supported – by the facts and law governing a bankruptcy case is itself sufficient to support 9011 sanctions.  The Fee Objection is not just unsupported and legally deficient.  It is also a litigation tactic designed to utilize the fee application process to harm the Debtors and prevent their counsel from receiving the compensation to which LBBS is entitled.

Additionally, the Fee Objection impermissibly mounts a gestalt objection, despite the well-settled law precluding such a generalized fee application objection.  *See, e.g., Busy Beaver*, 19 F.3d at 846; *C & A Enterprises,* 132 B.R. at 308; *Affinito*, 63 B.R. 495.  The purpose for the ban on gestalt, generalized objections is to provide estate professionals the opportunity to confront and address perceived deficiencies with a fee application, encouraging transparency and effectuating the public's interest in efficient insolvency proceedings.  *See id*.  The Fee Objection was filed in derogation of established case law both in this Circuit and throughout the country, which, on its own would likely constitute a violation of Rule 9011.  In combination with the lack of support for the Fee Objection and its role as a litigation tactic, the filing of the gestalt objection is certainly another violation of Rule 9011.

Bankruptcy Rule 9011 is not the only deterrent against the weaponization of fee application litigation.  28 U.S.C. § 1927 provides that "[a]ny attorney . . . admitted to conduct cases in any court in the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The conduct of the Hawk Parties is vexatious and has multiplied the proceedings in these Chapter 11 Cases.  This court is authorized

to implement these sanctions.  *See In Volpert*, 110 F.3d 494 (7th Cir. 1997).  Sanctions under

Section 1927 can be cumulative with sanctions under Rule 9011 – they are not mutually exclusive

and courts frequently apply both Section 1927 and Rule 9011 to deter impermissible conduct by a

party.  *See, e.g., Sowers*, 97 B.R. at 484 ("To an extent these two provisions [Rule 9011 and §

1927] overlap, so that so that the same act may constitute a violation of either or both of them").

The primary difference between Section 1927 and Rule 9011 is that Rule 9011 is *automatic* when

an offending paper is filed and served, whereas Section 1927 requires the Court to make a

determination as to what level of sanction to apply.  *Id*. at 487 ("[C]ounsel has violated both [Rule

9011] and § 1927 [;] we must determine the appropriate sanction or award.  Under . . . 9011,

sanctions are mandatory once a violation of the Rule has occurred.  Under § 1927, whether . . .

sanctions are imposed is a question committed to the court's discretion").

    The Fee Objection squarely is a violation of Rule 9011 due to the fact that it was filed with

no basis in law or fact.  These sanctions are automatic, as the Fee Objection's lack of foundation

and good faith basis for such a pleading is clear.  This Court can and should also find that the Fee

Objection is sanctionable under Section 1927 as it seeks to weaponize the fee application process

in a manner that was deemed impermissible and sanctionable in *Asarco*.

### III.    CONCLUSION

WHEREFORE, LBBS respectfully request that this Court enter an order (a) approving the

Application, (b) overruling the Fee Objection, (c) granting sanctions, and (d) granting such other

and further relief as may be just and proper under the circumstances.

Dated: December 7, 2023

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

Bennett G. Fisher *(pro hac vice)*
24 Greenway Plaza #1400
Houston, TX 77046
Telephone: (346) 241-4095
Facsimile: (713) 759-6830
Email:
Bennett.Fisher@lewisbrisbois.com

-and-

Keith Kodosky *(pro hac vice)*
600 Peachtree Street NE, Suite 4700
Atlanta, GA 30308
Telephone: (404) 991-2183
Facsimile: (404) 467-8845
Email:
Keith.Kodosky@lewisbrisbois.com

*/s/ Rafael X. Zahralddin-Aravena*

Rafael X. Zahralddin-Aravena (PA Bar No.
71510)
550 E. Swedesford Road, Suite 270
Wayne, PA 19087
Telephone: (302) 985-6000
Facsimile: (302) 985-6001
Email: Rafael.Zahralddin@lewisbrisbois.com

-and-

Kevin Shaw *(pro hac vice)*
500 Delaware Avenue, Suite 700
Wilmington, DE 19801
Telephone: (302) 985-6000
Facsimile: (302) 985-6001
Email: Kevin.Shaw@lewisbrisbois.com

*Counsel to the Debtors*