IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>STREAM TV NETWORKS, INC.<br>    Debtor<br>        and<br><br>IN RE:<br><br>TECHNOVATIVE MEDIA, INC.<br>    Debtor. | Chapter 11<br><br>Case No. 23-10763 (MDC)<br><br><br><br><br>Case No. 23- 10764 (MDC)<br><br>(Jointly Administered) |

**MOTION OF THE UNITED STATES TRUSTEE TO DISMISS DEBTORS'
CASES FOR CAUSE UNDER 11 U.S.C. § 1112(b)**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), by and through his undersigned counsel, hereby moves (this "Motion") for entry of an order, pursuant to section 1112(b) of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, the "Bankruptcy Code"), dismissing the above-captioned cases. In support of this Motion, the U.S. Trustee states as follows:

**PRELIMINARY STATEMENT**

1.  For the bankruptcy system to function, debtors have an absolute duty of full disclosure and compliance with their reporting obligations. Bankruptcy law requires debtors to be honest and to take seriously the duty to fully, faithfully, and timely disclose their financial information. Debtors are also required to comply scrupulously with orders of the Court. The Debtors in these cases have failed to adhere to the obligatory high standards.

1

2. As more fully set forth below, theses chapter 11 cases should be dismissed because of the Debtors' (i) failure to timely file accurate and complete reports, (ii) failure to provide information requested by the U.S. Trustee, and (iii) failure to comply with the Rule 2004 Order of the Court, including a failure to attend the oral examination with a witness competent to testify and make a complete production of Court ordered documents.

3. The Debtors have consistently filed reports late, if at all, and have engaged in serial amendments thereto, calling into question whether any of the information of record and signed under penalty of perjury is accurate or merely a placeholder for yet more amendments to come.

4. The Debtors have not provided information to the U.S. Trustee sufficient to corroborate the information contained in their filed reports. Indeed, the incomplete information that has been provided to the U.S. Trustee indicates that the filed reporting is inaccurate.

5. The Debtors have failed to comply fully with the Rule 2004 Order issued by this Court. Moreover, the incomplete and insufficient production and limited testimony that were provided by the Debtors cannot be reconciled with the Debtors' filed reporting.

6. The Debtors' incomplete and unreliable disclosures and unwillingness to comply with their obligations under the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee Guidelines, and order of this Court demonstrate bad faith, and dismissal of these cases for cause is therefore warranted.

**JURISDICTION**

7.Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the Eastern District of Pennsylvania issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this Motion.

8.Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District.  Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts.  See *United States Trustee v. Columbia Gas Systems, Inc*. (In re Columbia Gas Systems, Inc.), 33 F.3d 294, 295–96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").  Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion.  *Id.*

9.The U.S. Trustee consents to the entry of a final order or judgment by the court if it is determined that the court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.  See L.B.R. 9014-3(b)(2).

**BACKGROUND**

10.On March 15, 2023 (the "Petition Date"), Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative" and collectively with Stream, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On April 10, an Order was entered granting joint administration of the cases for procedural purposes only (Docket No. 95).

### A. Late Filed, Inaccurate, and Serial Amendments to Monthly Operating Reports

11. The *United States Trustee's Operating Guidelines* (the "UST Guidelines") identify and explain the reporting requirements imposed on the Debtors, including the obligation to file monthly reporting. Monthly operating reports (each an "MOR" and collectively, the "MORs") are required to be filed by the twentieth day of the following month. The Debtors were provided a copy of the UST Guidelines shortly after the Petition Date. The UST Guidelines were discussed at the initial debtor interview conducted by the U.S. Trustee and attended by the Debtors and their counsel.

12. As more fully set forth below, the Debtors' MORs and amended MORs have not been filed timely and/or do not contain accurate and complete information. Further, the Debtors are either unable or unwilling to produce sufficient information to allow the U.S. Trustee to verify the sworn representations in their financial documents.

13. In the first four months of the bankruptcy case, the Debtors filed the MORs for March 2023 (filed on April 20 at Docket No. 132), Amended March 2023 (filed on May 5 at Docket No. 188), April 2023 (filed on May 25 at Docket No. 224), May 2023 (filed on June 21 at Docket No. 253) and June 2023 (filed on July 20 at Docket No. 300). The MORs were signed under penalty of perjury by Matthu Rajan ("Rajan"), the CEO of the Debtors.

