## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>STREAM TV NETWORKS, INC.,[1]<br><br>     Debtor,<br><br>and<br><br>IN RE:<br><br>TECHNOVATIVE MEDIA, INC.,<br><br>     Debtor. | Chapter 11<br><br>CASE NO.: 23-10763 MDC<br><br><br>Chapter 11<br><br>CASE NO.: 23-10764 MDC<br><br>(Jointly Administered) |

### HAWK INVESTMENT HOLDINGS LTD.'S
### OBJECTION TO MOTION OF WILLIAM A. HOMONY
### IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR (I) EXPEDITED
### CONSIDERATION, SHORTENED TIME AND LIMITED NOTICE, (II) THE
### ENTRY OF AN ORDER REINSTATING THE AUTOMATIC STAY
### AS TO THE SECTION 225 ACTION, AND (III) FOR RELATED RELIEF

Hawk Investment Holdings, Ltd. ("Hawk"), as Collateral Agent for the secured noteholders of SeeCubic, Inc. ("SeeCubic"), a secured creditor of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative" and, together with Stream, the "Debtors") in the above-captioned chapter 11 cases (together, the "Chapter 11 Cases"), by and through its undersigned counsel, files this objection (the "Objection") to *Motion of William A. Homony in His Capacity as Chapter 11 Trustee for (I) Expedited Consideration, Shortened Time and Limited Notice, (II) the Entry of an Order Reinstating the Automatic Stay as to the Section 225 Action, and (III) For Related Relief* (the "Emergency Motion").  By the Emergency Motion, William A. Homony (the "Trustee"), in his capacity as Chapter 11 Trustee in the Chapter 11 Cases,

---

[1] The Debtors, along with the last four digits of the Debtors' federal tax identification numbers are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015).  The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

requested the Court grant the Trustee relief from the Court's Order [ECF No. 549] (the "Trustee Order") appointing the Trustee and modifying the automatic stay and the accompanying Memorandum Opinion [ECF No. 548] (the "Trustee Opinion") pursuant to Rule 60 of the Federal Rule of Civil Procedure (the "Civil Rules"), made applicable to these Chapter 11 Cases by Rule 9024 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules").  In support of this Objection, Hawk respectfully represents as follows:

## OBJECTION[2]

1.      Hawk's initial response to the Emergency Motion can be summarized in one word—bewilderment.  The Emergency Motion is completely unsupported by the facts alleged by the Trustee, and its necessity is belied by the true status and tenor of the communications between Hawk and the Trustee (through his counsel).  Though the Trustee previewed his intention to request this relief on January 24, 2024 during a status conference before the Court, the Trustee waited an additional five weeks before filing the Emergency Motion on an expedited basis, stating that he unilaterally "has determined that granting Hawk relief from the automatic stay … was premature," and demands the reimposition of the automatic stay for an undefined period of time.  *See* Emergency Motion, ¶ 17, 46.  Nevertheless, the Trustee has not identified any mistake by the Court or change in the relevant facts or circumstances which would warrant such extraordinary relief—because no such facts exist.

2.      Additionally, as set forth more fully below, Hawk has made every effort to work cooperatively with the Trustee and has offered the Trustee more time than he reasonably requires—and more time than originally requested—for his investigation to become acquainted with the facts of the Section 225 Action.  Yet the Trustee has confusingly refused to engage in any productive

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Emergency Motion.

discussions with Hawk outside of one initial phone call in mid-January.   Under the current timeline, the Trustee will have been appointed for 100 days prior to the (currently proposed) resumption of the Section 225 Action, which Hawk has consistently offered to continue if needed. This drastic relief—which would effectively unwind nearly a year's worth of work by this Court— is wholly unjustified by the allegations in the Emergency Motion and should be denied.

**A.   The Trustee has provided no factual or legal justification in the Expedited Motion to meet his burden under Civil Rule 60(b) and Bankruptcy Rule 9024**

3.   The Trustee cannot meet the exacting standard of Civil Rule 60(b), as applicable to these cases by Bankruptcy Rule 9024.  The Trustee has not provided any evidence of a "mistake" made by this Court as contemplated by Civil Rule 60(b)(1), nor has he identified any additional or intervening factual circumstances that would warrant such relief under Civil Rule 60(b)(6).  To support his position, the Trustee relies on a conclusory statement that his very appointment is a "changed circumstance" necessitating relief.   But his appointment is hardly a changed circumstance given that the stay was lifted *in the very same order*—the Trustee Order—after nine months of hearings before this Court and the Court's well-reasoned seventy-eight-page opinion. On this thin basis, the Trustee simply concludes "that granting Hawk relief from the automatic stay … was premature" and "superfluous," and, therefore, suggests he has met the standard under Civil Rule 60(b).  *See* Emergency Motion, ¶ 17, 49.

4.   Federal courts can "reconsider" the entry of an order or judgment under one of two rules under the Civil Rules—Civil Rule 59(e) and Civil Rule 60(b).  Civil Rule 59(e) allows a court to "alter or amend" an order under a more lenient standard, but such motion must be filed within 14 days of entry of the offending order or judgment.  *See* Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023 (reducing the time period in Civil Rule 59(e) from 28 days to 14 days).  If such motion for reconsideration is filed outside of this 14-day window, however, the more exacting

standards of Civil Rule 60(b) apply to provide the litigant one final Hail Mary.  *See In re Vascular Access Cntrs., L.P.*, 645 B.R. 804, 827–28 (Bankr. E.D. Pa. 2022) (quoting *Chaney v. Grigg (In re Grigg)*, No. 12-7008-JAD, 2013 WL 5310207, at *1 (Bankr. W.D. Pa. 2013)).

