**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>**Stream TV Networks, Inc.,**<br><br>Debtor. | Chapter 11<br><br>Case No. 23-10763-AMC |
| In re:<br><br>**Technovative Media, Inc.,**<br><br>Debtor. | Chapter 11<br><br>Case No. 23-10764-AMC |

**OBJECTION OF VISUAL SEMICONDUCTOR, INC. TO THE
APPLICATION OF THE CHAPTER 11 TRUSTEE TO EMPLOY
CAPSTONE CAPITAL MARKETS LLC AS INVESTMENT BANKER**

Visual Semiconductor, Inc. ("**VSI**"), creditor, equity holder and party in interest of the Debtor herein, by and through its counsel, Spector Gadon Rosen Vinci P.C., hereby files an objection to the Application of the Chapter 11 Trustee to Employ Capstone Capital Markets LLC ("**Capstone**") as Investment Banker ("**Application**"), and in support thereof states as follows:

VSI is a creditor, party in interest and equity holder of the Debtor. VSI has invested funds in the Debtor since its inception in 2020. VSI posits that the Application lacks sufficient information for a creditor or party in interest to fully understand the nature of the intended retention or the fee arrangement, *i.e.*, the discreet assets which the Trustee intends to sell through the auspices of Capstone and why this retention is important at this juncture of the proceeding.

Further, the Application itself does not fully disclose the conflicts of interest presented by Capstone's retention – namely, (1) Capstone's prior-established relationship with VSI and (2) the

3893627v1

source of the payment of the Non-Refundable Retainer to Capstone, which VSI has reason to believe, based upon correspondence with the trustee, is Hawk itself who is one of the parties who has violated this Court's TRO by willfully failing to return estate assets (and a potential conflict with a possible source of the Retainer).

      **A.**      **The Application Lacks Sufficient Detail As To What Assets The Trustee Intends To Sell Through The Retention Of Capstone**

      1.      Nowhere in the Application does the Trustee list the assets which he intends to sell through the retention (at a hefty fee) of Capstone.

      2.      The identity of the assets is critically important as the Trustee has taken the position in prior pleadings in this Court that Debtor owns certain assets that other parties, including but not limited to Hawk Investment Holdings Limited ("Hawk") and SLS Holdings ("SLS"), have *unlawfully* taken, and the Trustee has made no known efforts to secure or recoup them. Further, it is believed as averred in prior pleadings filed by the Debtor (*i.e.*, the March 28, 2023 Debtor's Motion filed on an emergency basis seeking enforcement of the Automatic Stay) that SeeCubic and SCBV are exercising possession and/or control over these Estate assets (including the very important Bonding Equipment listed below), and interfering with Debtor's repossession and relocation of same, which Debtors have always stated to be essential to their business operations or in maximization of the value of the Detor itself for possible sale purposes.

      3.      In fact, VSI has information which leads it to believe that Hawk and SLS are illegally using Debtor's assets and producing income for their benefit, as opposed to the income rightfully being generated by and for the benefit of the Debtor. In fact, Hawk has even incredibly pleaded that the Bonding Equipment and other equipment are not even property of Debtor's estate despite that statement being contrary to Court findings. This has been known to the Trustee, but the Trustee has taken no known actions to retrieve these assets. Further, not only is the Trustee not

taking action to retrieve Estate assets, but it is blindly allowing Hawk and others to use these Estate assets in violation of the TRO entered by this Court.

4. These assets may include, but may not be limited to, the aforementioned specialized Bonding Equipment currently located in a warehouse in China, Intellectual Property, servers, Ultra-D demonstrator samples, laptops, software, *etc*.

5. As a party who may know of potential purchasers of Debtor's assets or who may want to be involved in the purchase of Debtor's assets, VSI posits that they, along with all creditors and parties in interest, have a right to know exactly which assets would be subject to a sale and what efforts Trustee has/is making to secure these valuable assets which would require the retention of an investment banker, herein Capstone.

**B. The Trustee Has Not Fully Identified All Potential Conflicts Of Interest In A Possible Attempt To Poach Into The Prior Relationship Between VSI and Capstone**

6. Any professional seeking to be retained must provide a "full, complete, and timely disclosure" of all the professional's connections to the debtor, creditors, and any other party in interest in the case. *In re Harris Agency, LLC*, 451 B.R. 378, 390 (Bankr. E.D. Pa. 2011).

