UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>STREAM TV NETWORKS, INC.,[1]<br><br>Debtor,<br><br>and<br><br>IN RE:<br><br>TECHNOVATIVE MEDIA, INC.,<br><br>Debtor. | Chapter 11<br><br>CASE NO.: 23-10763 AMC<br><br><br>Chapter 11<br><br>CASE NO.: 23-10764 AMC<br><br>(Jointly Administered) |

**HAWK INVESTMENT HOLDINGS LTD.'S RESPONSE TO
REMBRANDT 3D HOLDING LTD.'S OBJECTION TO PROOFS OF CLAIM NO. 6
FILED BY HAWK INVESTMENT HOLDINGS LTD., "AS COLLATERAL AGENT,"
NO. 9 FILED BY SLS HOLDINGS VI, LLC, AND NO. 14 FILED BY SEECUBIC, INC.**

Hawk Investment Holdings, Ltd. ("Hawk"), as Collateral Agent for the secured noteholders of SeeCubic, Inc. ("SeeCubic"), a secured creditor of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative" and, together with Stream, the "Debtors") in the above-captioned chapter 11 cases (together, the "Chapter 11 Cases"), by and through its undersigned counsel, files this response (the "Response") to *Rembrandt 3D Holding Ltd.'s Objection to Proofs of Claim No. 6 Filed by Hawk Investment Holdings Ltd., "As Collateral Agent," No. 9 Filed by SLS Holdings VI, LLC, and No. 14 Filed by SeeCubic, Inc.* [ECF No. 628] (the "Objection"), filed by Rembrandt 3D Holding Ltd. ("Rembrandt"). By the Objection, Rembrandt seeks disallowance of the proofs of claim number 6 filed by Hawk (the "Hawk Claim"), in its capacity as collateral agent on behalf of the secured noteholders of SeeCubic, proof of claim

---

[1] The Debtors, along with the last four digits of the Debtors' federal tax identification numbers are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

number 9 filed by SeeCubic (the "SeeCubic Claim"), and proof of claim number 14 filed by SLS Holdings VI, LLC (the "SLS Claim"). By this Response, Hawk only responds to the Objection with respect to the Hawk Claim, and Hawk defers to SCI or SLS Holdings VI, LLC ("SLS") to reply in support of their own claims, if they so choose. In support of this Response, Hawk respectfully represents as follows:

## INTRODUCTION

1. Nearly five months after Mathu Rajan's removal as debtor-in-possession based on his "untrustworthy" motivations and likely fraudulent conduct, he is still exerting influence in these Chapter 11 Cases. *See* Order [ECF No. 549] & Memorandum [ECF No. 548], at pp. 31 (questioning Mr. Rajan's motivations and trustworthiness), 32–38 (finding the alleged Zhongsheng investment to be wholly unsubstantiated and "not real"). Mr. Rajan initiated the Chapter 11 Cases in order to relitigate his previous legal battles that he either had lost or was poised to lose—such as the 225 Action[2]—and the Objection is simply the continuation of this strategy.

2. By the Objection, Rembrandt has become Mr. Rajan's new mouthpiece and seeks to relitigate Mr. Rajan's past battles—including several matters that this Court has previously decided. For example, to sustain the Objection, the Court would need to issue rulings in (i) the 225 Action (*see* Objection, at ¶¶ 89–106)—despite the Court having already granted relief from the automatic stay for Hawk to conclude such action before the Delaware Court of Chancery; and (ii) the Adversary Proceeding[3] (*see id.* at ¶¶ 87–88)—despite the Court having placed it under the exclusive control of the Chapter 11 Trustee (the "Trustee"). Mr. Rajan, via Rembrandt, asks this Court to revoke those decisions, effectively throwing out the past 15 months of these cases.

---

[2] As used herein, the "225 Action" means the case captioned as *Hawk Investment Holdings Ltd. v. Stream TV Networks, Inc.*, C.A. 2022-0930-JLT (Del. Ch.).

