**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>**Stream TV Networks, Inc.,** *et al*.<br><br>Debtors. | **Chapter 11**<br><br>**Bankruptcy No. 23-10763 (AMC)**<br>**(Jointly Administered)**[1]<br><br>**Hearing Date: June 26, 2024**<br>**Hearing Time: 11:00 a.m.**<br>**Hearing Place: Courtroom #4** |

**MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY**
**AS CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER**
**ENFORCING THE AUTOMATIC STAY AND**
**COMPELLING TURNOVER OF ESTATE PROPERTY**

William A. Homony (the "Trustee"), in his capacity as Chapter 11 trustee of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative") (when referred to with Stream, the "Debtors"), by and through his counsel, files this Motion for Entry of an Order Enforcing the Automatic Stay and Compelling Turnover of Estate Property (the "Motion"), and in support thereof, respectfully avers as follows:

**PRELIMINARY STATEMENT**

The extraordinary remedy of the appointment of a Chapter 11 Trustee in this case was necessitated by the Court's finding that the Debtors-in-possession's principal, Mathu Rajan, was violating his fiduciary duty of loyalty by, *inter alia*, failing to maximize Debtors' estates for the benefit of creditors. Specifically, Mr. Rajan was found to have grossly mismanaged Debtors' affairs to improperly benefit Visual Semiconductor, Inc. ("VSI"), another entity under his control.

This Court's admonition was insufficient to curtail Rajan's disloyal conduct, as he continues to invoke the name and property of the Debtors to benefit VSI and derail the orderly

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

1

administration of the Debtors' estates. Egregiously, Rajan purports to be communicating on the Debtors' behalf via an email address which utilizes Stream's full corporate name: streamtvnetworksinc@gmail.com. Moreover, Rajan wrongfully possesses and uses Debtors' tangible property to solicit and raise money for VSI.

As set forth in detail below, Rajan and VSI are violating the automatic stay and interfering with the Trustee's exclusive control over the Debtors and their property. Accordingly, the Trustee respectfully requests that the Court enforce the automatic stay to put a stop to the misconduct and compel all Debtor property to be turned over to the Trustee.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C § 157.

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 362, 105, 541, and 542 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Bankruptcy Rules 9013 and 9014.

4. The Trustee may proceed by motion because he is not seeking to obtain an injunction; rather, he seeks to enforce an existing injunction—the automatic stay—and thus need not file an adversary proceeding to obtain the relief sought in this Motion. *See, e.g.*, *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 327 (Bankr. D. Del. 1999), *aff'd sub nom. In re Cont'l Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002) ("In this case, Continental is not seeking an injunction, it is merely seeking to enforce an injunction already in place—that created by sections 1141 and 524 of the Bankruptcy Code and the express terms of the Confirmation Order."); *see also In re Christ Hosp.*, 502 B.R. 158, 183 (Bankr. D.N.J. 2013).

2

**BACKGROUND**

A.  **Bankruptcy Procedural Background.**

5.  On March 15, 2023, (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

6.  On April 6, 2023, Hawk Investment Holdings, Ltd. ("Hawk"), a secured creditor of the Debtors, filed a motion pursuant to sections 1112/1104 of the Bankruptcy Code, seeking dismissal or conversion of the Debtors' cases, or, alternatively, the appointment of a Chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code (the "1112/1104 Motion") (D.I. #94).

7.  In the 1112/1104 Motion, Hawk argued that cause existed to appoint a trustee based upon the Debtors' pre- and post-petition history of fraud, dishonesty, incompetence, and gross mismanagement of their businesses.

8.  The Debtors filed an opposition to the 1112/1104 Motion on May 8, 2023 (D.I. #193).

9.  On January 5, 2024, the Court entered a memorandum and order, which, among other things, granted the 1112/1104 Motion with respect to the appointment of a Chapter 11 trustee (the "Trustee Order" and "Trustee Memorandum") (D.I. #549 and #548, respectively).

