**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **Stream TV Networks, Inc.**, *et al.* | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | **(Jointly Administered)[1]** |
| Debtors. | : | |
| | : | |

**OPPOSITION OF WILLIAM A. HOMONY IN HIS CAPACITY
AS CHAPTER 11 TRUSTEE TO MOTION OF VISUAL
SEMICONDUCTOR, INC. TO RECONSIDER AND/OR CLARIFY ORDER
APPROVING SETTLEMENT AGREEMENT BETWEEN CHAPTER 11
TRUSTEE AND HAWK INVESTMENT HOLDINGS, LTD.**

William A. Homony (the "Trustee"), in his capacity as Chapter 11 trustee of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative") (when referred to with Stream, the "Debtors"), by and through his counsel, files this Opposition to the Motion of Visual Semiconductor, Inc. ("VSI") to Reconsider and/or Clarify the Court's June 7, 2024 Order Approving Settlement Agreement Between Chapter 11 Trustee (the "Trustee") and Hawk Investment Holdings, Ltd. ("Hawk") (ECF No. 653) (the "Order") (the "Reconsideration Motion"), and in support thereof, respectfully avers as follows:

**RELEVANT BACKGROUND[2]**

1.       The Debtors filed for bankruptcy on March 15, 2023 (the "Petition Date"). ECF No. 1.

2.       On April 21, 2023, citing an emergent need to provide financial support to its subsidiary SeeCubic BV ("SCBV"), the Debtors filed an expedited motion seeking court approval

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).
[2] For a full summary of the complex, protracted, and contentious litigation surrounding the Debtors' bankruptcies through January 5, 2024, see Memorandum Opinion and Order (D.I. #549) (the "Trustee Order").

to sell $10 million of unissued Stream shares to VSI in exchange for funding of their post-petition operations. (D.I # 135) ("Stock Sale Motion").[3]

3.      The Stock Sale Motion stated that VSI and Stream had entered into an exclusive distribution agreement (the "Distribution Agreement") "as compensation for this support." *Id.*

4.      Under the Distribution Agreement, VSI would accept orders from and deliver products to third-party customers. Upon receiving an order, VSI would issue a purchase order to Stream for 90% of the order total and would keep 10% for itself. *Id.*

5.      The Court informed the Debtors that it would not approve the sale of Stream shares to VSI on an expedited basis. April 24, 2023 Hrg. Tr. at 38:23-39, 40:1-7.

6.      The Debtors sought approval of emergency debtor-in-possession financing the following day. (D.I # 136) ("DIP Financing Motion"). The Debtors proposed two funding options: a) the Debtors could borrow roughly €872,000.00 from VSI on an unsecured basis to fund SCBV payroll, or b) Stream could enter into the Distribution Agreement with VSI and, in exchange, VSI would issue one or more unsecured SCBV promissory notes directly to SCBV. Trustee Order at 41.

7.      The Court ultimately denied both the Stock Sale Motion and the DIP Financing Motion because they "would have unnecessarily either issued Stream equity to VSI or created $1 million of administrative debt to VSI." *Id.* at 46.

8.      On April 6, 2023, Hawk filed a motion pursuant to sections 1112/1104 of the

---

[3] While taking the position that such transfers were not outside Stream's ordinary course of business (and thus did not require prior court approval), in support of the Stock Sale Motion, the Debtors represented to the Court that they were nonetheless seeking such approval out of an "abundance of caution," had not made any such transfers post-petition, and were awaiting Court permission to do so. Trustee Order at 39-40 (citing Stock Sale Motion ¶ 56), 43 (citing April 24, 2023 Hrg. Tr. at 28:10-15, 31:22-32:1). "[T]he Court did not give that permission." *Id.* At trial, Mr. Rajan's testimony revealed to the Court that Stream – then under his control – had been issuing shares to VSI "every week or two since the Debtors' Petitions were filed." *Id.* at 44 (citing August 17, 2023 Hrg. Tr. at 205:21-206:1, 212:25-213:3).

Bankruptcy Code, seeing dismissal or conversion of the Debtors' cases, or alternatively, the appointment of a Chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code (the "1112/1104 Motion") (D.I. #94).

