## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc., *et al.*[1]<br><br>The Debtors. | Chapter 11<br><br>Bankr. Case No. 23-10763 (AMC)<br>(Jointly Administered) |

**VISUAL SEMICONDUCTOR, INC.'S MOTION TO COMPEL AND OBJECTION TO TRUSTEE'S (A) MOTION FOR ENTRY OF ORDERS:  (I) GRANTING EXPEDITED CONSIDERATION, SHORTENED TIME AND LIMITED NOTICE; (II) QUASHING SUBPOENA; (III) ENTERING A PROTECTIVE ORDER; AND (IV) GRANTING RELATED RELIEF; AND (B) TRUSTEE'S MOTION FOR ENTRY OF AN ORDER; AND (B) MOTION FOR ENTRY OF ORDERS: (I) GRANTING EXPEDITED CONSIDERATION, SHORTENED TIME AND LIMITED NOTICE; AND (II) FOR AUTHORITY TO WITHDRAW THE TRUSTEE'S MOTION FOR ENTRY OF AN ORDER ENFORCING THE AUTOMATIC STAY AND COMPELLING TURNOVER OF ESTATE PROPERTY WITHOUT PREJUDICE**

Visual Semiconductor, Inc. ("VSI") hereby files this Motion to Compel ("Motion to Compel") William B. Homony as the Chapter 11 Trustee (the "Trustee") discovery in response to VSI's Amended Notice of Oral Deposition Duces Tecum [ECF No. 718] ("Notice of Discovery") and Objections to (a) Motion of William A. Homony in His Capacity as Chapter 11 Trustee for Entry of an Order (I) Granting Expedited Consideration, Shortened Time and Limited Notice; (II) Quashing Subpoena; (II) Entering a Protective Order; and (IV) Granting Related Relief [ECF No. 724] ("Motion to Quash"); and (b) Motion of William A. Homony in His Capacity as Chapter 11 Trustee for Entry of an Order: (I) Granting Expedited Consideration, Shortened Time, and Limited Notice; and (II) for Authority to Withdraw the Trustee's Motion for Entry of an Order Enforcing the Automatic Stay and Compelling Turnover of Estate Property (D.I. # 646) Without Prejudice

---

[1] The Debtors, together with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015).  The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

77855344;2

[EFC No. 725] ("Motion to Withdraw," and with the Motion to Quash, the "Trustee's Expedited

Motions") and in support thereof, states as follows:

## PRELIMINARY STATEMENT

*Bob is actually very much involved [in the Bankruptcy], **he's running the bankruptcy proceedings / dealing with the US Trustee**, not Shad and continues to massively fund the business. As you know, I sit on the SeeCubic Board on behalf of Bob / the Morton family / Hawk so Bob and I communicate on a weekly basis and meet regularly.[2]*

Something very troubling is going on in this case, and VSI deserves to get discovery from

the Trustee.

The Trustee has chosen SeeCubic, Inc. ("SeeCubic") as the stalking horse bidder.

SeeCubic has historically been the puppet of Bob Morton and Hawk Investment Holdings Limited

("Hawk"), entities which have been at enmity with the Debtors for years, held in contempt of court

for their dealings with the prepetition Debtors, and ordered to return the Debtors' property back to

the Debtors to no avail. SeeCubic/Hawk previously hired SSG Advisors ("SSG") to sell the

Debtors' assets for SeeCubic's/Hawk's own benefit after being ordered to return those assets to

the Debtors.[3]  Suspiciously, the Trustee has now chosen SSG as the investment banker to market

those same assets; only now on behalf of the Debtors' estates with SeeCubic/Hawk serving as the

putative stalking horse.

The Trustee cannot avoid *any and all* discovery by withdrawing its previous motion and

relying on SSG's discovery alone.  SSG does not have the communications between the Trustee,

SeeCubic, and Hawk.  These communications are at the heart of VSI's objection to SSG's

employment.  Considering that Hawk's representative director on SeeCubic's board is representing

---

[2] WhatsApp message from Kevin Gollop to Mark Walpole, dated August 28, 2024, attached as Exhibit 1 to the Declaration of Mark Walpole ("Walpole Declaration"), which is attached hereto as **Exhibit A**.

[3] The factual support for these allegations is detailed in VSI's Limited Objection to the Application of the Chapter 11 Trustee to Employ SSG Advisors, LLC as Investment Banker [ECF No. 717] ("Objection to SSG") (*Id* page 4).

