# Exhibit A



## SSG ADVISORS, LLC

August 22, 2024

Mr. William A. Homony
Chapter 11 Trustee
1628 John F. Kennedy Boulevard, Suite 950
Philadelphia, PA 19103

Dear Mr. Homony:

This amended agreement ("Amended Engagement Agreement") will serve as the contract between William A. Homony, solely in his capacity as the Chapter 11 Trustee (the "Trustee") of the estates of Stream TV Networks, Inc. and Technovative Media, Inc. (the "Debtors"), in bankruptcy Case No. 23-10763 (AMC) pending in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania ("Bankruptcy Court"), and SSG Advisors, LLC ("SSG" or "Advisor") regarding the retention of SSG as exclusive investment banker to the Trustee for the purposes outlined in this Amended Engagement Agreement. SSG's responsibilities hereunder involve providing investment banking services to the Trustee, focusing exclusively on the sale of all or part of the Debtors' assets (the "Sale").

A. **SSG's Role**

   1. SSG's role in connection with Sale Transaction will include the following:

      - Prepare an information memorandum describing the Debtors, their historical performance and prospects, including existing contracts, intellectual property, marketing and sales, labor force, management, financial projections involving restarting the business;

      - Assist the Trustee in operating a data room of any necessary and appropriate documents operating related to the Sale;

      - Assist the Trustee in developing a list of suitable potential buyers who will be contacted on a discreet and confidential basis after approval by the Trustee and update and review such list with the Trustee on an on-going basis;

      - Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

      - Assist the Trustee in coordinating site visits for interested buyers and work with the management team to develop appropriate presentations for such visits;

      - Solicit competitive offers from potential buyers;

      - Advise and assist the Trustee in structuring the sale and negotiating the transaction agreements;

Mr. William A. Homony
August 22, 2024
Page 2

- Otherwise assist the Trustee and his other professionals, as necessary, through closing on a best efforts basis.

In performing the services described above, the Trustee will attempt to furnish or cause to be furnished to SSG such available or readily obtainable information as SSG reasonably believes appropriate to the execution of its engagement hereunder (all such information so furnished being the "Information"). The Trustee recognizes and confirms that SSG: (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same; (b) does not assume responsibility for accurateness or completeness of the Information and such other information; and (c) will not make an appraisal of any of the assets or liabilities of the Debtors.

The Trustee agrees that SSG shall be his exclusive investment banker in connection with any Sale Transaction undertaken with respect to the Debtors during the Engagement Term, as defined below, of this Amended Engagement Agreement. The Trustee agrees that, during the Engagement Term, SSG shall have the authority to initiate and conduct discussions and assist and advise the Trustee in its negotiations with all prospective purchasers. In that regard, the Trustee agrees to identify to SSG all prospective purchasers who come in contact with the Trustee during the Engagement Term.

SSG will consult with and advise the Trustee with respect to the financial aspects of any proposed Sale Transaction, including price, terms and conditions of a Sale Transaction. SSG will not, however, have any authority to bind the Trustee with respect to any proposed Sale Transaction. Likewise, nothing contained herein shall require the Trustee to accept the terms of any proposal and the Trustee shall at all times have the right in his sole and absolute discretion to reject any proposed Sale Transaction regardless of the terms proposed.

B. **SSG's Compensation**

As compensation for providing the foregoing services, SSG shall receive the following:

1. Retainer Fee: a non-refundable retainer of $100,000 payable upon the approval of SSG's formal retention by the Court (the "Retainer").

    The Retainer paid by the Chapter 11 Trustee to SSG shall be fully credited against the Sale Transaction Fee (as defined in 2 below).

