1

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

------------------------------------
STREAM TV NETWORKS,                  :
            Plaintiff,               :
      v                              : C. A. No.
                                     : 2020-0766-JTL
SEECUBIC, INC.,                      :
                                     :
            Defendant.               :
------------------------------------
SEECUBIC, INC.,                      :
            Counterclaim and         :
            Third-Party Plaintiff,   :
      v                              :
                                     :
STREAM TV NETWORKS, INC.,            :
                                     :
            Counterclaim Defendant,  :
                                     :
      and                            :
                                     :
MATHU RAJAN and RAJA RAJAN,          :
                                     :
            Third-Party Defendants.  :
------------------------------------

- - -
Chancery Court Chambers
Leonard L. Williams Justice Center
500 North King Street
Wilmington, Delaware
Wednesday, July 20, 2022
12:45 p.m. ampm
- - -
BEFORE: HON. J. TRAVIS LASTER, Vice Chancellor
- - -

<u>ORAL ARGUMENT and RULINGS OF THE COURT ON SEECUBIC'S
POST-REMAND MOTION TO PRESERVE THE STATUS QUO AND
MOTION TO EXPEDITE  -HELD VIA ZOOM</u>

-------------------------------------------------------
CHANCERY COURT REPORTERS
Leonard L. Williams Justice Center
500 North King Street - Suite 11400
Wilmington, Delaware 19801
(302) 255-0523

**EXHIBIT D**

1 the assets and all that.
2             We need to be able to raise money and
3 sign commercial contracts and otherwise behave
4 normally.  That's what we need to do.
5             THE COURT:  All right.
6             I'm going to go ahead and give you an
7 answer now, in the interest of time.  I very much
8 appreciate counsel's presentations.  It's always good
9 to see you-all, even under the current circumstances.
10            We are here on remand after the
11 Delaware Supreme Court's reversal of a decision in
12 which I declared that the omnibus agreement was valid.
13 My understanding of the state of play is not that the
14 omnibus agreement is valid pending some type of
15 stockholder vote.  I think the omnibus agreement, at
16 this point, is not valid.
17            I do agree that it required
18 stockholder approval to become valid, as held by the
19 Delaware Supreme Court.  It didn't receive stockholder
20 approval.  And so at this point, I don't view the
21 omnibus agreement as in play anymore.  I think it just
22 hasn't gone into effect.
23            That's my starting point.  What flows
24 from that is that I do think title to the assets

should be at Stream. I think, technically, title to the assets never left Stream, and I think, at this point, equitable title to the assets has to be viewed as at Stream.

In terms of the TRO situation, that puts us in a fundamentally different position than we were when we were last together over 18 months ago. At that point, I thought and understood that there was a litigable dispute over who actually had the right to control the assets, with Stream on one side saying, "This agreement is invalid, we have control of them," and SeeCubic on the other side saying, "No, the omnibus agreement gives us equitable title to the assets."

And my view was that the irreparable harm in that situation flowed from the fact that you had two people, each one of whom asserted they had the right to own and determine the fate of these assets. I thought, therefore, that a status quo order was necessary to make sure that neither side did anything while that issue was contested.

We got to a point where I held that the assets were validly SeeCubic's under the omnibus agreement. That is the decision that has been

1  reversed.  And so, in my view, we're in a world where
2  title right now, both equitable and legal, to the
3  extent that one can wind the clock back, is in the
4  hands of Stream.
5              Then the question becomes what am I
6  being asked to do?  And technically what I'm being
7  asked to do today is to allow SeeCubic to keep the
8  assets pending the result of a foreclosure proceeding.
9  I don't think I can do that.  That may well be the
10 status quo today, in that SeeCubic has the assets, but
11 the reality is, based on the Delaware Supreme Court
12 decision, SeeCubic, right now, shouldn't have the
13 assets.
14             Now, that doesn't mean that SeeCubic
15 has lost whatever other rights it has.  Whatever
16 creditor rights SeeCubic had or may have been assigned
17 independent of the omnibus agreement, those rights
18 still exist.  Those rights, as I understand it, are
19 being enforced in the foreclosure action in Superior
20 Court.  And those rights, again, as I understand it,
21 are of a magnitude where, at least in theory, Stream
22 could raise money to satisfy that debt and then go on
23 free of that claim.
24             I don't know whether they can or not,

29

1   but by virtue of being the proper owner of these
2   assets, I think they have the right to try.  In other
3   words they should get to, if they want to, seek to
4   raise capital based on these assets and try to satisfy
5   the debts that they owe.
6                I don't think that there's any basis
7   for any type of relief that would leave these assets
8   in SeeCubic's hands.
9                Then I get to the point of, well, what
10  types of claims does SeeCubic actually have.  And I
11  think SeeCubic has colorable claims -- I would even
12  say fairly litigable claims -- for breach of duty and
13  unjust enrichment.  The unjust enrichment claim seems
14  particularly litigable because I've read the *Fleer*
15  case.
16               It seems to me there's a setting
17  where, depending on how the facts come out, SeeCubic
18  could have a sizable claim for increasing the value of
19  the company.  I also understand that Stream doubtless
20  will argue that what SeeCubic actually has done is
21  harm the value of the company.  That's a factual
22  dispute.  We've got to have some type of hearing on
23  that.  I can't decide it today.
24               Then the question becomes, in my mind,

1  I want the parties to try to move forward with some
2  type of Rule 54(b) order that implements the Delaware
3  Supreme Court's decision.
4             I think that order needs to result in
5  these assets being moved back to Stream.  If you-all
6  were able to agree on some type of person to help you
7  transition, I would happily enter that type of order.
8  It seems to me like a good idea.  And if someone wants
9  to apply for it and the other people want to resist
10 it, we can go that way too.  But at least for purposes
11 of today, I'm denying the application, and you'll have
12 to move forward on that basis.
13            I apologize for not being able to take
14 any questions or discuss things with you further.
15 I've got a bunch of people waiting for me upstairs and
16 I need to go back and continue this trial.
17            I hope you-all have a good rest of the
18 afternoon.  Thank you for your time.
19            ATTORNEY PARKER:  Thank you, Your
20 Honor, for your time.
21            ATTORNEY DUPRE:  Thank you, Your
22 Honor.
23        (Proceedings concluded at 1:29 p.m.)
24                      - - -

36

## CERTIFICATE

I, JULIANNE LaBADIA, Official Court Reporter for the Court of Chancery of the State of Delaware, Registered Diplomate Reporter, Certified Realtime Reporter, and Delaware Notary Public, do hereby certify the foregoing pages numbered 3 through 35, contain a true and correct transcription of the proceedings as stenographically reported by me at the hearing before the Vice Chancellor of the State of Delaware, on the date therein indicated.

IN WITNESS WHEREOF, I have hereunto set my hand at Wilmington this 21st day of July, 2022.

/s/ Julianne LaBadia
-----------------------------
Julianne LaBadia
Official Court Reporter
Registered Diplomate Reporter
Certified Realtime Reporter
Delaware Notary Public