**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **Stream TV Networks, Inc.,** *et al*. | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | |
| Debtors. | : | **(Jointly Administered)**[1] |
| | : | |

**MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS
CHAPTER 11 TRUSTEE TO EXTEND DEADLINES, TIMING, AND AMOUNT OF
CERTAIN OBLIGATIONS IN THE SHARING AND CARVE-OUT AGREEMENT
BETWEEN THE TRUSTEE AND HAWK INVESTMENT HOLDINGS, LTD. AS
COLLATERAL AGENT OF THE SECURED NOTEHOLDERS OF SEECUBIC, INC.
AND FOR RELATED RELIEF**

William A. Homony, in his capacity as Chapter 11 trustee (the "**Trustee**") of the bankruptcy estates of Stream TV Networks, Inc. ("**Stream**") and Technovative Media Inc. ("**Technovative**", or collectively with Stream the "**Debtors**"), by and through his undersigned counsel, Obermayer Rebmann Maxwell & Hippel LLP, hereby requests the entry of an Order extending deadlines and altering the timing and amount of certain obligations in the Sharing and Carve-Out Agreement between the Trustee and Hawk Investment Holdings, Ltd. ("**Hawk**"), as Collateral Agent for the secured noteholders of SeeCubic, Inc. ("**SeeCubic**" or in conjunction with the Trustee, Hawk and SeeCubic may be generally referred to as "**Party**" or collectively as the "**Parties**") ("**Agreement**"), and in support thereof, states as follows:

**I.    JURISDICTION**

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and/or 1409.

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.* Case No. 23-10764 (AMC) (D.I. #81).

3. The statutory bases for the relief requested herein are 11 U.S.C. §§ 105, 361, and 362(d) and Federal Rule of Bankruptcy Procedure ("**Rule**") 9006(b)(1).

## II. BACKGROUND

4. On or about May 6, 2024, the Trustee filed a Motion to Approve a Settlement Agreement and Mutual Release with Hawk Investment Holdings, Ltd., as Collateral Agent for the Secured Noteholders of SeeCubic, Inc., Pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a) (the "**9019 Motion**") [D.I. 630].

5. The Motion sought approval of the Sharing and Carve-Out Agreement between the Trustee on behalf of the Debtors, Hawk, in its capacity as Collateral Agent for the secured noteholders of SeeCubic and all other individuals and entities individually who execute a Release Supplement (the "**Agreement**").

6. The Agreement provides for a Carve-Out in the minimum amount of $7,500,000.00 from the proceeds resulting from the sale of substantially all of the Debtors' assets (the "**Collateral**").

7. On or about June 6, 2024, the Court entered an Order granting the 9019 Motion and approving the Agreement.

8. The Agreement contemplated the sale of the Collateral by auction and a Closing in or around August 2024, and outlined deadlines accordingly.

9. Due to objections in the process of securing an investment banker to broker the sale, the sale process was delayed.

10. The Trustee has successfully retained SSG Capital Advisors ("**SSG**") as his investment banker.

11. SSG has begun marketing of the Collateral for sale in earnest. Consultation with SSG has led the Trustee and his advisors to believe that in order to market the Collateral with the greatest efficacy, more time is needed, and the deadlines, timing, and amount of obligations under the Agreement have to be revised.

12. The deadlines, timing and amount of obligations within the Agreement were based upon the parties' predictions in April that a sale would occur by August.

13. As a result, the Trustee will not be able to meet the dates currently specified in the Agreement, which are predicated on timeline expectations formulated in May 2024.

14. The deadlines and the timing of obligations within the Agreement are inconsistent with the parties' actual progress since May 2024.

15. Since approval of the Agreement, the Trustee and his professionals have worked diligently to move the sale process forward.

16. Since the retention of SSG by the Trustee, significant progress has been made towards the sale of the Collateral. SSG has begun a robust marketing process and has been reaching out to hundreds of potential purchasers.

17. SeeCubic (via Hawk) and the Trustee are currently in the progress of final negotiations for the Stalking Horse Asset Purchase Agreement ("**Stalking Horse APA**") for the purchase of the Collateral.

18. The parties will not be able to finalize the Stalking Horse APA and effectuate a sale of the Collateral by the original deadlines outlined in the Agreement.

### III.     RELIEF REQUESTED

19. Pursuant to Bankruptcy Rule 9006(b)(1), this Court may allow an enlargement of time of any obligation included in any order of court at its discretion for "cause shown".

20. Significant progress has been made towards the sale of the Collateral under the direction of the Trustee and his advisors at SSG.

21. However, the sale process has not yet been completed. SSG has asked for additional time to market the Collateral. The Trustee agrees that additional time is required to maximize SSG's marketing efforts and to ensure a wide net is cast to capture interested bidders.

22. It is not possible for the sale to be completed by the date contemplated when the parties entered the Agreement, which, in turn, renders the deadlines predicated upon that sale date equally unfeasible.

23. The Trustee and Hawk, as collateral agent for the secured noteholders of SeeCubic, have reached an accommodation that allows for the sale process to be completed and for new deadlines to be set for certain obligations and the Closing on the sale of the Collateral, and which provides for the continued funding of SeeCubic BV (a foreign non-debtor subsidiary which provides the research and development associated with the Debtors' technology) by Hawk through the extended Closing Date.

