**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| IN RE STREAM TV NETWORKS, INC. OMNIBUS AGREEMENT LITIGATION | ) C.A. No. 2020-0766-JTL ) |

**ORDER REGARDING MOTION FOR MANDATORY INJUNCTION**

WHEREAS,

A.   Stream TV Networks, Inc. ("Stream") has filed a Motion for Mandatory Injunction (the "Motion").

B.   The Motion seeks the return of specific assets that SeeCubic, Inc. acquired under an agreement between Stream, its two secured creditors, and fifty-two of its stockholders (the "Omnibus Agreement").

C.   The Delaware Supreme Court has held that the Omnibus Agreement was not valid. *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323 (Del. 2022). The mandate issued July 1, 2022 (the "Mandate").

D.   On August 7, 2022, this court entered a partial final judgment which determined that in light of the Mandate, the Omnibus Agreement did not validly transfer legal title to any of the Legacy Stream Assets from Stream to SeeCubic. Dkt. 266 (the "Partial Final Judgment"). The court directed the parties to "cooperate to effectuate the Mandate, including by causing SeeCubic to transfer legal title to the [Legacy Stream Assets] from SeeCubic to Stream as expeditiously as possible." *Id.* ¶ 4.

E.   On September 28, 2022, the court issued a memorandum opinion addressing a motion to modify the Partial Final Judgment filed by Hawk Investment Holdings Ltd. Dkt. 306 (the "Modification Opinion").

**EXHIBIT B**

F. In the Modification Opinion, the court explained that it was necessary to prioritize the return of Stream's assets over (i) the rights of Stream's creditors and (ii) the claims of SeeCubic to hold assets that did not exclusively comprise Legacy Stream Assets.

G. The reasoning of the Modification Opinion applies to the Motion.

**NOW, THEREFORE, IT IS HEREBY ORDERED**:

1. Stream seeks a mandatory injunction requiring SeeCubic to keep in effect software licenses for twelve users identified in Exhibit A to the Motion (the "Twelve Users"). This aspect of the Motion is denied without prejudice.

a. Originally, it appeared that Stream was seeking an injunction requiring SeeCubic to renew the licenses to the software that the Twelve Users currently are using (the "Current SeeCubic Software"). It now appears that Stream seeks a mandatory injunction requiring SeeCubic to provide the Twelve Users with the ability to use Stream's software as it existed in December 2020 (the "Legacy Stream Software").

b. The record does not reveal whether it is feasible for SeeCubic to comply with such an order. SeeCubic has told Stream that it updated the Legacy Stream Software to create the Current SeeCubic Software. SeeCubic has represented that it did not retain a copy of the Legacy Stream Software. Even if SeeCubic still possessed a copy of the Legacy Stream Software, the current record does not establish whether SeeCubic could push out, or the Twelve Users could use, the Legacy Stream Software.

c. Factual disputes accordingly prevent the granting of mandatory relief.

d. Parties can and do engage in remedial discovery. The parties have leave to conduct discovery into the status of the Legacy Stream Software and the Current

SeeCubic Software. An obvious step would be for Stream to conduct a Rule 30(b)(6) deposition of SeeCubic on these topics.

e. Although the court has denied Stream's request for mandatory relief, Stream has demonstrated an entitlement to prohibitive relief sufficient to ensure that the Twelve Users can continue to use the Current SeeCubic Software. Pending further order of the court, SeeCubic is enjoined from taking any action to cut off or otherwise terminate the Twelve Users' ability to use the Current SeeCubic Software. The injunction shall lift once Stream has an adequate opportunity to provide the Twelve Users with substitute software coverage.

2. The Motion seeks a mandatory injunction requiring SeeCubic to return Ultra-D Technology Demonstrator Samples that existed in whole or in part prior to December 8, 2020 (the "Sample Displays"). SeeCubic shall return the Sample Displays to Stream within ten days.

a. As the Modification Opinion explains, to the extent it is relatively easy to return assets to Stream, SeeCubic must return them. The record indicates that it is relatively easy to return the Sample Displays. SeeCubic has not argued that it would be burdensome to return the Sample Displays, only that it should not have to return them.

b. SeeCubic contends that certain assets do not qualify as Legacy Stream Assets and need not be returned to Stream (the "Disputed Assets"). Stream argues that the Sample Displays are Disputed Assets because SeeCubic either (i) modified them after December 2020 or (ii) acquired them from Stream's landlord, which had taken possession of the Sample Displays that were left in Stream's Silicon Valley office after Stream

abandoned the premises and failed to pay its rent. As the Modification Opinion explains, SeeCubic can seek to recover the Sample Displays or the incremental value that SeeCubic added to them either through its overarching claim for unjust enrichment or through a specific claim based on the Sample Displays. In light of the Mandate, the first priority is to return the Sample Displays to Stream.

c. SeeCubic's counsel may retain copies of any documentation relating to the Sample Displays that is necessary to support SeeCubic's pursuit of a claim. SeeCubic may not use information relating to the Sample Displays for any other purpose, including for any business purpose.

