# EXHIBIT 3

## the Judiciary

Amsterdam Court

| | | |
|---|---|---|
| Mr. T.S. Jansen | | Private law department |
| P.O. Box 75999 | | team summary |
| 1070 AZ AMSTERDAM | | proceedings |

Visiting address
Parnassusweg 280
Amsterdam

correspondence address P.O. Box 84500
1080 BN Amsterdam

t (088) 361 7000

www.rechtspraak.nl

| | |
|---|---|
| date | June 29, 2023 |
| contact phone number | M.W. van der Schinkel  088-3611408 |
| email | kortredingciviel.rb-ams('*irechtspraak.nl |
| our reference | C/13/731989 / KG ZA 23/299 on Ultra-D Coop. UA cs/Ultra-D Coop. UA cs |
| your reference | various |
| attachment(s) | statement |
| subject | |

When replying, please mention the date and our reference. Would you like to cover only one case in your letter.

Dear Sir, Madam,

In the above-mentioned case, the court has issued a ruling, which you find herewith. I will also send it to you by mail.

Sincerely,

the registrar.

In næm of the King

# VOHHiS

AMSTERDAM COURT

Private law department, preliminary injunction judge civil

Case number / role number: C/13/731989 / KG ZA 23-299 VVV/MV

Summary judgment dated June 29, **2023.**

in the matter of

1. the cooperative
**ULTRA-D COOPERATIVE U.A.,**
based in Amsterdam,
2. the private limited liability company
**STREAM TV INTERNATIONAL B.V.,**
based in Amsterdam,
3. the private limited liability company
**SEECUBIC B.V.,**
based in Eindhoven,
4. legal person under foreign law
**SEECUBIC, INC.,**
based in Wilmington, Delaware (United States of America),
5. legal person under foreign law
**HAWK INVESTMENT HOLDINGS LINIITED,**
based in Guernsey (Channel Islands),
6. legal person under foreign law
**SLS HOLDINGS VI LLC,**
based in Wilmington, Delaware (United States of America),
**7.     SHADRON LEE STASTNEY,**
residing in Marlboro, United States of America,
plaintiffs by subpoena dated April 11, 2023,
lawyer mr. E.R. Meerdink in Amsterdam,

against

1. the cooperative
**ULTRA-D COOPERATIVE U.A.,**
based in Amsterdam,
2. the private limited liability company
**STREAM TV INTERNATIONAL** B.V.,
based in Amsterdam,
3. the private limited liability company
**SEECUBIC B.V.,**
based in Eindhoven,

C/13/731989 / KG ZA 23-299 VVV/MV                                                    2
June 29, 2023

_____

4.     **MATHU RAJAN,**
residing in Pennsylvania (United States of America), defendants,
attorney at law Mr. T.S. Jansen in Amsterdam.

1.     **The procedure**

At the oral hearing of these summary proceedings on June 28, 2023, the plaintiffs explained the summons and the bill of amendment to the claim. Defendants filed a defense in part by way of a pre-filed response brief. Both parties filed exhibits and a pleading.
Present at the oral hearing were:
On the side of the plaintiffs: Mr. E.R. Meerdink; Mr. R.G. Kloppenburg, Mr. F. S. Hinse and Mr. D.I.J. van der Nat;
On the side of the defendants: B. Robertson (representing the management of Stream TV Networks, Inc.), assisted by I. Huigens (interpreter Dutch/English) with Mr. T.S. Jansen, Mr. M.C. Hoeba and Mr. J. van Hemel.
After further debate, - due to the urgency of the matter - a so-called heads-up verdict was determined on June 29, 2023, the elaboration of which was to follow on July 12, 2023. The preliminary injunction judge has subsequently determined that he will render judgment on June 29, 2023, including a rationale for his judgment. This judgment will not be further elaborated.

2.     The facts

2.1.    The case concerns which party may manage Ultra D Coöperatief UA (hereinafter Coöp) and its two subsidiaries, Stream TV International B.V. (hereinafter Stream TV BV) and SeeCubic B.V. (all three together hereinafter the Companies). Stream TV BV has subsidiaries in China. The interests in the Companies are held through a Cura aose CV and two intermediate holding companies by TechnoVative Media Inc, a Delaware corporation (hereinafter TechnoVative), whose shares are in turn held by Stream TV Networks, Inc (hereinafter Stream).

