Case 23-10763-amc    Doc 826-2    Filed 11/27/24    Entered 11/27/24 19:42:08    Desc
Exhibit 11-7-24 Hearing Transcripts    Page 1 of 23

1

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: | : Case No.  23-10763 |
| | : |
| STREAM TV NETWORKS, INC.   CH: 11 | : ADV. No.  23-00057 |
| AND TECHNOVATIVE MEDIA, | : |
| INC. | : Philadelphia, Pennsylvania |
| | : November 7, 2024 |
| Motion to Reconsider (related | : 11:14 a.m. |
| Documents Order on Motion to | : |
| Approve Compromise under Rule | : |
| 9019) Filed by Visual | : |
| Semiconductor, Inc. Represented | : |
| by Donald N. David (Counsel) | : |
| | : |

. . . . . . . . . . . . . . . . . :

BEFORE THE HONORABLE ASHELY M. CHAN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Trustee:                    Michael D. Vagnoni, Esq.
                                    Obermayer Rebmann Maxwell &
                                    Hippel LLP
                                    Centre Square West
                                    1500 Market Street, Suite 3400
                                    Philadelphia, PA 19102
                                    215-665-3066

                                    Steven M. Coren, Esq.
                                    Kaufman Coren & Ress, P.C.
                                    Two Commerce Square
                                    Suite 3900
                                    2001 Market Street
                                    Philadelphia, PA 19103-2713

For Rembrandt:                      Andrew Peter Demarco
                                    Devlin Law Firm, LLC
                                    1526 Gilpin Avenue
                                    Wilmington, DE 19806
                                    302-449-9010

                                    Chris Michaels

Case 23-10763-amc    Doc 826-2    Filed 11/27/24    Entered 11/27/24 19:42:08    Desc
Exhibit 11-7-24 Hearing Transcripts    Page 2 of 23

2

APPEARANCES (Continued):

For VSI:                        John H. Thompson
                                Akerman
                                750 Ninth Street, N.W.
                                Suite 750
                                Washington, D.C. 20001
                                202-393-6222

Proceedings recorded by electronic sound recording;
transcript produced by TheRecordXchange.

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 3 of 23

3

1  NOVEMBER 7, 2024                                    10:00 A.M.

2          THE COURT:  Perfect timing, gentlemen.  Morning,

3  Steve.

4          MR. COREN:  Good morning.  How are you, Judge?

5          THE COURT:  I'm doing okay.  Hanging in.  Vagnoni?

6          MR. VAGNONI:  Good morning, Your Honor.

7          THE COURT:  Good morning.  All right.  Well Pam, it's

8  10:00.

9          THE CLERK:  Okay.  All right.  Today's Thursday,

10 November 7th, the 10:00 list.  The only matter on the list is

11 Stream TV Network's motion to reconsider the motion to approve

12 compromise filed by VSI.  Appearances please.

13         MR. VAGNONI:  Morning, Your Honor.  Michael Vagnoni

14 and Ed George on behalf of William Homony, the Chapter 11

15 Trustee.  Also with us today is Steve Coren, special counsel

16 for the Trustee.

17         MR. COREN:  Right.

18         THE COURT:  Okay.

19         MR. THOMPSON:  Good morning, Your Honor.  John

20 Thompson of Akerman LLP on behalf of VSI.  Morning.

21         THE COURT:  All right.  Well maybe no one else wants

22 to make their appearance known.

23         MR. DEMARCO:  Good morning, Your Honor.  This is

24 Andrew DeMarco with Devlin Law Firm here for Rembrandt.

25         THE COURT:  Okay.  All right.  Drive safely.

Case 23-10763-amc    Doc 826-2    Filed 11/27/24    Entered 11/27/24 19:42:08    Desc
Exhibit 11-7-24 Hearing Transcripts    Page 4 of 23

4

1           MR. DEMARCO:  Oh, I'm parked, Your Honor.

2           THE COURT:  Okay.  All right.  Okay.  All right.

3    Well, if no one else wants to enter their appearance.  I have

4    read all of the briefs, and I guess I just wanted to see if

5    there were any additional arguments that were different than

6    the arguments already set forth in the briefs.  So if you do,

7    I'd like to hear them.

8           MR. THOMPSON:  Your Honor, I would like to make a

9    presentation if I may, right?  We've asked for a consideration

10   for some important and very fundamental reasons.  In short, we

11   believe that the Court should reconsider the 9019 settlement

12   agreement because it is fatally flawed.  There are a number of

13   points of new information that the Court was not privy to in

14   making its decision to enter the order approving the 9019

15   settlement agreement.  And therefore, we think that it, again,

16   is flawed for a number of reasons.

