```
                    UNITED STATES BANKRUPTCY COURT

                   FOR THE DISTRICT OF PENNSYLVANIA

                                         :
IN RE:                                   : Case No.  23-10763
                                         :
STREAM TV NETWORKS, INC.   CH: 11        : ADV. No.  23-00057
                                         :
Stream Tv Networks, Inc. Vs              : Philadelphia, Pennsylvania
Shadron L Stastney                       : December 14, 2023
                                         : 9:00 a.m.
Motion For Sanctions For                 :
Violation Of The Automatic Stay          :
Filed By Stream Tv Networks, Inc.        :
Represented By Rafael X.                 :
Zahralddin .                             :
. . . . . . . . . . . . . . . . . . . . :


              BEFORE THE HONORABLE MAGDELINE D. COLEMAN
                   UNITED STATES BANKRUPTCY JUDGE
```

APPEARANCES:

```
For the Debtor:                    Keith Kodosky, Esq.
                                   Lewis Brisbois Bisgaard & Smith
                                   600 Peachtree Street NE
                                   Suite 4700
                                   Atlanta, GA 30308
                                   404-991-2183

                                   Rafael X. Zahralddin
                                   Lewis Brisbois Bisgaard & Smith
                                   500 Delaware Avenue, Suite 700
                                   Wilmington, DE 19801
                                   302-985-6004

For Hawk Investment Holdings       Steven Caponi, Esq.
Ltd:                               Margaret Westbrook, Esq.
                                   Aaron Rothman, Esq.
                                   K&L Gates
                                   600 N. King Street, Suite 901
                                   Wilmington, DE 19801
                                   302-416-7080

                                   Jonathan N. Edel, Esq.
                                   300 South Tryon St., Suite 1000
                                   Charlotte, NC 28202
```

Case 23-10763-amc Doc 828-5 Filed 12/27/24 Entered 12/27/24 23:49:30 Desc Main
Exhibit 12-14-23 Hearing Transcript Page 2 of 16

Case 23-10763-amc Doc 528-5 Filed 12/27/24 Entered 12/27/24 23:49:30 Desc Main
Document Page 2 of 16    2

APPEARANCES:

                                      Thomas A. Warns, Esq.
                                      K&L Gates LLP
                                      599 Lexington Avenue
                                      Suite 1000
                                      New York, NY 10022
                                      212-536-3901

For SeeCubic, Inc.:        Marley Ann Brume, Esq.
                                      Skadden Arps Slate Meagher &
                                      Flom, LLP
                                      500 Boylston Street, 23rd Floor
                                      Boston, MA 021116
                                      617-573-4800

                                      Justin M. Winerman, Esq.
                                      Skadden Arps Slate Meagher &
                                      Flom, LLP
                                      155 North Wacker Drive
                                      Chicago, IL 60606
                                      312-407-0549

For SLS Holdings VI, LLC:  Davis Lee Wright, Esq.
                                      Ryan Messina, Esq.
                                      Robinson Cole, LLP
                                      1201 North Market Street
                                      Wilmington, DE 19801
                                      302-516-1703

For Rembrandt:            Andrew Peter Demarco
                                      Devlin Law Firm, LLC
                                      1526 Gilpin Avenue
                                      Wilmington, DE 19806
                                      302-449-9010

For the U.S. Trustee:     Kevin P. Callahan, Esq.
                                      Office of The United States
                                      Trustee
                                      Robert N.C. Nix Federal
                                      Building
                                      900 Market Street, Suite 320
                                      Philadelphia, PA 19107
                                      202-934-4154

APPEARANCES:

For Shadron Stastney:       Terence M. Grugan, Esq.
                            1735 Market Street
                            51st Floor
                            Ballard Spahr
                            Philadelphia, PA 19103

