# EXHIBIT 16

# Exhibit E

# 3DFusion, Corp.

## Mutual Non-Disclosure and Confidentiality Agreement

THIS AGREEMENT made on June 9th, (the "Effective Date") by and between 3DFusion, Corp. ("3DFusion"), a Delaware corporation, whose address is 110 Wall Street, 7th Floor, New York, NY 10005, and _STREAM TV NETWORKS INC_ whose address is _2009 CHESTNUT STREET, PHILADELPHIA PA 19103_;

WHEREAS, Parties possesses certain confidential information and/or proprietary information and/or trade secrets, and;

WHEREAS, in connection with Business Purposes between the Parties, confidential information and/or proprietary information and/or trade secrets of one Party may become available to the other Party; and,

WHEREAS, each Party desires to prevent the unauthorized use and disclosure of its confidential information, proprietary information and trade secrets.

NOW THEREFORE, in consideration of the mutual covenants, terms and conditions and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree that the Disclosing Party will provide to the Recipient, certain confidential and proprietary information for Business Purposes in accordance with the following terms and conditions:

## 1. DEFINITIONS

### 1.1 Business Purposes

The pursuit, evaluation and/or feasibility assessment of a potential or actual business relationship, and/or the consummation of a transaction between Parties.

### 1.2 Confidential Information:

Any and all non-public technical and non-technical information provided by the Disclosing Party to the Recipient, whether conveyed verbally, in writing, electronically or by any other means, including but not limited to (i) patent and patent applications; (ii) trade secrets; and (iii) Derivative Materials, proprietary information including, but not limited to, ideas, sketches, techniques, drawings, works of authorship, models, inventions, know-how, processes, apparatuses, equipment, algorithms, Software programs, Source Code, Software source documents, and formulae related to the current, future and proposed products and services of each of the Parties, and including, without limitation, their respective information concerning business strategies, research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, purchasing, manufacturing, client and customer lists, investors, employees, business and contractual relationships, business forecasts, sales, merchandising, marketing plans and information the Disclosing Party provides regarding itself or

1

third parties. Confidential Information also includes, but is not limited to any and all information disclosed by the Disclosing Party to the Recipient that is marked "confidential" or "proprietary.

Confidential Information does not include any information that the Recipient can demonstrate is:

    1.2.1 rightfully known prior to disclosure;

    1.2.2 rightfully obtained from a third party authorized to make such a disclosure, without breach of the terms and conditions of this Agreement;

    1.2.3 independently developed by the Recipient as demonstrated by contemporaneous documents;

    1.2.4 available to the public without restrictions;

    1.2.5 approved for disclosure with the prior written approval of the Disclosing Party; or

    1.2.6 disclosed by court order or as otherwise required by law, as set-forth in 2.7 of this Agreement.

### 1.3 Derivative Material:

May or may not consist of business related documents, computer program Source Code as determined solely by the Disclosing Party from time to time, and any written or computer based materials or instructions, including but not limited to, Documentation, computer or code or information, manuals or memos in any format whatsoever, system performance specifications or information, or system security measures or information provided from the Disclosing Party to the Recipient.

### 1.4 Disclosing Party:

A Party to this Agreement or a Party's Representatives that discloses or has disclosed Confidential Information to a Recipient.

### 1.5 Documentation:

The Disclosing Party's published or unpublished business and/or technical documents, memos, emails or any other source of information.

### 1.6 Permitted Use:

Use of Confidential Information for Business Purposes as defined herein.

### 1.7 Party:

Any Person who is Mr. Mark Frick, and/or 3DFusion, including their respective Representatives, as it relates to this Agreement and which shall be referenced herein as Party, Parties or Party's as the case may be.

### 1.8 Person:

An individual, partnership, limited liability company, joint venture, corporation, trust, unincorporated association, any other entity, or a government or any department or agency or other unit thereof.

### 1.9 Recipient

A Party to this Agreement or a Party's Representatives that received or receives Confidential Information from a Disclosing Party.

### 1.10 Representative:

With respect to any Person, its directors, officers, employees, agents, consultants, advisors or other representatives.

### 1.11 Software:

The electronic instructions written and existing in both object and source code format or otherwise for computers, that now exists or may exist in the future, and is owned by the Disclosing Party and any related computer software modules, updates, modifications, interim releases, bug fixes and patches applicable to such software.

### 1.12 Source Code:

The Software fully documented in its human readable form; and/or (i) a compiler, or similar computer program or any other software which is necessary to convert the Source Code form into the object code form of the Software; and/or (ii) runtime software necessary to execute the Source Code form of the Software, including but not limited to interpreters and templates.

