## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:** | Chapter 11 |
| **Stream TV Networks, Inc.,** *et al.* | Bankruptcy No. 23-10763 (AMC) |
| Debtors. | (Jointly Administered)[1] |

### DECLARATION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE, IN SUPPORT OF THE MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF

I, William A. Homony, make this declaration (the "Declaration") under 28 U.S.C. § 1746 in support of my Motion for Entry of an Order (i) authorizing and approving, but not directing, the sale of the Assets, in each case with such Sale being free and clear of any and all liens, claims, encumbrances, and interests, (ii) and the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale, and (iii) granting related relief,[2] and in response to the Objections of Visual Semiconductor, Inc. ("VSI") and Rembrandt 3D Holding Ltd. ("Rembrandt").

1. I am the duly appointed Chapter 11 Trustee in the jointly administered Chapter 11 bankruptcy cases of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative," and together with Stream, the "Debtors").

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned cases. (D.I. #81).
[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

2. I am a Certified Insolvency and Restructuring Advisor with over twenty-three (23) years of experience. I also serve as a Subchapter V Trustee in the District of Delaware and have been appointed as a Liquidating Trustee and Plan Administrator in numerous bankruptcy cases.

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussions with my professionals and advisors, my communications with the salient parties in these bankruptcy cases as set forth in greater detail below, and my opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

## I. BACKGROUND

4. On January 5, 2024, the Court entered an order, which, among other things, (i) granted Hawk's motion for relief from the automatic stay to proceed in the 225 Action; and (ii) instructed the United States Trustee's Office to immediately begin the process of appointing a Chapter 11 trustee over these bankruptcy cases (the "Trustee Order"). (D.I. #549).

5. In addition to the Trustee Order, the Court also issued a written opinion, which, among other things, went to great lengths to explain why a trustee was being appointed over the Debtors' bankruptcy estates (the "Trustee Opinion"). (D.I. #548).

6. In the Trustee Opinion, the Court specifically held that a neutral, unconflicted trustee was needed in these cases to "… deal with VSI at arms-length, including determining if there are pre- or post-petition claims that lie against VSI" and to "…evaluate, resolve, and/or litigate the claims of Hawk, SLS, SeeCubic, Rembrandt, and others" and went on to detail the facts and reasoning it held supported the appointment of a trustee. Trustee Opinion at p. 73.

7. On January 9, 2024, the Office of the United States Trustee filed a notice of my appointment to serve as the Chapter 11 Trustee in this case, as well as an Application for the entry of an Order approving my appointment. (D.I. #554 and #553 respectively).

8. On January 12, 2024, the Bankruptcy Court entered an Order approving my appointment (D.I. #558).

9. As the Chapter 11 Trustee, I am the representative of the Debtors' bankruptcy estates and have been vested with the exclusive authority to manage the property of the Debtors' bankruptcy estates and have the duties enumerated under the Bankruptcy Code.

10. Further, as a Chapter 11 trustee, I have a duty "to evaluate the Debtors' operations, prospects, and ability to successfully reorganize, and to implement such reorganization if possible." Trustee Opinion at p. 74.

11. Since my appointment, I have done precisely that.

12. In my early assessment of the Debtors' bankruptcy estates, I was able to determine that the Debtors were not operating and had not operated for several years and had no manufacturing capabilities or finished goods that could be sold.

13. As part of my duties as Trustee, I met with and evaluated proposals from VSI, Rembrandt, and Hawk with the goal of maximizing recoveries for creditors. Notwithstanding the complaints of Mathu Rajan ("Rajan"), VSI, and Rembrandt, I have fairly evaluated every proposal presented to me.

14. After consideration of all the facts and circumstances surrounding the Debtors' status and prospects, I ultimately negotiated a settlement agreement with the Debtors' secured creditors (the "Hawk Settlement") that provided for the resolution of significant litigation between

the parties and provided a mechanism to expose the Debtors' assets to the market for sale in an effort to monetize the Debtors' assets and provide a recovery for creditors.

A. **The Hawk Settlement and the Sale Process**

15. For the reasons set forth in the 9019 Motion and the 9019 Order, both of which are incorporated herein at length, the Court approved the Hawk Settlement as a reasonable exercise of my business judgment, and I commenced the sale process outlined in the Hawk Settlement immediately.

16. I first filed an application to employ Capstone Capital Markets, LLC ("Capstone") as my investment banker, but after objections by VSI and Rembrandt (which were overruled) and the office of the United States Trustee, which Capstone attempted to resolve without success, on or about July 26, 2024, Capstone withdrew from consideration as my investment banker.

17. In the wake of Capstone's withdrawal, I filed an application to employ SSG Capital Advisors, LLC ("SSG") as my investment banker, and after VSI voluntarily withdrew its objection to SSG's retention, the application to employ SSG was approved by this Court on or about September 20, 2024. Shortly thereafter, on September 30, 2024, I filed the Bidding Procedures Motion, but not before a two-week period during which I agreed to postpone filing the Bid Procedures Motion in one last effort to provide VSI an opportunity to present a viable proposal that would provide for an alternative path forward for the Debtors and a better result for creditors. In spite of my ongoing efforts to engage with parties in an effort to maximize creditor recoveries, VSI never made a proposal to buy the Assets being sold under the Stalking Horse APA (defined below).

18. The assets of the Debtors I am selling consist of all Stream assets identified in the asset purchase agreement filed in connection with the Sale Motion (the "Stalking Horse APA")

including the ownership interests of Technovative in its subsidiaries: Technology Holdings Delaware LLC; Media Holdings Co, LLC; and Ultra-D Ventures C.V. [D.N. 791-1] (the "Assets").

19. As part of the Court approved Hawk Settlement and the Bidding Procedures Order, SSG sent a "Teaser" containing relevant information about the Debtors and the Assets to over 550 potential financial and strategic targets with the intention of creating interest in the Assets and to get interested parties to engage in a diligence process upon the execution of a non-disclosure agreement, which would provide more detailed information from SSG's data room regarding the Assets and the ability to ask questions of parties with more familiarity with the Assets, their capabilities and prospects.

20. SSG followed up with potential targets for a period of weeks after the Teaser was sent out but received limited responses, and only one NDA was signed by VSI. As a result, only VSI viewed the information in the data room, and as of the bid deadline on December 2, 2024, at 12:00 p.m., no bids were submitted.

21. The Stalking Horse Bid, as the only bid submitted by the Bid Deadline, constitutes the highest and best offer for the Assets, and therefore, I authorized the cancellation of the Auction in accordance with the Bid Procedures Order.

22. The bid procedures, sale process, and relief being requested from this Court in connection with the sale of the Debtors' Assets are consistent with numerous other cases I have been involved with throughout my professional career and are appropriate under the circumstances of these bankruptcy cases.

23. In my business judgment, I believe the Court should authorize the sale of the Debtors' Assets free and clear of all liens claims and interests pursuant to 11 U.S.C. §363 and enter the proposed Sale Order.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury the above to be true and correct.

Dated: 12/3/24

By: _____
William A. Homony
Chapter 11 Trustee