## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **Stream TV Networks, Inc.,** *et al.* | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)[1]** |
| | : | |

**ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (B) AUTHORIZING THE TRUSTEE TO ENTER INTO AND PERFORM DEBTORS' OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT, (C) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**"),[2] of the Chapter 11 Trustee, William A. Homony (the "**Trustee**") of the estates of Stream TV Networks, Inc. ("**Stream**") and Technovative Media, LLC (**"Technovative"**, or with Stream, each a "**Debtor**", and collectively with Stream, the "**Debtors**") for *inter alia*, entry of an order (this **Sale Order**") (a) authorizing and approving the entry into and performance under the terms and conditions of that certain Asset Purchase Agreement, substantially in the form attached hereto as **Exhibit 1** (as may be amended, supplemented or restated, the "**Asset Purchase Agreement**"), and all other ancillary agreements (collectively, the "**Transaction Documents**"),[3] by and among the Debtors and SeeCubic, Inc. (the "**Buyer**"), (b) authorizing and approving the sale (the "**Sale**") of those Transferred Assets set forth in the Asset Purchase Agreement (the "**Assets**") free and clear of all liens, claims, encumbrances, and other interests, except to the extent set forth in the Asset Purchase Agreement, and the

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[2] Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Motion, the Asset Purchase Agreement or the Bidding Procedures Order (as defined herein), as applicable.

[3] For the avoidance of doubt, the term "Transaction Documents" shall include the Hawk Settlement (as defined in the Bidding Procedures).

assumption of certain assumed liabilities set forth in the Asset Purchase Agreement (the "**Assumed Liabilities**") pursuant to the Asset Purchase Agreement upon the closing of the Sale (the "**Closing**"), (c) authorizing the assumption and assignment of executory contracts and unexpired leases set forth on **Exhibit 2** attached hereto, as the same may be subsequently modified pursuant to the terms of the Asset Purchase Agreement (each, an "**Assigned Contract**," and, collectively, the "**Assigned Contracts**"), upon the Closing, subject to the payment by the Buyer of any payments to cure any defaults arising under any Assigned Contract (the "**Cure Payments**"), the provision of adequate assurance by the Buyer, as applicable, that it will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Buyer under the Assigned Contracts, and (d) granting related relief, all as more fully set forth in the Motion; and this Court having entered the *Order (A) Approving the Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Approving Procedures for the Assignment and Assumption of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 811] (the "**Bidding Procedures Order**");[4] and the Trustee having ~~conducted an~~canceled the auction (the "**Auction**") for the Assets Scheduled for December 3, 2024 because no bids other than the Stalking Horse Bid of the Buyer was received by the Bid Deadline; and the Trustee having determined that the Buyer has submitted the highest or otherwise best bid for the Assets and determined that the Buyer is the Successful Bidder and that there is ~~the~~no Back-Up Bidder (as defined in the Bidding Procedures), in accordance with the Bidding Procedures; and the Court having conducted a hearing on the Motion (the "**Sale Hearing**"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion,

---

[4] All references herein to the Bidding Procedures Order shall also be deemed to be references to the bidding procedures approved thereby (the "~~"~~"**Bidding Procedures**"~~").~~").

the Asset Purchase Agreement, and any and all objections to the Sale and the Transaction Documents filed in accordance with the Bidding Procedures Order and all responses thereto; and the Court having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing and in the Declaration of J. Scott Victor of SSG, the Trustee's Investment Bankers submitted in support of the Sale (the "**Victor Declaration**"); and it appearing that due notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, and the Sale, submitted in support of the Sale (the "**Victor Declaration**") and the Declaration of the Trustee submitted in support of the Sale (the "**Trustee Declaration**"); and upon consideration of the Hawk Settlement, which provided for, among other things, Buyer's stalking horse credit bid (the "**Credit Bid**") of $150 million (the "**Credit Bid Amount**") for the Assets, the Sale of the Assets to the Buyer, and the stay and eventual dismissal with prejudice of the Pending Litigation Matters (as defined in the Settlement Agreement), as further described in the Motion of William A. Homony in his Capacity as Chapter 11 Trustee for Entry of an Order Approving a Settlement Agreement and Mutual Release with Hawk Investment Holdings, Ltd., as Collateral Agent for the Secured Noteholders of SeeCubic, Inc., Pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a) [Docket No. 630] (the "**9019 Motion**"); and upon the consideration of the Order approving the 9019 Motion, entered on June 7, 2024 [Docket No. 653] (the "**9019 Order**"); and it appearing that due notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, the Sale, and all relief related thereto, has been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their respective estates, stakeholders, and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the

relief granted herein; and after due deliberation, it is hereby FOUND, CONCLUDED, AND

DETERMINED THAT:

### Jurisdiction, Venue, and Final Order

A.   ~~A.~~ This Court has jurisdiction to hear and determine the Motion pursuant to 28

U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper

in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.   B.   The statutory predicates for the relief sought in the Motion are sections

105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

~~B.~~C.   This Sale Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent

necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made

applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay

in the implementation of this Sale Order, and expressly directs entry of judgment as set forth

herein.

~~C.~~D.   ~~C.~~ The findings of fact and conclusions of law set forth herein, in addition to

any findings of fact and conclusions of law stated by the Court at the Sale Hearing, constitute the

Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable

to ~~this proceeding~~the Motion pursuant to Bankruptcy Rule 9014. To the extent any ~~of the following~~

findings of fact ~~constitute~~later shall be determined to be conclusions of law, ~~they are adopted as

such~~it shall be so deemed, and to the extent any conclusion of law later shall be determined to be

a finding of fact, it shall be so deemed.

