# EXHIBIT 5

# TERM SHEET
# FOR
# DEVELOPMENT, SUPPLY, AND LICENSE AGREEMENT
# BETWEEN
# STREAM TV NETWORKS, INC.
# AND
# REMBRANDT 3D HOLDINGS LTD

### April 9, 2019

Stream TV Networks, Inc. ("Stream" or "Stream TV") is a Delaware corporation. Rembrandt 3D Holdings, Ltd ("Rembrandt") is a Nevis corporation. Rembrandt, and Stream are referred to herein as the "Parties", and each one of them is a "Party". [handwritten: Raja Rajan and Mathu Rajan are individuals who are defendants in the litigation] [handwritten insertion: , Raja Rajan, and Mathu Rajan,]

This non-binding term sheet ("Term Sheet") details a global settlement arrangement between Stream and Rembrandt, intended to settle all disputes between them, ~~whether~~ existing as of the date hereof ~~or hereafter arising.~~ The final documentation regarding the Termsheet (the "Agreement") shall be executed by May 31, 2019. This Term Sheet is **non-binding** but subject to the Protective Order (Docket No. 60) signed by the Parties, in the litigation captioned *Rembrandt 3d Holding LTD v. Stream TV Networks, Inc., et al.*, No. 17 Civ. 00882 (S.D.N.Y.) (the "Litigation").

1. Confidentiality: The Parties have executed a Protective Order in the Litigation (Docket No. 60) and the terms of the Protective Order shall cover this Term Sheet and negotiation. The Parties agree further that the negotiation is subject to Rule 408 of the Federal Rules of Evidence and all discussions or negotiations are inadmissible in any proceeding.

2. Costs and Expenses: Each Party shall be responsible for its own costs and expenses in negotiating the terms of this transaction, and Rembrandt shall arrange for a first draft of the license, supply and development agreement(s). Stream will draft the Release Agreement.

3. Law: This Term Sheet and the terms for this transaction shall be governed by the laws of Delaware exclusively, and the Parties shall submit to that jurisdiction.

4. Commencement: Commencement of this intended settlement shall be only triggered only upon the signing of the long form agreements that include the release agreement and the license, supply and development agreement(s).

5. General Release: Contemporaneously with and subject to the payment of the



consideration of the settlement agreement, each Party shall enter into a general release of all claims, known and unknown (including any pending claims) against the other Party and its respective affiliates, subsidiaries, equity holders, directors, officers, employees, contractors, agents, advisors, counsel, successors and assigns.

6. Products

(a) Provision of 4K Units – Stream TV will ship to Rembrandt ~~50~~ 100 4K Ultra-D 65" units; it is understood by the Parties that the 4K units will be provided "as is" and have no warranty or returnability available. Rembrandt will provide Stream TV with written notice ("Delivery Notice") of where the units are to be shipped as part of the Agreements. Any storage, tax, if any, or other incidental fees for those units will be the responsibility of Rembrandt once units are in the U.S. to the location specified on the Delivery Notice. Stream will pay transportation and all importation costs of these units.

(b) High Resolution Units

(1) As Stream TV builds 8K resolution units, after the Agreements are mutually executed, Stream will provide Rembrandt with ~~five~~ eight prototypes as follows:

i) the first unit by July 1, 2019;
ii) 2 units on or before September 1, 2019;
iii) 2 units on or before October 1, 2019;
iv) 3 units on or before December 1, 2019.

Stream will warehouse such 4k and 8k units (for the 4k units and prototypes of the 8k) in facilities until shipping is requested by Rembrandt to a destination within the United States. Rembrandt will provide Stream TV with written notice ("Delivery Notice of Prototypes") of where the units are to be shipped as part of the Agreements. Any storage, tax, if any, or other incidental fees for those units will be the responsibility of Rembrandt once units are in the U.S. to the location specified on the Delivery Notice of Prototypes. Stream will pay transportation and all importation costs of these units. The default is that the Delivery Notice of Prototypes is to the location of 128 Bull Hill Road, Newfield New York, 14867.

It is understood notwithstanding anything to the contrary Stream is not obligated to hold those samples for Rembrandt if the is a change to the default location Rembrandt is unwilling to ship the units within seven days of them being completed and in such case Stream may use those prototypes for any purpose thereafter without any obligation to Rembrandt.

(2) Standard Products - As Stream TV builds high-resolution

based 3D technology products, it shall offer Rembrandt a right of first refusal to purchase At Cost, ~~the lesser of 1% of the units produced or~~ [and otherwise at standard commercial terms,] the minimums provided below. It is understood by both Parties that Stream TV is not required to change its business model which may or may not include completing finished units. If Rembrandt accepts the order and meet the financial and volume requirements required by Stream TV, then Rembrandt will retain this option. If Rembrandt does not exercise this option with a specific plan within seven (7) business days, then Stream TV can offer this inventory to other customers as needed. Rembrandt will have a minimum right of first refusal on 1,000 units by December 31, 2019 and then increasing by 1,000 units/month every three months thereafter until the end of term. Such minimum right of first refusal is not cumulative and if Rembrandt does not use such right within a given month it does not carry over to future months. [Rembrandt may purchase additional units by paying Most Favored Nation status at standard commercial terms.]

