# EXHIBIT 6

EFiled: Nov 24 2021 04:29PM EST
Transaction ID 67123366
Case No. 2020-0766-JTL

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| STREAM TV NETWORKS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 2020-0766-JTL |
| SEECUBIC, INC., | ) ) ) |
| Defendant. | ) ) |
| SEECUBIC, INC., | ) ) |
| Counterclaim and Third-Party Plaintiff, | ) ) ) ) |
| v. | ) ) |
| STREAM TV NETWORKS, INC., | ) ) |
| Counterclaim Defendant, | ) ) |
| and | ) ) |
| MATHU RAJAN, and RAJA RAJAN, | ) ) |
| Third-Party Defendants. | ) |

**DECLARATION OF SHADRON L. STASTNEY IN SUPPORT OF SEECUBIC'S OPPOSITION TO MOTION TO MODIFY INJUNCTION PENDING APPEAL, OR ALTERNATIVELY FOR ENTRY OF <u>ADDITIONAL STATUS QUO ORDER PENDING APPEAL</u>**

I, Shadron L. Stastney, hereby declare and state as follows:

1. My name is Shadron L. Stastney, and I am the Executive Chairman of Seecubic, Inc. ("SeeCubic"). I am also a principal of SLS Holdings VI, LLC ("SLS"). I am over eighteen years of age and am competent to testify.

2. I make this unsworn declaration in support of SeeCubic's Opposition to Motion to Modify Injunction Pending Appeal, or Alternatively for Entry of

Additional Status Quo Order Pending Appeal, and do so pursuant to 10 *Del. C.* § 3927 and standing orders of the Delaware courts.

3. Since the Court entered the Order Granting Preliminary Injunction on December 8, 2020 (Dkt. 111, the "PI Order"), SeeCubic has raised and deployed in excess of $10 million in order to further develop the glasses-free 3-D technology first started by Stream. SeeCubic has purchased millions of dollars of equipment and inventory, doubled the size of its staff by (among other things) bringing back all the key members of the Ultra-D founding team from the Netherlands, who had left Stream when the Rajans were exercising control. SeeCubic has also reduced its debt by over 50%, and it is not in default on any debt.

4. SeeCubic also has continued to aggressively pursue outstanding assets that Stream and the Rajans have not turned over to SeeCubic (despite repeated requests), including those located in China. Those assets included 65" 3D filters and 65" displays (the "Lenses") that were in the possession of Weida Freight ("Weida"). (*See* Dkt. 212, Ex. A)

5. On August 2, 2021, Weida contacted me regarding the Lenses it had been holding in storage for Stream, and for which Stream had not been paying its storage fees. (*Id.*) That same day, I wrote to Weida by email and explained that the Lenses "have actually been the property of SeeCubic, Inc. since December 8, 2020" and that "by court order, while any liabilities incurred by StreamTV remain

2

the obligation of StreamTV, the stock [in Weida's possession] is the sole and exclusive property of SeeCubic, Inc." (*Id.*)  I also noted to Weida that SeeCubic would be in contact to arrange shipment to its facility in the Netherlands.  (*Id.*)  Weida responded by stating that the Lenses would not be released until the warehouse storage fees were paid, and Weida proposed that SeeCubic pay those fees.  (*Id.*)

6. On August 3, 2021, I responded by reiterating that, according to the PI Order, "all the inventory and stock is awarded to [SeeCubic], but StreamTV remains liable for the fees."  (*Id.*)  I further explained that SeeCubic "cannot pay any amounts owed to [Weida] by Stream" but noted that SeeCubic was willing to pay for storage and shipping going forward.  (*Id.*)

7. Upon review of the official quotation from Weida, it became apparent that the expenses associated with storing and shipping the Lenses from China to the Netherlands exceeded the value of the Lenses, which were from a largely flawed, older batch and have been superseded by new lenses SeeCubic has since designed for its projects.  As such, the Lenses were of marginal value to the ongoing business.

8. On September 3, 2021, SeeCubic made a business decision to have the Lenses destroyed.  (*Id.*)  SeeCubic determined that it would not be in its interests to allow Weida to sell the Lenses because there was a risk that the Lenses

3

could come into possession of one of SeeCubic's competitors who could attempt to reverse engineer parts of SeeCubic's technology from these older components. Therefore, SeeCubic asked that Weida destroy the Lenses. (*Id.*)

9. I have not been able to confirm whether the Lenses, which were being stored in China, were actually destroyed.

I declare under penalty of perjury under the laws of Delaware that the foregoing is true and correct.

Executed on this 24 day of November, 2021.

<u>Shadron L. Stastney</u>  (Printed Name)


<u>*/s/ Shadron L. Stastney*</u> (Signature)

4