78170243;5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | Chapter 11 |
| STREAM TV NETWORKS, INC., | Case No.: 23-10763  (AMC) |
| Debtors. | (Jointly Administered)[1] |

## VISUAL SEMICONDUCTOR, INC.'S MOTION FOR ORDER APPROVING (I) DISCLOSURE STATEMENT; (II) PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT VISUAL SEMICONDUCTOR, INC.'S CHAPTER 11 PLAN OF REORGANIZATION; AND (III) RELATED NOTICE AND OBJECTION PROCEDURES

VISUAL SEMICONDUCTOR, INC., (the "**Plan Sponsor**"), by and through undersigned counsel, hereby files its motion (this "**Motion**") for entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**") approving: (i) the *Disclosure Statement for Visual Semiconductor Inc.'s Plan of Reorganization of Stream TV Networks, Inc. and Technovative Media, Inc. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 847] (as may be amended, the "**Disclosure Statement**"); (ii) procedures for the solicitation and tabulation of votes to accept or reject *Visual Semiconductor Inc.'s Plan of Reorganization of Stream TV Networks, Inc. and Technovative Media, Inc. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 848] (as may be amended, the "**Plan**");[1] (iii) related notice and objection procedures, including dates for hearings and objections with respect to the approval of the Disclosure Statement and confirmation of the Plan; and (iv) the following dates with respect to the approval of the Disclosure Statement and the confirmation of the Plan (each subject to the Court's availability):

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

1

78170243;5

|   | Milestone | Applicable Date |
|---|-----------|-----------------|
| 1. | Plan and Disclosure Statement Filed | December 3, 2024 |
| 2. | Deadline to Object to Disclosure Statement | January 20, 2025 |
| 3. | Voting Record Date | January 27, 2025 |
| 4. | Disclosure Statement Hearing | January 27, 2025 |
| 5. | Commence Solicitation | No later than January 31, 2025 |
| 6. | Plan Voting Deadline | February 24, 2025 |
| 7. | Deadline to Object to Plan | February 24, 2025 |
| 8. | Confirmation Hearing | March 3, 2025 |

In connection with this Motion, the Plan Sponsor respectively requests that the Court schedule a hearing on January 27, 2025 to consider approval of the relief requested herein.

In support of this Motion, the Plan Sponsor respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and rule based predicates for the relief requested herein are sections 1125, 1126 and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018, and 3020, and Rules 2002-1 and 3017-1 of the Local Rules for the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Local Rules**").

## BACKGROUND

4.      The Plan Sponsor has proposed the Plan as an alternative to the Trustee's Plan of Liquidation proposed by the Trustee in furtherance of the 9019 Settlement, and subsequent sale of the Debtors' assets under Section 363 of the US Bankruptcy Code.

78170243;5

5.      The restructuring reflected in the Plan is the best available option for the Debtors'

stakeholders, estates, and go-forward businesses. The Plan will position the Company[2] for success

in the very competitive new media industry and to finally realize the incredible potential of its

groundbreaking technology which has been hampered for more than four (4) years by litigation

and a now voided and illegitimate attempt to take over the company, the business, and its key

intellectual property. The Plan results in appropriate leverage and liquidity to enable the Company

to execute on its Business Plan and capture new market opportunities on a go-forward basis. The

financial and operational restructuring provided for in the Plan affords the Company a "fresh start"

and provides a foundation for the long-term health of its business.

6.      The Plan Sponsor enjoys the support of Canam Private Equity Inc. ("***CAPE***").[3]

CAPE has committed to invest directly or through one or more of its affiliates up to the total

principal amount of $300 million upon confirmation of the Plan.

7.      The Plan Sponsor strongly believes that the Plan is in the best interests of the

Debtors' Estates, represents the Debtors' best available alternative, and provides for a value-

maximizing transaction.

8.      Under the Bankruptcy Code, only holders of claims or interests in "impaired"

classes are entitled to vote on the plan (unless, such holders are deemed to reject the plan pursuant

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

[3] CAPE has a combined experience of over 50 years in business finance, investment banking, growth and ownership, consulting and senior management advisory in a variety of industries, including biomedical health services, real estate, construction, renewable energy, oil and gas, bio fuels, tech and bio tech, among others. With an original partnership stemming back to 2012, Canam started as a firm in Delaware, US from two partners with investment banking, private equity and banking backgrounds. Since then, the firm has evolved into an increasingly international company with far reaches beyond the North American borders, with primary headquarters in Edmonton, Alberta, Canada. Since inception, CAPE has raised more than $6 billion worldwide for individuals and companies seeking financing or transactional advisory services.

78170243;5

to section 1126(g) of the Bankruptcy Code). Under section 1124 of the Bankruptcy Code, a class

of claims or interests is deemed to be "impaired" unless (i) the plan leaves unaltered the legal,

equitable, and contractual rights to which such claim or interest entitles the holder thereof or

(ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan,

among other things, cures all existing defaults (other than defaults resulting from the occurrence

of bankruptcy events) and reinstates the maturity of such claim or interest as it existed before the

default.

       9.     The creditor group entitled to vote on the Plan whose acceptances of the Plan are

being solicited are General Unsecured Claims (Class III).  The Plan Sponsor only intends to solicit

votes to accept or reject the plan from Holders of Claims in Class III (the "**Voting Class**").

       10.    The Plan Sponsor is not soliciting votes from Holders of Claims in Classes I and II,

because those Classes are conclusively presumed to have accepted the Plan. The Plan Sponsor is

also not soliciting votes from Holders of Claims and Interests in Classes IV and V, as Holders of

Claims and Interests in those Classes will receive no recovery under the Plan.

       11.    The following table provides a summary of the status and voting rights of  each

Class (and therefore of each Holder within such class) under the Plan.

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| I | Secured or Partially Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| II | Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| III | Unsecured Claims | Impaired | Entitled to Vote |

78170243;5

| IV | Subordinated Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| V | Equity Security Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

12.     The Plan Sponsor believes that the proposed timeline contained herein is appropriate under the circumstances and will provide creditors and parties in interest with sufficient notice and adequate time to review the Plan and the Disclosure Statement, and determine, after such review, whether to vote to accept or reject the Plan.

13.     The Plan Sponsor further asserts that the Disclosure Statement provides adequate information as required by section 1125 of the Bankruptcy Code, and that the solicitation materials for which the Plan Sponsor seeks approval hereby will provide for proper solicitation of votes on the Plan as contemplated by the Bankruptcy Code, Bankruptcy Rules and the Local Rules.

### **RELIEF REQUESTED**

14.     By this Motion and pursuant to sections 105, 502, 1125, 1126 and 1128 of the Bankruptcy Code and Rules 2002, 3017, 3018 and 3020 of the Bankruptcy Rules, the Plan Sponsor seeks entry of the Proposed Order, attached hereto as **Exhibit A,** approving: (a) the Disclosure Statement; (b) procedures for the solicitation and tabulation of votes to accept or reject the Plan; and (c) related notice and objection procedures, including the hearing and other dates as set forth above.

78170243;5

## I.    The Disclosure Statement Contains Adequate Information and Should be Approved.

15.    The Plan Sponsor requests that the Disclosure Statement be approved as providing "adequate information" within the meaning of section 1125 of the Bankruptcy Code. Under section 1125 of the Bankruptcy Code, creditors and interest holders must be provided with "adequate information" regarding a proposed plan of reorganization:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information does not include such information about any other possible or proposed plan.

11 U.S.C. §1125(a); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314, 321-22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a creditor to make an informed judgment about the Plan") (internal quotations omitted).

