**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc., (Stream)<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (MDC) |
| In re:<br><br>Technovative Media, Inc., (Technovative)<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (MDC)<br><br>(Jointly Administered) |

**REMBRANDT 3D HOLDING LTD.'S RESPONSE TO PRAECIPE TO SUBSTITUTE EXHIBIT "C" TO MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR AN ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (B) AUTHORIZING THE TRUSTEE TO ENTER INTO AND PERFORM DEBTORS' OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT, (C) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND U NEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Rembrandt 3D Holding Ltd. ("Rembrandt") maintains its objections to the sale process and sale but files this response to object to the last minute request to change the proposed sale order and proposes the following modifications to the proposed sale order:

**Relief Requested**

1. By this Objection, Rembrandt requests that if the court is going to grant a sale order, that the sale order be modified to reflect Rembrandt's rights to its intellectual property rights in three respects: 1) that the Trustee instruct all employees of Stream and its subsidiaries the license to Rembrandt's trade secrets is not being transferred and that they must remove all Rembrandt trade secrets from the assets being transferred with the

1

subsidiaries; 2) that the Rembrandt's claims are an Assumed Liability and any section purporting to cut off claims and liens should exclude Rembrandt; and 3) that assets are provided subject to the grant of rights to Rembrandt under Section 10 of the Settlement Agreement that may not be terminated pursuant to 11 USC § 365(n).

## Proposed Additions

**Finding of Fact**

2. Rembrandt has requests the following findings of fact be added to the sale order "Rembrandt has shown by uncontroverted evidence that: 1) it has trade secrets shared with at least Bart Barenbrug who is currently employed at SeeCubic; 2) those trade secrets are utilized in the current version of the display (*see* Declaration of Stephen Blumenthal admitted at the hearing on 12/4/2024 that show "borders" and "liveliness" in the on screen display; 3) such trade secrets were among the trade secrets licensed to Stream were licensed to Stream in the May 21, 2021 Settlement Agreement; 4) that the May 21, 2021 Settlement Agreement will not be assigned with the assets being sold; and 5) Stephen Blumenthal attached a list of 175 trade secrets that are found in documents that were shown to at least Bart Barenbrug attached to his declaration at D.I. 840-26 at Exhibit 10."

**Instructions to SCBV**

3. Rembrandt requests the following order be added to the sale order: "The Trustee shall send notice to the employees and directors of SCBV that:

   a. The Trustee is proceeding with a sale of the parent companies of SeeCubic, B.V. scheduled to SeeCubic, Inc. scheduled to close December 10, 2024. Stream TV Networks, Inc. (Stream) May 21, 2021 settlement agreement (copy attached) with

2

Rembrandt 3D Holding, Ltd (Rembrandt) is not being transferred as part of the sale so I am instructing that prior to Tuesday, December 10, 2024, SeeCubic, B.V. shall:

    i. Remove any Rembrandt trades secrets listed in Schedule A of the settlement agreement.  Rembrandt has provided a list of documents that provide those trades secrets and at least Dr. Barenbrug is familiar with each of the documents in the attached list during the time he was working with 3DFusion, Inc. and Stephen Blumenthal.  After Stream TV Networks, Inc. settled its litigation with Rembrandt, any entity making products and/or providing services to Stream TV Networks, Inc. was licensed to have Rembrandt's trade secrets.  Thus, those employees using and accessing such trade secrets will have a license for using those trade secrets for products and services provided to Stream through December 10, 2024.  No rights to use any of Rembrandt's trade secrets are being transferred in the sale, and SeeCubic, B.V. will cease to have any right to have access to those secrets at and after the closing of the sale scheduled for December 10, 2024.

    ii. Deliver a full copy of all source code used in any UltraD related device to Rembrandt to satisfy the license to Rembrandt under Section 10 of the May 21 Settlement Agreement that can not be terminated pursuant to United States Bankruptcy Code 11 U.S.C. §365(n)."

**General Concerns with Proposed Sale Order**

4.      Rembrandt has other general concerns with the changes to the proposed sale order, but addresses those separately.

5.      For brevity, Rembrandt incorporates its objections to the sale process (D.I. 789 & D.I. 797) and to the sale (D.I. 816).

