## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **Stream TV Networks, Inc., *et al*.** | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)[1]** |
| | : | |

### RESPONSE OF WILLIAM A. HOMONY, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE, TO THE MOTION OF VISUAL SEMICONDUCTOR, INC. TO STAY THE ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING THE TRUSTEE TO ENTER INTO AND PERFORM DEBTORS' OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT, (C) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND GRANTING RELATED RELIEF PENDING RESOLUTION APPEAL

William A. Homony, in his capacity as Chapter 11 Trustee (the "Trustee") of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative," and collectively with Stream, the "Debtors"), by and through his counsel, Obermayer Rebmann Maxwell & Hippel LLP, files this Response to the Motion of Visual Semiconductor, Inc. ("VSI") to Stay the Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Trustee to Enter Into and Perform Debtors' Obligations Under the Asset Purchase Agreement, (C) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and Granting Related Relief Pending Resolution Appeal (the "Motion"), and in support thereof, the Trustee respectfully states as follows:

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned cases. (D.I. #81).

## I.    **PRELIMINARY STATEMENT**

1.      Throughout these cases, VSI has taken every opportunity it could to harass the Trustee and his professionals, exert control over the Debtors, and ultimately attempt to prevent the sale of the Debtors' assets.

2.      More often than not, VSI's tactics have taken the form of over-zealous and superfluous motion practice with the intention of keeping the Trustee and his professionals so busy responding to VSI's meritless motions that they could not move forward with the sale process.

3.      This included, inter alia, repeatedly requesting expedited consideration, filing motions on the eve of holidays, filing three (3) separate appeals within a month, and VSI and Rembrandt 3D Holding Ltd.'s ("Rembrandt") joint filing of the Mandamus Petition (as defined below).

4.      Despite VSI's efforts to hinder the sale process and tie up the Trustee and his professionals, VSI's rapid succession of filings only ended up hindering VSI.

5.      For example, the Mandamus Petition was denied due to, *inter alia*, VSI and Rembrandt overlooking Federal Bankruptcy Rule of Procedure (the "Bankruptcy Rules") 8007 and failing to first apply to this Court for a stay pending appeal as required by Federal Bankruptcy Rule of Procedure (the "Bankruptcy Rules") 8007.

6.      With respect to the current Motion, VSI has once again fallen victim to its own tactics by failing to properly and timely seek a stay pending appeal.

7.      VSI allowed fourteen (14) days to elapse between the filing of the Appeal on December 9, 2024, and the filing of the Motion on December 23, 2024, and even then, noticed the Motion in the ordinary course, and did not seek emergency or expedited consideration.

8.      The Sale (as defined below) has now been consummated and has closed.  Thus, the instant Motion has been rendered moot by the Trustee closing on the unstayed Sale Order.

9.      Indeed, as the Sale has closed and the assets transferred to a good faith purchaser with Section 363(m) protections, there is nothing to be stayed by the Motion.

10.     Both the Appeal and the Motion are moot, and the Motion must be denied as such.

## II.     **BACKGROUND**

11.     The factual and procedural background of these cases are well known to this Court, and to the extent not stated herein, the Trustee incorporates the factual and procedural background contained in the Trustee Opinion and the Court's Opinion dated January 8, 2025 (the "Sale Opinion"), issued in connection with the Sale Motion and Sale Order as defined below. (D.I.# 915).

12.     On March 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

13.     Stream was involved in two (2) prior bankruptcy cases, each of which was dismissed for having been filed in bad faith. The first bankruptcy case was a Chapter 11 case initiated by the Stream TV Debtor on February 24, 2021, and docketed *In re: Stream TV Networks, Inc.*, Bankr. D. Del. No. 21-10433-KBO (the "Delaware Voluntary Bankruptcy Case") and the second was an involuntary Chapter 7 case initiated on May 23, 2021, by, inter alia, purported creditor Rembrandt, docketed *In re Stream TV Networks, Inc.*, Bankr. D. Del. 21-10848 (the "Delaware Involuntary Bankruptcy Case"). In each case, Rajan controlled the Debtors and made decisions for them.

