# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Stream TV Networks, Inc.,** *et al*. | **Bankruptcy No. 23-10763 (DJB)** (Jointly Administered)[1] |
| **Debtors.** | Hearing Date: August 13, 2025<br>Hearing Time: 9:30 a.m.<br>Hearing Place: Courtroom #2 |

**OMNIBUS MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER: (I) APPROVING A SETTLEMENT AGREEMENT WITH REMBRANDT 3D HOLDING, LTD. PURSUANT TO FED. R. BANKR. P. 9019(a) AND 11 U.S.C. § 105(a); (II) ENFORCING DEFENSE AND INDEMNITY OBLIGATIONS OF SEECUBIC, INC.; AND (III) GRANTING RELATED RELIEF**

William A. Homony (the "Trustee"), in his capacity as Chapter 11 trustee of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative" or when referred to with Stream, the "Debtors"), by and through his counsel, Coren & Ress, P.C., files this Omnibus Motion for Entry of an Order: (i) Approving a Settlement Agreement (the "Rembrandt Settlement Agreement" or the "Agreement") with Rembrandt 3D Holding Ltd. ("Rembrandt" or, in conjunction with the Trustee, may be generally referred to as "Party" or collectively, as the "Parties") pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a); (ii) Enforcing Defense and Indemnity Obligations of SeeCubic, Inc. ("SeeCubic"); and (iii) Granting Related Relief (the "Motion"), and in support thereof, respectfully avers as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764. (D.I. #95).

4897-6654-3698 v5

2. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (O).

3. The statutory basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

## II. BACKGROUND

4. The factual and procedural background of these cases are well known to this Court, and to the extent not stated herein, the Trustee incorporates the Court's recitations in the Trustee Opinion (hereinafter defined), and the Opinion dated January 8, 2025 (the "Sale Opinion"), issued in connection with the Sale Motion and Sale Order as defined below. (D.I. #916).

### A. Procedural History and the Trustee's Appointment

5. On March 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of the United States Bankruptcy Code.

6. Stream was involved in two (2) prior bankruptcy cases, the first being a Chapter 11 case initiated by Stream on February 24, 2021, and docketed *In re: Stream TV Networks, Inc.*, Bankr. D. Del. No. 21-10433-KBO (the "Delaware Voluntary Bankruptcy Case") and the second being an involuntary Chapter 7 case initiated on May 23, 2021, by, *inter alia*, Rembrandt, docketed *In re Stream TV Networks, Inc.*, Bankr. D. Del. 21-10848 (the "Delaware Involuntary Bankruptcy Case").

7. On January 5, 2024, this Court entered a Memorandum and Order which, among other things, appointed a Chapter 11 trustee (the "Trustee Order" and "Trustee Opinion") (D.I. #549 and #548, respectively).

8. The Trustee Opinion held, in relevant part, that, due to the gross mismanagement and lack of transparency under the Debtors' founder and CEO, Mathu Rajan's ("Rajan") leadership, (i) a Chapter 11 trustee must be appointed to administer the Debtors' cases, and (ii) Rajan was no longer authorized to act on behalf of the Debtors' estates. (D.I. #548).

9. On January 9, 2024, the Office of the United States Trustee filed a Notice of Appointment of William A. Homony to serve as the Chapter 11 trustee (the "Appointment Date") as well as an Application for the Entry of an Order Approving the Appointment of the Trustee (the "Application") (D.I. #554 and #553 respectively).

10. On January 12, 2024, the Bankruptcy Court entered an Order granting the Application to appoint William A. Homony as the Trustee (D.I. #558).

11. The Trustee is the sole representative of the Debtors' bankruptcy estates, has been vested with exclusive authority to manage the Debtors' bankruptcy estates, and has the duties enumerated under the Bankruptcy Code, including, *inter alia*, to act for the benefit of all creditors and to maximize the value of the Debtors' bankruptcy estate.

### B. The Debtors' Transactions with Rembrandt

12. On May 23, 2021, Stream, Rembrandt, and others executed a settlement agreement arising out of litigation instituted by Rembrandt against Stream and others in New York (the "NY Settlement Agreement"). A true and correct copy of the NY Settlement Agreement is attached hereto as **Exhibit "A."**

13. The same day that Stream and Rembrandt entered into the NY Settlement Agreement, Rembrandt, as one of three (3) petitioning creditors, filed the Delaware Involuntary Bankruptcy Case against Stream.

