**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:** | Chapter 11 |
| **STREAM TV NETWORKS, INC.,** *et al.* | Case No. 23-10763 (DJB) |
| **Debtors.**[1] | (Jointly Administered) |

**SEECUBIC INC.'S RESPONSE TO OMNIBUS MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER (1) APPROVING A SETTLEMENT AGREEMENT WITH REMBRANDT 3D HOLDING, LTD. PURSUANT TO FED. R. BANKR. 9019(a) AND 11 U.S.C. § 105(a); (II) ENFORCING DEFENSE AND INDEMNITY OBLIGATIONS OF SEECUBIC, INC.; AND (III) GRANTING RELATED RELIEF**

SeeCubic, Inc. ("**SeeCubic**"), by and through its undersigned counsel, hereby submits this response to the *Omnibus Motion Of William A. Homony In His Capacity As Chapter 11 Trustee For Entry Of An Order (I) Approving A Settlement Agreement With Rembrandt 3d Holding, Ltd. Pursuant To Fed. R. Bankr. 9019(a) And 11 U.S.C. § 105(a); (II) Enforcing Defense And Indemnity Obligations Of SeeCubic, Inc.; And (III) Granting Related Relief* (Docket No. 1040) (the "**Trustee's Motion**") filed by William A. Homony, in his capacity as Chapter 11 Trustee (the "**Trustee**"), and respectfully submits as follows:[2]

**PRELIMINARY STATEMENT**

1. By his Motion, the Trustee asks this Court to approve a proposed settlement with Rembrandt that, by the Trustee's own admission, is an attempt at "complete peace" with

---

[1] The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The location of the Debtors' service address is 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

[2] Capitalized terms not defined herein shall have the meanings in the Trustee's Motion.

Rembrandt. (Trustee's Mot. ¶ 62.) The proposed settlement purports to resolve all of: (i) Rembrandt's pre-petition proof of claim; (ii) the three currently pending Rembrandt Appeals; and (iii) the three currently pending Rembrandt Actions. To resolve all seven of these matters, the Trustee agreed to allow Rembrandt a general unsecured claim and to pay Rembrandt $1.25 million, which the Trustee's Motion characterizes as a cost-of-defense settlement. (*Id.* ¶ 60.) All seven matters, of course, would incur defense costs. But the ***entirety*** of the $1.25 million payment is allocated in the proposed settlement agreement to the Pennsylvania District Court Action alone. That curious structure is no accident: the Pennsylvania District Court Action is the only matter of the seven that arguably is covered by the Sale Order and APA's indemnification provisions, which require SeeCubic to foot the bill for certain actions against the Trustee and other Indemnified Parties.

2. The Trustee's efforts to take advantage of the indemnity provisions to rid himself of Rembrandt at SeeCubic's sole expense are all the more brazen given that the Trustee did not make a meaningful effort to engage with SeeCubic about the defense or settlement of the Pennsylvania District Court Action. SeeCubic only learned that the Trustee was in serious settlement discussions, and had reached a proposed settlement with Rembrandt, through the filing of the Trustee's Motion.

3. As it relates to SeeCubic, the Trustee's Motion essentially argues that the Trustee was permitted to secretly and unilaterally reach whatever settlement it wanted with Rembrandt in the Pennsylvania District Court Action and force SeeCubic to pay for it under the indemnity provisions of the Sale Order and APA. But this argument rests on a series of false premises that, when examined, fall apart and reveal that the Trustee has failed to meet his burden to demonstrate that SeeCubic is obligated to cover the proposed $1.25 million settlement payment.

4. *First*, the Trustee posits that SeeCubic "abrogated" a duty to defend the Indemnified Parties in the Pennsylvania District Court Action. Not so. The plain language of the Sale Order and APA provide that SeeCubic had the *right*, but not the *obligation*, to assume control of the defense of that action. Even if SeeCubic had a duty to defend (it did not), the Trustee's assertion that SeeCubic repudiated that duty is contradicted by the factual record, which shows that: (i) the Trustee sent a single letter that *did not actually* tender defense of the action to SeeCubic; (ii) SeeCubic responded to the Trustee's half-hearted attempt to reach out, inviting further discussion and expressly invoking its right to direct any settlement of the Pennsylvania District Court Action; and (iii) the Trustee simply ignored SeeCubic and reached a settlement with Rembrandt on his own.

