**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Chapter 11 |
| Stream Networks, Inc., *et al*. | Bky Case No. 23-10763 (DJB) |
| | (Jointly Administered) |
| Debtors. | |

**VISUAL SEMICONDUCTOR, INC.'S OPPOSITION TO THE OMNIBUS MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER: (I) APPROVING SETTLEMENT AGREEMENT WITH REMBRANDT 3D HOLDING, LTD. PURSUANT TO FED. R. BANKR. P. 9019(a) AND 11 U.S.C. § 105(a); (II) ENFORCING DEFENSE AND INDEMNITY OBLIGATIONS OF SEECUBIC, INC.; AND (III) GRANTING RELATED RELIEF**

Visual Semiconductor, Inc. ("**VSI**"), by and through its undersigned counsel, hereby opposes the Omnibus Motion (the "**Motion**")[1] filed by William A. Homony in his capacity as Chapter 11 Trustee (the "**Trustee**") for Debtor Stream TV Networks, Inc. ("**Stream**") seeking Court approval of a settlement (the "**Settlement**") with Rembrandt 3D Holding Ltd. ("**Rembrandt**"), and respectfully states:

**I.    INTRODUCTION**

1. VSI opposes the Motion and cannot evaluate or consent to the proposed Settlement or the Trustee's attempt to enforce indemnity obligations against SeeCubic, Inc. ("**SeeCubic**") without fundamental discovery:

    a) The Trustee has furnished no valuation analyses, negotiation records, or creditor committee input to support the Settlement's fairness under Bankruptcy Rule 9019.

---

[1] Docket No. 1040.

1

b) The Trustee cites indemnity obligations of SeeCubic but fails to attach any governing contract, while SeeCubic denies the obligation of providing indemnity.

2. Accordingly, VSI requests (a) denial of the Motion, or in the alternative, continuance of the hearing to permit targeted discovery; and (b) immediate production of documents and testimony as detailed below.

3. Moreover, the Settlement would result in Rembrandt's breach of contract with VSI with regard to a Litigation Funding and Confirmation Agreement ("**LFCA**"), which VSI and Rembrandt – with its Chief Executive Officer, Stephen K. Blumenthal ("**Blumenthal**") signing as CEO – entered into in 2024, with subsequent amendments thereto, which entitled VSI to certain rights regarding Rembrandt's litigation, which VSI funded. Key rights afforded to VSI pursuant to the LFCA and its amendments included absolute pre-approval of any settlement Rembrandt might wish to consider, and the right to immediate ownership of or access to Stream's Ultra-D technology in the event that Rembrandt succeeded in obtaining such ownership or access. By reaching the Settlement without VSI consent, Blumenthal and Rembrandt would be in breach of the LFCA if the Settlement is approved by the Court.

4. Further, the Trustee filed an adversary proceeding at Adv. No. 25-00138 (DJB), frivolously alleging that VSI and others colluded with Rembrandt. In a complete course reversal, the Trustee now seeks Court approval of the Settlement with Rembrandt, the very party he accused of collusion not long ago.

5. VSI believes that discovery will show that there is indeed collusion, but not collusion involving VSI. Rather, the collusion is among Rembrandt, the Trustee, and Shadron L. Stastney, chief executive of SeeCubic, purchaser of Stream's bankruptcy estate assets. VSI thus

2

files the instant cross-motion to remedy the harm that has already occurred and prevent further harm as a result of this proposed Settlement.

## II. BACKGROUND

6. Stream and its wholly owned subsidiary, Technovative Media, Inc. ("**Technovative**" and with Stream, the "**Debtors**"), filed their Chapter 11 petitions on March 15, 2023. While the jointly administered proceedings were pending, plans[2] of reorganization were proposed twice with VSI as sponsor.

7. The Trustee concluded without foundation or full explanation that the bankruptcy estates would be better served through a settlement (the "**9019 Settlement**") with a subsequent Rule 363 sale of estate assets (the "**363 Sale**") to Stream's alleged secured creditor, SeeCubic,[3] rather than through reorganization as proposed by the Debtor and VSI.

