# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | **Chapter 11** |
|---|---|---|
| **In re:** | : | |
| | : | **Bankruptcy No. 23-10763 (DJB)** |
| **Stream TV Networks, Inc., *et al*.** | : | **(Jointly Administered)[1]** |
| | : | |
| **Debtors.** | : | **Hearing Date: August 13, 2025** |
| | : | **Hearing Time:** |
| | : | **Hearing Place:** |

**REPLY IN FURTHER SUPPORT OF OMNIBUS MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER: (I) APPROVING A SETTLEMENT AGREEMENT WITH REMBRANDT 3D HOLDING, LTD. PURSUANT TO FED. R. BANKR. P. 9019(a) AND 11 U.S.C. § 105(a); (II) ENFORCING DEFENSE AND INDEMNITY OBLIGATIONS OF <u>SEECUBIC, INC.; AND (III) GRANTING RELATED RELIEF</u>**

William A. Homony (the "Trustee"), in his capacity as Chapter 11 trustee of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative" or when referred to with Stream, the "Debtors"), by and through his counsel, Coren & Ress, P.C., files this Reply in Further Support of Omnibus Motion for Entry of an Order: (i) Approving a Settlement Agreement (the "Rembrandt Settlement Agreement" or the "Agreement") with Rembrandt 3D Holding Ltd. ("Rembrandt" or, in conjunction with the Trustee, may be generally referred to as "Party" or collectively, as the "Parties") pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a); (ii) Enforcing Defense and Indemnity Obligations of SeeCubic, Inc. ("SeeCubic"); and (iii) Granting Related Relief (the "Motion"), and in support thereof, respectfully avers as follows:

SeeCubic has breached its clear and binding obligation to indemnify and defend the Chapter 11 Trustee and other Indemnified Parties in litigation arising from the sale of the Debtors'

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764. (D.I. #95).

1

assets under the Asset Purchase Agreement ("APA") and the Sale Order.[2] In doing so, SeeCubic left the Trustee exposed to claims in the Rembrandt Pennsylvania District Court Action—claims based on alleged misuse and sale of intellectual property expressly contemplated by the APA's indemnification clause. After three months of radio silence from SeeCubic and facing mounting litigation risk and expense, the Trustee exercised sound business judgment to enter a global settlement with Rembrandt. SeeCubic now seeks to evade its obligation by mischaracterizing both the Trustee's conduct and the scope of its own contractual duties. The Court should reject SeeCubic's arguments and grant the Motion in full.

### A.    The Sale Order and APA Unambiguously Require SeeCubic to Defend and Indemnify

SeeCubic's argument that it had no duty to defend and indemnify the Trustee in the Pennsylvania District Court Action is entirely meritless given the unequivocal language of the APA and Sale Order. Those documents plainly require SeeCubic to "immediately enter a defense" and "indemnify and hold harmless" the Trustee and his professionals from claims arising as a consequence of the "Closing," "the transfer of the Transferred Assets," or "the utilization of the Transferred Assets." Sale Order at ¶ 30; APA at § 9.2.

Rembrandt's Pennsylvania District Court Action plainly alleges that the Trustee and his professionals facilitated the sale of assets incorporating Rembrandt's intellectual property. This is the very scenario that the indemnification and defense obligations were designed to address. *See* Homony Dec. at ¶ 54 ("Rembrandt's alleged claims asserted in open court on numerous occasions prior to approval of the sale and in the Pennsylvania District Court Action are the exact reasons I

---

[2] The Sale Order expressly incorporates the APA's defense and indemnification obligations and provides this Court with the exclusive power to "interpret, implement, and enforce" the provisions thereof. Sale Order at ¶ 39. Accordingly, SeeCubic's argument that its failure to defend and indemnify can only be addressed via an adversary proceeding are entirely without merit. *See, e.g., In re Cont'l Airlines, Inc.*, 236 B.R. 318, 325 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders.").

