## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| Stream Networks, Inc., *et al.*[1] | Bky Case No. 23-10763 (DJB) |
| | (Jointly Administered) |
| The Debtors. | |

**DECLARATION OF CHARLES M. "BUD" ROBERTSON IN SUPPORT OF VISUAL SEMICONDUCTOR, INC.'S OPPOSITION TO THE OMNIBUS MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER: (I) APPROVING SETTLEMENT AGREEMENT WITH REMBRANDT 3D HOLDING, LTD. PURSUANT TO FED. R. BANKR. P. 9019(a) AND 11 U.S.C. § 105(a); (II) ENFORCING DEFENSE AND INDEMNITY OBLIGATIONS OF SEECUBIC, INC.; AND (III) GRANTING RELATED RELIEF**

### Introduction

1.     My legal name is Charles M. Robertson, but in my professional capacity I am commonly known as Bud Robertson. I am the Vice President of Operations for Visual Semiconductor, Inc. ("VSI"), a Wyoming corporation. I am authorized to make this declaration on behalf of VSI in connection with the above-captioned bankruptcy case. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently thereto.

2.     I submit this declaration in support of VSI's opposition to the Chapter 11 Trustee's Omnibus Motion to Approve a Settlement Agreement with Rembrandt 3D Holding Ltd.

---

[1] The Debtors, together with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015).  The location of  the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

("Rembrandt") filed on July 15, 2025 (the "9019 Motion").[2]  The proposed settlement (the

"9019 Compromise") was entered into without VSI's consent, in violation of binding agreements

between VSI Rembrandt, and would materially harm VSI's contractual rights and interests.

**Background of Negotiations between VSI and Rembrandt**

3.      I was personally involved in the material negotiations between VSI and

Rembrandt leading to a Litigation Funding and Confirmation Agreement (the "LFCA," as further

described in paragraph 6 below) and its two amendments. In negotiating the LFCA, VSI's focus

was to define the funding structure Rembrandt needed to pursue its litigation and to secure clear

contractual rights for VSI to benefit from any recovery by Rembrandt, including ownership of or

access to the technology of debtor Stream TV Networks, Inc. ("Stream").

4.      In Amendment #1, VSI agreed to adjust funding levels based on increased

litigation activity, and VSI further confirmed that Rembrandt's litigation efforts would be aligned

with VSI's strategic direction.

5.      Amendment #2 was negotiated specifically because the LFCA and Amendment #1

included a variety of termination triggers, one of which was the Bankruptcy Court's order

approving the §363 Sale of Stream's assets on December 9, 2024.[3]  Because Rembrandt and VSI

desired to continue their litigation funding arrangement, the parties agreed to amend the LFCA a

second time to extend the terms thereof. In Amendment #2, VSI specifically negotiated language

to ensure that VSI had the right to direct litigation strategy and to preapprove any settlement, as

well as to secure VSI's entitlement to any rights or access to the Stream technology that

Rembrandt might obtain. These provisions were the core of VSI's decision to continue funding

the litigation.

---

[2] Docket No. 1040
[3] Docket No. 876

**The VSI–Rembrandt Litigation Funding and Confirmation Agreement and Amendments**

6.    On November 5, 2024, VSI and Rembrandt executed the LFCA, a true and correct copy of which is attached hereto as **Exhibit 1**. Although Mathu Rajan, CEO of VSI, had ultimate approval and served as VSI's signatory to the agreement, I personally represented VSI in the negotiation and drafting of the LFCA. The LFCA formalized VSI's commitment to fund Rembrandt's litigation against the Chapter 11 Trustee of Stream, among other things, and to work jointly to secure the Stream technology for VSI's benefit.

7.    On November 20, 2024, VSI and Rembrandt executed Amendment #1 to the LFCA ("Amendment #1"), a true and correct copy of which is attached hereto as **Exhibit 2**. I was directly involved in the negotiation of this amendment on behalf of VSI. Amendment #1 increased VSI's weekly funding obligations and confirmed in paragraph D(4) that:

> "…Rembrandt agrees that it shall pursue litigation **as directed by VSI** until VSI succeeds in securing the assets of Stream or abandons its pursuit thereof." (emphasis added)

8.    On January 13, 2024, VSI and Rembrandt executed Amendment #2 to the LFCA ("Amendment #2"), dated December 30, 2024, a true and correct copy of which is attached hereto as **Exhibit 3**. I was personally involved in negotiating Amendment #2 for VSI. Amendment #2 once again restated in Paragraph D(4) that:

> "…Rembrandt agrees that it shall pursue litigation **as directed by VSI** until VSI succeeds in securing the assets of Stream or abandons its pursuit thereof." (emphasis added)

9.    Amendment #2 further confirmed that VSI would have the right to pre-approve any litigation settlement Rembrandt might consider. Paragraph E(5) stated:

> "Notwithstanding anything to the contrary in the LFCA, the Amendment [#1] or this Amendment #2, **Rembrandt shall not propose or agree to any settlement in the Legal Actions without VSI's prior written consent and approval**." (emphasis added)

3

10.     This language in the Amendments vested VSI with the contractual right to determine litigation direction and strategy, including the authority to decide on any settlement in the Bankruptcy Cases.

