**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Stream TV Networks, Inc., | : | Case No. 23-10763-DJB |
| | : | |
| Debtor. | : | |
| | : | |

### SECOND DECLARATION OF MATHU RAJAN

I, Mathu Rajan, hereby declare under penalty of perjury:

1. I am the founder of Stream TV Networks, Inc. ("Stream"), which licensed 3D technology from Rembrandt 3D Holding, Ltd. ("Rembrandt"), and I am the founder and Chief Executive Officer of Visual Semiconductor, Inc. ("VSI"), which entered into the hybrid Litigation Funding and Cooperation Agreement ("LFCA") and technology license with Rembrandt.

2. I submit this Second Declaration in further opposition to the Chapter 11 Trustee's proposed settlement with Rembrandt under Bankruptcy Rule 9019. This declaration provides further explanation under Delaware law and bankruptcy law why the Trustee–Rembrandt settlement is unauthorized, void, and inequitable, and why it must be rejected.

**Why the VSI–Rembrandt Agreement Is a Hybrid**

3. The LFCA was never a traditional litigation funding agreement. It was structured as a hybrid contract. On the one hand, it provided litigation funding: VSI paid over half a million dollars in legal fees and related expenses on Rembrandt's behalf. On the other hand, it was a technology license: Rembrandt's right to use VSI's Ultra-D technology was expressly conditioned on VSI's continuing control.

4. The settlement veto and technology transfer provisions were not optional covenants. They were conditions precedent. Rembrandt could not settle litigation, sublicense, or concede Ultra-D rights without VSI's written consent. This was the linchpin of VSI's decision to

1

fund Rembrandt's litigation.

### Why the Settlement Is Invalid Under Bankruptcy Law

5. Bankruptcy law does not expand the estate's rights. A trustee inherits only those rights the debtor validly possesses on the petition date. Stream's rights in Ultra-D were limited and burdened by the VSI–Rembrandt agreement. Rembrandt itself was prohibited from settling without VSI's consent, so the Trustee cannot gain authority that Rembrandt never had.

6. Bankruptcy Rule 9019 presupposes that the parties proposing a settlement have actual authority. Here, that authority is missing. Rule 9019 cannot be used to bless an unauthorized act. A court must reject a settlement that is ultra vires as to one of the signatories.

7. Further, by prioritizing his own interest in finalizing litigation over VSI's superior rights, the Trustee is attempting to put the estate's claims above VSI's contractual protections. That violates fundamental bankruptcy principles, which require balancing the rights of all stakeholders.

### Tortious Interference by the Trustee

8. Delaware law recognizes tortious interference when a party intentionally induces another to breach a contract. That is precisely what has happened. The Trustee knew, or should have known, that Rembrandt was contractually bound not to settle without VSI's consent. Yet the Trustee actively negotiated such a settlement.

9. By inducing Rembrandt to breach the LFCA, the Trustee has exposed the estate to liability for tortious interference. This creates additional risk to creditors rather than protecting them.

### Why Rembrandt Lacks Authority

10. Rembrandt has no independent authority to settle litigation over Ultra-D. Its entire ability to litigate arose from the LFCA, which was funded by VSI and conditioned on VSI's control. Rembrandt is not a free agent — it acted as VSI's funded partner.

11. Without VSI's consent, Rembrandt's settlement is void. Any conveyance of Ultra-D rights under such a settlement is ineffective and exposes both Rembrandt and the estate

2

to claims for infringement and breach.

**Dangers to the Estate**

12. VSI has already filed an initial adversary lawsuit against both Rembrandt and the Chapter 11 Trustee of Stream TV, asserting breach of the LFCA, infringement of VSI's Ultra-D intellectual property, and tortious interference with VSI's contractual rights. This adversary proceeding is active and demonstrates VSI's resolve to protect its bargained-for rights.

13. If the Court approves the proposed Trustee–Rembrandt settlement, VSI will be forced to escalate its litigation enormously. VSI will not only continue pursuing its existing adversary proceeding but will seek damages equivalent to the full value of the Rembrandt "repetition claim" — approximately $1.2 billion — and, under applicable law, VSI will seek treble damages against Rembrandt and the Trustee for willful misconduct, tortious interference, and infringement.

14. The prospect of such expanded litigation underscores why the settlement is not in the estate's best interest. Rather than achieving finality, approval of this settlement will embroil the estate and Rembrandt in years of costly, high-stakes litigation, exposing the estate to enormous liability and diminishing the value of its assets.

15. Approval of the Trustee–Rembrandt settlement would strip VSI of its bargained-for rights, embroil Ultra-D technology in protracted litigation, and create liability for tortious interference and infringement. This is not a fair and equitable resolution under Rule 9019.

16. Instead of resolving disputes, the settlement would multiply them: VSI would terminate Rembrandt's license, sue for infringement, and pursue tortious interference claims against the estate. That outcome would harm creditors, not protect them.

**Rebuttal to Trustee Homony's Testimony**

17. Mr. Homony admitted in his deposition that he was unaware of the LFCA between VSI and Rembrandt when he negotiated the 9019 settlement. He first learned of the

3

LFCA only when VSI filed its opposition to the settlement motion and attached the agreement as an exhibit[1]. Mr. Homony further testified that neither he nor anyone acting on his behalf contacted VSI upon discovering this agreement[2].

18. Mr. Homony also acknowledged that the Trustee–Rembrandt settlement agreement contains representations and warranties concerning each party's authority to execute the deal[3]. He received no assurance of Rembrandt's authority beyond the language of the settlement itself[4], and he was not aware of Rembrandt ever disclosing that the settlement might conflict with any other obligation[5].

19. In fact, Mr. Homony's deposition confirmed that Rembrandt's authority to settle was contractually constrained by VSI. He read into the record the LFCA amendment stating that "Rembrandt shall not propose or agree to any settlement in the Legal Actions without VSI's prior written consent and approval"[6]. This demonstrates that Rembrandt lacked independent authority to enter into the settlement without involving VSI.

20. The deposition further revealed that the proposed settlement provided Mr. Homony with personal benefit: a release from all Rembrandt litigation against him. Paragraph 11 of the settlement grants Rembrandt's broad release of "the Trustee (in his individual and representative capacity)" from any claims[7][8]. Mr. Homony agreed that Rembrandt was indeed releasing any and all claims against him personally, and he admitted that such a release would be valuable to him if he were ever found individually liable for anything[9][10].

21. These facts, taken together, undercut the fairness and enforceability of the proposed 9019 settlement. The Trustee entered into the Rembrandt deal without full knowledge of Rembrandt's obligations and without consulting VSI, the very party whose consent was a precondition. He relied on a warranty of authority that Rembrandt did not truly possess, and he obtained a personal liability release for himself as part of the bargain. Such a compromise was not negotiated at arm's length or in good faith, and it is not a fair or equitable resolution under Rule 9019.

**Conclusion**

22. For all these reasons, the Trustee–Rembrandt settlement must be rejected. Under

Delaware law, Rembrandt's lack of consent authority renders the settlement invalid. Under bankruptcy law, the Trustee cannot obtain greater rights than Rembrandt had and cannot use Rule 9019 to authorize what was unauthorized. Damages after the fact are not an adequate substitute for enforcing authority as a threshold matter.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 7, 2025    **Stream TV Networks, Inc.**

By: _[signature: Mathu Rajan]_

Title:    Mathu Rajan
          Chief Executive Officer

5