# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re:<br><br>Stream TV Networks, Inc., *et al.*[1]<br><br>The Debtors. | Chapter 11<br><br>Bky. Case No. 23-10763 (DJB)<br>(Jointly Administered) |

**VISUAL SEMICONDUCTOR, INC.'S POST-TRIAL BRIEF IN OPPOSITION TO THE OMNIBUS MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER: (I) APPROVING A SETTLEMENT WITH REMBARNDT 3D HOLDING, LTD. PURSUANT TO FED. R. BANKR. P. 9019(A) AND 11 U.S.C. § 105(A); (II) ENFORCING DEFENSE AND INDEMINITY OBLIGATIONS OF SEECUBIC, INC.; AND (III) GRANTING RELATED RELIEF**

---

[1] The Debtors, together with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

## TABLE OF CONTENTS

I.   **INTRODUCTION** ......................................................................................................... 1

    A.   Brief Overview of the Case .................................................................................. 1

    B.   Purpose of this Brief ............................................................................................ 1

    C.   Issues Presented ................................................................................................... 1

    D.   Summary of Argument ......................................................................................... 2

II.  **PROPOSED FINDINGS OF FACT** ............................................................................ 2

    A.   The Hybrid Agreement ........................................................................................ 2

    B.   Consideration and Performance .......................................................................... 3

    C.   The Rembrandt 9019 Settlement Agreement ....................................................... 4

III. **PROPOSED CONCLUSIONS OF LAW** .................................................................... 4

IV.  **ARGUMENT** ................................................................................................................ 4

    A.   Legal Standard Under Rule 9019 ........................................................................ 4

    B.   The LFCA, as amended, is Legally Enforceable Under Delaware Law and in Federal Bankruptcy Courts ................................................................................. 5

    C.   Legal Standard Under Delaware Law Regarding Enforceability of Third-Party Settlement Restriction ........................................................................................ 5

    D.   The Hybrid Agreement is not Champertous Under Delaware Law .......................... 9

    E.   Lack Of Authority Bars Approval of Rule 9019 Settlement ................................. 10

    F.   The Court May Reject a Settlement that is not Fair and Equitable to All Stakeholders ...................................................................................................... 15

    G.   Bankruptcy Law Cannot Erase Contractually Required Consents ......................... 16

    H.   Third-Party Approval in Bankruptcy Context .......................................................... 18

    I.   Public Policy Supports Enforcing the VSI-Rembrandt Agreement ......................... 20

V.   **CONCLUSION** .......................................................................................................... 20

i

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Absalom Absalom Trust v. Saint Gervais LLC,* 2019 WL 2655787 (Del. Ch. June 27, 2019) ….5

*American Prairie Constr. Co. v. Hoich,* 594 F.3d 1015 (8th Cir. 2010) …………………11

*Charge Injection Technologies, Inc. v. E.I. DuPont De Nemours & Company*
(C.A. No. N07C-12-134-JRJ - 2016) ……………………………………………………9

*CompoSecure, L.L.C. v. CardUX, LLC,* 199 A.3d 1156 (Del. 2018) …………………….…...20

*Cox Communications, Inc. v. T-Mobile, Inc.* 273 A.3d 752 (Del. 2022) ………………..……7

*Farris v. J.C. Penney Co.,* 176 F.3d 706 (3d Cir. 1999) ……………………………………11

*Hannington v. Trustees of University of Pennsylvania,* 815 A.2d 652 (Pa. Super. Ct. 2002) ….13

*Hexion Specialty Chemicals, Inc. v. Huntsman Corp.,* 965 A.2d 715 (Del. Ch. 2008) ….…..….8

*In re Arsenal Intermediate Holdings,* LLC, No. 23-10097 (Bankr. D. Del. 2023) ……………19

*In re Boy Scouts of America,* No. 20-10343 (Bankr. D. Del. 2022) ……………………………19

*In re Chateaugay Corp. (LTV Steel),* 53 F.3d 478 (2d Cir. 1995) ………………..……………16

*In re Columbia Gas System, Inc.,* 50 F.3d 233 (3d Cir. 1995) ……………….…………………17

*In re Continental Airlines,* 203 F.3d 203 (3d Cir. 2000) ……………….…………………18

*In re Delaware & Hudson Railway Co.,* 884 F.2d 1383 (3d Cir. 1989) …………………………15

*In re Dewey & LeBoeuf LLP,* 478 B.R. 627 (Bankr. S.D.N.Y. 2012) ……………………………14

*In re Iridium Operating LLC,* 478 F.3d 452 (2d Cir. 2007) ……………………………15, 15, 16

*In re Martin,* 91 F.3d 389 (3d Cir. 1996) ………………………………………………13

*In re Masters, Inc.,* 141 B.R. 13 (Bankr. E.D.N.Y. 1992) ……………………………………14

*In re Metromedia Fiber Network, Inc.,* 416 F.3d 136 (2d Cir. 2005) ……….…………………18

*In re Pacific Gas & Electric Co.,* 46 F.4th 1044 (9th Cir. 2022) ………………………………16

*In re Pursuit Capital Management, LLC,* 595 B.R. 631, 666 (Bankr.D.Del. 2018) …………9, 10

