**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc., (Stream)<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (DJB) |
| In re:<br><br>Technovative Media, Inc., (Technovative)<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (DJB)<br><br>(Jointly Administered) |

**REMBRANDT 3D HOLDING, LTD.'S POST-TRIAL BRIEF IN FURTHER SUPPORT OF OMNIBUS MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER: (I) APPROVING A SETTLEMENT AGREEMENT WITH REMBRANDT 3D HOLDING, LTD. PURSUANT TO FED. R. BANKR. P. 9019(a) AND 11 U.S.C. § 105(a); (II) ENFORCING DEFENSE AND INDEMNITY OBLIGATIONS OF SEECUBIC, INC.; AND (III) GRANTING <u>RELATED RELIEF</u>**

Dated: September 29, 2025

**DEVLIN LAW FIRM LLC**

**By:** */s/ Andrew DeMarco*
Andrew DeMarco, Esq.
(PA Bar No. 326294)
ademarco@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Rembrandt 3D Holding Ltd.*

Case 23-10763-djb Doc 1104 Filed 09/29/25 Entered 09/29/25 19:01:13 Desc Main
Document    Page 2 of 14

**TABLE OF CONTENTS**

I.   QUESTION PRESENTED ................................................................................................ 1
II.  FACTUAL BACKGROUND .......................................................................................... 1
III. BRIFEF ANSWER ........................................................................................................... 4
IV.  ANALYSIS ....................................................................................................................... 4
   A. The Bankruptcy Court Has Broad Discretion to Approve Settlements Under Rule 9019 .... 4
   B. Rule 9019 Authority is Procedural and Cannot Be Overridden by Private Contracts ........ 5
   C. VSI's Position Would Undermine Rule 9019's Purpose ..................................................... 6
   D. Recent Supreme Court Authority Confirms Bankruptcy Courts Cannot Be Bound by
   Non-Party Agreements .............................................................................................................. 7
   E. VSI's Remedy Lies in Contract, Not in Preventing Court Approval ................................. 8
V.   CONCLUSION ................................................................................................................ 9

I.  **QUESTION PRESENTED**

Assuming VSI has an enforceable agreement with Rembrandt requiring VSI's consent before Rembrandt can settle certain claims, does this purported private contractual restriction prevent the Bankruptcy Court from exercising its authority under Rule 9019 to approve a settlement between Rembrandt and the Trustee?

II.  **FACTUAL BACKGROUND**

VSI was formed by the principals of the debtor, Stream TV Networks, Inc., to provide a plan of reorganization and acquire the Stream UltraD technology which contained the Rembrandt technology.

VSI was desperate to prevent SeeCubic and their partner Hawk Investments from buying the UltraD technology in a 363 sale and recognized that without the Rembrandt intellectual property in the UltraD, the UltraD didn't work.

VSI believed that if Rembrandt refused to sell a license to SeeCubic, it would mean that SeeCubic would be prohibited from acquiring Stream's assets without removing Rembrandt's technology and this would render SeeCubic's acquisition worthless. Effectively, the inability to use Rembrandt's technology would block SeeCubic's attempt to acquire the technology and open the door to VSI's Plan of Reorganization.

In consideration of Rembrandt agreeing not to sell a license to SeeCubic and its related parties, VSI agreed to pay Rembrandt $3.6 million and provide 985,000 65-inch 8K units at cost. This agreement, the Licensing Covenant agreement, was signed on August 14, 2023. VSI paid an original $50,000 and then breached its payment obligations under the Licensing Covenant.

Prior to Stream and Technovative filing the current bankruptcy petitions, Rembrandt was already involved in intellectual property litigation with SeeCubic with experienced intellectual

1

property counsel. Once the 9019 settlement with SeeCubic was approved, Rembrandt was intending to focus its efforts on the pending Delaware District Court action against SeeCubic as a more direct strategy to enforce Rembrandt's rights, however, Rembrandt's intended strategy did nothing to advance VSI's plans and hopes for acquiring the Stream assets by blocking the sale to SeeCubic. VSI wanted Rembrandt to join VSI in an appeal of the 9019 order and eventual sale order. Rembrandt was only willing to consider doing so upon the conditions that: 1) VSI pay for Rembrandt to hire expert and experienced bankruptcy counsel; and 2) VSI also covered the costs of Rembrandt's existing counsel that would work with the new bankruptcy counsel. This agreement, the Litigation Funding and Confirmation Agreement (the "LFCA"), was signed on November 5, 2024.

