## **EXHIBIT D**

Convertible Note issued by
Stream TV Networks, Inc. to Mediatainment, Inc

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAW. IT MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF REGISTRATION UNDER SUCH ACT EXCEPT PURSUANT TO AN EXEMPTION FROM SUCH REGISTRATION REQUIREMENTS.

**Stream TV Networks, Inc.**

__12/30___, 2010

**CONVERTIBLE NOTE**

U.S. **$992,590.68**

STREAM TV NETWORKS, INC., a Delaware corporation (the "**Company**"), for value received, promises to pay to MEDIATAINMENT, INC. or its registered assigns (the "**Holder**"), the principal amount of above and to pay interest (computed on the basis of the actual number of days elapsed in a 365 day year) on the unpaid principal amount of this 1.2% Convertible Note (the "**Note**") at the rate of 1.2% per annum, monthly in arrears, until the earlier of (i) the Maturity Date, (ii) the Conversion Date or (iii) the Mandatory Redemption Date.

The Company may treat the Person in whose name this Note is registered as the owner hereof for the purpose of receiving payment and for all other purposes. The principal and interest on this Note payable in cash is payable in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts. The Company shall pay principal and interest by federal funds bank wire transfer or by other immediately available funds.

1. **DEFINITIONS.**

   The terms defined in this Section 1 shall, for all purposes of this Note, have the meanings herein specified, unless the context otherwise requires.

   A. Conversion Date has the meaning set forth in Section 4.

   B. Initial Principal Amount means amount specified above.

   C. Issuance Date means date identified above.

   D. Financing means an equity or debt investment in the Company of at least $1,000,000 subsequent to the Issuance Date.

   E. Maturity Date means third year anniversary of each Note from its Issuance Date.

   F. Note Purchase Agreement means the Note Purchase and Security Agreement dated November 24, 2009 by and between the Company and the Holder.

   G. Person means any individual, partnership, corporation, limited liability company, trust, unincorporated organization or government or agency or political subdivision thereof.

2. **THE NOTE.**

   A. This Note is issued under and pursuant to, and subject to the terms and conditions of the Note Purchase Agreement. The terms of this Note include those set forth in the Note Purchase Agreement.

3. **PAYMENT.** Subject to Sections 4 and 5 hereof, principal and accrued but unpaid interest, if any, shall be payable to the Holder on the third anniversary of each Note if not converted earlier as provided below.

4. **OPTIONAL CONVERSION.**

   A. At the time of any Financing, as defined above, Holder shall have the option to convert all Notes hereunder into equity of Company under the same economic terms of the Financing. In the event that Holder does not exercise such conversion as part of the Financing then such option or right of conversion shall thereon be forfeited and void thereafter.

   B. Interest accrued but unpaid as of the Conversion Date shall be paid in full on the Conversion Date. The Person or Persons entitled to receive the shares of Common Stock issuable upon conversion shall be treated for all purposes as the record holder or holders of Common Stock on the Conversion Date.

   C. In order to convert this Note pursuant to Section 4A, the Holder shall give written notice to the Company (the "**Conversion Notice**"), which shall state the desired date of conversion and which notice shall be delivered at least five (5) days before the Conversion Date. On or prior to the Conversion Date, the Holder shall deliver this Note, duly endorsed as "Paid in Full" (but effective only on the Conversion Date), or notify the Company that this Note has been lost, stolen or destroyed and promptly execute an agreement reasonably satisfactory to the Company to indemnify the Company from any loss which may be incurred by it in connection with the Note.

   D. Conversion of this Note in accordance with the terms of this Section 4 shall constitute the full and final payment of this Note.

5. **MODIFICATION OF NOTES.** The Note may be modified only with the written consent of the Holder. The Holder may waive compliance by the Company with any provision of the Note.

6. **OTHER COVENANTS OF THE COMPANY.**

   A. The Company shall not intentionally take any action which would impair the contractual rights and privileges of the Note set forth herein or of the Holder.

   B. The Company shall comply in all material respects with all covenants set forth in the Note Purchase Agreement.

7. **OBLIGATIONS ABSOLUTE.** No provision of this Note, other than those relating to conversion, shall alter or impair the obligation of the Company, which is absolute and

- 2 -

unconditional, to pay the principal of, and interest on, this Note at the time, place and rate, and in the manner set forth herein.

**8. WAIVERS OF DEMAND, ETC.** The Company hereby expressly waives demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of intent to accelerate, prior notice of bringing of suit and diligence in taking any action to collect amounts called for hereunder and will be directly and primarily liable for the payments of all sums owing and to be owing hereon, regardless of and without any notice (except as required by law), diligence, act or omission as or with respect to the collection of any amount called for hereunder.

**9. NOTICES.** All notices, requests, demands and other communications required or permitted under this Note shall be in writing and shall be deemed to have been duly made and received when personally served, or when mailed by first class mail or overnight, by courier service such as Federal Express, postage prepaid, or telecopied with answer back receipt and hard copy sent in the manner set forth above, addressed as set forth below:

    (i)    If to the Company, then to:

    Stream TV Networks, Inc.
    2009 Chestnut Street
    Philadelphia, PA 19103

    Attn: President

    (ii)    If to the Purchasers, then to:

    MediaTainment, Inc.
    Chief Financial Officer
    1105 William Penn Drive
    Bensalem, PA 19020

**10. GOVERNING LAW.** This Note shall be construed in accordance with and governed by the internal laws of the Commonwealth of Pennsylvania. The Company and the Holder hereby (i) irrevocably submit to the exclusive jurisdiction of the United States District Court for the Eastern District of Pennsylvania for the purposes of any suit, action or proceeding arising out of or relating to this Note and (ii) waive, and agree not to assert in any such suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such court, that the suit, action or proceeding is brought in an inconvenient forum or that the venue of the suit, action or proceeding is improper. The Company and the Holder consent to process being served in any such suit, action or proceeding by mailing a copy thereof to the Company or the Holder, as the case may be, at the address in effect for notices to it under this Note and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing in this paragraph shall affect or limit any right to serve process in any other manner permitted by law.

11. **SAVINGS CLAUSE.** If any provision of this Note is held by a court of competent jurisdiction to be excessive in scope or otherwise invalid or unenforceable, such provision shall be adjusted rather than voided, if possible, so that it is enforceable to the maximum extent possible, and the validity and enforceability of the remaining provisions of this Note will not in any way be affected or impaired thereby.

12. **NO WAIVER.** No failure on the part of the Holder to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the Holder of any right, remedy or power hereunder preclude any other or future exercise of any other right, remedy or power. Each and every right, remedy or power hereby granted to the Holder or allowed it by law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by the Holder from time to time.

13. **SUCCESSORS AND ASSIGNS.** All of the covenants, promises and agreements in this Note shall bind the Company's successors and assigns, whether so expressed or not.

14. **HEADINGS.** The headings of the sections and paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

IN WITNESS WHEREOF, the Company has caused this Note to be signed in its name by a duly authorized officer and to be dated as of the day and year first above written.

**STREAM TV NETWORKS, INC.**

Dated: 12/30/2010

By: *[signature: Mathu Rajan]*
Title: C.E.O.