# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **Stream TV Networks, Inc.** *et al.*, | : | Bky. No. 23-10763 (DJB) |
| | : | |
| Debtors. | : | (Jointly Administered) |

## OPINION

This chapter 11 case has proved to be a never-ending stream of contentious litigation since it was filed over two years ago. The present controversy centers on the chapter 11 trustee's (the "Trustee") efforts to settle disputes between the estate and Rembrandt 3D Holding Ltd. ("Rembrandt"). The Trustee and Rembrandt have agreed to cease the multiplicity of litigation between them, pending or on appeal in various courts, and settled upon certain negotiated payments and rights Rembrandt will receive from the estate. The Trustee filed his Omnibus Motion (the "Motion")[1] and seeks approval of the settlement and related relief. Visual Semiconductor, Inc. ("VSI") and SeeCubic, Inc. ("SeeCubic") lodged objections to the Motion on entirely separate grounds. Because the Court finds that the agreement between the Trustee and Rembrandt meets the relevant standard for approval, the Court will overrule VSI's objection and approve the agreement. However, because the Court finds that the Trustee failed to prove

---

[1] The Trustee's motion is fully titled "OMNIBUS MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER: (I) APPROVING A SETTLEMENT AGREEMENT WITH REMBRANDT 3D HOLDING, LTD. PURSUANT TO FED. R. BANKR. P. 9019(a) AND 11 U.S.C. § 105(a); (II) ENFORCING DEFENSE AND INDEMNITY OBLIGATIONS OF SEECUBIC, INC.; AND (III) GRANTING RELATED RELIEF". [Dkt. No. 1040].

1

his entitlement to an indemnification judgment, relief will be denied in this respect without prejudice to the Trustee filing a new action, here or elsewhere, to pursue such a judgment.

## I. FACTUAL BACKGROUND

While the history between the several parties is tortuous [See Dkt. Nos. 548 & 916], little of that history bears on the present issue and it need not be repeated here. Briefly, and as to what is relevant before the Court, the Debtors filed chapter 11 bankruptcy cases on March 15, 2023. On January 5, 2024, by order of this Court, Mathu Rajan ("Rajan") was relieved of his authority to act on behalf of the Debtors' estates and the Trustee, William A. Homony, was appointed shortly thereafter.

VSI, operated by Rajan, had proposed to fund a plan through which VSI would contribute significant capital to the Debtors in exchange for issuance of new stock, attempting to effectively gain clear control of the assets and the panoply of intellectual property rights of the Debtors. [Dkt. No. 848]. The Trustee, however, decided that a sale of substantially all of the Debtors' assets pursuant to § 363 of the Bankruptcy Code was in the best interests of the estate, and on December 9, 2024, this Court approved a free and clear sale of the Debtors' assets to SeeCubic (the "Sale Order"). [Dkt. No. 876].

It has not always been clear what "side" everyone is on nor what has motivated the various players throughout. Rembrandt had historically taken positions adverse to the Debtors, before and after the Trustee was appointed. Rembrandt was a petitioning creditor in an involuntary bankruptcy filed against one of the Debtors prior to the present case and is a counterparty to the Debtors and/or the Trustee in three (3) appeals from this Court, two (2)

2

pending federal district court actions, and two (2) pending adversary proceeding before this Court. [See Dkt. No. 1040, at 7-8]. Additionally, Rembrandt has asserted a claim against the Debtors in excess of $1.2 billion based on alleged liability for patent infringement and misappropriation of trade secrets. See Claims Register, 26-1. The Trustee and Rembrandt have now negotiated a settlement that resolves all of these outstanding issues between them and both parties request court approval of that agreement.

SeeCubic had been a secured creditor of the Debtors and was approved as a stalking horse bidder in the Debtors' asset sale process. Through that process, SeeCubic purchased the Debtors' assets and closing occurred on January 3, 2025. [See Dkt. No. 915]. As part of the asset purchase agreement, and included in the Sale Order, SeeCubic agreed to indemnify the Trustee for costs associated with addressing claims that certain intellectual property was improperly transferred as part of the sale. [See Dkt. No. 876]. According to the Trustee, on March 24, 2025, he demanded that SeeCubic defend and indemnify him in connection with certain litigation against Rembrandt. [See Dkt. No. 1040, at 8]. He alleges SeeCubic ignored his demands and breached its obligations under the Sale Order. [Id.] The Trustee is presently seeking a judgment against SeeCubic to enforce those indemnification rights.

