UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : Case No. 23-10763-djb |
| STREAMTV NETWORKS, INC. CH: 11<br>AND NETWORKS, INC. AND<br>TECHNOVATIVE MEDIA, INC. | : Philadelphia, Pennsylvania<br>: October 15, 2025<br>: 9:30 a.m. |
| . . . . . . . . . . . . . . . . . . | : |

BEFORE THE HONORABLE DEREK J. BAKER
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Trustee:
Michael D. Vagnoni, Esq.
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
215-665-3066

Steven M. Coren, Esq.
Andrew Belli
Kaufman Coren & Ress, P.C.
Two Commerce Square
Suite 3900
2001 Market Street
Philadelphia, PA 19103-2713
215-735-8700

For SeeCubic, Inc.:
Marley Brumme, Esq.
Skadden Arps Slate Meagher & Flom, LLP
500 Boylston Street, 23rd Floor
Boston, MA 021116
617-573-4800

For Rembrandt:
Andrew Peter Demarco
Devlin Law Firm, LLC
1526 Gilpin Avenue
Wilmington, DE 19806
302-449-9010

APPEARANCES: (Continued)

For SSG Advisors: Jeffrey Kurtzman
Kurtzman Steady LLC
555 E City Ave, Suite 480
Bala Cynwyd, PA 19004
215-715-2814

For Visual Semiconductor: Matthew B. Weisberg
Weisberg Law
7 South Morton Avenue
Morton, PA 19070
610-690-0801

Daniel Joseph Rink
1017 East 28th Street
Houston, TX 77009
610-220-0206

Proceedings recorded by electronic sound recording; transcript produced by TheRecordXchange.

OCTOBER 15, 2025 10:01 A.M.

THE COURT: All rise. Good morning. Please be seated.

UNIDENTIFIED SPEAKER: Good morning, Your Honor.

THE COURT: This is the Wednesday, October 15th, 2025 calendar for Judge Derek Baker, 10:00 a.m.. We have one matter. Debtor StreamTV Networks, motion to approve compromise with Rembrandt, enforcing defense and indemnity obligations, et cetera. We have many people on the Zoom.

All right. I'm going to first take appearances in the courtroom and then I'll go down the Zoom, based on people I see on my screen.

MR. VAGNONI: Morning, Your Honor. Michael Vagnoni on behalf of the Chapter 11 Trustee, William Homony. We have Mr. Homony in the courtroom with us today as well.

THE COURT: Good morning. All right.

MR. WEISBERG: Matthew Weisberg on behalf of VSI. Good morning, Your Honor.

THE COURT: Good morning. All right.

Mr. Coren?

MR. COREN: Yes, good morning, Your Honor. Steven Coren on behalf of the Trustee.

THE COURT: Okay. Mr. Pecora?

MR. PECORA: Yes. I'm an officer with Rembrandt 3D, just listening in.

THE COURT: Okay. All right. Mr. Rink?

MR. RINK: Good morning, Your Honor. Daniel Rink for VSI, Visual Semiconductor, Inc.

THE COURT: Good morning. All right.

Mr. DeMarco?

MR. DEMARCO: Good morning, Your Honor. Andrew DeMarco, Devlin Law Firm, for Rembrandt. With me on the line is Mr. Wallace with Rembrandt and also Steve Blumenthal, Rembrandt's CEO and Christopher Michaels, another attorney for Rembrandt.

THE COURT: Okay. Mr. Simmons?

MR. SIMMONS: Good morning, Your Honor. John Simmons (phonetic), on behalf of the Trustee.

THE COURT: All right. Ms. Brumme?

MS. BRUMME: Good morning, Your Honor. Marley Brumme from Skadden, on behalf of SeeCubic.

THE COURT: Mr. Belli?

MR. BELLI: Good morning, Your Honor. Andrew Belli on behalf of the Trustee.

THE COURT: Mr. Kurtzman?

MR. KURTZMAN: Good morning, Your Honor. Jeffrey Kurtzman for SSG Advisors.

THE COURT: All right. I heard from Mr. Michaels, I heard from Mr. Wallace. Mr. Robertson (phonetic) is with VSI, correct?

MR. ROBERTSON: Yes, Your Honor. Correct.

THE COURT: And Stephen?

MR. DEMARCO: Mr. Blumenthal is the CEO for Rembrandt, Your Honor.

THE COURT: Okay. All right. And I see Mr. Rajan on as well. Okay.

I'll first -- so this is the time that we scheduled for oral argument on the motions -- on the motion that was filed by the Trustee, concerning the 9019 motion that was filed at docket number 1040. I scheduled this for 30 minutes per side of allocated argument. So on what I understand to be the one side is, the parties in support of the motion, which would obviously be the Trustee and Rembrandt.

Have you all decided how you are going to allocate your 30 minutes?

