**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **In re:** | **:** | **Chapter 11** |
|  | **:** |  |
|  | **:** | **Bankruptcy No. 23-10763 (DJB)** |
| **Stream TV Networks, Inc.,** *et al*. | **:** | **(Jointly Administered)[1]** |
|  | **:** |  |
| **Debtors.** | **:** | **Hearing Date: March 31, 2026** |
|  | **:** | **Hearing Time: 1:00 p.m.** |
|  | **:** | **Hearing Place: Courtroom 2** |
|  | **:** |  |

**MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE
FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT WITH
REMBRANDT 3D HOLDING, LTD. PURSUANT TO FED. R. BANKR. P. 9019(a) AND
11 U.S.C. § 105(a) AND GRANTING RELATED RELIEF**

William A. Homony (the "Trustee"), in his capacity as Chapter 11 trustee of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative" or when referred to with Stream, the "Debtors"), by and through his counsel, Coren & Ress, P.C., files this Motion for Entry of an Order Approving a Settlement Agreement (the "Rembrandt Settlement Agreement" or the "Agreement") with Rembrandt 3D Holding Ltd. ("Rembrandt" or, in conjunction with the Trustee, may be generally referred to as "Party" or collectively, as the "Parties") pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a)  and Granting Related Relief (the "Motion"), and in support thereof, respectfully avers as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (O).

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764. (D.I. #95).

4913-9201-7045 v1

3.     The statutory basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

## II.     BACKGROUND

4.     The factual and procedural background of these cases are well known to this Court, and to the extent not stated herein, the Trustee incorporates the Court's recitations in the Trustee Opinion (hereinafter defined), and the Opinion dated January 8, 2025 (the "Sale Opinion"), issued in connection with the Sale Motion and Sale Order as defined below. (D.I. #916).

### A.     Procedural History and the Trustee's Appointment

5.     On March 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of the United States Bankruptcy Code.

6.     Stream was involved in two (2) prior bankruptcy cases, the first being a Chapter 11 case initiated by Stream on February 24, 2021, and docketed *In re: Stream TV Networks, Inc.*, Bankr. D. Del. No. 21-10433-KBO (the "Delaware Voluntary Bankruptcy Case") and the second being an involuntary Chapter 7 case initiated on May 23, 2021, by, *inter alia*, Rembrandt, docketed *In re Stream TV Networks, Inc.*, Bankr. D. Del. 21-10848 (the "Delaware Involuntary Bankruptcy Case").

7.     On January 5, 2024, this Court entered a Memorandum and Order which, among other things, appointed a Chapter 11 trustee (the "Trustee Order" and "Trustee Opinion") (D.I. #549 and #548, respectively).

8.     The Trustee Opinion held, in relevant part, that, due to the gross mismanagement and lack of transparency under the Debtors' founder and CEO, Mathu Rajan's ("Rajan") leadership, (i)

4913-9201-7045 v1

a Chapter 11 trustee must be appointed to administer the Debtors' cases, and (ii) Rajan was no longer authorized to act on behalf of the Debtors' estates. (D.I. #548).

9.      On January 9, 2024, the Office of the United States Trustee filed a Notice of Appointment of William A. Homony to serve as the Chapter 11 trustee (the "Appointment Date") as well as an Application for the Entry of an Order Approving the Appointment of the Trustee (the "Application") (D.I. #554 and #553 respectively).

10.     On January 12, 2024, the Bankruptcy Court entered an Order granting the Application to appoint William A. Homony as the Trustee (D.I. #558).

11.     The Trustee is the sole representative of the Debtors' bankruptcy estates, has been vested with exclusive authority to manage the Debtors' bankruptcy estates, and has the duties enumerated under the Bankruptcy Code, including, *inter alia*, to act for the benefit of all creditors and to maximize the value of the Debtors' bankruptcy estate.

B.      **The Debtors' Transactions with Rembrandt**

12.     On May 23, 2021, Stream, Rembrandt, and others executed a settlement agreement arising out of litigation instituted by Rembrandt against Stream and others in New York (the "NY Settlement Agreement"). A true and correct copy of the NY Settlement Agreement is attached hereto as **Exhibit "A."**

13.     The same day that Stream and Rembrandt entered into the NY Settlement Agreement, Rembrandt, as one of three (3) petitioning creditors, filed the Delaware Involuntary Bankruptcy Case against Stream.