14. On July 17, 2023, Rajan ("Rajan"), testified before this Court that Visual Semiconductor, Inc. ("VSI"), a related company of which he was also the founder and CEO, had paid Stream's post-petition operating expenses in the amount of $1.4 million dollars. In response to Debtors' counsel asking Rajan what the money was spent on, Rajan replied, "It was spent on payroll. It was spent on strategic vendors. It was spent on the electronics. It was spent on getting

4

things ready for production." Rajan also testified that debtor-in-possession bank accounts had not been opened. (Transcript of Hearing, August 17, 2023 (August 28, 2023 Docket No. 370)).

15. On July 18, 2023, the U.S. Trustee informed Debtors' counsel that Rajan's testimony regarding the payment of expenses was not consistent with the information disclosed in the Debtors' MORs for months March through June 2023, which did not disclose any expenses of Stream during that time. The U.S. Trustee demanded that the Debtors comply with their duty to file accurate MORs and explain why there was no disclosure of this information.

16. On September 1, 2023, Stream filed the July 2023 MOR (Docket No. 399). Attached to the MOR was a document titled Schedule 1, VSI Expenses Paid on behalf of Stream, Post Petition (March 16, 2023 to June 30, 2023) ("VSI Schedule 1") (Docket No. 399-3) (Exhibit 1).

17. VSI Schedule 1 indicated that VSI paid $750,812,90 to fund Stream's expenses from March 16 through June 30, 2023. The $750,812.90 amount listed in VSI Schedule 1 is materially different than the $1.4 million amount that Rajan testified under oath before the Court that VSI paid for Stream's expenses in his prior testimony. Despite the unexplained inconsistent amounts, Rajan signed the July MOR under penalty of perjury that the information was accurate.

18. On November 7, 2023, the Stream Debtor[1] filed the August 2023 MOR (Docket No. 459), September 2023 MOR (Docket No. 460) and a Supplement to the August and September MORs (Docket No. 463). The MORs were signed under oath and declared to be accurate and complete by Rajan. The Supplement was not signed by anyone.

---

[1] The MORs filed by the Technovative Debtor have been virtually identical since the Petition Date, showing no income, expenses, or operations. The MORs for the Stream Debtor report all the activity in the Debtors' cases and as noted *passim*, the reporting is deficient.

19. On December 8, 2023, the Stream Debtor filed the Second Amended March 2023 MOR (Docket No. 502). Attached to the MOR was a copy of a letter with a summary of expense items from VSI to Stream representing that VSI paid $85,161.53 during the reporting period, which is inconsistent with the amounts set forth in VSI Schedule 1 discussed above.

20. On December 8, 2023, the Stream Debtor filed the Amended April 2023 MOR (Docket No. 503), Attached to the MOR was a copy of a letter with a summary of expense items from VSI to Stream representing that VSI paid $331,134.30 for Stream expenses during the reporting period in exchange for shares of Stream stock, which again is inconsistent with the amounts set forth in VSI Schedule 1 discussed above.

21. On December 11, 2023, the Stream Debtor filed the Amended May 2023 MOR (Docket No. 512). Attached to the MOR was a copy of a letter with a summary of expense items from VSI to Stream representing that VSI paid $200,910.46 for Stream expenses during the reporting period in exchange for shares of Stream stock, which continues the pattern of being inconsistent with the amounts set forth in VSI Schedule 1 discussed above.

22. On December 8, 2023, the Stream Debtor filed the Amended June 2023 MOR (Docket No. 505). Attached to the MOR was a copy of a letter with a summary of expense items from VSI to Stream representing that VSI paid $243,871.98 for Stream expenses during the reporting period in exchange for shares of Stream stock, which yet again is inconsistent with the amounts set forth in VSI Schedule 1 discussed above.

23. The documents submitted by the Debtors, including invoices that are supposed to support the authenticity and amount of the claimed expenses by the Debtors, do not match the amounts set forth in either VSI Schedule 1 or the amounts set forth in the VSI letters attached to

the amended MORs for March through June 2023. There was no explanation provided for the difference in any submission by the Debtors.