5.      Civil Rule 60(b) should not be construed liberally.  *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) ("Although the text of Rule 60(b)(6) states simply that a court may grant relief from a final judgment for 'any other reason that justifies relief,' courts have added a requirement that a party seeking Rule 60(b)(6) relief must demonstrate the existence of 'extraordinary circumstances' that justify reopening the judgment.") (internal footnote omitted). According to a 2022 opinion by Judge Chan in this jurisdiction:

> "Rule 60(b) does not confer upon the district courts a standardless residual discretionary power to set aside judgments.  Rather, [t]he remedy provided by Rule 60(b) is extraordinary and special circumstances must justify granting relief under it.…  Rule 60(b) is not read liberally to give a disappointed party an opportunity to relitigate his or her case [or] … present facts that were otherwise available at the time of judgment."

*In re Vascsular Access*, 645 B.R. at 828 (quoting *In re Express Car & Truck Rental, Inc.*, 455 B.R. 434, 439 (Bankr. E.D. Pa. 2011)) (internal quotation marks and citations omitted) (alterations in original).  "Moreover, it is well settled in the Third Circuit that a Rule 60(b) motion is not intended to serve as a substitute for an appeal.  Therefore, a court should not grant relief under Rule 60(b) when a party could have sought the same relief on direct appeal." *Express Car & Truck*, 455 B.R. at 439 (citing *Holland v Holt*, 409 Fed. App'x 494, 497 (3d Cir. 2010) (nonprecedential)).

6.      The Trustee cites to Civil Rule 60(b)(1), related to "mistake, inadvertence, surprise, or excusable neglect," and the catchall in Rule 60(b)(6), relating to "any other reason that justifies relief."  *See* Emergency Motion, ¶ 37; *see also* Fed. R. Civ. P. 60(b)(1), (6).  Considering subpart (1), "[r]elief is generally only warranted under Rule 60(b)(1) where a party made an excusable litigation mistake, or the judge made a ___substantive mistake of law or fact___ in the final

4

judgment or order." *In re Marinari*, 596 B.R. 809, 822 n.19 (Bankr. E.D. Pa. 2019) (emphasis added). Subpart (6) "is reserved solely for those 'extraordinary circumstances' for which relief from Rule 60(b)(1)–(5) is unavailable," and the standard is "stringent in order to accommodate the significant interest in the finality of final judgments." *See Express Car & Truck*, 455 B.R. at 441 (citing *Budget Blinds*, 536 F.3d at 255).

7.      Under this framework, the Trustee provided no basis for the Court to grant relief under either provision of Rule 60(b).

i.      *Civil Rule 60(b)(1) – Mistake, Inadvertence, Surprise, or Excusable Neglect*

8.      First, the Trustee alleges no mistake of substantive law or fact made by the Court in the Trustee Order or Trustee Opinion. This is because he cannot. In issuing the Trustee Order, the Court carefully considered mountains of evidence elicited painstakingly over nine months of hearings and dozens of interceding motions and ancillary disputes. After the close of evidence, the Court held the matter under advisement for three months in order to review hundreds of pages of trial testimony and post-hearing briefing. This substantial consideration and effort culminated in the Court issuing not only the Trustee Order, calling for the Trustee's appointment and granting relief from the automatic stay to conclude the Section 225 Action, but also the seventy-eight-page Trustee Opinion explaining in detail the bases for reaching its conclusions on each and the Court's reasoning for doing so simultaneously.

9.      Specifically relevant to the Court's ruling was that the Section 225 Action is a threshold issue that needed to be resolved in order to facilitate the Chapter 11 Cases' progress. *See* Trustee Opinion, at p. 77. The Court expressly stated, "resolution of [the Technovative Director Issue and the Debt Conversion Issue (each as defined in the Trustee Opinion)] ***will greatly advance resolution of the Debtors' bankruptcy cases by providing clarity regarding the status of the Technovative filing and whether, and to what extent, Hawk is a secured creditor for the***

5

***Debtors*****.**" *Id.* (emphasis added).  The Court was well aware of the importance of the Section 225 Action to these cases and the impact its resolution would have in facilitating a global resolution. Far from making a mistake, the Court's judgment was well-reasoned, measured, and proper under the circumstances.

10.     The Trustee disagrees, however, and argues the Court must have been mistaken after the Trustee unilaterally determined that the relief was "premature."  *See* Emergency Motion, ¶ 17 ("[T]he Trustee and his professionals … has [sic] determined that granting Hawk relief from the automatic stay regarding the Section 225 Action was premature ….").  The Trustee believes he needs more time to conduct his diligence and the Court made a mistake in not ensuring he had enough time to do so in the Trustee Order, for example, by enlarging the stay of effectiveness imposed under Bankruptcy Rule 4001(a)(3).

11.     The Court did not make any mistake in granting Hawk relief from the automatic stay to pursue the Section 225 Action.  It understood the issues before it and intentionally granted this relief while simultaneously appointing the Trustee.  In fact, the type of mistake alleged by the Trustee—*i.e.*, that the Court's conclusion was a mistake—is not the type of mistake contemplated by Civil Rule 60(b)(1) at all.  Civil Rule 60(b)(1) relates to mistakes of substantive law or fact— not outcome.  A mistaken outcome is more properly raised as an issue on appeal, which the Trustee did not timely pursue.[3]  Within the Third Circuit, it is well settled law that a court should not grant relief under Rule 60(b) when a party could have sought the same by appeal.  *See Express Car & Truck*, 455 B.R. at 439.  The Trustee certainly had the opportunity to pursue this issue on appeal— he did not, and it would be an abuse of this Court's discretion to grant such relief now.