7. "'These disclosures are not discretionary' and lawyers 'cannot pick and choose which connections are irrelevant or trivial." *In re Vascular Access Centers, L.P.*, 613 B.R. 613, 625 (Bankr. E.D. Pa. 2020).

8. Indeed, in the Third Circuit, courts have held that "[n]eglience does not excuse the failure to disclose a possible conflict of interests", and "an attorney's subjective good faith efforts are not the measure of the duty of disclosure under Rule 2014(a) and are irrelevant." *Id.* (*citing In re BH&P, Inc.*, 949 F.2d 1300, 1317 (3d Cir. 1991)).

9. Rather, "professionals 'who do not proceed carefully under the requirements of Rule 2014(a) do so at their own risk'", and "[v]iolation of Rule 2014(a) alone 'is enough to

3

disqualify a professional and deny compensation, regardless of whether the undisclosed connection or fee arrangements were materially adverse to the interests of the estate or were *de minimis.*" *In re Vascular Access Centers, L.P.*, 613 B.R. at 625 (*quoting In re Harris Agency, LLC*, 451 B.R. at 391; *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okl. 1992)).

10. Here, the Trustee's application to employ Capstone as investment banker must be denied if for no other reason that it has failed to disclose of all its connections to the Debtor, creditors, and any other party in interest in the case as required by Rule 2014(a). VSI knows this because it is the party whose connection was not disclosed!

11. VSI had previously been in contact with Capstone regarding Capstone's ability to secure investors for VSI's business operations since at least September 2022.

12. Throughout these discussions, VSI provided Capstone with an investment deck outlining the company's strengths, weaknesses, and goals; discussed specific content deals, developments, and potential investors; and provided periodic updates on its operations.

13. Much of the information provided by VSI to Capstone was confidential and not appropriate for public disclosure, and VSI took steps to protect that information by having Capstone sign a non-disclosure agreement related to their talks.

14. Despite the fact that Capstone received all of this information from VSI, who is a creditor, equity holder, and party in interest in the instant bankruptcy (thereby creating an actual conflict of interest), VSI itself was left off of the list used to conduct Capstone's conflict check.

15. This omission by the Trustee was especially problematic since the conflict check involved almost 200 names of individuals and entities, including VSI representatives such as Mathu Rajan and Nicole Mareen, and not VSI itself.

16. It appears that the Trustee did not correct the conflict check list for one simple reason – a possible plan to poach Capstone from VSI, and any disclosure of Capstone's prior relationship with VSI would threaten that plan.

17. Accordingly, because the Trustee failed to disclose an actual conflict existing between Capstone and the Estate for the purpose of inappropriately poaching Capstone from its prior relationship with VSI, VSI respectfully asserts that the Trustee should be precluded from hiring Capstone as investment banker for the Estate.

18. And even if it were determined that only a potential conflict of interest exists, that does not excuse the Trustee or Capstone from revealing that connection since a party "cannot pick and choose which connections are irrelevant or trivial." *See In re Vascular Access Centers, L.P.*, 613 B.R. at 625.

19. Nor can the Trustee and Capstone hide behind a claim that the failure to disclose Capstone's prior connection to VSI was simply a mistake since negligence will not excuse a failure to provide adequate disclosures. *See id.*

### C. Capstone's Impermissible Conflicts Of Interest Render Its Disqualified *Per Se*

20. Even if Capstone's connection with VSI were adequately disclosed, the Trustee's application to hire Capstone must still be denied due to the existence of actual conflicts of interest that disqualify it from being hired *per se*.

21. Under Section 327(a) of the Bankruptcy Code, a debtor-in-possession can employ a professional "that do[es] not hold or represent an interest adverse to the estate and that [is a] disinterested person[.]" 11 U.S.C. § 327(a).

22. An "adverse interest" is "any economic interest that would tend to lessen the value of the bankruptcy or that would create either an actual or potential dispute in which the estate is a

5

rival claimant." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005), while a disinterested person has been defined as a person who:

> (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

23. "The professional seeking to be retained under § 327(a) bears the burden of establishing that it is 'both disinterested and [does] not represent an interest adverse to the estate." *In re Vascular Access Centers, L.P.*, 613 B.R. at 624 (*citing In Re Big Mac Marine, Inc.*, 326 B.R. 150, 154 (8th Cir. BAP 2005)).