[3] As used herein, the term "Adversary Proceeding" shall mean the case captioned *Stream TV Networks, Inc. v. Stastney*, No. 23-00057 (Bankr. E.D. Pa.), initiated by the Former DIP prior to the Chapter 11 Trustee's appointment.

2

3. It is not surprising that Rembrandt is doing Mr. Rajan's bidding by filing the Objection, as Rembrandt has acted as Mr. Rajan's "lap dog" for years—from serving as a petitioning creditor in the Debtors' second bad faith bankruptcy case (orchestrated by, and at the behest of, Mr. Rajan after Stream's first bad faith bankruptcy was dismissed),[4] to consistently supporting each of the Debtors' misguided pleadings throughout these Chapter 11 Cases,[5] to conspiring with Mr. Rajan to direct intellectual property to Mr. Rajan's other venture (Visual Semiconductor Inc., or "VSI") through multiple clandestine and unapproved post-petition agreements.[6] In other words, Mr. Rajan and Rembrandt have colluded for years in order to further Mr. Rajan's agenda to the detriment of the interests of legitimate creditors.

4. Indeed, Mr. Rajan's influence on these cases is alive and well, notwithstanding Hawk's efforts to date and the Court's previous rulings to limit such influence. Mr. Rajan's fingerprints are apparent throughout the Objection. The Objection continues many of Mr. Rajan's past practices and strategies (including his penchant for failing to comply with the local rules of this Court)[7] as well as by relying almost entirely on Mr. Rajan's statements made prior to his removal. *See* Objection, *ibid.* It is clear that the Settlement Agreement (attached to the 9019 Motion[8]) between Hawk and the Trustee has prompted Mr. Rajan to activate his operatives in these Chapter 11 Cases, as within a matter of days after the filing of the 9019 Motion, Rembrandt filed

---

[4] *See* Trustee Opinion, at p. 6.

[5] *See id.* at p. 9.

[6] *See id.* at pp. 49–51.

[7] *See* Local Bankruptcy Rule 3007-1 (imposing requirements on serving and scheduling claims objections); *see also* Transcript of April 24, 2023 Hearing, at 5:25–6:4 (Court: "This is at least a third time that I've had to admonish Debtor's counsel about following the local rules. Notwithstanding my prior instructions to review the rule, this was filed without following the process….").

[8] As used herein, the "9019 Motion" shall mean the *Motion of William A. Homony in his Capacity as Chapter 11 Trustee for Entry of an Order Approving a Settlement Agreement and Mutual Release with Hawk Investment Holdings, Ltd., as Collateral Agent for the Secured Noteholders of SeeCubic, Inc., Pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a)* [ECF No. 630].

the Objection, VSI and Rembrandt each filed objections to the Trustee's proposed retention of an investment banker [ECF No. 633 and 635, respectively], and both VSI and Rembrandt's attorneys each commenced an email campaign of saber rattling seeking to delay the hearing on the 9019 Motion.

5. Rembrandt should not be allowed to serve as Mr. Rajan's surrogate and prosecute the Objection to further his interests. Mr. Rajan's presence was a distraction at best—and outright fraudulent at worst—previously during these cases, resulting in the Court taking the extraordinary step of removing him as debtor in possession and appointing a trustee to exercise responsible management of Debtors. It is therefore not surprising that in the few months since Mr. Rajan's excision from the cases that the Trustee and Hawk have reached the Settlement Agreement in order to resolve all outstanding matters in these Chapter 11 Cases, to maximize the value of the assets to pay legitimate creditors, and to provide finality for the parties involved. The Objection is Mr. Rajan's most recent attempt to cause delay and confusion as he had done prior to his removal, and this Court should not allow him—or his surrogate, Rembrandt—to continue such distractions.