10. The Trustee Order specifically states that the Debtors' principal, Mathu Rajan, "is no longer authorized to take any action on behalf of the Debtors' estates."[2]

11. On January 9, 2024, the Office of the United States Trustee filed a notice of appointment of William A. Homony to serve as the chapter 11 trustee as well as an Application for

---

[2] This Court may take judicial notice pursuant to Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017) of the dockets and the content of the documents filed in the bankruptcy case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. *See* FED. R. EVID. 201; *In re Scholl*, 1998 Bankr. LEXIS 1059, at *1 n.1 (Bankr. E.D. Pa. Aug. 26, 1998); *see also In re Indian Palm Assocs., Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995).

4853-7055-0979 v7

the entry of an Order approving the appointment of the Trustee (D.I. #554 and #553, respectively), and, on January 12, 2024, the Bankruptcy Court entered an Order Approving the Appointment of the Trustee (D.I. #558).

12. On May 2, 2024, the Trustee filed an Application to Employ Capstone Capital Markets LLC as Investment Banker (the "Capstone Application") for the purposes of, *inter alia*, formulating a market strategy for the Debtors' assets with the goal of conducting a section 363 auction for the benefit of the Debtors' estates.

13. On May 6, 2024, the Trustee filed a motion pursuant to section 9019(a) of the Bankruptcy Code (the "9019 Motion") seeking approval of a settlement agreement with Hawk, as collateral agent for itself and other secured creditors. After meeting with a number of purportedly interested parties – including Hawk, the Debtors' principal Mathu Rajan, VSI and Rembrandt 3D Holding Ltd. (who purports to be one of the Debtors' largest unsecured creditors) – the Trustee concluded that only Hawk made a realistic and viable proposal which would facilitate the best path forward for the bankruptcy estates. The Trustee engaged in substantial negotiations with Hawk, resulting in the pending settlement, which will secure a recovery for unsecured creditors while minimizing ongoing administrative fees and costs.

**B.  The Trustee Order Was Necessitated by the Malfeasance of the Debtors' Fiduciary, Mathu Rajan**

14. Mathu Rajan identified himself as a Director, Secretary, and CEO of both Debtors in Debtors' chapter 11 bankruptcy petitions and was in control of the Debtors in possession as of the Petition Date. *See* Trustee Memorandum at p. 8.

15. As set forth in the Trustee Memorandum, this Court held that Rajan engaged in numerous instances of malfeasance to the detriment of the Debtors and this bankruptcy proceeding and in breach of his fiduciary duties, leading to the appointment of the Trustee:

4

> Rather than moving expeditiously toward confirmation of a reorganizational plan that addresses creditor claims and formulates the Debtors' operations moving forward, these cases have stalled at virtually every turn. The Court has expressed its concern with the cases' lack of progress and direction on multiple occasions. Furthermore, the evidence at Trial on the pending motions crystalized the Court's primary and urgent concern with the administration of the Debtors' cases to date, i.e., the plans, trustworthiness, and motivations of Mr. Rajan in his role as, for all intents and purposes, the singular figure in the Debtors' management. **There are many examples, large and small, that highlight (a) the Court's lack of faith in Mr. Rajan's ability or willingness to act consistent with the fiduciary duties the Debtors owe their creditors and the Court**, (b) the relatively directionless nature of these cases to date, and (c) the entrenched acrimony between the Debtors, Hawk, SLS, and SeeCubic that has permeated the cases and driven nearly all activity to date.

Trustee Memorandum at p. 31 (emphasis added).

16. Included among this Court's many concerns with Rajan's conduct is the conflicting roles he has played as a fiduciary of both the Debtors and as CEO of VSI, a company which Mr. Rajan formed in 2022 and of which he holds the majority of voting stock. Trustee Memorandum at p. 6.