9.      In the 1112/1104 Motion, Hawk argued that cause existed to appoint a trustee based upon the Debtors' pre- and post-petition history of fraud, dishonesty, incompetence, and gross mismanagement of their businesses.

10.      On January 5, 2024, the Court entered an order, which, among other things, (1) granted the 1112/1104 Motion with respect to the appointment of a Chapter 11 trustee, and (2) granted the Hawk Stay Relief Motion to allow the Section 225 Action to proceed. Trustee Order (D.I. #549).

11.      On January 12, 2024, the Court entered an Order approving the appointment of William Homony as the Chapter 11 Trustee. (D.I. #558).

12.      At the time of the Trustee's appointment, a 225 Action was pending in the Delaware Chancery Court. The parties to that action were Hawk and the Debtors.

13.      Numerous issues were raised in the 225 Action, including, *inter alia*, whether Hawk's secured position had been converted from debt to equity pursuant to certain conversion agreements. Hawk alleges that collateral estoppel precludes the Trustee from advancing certain positions, a premise which the Trustee disputes. The Debtors contest Hawk's positions and allege that the Hawk secured debt was converted to equity.

14.      In any event, but for the settlement (the "Settlement") embodied in the Agreement, the ultimate determination of Hawk's status—and its impact on the Debtors—likely would require extensive and extremely expensive continuing litigation in the Delaware Chancery Court, the Delaware Supreme Court, this Court, and perhaps other courts—the outcome of which

4888-0790-7278 v2

is unpredictable.

15.     After considering the significant legal and factual challenges involved in the 225 Action, the risk it posed to the Debtors' limited assets, and the ongoing need to fund the operations of SeeCubic BV, the Trustee decided that, in his reasonable business judgment, settling the claims by and against Hawk including, but not limited to, the 225 Action was the best option available. *See* 9019 Motion to Approve Settlement ("9019 Motion") (D.I #630).

16.     The Debtors and Hawk, therefore, prepared a proposed settlement agreement that would, *inter alia*, resolve the pending 225 Action, ensure secure carve outs totaling at least $8,500,000.00 for the Debtors' estates, and provide a mechanism for the Debtor's assets to be exposed to a sale process, whereby the true value of the assets could be assessed by exposing them to the market. *Id.* at Exh. A § 5(e).

17.     The Trustee presented the 9019 Motion and the proposed settlement agreement to the Court for approval and provided evidence of the Trustee's satisfaction of the *Martin* factors,[4] establishing without any contest, the facts and reasoning that had informed his decision making and business judgment in entering into the settlement. *Id.*; June 5, 2024, Hr'g. Tr.; Order Approving 9019 Motion (D.I. # 653).

18.     This Court, having made its own exhaustive review of the myriad of filings in the case, in Delaware in the Chancery Court, and in the 225 Action, and having heard the testimony of the Trustee and examined his compliance with *Martin*, approved the 9019 Motion, ending what seems like an endless waste of resources by all parties on hotly-contested, expensive, and delay-causing litigation.

19.     The Court granted the 9019 Motion and approved the settlement contained

---

[4] *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

4

therein, and, on June 6, 2024, entered the Order Approving 9019 Motion (D.I. # 653) (the "9019

Approval Order").

20.    Two weeks later, on June 20, 2024, Rembrandt 3D Holding Ltd. ("Rembrandt")

appealed the 9019 Approval Order (the "Rembrandt Appeal")[5]. Notice of Appeal (D.I. #685).

21.    That same day[6], VSI filed the instant Reconsideration Motion seeking

reconsideration and or clarification of the 9019 Approval Order. (D.I. 686).

22.    For the following reasons, the Reconsideration Motion must be denied.

## LEGAL ARGUMENT

**A.     The Court Only Has Jurisdiction to Issue an Indicative Ruling on the Reconsideration Motion.**

22.    Because Rembrandt, a party working closely with VSI, has filed the Rembrandt

Appeal, this Court is divested of jurisdiction over the 9019 Approval Order and cannot make a

final ruling on the Reconsideration Motion.