77855344;2

Case 23-10763-amc    Doc 728    Filed 09/04/24    Entered 09/04/24 15:48:22    Desc Main
Document      Page 3 of 23

to third-party investors that Hawk is "running the bankruptcy proceeding," the Trustee should provide discovery.

The Trustee characterizes VSI's actions as attempts to "harass" and "delay,' but they are nothing of the sort. Nearly six weeks ago, VSI provided the Trustee with a *$170 million proof of funds* ("$170 Million Proof of Funds"), and subsequently requested simple due diligence, and offered to postpone and defer VSI's discovery to allow good faith negotiations to take place. And, over three weeks ago, in response to counsel's insistence that the Trustee needed to see a term sheet, VSI provided *an all cash, binding term sheet to the Trustee for $115 million* as an *initial* offer ("$115 Million Cash Offer"). Of course, VSI contests the validity and amount of SeeCubic's secured claim, and VSI's proposed path forward would seek to allow a meaningful recovery for unsecured creditors through a real and substantial cash infusion.

SeeCubic, Hawk, and now apparently the Trustee have dismissed VSI and mischaracterized it as a non-party, non-factor, and mere disgruntled entity whose only aim is to disrupt these proceedings. These mischaracterizations need to stop. After considerable mistreatment and disparagement throughout this process and on the record in this case, VSI is trying to inject millions of dollars in cash (not as a credit bid) into this estate and get administrative creditors and unsecured creditors paid.

Despite these efforts, the Trustee's responses to all of VSI's overtures have been delayed, uninterested, and at times hostile. While Trustee's counsel has made representations about providing due diligence and deposition dates for the Trustee (and VSI initially postponed discovery and the hearing on the Motion for Turnover (defined below) in reliance on the Trustee's good faith), no due diligence has been provided, and the Trustee has not meaningfully engaged in

discussions of VSI's discovery requests, nor has he seriously discussed or countered VSI's significant offer.[4]

And then, the day before documents were due and mere days before the Trustee was supposed to sit for a deposition (after VSI agreed to postpone it once), the Trustee filed an expedited motion to avoid *any and all* discovery regarding SSG or otherwise by attempting to withdraw his Motion for Entry of an Order Enforcing the Automatic Stay and Compelling Turnover of Estate Property [ECF No. 646] ("Motion for Turnover").

That Motion for Turnover was a serious motion. The Trustee went so far as to seek sanctions against VSI. Nonetheless, it now appears to have been bogus from the beginning and filed as a litigation tactic. VSI opposed the Motion for Turnover and sought discovery regarding the allegations made in it. Specifically, as detailed below, some of the exhibits the Trustee used in support appear altered and old, raising serious questions about where the Trustee got those documents, who may have altered them, and what basis did the Trustee have to allege that VSI used them inappropriately. Now that VSI has sought discovery regarding those documents and allegations, the Trustee now, all of a sudden, is no longer interested in pursuing his scurrilous allegations. The Trustee simply cannot withdraw the Motion for Turnover *without prejudice* to avoid having to produce documents and answer questions over his own allegations now that it's inconvenient and potentially embarrassing – or worse. Withdrawal without prejudice would allow the Trustee to renew his allegations at a later time when it's more advantageous for him to answer to discovery. It's an impermissible litigation tactic and should not be allowed.

---

[4] It was only after this Court's Order [ECF No. 726] on August 30, 2024 that the Trustee sought to discuss the $115 Million Cash Offer or alternatives thereto. But the Trustee has stated that he can only confer on the afternoon of September 5, 2024, the day before VSI's objections are due to the Trustee's Expedited Motions. Considering the Trustee's refusal to meaningfully confer previously, VSI has little to no confidence that the Trustee's offer to confer is sincere or that the meeting will be fruitful in achieving what parties should be focused on—getting creditors paid and charting a path for the funding, operation, reorganization and exit of Stream from bankruptcy.

## BACKGROUND

### I.  Procedural History Relevant to This Motion

1.      On March 15, 2023 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On January 9, 2024, the Bankruptcy Court entered an order appointing the Chapter 11 Trustee.

2.      On May 30, 2024, the Trustee filed a Motion for Turnover of Property and Entry of an Order Enforcing the Automatic Stay [ECF No. 647] ("Motion for Turnover").