2. Sale Transaction Fee: Concurrent with and payable immediately upon the closing of a Transaction, SSG shall receive a cash fee (the "Transaction Fee") equal to the greater of $500,000 including any crediting of the Retainer Fee (the "Minimum Transaction Fee"), or:

    a. 5.0% of the Aggregate Transaction Value (as defined in the Agreement) greater than $150 million but less than $200 million, plus

Mr. William A. Homony
August 22, 2024
Page 3

      b. 20% of the Aggregate Transaction Value (as defined in the Agreement) greater than $200 million but less than $225 million; plus

      c. 10% of the Aggregate Transaction Value (as defined in the Agreement) greater than $225 million.

3. **Expenses**: In addition to the foregoing Sale Fee noted above where or not a Transaction is consummated, SSG will be entitled to reimbursement for all of SSG's reasonable out-of-pocket expenses.

C. **Definitions**

For the purpose of this Amended Engagement Agreement:

**Sale Transaction** means and includes any transaction involving the sale of the assets of the Debtors.

**Total Consideration** shall mean the cash and non-cash consideration (i.e., any purchaser stock or similar liquid asset) of the purchase price paid for the assets plus the assumption or payoff of any indebtedness.

For purposes of computing any fees payable to SSG hereunder, non-cash consideration shall be valued as follows: (a) publicly traded securities shall be valued at the average of their closing prices (as reported in The Wall Street Journal) for the five (5) trading days prior to the closing of the Sale Transaction; and (b) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Trustee and SSG. If such aggregate consideration may be increased by contingent payments such as an "earnout" or other monetary agreement in the transaction, the portion of SSG's fee relating thereto shall be calculated and paid when and as such contingent payments or other monetary amounts are received.

**Transaction** shall mean a Sale.

**Transaction Fee** shall mean a Sale Fee.

D. **Term of Engagement**

This Amended Engagement Agreement shall remain in force (the "Engagement Term") for a period of six (6) months from the date of signing this Amended Engagement Agreement and may continue thereafter on a month to month basis if agreed to by the parties; provided, however, that the Amended Engagement Agreement shall terminate immediately upon the closing of a Transaction. Upon the termination of this Amended Engagement Agreement, neither party shall have any further obligations to the other except that: (a) termination of the Amended Engagement Agreement shall not affect SSG's right to indemnification under the Indemnification paragraph below; and (b) if a Transaction is consummated within twelve (12) months ("Trailer Term") of the termination of this Amended Engagement Agreement with any party who (i) learned of the Sale through SSG; (ii) contacted SSG during the Engagement Term; (iii) contacted SSG independently about the Sale; or (iv) SSG was in contact with during the Engagement Term, the Chapter 11 bankruptcy estate shall remain obligated to pay a Sale Fee, as calculated above. Sections B, D,

Mr. William A. Homony
August 22, 2024
Page 4

E, F and G (entitled Compensation, Term of Engagement, Indemnification, Miscellaneous, and Scope of Duties, respectively) of this Amended Engagement Agreement shall survive the expiration or termination of this Amended Engagement Agreement indefinitely.

E. **Indemnification**

The Trustee hereby acknowledges and agrees to the indemnification arrangements between the parties hereto as described on Attachment A hereto, which Attachment is incorporated herein and forms an integral part hereof.

F. **Miscellaneous**

No fee payable to any other financial advisor or finder by the Debtors' estate or the Trustee in connection with the subject matter of this Amended Engagement Agreement shall reduce or otherwise affect any fee payable to SSG hereunder. This Amended Engagement Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties hereto. This Amended Engagement Agreement cannot be modified or changed, nor can any of its provisions be waived, except by written agreement signed by both parties. The benefits of this Amended Engagement Agreement shall inure to the respective successors and assigns of the parties hereto and of the Indemnified Parties and their respective successors, assigns and representatives, and the obligations and liabilities assumed in this Amended Engagement Agreement by the parties hereto shall be binding upon their respective successors and assigns.

This Amended Engagement Agreement may be executed in any number of counterparts, which counterparts, taken together, shall constitute one and the same Amended Engagement Agreement.