24. The Trustee and Hawk have agreed to the following extensions and revisions to the timing and amount of obligations in the Agreement:

1) Section 1 a) (<u>Settlement Generally; Cooperation</u>):

a) The Trustee shall use his best efforts to consummate a sale of the Collateral under section 363 of the Bankruptcy Code as contemplated under this Agreement (any such sale, a "<u>Sale</u>"), which he shall endeavor to close (the "<u>Closing</u>") no later than ~~August 2,~~ **December 10, 2024** (subject to further extension by written agreement of Hawk and the Trustee, the "<u>Outside Closing Date</u>"), in accordance with the provisions of the Agreement.

2) The Agreement is extended as follows by adding the following language, as indicated below in bold and strikethrough, to Section 4 a), b) and c), (<u>Trustee Carve-Out</u>):

a) With respect to any Sale that closes in accordance with the Section 3, the Secured Creditors shall carve out of the proceeds of the Collateral **$8,000,000**~~$7,500,000~~ plus 10% of every additional dollar by which the ultimate purchase price at the conclusion of the Auction, exceeds the Stalking Horse Bid up to the amount of the Allowed Secured Claim (the "Carve-Out").

b) SCI shall pay a portion of the Carve-Out (such portion, the "Carve-Out Advance") to the Trustee according to the following schedule:

   i  $1,000,000.00 within two business days of the entry of the 9019 Order; and

   ii  **Except as set forth in paragraph 5 e) below,** $1,500,000.00 within two business days of the entry of the Bidding Procedures Order.

c) The Trustee shall receive the balance of the Carve-Out *i.e.*, the Carve-Out minus the Carve-Out Advance) at Closing:

3) The Agreement is extended as follows by adding the following language, as indicated below in bold and strikethrough, to Section 5 e) (Support of the Carve-Out):

e) Notwithstanding any provision herein to the contrary, the Trustee **and SCI** shall ~~retain~~ **immediately file a joint request in the Delaware Court of Chancery by the Trustee and SCI to release the** ~~rights to the~~ $1 million bonds posted by or on behalf of the Debtors **(the "Stream Bond") and SCI (the "SCI Bond")** in the 225 Action. **However, (i) If both the SCI Bond and the Stream Bond are received by the respective parties before the entry of the Bid Procedures Order, SCI's obligation to remit the $1,500,000 million of the Carve-Out Advance in Section 4 b) ii of the Agreement shall be deferred and will be paid at any sale closing; (ii) If the SCI Bond has been received by SCI and the Stream Bond has not been received by the Trustee upon the entry of the Bid Procedures Order, SCI will pay the $1,000,000 million bond proceeds from the SCI Bond to the Trustee within two (2) business days of the entry of the Bid Procedures Order, which will constitute a Carve-Out Advance, credited against the Carve-Out, with the remaining $500,000 of that payment deferred and paid at any sale closing and the Trustee retains the $1 million Stream Bond proceeds if recovered; and (iii) should neither the Stream Bond proceeds nor the SCI Bond proceeds have been received by the Trustee before entry of the Bid Procedures Order, then SCI will remit $500,000 of the Carve-Out Advance within two business days of the entry of the Bid Procedures Order, with the remaining $1,000,000 of that payment deferred until the earlier of (a) SCI's receipt of the SCI Bond proceeds (of which $500,000 shall be paid to the Trustee within two business days of receipt and credited against the Carve-Out) or (ii) paid at any sale closing.**

25. The Trustee does not believe either the extension of time or the moving of deadlines provided for herein prejudices any party. Moreover, the extension will allow for continued and robust marketing of the Collateral, an endeavor in which SSG is well underway, which will provide the potential for an overbid of the Stalking Horse Bid.

26. The requested modifications provide real benefits to the Debtors' estates, including the extended dates and a $500,000 increase in the Agreement's minimum Carve-Out amount from $7,500,000.00 to $8,000,000.00.

27. Further, if the extension is permitted, the continued funding of SeeCubic BV operations through the Closing Date is ensured. The retention of SeeCubic BV employees is critical to retaining the value of the Collateral. The Debtors have no other funding source for payment of SeeCubic BV financial obligations in the Netherlands.

28. Finally, if approved, the Trustee is able to immediately recover the Stream Bond in the Delaware Chancery Court, allowing the Trustee to recover the Stream Bond prior to Closing.

29. In sum, there are significant benefits to be obtained, and no prejudice occasioned upon any party, by extending the dates, timing and amount of certain obligations under the Agreement. Accordingly, "good cause" exists for the proposed modifications to the Agreement, and deadlines as provided in this Motion and the attached Proposed Order.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests, pursuant to Rule 9006(b), that this Court enter an Order extending the deadlines and altering the timing and amount of obligations in the Agreement and providing such other and further relief as this Court deems necessary and just.

[Signatures contained on following page]

Respectfully Submitted,

Dated: November 12, 2024 By: */s/ Michael D. Vagnoni*
Michael D. Vagnoni, Esquire
Edmond M. George, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3066
Facsimile: (215) 665-3165
E-mail: michael.vagnoni@obermayer.com
edmond.george@obermayer.com

*Counsel to William A. Homony, Chapter 11 Trustee*