3. The Motion seeks a mandatory injunction requiring SeeCubic to return all Ultra-D Mass Production Line optical bonding equipment stored at Hold Jumper (Suzhou) Packing Co., No.1 XiangJie Street, Suzhou New District, JiangSu Province, CHINA 215129 (the "Bonding Equipment"). SeeCubic shall return the Bonding Equipment to Stream within ten days.

a. As the Modification Opinion explains, to the extent it is relatively easy to return assets to Stream, SeeCubic should be required to return them. The record indicates that it is relatively easy to return the Bonding Equipment to Stream. SeeCubic has not argued that it would be burdensome to return the Bonding Equipment, only that it should not have to return it.

b. SeeCubic appears to contend that the Bonding Equipment is a Disputed Asset because SeeCubic satisfied Stream's debt to the landlord who owned the premises where the bonding equipment was housed after Stream abandoned the premises

and failed to pay rent. SeeCubic can seek to recover the Bonding Equipment or the incremental value that SeeCubic conferred through its general claim for unjust enrichment or through a specific claim based on the Bonding Equipment. In light of the Mandate, the first priority is to return the Bonding Equipment to Stream.

      c. SeeCubic's counsel may retain copies of any documentation relating to the Bonding Equipment that is necessary to support SeeCubic's pursuit of a claim. SeeCubic may not use information relating to the Bonding Equipment for any other purpose, including for any business purpose.

    4. The Motion seeks a mandatory injunction requiring SeeCubic to permit Stream to copy information from the Dell PowerEdge M640 Servers housed by MotivIT, LLC in San Jose, California (the "Server Information"). SeeCubic shall provide Stream with a copy of the Server Information within ten days.

      a. SeeCubic contends that the servers are a Disputed Asset because SeeCubic gained title to the servers by means other than through the Omnibus Agreement. Stream is not interested in the servers themselves. Stream wants the Server Information, which includes the Legacy Software.

      b. As the Modification Opinion explains, to the extent it is relatively easy to return assets to Stream, SeeCubic should be required to return them. SeeCubic has not asserted that it would be burdensome to provide the Server Information, only that it should not be required to do so.

      c. SeeCubic seems to maintain that the Server Information itself is a Disputed Asset because SeeCubic has updated the Legacy Stream Software and otherwise

- 5 -

generated information that is now part of the Server Information. SeeCubic can seek to recover the Server Information or the incremental value that SeeCubic conferred either through its general claim for unjust enrichment or through a specific claim based on the Server Information. In light of the Mandate, the first priority is to provide the Server Information to Stream.

        d.      The court is only requiring SeeCubic to provide Stream with a copy of the Server Information. SeeCubic's counsel may retain a copy of the Server Information to support SeeCubic's pursuit of a claim. SeeCubic may continue to use the Server Information to comply with this court's directive that SeeCubic not take steps to interfere with services being provided to the Twelve Users. After Stream has established service for the Twelve Users, Stream shall notify SeeCubic of that fact. From that point on, SeeCubic may not use the Server Information for any purpose other than pursuing a claim, including for any business purpose.

5.      The Motion seeks a mandatory injunction requiring SeeCubic to return all lenses, designs, and other materials housed at Matsunami Glass Ind., Ltd., 2-1-10 Yasaka-cho, Kishiwada City, Osaka, 596-0049, Japan (the "Lenses"). SeeCubic shall provide Stream with the Lenses within ten days.

        a.      As the Modification Opinion explains, to the extent it is relatively easy to return assets to Stream, SeeCubic should be required to return them. SeeCubic has not asserted that it would be burdensome to provide Stream with the Lenses, only that it should not be required to do so.

b.  SeeCubic maintains that at least some of the Lenses are Disputed Assets because they were based on SeeCubic designs generated after December 2020. SeeCubic can seek to recover the Lenses or any incremental value that SeeCubic conferred either through its general claim for unjust enrichment or through a specific claim based on the Lenses. In light of the Mandate, the first priority is to return the Lenses to Stream.

c.  SeeCubic's counsel may retain documentation relating to the Lenses to support SeeCubic's pursuit of a claim. SeeCubic may not use the documentation relating to the Lenses for any other purpose, including for any business purpose.

6.  As an adjunct to the mandatory relief set forth in this order, SeeCubic and any persons acting in concert with it are prohibited from taking any steps to interfere with Stream's ability to recover the Sample Displays, the Bonding Equipment, the Server Information, or the Lenses (the "Returned Assets"), subject to SeeCubic's right to retain a copy of the Server Information and documentation relating to the Returned Assets for the purposes set forth in this decision.

7.  SeeCubic argues generally that to obtain the mandatory relief set forth in this order, Stream must "establish the legal right [it] seeks to protect or the duty [it] seeks to enforce." *Stahl v. Apple Bancorp, Inc.*, 579 A.2d 1115, 1120 (Del. Ch. 1990). The *Stahl* court addressed the issuance of a mandatory injunction on a preliminary basis, not a mandatory injunction designed to implement final relief. In this case, the Partial Final Judgment has established Stream's right to relief.