*The parlines*
2.2.    The Companies are both plaintiffs and defendants, since in dispute is w'each party validly appointed directors and therefore who is a director.
The other plaintiffs are financiers who have collectively loaned tens of millions of US Dollars and other currency to Stream and have received security interests against it including on the shares in TechnoVative (hereinafter the Financiers). Defendant Mathu Rajan is one of the founders of the Companies' business and, together with others, an indirect shareholder in Stream (hereinafter also the Founder).

*The conflict*

2.3.   Starting in March 2020, a dispute arose between Funders and Founder, as Founders sought to enforce security interests based on deficiency under the financings. Several proceedings are underway in the United States (hereafter U.S.) in this regard. In May 2020, an Omnibus Agreement was entered into, in which it was agreed that the shares in TechnoVative were transferred to SeeCubic Inc. This is a company held by SLS, Hawk and other parties that funded Stream. In December 2020, the Founder was removed as a director of the Companies by the Financiers and replaced by S.L. Stastney (hereinafter Stastney). The Omnibus Agreement was initially ratified in two instances, but was set aside by the Delaware Supreme Court on June 16, 2022. On October 3, 2022, Stastney was dismissed and Founder was appointed a director. The parties mutually dispute the validity of those dismissals and appointments. From October 2022 until March 15, 2023, a *t eceiver* appointed by a US court functioned as an independent director of TechnoVative. When Stream filed for Chapter l l (a US bankruptcy proceeding) on March 15, 2023, the then pending proceedings were suspended and the Founder regained control as a director in Stream.

2.4.   Simultaneously with the handling of these summary proceedings, proceedings were pending in the US and in the Chapter l l proceedings, the Founder must present within a few weeks a plan for the continuation of the company and the repayment of creditors including the Financiers. The outcome of the proceedings in the US is as yet uncertain.

*The position* vrfif the *VennootSchcippen and hcin'lelen vcin the founder*
2.5.   On October 5, 2022, the Founder requested various parties to transfer assets belonging to the Partnerships to Stream.
On October 10, 2022, the Founder informed the management team of the Companies that all the assets of the Companies belong to Stream.

2.6.   On October 14, 2022, the local management of the Companies alerted the Founder to the acute financial distress and concern about the payment of salaries in that month. This request for attention was repeated in the absence of response on October 18.

2.7.   On March 29, 2023, the Founder, by his own admission acting as a director of both Stream and SeeCitbic BV, asked the lessor of the storage facility in China where a valuable *bonding machine* belonging to SeeCubic BV was located to surrender that machine to a representative.

2.8.   When the Founder re-presented himself as a director of the Companies in March 2023, local management asked for a resolution of the

C/1/731989 / KG ZA 23-299 VVV/MV                                                4
June 29, 2023

___

oppressive financial position of the Companies.

2.9.    On April 3, 2023, a letter on behalf of management asked the founder to clarify whether he intended to provide financing for the known debts of the Companies. In the meantime, management was reluctant to cooperate in the surrender of assets such as an expensive machine. Meanwhile, the Founder pressured employees of the Companies to transfer the bonding machine.

2.10.   In mid-April 2023, management asked the Founder how payment of salaries would be provided for that month, but received no response, but did receive requests to cooperate in the transfer of the machine.

2.11.   On April 15, 2023, the Founder sent a message to an employee of SeeCubic BV that Stream had won in *"court"* the day before and that the judge demanded that the bonding machine be given to Stream immediately, even though the judge had said at the hearing the previous day that no one should start transferring assets or nicking technology.

2.12.   In May 2023, during discussions with associates of the Partnerships, the Founder indicated that financing would be arranged, however, without becoming concrete and without financing coming.

2.1.    On May 26, 2023, Stream and SeeCubic Inc were urgently requested on behalf of the Companies' staff to find a solution to the financing partly in view of the salary payments to the employees in June 2023. Thereupon, SeeCubic Inc made an offer of increase in the existing financing. but no solution was offered by the Founder.