17          The first is that the Trustee didn't complete his

18   assignment as issued to him through the Court's appointment

19   order.  And as a result, the Hawk party's claims and the

20   conversion of their notes were never truly investigated or

21   vetted by the Trustee despite protestations to the contrary.

22          Accordingly, the allowance of the secured claim in

23   the amount of $180 million, $150 million of that being

24   permitted to a credit bid is patently unreasonable in our view.

25          As set forth in greater detail in our objection, the

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 5 of 23

5

1    Trustee's settlement to the sale motion, the Trustee's

2    settlement agreement sets up a framework for sale process

3    that's both unworkable from a legal and practical perspective

4    and unfair to all stakeholders, including potential competing

5    bidders and unsecured creditors because it establishes an

6    unlevel playing field that advantages the Hawk parties, the

7    stalking horse, to the detriment of all others.

8          Finally, the 9019 settlement agreement failed to

9    negotiate and provide a fiduciary out to permit the

10   consideration of any debtor deal that might arise after the

11   entry of disagreement with the Hawk parties. Specifically,

12   better deals that would ensure administrative solvency for the

13   estates, achieve meaningfully better recoveries for all

14   creditors, including unsecured creditors.  And we've seen the

15   negative fallout from the failure to secure such a fiduciary

16   out time and time again in this case, even if the Court has

17   not. As Trustees similarly rejected reasonable and considerably

18   better offers after offers in favor of some blind lot loyalty

19   to Hawk's outcome and the 9019 settlement.

20         Those aren't just VSI offers to be clear, Your Honor.

21   Those are offers coming from multiple parties and interests in

22   the case.  The bottom line is the Trustee is unwilling or

23   unable to take yes for an answer and achieve a better result

24   for the Debtor's estates and a better recovery for creditors of

25   those estates based upon the unreasonable and unwavering

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 6 of 23

6

1   allegiance to this 9019 settlement agreement.

2          That's never made any -- and that settlement

3   agreement has never made any sense, but it's definitely one

4   that does not make sense now in wake of the multiple offers and

5   compromise that would improve outcomes for all parties and do

6   so in a fair way.

7          Accordingly, we believe that the Court should grant

8   our motion to reconsider, vacate its prior order approving the

9   9019 settlement.  Your Honor, I'll take your questions if you

10  have any.

11         THE CLERK:  Judge, you're on mute.

12         THE COURT:  I'm sorry about that.  I don't have any

13  questions, but thank you, Mr. Thompson.

14         MR. THOMPSON:  Thank you.

15         THE COURT:  Mr. Vagnoni, Mr. Coren, you're welcome to

16  respond but you don't have it.  It's totally up to you.

17         MR. VAGNONI:  Your Honor, Michael Vagnoni on behalf

18  of the Trustee.  I'll keep it simple.  This is a situation

19  where the Trustee was given a mandate by the bankruptcy court.

20  I know counsel with VSI just indicated without any evidence

21  that the Trustee didn't fulfill his function.  We disagree

22  wholeheartedly.  We -- since the beginning of this case, I

23  think Your Honor is well aware that not only did the Court

24  appoint a Trustee, but the Court also granted relief from the

25  automatic stay to Hawk to go forward with the 225 action, which

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 7 of 23

7

1   they attempted to do.

2           He gave the Court -- the Trustee, a very short

3   timeframe.  During which time the Trustee met with all of the

4   parties who were at play here, met with VSI, or the Debtor.  We

5   couldn't really tell which.  But with Mr. Rajan's group on

6   multiple occasions.  Met with Hawk.  Met with SeeCubic, Inc.