Proceedings recorded by electronic sound recording; transcript produced by TheRecordXchange.

```
1   DECEMBER 14, 2023                                       9:00 A.M.
2           THE COURT:  Okay.  This is a status conference that I
3   have scheduled.  Could you please enter your appearance for the
4   parties?  Let's start with the Debtor.
5           MR. ZAHRALDDIN:  Good afternoon, Your Honor.  Rafael
6   Zahralddin for the Debtor.  I believe Mr. Kodosky, Keith, is
7   also on and I may have another colleague.  But I'll -- I can't
8   see them, so I know those -- I know the two of us are on.
9           THE COURT:  Is anyone else --
10          MR. RAJAN:  That's -- Your Honor.
11          THE COURT:  -- on for the Debtor?
12          MR. RAJAN:  Mr. Rajan is here.
13          THE COURT:  I'm sorry, who else is here?
14          MR. RAJAN:  Mr. Rajan.  Matthu Rajan.
15          THE COURT:  Okay.  Any other counsel here for the
16  Debtor?
17          Okay.  Who is here for SLS?
18          MR. MESSINA:  Your Honor, this is Ryan Messina of
19  Robinson and Cole.
20          MR. WRIGHT:  Your Honor, Davis Wright of Robinson and
21  Cole, also.
22          THE COURT:  I'm sorry, Ryan?  I didn't get that.
23          MR. MESSINA:  Messina.  Yes, Messina, Your Honor.  M-
24  E-S-S-I-N-A.
25          THE COURT:  All right.  Who else is here?
```

```
 1              Who's here for Hawk?
 2              MR. CAPONI:  Good afternoon, Your Honor.  Steve
 3   Caponi from K&L Gates.  I think with me is -- I have partners
 4   Aaron Rothman, Margaret Westbrook.  I believe also Jon Edel,
 5   who's on the line as well.
 6              THE COURT:  Mr. Edel.  Okay.
 7              And who's here for SeeCubic?
 8              MS. BRUMME:  Good afternoon, Your Honor.  This is
 9   Marley Ann Brumme from Skadden Arp and with me is Justin
10   Winerman, also from Skadden.
11              THE COURT:  Okay.  And is anyone here for Mr.
12   Stastney in his individual capacity?
13              MR. GRUGAN:  Yes, Your Honor.  Hello.  This is
14   Terence Grugan from Ballard Spahr.
15              THE COURT:  Okay.  Is anybody here for Rembrandt?
16              MR. DEMARCO:  Yes, Your Honor.  This is Andrew
17   DeMarco from Devlin Law Firm, here for Rembrandt.
18              THE COURT:  All right.  Is there anyone who I haven't
19   called?
20              MR. CALLAHAN:  Yes, Your Honor.
21              MR. MICHAELS:  Yes, Your Honor.  This is Christopher
22   Michaels, also for Rembrandt.  And Neil Wallace has joined us
23   from Rembrandt as well.
24              THE COURT:  Anyone else?
25              MR. CALLAHAN:  Yes, Your Honor.  Kevin Callahan for
```

```
 1  the U.S. Trustee.
 2           THE COURT:  Anyone else?
 3           MR. WARNS:  Sorry.  Tom Warns from K&L Gates as for
 4  Hawk.
 5           THE COURT:  There is five attorneys for Hawk, you
 6  said?  So that -- that's --
 7           MR. CAPONI:  That's right, Your Honor.
 8           THE COURT:  Okay.  Okay.
 9           All right.  Anyone else?
10           All right.  I scheduled this status conference,
11  because the -- I understand that the parties have agreed to a
12  continuation on a number of outstanding matters to -- until
13  potentially late January / early February.  And as the parties
14  are aware, we started a hearing on a TRO / Preliminary
15  Injunction and -- starting on October 6th.  And we've had four
16  days of trial.  The 16th, the 30th, and the 27th.
17           And while this matter was filed requesting a TRO /
18  Preliminary Injunction.  The length of the trial and the
19  continuation of these matters has made it actually more -- to a
20  preliminary injunction.
21           Now, I know in the interim, because the parties are
22  in settlement with the hopes resolving a number of pending
23  motions before the Court.  And as stated previously, I
24  understand the parties are continuing most of those matters to
25  the late January / early February.
```