## 2. CONFIDENTIALITY

All Confidential Information shall remain the sole property of the Disclosing Party, and the Recipient shall have no interest in or rights with respect thereto, except as expressly set forth in this Agreement. Parties further agree:

### 2.1 Obligation to Maintain Confidentiality:

During and after the term of this Agreement, the Recipient shall, and shall cause each of its Representatives, to keep Confidential Information confidential and to protect such Confidential Information from unauthorized use, access or disclosure in the same manner that it protects its own similar Confidential Information, but in no event with less care than a reasonably prudent business would exercise. Without limiting the effect of the previous sentence or the foregoing, the Recipient shall not and shall cause its Representatives not to:

2.1.1 disclose any of the Confidential Information to any Person except:

(i) with the prior written consent of an Officer of the Disclosing Party; or

(ii) as otherwise expressly permitted by this Agreement.

2.1.2 use any of the Confidential Information in any way detrimental to the Disclosing Party, it being acknowledged by the Recipient that any use other than in connection with the Business Purposes is detrimental.

ANDA0804

2.1.3 directly or indirectly, in any way, reveal, report, publish, disclose, transfer or otherwise use any of the Confidential Information except as specifically authorized by Disclosing Party in accordance with this Confidentiality Agreement.

2.1.4 reverse engineer, decompile or disassemble any hardware or software received from the other Party for any purpose inconsistent with this Agreement.

2.1.5 use any Confidential Information to compete or obtain unfair advantage in any commercial activity which may be comparable to the commercial activity contemplated by the Parties in connection with the Business Purposes.

**2.2 Unauthorized Use:**

The Recipient shall give prompt written notice to the Disclosing Party of any unauthorized use or disclosure of the Confidential Information and shall assist the Disclosing Party in remedying each unauthorized use or disclosure. Any assistance by Recipient does not waive any breach of this Agreement, nor does acceptance of the assistance constitute a waiver of any breach of this Agreement.

**2.3 No Right to Confidential Information:**

Recipient hereby agrees and acknowledges that:

2.3.1 no license, either express or implied, is hereby granted to Recipient by the Disclosing Party to use any of the Confidential Information;

2.3.2 all inventions, improvements, copyrightable works and designs relating to business plans, marketing plans, technology, machines, methods, compositions, or products of Disclosing Party directly resulting from or relating to the Confidential Information and the right to market, use, license and franchise the Confidential Information or the ideas, concepts, methods or practices embodied therein shall be the exclusive property of the Disclosing Party, and Recipient has no right or title thereto.

**2.4. Rights and Licenses:**

This Agreement and the furnishing of "Confidential Information" by the Disclosing Party shall not be construed as establishing, either expressly or by implication, any grant of rights or licenses to Recipient or any relationship between the Parties.

**2.5 Permitted Disclosees:**

The Recipient may disclose Confidential Information to only those of its Representatives who:

2.5.1 require the Confidential Information for the Permitted Use but to the extent practicable, only the part that is required; and

2.5.2 are informed by the Recipient of the confidential nature of the Confidential Material; and

2.5.3 are bound by the obligations of this Article and who are under a duty of confidentiality no less restrictive than that set forth herein.

### 2.6 Termination; Return and Destruction of Confidential Information:

Upon the termination of this Agreement, the Recipient shall, and shall cause its Representatives to promptly, but in any event no later than ten (10) days after termination:

2.6.1 return to the Disclosing Party all Confidential Information furnished to the Recipient or any of its Representatives; and

2.6.2 destroy all Derivative Material and upon destruction, the Recipient shall certify in writing to the Disclosing Party that it has done so.

2.6.3 Notwithstanding anything to the contrary herein, in the event that Recipient is required by law or regulation to retain Confidential Information for compliance purposes, such Recipient and its Representatives shall:

2.6.3.1 retain one copy consisting of only the Confidential Information required for compliance purposes; and,

2.6.3.2 be subject to the obligation to maintain confidentiality of such retained Confidential Information until such time as Recipient complies with the provisions of this Section 2.6.1 and 2.6.2.

### 2.7 Compelled Disclosure:

If the Recipient or any of its Representatives is requested, becomes legally compelled or is required, in any case by a court or governmental body, to make any disclosure of Confidential Information (a "Compelled Representative"), the Recipient shall:

2.7.1 promptly, but in any event no later than three (3) days after the Recipient becomes aware that it is required to make such disclosure notify the Disclosing Party in writing;

2.7.2 consult with and assist the Disclosing Party, at the Disclosing Party's expense, in obtaining an injunction or other appropriate remedy to prevent such disclosure;

2.7.3 use its best efforts to obtain at the Disclosing Party's expense, a protective order or other reliable assurance that confidential treatment will be accorded to any Confidential Information that is disclosed.

### 2.8 Right to Disclose:

Subject to the provisions of Section 2.7, the Recipient or the Compelled Representative may furnish that portion and only that portion of the Confidential Information that, in form and substance reasonably acceptable to the Disclosing Party, the Recipient or the Compelled Representative is legally compelled or otherwise required to disclose.