4

**Notice of the Motion, Auction, Sale Hearing, Asset Purchase Agreement ~~and~~, Sale Hearing and the Cure Payments**

~~D.~~E.    ~~D.~~    As evidenced by the affidavits of service and publication previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion and the relief requested therein, the Auction, the Sale Hearing, the Asset Purchase Agreement, and the Sale has been provided by the Trustee in accordance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014. The disclosures made by the Trustee concerning the Auction, the Asset Purchase Agreement, the Sale, and the Sale Hearing were good, complete, and adequate. The Trustee has complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing, the Asset Purchase Agreement, and the Sale as required by the Bidding Procedures Order. The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the Asset Purchase Agreement, or the Sale is required. ~~With respect to entities whose identities are not reasonably ascertained by the Trustee, publication of the Sale Notice (as defined in the Motion) was sufficient and reasonably calculated under the circumstances to reach such entities.~~

~~E.~~F.    ~~E.~~    A reasonable opportunity to object or to be heard regarding the relief requested in the Motion and of the Sale Hearing was afforded to all interested persons and entities.

~~F.~~G.    ~~F.~~    In accordance with the Bidding Procedures Order, the Trustee has ~~served~~filed a ~~notice of their intent to assume and assign the Assigned~~Notice of Assumption or Assignment of Executory Contracts and ~~of the Cure Payments upon each counterparty to an Assigned Contract~~Unexpired Leases. The service and provision of such notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect

5

of the assumption and assignment of the Assigned Contracts or establishing a Cure Payment for ~~the respective Assigned Contracts. Counterparties to the Assigned Contracts have had an adequate opportunity to object to the assumption and assignment of the applicable Assigned Contracts and the Cure Payments set forth in the notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the counterparty from accepting performance by, or rendering performance to, the Buyer (or its designee) for purposes of section 365(c)(1) of the Bankruptcy Code). All objections, responses, or requests for adequate assurance, if any, have been resolved, overruled, or denied, as applicable.~~any Assigned Contracts.

### **Highest and Best Offer**

~~G.~~H.    ~~G.~~    As demonstrated by the Victor Declaration and the Trustee Declaration, the evidence proffered or adduced at the Sale Hearing, and the representations of counsel made on the record at the Sale Hearing, the Trustee conducted a sale process in accordance with, and ~~have~~has, along with the Buyer, complied in all respects with, the Bidding Procedures Order and afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Assets and assume ~~the~~any Assumed Liabilities.

~~H.~~I.    ~~H.~~    The Trustee and his advisors engaged in a robust and extensive marketing and sale process in accordance with the Bidding Procedures Order and the sound exercise of the Trustee's business judgment.

~~I.~~J.    ~~I.~~    The Trustee and the Buyer have negotiated and undertaken their roles leading to the entry into the Asset Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner and at arms' length.

4918-6251-1619 v2

J.K.    J.    The Trustee conducted a fair and open sale process and the sale process, and the Bidding Procedures, and the Auction were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any entity that either expressed an interest in acquiring the Business or Assets, or who the Trustee believed may have had an interest in acquiring the Assets, to make an offer to purchase the Debtors' Assets.

K.L.    K.    The sale process conducted by the Trustee pursuant to the Bidding Procedures Order and the Bidding Procedures resulted in the highest or otherwise best value for the Business or Assets for the Trustee and its estate, itsthe Debtors' estates, their creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result.

L.M.    L.    The Trustee has demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of its obligations under the Asset Purchase Agreement.  The consummation of the Sale contemplated by the Asset Purchase Agreement is in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

N.    M.    The Buyer is a secured creditor of the Sellers. Hawk filed a proof of claim (the "**Proof of Claim**") asserting a secured claim held by Buyer secured by substantially all of the Debtors' assets, which the Debtors owed to the Buyer.[5] The Proof of Claim asserted that the Debtors were indebted to SeeCubic in the amount of no less than $178,432,069.68, subject to additional accruing interest, fees, and expenses. The Proof of Claim was allowed in the amount of $180,000,000 as part of the Hawk Settlement and under the 9019 Order. Under the Hawk

---

[5]    Hawk was authorized to file the Proof of Claim on behalf of SeeCubic, pursuant to authority granted to it by the power of attorney included in that certain Guarantee and Collateral Agreement between SeeCubic and Hawk, dated as of June 11, 2022.

Settlement, approved by this Court, Buyer was permitted to credit bid up to $150,000,000 of its allowed, secured claim.

M.O.   The Trustee has also determined, in a valid and sound exercise of their business judgment that the next highest or otherwise best that no other Qualified Bid (as defined in the Bidding Procedures) (the "was submitted and therefore there is no Back-Up Bid") for all or substantially all of the Assets was _____, as the Back-Up Bidder.

N.P.   N.   The consummation of the Sale outside a plan of reorganization pursuant to the Asset Purchase Agreement and the transactions contemplated thereby neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the DebtorDebtors. The Sale does not constitute a *sub rosa* plan for which approval has been sought without the protections that a disclosure statement would afford.

O.Q.   O.   Entry of an order approving the Asset Purchase Agreement, and all the provisions thereof, is a necessary condition precedent to Buyer's consummation of the Sale, as set forth in and pursuant to the Asset Purchase Agreement.

R.   **Credit Bid**.  Pursuant to the Asset Purchase Agreement, and as authorized by the Bidding Procedures Order and sections 363(b) and 363(k) of the Bankruptcy Code, the Buyer, in addition to the other consideration offered under the Asset Purchase Agreement, credit bid an amount equal to the Credit Bid Amount.  With respect to the Credit Bid, the Court finds and determines that:

i.   The Credit Bid was a valid and proper offer pursuant to the Bidding Procedures Order;

8

ii.        There is no cause to limit the Credit Bid Amount pursuant to section 363(k) of the Bankruptcy Code; and

iii.        The Trustee valued each dollar of the Credit Bid Amount as equivalent to one dollar of cash, and such valuation was appropriate and represents a reasonable exercise of the Trustee's business judgment in accordance with the Bid Procedures Order.