7. OEM

Stream TV in good faith is not finishing products but will recommend to Rembrandt certain Original Equipment Manufacturers ("OEM") that Rembrandt may wish to utilize after it fully investigates the finished products capabilities under its specifications; however, the selection of OEM(s) is at Rembrandts discretion. In such case Stream TV will provide the 3D components directly to the OEM with Rembrandt's specifications.

White Label - Rembrandt may brand product purchased from Stream with Rembrandt trademarks. Rembrandt will not remove any patent number marking applied by Stream.

8. Term

The Term of the agreement shall continue through December 31, 2030. ~~Upon termination Stream shall have a fully paid up license to all technology rights provided under this agreement.~~

9. Rembrandt Grant of Rights

Rembrandt shall grant a non-exclusive license to Stream to all Rembrandt Technologies listed in Schedule A to this Term Sheet for Rembrandt.

10. Stream Grant of Rights

Stream shall grant Rembrandt a non-exclusive license to any existing Stream technologies that Stream has the right to license/sub-license solely to enable Rembrandt to distribute Products described herein. Rembrandt shall obtain or reimburse Stream for Stream's Philips license as part of the At Cost price, as applicable.

SKB

| | | |
|---|---|---|
| 11. Field | The licensed field of use from Rembrandt to Stream is all applications | |
| | The licensed field of use from Stream to Rembrandt is all applications. | |
| 12. Territory | All territories whether or not patents are issued or pending or licensed. Sale to any distributor in any territory is permitted for the Field ~~and such sales shall be subject to royalties.~~ | |
| 13. Co-Marketing | Rembrandt and Stream shall work cooperatively to educate and co-market the benefit of the no glasses 3D technology and agree to not disparage the other Party. | |
| | Stream will be responsible for its own sales and marketing expenses and Rembrandt will be responsible for their own sales and marketing expenses. | |
| 14. Sub-license | Either Party may sublicense their rights to other parties for the purpose of having products ~~manufactured for sale~~ ˄ *distributed* by the Party. ~~Further sublicensing requires the consent of the Party granting the license, which shall not be unreasonably withheld if the granting party would receive the same royalties on sales as if the Party that received the license was making the sale.~~ | |

15. Consideration

In addition to the product provided as consideration and described above, Stream shall provide the following as consideration:

a) Upon execution of the Agreements contemplated by this Term Sheet, Stream TV will pay to Rembrandt the lump sum of one million ($1,000,000) USD. It is understood that total will be paid in four instalments paid quarterly with the final payment on or before June 30, 2020.

*Stream shall also provide ˄ two million ~~@~~ warrants, with provisions of a cashless exercise price at a $1.50 value per Warrant. ~~The warrants ~~*

b) Stream TV will pay Rembrandt a ˄*monthly* fee ~~of twenty thousand ($20,000) USD per month~~ beginning with the execution of the Agreement for the full Term of this Agreement, *According to the following schedule:*

- 12 months @ $20,000/per month
- 12 months @ $24,000/per month
- 12 months @ $28,000/per month
- 12 months @ $32,000/per month
- 12 months @ $36,000/per month
- 79 months @ $40,000/per month.

*The monthly payments shall be Accellerated upon a merger, acquisition, or change of control. No Accelleration by IPO.*

JLS                                                                                                              SP

**Signed for and on behalf of Stream:**    **Signed for and on behalf of Rembrandt:**

...................................................    ......................................................................
Signature    Signature

...................................................    ......................................................................
Print Name    Print Name

...................................................    ......................................................................
Witness Signature    Witness Signature

...................................................    ......................................................................
Print name    Print name

...................................................    ......................................................................
Date    Date

*Raja Rajan*

*Mathu Rajan*



## SCHEDULE A

1. Knowhow and trade secrets related to methodology for:
a. efficiently converting, correcting and optimizing a 2D+Depth video for playback on a 3D autostereoscopic associated with the Philips technology
b. utilizing the Philips 2d Switchable Lens technology for refractive and defractive lens switching for the creation of the 'lightfield' and 3d content artefact correction.
c. utilizing the On Screen Display functions of Borders and "Liveliness."
2. Trademarks
3. the patents asserted in Rembrandt's First Amended Complaint, and dismissed by the Court on March 28, 2018 (ECF No. 47)



EAST\165770618.1

## Representations and Warranties

The Parties represent and warrant ~~that~~ to one another that they will not bring a trade secret claim based upon any information that is the basis for the Litigation or was otherwise disclosed or learned ~~during othe~~ during the pendency of the Litigation

## Next Steps

- Stream to provide Warrant Agreement, Supply Agreement, and any patents filed within last 18 months.

- Stream will investigate and provide Rembrandt an answer as to whether it can represent and warrant that it will not revive any abandoned patents