16.    The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision whether to vote for or against the plan. *See Century Glove, Inc. v. First Am. Bank of N.Y*, 860 F.2d 94, 100 (3rd Cir. 1988) (". . . § 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."). The determination of whether a disclosure statement contains adequate information is made on a case-by-case basis, and courts exercise broad discretion when evaluating whether a disclosure statement contains adequate information. *See Mabey v. S. W Elec. Power Co., (In re Cajun Elec. Power Co-op., Inc.),* 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes adequate information

78170243;5

with respect to a particular disclosure statement, both the kind and form of information are left

essentially to the judicial discretion of the court and that the information required will necessarily

be governed by the circumstances of the case." (citations and quotations omitted)). This discretion

provides flexibility and facilitates the effective reorganization of chapter 11 debtors by

accommodating varying circumstances accompanying chapter 11 cases. *See H.R. Rep.* No. 595,

95th Cong., 1st Session 408-09 (1977). This determination should take into account expertise and

resources, including outside advisors and relevant information already possessed or publicly

available, of the hypothetical investor in each class of claims or interests in the chapter 11 cases

from which classes the acceptance or rejection of the plan is solicited after commencement of the

chapter 11 cases. *See Zenith Elecs. Corp*., 241 B.R. 92, 99-100 (Bankr. D. Del. 1999).

17.    The Disclosure Statement contains adequate information because it describes the

events that led to this point in the case, the Debtors' assets, the proposed reorganization of the

Debtors and the proposed distribution scheme. What constitutes "adequate information" is based

on the facts and circumstances of each case, but the focus is on whether sufficient information is

provided to enable parties to vote in an informed way, and that standard is easily met here. *See* 11

U.S.C. § 1125(a)(1); *see also Mabey v. Sw. Elec. Power Co*. (In re Cajun Elec. Power Coop.), 150

F.3d 503, 518 (5th Cir. 1998) ("[I]n determining what constitutes `adequate information' with

respect to a particular disclosure statement, `both the kind and form of information are left

essentially to the judicial discretion of the court . . . the information required will necessarily be

governed by the circumstances of the case.") (quoting S. Rep. No. 95- 989, at 121 (1978)).

18.    For instance, the Disclosure Statement contains descriptions and summaries of,

among other things: (a) the Plan and the related chapter 11 efforts; (b) certain events and relevant

negotiations preceding the commencement of these chapter 11 cases; (c) the key terms of the

78170243;5

reorganization to be effected by the Plan; (d) risk factors affecting consummation of the Plan;

(e) liquidation analyses setting forth the estimated recoveries that holders of Claims and Interests

would receive in hypothetical chapter 7 cases; and (f) federal tax law consequences of the Plan.

*See, e.g., In re Metrocraft Pub. Servs., Inc.,* 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (enumerating

similar factors to be considered in assessing adequacy of information in a disclosure statement).

19.     Accordingly, the Plan Sponsor submits that the Disclosure Statement contains

adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should

be approved. As explained above, the Plan Sponsor is proposing a chapter 11 plan which applies

to all Debtors. Although the Plan applies to multiple Debtors, the Plan constitutes the

reorganization for each of the Debtors, and for voting and distribution purposes, each Class of

Claims will be deemed to contain sub-classes for each of the Debtors, to the extent applicable. To

the extent there are no Allowed Claims or Interests with respect to a particular Debtor, such Class

is deemed to be omitted with respect to such Debtor.

## II.     The Solicitation Procedures Should Be Approved

### A.  Establishment of a Voting Record Date

20.     Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in

connection with confirmation of a plan of reorganization, "creditors and equity security holders

shall include holders of stock, bonds, debentures, notes and other securities of record on the date

the order approving the disclosure statement is entered or another date fixed by the court, for cause,

after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar

provision regarding determination of the record date for voting purposes.

21.     Accordingly, the Plan Sponsor requests that the Court establish the date that the

Disclosure Statement is approved as the record date (the "**Voting Record Date**") for purposes of

78170243;5

determining: (a) the creditors who are entitled to vote to accept or reject the Plan; and (b) in the

case of nonvoting classes, the creditors and interest holders who are entitled to receive non-voting

materials.

**B. Approval of Solicitation Packages**

22.    Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders

of Claims and Interests entitled to vote for the purpose of soliciting their votes and providing

adequate notice of the hearing to confirm a chapter 11 plan. Specifically, Bankruptcy Rule 3017(d)

provides, in relevant part, that:

> Upon approval of a disclosure statement— except to the extent
> that the court orders otherwise with respect to one or more
> unimpaired classes of creditors or equity security holders— the
> debtor in possession, trustee, proponent of the plan or clerk as the
> court orders, shall mail to all creditors and equity security
> holders, and in a chapter 11 reorganization case shall transmit to
> the United States trustee, the plan or a court-approved summary
> of the plan; the disclosure statement approved by the court; notice
> of the time within which acceptances and rejections of such plan
> may be filed; and any other information as the court may direct,
> including any court opinion approving the disclosure statement
> or a court-approved summary of the opinion.

23.    In addition, notice of the time fixed for filing objections and the hearing on

confirmation shall be mailed to all creditors and equity security holders in accordance with Rule

2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to

creditors and equity security holders entitled to vote on the plan.

24.    Upon the Court's approval of the Disclosure Statement, the Plan Sponsor proposes

to distribute or cause to be distributed solicitation packages (the "**Solicitation Packages**") to

Holders of Claims in Class III. The Plan Sponsor expects to complete distribution of the

78170243;5

Solicitation Packages no later than one week after the entry of an Order approving the Disclosure

Statement (the "**Solicitation Date**").

25.     The Solicitation Packages shall include copies of: (a) a cover letter describing the

contents of the Solicitation Packages; (b) the Disclosure Statement Order (without any exhibits);

(c) the Confirmation Hearing Notice (as defined below); (d) an appropriate form of Ballot; (e) the

Disclosure Statement (together with the Plan annexed thereto and all other appendices, whether by

paper copy or by CD-ROM); and (f) such other materials as the Court may direct. The Plan Sponsor

submits that the Solicitation Packages comply with Bankruptcy Rule 3017(d) and should be

approved.

### C.  Approval of Form of Ballot

26.     Bankruptcy Rule 3017(d) requires the Plan Sponsor to mail a form of ballot that

substantially conforms to Official Form No. 314 only to "creditors and equity security holders

entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Plan Sponsor proposes to distribute

to creditors entitled to vote on the Plan one or more Ballots in the form attached to the proposed

Disclosure Statement Order as **<u>Exhibit 1</u>**. The Ballot is based on Official Form No. 314, but has

been modified to address the particular terms of the Plan.

### D.  Voting Deadline

27.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of [a] disclosure

statement, the Court shall fix a time within which the holders of claims and interests may accept

or reject [a] plan . . . ." Fed. R. Bankr. P. 3017(c). The Plan Sponsor anticipates commencing the

78170243;5

Plan solicitation period by mailing the Ballot and other approved solicitation materials no later than the Solicitation Date.

28.    The Plan Sponsor proposes that, to be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered to Akerman LLP, 500 West 5th Street, Suite 1210, Austin, TX 78701 (Attn: Adam Swick, Esq.) ("**The Voting Agent**") (i) by mail in the return envelope provided with each Ballot, (ii) by overnight courier, or (iii) by personal delivery so that, in each case, all Ballots are received by the Voting Agent no later than February 24, 2025 (the "**Voting Deadline**"). No Ballots may be submitted by facsimile or electronic mail and any Ballots submitted by facsimile or electronic mail will not be accepted or counted.