**Good Faith of Buyer (sections T and 22 of proposed sale order)**

6.      There is an existing TRO against SeeCubic and Shadron Stastney and they were found to have been engaging in taking assets of Stream and making bad faith representations regarding taking credit for Stream activities.  The Court had previously so found in determining that a TRO was necessary, and thus established that SeeCubic has not acted in good faith.  In addition, SeeCubic has been in control of SeeCubic, B.V. and whether it was the Trustee or SeeCubic, B.V. blocking Rembrandt 3D Corp's repeated requests for information regarding certain due diligence items, the effect was to block anyone from gathering information about the primary assets of value and forestall any other potential investors/purchasers of Stream or its assets.  The TRO against SeeCubic was issued with good cause.  SeeCubic is still subject to a TRO and is not entitled a good faith buyer determination.  At base, no evidence exists in the record to indicate that the SeeCubic is a buyer in good faith—the record indicates the opposite.  Moreover, the Trustee provided no evidence of the buyer's good faith.  Regardless of whether the Trustee himself acted in good faith, the Trustee clearly failed to establish that SeeCubic was a buyer in good faith.  Rembrandt notes, however, that it was precluded from putting on evidence to establish the above for the Court.

4

**Highest and Best Offer – (section BB of proposed sale order)**

7. The Trustee has added language that: "(i) the Asset Purchase Agreement constitutes the highest and best offer for the Assets; (ii) the Asset Purchase Agreement presents the best opportunity to maximize and realize the value of the Assets for the benefit of the Debtors, their estates, and their creditors; and (iii) unless the Sale contemplated by the Asset Purchase Agreement is concluded expeditiously, creditor recoveries are likely to be adversely affected." However, the Trustee's proof has shown these proposed additions to be true.

8. The Trustee did not enter evidence discussing why he would engage in reasonable due diligence requests or even respond to requests for an NDA from Rembrandt 3D Corp. The proposal outlined by Rembrandt 3D Corp would have paid the secured creditors in full in accordance with their contracts and provided for far greater recovery for the unsecured creditors.  (*See* Declaration of Christopher A. Michaels In Support of Rembrandt 3d Holding Ltd.'s Objection To Motion of William A. Homony In His Capacity As Chapter 11 Trustee For Entry Of An Order Approving A Settlement Agreement And Mutual Release With Hawk Investment Holdings, Ltd., As Collateral Agent For The Secured Noteholders Of SeeCubic, Inc., Pursuant To Fed. R. Bankr. P. 9019(A) and 11 U.S.C. § 105(A) at D.I. 628 Attached as Exhibit B to Rembrandt's Objection at D.I. 789).  Rembrandt has been precluded from putting on any evidence (or cross-examining the Trustee) regarding these issues.

9. There is a currently pending plan filed by VSI. that purports to provide for far greater payments to unsecured than the proposed 363 sale. D.I. 848.

10. The proposed additions are untrue and provided without evidence (or the opportunity for discovery) to support the assertions.

**Enjoined Parties and Gating (sections 13-15 of proposed sale order)**

11. It is Rembrandt's understanding that Rembrandt will not be an "Enjoined Party," and that sections 13-15 will be clarified so that they indicate that they do not apply to Assumed Liabilities, and specifically, Rembrandt's claims and Rembrandt's intellectual property.

**Indemnification (section 32 of proposed sale order)**

12. The amended proposed sale order includes a Buyer indemnification, but Rembrandt points out that an indemnification of a future criminal act is generally unenforceable as against public policy if the indemnified party had knowledge that his or her actions would be criminal. The public policy behind the rulings is to avoid encouraging criminal behavior by providing indemnification of future acts. In this case, 18 USC § 1832 – theft of trade secrets is certainly a criminal statute and is exactly the circumstance the public policy is designed to discourage. The Trustee is transferring control of Rembrandt's trade secrets currently held by SCBV to now be in control of SeeCubic. The Trustee has been put on notice of the statute and Rembrandt's trade secrets and is partially be induced to do so by the indemnification provided by SeeCubic. The indemnification is unenforceable and should not be granted in the first instance in the proposed sale order as violating public policy. (*See Lucas v. Hackett Associates, Inc.*, 18 F. Supp. 2d 531 (E.D. Pa. 1998) citing *Globus v. Law Research Service, Inc.*, 418 F.2d 1276 (2d Cir. 1969)). Moreover, in carrying-out the sale, the Trustee may incur patent

6

infringement liability for selling or offering to sell the technology at issue—a matter clouded by Rembrandt's preclusion from submitting evidence to that effect.