14.     After almost a year of "acrimony" and "relative lack of progress," on January 5, 2024, this Court entered a Memorandum and Order which, among other things, appointed a Chapter 11 trustee and granted the Debtors' secured creditor Hawk Investment Holdings Limited ("Hawk") relief from the automatic stay to permit litigation against the Debtors pending in the Delaware Court of Chancery under § 225 of Title 8 of the Delaware Code (the "225 Action") to proceed (the "Trustee Order" and "Trustee Opinion") (D.I. #549 and #548, respectively).

15.     The Trustee Opinion held, in relevant part, that, due to the gross mismanagement and lack of transparency under Rajan's leadership, (i) a Chapter 11 trustee must be appointed to administer the Debtors' cases, and (ii) Rajan was no longer authorized to act on behalf of the Debtors' estates. (D.I. #548).

16.     On January 9, 2024, the Office of the United States Trustee filed a Notice of Appointment of William A. Homony to serve as the Chapter 11 trustee (the "Appointment Date") as well as an Application for the Entry of an Order Approving the Appointment of the Trustee (the "Application") (D.I. #554 and #553 respectively).

17.     On January 12, 2024, the Bankruptcy Court entered an Order granting the Application to appoint William A. Homony as the Trustee (D.I. #558).

18.     On September 30, 2024, the Trustee filed a sale motion (the "Sale Motion") with this Court seeking authorization and approval of the Stalking Horse APA (the "APA") and the Bid Procedures in connection with the sale of substantially all of the Debtors' assets on an "as is", "where is" basis, without any warranty of any kind, express or implied, to the stalking horse, SeeCubic, Inc. ("SeeCubic").

19.     The Sale Motion explicitly stated that the Trustee did not intend to sell or assign the alleged Rembrandt technology or the alleged license as a part of the APA.

4

20.    Thereafter, on November 13, 2024, the Court held a hearing and approved the Bidding Procedures and the APA with SeeCubic, once again, over the objections of VSI and Rembrandt (D.I. #788 and #789, respectively).

21.    On December 9, 2024, the Court entered an Order granting the Sale Motion (the "Sale Order") (D.I. #876), which it supported with a written opinion entered on January 8, 2025 (the "Sale Opinion") (D.I. #916).[2]

22.    Thereafter, on December 9, 2024, VSI and Rembrandt filed a joint Notice of Appeal seeking to appeal the Sale Order (the "Appeal") (D.I. #877).

23.    That same day, VSI and Rembrandt filed an Emergency Joint Petition for (I) Writ of Mandamus; (II) Writ of Prohibition; (III) Motion for Stay Pending Appeal; and (IV) In the Alternative, Motion for Withdrawal of Reference of Bankruptcy Court (the "Mandamus Petition") with the District Court seeking, primarily, the same relief sought in the Motion. A true and correct copy of the Mandamus Petition is attached as Exhibit "A" hereto.

24.    On December 12, 2024, the District Court summarily denied the Mandamus Petition due to, *inter alia*, VSI and Rembrandt's failure to first apply to this Court for a stay pending appeal as required by Bankruptcy Rule 8007. A true and correct copy of the Order denying the Mandamus Petition is attached as Exhibit "B" hereto.[3]

---

[2] The granting of the Sale Motion, the entry of the Sale Order, and the subsequent consummation of the sale shall be referred to herein as the "Sale."

[3] The Order denying the Mandamus Petition held:

> Petitioners are asking this Court to improperly bypass the bankruptcy court. Bankruptcy Rule of Procedure 8007 generally requires that a party seeking "a stay of a judgment, order, or decree of the bankruptcy court pending appeal" first seek such relief in the bankruptcy court. Fed. R. Bank. P. 8007(a)(1)(A). In the event the bankruptcy court denies the party's request to stay pending appeal, the party may then move before the district court for a stay pending appeal. That has not occurred here. Although a movant may under certain circumstances make a motion for stay in the district court where an appeal from the judgment is pending, see Rule 8007(b)(1), this provision does not apply to Petitioners. First, there is no pending appeal in this Court from the final judgment order of the bankruptcy case dismissing with prejudice the underlying proceedings. Second, a movant seeking to file a motion for stay in a district court must make a preliminary showing that first moving for a stay in the bankruptcy court would be "impracticable." Fed. R. Bank. P. 8007(b)(2).