14. The involuntary proceeding was ultimately dismissed.

3

15. Thereafter, on August 12, 2023, after the current bankruptcy case was filed and without Bankruptcy Court authority, Stream and Rembrandt agreed to amend the NY Settlement Agreement (the "Amendment"). A true and correct copy of the Amendment is attached hereto as **Exhibit "B."**

16. The Amendment reflected certain proposals by Stream contained in the Disclosure Statement filed earlier on July 13, 2023 (D.I. #293)[2] including, *inter alia*, changes to the payments made to Rembrandt, and adding a clause detailing what would happen to the NY Settlement Agreement in the event that control of Stream were to change hands. *See Id.*

17. Two (2) days later, on August 14, 2023, and without the approval of the Bankruptcy Court, Rembrandt and Stream entered into a licensing covenant (the "Licensing Covenant" and, together with the NY Settlement Agreement and the Amendment, the "Rembrandt Agreements"). A true and correct copy of the Licensing Covenant is attached hereto as **Exhibit "C."**

18. The Licensing Covenant purported to memorialize the grant of the license from Rembrandt to Stream, as alleged in the NY Settlement Agreement and the Amendment, and prevented the Stream subsidiaries from using any license purportedly granted to Stream. *See Id.*

C. **Rembrandt's Claims**

19. In total, Rembrandt filed three (3) proofs of claim (the "Rembrandt Proofs of Claim") against the Debtors:

- A claim in the amount of $ 1,212,407,000.00 filed against Stream on April 14, 2023 (Stream Claim No. 2-1);

- A claim in the amount of $1,212,407,000.00 filed against Technovative on October 22, 2024 (Technovative Claim No. 26-1); and

- A claim in the amount of $1,212,407,000.00 filed against Stream on October 22, 2024 (Stream Claim No. 26-1).

---

[2] The Disclosure Statement filed by Stream on July 13, 2023 (D.I. #293) was not approved.

20. The Trustee has objected to the Rembrandt Proofs of Claim as further detailed below.

21. On the Petition Date, Technovative scheduled Rembrandt as its only creditor having a "breach of contract" claim in the amount of "$10,000,000 +" and listed the claim as contingent, unliquidated, and disputed and, thus, not an allowed claim. (Technovative Bankruptcy Docket, D.I. #1 and #3).

22. Two (2) weeks later, when Technovative filed its Schedules of Assets and Liabilities, Rembrandt's claim ballooned to $100 million dollars, more than ten (10) times the original amount, and was listed by Rajan as undisputed, noncontingent, and liquidated, and therefore, an "allowed" claim for "goods and services." (Technovative Bankruptcy Docket, D.I. #50).

23. On October 10, 2024, the Trustee filed an amendment to the Technovative Schedules to list the Rembrandt claim at $0.00. In response, Rembrandt filed a proof of claim against Technovative for $1.2 billion. (Technovative Claim No. 26-1).

### D. The Settlement with Hawk

24. Through the Trustee's substantial efforts, a settlement was reached with Hawk Investment Holdings Limited ("Hawk"), as collateral agent for the secured creditors, resolving several disputes between the parties and providing for a carve out valued in the minimum amount of $9,000,000.00 for the Debtors' estates, and a mechanism for the Debtors' assets to be exposed to a sale process, whereby the true value of the assets could be assessed by exposing them to the market (the "Hawk Settlement").

25. On May 6, 2024, the Trustee filed a Motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure to approve the Hawk Settlement (the "Hawk 9019 Motion") (D.I.

5

#630).

26. Both Visual Semiconductor, Inc. ("VSI") and Rembrandt opposed the Hawk 9019 Motion (D.I. #642 and #643, respectively).

27. Ultimately, this Court approved the Hawk Settlement (the "Hawk 9019 Order") (D.I. #653).

### E. The Sale of the Debtors' Assets

28. On September 30, 2024, the Trustee filed a sale motion (the "Sale Motion," D.I. 750) with this Court seeking authorization and approval of the Stalking Horse APA (the "APA") and the Bid Procedures in connection with the sale of substantially all of the Debtors' assets on an "as is", "where is" basis, without any warranty of any kind, express or implied, to the stalking horse, SeeCubic, Inc.

29. Thereafter, on November 13, 2024, the Court held a hearing and approved the Bidding Procedures and the Stalking Horse APA with SeeCubic, once again, over the objections of VSI and Rembrandt (D.I. #788 and #789, respectively).