5. *Second*, the Trustee argues that SeeCubic is obligated to pay for its clandestine settlement because the Indemnified Parties had potential liability to Rembrandt and the settlement amount is reasonable. But the Trustee misstates the applicable standard. As a matter of law, because the Trustee never tendered defense of the Pennsylvania District Court Action to SeeCubic and excluded SeeCubic from the settlement process, the Trustee is required to demonstrate, among other things, that the Indemnified Parties have *actual* liability to Rembrandt and that they have no good defense. The Trustee's Motion does not even attempt to make such a showing.

6. At bottom, the Trustee had a choice to make: cede control of the Pennsylvania District Court Action to SeeCubic and invoke the Sale Order and APA's indemnity provisions, or maintain control of the action and bear the costs of his own decisions. Having made no real attempt to engage SeeCubic and turn over control, the Trustee—not SeeCubic—is responsible for the settlement payment to Rembrandt.

## ADDITIONAL FACTUAL BACKGROUND

### A. The Trustee Serves An Overreaching Demand For Indemnification

7. The Rembrandt Actions were filed on February 21, 2023 (the Delaware District Court Action), December 4, 2024 (the Rembrandt Adversary Proceeding), and December 17, 2024 (the Pennsylvania District Court Action). (Trustee's Mot. ¶ 36.) Without any prior communication to SeeCubic, the Trustee first served a demand upon SeeCubic for indemnification on March 24, 2025 (the "**Trustee's Demand Letter**," Docket No. 1040-4)—more than three months after the filing of the latest-filed Rembrandt Action, and more than two months after the closing of the Sale of Debtors' assets to SeeCubic. (Trustee's Mot. ¶¶ 33, 36, 38.) The Trustee's Demand Letter purported to require a response from SeeCubic in three calendar days. Neither the Sale Order nor the APA require SeeCubic to respond to any demand for entry of a defense or indemnity on an arbitrary, exploding deadline unilaterally set by the Trustee. (*See generally* Sale Order; APA.)

8. The Trustee's Demand Letter purported to command SeeCubic to indemnify the Indemnified Parties with respect to all three Rembrandt Actions. (*See generally* Trustee's Demand Letter.) Specifically, the Trustee's letter asked that SeeCubic: (i) reimburse all attorneys' fees expended in the Rembrandt Actions to date; (ii) "provide a defense . . . via the payment of all subsequent attorneys' fees"; and (iii) commit to pay any damages incurred. (Trustee's Demand Letter at 3.)

9. That sweeping demand cannot be squared with the plain language of the Sale Order and APA, which expressly require SeeCubic to indemnify the Indemnified Parties only as to claims or actions asserted *prospectively*, not actions existing at the time of the Sale Order (i.e., the Delaware District Court Case and Rembrandt Adversary Proceeding):