8. Third-party Rembrandt claimed that the 363 Sale was improper because Rembrandt's intellectual property (the "**Rembrandt IP**") was embedded in the Debtors' assets being offered for sale, and that such sale could not proceed until and unless Rembrandt's IP had been removed. Rembrandt made its position clear to the Court and to the Trustee on multiple occasions throughout 2024, beginning with Rembrandt's objection to the Trustee's motion for approval of the 9019 Settlement in June 2024, continuing in December 2024 with its objection to

---

[2] On July 13, 2023, the Debtors proposed a plan within its exclusivity period (the "**$35M Plan**") with both VSI and Rembrandt as Plan proponents. On December 3, 2024, VSI submitted its own proposed plan (the "**$185M Plan**"). Neither of these viable plans received consideration by the Court, to the detriment of all creditors and other parties in interest.

[3] Despite a Mandate from the Delaware Supreme Court in June 2022 that the Delaware Chancery Court unwind the effects of its injunction, SeeCubic failed to return the Debtors' assets, leading to litigation filed by Rembrandt against SeeCubic and Hawk in the U.S. District Court for the District of Delaware, a case that is still pending (C.A. No. 1:23-cv-00193-GBW). SeeCubic further strengthened its hold on the Debtors' assets by taking legal action in the Netherlands in June 2024 to remove the Debtors' CEO as director of the Debtors' R&D subsidiary, and again in September 2024 when it installed Stastney as the sole director of the R&D subsidiary where he could exercise direct and personal control of the Debtors' technology development center.

3

the 363 Sale of assets to SeeCubic, and ongoing today with its District Court appeals. The 363 Sale included assets that the Trustee could not legally sell as they were not fully owned by the estate.

9.  Also pending is litigation by Rembrandt against the Trustee pending in the U.S. District Court for the Eastern District of Pennsylvania,[4] alleging patent infringement and trade secret misappropriation among its claims.

10. On October 22, 2024, Rembrandt filed a claim[5] in the amount of USD $1,212,407,000 (the "**Rembrandt Claim**") in this Bankruptcy Court against Debtor Stream.

11. The Trustee initiated an adversary proceeding (the "**Adversary Complaint**") against Rembrandt and numerous other parties—including VSI—seeking to invalidate and unwind a binding settlement agreement previously reached between Rembrandt and Stream (the "**Rembrandt-Stream Agreement**"). That agreement granted Stream critical rights to utilize Rembrandt's intellectual property in connection with its product development and operations. Despite having challenged the validity of that very agreement, the Trustee now seeks this Court's approval of a new Settlement[6] with Rembrandt and an affiliated entity that has been held in contempt by multiple courts.

12. Such a reversal of position—without transparency, evidentiary support, or full discovery—is not only deeply prejudicial but is also inconsistent with the Trustee's fiduciary

---

[4] 2:24-cv-06706-JMG

[5] The lawsuit is stemming from the Trustee's clear communication to the Court that, following the proposed sales of the Debtors' assets, he did not intend to honor the Rembrandt-Stream Agreement as described below. The amount of the Rembrandt Claim is equal to the value Rembrandt ascribed to its settlement with Stream. Prior to the appointment of the Trustee, Mathu Rajan indicated Stream's commitment to assume, not reject the Rembrandt Settlement Agreement. Such assumption was detailed in Stream's Plan of Reorganization submitted to this Court on July 13, 2023 [ECF No. 293] during Stream's exclusive period for filing a Plan.

[6] The Motion separately seeks to enforce "defense and indemnity obligations" without attaching:
- Any indemnity clause, contract, bylaw, or charter provision;
- Written demands or notices;
- Records of legal fees, costs, or expenses claimed under indemnity.

duties. The proposed Settlement raises serious questions and must not proceed without meaningful scrutiny.

13. In particular, the Trustee aided and abetted Rembrandt to breach the LFCA in a reckless effort to reach a global settlement that would end federal litigation in which the Trustee was personally named as a defendant and accused of patent infringement and misappropriation of trade secrets.

14. Further, the Trustee was motivated by a desire to end Rembrandt's valid challenges to the 363 Sale of Stream's assets to shield himself and his advisers from the consequences of an unlawful sale of non-estate assets to a bad faith stalking horse bidder.