2

negotiated the SeeCubic indemnity obligations contained in the SeeCubic APA and Sale Order in order to protect myself, my professionals and the Debtors' estates from incurring liability related to the sale of the Debtors' assets."). SeeCubic's assertion that the indemnity obligation was never triggered contradicts both the APA's language and the core nature of the claims asserted.

Indeed, the fundamental allegation underlying Rembrandt's Complaint is that "[t]he assets Defendants have sold include the intellectual property of Rembrandt." Exhibit G at ¶ 12. Accordingly, SeeCubic's primary arguments – i.e., that it is not required to defend the Trustee because the Complaint happened to be filed prior to Closing, and because Rembrandt's alleged intellectual property was excluded from the Sale Order – are disingenuous and incorrect. It is clear that Rembrandt commenced the Pennsylvania District Court Action after the Sale Order had been entered upon a mistaken belief that the sale had already closed and with the belief that, despite the exclusion of its property from the Sale Order, the sale involved the transfer of its property. Rembrandt's allegations make clear that liability arose directly as a result of the Trustee's alleged utilization of Rembrandt's intellectual property and asset sale to SeeCubic, the exact and only reason the defense and indemnity obligation exists.

**B.    SeeCubic Breached Its Defense Obligations**

The Pennsylvania District Court Action was served on the Trustee on March 18, 2025. *See* E.D. Pa. No. 24-cv-06706 at D.I. 9. In accordance with the APA and the Sale Order, the Trustee issued a written defense and indemnification demand to SeeCubic on March 24, 2025 which detailed its obligations under the APA and Sale Order. Exhibit D. SeeCubic ignored the demand for three months and eventually expressly denied its obligations by letter dated June 24, 2025, presumably responding only because it had been informed that the Trustee and Rembrandt had negotiated a settlement. *See* Exhibit E at p. 4 ("Further, it has come to our attention that the Trustee

3

is engaged in settlement discussion with Rembrandt."). SeeCubic's letter denied coverage for all but one action, disclaimed defense and indemnification obligations even for the Pennsylvania District Court Action, and ignored the Trustee's demand for an immediate defense in, among other actions, the Pennsylvania District Court Action. *Id.*

SeeCubic's prolonged silence and utter failure to honor its obligation to "immediately enter a defense" of the Trustee constituted a breach of the obligation to defend contained in the APA and the Sale Order, and left the Trustee with no choice but to deal with the Pennsylvania District Court Action on his own, which he did by entering into a reasonable settlement, for which SeeCubic should properly be held liable. *See Philadelphia Indem. Ins. Co. v. Bogel*, 269 A.3d 992, 1013 (Del. Super. Ct. 2021) ("As a general rule, when an insurer wrongfully refuses to defend a claim, the insured may enter into a reasonable settlement with the claimant, absent fraud, collusion, or bad faith, and sue the insurer for indemnity . . . for the amount paid in settlement." (internal quotation marks, citations, and alteration marks omitted)); *AIG Specialty Ins. Co. v. Conduent State Healthcare, LLC,* No. 35, 2024, 2025 WL 369450, at *5 (Del. Feb. 3, 2025) ("When an insurer fails to fulfill its duty to defend, it becomes liable for all foreseeable damages flowing from the breach, including amounts paid in settlement." (citation and quotation marks omitted)).[3]

---

[3] SeeCubic's assertion that *Bogel* and *Conduent* are "easily distinguishable" ignores their direct relevance to the dispositive issues of indemnification and enforcement of settlement judgments after an insurer wrongfully denies coverage or repudiates its defense obligations. In *Bogel*, the Delaware Superior Court enforced a consent judgment between the insured and third parties—even though the insurer (PIIC) disputed its duty to indemnify—because the insurer had wrongfully withdrawn its defense shortly before trial, thereby breaching its obligations. The court emphasized that "[b]ecause the insurance company identifies no material issue of fact that supports its claim that the Settling Parties fraudulently, collusively, or in bad faith settled the matter, the consent judgments are valid and enforceable against the insurance company." 269 A.3d at 996. The facts in *Bogel* are analogous to this case. Just like PIIC, SeeCubic refused to defend or indemnify and abandoned the Trustee in the face of substantial litigation expense and exposure. *Bogel* recognized that such repudiation nullifies the insurer's right to object to the settlement and binds it to the