11.     VSI funded $270,500 in legal fees and related expenses directly to Rembrandt[4] and to Rembrandt's counsel, Brown & Michaels PC, pursuant to the LFCA and the Amendments. Additionally, VSI paid at least the same amount in legal fees to Akerman LLP for document preparation and review related to various Rembrandt legal filings as contractually obligated, making the total of VSI's litigation funding to Rembrandt well over half a million dollars. A true and correct copy of VSI's LFCA Payment Analysis[5], which I prepared using data obtained from VSI's finance department, is attached hereto as **Exhibit 4**.

12.     Under the LFCA and its Amendments, if Rembrandt obtained ownership of or access to the Stream technology, it was obligated to convey or make such technology available to VSI. This provision, which was a key inducement for VSI's financial support, was specified in paragraph E(4) of Amendment #2:

> "In the event that Rembrandt succeeds in obtaining ownership of or access to the Stream Ultra-D technology, Rembrandt shall immediately transfer the entirety of such ownership or access to VSI as partial consideration for the litigation funding provided hereunder."

**The 9019 Compromise Proposed by Stream's Chapter 11 Trustee**

13.     The Trustee's 9019 Motion seeks approval of a June 30, 2025 Settlement Compromise between the Trustee and Rembrandt. Among other things, the 9019 Compromise:

    a.   Rejects the May 23, 2021 Settlement Agreement between Rembrandt and Stream (the "2021 Settlement") (Dkt. 1040-1, Exhibit A);

---

[4] The LFCA and its Amendments stipulated that payments to Rembrandt would be made to Rembrandt's CEO, Stephen Blumenthal, via Blumenthal's consulting company, SVS 3D Consulting.

[5] The LFCA Payment Analysis details only direct payments made to Rembrandt and Rembrandt's counsel, not payments made to Akerman LLP related to work performed for Rembrandt's benefit.

b.   Releases obligations under a 2023 Licensing Covenant executed between
Rembrandt, Stream, and VSI (the "Licensing Covenant"); and

c.   Contains no provision to transfer or make the Stream technology available to
VSI, despite VSI's rights.

14.    Rembrandt entered into the 9019 Compromise without consulting VSI or
obtaining VSI's consent, in violation of Amendment #2's requirement to do so.

15.    Under the 2021 Settlement, Stream and the Trustee were obligated to provide
certain Stream assets, including hardware, prototypes, and technology licenses, to Rembrandt.
By agreeing to void the original 2021 Settlement in the newly proposed 9019 Compromise
without securing those assets, Rembrandt has allowed the Trustee to avoid this obligation. If the
2021 Settlement Agreement is voided, Rembrandt should be entitled to immediate access to the
Stream assets that were previously promised; however, Rembrandt has failed to require the
Trustee and Stream to deliver them. This failure places the entire burden of enforcing those rights
on Rembrandt — and, because Amendment #2 entitles VSI to any such access obtained by
Rembrandt, it imposes an unfair and unreasonable burden on VSI, undermining VSI's
contractual benefit of its bargain.

**Refutation of Statements in the Christopher Michaels Declaration**

16.    In paragraph 23 of the Declaration of Christopher A. Michaels, filed August 7,
2025,[6] Mr. Michaels claims that VSI "admitted" in a May 2025 email that the LFCA had
terminated by its own terms. This assertion is misleading and omits critical context. VSI merely
acknowledged that, without Amendment #2, the LFCA's original term would have expired.
However, VSI and Rembrandt had by that time executed Amendment #2 — which I personally
helped negotiate — precisely to extend and continue the LFCA's effectiveness so that Rembrandt

---

[6] Docket No. 1057

could receive ongoing litigation funding for its appeals in the U.S. District Court concerning the Stream bankruptcy §363 sale and related rulings. At no point did VSI abandon or relinquish its contractual rights under the LFCA; rather, VSI and Rembrandt mutually agreed in Amendment #2 to reaffirm and extend those rights and obligations. As detailed in the LFCA Payment Analysis, VSI paid $107,500 in payments pursuant to Amendment #2.

17.    In paragraph 21 of his declaration, Mr. Michaels asserts that "VSI did not have a pre-approval right over Rembrandt's settlement with the Trustee and Debtor" and that VSI misstates the nature of the LFCA. This statement is incorrect. As detailed in paragraph 9 above, Amendment #2 expressly stated that "Rembrandt shall not propose or agree to any settlement in the Legal Actions without VSI's prior written consent and approval." This contractual language necessarily encompasses the authority to approve or reject any settlement in the Bankruptcy Cases. By entering into the 9019 Compromise without such consent, Rembrandt breached its contractual obligation to VSI.

18.    In paragraph 21 of his declaration, Mr. Michaels further asserts that "the very mention of the LFCA was a breach of the common interest agreement." This statement is unfounded. VSI had no choice but to disclose the existence of the LFCA in order to defend the rights granted to it under that agreement, including its contractual right to direct litigation strategy and to preapprove any settlement in the Bankruptcy Cases. Without referencing the LFCA, VSI could not have meaningfully asserted or protected those rights in this Court. Disclosure of the LFCA's existence under these circumstances was necessary, appropriate, and made in good faith to protect VSI's legal and contractual interests.