*In re SemCrude, L.P.,* 728 F.3d 314 (3d Cir. 2013) …………………………..…………………17

*Kenrich Corp. v. Miller,* 377 F.2d 312 (3d Cir. 1967) ……………………………………15

*King v. Driscoll, 2023 PA Super 95* ………………………………………………………11

*Motorola, Inc. v. Official Comm. of Unsecured Creditors*
*(In re Iridium Operating LLC)*, 478 F.3d 452 (2d Cir. 2007) ………………..…………………14

*Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.)*,
388 B.R. 386 (M.D. Fla. 2008) …………………………………………………………………13

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175 (Del. 2015) ……………..………8

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc.*
*v. Anderson*, 390 U.S. 414 (1968) ………………………………………………………...………17

*Reutzel v. Douglas*, 870 A.2d 787 (Pa. 2005) …………………………………………..…………12

*Rafool v. Goldfarb Corp. (In re Fleming Pack'g Corp.)*,
No. 04-8166, 2008 WL 682428 (Bankr. C.D. Ill. Mar. 7, 2008) ………………………………11

*Rothman v. Fillette*, 469 A.2d 543 (Pa. 1983) …………………………………..………………12

*SIGA Technologies, Inc. v. PharmAthene, Inc.*, 67 A.3d 330 (Del. 2013) ………..……………9

*Thompson Street Capital Partners IV, L.P. v. Sonova U.S. Hearing Instruments, LLC*,
247 A.3d 516 (Del. 2021) ………………………………………………………...……………..12

*Tiernan v. Devoe*, 923 F.2d 1024 (3d Cir. 1991) …………………………………...……………11

*TruthMD, LLC v. Malkani* No. 395, 2024, 2025 WL 315063 (Del. 2025) ……………………...7

**Statutes**

Fed. R. Bankr. P. 9019(a) ………………………………………………………………………4

11 U.S.C. § 363 ………………………………………..…………………………………………18

11 U.S.C. § 365 ………………………………………..…………………………………………18

## I.    INTRODUCTION

1.    Visual Semiconductor, Inc. ("VSI"), by and through its undersigned counsel, submits this Post-Trial Brief in opposition to the Omnibus Motion filed by William A. Homony, Chapter 11 Trustee for Stream TV Networks, Inc. ("Stream"), seeking approval under Rule 9019(a) of a settlement with Rembrandt 3D Holding Ltd. ("Rembrandt").

### A.    Brief Overview of the Case

2.    On March 15, 2023, the Debtors filed voluntary Chapter 11 petitions. The Trustee now seeks approval of a June 30, 2025 settlement with Rembrandt (the "Rembrandt 9019 Settlement Agreement"). That agreement invokes Pennsylvania law for interpretation. By contrast, VSI and Rembrandt entered into a Litigation Funding and Confirmation Agreement dated November 5, 2024, later amended on November 20, 2024 and December 30, 2024 (together, the "Hybrid Agreement"), which expressly applies Delaware law. The Hybrid Agreement gave VSI both litigation-funding rights and a contractual veto over any Rembrandt settlement. Rembrandt executed the Trustee's settlement without seeking or obtaining VSI's written consent.

### B.    Purpose of this Brief

3.    This brief addresses the enforceability of the Hybrid Agreement, the limits it places on Rembrandt's authority, and the legal consequences for the pending Rule 9019 motion.

### C.    Issues Presented

4.    The issues for consideration by the Court are as follows:

➢ Whether the Hybrid Agreement is valid and enforceable under Delaware law;

➢ Whether Rule 9019 permits approval of a settlement reached without authority where a contractual consent right was ignored; and

➢ Whether the Court has authority to deny approval where a party lacked authority to bind itself.

**D.      Summary of Argument**

5.   The Hybrid Agreement is a binding Delaware contract that combines litigation funding

with intellectual-property covenants. It expressly provides: "Rembrandt shall not propose or agree

to any settlement in the Legal Actions without VSI's prior written consent and approval." Under

Delaware law, such language creates a condition precedent, not a mere covenant. Because VSI

never consented, Rembrandt lacked authority to settle.

6.   VSI provided substantial consideration to Rembrandt, and in return, Rembrandt

accepted material limitations on its authority and committed to transfer Ultra-D technology rights

to VSI if acquired.

7.   Third Circuit precedent confirms that authority is a threshold question under Rule 9019.

Courts may not approve settlements reached by parties lacking authority or that trample third-

party rights. Approval here would inject the estate into new litigation, undermine finality, and

violate the consent rights central to VSI's bargain. Accordingly, the Trustee's motion should be

denied.

**II.      PROPOSED FINDINGS OF FACT**

**A.      The Hybrid Agreement**

8.   The executive officers of VSI and Rembrandt entered into the LFCA on November 5,

2024. This is not disputed by any of the parties, as it was filed on the Court docket by both VSI

and Rembrandt[2] and entered into evidence at the September 8, 2025 hearing. The LFCA

established a structured partnership: VSI agreed to fund Rembrandt's litigation and cooperation

in pursuing claims tied to Stream's Ultra-D technology; Rembrandt agreed to align its litigation

efforts with VSI, share information, and support a strategy designed to secure Ultra-D rights for

---

[2] ECF Nos. 1058 at Exhibit 1 (VSI) and 1080-12 (Rembrandt)

VSI's benefit. From inception, the parties contemplated more than passive financing; they created a funding-plus-control framework geared to a defined strategic outcome.