VSI breached the LFCA almost immediately by not funding bankruptcy counsel for Rembrandt. VSI wanted to hire Blank Rome LLP but never funded their retainer and Rembrandt proposed hiring Jancie Grubin from Barclay Damon LLP. Barclay Damon LLP was acceptable to VSI, but again VSI did not fund the retainer. Instead VSI, increased the weekly fees paid to Rembrandt's existing counsel and had Akerman prepare drafts of briefs until new counsel could be hired. A first amendment to the LFCA was signed on November 20, 2024.

VSI was quickly in breach of the amended LFCA. Briefs and filings were due and VSI was not making the required payments or providing litigation support. Over the end of year holidays, VSI officers started contacting Stephen Blumenthal directly without communicating with or copying Rembrandt's counsel. VSI had cut off payments and was telling Mr. Blumenthal that the only way they would pay was if Rembrandt agreed to lower the weekly payment due. The attorney for VSI, Daniel Rink, sent a proposed 2nd amendment to the LFCA that was redlined to show changes to payment terms and VSI inaccurately represented to Mr.

2

Blumenthal that the only terms that were being changed were those to adjust the amount of the weekly payments.  Instead, Mr. Rink modified the agreement to include many additional rights for VSI rendering the agreement illegal under the rules of champerty under both Delaware and Pennsylvania law but did not show those changes in the redline that he sent to Mr. Blumenthal.

The Second Amendment to the Litigation Funding Agreement was signed on January 13, 2025.  It required VSI to retain and pay counsel for Rembrandt as well as pay Rembrandt's counsel who would support the new firm.  VSI never hired counsel and had breached its obligations to fund Rembrandt's litigation expenses and pay existing counsel.

Despite having obtained a signature on the Second Amendment through violations of the rules of ethics and committing fraud while doing so, all while purporting to create an illegal and unenforceable agreement, VSI now asserts that the Second Amendment precludes this Court from approving the 9019 motion brought by the Trustee.  While Rembrandt has numerous arguments contesting the enforceability of the Second Amendment, the Second Amendment also states in paragraph No. 3: "Rembrandt shall maintain the sole and exclusive right to control its bankruptcy claims and intellectual property rights,…".  Further, Rembrandt has provided copies of the clear and unequivocal term sheet sent by VSI's officer expressly authorizing a settlement with the Trustee and offering Rembrandt $35,000,000 as a condition precedent to a sale of Rembrandt.

The issue before the Court is whether without considering any of the infirmities of the purported Second Amendment, the unethical and fraudulent way its was obtained, the clear breaches of VSI to honor any obligations under the LFCA, its express permission it provided for a Rembrandt-Trustee settlement, or even the express language of the purported Second

3

Amendment providing Rembrandt the "sole and exclusive right to control its bankruptcy claims", could VSI have any basis for blocking a settlement.

## III. BRIEF ANSWER

No. A private litigation funding agreement between VSI and Rembrandt cannot divest this Court of its Rule 9019 authority to approve settlements affecting the bankruptcy estate. While VSI may have contractual remedies against Rembrandt, the Court retains full authority to approve the settlement if it finds it fair, reasonable, and in the best interest of the estate.

## IV. ANALYSIS

### A. The Bankruptcy Court Has Broad Discretion to Approve Settlements Under Rule 9019

The Third Circuit has firmly established that "compromises are generally favored in bankruptcy" because they "help expedite case administration and minimize litigation." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). This preference for settlement reflects the practical realities of bankruptcy administration, where protracted litigation depletes estate assets that would otherwise benefit creditors. The approval of settlements under Rule 9019 is "committed to the discretion of the bankruptcy court." *Key3Media Group, Inc. v. Pulver.com Inc. (In re Key3Media Group Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). The *Key3Media* court specifically noted that "pursuant to Bankruptcy Rule 9019(a), approving a settlement is within the sound discretion of the bankruptcy court." This discretion is not merely procedural but represents a substantive grant of authority to the bankruptcy court to manage the estate's affairs.

In exercising this discretion, the court must determine whether "the compromise is fair, reasonable, and in the best interest of the estate." *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997). The *Louise's* court explained "the factors the court should take into consideration when

4

deciding whether to approve a compromise under Rule 9019(a)." This standard protects the estate and its creditors while giving the court flexibility to approve beneficial settlements.