VSI's relation to the Motion is not entirely clear. While VSI was a proposed equity sponsor of a prior failed plan and is helmed by the Debtors' now-ousted principal, VSI does not appear to be a creditor of the Debtors or be directly affected by the Trustee's Motion.[2] Rather,

---

[2] VSI does not appear to be a creditor of the Debtor raising the question of whether VSI is a proper party with standing to be heard. The Court recognizes that those with a "direct financial stake in the outcome of the case" are a party in interest. Truck Ins. Exch. v. Kaiser Gypsum Co., Inc., 602 U.S. 268, 277 (2024). Here, it is not clear how VSI has a direct financial interest in the settlement of the issues between the Trustee and Rembrandt. Although there is a serious question about VSI's standing in this case, the Court will nonetheless address VSI's objections on the merits.

VSI asserts that a purported separate agreement between Rembrandt and VSI strips Rembrandt's authority to settle litigation with the Trustee.

## II. PROCEDURAL BACKGROUND

The Trustee filed the Motion on July 15, 2025. SeeCubic and VSI both filed responses to the Motion. [Dkt. Nos. 1045 & 1053]. The Trustee was granted leave to file an additional reply in support of his motion. [Dkt. Nos. 1056 & 1084]. On September 8, 2025, the Court held an evidentiary hearing on the Motion. [Dkt. No. 1085]. The Trustee, Rembrandt, VSI, and SeeCubic appeared and participated in the hearing and the Court heard witness testimony from several individuals.[3] The Trustee, Simmons, and Michaels submitted declarations in lieu of direct testimony and were subject to cross-examination. Rajan and Robertson presented testimony on direct and were also subject to cross-examination.

At the close of the hearing, the Court ordered further oral argument on the limited issue of whether the Court needed to resolve the enforceability of the alleged agreement between Rembrandt and VSI as a precursor to whether Rembrandt could enter into the settlement agreement with the Trustee. The Court set a briefing schedule and received post-trial briefs from all four (4) parties, and responsive briefing from the Trustee, Rembrandt, and VSI. [Dkt. Nos. 1100, 1102, 1103, 1104, 1116, 1122 & 1123]. On October 15, 2025, the Court heard final closing arguments from the parties.

---

[3] The following witnesses testified at the September 8 hearing: William A. Homony, the Trustee; John D. Simmons ("Simmons"), a patent attorney retained by the Trustee; Christopher A. Michaels ("Michaels"), both CFO and outside patent counsel to Rembrandt; Rajan, CEO of VSI and former CEO of Stream TV; and Charles Robertson ("Robertson"), former Vice President of Stream TV. Michaels was called to testify again on rebuttal.

The Court has before it the Motion, the several responsive filings and briefs, the argument, witness testimony, and exhibits received at the September 8 hearing, and the argument presented at the October 15 hearing. The matter is now ripe for disposition.[4]

## III. DISCUSSION

Through the Motion, the Trustee asks for essentially two (2) forms of relief. First, he seeks approval of the settlement agreement between the Trustee and Rembrandt pursuant to Federal Rule of Bankruptcy Procedure 9019. Second, he seeks entry of a judgment against SeeCubic. Each is distinct and will be evaluated in turn.