MR. COREN: Steve Coren, Your Honor, on behalf of the Trustee. We haven't discussed it, but I can advise the Court that I do not -- I won't need more than ten minutes. We have full briefing. Your Honor's heard, in my judgment, enough. I want to make a few points, address a few issues, but I'm not going to take very long.

THE COURT: Okay. All right.

And so I'll come to then VSI and SeeCubic. Have you all decided how you're going to allocate your 30 minutes?

MS. BRUMME: Good morning, Your Honor. No, we haven't

discussed it but I would echo what Mr. Coren said. I, too -- I think we have more than enough briefing and won't be more than 10 minutes.

MR. RINK: Agreed, Your Honor.

THE COURT: Okay. All right.

Well, then, I will turn it over then to Mr. Coren, and I'll allow you to proceed.

MR. COREN: Thank you, Your Honor. I'm sorry to have to say I believe there is an overarching threshold issue that is the elephant in the room and needs to be addressed for the integrity of the Court, these proceedings. I am firmly of the view that VSI has been, and continues to try to perpetrate a fraud on this Court, and I think it's time to put a stop to it to get to the bottom of it.

Your Honor will recall in the middle of the hearing on VSI's administrative claim, at the 11th hour, they withdrew the claim. And after all the preparation, all the hearing time, they just walked away from the claim because the claim was falling apart and it was phony. I have now have a situation where we point out we have a proceeding before Your Honor, we have the argument and testimony from Mr. Rajan, who tells us that he's a brief writer. He's proud that he wrote the brief for the Delaware Supreme Court. He's apparently practicing law, and I think he's doing that here.

We point out in our reply papers that what Your

Honor was told in a courtroom was false in terms of this -- all this on point authority to support the notion that some secret side agreement between a party and someone else can somehow take away the authority of the party to settle litigation before a court. And the argument was false. The cases submitted in support of the proposition don't support the proposition, but it's even worse than that.

What we have -- we have hallucinations and phony cases submitted to Your Honor again. We pointed out cases which don't exist. We pointed out cases which don't stand anywhere near the proposition for which they're cited. And Your Honor may recall admonishing Mr. Rajan's brother, who happens to be an attorney, in connection with one of his filings.

I think Your Honor needs to get to the bottom of it. We point all of this out and on the eve of the hearing, we get an emergency effort by counsel who signed the briefing, tells this court and the parties, that he has effective immediately, I guess that was last night, retired from the practice of law, and has filed an emergency request for this Court to excuse him as counsel because he has retired from the practice of law on the eve of this hearing, after we have pointed out the phony brief that was filed. And I have a serious question as to whether he wrote that brief.

And I think from an ethical perspective and for the

integrity of this Court and for all the parties who come here and vote a lot of resources and appreciate their ethical responsibilities, I don't think you get to just retire at midnight and run away, especially when a brief that you have just filed, in many respects, is phony.

And I would point out that again, as I mentioned, this is the second effort, at least the second effort of VSI to perpetrate a fraud on this Court. And if you think about where we are, we have a settlement which has been reached, we have objections by VSI who has threatened the Trustee, threatening me, threatened others, has filed an amended complaint with respect to which the other day we moved to dismiss as has SeeCubic. This Court and all the parties are the victim of a continuing fraud by VSI, and it's time to put a stop to it. VSI is not a creditor in this case; they dropped it. All they want to do is interfere, cause trouble, and hope that someday that somebody is going to want to pay them money, and it's never ever going to happen. And I feel, as an officer of this court, duty bound to take a position on the subject and to request that the Court do a fulsome investigation as to what's going on here.

And I don't believe Mr. Rink gets to silently retire on the eve of this proceeding and then suggest to this Court that he can't really tell us why, because there are confidentiality issues in play. But there are no

confidentiality issues in play. When one is perhaps perpetrating a fraud on the Court or the parties, there's no attorney-client privilege. And everyone has a right to know what's been going on here and why these proceedings have been exacerbated, expanded, the cost increased dramatically, and we have limited resources in this estate which we would like to distribute to the legitimate creditors, not the phony creditors.

Switching to the merits, Your Honor, nobody has argued because it would be silly to do so, that the Trustee has not satisfied the Martin factors for a settlement. The Trustee has settled a case for pennies on the dollar of the continuing cost to litigate the various proceedings involving Rembrandt. The Trustee has settled a $1.2 billion proof of claim by awarding a $1 million general unsecured claim, and the notion that somehow the Martin factors have not been satisfied would be ludicrous.

They have, we put on the evidence, the Court heard from the Trustee, the Court heard from the other parties, including Mr. Simmons, as the cost of continuing to defend against the type of litigation that we are settling for pennies and the cost of defense. So that seems to be pretty clear.