14.     The involuntary proceeding was ultimately dismissed.

15.     Thereafter, on August 12, 2023, after the current bankruptcy case was filed and without Bankruptcy Court authority, Stream and Rembrandt agreed to amend the NY Settlement

3

Agreement (the "Amendment"). A true and correct copy of the Amendment is attached hereto as **Exhibit "B."**

16.     The Amendment reflected certain proposals by Stream contained in the Disclosure Statement filed earlier on July 13, 2023 (D.I. #293)[2] including, *inter alia*, changes to the payments made to Rembrandt, and adding a clause detailing what would happen to the NY Settlement Agreement in the event that control of Stream were to change hands. *See Id.*

17.     Two (2) days later, on August 14, 2023, and without the approval of the Bankruptcy Court, Rembrandt and Stream entered into a licensing covenant (the "Licensing Covenant" and, together with the NY Settlement Agreement and the Amendment, the "Rembrandt Agreements"). A true and correct copy of the Licensing Covenant is attached hereto as **Exhibit "C."**

18.     The Licensing Covenant purported to memorialize the grant of the license from Rembrandt to Stream, as alleged in the NY Settlement Agreement and the Amendment, and prevented the Stream subsidiaries from using any license purportedly granted to Stream. *See Id.*

C.      **Rembrandt's Claims**

19.     In total, Rembrandt filed three (3) proofs of claim (the "Rembrandt Proofs of Claim") against the Debtors:

- A claim in the amount of $ 1,212,407,000.00 filed against Stream on April 14, 2023 (Stream Claim No. 2-1);

- A claim in the amount of $1,212,407,000.00 filed against Technovative on October 22, 2024 (Technovative Claim No. 26-1); and

- A claim in the amount of $1,212,407,000.00 filed against Stream on October 22, 2024 (Stream Claim No. 26-1).

---

[2] The Disclosure Statement filed by Stream on July 13, 2023 (D.I. #293) was not approved.

4913-9201-7045 v1

20.    The Trustee has objected to the Rembrandt Proofs of Claim as further detailed below.

21.    On the Petition Date, Technovative scheduled Rembrandt as its only creditor having a "breach of contract" claim in the amount of "$10,000,000 +" and listed the claim as contingent, unliquidated, and disputed and, thus, not an allowed claim. (Technovative Bankruptcy Docket, D.I. #1 and #3).

22.    Two (2) weeks later, when Technovative filed its Schedules of Assets and Liabilities, Rembrandt's claim ballooned to $100 million dollars, more than ten (10) times the original amount, and was listed by Rajan as undisputed, noncontingent, and liquidated, and therefore, an "allowed" claim for "goods and services." (Technovative Bankruptcy Docket, D.I. #50).

23.    On October 10, 2024, the Trustee filed an amendment to the Technovative Schedules to list the Rembrandt claim at $0.00. In response, Rembrandt filed a proof of claim against Technovative for $1.2 billion.  (Technovative Claim No. 26-1).

**D.    The Settlement with Hawk**

24.    Through the Trustee's substantial efforts, a settlement was reached with Hawk Investment Holdings Limited ("Hawk"), as collateral agent for the secured creditors, resolving several disputes between the parties and providing for consideration valued in the minimum amount of $9,000,000.00 for the Debtors' estates, and a mechanism for the Debtors' assets to be exposed to a sale process, whereby the true value of the assets could be assessed by exposing them to the market (the "Hawk Settlement").

25.    On May 6, 2024, the Trustee filed a Motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure to approve the Hawk Settlement (the "Hawk 9019 Motion") (D.I.

4913-9201-7045 v1

#630).

26.     Both Visual Semiconductor, Inc. ("VSI") and Rembrandt opposed the Hawk 9019 Motion (D.I. #642 and #643, respectively).

27.     Ultimately, this Court approved the Hawk Settlement (the "Hawk 9019 Order") (D.I. #653).

**E.     The Sale of the Debtors' Assets**

28.     On September 30, 2024, the Trustee filed a sale motion (the "Sale Motion," D.I. 750) with this Court seeking authorization and approval of the Stalking Horse APA (the "APA") and the Bid Procedures in connection with the sale of substantially all of the Debtors' assets on an "as is", "where is" basis, without any warranty of any kind, express or implied, to the stalking horse, SeeCubic, Inc. ("SeeCubic").

29.     Thereafter, on November 13, 2024, the Court held a hearing and approved the Bidding Procedures and the Stalking Horse APA with SeeCubic, once again, over the objections of VSI and Rembrandt (D.I. #788 and #789, respectively).