24.     The MORs are inconsistent in reporting of an approximately $30 million receivable, sometimes listing it as an asset and sometimes not, causing a fluctuation in value of approximately $30 million just from inconsistent reporting of this one entry. The MORs are also inconsistent in reporting liabilities to insiders. The Debtors do not explain these significant discrepancies.

**B.  The Debtors Have Not Filed the Required Periodic Reports**

25.     The Debtors' interest in foreign entities and their assets appear to be an important potential asset in these cases. Pursuant to Bankruptcy Rule 2015.3, a debtor must file periodic financial reports of the value, operations, and profitability of each entity in which the debtor holds a substantial or controlling interest (except that the debtor does not need to file reports regarding any entity that is either a publicly traded corporation or is in bankruptcy). It is presumed that the debtor holds a substantial or controlling interest if the debtor controls or owns at least a 20% interest in the entity. This requirement ensures that a debtor discloses its interest in non-debtor entities, which may be a significant asset.

26.     The periodic report required by Bankruptcy Rule 2015.3 (the "Periodic Report") is provided through completion of Official Form 426 under penalty of perjury and filing of the same on the public docket. The first Periodic Report must be filed no later than seven (7) days before the first date set for the section 341 meeting of creditors. Subsequent reports shall be filed at least every six (6) months thereafter. See Bankruptcy Rule 2015.3(b).

27.     The 341 meeting of creditors in the Debtors' chapter 11 cases was scheduled for and held on May 5, 2023. Accordingly, the Debtors were required to file the first Periodic

Report by April 28, 2023, and the next report was due not later than six (6) months thereafter. The Debtors have not filed any Periodic Report, the first of which is now more than eight (8) months overdue and the second of which is two (2) months overdue.

### C. The Debtors Have Not Complied with the Rule 2004 Order

28. Considering the Debtors' failure (i) to file timely and accurate MORs and (ii) comply with the U.S. Trustee's requests to provide information to explain the discrepancies, the U.S. Trustee determined that a formal examination of the Debtors under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") was needed.

29. To that end, on September 18, 2023, the U.S. Trustee requested the Debtors consent to acceptance of a subpoena under Bankruptcy Rule 2004 for an examination of a designated representative of the Debtors under Rule 30(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules") and a production of documents. The Debtors consented to the request of the U.S. Trustee. (Docket No. 428).

30. On October 3, 2023, this Court entered the *Consent Order Authorizing the Examination of and Requiring the Production of Documents by the Debtor Pursuant to Fed. R. Bankr. P. 2004 and Local Rule 2004-1* (the "Rule 2004 Order") (Docket No. 433). Through the Rule 2004 Order, the Court, among other things, required the Debtors to produce documents by October 25, 2023, and authorized the U.S. Trustee to conduct an oral 2004 examination (the "Examination") on November 13, 2023, at 10:00 a.m.

31. The Examination and production of documents related to the acts, conduct, property, and financial condition of the Debtors including matters that affect the administration of the Debtors' cases, including information related to the MORs, proposed Plan, and Disclosure Statement.

32.     Notwithstanding that the Court ordered that the Debtors produce the documents set forth in the Subpoena (as that term is defined in the Rule 2004 Order) by October 25, 2023,[2] the Debtors did not comply with the production until November 3, 2023.

33.     On November 13, 2023, Rajan appeared with counsel at the Office of the U.S. Trustee as the Debtors' selected witness to give testimony on the topics and documents identified in the Subpoena.  During the Examination, it became evident that the Debtors did not produce all documents required by the Rule 2004 Order of this Court.  Both Rajan and counsel acknowledged that the initial production of documents was insufficient under the Subpoena and Rule 2004 Order. The Examination therefore was adjourned to December 11, 2023, to allow the Debtors to produce the required documents by November 27, 2023.

34.     The Examination was adjourned again to December 18, as the Court subsequently scheduled a hearing on December 11.  The Examination was further adjourned to December 20, 2023, at Debtors' counsel's request.