---

[3] The Trustee was appointed on January 9 and had met with and spoke to Hawk as well as Mathu Rajan by no later than January 11—over a week prior to the January 19 deadline to file an appeal.  *See* Fed. R. Bankr. P. 8002.

ii.    *Civil Rule 60(b)(6) – Any Other Reason that Justifies Relief*

12.    Considering the Trustee's argument that some "other reason" justifies relief under Civil Rule 60(b)(6), the Trustee similarly fails to meet his exacting burden.  In the Emergency Motion, the Trustee baldly asserts that factual circumstances have "significantly" changed that justify granting this relief, but the only such "changed" circumstance that the Trustee has identified is the Trustee's own appointment.  *See* Emergency Motion, ¶ 46 ("[T]he Debtors' circumstances have changed significantly, including the appointment of the Trustee…").  The Trustee's appointment, though, is not a "changed" circumstance with respect to the Court's granting relief from stay—it was a component of the relief specifically contemplated by the Court.  Indeed, the first two paragraphs of the Trustee Order granted the appointment of the Trustee and granted relief from the automatic stay, respectively.  *See* Trustee Order, ¶¶ 1–2.  To assert that the Trustee's appointment constitutes a changed circumstance makes no sense, as they were specifically and intentionally ordered concurrently.

13.    As explained above, the Court was well aware of the fact that it was granting Hawk relief from stay concurrently with the Trustee's appointment, as the Court reasoned that resolution of the Section 225 Action would clarify several important issues necessary for the Trustee to manage and resolve the Chapter 11 Cases.  Conversely, the Trustee claims that granting relief from the automatic stay was "superfluous," because the "Trustee now oversees all the Debtors' operations."  *See id.* at ¶¶ 48–49.  In addition to dismissing the Court's reasoning, the Trustee's position also ignores the fact that the Technovative Director Issue and the Debt Conversion Issue remain outstanding,[4] and their resolution will greatly inform any strategy the Trustee wishes to

---

[4] In the Emergency Motion, the Trustee for the first time raises the issue of the UCC-3 Termination Statements and Hawk's filing of its UCC-5 Information Statements.  *See* Emergency Motion, at ¶¶ 22–23.  Hawk is, once again, confused as to the Trustee's intentions with raising this issue at this time, as the Debtors filed the UCC-3 Termination Statements improperly and without authority during the course of these Chapter 11 Cases and while the Section 225

pursue in these Chapter 11 Cases. For example, the Trustee says he "is now negotiating for a sale of the Debtors' assets" and "can get to a plan" (*see id.* at ¶ 46), but it is impossible for him to do if he does not know the extent of the secured debt or even whether Technovative is properly a debtor before this Court—threshold questions for determining whether a sale is appropriate under Section 363 of the Bankruptcy Code or any unencumbered assets for distribution under a plan exist.

14.     The Trustee also cites to the Trustee Opinion providing that the Trustee needs "to evaluate, resolve, and/or litigate the claims of Hawk, SLS, SeeCubic, Rembrandt, and others," but provides no explanation for why completing the Section 225 Action at this juncture would hinder such efforts. *See id.* at ¶ 50. In fact, the Trustee does not even know the extent or status of Hawk's claim until the Section 225 Action concludes, so he will not truly know if he even ***has*** any basis for objecting to Hawk's claim until such time.

15.     Similarly, the Trustee has noted that he may have other legal actions to pursue against Hawk, but the two causes of action the Trustee identifies in the Emergency Motion—equitable subordination and lender liability—are not "new factual circumstances," as they were already alleged as part of the Complaint in the Adversary Proceeding currently stayed in these cases.[5] Moreover, resolving the Section 225 Action will similarly have no impact on the Trustee's ability to evaluate, assert, or pursue such actions at a later date as part of the Adversary Proceeding.

---

Action remained outstanding. Thus, the Debtors had no basis under the UCC to terminate Hawk's financing statements.

[5] *See Complaint* [AP ECF No. 1] (asserting equitable subordination as Count IV and lender liability as Count XIX). In fact, the Trustee has the benefit of seeing Hawk's views on these particular claims. *See Brief in Support of Defendants Hawk Investment Holdings Limited and Arthur Leonard Robert Motion's Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction, Failure to Obtain Service, and For Failure to State a Claim* [AP ECF No. 86] (addressing equitable subordination at § III.F and lender liability at § III.R).

*See id* at ¶ 27.  If anything, the Section 225 Action will aid the trustee in making these decisions—not thwart him.

16.     In short, the Trustee has detailed no changed facts or law qualifying as "extraordinary circumstance" to suggest relief from stay is not still warranted and prudent.  The Court's decision to grant the relief concurrently with the Trustee's appointment was intentional and well-reasoned, and as the Court stated in the Trustee Opinion, "the circumstances that Hawk argued warranted stay relief early in the case have not changed—the Section 225 Action is ripe to be heard."  *See* Trustee Opinion, at 77.  This statement is as true now as it was in March 2023 and January 2024.

**B.     The Emergency Motion is wholly unnecessary, and the Trustee has misstated the factual background regarding his communications with Hawk**

17.     The Emergency Motion is also ultimately unnecessary and a waste of the Court's time.  In the Emergency Motion, the Trustee contends that Hawk has been unwilling to cooperate with the Trustee and rushed to the Court of Chancery to force the Trustee into an unreasonably fast timeline with respect to the Section 225 Action.  This is wholly untrue and unsupported by facts as documented in the ***full*** email exchange (as opposed to the abridged version attached to the Emergency Motion, which was missing almost a full month's worth of communications) between Hawk and the Trustee's counsel attached to this Objection as Exhibits A–F and summarized in Annex I, hereto.  Hawk has consistently offered to meet with the Trustee to work through the various issues and has requested the Trustee's input on timing to resume the Section 225 Action to no avail.

18.     In fact, Hawk initially contacted the Trustee and offered to assist the Trustee and his counsel familiarizing themselves with the Chapter 11 Cases, acknowledging the complex

history between the parties, which was compounded by Mr. Rajan's penchant for exaggeration.[6]
During this initial call, the Trustee did not mention any intention to reimpose the automatic stay,
and Hawk indicated its desire to have the Chapter 11 Cases conclude expeditiously, given the time
and expense already incurred.  However, Hawk did not mention or press a timetable regarding the
Section 225 Action and, instead, offered to assist the Trustee, including suggesting a meeting in
its Delaware office to review materials assembled during the case.