24. As explained by the Third Circuit:

> (1) Section 327(a), as well as section 327(c), imposes a per se disqualification [on any professional] who has an actual conflict of interest; (2) the district court may within its discretion – pursuant to section 327(a) and consistent with section 327(c) – disqualify [a professional] who has a potential conflict of interest and (3) the district court may not disqualify [a] professional on the appearance of conflict alone.

*In re Marvel Entertainment Group, Inc.*, 140 F.3d 464, 476 (3d Cir. 1998) (*citing In re BH&P, Inc.*, 949 F.2d at 1300)); *see also In re Boy Scouts of America*, 35 F.4th 149, 157-58 (3d Cir. 2022).

25. Because the boundary between "actual" and "potential" conflicts is "often unclear", a decision on what categories applies is left "within the sound discretion of the Court." *In re Woodworker's Warehouse, Inc.*, 303 B.R. 740, 743 (Bankr. D. Del. 2004) (*citing In re Marvel*, 140 F.3d at 476.

26. However, "the Court of Appeals for the Third Circuit has explained that 'a conflict is actual, and hence per se disqualifying, if it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest." *In re The Harris Agency, LLC*, 462 B.R. 514, 522 (E.D. Pa. 2011) (*citing In re Pillowtex, Inc.*, 304 F.3d 246, 250 (3d Cir. 2002)).

27. Moreover, even in situations where the Court only finds a potential conflict, it is clear that, "[i]n most instances a potential conflict should be the basis for disqualification; only if 'every competent professional in a particular field is already employed by a creditor or party in interest' or 'if the possibility that the potential conflict will become actual is remote' should a court permit retention." *In re Woodworker's Warehouse, Inc.*, 303 B.R. at 743 (*citing In re Marvel*, 140 F.3d at 476).

28. In this case, it is clear that there Capstone has multiple actual conflicts of interest requiring *per se* disqualification of its retention as investment banker to the Estate: (1) VSI, an equity holder and creditor of the debtor, has been in contact with Capstone since at least September 2022 and had provided Capstone with confidential corporate information; and (2) over half of Capstone's requested retainer is coming from a specific settlement with certain creditors that will create favoritism in any auction for the Estate's assets.

29. As discussed above, VSI and Capstone have been in contact since at least September 2022 with the goal of Capstone securing investors for VSI's operations. During those discussions, VSI presented an investment deck providing an overview of its business and disclosed confidential corporate information protected by a non-disclosure agreement.

30. But even if the conflict with VSI were not enough, there is an even more disturbing actual conflict of interest at play here.

7

31. VSI recently became aware that $54,000 of Capstone's $100,000 nonrefundable retainer (which must be paid prior to Capstone completing any work for the Estate) would come from the Court approving a separate settlement creditors of the Debtor herein, Hawk and SLS, and these are two (2) parties who are believed to be in breach of the Court-Ordered TRO and are unlawfully using estate asset. See Ex. "A", a true and correct copy of an email from counsel to trustee, Edmond George, Esquire to counsel to VSI, Leslie B. Baskin, Esquire, dated May 3, 2024 – essentially allowing those creditors to pay for over half of the initial compensation Capstone would receive.

32. Since Capstone is essentially receiving half of its retainer from SLS and Hawk, it may suggest some level of impropriety which this Court should not allow.

33. Therefore, because the hiring of Capstone would be rife with actual and potential conflicts of interest, VSI respectfully requests that the Trustee's Application be denied.

**WHEREFORE**, VSI respectfully requests that this Court enter an order denying the Application.

Respectfully submitted,

By: _____
Leslie Beth Baskin, Esquire
Spector Gadon Rosen Vinci P.C.
1635 Market Street, Seventh Floor
Philadelphia, PA 19103
Direct Phone: 215-241-8926
Fax: 215-531-9145
*Attorneys for Visual Semiconductor, Inc.*

8

## CERTIFICATE OF SERVICE

I, Leslie B. Baskin, hereby certify that on this 9th day of May, 2024, a true and correct copy of the foregoing Objection of Visual Semiconductor, Inc. to the Application of the Chapter 11 Trustee to Employ Capstone Capital Markets LLC As Investment Banker has been served, via the Court's electronic filing system, upon all counsel of record.

*Leslie B. Baskin*
Leslie B. Baskin, Esquire