6. In addition to Rembrandt inappropriately acting as Mr. Rajan's co-conspirator, the Objection fails on its own merit as well. It serves only as an incomplete recitation of over a decade of misleading facts that have no bearing on the Hawk Claim or any other matter in these Chapter 11 Cases.[9] Rembrandt's potential causes of action for alleged infringement of its intellectual property rights do not implicate the Debtors' estates or whether the Debtors owe money

---

[9] This Response does not provide an alternative recitation of the relevant factual history, which is set forth more fully in the Hawk Claim. To the extent any refutation of the facts pertinent to the Hawk Claim are necessary, the facts set forth therein are incorporated herein by reference.

For an additional recitation of facts not directly pertinent to the Hawk Claim, Hawk incorporates (a) the Court's findings of fact included in the *Memorandum*, at pp. 2–26 [ECF No. 548] and (b) Hawk's factual allegations included in the *Brief in Support of Defendants Hawk Investment Holdings Limited and Arthur Leonard Robert Morton's Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction, Failure to Obtain Service, and For Failure to State a Claim*, at pp. 4–12, Adversary Proceeding [ECF No. 86].

4

to Hawk or its other creditors. Moreover, the Objection is procedurally and facially deficient and provides no basis to disallow the Hawk Claim. In fact, the Objection several times tacitly admits that the Hawk Claim endures. Accordingly, even ignoring the bad faith motivations of Rembrandt and its past history of carrying Mathu Rajan's banner, the Objection fails and should be summarily overruled.

## **RESPONSE**

7.     Though not entirely clear, the Objection appears to present four bases for the disallowance of the Hawk Claim.[10] First, the Objection attempts to call into question the *prima facie* validity of the Hawk Claim, the basis of which is vague at best. *See* Objection, at ¶¶ 89, 125. Second, it asserts that the Hawk Claim has previously been converted and no longer exists. *See id.* at ¶¶ 89–106. Third, it argues that the Hawk Claim remains convertible even if it has not yet been converted. *See id.* Finally, it argues that the Adversary Proceeding provides a basis for disallowance of the Hawk Claim and incorporates the arguments set forth therein into the Objection. *See id.* at ¶¶ 87–88. As set forth more fully below, each of these arguments fails.

**A.**   **Claims Objection Standard Generally**

8.     The standard for claims objections is well-settled. The Bankruptcy Code and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") accord *prima facie* validity to any properly filed proof of claim that is supported by documentation demonstrating the underlying obligations exist. *See In re George*, 606 B.R. 236, at 239 (Bankr. E.D. Pa. 2019); *see also* 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects."); Fed. R. Bankr. P. 3001(f) ("A proof of

---

[10] The Objection also states that the Hawk Claim, SLS Claim, and SeeCubic Claims are duplicative of each other; however, it does not appear to object to the Hawk Claim on this basis, concluding, "[s]ince Hawk is acting as 'Collateral agent,' SLS and SeeCubic's respective claims should be barred to the extent they duplicate the claim filed by Hawk." *See* Objection, ¶ 122.

5

claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). Specifically, Bankruptcy Rule 3001 outlines the requirements in order for a claim to obtain *prima facie* validity, including, when such claim is based on a writing, providing "a copy of the writing … with the proof of claim," and, if the claim is filed as secured, providing "evidence that [a] security interest has been perfected." *See* Fed. R. Bankr. P. 3001(c)(1), (d).

9. "If a claim is facially valid, the objector must bring forward **_evidence_** that undercuts at least one necessary element of the claim." *George*, 606 B.R. at 239 (emphasis added); *In re Allegheny Int'l, Inc.*, 954 F. 2d, 167, 173–74 (3d Cir. 1992) ("[A] claim that alleges facts sufficient to support a legal liability to the claim satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim."). Such evidence must be "evidence equal in force to the *prima facie* case" to overcome this presumption of validity. *See Allegheny*, 954 F.2d at 173. If the objector overcomes this presumption, the burden shifts back to the claimant to establish the existence of the claim by a preponderance of the evidence. *See id.* at 174.