17. As determined by this Court:

a. Mr. Rajan "has administered [the Debtors'] estates with an eye towards what he personally wants to accomplish [via VSI] and disclose, rather than acting consistent with his obligations to the Court and the estates' creditors." *Id.* at pp. 45-46;

b. "Indicative of the Court's chief concern with the Debtors' proposal to obtain financing from VSI, Mr. Rajan was also purporting to testify on behalf of VSI. Although the Debtors ultimately withdrew Mr. Rajan as a representative of VSI when the Court questioned how that could be, Mr. Rajan's dual role was indicative of the Court's trouble with the Debtors' emergency financing proposal: the evidence at the hearing made clear to the Court that the proposal

5

to have the Debtors incur $1 million in post-petition administrative debt to VSI was not only unnecessary given the availability of approximately €700,000 in funding directly from SeeCubic to non-debtor SCBV, but was also fatally flawed because Mr. Rajan was on both sides of the proposed transaction." *Id.* at pp. 41-42;

      c.    "[T]he Court's trust in the Debtor's management[, i.e., Mr. Rajan,] has deteriorated in light of transactions the Debtors have proposed either at the eleventh hour or under cover of more innocuous requests for relief that seem to benefit VSI without justification." *Id.* at p. 46;

      d.    "The Court is . . . alarmed about the propriety and motivations of Stream entering into a post-petition transaction that is intended, at least in large part, to protect VSI's interest in Stream's technology and products . . . ." *Id.* at p. 50;

      e.    "[Numerous] transactions [proposed by Mr. Rajan] have had the taint of benefit to VSI without clear benefit to the Debtors and their estates. Where Mr. Rajan stands on both sides of those transactions, they only add to the Court's conclusion that he has breached his fiduciary duties in proposing them without being able to articulate how they are a reasonable exercise of his business judgment." *Id.* at p. 51;

      f.    "The already-discussed transactions and requested relief that appear to be primarily for the benefit of VSI are reason enough to find that Mr. Rajan has engaged in gross mismanagement of the Debtor's estates." *Id.* at p. 59;

      g.    "Alarmingly, the interrelationship between VSI, Stream, and Mr. Rajan's overlapping interests and roles is so entrenched that Mr. Rajan's testimony at Trial was at times rendered unintelligible, or alternatively, intentionally deceptive, by his inability or unwillingness to draw distinctions between the entities and his roles with each." *Id.* at p. 61; and

6

      h.    "Mr. Rajan's conflicted interests, gamesmanship, and lack of candor to the Court and creditors rises to the level of gross mismanagement of the estates, even when viewed against the high standard of glaring and inexcusable badness." *Id.*

**C.    Rajan's Malfeasance and Breaches of Fiduciary Duty Continue to Present Day**

18.    Rajan's use of VSI to the detriment of and in breach of his fiduciary duty to the Debtors' estates continues to this day.

19.    One need look no further than VSI's website (https://visualsemi.com) to establish that VSI and Rajan are competing with the Debtors, in brazen and blatant violation of Rajan's fiduciary duty of loyalty as a director of the Debtors. The website states that VSI "intends to develop and implement new solutions that offer enhanced viewing and user engagement through glasses-free and other advanced technologies," the precise line of business of the Debtors.

20.    In an investment memorandum utilized to court potential investors (the "VSI IM"), VSI references "Ultra-D" technology, which is solely controlled by a wholly-owned subsidiary of the Debtors, and is in no way connected to VSI. A true and correct copy of VSI IM is attached hereto as Exhibit A; *see also* First Day Declaration of Mathu Rajan (D.I. # 48 at ¶¶ 7-9) (providing a detailed description of the Debtors' Ultra-D technology and its benefit to the Debtors).

21.    The VSI IM makes reference to Debtors' Ultra-D technology no less than twenty-one times, and gives the clear (mis)impression to potential investors that Ultra-D technology belongs to VSI. *See* VSI IM at pp. 8, 15, 16, 17, 18, 34, 35, 36, 37, 53.