23.    If this Court decides to entertain the Reconsideration Motion, it only has

jurisdiction to issue an indicative ruling under Rule 8008 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

24.    "The filing of a notice of appeal is an event of jurisdictional significance—it

confers jurisdiction on the [appellate court] and divests the [trial court] of its control over those

aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S.

56, 58 (1982) (per curiam).

25.    Accordingly, "[f]iling a notice of appeal deprives the bankruptcy court of

jurisdiction to enter orders that would affect or modify any issue or matter on appeal. *Bialac v.*

---

[5] The Trustee reserves all rights with respect to the Rembrandt appeal, including but not limited to the fact that the 9019 Approval Order is interlocutory.

[6] The simultaneous filing of this motion and the Rembrandt Appeal, the Trustee submits, is not mere serendipity.

4888-0790-7278 v2

*Harsh Inv. Co. (In re Bialac)*, 694 F.2d 625 (9th Cir. 1982); *Hyman v. Iowa State Bank (In re Health Care Prods.)*, 169 B.R. 753, 755 (M.D. Fla. 1994) (filing a notice of appeal from appealable order divests the lower court of jurisdiction over issues related to the appeal; bankruptcy court lacked jurisdiction to strike affidavit following grant of summary judgment on the turnover complaint and opponent's filing of notice of appeal); *In re Neuman*, 67 B.R. 99 (S.D.N.Y. 1986) (no jurisdiction to modify appealed order); *In re Maurice*, 179 B.R. 881 (Bankr. N.D. Ill.) (bankruptcy court lacks authority to provide guidance or modify order pending appeal), *aff'd*, 69 F.3d 830 (7th Cir. 1995); *In re Commodore Corp.*, 87 B.R. 62 (Bankr. N.D. Ind. 1987) (court has no jurisdiction to "do anything that impacts on any issues or matters on appeal").

26.     The entry of an order on the Reconsideration Motion would unquestionably affect or alter the matter on appeal, as the Reconsideration Motion and the Rembrandt Appeal concern identical issues.

27.     The Reconsideration Motion and the Rembrandt Appeal both seek to upend the 9019 Order, attacking the Trustee's business judgment and the Court's application of Bankruptcy Rule 9019 and the *Martin* factors. Thus, ruling on the Reconsideration Motion would impermissibly affect or modify the issue on appeal. *Bialac v. Harsh Inv. Co. (In re Bialac)*, 694 F.2d at 625.

28.     Motions to reconsider, filed under Rule 9023 or 9024, fall under the purview of Rule 8008. In fact, Rules 9023 and 9024 explicitly state, "Rule 8008 governs post-judgment motion practice after an appeal has been docketed and is pending." F.R.B.P. 9023 & 9024.

29.    Rule 8008(a) makes it explicit that after an appeal has been filed, a party seeking relief from a final order of a bankruptcy court under Federal Rule 60(b) must timely file that motion in the bankruptcy court.

30.    Rule 8008 specifically governs motions filed during the pendency of an appeal and the bankruptcy court's authority to rule on them. F.R.B.P. 8008(a). Under Rule 8008, a bankruptcy court retains the authority to address a timely motion for relief, which the court might otherwise be unable to consider because of a pending appeal, by either 1) deferring consideration of the motion, 2) denying the motion, or 3) indicating either that it would grant the motion if the appellate court remanded for that purpose or that the motion "raises a substantial issue." F.R.B.P. 8008(a).

31.    Apart from issuing an indicative ruling pursuant to Rule 8008 while an appeal is pending, bankruptcy courts are not authorized to rule on motions filed pursuant to Federal Rule 60(b), Rule 9023, and Rule 9024. *In re Salas*, Case No. 18-00260, 28 (Bankr. D.D.C. Oct. 13, 2020).

32.    The decision to defer, deny, or issue an indicative ruling under Rule 8008 is within the court's discretion. *LFoundry Rousset, SAS v. Atmel Corp.*, 690 F. App'x 748, 750 (2d Cir. 2017) (holding the district court properly exercised its discretion in deferring consideration of post-judgment motions on appeal and ultimately denying those motions as moot following the appeal).

33.    As VSI timely filed the Reconsideration Motion, the Court may, in its own discretion, defer, deny, or issue an indicative ruling on the Reconsideration Motion under Rule 8008.