3.      On June 6, 2024, this Court entered an order approving the Trustee's Settlement (the "9019 Agreement") with Hawk Investment Holdings, Ltd. ("Hawk"), in its capacity as Collateral Agent for the secured noteholders of SeeCubic, Inc. ("SeeCubic"), SLS Holdings VI, LLC ("SLS"), and various individuals, including Robert Morton, Arthur Leonard, Shadron L. Stastney, Alastair Crawford, Asaf Gola, Kevin Golop, Patrick Miles, Patric Theune, Krzysztof Kabacinski. (collectively, the "Hawk Parties"), which included, amongst others, the following deal terms:

- Hawk received a $180 million secured claim, $150 million of which can be credit bid in a sale of the Debtors' assets;

- A $7,500,000 carve out to pay administrative and general unsecured creditors;

- The Trustee will make SeeCubic a stalking horse in the sale of the Debtors' assets;

- Qualified bids in that sales process must include a minimum $120 million cash component; and

- If a bid is accepted over the stalking horse bid only 10% of that overbid goes to administrative or unsecured creditors until Hawk's $180 million claim is paid in full.

77855344;2

4.      The 9019 Agreement all but guarantees that unsecured creditors and perhaps even administrative expenses receive only a pittance.

5.      On June 16, 2024, Akerman filed a Notice of Appearance as counsel for VSI and promptly filed an Objection to the Motion for Turnover [ECF No. 672]  ("Objection to Turnover") and a Motion to Reconsider the order granting the 9019 Agreement [ECF No. 686] ("Motion to Reconsider").  VSI filed the Motion to Reconsider for multiple reasons, but specifically because it did not contain a fiduciary out and VSI strongly believed it (or another party) could provide a much better offer.  On July 26, 2024, VSI filed and served a Notice of Deposition Duces Tecum on the Trustee concerning the issues raised in the Objection to Turnover and Motion to Reconsider ("Original Discovery Requests").

6.      In furtherance of the sale actions discussed in the 9019 Agreement, on August 14, 2024, the Trustee filed an Application to Employ SSG Advisors, LLC ("SSG") as the investment banker to market the Debtors' assets on behalf of the Trustee for the benefit of the Debtors' estates [ECF No. 715] ("SSG Application").

7.      The Trustee's decision to hire SSG is odd to say the least.  SSG was previously hired by the Hawk Parties in furtherance of contemptuous conduct whereby Hawk tried to unlawfully retain and sell the Debtors' assets for Hawk's own benefit to the direct detriment of the Debtors prior to this bankruptcy case.  These actions are detailed in VSI's Limited Objection to the SSG Application [ECF. No. 717] (the "Objection to SSG"), which are incorporated herein by reference.  Obviously, picking Hawk/SeeCubic as the stalking horse bidder and then hiring its former investment banker to market the assets chills bidding.  Any outside bidder, including VSI and its investors, would reasonably view the sales process as orchestrated to assure that only SeeCubic will prevail in the sale process.

8.    On August 27, 2024, VSI amended its Original Discovery Requests to include discovery concerning the issues raised in the Objection to SSG.

## II.    VSI Negotiates in Good Faith with the Trustee Only to be Stonewalled

9.    Current counsel for VSI has tried vigorously to negotiate with the Trustee's counsel regarding the current pending pleadings, discovery, and potential avenues for VSI to participate on a level playing field with the Hawk Parties in a sale of the Debtors' assets or a plan process. On the limited occasions that counsel for Trustee provided any response at all, those responses were, more often than not, needlessly delayed, purposefully obtuse or evasive, disinterested in negotiating, accusatory, or outright hostile.

10.    On July 25, 2024, VSI sent the $170 Million Proof of Funds along with (i) a request for certain due diligence materials within the Trustee's custody, possession, or control, and (ii) a request to discuss the pleadings then pending and discovery timelines (which included the Trustee's Motion for Turnover).

11.    On July 29, 2024, after being prompted by counsel for VSI, the Trustee acknowledged receipt of the $170 million Proof of Funds and required information on any due diligence requests before further discussion.  In that same correspondence, Trustee's counsel represented that he was exploring hearing dates in mid-September or early October for adjournment and consolidation of the pending motions and specifically noted that, "[o]n your notice of deposition, the Trustee is not available on August 9 and considering that we are adjourning the hearings, we will look at dates later in August and let you know his availability." *See* **Exhibit 1** to the Declaration of John Thompson ("Thompson Declaration"), attached hereto as **Exhibit B**.  In light of the foregoing exchanges, the Parties agreed to adjourn the pending motions and postpone the Trustee's deposition in order to negotiate in good faith.