G. **Scope of Duties**

The Trustee hereby acknowledges and agrees that: (a) he has retained SSG for the purposes set forth in this Amended Engagement Agreement and that the rights and obligations of the parties hereto are contractual in nature; and (b) SSG has not made any warranties or guarantees of any nature with respect to the success or satisfactory conclusion of any Transaction or as to the economic, financial or other results which may be obtained or experienced by the Trustee as a result thereof.

H. **Bankruptcy Court Proceedings**

This Amended Engagement Agreement shall be subject to approval by the Bankruptcy Court in the Chapter 11 Bankruptcy proceeding as part of SSG's Retention.

I. **Other Matters**

The Trustee agrees that SSG has the right, following a Sale Transaction closing, to place advertisements in financial and other newspapers and journals and send an email blast at its own expense describing its services to the Trustee hereunder.

Mr. William A. Homony
August 22, 2024
Page 5

In accordance with the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001), SSG is required to obtain, verify and record information that identifies its clients, which information may include the name and address of the Trustee, the Debtor and its senior management team as well as other information that will allow SSG to properly identify its clients. Additionally, SSG maintains important disclosures on the web site www.ssgca.com. These disclosures may be updated periodically on an as-needed basis. The Trustee agrees to accept and receive all of these disclosures by electronically accessing the website referenced above and acknowledges that printed hard copies of these disclosures are available upon request by contacting SSG directly at (610) 940-1094.

J. **Securities Platform**

All transactions involving the sale or purchase of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under) are offered through SSG Capital Advisors, LLC. ("SCA"), an affiliated Pennsylvania corporation and registered Broker-Dealer in good standing with the Financial Industry Regulatory Authority ("FINRA") and the Securities Investor Protection Corporation ("SIPC"). Principals of SSG are registered representatives of SCA. Therefore, SCA is included collectively as "SSG" with all the rights and obligations thereto under the terms of this Amended Engagement Agreement.

To the extent a Transaction Fee is payable to SSG in connection with Transaction constituting the purchase or sale of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under), such Transaction Fee shall be specifically paid to SCA. Under no circumstance will Trustee be obligated to pay a fee in an aggregate amount in excess of the amount provided in this Amended Engagement Agreement. Payment of the fee to SCA shall constitute and be deemed payment of the fee in this Amended Engagement Agreement.

Any amendment, modification or other changes to this Amended Engagement Agreement must be in writing and signed by both parties to be enforceable.

Mr. William A. Homony
August 22, 2024
Page 6

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.

**SSG ADVISORS, LLC**

By: _____  
J. Scott Victor  
Managing Director

_____  
Teresa C. Kohl  
Managing Director

ACCEPTED:

**CHAPTER 11 TRUSTEE FOR STREAM TV NETWORKS, INC. AND TECHNOVATIVE MEDIA, INC.**

By: _____       8/22/24
William A. Homony                                        Date
Chapter 11 Trustee

Mr. William A. Homony
August 22, 2024
Page 7

## ATTACHMENT A
## INDEMNIFICATION PROVISIONS

The Trustee agrees that the bankruptcy estates of the Debtors will indemnify, defend and hold harmless SSG and SCA and its affiliates, the respective partners, members, directors, officers, agents and employees of SSG and its affiliates and each other person, if any, controlling SSG or its affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to SSG's acting on behalf of the Trustee under the Amended Engagement Agreement of which this Attachment A forms a part; provided, however, under no circumstances shall the bankruptcy estates of the Debtors be obligated to indemnify, defend or hold harmless any Indemnified Party if the claims for which the Indemnified Party seeks indemnification arise out of or are attributable to conduct of the Indemnified Parties which is found by final non-appealable order by a court of competent jurisdiction to have engaged in willful misconduct or gross negligence. The Trustee agrees that reliance by SSG on any publicly-available information, the information supplied by the Trustee to SSG in connection with said Amended Engagement Agreement or any directions furnished by the Trustee shall not constitute negligence, bad faith or willful misconduct by SSG.

The provisions of this Attachment A shall survive any termination of said Amended Engagement Agreement.