8.  SeeCubic also argues that Stream must show irreparable harm to obtain the permanent injunctive relief that it seeks. Delaware decisions have generally treated the

requirements for permanent injunctive relief as synonymous with preliminary injunctive relief, except as requiring actual success on the merits rather than a probability of success on the merits. *See, e.g.*, *Christiana Town Ctr., LLC v. New Castle Ctr.*, 2003 WL 21314499, at *2 (Del. Ch. June 6, 2003); *Draper Commc'ns, Inc. v. Del. Valley Broads. Ltd. P'ship*, 505 A.2d 1283, 1288 (Del. Ch. 1985). Based on that easy transposition, Delaware decisions treat irreparable harm as a requirement for injunctive relief that issues as part of a final judgment or in support of a final order. But that simplified analysis is just that—too simple.

9. The weight of authority demonstrates that for purposes of final relief, a party must show that the party entitled to permanent injunctive relief lacks an adequate remedy at law.[1] A showing of irreparable harm is one way to demonstrate the inadequacy of a remedy at law. It is not the only way. As Judge Posner has explained,

> when, as in this case, the issue is whether to grant a permanent injunction, not whether to grant a temporary one, the burden is to show that damages are inadequate, not that the denial of the injunction will work irreparable harm. "Irreparable" in the injunction context means not rectifiable by the entry of

---

[1] *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2944 (3d ed.), Westlaw (database updated Apr. 2022) ("[I]t should be noted that although a serious threat of irreparable injury usually must be shown on an application for a temporary-restraining order or a preliminary injunction, irreparable injury is not an independent requirement for obtaining a permanent injunction; it is only one basis for showing the inadequacy of the legal remedy." (footnotes omitted)); C.J.S. *Injunctions* § 42, Westlaw (database updated Sept. 2022) ("To be entitled to a permanent injunction, the petitioner must demonstrate that there is no adequate remedy at law, a balance of the equities favoring the moving party, and success on the merits."); 42 Am. Jur. 2d *Injunctions* § 26, Westlaw (database updated Aug. 2022) ("A legal remedy is inadequate, so as to warrant a permanent injunction, when a party is unlikely to be made whole by an award of monetary damages or some other legal remedy, or the legal remedy is not as practicable and efficient toward the ends of justice as an injunction.").

> a final judgment. It has nothing to do with whether to grant a permanent injunction, which, in the usual case anyway, *is* the final judgment.

*Walgreen Co. v. Sara Creek Prop. Co., B.V.*, 966 F.2d 273, 275 (7th Cir. 1992) (citations omitted).[2]

10. What Stream really must show is the inadequacy of a remedy at law. As explained in the Modification Opinion, Stream lacks an adequate remedy at law. Indeed, assuming that a showing of irreparable harm were required, the Modification Opinion explains why Stream faces a threat of irreparable harm, while SeeCubic and Stream's secured creditors do not.

11. A court of equity always has the power to impose conditions on a grant of injunctive relief. *See, e.g.*, *Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1091 (Del. Ch. 2004) (imposing condition on grant of injunctive relief), *aff'd*, 872 A.2d 559 (Del. 2005)

---

[2] *Accord, e.g.*, *Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104 (9th Cir. 1994) ("Irreparable injury is required for preliminary injunctions, but once actual success on the merits has been established, a party is entitled to relief as a matter of law irrespective of the amount of irreparable injury which may be shown. Irreparable injury is not an independent requirement for obtaining a permanent injunction [as opposed to a preliminary injunction or temporary restraining order]; it is only one basis for showing the inadequacy of the legal remedy." (cleaned up)); *Crane v. Ind. High School Athletic Ass'n*, 975 F.2d 1315, 1326 (7th Cir. 1992) ("To justify entry of a permanent injunction, [plaintiff] had to prove that he had no adequate legal remedy. He was not required, however, to show irreparable injury." (citations omitted)); *Buckingham Corp. v. Karp*, 762 F.2d 257, 262 (2d Cir. 1985) ("Though the appropriateness of both permanent and preliminary injunctions depends on equitable considerations and the adequacy of monetary relief, irreparable injury is not an independent requirement for obtaining a *permanent* injunction . . . ." (cleaned up)); *Crutchfield v. U.S. Army Corps of Eng'rs*, 192 F. Supp. 2d 444, 456 n.16 (E.D. Va. 2001) ("[I]n the context of a permanent injunction, it is not necessary for the moving party to show that it will be irreparably harmed by the failure to grant the injunction." (cleaned up)).

To protect SeeCubic's right to assert its claims, the relief granted in this order is conditioned on Stream using its best efforts to preserve the value of the Returned Assets. Stream's use of the Returned Assets is limited to the ordinary course of its business. Before Stream enters into a material transaction that encompasses the Returned Assets, Stream shall give thirty-days written notice to SeeCubic.

12. The return of the assets is also conditioned on Stream posting the bond in the amount of $1 million. That was the amount used for the injunction SeeCubic obtained, and that injunction enabled SeeCubic to acquire the Legacy Stream Assets. A similar amount is appropriate for the Returned Assets. The bond shall be available to pay any damages SeeCubic suffers as a result of the relief imposed by this order and shall be released at the final disposition of this action.

*/s/ J. Travis Laster*
Vice Chancellor Laster
September 30, 2022