3.      The dispute

3.1.    The plaintiffs, after amending their claim, demand that the preliminary injunction court enter a judgment, to the extent possible, provisionally enforceable:
a.      until on the basis of either a security interest of SLS or Hawk or as a result of the U.S. Bankruptcy Proceedings, sale and transfer of the shares in TechnoVative has taken place and at least one director has been appointed or reappointed (indirectly) by the new owners to each of the Dutch SeeCubic Entities, or for such period of time as the Interim Injunction Judge deems advisable,
_____
    (i)     the resolutions to dismiss Messrs. Stastney and Zuidema as directors A and B, respectively, of Dutch SeeCubic Entities and to appoint Mathu Rajan as director A of

C/13/731989 / KG ZA 23-299 VVV/MV                                                                             5
June 29, 2023

---

|       | The Dutch SeeCubic Entities and its implications. suspended; and |
|-------|---|
| (ii)  | Mathu Rajan orders Stastney to register as a director of the Dutch SeeCubic Entities in the Trade Register and to deregister himself as a director of the Dutch SeeCubic Entities no later than one day after the judgment; |

in the alternative:

|        |   |
|--------|---|
| (iii)  | Mathu Rajan suspended as director A of Dutch SeeCubic Entities; |
| (iv)   | Stastney appointed as director A of Dutch SeeCubic Entities; and |
| (v)    | Mathu Rajan orders Stastney to register as director A of the Dutch SeeCubic Entities in the Trade Register and to deregister himself as a director of the Dutch SeeCubic Entities no later than one day after the judgment; |

more in the alternative:

|         |   |
|---------|---|
| (vi)    | Mathu Rajan suspended as director A of Dutch SeeCubic Entities; |
| (vii)   | Appoint Stastney and an independent third party to be appointed by the interim relief judge as directors A and B, respectively, of the Dutch SeeCubic Entities; and |
| (viii)  | Mathu Rajan orders no later than one day after the judgment Stastney and the independent third party appointed by the interim relief judge to register as director A and B respectively of the Dutch SeeCubic Entities in the Trade Register and to deregister themselves as directors of the Dutch SeeCubic Entities; |

further subsidiary

|       |   |
|-------|---|
| (ix)  | Mathu Rajan suspended as director A of Dutch SeeCubic Entities; |
| (x)   | appoint an independent third party to be designated by the interim relief judge as director A of the Dutch SeeCiibic Entities; and |
| (xi)  | klathu Rajan orders no later than one day after the judgment, the independent third party appointed by the interim relief judge to register as director A of the Dutch SeeCubic Entities in the Trade Register and to deregister himself as a director of the Dutch SeeCubic Entities; |

in all cases on pain of a penalty of EUR 500,000 for each violation of the injunction under (ii), (v), (viii) and (xi), to be increased by a penalty of EUR 50,000 for each day or part of a day that such violation continues;

| b. | Mathu Rajan enjoins (i) no later than one day after the judgment, Stastney to give written notice of all (alleged) (legal) acts that Mathu Rajan, or any other natural or |
|----|---|

C/I 3/731989 / KG ZA 23-299 VVV/MV 6
June 29, 2023

___

        legal entity on behalf of or for Mathu Rajan, on behalf of one or more of the Dutch SeeCubic Entities and (ii) on the instructions of Stastney or the director(s) appointed pursuant to the allocated provision under (a), to cooperate in the undoing of all (legal) acts referred to under (i) and the consequences thereof, in both cases under penalty of a fine of EUR 500.000 for each violation of the injunction, to be increased by a penalty of EUR 50,000 for each day or part of a day that such violation continues;

C.    While the assigned provision under (a) is in effect,
Ultra-D Coöperatief U.A. prohibits the suspension, dismissal and appointment of directors in SeeCubic B.V. and Stream TV International B.V. (other than the appointment by the new owners in the situation described in (a) above) and to perform acts that have the effect of disposing of, encumbering or encumbering the shares in SeeCubic B.V. or Stream TV International B.V;

d.    enjoins the Dutch SeeCubic Entities, to the extent necessary, to register Stastney or any other independent third party determined by the Interim Injunction Judge and appointed as director in the Commercial Register and to register any other necessary changes in the Commercial Register; and

e.    Ordered Mathu Rajan to pay the costs of the proceedings, as well as the usual subsequent costs (both without and with service of process), to be increased by the statutory interest referred to in Section 6:119 of the Civil Code from fourteen days after the date of the judgment.

3.2.    Defendants filed defenses.

3.3.    The parties' contentions are discussed in more detail below, to the extent relevant.

**4.    The review**

4.1.    Plaintiffs and defendants have both advanced grounds why the various decisions to appoint directors are void or otherwise invalid. The preliminary injunction court will leave open which arguments are most likely to succeed.