7   And met with Rembrandt.  And the result of those meetings and

8   the shortened timeframe that we had to operate in and extensive

9   -- and this speaks a little bit to the conversion issue that

10  Mr. Thompson alluded to.  Met with the Debtor's chancery court

11  attorney, Andy Dupre, at McCarty & English who now is at

12  Akerman.

13          And we're left with the very clear impression and

14  opinion that the 225 action was careless at best, and could

15  result in and would likely result in the estate having no

16  assets for unsecured creditors.

17          Because of that, Your Honor, the Trustee entered into

18  a settlement agreement with Hawk that would guarantee money

19  into the estate, and would get, our hope is, money to unsecured

20  creditors.  The multiple offers that Mr. Thompson alluded to --

21  again, I'm not sure what offers he's talking about, but we have

22  spent time with VSI to vet the proposals that they would like

23  to make and have found them to be lacking in evidentiary

24  support.  And the Trustee has chosen to move forward with the

25  Hawk settlement.

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 8 of 23

8

1          The Court evaluated that settlement at the 9019

2   hearing.  Found that the Trustee met all the <u>Martin</u> factors,

3   and approved the settlement.  We don't believe that VSI has

4   established grounds for this Court to reconsider to the extent

5   that 8008 would permit that.  And we believe that the motion

6   should be denied in its entirety.

7          THE COURT:  Okay.  Thank you, Mr. Vagnoni.

8          MR. VAGNONI:  Mr. George, I think that you're not on

9   mute, so when you're not on mute, we hear all of your email

10  rings, your phone calls.

11         THE COURT:  Okay, good.  All right.  Thanks, Mr.

12  George.  All right.  Mr. Coren, did you want to add anything to

13  that?

14         MR. COREN:  Yes.  I would just briefly, Your Honor.

15  Because the notion that we didn't do our due diligence or

16  investigation is preposterous.  I was hired to do just that.

17  And in fact, I participated in some of those meetings, reviewed

18  lots of the documents, interviewed the Debtor's counsel in the

19  225 action at length.  Looked at the materials from that case.

20  And I rendered a judgment and an opinion and gave advice, which

21  I will only talk of at the highest level to the Trustee.

22         And I wholeheartedly, given that analysis and my

23  experience and my review, concluded that this settlement was in

24  the best interest of the estate.  Wholeheartedly support that

25  there were serious risks as Mr. Vagnoni points out, which if

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 9 of 23

9

1   they didn't go well for the estate, would have resulted in the

2   estate having nothing.  I viewed those risks as real, and we

3   did an analysis of them, and I cancelled the trustee

4   accordingly.  And I did weigh in and participate in looking at

5   what are referred to as subsequent offers that -- in the

6   judgment of Mr. Thompson or his client he thinks are better to

7   the estate.  And I counseled along with bankruptcy counsel, the

8   Trustee.  And in my view to the extent that I looked at the

9   support for them, much of them was a illusory much like that,

10  which was present to Judge Coleman and she wholeheartedly

11  rejected it.

12         So I support the settlement.  I counseled the Trustee

13  accordingly as bankruptcy counsel.  And reject wholeheartedly

14  the notion that he did not perform his functions under the

15  bankruptcy code and the mandate.  He did precisely that as did

16  his professionals.  Thank you.

17         THE COURT:  Thanks, Mr. Coren.  Okay.  Well, I'm

18  going to take the matter under advisement.  I hope to have out

19  an opinion and order on this I hope in the next week or so.  So

20  you'll see that soon, all right.  Thank you all for your

21  presentation today and I'll talk to you guys soon.

22         MR. THOMPSON:  Your Honor, before -- I think you

23  indicated at the last hearing last week that you would rule

24  with respect to the motion to quash.

25         THE COURT:  Yeah.

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 10 of 23

10

1          MR. THOMPSON:  With a specific request, with a

2     specific regard to the sale and the procedures order.

3          THE COURT:  Yes.  And so, that will be part of the

4     opinion and order, my ruling on the discovery.

5          MR. THOMPSON:  Will be part of your consideration to

6     -- of the reconsideration motion?

7          THE COURT:  So I'm going to rule on the motion for

8     reconsideration.  And I'm also going to rule on the discovery

9     in connection with the reconsideration. But there is also

10    outstanding discovery regarding the bid procedures and things

11    like that.  So I'm going to just rule on the discovery with

12    regard to the motion for reconsideration topic.