Case 23-10763-amc Doc 828-5 Filed 11/27/24 Entered 11/27/24 14:49:30 Desc Main
Exhibit 12-14-23 Hearing Transcript Page 7 of 16

Case 23-10763-amc Doc 528-5 Filed 11/27/24 Entered 11/27/24 14:31:49 Desc Main
Document Page 7 of 16                                                          7

1       I'm a bit uncomfortable with the TRO / Preliminary
2  Injunction matter sitting in limbo when nothing's going to
3  happen for the next, you know, seven to nine weeks.
4       So based on that, I think that it is prudent and at
5  this point, that I issue at least a TRO until we are in a
6  position to continue with these hearings.  And I'm going to say
7  that I -- you know, that's based on the evidence that I've
8  heard to date.  You know, I have a concern regarding potential
9  risk to the Debtors estate.
10      And I believe that a narrow TRO is appropriate
11 pending conclusion of trial or until the parties reach some
12 settlement or, you know, something else happening.  So I'm
13 really concerned about just letting this sit in limbo.
14      Now, I'm saying that, and that conclusion is based on
15 my review of the evidence to date.  And that evidence includes
16 evidence regarding the website and particularly on October
17 17th, the Debtor introduced evidence regarding the SeeCubic,
18 Inc. website, which featured not only SeeCubic B.V. office and
19 contact information, but also SeeCubic B.V. employees,
20 pictures, and bios, which were prominently displayed as a
21 leadership team of SeeCubic, Inc. on its website.  Now, I
22 understand, I guess from other evidence that that had been
23 subsequently changed.
24      In addition, I was concerned about -- on October
25 30th, I saw information regarding SeeCubic, Inc.'s website,

1  which featured a representation that I don't think was quite

2  accurate.  That SeeCubic, Inc. had raised 170 million in

3  fundraising with respect to the IP and the products that were

4  being produced.  And I think in fact, some of those moneys may

5  have related to some efforts by Stream.  So I was concerned

6  about that.

7              There's also various quotes from news sites regarding

8  the -- SeeCubic's 3D technology, which, you know, no one's

9  decided yet whether this is property of the Debtors estate.  So

10 I'm concerned about that out in the market saying that this is

11 SeeCubic, Inc.'s technology.  And so, that was with respect to

12 the website.

13             With respect to the patent, on November 27, Mr.

14 Michaels testified regarding his personal investigation

15 regarding patent applications that had been submitted.  And in

16 connection with that, I also think there was introduced into

17 evidence, an application that had been submitted by Raja Rajan

18 and that said SeeCube.  Mr. Stastney said SeeCubic.

19             Whether that is a confusion in the market or

20 whatever, but that -- and whether it was registered -- that --

21 the term SeeCubic is being used by SeeCubic B.V.  So I'm

22 concerned whether this is an asset that belongs to either one

23 of these Debtors.  Not finding that it is, but that action can

24 cause some harm if it's determined to be their asset.

25             The issues regarding the sublicensing.  While I have

Case 2:23-17673-amc Doc 528-5 Filed 15/23/24 Entered 15/23/24 33:449:30 Desc Main
Exhibit 12-14 23 Hearing Transcript Page 9 of 16 Page 9 of 16