### 2.9 Term:

Despite any other provision of this Agreement, the provisions of this Article 2 herein survives any termination of this Agreement or the consummation of the transactions that this Agreement contemplates for a period of five (5) years with respect to non-technical information and in perpetuity with respect to technical information, including the Software and Derivative Materials.

## 3. GENERAL PROVISIONS

### 3.1 Indemnity:

The Recipient hereby agrees to indemnify the Disclosing Party against any and all losses, damages, claims, expenses, and attorneys' fees incurred or suffered by the Disclosing Party as a result of a breach of this Agreement by the Recipient or its Representatives.

### 3.2 Remedies; Injunctive Relief:

The Recipient understands and acknowledges that any disclosure or misappropriation of any Confidential Information in violation of this Agreement may cause the Disclosing Party irreparable harm, the amount of which may be difficult to ascertain, and therefore agrees that the Disclosing Party shall have the right to apply to a court of competent jurisdiction for specific performance and/or an order restraining and enjoining any such further disclosure or breach and for such other relief as the Disclosing Party shall deem appropriate, without the posting of a bond or other security and, without proof of actual damages. Such right of the Disclosing Party is to be in addition to any other remedies otherwise available to the Disclosing Party at law or in equity.

### 3.3 No Additional Agreements:

In the absence of any other written agreements between the Parties, neither the holding of discussions nor the exchange of ideas, material or information shall be construed as an obligation of either Party to perform any work, enter into any license, business engagement or other agreement with the other Party. Parties hereby acknowledge that they are not agents of each other. Nothing in this Agreement shall prohibit a Party from providing its own Confidential Information to third parties and entering into agreements with third parties. Each Party reserves the right, in its sole discretion, to reject any and all proposals made by the other Party or its Representatives with regard to a transaction between the Parties and to terminate discussions or negotiations at any time.

### 3.4 Severability:

If any provision of this Agreement is determined to be invalid, illegal or unenforceable, the remaining provisions of this Agreement remain in full force, provided that the essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

### 3.5 Governing Law:

The laws of the State of New York (without giving effect to its conflict of laws principles) govern all matters arising out of or relating to this Agreement, including without limitation, its interpretation, construction, performance, and enforcement. Parties hereby irrevocably consent to the jurisdiction of the state and federal courts located in the city of New York, State of New York, in any action arising out of or relating to this Agreement, and waive any claim that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

### 3.6 Captions; Number; Gender:

The descriptive headings of the Articles, Sections, and subsections of this Agreement are for convenience only, do not constitute a part of this Agreement, and do not affect this Agreement's construction or interpretation. Any reference in this Agreement to the singular includes the plural where appropriate, and any reference in this Agreement to the masculine gender includes the feminine and neuter genders where appropriate.

ANDA0804

### 3.7 Entire Agreement:

This Agreement constitutes the sole understanding of the Parties about the subject matter set out herein and may not be amended or modified except in writing signed by each of the Parties to the Agreement and supersedes all prior or contemporaneous proposals, agreements, representations and understandings, whether written or oral, with respect to the subject matter. This Agreement shall not limit any rights that either Party may have under trade secret, copyright, patent or other laws that may be available.

As to 3DFusion:
Ilya Sorokin

_____
Signature

CEO

As to: STREAM TV NETWORKS, INC.

_____
Signature

Title: CEO

7

ANDA0804

## ADDENDUM TO AGREEMENT

On this 11th day of June 2010, Stream TV Networks, Inc. ("STV") and 3D Fusion, Inc. ("Fusion") (both parties collectively "Parties") desire to amend ("Amendment") a written agreement between them dated on or about June 9, 2010 concerning non-disclosure and confidentiality ("Agreement") according to the terms hereof.

**WHEREAS,** STV and Fusion have begun negotiating terms of a possible transaction in connection with the business purposes of the Agreement;

**WHEREAS,** the Parties desire to ensure the information below will be expressly covered by the Agreement and as described herein;

**NOW THEREFORE,** the Parties agree, intending to be legally bound hereby, agree as follows:

The Parties have been negotiating a possible transaction in connection with the business purposes of the Agreement ("Transaction"). Fusion specifically agrees that it shall treat the negotiations and mere existence of such Transaction discussions, and all terms thereof, including specifically but not limited to the involvement and identity of STV, its affiliates or employees and principals as the persons or entities in such discussions with Fusion ("Transaction Discussions") in strictest confidence and limited to employees of Fusion. Moreover, Fusion shall not use the Transaction Discussions or any disclosure thereof to aide in any way their negotiations with any third parties.

Except as otherwise indicated above, all other terms and conditions of the Agreement shall remain in full force and effect.

**IN WITNESS WHEREOF,** the Parties by their duly authorized representatives have executed this Addendum to Agreement on the date first written above.

3D Fusion, Inc.                                          Stream TV Networks, Inc.

(Signature)                                              (Signature)

Ilya Sorokin                                             Mathu Rajan
CEO, 3D Fusion, Inc.                                     CEO, Stream TV Networks, Inc.