**Personal Identifiable Information**

P.S.    P.        The Debtors do not use personal information and therefore a confidential information ombudsman is not necessary or required.

**Good Faith of Buyer**

Q.T.    Q.        TheThe Asset Purchase Agreement and the consideration to be paid by the Buyer under the Asset Purchase Agreement waswere negotiated, proposed, and entered into, at arm's-length, in good faith and without collusion pursuant to section 363(m) of the Bankruptcy Code and constitutes reasonably equivalent value and fair and adequate consideration for the Assets. The Buyer is, therefore, entitled to the full protections of section 363(m) and otherwise has proceeded in good faith in all respects in connection with the Chapter 11 Cases and the Sale. Specifically: (i) the Buyer recognizes that the Trustee was free to deal with any other party interested in purchasing the Business or Assets; (ii) the Buyer complied in all respects with the provisions in the Bidding Procedures Order in negotiating and entering into the Transaction Documents, and the transactions described therein comply with the Bidding Procedures Order; (iii) the Buyer agreed to subject any bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments made by the Buyer in connection with the Sale have been disclosed in the Asset Purchase Agreement; (v) no common identity of directors, officers, or controlling member exists among the Buyer, the Trustee, and the Debtors; (vi) the negotiation and

9

execution of the Asset Purchase Agreement and the other Transaction Documents were at arm's-length and in good faith, and at all times each of the Buyer and the Trustee were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person with respect to the Sale process or Auction. The Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents.

R.U.   The terms and conditions set forth in the Asset Purchase Agreement are fair and reasonable under the circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtors or their creditors under any applicable laws. Neither the Trustee, the Buyer, nor any affiliate of either have engaged in any action or inaction that would cause or permit the Asset Purchase Agreement or transaction thereunder to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.

V.   R.   The Sale does not constitute an avoidable transfer under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law and does not and will not subject the Buyer to any liability whatsoever with respect to the Debtors' operation prior to the Closing.

S.W.   The Debtors, through the Trustee, and the Buyer, through its management, boards of directors, members, officers, directors, managers, employees, agents, and representatives, have acted in good faith. The Asset Purchase Agreement and the other Transaction Documents, and each of the transactions contemplated therein, were negotiated, proposed, and entered into by the Trustee and the Buyer in good faith, without collusion or fraud, and from arm's-length bargaining positions. Neither the Buyer nor any of its affiliates, officers, directors, members, partners, principals, shareholders (or equivalent), or any of their respective representatives, successors, or

10

assigns is an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor. The Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all the protections afforded thereby.

**No Fraudulent Transfer**

T.X.    S.    The consideration provided by the Buyer pursuant to the Asset Purchase Agreement for its purchase of the Assets and the assumption of the Assumed Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, any state, territory, possession, or the Commonwealth of Pennsylvania. The Trustee, on behalf of the Debtors and their estates, waives and relinquishes any and all rights to assert in any forum whatsoever that his entry into or consummation of the Asset Purchase Agreement constituted a fraudulent conveyance or fraudulent transfer under any of the foregoing statutory regimes. None of the Debtors, the Buyer, nor any of their respective affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, attorneys, successors, or assigns have engaged in any conduct that would cause or permit the consummation of the Sale or other transactions contemplated by the Asset Purchase Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

T.

**Buyer Not Successor**

U.Y.    Neither the Buyer nor its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents,

11

representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies, or partners (each, a "**Buyer Party**" and collectively, the "**Buyer Parties**") is a continuation of the Debtors or ~~its estate~~their estates and no Buyer Party is holding itself out to the public as a continuation of the Debtors or ~~its estate~~their estates simply by closing the Sale, and the Sale does not amount to a consolidation, merger, or de facto merger of the Buyer (or any other Buyer Party) and the ~~Debtors~~Debtors' estates.

Z.      The (i) transfer of the Assets to the Buyer, will not subject the Buyer or any of its affiliates or designees to any liability whatsoever that arises prior to the Closing or by any reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, any theory of antitrust, successor, transferee, derivative, or vicarious liability, or any similar theory and/or applicable state or federal law or otherwise.

**Validity of Transfer**

~~V.~~AA.  ~~U.~~     The Trustee has authorized the execution and delivery of the Asset Purchase Agreement and the Sale of the Assets to the Buyer (or its designee). ~~The has all of the power and authority necessary to~~Pursuant to, among other things, the Bankruptcy Code, including sections 105, 1106, 1107, and 1108, the Order entered on January 5, 2024, which, among other things, granted the motion seeking the appointment of a Chapter 11 trustee, and the Order Approving Appointment of Trustee [Docket No. 558], the Trustee, on behalf of each Debtor, has all of the power and authority necessary to (i) execute and deliver the Asset Purchase Agreement and all other documents consummate the Sale, and (ii) consummate the Sale, and no further consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required

for the ~~Debtor~~Trustee to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement. The Assets constitute property of the Debtors' respective estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

BB.    The Trustee has demonstrated a sufficient basis and compelling circumstances requiring him to (i) enter into the Asset Purchase Agreement, and (ii) sell the Assets, and such actions are an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtors, their estates, and their creditors.  Such business reasons include that (i) the Asset Purchase Agreement constitutes the highest and best offer for the Assets; (ii) the Asset Purchase Agreement presents the best opportunity to maximize and realize the value of the Assets for the benefit of the Debtors, their estates, and their creditors; and (iii) unless the Sale contemplated by the Asset Purchase Agreement is concluded expeditiously, creditor recoveries are likely to be adversely affected.