### III.    The Tabulation Procedures Should Be Approved

29.    Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

30.    The Plan Sponsor proposes that each Holder of a Claim within the Class of Claims entitled to vote to accept or reject the Plan be entitled to vote the amount of such Claim as set forth in the Schedules (as may be amended from time to time) unless: (a) such Holder has timely filed a proof of claim, in which event such Holder would be entitled to vote the amount of such Claim as set forth in such proof of claim; or (b) the Debtors have satisfied such Claim in accordance with

78170243;5

orders of the Court, in which event such Holder would be entitled to vote only the amount of such

Claim that had not been satisfied (if any). The foregoing general procedure will be subject to the

following exceptions:

a.  If a Claim is deemed "Allowed" under the Plan or an order of the Court, such Claim is Allowed for voting purposes in the deemed "Allowed" amount set forth in the Plan or the Court's order;

b.  If a Claim for which a proof of claim has been timely filed is wholly contingent, unliquidated or disputed, the Plan Sponsor proposes that such Claim be temporarily Allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00, and the Ballot shall be marked as voting at $1.00;

c.  If a Claim is partially liquidated and partially unliquidated, the Plan Sponsor proposes that the Claim be Allowed for voting purposes only in the liquidated amount;

d.  If a Claim has been estimated or otherwise Allowed for voting purposes by order of the Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

e.  If a Claim is listed in the Schedules as contingent, unliquidated or disputed and a proof of claim was not (a) filed by the applicable bar date for the filing of proofs of claim established by the Court or (b) deemed timely filed by an order of the Court prior to the Voting Deadline, then, unless the Debtor has consented in writing, the Plan Sponsor proposes that such Claim be disallowed for voting purposes and for purposes of allowance and distribution pursuant to Bankruptcy Rule 3003(c);

f.  If the Debtors have filed an objection to a claim before the Voting Deadline, the Plan Sponsor proposes that such Claim be disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection;

g.  Notwithstanding anything to the contrary contained herein, (i) any creditor who has filed or purchased duplicate Claims that are classified under the Plan in the same Class, shall be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and (ii) if a proof of claim amends or supersedes a proof of claim filed by or on behalf of the same creditor, such proof of claim shall supersede the prior proof of claim for voting and tabulation purposes; and

h.  For purposes of voting, classification, and treatment under the Plan, each holder of an Impaired Claim that holds or has filed more than one (1) Claim shall be treated as if such holder has only one (1) Claim in each applicable Class; the Claims filed by such

78170243;5

holder shall be aggregated in each applicable Class; and the total dollar amount of such holder's Claims in each applicable Class shall be the sum of the aggregated Claims of such holder in each applicable Class.

31.    The Plan Sponsor believes that the foregoing proposed tabulation procedures provide for a fair and equitable voting process. If any creditor seeks to challenge the allowance of its Claim for voting purposes in accordance with the above procedures, the Plan Sponsor requests that the Court direct such creditor to serve on counsel for the Plan Sponsor and the Debtors and file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Plan no later than the Voting Record Date. The Plan Sponsor further proposes, in accordance with Bankruptcy Rule 3018(a), that as to any creditor filing such a motion, such creditor's Ballot should not be counted unless temporarily allowed by the Court for voting purposes, after notice and a hearing. If and to the extent that the Plan Sponsor and/or Debtors and such party are unable to resolve the issues raised by the Rule 3018 Motion prior to the Voting Deadline established by the Bankruptcy Court, then at the Confirmation Hearing the Bankruptcy Court will determine whether the provisional Ballot should be counted as a vote on the Plan.

32.    The Plan Sponsor requests that (a) whenever a creditor casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received before the Voting Deadline be deemed to reflect the voter's intent and, thus, to supersede any prior Ballots and (b) creditors with multiple Claims within a particular Class must vote all of their Claims within such Class either to accept or reject the Plan and may not split their votes, and thus neither (i) any Ballot that partially rejects and partially accepts the Plan nor (ii) any Ballot filed by a creditor with multiple Claims within a Class who votes inconsistently will be counted.

13

78170243;5

33.      The Plan Sponsor further proposes that, without further order of the Court, the following Ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected: (a) any Ballot that is properly completed, executed and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and rejection of the Plan; (b) any Ballot actually received by the Voting Agent after the Voting Deadline, unless the Plan Sponsor shall have granted in writing an extension of the Voting Deadline with respect to such Ballot; (c) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (d) any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan; (e) any Ballot cast for a Claim scheduled as unliquidated, contingent or disputed for which no proof of claim was timely filed; (f) unless expressly authorized by the Disclosure Statement Order, any unsigned or non-originally signed Ballot; (g) any Ballot sent directly to the Plan Sponsor or Debtor, its agents (other than the Voting Agent) or the Plan Sponsor or Debtor's financial or legal advisors or to any party other than the Voting Agent; (h) any Ballot cast for a Claim that has been disallowed (for voting purposes or otherwise); and (i) unless expressly authorized in the Disclosure Statement Order, any Ballot transmitted to the Voting Agent by facsimile or other electronic means.

34.      Subject to any contrary order of the Court, the Plan Sponsor reserves the right to reject any and all Ballots the acceptance of which, in the opinion of the Plan Sponsor, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules.

35.      The Plan Sponsor and the Voting Agent may, but are not under any duty to, provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur

78170243;5

any liability for failure to provide such notification. Rather, the Voting Agent may disregard, with

no further notice, defective ballots described above.

### IV.    **The Confirmation Hearing Notice and Objection Procedures Should Be Approved**

36.    Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall

hold a hearing on confirmation of a plan" and that "a party in interest may object to confirmation

of a plan." 11 U.S.C. § 1128.

37.    Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall
> fix a time within which the holders of claims and interests may
> accept or reject the plan and may fix a date for the hearing on
> confirmation.

Fed. R. Bankr. P. 3017(c).

38.    The Plan Sponsor requests that the Court schedule the Confirmation Hearing to

commence on March 3, 2025.

### A.  Notice Procedures

39.    Bankruptcy Rule 2002(b) and (d) require not less than twenty-eight (28) days'

notice to all creditors and equity security holders of the time fixed for filing objections and the

hearing to consider confirmation of a chapter 11 plan, except as provided in Bankruptcy Rule

2002(l) regarding notice by publication. The Plan Sponsor intends to complete the voting and Plan

confirmation processes along the standard timelines set forth in the Bankruptcy Rules. In

accordance with Bankruptcy Rules 2002 and 3017, the Plan Sponsor proposes to provide to all

parties contained in the creditors' matrix in this case, which includes all known creditors and

parties in interest, a copy of the notice substantially in the form annexed to the proposed Disclosure

Statement Order as **Exhibit 3** (the "**Confirmation Hearing Notice**"), setting forth: (a) the date of

78170243;5

approval of the Disclosure Statement; (b) the Voting Record Date; (c) the Voting Deadline; (d) the

time fixed for filing objections to confirmation of the Plan; and (e) the time, date and place for the

Confirmation Hearing.[4]

40.     The Plan Sponsor anticipates that some notices of the hearing on the Disclosure

Statement, a copy of the notice substantially in the form annexed to the proposed Disclosure

Statement Order as **Exhibit 2**  (the "**Disclosure Statement Hearing Notice**") may be returned by

the United States Postal Service as undeliverable. The Plan Sponsor believes that it would be costly

and wasteful to distribute further notices, Solicitation Packages and/or Notices of Non-Voting

Status to the same addresses to which undeliverable Disclosure Statement Hearing Notices were

distributed. Therefore, the Plan Sponsor seeks to be excused, without any further order of the

Court, from distributing further notices, Solicitation Packages and/or Notice of Non-Voting

Status to those entities listed at such addresses unless the Plan Sponsor is provided with accurate

addresses for such entities at least one Business Day prior to the Solicitation Date. For these

reasons, the Plan Sponsor also seeks to be excused from re-mailing undelivered Solicitation

Packages or other undeliverable solicitation-related notices that were returned marked

"undeliverable" or "moved – no forwarding address" or for a similar reason, unless the Plan

Sponsor has been informed in writing by such person of that person's new address.

41.     The Plan Sponsor also requests that the Court determine that it is not required to

distribute Solicitation Packages, Ballots, copies of the Disclosure Statement or Plan or any other

notices to holders of Claims that have not been classified in the Plan pursuant to section 1123(a)(1)

of the Bankruptcy Code.

---

[4] As to the Holders of Claims in the Voting Class, the Confirmation Hearing Notice shall be transmitted as part of
the Solicitation Package.

78170243;5

42.     The Plan Sponsor submits that the foregoing procedures will provide adequate notice of the Confirmation Hearing and, accordingly, request that the Court approve such notice as adequate.