## ARGUMENT

The Trustee seeks to conduct a 363 Sale of the Debtors' assets, which includes technology that incorporates certain intellectual property of Rembrandt. The Debtors cannot sell what they do not own. While the Trustee makes clear that the settlement agreement is not being assigned and that they are trying to just sell equity, no effort has been made to remove Rembrandt's intellectual property from the assets being sold.

The Trustee testified that he understood that it did not matter whether title to the bonding equipment resided with Stream or SCBV, the Buyer was ending up with control. Likewise, the Trustee knows that control of Rembrandt's trade secrets is being transferred in this proposed sale to SeeCubic, and he has not taken adequate steps to avoid transferring Rembrandt's property. Rembrandt seeks an order to prevent such transfer and to require the Trustee to properly determine what are the assets of the Debtors before proposing any other sales of the assets of the Debtors.

The Trustee has an affirmative duty to determine what is and what is not property of Debtors' estates, and he admitted under oath that he has not done so. Selling assets "as-is, where-is" does not excuse or justify his abdication of this responsibility and selling off assets of other non-Debtors parties. He cannot expand the property of the bankruptcy estate by willfully failing to take notice that other parties own the technology that has been incorporated into UltraD. It is clearly an effort to circumvent the law.

It is widely accepted, in addition to being firmly intuitive, that the Bankruptcy Code does not expand a debtor's interests in property beyond what such interests were at the petition date.

7

*Jones v. GE Capital Mortgage Co.* (*In re Jones*), 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) ("[T]he owner of an insurance policy cannot obtain greater rights to the proceeds of that policy than he would have under state law by merely filing a bankruptcy petition") (citing *First Fid. Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993)); *See also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) ("[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy -- no more, no less."), cert denied, 469 U.S. 982 (1984); *Mission Prod. Holdings, Inc. v. Tempnology*, LLC, 139 S. Ct. 1652, 1663, 203 L. Ed. 2d 876 (2019) (recognizing the "general bankruptcy rule [that] the estate cannot possess anything more than the debtor itself did outside bankruptcy" and that "[a] debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either.").

A debtor (or in this case, the Trustee), may not sell property unless that property constitutes property of the debtor's bankruptcy estate and, before approving a sale, the bankruptcy court must determine whether the property the debtor proposes to sell constitutes property of the estate. *In re Whitehall Jewelers Holdings, Inc.*, Case No. 08-11261 (KG), 2008 WL 2951974, at *9 (Bankr. D. Del. July 28, 2008) (citing *Moldo v. Clark* (*In re Clark*), 266 B.R. 163, 172 (9th Cir. B.A.P. 2001). Bankruptcy courts have consistently made this finding. *See also, Anderson v. Conine* (*In re Robertson*), 203 F.3d 855 (5th Cir. 2000) (holding that Section 363(f) does not allow a trustee to sell property that is not property of the estate); *In re Worcester Country Club Acres, LLC*, 655 B.R. 41, 47 (Bankr. D. Mass. 2023) (holding that because the ownership of the land was disputed, it "must be adjudicated in order to determine if they are property of the Debtor's bankruptcy estate, they cannot be sold under § 363(b) or (c) and pursuant to § 363(f)(4) prior to a resolution of those issues."); *In re Coburn*, 250 B.R. 401, 403 (Bankr. M.D. Fla. 1999) (it was necessary to determine whether an asset was property of the

8

estate in order to then decide whether the trustee was entitled to sell the asset pursuant to Section 363(f)); *Darby v. Zimmerman* (*In re Popp*), 323 B.R. 260, 266 (B.A.P. 9th Cir.2005); *Fresh Prepared Foods, Inc. v. Farm Ridge Foods LLC*, 2013 WL 4804816, at *3 (D.N.J. Sept. 9, 2013) ("it is well-settled that a 'bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the debtor in fact owned the property").