25.     Once the Sale Order was entered, the Trustee and SeeCubic worked diligently to consummate the Sale in accordance with the Sale Order, and on January 3, 2025, the Sale closed as evidenced by the Notice of Closing on Sale of Substantially All of the Assets filed on January 6, 2025 (the "Notice of Closing"). (D.I. #915).

26.     VSI now brings the instant Motion, in the ordinary course, seeking similar relief and making the same failing argument as it did in the Mandamus Petition.  The relief requested, and hence the instant Motion has been rendered moot by the closing of the Sale under the Sale Order.

## III.    LEGAL ARGUMENT

### A.    As the Sale has Closed, both the Appeal and the Motion are Moot

27.     An appeal to the district court of an order approving the sale of a debtor's assets is moot if the debtor's assets are sold before the applicant obtains a stay pending appeal. *Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 647-651 (3d Cir. 1997) (finding an appeal from a bankruptcy court order authorizing the sale of assets from the debtor's Chapter 11 estate, after the sale had been consummated, was moot as it would affect the validity of the sale); *In re Ala. Aircraft Indus., Inc.*, 514 F. App'x 193, 195 (3d Cir.2013) ("A challenge to an authorized transaction will necessarily impact that transaction's validity if it seeks to affect the validity of a central element, such as the sale price."); *Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 499 (3d Cir.1998) (holding an order could not be reversed where the reversal would impact the validity of the auction sale of a franchise); *In re Fiori*, No. BR 09-10960, 2013 WL

---

Petitioners have made no such showing here, other than offering that the Sale Order is "to be entered imminently." ECF No. 1 at 49. There is nothing preventing Petitioners from moving to stay the Order with Judge Chan.

Exhibit "B" at FN 3.

4898-0213-6335 v3

5429264, at *12 (E.D. Pa. Sept. 30, 2013) (stating an appeal was moot where it sought to undo a sale and affect the validity of said sale).

28.    An appeal challenging a sale or lease of estate property is statutorily moot under Section 363(m) if: (1) the underlying sale or lease has not been stayed pending appeal; (2) reversal or modification of authorization to sell would affect the validity of such a sale or lease; and (3) the purchaser or lessee purchased or leased the property in good faith. 11 U.S.C. § 363(m). *In re Pursuit Cap. Mgmt., LLC*, 874 F.3d 124, 135 (3d Cir. 2017); *Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d at 499.

29.    A party seeking an appeal from an unstayed authorization of a sale to a good faith purchaser must meet a high bar to avert statutory mootness by demonstrating that a remedy can be fashioned that will not affect the validity of the sale. *In re Energy Future Holdings Corp*, 949 F.3d 806, 821 (3d Cir. 2020).

30.    The ultimate question is whether granting the relief sought would, through the appeal, effectively claw back the sale. *See Id.*

31.    Here, VSI has failed to meet the heightened bar required to avoid statutory mootness—indeed, it has made no attempt to do so.

32.    First, the Sale was not stayed pending appeal.

33.    Second, the Sale has closed - as evidenced by the Notice of Closing.

34.    As such, the relief south in the Appeal not only challenges the validity of the Sale but seeks to invalidate and undo the Sale in its entirety.[4]

35.    A remedy cannot be fashioned that will not affect the validity of the Sale.

---

[4] The relief sought in the appeal would not only undo the Sale, but also cause both this Court and Delaware State and Chancery Courts to have to revive cases that were dismissed on January 17, 2025, pursuant to the Sale Order. *See*, Sale Order at ¶ 31.

7

36.     Finally, as the Court found in both the Sale Order and Sale Opinion, the Sale was

made to a good faith purchaser, i.e., SeeCubic, pursuant to Section 363(m):

> The Court had no evidence that SeeCubic did not act in good faith
> in connection with the Sale. Rather, SeeCubic exercised the credit
> bid right it was granted under the Settlement, and no further
> participation or action was required because no Auction was had…
> there were no other bidders, and the Trustee testified that his
> settlement negotiations with Hawk and SeeCubic regarding the
> Allowed Secured Claim and SeeCubic's credit bid rights were
> robust, in good faith, and arms'-length. That credit bid right then
> served as the foundation for the Stalking Horse Bid, which was the
> only bid. The Court finds, in light of those facts, that SeeCubic is
> entitled to a finding that it acted in good faith in connection with the
> Sale.