30. On December 9, 2024, the Court entered an Order granting the Sale Motion (the "Sale Order") (D.I. #876), which it supported with a written opinion entered on January 8, 2025 (the "Sale Opinion") (D.I. #916).

31. The APA and the Sale Order specifically excluded the intellectual property of Rembrandt. *See* APA, Section 2.2; Sale Order (D.I. #876), ¶6.

32. Under the APA and the Sale Order, SeeCubic has a duty to indemnify, defend, and hold harmless the Debtors and their bankruptcy estates, the Trustee and his Court-approved professionals, and certain related parties (the "Indemnified Parties") from any claims that the third

6

party intellectual property, including the intellectual property of Rembrandt, was included in the assts sold pursuant to the Sale Order. *See* APA, Section 9.2; Sale Order (D.I. #876), ¶90.

33. Once the Sale Order was entered, the Trustee and SeeCubic worked diligently to consummate the Sale in accordance with the Sale Order; and on January 3, 2025, the Sale closed as evidenced by the Notice of Closing on Sale of Substantially All of the Assets filed on January 6, 2025 (the "Notice of Closing"). (D.I. #915).

### F. Actions by and Against Rembrandt

34. Rembrandt has filed three (3) separate appeals in connection with the Hawk Settlement and the Sale process, including the appeal of the Sale Order and several orders ancillary thereto, with the appeals currently pending in the United States District Court for the Eastern District of Pennsylvania.

35. These appeals include:

- Rembrandt's appeal of Hawk 9019 Order, docketed under E.D. Pa. No. 24-cv-2727 (the "9019 Appeal") (D.I. #685);

- Rembrandt and VSI's joint appeal of the Sale Order, docketed under E.D. Pa. No. 24-cv-6617 (the "Sale Appeal") (D.I. #877); and

- Rembrandt and VSI's joint appeal of the order denying stay pending appeal of Sale Order, docketed under E.D. Pa. No. 25-cv-00751 (the "Stay Appeal" and together with the 9019 Appeal and Sale Appeal, the "Appeals") (D.I. #941).

36. Rembrandt has also commenced three (3) actions against the Trustee, the Debtors, and/or other Trustee-related parties, including:

- *Rembrandt 3D Holding Ltd. v. Technovative Media, Inc., et al.*, 23-cv-00193-JLH, filed February 21, 2023, in the United States District Court for the District of Delaware (the "Delaware District Court Action");

- *Rembrandt 3D Holding Ltd. v. William A. Homony, in His Capacity as Chapter 11 Trustee, Stream TV Networks, Inc. and Technovative Media, Inc., et al.*, 24-00142-djb, filed December 4, 2024, in the United States Bankruptcy Court for

7

the Eastern District of Pennsylvania (the "Rembrandt Adversary Proceeding")[3]; and

- *Rembrandt 3D Holding Ltd. v. William A. Homony, in His Capacity as Chapter 11 Trustee, SSG Advisors, LLC, J. Scott Victor, Teresa C Kohl, Craig D. Warznak, Samuel P. Charlton, and Alexander D. Lamm*, 24-cv-06706-JMG, filed December 17, 2024, in the United States District Court for the Eastern District of Pennsylvania (the "Pennsylvania District Court Action" and together with the Delaware District Court Action and the Rembrandt Adversary Proceeding, the "Rembrandt Actions").

37. Additionally, on or about April 30, 2025, the Trustee commenced an adversary proceeding by filing a Complaint in the Bankruptcy Court against, among others, Rembrandt, captioned *Homony v. Rembrandt 3d Holding Ltd.*, et al., Adv. No. 23-10763 (DJB), seeking, *inter alia*, avoidance of the obligations and transfers under the Rembrandt Agreements and objecting to the Rembrandt Proofs of Claim (the "Trustee Adversary Proceeding").