> [SeeCubic] shall indemnify and hold harmless the Sellers, the Sellers' bankruptcy estates, the Trustee and his Court approved professionals, their members, officers, directors and/or employees for any claim or cause of action alleging that any Intellectual Property of any third party, including but not limited to the Rembrandt Intellectual Property, ***has been improperly transferred or sold to [SeeCubic] as part of the Transferred Assets at Closing through the sale pursuant to this Agreement*** including the defense thereof. The indemnity provided for herein shall be broadly construed to include but shall not be limited to the reimbursement of all costs, professional fees and expenses including legal fees, when incurred by the Trustee, and all expert fees, court costs, and expenses. In addition, ***in the event that the Sellers' bankruptcy estates, the Trustee or his Court approved professionals, their members, officers, directors and/or employees are sued by any third party*** as a consequence of (i) the Closing, (ii) the transfer of the Transferred Assets, or (iii) the utilization of the Transferred Assets, including but not limited to, the Rembrandt Intellectual Property, [SeeCubic] will immediately enter a defense on behalf of the Sellers, the Sellers' bankruptcy estates, the Trustee or his Court approved professionals, their members, officers, directors and/or employees. [SeeCubic] may join any lawsuit with any other proceeding involving the same or affiliated plaintiffs. Notwithstanding any other provision contained herein, this Section 9.2 shall survive Closing. [SeeCubic] shall have the right to assume control of or direct the defense against any claim, cause of action, or lawsuit covered by this Section 9.2 and to select counsel to represent Sellers, the Sellers' bankruptcy estates, the Trustee and his Court approved professionals, their members, officers, directors, and/or employees (the "Indemnified Parties") with respect to any claim, cause of action, or lawsuit covered by this Section 9.2 and shall use its reasonable efforts in any such defense. The Indemnified Parties shall have the right to approve or reject any counsel proposed by [SeeCubic] selects [sic], which approval shall not be unreasonably withheld. Sellers, the Sellers' bankruptcy estates, the Trustee and his Court approved professionals, their members, officers, directors, and/or employees shall use reasonable efforts to cooperate with [SeeCubic] and its chosen counsel in the defense of any such claim, cause of action, or lawsuit.

(APA § 9.2 (emphasis added); *see also* Sale Order ¶ 30.)

10. On June 24, 2025, SeeCubic responded to the Trustee's Demand Letter, noting that it had no indemnity or defense obligations as to the Delaware District Court Action or the Rembrandt Adversary Proceeding because those actions were filed prior to the Sale Order, prior to the execution of the APA, and prior to the Closing. ("**SeeCubic's Letter**," Docket No. 1040-5.) In other words, SeeCubic explained that those actions were not claims or cause of actions

5

that any Rembrandt Intellectual Property was "improperly *transferred* or *sold*"—no transfer or sale had yet occurred when they were filed.

11. As to the Pennsylvania District Court Action, SeeCubic noted that it had heard—through other sources, *not* the Trustee—that the Trustee may have been in settlement discussions with Rembrandt. (*Id.*) Having been excluded from those discussions by the Trustee, SeeCubic reiterated its right to direct the Trustee's defense of the Pennsylvania District Court Action and stated that absent direction, any settlement the Trustee reached with Rembrandt in that action fell outside of SeeCubic's indemnity obligations. (*Id.*) Critically, however, reserving all rights, SeeCubic also noted that it would assess specific requests for indemnification related to the Pennsylvania District Court Action if and when made, an express invitation for further discussion. (*Id.*)

### B. The Trustee Reaches A Secret Settlement With Rembrandt

12. Curiously, while the Trustee now complains that SeeCubic "ignor[ed]" the Trustee's Demand Letter (Trustee's Mot. ¶ 39), the Trustee never responded in any way whatsoever to SeeCubic's Letter. Instead, on July 15, 2025, the Trustee blindsided SeeCubic with the Trustee's Motion, for the first time confirming that the Trustee had, in fact, been in settlement discussions with Rembrandt and disclosing that a settlement had been reached.

13. After failing to take SeeCubic up on its offer to discuss the issues further, the Trustee's Motion also falsely accuses SeeCubic of repudiating its obligations and acting in bad faith. The Trustee's Motion also fails to acknowledge that in the period between the Trustee's Demand Letter and SeeCubic's Letter, the Trustee made *no effort* to follow up on the Trustee's Demand Letter or otherwise engage with SeeCubic. On July 25, 2025, counsel for SeeCubic and counsel for the Trustee conferred about the Trustee's Motion; when asked why the Trustee failed

to follow up on its own demand, the Trustee's counsel stated, in substance, that they just did not believe doing so would be fruitful.

14. In the proposed settlement, the Trustee and Rembrandt agreed to resolve Rembrandt's pre-petition proof of claim, the Rembrandt Appeals, and the Rembrandt Actions. In exchange for Rembrandt dropping the Rembrandt Appeals and Rembrandt Actions (at least as they relate to the Indemnified Parties) and agreeing not to oppose the Trustee's forthcoming plan of liquidation, the Trustee agreed to allow Rembrandt's general unsecured claim up to $1 million and pay Rembrandt $1.25 million.