15. Accordingly, Movant respectfully submits that expedited discovery must be granted as a prerequisite to any consideration of approval of this Settlement.

### III. LEGAL STANDARD

16. Rule 9019(a) requires the Court to determine that a settlement is "fair and equitable," considering:

    a) Probability of success on the merits;

    b) Complexity, expense, and likely duration of litigation;

    c) Inconvenience and delay;

    d) Interests of creditors; and

    e) The Trustee's business judgment informed by arm's-length negotiation.

17. Enforcement of contractual indemnity requires the Movant to show:

    a) A valid, enforceable indemnity provision;

    b) Proper notice and demand on the indemnitor;

    c) Indemnifiable losses incurred;

    d) Compliance with any corporate-governance prerequisites.

18. Where a motion rests on undisclosed facts, expedited discovery under Fed. R. Bankr. P. 7026 and 9014 is appropriate to enable full consideration.

## IV. ARGUMENT

### A. The Settlement Cannot Be Approved on the Present Record

19. No Valuation Evidence: The Trustee has provided zero work papers or expert support for the figures in the proposed Settlement.

20. No Negotiation Record: Settlement drafts, emails, or minutes are absent, leaving the Trustee's "business judgment" unsupported.

21. No Creditor Input: The Committee's views are unrecorded, depriving the Court of critical stakeholder feedback.

22. Prejudice to Creditors: Approval without transparency may preclude superior recovery opportunities.

### B. Immediate Discovery Is Warranted

23. To permit the Court to rule fairly, VSI demands expedited production of core documents and witness testimony. Absent this, the Motion should be denied or continued.

## V. DEMAND FOR IMMEDIATE DISCOVERY

### A. Document Requests

24. VSI demands that, within seven (7) business days of service, the Trustee produce the following:

    a. All drafts and final Settlement agreements with Rembrandt, including term sheets.

      b. The Trustee's valuation work papers, analyses, and expert reports regarding Rembrandt claims.

      c. Minutes, memoranda, or correspondence reflecting creditor-committee review of the Settlement.

      d. All written communications between the Trustee (and his counsel) and Rembrandt concerning valuation and negotiation.

**B. Interrogatories**

25. VSI demands that, within seven (7) business days of service, the Trustee:

      a. Identify all persons with knowledge of: (a) the valuation of Rembrandt's claims and (b) Settlement negotiations.

      b. Describe in detail the methodology used to calculate the Settlement amount.

**C. Request for Rule 2004 Examination**

26. Pursuant to Fed. R. Bankr. P. 2004, VSI requests authorization to examine:

      a. The Trustee, regarding the Settlement valuation and negotiations.

      b. SeeCubic's representatives, regarding the scope and validity of alleged indemnity obligations.

      c. Rembrandt's representatives, regarding the scope and validity of settlement in light of the contract promises with VSI.

**VI.    PRAYER FOR RELIEF**

WHEREFORE, Visual Semiconductor, Inc. respectfully requests that the Court:

1. Deny the Motion or continue the hearing to permit full discovery;

2. Compel immediate production of documents and interrogatory responses as detailed above;

3. Authorize Rule 2004 examinations of the Trustee;

4. Award VSI its costs and attorneys' fees incurred in opposing the Motion; and

5. Grant such other and further relief as the Court deems just and proper.

DATED: August 7, 2025

    Respectfully submitted,

**WEISBERG LAW**

<u>/s/ Matthew B. Weisberg</u>
Matthew B. Weisberg, Esquire
7 South Morton Avenue
Morton, PA 19070
Telephone:   (610) 690-0801
Facsimile:   (610) 690-0880
mweisberg@weisberglawoffices.com
*Attorney for Visual Semiconductor, Inc.*

## CERTIFICATE OF SERVICE

I, Matthew B. Weisberg, Esquire, hereby certify that on this 7th day of August 2025, a true and correct copy of the foregoing Response in Opposition was served via ECF upon all counsel of record.

**WEISBERG LAW**

/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esquire
7 South Morton Avenue
Morton, PA 19070
Telephone:    (610) 690-0801
Facsimile:    (610) 690-0880
mweisberg@weisberglawoffices.com
*Attorney for Visual Semiconductor, Inc.*