4

SeeCubic disingenuously complains that it was somehow denied the opportunity to participate in settlement discussions, yet fails to accept any responsibility for ignoring the Trustee's defense and indemnification demand. Indeed, by the time SeeCubic sent its June 24, 2025, letter, the Trustee and Rembrandt had already reached an agreement[4] and were in the process of formalizing that agreement and preparing the instant Motion. To the extent SeeCubic was denied opportunity to participate in settlement discussions, fault lies with SeeCubic, and SeeCubic alone. SeeCubic had clearly breached its obligation to "immediately enter a defense" and the Trustee had no obligation to sit on his hands incurring further litigation costs while awaiting a response from SeeCubic, whose silence spoke volumes. Moreover, SeeCubic's June 24 letter does not offer to assume defense, propose substitute counsel, or seek clarification—it explicitly denies coverage and questions the validity of the demand. That is classic repudiation.

Finally, SeeCubic's bad faith is underscored by its history of financial instability. SeeCubic failed to close the APA on time due to an inability to raise funds, and in June 2025, a California court entered a $7.5 million judgment against it. These facts—coupled with SeeCubic's silence and eventual refusal—establish that the Trustee acted prudently in moving to settle with Rembrandt without incurring further litigation expenses.

**C.    The Trustee's Settlement Is Reasonable and In the Best Interests of the Estate**

As set forth in detail in the Motion, the *Martin* factors weigh heavily in favor of settlement approval, as the Rembrandt Settlement Agreement effectuates complete peace with Rembrandt (including a reduction in Rembrandt's Proofs of Claim by over 99.9%) in return for a Settlement

---

resulting judgment. The facts of Conduent are no different – the duty to defend was breached and thus the indemnified party was "relieved of its cooperation and consent obligations." 2025 WL 369450, at * 5.

[4] Counsel for the Trustee and Rembrandt agreed to the principal terms of the settlement on June 20, 2025, which were subsequently memorialized in the Rembrandt Settlement Agreement.

5

Payment which is less than the cost of defense in the Pennsylvania District Court Action alone. Indeed, the initial disclosures served by Rembrandt in the Pennsylvania District Court Action list over 70 individuals who have discoverable information, each of whom may need to be deposed absent the Settlement. *See* Homony Dec. at Ex. C. Given the nature of the litigation with Rembrandt and the associated costs, absent the Agreement, it is unclear whether the Debtors will be able to make any distribution to creditors.

While SeeCubic attacks the Trustee's allocation of the Settlement Payment to the Pennsylvania District Court Action, that is the only proceeding which exposes the Debtors to liability and the ongoing accrual of defense costs -- the Delaware District Court Action, which was commenced pre-petition, was stayed as a result of the Debtors' bankruptcy filings and remains stayed today; the claims against the Trustee in the Rembrandt Adversary Proceeding were dismissed by this Court; and the Sale Appeals are fully briefed and await decision by the District Court (and are not fully resolved by the Settlement given VSI's participation therein). Accordingly, the Rembrandt Settlement Payment was appropriately allocated solely to the resolution of the Pennsylvania District Court Action.

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court enter an Order: (i) granting the relief sought in the Motion; (ii) approving the Rembrandt Settlement Agreement and the Settlement contained therein; (iii) authorizing the Trustee to move forward with the Rembrandt Settlement Agreement and Settlement; (iv) enforcing SeeCubic's defense/indemnification obligations; entering judgment against SeeCubic in the amount of $1,150,000.00; and (iv) granting such other and further relief it deems just and proper.

[Signature contained on following page.]

Dated: August 7, 2025

Respectfully submitted,

*/s/ Steven M. Coren*
Steven M. Coren, Esquire
COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 735-8700
scoren@kcr-law.com

*Special Counsel to the Trustee*

7