19.    In paragraph 25 of his declaration, Mr. Michaels refers to the Licensing Covenant and asserts that "the full $3,600,000 was due months ago, yet VSI made a single payment of $50,000 on that obligation and is refusing to pay the remaining $3,550,000 owed." This

statement is incorrect and disregards the actual terms of the LFCA and its amendments. The

payment terms for the Licensing Covenant were amended in paragraph B(2) of the LFCA and

confirmed again in both Amendments:

> "VSI further confirms that it shall pay Rembrandt One Million Five Hundred Thousand U.S. Dollars (USD $1,500,000) toward the past-due amount owed by VSI pursuant to the Licensing Covenant **within seven (7) days of the Plan Effective Date or close of the Sale if VSI is the prevailing bidder in such Sale**. VSI shall **subsequently** make monthly payments to Rembrandt … until all payment terms of the Licensing Covenant have been fully satisfied." (emphasis added)

20.     Because the VSI-proposed Plan of Reorganization was not approved by this Court

(and therefore had no Effective Date), and because VSI was not the prevailing bidder in the §363

Sale of Stream's assets, the event triggering the initial $1,500,000 payment to Rembrandt has not

yet occurred. As the monthly payments were "subsequent" to the initial payment, those too have

not yet occurred. Thus, no Licensing Covenant payments are yet due. The "past due" amounts

alleged by Rembrandt and recited by Mr. Michaels are therefore inaccurate and misleading.

**Harm to VSI**

21.     Approval of the 9019 Compromise in its current form would (a) deprive VSI of

its bargained-for right to acquire or access the Stream technology if Rembrandt obtained it;

(b) nullify the purpose of VSI's half million dollar investment in funding Rembrandt's litigation

(including $270,500 in direct payments to Rembrandt and Rembrandt's counsel); and (c) set a

precedent allowing Rembrandt to circumvent VSI's contractual control over litigation strategy.

Executed under penalty of perjury this 8th day of August, 2025.

Charles M. Robertson

# <u>EXHIBIT 1</u>

Litigation Funding and Confirmation Agreement

# LITIGATION FUNDING AND CONFIRMATION AGREEMENT

November 5, 2024

This LITIGATION FUNDING AND CONFIRMATION AGREEMENT is made between VISUAL SEMICONDUCTOR, INC., a Wyoming corporation ("**VSI**"), and REMBRANDT 3D HOLDING LTD., a Nevis corporation ("**Rembrandt**"). VSI and Rembrandt are referred to herein collectively as the "Parties" and each as a "Party."

**WHEREAS**, Rembrandt and STREAM TV NETWORKS, INC. ("**Stream**") entered into a Settlement Agreement and Mutual Release on May 23, 2021 (the "**Settlement Agreement**"), resolving litigation between them, and conferring certain intellectual property license rights to Stream in consideration of cash payments and certain product purchase rights granted to Rembrandt;

**WHEREAS**, Rembrandt and Stream modified settlement terms in a Settlement Amendment dated August 12, 2023 (the "**Settlement Amendment**"), following Stream's entry into chapter 11 bankruptcy protection;

**WHEREAS**, Rembrandt and VSI entered into a Licensing Covenant on August 14, 2023 (the "**Licensing Covenant**"), affording VSI benefits related to Rembrandt licensing restrictions to certain third parties;

**WHEREAS**, VSI intends to acquire the assets of Stream in bankruptcy through either a 363 sale (the "**Sale**") or a plan of reorganization (the "**Plan**"), giving VSI control of Stream's technology;

**WHEREAS**, VSI and Rembrandt desire to confirm their intent to fulfill and honor the agreements by and among Rembrandt, VSI, and Stream; and

**WHEREAS**, VSI and Rembrandt believe that the Parties have common interests with respect to the chapter 11 bankruptcy cases (the "**Bankruptcy Cases**") of Stream and Stream's subsidiary, TECHNOVATIVE MEDIA, INC. ("**Technovative**" and collectively with Stream, the "Debtors");

**NOW THEREFORE**, the Parties agree as follows:

## A. THE SETTLEMENT AGREEMENT AND SETTLEMENT AMENDMENT

1. VSI confirms that it shall, as the ultimate beneficial owner of Stream or Stream's assets following Bankruptcy Court approval of the Sale or Plan ("**Court Approval**"), ensure that Stream fulfills all its obligations under the Settlement Agreement and Settlement Amendment. In addition, VSI agrees to guarantee Stream's performance of these obligations jointly with Stream.
2. In any Plan or Sale negotiated with the chapter 11 Trustee of Stream (the "**Trustee**") or presented to the Bankruptcy Court for approval, VSI shall ensure that the Settlement Agreement and subsequent Settlement Amendment – as executory contracts – are "assumed" and not "rejected" by Stream.
3. Rembrandt agrees that it shall not object to any Plan sponsored by VSI as long as such Plan does not reject the Settlement Agreement or Settlement Amendment.

Initials Rembrandt: _____ / VSI _____

# LITIGATION FUNDING AND CONFIRMATION AGREEMENT

4. Rembrandt further confirms that it shall withdraw its bankruptcy claim(s) against the Debtors immediately following or concurrent with Bankruptcy Court approval of a VSI-sponsored Plan as long as such Plan assumes and does not reject the Settlement Agreement or Settlement Amendment, both of which fully satisfy any claims Rembrandt has against the Debtors.

5. Rembrandt confirms that it shall honor all terms of the Settlement Agreement and Settlement Amendment.

6. The Parties further agree that the Settlement Agreement and the Settlement Amendment fully and finally resolve all intellectual property claims of any kind between them.