9.   The LFCA was amended ("Amendment 1") and executed by the executive officers of VSI and Rembrandt on or about November 20, 2025.[3]   Amendment 1 confirmed that Rembrandt "shall pursue litigation as directed by VSI until VSI succeeds in securing the assets of Stream or abandons its pursuit thereof."

10. The LFCA was amended a second time ("Amendment 2"), dated December 30, 2024 and executed by the executive officers of VSI and Rembrandt on or about January 13, 2025. This is not disputed by any of the parties, as it was filed on the Court docket by both VSI and Rembrandt[4] and entered into evidence at the September 8, 2025 hearing.

11. Amendment 2 made explicit that: (i) "VSI and Akerman shall determine legal strategy and draft all filings, with Rembrandt entitled to review and provide input… at the sole direction of VSI," and (ii) "Rembrandt shall not propose or agree to any settlement in the Legal Actions without VSI's prior written consent and approval." It also provided that if Rembrandt obtained ownership of or access to Ultra-D technology, Rembrandt must immediately transfer such rights to VSI as partial consideration for VSI's funding. Amendment 2 also stipulated that it would be interpreted under Delaware law.

**B.    Consideration and Performance**

12. Between November 2024 and April 2025, VSI wired $270,500 in litigation funding – $76,000 to Rembrandt's counsel Brown & Michaels P.C. and $194,500 to SVS 3D Consulting Services for Rembrandt's CEO – and also paid Akerman LLP for Rembrandt-related filings.

---

[3] ECF Nos. 1058 at Exhibit 2 (VSI)
[4] ECF Nos. 1058 at Exhibit 3 (VSI) and 1080-16-1 (Rembrandt)

VSI's total support exceeded $500,000. In exchange, Rembrandt accepted contractual limits on settlement authority and obligations concerning Ultra-D technology.

## C.    The Rembrandt 9019 Settlement Agreement

13. The June 30, 2025 settlement: (i) reduces Rembrandt's asserted claims of $1.2 billion to a $1,000,000 unsecured claim; (ii) conditions $1,150,000 of a purported $1,250,000 payment on an indemnification judgment against SeeCubic; (iii) grants broad releases, including a personal release to the Trustee; and (iv) requires dismissal of Rembrandt's actions and appeals. The agreement ignores VSI's consent rights under the Hybrid Agreement.

14. The proposed Rembrandt 9019 Settlement Agreement clearly falls within the Rembrandt Litigation specified in paragraph D(2) of the LFCA and its amendments. Such actions included efforts to:

> ➢ Restore, validate, or otherwise support the Rembrandt claims in the Bankruptcy Cases;

> ➢ Object, as needed, to the scope of the bankruptcy estate; and

> ➢ Take other actions in the Bankruptcy Cases as may be prudent.

## III.    PROPOSED CONCLUSIONS OF LAW

Support for the following conclusions of law is reflected at Section IV below:

> ➢ The Hybrid Agreement is enforceable under Delaware law and in Federal Bankruptcy Courts; and

> ➢ The Court has the authority to disapprove a 9019 settlement if a counterparty to the Estate does not have authority to enter into the agreement.

## IV.    ARGUMENT

## A.    Legal Standard Under Rule 9019

15. Rule 9019(a) permits the Court to approve a compromise or settlement only after notice and a hearing, and only if the agreement is fair, equitable, and in the best interests of the estate.

The Court must also ensure that the parties entering into the agreement have the legal capacity and authority to do so. Without such authority, the agreement is invalid and cannot be enforced.

**B.    The LFCA, as amended, is Legally Enforceable Under Delaware Law and in Federal Bankruptcy Courts**

16. Delaware law requires enforcing express contractual limits on settlement authority. By reaching a settlement with the Trustee without VSI's consent, if approved by the Court, Rembrandt would be in breach of the legally enforceable Hybrid Agreement. Delaware law, even as interpreted in Federal Bankruptcy Courts, enforces third-party settlement restrictions.

17. Delaware's contractarian principles give primacy to the plain language of agreements. When parties specify that a party may not take certain actions without consent, Delaware courts strictly enforce such provisions.

18. In *Absalom Absalom Trust v. Saint Gervais LLC*, the Court of Chancery held that a contractual provision rendering unauthorized transfers "null and void" foreclosed equitable defenses and prevented ratification of such acts. The court emphasized: "Equitable defenses can validate voidable acts but not void acts." (2019 WL 2655787, at *5 (Del. Ch. June 27, 2019)).

**C.    Legal Standard Under Delaware Law Regarding Enforceability of Third-Party Settlement Restriction**

19. Delaware courts enforce the bargains of sophisticated parties as written. Clear language governs; courts do not rewrite contracts or relieve a party from a bad deal. The Hybrid Agreement unambiguously allocates control to VSI and requires VSI's written consent before any settlement, precisely the sort of negotiated allocation Delaware law vindicates.

20. The consent clause is a condition precedent and is strictly enforceable. Amendment 2's command – Rembrandt "shall not propose or agree to any settlement … without VSI's prior written consent and approval" – is textbook condition-precedent language. Under Delaware law, conditions precedent prevent a right or duty from arising unless the condition occurs. The

5

mandatory "shall not … without consent" formulation is not a mere covenant; it is a gating condition. Because VSI has not consented, Rembrandt's authority to settle never arose under the contract.