The court "does not have to be convinced that the settlement is the best possible compromise, but only that the settlement falls within a reasonable range of litigation possibilities." *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004). The *Coram* court found that "the proper test to apply in the determination of whether to approve a proposed compromise is if the compromise falls 'within the reasonable range of litigation possibilities.'" Therefore, the settlement need only be "above the lowest point in the range of reasonableness." *Id.* (citing *Official Unsecured Creditors' Comm. of Pa. Truck Lines. Inc. v. Pa. Truck Lines, Inc.* (In re Pa. Truck Lines, Inc.), 150 B.R. 595, 598 (E.D. Pa. 1992)).

B.    **Rule 9019 Authority Cannot Be Overridden by Private Contracts**

The fundamental principle governing this issue is that "Rule 9019 provides a procedural mechanism for approving settlements" but "does not create substantive authority beyond what is found in the Bankruptcy Code." *In re Telesphere Communications, Inc.*, 179 B.R. 544 (Bankr. N.D. Ill. 1994); *see also, In re Dow Corning Corp.*, 198 B.R. 214 (Bankr. E.D. Mich. 1996) ("Rule 9019 establishes procedure consistent with Code authority"). This distinction between procedural mechanism and substantive authority is critical to understanding why private contracts cannot override the court's approval power.

The Second Circuit has emphasized that "Rule 9019 requires court approval of settlements involving the bankruptcy estate to ensure fairness and protect non-settling creditors." *In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007). This requirement serves fundamental bankruptcy policies that transcend any private contractual arrangements between parties.

Courts have addressed the specific issue of contractual consent requirements in the settlement context. "Contractually, parties to a settlement may agree that one party needs the

5

other's consent before finalizing or approving a settlement. Courts generally enforce such agreements under state contract law principles, but the settlement's binding effect in bankruptcy is subject to court approval under Rule 9019." *In re Mickey Thompson Entm't Group, Inc.*, 292 B.R. 415 (B.A.P. 9th Cir. 2003). The *Mickey Thompson* court recognized that "contractual settlements governed by state law" remain "subject to Rule 9019 approval."

The cases establish a clear principle: the bankruptcy court's Rule 9019 settlement approval authority is procedural and aims to protect the estate and non-settling parties. It is not overridden by private contractual restrictions directing that one party must obtain consent from another before settling. As demonstrated in *Mickey Thompson*, to the extent a non-party contract requires such consent, that condition is generally enforceable as a contract matter between those parties, but the overall settlement still needs court approval to bind the estate under Rule 9019. Thus, settlement approval authority is not negated but is exercised in the context of both the bankruptcy process and any valid contractual limitations among the settling parties. This reflects the fundamental principle recognized by these courts: non-party consent provisions contractually limiting settlement authority are respected as between the contracting parties but do not remove the bankruptcy court's ultimate Rule 9019 approval power over settlements affecting the estate.

### C. VSI's Position Would Undermine Rule 9019's Purpose

Bankruptcy Rule 9019, "unique in that it does not have a parallel section in the Code, has a 'clear purpose . . . to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *In re Masters, Inc.*, 141 B.R. 13, 16 (Bankr. E.D.N.Y. 1992). This purpose reflects the bankruptcy system's commitment to transparency and judicial oversight of settlements affecting estate assets.

In this case, VSI's conduct directly contradicts this purpose. VSI admitted that it knew about the settlement discussions between Rembrandt and the Trustee but never notified the

6

Trustee about its purported consent agreement. In fact, neither VSI nor Rembrandt informed the Bankruptcy Court or the Delaware District Court of the existence of the purported Second Amendment precisely because all of the outside counsels of record for both parties agreed that the purported Second Amendment was not valid and should neither be disclosed or had any impact on the parties. The first time the Trustee learned of this agreement was when VSI filed its opposition to the settlement motion. This concealment is precisely what Rule 9019 seeks to prevent.

VSI now seeks to use this previously concealed agreement to prevent the Court from evaluating and approving a settlement that would benefit the estate. Allowing a concealed agreement to block court approval would turn Rule 9019's purpose on its head. Rather than preventing concealed agreements from affecting the estate, it would allow concealed agreements to control the estate's ability to settle disputes.

The *In re Miami Metals I, Inc.* case provides guidance here, where "a settlement was not approved because it adversely affected non-party rights." However, that case involved a settlement that would actually harm non-parties. Here, VSI suffers no harm from the Court's approval of the settlement; its contractual rights against Rembrandt remain fully intact. VSI can still pursue any breach of contract remedies against Rembrandt for whatever damages it can prove.