**A. 9019 Approval**

**i. The terms of the Settlement Agreement**

On June 30, 2025, the Trustee and Rembrandt entered into an agreement (the "Settlement Agreement") through which the settling parties resolved several disputes between them. [Dkt. No. 1040-6]. The Settlement Agreement identifies seven (7) distinct pending legal proceedings in which Rembrandt is adverse to either the Trustee or the Debtors. Rembrandt has appealed three (3) separate orders of this Court, and those appeals are pending in the United States District Court for the Eastern District of Pennsylvania. See e.g., E.D. Pa. No. 24-cv-02727; E.D. Pa. No. 24-cv-06617; E.D. Pa. No. 25-cv-00751. Rembrandt had also commenced three (3) separate

---

[4] The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 as incorporated by Federal Rule of Bankruptcy Procedure 9014. The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference of the Eastern District of Pennsylvania as the matter arises in and/or is related to a case under the Bankruptcy Code. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The matter presented by the Motion is a core matter pursuant to 28 U.S.C. § 157(b). To the extent that the matter is deemed non-core and/or the Court is without constitutional authority to render a final decision on the Motion, the following shall constitute the Court's report and recommendation in accordance with 28 U.S.C. § 157(c).

legal proceedings in federal courts against the Trustee, or related parties: one action in the District of Delaware (D. Del. 23-cv-00193), one action in the Eastern District of Pennsylvania (E.D. Pa. 24-cv-06706) (the "Pennsylvania District Court Action"), and one adversary proceeding before this Court (Bankr. E.D. Pa. 24-00142). The Trustee also commenced an adversary proceeding against Rembrandt earlier this year. See e.g., Bankr. E.D. Pa. 25-00138.

The Settlement Agreement also identifies a sizeable claim Rembrandt has asserted against the Debtors. Rembrandt filed multiple proofs of claim in this bankruptcy case, effectively alleging $1,212,407,000.00 is owed to Rembrandt, a figure derived from alleged lost profits according to the terms of a prior agreement between Stream TV and Rembrandt. See Claims Register, 26-1.

The Settlement Agreement is far reaching. First, the Settlement Agreement results in a dismissal of the actions where Rembrandt is a plaintiff (except for the Pennsylvania District Court Action addressed infra). Second, it calls for (i) Rembrandt to terminate its participation in the appeals pending in the Eastern District of Pennsylvania, (ii) the parties to reject/terminate the agreements existing between the Debtors and Rembrandt, and (iii) a reduction of Rembrandt's general unsecured claim in the Chapter 11 case from $1.2 billion to $1 million. Third, the Settlement Agreement provides that the Trustee shall pay Rembrandt $100,000.00 in cash as well as use reasonable efforts to seek a judgment in favor of the Trustee and against SeeCubic in an amount of $1,150,000.00 (which will be assigned to Rembrandt on a non-recourse basis) in full satisfaction of the Pennsylvania District Court Action. Rembrandt agrees to make certain additional discovery and disclosures available to the Trustee which have been the subject of other contested matters. Finally, the parties agree to exchange mutual, general releases.

6

While easily overlooked as a perfunctory provision, relevant here is paragraph 12 of the Settlement Agreement. Paragraph 12 provides that both parties represent and warrant that each "Settling Party and the signatory hereto has the power and authority to execute, deliver and perform this Agreement" and that the execution of the agreement "does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of such Party and will not violate any applicable law . . ." [Dkt. No. 1040-6, ¶ 12]. The Settlement Agreement was signed by the Trustee, on behalf of the Debtors, and by Stephen Blumenthal, CEO of Rembrandt, on behalf of Rembrandt, on June 30, 2025.

### ii. Legal standard for approval under Fed. R. Bankr. P. 9019

The standard for approval of an agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 is well known. The Court must consider the following factors in deciding whether to approve the Settlement Agreement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Nw. Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644-45 (3d Cir. 2006). Overlaid on the four-factor test are additional considerations. Compromises are generally favored in bankruptcy; they minimize unnecessary litigation and accelerate administration of the estate. See In re Martin, 91 F.3d at 393. Acknowledging that the Trustee is a fiduciary to all creditors, he is duty bound to increase the value of the estate. Id. at 394 (citing Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 353, (1985)). Therefore, the Court must satisfy itself that the compromise is one that is fair and reasonable and in the interests of the estate. See In re Trib. Co., 464 B.R. 126, 158

(Bankr. D. Del. 2011) (subsequent history omitted) (citing In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).