The so-called defense, or objection of VSI, really doesn't even focus on any of the Martin factors or what's in the benefit of the estate. It raises the notion that somehow

some secret agreement, which everybody concedes has been withheld from the Court, withheld from the Trustee or other parties and only disclosed in an effort to torpedo a settlement entered into by the authorized representatives of Rembrandt supported by their counsel. And as I think Your Honor pointed out at the very start of these proceedings, this type of secret agreement has no impact on the ability of a party to settle a case.

THE COURT: Well, let me ask you a question on that piece of it. I understand the argument, and I understand the suggestion that the Trustee didn't have knowledge of the Rembrandt/VSI agreement at the time he originally entered into the settlement agreement with Rembrandt. But clearly, he had knowledge of the VSI/Rembrandt agreement at the time of the hearing. So can you explain why the Trustee believes it's nonetheless reasonable to proceed with the settlement with Rembrandt in light of his now knowledge of the alleged agreement between Rembrandt and VSI?

MR. COREN: Because I think the agreement, number one, is challenged by Rembrandt, is phony and fraudulently put forth. But number two, it's irrelevant. We reached a settlement, and we reached a settlement with somebody who has, at a minimum, I believe he has actual authority, and this doesn't change that, at a minimum, had apparent authority when we reached the settlement. And that doesn't go away just

because somebody steps up -- you have to look at it at the time we reached a settlement, yes. We're coming in to have a court bless a settlement, but we're not asking the Court to bless a settlement that was entered into after we were told of this alleged impediment having to do with authority. The timing is --

THE COURT: I think the --

MR. COREN: -- critical.

THE COURT: -- but I think the case law on this is actually that it's a continuing obligation for the estate to justify the reasonableness, in light of facts that continue to be known up to and through the hearing date. So obviously, there's some additional facts, right, that at least have been alleged, and I guess I'm looking for what the reasonableness of that determination is in light of those additional facts. And I guess a corollary to that is maybe, right, what is the Court's role in determining whether or not the estate reaching a settlement would affect another agreement with nonparties.

Like, how am I supposed to cabin all of these issues as they're being sort of presented to me?

MR. COREN: Because they have nothing to do with authority. What they mean, and as Your Honor pointed out, if in fact, what Rembrandt did is a violation of some secret agreement with a third party, that violation can be pursued by way of a claim for damages in another forum, not this forum.

It is not the forum for Your Honor to decide those issues. The question here is quite simply, did the Rembrandt have authority at the time we entered into the agreement. Now we have, as Your Honor says, an additional piece of information. It changes nothing in terms of our view of the reasonableness of this settlement, because what Your Honor is suggesting that somehow there can be a secret -- as a matter of law, I would submit to you there cannot be an enforceable secret agreement to take away the authority of a party who's been litigating with a court for years, to settle that matter.

THE COURT: Well, I understand --

MR. COREN: It can't be.

THE COURT: I understand the argument that it was secret at the time; I understand that. But clearly, right, upon the filing of the objection, the Trustee had knowledge of at least the allegation of the agreement. And I guess my question is, help me understand why the Trustee, deciding to nonetheless proceed with the settlement, was reasonable in light of that allegation.

MR. COREN: Because number one, we think the allegation, which has been challenged, is phony. We've watched the history -- we've seen the behavior. And as a matter of fact, it is reasonable for a party to continue to pursue a settlement with the party to the litigation. VSI didn't step in as the real party in interest. What they're trying to do is

to say that a court -- no court has authority over a case and a resolution where there's some secret agreement that then gets disclosed after the people with authority have settled the case. If in fact they had this superpower, the secret superpower, they should have filed something with the court to put this court and the district court on notice that the party, with whom we are negotiating, and the party who told the district court to put this case on hold, because it's been settled, didn't have the power to do it because, in fact, they're not the real party in interest.

The notion that somehow courts or parties have to get to the bottom of some secret agreement with a non-party, would turn litigation on its head. What Your Honor is doing is when you take a look at whether or not -- what we knew, for example versus when we settled versus what we knew at the time of the hearing, the reality is from -- what Your honor's focusing on is facts come to light, which perhaps affect the reasonableness of the settlement.

I believe that goes to the facts of what you're getting in return for what you're giving, not the authority of the person who entered into the settlement. You have to separate that. That is tested at the time you reach an agreement. You don't get to -- if there was authority at the time, and there was clearly at a minimum apparent authority at the time, that's ballgame. Nothing has changed on the merits

of the settlement.

We didn't learn something which tells us that all of a sudden it's not reasonable to settle this claim, $1.2 billion claim, for a million dollars, or it's no longer reasonable in the exercise of the Trustee's business judgment to be willing to pay a 100,000 in connection with the judgment to be entered against SeeCubic to participate. None of the economics have changed. And that's what we're talking about, are the economics still reasonable.