30.     On December 9, 2024, the Court entered an Order granting the Sale Motion (the "Sale Order") (D.I. #876), which it supported with a written opinion entered on January 8, 2025 (the "Sale Opinion") (D.I. #916).

31.     The APA and the Sale Order specifically excluded the intellectual property of Rembrandt. *See* APA, Section 2.2; Sale Order (D.I. #876), ¶6.

32.     Under the APA and the Sale Order, SeeCubic has a duty to indemnify, defend, and hold harmless the Debtors and their bankruptcy estates, the Trustee and his Court-approved professionals, and certain related parties (the "Indemnified Parties") from any claims that the third

6

party intellectual property, including the intellectual property of Rembrandt, was included in the assts sold pursuant to the Sale Order. *See* APA, Section 9.2; Sale Order (D.I. #876), ¶90.

33. Once the Sale Order was entered, the Trustee and SeeCubic worked diligently to consummate the Sale in accordance with the Sale Order; and on January 3, 2025, the Sale closed as evidenced by the Notice of Closing on Sale of Substantially All of the Assets filed on January 6, 2025 (the "Notice of Closing"). (D.I. #915).

### F.      Actions by and Against Rembrandt

34. Rembrandt has filed three (3) separate appeals in connection with the Hawk Settlement and the Sale process, including the appeal of the Sale Order and several orders ancillary thereto, with the appeals currently pending in the United States District Court for the Eastern District of Pennsylvania.

35. These appeals include:

- Rembrandt's appeal of Hawk 9019 Order, docketed under E.D. Pa. No. 24-cv-2727 (the "9019 Appeal") (D.I. #685);

- Rembrandt and VSI's joint appeal of the Sale Order, docketed under E.D. Pa. No. 24-cv-6617 (the "Sale Appeal") (D.I. #877); and

- Rembrandt and VSI's joint appeal of the order denying stay pending appeal of Sale Order, docketed under E.D. Pa. No. 25-cv-00751 (the "Stay Appeal" and together with the 9019 Appeal and Sale Appeal, the "Appeals") (D.I. #941).

36. Rembrandt has also commenced three (3) actions against the Trustee, the Debtors, and/or other Trustee-related parties, including:

- *Rembrandt 3D Holding Ltd. v. Technovative Media, Inc., et al.*, 23-cv-00193-JLH, filed February 21, 2023, in the United States District Court for the District of Delaware (the "Delaware District Court Action");

- *Rembrandt 3D Holding Ltd. v. William A. Homony, in His Capacity as Chapter 11 Trustee, Stream TV Networks, Inc. and Technovative Media, Inc., et al.*, 24-00142-djb, filed December 4, 2024, in the United States Bankruptcy Court for

7

4913-9201-7045 v1

the Eastern District of Pennsylvania (the "Rembrandt Adversary Proceeding")[3]; and

- *Rembrandt 3D Holding Ltd. v. William A. Homony, in His Capacity as Chapter 11 Trustee, SSG Advisors, LLC, J. Scott Victor, Teresa C Kohl, Craig D. Warznak, Samuel P. Charlton, and Alexander D. Lamm*, 24-cv-06706-JMG, filed December 17, 2024, in the United States District Court for the Eastern District of Pennsylvania (the "Pennsylvania District Court Action" and together with the Delaware District Court Action and the Rembrandt Adversary Proceeding, the "Rembrandt Actions").

37.     Additionally, on or about April 30, 2025, the Trustee commenced an adversary proceeding by filing a Complaint in the Bankruptcy Court against, among others, Rembrandt, captioned *Homony v. Rembrandt 3d Holding Ltd.*, et al., Adv. No. 23-10763 (DJB), seeking, *inter alia*, avoidance of the obligations and transfers under the Rembrandt Agreements and objecting to the Rembrandt Proofs of Claim (the "Trustee Adversary Proceeding").

### G.      The 2025 Settlement

38.     On or about June 30, 2025, the Trustee entered into a settlement with Rembrandt (the "2025 Settlement").

39.     In accordance with the APA and the Sale Order, the Trustee made a demand upon SeeCubic to defend and indemnify the Trustee and other indemnified parties in connection with the Sale Appeals and the Rembrandt Actions; however, SeeCubic refused. *See* APA, Section 9.2; Sale Order (D.I. #876), ¶90.

40.     On July 15, 2025, the Trustee filed a motion seeking the Court's approval of the 2025 Settlement pursuant to Bankruptcy Rule 9019 and the enforcement of SeeCubic's indemnification obligations [D.I. #1040].