35.     On December 20, 2023, the Examination resumed.  As ordered by the Court, the scope of the examination included all the topics and documents set forth in the Subpoena.[3] Amanda Gonzalez ("Gonzalez") (but not Rajan) appeared with Debtors' counsel at the Office of the U.S. Trustee. The Debtors designated Gonzalez as the witness to give testimony on the selected topics and documents produced by the Debtors in response to the Subpoena. Shortly after the Examination began, it became clear that the witness did not have knowledge of all the

---

[2] *See* Rule 2004 Order "Based on the foregoing, it is now, therefore, ORDERED as follows:  The Debtors shall produce the documents set forth in Attachments A&B attached to the Subpoena by October 25, 2023 …"

[3] *See* Rule 2004 Order "… the scope of the examination includes but is not limited to the topics and documents set forth in Attachments A&B attached to the Subpoena."

topics identified in the Subpoena related to the acts, conduct, property, and financial condition of the Debtors including matters that affect the administration of the Debtors' cases.

36. Because the Debtors failed to produce a person prepared and qualified to testify about the topics and the information set forth in the Subpoena, the U.S. Trustee was unable to proceed with the Court ordered Examination. This notwithstanding that the Examination was scheduled by the Rule 2004 Order to be held on November 13, 2023, and had been adjourned for more than a month due to the Debtors' failure to produce the documents that had been required by October 25.

37. The documents submitted by the Debtors in response to the Subpoena remain inadequate and fail to provide a complete, accurate, and transparent picture of the financial condition of the Debtors. The Debtors have failed to make complete production of underlying supporting documents, including, without limitation, business ledgers, including income, expense, and payroll statements; accounts payable and receivable journals; and all statements, invoices, and receipts for expenses.

## RELIEF REQUESTED

38. Through this Motion, the U.S. Trustee requests entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, dismissing the Debtors' bankruptcy cases.

## BASIS FOR RELIEF REQUESTED

39. Bankruptcy Code section 1112(b) provides, in pertinent part, that "[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause[.]" 11 U.S.C. § 1112(b)(1); *In re Am. Capital Equip., LLC*, 688

F.3d 145, 161 (3d Cir. 2012). Although Bankruptcy Code section 1112 does not explicitly define "cause," subsection (b)(4) sets out a non-exclusive list of grounds that constitute cause for dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4).

40. Once the Bankruptcy Court finds cause, the burden shifts to the opposing party to demonstrate "unusual circumstances" establishing that dismissal would not be in the best interests of the estate and the creditors. 11 U.S.C. § 1112(b)(2); *In re Grasso*, 497 B.R. 448, 455 (Bankr. E.D. Pa. 2013).

41. Moreover, in the Third Circuit, "a Chapter 11 petition is subject to dismissal for 'cause' under 11 U.S.C. § 1112(b) unless it is filed in good faith." *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999). When a motion to dismiss a bankruptcy case is filed, the debtor bears the burden to establish good faith. *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009).

42. As noted by the Third Circuit,

> The term "good faith" is somewhat misleading. Though it suggests that the debtor's subjective intent is determinative, this is not the case. Instead, the "good faith" filing requirement encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings. Courts have implied such limitations to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws.

*Id.* at 618 n.8.

43. The desire to confirm a plan under Bankruptcy Code section 1129 does not in itself establish good faith. *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 127-28 (3d Cir. 2004) (holding that "a desire to take advantage of a particular provision in the Bankruptcy Code, standing alone … cannot establish good faith as a matter of law"). Moreover, "[t]he protection of the automatic stay … is not *per se* a valid justification for a Chapter 11 filing; rather, it is a consequential benefit of an otherwise good faith filing." *Id.* at 128.

11

### A. Cause to Dismiss Exists Pursuant to Bankruptcy Code section 1112(b)(4)(F)

44. Cause, as defined in Bankruptcy Code section 1112(b), includes the "unexcused failure to satisfy timely any filing or reporting requirement." 11 U.S.C. § 1112(b)(4)(F). There can be no dispute that the Bankruptcy Code requires debtors to file periodic MORs. Bankruptcy Code sections 1106 and 1107(a) require a debtor in possession to file the financial reports required by section 704(a)(8). Rule 2015(a) of the Federal Rules of Bankruptcy Procedure also imposes these reporting requirements upon the debtor. Local Bankruptcy Rule 2015-1 requires the debtor to file a copy of the MORs on the docket. The UST Guidelines explain the reporting requirements and were provided to and discussed with the Debtors. Nevertheless, the Debtors have not filed the MORs on a timely basis. Even more troubling, the Debtors filed MORs and amended MORs that contain inaccurate, contradictory information that demonstrates a failure of transparency with respect to their financial condition. In addition to the issues identified with the untimely and inaccurate MORs, the Debtors have simply failed to file the required Periodic Reports.