19.    Not until the status conference on January 24, 2024 did the Trustee first make his
interest in reimposing the stay known to Hawk.  The next day, the Trustee's counsel and Hawk's
counsel exchanged calls and emails on this point, with Hawk indicating that it did not see any need
to reimpose the automatic stay, because it believed the parties could consensually agree on a
timeline for the Section 225 Action.[7]  Instead of working with Hawk on such a timeline, the Trustee
requested Hawk consent to expedited consideration of a motion to reimpose the stay.[8]  At that
time, the Trustee requested a 60-day stay of the Section 225 Action (*i.e.*, through March 25), which
Hawk **_did not_** oppose by consent, but which it **_did_** oppose to be accomplished through a formal
reimposition of the stay.[9]  Also, on January 25, Hawk contacted the Court of Chancery's clerk's
office to obtain potential hearing dates.  The purpose of Hawk contacting the clerk's office was
that it realized the Court of Chancery was unlikely to have availability in the next 60 days, so the
Trustee's concerns were likely moot.

---

[6] *See* Exhibit A, at 1–2, attached to Annex I.

[7] *See* Exhibit B, at 1, attached to Annex I.

[8] While Hawk contests the expedited nature of the Trustee's request, the Court has already scheduled a hearing on the Emergency Motion as of the date hereof.  Nevertheless, it is important to note that the Trustee has been requesting Hawk consent to this matter being expedited since **_January 25_**—over five weeks ago.  Given that the Trustee waited five more weeks to  even file the Emergency Motion, there was no need for an expedited hearing then, and Hawk still believes it was improper for the Trustee to request it on an expedited basis now.

[9] *See id.*

20.    As the Court of Chancery had not yet seen the Trustee Order or Trustee Opinion, it directed Hawk to file the Trustee Order and Opinion on the Section 225 Action's docket as a condition to providing potential trial dates.  Hawk informed the Trustee of this mandate, which the Trustee requested Hawk not fulfill and, instead, to request a status conference with the Court of Chancery.[10]  Hawk explained that the Court of Chancery would not hold a status conference absent reviewing the orders lifting the stay and urged the Trustee to have his counsel become counsel of record in the Section 225 Action, so he and his counsel could communicate directly with the Court of Chancery.  The following day, Hawk filed the Trustee Order and Trustee Opinion on the docket attached to a letter, which it immediately provided to the Trustee and the Debtors' counsel of record in the Section 225 Action.[11]

21.    The Court of Chancery then provided Hawk with hearing dates, the latest of which was over 60 days from the date of the Trustee's appointment, which Hawk again instantly forwarded to the Trustee for his input, noting Hawk had to respond to the Court of Chancery by the following day.[12]  Despite this procedure being common practice in Delaware, the Trustee accused Hawk of having *ex parte* communications with the Court of Chancery, failing to disclose to the Court of Chancery that the Trustee had been appointed and was seeking a reimposition of the stay, and attempting to obtain hearing dates without conferring with the Trustee.[13]  Hawk attempted to explain its purpose in contacting the Court of Chancery, including the potential mootness of the Trustee's request to reimpose the stay, and informed the Trustee that he needed to

---

[10] This exchange occurred on a telephone call.

[11] *See* Exhibit C, at 23–24, attached to <u>Annex I</u>.  Exhibit C-1 includes the Letter referenced in the original email.

[12] *See* Exhibit D, at 1–3, attached to <u>Annex I</u>.

[13] *See* Exhibit E, attached to <u>Annex I</u>.  Though the email from Court of Chancery offered April 15, Hawk actually obtained a continued date of April 18 to afford even more time to the Trustee.

have his counsel appear as counsel in the Section 225 Action in order to be copied on any direct communications with the Court of Chancery.[14]

22.      Having received no further input from the Trustee by the January 30, Hawk's counsel was forced to respond to the Court of Chancery. Hawk informed the Court of Chancery that it would select the latest possible date offered—April 18 (*i.e.*, 100 days after the Trustee's appointment).[15] In this communication, Hawk did as the Trustee requested and notified the Court of Chancery of the appointment of the Trustee (although that was obvious from the Trustee Order filed on the docket), and noted that the trial may have to be postponed as the parties worked through these issues, including the Trustee's request to reimpose the automatic stay.[16] Again, Hawk informed the Trustee of this communication, noting that the date was beyond the Trustee's requested 60-day stay, but reiterated its willingness to continue the hearing if needed.[17] The Trustee again accused Hawk of wrongdoing and increased his requested stay to 120 days.[18] Hawk attempted to clarify the Trustee's request, but the Trustee never did so,[19] despite Hawk's repeated requests for such explanation.[20] Despite Hawk's attempts to explain again its concerns and

---

[14] *See* Exhibit C, at 21–22.

[15] Additionally, not only is April 18 exactly 100 days following the Trustee's appointment, but it is also over 60 days after the Court granted the appointment of the Trustee's special counsel on February 16 and is 85 days after the date for which special counsel has reserved the right to assert it provided services for compensation purposes. *See Order Granting Application of the Chapter 11 Trustee to Employ Steven M. Coren, Esquire and Coren & Ress, P.C. as Special Counsel to the Chapter 11 Trustee*, at 2 n.2 [ECF No. 587].

[16] *See* Exhibit D, at 1–2.

[17] *See id.* at 1.

[18] *See* Exhibit C, at 15.

[19] *See id.* at 14.