**B.** **The Hawk Claim Is *Prima Facie* Valid**

10. The Hawk Claim complies with all relevant parts of the Bankruptcy Code and Bankruptcy Rules, and despite Rembrandt's naked assertions otherwise—unsupported by any argument whatsoever—it its entitled to *prima facie* validity. The Hawk Claim was based on a series of documents, negotiated and executed by and among both Hawk and SLS (as lenders) and Stream (as borrower), and, accordingly, included hundreds of pages of promissory notes (*see* Hawk Claim, Exhibits A, F, G, and H), security agreements (*see* Hawk Claim, Exhibits C and J), pledge agreements (*see* Hawk Claim, Exhibits D and M), financing statements (*see* Hawk Claim, Exhibits E and N), interest/fee calculations (*see* Hawk Claim, Exhibits B and I), related ancillary

6

documentation (*see* Hawk Claim, Exhibits K, L, and O), and an explanation of Hawk's standing to assert the Hawk Claim as previously determined by the Delaware Court of Chancery. The Hawk Claim, with its supporting documentation, fully comports with the requirements of the Bankruptcy Rules, as it attaches the documentation evidencing the debt obligations, the security interests and perfection thereof, and the interest calculations with respect thereto. *See* Fed. R. Bankr. P. 3001(c)(1), (d).

11. The Delaware Supreme Court has expressly found that the Hawk Claim is valid. *See Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323, 327 (Del. 2022). In issuing its ruling, the Delaware Supreme Court expressly found that SLS was Stream's "senior secured creditor" having loaned "$6 million to Stream through a series of secured notes," and Hawk is "Stream's junior secured creditor" having loaned "more than £50 million, plus $1.336 million, through a series of junior secured notes." *Id.* As security for the foregoing debts, "Stream pledged all of its assets" and executed supporting agreements that "authorized [SLS or Hawk, as applicable] to take control of Stream's assets to satisfy" the debts "if Stream defaulted." *Id.*

12. The Objection asserts without further explanation or argument: "For the reasons discussed in the preceding section, the claims of SLS, Hawk, and SeeCubic do not meet the standards for *prima facie* validity and should be disallowed as requested." Objection, ¶ 125. The "previous section" relates to the purported duplicity of the various claims filed by Hawk, SLS, and SeeCubic, yet such duplicity would have no bearing on the *prima facie* validity of any particular claim, which turns solely on the inclusion of supporting documentation. *See* Fed. R. Bankr. P. 3001. Moreover, merely lacking *prima facie* validity is not a basis for disallowance alone—there still must be some allegation or basis to assert that no debt underpinning the challenged claim exists or is outstanding, which the Objection fails adequately to allege (as discussed further below). *See In re Ahmadi*, 467 B.R. 782, 788 (Bankr. M.D. Pa. 2012) ("If, however, a claimant's proof of

7

claim fails to adhere to the rules, it is not simply disallowed; it merely loses any presumption of *prima facie* validity. Further, a claim may only be disallowed for reasons set forth in § 502(b), and not for failure to comply with [Bankruptcy] Rule 3001.").

13. Instead, it appears the only basis Rembrandt advanced to defeat the presumption of *prima facie* validity is Hawk's failure to attach the Conversion Agreements to its claim. The Hawk Claim's lack of inclusion of the Conversion Agreements, however, is wholly unrelated to the question, as (a) no portion of the amount of the Hawk Claim or its secured status is based upon the Conversion Agreements, so these documents are not required under the Bankruptcy Rules; (b) all parties in interest are aware of the existence of the Conversion Agreements, which have been of material importance to several of the disputes before this Court (and other courts) to date; and (c) even if the Conversion Agreements were included with the Hawk Claim, neither the amount nor status of the Hawk Claim would change, as there has been no determination that any portion of the Hawk Claim has been converted (and, indeed, several portions of the Hawk Claim are not subject to a Conversion Agreement in any event).