22.    A similar document issued by VSI, a true and correct copy of which is attached hereto as Exhibit B, states that "[c]ornerstone solutions in [VSI's] portfolio include Ultra-D glasses-free 3D" and that VSI "can bring to market" and has "deployed" the Debtor's technology in locations throughout the world.

7

23. In addition to touting the Debtors' Ultra-D technology as an asset which should induce investors to put money into VSI, VSI currently possesses equipment that incorporates the Debtors' Ultra-D technology and is actively using it to demonstrate the Debtors' technology to potential investors. This equipment is property of the estate which should have been turned over to the Trustee.

24. Moreover, VSI also has control over the Debtors' electronic books and records, including source code for essential technology belonging to the Debtors.

25. Rajan, acting for the benefit of himself and VSI, has further breached his fiduciary duties to the Debtors and usurped the Trustee's exclusive control over the Debtors' estates by purporting to speak and act on behalf of the Debtors via an email account which uses the exact corporate name of Stream – streamtvnetworksinc@gmail.com (the "Sham Email Account").

26. On May 7, 2024, Mathu Rajan, using the Sham Email Account and a blind copy field, emailed an unknown number of individuals and entities and communicated his intention (and, by necessary implication via use of Stream's corporate name in the Sham Email Account, the Stream's supposed intention) to improperly interfere with the pending 9019 Motion. *See* 5/7/24 Email, a true and correct copy of which is attached hereto as Exhibit C.

27. As established by Rajan's reference in the May 7, 2024 email to previous communications, the Trustee believes that Rajan has regularly used and plans on continuing to use the Sham Email Account and Stream's corporate name to improperly raise money for the sole benefit of VSI, to delay and derail the Court's consideration of the Trustee's 9019 Motion and the Capstone Application via extrajudicial means, and to otherwise interfere with the Trustee's orderly administration of the Debtors' estates and the Trustee's efforts to maximize the value of the Debtors' assets via a fair sale process. That Rajan does so under the banner of Stream, a Debtor to

8

which he owes fiduciary duties, makes his behavior even more insidious.

28. On May 8, 2024, five days after the Capstone Application was filed, Rajan contacted Capstone ostensibly to provide an unsolicited general business update on VSI. The representative Rajan spoke to at Capstone was generally aware that Capstone has spoken with the Trustee regarding potential retention in this bankruptcy proceeding and took no action in furtherance of the communication, nor was he asked to take any action on behalf of VSI.

29. The very next day, VSI filed an objection to the retention of Capstone alleging that VSI had an established relationship with Capstone including the signing of a non-disclosure agreement; however, no non-disclosure agreement was attached to the objection.

30. Upon investigation, Capstone has determined that the allegations in VSI's objection are unfounded, in that at no point did Capstone enter into a non-disclosure agreement with VSI nor was Capstone retained by VSI. Furthermore, the communications between Capstone and VSI were limited to three brief instances spread over a nearly two year period all initiated by VSI and unsolicited by Capstone. Upon information and belief, Rajan placed the call to Capstone on May 8, 2024 in furtherance of his nefarious intention to further delay the bankruptcy proceedings to his and VSI's benefit and to the detriment of the Debtors' bankruptcy estates and in order to intentionally interfere with the Capstone Agreement and ultimately the Trustee's sale efforts.

31. On May 13, 2024, VSI filed a misplaced Joinder to the Debtors' Motion for a Temporary Restraining Order (the "Joinder") [D.I. #135 in Adversary Proceeding docket no. 23-00057-AMC] in the adversary proceeding the Trustee is settling as part of the 9019 Motion. In that joinder, VSI stunningly admits to directing and "funding" certain undisclosed "contract employees" of the Debtor to take possession of certain visual bonding equipment, property of the Debtor's bankruptcy estate (the "Equipment"), without any authority and unbeknownst to the

9

4853-7055-0979 v7

Trustee, in order to deliver it to an undisclosed third party "strategic partner" in order to "kick off a venture to generate downstream revenue" and allow the strategic partner to accelerate the "Glasses-Free 3D project." *See* paragraph 9 of the Joinder, a copy of which is attached hereto as Exhibit "D" and incorporated herein.