4888-0790-7278 v2

34.     The Trustee is resolute in asserting that this Court should neither defer nor render an indicative ruling in this case, as the 9019 Motion was supported by ample evidence, including an uncontested record[7] replete with the failures of the Debtors' management, who also control VSI, to obtain confirmation of a Plan of Reorganization or retain control of the Debtor's estates as Debtors in Possession, as judicially established in the well-reasoned Trustee Order.

35.     Further, the Reconsideration Motion utterly fails to meet the well-established legal standards for a motion for reconsideration and to raise a substantial issue upon which the Court can issue an indicative ruling.  It must also be noted that VSI itself failed to request relief pursuant to Rule 8008.[8]

## B.      Reconsideration of the 9019 Motion Is Unwarranted

36.     Motions for reconsideration in bankruptcy cases are made pursuant to Rule 9023 and are generally treated as a motion to amend or alter judgment under Federal Rule 59(e). *In re Deitch*, 513 B.R. 878, 879 (Bankr. E.D. Pa. 2014); *In re Taylor*, 343 F. App'x 753, 755 (3d Cir. 2009); *In re Olick*, No. 03-6723, 2005 U.S. Dist. LEXIS 1903, at *18-19 (E.D. Pa. Feb. 10, 2005) (explaining the debtor's motion to alter or amend under Rule 9023 invoked Federal Rule 59(e)).

37.     Motions to reconsider under Rule 9023 "are not vehicles for 'taking a second bite at the apple[.]'" *Rafter v. Liddle*, 288 Fed. Appx. 768, 769 (2d Cir. 2008) (citing *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

38.     "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to

---

[7] VSI provided no evidence to support its specious and unsupported claims.  The trustee avers the instant Reconsideration Motion is nothing more than further chaos litigation and an effort to obfuscate and delay.

[8] Since one of the forms of relief under Rule 8008 is denial of the Reconsideration Motion, the Trustee addresses the Rule for purposes of requesting denial of the Reconsideration Motion.

correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010); *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

39.     Here, VSI argues that new evidence or resultant manifest injustice present grounds to reconsider or clarify the 9019 Approval Order. The Reconsideration Motion, though, presents neither new evidence nor any cogent explanation of how manifest injustice would befall VSI.  Further, the Reconsideration Motion fails to fully or adequately explain why this "new" evidence was not available at the time of the scheduled hearing on the 9019 Motion.  Indeed, the "new" evidence is nothing more than a rehash of the previous and unsupported factual positions taken by VSI in this case.

40.     The Reconsideration Motion is nothing more than a thinly veiled attempt to take a "second bite at the apple," to expand a hearing and provide contrived and unsupported evidence it had and failed to provide on the day called for by the court, and which is wholly insufficient support for a motion for reconsideration. *Rafter v. Liddle*, 288 Fed. Appx. at 769.

a.     There Is No New Evidence Presented in the Reconsideration Motion

41.     In an attempt to relitigate decided issues, VSI attempts to paint two (2) statements made in the 9019 Hearing as the presentation of new evidence.

42.     The two (2) statements presented no new information, nor did they materially affect the Court's conclusion.

43.     "Where the moving party argues that the court overlooked certain evidence or controlling decisions of law which were previously presented, a court should grant a motion for reconsideration only if the matters overlooked might reasonably have resulted in a different

4888-0790-7278 v2

conclusion." *Payne v. DeLuca*, No. 2:02-cv-1927, 2006 U.S. Dist. LEXIS 89251, at *5 (W.D. Pa. Dec. 11, 2006).

44.    VSI nonsensically claims that the 9019 Approval Order should be reconsidered because the Trustee and his counsel made statements during the hearing on the 9019 Motion with which they disagree. VSI alleges those statements are *mis*statements. They baselessly reason that those statements influenced the court's finding in material ways and, therefore, constitute grounds for reconsideration.

45.    First, the Trustee and his counsel did not make misstatements to the Court, nor would they. VSI argues that the Trustee's statement there were no agreements between VSI, and Stream was false, as the Trustee and "all parties" knew the Distribution Agreement existed.[9]

46.    The Court, however, was focused, and properly so, on the Trustee's exercise of sound business judgment in his clear-headed decisions to end eons-old litigation and to stop the incurrence of potentially millions in additional and unpaid legal fees, and his ability, if the settlement were approved under *Martin*, to proceed to market and sell the Debtors' assets, with an assured recovery to the estate related to the various and hotly-contested litigation claims.