77855344;2

12.     On August, 2, 2024, VSI's counsel sent Trustee's counsel an email indicating that VSI would be making a formal proposal and clarifying his prior (July 29) diligence request, limiting the request to two very simple and straightforward items regarding confirmation of Stream's IP assets and engineering.  **Exhibit 2** to the Thompson Declaration

13.     VSI's counsel did not receive an immediate response regarding the diligence requests and thus followed up multiple times by email and voicemail.  After several additional follow-up emails from VSI's counsel, the parties agreed to a videoconference call on Wednesday, August 7, 2024.  Among other topics covered on that call, Trustee's counsel expressed the need for the Trustee to receive a concrete proposal in the form of a term sheet.  VSI, and VSI's counsel expressed the desire to conduct the Trustee's deposition within the last week to ten (10) days in the month of August, to which Trustee's counsel assented.  **Exhibit B**.  Following the August 7, 2024 videoconference meeting, VSI's counsel delivered more unanswered correspondence regarding the need for VSI to receive responses from the Trustee to its limited diligence request. Finally, on August 12, 2024, Trustee's counsel said he was working on VSI's diligence requests and wanted a copy of VSI's non-disclosure agreement with the Trustee.  **Exhibit 3** to the Thompson Declaration.  VSI's counsel responded that same day.  **Exhibit 4** to the Thompson Declaration

14.     Later on that very same day, even before receiving the due diligence requests VSI sent over a binding term sheet via DocuSign for an all cash offer of $115 million. **Exhibit 5** to the Thompson Declaration

15.     The next day, Trustee's counsel responded with hostility:

John, we got a term sheet by Docusign.  The Trustee isn't signing anything until he can digest the terms of this proposal, and determine if it presents something better than what is on the table. *So we are clear, we are not reviewing a Docusign document*.  Please send a word version of this Document as we don't want any

77855344;2

confusion about what is happening here.  If you want proof we received it, send it with a return receipt.   Not sure why you used Docusign.  **Exhibit 6** to the Thompson Declaration (emphasis added).

16.     VSI's counsel responded:

As we have made clear in multiple communications, we are working diligently to provide the Trustee with an actionable proposal that is unequivocally better than what is currently on the table from Hawk/SLS/SCI and time is of the essence.  So, as Michael requested during our call on Aug. 7, our Client provided the Trustee with a formal offer.  I'm sure you didn't mean to suggest that you wouldn't entertain a superior offer merely because you don't like the file format in which it was delivered.  The content of the offer is the same in Word and PDF. In the interest of expediency, attached is a Word version of the offer.  We are prepared to entertain reasonable modifications.  Please provide them, if any, promptly.  And just to be clear, you can download a pdf version from DocuSign.  It's a button at the top.

Finally, please advise as to when you will be available for the call promised by Michael below.  **Exhibit 6** to the Thompson Declaration

17.     The next day on August 14, 2024, growing frustrated with no due diligence talks or response to the offer, VSI's counsel followed up with Trustee's counsel:

Michael:

I appreciate that you have been in a hearing all day today, but we communicated our availability for a call on Monday and Tuesday and received no response.  We further communicated VSI's term sheet to provide a substantial cash facility and sponsor a plan of reorganization with a renewed request for a time do complete a call and advance the due diligence request - no answer.  I don't think it is unreasonable for us to conclude that the Trustee is ignoring and/or slow-walking our reasonable requests.  Please advise as to whether and when the Trustee will engage with VSI and when we can have a call.  If we do not hear back promptly, we will have to conclude that the Trustee is uninterested in entertaining reasonable proposals and consider VSI's alternatives.  **Exhibit 7** to the Thompson Declaration

18.     On August 21, 2024, with still no response from the Trustee, VSI's counsel wrote again:

Michael:

It has now been over a week since we communicated our proposal for a plan sponsorship with a $115 mm restructuring facility and additional $10 mm DIP.  You did not even give us the courtesy of responding, let alone engaging in

77855344;2

good faith negotiations.  In addition, it has been more than three weeks since our original request for simple, straightforward, and easily facilitated due diligence to permit VSI and its investment partners to properly assess the value of the Stream assets, as they now sit after months of remaining fallow and subject to continued pilferage notwithstanding the Trustee's statutory duties to protect estate value and the interests of all creditors. Finally, it has been over a month since we communicated proof of funds for cash and liquid assets well in excess of the trustee is current stocking horse bid proposal. Notwithstanding all of the foregoing, you and the trustee have remained radio, silent and utterly disengaged.