4.2.    The facts pleaded by the plaintiffs show that the actions of the Founder (Mathu Rajan) were not directed towards the interest of the Companies and its associated business. He intended to withdraw assets belonging to the Companies from them without any legal basis for doing so. These facts were not so much disputed as it was argued as justification that the Companies were financed by Stream. However, that financing took place

C/13/731989 / KG ZA 23-299 VVV/MV                                             7
June 29, 2023

_____

take place in the form of loans granted to the Companies. These provide no legal basis for withdrawing assets from the Companies.

4.3.    In addition, the defense was that the Founder was acting to enforce a judgment of the Court of Chancery of the State of Delaware dated Sept. 30, 2022, ordering See Cubic Inc. to return assets to Stream. That judgment provides a basis for obtaining assets from See Cubic Inc. but it cannot provide a basis for extracting assets from the Companies to the extent assets belonged to it, even to the extent that that judgment expressly mentioned certain assets belonging to the Companies. In addition, that ruling set as a condition that Stream provide security in the amount of one million dollars, and the Founder has not substantiated to the dispute that such security would have been provided that that condition was in fact met.

4.4.    The withdrawal of assets is all the more worrying because the Founder has set up a new company called VSI alongside Stream and is raising financing for that company, so it appears that he is withdrawing the assets not only from the Companies, but also from the group to which the Companies belong and, therefore, from the Financiers' security rights over the group's shares and assets. In addition, despite his pretension to be a director of the Companies, he did not respond to the cries for help from the day-to-day management of the companies to provide financing for the Companies' current liabilities.

4.5.    The Companies are now in a situation where funding is needed at very short notice for substantial expenses such as paying staff, rent and taxes. If funds do not become available, repayment arrangements with landlords and the tax authorities are in danger of being cancelled and bankruptcy is imminent. By failing to take measures to protect the position of the Companies in these circumstances, even though he claims to be a director and has registered as such in the trade register, the Founder is acting unlawfully towards the Companies and the other parties involved. This means that the Interim Injunction Judge sees grounds to suspend Mathu Rajan as a director to the extent that he is validly appointed.

4.6.    This situation also means that there is a need to appoint a temporary director by interim order, regardless of who is now the validly appointed director. After all, the only director registered in the commercial register has been suspended. In the situation of conflict between the parties and the accusations back and forth, the preliminary injunction judge sees reason to appoint an independent director and not Stastney. An independent director is necessary to ensure that the management of the Companies is carried out in its interest and the business conducted therewith. This one will also be able to obtain the immediately necessary financing. Indeed, the Financiers have agreed to

C/13/731989 / KG ZA 23-299 VVV/MV 8
June 29, 2023

---

be prepared to provide the Companies with immediately necessary financing on terms corresponding to those applicable under the emergency financing provided in recent months based on the agreements made between Financiers and the independent *receiver* of TechnoVative. In addition, an independent receiver is needed to prevent assets being withdrawn from the Companies without legal basis. The most subsidiary claim under 3.1(a) will be granted.

4.7. A balancing of interests also leads to that conclusion. The Companies are in acute financial distress and need immediate financing to continue to exist. The Financiers have asked for the appointment of a director, preferably the director Stastney previously nominated from their ranks whether or not together with an unathletic person and if necessary only an independent person. In doing so, they have offered to continue funding. They are willing to do so even if the significant costs of appointing an independent director are incurred. It is apparently worth the money and effort to them to continue the business of the Companies and, to that end, to retain the Companies' assets. They thereby assume the risk that they will have an uninsured claim against the Companies even if the US proceedings do not result in the transfer of the shares in the Companies to them.

4.8. In contrast, Founder has only stated that financing is available, which he is willing to make available as soon as it is established that he can exercise managerial power over the Companies. Moreover, the availability of this financing is less concretely substantiated than that of the Financiers. Thus, Defendants are willing to provide butter to the fish only once the fish is on their own plate. Plaintiffs are willing to add butter to the fish while it is still in the kitchen on the stove and it is not certain on whose plate it will end up.

4.9. The need for the appointment of an independent director will lapse as soon as it is clear which shareholder will have the power under the U.S. procedures to (indirectly) determine the Company's policy. This will be stipulated in the resolution.

4.10. The management of the Companies requires that the Director be aware of acts committed by the Founder in his capacity as a director registered in the Commercial Register and that the Founder cooperate in undoing them to the extent that they were entered into contrary to the interests of the Companies. The claim to this effect will be granted. The remaining claims will also be granted as stated in the decision.