13         MR. THOMPSON:  Okay.  But the sale topic is different

14    from the reconsideration topic, Your Honor, with respect to

15    discovery.

16         THE COURT:  Yes, absolutely.

17         MR. THOMPSON:  Right.

18         THE COURT:  So there's, you know, there were three

19    topics for discovery.  One I've already ruled on, right?

20         MR. THOMPSON:  Correct.

21         THE COURT:  And now there's the discovery in

22    connection with today's hearing.  And then there's also

23    discovery in connection with the bid procedure motion.

24         MR. THOMPSON:  Yes, Your Honor.  The bid procedure

25    motion, of course, is going forward on the 13th.  And the

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 11 of 23

11

1  question is whether we will get an opportunity to have the

2  discovery, in particular the deposition discovery, that we

3  asked for and need in advance of that hearing.  For the reasons

4  we set forth in our objection filed last night, it's pretty

5  critical.  And I would hope that the Court would see the need

6  to have that discovery done in advance of the hearing as it's

7  only really helpful I would think to Your Honor before the

8  hearing.

9       (Telephone ringing)

10          THE COURT:  Mr. Thompson, are you having technical

11  difficulties there?

12          MR. THOMPSON:  I'm trying to decline the call, Your

13  Honor.

14          THE COURT:  That's okay.

15          MR. VAGNONI:  Your Honor, it remains the Trustee's

16  position that that discovery on a procedures motion is not

17  appropriate under the circumstances and is once again designed

18  to delay these proceedings, which the Trustee hopes to wrap up

19  as soon as possible.

20          MR. THOMPSON:  Your Honor, I reject that contention

21  in the main, right?  We're not doing anything to delay this

22  process.  It's actually quite to the contrary.  We've asked

23  that the Trustee for some time now respect to discovery on

24  these topics, all of which we think go to the Trustee's

25  inability to sell these assets as set forth in our sale

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 12 of 23

12

1   objection.

2           And we frankly think that the issues raised are of

3   pretty monumental importance to the case at large.  And the

4   idea that nobody would be able to cross-examine this Trustee

5   about his judgment and his understanding of the assets that he

6   purports to want to sell through a 363 sale.  It's just so

7   quite exceptional.  I don't see that as merely a process issue,

8   and I would hope that the Court does not have.

9           MR. DEMARCO:  Your Honor, if I may very briefly?

10           THE COURT:  Yeah, Mr. DeMarco?

11           MR. DEMARCO:  Yes.  Hi.  I just wanted to note that

12   we agree, that Rembrandt agrees and joins with the request for

13   that discovery as we filed in our objection and as Mr. Thompson

14   noted.  And if Your Honor wishes to hear more about our

15   position, we are happy to discuss as well.  But I wanted to

16   note that we join for the same reasons.

17           THE COURT:  Okay.  Thank you, Mr. DeMarco.  I mean,

18   I'll be candid with both you and Mr. Thompson.  I'm not

19   persuaded by your motion for reconsideration.  And in all of my

20   years of practice, I have never once seen discovery requested

21   in connection with a motion for bid procedure.  I've just never

22   seen it.  Given the fact that this Trustee was appointed by

23   Judge Coleman and was clearly, in my opinion, the most

24   objective party here, they've got no skin in the game.  They

25   just want to make the right calls.  It's just a really high

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 13 of 23

13

1    burden for VSI and Rembrandt to overcome. While I appreciate

2    your zealous advocacy, you know, I am inclined to deny the

3    motion for reconsideration and deny the discovery in connection

4    with that and the bid procedure motion.

5            MR. THOMPSON:  The bid procedure and sale motion,

6    right, Your Honor? I mean, so the sale -- there's no discovery

7    in connect with the sale.

8            THE COURT:  At this point, I mean, you know, I'll put

9    together an order.  But at this point, I just -- I've never

10   seen -- I've never even seen a request.

11           MR. THOMPSON:  Your Honor, I would just direct your

12   attention to the cases that were cited in our objection, which

13   are manifold.  And all of them involve --

14           THE COURT:  I'm not saying it's never done.  But Mr.

15   Thompson, you have to understand that you've come into this

16   case relatively recently, and the parties have been around.

17   And I've seen some of the actions that they've taken.  Not on

18   your watch.  And that has affected my view of your client.