9

1 -- really haven't seen some -- there's been an allegation that
2 there was some issues about sublicensing.  I think Mr. --
3 there's something from Mr. Stastney saying, oh, we're not doing
4 that.  I want to make sure that nothing happens in the interim
5 between the time that we ultimately have a hearing on this
6 matter.
7         I am concerned about if these are assets of the
8 Debtor, that harm will come to them.  And so, you know, when
9 considering whether I'm going to issue a TRO or a Preliminary
10 Injunction, that the factors that I consider are the same,
11 which is the likelihood of success on the merits.  Likelihood
12 of irreparable harm to the movant in the absence of release.
13 Balance of harm between the Plaintiff on the one hand and the
14 Defendant on the other.  And the public interest.
15         Now, a temporary restraining order typically remains
16 in effect for a maximum of 28 days and cannot be extended
17 indefinitely.  And on the other hand, a Preliminary Injunction
18 is, you know, affective until a decision is made.  So by
19 issuing a TRO, once I say what the factors are, I don't think
20 that it's too long.  I think that is serves the purpose that a
21 TRO is supposed to purpose -- suppose to perform.
22         In looking at the various factors, what are the --
23 one of the most critical things that you look at is, one, is
24 the movant satisfies burdens on these -- on certain factors.  I
25 have to look at whether the balance of equities tips in the

1  movants favor and whether it's in the public interest.

2            So the most critical are successes on the merits and
3  irreparable harm.  Based on what I've seen so far, it appears
4  that, you know, the Debtors may be able to succeed on --
5  assuming that they can prove that it's their asset that -- at
6  least with respect to SeeCubic that -- and SeeCubic is
7  representing that it's their asset, they're doing various
8  things with the IP that is causing concern.  And I think if
9  it's continued could cause irreparable harm.

10           And those are the most critical factors.  I think
11 I've alluded in -- during the hearings that there were some
12 things that were causing concern for the Court.  You know, and
13 that was without obviously hearing all of the testimony and the
14 response.  But you guys are asking to continue that, and I
15 don't want anything to occur in the interim.

16           Based on what I'm hearing, again, I think that
17 there's a likelihood of success on the -- to the extent that
18 the Debtors assets are being represented to belong to someone
19 else.  They're being represented as being part of the -- owned
20 by someone else.  The patents clearly cause me concern, because
21 even though theirs is SeeCube, the application states SeeCubic.
22 It say they weren't used anywhere else.

23           The term SeeCubic is being used by SeeCubic B.V.  So
24 I'm not -- and I'm not quite sure -- I'm not -- you know, just
25 based on what I've heard, that caused some alarm for the Court.

1  I'm not making a determination who owns what.  But I think in
2  this case so far, the Debtors have met -- have -- you know,
3  they've met their burden of showing that, you know, there might
4  be irreparable harm in the absence of release.
5        And then if I balance the harms between the Plaintiff
6  on the one hand and the Defendants on the other hand, I think
7  the harm would be more to the Debtor than to the parties that
8  are seeking to enjoin or asked in the temporary restraining
9  order, because again, the parties have asked for a standstill.
10        I -- based on what I've heard to date, it seems that
11  there may be some harm.  And so, to the extent the Defendants,
12  in this case, saying we're not doing anything, so I'm not sure
13  how there would be harm if I say -- you know, it appears that
14  you are.  But if you believe that there aren't', telling you to
15  stop is not going to -- the harm to the Defendants is not going
16  to outweigh the potential harm to the Debtor.
17        The second is, the public interest.  And I think the
18  public interest is that we need to make sure that when Debtors
19  file bankruptcy, that they get all of the protection they're
20  entitled to.  And that one of this is by restraining actions
21  that could have a potential effect on the Debtors estate.
22        Now, I know that's what the stay is for.  But in this
23  case, there are some things that are going on.  They may sort
24  of be overlapped.  But for my purposes, I am concerned about
25  whether not taking some action now is going to undermine the

1  public interest of having bankruptcy laws applied and the
2  impact of what happens when these actions occur.
3           So based on that, I believe that the standard for
4  issuance of a TRO have been met.  Though it's an extreme
5  measure, I think that it's necessary to ensure that the Debtors
6  assets aren't at risk in between now and in the context of a
7  pending conclusion of a trial or in the event a settlement can
8  be reached prior to the end of trial.
9           But what I wanted to make sure is that -- there's a
10 dispute regarding these assets and I don't want any actions
11 taken that will somehow have a negative impact on these Debtors
12 estate.
13          So what I want to do is -- and Mr. Zahralddin, you're
14 going to prepare this order and serve it.  It's going to be a
15 very limited and a very focused.  I want to make sure that no
16 one will take any action regarding the assets of the Debtor.
17 Primarily anything to do with patents.  Anything to do with the
18 IT.  Anything to do with licensing.
19          And again, the Debtor -- the Defendant said they're
20 not doing any of this, so it shouldn't be a problem.  But I
21 want that to be clear that none of that -- no action should be
22 taken to assert any ownership, alleged ownership, anything to
23 do with these assets.
24          I don't want anything with -- I don't want any use,
25 transfers, interfering with the trademarks, the website, any