CC.    The Asset Purchase Agreement is a valid and binding contract between the Trustee and the Buyer and shall be enforceable pursuant to its terms.

**Section 363(f) of the Bankruptcy Code is Satisfied**

~~W.~~DD. ~~V.~~    The Sale of the Assets to the Buyer (or its designee) ~~and the assumption and assignment to the Buyer of the Assigned Contracts~~ under the terms of the Asset Purchase Agreement meets the applicable provisions of section 363(f) of the Bankruptcy Code such that the Sale of the Assets will be free and clear of any and all liens, claims, encumbrances, and interests, and will not subject any Buyer Party to any liability for any liens, claims, encumbrances, and interests whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability), except as expressly provided in the Asset Purchase Agreement

13

with respect to the Assumed Liabilities (as defined in the Asset Purchase Agreement). All holders of liens, claims, encumbrances, and interests who did not object, or withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of liens, claims, encumbrances, and interests are adequately protected thereby satisfying section 363(e) of the Bankruptcy Code by having their liens, claims, encumbrances, and interests, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they assert liens, claims, encumbrances, and interests, or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable. Those holders of claims who did object and that have an interest in the Assets fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

EE.    ~~W.~~    The transfer of the Assets to the Buyer (or its designee) under the Asset Purchase Agreement will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Assets free and clear of all liens, claims, encumbrances, and interests, except as expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities. The Buyer asserts that it will not consummate the transaction under the Asset Purchase Agreement unless the Asset Purchase Agreement specifically provides, and this Court specifically orders, that the Buyer, its property, its successors or assigns and their respective property, and the Assets will not have any liability whatsoever with respect to, or be required to satisfy in any manner (whether at law or in equity, whether by payment, setoff, or otherwise), directly or indirectly, any claim or lien, or any successor or transferee ability for either of the Debtors other than the Assumed Liabilities.

14

4918-6251-1619 v2

X.FF.  The Trustee may sell interests in the Assets free and clear of all liens, claims, encumbrances, and interests because, in each case, one or more ~~of the~~ standards set forth in section 363(f) have been satisfied. The Buyer would not have entered into the ~~Transaction Documents~~Asset Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Sale ~~and the assumption and assignment of the Assigned Contracts,~~ (i) if the transfer of the Assets were not free and clear of all ~~interest~~liens, claims, encumbrances, and interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory and/or applicable state or federal law or otherwise or (ii) if the Buyer or any of its affiliates or designees would, or in the future could, be liable for any interests, including, without limitation, rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, in each case subject only to the Assumed Liabilities. Not transferring the Assets free and clear of all interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise (subject only to the Assumed Liabilities), would adversely impact the Trustee's efforts to maximize the value of ~~its estate~~the Debtors' estates.

### No **Assumption** ~~and~~or **Assignment** of ~~the~~ **Assigned Contracts**

X.    The ~~assumption and~~ Sellers are not assuming and the Buyer is not taking an assignment of ~~the Assigned Contracts~~ any executory contracts or unexpired leases pursuant to the ~~terms of this Sale Order are integral to the~~ Asset Purchase Agreement, therefore there are ~~in the best interests of the Debtors and their respective estates, creditors, and other parties in interest, and represent the reasonable exercise of sound business judgment by~~ no Assigned Contracts and the Trustee~~.~~

Y.GG.   Y.      The Trustee has met retains all the requirements of section 365(b)rights to assume or reject all of the Debtors remaining executory contracts or unexpired leases under section 365 of the Bankruptcy Code for each of the Assigned Contracts. The Buyer (or its designee) and/or the Debtors have (i) cured and/or provided adequate assurance of prompt cure of any default existing prior to the Closing under all of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Assigned Contracts, and (iii) provided adequate assurance of future performance, all within the meaning of sections 365(b)(1)(B) and (C) of the Bankruptcy Code. The Buyer has provided adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(b)(2)(B) and in accordance with the Bidding Procedures to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts..

Z.HH.   Z.      At any time prior to the rejection of an executory contract or unexpired lease, the Debtors shall have the right, in accordance with the Bidding Procedures Order, to serve a Supplemental Assumption Notice upon any non-Debtor counterparty thereto indicating the Debtor'sDebtors' intent to assume and assign such executory contract or unexpired lease. The objection deadline for all Assigned Contracts, other than those subject to a Supplemental Assumption Notice, lapsed on XXXXX, 2024. Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed in any Supplemental Assumption Notice with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payment, the correct Cure Payment alleged by the objecting

16

4918-6251-1619 v2

counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by, counsel to the Trustee~~.~~ and counsel to the Buyer. If the parties cannot agree on a resolution, the Trustee will seek an expedited hearing before the Court to determine the Cure Payment and approve the assumption and assignment to Buyer. If there is no objection prior to the applicable objection deadline, then the counterparties will be deemed to have consented to the assumption and assignment to Buyer and the Cure Payment, and such assumption and assignment to Buyer and the Cure Payment shall be deemed approved by this Sale Order without further order of this Court.

AA.II.  AA.    The (i) transfer of the Assets to the Buyer ~~and (ii) assignment to the Buyer of the Assigned Contracts~~, will not subject the Buyer or any of its affiliates or designees to any liability whatsoever that arises prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the Commonwealth of Pennsylvania, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, any theory of antitrust, successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, except for the Assumed Liabilities.

**Consummation of the Sale**

BB.JJ.  BB.    Based on the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing, the ~~sale~~Sale of the Assets must be approved and consummated promptly to preserve the value of the Assets. Time, therefore, is of the essence in effectuating the Asset Purchase Agreement. As such, the Trustee and the Buyer intend to close the ~~sale~~Sale of the Assets as soon as reasonably practicable. The Trustee has demonstrated (i) compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and

17

consummation of the Asset Purchase Agreement and the Sale under Bankruptcy Code section 363(b) and (ii) that the Sale is fair, reasonable, and in the best interests of the Debtors' estates and creditors. Accordingly, there is sufficient cause to waive the stay provided in the Bankruptcy Rules 6004(h) and 6006(d).