**B.  Procedures for the Filing of Objections to Confirmation of the Plan**

43.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bank. P. 3020(b)(1). The Confirmation Hearing Notice provides, and the Plan Sponsor requests that the Court direct that, objections to confirmation of the Plan or proposed modifications to the Plan, if any, must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (d) state with particularity the basis and nature of any objection to the Plan; and (e) be filed, together with proof of service, with the Court and served on the parties listed in the Confirmation Hearing Notice no later than February 24, 2025 (the "**Plan Objection Deadline**").

44.     The proposed timing for filing and service of objections and proposed modifications, if any, will afford the Court, the Plan Sponsor and other parties in interest sufficient time to consider the objections and proposed modifications prior to the Confirmation Hearing.

**<u>CERTIFICATE OF CONFERENCE PURSUANT TO L.B.R. 9007-1(f)</u>**

45.     Because the number of responding parties may be too numerous to contact prior to the filing of this Motion, no conference was held.

**<u>NOTICE</u>**

46.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the Eastern District of Pennsylvania; (b) the top 30 general unsecured creditors;  and (c) those persons who have formally appeared in these chapter 11 cases and requested service

17

78170243;5

pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Motion, the

Plan Sponsor submits that no further notice is necessary.

## **NO PRIOR REQUEST**

No prior request for the relief sought in this motion has been made to this or any

other court.

Dated: December 4, 2024                    Respectfully submitted,


                                           */s/ R. Adam Swick*
                                           Donald N. David, SBN: 304846
                                           Mark S. Lichtenstein (Admitted *Pro Hac Vice*)
                                           AKERMAN LLP
                                           1251 Avenue of the Americas
                                           37th Floor
                                           New York, NY 10020
                                           Telephone: (212) 880-3800
                                           Facsimile: (212) 880-8965
                                           Email: donald.david@akerman.com
                                                   mark.lichtenstein@akerman.com
                                           -and-

                                           R. Adam Swick (Admitted *Pro Hac Vice)*
                                           AKERMAN LLP
                                           500 West 5th Street, Suite 1210
                                           Austin, TX 78701
                                           Telephone: (737) 999-7103
                                           Facsimile:   (512) 623-6701
                                           Email: adam.swick@akerman.com

                                           -and-


                                           John H. Thompson *(Admitted Pro Hac Vice)*
                                           AKERMAN LLP
                                           750 Ninth Street, N.W. 750
                                           Washington, D.C. 20001
                                           Telephone: (202) 824-1760
                                           Facsimile:   (202) 393-5959
                                           Email: john.thompson@akerman.com

                                           -and-

78170243;5

Leif M Clark (Admitted *Pro Hac Vice*)
Leif M Clark Consulting PLLC
1105 Bonner
Houston, TX 77007
Telephone: (210) 663-5183
Email: lmclark@leifmclark.com

*Attorneys for Visual Semiconductor, Inc.*

78170243;5

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the United States Bankruptcy Court for the Eastern District of Pennsylvania on December 4, 2024 with notice sent electronically to all parties receiving electronic notices in this case pursuant to local rules of this Court, and that no further notice or service is necessary.

*/s/ R. Adam Swick*
R. Adam Swick

78170243;5

# **EXHIBIT A**

## **PROPOSED DISCLOSURE STATEMENT ORDER**

78170243;5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | Chapter 11 |
| STREAM TV NETWORKS, INC., | Case No.: 23-10763  (AMC) |
| Debtors. | (Jointly Administered)[5] |

## ORDER APPROVING (I) DISCLOSURE STATEMENT; (II) PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT VISUAL SEMICONDUCTOR, INC.'S CHAPTER 11 PLAN OF REORGANIZATION; AND (III) RELATED NOTICE AND OBJECTION PROCEDURES

Upon the motion (the "**Motion**") of VISUAL SEMICONDUCTOR, INC., (the "**Plan Sponsor**"), for entry of an order approving: (1) the Disclosure Statement[6]; (2) procedures for the solicitation and tabulation of votes to accept or reject the Plan; and (3) related notice and objection procedures; it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and other parties in interest; the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; the Plan Sponsor having filed with the Court the Disclosure Statement [ECF No. 847] and the Plan [ECF No. 848]; the Disclosure Statement Hearing Notice having been served on the Debtors' creditors and interest holders; the Court having reviewed the Disclosure Statement, the Motion, the papers in support thereof and the

---

[5] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[6] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

78170243;5

responses thereto, if any; and upon such documents and the record established at the Disclosure

Statement hearing, the Court having found and determined that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein and that the relief

requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after

due deliberation and sufficient cause appearing therefor;

### IT IS HEREBY FOUND THAT:

A.    The Disclosure Statement Hearing Notice was properly served upon the

Debtors' creditors and interest holders.

B.    The Disclosure Statement, as the same may be amended and/or revised from

time to time, including in connection with the Disclosure Statement hearing, contains

"adequate information" within the meaning of section 1125 of title 11 of the Bankruptcy Code.

C.    The form of Ballot filed with the Motion is substantially consistent with Official

Form No. 314, adequately address the particular needs of the Chapter 11 Cases, and are

appropriate for the Class of Claims entitled to vote to accept or reject the Plan.

D.    The Ballot requires the furnishing of sufficient information to assure that

duplicate Ballots are not submitted and tabulated and that Ballots reflect the votes of creditor

or equity holders.

E.    The period set forth below during which the Plan Sponsor may solicit

acceptances to the Plan is a reasonable and adequate period of time for creditors to make an

informed decision to accept or reject the Plan.

F.    The procedures for the solicitation and tabulation of votes to accept or reject the

Plan (as more fully set forth in the Motion and below) provide for a fair and equitable voting

process and are consistent with section 1126 of the Bankruptcy Code.

78170243;5

G.      The Confirmation Hearing Notice substantially in the form annexed hereto as

**Exhibit 1** hereto, the procedures set forth below for providing notice to all creditors and

parties in interest of the time, date and place of the Confirmation Hearing, and the contents of

the Solicitation Packages comply with Rules 2002 and 3017 of the Bankruptcy Rules and

constitute sufficient notice to all interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on the terms set forth herein.

2.      The Disclosure Statement is approved.

3.      [•], 2025 is established as the Voting Record Date for purposes of this Order

and determining the creditors who are entitled to vote for or against the Plan.

4.      On or before [•], 2025 (the "**Solicitation Date**"), the Plan Sponsor is directed

to distribute or cause to be distributed Solicitation Packages to Holders of Claims in Class III

(the "**Voting Class**").

5.      The Solicitation Packages shall contain copies of: (a) a cover letter describing

the contents of the Solicitation Package; (b) the Disclosure Statement Order (without exhibits);

(c) the Confirmation Hearing Notice (as defined below); (d) an appropriate form of Ballot; and

(e) the Disclosure Statement (together with the Plan annexed thereto and all other appendices,

whether by paper copy, CD-ROM, or USB Flash Drive).

6.      The Confirmation Hearing Notice substantially in the form annexed hereto as

**Exhibit 2** is approved and shall be transmitted to all parties on the creditors' matrix in this case.

With respect to addresses from which notices of the hearing to approve the Disclosure

Statement were returned as undeliverable by the United States Postal Service: (a) the Plan

78170243;5

Sponsor is excused from distributing Solicitation Packages to those entities listed at such addresses unless the Plan Sponsor is provided with accurate addresses for such entities at least one Business Day prior to the Solicitation Date; and (b) failure to distribute Solicitation Packages to such entities will not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline (as defined below) or violation of Bankruptcy Rule 3017(d). Furthermore, with respect to undelivered Solicitation Packages and other undeliverable solicitation-related notices that are returned marked "undeliverable" or "moved – no forwarding address" or for a similar reason, the Plan Sponsor is excused from re-mailing such materials unless the Plan Sponsor has been informed in writing by such person of such person's new address.