A sale under Section 363 "cannot be had when there is an unresolved issue of whether the subject property is 'property of the estate' . . . ." *In re Interiors of Yesterday, LLC,* Case No. 02-30356 (LMW), 2007 WL 419646 (Bankr. D. Conn. Feb. 2, 2007). *See also Warnick v. Yassian* (*In re Rodeo Canon Dev. Corp.*), 362 F.3d 603, 605–06 (9th Cir. 2004), withdrawn and modified by 126 Fed. App'x 353 (9th Cir. 2005) (this Court "may not allow the sale of property as 'property of the estate' without first determining whether the debtor in fact owned the property."); *Ross v. A V Car & Home, LLC* (*In re Brown*), Case No. 16-00466, A.P. No. 18-10026, 2019 Bankr. LEXIS 286, 2019 WL 413625, at *3 (Bankr. D.C. Jan. 30, 2019) (court may not authorize sale of property where ownership of a portion of the property is in dispute).

Rembrandt has provided overwhelming evidence that it owns its intellectual property and has included detailed proof that the UltraD products sold by Stream include Rembrandt's intellectual property. The evidence includes numerous emails, white papers, and patents that are then compared to pictures of the UltraD products.

This overwhelming evidence has been met by precisely zero contradicting evidence. Dr. Barenbrug already falsely declared that he did not sign an NDA with 3DFusion and Rembrandt responded with a copy of the NDA. Mathu Rajan has stated that Stream's technology is dependent on licenses from Rembrandt and Philips. Shadron Stastney negotiated the Rembrandt settlement agreement before Magistrate Parker when he was CFO of Stream. The CEO and CFO

9

of Stream acknowledged Rembrandt's rights and now Shadron Stastney services as the CEO of SeeCubic, the stalking horse bidder.

It is the trustee who bears the burden of establishing that the property to be sold is property of the estate under Section 363(b). *See, e.g.*, *In re Whitehall Jewelers Holdings, Inc.*, 2008 WL 2951974, at *17 (Bankr. D. Del. July 28, 2008) (holding that the debtors failed to meet their burden of establishing that the assets were property of the estate, and therefore were not permitted to sell the goods under Section 363(f)(4)). Here, the Trustee clearly has not met that burden. In fact, it is evident that, as described herein, the Trustee is attempting to sell Rembrandt's IP rights, without the required ( and non-waivable) determination or understanding (i) ownership and/or licensing of applicable IP interests in the purported Stream IP, (ii) which of Rembrandt's trade secrets SeeCubic/Hawk have misappropriated, (iii) if SeeCubic/Hawk will stop using Rembrandt's IP once a sale to a third-party has been completed, i.e., is a buyer buying a lawsuit, and (iv) if SeeCubic/Hawk has violated and continues to violate the TRO that was put in place to protect creditors like Rembrandt. Rembrandt requests further discovery and a hearing before the Debtors are allowed to conduct the proposed 363 Sale.

A purchaser must act in good faith. The trustee certainly has that obligation and knowingly selling (or trying to sell) property not owned by the Debtor would be fraud. Likewise, if the sale to a purchaser involved fraud, that would meet the criteria. We would have that if SeeCubic/Hawk bought the asset with Rembrandt IP still embedded without a license. *In re Abbotts Dairies* 788 F.2d 143. "Courts have generally....set aside sales that were tinged with fraud, error or similar defects which would in equity affect the validity of any private transaction." *Taylor v Lake* 664 F.2d 1158 and *In re Rock Indus. Mach. Corp* 572 F.2d 1198.

10

## RESERVATION OF RIGHTS

Rembrandt reserves the right to supplement this Objection to the 363 Sale or to raise additional or further objections to the 363 Sale at the Sale Hearing, or any other relevant hearing.

## CONCLUSION

For the reasons stated above, Rembrandt respectfully requests that if the Court grants a sale order that the Court modify the proposed sale order as provided above and grant such other and further relief as this Court deems just and proper.

Dated: December 8, 2024

*/s/ Andrew DeMarco*
Andrew DeMarco, Esq. (PA Bar No. 326294)
ademarco@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsímile: (302) 353-4251

*Attorney for Rembrandt 3D Holding Ltd.*