Sale Opinion at 20; and:

> [SeeCubic] is a good faith purchaser within the meaning of section
> 363(m) of the Bankruptcy Code and, as such, is entitled to the full
> protections thereof. The Sale contemplated by the Asset Purchase
> Agreement is undertaken by the Buyer without collusion and in
> good faith, as that term is defined in section 363(m) of the
> Bankruptcy Code. The Buyer is a good faith purchaser of the Assets
> and is entitled to all the protections afforded by section 363(m) of
> the Bankruptcy Code, and accordingly, the reversal or modification
> on appeal of the authorization provided herein to consummate the
> Sale shall not affect the validity of the Sale (including, without
> limitation, the assumption and assignment of the Assigned
> Contracts) to the Buyer.

Sale Order at 25.

37.     As such, not only is the Appeal statutorily moot, but so is the Motion and the relief

requested therein.

38.     Indeed, the Motion must be moot as it seeks a stay pending the outcome of an appeal

that is now moot.

39.     Further, as the Sale has closed, the Order has been consummated, and there is

nothing to be stayed by the Motion.

8

40.     This is a direct result of and speaks to VSI's nonchalant approach to the Appeal, letting fourteen (14) days elapse between the filing of the Appeal on December 9, 2024, and the filing of the Motion on December 23, 2024.

41.     Moreover, VSI did not file the Motion on an expedited basis; instead, it opted to notice it in the ordinary course and in accordance with the Court's calendar.

42.     If VSI intended to take the Appeal seriously and believed there was any merit to the Appeal, it would have filed the Motion concurrently with the Notice of Appeal and on an expedited basis – not fourteen (14) days later in the ordinary course.

43.     It further took VSI eleven (11) days after the Order denying the Mandamus Petition was entered to file the Motion, despite the Motion being nearly identical to the Mandamus Petition and the Order denying the Mandamus Petition instructing VSI and Rembrandt to seek a stay pending appeal from this Court. *See*, Exhibit "B" at FN 3.

44.     By dragging its feet in filing the Motion, failing to seek the relief sought therein on an expedited basis, and allowing the Sale to occur, VSI has rendered both the Appeal and the Motion moot.

45.     Therefore, the Motion should be denied.

**B.     VSI has Failed to Demonstrate that it is Entitled to a Stay Pending Appeal.**

46.     Even if the Motion was not moot, VSI has failed to demonstrate that it is entitled to a stay pending the resolution of the Appeal.

47.     The decision as to whether to grant a stay of an order pending appeal lies within the sound discretion of the court. *See, e.g., In re General Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009) ("*General Motors*"); *In re Overmyer*, 53 B.R. 952, 955 (Bankr. S.D.N.Y. 1985); *In re Dial Industries, Inc.,* 137 B.R. 247, 249 (Bankr.N.D.Ohio 1992); Fed. R. Bankr.P. 8005.

9

48.     As the District Court held in *ACC Bondholder Grp. v. Adelphia Commc'ns. Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007) ("*Adelphia*"), the court must consider four (4) factors in exercising its discretion to grant a stay pending appeal: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interest that may be affected." *Id.; see also, In re Revel AC, Inc.,* 802 F.3d 558, 565 (3d Cir. 2015).

49.     The party seeking a stay pending appeal has a heavy burden and "must show 'satisfactory' evidence on all four criteria." *In re 473 W. End Realty Corp.*, 507 B.R. 496, 501–02 (Bankr. S.D.N.Y. 2014) (citing *Adelphia*, 333 B.R. at 659; *In re Turner*, 207 B.R. 373, 375 (2nd Cir. BAP 1997).

### a.   <u>Irreparable Harm</u>

50.     Irreparable harm is the principal prerequisite for a stay pending appeal. *See Rothenberg v. Ralph D. Kaiser Co.*, 200 B.R. 461, 463 (D.D.C. 1996) (quotation marks omitted); *Stern v. Bambu Sales, Inc.*, 201 B.R. 44, 46 (E.D.N.Y. 1996) (denying stay pending appeal where movant failed to show irreparable harm).

51.     In this case, it is important to note that VSI continues to argue untrue and disingenuous positions before this Court.

52.     VSI argues that the Sale Order conveys the intellectual property of Rembrandt.

53.     VSI has made this argument on numerous occasions, most recently in VSI's objection to the Sale Motion, and each time it has been summarily rejected.