### G. SeeCubic's Breach of its Defense and Indemnity Obligations

38. In accordance with the APA and the Sale Order, the Trustee, by letter dated March 24, 2025, made a demand upon SeeCubic to defend and indemnify the Trustee and other indemnified parties in connection with the Sale Appeals and the Rembrandt Actions. *See* APA, Section 9.2; Sale Order (D.I. #876), ¶ 90. A true and correct copy of the Trustee's March 24, 2025, indemnification demand is attached hereto as **Exhibit "D."**

39. SeeCubic, after ignoring the Trustee's demand for three (3) months, responded in a manner that rejected the Trustee's demand and repudiated its defense and indemnity obligations under the Sale Order and SeeCubic APA. A true and correct copy of SeeCubic's letter dated June 24, 2025, which repudiated SeeCubic's defense and indemnity obligations, is attached hereto as **Exhibit "E."**

---

[3] The Trustee was dismissed as a defendant in the Rembrandt Adversary Proceeding on April 15, 2025 [Adversary Proceeding Docket No. 8].

8

40. Having breached and repudiated its defense and indemnity obligations, SeeCubic has waived its right to control the defense of the proceedings pending against the Trustee and is obligated to indemnify the Indemnified Parties in connection with a reasonable settlement of the claims and obligations with respect to which SeeCubic has a duty to defend and indemnify.

### H. The Settlement with Rembrandt

41. Taking into consideration the expense and uncertainty with respect to continued litigation of the Rembrandt Pennsylvania District Court Action (and other Rembrandt Actions), the Appeals, the Rembrandt Proofs of Claims and the Trustee Adversary Proceeding, the Parties have agreed to compromise and settle all disputes between them, without admission of liability or fault by any Party, and without conceding the strength or weakness of any claims or defenses.

42. The settlement (the "Settlement") between the Trustee and Rembrandt is the product of robust arm's-length negotiation and is embodied in a Settlement Agreement dated June 30, 2025 (the "Rembrandt Settlement Agreement," a copy of which is attached hereto as **Exhibit "F"**).

43. In the Trustee's business judgment, informed by the advice of special litigation counsel and intellectual property counsel, the continuing attorneys' fees and related litigation to defend against Rembrandt's Pennsylvania District Court Action alone will substantially exceed the Settlement Payment of $1,250,000.00.

44. Under the circumstances, the Trustee has determined that the Rembrandt Settlement Agreement provides the best path forward for the bankruptcy estates and the Debtors and offers them the best opportunity to make a meaningful distribution to creditors.

45. In the Trustee's business judgment, the time is right for a full resolution, which

9

results in payments to creditors, rather than continuing to commit limited resources to the litigation with Rembrandt.

46. The pertinent terms of the Settlement[4] are:

- Effective Date. The term "Effective Date" shall mean the date on which the last of the following events shall have occurred: (i) the Bankruptcy Court shall have entered an order approving this Agreement (the "Approval Order"); and (ii) the Bankruptcy Court shall have entered judgment in the amount of the Rembrandt Settlement Payment which is not a recourse obligation of the Debtors (i.e., $1,150,000.00) in favor of the Trustee and against SeeCubic in connection with the Trustee's request for indemnification (the "Indemnification Judgment").

- Rejection of NY Settlement Agreement. The Trustee shall reject the NY Settlement Agreement. Rembrandt shall retain its rights as a licensee, if any, under Bankruptcy Code section 365(n)(1)(B). The Trustee agrees that he: (a) will not interfere with Rembrandt's efforts to exercise such rights against third parties, (b) will take no position on the nature and extent of such rights as a licensee as between Rembrandt and third parties, and (c) will have no obligation to act or assist Rembrandt in exercising such rights as a licensee as between Rembrandt and third parties.

- Release of Obligations Under the Amendment and Licensing Covenant. In addition to any other releases set forth herein, Rembrandt shall agree to release and discharge the Debtors and the Trustee from any obligations under the Amendment and Licensing Covenant, and Rembrandt shall take no action against the Trustee and Debtors in connection therewith.

- Treatment of Rembrandt Proofs of Claim and Trustee's Plan of Liquidation. In full and final settlement of the Rembrandt Proofs of Claim, the Trustee shall grant Rembrandt an allowed general unsecured claim against Stream in the amount of $1,000,000.00 (the "Allowed Claim"). The Allowed Claim will be in a separate class in the Trustee's proposed plan of liquidation with treatment consistent with this settlement. Rembrandt shall support and not oppose confirmation of the Trustee's plan of liquidation and, on or before the deadline to do so, submit a written acceptance of any Plan containing terms consistent with this agreement in the full value of its unsecured claim. Within seven (7) days of the Effective Date, Rembrandt shall file a stipulation to effectuate the dismissal of Technovative with prejudice in the Delaware District Court Action.