15. The proposed settlement allocates the entire $1.25 million cash payment to the Pennsylvania District Court Action. No amount of the cash payment is allocated to settle the Rembrandt Appeals, the Delaware District Court Action, or the Rembrandt Adversary Proceeding. Instead, the proposed settlement purposefully dumps the entire cash payment into resolution of the Pennsylvania District Court Action to take advantage of the Sale Order and APA's indemnification provisions. (*See* Trustee's Mot. ¶ 46 (explicitly referencing indemnification by SeeCubic in agreement to pay Rembrandt).) The Trustee's Motion attempts to justify this structure by asserting that the $1.25 million cash payment exceeds the likely cost of defense of the Pennsylvania District Court Action, ignoring that the Trustee and other Indemnified Parties would also incur defense costs in the other matters covered by the settlement agreement.

## ARGUMENT

### A. SeeCubic Has Not Violated Any Of Its Indemnity Or Defense Allegations Under The Sale Order Or APA Or Acted In Bad Faith

16. The Trustee's Motion should be denied as to SeeCubic because it rests on a false premise: that SeeCubic repudiated or otherwise breached its indemnity or defense obligations

7

under the Sale Order and APA as they relate to the Pennsylvania District Court Action. (Trustee's Mot. ¶ 71.)  The Trustee's assertion cannot be squared with the plain language of the Sale Order/APA, SeeCubic's Letter, or the law.

### 1. The Sale Order And APA Give SeeCubic The *Right* To Assume The Defense Of The <u>Pennsylvania District Court Action, Not The Obligation</u>

17. The Trustee's Motion is based entirely upon the assertion that SeeCubic "abdicat[ed] its duty to defend" the Pennsylvania District Court Action, "le[aving] the Trustee with little choice but to defend the litigation and consider settlement opportunities." (Trustee's Mot. ¶¶ 74-75.)  According to the Trustee, because SeeCubic failed to adhere to its duty to enter a defense, the Trustee was entitled to do whatever it wished with respect to the Pennsylvania District Court Action—including entering a secret settlement with Rembrandt—and force SeeCubic to pay for the Trustee's unilateral decisions.

18. The Trustee's argument, however, fails in three material respects.

19. *First*, the Trustee misstates SeeCubic's defense and indemnity obligations under the Sale Order and APA.  The Sale Order and APA require SeeCubic to enter a defense of the Indemnified Parties *only* "in the event that the Sellers' bankruptcy estates, the Trustee or his Court approved professionals, their members, officers, directors and/or employees are sued by any third part*y* as a consequence of (i) the Closing, (ii) the transfer of the Transferred Assets, or (iii) the utilization of the Transferred Assets . . ."  (Sale Order ¶ 30; APA § 9.2 (noting that SeeCubic "will immediately enter a defense" in such circumstances).)

20. The Pennsylvania District Court Action does not fall within these criteria.  The Pennsylvania District Court Action, filed on December 17, 2024, cannot be "a consequence of the Closing," as the Closing did not occur until weeks later, in January 2025.

8

21. Nor is the Pennsylvania District Court Action a "consequence of" the "transfer" or "utilization of the Transferred Assets." The Trustee's Motion acknowledges that Rembrandt's chief complaint in the Pennsylvania District Court Action concerns "[t]he assets Defendants *have sold*." (Trustee's Mot. ¶ 69 (emphasis added) (alteration in original) (citation and internal quotation marks omitted).) Section 2.1 of the APA, incorporated by reference into the Sale Order (Sale Order at 1), defines the "Transferred Assets," i.e., those that were sold, which expressly **excludes** any assets listed in Section 2.2 of the APA. The "Excluded Assets" in that Section 2.2 include "any grant of rights or license by Rembrandt" to Debtors and "any physical assets that contain or include Rembrandt Intellectual Property, to the extent valid, existing and enforceable as determined by a final, non-appealable order from a court of competent jurisdiction." (APA § 2.2.) The Sale Order reiterates that the "Excluded Assets" were *not* transferred to SeeCubic. (Sale Order ¶ 6 ("The Buyer is not acquiring any of the Excluded Assets . . . (as defined in the Asset Purchase Agreement").) Because no Rembrandt property was included among the Transferred Assets, the Pennsylvania District Court Action is not a "consequence of . . . the transfer . . . or utilization" of the Transferred Assets.