## B. THE LICENSING COVENANT

7. VSI confirms that it shall fulfill all its obligations under the Licensing Covenant and confirms that it shall, as the ultimate beneficial owner of Stream or Stream's assets following Court Approval, ensure that both Stream and VSI fulfill all their obligations under the Licensing Covenant.

2. VSI further confirms that it shall pay Rembrandt One Million Five Hundred Thousand U.S. Dollars (USD $1,500,000) toward the past-due amount owed by VSI pursuant to the Licensing Covenant within seven (7) days of the Plan Effective Date or close of the Sale if VSI is the prevailing bidder in such Sale. VSI shall subsequently make monthly payments to Rembrandt in the amount of One Hundred Seventy-Five Thousand U.S. Dollars (USD $175,000) until all payment terms of the Licensing Covenant have been fully satisfied.

3. Rembrandt confirms that it shall honor all terms of the Licensing Covenant.

## C. PENNSYLVANIA BANKRUPTCIES

1. Shortly after the commencement of the Bankruptcy Case, on April 14, 2023, Rembrandt filed a $1,212,407,000 claim as an unsecured creditor of Stream.

2. Rembrandt was also listed as an unsecured creditor in the bankruptcy of Technovative, with a claim amount of $100,000,000 listed on Technovative's Schedule E/F.

3. On January 4, 2024, the Bankruptcy Court issued a temporary restraining order (the "**TRO**") against certain of Stream's creditors and Stream's R&D subsidiary, SeeCubic B.V. ("**SCBV**"), in part to protect the IP rights of Rembrandt from irreparable harm.

4. The Trustee entered into a settlement with Stream's secured creditors (the "**9019 Settlement**") which was subsequently approved by the Bankruptcy Court (the "**9019 Order**") on June 7, 2024, giving the Trustee authority to pursue a 363 Sale of Stream's assets.

5. Rembrandt has appealed the 9019 Order and VSI has filed a Motion to Reconsider. Rembrandt believes it can pursue an injunction to block the 363 Sale of Stream's assets either in the bankruptcy case or in a different court without leave of the bankruptcy court.

6. On October 10, 2024, the Trustee filed an amended schedule E/F for Technovative and reduced the Rembrandt claim to $0.00, stating that the basis for the Rembrandt claim was "unknown."

7. Rembrandt intends to pursue enforcement of the TRO and sanctions for the violations thereof, appeal of the 9019 Order, and other remedies it may have in the Bankruptcy Cases.

Initials Rembrandt _____ / VSI _____

# LITIGATION FUNDING AND CONFIRMATION AGREEMENT

## D. LITIGATION FUNDING AND JOINT REPRESENTATION

1. Rembrandt shall engage counsel of its choosing, but acceptable to VSI, which acceptance shall not be unreasonably withheld, to, working in consultation with Rembrandt's in-house attorneys, represent Rembrandt in the Bankruptcy Cases and pursue its claims therein (**"Rembrandt's Counsel"**).

2. VSI shall fund the reasonable fees and expenses of Rembrandt's Counsel in the Bankruptcy Cases. VSI's counsel, Akerman LLP (**"Akerman"**), will work closely with Rembrandt's Counsel as Rembrandt seeks to

   a. enforce the TRO (ECF No. 119), entered by the United States Bankruptcy Court for the Eastern District of Pennsylvania in *In re: Stream TV Networks, Inc., et al.*, Adversary Case No. 23-00057 (MDC), against SeeCubic, Inc., Mr. Stastney, and any other applicable Defendants;

   b. restore, validate, or otherwise support the Rembrandt claims in the Bankruptcy Cases;

   c. object, as needed, to the scope of the bankruptcy estate; and

   d. take other actions in the Bankruptcy Cases as may be prudent.

3. Akerman will also serve as a strategic sounding board for Rembrandt in the Bankruptcy Cases. Rembrandt maintains the sole and exclusive right to control its bankruptcy claims and intellectual property rights but shall consult VSI and Akerman prior to making any strategic decisions in the Bankruptcy Cases. Rembrandt reserves its right to

   a. cease sharing Shared Materials, as defined in the CONFIDENTIALITY AND COMMON INTEREST AGREEMENT attached hereto as Exhibit A, if a conflict arises between the parties or joint representation no longer serves the Parties' collective best interests;

   b. review all Rembrandt's Counsel/Akerman legal filings, motions, and documents prepared on Rembrandt's behalf; and

   c. with respect to the matters hereof, have an in-house legal representative on all attorney's calls, to be copied on all emails, and for Stephen Blumenthal (**"Blumenthal"**) to be included on all calls to which Mathu Rajan and/or Bud Robertson participate.

4. For purposes of clarity, Akerman shall determine legal strategy and draft all filings, with Rembrandt entitled to review and provide input. Such filings shall be made in the Bankruptcy Court on behalf of Rembrandt by Rembrandt's Counsel.

5. Legal costs paid by VSI on behalf of Rembrandt shall be refunded from the proceeds of litigation recovery, if any; then the value of the Settlement Agreement and License Covenant shall be paid to Rembrandt, then Rembrandt shall retain any overage.