21. Although Delaware law recognizes a narrow anti-forfeiture doctrine that may excuse noncompliance with immaterial conditions to avoid disproportionate forfeiture, it does not apply to material, bargained-for terms. VSI's consent right was the linchpin of the Hybrid Agreement; it enabled VSI to protect its strategic and economic stakes and ensured alignment before surrendering valuable claims. Excusing this condition would gut the bargain and is not permitted under Delaware law.

22. Valid consideration and performance defeat "nullity" and "no-contract" arguments. The Hybrid Agreement is supported by consideration on both sides. VSI indisputably made payments totaling $270,500 to Brown & Michaels and SVS 3D, plus paid Akerman LLP, bringing total support above $500,000. Rembrandt accepted money and concomitantly accepted limits on its authority (including settlement veto) and obligations to transfer Ultra-D rights. Amendment 2 was signed by Rembrandt's CEO, and there is no judicial rescission. Under Delaware law, the amendments are binding. Assertions that Amendment 2 is a "nullity" are belied by execution and performance.

23. Delaware law requires clear, intentional conduct to establish waiver of a material contractual right. No facts indicate VSI waived its consent right; to the contrary, VSI continues to assert it. Estoppel requires misleading conduct and detrimental reliance; Rembrandt cannot show it was misled into believing VSI consented. Nor does the implied covenant of good faith and fair dealing allow a court to rewrite explicit terms – particularly not a bright-line consent clause.

24. Technology licensing confirmed the non-transferability of core rights. The Hybrid Agreement's immediate-transfer provision confirms the personal and strategic character of the rights at issue. Rembrandt could not unilaterally dispose of Ultra-D rights or claims without VSI's approval; it promised to transfer any such rights to VSI. This personal nature of the rights reinforces that unilateral settlement without consent would contravene the bargain.

25. With regard to whether a contract provision prohibiting one party from settling with a third party without the other party's prior approval is enforceable under Delaware law, Delaware courts have upheld such provisions if they are clearly drafted, mutually agreed upon, and consistent with public policy, strongly favoring enforcement of contracts as written. Parties have been free to allocate rights and obligations, including restrictions on third-party settlements. The cases cited below illustrate Delaware's nuanced approach to contract enforcement, especially when it comes to consent rights in settlement scenarios, good faith obligations in negotiation, and the enforceability of veto rights.

26. In *Cox Communications, Inc. v. T-Mobile, Inc.* 273 A.3d 752 (Del. 2022), with regard to whether a settlement agreement provision requiring good faith negotiation toward a future agreement was enforceable, the Delaware Supreme Court reversed the Court of Chancery's injunction and found the clause to be an enforceable preliminary agreement requiring parties to negotiate in good faith, even if a final agreement was not guaranteed, reflecting the Delaware Supreme Court's willingness to enforce obligations to negotiate or obtain consent when clearly stated–even in settlement contexts.

27. In *TruthMD, LLC v. Malkani* No. 395, 2024, 2025 WL 315063 (Del. May 15, 2025), where enforcement of investor rights under a set of agreements including a change-in-control provision requiring consent, the Delaware Supreme Court affirmed the Court of Chancery's

decision which upheld the enforceability of agreements and recognized an investor's right to veto certain transactions, reflecting Delaware's willingness to enforce consent-based restrictions in agreements.

28. In *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.,* 118 A.3d 175 (Del. 2015), where the issue was whether a party could bring a direct claim for breach of a contract that benefited its subsidiary, despite a separate settlement involving the subsidiary, the Delaware Supreme Court ruled that the parent company could bring a direct claim, even though the subsidiary had settled separately, highlighting the Delaware Supreme Court's navigation through overlapping rights and settlements, particularly when consent or coordination between parties is at issue ("A party to a commercial contract who sues to enforce its contractual rights can bring a direct contract action under Delaware law. Although the relationship of that party to the third-party beneficiary might well have relevance in determining whether the contract claim is viable as a matter of contract law, nothing in Delaware law requires the promisee-plaintiff's contract claim to be prosecuted as a derivative action.").

29. Delaware courts interpret contracts to give effect to the parties' intent, and they strictly enforce conditions precedent, including third-party approvals. These clauses are not viewed as mere formalities but as material terms that must be satisfied before contractual obligations mature. Delaware law also recognizes that third-party approval clauses serve critical risk-allocation functions, allowing parties to condition performance on external events beyond their control.

30. In *Hexion Specialty Chemicals, Inc. v. Huntsman Corp.*, 965 A.2d 715 (Del. Ch. 2008), the court upheld the enforceability of financing and regulatory approval clauses, emphasizing that failure to satisfy conditions precedent can excuse performance ("The buyer covenanted that it would use its reasonable best efforts to take all actions and do all things 'necessary, proper or

advisable' to consummate the financing on the terms it had negotiated with its banks and further covenanted that it would not take any action 'that could reasonably be expected to materially impair, delay or prevent consummation' of such financing.").