> **D.    Recent Supreme Court Authority Confirms Bankruptcy Courts Cannot Be Bound by Non-Party Agreements**

The Supreme Court's decision in *Harrington v. Purdue Pharma L.P.* establishes that "the Bankruptcy Code does not authorize non-consensual third-party releases of claims against non-debtors in any context outside special asbestos-related cases." While *Purdue* addressed third-party releases, its reasoning is instructive here. The Court made clear that "parties cannot

7

override the court's settlement approval process by private agreement restricting settlement consent or by imposing non-consensual third-party releases."

The principle from *Purdue* is that private parties cannot expand or restrict bankruptcy court authority through their agreements. Just as parties cannot create authority for non-consensual third-party releases through private agreement, they cannot strip the bankruptcy court of its Rule 9019 authority through private consent requirements. District courts have applied similar reasoning. In *In re Fraser's Boiler Serv., Inc.*, 2019 WL 1099713 (D. Wash.), the "District court reversed approval of settlement with non-consensual third-party releases," recognizing that private agreements cannot override bankruptcy law's protections and procedures.

### E. VSI's Remedy Lies in Contract, Not in Preventing Court Approval

The distinction between contractual rights and jurisdictional authority is fundamental to resolving this issue. Even if the Court assumes that VSI may have a contractual right to consent under its agreement with Rembrandt, that contractual right does not translate into a power to prevent this Court from exercising its statutory authority under Rule 9019.

VSI essentially seeks an equitable remedy in the form of an injunction preventing the Court from approving the settlement. However, VSI has shown no legal basis for such extraordinary relief. VSI will suffer no injury from the Court's approval of the settlement because Rembrandt is still in litigation with SeeCubic and any of VSI's contractual rights against Rembrandt remain fully enforceable. In addition, VSI's appeals are unaffected by Rembrandt's proposed settlement.

If VSI believes Rembrandt breached their agreement by entering into the settlement without VSI's consent, VSI's remedy is to sue Rembrandt for breach of contract and seek whatever damages it can prove. The Court's approval of the settlement does not affect VSI's

8

ability to pursue this remedy. What VSI cannot do is leverage its purported private agreement with Rembrandt to prevent this Court from fulfilling its duty to the estate and its creditors.

This Court should note that this is exactly what VSI has done, admitting it has a remedy and its rights are not adversely affected by this Court's approval of the motion. VSI has sued Rembrandt and other defendants in an Adversary Complaint filed September 10, 2025 for Breach of Contract, Unjust Enrichment, Promissory Estoppel, Conversion, Violation of the Defend Trade Secrets Act and Conspiracy.

The practical consequences of VSI's position demonstrate its unreasonableness. If the Court denies the settlement, the Trustee and Rembrandt will return to litigation that would cost millions in legal fees, take a year or more to resolve, and with the lawyers consuming the remaining assets, leave the unsecured creditors with nothing. VSI, having almost no stake in the estate, loses next to nothing from this outcome. The creditors, who are the intended beneficiaries of the bankruptcy process, would be devastated.

The Court has a primary duty to the estate and its creditors, not to an unrelated third party seeking to enforce a private agreement. VSI has the burden of showing that its purported agreement with Rembrandt gives it the power to prevent the Court from approving the settlement. It cannot meet this burden because no authority supports the proposition that a private consent agreement can divest a federal bankruptcy court of its statutory authority.

**V.   CONCLUSION**

VSI asks this Court to do something unprecedented and unsupported by law: to allow a purported private contract between VSI and Rembrandt to divest this Court of its Rule 9019 authority to protect the estate and its creditors. The settlement would benefit the estate by avoiding millions in litigation costs and providing money to creditors who would otherwise

9

receive nothing. VSI's private agreement with Rembrandt cannot override this Court's federal authority to approve a settlement that is fair, reasonable, and in the best interest of the estate. VSI's remedy, if any, lies in a breach of contract claim against Rembrandt, which it has brought, not in preventing this Court from fulfilling its duty to the estate and its creditors.

Dated: September 29, 2025

**DEVLIN LAW FIRM LLC**

By: */s/ Andrew DeMarco*
Andrew DeMarco, Esq.
(PA Bar No. 326294)
ademarco@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Rembrandt 3D Holding Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2025 I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Andrew DeMarco*
Andrew DeMarco