Importantly, bankruptcy courts are given discretion in approving settlements and do not need to be convinced that the instant agreement is "the best possible compromise." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006). Rather, it is enough that the proposed agreement falls "within the reasonable range of litigation possibilities." Matter of Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979). Courts should avoid second-guessing a trustee's business judgment and simply ascertain whether the agreement falls above "the lowest range of reasonableness." In re Covenant Partners, L.P., 555 B.R. 490, 493 (Bankr. E.D. Pa. 2016) (citing In re Neshaminy Off. Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also In re Majestic Hills, LLC, No. 1106, 2024 WL 5316647, at *3 (Bankr. W.D. Pa. Dec. 26, 2024) ("the Court need not be convinced that it is the best possible compromise, only that it falls above the lowest range of reasonableness."); In re Washington Mut., Inc., 442 B.R. 314, 328 (Bankr. D. Del. 2011) (same).

### iii. Application of the four (4) Martin factors supports approval

Notably, SeeCubic did not object to approval of the Settlement Agreement. See Tr. at 13-14 (SeeCubic stating "I object to the motion to the extent it seeks to get an order or a judgment entered against SeeCubic. Whatever they do between themselves is really none of my business." Court: "you don't object to the settlement agreement . . . ?" SeeCubic: "Correct."). On the other hand, VSI did object to approval of the Settlement Agreement but effectively limited its objection to a single legal theory, addressed below, and did nothing to present evidence on or contest the reasonableness of the Settlement Agreement under the Martin factors. Only in its post-trial briefs did VSI even attempt to address the relevant standard under Rule 9019. [See

8

Dkt. No. 1102, at 13; Dkt. No. 1122, at 4]. However, even there, VSI's arguments are thin, conclusory, and often inapposite.

Notwithstanding that approval under Rule 9019 is effectively unopposed, the Court must still satisfy itself that the Settlement Agreement satisfies the standards laid out by the Third Circuit. The Court does find that each of the four factors in the Martin test support approval of the Settlement Agreement.

First, the Trustee is not likely to succeed on the underlying litigation in a way that would benefit the estate. In Martin, the Court found it was inappropriate to disallow a compromise when the debtor had a 100% probability of success because the verdict had already been obtained. See In re Martin, 91 F.3d at 393. Here, litigation is in no way that certain. The estate is in the midst of litigation on several fronts and the Trustee testified that the Pennsylvania District Court Action is itself uncertain, likely to be prolonged, and—even if the Trustee were able to successfully defend the action—that he would incur substantial defense costs. The Trustee further testified that he believes his defense costs would exceed the amounts to be paid to Rembrandt under the Settlement Agreement. Additionally, that figure does not take into account the likelihood of Rembrandt's success on all the appeals, the actions pending in other fora, and the claims litigation. Thus, even a victory on all pending litigation against Rembrandt could be pyrrhic when one compares the costs of defense with the amounts payable to Rembrandt in the Settlement Agreement.

Second, the difficulties in collections are not implicated; the Trustee here is attempting to settle claims against the estate. See In re Covenant Partners, 541 B.R. at 808. This factor is therefore neutral as to approval.

9

Third, the complexity of the various litigation—and the accompanying costs—all weigh in favor of approving the Settlement Agreement. The various litigations here are complex, expensive, and likely to delay administration of the estate if they continue. The subject matter of the Pennsylvania District Court Action alone includes intellectual property disputes, including patent infringement and misappropriation of trade secrets. The Trustee was forced to retain intellectual property counsel nearly a year ago to assist in this litigation. [Dkt. No. 888]. Simmons credibly testified as to the cost and complexity of patent litigation, as well as the added complexity given the international nature of these cases.[5] Additionally, the various litigation between the Debtors and Rembrandt has gone on for over a decade and testimony from several witnesses confirmed Rembrandt's litigiousness and continued willingness to fight and appeal any adverse decisions. Furthermore, by stipulating to an allowed claim of less than 0.1% of Rembrandt's filed claim, the Trustee eliminates the time and expense of litigation within the claims allowance process. The Trustee testified that the Settlement Agreement will allow him to cost-efficiently end all these strands of litigation and proceed to confirmation and make distributions to creditors.