And nothing has changed from a legal perspective. Did we negotiate with a party, which had a parent authority, which entered into an agreement, which was blessed by the senior officers of the company. There's no bylaw or impediment that has brought to our attention to invalidate their authority. None of that has changed, and that's what's relevant. It's not relevant that now somebody steps up and says, I'm a secret player in this. That's a private agreement, which may need to enforce in a different forum if they believe they have a claim against it.

THE COURT: So make sure -- let me see if I can -- I can paraphrase what I think you said, to make sure I understood it correctly. When the Trustee entered into the settlement agreement with Rembrandt, the Trustee did so on the understanding that that party had -- that Rembrandt had the authority to enter into the settlement. It relied on the

representations that were in the settlement agreement that Rembrandt had authority to enter into the settlement. And therefore, the fact that someone challenges that after the fact doesn't change why it was reasonable for the Trustee to enter into it and to continue in seeking to enforce that settlement agreement. Is that a fair --

MR. COREN: Very fair, but I would add one additional important fact. The fact that the party, which now wants to challenge authority, stayed mute. The party knew that there was litigation. The party knew that they believes they have some agreement which affects how that litigation is going to move forward. They had a duty to disclose it. They had a duty to disclose it to the district court, in which the litigation is proceeding. They had a duty to -- especially when VSI is a party to related proceedings that have been consolidated, they know everything that's going on. And if they believe that they are a party in interest, or even the controlling party in interest, in a matter before the district court or in a corollary, a matter before this court, they better step up and disclose it to that court. Otherwise, they're perpetrating in a fraud. They have a duty to step up. And if they don't do it, they can't be heard to torpedo it after the fact.

THE COURT: Okay. All right. Is there anything further you would want to make in terms of the closing arguments, and then I'll hear from Rembrandt.

MR. COREN: Yeah, sure. I'd like to take it just one step further. If we play out perhaps Your Honor's concern in every case in which there is some question about authority, Your Honor's going to have to have a separate case. Are we going to have a lawsuit? Now, we're going to take discovery. Now, we're going to do whatever. Now, Your Honor is going to try the issue of authority before you can consider or bless a settlement with a trustee or another party. Just think of that nightmare scenario. It makes no sense.

And I think that there is no question that Your Honor should be satisfied by the admission of everybody that the Trustee had no notion of this potential issue, and it was intentionally withheld from the Trustee. You heard the evidence. It was intentionally withheld. Nobody wanted him to know. VSI didn't want to tell him that. And Rembrandt doesn't believe it's subject to that impediment. Rembrandt thinks it was a fraud foisted on it now. So now, we're going to litigate that in some collateral proceeding? Where? Before Your Honor in a district court?

I think that as a matter of law, parties must have the ability to negotiate with, and resolve cases with, the parties to the case, period. And if they knew that that party was not a real party in interest, there are procedures to deal with that to basically bring it to the attention of the Court because the Court's being misled. The Court is taking

representations from Rembrandt; things are happening. And now, there's some secret puppet master behind the scenes that doesn't reveal itself to the Court. I think that would be sanctionable, and at a minimum, cut off any power or right that secret third party would have to interfere with the proceedings.

If their rights were violated, they can bring a lawsuit against Rembrandt, and nothing that we've done changes that.

THE COURT: All right. Thank you, Mr. Coren.

MR. COREN: Thank you, Your Honor.

Mr. DeMarco, I'll hear from you. I want to ask the question, I think, where Mr. Coren left off, and I'll let you make whatever argument you want to make. But I did want to make sure I understood what I thought you had put in your pleadings, which was that as I read docket 114 at page 9 and docket 1120 -- I'm sorry -- docket 1104 at page 9 and docket 1123 at page 5, that Rembrandt is agreeing that the settlement that it has reached with the Trustee does not, in any way, affect the claims that exist between VSI and Rembrandt. So if you can comment on that as part of your argument.

MR. DEMARCO: Well, yes, Your Honor. So I'll focus then quickly on that point before moving on to a very brief statement I have about the rest of the case. So at the end of the day, VSI's claims of assignment of rights -- any rights

that VSI has, it only has in the event that Rembrandt recovers the technology in question. This settlement is to the benefit of everybody, including to VSI in that regard. So in so far as VSI does have any sort of interest, it's furthered by this settlement in fact. But nothing in the settlement agreement affects the sale of Ultra D Technology to SeeCubic or waive or settle any claim against SeeCubic whatsoever. So at the end of the day, it doesn't move into question validity of the settlement about Ultra D Technology. And to that end, there's really no harm to VSI in that regard.

So I mean putting that to the side though, we do generally echo Mr. Coren's statements and concerns. And as Mr. Coren mentioned, VSI's arguments about this, ineffective and unethically obtained amendment to an agreement with Rembrandt, as we stated at the hearing, Your Honor, as I stated at the hearing, the matter is irrelevant, was irrelevant, and continues to be -- in part because, as I mentioned earlier, it doesn't affect any of these claims with VSI regarding the technology, but also because of the manner in which it was obtained.