---

[3] The Trustee was dismissed as a defendant in the Rembrandt Adversary Proceeding on April 15, 2025 [Adversary Proceeding Docket No. 8].

4913-9201-7045 v1

41.     On October 31, 2025, the Bankruptcy Court entered an order granting the 9019 motion in part; the Bankruptcy Court approved the 2025 Settlement but declined to enforce SeeCubic's indemnification obligations [D.I. #1137].

42.     An indemnification judgment was not entered against SeeCubic, which was a condition precedent to the enforceability of the 2025 Settlement.

43.     As such, the 2025 Settlement was not rendered effective and is null and void.

**H.      The Present Settlement with Rembrandt**

44.     On February 18, 2026, Rembrandt, SeeCubic, the Trustee, and Hawk participated in a mediation before this Court, which, while unsuccessful in achieving a global resolution among the Trustee, Rembrandt, SeeCubic, and Hawk, resulted in a tentative settlement between the Trustee and Rembrandt, subject to the negotiation of a formal settlement agreement and this Court's approval.

45.     Taking into consideration the expense and uncertainty with respect to continued litigation of the Rembrandt Pennsylvania District Court Action (and other Rembrandt Actions), the Appeals, the Rembrandt Proofs of Claims and the Trustee Adversary Proceeding, the Parties have agreed to compromise and settle all disputes between them, without admission of liability or fault by any Party, and without conceding the strength or weakness of any claims or defenses.

46.     The settlement (the "Settlement") between the Trustee and Rembrandt is the product of robust arm's-length negotiation and is embodied in a Settlement Agreement dated March 4, 2026 (the "Rembrandt Settlement Agreement," a copy of which is attached hereto as **Exhibit "D"**).

47.     In the Trustee's business judgment, informed by the advice of special litigation counsel and intellectual property counsel, the continuing attorneys' fees and related litigation to

4913-9201-7045 v1

defend against Rembrandt's Pennsylvania District Court Action alone will substantially exceed the Settlement Payment of $375,000.00.

48.     Under the circumstances, the Trustee has determined that the Rembrandt Settlement Agreement provides the best path forward for the bankruptcy estates and the Debtors and offers them the best opportunity to make a meaningful distribution to creditors.

49.     In the Trustee's business judgment, the time is right for a full resolution, which results in payments to creditors, rather than continuing to commit limited resources to the litigation with Rembrandt.

50.     The pertinent terms of the Settlement[4] are:

- Effective Date.  The term "Effective Date" shall mean the date on which an order entered by the Bankruptcy Court approving this Agreement (the "Approval Order") has become a final order.

- Rejection of NY Settlement Agreement.  The Trustee shall reject the NY Settlement Agreement.  Rembrandt shall retain its rights as a licensee, if any, under Bankruptcy Code section 365(n)(1)(B).  The Trustee agrees that he: (a) will not interfere with Rembrandt's efforts to exercise such rights against third parties, (b) will take no position on the nature and extent of such rights as a licensee as between Rembrandt and third parties, and (c) will have no obligation to act or assist Rembrandt in exercising such rights as a licensee as between Rembrandt and third parties.

- Release of Obligations Under the Amendment and Licensing Covenant. In addition to any other releases set forth herein, Rembrandt shall agree to release and discharge the Debtors and the Trustee from any obligations under the Amendment and Licensing Covenant, and Rembrandt shall take no action against the Trustee and Debtors in connection therewith.

- Treatment of Rembrandt Proofs of Claim and Trustee's Plan of Liquidation.  In full and final settlement of the Rembrandt Proofs of Claim, the Trustee shall grant Rembrandt an allowed general unsecured claim against Stream in the amount of $1,000,000.00 (the "Allowed Claim"). Rembrandt shall support and not oppose confirmation of the Trustee's plan of liquidation and, on or before

---

[4] In the event there is a discrepancy between the terms set forth in the Rembrandt Settlement Agreement and the summary of same contained in this Motion, the Rembrandt Settlement Agreement shall control.

4913-9201-7045 v1

the deadline to do so, submit a written acceptance of any Plan containing terms consistent with this agreement in the full value of its unsecured claim.  Within seven (7) days of the Effective Date, Rembrandt shall file a stipulation to effectuate the dismissal of Technovative with prejudice in the Delaware District Court Action.