45. Timely filing of monthly operating reports is "one of the most fundamental and crucial duties of a debtor-in-possession." *In re Grasso*, 490 B.R. 500, 520 n.15 (Bankr. E.D. Pa. 2013). "Refusal or inability to provide financial disclosure sounds the death knell of a chapter 11 case. The failure to file monthly operating statements required by the Trustee's operating guidelines, whether based on inability to do so or otherwise, undermines the Chapter 11 process and constitutes cause for dismissal or conversion of the Chapter 11 proceedings." *In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995) (internal citations omitted).

46. The Debtors have repeatedly filed untimely MORs throughout the entirety of these bankruptcy cases. Untimely filing of monthly operating reports constitutes "cause" for

Case 23-10763-djb    Doc 534    Filed 12/29/23    Entered 12/29/23 17:06:28    Desc Main
Document    Page 13 of 19

dismissal or conversion under Bankruptcy Code section 1112(b)(4)(F). See *Alston v. DeAngelis* (*In re Alston*), No. 13-1855, 2013 U.S. Dist. LEXIS 168661, at *28 (E.D. Pa. Nov. 27, 2013); In re Berkman, No. 09-17860 ELF, 2010 Bankr. LEXIS 665, at *8 n.7 (Bankr. E.D. Pa. Mar. 10, 2010); *In re Wilkins Inv. Group, Inc.*, 171 B.R. 194, 196 (Bankr. M.D. Pa. 1994) ("The failure to file operating reports constitutes cause for dismissal.").

47.  Additionally, the MORs that have been filed have contained numerous contradictory and inconsistent entries that have necessitated multiple rounds of amendments. Even still, the figures reported in the filed MORs do not match the financial records supplied to the U.S. Trustee pursuant to the production of documents set forth in the Subpoena. The rolling, incomplete, and incorrect disclosures, on the docket and to the U.S. Trustee, additionally constitute cause for conversion or dismissal. *In re Korn,* 523 B.R. 453, 467 (Bankr. E.D. Pa. 2014) ("An inexcusable failure to make numerous, material financial disclosures supports a finding of cause for dismissal, conversion or the appointment of a trustee under § 1112(b)."); *See In re Melendez Concrete, Inc.*, 2009 WL 2997920, at *6 (Bankr. D.N.M. Sept. 15, 2009) ("the failures ... of the Debtor to schedule or disclose substantial claims against insiders until raised by the Bank's motion to convert or dismiss, failure to timely file the June 2009 monthly operating report, and failure to include an income statement and balance sheet as part of the operating reports for either June or July 2009, together with pre-petition conduct on the part of the Debtor, discrepancies between the Debtor's equipment list and the equipment list for the insurance policy, and the Debtor's lack of care in producing documents required by the Rule 2004 order, constitute cause to dismiss or convert.").

48.  Relatedly, simply filing the correct form on time is insufficient to comply with section 1112(b)(4)(F) when the timely filed document contains grossly erroneous material

information. "Filing a piece of paper is meaningless if the content is inaccurate, misleading, or wrong, thus the content of these documents is ... relevant [under § 1112(b)(4)(F)]." *In re Tucker*, 411 B.R. 530, 532 (Bankr. S.D. Ga. 2009); *see also In re Charles Street African Methodist Episcopal Church of Boston*, 499 B.R. 66, 115 (Bankr. D. Mass. 2013*); In re Hoyle*, 2013 WL 210254, at *10–11 (Bankr. D. Idaho Jan. 17, 2013); *In re Sanders*, 2010 WL 5136192, at *4 (Bankr. D.S.C. Apr. 29, 2010); *Korn*, 523 B.R. at 467 n.32. *cf. In re Stokes*, 2009 WL 3062314, at *17 (Bankr. D. Mont. Sept. 21, 2009).