[20] *See id.* at 10, 4 (including emails from S. Caponi and M. Westbrook on January 30, requesting clarification on the 120-day request, and follow up email from M. Westbrook on February 16, with the Trustee ignoring such requests for clarification until February 18, when M. Vagnoni asserted the reasons for the request were clear and concluded, "I don't think any further clarity is necessary")

positions, the Trustee has been unwilling to meaningfully engage, culminating in his counsel's final, one-word email response: "Whatever."[21]

23.      Despite the Trustee's apparent intention to end the discussions, Hawk followed up several days later with a formal, written (yet, opening) proposal for a global strategy in the Chapter 11 Cases.[22]  In response, the Trustee proposed times to meet in-person to discuss the proposal and other matters.[23]  Hawk noted that with only two-days' notice, it could not arrange schedules for an in-person meeting, as Mr. Caponi was in Florida and all other attorneys are out-of-state, but offered to meet virtually during the same times.[24]  The Trustee responded with another option for an in-person meeting (also only giving two-days' notice), which Hawk's attorneys again could not make in-person and proposed a virtual meeting instead.[25]  Ultimately, the Trustee ended the discussions, stating, "the Trustee is unwilling to meet by zoom at this time" and rejecting Hawk's proposal out-of-hand, without ever even making a counter-proposal or explaining his concerns.[26]

24.      The only reason that Hawk even reached out to the Court of Chancery was to obtain information in order to respond to the Trustee's request for a period of 60 days to evaluate the merits of the Section 225 Action.  Hawk worked diligently to keep the Trustee apprised of any such communication, and did not comment or characterize the Trustee Order as the Court of Chancery can read and interpret the court orders on its own.  Even aside from Hawk's continued and repeated offers to further delay the final hearing on the Section 225 Action, the Trustee has had every opportunity to appear in the Section 225 Action over the last month and seek an

---

[21] *See id.* at 1.

[22] *See* Exhibit F, at 6–8, attached to <u>Annex I</u> (redacted to remove details of settlement proposal).

[23] *See id.* 5–6.

[24] *See id.* at 5.

[25] *See id.* at 4.

[26] *See id.* at 2.

extension of time from the Court of Chancery, yet has consistently failed or refused to do so.  The Trustee's primary counsel, Obermeyer, has a Delaware office with at least one lawyer able to practice in the Court of Chancery, and the Trustee has appointed special litigation counsel in the form of Coren & Ress, P.C., presumably to assist in the Section 225 Action.   Even now, as of March 5, 2024, the Trustee has still not appeared in the Section 225 Action, despite Hawk urging him to do so no less than four times.[27]

25.     Hawk understands the Trustee's desire familiarize himself with these Chapter 11 Cases, but believes 100 days (with an offer to extend further as needed) is more than enough time to understand the issues pending in the Section 225 Action.  The issues in the Section 225 Action have been thoroughly briefed.  There is no further discovery required, and the record is closed. All other matters in both the Chapter 11 Cases and the Adversary Proceeding have been stayed indefinitely to allow the Trustee to focus on these issues.

26.     As stated many times, Hawk is baffled as to why the Trustee believes reimposing the automatic stay is a condition precedent to even discussing these matters.  There is no looming or impending deadline with respect to trial in such action for at least several more weeks—a date which Hawk has offered to extend further as needed consistently, including:

---

[27] *See* Exhibit C, at 23–24 (email from S. Caponi on January 25: "[I]f there will be a change in DE counsel [from previous counsel of record to the Trustee], I would suggest you take steps to file the appropriate paperwork sooner rather than later," because "only counsel of record can appear before the Court and will receive filing notifications."); *id.* at 20 (email from M. Westbrook on January 29, explaining: "It would be improper for [S. Caponi] to copy counsel for the Trustee, as they are not counsel of record.  Delaware courts do not communicate with firms that are not counsel of record."); *see id.* 6–7 (email from S. Caponi (with M. Vagnoni responses in-line in red) from February 19: "On several occasions, I reminded you and Stream's Delaware counsel that the Trustee should enter an appearance in the Chancery matter so you will receive notification directly from the Court and be in a position to advocate your own position.  It is not our responsibility to act as your advocate to the Court of Chancery."); *see id.* at 1 (email from S. Caponi February 20: "From the start we told/encouraged you to deal with the Court of Chancery directly and to share whatever views you wanted unfiltered by us…. For whatever reason, you have chosen to sit on your hands even through your firm has a Delaware office with a more than capable partner [admitted in Delaware]….").

- Email from S. Caponi on January 25: "I know Michael discussed with Margaret yesterday the concept of staying the 225 to provide the Trustee with time to get up to speed. We remain open to such an arrangement."[28]

- Email from S. Caponi on January 29 providing the trial date of April 18, and noting, "as noted below and in our prior communications, we are ready to discuss the Trustee's request for time to get up to speed on the DE issues and the setting of an appropriate trial schedule."[29]

- Email from M. Westbrook on January 29, concluding, "as noted in Mr. Caponi's e-mail and my e-mail, we remain willing to work with the Trustee to schedule a hearing date sufficiently far out so as to provide a reasonable amount of time for the Trustee to get up to speed."[30]

- Email from M. Westbrook on January 30: "As I mentioned during our call Thursday evening, our client is open to providing the Trustee additional time but is concerned about a few months becoming another 9 months."[31]

- Email from S. Caponi on February 19: "We remain open to discussing a reasonable extension of the trial date as may be requested by the Trustee and counsel beyond the current April 18 date, and to do so at the first opportunity during our next meeting."[32]

- Email from M. Westbrook on February 19, explaining, "Hawk specifically chose the _**latest**_ date that the Chancery Court provided, April 18, to give the Trustee plenty of time and facilitate the discussions we have been trying to engage in since the Trustee's appointment…. We continue to believe that any such motion is unnecessary and a waste of court resources, given that the hearing in Chancery is still 2 months away, and our continued and repeated offers to discuss the case and any potential further extensions with you, the Trustee and your litigation counsel."[33]

- Email from M. Westbrook on February 20, requesting any motion for expedited hearing include Hawk's "offer to discuss a schedule/extension and the Trustee's rejection of that offer."[34]

---

[28] *See* Exhibit C, at 23.