14. Accordingly, the Hawk Claim includes all documentation as required by the Bankruptcy Code and Rules in order to establish its *prima facie* validity, and the Objection includes no basis to hold otherwise. All documentation supporting the amount and secured status of the Hawk Claim was attached as evidence, and any alleged conversion of the debt remains subject to a *bona fide* dispute pending as part of the 225 Action, which had not been resolved due to the filing of the Chapter 11 Cases. It would be unreasonable to require Hawk to make the Debtors' (or Mr. Rajan's or Rembrandt's) argument for them by also including documentation to support a potential objection to the Hawk Claim as documentation. This is especially absurd in this case, considering Hawk has spent years litigating the fact that—although repeatedly alleged by Mr. Rajan and his allies—such a conversion has never occurred.

8

C. **The Hawk Claim Has Not Been Converted**

15. Next, the Objection asserts that the Hawk Claim should be disallowed because it "has already been converted due to prior investment in Stream …." *See* Objection, at ¶ 92. In doing so, the Objection continues Mr. Rajan's long-established practice of attempting to bypass the Court of Chancery's authority in the 225 Action to determine the question of conversion. As with each of the previous times Mr. Rajan has attempted this maneuver however, the Objection similarly fails.

16. Specifically, Rembrandt has produced **_no evidence_**—let alone evidence of sufficient weight to overcome the Hawk Claim's *prima facie* validity—to substantiate that any portion of the Hawk Claim has been converted. *George*, 606 B.R. at 239. In fact, the **_only_** "evidence" cited by the Objection at all is the *Declaration of Mathu Rajan in Support of Stream TV Networks, Inc. and Technovative Media, Inc. Chapter 11 Petition, Supporting Emergency Relief, and First Day Motions* [ECF No. 48] (the "First Day Declaration"), which the Objection cites **_no less than fifty times_**. *See* Objection, *ibid.* It should go without saying that Mr. Rajan's statements on the record in these Chapter 11 Cases should be accorded little—if any—weight, considering his removal as debtor-in-possession because of his self-interested motivations and lack of candor with the Court.[11]

17. The reason the Objection is devoid of any credible evidence of conversion of the Hawk Claim is simple—there is none. No such evidence exists, because the question of whether the debt underpinning the Hawk Claim had been converted was the central focus of the 225 Action,

---

[11] This Court removed Mr. Rajan from his position as debtor-in-possession, expressly finding that "the Court does not trust Mr. Rajan's interest in or ability to maintain the integrity of these bankruptcy proceedings. Months into the case, the Court lacks confidence that it has been given transparent information regarding what the Debtors are actually doing, who is doing it, at what stage those efforts are, and how that is being accomplished …." Trustee Opinion, at pp. 72–73. Notwithstanding the Court's reservations about Mr. Rajan's credibility, Rembrandt seems to believe Mr. Rajan's statements—and only his statements—are completely sufficient to form the evidentiary foundations of the Objection.

9

which the Debtors thwarted by commencing these Chapter 11 Cases on the eve of trial. *See* Trustee Opinion, at p. 7. In fact, the question of whether this Court should determine itself if such a conversion occurred or defer to the Delaware Court of Chancery to make such determination was the central point of contention before the Court with respect to Hawk's motion for relief from stay. *See id.* at pp. 25–26. The Court answered this question by modifying the automatic stay to allow Hawk to conclude the 225 Action and allow the Court of Chancery to determine whether any conversion had occurred. *See id.* at pp. 74–77. In fact, when the Trustee sought to have the Court reconsider its granting of this relief from stay, the Court expressly rules, "I understand the concern that those - - the decision in Delaware [on the 225 Action] could have some res judicata collateral estoppel effect, but ***I always understood that from the very beginning***. And one of the reasons ***I wanted them to go back was to come to some decisions that would affect issues pending before this Court***." Transcript of March 6, 2024, Hearing, *In re Stream TV Networks, Inc.*, at 42:4–9 (Bankr. E.D. Pa.) (emphasis added).