32. All of these steps were taken by VSI and Rajan without Bankruptcy Court authority, were concealed from the Trustee, and were in violation of the Trustee Order.

33. The Trustee is justifiably concerned that VSI and Rajan are continuing to take unauthorized actions or directing action on behalf of the Debtors and potentially obligating the Debtors without authority or Bankruptcy Court approval and therefore respectfully request that this Court enforce the automatic stay to prevent further interference with the Trustee performing his duties under the Bankruptcy Code.

**BASIS FOR RELIEF**

**A. Rajan and VSI Have Exercised Control over Debtors' Property in Violation of the Automatic Stay and in an Attempt to Usurp the Role of the Trustee**

34. The filing of a bankruptcy petition creates an estate consisting of all legal and equitable interests of the debtor in property held as of that date. 11 U.S.C. § 541(a).

35. Upon the filing of a bankruptcy petition, the automatic stay operates as an injunction against "all entities" from, *inter alia*, any act to "exercise control over property of the estate." 11 U.S.C. §§ 362(a)(3); *see also In re Builders Grp. & Dev. Corp.*, 2013 WL 6198203, at *5 (Bankr. D.P.R. Nov. 27, 2013) ("The automatic stay acts as an injunction to protect the property of the estate and becomes operative by the mere filing of a bankruptcy petition.").

36. This Court has found that "[t]he automatic stay is one of the fundamental debtor protections supplied by the Bankruptcy Code . . . [i]mportantly, the automatic stay also protects creditors, since '[w]ithout it, certain creditors would be able to pursue their own remedies against

10

4853-7055-0979 v7

the debtor's property.'" *In re Scungio Borst & Associates, LLC*, 652 B.R. 644, 651 (Bankr. E.D. Pa. 2023) (citing *Malloy v. J&V Developers, Inc. (In re Malloy)*, 572 B.R. 551, 555 (Bankr. E.D. Pa. 2017); quoting *Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (In re Atl. Bus. & Cmty. Corp.)*, 901 F.2d 325, 327 (3d Cir. 1990) (internal citation omitted).

37. Upon his appointment, the Trustee assumed sole and exclusive control over the Debtors' property. 11 U.S.C. § 1106(a). The Trustee's appointment completely divests the rights and powers that the Debtors' management and board could previously exercise over the Debtors' property. *See, e.g.*, *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352-53 (1985) ("[T]he Bankruptcy Code gives the trustee wide-ranging management authority over the debtor. In contrast, the powers of the debtor's directors are severely limited. Their role is to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors. Congress contemplated that when a trustee is appointed, he assumes control of the business, and the debtor's directors are 'completely ousted.'") (internal citations omitted).

38. Beyond the automatic stay, in the Trustee Order, this Court was clear in its intention to remove any authority from Mathu Rajan to take **any** action on behalf of the Debtors' estates. *See* Trustee Order; D.I. #549.

39. A debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The definition of property of the estate is interpreted broadly, and every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of Section 541." *Geltzer v. Soshkin (In re Brizinova)*, 588 B.R. 311, 326 (Bankr. E.D.N.Y. 2018) (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008)) (brackets and quotation marks omitted). It "includes all kinds of property, . . . tangible or intangible." *In re Atl. Bus. & Cmty.*

11

*Corp.*, 901 F.2d 325, 327 (3d Cir. 1990) (citations and quotation marks omitted).