47.    Notwithstanding the lack of importance to the approval of the 9019 Motion, the Trustee's statement is correct: no enforceable agreements have been made between VSI and Stream. While the Distribution Agreement exists, the Debtor cannot enter into an enforceable agreement of that nature without the Court's approval. VSI is aware of this and has demonstrated this awareness by *repeatedly seeking Court approval of entry into the Distribution Agreement. See supra* ¶¶ 2-7; *see also* Trustee Order at 47 (citing and quoting April 25, 2023, Hr'g Tr. at 93:11-16) ("Mr. Rajan was asked directly whether the Distribution Agreement was part of the

---

[9] This quote is taken out of context and was provided in response to a question from the Court regarding Stream's responsibility on certain purchase orders. June 5, 2024 Hr'g Tr. 81:11-25, Exhibit "A" to Motion to Reconsider.

compensation VSI was to receive for providing post-petition funding to the Debtors. Mr. Rajan

evaded, responding that the Distribution Agreement 'is an aspirational hope. The Court has to –

we submitted it for approval to the Court.'"). No approval was ever granted. *Id.* The Trustee

testified honestly and accurately.

48.     The Trustee's statement does not constitute new evidence or new information and

certainly is not grounds for reconsideration.

49.     VSI admits this when it states, "This [Distribution] Agreement has been known to

all parties for some time." Reconsideration Motion at 4.[10]

50.     Indeed, the Court has repeatedly discussed and made comments on the

Distribution Agreement, its questionable nature, and its lack of validity. *See, e.g.*, Order

Appointing Trustee at 48 ("At no point during Mr. Rajan's testimony in connection with that

motion did the Debtors present a cogent business justification for VSI acting as a distributor of

the Debtors' product for a 10% share of the sales. In the end, the Court was left with the distinct

impression that the Debtors sought to enter into the Distribution Agreement while attracting little

attention to it, and once attention was drawn, failed to have a compelling reason for allowing VSI

to benefit from the Debtors' product sales.").

51.     The Trustee's statement is not even false, as the Distribution Agreement is not in

force and effect—the Court never approved it —and it is not within Stream's ordinary course of

business.[11]

---

[10] The Reconsideration Motion refers to the Distribution Agreement as the "Distributor Agreement" numerous
times. To avoid any doubt, they are one in the same.

[11] To enter into a post-petition contract, a debtor must either enter the contract in the "ordinary course of business"
pursuant to Section 363(c)(1) or receive court approval to enter into the contract outside the ordinary course. *See* 11
U.S.C. § 363(b)(1); *In re Roth Am., Inc.*, 975 F.2d 949, 954 (3d Cir. 1992); *In re Texas Wyoming Drilling, Inc.*, 486
B.R. 746, 755 (Bankr. N.D. Tex. 2013). Stream has already admitted that the Distribution Agreement was not in its
ordinary course of business by submitting the Distribution Agreement to the Court for approval. (D.I. #135).
Further, the Court has previously stated that entering into the Distribution Agreement did not represent the sound

52.     Second, VSI argues that the Trustee's counsel's statement that "SeeCubic BV is an affiliate of the Debtor. And the Phillips license allows the affiliates of the Debtor to use those licenses for demonstrations" was inaccurate as SeeCubic BV was enjoined by a TRO from conducting demonstrations using Stream's technology.

53.     Once again, this is not new evidence, nor is it even accurate.

54.     First, the TRO only enjoins SeeCubic, Inc. and its principal, Mr. Stastney (not SeeCubic BV), from taking action such as demonstrating Stream's technology.   The only injunctive relief that was issued against **SeeCubic BV**, the Debtors' affiliate, proscribed only action to "sublicense, transfer, assign, or otherwise dispose of or affect any license or technology held or purported to be held by the Debtors' estates."  *See* TRO ¶ 9(a).  There is no prohibition in the TRO from developing or demonstrating Stream's technology.