During our initial conversations, we discussed the postponement and consolidation of our respective motions and organization and timing for associated discovery. You asked that we withdraw the VSI Rule 2004 subpoena for the deposition of the Trustee, and we accommodated that request and noticed the deposition at your request and in the spirit of progress and potential resolution. Thereafter, you explained that the Trustee was not available on August 9 when we noticed his deposition per your request. We agreed that that deposition would take place within the last week of August (this coming week), but consistent with the radio silence outlined above, we have heard nothing from Obermeyer or the Trustee. As such, we are formally requesting that the Trustee make himself available for deposition testimony before the end of month of August. We asked that you respond promptly to this request, or we will have little choice but to approach the Court for appropriate relief.

It is regrettable that the trustee has elected to pursue the path of disengagement and refused to even consider the good faith proposals made by VSI. It is even more disappointing in light of the fact that VSI's offer is clearly superior to what is currently on offer from the Hawk Parties and would undoubtedly yield a better outcome for virtually all stakeholders in this case - particularly unsecured creditors. But as unfortunate as it is, that is the apparent path of the trustee, and it will be his to defend before the Bankruptcy Court.

Please provide us the professional courtesy of a prompt response as we need to get moving on discovery in light of the current motions practices and the Trustee's unwillingness to engage.  **Exhibit 8** to the Thompson Declaration

19.    On August 24, 2024, with yet still no response from the Trustee, VSI's counsel

wrote again:

Michael:

Once again, we have received no response to our correspondence below.  While we hoped and expected that you would honor our verbal agreement to make the Trustee available for his deposition before the end of August, it is clear that you are unwilling to work out a schedule consensually.  Your continued silence is

77855344;2

unfortunate, but we have no choice but to move forward with the discovery to which VSI is entitled in light of the current motions practice and contested matters. Accordingly, attached please find an amended examination notice and associated subpoena setting the Trustee's deposition for September 3, 2024 with documents to be produced by August 30th.

We remain available to discuss VSI's offer and the other multiple open matters.

**Exhibit 8** to the Thompson Declaration

20.     Later that day, VSI requested SSG's counsel's information to confer regarding discovery. **Exhibit 9** to the Thompson Declaration

21.     Two days later, on August 26, 2024, Trustee's counsel ignored VSI's August 24, 2024 email above and responded only with regard to SSG , specifically that Trustee's counsel were in contact with SSG about VSI's objection and the need for conduct discovery. **Exhibit 10** to the Thompson Declaration

22.     VSI's counsel responded:

Ed:

It is clear from your email to Adam below that you and Michael are receiving our emails regarding discovery, due diligence, and VSI's good faith offer in proposal (attached again for your convenience), but for some reason you and the Trustee refuse to respond. Now, it seems that you are willing to respond to my partner (but not me) with respect to the availability of a witness you do not represent on an accelerated schedule without accounting for document production or the as yet unscheduled hearing to retain SSG as investment banker. Frankly, this is getting old and I am becoming frustrated. I am doing everything possible to operate in a open, professional, and courteous manner to be productive in this matter, only to be ignored by the Trustee and his counsel. Surely, we can achieve better.

In any event, let's address first things first. We have outstanding requests to you to (i) produce documents relevant to the open motions practice and (ii) set the Trustee's deposition in connection with that same motions practice (now including the retention of SSG as investment banker). Please first advise as to whether the Trustee will (i) produce documents on or before Friday, August 30, 2024 in response to our requests and (ii) sit for his deposition on September 3, 2024 per our latest notice delivered over the weekend. In addition, please advise us of the date that the Trustee is seeking and able to obtain from the chambers for the hearing regarding the engagement of SSG as investment banker. Finally, if you know,

77855344;2

please share the name of SSG's counsel or the identity of SSG's representative (if not yet represented), so that we may coordinate the production of documents in advance of the deposition. And please feel free to advise as to when you, the SSG representative, and his counsel (if retained) will be available for the SSG representative's deposition.

We would greatly appreciate the courtesy of a timely response. **Exhibit 10** to the Thompson Declaration

23.    Once again, the Trustee responded with hostility, showing no intention cooperating

on the diligence requests or responding to VSI's offer backed by the $170 Million Proof of Funds:

I need dates from you for deposition so that we can have the SSG hearing without delay. *I am not responding to those other issues you raise, which have nothing to do with the SSG application, but are part of your and your client's efforts to delay and drive-up fees.*

What dates do you have to depose Scott? If you don't provide dates, we will assume you don't want his deposition, are abandoning the Subpoena, and we will do the hearing without it. I have to be there and I have a busy trial schedule; that's why we need the dates. We are not delaying any scheduled hearing on your objections.