4.11. The preliminary relief judge has found Mr. J.R. Berkenbosch, attorney at Jones Day in Amsterdam, willing to act as an independent director.

C/13/731989 / KG ZA 23-299 VVV/MV 9
June 29, 2023

---

Should any facts or circumstances arise on the part of Mr. Berkenbosch which render him unable to continue to perform that task, the interim relief judge may, at the request of Mr. Berkenbosch or any of the parties, proceed to appoint another independent director.

4.12.   The penalty payments claimed will be mitigated and capped as follows.

4.13.   As the unsuccessful party in the main action, the defendants are ordered to pay the costs of these proceedings and post-judgment expenses.

## 5.   The decision

The preliminary injunction judge

5.1.   Suspends Mathu Rajan as Director A of the Companies,

5.2.   Appoints Mr. J.R. Berkenbosch (attorney at law at Jones Day in Amsterdam) as director A of the Companies,

5.3.   determines that the salary and expenses of Mr. J.R. Berkenbosch (and any office partners engaged by him) shall be borne by the Companies,

5.4.   determines that Mr. J.R. Berkenbosch shall, at such times as he may require, submit a report to the Interim Injunction Judge and to the parties containing his findings and the progress of the assignment,

5.5.   determines that the provisions under 5.1 and 5.2 will apply until either on the basis of a security interest of SLS or Hawk or as a result of the U.S. bankruptcy proceedings the sale and transfer of the shares in TechnoVative has taken place and at least one director has been appointed (indirectly) by new owners at each of the Companies or as a result of the U.S. bankruptcy proceedings the shares in TechnoVative are retained by Stream and the security interests in the shares in TechnoVative have expired.

5.6.   orders Mathu Rajan to register Mr. J.R. Berkenbosch as director A of the Dutch SeeCubic Entities in the Trade Register and to deregister himself as a director of the Companies no later than one business day after service of this judgment, on pain of a penalty of £10,000.00 for each day or part of a day that Mathu Rajan fails to comply with this order, subject to a maximum of £500,000.00,

C/13/731989 / KG ZA 23-299 VVV/MV                                           10
June 29, 2023

___

5.7.   enjoins Mathu Rajan (i) not later than one business day after service of the judgment to notify Stastney in writing of all (alleged) (legal) acts performed by Mathu Rajan, or any other natural or legal person on behalf of or for Mathu Rajan, on behalf of one or more of the Companies and (ii) on the instruction of mr. J.R. Berkenbosch, to cooperate in the undoing of all (legal) acts referred to under (i) and the consequences thereof, in both cases under penalty of a penalty of C 10,000 for each violation of the injunction, to be increased by a penalty of £10,000.00 for each day or part of a day that such violation continues, not to exceed £500,000.00,

5.8.   prohibits, as long as the appointment of Mr. J.R. Berkenbosch is in effect, Ultra-D Coöperatief U.A. from suspending, dismissing and appointing directors in SeeCubic B.V. and Stream TV International B.V. (other than the appointment referred to under 5.2 of this judgment) and from performing acts that have the effect of disposing of, encumbering or encumbering the shares in SeeCubic B.V. or Stream TV International B.V,

5.9.   Orders the Companies to register Mr. J.R. Berkenbosch in the Commercial Register to the extent necessary and to register any other necessary changes in the Commercial Register,

5.10.   orders Mathu Rajan to pay the costs of these proceedings, assessed to date on the plaintiffs' side at two times ê 106.73 for summons costs, £ 676.00 for court registry fees and C 1,619.00 for attorney's fees, plus statutory interest on these amounts from the fourteenth day after the date of this judgment,

5.11.   Order Mathu Rajan to pay the costs incurred after this judgment, estimated at £173.00 for solicitor's fees, to be increased, subject to service of this judgment, by the sum of £90.00 for solicitor's fees and the costs of service of this judgment, to be increased by the
legal interest on these amounts from the fourteenth day after service of this judgment,

5.12.   Declares this judgment provisionally enforceable to this extent,

5.13.   Dismisses the more or less claimed.

This judgment was rendered by Mr. T.H. van Voorst Vader, judge in preliminary relief proceedings, assisted by Mr. M. Veraart, registrar, and pronounced in public on June 29, 2012.
2023.

type: MV
co ÏÏÏ!

UITGEGEYEN                    GROSSE
           The         of the
                       Amsterdam