19           And like I said, you know, all of those cases that

20   you may have cited, I think that their facts are probably quite

21   different than the facts that I have before me, which is that

22   I've got a Trustee, right?  I mean, the appointment of a

23   Chapter 11 Trustee.  It's a very extraordinary event.  I've

24   only done it once in my career.  And when you do it, you do it

25   because you absolutely have to do it.  Because you're balancing

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 14 of 23

14

1   the interests of having a completely independent person, you

2   know, making these calls.

3          So given that extraordinary event, you know, I'm

4   going to give the Trustee a great deal of deference.  I just

5   am, okay?

6          MR. MICHAELS:  Your Honor, this is Chris Michaels for

7   Rembrandt.

8          THE COURT:  Yes.

9          MR. MICHAELS:  This -- I appreciate your comments

10  about this being an extraordinary case.

11          THE COURT:  Yeah.

12          MR. MICHAELS:  I have been involved from the very

13  beginning.  Rembrandt has been litigating its intellectual

14  property disputes.  Thought it had settled those.  All parties

15  in this matter, Chadron Stastney, Matthew Rajan, all signed off

16  on a settlement agreement saying, yes.  Our trade secrets have

17  been included in Ultra-D.  Our patents cover the products are

18  being sold.  And the Trustee is moving forward planning to sell

19  our technology, right?  I mean, we -- our question is very

20  simple, right?  Have you removed Rembrandt's technology from

21  the very assets that are trying to be sold?  If the answer is

22  yes, let's figure that out.  We've offered numerous times to do

23  that in an expedited and effectual way, to no avail.  And we

24  have asked if they're not in there, what are you doing with

25  respect to assumption or rejection of our license, to no

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 15 of 23

15

1    definitive answer.

2            And we are now saying, we now see from the Trustee's

3    papers that SSG is offering assets for sale.  That is patent

4    infringement under section 271.  If, and only if, they are not

5    covered by the license we issued Stream.  And this is -- this

6    should be basic question.  Are you assuming our license?  Are

7    they covered or are they committing patent infringement?

8    Absent any discovery, absent any assumption or rejection of our

9    license, we are left to go litigate a patent infringement case

10   against SSG because they're the ones that are actively

11   offering. All of the employees at SSG that are doing that are

12   likewise guilty of patent infringement.

13           And unless, of course, the Trustee has assumed

14   Rembrandt's license, then they're covered by the license.

15   These are basic questions that should be answers.  And I don't

16   under -- I've never been involved in a case where a trustee or

17   debtor in possession didn't answer them.  So I appreciate that

18   this is a very unique situation, but it's also simply resolved,

19   right?  From our perspective, the Trustee could provide basic

20   information that would move this case forward and tell us

21   whether or not we need to file additional litigation or not.

22           But, you know, we're not new to raising these

23   concerns, right?  I mean, there is a settlement agreement.

24   We've been -- we are part of the TRO mentioned directly.  And

25   so, I think that our request for these basic things are things

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 16 of 23

16

1   that can certainly be resolved in a week or two.  I mean, they

2   can decide.  I mean, are you assuming it or are you rejecting

3   the license?  That's a one sentence answer.  You know, is that

4   -- so we think the request for discovery is reasonable in this

5   context, especially how many issues that it can resolve.  I

6   can't image there's going to be any bidders, save the stalking

7   horse bidder, they're going to come in and walk themselves into

8   all these IP disputes.

9           And, you know, Rembrandts here.  But, I mean, forget

10  Rembrandt.  I mean, Phillips has 1,500 plus patents at issue,

11  most of which they've sold off to Leia that is actively trying

12  to license those out. I mean, companies don't walk into almost

13  certain patent infringement cases with companies like Phillips

14  to enforce, right?  This is, this is absolutely guaranteed to

15  this ambiguity in what the assets are and whether or not they

16  need licenses or have licenses from Phillips and Rembrandt is a

17  virtual certainty that anybody is going to either not bid or

18  just walk away from this.  This is designed for failure.

19          And quite frankly, we talked about the concern about

20  an action in chancery court to determine whether or not some

21  debt was owed.  And that's a trivial expense for litigation.