Case 23-10763-amc Doc 528-1 Filed 12/27/24 Entered 12/27/24 13:11:40 Desc Main
Document Page 13 of 16
13

1 sublicensing. I'm not quite sure where you guys are on that
2 bonding equipment. That's not to be -- none of the Debtors
3 assets. And I know that they're alleged assets. They're in
4 dispute. But until that dispute is resolved, I don't want
5 anybody doing anything. At least not for 28 days, or until we
6 have a trial, or if the parties resolve the matter.
7           So that's where I am and that was why I called for
8 this status hearing.
9           MR. ZAHRALDDIN:  Thank you, Your Honor.  I'll prepare
10 an order and I'll circulate it to the other parties, and we'll
11 approach it in that way.
12          THE COURT:  Right.  This is just, again, in response
13 to the party's request for a continuation.  I feel that there
14 needs to be a clear understanding, at least from the Court's
15 perspective, of what I want -- well, what I don't want to occur
16 in the interim.
17          Mr. Zahralddin, you are to share that order with all
18 of the parties.  If anybody disagrees -- and I want it limited
19 and focused.  I don't want all of that, because I've seen your
20 proposed orders.  None of that.  None of this.  You return
21 this, do this, none of that.  I want it focused and limited.
22          If the parties cannot -- or the parties think that
23 the order that has been prepared by Mr. Zahralddin does not
24 adequately or does not reflect what I'm saying, call Ms. --
25 well, you have Ms. Godfrey until December 29th, to call and

```
 1  schedule a conference.  If an order is submitted, I am going to
 2  assume -- well, I don't like the word to assume, but it will be
 3  that everybody is -- agrees to what is being submitted, okay?
 4              MR. ZAHRALDDIN:  Your Honor, we'll make sure we
 5  submit it as an agreed order in the same spirit as the other
 6  two agreed orders we put in --
 7              THE COURT:  Okay.
 8              MR. ZAHRALDDIN:  -- over the weekend.
 9              THE COURT:  I haven't seen those yet.  Or if you did,
10  I haven't seen those yet.  I understood that there was, or
11  maybe I assigned them already.  I don't recall.
12              MR. ZAHRALDDIN:  Okay.
13              THE COURT:  But I also know that Ms. Godfrey provided
14  the parties with some dates for the continued hearing in late
15  January / February.  I would strongly encourage you to try to
16  get those dates, because she is only here until the 29th and
17  I'm not quite sure at this point who my courtroom deputy will
18  be.  Okay?
19              MR. ZAHRALDDIN:  We will -- I'll talk to Ms. Godfrey
20  and we'll at least -- I'm sure there will be other things to
21  get done.  We'll make sure we have those reserved so they don't
22  slip away.  And I believe they were in early February.
23              THE COURT:  Okay.
24              Anything else from anyone else?
25              Okay.  Hearing nothing, this status conference is
```

1  adjourned, and court is -- well, it's -- I think my next
2  hearing is Monday at 10:30.  So court is adjourned until Monday
3  at 10:30.
4              Thank you, counsel, and everybody have a good
5  weekend.
6              UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
7              MR. ZAHRALDDIN:  Your Honor, if we don't see you for
8  the --
9         (Proceedings adjourned)

C E R T I F I C A T E

      I hereby certify that the foregoing is a true and correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*John Buckley*
John Buckley, CET-623
Digital Court Proofreader