KK.    The Trustee has demonstrated that the Assets Purchase Agreement and the closing thereon is necessary, appropriate, and presents the best opportunity to realize the value of the Assets and maximize the value of the Debtors' estates. The Sale constitutes a reasonable and sound exercise of the Trustee's business judgment and its powers and duties under applicable law and should be approved.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.    1.    The Motion is GRANTED to the extentand approved as set forth herein.

2.    2.    AllAny and all objections to or reservation of rights with respect to the Motion, the Sale, or the other related relief requested therein that have not been withdrawn or resolved are overruled. on the merits with prejudice. All persons and entities who did not object or withdraw their objections to the Motion, Sale, or other related relief are deemed to have consented pursuant toto the relief granted herein, including for purposes of section 363(f)(2) of the Bankruptcy Code.

3.    3.    The Asset Purchase Agreement and the other Transaction Documents, and all terms and conditions thereof, are hereby approved in their entirety, and the Trustee is authorized to take any and all steps to consummate the Sale under and in accordance with the terms and conditions of the Asset Purchase Agreement, and attain the Closing.

4. ~~The Back-Up Bidder is hereby approved as the Back-Up Bidder (as defined in the Bidding Procedures), and the Back-Up Bid is hereby approved and authorized as the Back-Up Bid (as defined in the Bidding Procedures). To the extent necessary, the terms and conditions of the Back-Up Bid will be fully determined and approved at a later date pursuant to a separate sale order consistent with the terms of the Back-Up Bid.~~

**Transfer of the Assets as set forth in the Asset Purchase Agreement**

4. ~~5.    The Trustee is authorized~~The Asset Purchase Agreement, all of the terms and conditions thereof, and the transactions contemplated thereby, including the Sale, are approved in all respects.  The failure specifically to include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intention of the Court that the Asset Purchase Agreement and the Sale be authorized and approved in their entireties.  The Sale of the Assets by the Trustee to the Buyer shall be a legal, valid, and effective transfer of the Assets.  The consummation of the Sale of the Assets is hereby approved and authorized under section 363(b) of the Bankruptcy Code.

~~4.~~5.    Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Trustee is authorized, empowered, and directed to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Sale in accordance with the terms and conditions set forth in the Asset Purchase Agreement, Transaction Documents and this Sale Order, and (b) ~~assume and assign any and all Assigned Contracts, and (c)~~ take all further actions and execute ~~and,~~ deliver, perform under, and implement the Asset Purchase Agreement, the Transaction Documents and any and all additional instruments and documents that may be necessary or appropriate to implement or perform any of the obligations contemplated by the Asset Purchase Agreement and

4918-6251-1619 v2

the other Transaction Documents and ~~consummate~~relating to the Sale in accordance with the terms thereof, all without further order of the Court.

~~5.~~6.    ~~6.~~    The Buyer is not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities (as defined in the Asset Purchase Agreement).

~~6.~~7.    ~~7.~~    All persons ~~and~~, entities, and interested parties are prohibited and enjoined from taking any action ~~to~~that would in any way adversely affect or interfere with, or which would be inconsistent with, the ability of the Trustee to transfer the Assets to the Buyer (or its designee) in accordance with the Asset Purchase Agreement, the other Transaction Documents, and this Sale Order.

~~7.~~8.    ~~8.~~    At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Assets shall be immediately vested in the Buyer (or its designee) pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code. Such transfer shall constitute a legal, valid, enforceable, and effective transfer of the Assets. All persons or entities, presently or at or after the Closing, in possession of some or all of the Assets, are directed to surrender possession of any and all portions of the Assets to the Buyer (or its designee) or its respective designees on the Closing or at such time thereafter as the Buyer (or its designee) may request.

9.    ~~9.~~    The Buyer is hereby authorized, in connection with the consummation of the Sale, to allocate the Assets and Assumed Liabilities among its affiliates, designees, assignees, or successors in a manner as it, in its sole discretion, deems appropriate, and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Assets to its affiliates, designees, assignees, or successors with all of the rights and protections accorded under this Order and the Asset Purchase Agreement, and the Trustee shall cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing.

20

10.    To the maximum extent permitted by applicable law, the Buyer (or its designee) shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval with respect to the Assets (the "**Licenses**"), and all Licenses are deemed to have been transferred to the Buyer (or its designee) as of the Closing Date. To the extent any Licenses cannot be transferred to the Buyer (or its designee) in accordance with the prior sentence, such Licenses shall be in effect while the Buyer (or its designee) works promptly and diligently to apply for and secure all necessary governmental and other approvals for the transfer or issuance of new Licenses to the Buyer.

8.11.    This Sale Order (a) shall be effective as a determination that, as of the Closing, (i) no claims other than the Assumed Liabilities will be assertable against any Buyer Party or any of its~~their~~ respective assets (including, without limitation, the Assets), property, affiliates, successors, or assigns, (ii) the Assets shall have been transferred to the Buyer (or its designee) free and clear of all liens, claims, encumbrances, and interests, subject only to the Assumed Liabilities, and (iii) the conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and

the other Transaction Documents. The Assets are sold free and clear of any reclamation rights. All liens, claims, encumbrances, and interests on the Assets shall attach to the proceeds of the Sale ultimately attributable to the property against which such liens, claims, encumbrances, and interests applied or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such liens, claims, encumbrances, and interests applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or ~~its estate~~their estates, as applicable, or as otherwise provided herein.