7.      The Plan Sponsor is not required to distribute Solicitation Packages, Ballots, copies of the Disclosure Statement or Plan or any other notices (except the Confirmation Hearing Notice) to Holders of Claims that have not been classified in the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

8.      Except as otherwise provided herein, to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed and the original thereof delivered to the Voting Agent so as to be actually received by no later than **[•], 2025 at 4:00** p.m. prevailing Eastern time (the "**Voting Deadline**").

9.      The Plan Sponsor may extend the Voting Deadline, if necessary, without further order of this Court, to a date that is no later than five (5) Business Days before the Confirmation Hearing.

10.     Solely for purposes of voting to accept or reject the Plan, not for the purposes of the allowance of or distribution on account of a Claim, and without prejudice to

78170243;5

the rights of the Plan Sponsor in any other context, each Claim within a Class of Claims entitled

to vote to accept or reject the Plan shall be entitled to vote the amount of such Claim as set forth

in the Schedules (as may be amended from time to time) unless such Holder has timely filed a

proof of claim, in which event such Holder would be entitled to vote the amount of such Claim

as set forth in such proof of claim:

a. If a Claim is deemed "Allowed" under the Plan or an order of the Court, such Claim is Allowed for voting purposes in the deemed "Allowed" amount set forth in the Plan or the Court's order;

b. If a Claim for which a proof of claim has been timely filed is wholly contingent, unliquidated or disputed, the Plan Sponsor proposes that such Claim be temporarily Allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00, and the Ballot shall be marked as voting at $1.00;

c. If a Claim is partially liquidated and partially unliquidated, the Plan Sponsor proposes that the Claim be Allowed for voting purposes only in the liquidated amount;

d. If a Claim has been estimated or otherwise Allowed for voting purposes by order of the Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

e. If a Claim is listed in the Schedules as contingent, unliquidated or disputed and a proof of claim was not (a) filed by the applicable bar date for the filing of proofs of claim established by the Court or (b) deemed timely filed by an order of the Court prior to the Voting Deadline, then, unless the Debtor has consented in writing, the Plan Sponsor proposes that such Claim be disallowed for voting purposes and for purposes of allowance and distribution pursuant to Bankruptcy Rule 3003(c);

f. If the Debtors have filed an objection to a claim before the Voting Deadline, the Plan Sponsor proposes that such Claim be disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection;

g. Notwithstanding anything to the contrary contained herein, (i) any creditor who has filed or purchased duplicate Claims that are classified under the Plan in the same Class, shall be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and (ii) if a proof of claim amends or supersedes a proof of claim filed by or

78170243;5

on behalf of the same creditor, such proof of claim shall supersede the prior proof of claim for voting and tabulation purposes; and

h. For purposes of voting, classification, and treatment under the Plan, each holder of an Impaired Claim that holds or has filed more than one (1) Claim shall be treated as if such holder has only one (1) Claim in each applicable Class; the Claims filed by such holder shall be aggregated in each applicable Class; and the total dollar amount of such holder's Claims in each applicable Class shall be the sum of the aggregated Claims of such holder in each applicable Class.

11. If any claimant seeks to challenge the allowance of its Claim for voting purposes in accordance with the above procedures, such claimant is directed to serve on counsel for the Plan Sponsor and file with the Court no later than the Voting Deadline, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Plan.

12. As to any creditor filing a motion pursuant to Bankruptcy Rule 3018(a), such creditor's Ballot shall not be counted unless temporarily Allowed by the Court for voting purposes after notice and a hearing.

13. If a creditor casts more than one Ballot voting the same claim(s) before the Voting Deadline, the last valid Ballot received before the Voting Deadline is deemed to reflect the voter's intent and, thus, to supersede any prior Ballots.

14. Creditors with multiple Claims within a particular Class must vote all of their Claims within a particular Class under the Plan either to accept or reject the Plan and may not split their votes, and thus neither (i) any Ballot that partially rejects and partially accepts the Plan nor (ii) any Ballot filed by a creditor with multiple Claims within a Class who votes inconsistently will be counted.

78170243;5

15.　　　Any Ballot that is properly completed, executed and timely returned to the Voting Agent but does not indicate an acceptance or rejection of the Plan or indicates both an acceptance and a rejection of the Plan, shall not be counted.

16.　　　Any Ballot actually received after the Voting Deadline shall not be counted unless the Plan Sponsor granted an extension of the Voting Deadline with respect to such Ballot.

17.　　　Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant shall not be counted.

18.　　　Any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan shall not be counted.

19.　　　Any Ballot cast for a Claim identified as unliquidated, contingent or disputed and for which no proof of claim was timely filed shall not be counted.

20.　　　Any unsigned Ballot or non-originally signed Ballot shall not be counted.

21.　　　Any Ballot cast for a Claim that has been disallowed (for voting purposes or otherwise) shall not be counted.

22.　　　Any Ballot transmitted by facsimile or other electronic means shall not be counted.

23.　　　The Plan Sponsor may, but is not under any duty to, provide notification of defects or irregularities with respect to delivered Ballots, nor shall the Plan Sponsor or any other person or entity incur any liability for failure to provide such notification.

24.　　　The Confirmation Hearing will be held at [•] **[a.m./p.m.]]** (prevailing Eastern time) on **[•], 2025**; *provided*, *however*, that the Confirmation Hearing may be adjourned from

78170243;5

time to time by the Court or the Plan Sponsor without further notice to parties other than an announcement in Court at the Confirmation Hearing or any adjourned Confirmation Hearing.

25.      Objections to confirmation of the Plan or proposed modifications to the Plan, if any, must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (d) state with particularity the basis and nature of any objection to the Plan; and (e) be filed, together with proof of service, with the Court and served on the parties listed in the Confirmation Hearing Notice, on or before [•], 2025.

26.      Objections to confirmation of the Plan not timely filed and served in the manner set forth above may not be considered and may be overruled.

27.      The Plan Sponsor is authorized to take or refrain from taking any action and expending such funds necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court.

28.      The Plan Sponsor is authorized to make non-substantive changes to the Disclosure Statement, Plan, Ballot, the Confirmation Hearing Notice, any other notice related to the Plan or Disclosure Statement and all exhibits and appendices to any of the foregoing without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan and any other materials in the Solicitation Package prior to their distribution.

78170243;5

## **EXHIBIT A-1**

## **FORM OF BALLOT**

78170243;5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | Chapter 11 |
| STREAM TV NETWORKS, INC., | Case No.: 23-10763  (AMC) |
| Debtors. | (Jointly Administered)[7] |

**BALLOT FOR ACCEPTING OR REJECTING VISUAL SEMICONDUCTOR, INC'S CHAPTER 11 PLAN OF REORGANIZATION OF STREAM TV NETWORKS, INC. AND  TECHNOVATIVE MEDIA, INC.**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT**

**THIS BALLOT MUST BE ACTUALLY RECEIVED BY 4:00 P.M. (PREVAILING EASTERN TIME) ON [•], 2025 (THE "VOTING DEADLINE").**

---

Visual Semiconductor, Inc. ("*VSI*") filed the Plan of Reorganization of Stream TV Networks, Inc. and Technovative Media, Inc. on December 3, 2024 (the "*VSI Plan*") (including all exhibits thereto and as may be amended, supplemented, or otherwise modified from time to time) [Doc. No. 848]. Capitalized terms used but not defined in this ballot are defined in the VSI Plan.

On [•], 2024, the Court entered an order [Doc. No. •] (the "*Disclosure Statement Order*") approving the VSI Disclosure Statement with respect to the VSI Plan (the "*VSI Disclosure Statement*"). The VSI Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have the VSI Disclosure Statement, you may obtain a copy from Akerman, LLP, 500 West 5th Street, Suite 1210, Austin, TX 78701, Tel. No. (737) 999-7103.

You are receiving this Ballot because our records indicate that you are a holder of a claim in Class III (General Unsecured Claims). Accordingly, you have a right to vote to accept or reject the VSI Plan.