54.     In the Sale Opinion, this Court specifically found that VSI had already raised, and the Court had already rejected, the argument that "the assets subject to the sale could not be sold

10

because they were embedded with non-transferable intellectual property belonging to Rembrandt and Philips…" Sale Opinion at 8.

55.    The Trustee conveyed only the membership interests in the downstream entities and not conveying intellectual property owned by or contained in the downstream entities (as those assets do not constitute property of the Debtors' bankruptcy estates).

56.    In fact, the APA, pursuant to which the assets were conveyed, excluded any physical assets that potentially included Rembrandt intellectual property:

> (j)    any grant of rights or license by Rembrandt 3D Holding Ltd. ("Rembrandt") or affiliates to Stream, including but not limited to the Rembrandt Grant of Rights in the Settlement Agreement and Mutual Release between Rembrandt and Stream dated May 23, 2021, any amendment thereto, and the Licensing Covenant between Rembrandt, Stream, and Visual Semiconductor, Inc. dated August 14, 2023, each to the extent valid, existing and enforceable as determined by a final, non-appealable order from a court of competent jurisdiction;
>
> (k)    any physical assets that contain or include Rembrandt Intellectual Property, to the extent valid, existing and enforceable as determined by a final, non-appealable order from a court of competent jurisdiction; and

Sale Order, Exhibit 1 - APA at Section 2.2(j-k).

57.    VSI cannot demonstrate irreparable harm because neither the Sale Order nor the Sale conceivably convey Rembrandt's assets or property.

58.    Moreover, to the extent any intellectual property exists in the downstream entities, Rembrandt's interests are adequately protected.

59.    The Court found that:

> … the Assets may be sold free and clear of any interests of third parties pursuant to § 363(f). Rembrandt asserts it (and Philips) has intellectual property that may not be transferred to SeeCubic. To the extent those rights exist, they are excluded under the APA. To the extent Rembrandt is arguing that Technovative's *equity interests* in

11

non-debtor subsidiaries may not be sold because those subsidiaries
are in possession of the intellectual property, the Court finds that
this argument lacks merit. Even if it did not, however, it fails to
prevent the Sale because whether the assets containing Rembrandt's
(and Philips') intellectual property are property of *the Debtors'
bankruptcy estate*, and therefore subject to the Sale, is the subject of
bona fide dispute because property of the estate only includes all
legal or equitable interests of the debtor in property. 11 U.S.C
§541(a)(1); *In re Revel AC, Inc.,* 802 F.3d 558, 573 (3d Cir. 2015)
(a bona fide dispute in the § 363(f)(4) context means that there is an
objective basis, either in law or fact, to cast doubt on the asserted
interest).

Sale Opinion at 21.

60.     Rembrandt retains its rights to proceed against the purchaser on the claims it has

related to its alleged but likely nonexistent intellectual property rights. Such claims are pending in

an ongoing lawsuit between Rembrandt and, *inter alia,* SeeCubic and Technovative, docketed as

*Rembrandt 3D Holding Ltd v. Technovative Media, Inc. et al.,* C.A. No. 1:23-cv-00193-JLH (D.

Del.), in which the only count asserted against Technovative was a request for injunctive relief

(the "District Court Case").

61.     The District Court Case is in its early stages and is stayed as to Technovative,

therefore, Rembrandt's "claims," while far from being proven, will ultimately be determined in

the District Court Case.

62.     To be certain, the Sale Order explicitly preserved Rembrandt's claims:

12.     Except as otherwise provided in the Asset Purchase
Agreement (including with respect to the Assumed Liabilities), all
persons and entities (and their respective successor sand assigns),
including, but not limited to, all debt holders, equity holders,
affiliates, governmental, tax, and regulatory authorities, lenders,
customers, vendors, employees, trade creditors, litigation claimants,
and other creditors holding claims arising under or out of, in
connection with, or in any way relating to, the Debtors, the Assets,
and the ownership, sale, or operation of the Assets prior to Closing
or the transfer of the Assets to the Buyer (or its designee)
(collectively, the "Enjoined Parties," and such claims, the "Released

Claims"), are hereby forever barred, estopped, and permanently enjoined from asserting such claims against any Buyer Party, their successors and assigns, their respective property, and the Assets (collectively, and together with the Debtors and Trustee, the "Protected Parties"). All persons and entities are forever enjoined and prohibited from taking any action to (or that could) adversely affect or interfere with the ability of the Debtors or the Trustee to transfer the Assets to the Buyer (or its designee) in accordance with the terms of the Asset Purchase Agreement and this Sale Order. <u>For the avoidance of doubt, Rembrandt 3D Holding Ltd. is not an Enjoined Party with respect to claims it purports to have against the Buyer related to Rembrandt Intellectual Property alleged to be part of the Transferred Assets.</u>

Sale Order at 19-20 (emphasis added).