---

[4] In the event there is a discrepancy between the terms set forth in the Rembrandt Settlement Agreement and the summary of same contained in this Motion, the Rembrandt Settlement Agreement shall control.

10

- Settlement Payment. In Settlement of the Pennsylvania District Court [Action], the Trustee shall make a settlement payment to Rembrandt in the amount of $1,250,000.00 (the "Rembrandt Settlement Payment") as follows: (a) $100,000 of the Rembrandt Settlement Payment shall be a recourse obligation of the Debtors, and shall be paid within fifteen (15) days of the Effective Date; (b) the balance of the Rembrandt Settlement Payment, i.e., $1,150,000.00, shall be nonrecourse to the Trustee/Debtors, with recourse only to and against the Trustee/Debtors' right to indemnification, advancement and payment from SeeCubic. The Trustee agrees to make reasonable efforts seeking the entry of judgment in favor of the Trustee and against SeeCubic in the amount of $1,150,000.00 (the "Indemnification Judgment." The Trustee reserves the right to seek repayment from SeeCubic of other indemnification obligations including but not limited to the $100,000 recourse payment from the Debtors, attorneys' fees, costs and other expenses incurred in defense of claims asserted by Rembrandt.

- Assignment of the Indemnification Judgment. The Trustee shall assign the Indemnification Judgment to Rembrandt, in full and complete payment and satisfaction of his and/or the Debtors' remaining obligations to pay the Rembrandt Settlement Payment. The Trustee and/or Debtors shall have no obligation to take action to collect the Indemnification Judgment, and the risk of collection shall remain with Rembrandt.

- Bankruptcy Court Approval. Promptly after all parties have executed this Agreement, the Trustee shall file a motion (the "9019 Motion") with the Bankruptcy Court requesting approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and entry of the Indemnification Judgment against SeeCubic.

- Releases. The Parties shall exchange mutual releases.

- Cancellation of Agreement. If the Effective Date does not occur within six (6) months of the execution of this Agreement, unless the Settling Parties otherwise agree in writing, this Agreement will be null and void and each of the Settling Parties will revert to their respective positions that existed on the date immediately prior to execution of this Agreement.

47. Therefore, through the Motion, the Trustee now seeks: (i) the Court's approval of the Settlement and the Rembrandt Settlement Agreement; (ii) the enforcement of SeeCubic's defense/indemnification obligations; and (iii) the entry of a judgment against SeeCubic arising out of its defense/indemnification obligations.

11

### III. RELIEF REQUESTED

#### A. The Rembrandt Settlement Agreement Should be Approved

48. The Trustee respectfully requests entry of an Order approving the Rembrandt Settlement Agreement pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019.

49. Bankruptcy Rule 9019(a) provides that, "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement."

50. The decision to approve or disapprove a settlement is within the sound discretion of the bankruptcy judge." *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Covenant Partners, L.P.*, 555 B.R. 490, 493 (Bankr. E.D. Pa. 2016) ("Approval of the settlement lies within the sound discretion of the Bankruptcy Court.").

51. "Settlements under Bankruptcy Rule 9019 are favored in bankruptcy as they avoid the expenses associated with litigating claims that can prove burdensome and expensive for the bankruptcy estate." *In re Legarde*, 654 B.R. 74, 84–85 (Bankr. E.D. Pa. 2023).

52. "In deciding whether to approve a settlement, the Court must determine whether the proposed settlement is in the best interests of the estate. The Third Circuit has held that this particular process of bankruptcy court approval requires the Court to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* (citing *In re Martin*, 91 F.3d at 393). "Consistent with *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163–64, 20 L.Ed.2d 1 (1968), the Third Circuit recognizes four criteria a court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, along with the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of

12

creditors." *Covenant Partners*, 555 B.R. at 493 (citing *Martin*, 91 F.3d at 393). "When considering the relevant factors courts are admonished to avoid second-guessing the Trustee in the exercise of his or her business judgment, and instead endeavor to ascertain whether the terms of the proposed settlement fall below the lowest range of reasonableness." *Covenant Partners*, 555 B.R. at 493.

53. Here, the Rembrandt Settlement Agreement falls well within the range of reasonableness for purposes of satisfying the Bankruptcy Rule 9019 criteria.

54. The disputes being settled by the Parties involve complex issues that would require the Trustee to expend substantial sums to prosecute and defend. The Rembrandt Settlement Agreement resolves these matters in a manner that, in the exercise of the Trustee's business judgment, is appropriate and beneficial to the bankruptcy estates.