22. *Second*, even if SeeCubic had a duty to enter a defense of the Indemnified Parties in the Pennsylvania District Court Action, the Trustee's *ipse dixit*, citation-less argument that SeeCubic repudiated that obligation is wrong.

23. As a matter of law, "repudiation must be 'positive and unconditional,'" constituting "an outright refusal by a party to perform a contract or its conditions." *Level 4 Yoga, LLC v. CorePower Yoga, LLC*, No. 2020-0249-JRS, 2022 WL 601862, at *16-17 (Del.

9

Ch. Mar. 1, 2022) (citations omitted).³ Expressing doubt as to the meaning of a contract or asserting a contrary reading than one's counterparty—and indeed, even filing a declaratory judgment action to ascertain the meaning of a contract and the rights and obligations of the parties—are neither acts of repudiation nor bad faith. *E.g.*, *Lennox Indus. Inc. v. Alliance Compressors LLC*, No. N19C-03-045 AML, 2020 WL 4596840, at *4 (Del. Super. Ct. Aug. 10, 2020); *Cay Divers, Inc. v. Raven*, 812 F.2d 866 (3d Cir. 1987) (reservation of rights due to genuine concern over whether claim was covered by policy not bad faith).⁴

24.     SeeCubic did not express a "positive and unconditional," "outright refusal" to perform any obligations. SeeCubic's Letter explained that, under the plain terms of the Sale Order and APA, SeeCubic was not obligated to indemnify or defend any Indemnified Parties with respect to the Delaware District Court Action or Rembrandt Adversary Proceeding. The structure of the Trustee's proposed settlement with Rembrandt—and, in turn, the Trustee's Motion—concedes as much, allocating the monetary settlement solely to the Pennsylvania District Court Action and abandoning any assertion that the Delaware District Court Action or Rembrandt Adversary Proceeding are covered by the Sale Order and APA's indemnification provisions.

25.     As to the Pennsylvania District Court Action, SeeCubic's Letter expressly invited further discussion with the Trustee about indemnity and defense obligations by noting that SeeCubic would consider specific proposals as made and requesting that SeeCubic be involved

---

³     Pennsylvania law is in accord. *E.g.*, *Harrison v. Cabot Oil & Gas Corp.*, 631 Pa. 268, 278 (2015) (repudiation present only upon "an 'absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so'" (citation omitted)).

⁴     *Accord Harrison*, 631 Pa. at 278 ("It is widely recognized, however, outside the oil-and-gas context at least, that the filing of [a] declaratory judgment action merely contesting the validity or scope of an agreement does not entail such an unequivocal refusal to perform.").

in any settlement discussions. (SeeCubic Letter at 2.) That is the opposite of a repudiation. *E.g.*, *HIFN, Inc. v. Intel Corp.*, No. Civ.A. 1835-VCS, 2007 WL 1309376, at *15 (Del. Ch. May 2, 2007) (party did not repudiate contract when it suggested the subject project be put on ice but also "stated that it was open to hearing any counter proposal that Hifn had to offer").

26. Moreover, while the Trustee repeatedly states that SeeCubic's response to the Trustee's Demand Letter was delayed, SeeCubic's silence during the interim period between the Trustee's Demand Letter and SeeCubic's Letter does not, as a matter of law, constitute a "positive and unconditional" act to constitute repudiation. *Accord Kasarsky v. Merit Sys. Protection Bd.*, 296 F.3d 1331, 1337 (Fed. Cir. 2002) ("The agency's silence did not amount to a 'statement or voluntary affirmative act.' Thus, its delay in paying the attorney fees could not amount to a breach [by repudiation] of the fee agreement, until it communicated its refusal to pay.").[5]