## E. OTHER TERMS

1. VSI agrees to pay a fee of Three Thousand U.S. Dollars (USD $3,000) per week as total compensation for participation by Blumenthal and Rembrandt's in-house attorneys providing legal support, evidence, and historical information related to the matter hereof. Rembrandt shall not be responsible for tracking hourly billing, reporting, or invoicing VSI for such services. Rembrandt shall have sole discretion in how it distributes such weekly fees among Blumenthal and its in-house attorneys, Christopher Michaels and Neil Wallace. The weekly legal fee payments shall commence the week ending November 8, 2024 and continue until the earlier of (i) the Bankruptcy Court-approved VSI-sponsored Plan

Initials Rembrandt _____ / VSI *Mathu Rajan*

## LITIGATION FUNDING AND CONFIRMATION AGREEMENT

effective date, (ii) rejection of the VSI-sponsored Plan by either the Bankruptcy Court or the Debtors' creditors, (iii) Bankruptcy Court approval of a Sale of the Debtors' assets; or (iv) VSI abandons or otherwise terminates its pursuit of the Debtors or their assets.

2. In consideration of Blumenthal's consulting services provided hereunder, VSI agrees to pay Blumenthal:

   a. Twenty-Five Thousand U.S. Dollars ($25,000) on November 8, 2024;

   b. Twenty Thousand U.S. Dollars ($20,000) on November 15, 2024; and

   c. Six Thousand Five Hundred U.S. Dollars ($6,500) per week, commencing on November 22, 2024, and continuing until the earlier of (i) the Bankruptcy Court-approved VSI-sponsored Plan effective date, (ii) rejection of the VSI-sponsored Plan by either the Bankruptcy Court or the Debtors' creditors, or (iii) Bankruptcy Court approval of a Sale of the Debtors' assets. Notwithstanding the foregoing, VSI shall make no less than eight (8) such weekly payments to Blumenthal.

3. Fees paid pursuant to sections E(1) and E(2) shall be refunded to VSI from the proceeds of litigation recovery, if any.

4. Payments pursuant to section E(1) above shall be made by ACH or wire transfer to:

   | | |
   |---|---|
   | Account Name: | Brown & Michaels, PC IOLA Trust |
   | Address: | 118 N Tioga St., Ithaca, NY 14850 |
   | Bank: | Tompkins Community Bank |
   | Bank Address: | 118 E Seneca St., Ithaca, NY 14850 |
   | Wire Routing (ABA): | 021302648 |
   | Account Number: | 0111196628 |

5. Payments pursuant to section E(2) above shall be made by ACH or wire transfer to:

   | | |
   |---|---|
   | Account Name: | SVS 3D Consulting Services |
   | Bank: | Tompkins Community Bank |
   | Bank Address: | P.O. Box 460, Ithaca, NY 14851 |
   | Wire Routing (ABA): | 021302648 |
   | Account Number: | 0111142536 |

6. VSI and Rembrandt agree to abide by the terms of the Confidentiality and Common Interest Agreement attached hereto as Exhibit A.

7. This Agreement shall be interpreted under Delaware law and the parties agree to Delaware courts for jurisdiction and venue.

[ The rest of this page left intentionally blank ]

Initials Rembrandt _____ / VSI _Mattew Nayer_

## LITIGATION FUNDING AND CONFIRMATION AGREEMENT

The foregoing represents the agreement of the Parties as of the date hereof.

Acknowledged and agreed by
Visual Semiconductor, Inc.

Mathu Rajan
CEO
Date:   November 5, 2024

Acknowledged and agreed by
Rembrandt 3D Holdings Ltd.

Stephen Blumenthal
CEO
Date:   Nov, 05, 2024

Initials Rembrandt _____ / VSI _____

# **<u>EXHIBIT 2</u>**

Amendment #1

# LITIGATION FUNDING AND CONFIRMATION AMENDMENT

November 20, 2024

This LITIGATION FUNDING AND CONFIRMATION AMENDMENT is made between VISUAL SEMICONDUCTOR, INC., a Wyoming corporation ("**VSI**"), and REMBRANDT 3D HOLDING LTD., a Nevis corporation ("**Rembrandt**"). VSI and Rembrandt are referred to herein collectively as the "Parties" and each as a "Party."

**WHEREAS**, Rembrandt and VSI entered into a Litigation Funding and Confirmation Agreement on November 5, 2024 (the "**LFCA**"), confirming adherence to various agreements executed between them previously and establishing a litigation funding arrangement; and

**WHEREAS**, the Parties wish to acknowledge certain amended terms to the LFCA, effective immediately;

**NOW THEREFORE**, the Parties agree that the LFCA shall be amended as follows:

All paragraphs in Sections A through C shall remain unchanged.

Paragraph D(4) shall be amended as follows:

4. For purposes of clarity, Akerman shall determine legal strategy and draft all filings, with Rembrandt entitled to review and provide input. Such filings shall be made in the Bankruptcy Court or other courts of relevant jurisdiction on behalf of Rembrandt by Rembrandt's Counsel. As long as VSI continues to fulfill its obligations hereunder, Rembrandt agrees that it shall pursue litigation as directed by VSI until VSI succeeds in securing the assets of Stream or abandons its pursuit thereof.

All other paragraphs of Section D shall remain unchanged.