31. In *SIGA Technologies, Inc. v. PharmAthene, Inc.*, 67 A.3d 330 (Del. 2013), the Court held that Delaware law would not permit it to rewrite or disregard conditions tied to third-party approvals, even in high-stakes commercial disputes.

**D.    The Hybrid Agreement is not Champertous Under Delaware Law**

32. Champerty and maintenance arguments fail on the facts and law. VSI was not a stranger speculating in litigation; it had a direct strategic and economic stake in Ultra-D technology and a contractual path to acquire those rights if litigation succeeded. Delaware permits sophisticated parties to align financing and control in hybrid structures, particularly where – as here – consideration flowed both ways and the financing was essential to pursuing claims.

33. In *Charge Injection Technologies, Inc. v. E.I. DuPont De Nemours & Company* (C.A. No. N07C-12-134-JRJ - 2016), the Delaware Superior Court denied a motion to dismiss an issue involving whether a litigation financing agreement was champertous because it involved a disinterested third party. The court found that the financing agreements entered into did not violate Delaware's prohibition against champerty and maintenance. The agreements were found not to involve a volunteer who is stirring up litigation for personal gain. Thus, the court held that a funding agreement found not champertous was not invalid under Delaware law, supporting VSI's position for the validity of the Hybrid Agreement under Delaware law.

34. In *In re Pursuit Capital Management, LLC*, 595 B.R. 631, 666 (Bankr.D.Del. 2018), the court embellished the view in *Charge Injection Technologies, Inc*. by finding in the context of a litigation funding agreement that the assignment of the estate's avoidance claims to the Plaintiffs

9

was valid under Delaware law and did not violate the doctrines of champerty or maintenance. There it was stated that Champerty only applies to "...those who have no legal interest in the subject matter of the dispute..."  "Agreements are not champertous when 'the assignee has some legal or equitable interest in the subject matter of the litigation independent from the terms of the assignment under which the suit was brought.'" *Id*. "The standard by which courts judge an assignee's preexisting legal or equitable interest is a 'low threshold.'" *Id*. The instant "hybrid" agreement is for litigation funding in exchange for technology rights and uses; the technology creates a legal or equitable interest precluding the contention of VSI and Rembrandt being "strangers." *Id*. Said differently, the right of VSI's interest in the current compromise is derived from both the technology and litigation funding through the "hybrid' agreement.

35. If the 9019 compromise is approved, VSI will have lost its rights in the technology (indeed, to stranger Trustee-the ultimate beneficiary of the hybrid agreement) merely for Rembrandt's partial debt forgiveness-which the hybrid agreement and *In re Pursuit* precludes. To do so would render the Hybrid Agreement a nullity except when it concerns Rembrandt receiving VSI funds and then forfeiting VSI's technology to the Trustee (to wit, splitting the Hybrid Agreement in favor of the beneficiaries to the detriment of VSI).

**E.    Lack Of Authority Bars Approval of Rule 9019 Settlement**

36. Authority is a threshold question. If Rembrandt could not lawfully settle without VSI's consent, the settlement is unauthorized at inception. Third Circuit precedent does not allow bankruptcy courts to approve compromises that ignore binding third party rights. Authority to settle is a prerequisite, not a detail to be sorted out later.

37. Rule 9019 aims to promote finality, not spur new litigation. Approving a settlement that violates VSI's consent right would invite injunctions, breach claims, and potentially IP disputes

– precisely the opposite of what Rule 9019 is designed to achieve. Recognizing the Hybrid Agreement avoids this outcome and serves creditors' interests by preventing wasteful satellite litigation.

38. The Third Circuit has long recognized that settlements reached without proper authority are unenforceable. In *Tiernan v. Devoe*, the court stressed that "the authority of an attorney to settle must be clear and unambiguous." (923 F.2d 1024, 1031 (3d Cir. 1991)). Where a party lacks settlement authority, any agreement is void. Likewise, in *Farris v. J.C. Penney Co.*, the Third Circuit reiterated that "a settlement agreement is a contract, and basic contract principles require mutual assent by parties with authority to bind." (176 F.3d 706, 711 (3d Cir. 1999)).

39. Courts have consistently held that a settlement agreement is unenforceable if a party lacks authority to enter into it. In *American Prairie Constr. Co. v. Hoich*, 594 F.3d 1015 (8th Cir. 2010), the Eighth Circuit emphasized that a settlement agreement is not binding unless approved by the Bankruptcy Court, and that disapproval renders the agreement null and void.

40. Similarly, in *Rafool v. Goldfarb Corp. (In re Fleming Pack'g Corp.)*, No. 04-8166, 2008 WL 682428 (Bankr. C.D. Ill. Mar. 7, 2008), the Court held that a compromise disapproved by the Court is treated as if it never existed and the agreement is defective from the outset due to lack of authority.

41. In Pennsylvania, a settlement agreement is enforceable only if the party entering it has actual authority with any required third-party or institutional approval having been obtained, which was not the case in Rembrandt's failure to obtain VSI's consent to the Settlement.

42. Pennsylvania courts have addressed the issue of enforceability of settlement contracts entered into with the requisite authority. In *King v. Driscoll*, 2023 PA Super 95, the Pennsylvania Superior Court dealt with the issue of whether an attorney had express authority to bind his client

to a settlement agreement. The Superior Court reversed enforcement of the settlement, emphasizing that actual authority is required–not merely implied or apparent authority.