Fourth, the Settlement Agreement is in the best interests of the estate and creditors. The Trustee testified that settlement eliminates the risk of an outsized liability that would jeopardize any potential recoveries by creditors. Allowing Rembrandt a residual claim against the estate of only $1,000,000.00 benefits all other unsecured creditors whose claims would have been otherwise drastically diluted by Rembrandt's as-filed claim. The Settlement Agreement also

---

[5] On cross-examination, it was clear that Simmons' initial estimation of cost may have been overstated. However, the Court is satisfied that the patent infringement litigation alone, if taken to completion, would almost certainly exceed the payments under the Settlement Agreement by a substantial margin.

preserves estate assets, as noted above, by reducing the costs of conducting discovery, employing professionals, and continuing litigation. Resolving those litigations and eliminating an appellant on several appeals, including of this Court's prior sale order, reduces the risk those appeals pose to estate assets and will allow for this case to proceed more rapidly to creditor distributions.

In sum, the Court finds that the Settlement Agreement is fair, reasonable, and in the best interests of the estate and creditors. The Trustee has used his business judgment to negotiate settlement of several pending actions which will reduce estate expenses, maximize distributions to creditors, and allow for a smoother and quicker path to a confirmed plan and distributions. The Trustee's testimony to this end is largely unopposed and the Court credits the Trustee's representations and business judgment. The Settlement Agreement undoubtedly falls within the "range of reasonableness" and meets the requirements for approval pursuant to Federal Rule of Bankruptcy 9019.

### iv. VSI's objection based on alleged third-party settlement control does not affect the Trustee's ability to enter in the present agreement

The majority of evidence, testimony, and debate presented at the evidentiary hearing centered on a late-breaking revelation that VSI claims to have sole authority and control over Rembrandt's ability to settle pending causes of action with the Trustee pursuant to a separate agreement between VSI and Rembrandt (the "VSI/Rembrandt Agreement"). It was undisputed that the Trustee did not have knowledge of the VSI/Rembrandt Agreement prior to the filing of VSI's objection. [See Dkt. No. 1100, at 8-11] (citing testimony from the Trustee, Rembrandt's representative, and VSI's representative that all confirm the Trustee was unaware of the VSI/Rembrandt Agreement when the Settlement Agreement was negotiated and executed). VSI argues that it had entered into the VSI/Rembrandt Agreement to control Rembrandt's litigation

11

with the estate and any settlement thereof. Rembrandt, for its part, disputes that any agreement exists or is enforceable as a matter of law.[6] The Court will not decide any issue related to the enforceability or effect of such an agreement.

Whether the VSI/Rembrandt Agreement exists, is enforceable, or gives VSI control over Rembrandt's settlement rights may give VSI rights *against Rembrandt*. Rembrandt plainly conceded that any settlement it reached with the Trustee does not affect the claims that may exist between Rembrandt and VSI. [See Dkt. No. 1104, at 9; Dkt. No. 1123, at 5]. The only reason for the Court to address the existence of any potential VSI/Rembrandt Agreement is to determine whether the Trustee's decision to proceed with the settlement—in the face of that alleged agreement—remains reasonable as previously determined. While it is uncontested that the Trustee did not have knowledge of the VSI/Rembrandt Agreement prior to the filing of the VSI objection, clearly the Trustee had knowledge of its alleged existence at the time of the hearing. Nonetheless, the Trustee's decision to continue to press forward with the potential settlement was and continues to be reasonable. First, Rembrandt is the named party with which the Trustee has been litigating across various courts, and the Settlement Agreement specifically contained a representation that Rembrandt had full authority to enter into the Settlement Agreement. [Dkt. No. 1040-6, ¶ 12]. The Trustee's reliance on that representation at the time of signing was reasonable. Further, when the VSI/Rembrandt Agreement was revealed by VSI, Rembrandt

---

[6] VSI argued at the hearing that this Court needed to disapprove a 9019 settlement if the counterparty to the estate lacked authority to enter into the agreement. VSI represented that case law existed to support this position. The Court ordered briefing and oral argument on this issue. Maddeningly, VSI filed a post-trial brief riddled with (what appears to be) AI hallucinated citations, parentheticals that bore no relationship to the cited cases, or otherwise inapposite and unhelpful arguments. [See also Dkt. No. 1116]. When given the opportunity to respond to the "AI" allegations, VSI disclaimed the brief it filed. In a separate search, the Court was not able to identify any cases which stand for the proposition asserted by VSI.

disclaimed the existence of that agreement arguing that it was not enforceable. The Trustee's reliance on Rembrandt's position—disclaiming the VSI/Rembrandt Agreement and seeking to press forward with the Settlement Agreement—further justifies the reasonableness of the Trustee's actions. There is nothing raised by VSI in its opposition suggesting the Trustee's behavior was unreasonable nor that application of the Martin factors to the Trustee's decisions is affected in any way.