But indeed, even if the amendment was somehow operable, as Your Honor heard at the hearing, VSI breached to be a non-payment of that agreement long ago. So that was testified to at the hearing. And so in general, when it --

THE COURT: Well, Mr. DeMarco, I want to make sure I

understand what you're arguing. Are you arguing that whether or not there is an agreement between VSI and Rembrandt, pursuant to which VSI had control over Rembrandt settlement authority is irrelevant, or are you arguing that that agreement does not -- is not enforceable because VSI previously breached? Because I'm not sure if I have enough to address the secondary point.

MR. DEMARCO: Yes. So it is an argument that we have made in the alternative based on statements that were elicited during the hearing. Primarily, we do not think -- we don't think that it is relevant to the proceeding because it doesn't affect any of VSI rights under that agreement. We also don't think it's relevant because of the manner in which it was obtained. I don't think it's enforceable, et cetera, et cetera.

And the argument that goes as an argument in the alternative to the unenforceability argument is, that even if it were enforceable, they would've breached long ago. But that was a subsidiary argument that was made at the hearing. But I think the main argument that, as Your Honor noted, is that it doesn't affect any of the rights of VSI, because at the end of the day, VSI claims that it has the right technology, but only in the event that Rembrandt does recover it. That's what --

THE COURT: No, but my question's a little bit different; my question's a little bit different. I understood

what you said in your briefing to be whatever claims VSI has against Rembrandt, even if this agreement is, in fact, enforceable to enforce the agreement of VSI to enforce it against Rembrandt. That's unaffected by my approval of the settlement between the Trustee and Rembrandt. I mean, am I correct in that's your position?

MR. DEMARCO: Yes, Your Honor.

THE COURT: Okay.

MR. DEMARCO: That --

THE COURT: Okay.

MR. DEMARCO: Exactly.

THE COURT: Okay.

MR. DEMARCO: So my apologies, Your Honor. I think I misunderstood the exact what you're looking for, but that's correct. So at the end of the day, Your Honor, the main point I'm trying to make is that we think this matter was very fully briefed, and we're happy to rest all the papers there and respectfully request that the Court approve this settlement, because at the end of the day, it benefits all involved, including VSI.

THE COURT: Okay, all right. Thank you, Mr. DeMarco.

All right. In terms of the objectors, who should I hear from first? Should I hear from SeeCubic first, or should I hear from VSI? Ms. Brumme, she said you were going to be ten minutes. Maybe I should hear from you first.

MR. WEISBERG: I would agree with that, Your Honor.

MS. BRUMME: Okay, great. Thank you. Thank you, Your Honor. So we take no position on this issue between VSI and Rembrandt, and the Trustee on authority or what have you. SeeCubic's objection, and I think it's laid out in our papers, and I'll just summarize it briefly, is only to the extent that the settlement purports to require SeeCubic to foot the bill for most of the, for lack of a better term, cash payment to Rembrandt as part of the settlement.

As we've set out, there are six actions being settled and all of the cash payment is being allocated to the one that is arguably covered by SeeCubic's indemnity obligations. notwithstanding the Trustee's claim that the settlement is essentially a cost of defense settlement, and he's admitted in testimony in the court that there will be cost of defense to some of these other actions.

THE COURT: Well actually, I thought the testimony that was given actually as outlined in -- specifically in the declaration -- was, I don't really have any costs in connection with the three appeals, right, they're all briefed. I'm simply waiting for the Court to rule on those appeals. So that sort of deals with that. The claim against -- the claim that's pending in Delaware District Court, that stayed, right? I don't have any costs in connection with that. The biggest claim I have right now is this litigation that's going on in

district court that I am settling, that I have a whole bunch of costs associated with, including, but not limited to, the indemnification of SSG, who is a party defendant in that suit.

So all of those are -- that's why all the costs are related to that particular piece of litigation. Why isn't that reasonable and why isn't that justified under the circumstances?

MS. BRUMME: Well, your Honor, I agree that's what the declaration says, but when we were in front of you in September, the Trustee acknowledged that those appeals, Rembrandt is, for lack of a better term, litigious and would almost certainly pursue a further appeal which would incur costs. And beyond that, Your Honor, I think that the bigger issue is the lack of the opportunity for SeeCubic to weigh in on this settlement. There was a single letter, which did not, if you actually read it, cede control the defense to SeeCubic.

When we found out about the settlement, we requested to be involved in discussion; that was ignored. And under the circumstances as a matter of law, I don't believe that SeeCubic is required to indemnify for a settlement that it had no participation and no ability to participate in reaching. And we've cited some authorities in our papers for that. And that's really our only issue with the settlement, Your Honor. We again, take no position on the VSI/Rembrandt dispute or any of the other items.