- Settlement Payment.  In Settlement of the Pennsylvania District Court Action, the Trustee shall make a settlement payment to Rembrandt in the amount of $375,000.00 (the "Rembrandt Settlement Payment"), within fifteen (15) days of the Effective Date. The Trustee reserves the right to seek repayment from SeeCubic of the Rembrandt Settlement Payment along with attorneys' fees, costs and other expenses incurred in defense of claims asserted by Rembrandt.

- Bankruptcy Court Approval.  Promptly after all parties have executed this Agreement, the Trustee shall file a motion (the "9019 Motion") with the Bankruptcy Court requesting approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

- Releases.  The Parties shall exchange mutual releases.

51.    Therefore, through the Motion, the Trustee now seeks the Court's approval of the Settlement and the Rembrandt Settlement Agreement.

## III.    RELIEF REQUESTED

### A.    The Rembrandt Settlement Agreement Should be Approved

52.    The Trustee respectfully requests entry of an Order approving the Rembrandt Settlement Agreement pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019.

53.    Bankruptcy Rule 9019(a) provides that, "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement."

54.    The decision to approve or disapprove a settlement is within the sound discretion of the bankruptcy judge."  *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Covenant Partners, L.P.*, 555 B.R. 490, 493 (Bankr. E.D. Pa. 2016) ("Approval of the settlement lies within the sound discretion of the Bankruptcy Court.").

55.    "Settlements under Bankruptcy Rule 9019 are favored in bankruptcy as they avoid

11

4913-9201-7045 v1

the expenses associated with litigating claims that can prove burdensome and expensive for the bankruptcy estate." *In re Legarde*, 654 B.R. 74, 84–85 (Bankr. E.D. Pa. 2023).

56.     "In deciding whether to approve a settlement, the Court must determine whether the proposed settlement is in the best interests of the estate.  The Third Circuit has held that this particular process of bankruptcy court approval requires the Court to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."  *Id.* (citing *In re Martin*, 91 F.3d at 393).  "Consistent with *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163–64, 20 L.Ed.2d 1 (1968), the Third Circuit recognizes four criteria a court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, along with the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors."  *Covenant Partners*, 555 B.R. at 493 (citing *Martin*, 91 F.3d at 393).  "When considering the relevant factors courts are admonished to avoid second-guessing the Trustee in the exercise of his or her business judgment, and instead endeavor to ascertain whether the terms of the proposed settlement fall below the lowest range of reasonableness."  *Covenant Partners*, 555 B.R. at 493.

57.     Here, the Rembrandt Settlement Agreement falls well within the range of reasonableness for purposes of satisfying the Bankruptcy Rule 9019 criteria.

58.     The disputes being settled by the Parties involve complex issues that would require the Trustee to expend substantial sums to prosecute and defend. The Rembrandt Settlement Agreement resolves these matters in a manner that, in the exercise of the Trustee's business judgment, is appropriate and beneficial to the bankruptcy estates.

4913-9201-7045 v1

59.    Faced with mounting administrative expenses and potentially insolvent estates, and understanding the complex, lengthy, and uncertain path forward in litigating the Parties' disputes, the Trustee has reasonably selected an option that minimizes additional administrative expenses and avoids the substantial additional expenses to be incurred with continuing a litigation-based approach to a resolution of the Parties' disputes – a path that is expensive, speculative, and fraught with peril.

60.    The Rembrandt Settlement Agreement effectuates a global resolution of a myriad of pending proceedings involving Rembrandt, including the Pennsylvania District Court Action, in which Rembrandt has brought claims against the Trustee and his court-authorized investment banker (which the Trustee is obligated to defend and indemnify), asserting claims for patent infringement, misappropriation of trade secrets, and breach of contract.

61.    The complexity of the issues raised in the Pennsylvania District Court Action is self-evident from Rembrandt's voluminous and detailed Complaint, which encompasses two hundred nineteen (219) paragraphs over nearly fifty (50) pages, and seeks significant monetary and non-monetary damages, including treble damages for patent infringement, exemplary damages for willful and malicious appropriation of trade secrets, and attorneys' fees.

62.    It is thus apparent that the defense of the Pennsylvania District Court Action, which involves nuanced questions of intellectual property and patent law and will likely require significant and protracted litigation to fully adjudicate, would in and of itself rapidly deplete the limited funds present in the Debtors' Estates.

63.    In the Trustee's business judgment, informed by the advice of special litigation counsel and intellectual property counsel, the continuing attorneys' fees will substantially exceed the Settlement Payment of $375,000.00 and, if the Rembrandt Settlement Agreement is not

4913-9201-7045 v1

approved, the Debtors' administrative expenses will continue to increase, reducing or potentially eliminating the distribution to unsecured creditors.