49. The Debtors' failure to provide timely or accurate MORs falls under Bankruptcy Code section 1112(b)(4)(F) as an unexcused failure to satisfy timely any filing or reporting requirement.

B. **Cause to Dismiss Exists Pursuant to Bankruptcy Code Section 1112(b)(4)(H)**

50. Cause, as defined in section 1112(b), includes the "failure timely to provide information or attend meetings reasonably requested by the United States trustee." 11 U.S.C. § 1112(b)(4)(H). The U.S. Trustee is charged with supervising the administration of chapter 11 cases, including the debtor's performance of its statutory and fiduciary responsibilities. 28 U.S.C. § 586(a)(3). To fulfill that obligation assigned to it by Congress, the U.S. Trustee has adopted reporting requirements embodied in its UST Guidelines that a debtor-in-possession is required to fulfill. The UST Guidelines set forth the requirement to timely file MORs and note that a failure to file is cause for dismissal.

51. The Debtors have failed to file timely and accurate MORs as requested by the U.S. Trustee. The Debtors have also failed to provide the underlying documentation and records that supports the information reported by the Debtors. Therefore "cause" exists to convert or dismiss under Bankruptcy Code section 1112(b)(4)(H). *In re Kholyavka*, No. 08-10653 DWS,

14

2008 Bankr. LEXIS 2631, at *10-12 (Bankr. E.D. Pa. Aug. 20, 2008) (describing the statutory bases of the reporting requirements, the need to comply with the UST Guidelines, and the U.S. Trustee's duty to seek relief for reporting failures); *Hoyle*, 2013 WL 210254, at *3–4 (same).

    **C.**    **Cause to Dismiss Exists Pursuant to Bankruptcy Code Section 1112(b)(4)(E)**

52.    Cause, as defined in section 1112(b), includes the "failure to comply with an order of the court." 11 U.S.C. § 1112(b)(4)(E). The Rule 2004 Order required that the Debtors "shall produce the documents set forth in Attachments A&B attached to the Subpoena by October 25, 2023…" Notwithstanding the unequivocal Court order that the Debtors *shall* produce the documents by October 25, 2023, the Debtors did not produce any responsive documents until November 3, 2023. Indeed, the Debtors have continued to produce documents even after the failed Examination on December 20, 2023 (*i.e.,* the Debtors have tardily continued to produce documents on a rolling basis despite the production deadline set by order of the Court expiring approximately two (2) months prior).

53.    The Rule 2004 Order provided that the "scope of the examination includes but is not limited to the topics and documents set forth in Attachments A&B attached to the Subpoena[.]" The Rule 2004 Order further provides that "[t]he UST will defer taking the 2004 examination ('Examination') until after his review of the produced documents. After such review, the UST has the right to conduct the Examination of Debtors' designated representatives on November 13, 2023, at 10:00 am[.]" The Debtors did not inform the U.S. Trustee that their production was incomplete. Accordingly, the U.S. Trustee reviewed the documents and began the Examination on November 13 on the understanding that, albeit untimely, the Debtors had produced the documents required by the Rule 2004 Order. During the Examination, however, the U.S. Trustee learned that the production was materially incomplete. The Debtors agreed to

15

produce the required documents by November 27, 2023, and the examination was adjourned until after completion of that production.

54. On December 20, 2023, the Examination resumed. The Debtors designated Gonzalez as the witness to give testimony on the selected topics set forth in the Rule 2004 Order. The Debtors indicated Rajan was unavailable and gave no indication that Gonzalez was unable to provide the requisite – and significantly delayed – testimony on behalf of the Debtors. Nevertheless, shortly after the examination began, it became clear that the witness did not have knowledge of most of the topics of the Examination. Because the Debtors (i) failed to produce a person prepared and qualified to testify about the topics and the information set forth in the Subpoena and (ii) failed to produce all the documents they agreed to produce during the Examination on November 13, the U.S. Trustee was unable to proceed with the Court ordered Examination.