[29] *See* Exhibit D, at 1.

[30] *See* Exhibit C, at 20.

[31] *See id.* at 14.

[32] *See id.* at 8.

[33] *See id.* at 5 (emphasis in original).

[34] *See id.* at 3.

There is no reason why the Trustee should have filed the Emergency Motion rather than discussing the matter with Hawk and/or seeking a continuance in the Court of Chancery directly. The Trustee has refused to make an appearance in the Section 225 Case where he could voice any concerns regarding timing directly to Vice Chancellor Laster but has instead pursued the emergency reimposition of the stay from this Court. During all of the communications, not once has the Trustee proposed any time period of a further extension of the April 18 trial date—to Hawk or the Court of Chancery—other than the mention of "120 days," which he never clarified.

27.    The Trustee's position confuses Hawk, as he has provided no "outside date" for this proposed reimposition of the automatic stay or resuming the Section 225 Action or even explained what additional information he needs to understand prior to doing so. Indeed, the Trustee's counsel has indicated that the Section 225 Action is not the issue the Trustee believes he needs more time to understand at this point, but he has not explained what else is necessary. *See* Exhibit C, at 7 (explaining that the Trustee has "never commented that you have impeded the Trustee's ability to get his arms around the [Section] 225 Action" and, instead, suggested that Hawk is "unreasonably rushing the process of the Trustee digesting information that you have had years to develop and understand"). The only rational explanation to Hawk is that the Trustee is attempting to avoid the Section 225 Action (and any resulting adverse outcome) to gain leverage over Hawk for future negotiations or in the hopes that he can delay resolution of these Chapter 11 Cases until Hawk financially cannot remain involved. Though Hawk understands this tactic, it cannot agree to a situation where the onus will once again be placed on it to request relief from the automatic stay and litigate the issue for months before obtaining such relief—it has already done so, and expended millions of dollars in the process, including by preserving the value of the Debtors' subsidiaries during the last year of this case and previously during the state court receivership.

28.    As noted above, <u>Annex I</u> includes the full email history between the parties, including over a dozen emails the parties exchanged during the month of February 2024, which the Trustee entirely omitted from the Emergency Motion.  As the Court will see, through the entire history of the parties' communications, Hawk's counsel continually reiterated its intention to work with the Trustee and provide him the space he requested.  Hawk's sole requests were to work cooperatively to secure a reasonable court date.

## CONCLUSION

Accordingly, Hawk respectfully requests that the Court deny the Trustee's request in the Emergency Motion to reimpose the automatic stay and grant any other and further relief as it may deem just and appropriate.

Dated:  March 5, 2024                 **K&L GATES LLP**

                                      */s/ Steven L. Caponi*
                                      Steven L. Caponi, Esq. (No. 91881)
                                      600 King Street, Suite 901
                                      Wilmington, DE 19801
                                      Telephone: (302) 416-7000
                                      Facsimile: (302) 416-7020
                                      Email: steven.caponi@klgates.com

                                      -and-

                                      Margaret R. Westbrook, Esq.
                                      Aaron S. Rothman, Esq.
                                      Jonathan N. Edel, Esq.
                                      K&L Gates LLP
                                      300 South Tryon Street, Suite 1000
                                      Charlotte, NC 28202
                                      Telephone: (704) 331-7400
                                      Email: margaret.westbrook@klgates.com
                                             aaron.rothman@klgates.com
                                             jon.edel@klgates.com

                                      -and-

Thomas A. Warns, Esq.
K&L Gates LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 536-3900
Email: tom.warns@klgates.com


*Attorneys for Hawk Investment Holdings Ltd.*

<u>**Annex I**</u>

**Summary of Discussion and Negotiation History**
**(Supporting Emails attached hereto)**

- <u>January 5, 2024</u> – The Court enters the Trustee Order and Trustee Opinion, in which the Court ***does not*** waive or enlarge the Bankruptcy Rule 4001(a)(3) stay of effectiveness, rendering the Trustee Order's modification to section 362 stayed until January 19.

- <u>January 9, 2024</u> – The Trustee is appointed.

- <u>January 11, 2024</u> – Email from M. Westbrook to Trustee, introducing Hawk's counsel and offering a meeting to discuss the cases and logistical matters related to it.[35]

  - Email from M. Vagnoni to M. Westbrook accepting invitation to discuss the following week.[36]

- <u>January 16, 2024</u> – Initial call between Trustee's Counsel and Hawk's counsel, where Hawk offered a follow up meeting in person to go over documentation and other pertinent matters relevant to the Chapter 11 Cases.

- <u>January 19, 2024</u> – Bankruptcy Rule 4001(a)(3) stay of order expires;[37] deadlines to file appeal[38] and seek reconsideration lapse.[39]

- <u>January 24, 2024</u> – Status conference, where the Court continued all pending matters in the Chapter 11 Cases and the Adversary Proceedings indefinitely; the Trustee for the first time mentioned the possibility of filing a motion to reimpose the automatic stay.

- <u>January 25, 2024</u> – Hawk contacted Clerk of Court of Chancery to obtain potential hearing dates with the belief that if the next available trial dates are far off in the future, any potential motion to reimpose the automatic stay would be moot. Court of Chancery was unaware of the Trustee Order and Trustee Opinion and directs Hawk to file the same on docket before discussing timelines to not run afoul of the automatic stay.

  - M. Vagnoni emails M. Westbrook requesting a consensual reimposition of the automatic stay for ***60 days*** [*i.e.*, through March 25, 2024] "to permit the Trustee more time to fully understand the Section 225 Action and the many other aspects of the case,"

---

[35] *See* Exhibit A, attached hereto.

[36] *See id.*

[37] *See* F.R.B.P. 4001(a)(3) ("An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise.").