18.     Thus, Mr. Rajan—via Rembrandt—is asking this Court again to ignore its prior decision to defer to the Delaware Court of Chancery and make the conversion determination without reference to the 225 Action.[12] Importantly, the Trustee and Hawk have recently reached a Settlement Agreement that will completely resolve the 225 Action, in relevant part, by granting Hawk (as collateral agent) an allowed secured claim in the amount of $180 million. *See* 9019 Motion, at ¶ 53(a). As described in the 9019 Motion, the Trustee has determined "that continuing litigation over debt-to-equity conversion and other matters would be risky, costly, and perhaps

---

[12] This tactic is even more underhanded considering these Chapter 11 Cases have recently been transferred to the Honorable Ashely Chan after Chief Judge Magdeline Coleman's retirement. It appears Rembrandt hopes that Judge Chan either does not read the Trustee Opinion and does not realize the Court has already expressly and intentionally refrained from making this determination or that Judge Chan disagrees with Judge Coleman's decision as part of the Trustee Opinion and opts to try the issues anew. Either way, it is inappropriate and surreptitious to request such relief without reference to this Court's prior rulings, while understanding the posture of the Court.

10

leave the estate without unencumbered assets to market or sell." *See id.* at ¶ 37. As such, if this Court were to entertain Rembrandt's argument in the Objection that conversion has occurred, it not only would be disregarding its own prior ruling, but it would also be ignoring the Trustee's independent assessment of the risks and merits of the 225 Action.

19. Finally, the only "evidence" that any party can introduce with respect to whether any portion of the Hawk Claim has been converted is a decision from the Delaware Court of Chancery expressly finding that conversion ***had not occurred*** as of November 10, 2021. *See Hawk Inv. Holdings Ltd. v. Stream TV Networks, Inc.*, No. 2022-0930-JTL, 2022 WL 17258460, at *2 (Del. Ch. Nov. 29, 2022) [hereinafter the "Collateral Estoppel Opinion"]. Specifically, as part of the 225 Action, Stream had expressly made this exact argument with respect to conversion, and the Delaware Court of Chancery found that no such conversion had occurred as of November 2021. *See id.* at *17 ("To resolve the Omnibus Agreement Litigation, the court had to address whether a debt-to-equity conversion had occurred, and resolving that issue required a ruling on whether a triggering event for exercising the conversion right had occurred. The Court ruled on both topics [against Stream]. Stream cannot relitigate those rulings."). Though the Objection appears to challenge the Collateral Estoppel Opinion's effectiveness and propriety, it does so by asserting that the Delaware Court of Chancery applied the wrong standard for determining collateral estoppel and by claiming collateral estoppel may not apply to the facts at hand for various legal reasons. *See* Objection, at ¶¶ 96–98.

20. In other words, Rembrandt is asking this Court to sit in review of the Delaware Court of Chancery and overturn—or, at least, ignore—its determination that the prior decisions of the Delaware Supreme Court and Court of Chancery should be accorded collateral estoppel effect, in direct contradiction to the *Rooker Feldman* Doctrine. *See Marshall v. Abdoun (In re Marshall)*, 636 B.R. 396, 409 (Bankr. E.D. Pa. 2021) ("The *Rooker Feldman* doctrine deprives federal courts

11

of jurisdiction in cases 'brought by state court losers' complaining of injuries caused by state court judgments that were rendered before the district court proceedings commenced and which invite review and rejection of those judgments."). This Court has no authority to entertain an appeal of the Delaware Court of Chancery's ruling in the Collateral Estoppel Opinion, so this argument is inapposite, and the only evidence in the record establishes that the Debtors had not effectuated any conversion of its debts owed to Hawk as of at least November 2021. If Rembrandt (or Mr. Rajan) wished to challenge the Court of Chancery's determination in this regard, they should have filed an appropriate appeal or completed the 225 Action rather than requesting this Court violate long-standing federal law.