40. Rajan and VSI have committed willful violations of the automatic stay via their use of Stream's name in the Sham Email Account and their implication in fundraising materials that the Debtors' Ultra-D technology belongs to or is being utilized by VSI. *See, e.g.*, *In re Lehigh Valley Pro. Sports Clubs, Inc.*, 2001 WL 1188409, at *4 (Bankr. E.D. Pa. Sept. 7, 2001) (holding that a baseball league which competed with the Debtor willfully violated the automatic stay when it utilized the name "Lehigh Valley Diamonds," which was the Debtor's team name, for a baseball team and on a website); *Phillips v. Diecast Marketing Innovations, L.L.C. (In re Collecting Concepts)*, 2000 WL 1191026, at *3 (Bankr. E.D. Va. Feb. 28, 2000) (corporate name is property of the estate); *In re Gordos Rest. Corp.*, 643 B.R. 1, 23 (Bankr. S.D.N.Y. 2022) (holding that the Debtor's trade name Gordo's and the goodwill associated with it were property of the estate); *In re Bell*, 2019 WL 494109, at *2 n.1 (Bankr. M.D. Pa. Feb. 7, 2019) (Debtor's trade name was property of the estate); *In re Nettie Lee Shops of Bristol, Inc.*, 49 B.R. 946, 947 (Bankr. W.D. Va. 1985) (holding that "there is little question that [the use of the trade name "Nettie Lee Shop"] constitutes property within the broad definition of § 541"); *In re Golden Plan of California, Inc.*, 37 B.R. 167, 170 (Bankr. E.D. Cal. 1984) ("[A] debtor's corporate name is property of the estate.").

41. Rajan and VSI have further violated the automatic stay through their failure to turn demonstration equipment over to the Trustee, their use of this equipment for self-serving fundraising purposes, and their control over the Debtors' books and records, including essential source code.

**B.   Damages Under 11 U.S.C. § 362(k)**

42. As a threshold matter, "bankruptcy policy favors… affording a remedy to a debtor damaged by a violation of the stay." *In re Nixon*, 419 B.R. 281, 288 (Bankr. E.D. Pa. 2009).

12

43. Section 362(k) states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k); s*ee also In re Miller*, 447 B.R. 425, 433 (Bankr. E.D. Pa. 2011); *Wingard v. Altoona Reg'l Health Sys. (In re Wingard)*, 382 B.R. 892, 900 (Bankr. W.D. Pa. 2008).

44. Indeed, under Section 362(k) of the Bankruptcy Code, a party who violates the automatic stay is liable for all reasonable legal fees incurred by those harmed, including debtors and creditors committees. *In re Univ. Med. Ctr.*, 93 B.R. 412 (Bankr. E.D. Pa. 1988), *aff'd in part, rev'd in part sub nom. Univ. Med. Ctr. v. Sullivan*, 122 B.R. 919 (E.D. Pa. 1990), *clarified on denial of reconsideration*, 125 B.R. 121 (E.D. Pa. 1991), *and aff'd sub nom. In re Univ. Med. Ctr.*, 973 F.2d 1065 (3d Cir. 1992).

45. "The Third Circuit has adopted a broad interpretation of the term 'individual' for purposes of qualifying to recover compensatory damages under § 362(k)(1)" enabling corporate debtors to recover where they have been damaged by willful violations of the automatic stay. *Scungio Borst*, 652 B.R. at 659 n. 6 (citing *Budget Service Co. v. Better Home of Va.*, 804 F.2d 289, 292 (4th Cir. 1986); *Cuffee*, 901 F.2d at 329; *Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.)*, 346 F. 3d 1, 7 (1st Cir. 2003); *Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corporate Systems, Inc.)*, 108 F. 3d 881, 884-85 (8th Cir. 1997); *Jove Engineering, Inc. v. IRS*, 92 F. 3d 1539, 1549-53 (11th Cir. 1996); *Johnston Environmental Corp. v. Knight (In re Goodman)*, 991 F. 2d 613, 618-20 (9th Cir. 1993); *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F. 2d 183, 184-87 (2d Cir. 1990)).