55.     Moreover, this argument is utterly nonsensical, as even if SeeCubic BV was enjoined by a TRO, it would not change the fact that 1) SeeCubic BV is an affiliate of Stream and 2) that the Phillips license allows affiliates of Stream to use those licenses for demonstrations. Both of those facts are still true.

56.     The statements made by the Trustee's counsel were not only accurate but also had no effect on the Court's determination of the propriety of the settlement or the entry of the 9019 Approval Order, as the Court specifically stated that they were "the subject of the motion to enforce that we'll need to find a hearing date." June 5, 2024 Hr'g Tr. 45:21-24, Exhibit "A" to Reconsideration Motion.

---

exercise of Stream's business judgment, stating Stream did not present "a cogent business justification" for entering into the Distribution Agreement. Trustee Order at 48 (D.I. #548). Therefore, the Distribution Agreement was never approved and is not in force and effect.

4888-0790-7278 v2

57. Further, if VSI truly believed the Trustee's statement to be false and his counsel's statements to be inaccurate or that it would someone improperly influence the court's decision-making, it had the opportunity to raise these issues and correct the record during the hearing on the 9019 Motion – and failed to do so.

58. VSI's belated presentation of specious and unsupported arguments it neglected to make during the 9019 Motion hearing is not new evidence. It is ludicrous that VSI even characterizes it as such.

59. This is a blatant attempt to take the undeserved "second bite at the apple" that a Rule 9023 motion is not intended to provide. *Rafter v. Liddle*, 288 Fed. Appx. 768, 769 (2d Cir. 2008) (citing *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

60. Even if VSI *had* made these arguments during the hearing on the 9019 Motion, they carry no weight, and the outcome of the hearing on the 9019 Motion would have been the same. *Payne v. DeLuca*, No. 2:02-cv-1927, 2006 U.S. Dist. LEXIS 89251, at *5.

61. Therefore, the Reconsideration Motion fails to present any new evidence upon which the Court could reconsider the 9019 Order.

        b.   <u>No Manifest Injustice Will Befall VSI If the 9019 Order Is Upheld.</u>

62. What VSI alleges to be manifest injustice is nothing more than a series of complaints about the Trustee's settlement with Hawk and another attempt by VSI to reargue the 9019 Motion.

63. A party claiming that upholding an order without reconsideration or clarification would result in manifest injustice must show that the order "was clearly wrong and that adherence to that decision would create manifest injustice." *Afr. v. City of Phila. (In Re Phila. Litigation)*, 158 F.3d 711, 720 (3d Cir. 1998).

64.     VSI asserts that manifest injustice will occur if the 9019 Order is upheld, as it resolves "all litigation in favor of Hawk without the due process guardrails of that litigation [;]"; however, it offers nothing in support of this assertion. Reconsideration Motion at 5.

65.     Indeed, VSI repeatedly alleges these audacious and conclusory statements without any explanation whatsoever of the alleged errors in the evidence supporting the 9019 Approval Order or where the court erred in its application of the *Martin* factors, much less any actual prejudice that has been occasioned by the entry of the 9019 Approval Order.

66.     VSI does not even come close to showing that the 9019 Order was clearly wrong, instead opting to pick at the underlying issues it has with the Trustee's settlement with Hawk, all of which were resolved by the 9019 Motion after notice and full hearing.  To be clear, a settlement does not need to satisfy every party; it only needs to satisfy the Trustee's duties and the *Martin* factors.

67.     VSI's obvious disagreement with the 9019 Approval Order and the settlement with Hawk do not constitute manifest injustice.

68.     Therefore, because the Reconsideration Motion fails to demonstrate that the entry creates a manifest injustice, it must be denied.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

14

## **CONCLUSION**

Accordingly, the Trustee respectfully requests that the Court (i) deny the Reconsideration

Motion, (ii) decline the entry of any indicative ruling or order, and (iii) issue any further relief as

it may deem just and appropriate.