I am talking to SSG this afternoon about their counsel choices. I'd like dates by then. *Id.* (emphasis added).

24.    That same day, VSI's counsel responded:

Ed:

I must ask for your indulgence here, as I am confused by your email below. I do not understand how providing a $170 million proof of funds and an all cash offer well-over $100 million is an effort to delay and drive-up fees. I also don't understand how asking for diligence items the Trustee previously agreed to provide and confer about is an effort to delay and drive-up fees. Finally, I fail to understand how follow-up correspondence with respect to discovery on pending motions practice is an effort to delay and drive-up fees.

If SSG can produce documents on Friday (August 30th) pursuant to a request we can deliver tomorrow, we can take SSG's deposition on Wednesday next week (September 3rd), the day after we will take the Trustee's deposition on Tuesday (September 2nd). Can you please confirm that the Trustee will produce documents by Friday (August 30th) and we can take his deposition next Tuesday? If your email below is communicating that the Trustee is not going to produce any documents or appear for a deposition, we need to know immediately.

12

Thank you,
John

*Id.*

25. On August 26, 2024, Trustee's counsel finally responded that they needed to meet with VSI regarding its offer and discovery.

26. VSI's counsel responded immediately and said they would fly to Philadelphia to meet with Trustee's counsel immediately.

27. No meeting has been confirmed and still no due diligence.

### III. The Apparent Real Reason for the Motion for Protective Order

28. In the Motion for Turnover, the Trustee attaches a "true and correct copy of VSI IM" as Exhibit A as proof of VSI's breaches of fiduciary duty and violations of the automatic stay. It appears that it is actually not a "true and correct" copy since the metadata clearly labels the documents author as "schmidtc," or Coleen Schmidt from the Trustee's counsel's office. VSI has no record of a presentation matching this being used. Where did the Trustee get it? Was it altered? What basis does the Trustee have to allege that VSI used it inappropriately?



77855344;2

29.    Exhibit B to the Motion for Turnover, on the other hand, does contain correct metadata and shows the document in the exhibit was created back in 2022, well before this bankruptcy case:



30.    The Motion for Turnover strongly insinuates *and seeks sanctions* for VSI's allegedly improper use of these exhibits after the Petition Date, but does not state when these exhibits were actually used – let alone when the documents were created, who created them, where they were procured, and many other critically important details regarding exhibits that are central to the Trustee's allegations.  That is likely because there is no evidence that the exhibits have been used since the Petition Date.  Indeed, it appears that the items attached to the Trustee's Motion for Turnover labeled as "exhibits" and masquerading as 'evidence' are little more than props in an orchestrated effort to mislead this Court and exact economic and reputational damage upon VSI.

77855344;2

31.    Even if such evidence existed, which it does not, VSI had a Distribution Agreement[5] allowing them to advertise the UltraD Technology, the very same conduct the Trustee complained of in the Motion for Turnover.

32.    Upon the filing of VSI's response to Trustee's Motion for Turnover, the issue was joined thereby creating a contested matter.  In addition to the procedural safeguard attendant to contested matters, the rules of fundamental fairness should also apply.  After filing what appears to be deeply-questionable pleading together with highly-dubious attachments as "proof," the Trustee should not be permitted to avoid from accountability for his own actions and accusations merely because he now finds it advantageous to do so.  Discovery may indeed prove embarrassing to the Trustee, but he was fully capable and duty-bound to determine the facts *before* he filed his accusation-filled Motion for Turnover.  At a minimum, the Trustee should be required to show where these documents came from and how Trustee's counsel can state that they are "true and correct copies.'

33.    Finally, Hawk's representative director on SeeCubic's board is representing to third parties that Hawk is the party really running the bankruptcy proceeding:

> Bob is actually very much involved [in the Bankruptcy], *he's running the bankruptcy proceedings / dealing with the US Trustee*, not Shad and continues to massively fund the business. As you know, I sit on the SeeCubic Board on behalf of Bob / the Morton family / Hawk so Bob and I communicate on a weekly basis and meet regularly.[6]

To put it charitably, the disclosure by a knowledgeable insider at Hawk and SeeCubic that Hawk and its principal, Bob Morton, are "running the bankruptcy proceedings" should be more than

---

[5] The Distribution Agreement is defined in and attached as Exhibit B to VSI's Motion to Reconsider and/or Clarify Order Approving Settlement Agreement Between Chapter 11 Trustee and Hawk Investment Holdings, LTD [Docket #686].