22  Patent infringement costs the average for a case of this size

23  is somewhere between 7 and $15 million dollars.  Where is the

24  estate going to get the money to defend, right?  I mean, it's

25  going to render this estate with almost absolute certainty

1   administratively insolvent as soon as Rembrandt acts.  And

2   we're all on -- all of Rembrandt's attorneys by the way are on

3   contingency fee, and originally signed on for a patent

4   infringement action.  So it's not like Rembrandt doesn't have

5   counsel that's going to enforce.  But I don't see that the

6   estate has prepared itself for litigation in multiple

7   jurisdictions, right?

8          So I -- with respect, I think this is a unique

9   situation that has potentially unique issues that would warrant

10  this basic discovery.

11         THE COURT:  Okay.

12         MR. VAGNONI:  Your Honor, I'm not sure what role Mr.

13  Michaels or Mr. DeMarco play in VSI's motion for

14  reconsideration.  They -- there were a number of misstates made

15  by Mr. Michaels just now that I can address.  The -- you know,

16  the issue of the settlement agreement, I don't -- I don't think

17  I know which one he's talking about because the one I know Chad

18  Stasney did not sign and was not a party to.

19         The issue of all the patent infringement claims he

20  allegedly has would only be an issue if the Debtor had sold

21  TVs, which it clearly hasn't.  There are no operations in the

22  Debtor.  What the Debtor is selling is its assets, including

23  interests in foreign subsidiaries that have technology.  And

24  there -- we don't know of any technology that Rembrandt has

25  sold or that Rembrandt has in that technology nor are we

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 18 of 23

18

1   selling that technology.  We're selling the subsidiary.

2         That being said, there is little or no evidence, I

3   would say no evidence for the vast majority of what Mr.

4   Michaels just said. We're here on a 9019 hearing, and I don't

5   know what his comments lend to that.

6         MR. THOMPSON:  Your Honor, I must respond to what Mr.

7   Vagnoni just said.  In that, first of all, we're actually

8   talking about what this Court asked to be placed at the end of

9   this hearing.  So I don't think it's about the 9019

10  reconsideration.  But rather with the respect to discovery

11  related to the sale and bid procedures motion filed by this

12  Trustee.

13        THE COURT:  I agree.  Mr. Vagnoni, they're talking

14  about, you know, he -- Mr. Thompson had invited me to comment

15  on the discovery related to the procedures motion --

16        MR. VAGNONI:  Understood.

17        THE COURT:  -- that's coming up.  So I think that

18  they're kind of highlighting issues and obstacles that they

19  believe that the Trustee faces in connection with that, and why

20  they think it's, you know, I should grant some discovery.  So I

21  think that's really what the focus was of Mr. Michaels.

22        MR. THOMPSON:  That's right, Your Honor.  And I think

23  it's important to note based upon what Mr. Vagnoni just said.

24  We have no contentions about what the Trustee is selling or is

25  not selling.  I wish the Trustee knew what he is selling.  I

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 19 of 23

19

1   wish his advisors knew what they were selling.  I don't believe

2   they do.  And as set forth in our objection pretty clearly, and

3   as had been made clear on the record on June 5th, the Trustee

4   does not understand these assets.  He does not understand the

5   implications, let alone the encumbrances upon some of these

6   assets, including the rights that Rembrandt has just raised.

7          And so, if they -- if the Trustee did, we would be

8   having a different discussion right now.  But he doesn't, and

9   his advisors don't.  And that's important.

10          MR. VAGNONI:  Pretty clearly as to what the Trustee

11  is selling.

12          THE COURT:  All right.  Well, I mean, I think what

13  I'm hearing them say, Mr. Vagnoni, is that they don't think you

14  know what you're selling.  But do you know what you're selling

15  as part of this motion?

16          MR. VAGNONI:  As part of the --

17          THE COURT:  The motion for the bid procedures.

18          MR. VAGNONI:  Absolutely.  The Trustee is selling all

19  of the assets of the Debtors, including their equitable rights

20  in the foreign subsidiaries that they -- that they have.  That

21  is what they're selling.

22          MR. THOMPSON:  Are they selling the right to license?

23          MR. VAGNONI:  I'm not -- I don't think I'm on the

24  stand here.  And I don't think that -- no.  The Trustee is not

25  selling a license.