~~9.~~12.    Notwithstanding anything to the contrary in this Order, the Asset Purchase Agreement, or any related agreements, documents, or other instruments, or otherwise all cash proceeds of the Sale, up to the amount of the Secured Claims (as defined in the Bidding Procedures) shall be paid at the time of Closing to the Secured Creditors until such time as all Secured Claims have been fully repaid and satisfied in full~~.~~, subject to the terms of the Hawk Settlement and the Carve-Out (as defined in the Bidding Procedures).

**13.    ~~10.~~    Except as otherwise provided in the Asset Purchase Agreement (including with respect to the Assumed Liabilities), all persons and entities (and their respective successors and assigns), including, but not limited to, all debt ~~security~~ holders, equity ~~security~~ holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding claims arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, and the ownership, sale, or operation of the Assets prior to Closing or the transfer of the Assets to the Buyer (or its designee~~),~~) (collectively, the "Enjoined Parties," and such claims, the "Released Claims"), are hereby forever barred, estopped, and permanently enjoined from asserting such claims against any Buyer Party ~~and its property.~~**

22

Following the Closing, no holder of any claim or interest shall interfere with, **their successors and assigns, their respective property, and the Assets (collectively, and together with the Debtors and Trustee, the "Protected Parties"). All persons and entities are forever enjoined and prohibited from taking any action to (or that could) adversely affect or interfere with the ability of the Debtors or the Trustee to transfer the Assets to the Buyer (or its designee) in accordance with the terms of the Asset Purchase Agreement and this Sale Order.**

**14.     No Enjoined Parties may commence or pursue against any Protected Party any Released Claim or Cause of Action without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such Claim or Cause of Action against any such Protected Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible, shall have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.**

**~~10.~~15.  Following the Closing, no person or entity, including the holder of a lien, claim, right, encumbrance or interest, shall take or cause to be taken any action that would adversely affect or interfere with (a)** the Buyer's (or its designee's) title to or use and enjoyment of the Assets based on or related to any such claim or interest, or based on any action the Debtors **(or the Trustee)** may take in their respective Chapter 11 case**, or (b) the Trustee to take any and all other actions necessary or appropriate to execute, deliver, perform under, consummate, implement, and effectuate the Asset Purchase Agreement and this Order**.

4918-6251-1619 v2

16.    11.    **All persons and entities having liens, claims, rights, encumbrances, or interests of any kind or nature whatsoever against the Assets shall be forever barred, estopped, and permanently enjoined from creating, perfecting, pursuing, enforcing, attaching, collecting, recovering, or asserting such liens, claims, rights, encumbrances, or interests against the Buyer (or its designee), any Buyer Party or any of their respective assets (including, without limitation, the Assets), property, affiliates, successors, or assigns.**

11.17.  If any person or entity that has filed financing statements, mortgages, mechanic's claims, *lis pendens*, or other documents or agreements evidencing claims against the Debtors or in the Assets shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all liens, claims, encumbrances, and interests that the person or entity has with respect to the Debtors or the Assets or otherwise, then only with regard to the Assets that are purchased by the Buyer (or its designee) pursuant to the Asset Purchase Agreement and this Sale Order, (a) the Trustee and/or Buyer is hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets, (b) the Buyer (or its designee) is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, interests, and encumbrances against the Buyer and the Assets, and (c) upon consummation of the Sale, the Buyer (or its designee) may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all liens, claims, encumbrances and interests that are extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the

24

Assets. This Sale Order is deemed to be in a recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the Sale and assignment of the Assets free and clear of liens, claims, encumbrances and interests shall be self-executing and neither the Trustee nor the Buyer (or its designee) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

### No Successor or Transferee Liability

12.18. 12.    No Buyer Party shall be deemed, as a result of any action taken in connection with the Asset Purchase Agreement, the consummation of the Sale contemplated by the Asset Purchase Agreement, or the transfer, operation, or use of the Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Buyer, (or its designee), with respect to any Assumed Liabilities), (b) have, de facto or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act of 1974 ("**ERISA**"), tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation.

13.19. 13.    Other than as expressly set forth in the Asset Purchase Agreement (including with respect to the Assumed Liabilities), no Buyer Party shall have any responsibility for (a) any liability or other obligation of the Debtors or related to the Assets or (b) any claims

25

against the Debtors, or any of their predecessors or affiliates. Except as expressly provided in the Asset Purchase Agreement (including with respect to the Assumed Liabilities) with respect to the Buyer, no Buyer Party shall have any liability whatsoever with respect to the Debtors operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as defined herein, "**Successor Liability**") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Assets or the Assumed Liabilities prior to the Closing or in respect of pre-Closing periods or (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation or other employee benefits which is or has been sponsored, maintained or contributed to by the Debtors or with respect to which the Debtors have any liability, whether or not contingent, including, without limitation, any "multiemployer plan" (as defined in Section 3(37) of ERISA) or "pension plan" (as defined in Section 3(2) of ERISA) to which the Debtors have at any time contributed, or had any obligation to contribute. Except to the extent expressly included in the Assumed Liabilities with respect to the Buyer or as otherwise expressly set forth in the Asset Purchase Agreement, no Buyer Party shall have any liability or obligation under any applicable law, including, without limitation, (a) the WARN Act (29 U.S.C. §§ 2101 et seq.), (b) the Comprehensive Environmental Response Compensation and Liability Act, (c) the Age Discrimination and Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of

4918-6251-1619 v2

1973 (as amended), (e) the National Labor Relations Act, 29 U.S.C. § 151 et seq. (the "**NLRA**"), or (f) any foreign, federal, state, or local labor, employment or environmental law, by virtue of the Buyer's purchase of the Assets, assumption of the Assumed Liabilities, or hiring of certain employees of the Debtors pursuant to the terms of the Asset Purchase Agreement. Without limiting the foregoing, no Buyer Party shall have any liability or obligation with respect to any environmental liabilities of the Debtors or any environmental liabilities associated with the Assets except to the extent they are Assumed Liabilities set forth in the Asset Purchase Agreement.