Your rights are described in the VSI Plan and the Procedures Order. The Solicitation Package is included in the packet you are receiving with this Ballot. If you need to obtain additional materials, you may contact Akerman LLP, Counsel for VSI, 500 West 5th Street, Suite 1210, Austin, TX 78701 (Attention: Adam Swick, Esq., John Thompson, Esq., E-mail:

---

[7] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

78170243;5

adam.swick@akerman.com; john.thompson@akerman.com). You may also obtain copies of any pleadings filed in this chapter 11 case free of charge via the Claims Agent chapter 11 case website at https://cases.creditorinfo.com/streamtv/documents or the Bankruptcy Court's website at https://www.paeb.uscourts.gov/.

This Ballot may not be used for any purpose other than to (i) vote to accept or reject the VSI Plan and (ii) opt-in to the releases contained in the VSI Plan. If you believe you have received this Ballot in error, please contact the VSI Counsel via email at: adam.swick@akerman.com. You should review the VSI Plan before you vote. You may wish to seek legal advice concerning the VSI Plan and the classification and treatment of your Claim contained therein. If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.

PLEASE READ AND FOLLOW THE INSTRUCTIONS SET FORTH HEREIN CAREFULLY. IN ORDER FOR YOUR BALLOT TO COUNT, YOU MUST, BY THE VOTING DEADLINE, EITHER SUBMIT YOUR BALLOT BY RETURNING THIS PAPER BALLOT TO VSI'S COUNSEL VIA FIRST CLASS MAIL, OVERNIGHT MAIL, OR HAND DELIVERY. BALLOTS SENT BY E-MAIL OR FACSIMILE TRANSMISSION ARE NOT ALLOWED AND WILL NOT BE COUNTED. CREDITORS WHO CAST A BALLOT USING THE E-BALLOTING PORTAL SHOULD NOT ALSO SUBMIT A PAPER BALLOT.

## INSTRUCTIONS FOR COMPLETING BALLOTS

1.      VSI is soliciting the votes of holders of Claims in the Voting Classes with respect to the VSI Plan.  Capitalized terms used in the Ballot or in these instructions (the "***Ballot Instructions***") but not otherwise defined are defined in the VSI Plan or the Procedures Order, as applicable.

2.      Ballots submitted by facsimile, email, or other means of electronic submission will not be counted. To have your vote counted, you must complete, sign, and return the Ballot by First Class Mail, Overnight Mail, or Hand Delivery. Your Ballot must be received no later than the Voting Deadline, unless such time is extended by VSI.

3.      If the VSI Plan is confirmed by the Court, it will be binding on you whether or not you vote to accept or reject the VSI Plan.

4.      To ensure that your vote is counted, you must complete and return this Ballot as follows: (i) indicate your vote either to accept or reject the VSI Plan in the boxes provided in Item 2, (ii) if you desire to opt-in to the releases contained in the VSI Plan, indicate your election to opt-in to the releases by checking the box in Item 3, (iii) review the Certifications in Item 4, and (iv) sign and complete the requested information in Item 4 of the Ballot and (v) return the Ballot so that it is actually received by VSI Counsel by the Voting Deadline.

5.      If the Ballot is received after the Voting Deadline, it may not be counted. You may choose the method of delivery of your Ballot to VSI Counsel at your own risk. Except as provided herein, such delivery will be deemed made only when the original executed Ballot is actually

78170243;5

received by VSI Counsel. You should allow sufficient time to assure timely delivery. Ballots delivered by facsimile transmission, electronic mail, or any other electronic means may not be counted. This Ballot may not be submitted to the Debtor or its financial or legal advisors.

6. You must vote your entire Claim either to accept or reject the VSI Plan. Accordingly, a Ballot that partially rejects and partially accepts the VSI Plan may not be counted. Further, if a Holder has multiple Claims within the same Class, VSI may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of counting votes.

7. If multiple Ballots are received from the same holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last dated valid Ballot timely received will supersede and revoke any earlier dated Ballots. If you cast simultaneous inconsistent Ballots, such Ballots will not be counted.

8. This Ballot does not constitute and shall not be deemed to be: (a) a Proof of Claim; or (b) an assertion or admission of a Claim.

9. The following Ballots may not be counted in determining the acceptance or rejection of the VSI Plan:

i. any Ballot that is not actually received by VSI Counsel on or before the Voting Deadline;

ii. any Ballot that is illegible or contains insufficient information to permit the identification of the holder;

iii. any Ballot that (a) does not indicate an acceptance or rejection of the VSI Plan, (b) indicates both an acceptance and rejection of the VSI Plan, and/or (c) partially accepts and partially rejects the VSI Plan;

iv. any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed;

v. any Ballot sent to a Person other than the VSI Counsel; and

vi. any Ballot not bearing an original signature.

10. Please be sure to sign and date your Ballot. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by VSI Counsel, or the Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

78170243;5

11.     Unless otherwise directed by the Court, delivery of a defective or irregular Ballot will not be deemed to have been made until such defect or irregularity has been cured or waived by VSI. Any waiver by VSI of defects or irregularities in any Ballot will be detailed in the Voting Declaration filed with the Court by VSI. None of VSI, the Debtor, or any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification.

12.     If you believe you have received a Ballot coded for the incorrect Class, you should contact VSI's Counsel by email at: adam.swick@akerman.com.

13.     VSI COUNSEL CANNOT PROVIDE YOU WITH LEGAL ADVICE.

**<u>VOTING DEADLINE: [•], 2025, AT 4:00 P.M.</u>**
**<u>(PREVAILING EASTERN TIME)</u>**

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT VSI COUNSEL BY EMAIL AT
ADAM.SWICK@AKERMAN.COM

78170243;5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | Chapter 11 |
| STREAM TV NETWORKS, INC., | Case No.: 23-10763  (AMC) |
| Debtors. | (Jointly Administered)[8] |

## BALLOT

**1.      Amount of Claim**.

The undersigned hereby certifies that as of [•], 2025, the undersigned holder was the holder of a Claim in Class III, General Unsecured Claims, in the following amount(s) for voting:[9]

Amount of Claim: $_____

**2.      Vote to Accept or Reject the Combined Plan and Disclosure Statement.**

The holder of the Claim set forth in Item 1 votes to (please check one):

| ACCEPT THE PLAN | REJECT THE PLAN |
|:---:|:---:|
| ☐ | ☐ |

Any Ballot that is executed by the holder of a Claim, but that indicates both an acceptance and a rejection of the VSI Plan or does not indicate either an acceptance or rejection of the VSI Plan, will not be counted.

**3.      Release Opt-In Election.**

**Article VIII of the VSI Plan provides for releases by the Debtor and its estate and for certain consensual, mutual third-party releases. For your convenience, these provisions and certain are set forth on Exhibit 1 hereto.**

---

[8] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[9] For voting purposes only. Subject to tabulation rules.