63.    The Sale Opinion echoed this, stating: "… to the extent Rembrandt believes that the sale violates its intellectual property rights, its litigation claims are preserved." Sale Opinion at 19.

64.    Simply stated, nothing in the Sale Order impairs, reduces, limits, releases, or discharges the Rembrandt claims against the purchaser, and therefore, Rembrandt will suffer no harm, let alone irreparable harm, should a stay be denied.

65.    Moreover, VSI is not a creditor of the Debtors and is listed as an equity holder on the Stream's Statement of Financial Affairs. (D.I. #57).

66.    The last-minute plan of reorganization filed by VSI does not retain VSI's equity in Stream; it is canceled.

67.    In other words, at the inception of this case, VSI's equity in Stream was worth zero. That is the same position VSI enjoys today and the same position it enjoys even under the proposed plan of reorganization it filed.

68.    It is unfathomable how the Sale Order irreparably harms a party whose equity is worth zero and was always worth zero.

69.     The denial of the Motion leaves Rembrandt free to pursue the District Court Action to have its claims determined and leaves VSI exactly where it was at the onset of the cases.

### b. <u>Success on the Merits</u>

70.     "As compared to the party seeking an injunction, 'an applicant seeking a stay has, relatively speaking, more difficulty establishing the first factor, the likelihood of success on the merits, due to the difference in procedural posture.'" *See Newspaper, Newsprint, Magazine and Film Delivery Drivers, Helpers, and Handlers, Int'l Brotherhood of Teamsters, Local Union No. 211 v. PG Publ'g Co., Inc.*, Case No. 19-01472, 2019 U.S. Dist. LEXIS 232000, 2019 WL 9101872, at \*3 (W.D. Pa. Dec. 27, 2019) (quoting *Dehainaut v. Cal. Univ. of Pa.*, Case No. 10-00899, 2011 U.S. Dist. LEXIS 96841, 2011 WL 3810132, at \*2 (W.D. Pa. Aug. 29, 2011)); *see also Cipla Ltd. v. Amgen Inc.*, Case No. 19-00044, 2019 U.S. Dist. LEXIS 78384, 2019 WL 2053055, at \*1 (D. Del. May 9, 2019) ("A 'strong showing' of likelihood of success is required to prevail on a Rule 62(d) motion." (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987))).

71.     The majority of VSI's claims center around the Court's factual findings in the Sale Order, which the Court reiterated and reaffirmed in the Sale Opinion.

72.     In these cases, the Sale Order and Sale Opinion make conclusions and findings as to the good faith of the purchaser, the dispute of Rembrandt with respect to its claimed intellectual property rights in the downstream entities, and the conclusion that Rembrandt's interest, if any, is subject to Section 363(f).  Sale Opinion at 21.

73.     These findings are not likely to be reversed by the District Court.

74.     Moreover, VSI continues to argue the same issues it raised at the Bidding Procedures hearing, in their Objections to the Sale Motion, and at the sale hearing.

75.    All these issues have been specifically addressed and dismissed by the Court in the Sale Order and Sale Opinion. Sale Opinion at 17-21.

76.    The Court ultimately found that the evidence and testimony elicited by VSI amounted to very little and that "In sum, the evidence at the Sale Hearing established that, given the posture and circumstances of the Debtors and these cases, the Trustee satisfied his fiduciary duties…" Sale Opinion at 19.