55. Faced with mounting administrative expenses and potentially insolvent estates, and understanding the complex, lengthy, and uncertain path forward in litigating the Parties' disputes, the Trustee has reasonably selected an option that minimizes additional administrative expenses and avoids the substantial additional expenses to be incurred with continuing a litigation-based approach to a resolution of the Parties' disputes – a path that is expensive, speculative, and fraught with peril.

56. The Rembrandt Settlement Agreement effectuates a global resolution of a myriad of pending proceedings involving Rembrandt, including the Pennsylvania District Court Action, in which Rembrandt has brought claims against the Trustee and his court-authorized investment banker (which the Trustee is obligated to defend and indemnify), asserting claims for patent infringement, misappropriation of trade secrets, and breach of contract.

57. The complexity of the issues raised in the Pennsylvania District Court Action is self-evident from Rembrandt's voluminous and detailed Complaint, which encompasses two

13

hundred nineteen (219) paragraphs over nearly fifty (50) pages, and seeks significant monetary and non-monetary damages, including treble damages for patent infringement, exemplary damages for willful and malicious appropriation of trade secrets, and attorneys' fees.

58. It is thus apparent that the defense of the Pennsylvania District Court Action, which involves nuanced questions of intellectual property and patent law and will likely require significant and protracted litigation to fully adjudicate, would in and of itself rapidly deplete the limited funds present in the Debtors' Estates.

59. In the Trustee's business judgment, informed by the advice of special litigation counsel and intellectual property counsel, the continuing attorneys' fees will substantially exceed the Settlement Payment of $1,250,000 and, if the Rembrandt Settlement Agreement is not approved, the Debtors' administrative expenses will continue to increase, reducing or potentially eliminating the distribution to unsecured creditors.

60. While the Trustee may ultimately succeed in defending against Rembrandt's claims, any victory would be pyrrhic, as defense costs would exceed the Settlement Payment. Moreover, Rembrandt's past litigation conduct suggests that any outcome in the Trustee's favor would likely be subject to multiple appeals, potentially delaying this matter for years.

61. Accordingly, the *Martin* factors weigh heavily in favor of settlement approval. The Trustee is not required to "conclusively establish that he would be successful at a trial on these issues. That would defeat the purpose of the settlement and eliminate any cost savings from it. All that he must do is establish to the reasonable satisfaction of [the Court] that, all things considered, it is prudent to eliminate the risks of litigation to achieve specific certainty though it might be considerably less (or more) than were the case fought to the bitter end." *In re Aloha Racing Found., Inc.*, 257 B.R. 83, 88 (Bankr. N.D. Ala. 2000) (quotation marks and citations omitted); *see also In*

14

*re Nutraquest, Inc.*, 434 F.3d 639, 646 (3d Cir. 2006) (affirming the bankruptcy court's approval of a settlement of wrongful death claims brought against a bankrupt drug manufacturer's Chapter 11 estate even though there was allegedly no possibility that the claims could have been successfully prosecuted because balancing the expense, complexity, and delay of litigation with the benefits of fast resolution satisfied the *Martin* factors); *In re Teknek, LLC*, 402 B.R. 257 (Bankr.N.D.Ill.2009) (though likelihood of success on the merits of claims was high, settlement agreement was approved to avoid increased costs of continuing litigation); *In re Legendary Field Exhibitions, LLC*, No. 19-50900-CAG, 2021 WL 4978373, at *8 (Bankr. W.D. Tex. Oct. 26, 2021) (approving a settlement which would "prevent defense costs from consuming most of what remains in the Estate" because "[t]he Estate has limited funds to pay creditors, and protracted litigation would create administrative claims that would substantially reduce, and maybe even consume the remaining Estate." (internal quotation marks omitted)).

62. Simply stated, the Rembrandt Settlement Agreement eliminates all litigation risk posed by the Pennsylvania District Court Action in return for a payment which is less than the cost of defending that action. Additionally, the settlement effectuates complete peace with Rembrandt, reducing Rembrandt's claim by over ninety-nine point nine percent (99.9%) and eliminating further risk posed by the pending Rembrandt Appeals.