27. *Third*, even if SeeCubic had a duty to enter a defense of the Indemnified Parties in the Pennsylvania District Court Action, the Indemnified Parties never actually tendered the defense of that action to SeeCubic or asked for SeeCubic's participation in the defense. "[E]ven if an indemnitor is aware of indemnifiable claims against an indemnitee, the indemnitor is still entitled to an unequivocal, certain and explicit demand to undertake the defense thereof." *Danieli Corp. v. ArcelorMittal LaPlace, LLC*, C.A. No. 13C-03-126 JRJ, 2013 WL 4045632, at *1 n.12 (Del. Super. Ct. Aug. 6, 2013) (citation and internal quotation marks omitted). The Trustee's Demand Letter did not make any such demand.

---

[5] The Trustee fails to mention that the Trustee likewise remained silent during the interim period and made no efforts to contact SeeCubic about his demand.

11

28.	Rather, the Trustee's Demand Letter made clear that the Trustee intended to retain control over the Pennsylvania District Court Action.  Specifically, the Trustee's Demand Letter requested that SeeCubic "provide a defense . . . *via the payment* of all subsequent attorneys' fees."  (Trustee's Demand Letter at 3 (emphasis added).)  Requesting the reimbursement of attorneys' fees without relinquishing control of the action does not constitute a tender of defense. *See Zurich Am. Ins. Co. v. New York Marine & Gen. Ins. Co.*, No. N19C-09-288 PRW CCLD, 2021 WL 424007, at *5 (Del. Super. Ct. Feb. 8, 2021) (recognizing that tendering a defense involves relinquishing control of the case); *Am. Ins. Grp. v. Risk Enter. Mgmt., Ltd.*, 761 A.2d 826, 830 (Del. 2000) (noting that duty to defend and duty to indemnify are not coterminous).[6]

29.	The Trustee's argument and authorities that it was entitled do whatever it pleased because of SeeCubic's alleged failure to take over defense of the Pennsylvania District Court Action are thus wholly inapposite.  (Trustee's Mot. ¶¶ 71-73.)[7]

---

[6] *Accord Excelsior Ins. Co. v. Selective Ins. Co. of Am.*, 696 F. Supp. 3d 15, 28 n.8 (D.N.J. 2023) ("[T]he insurer's duty to defend corresponds to the insured's duty to relinquish control of the defense, and one cannot arise without the other." (citation omitted)); *Aetna Cas. & Sur. Co. v. Chicago Ins. Co.*, 994 F.2d 1254, 1261 (7th Cir. 1993) (noting that to constitute a tender, the indemnitee must make clear that the indemnitor's "*participation* is desired" (emphasis added)).

[7] The Trustee's citations are easily distinguishable.  In *Philadelphia Indemnity Insurance Company v. Bogel*, 269 A.3d 992 (Del. Super Ct. 2021), the indemnitor entered a defense of the indemnitee but withdrew its defense on the eve of trial.  And in *AIG Specialty Insurance Company v. Conduent State Healthcare, LLC*, No. 35, 3034, 2025 WL 369450 (Del. Feb. 3, 2025), the insurer did not contest that it had breached an obligation to defend and had expressly denied coverage.  In other words, in both cases, the indemnitor was given the opportunity to participate in the litigation and refused to do so.  Here, the Trustee gave SeeCubic only the option to pay for his defense, and in any event, SeeCubic did not refuse or repudiate any obligations.

### 2. The Trustee Has Failed To Meet Its Burden To Demonstrate That SeeCubic Should Be Required To Fund A Settlement That It Was Excluded From Participating In Reaching

30. While SeeCubic does not have a *duty* to defend the Pennsylvania District Court Action, the Sale Order and APA give it the *right* to "assume control of or direct the defense" of the Pennsylvania District Court Action. (Sale Order ¶ 30; APA § 9.2.) SeeCubic's Letter informed the Trustee that it intended to invoke its right to direct any settlement with Rembrandt in the Pennsylvania District Court Action. (SeeCubic Letter at 2.) As described above, the Trustee chose to proceed unilaterally and in secret, agreeing to a settlement with Rembrandt without informing SeeCubic—let alone giving SeeCubic the opportunity to direct the settlement.