Section E(1) shall be amended as follows:

1. VSI agrees to pay a fee of Twelve Thousand U.S. Dollars (USD $12,000) per week as total compensation for participation by Blumenthal and Rembrandt's in-house attorneys providing legal support, evidence, and historical information related to the matter hereof. Rembrandt shall not be responsible for tracking hourly billing, reporting, or invoicing VSI for such services. Rembrandt shall have sole discretion in how it distributes such weekly fees among Blumenthal and its in-house attorneys, Christopher Michaels and Neil Wallace. The weekly legal fee payments shall commence the week ending November 22, 2024 and continue until the earlier of (i) the Bankruptcy Court-approved VSI-sponsored Plan effective date, (ii) rejection of the VSI-sponsored Plan by either the Bankruptcy Court or the Debtors' creditors, (iii) Bankruptcy Court approval of a Sale of the Debtors' assets; or (iv) VSI abandons or otherwise terminates its pursuit of the Debtors or their assets.

All other paragraphs of Section E shall remain unchanged.

Initials Rembrandt _____ / VSI _____

# LITIGATION FUNDING AND CONFIRMATION AMENDMENT

The foregoing represents the agreement of the Parties as of the date hereof.

Acknowledged and agreed by
Visual Semiconductor, Inc.

Mathu Rajan
CEO
Date: _November 20, 2024_

Acknowledged and agreed by
Rembrandt 3D Holdings Ltd.

Stephen Blumenthal
CEO
Date: _November 20, 2024_

Initials Rembrandt _____ / VSI _____

# **<u>EXHIBIT 3</u>**

Amendment #2

# LITIGATION FUNDING AND CONFIRMATION AMENDMENT #2

December 30, 2024

This LITIGATION FUNDING AND CONFIRMATION AMENDMENT #2 (this "**Amendment #2**") is made between VISUAL SEMICONDUCTOR, INC., a Wyoming corporation ("**VSI**"), and REMBRANDT 3D HOLDING LTD., a Nevis corporation ("**Rembrandt**"). VSI and Rembrandt are referred to herein collectively as the "Parties" and each as a "Party."

**WHEREAS**, Rembrandt and VSI entered into a Litigation Funding and Confirmation Agreement on November 5, 2024 (the "**LFCA**"), confirming adherence to various agreements executed between them previously and establishing a litigation funding arrangement;

**WHEREAS**, Rembrandt and VSI entered into a Litigation Funding and Confirmation Amendment on November 20, 2024 (the "**Amendment**"), confirming certain changes to the LFCA; and

**WHEREAS**, the Parties wish to acknowledge certain additional amended terms to the LFCA, effective immediately;

**NOW THEREFORE**, the Parties agree that the LFCA shall be additionally amended as described below.

All paragraphs in Sections A through C of the LFCA shall remain unchanged.

Section D is amended and restated in full as follows:

## D.  LITIGATION FUNDING AND JOINT REPRESENTATION

1.  VSI shall engage counsel on behalf of Rembrandt ("**Rembrandt's Counsel**") for the purposes described herein. Such Counsel shall be acceptable to Rembrandt, which acceptance shall not be unreasonably withheld, to, working in consultation with Rembrandt's in-house attorneys and VSI counsel, represent Rembrandt in the Bankruptcy Cases, cases in other venues, and the pursuit of claims therein.

2.  VSI shall fund the reasonable fees and expenses of Rembrandt's Counsel in the various cases and actions provided for herein (the "**Legal Actions**"). VSI's counsel, Akerman LLP ("**Akerman**"), will work closely with Rembrandt's Counsel as Rembrandt seeks to, among other things,

    a.  enforce the TRO (ECF No. 119), entered by the United States Bankruptcy Court for the Eastern District of Pennsylvania (*In re: Stream TV Networks, Inc., et al.*, Adversary Case No. 23-00057 (MDC), against SeeCubic, Inc., Mr. Stastney, and other Defendants);

    b.  restore, validate, or otherwise support the Rembrandt claims in the Bankruptcy Cases;

    c.  object, as needed, to the scope of the Stream TV Networks, Inc. ("**Stream**") bankruptcy estate;

    d.  seek damages and other compensation for patent infringement and trade secret misappropriation by William A. Homony as the chapter 11 trustee to Stream and SSG

Initials Rembrandt _____ / VSI _____

## LITIGATION FUNDING AND CONFIRMATION AMENDMENT #2

Advisors LLC as investment banker to Stream in the U.S. District Court for the Eastern District of Pennsylvania (*Rembrandt 3D Holding Ltd. v. William Homony, SSG Advisors, et al.*, Civil Case No. 2:24-cv-06706-JMY);

e. seek damages and other compensation for patent infringement and trade secret misappropriation by SeeCubic, Inc., Hawk, Investment Holdings Limited, and other parties as may be added in the U.S. District Court for the District of Delaware (*Rembrandt 3D Holding Ltd. v. Technovative Media, Inc., SeeCubic, Inc. and Hawk Investment Holdings Limited*, Civil Case No. 1:23-cv-00193-JLH);

f. seek damages and other compensation for patent infringement and trade secret misappropriation by SeeCubic, B.V. in the U.S. District Court for the District of Delaware or other prudent jurisdiction; and

g. take other actions in the Bankruptcy Cases or legal actions in other venues as may be prudent.