43. As the Pennsylvania Supreme Court explained in *Rothman v. Fillette*, "[a]n agreement to settle is valid only if both parties have manifested assent." 469 A.2d 543, 546 (Pa. 1983). Here, VSI expressly withheld assent by contract, and Rembrandt could not unilaterally override that prohibition.

44. In *Reutzel v. Douglas*, 870 A.2d 787 (Pa. 2005), the Pennsylvania Supreme Court dealt with the issue of whether a party was bound by a settlement agreement negotiated by an attorney agent. The Supreme Court held that the attorney lacked authority to bind the principal, and the agreement was unenforceable.

45. In *Thompson Street Capital Partners IV, L.P. v. Sonova U.S. Hearing Instruments, LLC*, 247 A.3d 516 (Del. 2021), the Delaware Supreme Court held that where a contract expressly forbids an action absent the counterparty's written consent, that language is unambiguously a condition precedent. The court further observed that a material breach by the party holding the consent right does not automatically excuse the other party from complying with the condition. Even if the consent-holder breached other obligations, the aggrieved party must either obtain a judicial order relieving it of the condition or properly terminate the agreement. Accordingly, a party who believes the consent holder is in breach must seek judicial redress rather than proceed without consent. Amendment 2 states that Rembrandt "shall not propose or agree to any settlement" without VSI's written consent. Under *Thompson Street*, such language constitutes a condition precedent that must be satisfied before Rembrandt may settle litigation. Even if VSI allegedly breached its funding obligations, Rembrandt remains bound by the consent requirement until it is excused by a court.

12

46. Here, a counterparty to the proposed Rembrandt 9019 Settlement Agreement did not possess the requisite authority under Pennsylvania law to bind itself, and the absence of authority renders the agreement unenforceable.

47. In *Hannington v. Trustees of University of Pennsylvania*, 815 A.2d 652 (Pa. Super. Ct. 2002), the Pennsylvania Superior Court dealt with the issue of whether a settlement agreement was enforceable when it required approval from a university committee. The Court found that the agreement was not binding until the university formally approved it and reinstated the student.

48. *Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.)*, 388 B.R. 386 (M.D. Fla. 2008) underscored that even apparent authority or informal agreement is insufficient where actual authority is lacking. The Court held that even if parties act as though a settlement is valid, the Court must ensure actual authority exists, demonstrating that apparent authority is insufficient under Rule 9019.

49. Even if the Trustee seeks approval of the Rembrandt 9019 Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019(a), the settlement cannot be approved where it conflicts with binding contractual rights. The Third Circuit in *In re Martin* emphasized that the bankruptcy court must "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." 91 F.3d 389, 393 (3d Cir. 1996). A settlement that violates contractual restrictions is inherently unreasonable and cannot be approved.

50. Application of the *Martin* factors confirms denial is required: (a) Probability of success: Given the clear contract language, Rembrandt is unlikely to defeat the consent condition; (b) Complexity, cost, delay: Ignoring the consent clause guarantees complex, costly collateral litigation; honoring it avoids those costs; (c) Paramount interests of creditors: Creditors benefit

13

from enforceable, durable resolutions, not settlements vulnerable to invalidation; (d) Other fairness considerations: A deal achieved by contravening a core contract right is not equitable.

51. In *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2d Cir. 2007), the Court held that Bankruptcy courts must ensure that settlements are fair and equitable and do not unduly prejudice the rights of non-settling parties, emphasizing the Court's duty to scrutinize settlements, especially when they affect parties not involved in the negotiations – such as when a counterparty lacks authority.

52. In *In re Dewey & LeBoeuf LLP*, 478 B.R. 627 (Bankr. S.D.N.Y. 2012), the Court emphasized that Rule 9019 settlements must be evaluated in light of their impact on all stakeholders and the integrity of the estate, and that lack of authority undermines the fairness and legitimacy of the settlement.

53. In *In re Masters, Inc.*, 141 B.R. 13 (Bankr. E.D.N.Y. 1992), the holding was that the Court must determine whether the settlement falls within the range of reasonableness and whether the parties have the capacity to bind themselves, directly addressing the issue of party capacity and authority as a prerequisite to approval.

54. Courts have consistently held that settlements under Rule 9019 must be scrutinized not only for fairness but also for the legal capacity of the parties involved. In *Motorola v. Iridium*, the Second Circuit emphasized that settlements must not prejudice non-consenting parties, especially when authority is in question. Similarly, in *In re Dewey & LeBoeuf LLP*, the Court stressed that the integrity of the estate depends on valid, enforceable agreements. These principles echo earlier rulings such as *In re Masters, Inc.*, where the court required proof of party capacity before approving a compromise.

55. The Third Circuit has also recognized that when an assignment violates governing law or contractual limitations, it is ineffective and leaves the purported assignee without standing. In *Kenrich Corp. v. Miller*, the court held that "where an assignment is unlawful or ineffective, the assignee lacks standing to sue." (377 F.2d 312, 314 (3d Cir. 1967)). Rembrandt's attempt to "assign away" rights through an unauthorized settlement is legally ineffective, because it violates its contractual restriction. Just as an invalid assignment cannot transfer rights, an unauthorized settlement cannot extinguish claims or obligations contrary to a contractual veto right.