Because VSI has failed to properly raise an objection affecting any of the Martin factors, the Court overrules VSI's objection.

**B. Indemnity Judgment**

The Trustee's request for entry of a judgment against SeeCubic for alleged violation of the indemnity clause of the Sale Order is an entirely separate matter. The Trustee argues that his attempts to settle with Rembrandt were informed, in part, by SeeCubic's failure (or potential inability) to honor its indemnification obligations. Therefore, the Trustee asks the Court to enter a judgment against SeeCubic for the full amount of the indemnity identified in the Settlement Agreement.

SeeCubic, as a threshold matter, argues that a 9019 motion is not the proper vehicle for the Trustee to seek entry of a judgment. Alternatively, SeeCubic argues that even if judgment could procedurally be entered, the Trustee has failed to prove he is entitled to the judgment. While the Court does recognize its ability to enter judgment in this procedural context, the Court nonetheless finds that the Trustee has failed to prove his entitlement to an indemnity judgment against SeeCubic at this time.

**i. The Court has discretion whether to enter judgment against SeeCubic**

13

Beyond simple approval of the Settlement Agreement, the Trustee seeks entry of an indemnification judgment against SeeCubic, declaring that it breached obligations to defend and indemnify the Trustee under the Sale Order. The Trustee seeks entry of a judgment for $1,150,000.00 in favor of the Trustee.

Normally, a party seeking a judgment to recover money or property—or a declaratory judgment related to such recovery—must proceed under Part VII of the Federal Rules of Bankruptcy Procedure. See Fed. R. Bankr. P. 7001. Judgments entered under Federal Rule of Civil Procedure 58 generally only apply in adversary proceedings. See Fed. R. Bankr. P. 7058. In a contested matter, Federal Rule of Bankruptcy Procedure 7058 does not apply as a matter of course. See Fed. R. Bankr. P. 9014(c) (not listing 7058 among the provision of Part VII applicable to contested motions). However, the Court has discretion to "order that one or more other Part VII rules apply" to a contested matter. See id. Indeed, in cases where there is no prejudice to the parties, courts may allow matters to proceed by way of motions under Rule 9014 rather than as adversary proceedings. See generally 10 Collier on Bankruptcy ¶ 7001.01 n.9 (16th ed. 2025) (collecting cases).

SeeCubic came to the hearing prepared to litigate the merits of the request for entry of judgment. While SeeCubic was not wrong in asserting that a judgment must be entered in accordance with Part VII of the Rules, it conceded that Rule 9014(c) gives the Court discretion to deem Rule 7058 applicable to this contested matter. The Court finds that SeeCubic had proper notice of the contested motion and was not prejudiced by the lack of any procedural safeguards that Part VII would ordinarily provide. Therefore, the Court does not view the procedural posture of the Trustee's motion as a bar to entry of judgment, if merited.

### ii. Facts relevant to the request for the indemnification judgment

The Sale Order entered by this Court includes an indemnity provision which places a burden on SeeCubic to defend and indemnify the estate and the Trustee for claims or causes of action alleging that any intellectual property—namely Rembrandt's—was improperly transferred as a result of the asset sale. The Sale Order was entered December 9, 2024; on December 17, 2024, Rembrandt initiated the Pennsylvania District Court Action against the Trustee.