THE COURT: Okay. All right. Anything else?

MS. BRUMME: No, that's it for us. I will rest on the papers otherwise.

THE COURT: All right. You win because you're the fastest. So all right.

I'll hear from VSI.

MR. WEISBERG: Your Honor, may I please Court. My name is Matthew Weisberg. I'm in an uncomfortable position as the Court may see, in which the brief I signed, the response to the Motion is what I'm going to discuss today. And Mr. Rink, without criticism to him, has noticed his retirement and moved to withdraw, which I was advised of a couple days ago and saw last night.

But if I could get to the point of the brief I signed, the trial and all the evidence lacks valuation analysis, negotiation records or creditor committee input, which would be a fairness factor. And moving on, SeeCubic denies the obligation of providing indemnity, which the Trustee cites.

THE COURT: So Mr. Weisberg, let's, I guess, start with a -- let's start with sort of two threshold questions that I have. The first one is, is VSI a creditor, right? Does VSI have standing here, under 1109? And I guess the crux of that question is what pecuniary interest does VSI have in this case?

MR. WEISBERG: The pecuniary interest is any funds

that have been extended to Rembrandt in terms of the technology rights. Rembrandt admits that VSI has an expectation right of this StreamTV 3D technology.

THE COURT: So to make sure I understand it, I just want to make sure I'm hearing it correctly. The pecuniary interest that VSI is relying upon is, the fact that VSI has made advances to Rembrandt, and therefore, that gives VSI standing to be heard in connection with the settlement agreement that has been entered into by Rembrandt and the Trustee?

MR. WEISBERG: Well, there's more than that, Your Honor, but that is part of it. And there's also, as the second part of what I said, is technology interests in terms of the expectation interest of the 3D technology, which Rembrandt agrees that's, and in fact, that's what the agreement says. But moving further, the Rule 9019 is a procedural rule with the broad discretion of the Court, understandable, whereas contract rights are substantive. And to initiate these contract rights and all the appeals and everything by a 9019 settlement would be without foundation.

And give me a second, Your Honor. Like I said, it would be without foundation and evidence. The Martin factors, yes, were brought up in briefing, but effectively there was no evidence of the Martin factors at the hearing, as far as I recall.

THE COURT: What exactly does VSI say is unreasonable about the Trustee entering into the settlement with Rembrandt?

MR. WEISBERG: It would essentially, as the Trustee's proposed order from memory says, it seeks to strike the contract, and the 9019 may do that.

THE COURT: Sorry. Say that again; I missed that.

MR. WEISBERG: The Trustee's proposed order, my memory is, cease to strike the contract, the hybrid agreement, and that's my memory. We've gone a long way since then, but that's my memory. It was the second paragraph of the proposed order. But to the extent it doesn't even say that, the 9019 may affect that.

THE COURT: Okay. So let me just make sure I understand that. So you're saying that the second paragraph of the proposed order --

MR. WEISBERG: Is my recollection, Your Honor.

THE COURT: -- it simply approves the Rembrandt settlement agreement?

MR. WEISBERG: But the 9019 would initiate the technology rights.

THE COURT: Well, but why do I need to determine the impact of this agreement on the Rembrandt/VSI agreement, when everybody is telling me that -- and I think Rembrandt has conceded -- that whatever claims VSI has against them under that agreement is unaffected by the agreement that was reached

between the Trustee and Rembrandt.

MR. WEISBERG: I don't -- I respectfully disagree.

THE COURT: You disagree with them conceding that?

MR. WEISBERG: No, no, no. I'm sorry. I thought you said, disagreeing with that. Yes, I agree with the concession.

THE COURT: Okay. And you think even though they have conceded it that it still affects it?

MR. WEISBERG: I think -- can you repeat the question, Your Honor? I apologize.

THE COURT: Sure. Everyone has been telling me, right, that the settlement agreement between the Trustee and Rembrandt on the one hand, has no effect on the contractual relationship between Rembrandt and VSI on the other hand, right? I don't need to worry about that agreement at all because nothing in connection with the Trustee Rembrandt agreement affects the rights of VSI as against Rembrandt, pursuant to that separate agreement. And I think Rembrandt has conceded that.

And so I'm asking you then why -- it seems to me that the entirety of the VSI position is, by approving the Trustee agreement with Rembrandt that that's going to affect my contract with Rembrandt, right? VSI is saying that. But everybody is saying that's not correct. So why should I think -- why should I wade into that issue? What role do I have to wade into that issue on non-party -- between nonparties?

MR. WEISBERG: I believe that 9019 settlement agreement additionally -- even though there's concessions, that concession is not present clearly in the briefing. But not withstanding that, I believe the settlement may initiate those rights; it may initiate the contract.

THE COURT: How?