64.    While the Trustee may ultimately succeed in defending against Rembrandt's claims, any victory would be pyrrhic, as defense costs would exceed the Settlement Payment. Moreover, Rembrandt's past litigation conduct suggests that any outcome in the Trustee's favor would likely be subject to multiple appeals, potentially delaying this matter for years.

65.    Further, the Rembrandt Settlement Agreement specifically reserves the Trustee's right to seek repayment from SeeCubic of the Rembrandt Settlement Payment, along with attorneys' fees, costs, and other expenses incurred in defense of claims asserted by Rembrandt.

66.    Accordingly, the *Martin* factors weigh heavily in favor of settlement approval. The Trustee is not required to "conclusively establish that he would be successful at a trial on these issues. That would defeat the purpose of the settlement and eliminate any cost savings from it. All that he must do is establish to the reasonable satisfaction of [the Court] that, all things considered, it is prudent to eliminate the risks of litigation to achieve specific certainty though it might be considerably less (or more) than were the case fought to the bitter end." *In re Aloha Racing Found., Inc.*, 257 B.R. 83, 88 (Bankr. N.D. Ala. 2000) (quotation marks and citations omitted); *see also In re Nutraquest, Inc.*, 434 F.3d 639, 646 (3d Cir. 2006) (affirming the bankruptcy court's approval of a settlement of wrongful death claims brought against a bankrupt drug manufacturer's Chapter 11 estate even though there was allegedly no possibility that the claims could have been successfully prosecuted because balancing the expense, complexity, and delay of litigation with the benefits of fast resolution satisfied the *Martin* factors); *In re Teknek, LLC*, 402 B.R. 257 (Bankr.N.D.III.2009) (though likelihood of success on the merits of claims was high, settlement agreement was approved to avoid increased costs of continuing litigation); *In*

14

*re Legendary Field Exhibitions, LLC*, No. 19-50900-CAG, 2021 WL 4978373, at \*8 (Bankr. W.D. Tex. Oct. 26, 2021) (approving a settlement which would "prevent defense costs from consuming most of what remains in the Estate" because "[t]he Estate has limited funds to pay creditors, and protracted litigation would create administrative claims that would substantially reduce, and maybe even consume the remaining Estate." (internal quotation marks omitted)).

67.     Simply stated, the Rembrandt Settlement Agreement eliminates all litigation risk posed by the Pennsylvania District Court Action in return for a payment which is less than the cost of defending that action.  Additionally, the settlement effectuates complete peace with Rembrandt, reducing Rembrandt's claim by over ninety-nine point nine percent (99.9%) and eliminating further risk posed by the pending Rembrandt Appeals.

68.     This is no doubt a prudent course of action when faced with potential exposure that could wipe out the Debtors' limited resources -- the Trustee cannot, in the exercise of his business judgment, expose creditors to that risk when there is potential for an assured recovery through settlement.   The settlement is eminently reasonable, eliminates all delay, and immediately halts the rapid depletion of the limited funds in the Debtors' Estates for the benefit of all creditors.

69.     Accordingly, the Trustee believes that the Rembrandt Settlement Agreement is in the best interests of the Debtors' estates and respectfully requests that it be approved by this Court.

IV.     **NOTICE**

70.     The Trustee's counsel has served this Motion and Notice of Motion, Response Deadline, and Hearing Date upon: (a) the Office of the United States Trustee, (b) counsel to the former debtor in possession, (c) counsel to Rembrandt, and (d) all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002.  The Trustee's counsel has also served the Notice of Motion, Response Deadline, and Hearing Date upon all the Debtors' creditors.

15

4913-9201-7045 v1

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court enter an Order: (i) granting the relief sought in the Motion; (ii) approving the Rembrandt Settlement Agreement and the Settlement contained therein; (iii) authorizing the Trustee to take any and all actions necessary to effectuate the terms of the Rembrandt Settlement Agreement; and (iv) granting such other and further relief it deems just and proper.

Dated: March 6, 2026                            Respectfully submitted,

                                                */s/ Steven M. Coren*
                                                Steven M. Coren, Esquire
                                                COREN & RESS, P.C.
                                                Two Commerce Square, Suite 3900
                                                2001 Market Street
                                                Philadelphia, PA 19103
                                                Telephone: (215) 735-8700
                                                scoren@kcr-law.com

                                                *Special Counsel to the Trustee*

4913-9201-7045 v1