55. The Debtors will undoubtedly aver that their intentions were pure and provide explanations and apologies as to why they have not complied with the Rule 2004 Order. Nevertheless, Bankruptcy Code section 1112(b)(4)(E) does not require that the Debtors' failure to comply with the Rule 2004 Order be willful or the product of bad faith or fraud. The Debtors' failure to comply with the Rule 2004 Order constitutes cause for dismissal or conversion pursuant to Bankruptcy Code section 1112(b)(4)(E) regardless of the Debtors' intent. *Alston*, 2013 U.S. Dist. LEXIS 168661, at *27 ("Section 1112(b)(4)(E) does not require that the debtor's failure to comply be willful, or the product of bad faith or fraud.") (internal citations omitted); *In re Luar Cleaners Inc.*, 2016 Bankr. LEXIS 2434, at *7 (Bankr. D.P.R. June 29, 2016) ("Section 1112(b)(4)(E) provides that a debtor's failure to comply with an order of the court is cause to convert or dismiss a chapter 11 case. This section gives effect to the notion that compliance with

16

court orders is a fundamental obligation of any party. Because violations of a court's orders are disrespectful to the court, they are disrespectful to the judicial process. Section 1112(b)(4)(E) also reflects the fact that the protections that a debtor gains under the Bankruptcy Code travel in tandem with many obligations that the debtor must meet. In the bankruptcy context, if a debtor wants the protection the Bankruptcy Code offers, that debtor must be willing to abide by the orders a court enters. Notably, this section does not require that the debtor's failure to comply be willful, or the product of bad faith or fraud." (cleaned up, internal citations omitted)

56.     Indeed, it is incumbent upon the Court to demand fidelity to its orders. *In re Malmgren*, 277 B.R. 755, 759 (Bankr. E.D. Wis. 2002) ("If an order is to have any true meaning, if a party is to be able to place any justifiable reliance on an order, if a court is to have any credibility and command any respect, then it *must* enforce its own orders."). The Debtors' failure to comply with the production and examination requirements of the Rule 2004 Order constitutes cause for dismissal.

### D.    Cause to Dismiss Exists Pursuant to Bankruptcy Code Section 1112(b)(4)(G)

57.     Cause, as defined in section 1112(b), includes the "failure to attend … an examination ordered under Rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor." 11 U.S.C. § 1112(b)(4)(G). As set forth above, although the Debtors appeared at the Court ordered date for the Examination, the document production had not been completed. The Examination therefore was required to be adjourned. The Debtors thereafter appeared at the Examination with a witness that was unable to provide the testimony required by the Rule 2004 Order. The Debtors appearing for the Examination without being able to provide the required testimony is akin to simply failing to attend. The Debtors' attending the

Examination in a manner that prevented the Examination from actually occurring constitutes cause for dismissal.

## **CONCLUSION**

58. The Debtors' continued failure to provide complete, accurate and transparent disclosures; to comply with the provisions of the Bankruptcy Code, the Federal and Local Bankruptcy Rules, and the UST Guidelines requiring timely filing of the MORs and Periodic Reports; and the failure to comply with the Rule 2004 Order, all as set forth above, demonstrates that the Debtors are unable and unwilling to serve as a fiduciary.  By failing to comply with their duty to make spontaneous, full, complete, and timely disclosure in the reporting of their financial matters, the Debtors have failed to comport with their responsibilities as fiduciaries of their estates.  Against that factual backdrop, the Debtors cannot satisfy their burden of demonstrating that the bankruptcy filings are filed and operated in good faith.  Therefore, dismissal of the cases pursuant to Bankruptcy Code section 1112(b) is warranted.

**WHEREFORE,** the U.S. Trustee respectfully requests the entry of the Proposed Order attached hereto as **Exhibit A** granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated: December 29, 2023

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**For Regions 3 and 9**

By: /s/ *John Schanne*
John Schanne, Trial Attorney
Kevin P. Callahan, Trial Attorney
Office of The United States Trustee
Robert NC Nix, Sr. Federal Building
900 Market Street, Suite 320
Philadelphia, PA 19107
Phone: (215) 597-4411
Facsimile: (215) 597-5795
John.Schanne@usdoj.gov
Kevin.P.Callahan@usdoj.gov