[38] *See* F.R.B.P. 8002(a)(1) ("[A] notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed.").

[39] *See* F.R.B.P. 9023 ("Rule 59 F.R.Civ.P. applies in cases under the Code.  A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment."); *see also* F.R.C.P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

while noting that the Trustee "would prefer to not waste the resources of having an expedited hearing."[40]

o M. Westbrook and M. Vagnoni call to discuss necessity for 60-day stay and Hawk's willingness to set the trial date more than 60 days out. Hawk informs the Trustee that the Court of Chancery has requested the filing of the Trustee Order and Trustee Opinion before it would discuss scheduling the hearing. M. Vagnoni requests time to discuss with the Trustee and requests status conference with Court of Chancery prior to making the filing, which M. Westbrook indicated would not work because the Court of Chancery needed the Trustee Order to ensure it did not risk violating the stay.

- January 26, 2024 – Hawk filed a Letter with the Court of Chancery and S. Caponi emailed A. Dupre (attorney of record of Stream in the Section 225 Action) and M. Vagnoni explaining that it needed to be filed as a direct request from the Court of Chancery, but noting that Hawk "remain[ed] open" to deferring the scheduling of the trial until the Trustee could get familiarized with the cases. S. Caponi also noted need for Trustee to obtain Delaware counsel if A. Dupre would no longer remain counsel of record.[41]

- January 29, 2024 – Court of Chancery provides dates for continued trial in the Section 225 Action of March 6, 8, 14 or April 11, 15.[42]

o Hawk promptly forwards these dates to Trustee's counsel requesting their opinion and noting that Hawk would be willing to postpone the trial date if needed.[43]

o M. Westbrook follows up with M. Vagnoni stating that Hawk is amenable to 60-day pause before resuming Section 225 Action trial, and noting communications with Court of Chancery regarding procedural issues in keeping the Trustee informed of developments when he is not counsel of record in the action.[44]

o M. Vagnoni responds voicing the Trustee's displeasure about Hawk contacting the Court of Chancery without copying Trustee's counsel or noting the Trustee's intention to reimpose the automatic stay and again requested Hawk's consent to an expedited motion to reimpose the stay.[45]

o M. Westbrook responds to M. Vagnoni explaining that (1) Hawk sought potential dates with the Court of Chancery only to provide such dates to be part of the discussions with the Trustee; (2) that the purpose of doing so was to avoid potentially litigating an issue unnecessarily since the Court of Chancery offered a date over 60 days in the future,

---

[40] *See* Exhibit B, attached hereto.

[41] *See* Exhibit C, attached hereto.

[42] *See* Exhibit D, attached hereto. As noted above, the email from the Court of Chancery offered April 15 as the latest hearing date, but ultimately scheduled the hearing for three days later—on April 18.

[43] *See* Exhibit E, attached hereto.

[44] *See* Exhibit C.

[45] *See id.*

which would comport with the Trustee's pending request; (3) that S. Caponi was *directed* by the Court of Chancery to file the Trustee Opinion and Trustee Order, which he did without commentary or posturing; (4) that the Trustee was not copied on any such communications, because he is not counsel of record in the Section 225 Action, but S. Caponi circulated courtesy copies of the communications to the Trustee immediately thereafter; and (5) once it became clear that the Court of Chancery expected Hawk to select a trial date, Hawk immediately contacted Trustee's counsel to inform them that the proposed trial date was beyond the Trustee's 60-day request, and to reiterate that Hawk would be amendable to further continuances as needed.[46]

- <u>January 30, 2024</u> – In compliance with the Court of Chancery's directive, Hawk requests the latest date offered by the Court of Chancery, noting to the Court of Chancery that the Trustee does not have counsel in the case but that S. Caponi would relay all messages to the Trustee. Hawk also informed the Court of Chancery that Hawk "will apprise the Court promptly if April 18 needs to change for any reason."[47]

  o M. Westbrook follows up with M. Vagnoni regarding timing for a continued discussion with respect to the cases.

  o M. Vagnoni replies to M. Westbrook requesting Hawk consent to expedited consideration of a motion to reimpose the stay.

  o M. Westbrook replies to M. Vagnoni stating Hawk "do[es] not see the need for motion practice at all since this seems like something that can be worked out between counsel, especially given our consent to a trial date more than 60 days from the date requested" and stating that there is no "emergency given the fact that we are seeking the latest date that the Court has offered, more than 75 days from today."[48]

  o M. Vagnoni reply that the Trustee "in the spirit of compromise … would be willing to agree to a consent order in the Chancery Court putting off the trial date for 120 days with a complete reservation of all rights including but not limited to the right to move before the Bankruptcy Court to reimpose the automatic stay." The Trustee reiterated that he did not consent to the April trial date and requested Hawk to inform the Court of Chancery that the Trustee requests additional time to determine how much time he needs to be prepared for trial.[49]

  o S. Caponi follow up email to M. Vagnoni and A. Dupre attaching communications between the Court of Chancery and S. Caponi's assistant (occurring during the foregoing email exchange) providing dates for continued trial and Hawk's request for the latest date and including a statement of the Trustee's request with respect to reimposing the stay. S. Caponi expressly notes "we are ready to discuss the Trustee's

---

[46] *See id.*

[47] *See* Exhibit D.

[48] *See* Exhibit C.