21. In sum, Rembrandt has not carried its burden in filing the Objection, as it has produced no evidence to indicate that the Hawk Claim has been converted other than Mr. Rajan's unsubstantiated and unreliable statements in the First Day Declaration. No such evidence exists, and the Trustee has determined that a settlement of the 225 Action is in the best interests of the estates. Rembrandt has no basis to interfere with or dispute that determination.

**D.    Whether the Hawk Claim Remains Convertible Is Not a Basis for Objection**

22. Third, and relatedly, the Objection asserts that if the Hawk Claim has not yet been converted, "it is presently convertible by new investment into Stream," so it should be disallowed. *See* Objection, at ¶ 92. Once again, the Objection includes no true argument supporting this contention, though it does note that Rembrandt has made a proposal to the Trustee that would result in the complete conversion of the Hawk Claim. *See id.* at ¶ 106. Once again, these arguments fail.

23. Whether or not a claim remains convertible has no bearing on its allowance as a claim in a bankruptcy case—the only question is whether or not such conversion occurred. Rembrandt has provided no law in support of this proposition, because there is none. This

argument is akin to saying that a debt is not allowable because it ***may be*** paid in full in the future. Of course, if a debt were satisfied, the creditor would no longer have an allowed claim, but until such satisfaction occurs, the claim remains. Similarly, until any such conversion occurs (to the extent it remains a possibility), the Hawk Claim endures. In fact, Rembrandt's allegation that the Hawk Claim remains convertible is an express admission that the underlying debts have not been converted, and remain outstanding obligations of the Debtors. Only a ***debt*** can remain subject to conversion to equity under a ***debt***-to-***equity*** conversion agreement, so the Objection admits that the Hawk Claim exists in this regard.

24. In reality, this argument in the Objection is a veiled attack on the Trustee's determination of the credibility—and ultimate rejection—of Rembrandt's proposal to fund a plan. Regardless, Rembrandt's proposal is irrelevant to the allowance or disallowance of the Hawk Claim. Any potential conversion of the Hawk Claim based on an equity investment by Rembrandt would not occur until (a) the Trustee accepts such a proposal from Rembrandt, (b) Rembrandt actually makes such an investment of a sufficient amount in the Debtors, and (c) all other conditions of the Hawk Conversion Agreement are satisfied (which remain the subject of a *bona fide* dispute in the 225 Action). Merely making a proposal that contemplates a transaction that may result in conversion is an abjectly insufficient basis to object to the Hawk Claim that must be denied.

**E.    The Objection Improperly Seeks to Litigate the Adversary Proceeding, Which Cannot Form the Basis of an Objection to the Hawk Claim**

25. Finally, the remainder of the Objection incorporates the "arguments and facts" included in the Adversary Proceeding and seems to assert the Hawk Claim should be equitably subordinated, stripped of its secured status, or otherwise disallowed based on alleged past bad actions related to a "scheme … to take the valuable assets of the Debtors, obstruct the ability

13

raise the money needed to go to production and convert the secured debt to equity, and to avoid paying $20 million in unsecured claims…." *See* Objection, ¶¶ 87–88. Such arguments, however, are insufficient to form a basis to object to the Hawk Claim, and a claim objection is not the correct procedural posture to ask the Court to make such a determination.

26. As an initial matter, there has been no determination in the Adversary Proceeding that any of the alleged bad actions and "takeover scheme" has occurred, and the unsubstantiated allegations lodged by Mr. Rajan in the Complaint are an insufficient basis to disallow the Hawk Claim. In fact, the allegations included in the Complaint relate solely to a decade-old alleged plot to manufacture defaults, conspire against the Debtors, and engage in other bad actions—all of which have already been determined conclusively not to have happened by the Delaware Court of Chancery. *See* Collateral Estoppel Opinion, at *17 ("Evidencing its wily ways with words, Stream argues that although it purportedly is not challenging the court's prior finding that 'a default event on the Hawk notes occurred in early 2020,' Stream nevertheless remains free to litigate its contention that there was an '***unlawful conspiracy that artificially manufactured the 2020 default*** events through bribery and internal sabotage.' That is another way of contending that a default never really occurred. If Stream wanted to advance that argument, it had to do so in the Omnibus Agreement Litigation. ***Collateral estoppel bars Stream from advancing that argument now***.") (emphasis added) (internal citations omitted).