46. In order to prevail on a claim under section 362(k), the Trustee must demonstrate by a preponderance of the evidence that:

13

> (1) the creditor violated the automatic stay; (2) the violation of the stay was willful; and (3) the willful violation caused some injury. *Dean v. Carr (In re Dean)*, Bankr. No. 1:11-bk-05680MDF, Adv. Nos. 1:11- ap-00481MDF, 1:11-ap-00505MDF, 2012 WL 4634291, at *5 (Bankr. M.D. Pa. Oct. 1, 2012); *In re Miller*, 447 B.R. 425, 433, n. 10 (Bankr. E.D. Pa. 2011). A creditor "willfully" violates the automatic stay when the creditor does so with knowledge of the bankruptcy. *In re Malloy*, 572 B.R. at 555 (citing *In re Lansaw*, 853 F.3d 657, 664 n.4 (3d Cir. 2017)). "Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional..." *Vu v. Lin (In re Vu)*, 591 B.R. 596, 603 (Bankr. E.D. Pa. 2018) (quoting *Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992)). A good faith mistake of law or dispute as to the creditor's right to take the action does not negate the willfulness of the violation. *In re Nixon*, 419 B.R. 281, 288 (Bankr. E.D. Pa. 2009).

*Scungio Borst*, 652 B.R. at 652.

47. First, the Trustee has demonstrated that Rajan and VSI have violated the automatic stay by: (i) utilizing the Debtor's name in the Sham Email Account, implying in fundraising materials that the Debtors' Ultra-D technology belongs to, or is being utilized by, VSI; (ii) refusing to turn the demonstration equipment over to the Trustee and continuing to use this equipment for self-serving fundraising purposes; and (iii) maintaining control over the Debtors' books and records, including essential source code.

48. Second, the violations of the automatic stay were clearly willful in that Rajan, and VSI by extension, signed both Debtors' petitions, schedules, and corporate resolutions authorizing the bankruptcy filings and extensively took part in the bankruptcy cases and negotiated with the Trustee after his appointment.

49. Furthermore, even if Rajan and VSI claimed that the violations of the automatic stay were inadvertent or a mistake, which is highly doubtful, as set forth earlier, even a good faith mistake of law does not negate the willfulness of the violation.

50. Finally, the bankruptcy estates of the Debtors, over which the Trustee has sole and

14

exclusive control, suffered damages, as they were forced to incur professional fees to stop Rajan and VSI's blatant violations of the automatic stay and relentless dissemination of false information to potential investors concerning their connection to and/or control over property of the estate and the Debtors themselves.

51. The additional attorneys' fees resulting from investigation of automatic stay violations committed by VSI and Rajan and the drafting and filing of this Motion would have been unnecessary but for the willful actions of Rajan and VSI, and will be added to the approximately $3 million administrative burden the Trustee inherited upon his appointment.

52. The Trustee has demonstrated all of the elements necessary to establish a claim under section 362(k)(1); therefore, this Court is required to assess "actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1). By including the word "shall" as opposed to the word "may" in the text of the statute, Congress has made this result mandatory, as opposed to permissive.

53. Moreover, appropriate circumstances exist in this case permitting the Court to impose punitive damages for Rajan and VSI's willful violations of the automatic stay.

54. Here, even after the Court's scathing opinion pointing out Rajan's questionable loyalties, dubious testimony under oath, gross mismanagement of the Debtors, and malfeasance, Rajan has clearly continued his campaign, through VSI, to exercise control over the Debtors' bankruptcy estates, and, to the detriment of the Debtors' bankruptcy estates and creditors, to take actions that will benefit only him and VSI. Rajan admits openly to potential investors in the Debtors that he intends to delay the proceedings by months in order to prevent the Trustee from administering the Debtors' bankruptcy estates. Rajan and VSI are willing to take these actions, and likely others unknown to the Trustee, despite the fact that the Bankruptcy Court issued the Trustee Order appointing the Trustee and stripping Rajan of the authority to "take any action on

15

behalf of the Debtors' estates."