Respectfully submitted,

*/s/ Michael D. Vagnoni*
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3066
Facsimile: (215) 665-3165
E-mail addresses:
edmond.george@obermayer.com
michael.vagnoni@obermayer.com
*Counsel to William Homony, Chapter 11 Trustee*

and

Steven M. Coren, Esquire
Andrew J. Belli, Esquire
COREN & RESS, P.C.
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
scoren@kcr-law.com
abelli@kcr-law.com
*Special Counsel to William Homony, Chapter 11
Trustee*

Dated: July 5, 2024

4888-0790-7278 v2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **Stream TV Networks, Inc.,** *et al.* | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | **(Jointly Administered)[1]** |
| **Debtors.** | : | |
| | : | |

## ORDER DENYING MOTION OF VISUAL SEMICONDUCTOR, INC.
## TO RECONSIDER AND/OR CLARIFY ORDER APPROVING
## SETTLEMENT AGREEMENT BETWEEN CHAPTER 11 TRUSTEE
## AND HAWK INVESTMENT HOLDINGS, LTD (ECF NO. 653)

**AND NOW**, this _____day of _____2024, upon consideration of

the Motion of Visual Semiconductor, Inc. ("VSI") to Reconsider and/or Clarify the Court's June

7, 2024, Order Approving Settlement Agreement Between Chapter 11 Trustee (the "Trustee")

and Hawk Investment Holdings, LTD ("Hawk") (ECF No. 653) (the "Order") (the "Motion"),

and any responses thereto, it is hereby **ORDERED** that:

1.       The Motion is **DENIED**.

BY THE COURT:

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | **:** | |
| **In re:** | **:** | **Chapter 11** |
| | **:** | |
| **Stream TV Networks, Inc.,** *et al.* | **:** | **Bankruptcy No. 23-10763 (AMC)** |
| | **:** | **(Jointly Administered)[1]** |
| **Debtors.** | **:** | |
| | **:** | |

**CERTIFICATE OF SERVICE**

I, Michael D. Vagnoni, a partner with the law firm of Obermayer Rebmann Maxwell &
Hippel LLP, do hereby certify that on July 5, 2024, a true and correct copy of the Chapter 11
Trustee's Opposition to the Motion of Visual Semiconductor, Inc. to Reconsider and/or Clarify
the Court's June 7, 2024 Order Approving Settlement Agreement Between Chapter 11 Trustee
and Hawk Investment Holdings, LTD (ECF No. 653) (the "Opposition"), was served via Court's
CM/ECF system upon the following on the attached service list.


*/s/ Michael D. Vagnoni*
Michael D. Vagnoni, Esquire

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re
Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

## SERVICE LIST

VINCENT F. ALEXANDER on behalf of Debtor Technovative Media, Inc.
valexander@shutts.com

ANDREW J. BELLI, on behalf of William A. Homony
abelli@kcr-law.com

ANDREW J. BELLI on behalf of Trustee WILLIAM A. HOMONY
abelli@kcr-law.com

KEVIN P. CALLAHAN on behalf of U.S. Trustee United States Trustee
kevin.p.callahan@usdoj.gov

STEVEN M. COREN on behalf of William A. Homony
scoren@kcr-law.com, ccapra@kcr-law.com

STEVEN M. COREN on behalf of Trustee WILLIAM A. HOMONY
scoren@kcr-law.com, ccapra@kcr-law.com

Steven Caponi on behalf of Creditor Hawk Investment Holdings Ltd.
steven.caponi@klgates.com, alyssa.domorod@klgates.com, kay.laplante@klgates.com

Steven Caponi, on behalf of Defendant HAWK INVESTMENT HOLDINGS LIMITED
steven.caponi@klgates.com, alyssa.domorod@klgates.com, kay.laplante@klgates.com

Steven Caponi, on behalf of Defendant ARTHUR LEONARD ROBERT "BOB" MORTON
steven.caponi@klgates.com, alyssa.domorod@klgates.com, kay.laplante@klgates.com

ANDREW PETER DEMARCO on behalf of Rembrandt 3D Holding Ltd.
ademarco@devlinlawfirm.com, dlflitparas@devlinlawfirm.com

ANDREW PETER DEMARCO on behalf of Creditor Rembrandt 3D Holding Ltd.
ademarco@devlinlawfirm.com, dlflitparas@devlinlawfirm.com