[6] WhatsApp message from Kevin Gollop to Mark Walpole, dated August 28, 2024.  Attached as Exhibit 1 to the Walpole Declaration.

sufficient to justify of the Trustee, Hawk, SeeCubic and any other parties with knowledge of such

case "management."  Moreover, in light of the questions surrounding the Trustee's (i) refusal to

enforce the TRO against the Hawk, SeeCubic, and their principals, (ii) entry into the 9019

Settlement Agreement and allowance of the Hawk, SLS, and SeeCubic claims, (iii) retention of

SSG as investment banker after Hawk's earlier engagement, and (iv) filing and subsequent

withdrawal of the Motion for Turnover, a reasonable person would only expect that the Trustee

would be anxious to dispel, on the record and under oath, any concerns regarding Hawk's influence

over and control of the bankruptcy case the Trustee has been charged to oversee by this Court's

order.

## <u>LEGAL ARGUMENT</u>

### I.    The Trustee Cannot Avoid Damaging Discovery by Withdrawing the Motion For Turnover

34.    The Trustee filed the Motion for Turnover seeking sanctions from VSI.  VSI filed

an objection and sought discovery regarding the Trustee's allegations.  As stated above, some of

the Exhibits attached to the Motion for Turnover look very suspicious.  VSI is entitled to discovery

from the Trustee on those documents and all the allegations in the Motion for Turnover even if it

is withdrawn.  This case is still pending and the Trustee is only seeking to withdraw the Motion

for Turnover *without prejudice*, meaning the Trustee can turn around and file the same exact same

motion when it is more convenient.  Rulings in multiple cases have determined that a withdrawal

of a party or motion to avoid discovery is prejudicial and do not allow it.  For example, in *Alliance

for Global Justice v. District of Columbia*, there was a discovery dispute between the parties in

which the plaintiffs "argued that the plaintiffs who had voluntarily dismissed themselves from the

case had no obligation to provide further discovery responses." Case No. 01-0811, 2005 U.S. Dist.

LEXIS 2855 at *2 (D. D.C. Feb. 7, 2005).  The court noted that the voluntary dismissal of various

plaintiffs did "not end the case" and determined that "permitting plaintiffs to avoid their discovery obligations would cause undue prejudice to the defendants." *Alliance for Global Justice*, 2005 U.S. Dist. LEXIS 2855 *3.  In *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 305 (D. D.C. 2000) ("for [the] protection of defendants," *the production of the documents was "a prerequisite to a voluntary dismissal without prejudice."*) (emphasis added);

35.      In cases regarding the dismissal without prejudice of a certain claim, courts should consider expenses and prejudice to the other side before dismissing without prejudice:

> [A] court should consider expenses that have been incurred prior to the motion, as well as any inconvenience the defendant might suffer as a result. When a defendant has already expended significant time and effort, the district court may utilize its discretion and refuse to grant voluntary dismissal.  Accordingly, serious prejudice to the defendant may serve as a basis for the court to deny a request for voluntary dismissal and the court should not turn a blind eye to meritorious arguments by defendants that would result in dismissal with prejudice.

*See*, *e.g.*, *Lang v. DirecTV, Inc.*, Case No. 10-1085 "G"(1), 2012 WL 733866, at *4 (E.D. La. Mar. 6, 2012)

36.      Considering the suspicious nature of the allegations in the Motion for Turnover, the suspicious nature of the Exhibits thereto, and the connectedness of the Trustee to SeeCubic and Hawk, the discovery sought in connection to the Motion for Turnover is relevant to an order dismissing the allegations with prejudice as well as to these proceedings as a whole and in connection with the Objection to SSG.  Clearly, the purpose of the Motion to Withdraw is for the Trustee to avoid an adverse ruling and avoid producing documents and deposition testimony that could likely be "inconvenient." This court should not be inclined to grant the request.  *D.C.G. ex rel. E.M.G. v. Wilson Area School Dist.*, Case No. 07-cv-1357, 2009 WL 838548, at *3 (E.D. Penn. Mar. 27, 2009) ("If Plaintiffs are attempting to withdraw their Complaint to avoid an adverse

determination on Defendants' motion for summary judgment, the Court is certainly not inclined to grant Plaintiffs' request.").

37.    The withdrawal of the Motion for Turnover is a litigation tactic.  If the Trustee wants to withdraw it, discovery should be a prerequisite.