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 20 of 23

20

1        MR. THOMPSON:  Okay.  Well, that's what it says in

2   SSTs teaser.

3        MR. VAGNONI:  I don't believe so.  And again, we're

4   not here on that today.

5        MR. THOMPSON:  Well, that's why we need discovery is

6   what I would argue, Your Honor.  Because it says very clearly

7   in the SSG teaser that what the Trustee is purporting to sell

8   are the capabilities to license the so-called Ultra-D

9   technology, which incorporates other people's IP, including,

10  but not limited to Rembrandts.  And that's why we think it

11  destroys value. And that's why we think the Trustee doesn't

12  understand what its selling.  And that's why we think we need

13  discovery.

14        MR. MICHAELS:  Your Honor, with respect to the teaser

15  that it was put out, it references the very Phillips license

16  that specifically prohibits a transfer under a change of

17  control provision, right?  There's huge numbers of patents that

18  we have sent the Trustee as part of our discussions and we

19  filed it with our papers a list of assets that we needed to

20  understand the status of that had been licensed from Phillips.

21  A blue box software for example.  I mean, there's a huge

22  laundry list of assets that were provided by Phillips that were

23  used to create and are used to implement the Ultra-D

24  technology.  Are those included or not?  Are those -- those are

25  -- if they're not included by the way, you can't be using

Case 23-10763-amc  Doc 826-2  Filed 11/27/24  Entered 11/27/24 19:42:08  Desc
Exhibit 11-7-24 Hearing Transcripts  Page 21 of 23

21

1   Rembrandt's technology because ours is reliant on that -- those

2   software and that no how and that technology.

3         So if we answered that question, right, that they

4   have put front and center in their marketing piece, we would

5   know whether or not Rembrandt's technology is included.

6   Because if it's not, if they're not using the Phillips

7   technology, they're not, we're not involved, right?  We back

8   right off.  They get rid of us.  We are not making any motions.

9   So these are basic, basic, factual pieces of information that

10  are -- they have made front and center.  I mean, we certainly

11  have been raising them for years.  But they've said right in

12  their paper, in their marketing materials, that this is subject

13  to a Phillips license.

14         THE COURT:  Mr. Michaels, thank you for that.  So Mr.

15  Vagnoni, I guess what I'm hearing Mr. Thompson and Mr. Michaels

16  saying is they want to drill down into the weeds, understand

17  exactly what is being sold so that they understand what's

18  happening and if there's going to be future litigation.  And

19  so, they seem confused about that.  I think it's certainly fair

20  for them to understand exactly what is being sold.  I myself

21  haven't got into the weeds about the schedules in terms of

22  exactly what's being sold.  But I think that that's certainly

23  something that they need to know.

24         And I'm not going to put you on the spot here today,

25  but certainly I'd like them to understand exactly what's being

Case 23-10763-amc   Doc 826-2   Filed 11/27/24   Entered 11/27/24 19:42:08   Desc
Exhibit 11-7-24 Hearing Transcripts   Page 22 of 23

22

1  sold so that they can take whatever litigation positions that

2  are necessary and then they can make arguments to me.  But it

3  sounds like they don't know that.  And it sounds like you might

4  not want to be in the position to answer that, but I think it's

5  a fair request to understand what's being sold as part of this

6  sale.

7       So I'm going to rule on the motion for

8  reconsideration and the discovery related to that.  I'm going

9  to urge Mr. Vagnoni to get back to Mr. Thompson and Mr.

10 Michaels about exactly what's, you know, what's being sold.

11 And then my hope is that when we meet again that Mr. Thompson

12 and Mr. Michaels will report to me that they know what's being

13 sold, and that they can raise whatever issues come up as a

14 results of that.  And then the Court will address it then,

15 okay?

16      (Proceedings adjourned at 10:30 p.m.)

17

18

19

20

21

22

23

24

25

Case 23-10763-amc    Doc 826-2    Filed 11/27/24    Entered 11/27/24 19:42:08    Desc
Exhibit 11-7-24 Hearing Transcripts    Page 23 of 23

23

C E R T I F I C A T E

    I hereby certify that the foregoing is a true and correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*John Buckley*
_____
John Buckley, CET-623
Digital Court Proofreader