14.20.  14.  Immediately prior to the Closing, the Buyer was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or controlling members existed between the Buyer and the Debtors.

15.21.  15.  Effective upon the Closing, to the greatest extent under applicable law, other than with respect to the Assumed Liabilities, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against any Buyer Party or their respective assets (including, without limitation, the Assets), property, affiliates, successors, or assigns, with respect to any (a) claim in these Chapter 11 cases or in connection with or related to the Sale or the Debtors or (b) Successor Liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien, claim, interest, or encumbrance; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply

27

with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, failing, or refusing to renew any license, permit, or authorization to operate any business in connection with the Assets or conduct any of the businesses operated with respect to such assets., or (vii) attempting or encouraging any other person to do any of the foregoing, or taking any action in furtherance thereof. For the avoidance of doubt, nothing in this paragraph shall affect the post-Closing rights and remedies of counterparties to Assigned Contracts.

**Good Faith of Buyer**

16.22.   16.   The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections thereof.   The Sale contemplated by the Asset Purchase Agreement is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code. The Buyer is a good faith purchaser of the Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including, without limitation, the assumption and assignment of the Assigned Contracts), unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal.) to the Buyer.

17.23.   17.   Neither the Trustee, the Debtors, nor theany Buyer haveParty has engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. or otherwise.  The consideration provided by the Buyer for the Assets represents the highest or otherwise best bid received for the

28

Assets and, therefore, is fair and reasonable and is not less than the value of such assets, and the transaction may not be avoided under section 363(n) of the Bankruptcy Code.

### Supplemental Assumption and Assignment of Assigned Contracts

18.      The Trustee is authorized and directed at the Closing to assume and assign each of the Assigned Contracts to the Buyer (or its designee) pursuant to sections 105(a) and 365 of the Bankruptcy Code and to execute and deliver to the Buyer (or its designee) such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyer (or its designee). The payment of the applicable Cure Payments (if any), the provision of adequate assurance by the Buyer, as applicable, that it will promptly cure any non-monetary defaults existing prior to Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Buyer under the Assigned Contracts shall (a) effect a cure of all defaults existing thereunder as of the Closing and (b) compensate for any actual pecuniary loss to such counterparty resulting from such default.

18.24.  19.      PursuantIf the Trustee serves a Supplemental Assumption Notice upon any non-Debtor counterparty to any executory contract or unexpired lease indicating the Debtors' intent to assume and assign such executory contract or unexpired lease, pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Payments, the provision of adequate assurance by the Buyer, (or its designee), as applicable, that it will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Buyer under the Assigned Contracts, the Assigned Contracts to be assumed and assigned under the Asset Purchase Agreement shall be assigned and transferred to and remain in full force and effect for the benefit of, the Buyer (or its designee) notwithstanding any provision in the contracts or other restrictions prohibiting their

29

assignment or transfer. Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract to the Buyer (or its designee) or allow the counterparty to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract to the Buyer (or its designee), constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer (or its designee) of the Assigned Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer (or its designee) shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Assigned Contracts, and such Assigned Contracts shall remain in full force and effect for the benefit of the Buyer (or its designee). Each counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or any Buyer Party or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing, including, without limitation, any breach related to or arising out of change-in-control provisions in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts and (b) asserting against any Buyer Party (or its respective property, including, without limitation, the Assets) any claim, counterclaim, defense, breach, condition, or setoff asserted, or assertable against the Debtors existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.

19.25.  20.  Upon the Closing and the payment of the relevant Cure Payments, if any, the provision of adequate assurance by the Debtors or the Buyer, (or its designee), as applicable,

that it will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Buyer (or its designee) under the Assigned Contracts, the Buyer (or its designee) shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assigned Contracts. The failure of the Debtors or the Buyer (or its designee) to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Buyer (or its designee), as the case may be, to enforce every term and condition of such Assigned Contract. Any party that may have had the right to consent to the assignment of any Assigned Contract is deemed to have consented for the purposes of section 365(e)(2)(A) of the Bankruptcy Code.

20.26. 21.    All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing after the Sale Objection Deadline and prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing, or as soon thereafter as reasonably practicable.

21.27. 22.    The assignments of each of the Assigned Contracts are made in good faith under sections 363(b) and 363(m) of the Bankruptcy Code.

28.    Nothing in this Order, the Sale Motion, or in any notice or any other document is or shall be deemed an admission by the Trustee, the Debtors or the Buyer (or its designee) that any Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

31

29.    The failure of the Trustee, the Debtors or the Buyer (or its designee) to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions of their respective rights to enforce every term and condition of the Assigned Contracts.

**Other Miscellaneous Provisions**

22.30.  23.    Buyer (or its designee) shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its rights or remedies under the Asset Purchase Agreement or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, *provided*, *however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

23.31.  24.    The terms and provisions of the Asset Purchase Agreement, the other Transaction Documents, and this Sale Order, shall be binding in all respects upon the Debtors, their respective estates, all creditors of (whether known or unknown) and holders of equity or member interests in the Debtors, any holders of claims against or on all or any portion of the Assets, all counterparties to the Assigned Contracts, and the Buyer, (or its designee), and all of their respective successors and assigns including, but not limited to, any subsequent trustee(s), examiner(s), or receiver(s) appointed in any of the Debtors' Chapter 11 cases or upon conversion to Chapter 7 under the Bankruptcy Code, as to which trustee(s), examiner(s), or receiver(s) such terms and provisions likewise shall be binding. The Asset Purchase Agreement shall not be subject to rejection or avoidance by the Trustee or Debtors, their respective estates, their creditors, members, or any trustee(s), examiner(s), or receiver(s).) that may currently exist or are hereinafter appointed.