78170243;5

**You have the opportunity to opt-in to such Releases if you do not vote to accept the VSI Plan. By making this election or by voting to accept the VSI Plan, you will be deemed a Released Party and a Releasing Party under the VSI Plan. This means that, in exchange for your consent to release any claims you may have against any of the other Released Parties, you will specifically receive a release of claims from each of the other Releasing Parties. Specifically, you will be (i) a Released Party in connection with (a) the Debtor's Release contained in section VIII (F) of the VSI Plan and (b) the third-party Release contained in section VIII (F) of the VSI Plan and (ii) a Releasing Party in connection with the third-party release contained in section VIII (F) of the VSI Plan. If you wish to opt-in to these Releases, check the box below and return your completed Ballot prior to the Voting Deadline.**

**If you do not check the box below or vote to accept the VSI Plan and return your completed Ballot on or before the Voting Deadline, you will not be considered a Released Party or a Releasing Party under the VSI Plan and will not receive the benefit of the consensual, mutual third-party releases provisions. Your distribution under the VSI Plan will not be impacted by your election regarding the Releases.**

**The holder of the Claim set forth in Item 1 elects to:**



**☐ OPT-IN TO THE RELEASES**

**4.     Certifications.**

By signing this Ballot, the undersigned certifies to the Court and VSI:

a.     that as of the Voting Record Date, the undersigned is either:

(a)     the holder of the Claim being voted; or (b) an authorized signatory for an Entity that is a holder of the Claim being voted;

b.     that the Entity has received a copy of the VSI Plan and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.     that the Entity has cast the same vote with respect to all Claims;

d.     that no other Ballots with respect to the amount of the Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim(s), then any such Ballots dated earlier are hereby revoked;

e.     that the Entity acknowledges that a vote to accept the VSI Plan constitutes an acceptance of the treatment of such Entity's Claim;

78170243;5

f. that the Entity understands and, if accepting the VSI Plan, agrees with the treatment provided for its Claim(s) under the VSI Plan;

g. that the entity acknowledges and understands that any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Court as of the date of the Confirmation Hearing shall be deemed eliminated from the VSI Plan for purposes of voting to accept or reject the VSI Plan and for purposes of determining acceptance or rejection of the VSI Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code; and

h. that the Entity acknowledges and agrees that VSI may make conforming changes to the VSI Plan to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary; provided, that VSI will not re-solicit acceptances or rejections of the VSI Plan and Disclosure Statement in the event of such conforming changes.

Print or type name:_____

Signature:_____

Title (if corporation, limited liability company, or partnership): _____

Address: _____

_____

Phone No: _____

Email: _____

Date: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN ACCORDANCE WITH THE BALLOT INSTRUCTIONS. YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 4:00 P.M. (PREVAILING EASTER TIME) ON [•], 2025.**

78170243;5

## **EXHIBIT 1 TO BALLOT**

For your convenience in making the election at Item 3 in the Ballot, the release provisions and certain related provision in the VSI Plan are transcribed below:

**VIII.    Settlement, Release, Injunction and Relation Provisions.**

1.    *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, as of the Effective Date, each of the Released Parties is unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged by the Debtors, the Reorganized Debtors, and each of their Estates from any and all Causes of Action, including any derivative Causes of Action asserted or assertable by or on behalf of a Debtor, Reorganized Debtor, or any of their Estates, any Causes of Action that any Debtor, Reorganized Debtors, or any of their Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtors, the Reorganized Debtors, or their Estates (whether individually or collectively) ever had, now has, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (1) the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, the Plan Settlement, the Settled Claims, the formulation, preparation, dissemination, negotiation, or filing of the Definitive Documents, the New Common Stock, the Exit Facilities, the Disclosure Statement, or the Plan, including the Plan Supplement; (2) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Definitive Documents, the New Common Stock, the Exit Facilities, the Disclosure Statement, or the Plan, including the Plan Supplement; (3) the business or contractual arrangements between any Debtor and any Released Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (4) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (5) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; (6) the Settled Claims; or (7) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing.**

78170243;5

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release (1) to the extent that any Causes of Action against the Debtors are not released or discharged pursuant to the Plan, any rights of the Debtors to assert any and all counterclaims, crossclaims, claims for contribution, defenses, and similar claims in response to such Causes of Action, (2) any Causes of Action set forth in the Schedule of Retained Causes of Action, including any Retained Preference Action, (3) any Cause of Action against any Excluded Party, (4) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed, (5) any Cause of Action against a Holder of a Disputed Claim, to the extent such Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan, or (6) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) essential to the Confirmation of the Plan; (2) an exercise of the Debtors' business judgment; (3) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (4) a good faith settlement and compromise of the Causes of Action released by the Debtor Release; (5) in the best interests of the Debtors and all Holders of Claims and Interests; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Debtors, the Reorganized Debtors, and the Estates asserting any Cause of Action released pursuant to the Debtor Release.

2.        *Releases by the Releasing Parties*

As of the Effective Date, each of the Releasing Parties other than the Debtors is deemed to have expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any derivative Causes of Action asserted or assertable by or on behalf of a Debtor, Reorganized Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (1) the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, the Plan Settlement, the Settled Claims, the formulation, preparation, dissemination, negotiation, or filing of the Definitive Documents, the New Common Stock, the Exit Facilities, the Disclosure Statement, or the Plan, including the Plan Supplement; (2) any Restructuring Transaction, contract, instrument, release, or other agreement or

78170243;5

document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Definitive Documents, the New Common Stock, the Exit Facilities, the Disclosure Statement, or the Plan, including the Plan Supplement; (3) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (4) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (5) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; (6) the Settled Claims; or (7) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, claims for contribution, defenses, and similar claims in response to such Causes of Action (provided that no such third-party claims or claims for contribution or similar claims may be asserted against the Debtors or the Reorganized Debtors to the extent such claims have been released or discharged pursuant to the Plan), (b) any Cause of Action against a Released Party other than the Debtors unknown to such Releasing Party as of the Effective Date arising out of actual fraud, gross negligence, or willful misconduct of such Released Party, (c) any Cause of Action against any Excluded Party, or (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any Definitive Document (including those set forth in the Plan Supplement), or other document, instrument or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Claims released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third- Party Release.

      3.     *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released pursuant to Article VIII.D or Article VIII.E of the

78170243;5

Plan or discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has, on or before the Effective Date, asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

78170243;5

## **EXHIBIT A-2**

### **DISCLOSURE STATEMENT HEARING NOTICE**

78170243;5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re | Chapter 11 |
| STREAM TV NETWORKS, INC., | Case No.: 23-10763  (AMC) |
| Debtors. | (Jointly Administered)[10] |

## NOTICE OF HEARING TO CONSIDER
## THE ADEQUACY OF DISCLOSURE STATEMENT

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On December 3, 2024 Visual Semiconductor, Inc. (the "**Plan Sponsor**"), filed: *Visual Semiconductor Inc.'s Plan of Reorganization of Stream TV Networks, Inc. and Technovative Media, Inc. Pursuant to Chapter 11 of the Bankruptcy Code*, [Docket No. 848] (as may be amended, the "**Plan**") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Court**") and *Disclosure Statement for Visual Semiconductor Inc.'s Plan of Reorganization of Stream TV Networks, Inc. and Technovative Media, Inc. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 847], (as may thereafter amended, (the "**Disclosure Statement**")).

2.      VSI intends to present the Disclosure Statement, and any changes or modifications thereto, for Court approval at a hearing (the "**Disclosure Statement Hearing**"). The Disclosure Statement Hearing will be held at the United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix, Sr. Federal Courthouse, Courtroom 2, 900 Market Street, Philadelphia, PA 19107 on [•], 2025 at [•] [a.m./p.m.], prevailing Eastern time. The Disclosure Statement Hearing may be continued from time to time without further notice other than the announcement of the adjourned date at the Disclosure Statement Hearing or any continued hearing.

3.      Objections, if any, to approval of the Disclosure Statement must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection; (d) be filed with the Court electronically (e) be served on the following parties (the "**Notice Parties**") no later [•], 2025 (the "**Objection Deadline**"): (i) counsel for the Plan Sponsor, AKERMAN LLP, 500 West 5th Street, Suite 1210, Austin, TX 78701 (Attn: Adam Swick, Esq.); (ii) Counsel for William A. Homony, Chapter 11 Trustee, OBERMAYER REBMANN MAXWELL & HIPPEL LLP, Centre Square West, 1500 Market Street, Suite 3400, Philadelphia, PA 1910 (Attn: Michael D. Vagnoni, Esq.); (iii) Counsel for the Debtors, LEWIS BRISBOIS BISGAARD & SMITH LLP, 550 E.

---

[10] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

78170243;5

Swedesford Road, Suite 270, Wayne, PA 19087 (Attn: Rafael X. Zahralddin-Aravena, Esq.); (iv) the Office of The United States Trustee, Eastern District of Pennsylvania, 900 Market Street, Suite 320, Philadelphia, Pennsylvania 19107 (Attn: Kevin P. Callahan, Trial Attorney) and (v) all parties who have filed on the docket in this case a request for service of pleadings in the case pursuant to Bankruptcy Rule 2002.