77.    Indeed, VSI's positions are ones that have already been fully reviewed and denied by this Court. *See Cottillion v. United Ref. Co.*, Case No. 09-0140E, 2014 U.S. Dist. LEXIS 177243, 2014 WL 7344005, at *3 (W.D. Pa. Dec. 23, 2014) (concluding that the defendants' reliance on the same arguments that were rejected on summary judgment did not meet the burden of the analysis's first prong); *Muniauction, Inc. v. Thomson Corp.*, Case No. 01-01003, 2007 U.S. Dist. LEXIS 61459, 2007 WL 2406950, at *1 (W.D. Pa. Aug. 21, 2007) ("Defendants' position becomes no stronger through repetition.").

c.  **Public interest**

78.    It is well held that "public interest favors the expedient administration of the bankruptcy proceedings." *See In re Savage & Assocs, P.C.*, No. 05 Civ. 2072, 2005 U.S. Dist. LEXIS 3161, 2005 WL 488643, at *2 (S.D.N.Y. Feb. 28, 2005).

79.    Indeed, compromises are favored in bankruptcy precisely because they "minimize litigation and expedite the administration of a bankruptcy estate." *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

80.    In these cases, the Debtors' financial and managerial issues have been ongoing for years. Only upon the appointment of the Trustee was the wasteful litigation, the needless acrimony, and endless infighting between the Secured Creditors and the Debtors' principals concluded.

4898-0213-6335 v3

81.     The Court echoed this when it stated:

> …the Trustee satisfied his fiduciary duties in reaching the Settlement, marketing the Assets for sale, and declaring the Stalking Horse Bid the winning bid after no other bids were received. The Trustee has sound business justification for the Sale, and he is faced with non-operational Debtors, enormous liabilities, and little funding.

Sale Opinion at 19-20.

82.     There is little doubt that without the Trustee's cool-headed and fresh look at these cases, Rajan's activity, the incurrence of unnecessary and wasteful expenses, and the delay to the real creditors of the Debtors would have needlessly continued.

83.     The Sale Order and the closing of the Sale brought the major disputes in these cases to a substantial conclusion.

### d.  <u>Harm to Other Parties</u>

84.     Due to the circumstance under which the Motion was filed, this factor, the harm to other parties, should not be considered.

85.     In determining whether or not to grant a stay pending appeal, the four (4) factors are items that can be considered; all of the factors do not need to be present or considered in making such a determination. *See, e.g., General Motors*, 409 B.R. at 30.

86.     Indeed, failure to show 'satisfactory' evidence on all four (4) factors is grounds to deny a request for a stay pending appeal. *In re 473 W. End Realty Corp.*, 507 B.R. at 501–02 (citing *Adelphia*, 333 B.R. at 659; *In re Turner*, 207 B.R. at 375).

87.     As discussed in detail above, given the fact that the Sale has closed, there is nothing to be stayed by the Motion, the relief sought is moot, and no harm could possibly come from the Motion.

88.     Therefore, there is no need to consider the harm to other parties in this case.

4898-0213-6335 v3

### C. **VSI Must Post a Bond if it is Granted a Stay Pending Appeal**

89.     Where a movant seeks imposition of a stay without a bond, "the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement." *Triple Net Invs. IX, LP v. DJK Residential (In re DJK Residential, LLC)*, No. 08-10375, 2008 U.S. Dist. LEXIS 19801, 2008 WL 650389, at *2 (S.D.N.Y. Mar. 7, 2008); *see also General Motors*, 409 B.R. at 30 (noting that the burden on the movant seeking the extraordinary relief of a stay is a "heavy" one).

90.     VSI has neither attempted nor come close to demonstrating why a bond should not be required.

91.     Therefore, VSI must be required to post a bond if it is granted a stay pending appeal.

## IV.     **CONCLUSION**

Therefore, for all the above reasons, the Trustee respectfully requests that the Court enter an order: (i) denying the Motion in its entirety; (ii) deeming the Motion and the relief sought therein moot; and (iii) granting such other relief as the Court deems just and equitable.

Respectfully Submitted,

Dated: January 22, 2025        By: */s/ Michael D. Vagnoni*
                                    Edmond M. George, Esquire
                                    Michael D. Vagnoni, Esquire
                                    OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                                    Centre Square West
                                    1500 Market Street, Suite 3400
                                    Philadelphia, PA 19102
                                    Telephone: (215) 665-3066
                                    Facsimile: (215) 665-3165
                                    E-mail:  edmond.george@obermayer.com
                                             michael.vagnoni@obermayer.com

*Counsel to William A. Homony Chapter 11 Trustee*

4898-0213-6335 v3