63. This is no doubt a prudent course of action when faced with potential exposure that could wipe out the Debtors' limited resources – the Trustee cannot, in the exercise of his business judgment, expose creditors to that risk when there is potential for an assured recovery through settlement. The settlement is eminently reasonable, eliminates all delay, and immediately halts the rapid depletion of the limited funds in the Debtors' Estates for the benefit of all creditors.

64. Accordingly, the Trustee believes that the Rembrandt Settlement Agreement is in

15

the best interests of the Debtors' estates and respectfully requests that it be approved by this Court.

### B. SeeCubic Breached Its Duty to Defend and Indemnify the Debtors and the Trustee and Is Liable for the Settlement Amount

65. Paragraph 30 of the Sale Order and Section 9.2 of the APA require SeeCubic to

> indemnify and hold harmless the Sellers [i.e., the Debtors], the Sellers' bankruptcy estates, the Trustee and his Court approved professionals, their members, officers, directors and/or employees for any claim or cause of action alleging that any Intellectual Property of any third party, including but not limited to the Rembrandt Intellectual Property, has been improperly transferred or sold to the Buyer (or any Designated Buyer) as part of the Transferred Assets at Closing through the sale pursuant to this Order including the defense thereof and the indemnity provided for herein shall be broadly construed to include but shall not be limited to the reimbursement of all costs, professional fees and expenses including legal fees, when incurred by the Trustee, and all expert fees, court costs, and expenses and, in the event that the Sellers' bankruptcy estates, the Trustee or his Court approved professionals, their members, officers, directors and/or employees are sued by any third party as a consequence of (i) the Closing, (ii) the transfer of the Transferred Assets, or (iii) the utilization of the Transferred Assets, including but not limited to, the Rembrandt Intellectual Property, Buyer (or any Designated Buyer) will immediately enter a defense on behalf of the Sellers, the Sellers' bankruptcy estates, the Trustee or his Court approved professionals, their members, officers, directors and/or employees . . . .

*See* APA, Section 9.2; Sale Order (D.I. #876), ¶ 90.

66. The Pennsylvania District Court Action falls squarely within the scope of SeeCubic's defense and indemnification obligations.

67. In the Pennsylvania District Court Action, Rembrandt sued the Trustee and his court-approved advisors, asserting claims for patent infringement, misappropriation of trade secrets, and breach of the Rembrandt Agreement, and seeking injunctive relief.

68. Rembrandt's allegations against the Trustee and his professionals all center around their actions in facilitating and entering into the Section 363 Sale on behalf of the Debtors' estates. *See, e.g.,* Pennsylvania District Court Action, Complaint [Docket No. 1] (attached hereto as **Exhibit "G"**) at ¶¶ 167-69, 185, 199 (patent infringement claims based on Trustee's alleged failure

16

to prevent Buyer's "infringing actions" and to "remove Rembrandt's patented technology from the Debtors' assets being sold"), ¶ 206 (misappropriation claim based on Trustee allegedly "selling or allowing the sale" of assets at issue), and ¶ 216 (breach of contract claim based on Trustee allegedly "taking actions during his administration of the Debtors' estates" that include "selling," "allowing the sale of," and "offering for sale" the assets at issue).

69. Indeed, the fundamental allegation underlying Rembrandt's Complaint is that "[t]he assets Defendants have sold include the intellectual property of Rembrandt." *Id.* at ¶ 12.

70. Accordingly, under the plain language of the Sale Order and APA, it is clear that SeeCubic is required to defend and indemnify the Trustee and his professionals from the claims brought in the Pennsylvania District Court Action.

71. SeeCubic – both via silence during the three (3) months that passed between the Trustee's demand for defense and indemnification and SeeCubic's response thereto, and explicitly in a June 24, 2025, letter repudiating its defense and indemnification obligations – has acted in bad faith in refusing to honor its duty to defend. *See, e.g., Zurich Am. Ins. Co. v. Syngenta Crop Prot. LLC*, 2022 WL 4091260, at *8 (Del. Super. Ct. Aug. 24, 2022) ("If even one count or theory alleged in the complaint is covered, the duty to defend arises.").

72. SeeCubic's refusal to honor its defense and indemnification obligations is a direct violation of the Sale Order. Sale Order ¶ 90 (D.I. #876).