31. It is well-settled that "when the indemnitor is denied the opportunity to participate in the settlement process, it is not 'equitable to bind [the indemnitor] to the settlement agreement.'" *Frautschi v. Ecolab, Inc.*, No. 12951-VCMR, 2018 WL 5733218, at *8 (Del. Ch. Oct. 31, 2018) (citation omitted); *see also Atl. Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106, 111-13 (2d Cir. 1986) (finding that indemnitor was not required to fund a settlement where it only received 24-hours' notice of the potential settlement from indemnitee, who had not previously tendered defense of the action).

32. Under these circumstances, to establish entitlement to indemnification for a settlement, the indemnitee is required to show (i) *actual* liability to the claimant, (ii) there was no good defense, and (iii) that the settlement was reasonable. *See GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 760 (11th Cir. 1987) ("[W]hen the indemnitee has not given the indemnitor an opportunity to review, pass upon, or participate in the settlement, due process and 'equitable indemnity principles' compel a demonstration of actual as opposed to potential liability" (citation omitted)); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Red Apple Grp., Inc.*, 309 A.D.2d 657, 657 (N.Y. Sup. Ct. App. Div. 2003) ("Where, as here, the indemnitee fails to

notify the indemnitor of a settlement with the claimant, indemnification is conditioned upon the indemnitee's demonstration that it would have been liable to the claimant, that there was no good defense, and that the settlement was in a reasonable amount.").[8]

33.  Here, it is indisputable that SeeCubic was denied the opportunity to participate in the settlement process: the Trustee never tendered defense of the case to SeeCubic, never informed SeeCubic that it was in settlement discussions, ignored SeeCubic's request to be involved in any such discussions, failed to inform SeeCubic that a settlement was imminent, and only informed SeeCubic of the settlement *after* it was reached through the filing of the proposed settlement agreement with this Court.  The Trustee's Motion makes **no attempt** to demonstrate the Indemnified Parties' actual liability to Rembrandt, instead making only the conclusory assertion that they could potentially be liable, and **no attempt** to demonstrate that the Indemnified Parties had no good defense.  (*E.g.*, Trustee's Mot. ¶ 63 (referring to "potential exposure").)  Accordingly, regardless of whether the settlement amount is reasonable to resolve the Pennsylvania District Court Action,[9] the Trustee has failed to meet his burden to show that SeeCubic should be obligated to fund a settlement it was completely excluded from reaching.

---

[8]  *See also* 42 C.J.S. *Indemnity* § 28 (2025) ("[W]here the indemnitee does not give the indemnitor an opportunity to refuse, pass upon, or participate in the settlement, then equitable principles of indemnity apply.  Under equitable principles of indemnity, in order for a settling indemnitee to support his or her claim, he or she must prove actual liability to the original plaintiff, that there was no good defense, and that the amount paid in settlement was reasonable.").

[9]  As noted, the entirety of the proposed settlement payment is allocated to the Pennsylvania District Court Action and not to any of the other pending matters between Rembrandt and the Indemnified Parties.  The Trustee's refusal to allow SeeCubic to participate in—or even be informed of—settlement discussions with Rembrandt in the Pennsylvania District Court Action is particularly troubling given that, as the Trustee is well aware, Rembrandt is litigating claims against SeeCubic in the Delaware District Court Action for misappropriation of trade secrets.  Rembrandt is asserting claims against the Indemnified Parties in the Pennsylvania District Court Action for misappropriation of those same trade secrets.  As such, rulings in the Delaware

*(cont'd)*

### 3. The Trustee's Accusations Of Bad Faith Are Baseless

34. Of note, while the Trustee's Motion slings accusations of bad faith at SeeCubic, the Trustee provides no factual basis or legal authorities supporting that assertion. The Trustee asks this Court to infer bad faith solely from the time elapsed between the Trustee's Demand Letter and SeeCubic's Letter. That is a leap too far. The Trustee cites no authority—in the Sale Order, APA, or caselaw—suggesting that SeeCubic was required to exercise its right to direct control of the case at the outset of the Pennsylvania District Court Action or upon receipt of the Trustee's Demand Letter. SeeCubic acted promptly to inform the Trustee that it would be invoking its right to direct the defense of the Pennsylvania District Court Action once SeeCubic learned that the Trustee sought to unilaterally create a liability for SeeCubic via a settlement with Rembrandt.