3. Akerman will also serve as a strategic sounding board for Rembrandt in the Legal Actions. Rembrandt shall maintain the sole and exclusive right to control its bankruptcy claims and intellectual property rights, but VSI shall maintain the sole right to direct Rembrandt's Counsel, in consultation with Akerman and Rembrandt, in the Legal Actions. Rembrandt reserves its right to

a. cease sharing Shared Materials, as defined in the CONFIDENTIALITY AND COMMON INTEREST AGREEMENT attached as <u>Exhibit A</u> to the LFCA, if a conflict arises between the parties or joint representation no longer serves the Parties' collective best interests;

b. review all Rembrandt's Counsel/Akerman legal filings, motions, and documents prepared on Rembrandt's behalf; and

c. with respect to the matters hereof, have an in-house legal representative on all attorney's calls, to be copied on all emails, and for Stephen Blumenthal ("**Blumenthal**") to be included on all calls to which Mathu Rajan and/or Bud Robertson participate.

4. For purposes of clarity, VSI and Akerman shall determine legal strategy and draft all filings, with Rembrandt entitled to review and provide input. Such filings shall be made in the courts of relevant jurisdiction on behalf of Rembrandt by Rembrandt's Counsel, at the sole direction of VSI. As long as VSI continues to fulfill its obligations hereunder, Rembrandt agrees that it shall pursue litigation as directed by VSI.

5. The proceeds of litigation recovery, if any, shall be applied first to the legal costs of Rembrandt's Counsel paid by VSI hereunder, then to the License Covenant obligations of VSI, and finally to the Settlement Agreement obligations of Stream. Rembrandt shall retain the overage, if any, after payment of all Rembrandt's Counsel legal costs, payment of VSI's obligations under the License Covenant, and payment of Stream's obligations under the Settlement Agreement.

6. As additional compensation for the Litigation Funding provided by VSI hereunder, VSI shall be entitled to certain intellectual property benefits as described in Section E(4) below.

Initials Rembrandt _____ / VSI _____

## LITIGATION FUNDING AND CONFIRMATION AMENDMENT #2

<u>Section E is amended and restated in full as follows:</u>

### E. OTHER TERMS

1. VSI agrees to pay a fee of Eight Thousand U.S. Dollars (USD $8,000) per week as total compensation for participation by Rembrandt's in-house attorneys providing legal support, evidence, and historical information related to the matter hereof. Rembrandt shall not be responsible for tracking hourly billing, reporting, or invoicing VSI for such services. Rembrandt shall have sole discretion in how it distributes such weekly fees among its in-house attorneys, Christopher Michaels and Neil Wallace. The weekly legal fee payments shall commence the week ending January 3, 2025 and continue for 30 days. For the next 30 days ("**Second 30 Days**"), VSI agrees to pay a fee of Six Thousand U.S. Dollars (USD $6,000) per week. After the Second 30 Days, the fee shall become Three Thousand U.S. Dollars (USD$3,000) per week, as needed.

2. In consideration of Blumenthal's consulting services provided hereunder, VSI agrees to pay Blumenthal:
   a. Twenty-Five Thousand U.S. Dollars ($25,000) on November 8, 2024;
   b. Twenty Thousand U.S. Dollars ($20,000) on November 15, 2024; and
   c. Six Thousand Five Hundred U.S. Dollars ($6,500) per week, commencing on November 22, 2024, and continuing until the earlier of (i) VSI obtains legal title and possession of the Stream Ultra-D technology; (ii) Rembrandt receives a monetary settlement satisfactory to VSI; or (iii) VSI abandons or otherwise terminates its pursuit of the Stream Ultra-D technology or claims related thereto.

3. Fees paid pursuant to sections E(1) and E(2) shall be refunded to VSI from the proceeds of litigation recovery, if any.

4. In the event that Rembrandt succeeds in obtaining ownership of or access to the Stream Ultra-D technology, Rembrandt shall immediately transfer the entirety of such ownership or access to VSI as partial consideration for the litigation funding provided hereunder.

5. Notwithstanding anything to the contrary in the LFCA, the Amendment or this Amendment #2, Rembrandt shall not propose or agree to any settlement in the Legal Actions without VSI's prior written consent and approval.

6. Payments pursuant to sections E(1) and E(2) above shall be made by ACH or wire transfer to:

   | | |
   |---|---|
   | Account Name: | SVS 3D Consulting Services |
   | Bank: | Tompkins Community Bank |
   | Bank Address: | P.O. Box 460, Ithaca, NY 14851 |
   | Wire Routing (ABA): | 021302648 |
   | Account Number: | 0111142536 |

7. VSI and Rembrandt agree to abide by the terms of the Confidentiality and Common Interest Agreement attached hereto as Exhibit A.

8. This Agreement shall be interpreted under Delaware law and the parties agree to Delaware courts for jurisdiction and venue.

Initials Rembrandt  / VSI

## LITIGATION FUNDING AND CONFIRMATION AMENDMENT #2

All other terms and conditions of the LFCA not amended or restated above shall remain in full effect as of the date first agreed upon.

All terms and conditions of the Confidentiality and Common Interest Privilege Agreement attached as Exhibit A to the LFCA shall remain in full effect as of the date first agreed upon.

The foregoing represents the agreement of the Parties as of the date hereof.

Acknowledged and agreed by                     Acknowledged and agreed by
Visual Semiconductor, Inc.                      Rembrandt 3D Holdings Ltd.