56. Because the Rembrandt 9019 Settlement Agreement is legally defective, it cannot be deemed fair or equitable under Rule 9019. Approval would expose the Stream estate to future litigation risk, undermine the legitimacy of the bankruptcy process, and violate the Court's duty to protect the interests of creditors and stakeholders.

**F.    The Court May Reject a Settlement that is not Fair and Equitable to All Stakeholders**

57. The Trustee must demonstrate that the Rembrandt 9019 Settlement Agreement is fair and equitable to all stakeholders, including VSI. A settlement that deprives VSI of its consent and licensing rights without adequate consideration does not fall within the range of reasonableness.

58. In *In re Delaware & Hudson Railway Co*., 884 F.2d 1383 (3d Cir. 1989), the Third Circuit addressed the standard for approving settlements under Rule 9019. The court clarified that the settlement proponent bears the burden of showing that the compromise is fair and equitable. Importantly, the court must consider the objections of parties whose rights may be adversely affected and may not simply defer to the debtor's business judgment. A settlement that improperly disposes of third parties' rights or releases their claims without adequate justification is not fair or equitable.

59. In *In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007), the Second Circuit considered whether a bankruptcy court could approve a settlement under Rule 9019 that released

potential claims against third parties over the objection of a creditor. The Court held that a Rule 9019 settlement must be fair and equitable and may not contravene the substantive rights of objecting parties. *Iridium* illustrates that a bankruptcy court cannot use Rule 9019 to strip VSI of its consent and licensing rights under the Hybrid Agreement. The Trustee's settlement with Rembrandt, if approved, would dispose of VSI's contractual rights in exchange for zero consideration. *Iridium* underscores that Rule 9019 does not authorize courts to effectuate end runs around substantive contract rights or to bind nonconsenting parties to releases.

60. In *In re Chateaugay Corp. (LTV Steel)*, 53 F.3d 478 (2d Cir. 1995), the Second Circuit considered a settlement between the debtor and one group of creditors that released claims against others. The court held that under Rule 9019, a settlement cannot be approved if it unfairly discriminates against similarly situated creditors. In the VSI–Rembrandt context, *Chateaugay* warns against settlements that benefit Rembrandt and the Trustee at VSI's expense. The proposed compromise appears to discriminate against VSI by extinguishing its contractual rights while granting other parties releases and new rights. This is precisely the sort of unequal treatment that courts have condemned.

## G.    Bankruptcy Law Cannot Erase Contractually Required Consents

61. The Ninth Circuit considered in *In re Pacific Gas & Electric Co.*, 46 F.4th 1044 (9th Cir. 2022) whether a settlement that allowed the debtor to abandon certain power purchase agreements required the consent of the California Public Utilities Commission. The debtor argued that rejecting the agreements under § 365 of the Bankruptcy Code eliminated any need for regulatory approval. The court disagreed, holding that rejection of a contract does not extinguish the underlying rights and obligations created by nonbankruptcy law. The court reasoned that rejection under § 365 operates as a breach but does not rescind or terminate the contract; parties

16

retain their respective rights and remedies under nonbankruptcy law. Even if the trustee deems the Hybrid Agreement breached or terminated, he cannot unilaterally disregard VSI's consent right or transfer licensing rights without meeting contractual conditions.

62. In *In re SemCrude, L.P.*, 728 F.3d 314 (3d Cir. 2013), the Third Circuit emphasized that the doctrine of preemption does not allow bankruptcy courts to disregard nonbankruptcy law unless there is a clear conflict with the Bankruptcy Code. The *SemCrude* decision supports VSI's contention that its statutory and contractual rights cannot be compromised without consent.

63. In *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), the Supreme Court emphasized that a bankruptcy judge cannot rubber-stamp a settlement or rely solely on business judgment. The judge must conduct an informed and independent analysis of the litigation's merits and the settlement's value. If a compromise unduly extinguishes valid claims of nonconsenting parties, it is not fair and equitable. A court must independently assess whether the settlement is fair and equitable in light of VSI's claim to consent and licensing rights. *TMT Trailer Ferry* instructs that the court must not defer to the Trustee's assessment but instead must consider the merits of VSI's case, the potential recoveries, and the impact on other stakeholders. If the settlement is found to unfairly prejudice VSI or other creditors, it should not be approved.

64. In *In re Columbia Gas System, Inc*., 50 F.3d 233 (3d Cir. 1995), the Third Circuit addressed whether a bankruptcy court could approve a settlement that purported to release claims against nondebtors without the consent of the affected claimants. *Columbia Gas* is relevant to the VSI-Rembrandt dispute because the Trustee seeks to resolve potential claims against Rembrandt. Such a settlement may act as an impermissible release of VSI's claims unless VSI consents or is

paid in full for its rights. The case underscores that courts should be wary of nondebtor releases disguised as settlements.

65. In *In re Metromedia Fiber Network, Inc*., 416 F.3d 136 (2d Cir. 2005), the Second Circuit considered whether a chapter 11 plan could include a nonconsensual release of claims against nondebtor third parties. The court emphasized that the Bankruptcy Code does not generally authorize nonconsensual third-party releases. Applied here, *Metromedia* warns against approving a settlement that attempts to release claims between VSI and Rembrandt. If the Trustee seeks to extinguish VSI's claims through the settlement, the Court must apply strict scrutiny. Because VSI does not consent and would not be paid in full, the proposed settlement does not satisfy *Metromedia's* standards and thus operates as an impermissible nonconsensual release.