On March 24, 2025, the Trustee sent a letter to SeeCubic, describing three (3) pending cases brought by Rembrandt against the Trustee (among them the Pennsylvania District Court Action), and demanding SeeCubic reimburse certain attorneys' fees, provide a defense in the actions going forward by paying subsequent attorneys' fees, and commit to indemnify the Trustee and estate for any damages resulting from the actions. [See Dkt. No. 1040-4, at 3]. Neither party initiated any further communication until June 24, 2025, when SeeCubic sent a letter to the Trustee. [Dkt. No. 1040-5]. SeeCubic's letter purported to disclaim any obligation stemming from two (2) of the pending cases. As to the Pennsylvania District Court Action, SeeCubic indicated that it would assess specific requests from the Trustee. SeeCubic noted that to the extent its indemnification obligations extended to the Pennsylvania District Court Action, it would be entitled to direct the defense and have authority to settle the claim. The SeeCubic letter concluded with an invitation for the Trustee to contact the sender to discuss any of the information enclosed. On June 30, 2025, the Trustee entered into the Settlement Agreement with Rembrandt.

### iii. The Trustee has not demonstrated entitlement to the indemnification judgment

The Trustee argues that after he sent the March 24 letter, SeeCubic's decision not to respond for three (3) months—and the content of that response—represented a clear rejection of the Trustee's demands and repudiation of the defense and indemnity obligations in the Sale

Order. The Trustee defends his position by pointing out that at the time the Sale Order was negotiated, SeeCubic knew it was a near-certainty that Rembrandt would litigate the precise matter covered by the defense and indemnity provisions. Therefore, the Trustee argues that SeeCubic's knowledge of the existence of the litigation and the months of silence, confirm that further communication would have been futile. The Trustee also argues that SeeCubic is not financially sound such that they could fulfill their obligations, necessitating the Trustee's decision to reach settlement unilaterally with Rembrandt.[7]

SeeCubic argues that (1) the lone March 24 letter from the Trustee to SeeCubic on the matter prior to the settlement does not satisfy the Trustee's obligations under the Sale Order, (2) the March 24 letter was unclear as to the scope and nature of the defense and/or indemnification demand, (3) the Trustee's beliefs about SeeCubic's financial state are poorly substantiated or irrelevant, and (4) the Trustee's behavior has not been reasonable viz a viz SeeCubic in negotiating the settlement.

While the arguments on both sides are wide-ranging, the Court cannot enter an indemnification judgment absent a clear indication that SeeCubic repudiated its obligations under the indemnification agreement.[8] The Sale Order places certain duties on SeeCubic as the

---

[7] The Trustee points to a delayed closing on the court-ordered sale due to SeeCubic's difficulties in coming up with the required cash and a $7.5 million judgment recently entered against SeeCubic in California.

[8] The parties have dragged several peripheral issues into the matter, including whether the settlement amount was reasonable, whether the settlement amount was properly allocated across the various disputes, whether the indemnification agreement can be interpreted to cover all, or any, of the litigation between the Trustee and Rembrandt, and whether the Trustee has acted in bad faith affecting his ability to seek this judgment. At this stage, these questions are immaterial the Court's disposition.

16

indemnitor akin to those placed on an insurer.[9] Simply put, for the Court to enter judgment, the Trustee must prove, by a preponderance of the evidence, that SeeCubic refused to honor its obligations under the Sale Order or that it would be impossible for SeeCubic to meet those obligations. Both parties have cited case law to similar effect. See Philadelphia Indem. Ins. Co. v. Bogel, 269 A.3d 992, 1013 (Del. Super. Ct. 2021) ("As a general rule, when an insurer *wrongfully refuses to defend a claim*, the insured may enter into a reasonable settlement with the claimant, absent fraud, collusion, or bad faith, and sue the insurer for indemnity . . . for the amount paid in settlement.") (emphasis added) (internal quotation marks omitted); Level 4 Yoga, LLC v. CorePower Yoga, LLC, 2022 WL 601862, at *16 (Del. Ch., 2022) ("[A] party may repudiate through a voluntary and affirmative act rendering performance apparently or actually impossible. In any event, repudiation must be positive and unconditional.") (internal quotation marks omitted); W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC, No. CIV.A. 2742-VCN, 2009 WL 458779, at *5 (Del. Ch. Feb. 23, 2009) (finding that a party can effectively repudiate an obligation when it becomes clear to the counterparty that performance is impossible). Therefore, the Trustee's request for an indemnification judgment is only proper if (1) he can demonstrate that SeeCubic wrongfully refused, in clear and unconditional terms, to honor its obligations under the Sale Order, or (2) that it is impossible for SeeCubic to meet its obligations under the Sale Order.