MR. WEISBERG: How could the -- if, for example, the expectation, expectancy rates of the 3D technology realizes and the settlement now absorbs the hybrid agreement, the cooperation agreement, then, the Trustee would essentially have control over those expectation rights.

THE COURT: That's the part I don't quite understand, Mr. Weisberg, right. So look, I'm not trying to create litigation for people, right? I mean, I'm not trying to create litigation for people, although I'm sure my next statement is going to. But if I approve the settlement between Rembrandt and the Trustee today, what stops VSI from suing Rembrandt based on their agreement with Rembrandt? They can sue them.

MR. WEISBERG: Well, because -- that is true as for damages, although they're effectively defunct, as evident by the proposed 9019 settlement agreement.

THE COURT: Maybe not. They seem like they're going to get some assets out of this estate from it, so it may not be defunct.

MR. WEISBERG: I can't speculate as to that; I don't

know. But if they're not defunct, I don't know why the Trustee's forgiving so much debt. But notwithstanding, it's our belief that the -= and the Trustee has threatened this, that the Trustee would control the technology rights or the expectation rights.

THE COURT: Okay.

MR. WEISBERG: I don't know if I'm making myself clear, Your Honor.

THE COURT: No, I mean, I understand; I understand the argument.

MR. WEISBERG: Okay, fair enough.

THE COURT: I guess, do you want to respond -- I recognize you didn't sign the brief, but do you want to respond to the Trustee's review of the case citations that they reflected in their brief at docket 116 or 1116?

MR. WEISBERG: As Your Honor correctly notes, I did not sign the brief. I'm not disparaging the brief. I just -- I didn't sign it. I relied on Mr. Rink, and I'm relying on -- on the one I did sign, which is my response. The one aspect of the brief I would point to is the underlying argument of champerty, which specifically says, if there's a legal interest in the outcome of the case, it's not champerty. And as we went through in our presentation today, there is this expectation interest, and that's why the agreement was put forth.

THE COURT: So the position that VSI is articulating, as I understand it, just to make sure I'm stating it correctly, is that pursuant to the agreement between VSI and Rembrandt, that VSI has not -- the reason they have the right to control the litigation between Rembrandt and the estate is because VSI has an interest in the underlying assets that are part of that interest -- or that agreement, and as a result of that, the agreement is, by definition, not champertous.

MR. WEISBERG: Correct, Your Honor, or else there would not be funding. The funding would be -- with cooperation. If I could -- I'm just going to rely on my response motion that was originally filed. And Mr. Rink, I think he was on the -- I don't see him anymore, but Mr. Rink could speak to the remainder, since it was not directed to me, frankly.

THE COURT: I think Mr. Rink is on. I mean, no, there wasn't an opportunity to file a further reply. So I'm giving you that opportunity now. If there was something that you wanted to respond to -- the Trustee reviewed the various case citations that were included in the VSI brief, right, in their filing at docket 1116. If there's something that you want to tell me about that, that I should know, now's the time, I guess to tell me.

MR. WEISBERG: I -- well, there's a couple points I'd like to make, which is in terms of this secret agreement, it

was propounded by myself in the response, so we didn't actually know that there was a settlement. But I'll let Mr. Rink speak. I kind of got blindsided by his retirement, and I don't know what's going on frankly --

THE COURT: Okay.

MR. WEISBERG: -- in terms of that retirement and in terms of the emergency nature of it.

THE COURT: Okay. Mr. Rink, is there anything you want me to hear? I mean, I guess it's a little bit of a -- I have not read anything. My staff brought to my attention that there was a filing last night, and that filing suggests that you retired effective yesterday. So I don't want you engage in the unauthorized practice of law if you have retired. So I'll just leave it at that. All right.

Is there anything further that VSI wants me to take into consideration as part of my disposition of the motion?

MR. RAJAN: Your Honor, this is Matthu Rajan. Can I --

THE COURT: Mr. Rajan, you have counsel. Mr. Rajan, you have counsel, so I cannot hear from you.

MR. RAJAN: Okay, okay.

THE COURT: All right. All right. I thank the parties for their well-prepared materials, their strong advocacy. I will take the matter under advisement. We'll likely issue an order in due course. I recognize that there is

a little bit of time urgency, so we are going to work on that as promptly as possible.

Mr. Rink, I noted that my staff had brought your motion to my attention. I have not read it, other than to see it was filed. I take it from Mr. Coren's comment that there is going to be some opposition or response to that. I guess I'll ask the question this way. In light of the fact that VSI has retained counsel, what do I need to do on reviewing the Motion to Withdraw? Because I think my understanding of the rules is so long as there's a replacement counsel, effectively substitution is relatively simple.

If you think that there's some other recourse that should be taken, I think that's separate motion practice. I don't know that that's through the Motion to Withdraw, but I'll hear from the parties on that, if there's a reason why I'm misapprehending the process.