[49] *See id.*

request for time to get up to speed on the DE issues and setting of an appropriate trial date."[50]

- S. Caponi followed up to M. Vagnoni's prior email requesting the 120-day extension, apologizing for having missed the email prior to forwarding the aforementioned email with the Court of Chancery and requesting clarification on how to the Trustee envisioned calculating the 120-day extension.[51]

- <u>February 9, 2024</u> – M. Westbrook follows up with M. Vagnoni having heard no reply to the request for clarification for the 120-day extension, suggesting an in-person meeting to "speak more fully about the case and see if there are issues we could potentially resolve or streamline at this juncture, including addressing the amount of the secured debt."[52]

- <u>February 12, 2024</u> – M. Westbrook follows up with M. Vagnoni again after no reply, requesting times to meet to discuss the Chapter 11 Cases, and asking that the Trustee not attempt to negotiate with any other parties (such as SeeCubic or S. Stastney) with respect to the secured debt, as only Hawk has such authority due its status as collateral agent.[53]

  o  M. Vagnoni replies that he would propose times Wednesday (February 13) and Thursday (February 14) for a meeting.[54]

- <u>February 14, 2024</u> – Having heard no reply, M. Westbrook again followed up to M. Vagnoni informing him that Hawk's availability was limited over the coming weeks and requesting to schedule a meeting as soon as possible.[55]

- <u>February 16, 2024</u> – M. Vagnoni responded to M. Westbrook stating that the Trustee's special counsel (S. Coren) would need to appear during any meeting with Hawk, and he would not be available until the following week.  The Trustee then once again requested Hawk agree to reimpose the automatic stay on an expedited basis "so we can meet and have an open discussion without that issue looming."[56]

  o  M. Westbrook responds explaining that Hawk's schedules rendered the attorneys unavailable later in the week and offering an in-person meeting on Tuesday (February 20).  Once again, Hawk explained its belief regarding the lack of need to reimpose the stay given the timelines proposed—*i.e.*, over 75 days from the date when the Trustee had requested a 60-day stay.  Hawk noted that the Trustee never responded to the

---

[50] *See* Exhibit D.

[51] *See* Exhibit C.

[52] *See* Exhibit C.

[53] *See id.*

[54] *See id.*

[55] *See id.*

[56] *See id.*

requested clarification about the 120-day stay and indicated it would be good to discuss the matter at the in-person meeting to work through the issues.[57]

- <u>February 18, 2024</u> – Email from M. Vagnoni to M. Westbrook stating that Tuesday, February 20, would not work for the Trustee, and stating that no further clarification was needed with respect to the 120-day extension, due to the Trustee's special counsel needing time to assess the action and the Trustee's lack of consent to the April date.[58]

- <u>February 19, 2024</u> – Email from S. Caponi to M. Vagnoni (with M. Vagnoni's responses inline in red text), where S. Caponi requests additional times that might work for a meeting. Hawk continued by clarifying inaccuracies in M. Vagnoni's February 16 email, including that Hawk selected the latest date offered by the Court of Chancery to accommodate the Trustee and has repeatedly informed the Trustee that he needs to make an appearance in the Section 225 Action so the Court of Chancery can communicate with him directly. Hawk concluded by explaining the posture of the Section 225 Action and remaining open issues; the time the Trustee would have—and should reasonably need—to understand the matters in the case; and the open offer to defer the hearing to a later date if needed.[59]

  o M. Vagnoni responded to S. Caponi, requesting a proposal for the Chapter 11 Cases, stating that it has always been the Trustee's position to reimpose the automatic stay and accusing Hawk of placing undo pressure on the Trustee (erroneously claiming Hawk selected a March hearing date), explaining that the Trustee does not need the time to understand the Section 225 Action and instead needs to understand the entire history of the relationship between the parties, and requesting again Hawk agree to the reimposition of the stay and consent to the expedited nature of the relief.[60]

  o M. Westbrook responded to M. Vagnoni explaining again that Hawk selected the latest date the Court of Chancery would offer to give the Trustee as much time as possible to assess the case and engage with Hawk to reach a resolution, and stating that any emergency motion to reimpose the stay is unnecessary considering the hearing was (then) two months away and Hawk would be "willing to discuss any further extensions that you or your litigation counsel may need."[61]

- <u>February 20, 2024</u> – Email from M. Vagnoni to M. Westbrook, confoundingly saying Hawk's "willingness to discuss an extension is belied by your unwillingness to actually agree to an extension…." and stating that the Trustee would note that Hawk does not consent to expedited consideration in the Emergency Motion.[62]

---

[57] *See id.*

[58] *See id.*

[59] *See id.*

[60] *See id.*

[61] *See id.*

[62] *See id.*

- o M. Westbrook response to M. Vagnoni requesting that the Emergency Motion also note that Hawk's lack of agreement to expedited consideration of the Emergency Motion "was informed by our offer to discuss a schedule/extension and the Trustee's rejection of that offer." Hawk concluded by requesting dates to meet in person or virtually to discuss further.[63]

- o Email from E. George to M. Westbrook accusing Hawk of "posturing" as "an effort to prevent the Trustee from finding a meaningful opportunity to find a solution here," based on Hawk's failure to have "fully informed the [Court of Chancery] of the Trustee's positions" in its communications.[64]

- o Email from S. Caponi to E. George noting Hawk's continued encouragement to deal with the Court of Chancery directly by becoming counsel of record and the Trustee's failure to do so despite having a Chancery-admitted attorney at Obermayer, explaining that Hawk is not responsible for representing the Trustee, and noting that the Court of Chancery is fully aware of the relationships of the parties and posture of the Chapter 11 Cases and has not taken issue with Hawk's actions to date.[65]

- o Email response from E. George to S. Caponi: "Whatever."[66]

---

[63] *See id.*

[64] *See id.*

[65] *See id.*

[66] *See id.*

## <u>CERTIFICATE OF SERVICE</u>

I, Steven L. Caponi, certify that on March 5, 2024, I caused a copy of the forgoing *Hawk Investment Holdings Ltd.'s Motion of William A. Homony in His Capacity as Chapter 11 Trustee for (I) Expedited Consideration, Shortened Time and Limited Notice, (II) the Entry of an Order Reinstating the Automatic Stay as to the Section 225 Action, and (III) For Related Relief* to be served on those persons receiving notice through CM/ECF.

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 91881)