27. More than just being barred by collateral estoppel, however, such a request as part of the Objection is procedurally deficient too. Specifically, such determinations ***cannot*** be made as part of the standard "contested matter" procedures applicable to the Objection and Hawk Claim, and, instead, must be made as part of an adversary proceeding. *See* Fed. R. Bankr. P. 3007(b); Fed. R. Bankr. P. 7001. Bankruptcy Rule 3007(b) provides, "[a] party in interest shall not include

14

a demand for relief of a kind specified in [Bankruptcy] Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." Fed. R. Bankr. P. 3007(b).

28. It is clear that Mr. Rajan and Rembrandt are unhappy with the trajectory of these cases since Mr. Rajan's removal, prompting them to file the Objection in an attempt to cajole this Court into ruling on questions which are only properly resolved in an adversary proceeding. The Adversary Proceeding includes claims related to equitable subordination,[13] avoidance of liens, and other equitable relief, each of which are types of claims expressly included in Bankruptcy Rule 7001. *See* Fed. R. Bankr. P. 7001 (providing a list of matters that are the subject of adversary proceedings and governed by Part VII of the Bankruptcy Rules, including "a proceeding to determine the validity, priority, or extent of a lien or other interest in property," "a proceeding to obtain an injunction or other equitable relief," and "a proceeding to subordinate any allowed claim or interest"). In other words, the Objection ***may not*** incorporate the actions alleged in the Adversary Proceeding (though the Adversary Proceeding may incorporate the matters alleged in the Objection).

29. The facts alleged in support of the Objection have no bearing on the Hawk Claim vis-à-vis a claim objection and all purely relate to alleged bad acts and unclean hands—the relief for which must be brought as part of an adversary proceeding. Accordingly, the Court should disregard all aspects of the Objection that would require the Court to make a determination in the Adversary Proceeding, including any allegation related to disallowance or removal of Hawk's liens, subordinating the Hawk Claim based on alleged inequitable conduct, and any request for injunctive or other equitable relief. These allegations are facially and procedurally defective and are of no consequence to the Hawk Claim in the current posture.

---

[13] Like the Hawk Claim's potential convertibility, the allegation of equitable subordination similarly assumes that the Hawk Claim exists—a debt cannot be subordinated if it is not a debt.

15

**CONCLUSION**

Accordingly, Hawk respectfully requests that the Court (i) overrule the Objection and decline to entertain Rembrandt's attempts to bypass this Court's prior rulings to collaterally attack the Hawk Claim, and (ii) issue any further relief as it may deem just and appropriate.

Dated:  May 16, 2024                         **K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi, Esq. (No. 91881)
600 King Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 416-7000
Facsimile: (302) 416-7020
Email: steven.caponi@klgates.com

-and-

Margaret R. Westbrook, Esq.
Aaron S. Rothman, Esq.
Jonathan N. Edel, Esq.
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, NC 28202
Telephone: (704) 331-7400
Email: margaret.westbrook@klgates.com
           aaron.rothman@klgates.com
           jon.edel@klgates.com

-and-

Thomas A. Warns, Esq.
K&L Gates LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 536-3900
Email: tom.warns@klgates.com


*Attorneys for Hawk Investment Holdings Ltd.*

## **CERTIFICATE OF SERVICE**

I, Steven L. Caponi, certify that on May 16, 2024, I caused a copy of the forgoing *Hawk Investment Holdings Ltd.'s Response to Rembrandt 3D Holding ltd.'s Objection to Proofs of Claim No. 6 Filed by Hawk Investment Holdings Ltd., "As Collateral Agent," No. 9 Filed by SLS Holdings VI, LLC, and No. 14 Filed by SeeCubic, Inc.* to be served on those persons receiving notice through CM/ECF.

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 91881)