55. It is respectfully submitted that Rajan's aforementioned irrational behavior, willingness to flagrantly disobey Bankruptcy Court Orders, and willful violations of the automatic stay give rise to circumstances that necessitate punitive damages. Combining the above with the fact that the Trustee isn't aware of all of Rajan or VSI's actions or automatic stay violations, it is respectfully submitted that the punitive damages are required in this case as a preventative measure to deter any future violations by Rajan. *See In re Lensaw*, 583 F.3d 657 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1001, 200 L. Ed. 2d 253 (egregious nature of commercial landlord's violations of the automatic stay led to punitive damages to deter future violations); *In re Solfanelli*, 206 B.R. 54 (Bankr. M.D. Pa. 1996), *aff'd and remanded*, 203 F.3d 197 (even though there was nothing malicious about bank's actions, court imposed $10,000 in punitive damages for willful violation of automatic stay); *In re Lile*, 103 B.R. 830 (Bankr. S.D. Tx. 1989) (punitive damages in the amount of $100,000 necessary to deter Internal Revenue Service from willfully violating automatic stay in the future).

## C. VSI and Rajan Must Turn over All Debtor Property to the Trustee

56. Pursuant to section 542 of the Bankruptcy Code, "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of [the Bankruptcy Code] . . . shall deliver to the [debtor], and account for, such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542. Where an entity in possession of property of the estate fails to voluntarily turn over the estate property, a debtor in possession may seek to compel turnover. *In re DBSI, Inc.*, 468 B.R. 663, 669 (Bankr. D. Del. 2011). To do so, a debtor must establish: (a) the property is in the possession, custody, or control of another entity; (b) the property can be used in accordance with the provisions of section

16

363; and (c) the property has more than inconsequential value to the debtor's estate. *Id.*

57. Rajan's use of the Sham Email Account constitutes the wrongful exercise of control over Debtor property. The value inherent in Stream's trade name (made all the more apparent by Rajan's usurpation) is squarely within the Code's turnover provision. *See, e.g.*, *In re Gordos Rest. Corp.*, 643 B.R. at 37 (directing the turnover of the debtor's trade name and associated goodwill to the trustee).

58. Rajan and/or VSI are also utilizing equipment belonging to the Debtors for fundraising purposes and are in control of the Debtors' electronic books and records (including source code). The value of such property to the Trustee is obvious and it should be turned over as well.

WHEREFORE, the Trustee respectfully requests the entry of an order substantially in the form attached hereto as Exhibit E, granting the relief requested herein[3] and:

1. Enforcing the automatic stay provided by Section 362(a) of the Bankruptcy Code against Rajan, VSI, and any other related party against use of communications which, explicitly or by implication, are in the name of the Debtors, and/or state that they own or control Debtors or technology belonging to Debtors (including, but not limited to Ultra-D);

2. Ordering Rajan and VSI to turn over to the Trustee control of the Debtors' property, including but not limited to the Sham Email Account, all property used to demonstrate Debtors' technology, and the Debtors' electronic books and records (including source code); and

3. Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

---

[3] A willful violation of the automatic stay may result in liability for damages and civil penalties. The Trustee reserves all rights, including, but not limited to, seeking sanctions and actual and punitive damages pursuant to section 362(k) of the Bankruptcy Code.

17

4853-7055-0979 v7

/s/ Michael D. Vagnoni
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3066
Facsimile: (215) 665-3165
E-mail addresses:
edmond.george@obertmayer.com
michael.vagnoni@obermayer.com
*Counsel to William Homony, Chapter 11 Trustee*

and

Steven M. Coren, Esquire
Andrew J. Belli, Esquire
COREN & RESS, P.C.
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
scoren@kcr-law.com
abelli@kcr-law.com
*Special Counsel to William Homony, Chapter 11 Trustee*

Dated: May 30, 2024