Donald N. David on behalf of Creditor Visual Semiconductor, Inc.
donald.david@akerman.com

KATHERINE M. FIX on behalf of Interested Party SLS Holdings VI, LLC
kfix@rc.com

NICHOLAS E HAKUN, on behalf of Interested Party Ian R. Liston in his capacity as the state
court-appointed receiver pendente lite of the operations of Technovative Media, Inc.
nhakun@wsgr.com, nhakun@gmail.com

WILLIAM A. HOMONY
bhomony@mctllp.com, mtomlin@mctllp.com

JENNIFER R. HOOVER on behalf of Interested Party IMG Media Limited
jhoover@beneschlaw.com, docket2@beneschlaw.com, lmolinaro@beneschlaw.com

JENNIFER R. HOOVER on behalf of Interested Party Trans World International, LLC
jhoover@beneschlaw.com, docket2@beneschlaw.com, lmolinaro@beneschlaw.com

Joseph Oliver Larkin on behalf of Defendant SeeCubic, Inc.
joseph.larkin@skadden.com, christopher.heaney@skadden.com, wendy.lamanna@skadden.com,
andrea.bates@skadden.com, ecf-7f0a8f590dc1@ecf.pacerpro.com

Joseph Oliver Larkin on behalf of Interested Party SeeCubic, Inc.
joseph.larkin@skadden.com, christopher.heaney@skadden.com, wendy.lamanna@skadden.com,
andrea.bates@skadden.com, ecf-7f0a8f590dc1@ecf.pacerpro.com

JOHN HENRY SCHANNE on behalf of U.S. Trustee United States Trustee
John.Schanne@usdoj.gov

PAMELA ELCHERT THURMOND on behalf of Creditor CITY OF PHILADELPHIA
pamela.thurmond@phila.gov

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

MARGARET ANN VESPER, on behalf of Creditor Shadron L. Stastney
vesperm@ballardspahr.com

MARGARET ANN VESPER, on behalf of Defendant SHADRON L STASTNEY
vesperm@ballardspahr.com

MARGARET ANN VESPER, on behalf of Interested Party Shadron L. Stastney
vesperm@ballardspahr.com

DAVIS LEE WRIGHT, on behalf of Defendant SLS Holdings VI, LLC
dwright@rc.com

DAVIS LEE WRIGHT on behalf of Interested Party SLS Holdings VI, LLC
dwright@rc.com

RAFAEL X. ZAHRALDDIN on behalf of Debtor Stream TV Networks, Inc.
Rafael.Zahralddin@lewisbrisbois.com, rafael-zahralddin-4117@ecf.pacerpro.com,
lewisbrisbois@ecfalerts.com

RAFAEL X. ZAHRALDDIN on behalf of Debtor Technovative Media, Inc.
Rafael.Zahralddin@lewisbrisbois.com, rafael-zahralddin-4117@ecf.pacerpro.com, lewisbrisbois@ecfalerts.com

RAFAEL X. ZAHRALDDIN on behalf of Plaintiff Stream TV Networks, Inc.
Rafael.Zahralddin@lewisbrisbois.com, rafael-zahralddin-4117@ecf.pacerpro.com, lewisbrisbois@ecfalerts.com

RAFAEL X. ZAHRALDDIN on behalf of Plaintiff Technovative Media, Inc.
Rafael.Zahralddin@lewisbrisbois.com, rafael-zahralddin-4117@ecf.pacerpro.com, lewisbrisbois@ecfalerts.com

STEVEN M. COREN
Coren & Ress, P.C.
Two Commerce Square
2001 Market Street Suite 3900
Philadelphia, PA 19103

JUDGE PATRICIA M. MAYER
201 Penn Street, 4th Floor
The Gateway Building
Reading, PA 19601

Miller Coffey Tate
1628 John F Kennedy Blvd.
Suite 950
Philadelphia, PA 19103

RANDALL ADAM SWICK on behalf of Creditor Visual Semiconductor, Inc.
Akerman LLP
500 W. 5th Street, Suite 1210
Austin, TX 78701

JOHN H. THOMPSON on behalf of Creditor Visual Semiconductor, Inc.
Akerman LLP
750 9th Street NW, Suite 750
Washington, DC 20001