## II.    The Trustee Possesses Documents and Information that SSG Does Not

38.    The Trustee has chosen SeeCubic as the stalking horse bidder.  Before and during this case, SeeCubic has acted either in concert with or at the will of Bob Morton and Hawk, parties that have been at odds with the Debtors for years, held in contempt of court for their refusal to abide by Delaware state court orders, and ordered by this Court to return the Debtors' property to the estate.  As set forth in more detail in VSI's Limited Objection to SSG, in 2022, SeeCubic/Hawk hired SSG to sell the Debtors' assets for SeeCubic's/Hawk's own benefit after being directed by the Delaware Chancery Court to return those assets to the Debtors. And now, seemly oblivious of the obvious conflict, the Trustee selected SSG as the investment banker to market those same assets; only now on behalf of the Debtors with SeeCubic/Hawk as the proposed stalking horse.[7]

39.    The Trustee cannot avoid *any and all* discovery by relying on SSG's discovery.  SSG does not have the communications between the Trustee, SeeCubic, and Hawk.  These communications are at the heart of VSI's Objection to SSG's employment.  Considering that Hawk's representative director on SeeCubic's board is representing to third parties that Hawk is "running the bankruptcy proceeding," the Trustee must be compelled to provide discovery.

## III.    The Unsigned Subpoena Argument is a Red Herring

40.    The Trustee argues that since the subpoena was unsigned, he is exempt from all discovery.  This is a really surprising argument since counsel for VSI initially sent over discovery

---

[7] *See generally* Objection to SSG.

77855344;2

in the form of a Rule 2004 examination.  Trustee's counsel asked that the discovery take the form

of discovery requests and VSI's counsel obliged in an effort to act in good faith.

41.      The Trustee is a party, a subpoena is not required.  In any event, a signed subpoena

can be delivered to the Trustee at any time.  Out of an abundance of caution, VSI will not send

over a signed opinion until after the hearing on September 18, 2024, consider this Court's

scheduling order. Moreover, the Trustee has obviously had notice of the discovery requests for

weeks.  If there was a problem with the subpoena, the Trustee could have easily told VSI counsel

in their communications.  Instead, the Trustee continuously represented that discovery was moving

forward (at least until the day before the discovery was due).

## **CONCLUSION**

For the foregoing reasons, VSI requests that the Court (i) grant VSI's Motion to Compel

the Trustee to appear for a deposition and produce documents, (ii) deny the Trustee's Expedited

Motions, and (iii) deny the Motion to Withdraw, or in the event that the Motion to Withdraw is

granted, order that the Motion for Turnover is withdrawn *with prejudice* only after discovery is

provided, and grant such other and further relief as the Court deems necessary.

*[Remainder of page intentionally left blank]*

77855344;2

Dated: September 4, 2024

Respectfully submitted,

AKERMAN LLP

/s/ R. Adam Swick
Donald N. David, SBN: 304846
Mark Lichtenstein *(pro hac vice to be filed)*
1251 Avenue of the Americas
37th Floor
New York, NY 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
Email: donald.david@akerman.com
          mark.lichtenstein@akerman.com

-and-

R. Adam Swick *(pro hac vice)*
AKERMAN LLP
500 West 5th Street, Suite 1210
Austin, TX 78701
Telephone: (737) 999-7103
Facsimile:  (512) 623-6701
Email: adam.swick@akerman.com

-and-

John H. Thompson *(pro hac vice)*
AKERMAN LLP
750 Ninth Street, N.W. 750
Washington, D.C. 20001
Telephone: (202) 824-1760
Facsimile:  (202) 393-5959
Email: john.thompson@akerman.com

-and-

Leif M. Clark
Leif M Clark Consulting PLLC
1105 Bonner
Houston, TX 77007
Telephone: (210) 663-5183
Email: lmclark@leifmclark.com

*Attorneys for Visual Semiconductor, Inc.*

77855344;2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the United States Bankruptcy Court for the Eastern District of Pennsylvania on August 21, 2024, with notice sent electronically to all parties receiving electronic notices in this case pursuant to local rules of this Court, and that no further notice or service is necessary.


*/s/ John Thompson*
John Thompson

77855344;2

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that VSI did not confer with the Trustee before filing this Objection.  On multiple occasions VSI has attempted to reach the Trustee and confer regarding other matters in this case.  Despite representing that the Trustee will confer, the Trustee has failed to do so.

*/s/ John Thompson*
John Thompson

77855344;2