32.    25.   Buyer (or any Designated Buyer) shall indemnify and hold harmless the Sellers, the Sellers' bankruptcy estates, the Trustee and his Court approved professionals, their members, officers, directors and/or employees for any claim or cause of action alleging that any Intellectual Property of any third party, including but not limited to the Rembrandt Intellectual Property, has been improperly transferred or sold to the Buyer (or any Designated Buyer) as part of the Transferred Assets at Closing through the sale pursuant to this Order including the defense thereof and the indemnity provided for herein shall be broadly construed to include but shall not be limited to the reimbursement of all costs, professional fees and expenses including legal fees, when incurred by the Trustee, and all expert fees, court costs, and expenses and, in the event that the Sellers' bankruptcy estates, the Trustee or his Court approved professionals, their members, officers, directors and/or employees are sued by any third party as a consequence of (i) the Closing, (ii) the transfer of the Transferred Assets, or (iii) the utilization of the Transferred Assets, including but not limited to, the Rembrandt Intellectual Property, Buyer (or any Designated Buyer) will immediately enter a defense on behalf of the Sellers, the Sellers' bankruptcy estates, the Trustee or his Court approved professionals, their members, officers, directors and/or employees and Buyers (or any Designated Buyer) may join any lawsuit with any other proceeding involving the same or affiliated plaintiffs. Notwithstanding any other provision contained herein, paragraph 34 shall survive Closing. Buyer (or any Designated Buyer) shall have the right to assume control of or direct the defense against any claim, cause of action, or lawsuit covered by paragraph 34 and to select counsel to represent Sellers, the Sellers' bankruptcy estates, the Trustee and his Court approved professionals, their members, officers, directors, and/or employees (the "**Indemnified Parties**") with respect to any claim, cause of action, or lawsuit covered by this paragraph 34 and shall use its reasonable efforts in any such defense and the Indemnified Parties shall have the right

33

to approve or reject any counsel proposed by Buyer (or any Designated Buyer), which approval shall not be unreasonably withheld and Sellers, the Sellers' bankruptcy estates, the Trustee and his Court approved professionals, their members, officers, directors, and/or employees shall use reasonable efforts to cooperate with Buyer (or any Designated Buyer) and its chosen counsel in the defense of any such claim, cause of action, or lawsuit.

33.     For the avoidance of doubt, and notwithstanding any other provision in this Sale Order, all terms of the Hawk Settlement shall remain in full force and effect through and after the entry of this Sale Order and the occurrence of the Closing, including, but not limited to, the Releases included in Section 7 of the Hawk Settlement to the fullest extent available under applicable law and the obligations in Section 8 of the Hawk Settlement to dismiss the Pending Litigation Matters (as defined in the Hawk Settlement). Nothing herein changes or modifies the Releases included in the Hawk Settlement which are approved in their entirely and shall become effective upon the occurrence of the Closing.

24.34.  The terms and provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of an order which may be entered: (a) confirming any chapter 11 plan in any of this Chapter 11 case; (b) converting the Chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 case; or (d) pursuant to which this Court abstains from hearing the Chapter 11 case. The terms and provisions of this Sale Order, notwithstanding the entry of any such orders described in (a)-(d) above, shall continue in this Chapter 11 caseCase, or following dismissal of thisthe Chapter 11 caseCases.

25.35.  26.    Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept (i) this Order in lieu of any document necessary to consummate the transactions contemplated by the Asset Purchase Agreement and this Order and

34

(ii) any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and this Order.

26.36.  27.  The Asset Purchase Agreement (and any related agreements, documents, or other instruments) may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, *provided that* any such modification, amendment, or supplement does not, based on the Trustee's business judgment, constitute a material change to the relief sought in the Motion and approved by this Order, that would have a material adverse effect on the Debtors' estates or their creditors. The Trustee shall provide the Secured Creditors with notice of any such modification, amendment, or supplement of the Asset Purchase Agreement, and any such modification shall remain subject to the terms set forth in the Hawk Settlement. For the avoidance of doubt, all other modifications, amendments, or supplements that have a material adverse effect on the Debtors' estates or their creditors shall require Court approval.

27.37.  28.  The Asset Purchase Agreement and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

28.38.  29.  All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29.39.  30.  Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014 or otherwise, the terms and conditions of this Sale Order shall be effective immediately upon entry and the Trustee and the Buyer are authorized to close the Sale immediately upon entry of this Sale Order.

30.40.  31.  To the extent there is any conflict between the terms of this Sale Order and the Asset Purchase Agreement, the terms of this Sale Order shall control. Nothing contained in

any chapter 11 plan hereinafter confirmed in ~~this~~the Chapter 11 ~~case~~Cases or any order confirming such chapter 11 plan, or any other order of the Court, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or any other Transaction Document or the terms of this Sale Order.

~~31.~~41. ~~32.~~    The Court shall retain exclusive jurisdiction with respect to the terms and provisions of this Sale Order and the Asset Purchase Agreement (including any amendments thereto), including to : (a) compel delivery of the Assets to the Buyer in accordance with the terms of the Asset Purchase Agreement; (b) resolve any dispute, controversy, or claim arising under or related to the Asset Purchase Agreement, or the breach thereof; and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

42.    Nothing contained in any plan confirmed in the Bankruptcy Cases or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.


BY THE COURT:


Dated: _____

                                    Honorable Ashely M. Chan
                                    Chief United States Bankruptcy Judge

4918-6251-1619 v2