4.      Requests for copies of the Disclosure Statement and the Plan by parties in interest may be made in writing to Akerman LLP, 500 West 5th Street, Suite 1210, Austin, TX 78701 (Attn: Adam Swick, Esq.) ("**The Voting Agent**").

5.      If you have any questions regarding this Notice, please call the Voting Agent at (737) 999-7103.

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED AS PROVIDED HEREIN, IT MAY NOT BE CONSIDERED AT THE HEARING.**

Dated:   [•], 2025

_____
R. Adam Swick (Admitted *Pro Hac Vice*)
AKERMAN LLP
500 West 5th Street, Suite 1210
Austin, TX  78701
Telephone: (737) 999-7103
Facsimile:   (512) 623-6701
Email: adam.swick@akerman.com

-and-

Donald N. David, SBN: 304846
Mark S. Lichtenstein (Admitted *Pro Hac Vice*)
AKERMAN LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
Email: donald.david@akerman.com
          mark.lichtenstein@akerman.com

-and-

John H. Thompson *(*Admitted *Pro Hac Vice)*
AKERMAN LLP
750 Ninth Street, N.W. 750
Washington, D.C. 20001
Telephone: (202) 824-1760
Facsimile:   (202) 393-5959

78170243;5

Email: john.thompson@akerman.com

-and-

Leif M Clark (Admitted *Pro Hac Vice*)
Leif M Clark Consulting PLLC
1105 Bonner
Houston, TX 77007
Telephone: (210) 663-5183
Email: lmclark@leifmclark.com

*Attorneys for Plan Sponsor Visual Semiconductor, Inc.*

78170243;5

## __EXHIBIT A-3__

## CONFIRMATION HEARING NOTICE

78170243;5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | Chapter 11 |
| STREAM TV NETWORKS, INC., | Case No.: 23-10763 (AMC) |
| Debtors. | (Jointly Administered)[11] |

**NOTICE OF ENTRY OF ORDER APPROVING: (A) DISCLOSURE STATEMENT AND
SOLICITATION PROCEDURES; (B) DEADLINE FOR CASTING VOTES TO ACCEPT
OR REJECT CHAPTER 11 PLAN; (C) HEARING TO CONSIDER CONFIRMATION
OF CHAPTER 11 PLAN AND (D) RELATED MATTERS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

6.        Pursuant to an order dated [•], 2025 (Docket No. [•], the "**Disclosure Statement Order**"), the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Court**") has (a) approved the *Disclosure Statement for Visual Semiconductor Inc.'s Plan of Reorganization of Stream TV Networks, Inc. and Technovative Media, Inc. Pursuant to Chapter 11 of the Bankruptcy Code* dated December 3, 2024 [Docket No. 847], (as may thereafter amended, the "**Disclosure Statement**") filed by Visual Semiconductor, Inc. (the "**Plan Sponsor**"), and (b) authorized the Plan Sponsor to solicit votes to accept or reject *Visual Semiconductor Inc.'s Plan of Reorganization of Stream TV Networks, Inc. and Technovative Media, Inc. Pursuant to Chapter 11 of the Bankruptcy Code*, dated December 3, 2024 [Docket No. 848] (as may be amended, the "**Plan**").

7.        The Disclosure Statement Order establishes [•], 2025 as the Record Date for determining the holders of prepetition claims entitled to vote to accept or reject the Plan and establishes [•], 2025 as the Voting Deadline for submission of ballots to accept or reject the Plan (the "**Ballots**"). Holders of claims entitled to vote to accept or reject the Plan will receive the following materials: (a) this Notice, (b) a copy of the Disclosure Statement Order (without exhibits) to which this Notice corresponds, (c) the Disclosure Statement, (d) the Plan, and (e) one or more Ballots (and return envelopes) to be used in voting to accept or reject the Plan (collectively, the "**Solicitation Package**"). Failure to follow the instructions set forth in the Ballot may disqualify that Ballot and the vote represented thereby.

8.        If you are not entitled to vote to accept or reject the Plan but believe that you should be entitled to vote to accept or reject the Plan, then you must serve on the Notice Parties (defined below), and file with the Bankruptcy Court, a motion for an order pursuant to Bankruptcy Rule 3018(a) (a "**Rule 3018(a) Motion**") for purposes of voting to accept or reject the Plan by [•], 2025

---

[11] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

78170243;5

at 4:00 p.m. prevailing Eastern time. The Ballot of any creditor filing a Rule 3018(a) Motion shall not be counted unless temporarily allowed by the Bankruptcy Court for voting purposes, after notice and a hearing.

9.      A hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") will be held at the United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix, Sr. Federal Courthouse, Courtroom 2, 900 Market Street, Philadelphia, PA 19107 on [•], 2025 at [•] [a.m./p.m.], prevailing Eastern time. The Confirmation Hearing may be continued from time to time without further notice other than the announcement of the adjourned date at the Confirmation Hearing or any continued hearing.

10.      Objections, if any, to the confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection; (d) be filed with the Court electronically in accordance with the Court's Order Approving: (I) Disclosure Statement; (II) Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan; and (III) Related Notice and Objection Procedures; and (e) be served on the following parties (the "**Notice Parties**") no later than [•], 2025 (the "**Plan Objection Deadline**"): (i) counsel for the Plan Sponsor, AKERMAN LLP, 500 West 5th Street, Suite 1210, Austin, TX 78701 (Attn: Adam Swick, Esq.); (ii) Counsel for William A. Homony, Chapter 11 Trustee, OBERMAYER REBMANN MAXWELL & HIPPEL LLP, Centre Square West, 1500 Market Street, Suite 3400, Philadelphia, PA 1910 (Attn: Michael D. Vagnoni, Esq.); (iii) Counsel for the Debtors, LEWIS BRISBOIS BISGAARD & SMITH LLP, 550 E. Swedesford Road, Suite 270, Wayne, PA 19087 (Attn: Rafael X. Zahralddin-Aravena, Esq.); (iv) the Office of The United States Trustee, Eastern District of Pennsylvania, 900 Market Street, Suite 320, Philadelphia, Pennsylvania 19107 (Attn: Kevin P. Callahan, Trial Attorney) and (v) all parties who have filed on the docket in this case a request for service of pleadings in the case pursuant to Bankruptcy Rule 2002.

11.      Requests for copies of the Disclosure Statement and the Plan by parties in interest may be made in writing to Akerman LLP, 500 West 5th Street, Suite 1210, Austin, TX 78701 (Attn: Adam Swick, Esq.) ("**The Voting Agent**").

If you have any questions regarding this Notice, please call the Voting Agent at (737) 999-7103.

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED AS PROVIDED HEREIN, IT MAY NOT BE CONSIDERED AT THE HEARING.**

Dated: [•], 2025

_____
R. Adam Swick (Admitted *Pro Hac Vice*)
AKERMAN LLP
500 West 5th Street, Suite 1210
Austin, TX  78701
Telephone: (737) 999-7103
Facsimile:   (512) 623-6701

78170243;5

Email: adam.swick@akerman.com

-and-

Donald N. David, SBN: 304846
Mark S. Lichtenstein (Admitted *Pro Hac Vice*)
AKERMAN LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
Email: donald.david@akerman.com
          mark.lichtenstein@akerman.com

-and-

John H. Thompson *(Admitted Pro Hac Vice)*
AKERMAN LLP
750 Ninth Street, N.W. 750
Washington, D.C. 20001
Telephone: (202) 824-1760
Facsimile:   (202) 393-5959
Email: john.thompson@akerman.com

-and-

Leif M Clark (Admitted *Pro Hac Vice*)
Leif M Clark Consulting PLLC
1105 Bonner
Houston, TX 77007
Telephone: (210) 663-5183
Email: lmclark@leifmclark.com

*Attorneys for Plan Sponsor Visual Semiconductor,
Inc.*