73. Upon the breach of an obligor's duty to defend, the beneficiary of that duty may enter into a reasonable settlement of the underlying action and is then entitled to reimbursement from the obligor for the costs of settlement. *Philadelphia Indem. Ins. Co. v. Bogel*, 269 A.3d 992, 1013 (Del. Super. Ct. 2021) ("As a general rule, when an insurer wrongfully refuses to defend a claim, the insured may enter into a reasonable settlement with the claimant, absent fraud, collusion,

17

or bad faith, and sue the insurer for indemnity . . . for the amount paid in settlement. Courts have recognized that an insured who has been exposed to the sharp thrust of personal liability by an insurer's breach of its obligations need not indulge in financial masochism." (internal quotation marks, citations, and alteration marks omitted)); *see also AIG Specialty Ins. Co. v. Conduent State Healthcare, LLC*, No. 35, 2024, 2025 WL 369450, at *5 (Del. Feb. 3, 2025).[5]

74. Here, SeeCubic's abdication of its duty to defend left the Trustee with little choice but to defend the litigation and consider settlement opportunities should they arise.

75. As set forth in detail above, the Rembrandt Settlement is eminently reasonable, as it eliminates all litigation risk posed by the Pennsylvania District Court Action in return for a payment which is less than the cost of defense.

---

[5] While *Conduent* applied New York law, the Supreme Court of Delaware made clear that the principal of law expressed therein was the well settled majority rule via citation of the leading treatises addressing the issue:

> Restatement of the L. of Liab. Ins. § 19 (Am. L. Inst. 2019) ("An insurer that breaches the duty to defend a legal action forfeits the right to assert any control over the defense or settlement of the action."); 14A Jordan R. Plitt et al., Couch on Insurance § 202:6 (updated 3d ed. 2024) . . . ("When an insurer fails to fulfill its duty to defend, it becomes liable for all foreseeable damages flowing from the breach, including amounts paid in settlement."); 1 Ken Brownlee et al., *Excess Liability: Rights and Duties of Commercial Risk Insureds and Insurers* § 4:6 (updated 4th ed. 2024) ("If a policyholder makes a reasonable settlement of a claim or suit brought against him after the insurer has wrongfully denied coverage and defense, the insurer will be required to reimburse the insured for the settlement plus all reasonable expenses incurred in negotiating the settlement within the policy limits, assuming neither negligence nor bad faith was involved. This has been so held even if some undistinguishable item comprising the total verdict may have been questionable as to coverage." (footnotes and citations omitted)).

*Conduent*, 2025 WL 369450, at *5 n.30.

76. Accordingly, the Debtors and the Trustee are entitled to indemnification from SeeCubic for the full settlement amount, i.e., $1,250,000.00.

77. Given SeeCubic's flagrant disregard of the Sale Order, the Trustee respectfully requests that this Court enforce SeeCubic's defense and indemnity obligations by entering judgment against SeeCubic in the full settlement amount ($1,250,000.00), $1,150,000.00 of which will be assigned to Rembrandt in accordance with the Rembrandt Settlement Agreement. *See, e.g., In re SelectBuild Illinois, LLC*, No. 09-12085 (KJC), 2015 WL 3452542, at *6 (Bankr. D. Del. May 28, 2015) ("It is 'axiomatic that a court possesses the inherent authority to enforce its own orders.'" (collecting cases)); *In re Rizzo*, 43 B.R. 702, 704 (Bankr. E.D. Pa. 1984) ("It is axiomatic that we have the inherent judicial authority to interpret and enforce our own Orders.").

## IV. NOTICE

78. The Trustee's counsel has served this Motion and Notice of Motion, Response Deadline and Hearing Date upon: (a) the Office of the United States Trustee, (b) counsel to the former debtor in possession, (c) counsel to Rembrandt, (d) counsel to SeeCubic, and (e) all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. The Trustee's counsel has also served the Notice of Motion, Response Deadline, and Hearing Date upon all the Debtors' creditors.

[Remainder of page intentionally left blank.]

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court enter an Order: (i) granting the relief sought in the Motion; (ii) approving the Rembrandt Settlement Agreement and the Settlement contained therein; (iii) authorizing the Trustee to move forward with the Rembrandt Settlement Agreement and Settlement; (iv) enforcing SeeCubic's defense/indemnification obligations; entering judgment against SeeCubic in the amount of $1,250,000.00; and (iv) granting such other and further relief it deems just and proper.

Dated: July 15, 2025

Respectfully submitted,

*/s/ Steven M. Coren*
Steven M. Coren, Esquire
COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 735-8700
scoren@kcr-law.com

*Special Counsel to the Trustee*