35. If anything, it is the Trustee's—not SeeCubic's—conduct that is suspect:

(a) The Trustee sent a single letter to SeeCubic regarding the defense of and indemnification in the Pennsylvania District Court Action. That letter sought indemnification for matters that plainly fell outside the scope of the Sale Order and APA's indemnity provisions and was carefully worded so as to avoid actually turning over control of the Pennsylvania District Court Action to SeeCubic. If the Trustee truly believed that SeeCubic was obligated to defend that action and wanted SeeCubic to do so, the record would contain more than a single, two-page letter.

---

District Court Action, which is significantly further progressed than the Pennsylvania District Court Action, could have preclusive effect on the Pennsylvania District Court Action and affect the value of Rembrandt's claims in that case and the reasonable value of any settlement.

(b) The Trustee ignored SeeCubic's request that it be involved in any settlement discussions, and only informed SeeCubic of the settlement by filing a motion with this Court approving the proposed settlement and accusing SeeCubic of bad faith.

(c) The Trustee seeks a proposed global settlement with Rembrandt to resolve all claims, including pre-petition proofs of claim, the Delaware District Court Action, and the Rembrandt Adversary Proceeding—all of which are plainly outside the scope of the Sale Order and APA's indemnity provisions. The Trustee thus structured the proposed settlement to make the monetary portion tied *only* to the Pennsylvania District Court Action to take advantage of those indemnity provisions and force SeeCubic to foot the entire bill for the Trustee's efforts to buy global peace with Rembrandt. And the Trustee's alternative explanation for this arrangement is nonsensical: if the payment to Rembrandt is essentially a cost-of-defense settlement, as the Trustee argues, the Pennsylvania District Court Action is not the only action in which the Trustee and Indemnified Parties would incur defense costs.

(d) The Trustee's Motion attempts to short-circuit proper procedures for obtaining an order that SeeCubic is obligated to indemnify him for the proposed settlement payment. The Trustee's Motion, as it relates to SeeCubic, seeks purely declaratory relief. Any request for declaratory relief must be brought as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(i).

### B. The Trustee's Motion Was Unnecessary; At A Minimum, It Was Premature

36. The Trustee's Motion should also be denied because it was unnecessary or, at a minimum, premature. SeeCubic's Letter expressly invited further discussion about SeeCubic's indemnity obligations with respect to the Pennsylvania District Court Action. The Trustee,

16

however, ignored SeeCubic's invitation and instead ran to the Court with a request to enter judgment against SeeCubic. SeeCubic remains willing to discuss the Pennsylvania District Court Action with the Trustee in the hopes of resolving the present dispute.

## **CONCLUSION**

SeeCubic respectfully requests that this Court deny the Trustee's Motion inasmuch as it seeks an order requiring SeeCubic to indemnify the Trustee for any payments to Rembrandt related to the Pennsylvania District Court Action.

Dated: July 29, 2025                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/     Joseph O. Larkin*
Joseph O. Larkin (I.D. No. 206047)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Fax: (302) 651-3001
Joseph.Larkin@skadden.com

- and -

James J. Mazza, Jr. (admitted *pro hac vice*)
Justin M. Winerman (admitted *pro hac vice*)
320 South Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411
James.Mazza@skadden.com
Justin.Winerman@skadden.com

- and -

Eben P. Colby (admitted *pro hac vice*)
Marley Ann Brumme (admitted *pro hac vice*)
500 Boylston Street, 23rd Floor
Boston, Massachusetts 02116
Telephone: (617) 573-4800
Fax: (617) 573-4822
Eben.Colby@skadden.com
Marley.Brumme@skadden.com

*Counsel to SeeCubic, Inc.*