_____                         _____
Mathu Rajan                                      Stephen Blumenthal
CEO                                              CEO
Date: _January 13, 2025_                         Date: __Jan 13, 2025__

Initials Rembrandt _____ VSI _____

# **<u>EXHIBIT 4</u>**

LFCA Payment Analysis

as of 4/11/25

**ANALYSIS OF PAYMENTS MADE TO REMBRANDT BY VSI**

as of April 11, 2025

| Notes | Agreement | Paid to BROWN & MICHAELS | | | | Paid to SVS 3D CONSULTING | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Date Owed | Amount Owed | Date Paid | Amount Paid | Date Owed | Amount Owed | Date Paid | Amount Paid |
| 1 | Litigation Funding & Confirmation Agreement - 20241105 | 11/08/24 | $3,000 | 11/08/24 | $3,000 | 11/08/24 | $25,000 | 11/08/24 | $25,000 |
| | Litigation Funding & Confirmation Agreement - 20241105 | 11/15/24 | $3,000 | 11/15/24 | $3,000 | 11/15/24 | $20,000 | 11/15/24 | $20,000 |
| | Litigation Funding & Confirmation Agreement - 20241105 | 11/22/24 | Superseded by Amendment #1 below | | | 11/22/24 | $6,500 | 11/21/24 | $6,500 |
| | Litigation Funding & Confirmation Agreement - 20241105 | 11/29/24 | | | | 11/29/24 | $6,500 | 11/29/24 | $6,500 |
| | Litigation Funding & Confirmation Agreement - 20241105 | 12/06/24 | | | | 12/06/24 | $6,500 | 12/06/24 | $6,500 |
| | Litigation Funding & Confirmation Agreement - 20241105 | 12/13/24 | | | | 12/13/24 | $6,500 | 12/13/24 | $6,500 |
| | Litigation Funding & Confirmation Agreement - 20241105 | 12/20/24 | | | | 12/20/24 | $6,500 | 12/20/24 | $6,500 |
| | Litigation Funding & Confirmation Agreement - 20241105 | 12/27/24 | | | | 12/27/24 | $6,500 | 12/27/24 | $6,500 |
| 2 | LFCA Amendment #1 - 20241120 | 11/22/24 | $12,000 | 11/21/24 | $12,000 | 01/03/25 | $6,500 | 01/03/25 | $6,500 |
| | LFCA Amendment #1 - 20241120 | 11/29/24 | $12,000 | 11/29/24 | $12,000 | 01/10/25 | $6,500 | 01/10/25 | $6,500 |
| 3 | LFCA Amendment #1 - 20241120 | 12/06/24 | $12,000 | 12/06/24 | $12,000 | | | | |
| | LFCA Amendment #1 - 20241120 | 12/13/24 | $12,000 | 12/13/24 | $12,000 | | | | |
| 4 | LFCA Amendment #1 - 20241120 | 12/20/24 | $12,000 | | | | | | |
| | LFCA Amendment #2 - 20241230 | | | | | 01/03/25 | $8,000 | | |
| | LFCA Amendment #2 - 20241230 | | | | | 01/10/25 | $8,000 | | |
| | LFCA Amendment #2 - 20241230 | | | | | 01/17/25 | $14,500 | 01/17/25 | $14,500 |
| | LFCA Amendment #2 - 20241230 | | | | | 01/24/25 | $14,500 | 01/24/25 | $6,500 |
| | LFCA Amendment #2 - 20241230 | | | | | | | 01/27/25 | $8,000 |
| | LFCA Amendment #2 - 20241230 | | | | | 01/31/25 | $14,500 | 02/03/25 | $14,500 |
| | LFCA Amendment #2 - 20241230 | | | | | 02/07/25 | $12,500 | 02/07/25 | $14,500 |
| | LFCA Amendment #2 - 20241230 | | | | | 02/14/25 | $12,500 | 02/18/25 | $14,500 |
| | LFCA Amendment #2 - 20241230 | | | | | 03/07/25 | $9,500 | 03/03/25 | $12,500 |
| | LFCA Amendment #2 - 20241230 | | | | | 03/14/25 | $9,500 | 03/18/25 | $12,500 |
| | LFCA Amendment #2 - 20241230 | | | 04/11/25 | $10,000 | 04/11/25 | $9,500 | | |
| | | | | Subtotal: | $76,000 | | | Subtotal: | $194,500 |

| | |
|---|---|
| **TOTAL PAID TO REMBRANDT PURSUANT TO LFCA + AMENDMENTS #1 AND #2** | **$270,500** |

Notes

1  The LFCA stipulates that recurring payments to SVS 3D terminate upon, among other things, Bankrupcty Court approval of a Sale of the Debtors' assets. The Bankruptcy Court approved the Sale on December 9, 2024. However, a minimum of eight (8) $6,500 weekly payments were required under the LFCA.

2  LFCA Amendment #1 is executed on November 20, 2024 and stipulates that the weekly payment to B&M increases from $3,000 to $12,000 per week beginning November 22, 2024. LFCA Amendment #1 makes no changes to the payments due to SVS 3D.

3  LFCA Amendment #1 stipulates that recurring payments to B&M terminate upon, among other things, Bankrupcty Court approval of a Sale of the Debtors' assets. The Bankruptcy Court approved the Sale on December 9, 2024.

4  LFCA Amendment #2 is executed on December 30, 2024 and stipulates that recurring payments to both B&M and SVS 3D shall continue until (i) VSI obtains legal title and possession of the Ultra-D technology, (ii) Rembrandt receives a monetary settlement satisfactory to VSI, or (iii) VSI abandons or otherwise terminates pursuit of te Ultra-D technology. Payments for both shall be remitted to SVS 3D. None of those criteria have been met as of April 25, 2025.