## H.    Third-Party Approval in Bankruptcy Context

66. While bankruptcy courts have broad authority under 11 U.S.C. § 363 to approve asset sales, they generally respect state law governing contract formation and enforceability. Unless a sale contract is rejected under 11 U.S.C. § 365, its terms, including third-party approval clauses, remain binding. Third-party approval clauses in sale contracts governed by Delaware law are enforceable in bankruptcy proceedings, unless expressly rejected or modified under the Bankruptcy Code. Delaware law strongly favors the enforcement of contractual conditions precedent, including third-party consents, and federal bankruptcy courts generally respect these provisions unless they conflict with core bankruptcy principles.

67. In *In re Continental* Airlines, 203 F.3d 203 (3d Cir. 2000), the Third Circuit emphasized that nonconsensual third-party releases are permissible only in "extraordinary cases," reinforcing the importance of explicit approval mechanisms ("The hallmarks of permissible non-consensual releases-fairness, necessity to the reorganization, and specific factual findings to support these conclusions-are all absent here.").

18

68. In *In re Arsenal Intermediate Holdings*, LLC, No. 23-10097 (Bankr. D. Del. 2023): The Court upheld third-party release provisions where creditors were given a clear opt-out, aligning with Delaware's emphasis on consent and procedural fairness ("Releases contained in a plan that permit creditors to opt out may be deemed consensual as to those who do not exercise that option.").

69. In *In re Boy Scouts of America*, No. 20-10343 (Bankr. D. Del. 2022), the Court approved third-party releases in a complex Chapter 11 plan, enforcing such provisions when they are clearly disclosed and structured to allow meaningful consent.

70. These cases illustrate that bankruptcy courts applying Delaware law will enforce third-party approval clauses when they are properly drafted and not overridden by the debtor's rejection or plan confirmation.

71. Delaware's contract law is rooted in the principle of freedom of contract. Enforcing third-party approval clauses promotes predictability, consent-based governance, and commercial integrity; upholding these clauses deters opportunistic behavior and protects counterparties from forced performance under changed circumstances. Bankruptcy courts should not lightly override these provisions, as doing so undermines the contractual expectations of parties who relied on Delaware law's clarity and rigor.

72. Here, Rembrandt failed to follow the provisions of the Hybrid Agreement, ignoring its obligations to secure prior VSI's approval of the settlement. To hold other than the Hybrid Agreement was valid and enforceable contradicts well-established Delaware law.

73. Third-party approval clauses in sale contracts governed by Delaware law are enforceable in bankruptcy proceedings unless expressly rejected under the Bankruptcy Code. Delaware courts treat such clauses as material conditions precedent, and federal courts – including

the Third Circuit – respect their enforceability when consistent with bankruptcy principles. Upholding these clauses preserves contractual certainty, protects stakeholder interests, and aligns with both Delaware and federal jurisprudence. For the foregoing reasons, the Court should hold legally enforceable the Hybrid Agreement. The counterparty's lack of authority renders the agreement void, and approval would be contrary to law and equity.

## I.    Public Policy Supports Enforcing the VSI-Rembrandt Agreement

74. Public policy strongly favors holding parties to the bargains they make. The Delaware Supreme Court has made clear that "Delaware law is contractarian" and courts must respect "the primacy of private ordering." *CompoSecure, L.L.C. v. CardUX, LLC*, 199 A.3d 1156 (Del. 2018). Allowing Rembrandt to evade the express veto right would undermine the predictability of Delaware contracting and reward breach of fiduciary and contractual obligations.

## V.    CONCLUSION

For all of the reasons set forth above, the proposed settlement between the Trustee and Rembrandt does not satisfy the standards of Bankruptcy Rule 9019(a). It is neither fair nor equitable, and it undermines the rights of VSI as a party in interest. Accordingly, the Court should deny the Trustee's Omnibus Motion to approve the settlement agreement.

DATED: September 29, 2025              Respectfully submitted,

                                       DANIEL JOSEPH RINK

                                       /s/ Daniel Joseph Rink
                                       Daniel Joseph Rink, Esquire (PA Atty #21258)
                                       1017 E. 28th Street
                                       Houston, Texas 77009
                                       Telephone: (610) 220-0206
                                       dan.rink@visualsemi.com

                                       *Attorney for Visual Semiconductor, Inc.*

## CERTIFICATE OF SERVICE

I, Daniel Joseph Rink, Esquire, hereby certify that on this 29th day of September, 2025, a true

and correct copy of the foregoing Post-Trial Brief was served via ECF upon all counsel of record.


DATED: September 29, 2025                    Respectfully submitted,

                                            DANIEL JOSEPH RINK

                                            /s/ Daniel Joseph Rink
                                            Daniel Joseph Rink, Esquire (PA Atty #21258)
                                            1017 E. 28th Street
                                            Houston, Texas 77009
                                            Telephone: (610) 220-0206
                                            dan.rink@visualsemi.com

                                            *Attorney for Visual Semiconductor, Inc.*