SeeCubic never clearly refused to undertake a defense of the Pennsylvania District Court Action. In fact, the Trustee never clearly indicated an intent to tender control of the defense to

---

[9] Indemnification agreements are often litigated in the context of insurance contracts and both parties here have cited several cases to the Court discussing the duties to defend and indemnify in such context. The Court finds such discussions applicable and illuminating to interpreting the contract at issue and will apply such case law as it is appropriate.

SeeCubic. The Trustee's March 24 letter demands that SeeCubic "immediately provide a defense of the Indemnified Parties in the Rembrandt Actions going forward *via the payment of all subsequent attorneys' fees incurred . . .*" (Emphasis added). SeeCubic's response, while delayed, states that "SeeCubic reserves all rights with respect to the Pennsylvania District Court Action and will assess specific requests as to that action when made." SeeCubic's response also ends with an invitation to continue the discussion on the matter. These communications make clear that the Trustee did not make a complete tender of the defense to SeeCubic that it could clearly accept or reject. Moreover, SeeCubic's response does not clearly reject any obligations to defend or indemnify the Pennsylvania District Court Action. SeeCubic clearly refused to honor any defense or indemnity obligations on litigations other than the Pennsylvania District Court Action. [Dkt. No. 1040-5, at 2] ("SeeCubic has no obligation to indemnify or defend any Indemnified Parties in the Delaware District Court Action or Adversary Proceeding."). When this plain language is compared to the reservation of rights and an invitation for a more definite request and further discussion as to the Pennsylvania District Court Action, the Court cannot find on this record that SeeCubic "positive[ly] and unconditional[ly]" repudiated its obligation as to the Pennsylvania District Court Action.

Alternatively, the Trustee has not proven that SeeCubic is financially unable to comply with the terms of the agreement. The Trustee's offer of proof, namely that SeeCubic was delayed in closing on the asset sale and recently had a judgment entered against it, does not clearly indicate that it would be impossible for SeeCubic to carry out its duty to defend if properly tendered. The Court has nothing before it on SeeCubic's present financial condition. Moreover, SeeCubic is clearly able to appear and litigate the instant dispute, suggesting it does have the ability to undertake a covered defense if properly tendered.

To avoid any uncertainty, the Court need not and does not resolve whether the Pennsylvania District Court Action is covered by the indemnification agreement, whether the settlement amounts are reasonable under SeeCubic's indemnity, whether the Trustee's allocation of those amounts is reasonable, or whether any party has acted in anything less than good faith. Likewise, the Court is not being asked to determine the obligations of the parties going forward. To the extent a line of communication that was once closed is now open between the Trustee, Rembrandt, and SeeCubic, the parties are free to negotiate the contours of their respective obligations; the Sale Order contemplates that the Trustee and SeeCubic must act reasonably and cooperate in the resolution of any actions covered by the indemnification provision. In the event the parties reach an impasse, the Trustee or SeeCubic is free to apply to this Court again to enforce any rights under the Sale Order.

### IV. CONCLUSION

The Trustee has come seeking two (2) forms of relief: approval of the Settlement Agreement and entry of an indemnification judgment. Because the Trustee has satisfied the standard for approval of a compromise pursuant to Federal Rule of Bankruptcy Procedure 9019, VSI's objection is overruled and the Settlement Agreement is approved. However, because the Trustee failed to prove SeeCubic positively and unconditionally repudiated its obligations under the Sale Order, SeeCubic's objection to entry of the judgment is sustained, without prejudice to the Trustee seeking similar relief in the future based on new facts and circumstances.

An appropriate order will issue.

**Date: October 31, 2025**

　　　　　　　　　　　　　　　　　　　　**DEREK J. BAKER**
　　　　　　　　　　　　　　　　　　　　**U.S. BANKRUPTCY JUDGE**