MR. CORAN: If I may, Your Honor, on behalf of the Trustee. I quite frankly can't tell who the players are. Mr. Weisberg filed a motion to withdraw his counsel. It then got -- I don't know if he's withdrawing his Motion to Withdraw? It's still pending, as far as I know and hasn't been withdrawn. And is he, in fact, counsel in this adversary proceeding? I thought he was out because Mr. Rink entered his appearance in this adversary proceeding. I don't know who the players are, and the pieces keep moving around. Can we try to figure that

out?

THE COURT: Well, I think I can at least answer the first question. On the main case docket 2310763, Mr. Weisberg's Motion to Withdraw as Counsel was withdrawn.

Mr. Weisberg, do I misstate that?

MR. WEISBERG: No, you don't, Your Honor.

THE COURT: So Mr. Weisberg's motion to withdraw in the main case was withdrawn. I can't speak to the various adversary proceedings, because I don't know that that's live yet. And I think there was a motion to withdraw in one of them that was adjourned to a later date. And I don't know if Mr. Rank's motion to withdraw was filed in all the adversaries. So that part is also a bit unclear to me.

MR. CORAN: Okay

MR. RINK: Your Honor, this is Mr. Rink. I did file motions in the two adversary cases as well as the main case.

THE COURT: Okay. Okay. Okay, I see that now. All right. So there is a motion to withdraw. So I will set that motion then -- okay, I'm now looking at the one adversary, which is adversary 25197. So I see that there was a Motion to Withdraw that was filed by Mr. Weisberg. That is set for hearing on November 4th at 1:00.

MR. WEISBERG: Yes, sir.

THE COURT: I will set the document -- I guess it's docket number 14 and 15, which are the documents by Mr. Rink.

I will set those for hearing at the same time, November 4 at 1 o'clock. So if there's responses that need to be filed in connection with that, they should be filed seven days before the hearing.

I see -- as I'm looking at the docket on 197, that there are two motions to dismiss. I'll wait for responses on those and then it is my practice to not have argument on those unless there's an issue that we see as necessary after briefing. So I would not anticipate to schedule those for hearing unless after review of the briefing, I think there are issues that need to be argued,

MR. WEISBERG: Your Honor, Matthew Weisberg. If it pleases the Court, My motion to withdraw is in the adversary or adversaries. And the motions to dismiss are in the adversary or adversaries. Am I expected to respond to the Motions to Dismiss pending my motion to withdraw? Or better yet, can I request that those responses be enlarged until after the hearing?

THE COURT: I would ask you to confer with the parties on that first, and if there is not an agreement on that, then I'll take it up on a separate motion at that time.

MR. WEISBERG: Fair enough, Your Honor.

THE COURT: Okay.

MR. MICHAELS: Your Honor, this is Chris Michaels. We have sent as an -- I am speaking as an officer of Rembrandt

3D Holding.

THE COURT: Then you have counsel, Mr. Michaels. If you're speaking as an officer, you have counsel.

MR. MICHAELS: With respect -- Your Honor, I'm speaking on the adversary proceedings that we were just discussed, to make the very point that we do not have counsel in those adversary proceedings. And I have sent a letter to Mr. Rink, pointing out that he is not served for the Company and there is currently no counsel appointed and we need to be served. And both Mr. DeMarco and myself are potential witnesses in that case.

And so we are going to need to find new counsel and will do so. But the Company has not been served. Mr. Blumenthal has not been served, and we would like Your Honor, the Court, to at least know that. And now that Mr. Rink is withdrawing, we don't know who the counsel is for VSI to put them on notice. One, we have not been served; and two, there is no counsel yet for representing Rembrandt. And so I'm putting it out on the record. I don't know what else to do, given that we have not, like I said, the issues have not been joined, and the parties haven't been served yet.

THE COURT: I'm not adjudicating service issues. And look, folks, I said this once before, right? I understand that there is a lot of animosity in this litigation. I get it. I did this, okay, I understand. But I cannot be sitting here

calling balls and strikes on this nonsense, this ticky-tacky stuff. Talk to each other; figure this stuff out. If you can't figure this stuff out, then raise it in a meaningful way other than just, well, I don't know who's doing this to whom and how, and these kinds of things. It's just not an efficient use of your time, and it's not an efficient use of my time to get the merits issues resolved. All right.

Are there any other matters that need to be presented in connection with the StreamTV Networks matter in the main case, case number 2310763?

MR. CORAN: No, Your Honor.

THE COURT: I hear no response at this time. As I noted, the Court will take the matter under advisement. Court will stand in recess until tomorrow at 9:30 a.m. or the call of the clerk, whichever is earlier.

(Proceedings adjourned at 10:57 a.m.)

C E R T I F I C A T E

I hereby certify that the foregoing is a true and correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

John Buckley
John Buckley, CET-623
Digital Court Proofreader