## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,[1]<br><br>    Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (DJB) |
| In re:<br><br>Technovative Media, Inc.,<br><br>    Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (DJB)<br><br>(Jointly Administered) |

## JOINT PLAN OF LIQUIDATION OF STREAM TV NETWORKS, LLC AND TECHNOVATIVE MEDIA, INC.

**THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN IS SUBJECT TO CHANGE.**

---

[1] The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015).  The Debtors' estates are Jointly Administered.  However, the Debtors' estates have not been at the time of filing this Plan, substantively consolidated.

4900-7463-4422 v5

TABLE OF CONTENTS

ARTICLE I: DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF
TIME, AND GOVERNING LAW……………………………………………………………1

    A.    Defined Terms ............................................................................................... 1

    B.    Rules of Interpretation ................................................................................. 9

    C.    Computation of Time.................................................................................... 9

    D.    Governing Law ............................................................................................. 9

    E.    Controlling Document ................................................................................ 10

ARTICLE II: ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS ....... 10

    A.    Administrative Claims ................................................................................ 10

    B.    Professional Compensation Claims ........................................................... 10

    C.    Priority Tax Claims..................................................................................... 10

    D.    Statutory Fees ............................................................................................. 11

ARTICLE III: CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .... 11

    A.    Classification of Claims and Interests ....................................................... 11

    B.    Summary of Classification ......................................................................... 11

    C.    Treatment of Claims and Interests ............................................................ 12

    D.    Voting of Claims........................................................................................ 14

    E.    No Substantive Consolidation ................................................................... 14

    F.    Acceptance by Impaired Classes ............................................................... 14

    G.    Consensual Confirmation ........................................................................... 15

    H.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
        Code.......................................................................................................... 15

    I.    Controversy Concerning Impairment or Classification.................................... 15

    J.    Intercompany Interests................................................................................ 15

ARTICLE IV: MEANS FOR IMPLEMENTATION OF THE PLAN. ................................... 15

    A.    Sources of Consideration for Plan Distributions ............................................. 15

    B.    Corporate Existence.................................................................................... 16

i

C.  Vesting of Assets in the Reorganized Debtors ................................................. 16

D.  Manager of the Reorganized Debtors ............................................................... 16

E.  Employment Obligations ................................................................................... 17

F.  Exemption from Certain Taxes and Fees........................................................... 17

G.  Preservation of Causes of Action .................................................................... 17

H.  Settlement of Claim against Technovative; Termination of Subordination
Rights................................................................................................................ 18

I.  Corporate Existence ......................................................................................... 18

ARTICLE V: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
.................................................................................................................................. 19

A.  Assumption and Rejection of Executory Contracts and Unexpired Leases ....... 19

B.  Claims Based on Rejection of Executory Contracts or Unexpired Leases......... 20

C.  Cure of Defaults for Assumed Executory Contracts and Unexpired Leases...... 20

D.  Insurance Policies ........................................................................................... 21

E.  Indemnification Provisions ............................................................................... 21

F.  Reservation of Rights ...................................................................................... 21

G.  Nonoccurrence of Effective Date .................................................................... 21

ARTICLE VI: PROVISIONS GOVERNING DISTRIBUTIONS........................................... 22

A.  Timing and Calculation of Amounts to Be Distributed..................................... 22

B.  Disbursing Agent............................................................................................. 22

C.  Delivery of Distributions and Undeliverable or Unclaimed Distributions......... 23

D.  Record Date of Distributions ........................................................................... 24

E.  Special Rules for Distributions to Holders of Disputed Claims ........................ 24

F.  Minimum Distributions .................................................................................... 24

G.  Undeliverable Distributions and Unclaimed Property....................................... 24

H.  Remainder Amounts After Distribution ........................................................... 25

I.  Manner of Payment.......................................................................................... 25

J.  Compliance with Tax Requirements ................................................................. 25

4900-7463-4422 v5

K.  No Post-petition or Default Interest on Claims ............................................. 25

L.  Allocations.................................................................................................... 26

M.  Setoffs and Recoupment ............................................................................. 26

N.  Foreign Current Exchange Role .................................................................. 26

ARTICLE VII: PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS …………………………………………………………………..…...26

A.  Resolution of Disputed Claims.................................................................... 26

B.  Disallowance of Claims............................................................................... 28

C.  Amendments to Proofs of Claim ................................................................. 29

D.  No Distributions Pending Allowance .......................................................... 29

E.  Disputed Claims Reserve……………………………………………………….29

F.  Distributions After Allowance..................................................................... 30

G.  No Interest ................................................................................................... 30

ARTICLE VIII: DISCHARGE, RELEASE, INJUNCTION, AND RELATED PROVISIONS

.......................................................................................................................... 30

A.  No Discharge ............................................................................................... 30

B.  Release of Liens........................................................................................... 30

C.  Regulatory Activities .................................................................................. 31

D.  Releases by the Debtors............................................................................... 31

E.  Exculpation ................................................................................................. 31

F.  Injunction .................................................................................................... 32

G.  Gatekeeper Provision .................................................................................. 32

H.  Direct Insurance Claims .............................................................................. 33

ARTICLE IX: CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN......... 33

A.  Conditions Precedent to the Effective Date................................................. 33

B.  Waiver of Conditions................................................................................... 33

C.  Effect of Failure of Conditions.................................................................... 33

4900-7463-4422 v5

ARTICLE X: MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ..... 34

    A.    Modification and Amendments ............................................................. 34

    B.    Effect of Confirmation on Modifications ........................................... 34

    C.    Revocation or Withdrawal of Plan ..................................................... 34

ARTICLE XI: RETENTION OF JURISDICTION. ................................................. 35

ARTICLE XII: MISCELLANEOUS PROVISIONS ............................................... 37

    A.    Immediate Binding Effect.................................................................... 37

    B.    Substantial Consummation ................................................................. 38

    C.    Further Assurances ............................................................................. 38

    D.    Reservation of Rights ......................................................................... 38

    E.    Successors and Assigns ...................................................................... 38

    F.    Notices ................................................................................................ 38

    G.    Entire Agreement................................................................................ 39

    H.    Cases .................................................................................................. 39

    I.    Waiver or Estoppel ............................................................................. 39

    J.    Deemed Acts....................................................................................... 40

4900-7463-4422 v5

## INTRODUCTION

William A. Homony, the duly appointed Chapter 11 trustee (the "Chapter 11 Trustee") for the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative" and with Stream each a "Debtor" and collectively the "Debtors"), hereby proposes this joint plan of liquidation under and pursuant to 11 U.S.C. 1123(b)(4) of the Bankruptcy Code, 11 U.S.C. Section 101 *et seq.* (the "Bankruptcy Code"). Therefore, the Plan constitutes a separate plan for each Debtor for the resolution of outstanding Claims and Interests. Capitalized terms used herein shall have the meanings set forth in Article I.A.

Holders of Claims and Interests may refer to the Disclosure Statement for a description of the Debtors' history, assets, and historical information, as well as a summary and description of the Plan. Each Debtor, by and through the Chapter 11 Trustee, is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS, AS APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    Defined Terms

As used in the Plan, capitalized terms have the meanings ascribed to them below.

1.    "Administrative Expense Claim" means any Claim incurred by the Estates (including since the Trustee's Appointment Date) on or after the Petition Date and before the Effective Date, for the costs and expenses of administration of the Estates pursuant to section 503(b), including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date, of preserving the Estates; and (b) Allowed Professional Compensation Claims.

2.    "Administrative Claims Bar Date" means March 14, 2025, the deadline to assert an Administrative Expense Claim pursuant to section 503 of the Bankruptcy Code, established by the February 12, 2025 Order of the Bankruptcy Court [D.I. 948], and except with respect to Professional Compensation Claims, which shall be subject to the provisions of Article II.B hereof.

3.    "Administrative Expense Claims Reserve" means, in the event there exists any potential Administrative Expense Claims that may exist or become allowed on or after the Effective Date, Cash to be separately accounted for by the Chapter 11 Trustee or the Disbursing Agent (as the case may be), in an amount sufficient to pay the Administrative Expense Claims at the time such payments are made in accordance with the provisions of the Plan, if and when such Administrative Expense Claims become Allowed Administrative Expense Claims.

4.    "Affiliate" means, with respect to a specified Entity, any other Entity that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code.

5.    "Allowed" means, with respect to any Claim or Interest, except to the extent the

1

4900-7463-4422 v5

Plan provides otherwise, any portion thereof (a) that is allowed under the Plan, by Final Order, or pursuant to a settlement, (b) that is evidenced by a Proof of Claim or Interest, as applicable, timely filed by the applicable Claims Bar Date or that is not required to be evidenced by a filed Proof of Claim or Interest, as applicable, under the Plan or a Final Order, or (c) that is scheduled by the Debtors as not disputed, contingent, or unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been timely filed; provided that with respect to a Claim or Interest described in clauses (b) and (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date. No Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.

6. "Appointment Date" means January 9, 2024, the date the Chapter 11 Trustee was appointed as Chapter 11 Trustee for each of the Debtors' respective Estates by the office of the United States Trustee.

7. "Assets" means all of the property or interests owned or controlled by the Debtors, wherever situated, as that term is defined by section 541 of the Bankruptcy Code, and applicable case law.

8. "Avoidance Causes of Action" means any of the Debtors' claims pursuant to sections 362, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) were commenced prior to the Effective Date.

9. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq*., as may be amended from time to time.

10. "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

11. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and Official Bankruptcy Forms, as amended, as promulgated under section 2075 of Title 28 of the United States Code, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court.

12. "Business Day" means any day, other than a Saturday, Sunday, or a legal holiday as defined in Bankruptcy Rule 9006(a).

13. "Cash" means the legal tender of the United States of America and equivalents thereof, including but not limited to bank deposits and checks.

14. "Causes of Action" means, without limitation, any Claim, claim for affirmative recovery, damage, remedy, cause of action, controversy, demand, right, rights of setoff, action, cross claim, counterclaim, recoupment, claim for breach of duty imposed by law or in equity, action, Lien, indemnity, contribution, reimbursement, guaranty, debt, suit, class action, third-

2

party claim, obligation, liability, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, direct or indirect, choate or inchoate, liquidated or unliquidated, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, under the Bankruptcy Code or applicable non-bankruptcy law, or pursuant to any other theory of law. Causes of Action also include: (a) all counterclaims, setoff under section 553 of the Bankruptcy Code or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) Avoidance Causes of Action; and (d) such claims and defenses including but not limited to fraud, mistake, duress, undue influence, breach of duty and usury and any other defenses set forth in section 558 of the Bankruptcy Code. Causes of Action include but are not limited to Claims against any Person or Entity, including but not limited to the Debtors' principal and shareholder Mathu Rajan, and Persons or Entities affiliated and/or controlled by Mathu Rajan including but not limited to VSI and VTI, the Debtors' officers and directors or managers, or board members, professionals, agents representatives or employees. For clarity, the definition of Causes of Action is not intended to limit (i) the Persons or Entities against which any Cause of Action may be asserted; or (ii) the nature of the Claims or Causes of Action retained or asserted.

15. "Chapter 11 Cases" means the jointly administered chapter 11 cases filed for the Debtors in the Bankruptcy Court and currently captioned: *In re Stream TV Networks, LLC,* Bankruptcy Number 23-10763 (DJB) and *In re: Technovative Media, Inc.,* Bankruptcy Number 23-10764 (DJB) with each a "Case".

16. "Claim" means any "claim," as that term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

17. "Claims Agent" means the Debtors' court-appointed Voting and Claims Agent, BMC Group ("BMC").

18. "Claims Bar Date" means May 24, 2023, or such other date established by the Plan or by order of the Bankruptcy Court by which Proofs of Claim must be filed with respect to Claims.

19. "Claims Objection Deadline" means the deadline for objecting to a Claim asserted against a Debtor, which shall be on the date that is the later of: (a) 180 days after the Effective Date, and (b) such other period of limitation as may be specifically fixed by the Chapter 11 Trustee, or by an order of the Bankruptcy Court for objecting to such Claims. The Claims Objection Deadline may be extended by the Chapter 11 Trustee, in his sole and exclusive discretion, for any reason, including but not limited to, for convenience.

20. "Claims Register" means the official register of Proofs of Claims against the Debtors maintained by the Claims Agent or as maintained by the Bankruptcy Court Clerk.

21. "Class" means a category of Claims or Interests classified together as set forth in Article III hereof pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

22. "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

23. "Confirmation Date" means the date upon entry of the Confirmation Order.

3

4900-7463-4422 v5

24.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued by the Bankruptcy Court or the Chapter 11 Trustee from time to time.

25.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the transactions contemplated thereby, which shall be in form and substance acceptable to the Chapter 11 Trustee.

26.     "Contract Rejection Claim" means a Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

27.     "Contract Party" means a party with an acknowledged or court-determined, enforceable, and arm's-length contractual arrangement with a Debtor, which is not the subject of a claim or defense by the Trustee.

28.     "Creditor" means the holder of a Claim against a Debtor.

29.     "Cure Claim" means a Claim against any, either, or both Debtors based upon such Debtor's monetary default under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed or assumed and assigned by such Debtor or Reorganized Debtor, as applicable, pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

30.     "Cure Notice" means a notice of a proposed amount of Cash, or consolidation to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include the amount of Cure Claim (if any) to be paid in connection therewith.

31.     "Debtors" means, collectively: Stream TV Networks, Inc. and Technovative Media, Inc.

32.     "Disallowed" means, with respect to any Claim, including but not limited to any Administrative Expense Claim, Priority Tax Claim, Priority Non-Priority Tax Claim, General Unsecured Claim or Interest or any portion thereof that (a) is disallowed, denied, dismissed, expunged or overruled under the Plan or pursuant to a Final Order of the Bankruptcy Court or any other court of competent jurisdiction or by a settlement; (b) is scheduled by the Debtors at zero dollars ($0.00) or as contingent, disputed, or unliquidated and as to which the Claims Bar Date has passed and no Proof of Claim was timely filed or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, or otherwise deemed timely filed under applicable law; or (c) is not scheduled by the Debtors and as to which the Claims Bar Date has passed and no Proof of Claim has been timely filed or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

33.     "Disbursing Agent" means, with respect to each of the Debtors, William A. Homony.

34.     "Disclosure Statement" means the disclosure statement (as it may be amended, supplemented, or modified from time to time) accompanying the Plan, including all exhibits and

4

schedules thereto and references therein, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, which shall be in form and substance acceptable to the Chapter 11 Trustee in his sole and exclusive discretion.

35.     "Disputed Claim" means, with respect to any Claim that (a) is disputed under the Plan; or (b) as to which the Chapter 11 Trustee or the Disbursing Agent has filed a timely objection before the Claims Objection Deadline and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn, settled or determined by a Final Order.

36.     "Disputed Claims Reserve" means, in the event there exists any Disputed Claims on or after the Effective Date, Cash to be set aside and separately accounted for by the Chapter 11 Trustee or the Disbursing Agent (as the case may be) pursuant to Article VII.E of the Plan, in an amount sufficient to pay the distributions to all Disputed Claims at the time such distributions are made in accordance with the provisions of the Plan, if such Disputed Claims become Allowed Claims.

37.     "Distribution Record Date" shall occur on the Effective Date.

38.     "Effective Date" means (a) the date that is the first Business Day on which all conditions to the occurrence of the Effective Date of the Plan have been satisfied or waived pursuant to Article IX, or (b) such later date as determined by the Chapter 11 Trustee.  Within two (2) Business Days of the Effective Date, the Chapter 11 Trustee shall file a notice of the occurrence of the Effective Date, notifying parties in interest of the Effective Date and confirming that it has occurred.

39.     "Entity" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

40.     "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

41.     "Estate" means, with respect to each Debtor, the individual estate created for each such Debtor in its Chapter 11 Case, and all property of the respective Debtors, pursuant to section 541 of the Bankruptcy Code.

42.     "Exculpated Parties" means, collectively, and in each case in its capacity as such (a) the Chapter 11 Trustee (in his capacities as both the Chapter 11 Trustee and individually); and (b) the Chapter 11 Trustee's professionals and advisors, including but not limited to financial advisors, consultants, attorneys, special litigation counsel, accountants, investment bankers, and other professionals, and with respect to each, their respective agents, officers, owners, members, shareholders, and employees.

43.     "Executory Contract" means a contract to which one or both of the Debtors is a party and that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

44.     "Final Order" means an order, ruling, or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or by the clerk of such other court of competent jurisdiction on the docket of such court), which has not been reversed, stayed, modified, amended, or vacated, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay,

5

4900-7463-4422 v5

reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing has been timely taken or is pending; or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Bankruptcy Rules.

45.    "General Unsecured Claim" means any Unsecured Claim of vendors, contract parties, or former employees not entitled to priority status under section 507 of the Bankruptcy Code, and any other Unsecured Claims, other than the Subordinated Claims and the Unsecured Deficiency Claim.

46.    "Governmental Unit" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

47.    "Hawk" shall mean Hawk Investment Holdings Ltd.

48.    "Hawk Settlement" means the Trustee's settlement with the Debtors' Secured Creditors Hawk and SLS as approved by Order of the Bankruptcy Court dated June 6, 2024, under Federal Rule of Bankruptcy Procedure 9019 [D.I. 653].

49.    "Holder" means an Entity holding a Claim or Interest, as applicable.

50.    "Impaired" means, with respect to any Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

51.    "Intercompany Claim" means any Claim held by a Debtor against another Debtor.

52.    "Intercompany Interest" means an Interest held by a Debtor in an Affiliate.

53.    "Interest" means any common stock, limited liability company membership interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

54.    "Lien" means a lien as defined in section 101(37) of the Bankruptcy Code.

55.    "Liquidation Expense Reserve" shall mean the amount of Cash to be separately accounted for by the Chapter 11 Trustee or the Disbursing Agent (as the case may be) from time to time, to adequately fund the liquidation of the Debtors' remaining assets, the wind up of the Debtors' business affairs, including the review and evaluation of Claims and the administration of the Plan and the Chapter 11 Cases on and after the Effective Date.

56.    "M&E Claim" shall mean the Class 2b Claim of McCarter & English, LLP

6

number 4-1 on the Technovative official claims register in the amount of $2,550,256.65.

57.    "M&E Settlement" shall mean the resolution of the M&E Claim as set forth in Article IV Section H of the Plan.

58.    "Person" means a person as such term is defined in section 101(41) of the Bankruptcy Code.

59.    "Petition Date" for each Debtor means March 15, 2023.

60.    "Plan" means this Joint Chapter 11 Plan and all exhibits, supplements, appendices, and schedules hereto, as may be altered, amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof.

61.    "Priority Tax Claim" means any Claim of a governmental unit of the type described in section 507(a)(8) of the Bankruptcy Code.

62.    "Pro Rata" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of the total Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests, as applicable, in such Class.

63.    "Professional" means the Chapter 11 Trustee, Obermayer Rebmann Maxwell & Hippel, LLP, Coren & Ress, P.C., SSG Advisors, LLC, Miller Coffey Tate LLP, Panitch Schwarze Belisario & Nadel LLP, Lewis Brisbois Bisgaard & Smith LLP, and BMC Group, Inc.

64.    "Professional Compensation Claims" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

65.    "Proof of Claim" means a written proof of claim asserting a Claim against either of the Debtors filed with the Bankruptcy Court or BMC pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002.

66.    "Purchaser" means SeeCubic, Inc. ("SCI"), the purchaser of the Transferred Assets under the Stalking Horse APA, as approved by the Bankruptcy Court and set forth in the Sale Order.

67.    "Rembrandt" means Rembrandt 3D Holdings, Ltd.

68.    "Rembrandt Settlement" means the Trustee's settlement with Rembrandt dated March 4, 2026, and approved by order of the Bankruptcy Court, after notice and a hearing under Bankruptcy Rule 9019, dated April 14, 2026 [D.I. 1211].

69.    "Reorganized Debtors" means each of the Debtors, on or after the Effective Date, even though the Debtors have not operated, and will not be operated by the Chapter 11 Trustee or the Disbursing Agent.

70.    "Sale Order" means the Order entered December 4, 2024, by the Bankruptcy Court [D.I. 876] approving the sale of the Transferred Assets (as defined in the Stalking Horse APA and Sale Order) to the Purchaser.

4900-7463-4422 v5

71.     "Schedule of Rejected Executory Contracts and Unexpired Leases" means the schedule (as may be amended) of the Debtors' Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be rejected by the Chapter 11 Trustee pursuant to the provisions of Article V of the Plan.

72.     "Schedules" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors or the Chapter 11 Trustee pursuant to section 521 of the Bankruptcy Code, as may be amended, modified, or supplemented from time to time.

73.     "Secured" means, with respect to a Claim, (a) secured by a Lien on property in which either of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the interest of the Holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) and any other applicable provision of the Bankruptcy Code, or (b) Allowed, pursuant to the Plan or a Final Order of the Bankruptcy Court, as a secured Claim.

74.     "Secured Creditors" means the holder of a Secured Claim against either of the Debtors, including but not limited to Hawk and SLS Holdings VI, LLC ("SLS").

75.     "Stalking Horse APA" means the Asset Purchase Agreement between the Debtors as Sellers and the Purchaser as amended or modified.

76.     "Subordinated Claim" means any Claim against either Debtor that is subordinated under section 510 of the Bankruptcy Code, or by agreement or other applicable non-bankruptcy law.

77.     "Transferred Assets" means all of the Assets of the Debtors purchased by the Purchaser as defined by the Stalking Horse APA as amended or modified.

78.     "Unexpired Lease" means a lease to which one or both of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

79.     "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

80.     "Unsecured" means, with respect to a Claim, a Claim or any portion thereof that is not Secured.

81.     "Unsecured Deficiency Claim" means the Unsecured deficiency Claim of the Secured Creditors which is a Subordinated Claim to all other General Unsecured Claims.

82.     "Voting Record Date" means the voting record date established in the Order approving the Disclosure Statement.

83.     "VSI" means Visual Semiconductor, Inc.

84.     "VTI" means Visual Technology Innovations, Inc.

B.      Rules of Interpretation

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule or exhibit, whether or not filed, having been filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof; (6) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) any effectuating provisions shall be interpreted by the Chapter 11 Trustee in a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) all references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (12) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (13) unless otherwise specified herein, whenever the words "include," "includes," or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation," whether or not they are in fact followed by those words or words of like import; (14) unless otherwise specified herein, references from or through any date mean from and including or through and including; and (15) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

C.      Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If any payment, distribution, act, or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act, or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

D.      Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except

9

4900-7463-4422 v5

as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.      Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      Administrative Expense Claims

Except with respect to Administrative Expense Claims that are Professional Compensation Claims incurred up through the Effective Date, and except to the extent that a Holder of an Allowed Administrative Expense Claim and the Chapter 11 Trustee agree to less favorable treatment for such Holder, each Holder of an Allowed Administrative Expense Claim, other than an Allowed Professional Compensation Claim, shall be paid, after the establishment and funding of the Liquidation Expense Reserve and Administrative Expense Claims Reserve, in full or Pro Rata, as applicable, from the Debtors' available Cash in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Administrative Expense Claim on he later of: (i) on or as soon as reasonably practicable after the Effective Date if such Administrative Expense Claim is Allowed as of the Effective Date; (ii) on or as soon as reasonably practicable after the date such Administrative Expense Claim is Allowed by Final Order; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court, as applicable.

B.      Professional Compensation Claims

1.      Final Fee Applications and Payment of Professional Compensation Claims

All final requests for payment of Professional Compensation Claims shall be filed no later than the day that is the first Business Day that is forty-five (45) calendar days after the Effective Date. Such requests shall be filed with the Bankruptcy Court and served upon the Disbursing Agent and his counsel. The Allowed amounts of such Professional Compensation Claims shall be determined by the Bankruptcy Court. The Allowed amount of Professional Compensation Claims owing to the Professionals, after taking into account any prior payments to and retainers held by such Professionals, shall be paid, after the establishment and funding of the Liquidation Expense Reserve and Administrative Expense Claims Reserve, in full or Pro Rata, as applicable, in Cash to such Professionals as soon as reasonably practicable following the date when such Professional Compensation Claims are Allowed by a Final Order.

C.      Priority Tax Claims

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent

10

4900-7463-4422 v5

that a Holder of an Allowed Priority Tax Claim and the Chapter 11 Trustee or Disbursing Agent agree to less favorable treatment for such Holder, in exchange for and in full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, in the Chapter 11 Trustee's or Disbursing Agent's sole and exclusive discretion, one of the following treatments, after the establishment and funding of the Liquidation Expense Reserve and Administrative Expense Claims Reserve: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code, payable on or as soon as practicable following the Effective Date; or (2) such other treatment as may be agreed upon by such Holder and the Trustee or the Disbursing Agent, or otherwise determined by an order of the Bankruptcy Court.

D.      Statutory Fees

Notwithstanding anything to the contrary contained herein, on the Effective Date, the Chapter 11 Trustee or Disbursing Agent shall cause the Debtors to pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. Thereafter, subject to the Plan, the Disbursing Agent shall pay all U.S. Trustee fees due and owing under section 1930 of the Judicial Code in the ordinary course until the earlier of (1) the entry of a final decree closing the applicable Reorganized Debtors' Chapter 11 Cases, or (2) the Bankruptcy Court enters an order converting or dismissing the applicable Reorganized Debtors' Chapter 11 Cases. Any deadline for filing Administrative Expense Claims or Professional Compensation Claims shall not apply to U.S. Trustee fees.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      Classification of Claims and Interests

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. All Claims and Interests, except for Claims addressed in Article II of the Plan, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim against a Debtor is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

B.      Summary of Classification

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.C hereof.

11

4900-7463-4422 v5

This Plan under chapter 11 of the Bankruptcy Code proposes to pay creditors of Stream and Technovative from the Debtors' Assets pursuant to section 1123(b)(4) of the Bankruptcy Code.

This Plan provides for:   ___0___ classes of secured claims;
___3___ classes of unsecured creditors; and
___1___ class of equity security holders.

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2a | General Unsecured Claims against Stream | Impaired | Entitled to Vote |
| 2b | General Unsecured Claim against Technovative | Impaired | Entitled to Vote |
| 3 | Subordinated Unsecured Claims against Stream | Impaired | Entitled to Vote |
| 4 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

C.      Treatment of Claims and Interests

Subject to Article VII of the Plan, to the extent a Class contains Allowed Claims or Interests with respect to a particular Debtor, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Chapter 11 Trustee and the Holder of such Allowed Claim or Allowed Interest, as applicable.

1.      Class 1 — Priority Claims

(a)     *Classification:* Class 1 consists of all Priority Claims that are not tax Claims.

(b)     *Treatment:* Except to the extent that a Holder of an Allowed Priority Claim and the Chapter 11 Trustee or Disbursing Agent agree to less favorable treatment for such Holder, each Holder of an Allowed Priority Claim shall receive payment in full on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of such Claim.

12

4900-7463-4422 v5

(c)   *Voting:* Class 1 is Unimpaired under the Plan. Each Holder of a Class 1 Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Class 1 Priority Claim is not entitled to vote to accept or reject the Plan.

2.   Class 2a — General Unsecured Claims against Stream

(a)   *Classification:* Class 2a consists of all Allowed General Unsecured Claims against Stream, including holders of Contract Rejection Claims, and are entitled to vote to accept or reject the Plan.

(b)   *Treatment:* On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 2a General Unsecured Claim against Stream shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Claim, Pro Rata payment in cash up to the Allowed amount of each such Claim, but only after payment in full to all Administrative Expense Claims, Professional Compensation Claims, Priority Tax Claims, and Allowed Class 1 Priority Claims.

(c)   *Voting:* Class 2a is Impaired under the Plan.  Therefore, each Holder of an Allowed Class 2a General Unsecured Claim is entitled to vote to accept or reject the Plan.

3.   Class 2b — General Unsecured Claim against Technovative

(a)   *Classification:* Class 2b consists of the M&E Claim.

(b)   *Treatment:* On the Effective Date, or as soon as reasonably practicable thereafter, McCarter & English, LLP shall be paid $50,000 in Cash on the Effective Date as payment in full and final satisfaction of the M&E Claim.

(c)   *Voting:* Class 2b is Impaired under the Plan. Therefore, each Holder of an Allowed Class 2a General Unsecured Claim is entitled to vote to accept or reject the Plan.

4.   Class 3 — Subordinated Unsecured Claims

(a)   *Classification:* Class 3 consists of all Subordinated Unsecured Claims, whether subordinated by the Effective Date or not. To the extent these claims arise from damages occasioned in connection with a purchase of or sale of a security, they will be automatically subordinated. Included in Class 3 is any claim subordinated by order of the Bankruptcy Court under section 510 of the Bankruptcy Code relating to any inequitable conduct by any Person or Entity asserting a Claim against the Debtors and the subordinated Unsecured Deficiency Claim of the Secured Creditors.

(b)   *Treatment:* On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Class 3 Allowed Subordinated Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement,

13

release, and discharge of such Claim, Pro Rata payments in cash up to the Allowed amount of each such Claim, but only after payment in full to all Administrative Expense Claims, Professional Compensation Claims, Priority Tax Claims, Class 1 Priority Claims and Class 2a General Unsecured Claims.

*(c)*   *Voting:* Class 3 is Impaired under the Plan.  Therefore, each Holder of a Class 3 Subordinated Unsecured Claim is entitled to vote to accept or reject the Plan.

4.   Class 4 — Equity Interests

*(a)*   *Classification:* Class 6 consists of all Equity Interests in Stream and includes holders of all classes of shares in Stream.

*(b)*   *Treatment:* Holders of Class 6 Equity Interests shall receive no recovery or distribution on account of such Equity Interests. On the Effective Date, all Equity Interests in Stream and the corresponding underlying securities evidencing such Claims or interest shall be canceled, released, extinguished, and discharged, and will be of no further force or effect.

*(c)*   *Voting:* Class 6 is Impaired under the Plan. Each Holder of a Class 6 Equity Interest in Stream is conclusively presumed to have rejected the Plan pursuant to 1126(g) of the Bankruptcy Code. Therefore, each Holder of a Class 6 Equity Interest in Stream is not entitled to vote to accept or reject the Plan.

D.   <u>Voting of Claims</u>

1.   Each Holder of a Claim in an Impaired Class that is entitled to vote on the Plan as of the record date for voting on the Plan pursuant to this Article III shall be entitled to vote to accept or reject the Plan as provided in the Disclosure Statement [D.I. ___] and the Order Approving the Disclosure Statement [D.I. ___], or any other order of the Bankruptcy Court.

2.   In order for its Ballot to count, the Holder of an Allowed Claim in Class 2a, 2b or 3 must (i) complete, date and properly execute the Ballot, and (ii) properly deliver the Ballot to the Claims Agent by First Class Mail to the following address: BMC Group, Attn: Stream TV Ballot Processing, PO Box 90100, Los Angeles, CA 90009, or via overnight courier, messenger or hand delivery to BMC Group, Attn: Stream TV Ballot Processing, 3732 West 120th Street, Hawthorne, CA 90250.  Ballots may also submitted through the online voting portal maintained by the Claims Agent at https://ballots.bmcgroup.com/streamtv. To submit your Ballot via the Claims Agent's online portal, please visit https://ballots.bmcgroup.com/streamtv and follow the instructions.

E.   <u>No Substantive Consolidation</u>

Although the Plan is presented as a joint plan of reorganization, the Plan does not provide for the substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for any reason. Except as expressly provided herein, nothing in the Plan or the Disclosure Statement shall constitute or be deemed to constitute an admission that either or both of the Debtors is subject to or liable for any Claims against the other Debtor. A Claim against multiple Debtors will be treated as a separate Claim

14

against each applicable Debtor's Estate for all purposes, including voting and distribution; provided, however, that no Claim will receive value in excess of one hundred percent (100.0%) of the Allowed amount of such Claim or Interest under the Plan for the Debtors.

F.        Acceptance by Impaired Classes.

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if Holders of at least two-thirds in dollar amount and more than one-half in number of the Claims of such Class entitled to vote that actually vote on the Plan have voted to accept the Plan. Holders of Classes 2 (General Unsecured Claims) and 3 (Subordinated Unsecured Claims) are Impaired, and the votes of Holders of Claims in such Classes will be solicited. If a Class contains Holders of Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

G.        Consensual Confirmation

The Plan shall be deemed a separate Chapter 11 plan for each Debtor. To the extent that there is no rejecting Class of Claims in the chapter 11 Plan of any Debtor, the Chapter 11 Trustee shall seek Confirmation of such Debtor's Plan pursuant to section 1129(a) of the Bankruptcy Code.

H.        Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Chapter 11 Trustee shall seek Confirmation of the Debtors' Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.

I.        Controversy Concerning Impairment or Classification

If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests is Impaired or is properly classified under the Plan, the Bankruptcy Court shall, after notice and a hearing, resolve such controversy at the Confirmation Hearing.

J.        Intercompany Interests

Intercompany Interests are being maintained to ensure the existing corporate structure of the Debtors.  For the avoidance of doubt, any Interest in non-Debtor Affiliates owned by a Debtor shall continue to be owned by the applicable Reorganized Debtor, unless previously sold by the Chapter 11 Trustee pursuant to the Sale Order.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.        Sources of Consideration for Plan Distributions

The Trustee or the Disbursing Agent shall fund the distributions contemplated under the Plan, as applicable with: (1) Cash on hand; (2) the net proceeds of any recoveries on the Debtors'

15

4900-7463-4422 v5

Causes of Action, including any Avoidance Cause of Action; (3) the proceeds of any claim for indemnification under the Stalking Horse APA and the Sale Order against the Purchaser; and (4) any other Assets of the Debtors discovered and later recovered by the Chapter 11 Trustee or the Disbursing Agent.

Each distribution and issuance referred to in Article III of the Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person or Entity receiving such distribution or issuance; provided that, to the extent that a term of the Plan or the Confirmation Order conflicts with the term of any such instruments or other documents, the terms of the Plan and/or the Confirmation Order shall govern.

On the Effective Date, the Disbursing Agent, or as soon thereafter in the sole discretion of the Disbursing Agent, shall make distributions to Holders of Allowed Claims in such Classes in accordance with the treatment set forth in the Plan for such Classes in accordance with the terms of this Plan.

B.      Corporate Existence

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws, not to operate, but solely for purposes of winding down the respective Debtor estates.

C.      Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Confirmation Order, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property (including all interests, rights, and privileges related thereto) in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan, including Interests held by the Debtors in any non-Debtor Affiliates not conveyed pursuant to the Sale Order, shall vest in the applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, encumbrances, or other interests, unless expressly provided otherwise by the Plan or Confirmation Order, subject to and in accordance with the Plan.

D.      Manager of the Reorganized Debtors

As of the Effective Date, the Debtors will continue to not operate. The Disbursing Agent shall act as the sole representative of the Reorganized Debtors. All board and officer positions will be terminated by operation of the Plan and the Confirmation Order on the Effective Date without the need for further order of the Bankruptcy Court or any other court, or additional corporate action.

16

E.      Employment Obligations

All employment contracts of the Debtors, if any, shall be rejected as of the Effective Date by operation of the Plan and the Confirmation Order without the need for further order of the Bankruptcy Court or any other court.

F.      Exemption from Certain Taxes and Fees

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax, document recording tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

G.      Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain all Causes of Action and the Disbursing Agent, in his sole and exclusive discretion, may enforce any and all rights to commence and pursue, any and all Causes of Action, including any Claims or Causes of Action for Subordination under section 510 of the Bankruptcy Code, and the Avoidance Causes of Action whether arising before or after the Petition Date, and the Debtors' respective rights to commence, prosecute, or settle such Causes of Action shall be preserved and vested in the Disbursing Agent, notwithstanding the occurrence of the Effective Date. For the avoidance of doubt, the preservation of Causes of Action described in the preceding sentence includes, but is not limited to, the Debtors' rights, as applicable, to (1) assert any and all Causes of Action held by the Debtors whether specifically identified herein or not, any counterclaims, crossclaims, claims for contribution defenses, and similar claims in response to such or Causes of Action, (2) object to Administrative Expense Claims, including but not limited to the Chapter 11 Trustee's pending objection to Lewis Brisbois Bisgaard & Smith LLP final fee application request, (3) object to other Claims, and (4) subordinate Claims, other than the Causes of Action released by the Debtors.

The Disbursing Agent, on behalf of the Debtors and the Reorganized Debtors, expressly reserves all rights to prosecute any and all Causes of Action against any Entity or Person. Unless any Cause of Action against an Entity or Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Disbursing Agent expressly reserves all and shall retain the applicable Causes of Action, including the Avoidance Causes of Action for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The applicable Reorganized Debtor shall retain all Causes of Action and the Disbursing Agent, on behalf of the Reorganized Debtors shall have the sole and exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy

17

Court.

H.      Settlement of Claim against Technovative; Termination of Subordination Rights

1.      Pursuant to section 1123 of the Bankruptcy Code and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims, Causes of Action, or controversies of McCarter & English, LLP as follows: (i) the Chapter 11 Trustee having reviewed and raised informal objections to the sole remaining Claim against Technovative consisting of the M&E Claim; and (ii) in exchange for the Chapter 11 Trustee refraining from filing formal objections to the M&E Claim, McCarter & English, LLP agrees to accept $50,000 in Cash on the Effective Date, or as soon as reasonably practicable hereafter, as payment in full and final satisfaction of the M&E Claim, and McCarter & English LLP shall have an Allowed Class 2a General Unsecured Claim against Stream in the amount of $2,809,902.63. This Plan shall be deemed a motion to approve the good-faith compromise and settlement of the M&E Settlement as set forth above, pursuant to section 1123 of the Bankruptcy Code and, with respect to the compromise and settlement embodied in the M&E Settlement, Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement embodied in the M&E Settlement and a finding that such compromise or settlement is: (i) in the best interest of the Debtors, the Reorganized Debtors, and their respective Estates and property, and of Holders of Claims or Equity Interests; (ii) fair, equitable, and reasonable; and (iii) does not fall below the lowest range of reasonableness.

2.      Except as provided herein, the classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments under this Plan take into account or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b), or 510(c) of the Bankruptcy Code or otherwise, and any and all such rights against the Debtors and/or their Estates are terminated pursuant to this Plan. Pursuant to section 510 of the Bankruptcy Code, the Chapter 11 Trustee or the Disbursing Agent, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Equity Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

I.      Corporate Existence

On and after the Effective Date, the Reorganized Debtors shall, in the Disbursing Agent's sole discretion, continue in existence for the sole purposes of completing the liquidation of the Debtors' remaining Assets. The Disbursing Agent, as the Reorganized Debtors' sole representative, shall be exclusively empowered to take any action with respect to: (a) resolving Disputed Claims; (b) making distributions on account of Allowed Claims as provided hereunder; (c) enforcing and prosecuting claims, interests, rights, and privileges including, but not limited to the Causes of Action, to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith; (d) filing appropriate tax returns; (e) complying with obligations under the Stalking Horse APA; and (f) administering the Plan in an efficient manner.  The Disbursing Agent shall be deemed to be substituted as representative of the Reorganized Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending or later initiated in the Bankruptcy Court; and (b) all matters pending or later initiated in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, without the need or requirement to file motions or substitutions of parties or counsel in each such matter.

18

1.      Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects.

Except as otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, the Assets of the Debtors that were not transferred to the Purchaser pursuant to the Sale Order and the Stalking Horse APA, if any, shall vest in the applicable Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances, subject to and in accordance with the Plan.

2.  Preservation of Causes of Action

Unless any Cause of Action against an Entity or Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, or sold pursuant to an asset purchase agreement, in accordance with section 1123(b) of the Bankruptcy Code, the Disbursing Agent on behalf of and as the sole representative of the Reorganized Debtors shall retain all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, which shall vest in the Reorganized Debtors pursuant to the terms of the Plan. Unless any such Cause of Action against an Entity or Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order or sold pursuant to an asset purchase agreement, the Debtors expressly reserve all such Causes of Action including the Avoidance Causes of Actions for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. **No Entity or Person may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Cause of Action against them as any indication that the Disbursing Agent, on behalf of the Debtors or the Reorganized Debtors, to any Cause of Action against them as any indication that the Disbursing Agent, on behalf of the Debtors or the Reorganized Debtors, will not pursue any and all available Causes of Action. The Disbursing Agent and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity.**

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>

Except as otherwise set forth herein, all Executory Contracts or Unexpired Leases will be deemed rejected as of the Effective Date, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed or rejected by the Debtors; or (2) are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases. The assumption or rejection of all executory contracts and unexpired leases in the Chapter 11 Cases or in the Plan shall be determined by the Chapter 11 Trustee in his sole discretion.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assumptions and assignments, and the rejection of the Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

19

B.       Claims Based on Rejection of Executory Contracts or Unexpired Leases

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Claims Agent and served on the Disbursing Agent and his counsel no later than thirty (30) calendar days after notice of such rejection is served on the applicable claimant. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time shall be automatically Disallowed and forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Disbursing Agent, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, including any Claims against any Debtor listed on the Schedules as unliquidated, contingent or disputed. Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as a Class 2a General Unsecured Claim against Stream and shall be treated in accordance with Article III of the Plan.

C.       Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any Cure Claims shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date or as soon as reasonably practicable thereafter, with such Cure Claim being $0.00 if no amount is listed in the Cure Notice, subject to the limitations described below, or on such other terms as the party to such Executory Contract or Unexpired Lease may otherwise agree.

At least fourteen (14) calendar days before the Confirmation Hearing, the Chapter 11 Trustee shall distribute, or cause to be distributed, Cure Notices and proposed amounts of Cure Claims to the applicable Executory Contract or Unexpired Lease counterparties. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served, and actually received by the Chapter 11 Trustee and his counsel at least seven (7) calendar days before the Confirmation Hearing. Any such objection to the assumption of an Executory Contract or Unexpired Lease shall be heard by the Bankruptcy Court on or before the Effective Date, unless a later date is agreed to between the Chapter 11 Trustee, on the one hand, and the counterparty to the Executory Contract or Unexpired Lease, on the other hand, or by order of the Bankruptcy Court.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount shall be deemed to have assented to such assumption and/or cure amount; provided, however, that, subject to Article X.A of the Plan, the Disbursing Agent, on behalf of the Reorganized Debtors, shall have the right to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases, as applicable, through and including forty-five (45) calendar days after the Effective Date.

The Chapter 11 Trustee and the Disbursing Agent reserve the right to reject any Executory Contract or Unexpired Lease in the resolution of any cure disputes.  Notwithstanding anything to the contrary herein, if at any time the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Chapter 11 Trustee and the Disbursing Agent will have the right, at such time, to add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, or reject it, in which case such Executory Contract or Unexpired Lease shall be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or

20

4900-7463-4422 v5

defaults, whether monetary or nonmonetary, including defaults of provisions restricting a change in control or any bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date of assumption for such Executory Contract or Unexpired Lease; provided that nothing herein shall prevent the Chapter 11 Trustee from (a) paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure Claim, or (b) settling any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed and cured shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D.      Insurance Policies

All of the Debtors' insurance policies, and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Chapter 11 Trustee shall determine whether to assume any of the Debtors' prepetition insurance policies and any agreements, documents, and instruments related thereto.

E.      Indemnification Provisions

Except as otherwise provided in the Plan, on and as of the Effective Date, any of the Debtors' indemnification obligations with respect to any contract or agreement that is the subject of or related to any litigation against the Debtors or Reorganized Debtors, as applicable, are hereby rejected by the Chapter 11 Trustee.  For the avoidance of doubt, nothing herein shall in any way affect any indemnification in favor of the Debtors or the Chapter 11 Trustee or his Professionals including, but not limited to, the indemnification provisions in favor of the Chapter 11 Trustee and his professionals in the Stalking Horse APA and the Sale Order, and the Estates' obligations to provide indemnity to SSG Capital Advisors LLC under its contract and the Bankruptcy Court order providing for SSG's appointment and the Bankruptcy Court order directing the Chapter 11 Trustee to indemnify and reimburse SSG for all reasonable defense costs, fees and expenses [D.I. 1006].

F.      Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan shall constitute an admission by the Chapter 11 Trustee or the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease, or that any Reorganized Debtor has any liability thereunder.  If, prior to the Effective Date, there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Chapter 11 Trustee or the Disbursing Agent shall have forty-five (45) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

G.      Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases, and this paragraph shall constitute a request for such extension pursuant to Bankruptcy Rule 9006(b).

4900-7463-4422 v5

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.     <u>Timing and Calculation of Amounts to Be Distributed</u>

Unless otherwise provided in the Plan, on the Effective Date or as soon thereafter as the Disbursing Agent deems practicable, in his sole discretion, (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim), each Holder of an Allowed Claim shall be entitled to receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims (which will only be made if and when they become Allowed Claims) shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise expressly provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. The Disbursing Agent shall have no obligation to recognize any transfer of Claims against any Debtor or privately held Interests occurring on or after the Distribution Record Date.

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Disbursing Agent on the Effective Date or as soon as reasonably practicable thereafter to be determined in the Disbursing Agent's sole discretion. The Disbursing Agent shall not be required to give any bond, surety, or other security for the performance of the Disbursing Agent's duties unless otherwise ordered by the Bankruptcy Court.

B.     <u>Disbursing Agent</u>

1.     Appointment and Powers of the Disbursing Agent

The Disbursing Agent shall act for the Reorganized Debtors after the Effective Date in the same fiduciary capacity as applicable to the Debtors' officers and directors.  The Chapter 11 Trustee who served in such capacity immediately before the Effective Date shall be replaced by the Disbursing Agent on the Effective Date.  From and after the Effective Date, the Disbursing Agent shall be the sole representative of, and shall act for, the Reorganized Debtors.  The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent him with respect to his responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent, in his sole discretion, to be necessary and proper to implement the provisions hereof.

2.     Post-Effective Date Fees and Expenses

From and after the Effective Date, the Disbursing Agent shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Disbursing Agent and those professional persons employed by the Disbursing Agent incurred in connection with the implementation and consummation of the Plan, the reconciliation of Claims, the prosecution of Causes of Action, or any other matters as to which such professionals are employed.  The compensation payable to the Disbursing Agent shall be based upon the hourly rate of the Disbursing Agent and those professionals employed by the Disbursing Agent to effectuate the terms of this Plan.  The Disbursing Agent's current hourly rate is $640.  The Disbursing Agent has agreed to a reduced hourly rate in the amount of $500

22

4900-7463-4422 v5

for this engagement.  Additionally, the Disbursing Agent shall seek a 10% discount from any professionals retained by the Disbursing Agent in discharging his duties under the Plan.  Further, the Disbursing Agent will engage counsel on a contingent basis to pursue claims for indemnification under the Stalking Horse APA and the Sale Order against the Purchaser. The reasonable fees and expenses of the Disbursing Agent and any such professionals ("Disbursing Agent Expenses") shall be paid from the Assets of the Reorganized Debtors prior to any distributions to Holders of General Unsecured Claims, Holders of Subordinated Unsecured Claims and Holders of Equity Interests.

3.      Limitations on Liability

The Disbursing Agent shall not incur liability to any Person by reason of the discharge of his duties set forth in this Plan except in the event a court of competent jurisdiction determines by Final Order gross negligence or willful misconduct.

4.      Disbursing Agent Indemnification.

The Disbursing Agent and all professionals retained by the Disbursing Agent, each in their capacities as such, shall be deemed indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Debtors and the Estates.  Notwithstanding anything to the contrary contained herein, the Disbursing Agent in his capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors or the Estates.

5.      Transfer of Privilege/No Waiver

On the Effective Date, all of the Debtors' evidentiary privileges, including the attorney/client privilege, shall be deemed transferred to the Reorganized Debtors and Disbursing Agent.  The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief.  Upon such transfer, the Debtors and the Estates shall have no other further rights or obligations with respect thereto.  Nothing herein shall be deemed a waiver of the Debtors' or the Estates' rights of privilege.

C.      Delivery of Distributions and Undeliverable or Unclaimed Distributions

1.      Delivery of Distributions

(a)      Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims or Interests shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent: (i) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Disbursing Agent has been notified in writing of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address; or (iv) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Chapter 11 Trustee and/or Disbursing Agent shall not incur any liability whatsoever on account of any distributions under the Plan, except in the event of

23

4900-7463-4422 v5

actual fraud, gross negligence, or willful misconduct, as determined by a Final Order of a court of competent jurisdiction.

D.       Record Date of Distributions

As of the close of business on the Distribution Record Date, the various transfer registers for each Class of Claims as maintained by the Reorganized Debtors or the Claims Agent shall be deemed closed, and there shall be no further changes in the record Holders of any Claims.  The Disbursing Agent shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date.  In addition, with respect to payment of any cure amounts or disputes over any cure amounts, the Disbursing Agent shall have no obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Cure Claim.

E.       Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the Disbursing Agent, on the one hand, and the Holder of a Disputed Claim, on the other hand, or as set forth in a Final Order, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all of the Disputed Claim has become an Allowed Claim by Final Order or has otherwise been resolved by settlement or Final Order.

F.       Minimum Distributions

Notwithstanding any other provision of the Plan, no Cash payment valued at less than $100.00, in the reasonable discretion of the Disbursing Agent, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim. Such Allowed Claims to which this limitation applies shall be discharged and its Holder forever barred from asserting that Claim against the Debtors or their property.

G.       Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) calendar days from the date of the distribution.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors for redistribution by the Disbursing Agent at his sole discretion automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, state, or other jurisdiction escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.  The Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court docket.

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) calendar days from and after the date of issuance thereof.  Requests for reissuance of any check must be made directly and in writing to the Disbursing Agent by the Holder of the relevant Allowed Claim within the ninety (90) calendar day period.  After such date, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be

24

4900-7463-4422 v5

automatically discharged and forever barred, and such funds shall revert to the Reorganized Debtors for redistribution by the Disbursing Agent at his sole discretion (notwithstanding any applicable federal, provincial, state or other jurisdiction escheat, abandoned, or unclaimed property laws to the contrary).

A distribution shall be deemed unclaimed if a Holder has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Disbursing Agent of an intent to accept a particular distribution; (c) responded to the Disbursing Agent's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

H.     Remainder Amounts After Distribution

If at any time the Disbursing Agent determines that the expense of administering the Reorganized Debtors so as to make a final distribution to Holders of Allowed Claims is likely to exceed the value of the assets remaining in the Reorganized Debtors, the Disbursing Agent may (i) reserve any amount necessary to dissolve the Reorganized Debtors, and (ii) donate any remaining assets to a 501(c)(3) charity to be selected by the Disbursing Agent.

I.     Manner of Payment

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check, wire transfer, automated clearing house, or as otherwise required or provided in applicable agreements.

J.     Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Disbursing Agent shall ensure the Reorganized Debtors comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, retaining a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information, documentation, and certifications necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable or appropriate. All Persons or Entities holding Claims against any Debtor shall be required to provide any information necessary for the Disbursing Agent to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit. The Disbursing Agent reserves the right to allocate any distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit on account of such distribution.

K.     No Post-petition or Default Interest on Claims

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, post-petition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any

25

such Claim for purposes of distributions under the Plan.

L.    Allocations

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remaining portion of such Allowed Claim, if any.

M.    Setoffs and Recoupment

The Disbursing Agent may, but shall not be required to, setoff against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature whatsoever that the Debtors, as applicable, may have against the Holder of such Allowed Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law, to the extent that such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (pursuant to the Plan or otherwise); provided, however, that the failure of the Disbursing Agent to do so shall not constitute a waiver, abandonment, or release by the Debtors of any such Claim they may have against the Holder of such Claim.

N.    Foreign Current Exchange Rate

As of the Effective Date, any Claim asserted in a currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate on the Petition Date, as quoted at 4:00 p.m. (prevailing Eastern Time), midrange spot rate of exchange for the applicable currency as published in the Wall Street Journal, National Edition, on the day after the Petition Date.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.    Resolution of Disputed Claims

1.    Allowance of Claims

After the Effective Date, the Disbursing Agent and, with respect to each Class of Claims, shall have and retain any and all rights and defenses the Debtors had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim against any Debtor shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

2.      Claims and Equity Interests Administration Responsibilities

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Disbursing Agent shall have the sole and exclusive authority to: (a) file, withdraw, or litigate to judgment objections to Claims against any of the Debtors; (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; (c) file, prosecute, litigate, compromise or settle any Cause of Action, including the Avoidance Causes of Action; and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  The Chapter 11 Trustee and Disbursing Agent shall have the right to amend the Debtors' Bankruptcy Schedules to modify or remove any scheduled claims that the Chapter 11 Trustee or Disbursing Agent believes are improper in any way or in which the Debtors and Reorganized Debtors may hold Causes of Action against as a means of setoff and/or recoupment, subject to any affected parties receiving notice of such amendment.  Any party affected by any such amendment shall retain and reserve all rights to file a proof of claim, which shall be deemed timely if filed on or within thirty (30) days after notice of such amendment is served upon such party, and any such party who does not file a proof of claim on or within such thirty (30) day period shall be forever barred from asserting that Claim against the Debtors or their property.  The Chapter 11 Trustee and Disbursing Agent reserve all rights to object to any such timely filed proof of claim.

3.      Estimation of Claims

Before or after the Effective Date, the Chapter 11 Trustee or Disbursing Agent, may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Disputed, contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions) subject to final Allowance, and the Chapter 11 Trustee or Disbursing Agent may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before fourteen (14) calendar days after the date on which such Claim is estimated.  All of the aforementioned Claims, objections, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims against any of the Debtors may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

27

4.      Adjustment to Claims Without Objection

Any duplicate Claim or Interest, any Claim against any Debtor that has been paid or satisfied, or any Claim against any Debtor that has been amended or superseded, canceled, or otherwise expunged (including pursuant to the Plan), may, in accordance with the Bankruptcy Code and Bankruptcy Rules, be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Disbursing Agent without the Disbursing Agent having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest, and without any further notice to or action, order, or approval of the Bankruptcy Court.  Additionally, any Claim or Interest that is duplicative or redundant with another Claim or Interest against the same Debtor may be adjusted or expunged on the Claims Register at the direction of the Disbursing Agent without the Disbursing Agent having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest, and without any further notice to or action, order, or approval of the Bankruptcy Court.

5.      Deadline for Objection to Claims and Equity Interests

The Deadline to file any objections to Claims and Equity Interests, including Administrative Expense Claims that are not subject to a pending objection on the Effective Date, shall be one hundred eighty (180) days after the Effective Date (the "Claim and Interest Objection Bar Date").  The Disbursing Agent may seek one or more extensions of the Claim and Equity Interest Objection Bar Date from the Bankruptcy Court.  The filing of a motion by the Disbursing Agent to extend the time to file an objection to a Claim or Equity Interest will automatically extend the date to which the Disbursing Agent must file objections to a filed Claim or Equity Interest until a Final Order is entered on any such motion.

6.      Cancellation of Equity Interests

Except as otherwise set forth herein, on the Effective Date, all existing Equity Interests of each of the Debtors shall be retired, cancelled, extinguished and/or discharged in accordance with the terms of the Plan.  Except as otherwise provided in the Plan, on the Effective Date: (1) the obligations of the Debtors under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest shall be cancelled as to the Debtors shall not have any continuing obligations thereunder, and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged.

B.      Disallowance of Claims

Any Claims against any of the Debtors held by Persons or Entities from which property is recoverable under sections 542, 543, 547, 548, 550, or 553 of the Bankruptcy Code, or that is a

28

4900-7463-4422 v5

transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors.

Except as provided herein or otherwise agreed to by the Disbursing Agent, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late filed Claim has been deemed timely filed by a Final Order.

C.      Amendments to Proofs of Claim

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Proof of Claim or Interest may not be filed or amended without the prior authorization of the Bankruptcy Court or the Disbursing Agent and any such new or amended Proof of Claim filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court; provided, however, that the foregoing shall not apply to Administrative Expense Claims or Professional Compensation Claims.

D.      No Distributions Pending Allowance

Notwithstanding anything to the contrary herein, if any portion of a Claim against any Debtor is Disputed, or if an objection to a Claim against any Debtor or portion thereof is filed as set forth in this Article VII, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

E.      Disputed Claims Reserve

On or before the Effective Date, the Disbursing Agent shall establish one or more Disputed Claims Reserve for Disputed Claims, which Disputed Claim Reserves shall be administered by the Disbursing Agent.   The Disbursing Agent shall reserve in cash, for distribution on account of each Disputed Claim, the distribution due on account of the full asserted amount (or such lesser amount as may be determined in the discretion of the Disbursing Agent, but, for the avoidance of doubt, the Disbursing Agent may seek estimation by the Bankruptcy Court to ascertain the amount to be reserved on account of any such Disputed Claim) with respect to each Disputed Claim as if such Disputed Claim were Allowed.  The Disbursing Agent will, in his sole discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, if and when any such Disputed Claim is resolved consistent herewith and becomes an Allowed Claim, and any such amount will be distributable in respect of such Disputed Claim as such amount would have been distributable had the Disputed Claim been Allowed as of the Effective Date.  To the extent either or both Estates are

29

required by applicable law to pay taxes on the taxable net income or gain allocable to Holders of Disputed Claims and if and when such Disputed Claims are ultimately Allowed, Holders whose Disputed Claims are determined to be Allowed will receive Distributions from the Disputed Claims Reserve net of the taxes that the Estate or Estates previously paid on their behalf.

### F.        Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made by the Disbursing Agent to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Allowed Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Allowed Claim, without any interest, dividends, or accruals to be paid on account of such Allowed Claim unless required under applicable bankruptcy law.

### G.        No Interest

Unless otherwise expressly provided by section 506(b) of the Bankruptcy Code or as specifically provided for herein or by order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on Claims against any of the Debtors, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim; provided, however, that nothing in this Article VII.G shall limit any rights of any Governmental Unit to interest under sections 503, 506(b), 1129(a)(9)(A) or 1129(a)(9)(C) of the Bankruptcy Code or as otherwise provided for under applicable law.

## ARTICLE VIII.
## DISCHARGE, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.        No Discharge

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against the Debtors.

### B.        Release of Liens

Except as otherwise specifically provided in the Plan or in prior Orders of the Bankruptcy Court, on the closing Date of a sale of any Assets of the Debtors, all Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, discharged, and compromised, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, UCCs or other security interests against any property of the Estates shall revert to the Reorganized Debtors for liquidation and distribution by the Disbursing Agent, without any further approval or order of the Bankruptcy Court and without any action or filing

30

being required to be made by the Debtors.

In addition, the Secured Creditors shall execute and deliver all documents reasonably requested by the Disbursing Agent or the Purchaser, as applicable, to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Trustee to terminate the lien, without the need to file UCC-3 termination statements or other jurisdiction equivalents.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release (1) to the extent that any Causes of Action against the Debtors are not released or discharged pursuant to the Plan, the Hawk Settlement, or the Rembrandt Settlement, any rights of the Trustee or the Disbursing Agent to assert any and all of the Debtors' counterclaims, crossclaims, claims for contribution, defenses, and similar claims in response to such Causes of Action, (2) any Causes of Action, including any Avoidance Cause of Action or Cause of Action for Indemnification from the Purchaser, (3) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed, and (4) any Cause of Action against a Holder of a Disputed Claim or the Holder of any Interest, as well as the Debtors' officers, directors, members, managers or shareholders.

C.      Regulatory Activities

Notwithstanding anything to the contrary herein, nothing in the Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units or other governmental agencies.

D.      Releases by the Debtors

Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan, for good and valuable consideration, including the service of the Exculpated Parties to facilitate the expeditious liquidation of the Debtors and the consummation of the transactions contemplated by this Plan, on the Effective Date, the Exculpated Parties are deemed forever released by the Debtors and their Estates, and each of their successors and assigns, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or their Estates would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the business or contractual arrangements between the Debtors and any of the Exculpated Parties, the negotiation, formulation or preparation of this Plan or related agreements, instruments or other documents (collectively, the "Debtors' Released Claims"), other than Debtors' Released Claims against an Exculpated Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such Person or entity.

E.      **Exculpation**

**Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party, as defined herein, shall have or incur any liability to any person or Entity for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Debtors' restructuring and liquidation efforts, the Hawk Settlement, the pursuit or**

31

**consummation of the sale of the Transferred Assets to the Purchaser, the Rembrandt Settlement, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or withdrawal or termination of the Disclosure Statement, the Plan, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.**

**The Exculpated Parties have, and upon the Effective Date, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan.**

F.     Injunction

**ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. THEREAFTER, FROM THE EFFECTIVE DATE FORWARD, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR TO THE EXTENT NECESSARY TO ENFORCE THE TERMS AND CONDITIONS OF THE PLAN, THE CONFIRMATION ORDER, OR A SEPARATE ORDER OF THE BANKRUPTCY COURT, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS WILL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE EXCULPATED PARTIES, THE PURCHASER (WITH THE EXCEPTION OF REMBRANDT SOLEY AS TO THE PURCHASER AND THE TRUSTEE IN CONNECTION WITH HIS INDEMNIFICATION RIGHTS UNDER THE STALKING HORSE APA AND SALE ORDER), THE DEBTORS, THEIR ESTATES, OR ANY OF THEIR PROPERTY ON ACCOUNT OF ANY SUCH CLAIM OR EQUITY INTEREST: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE FROM SUCH ENTITIES, EXCEPT AS OTHERWISE SET FORTH IN THE PLAN; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN, PROVIDED, HOWEVER, THAT SUCH ENTITIES WILL NOT BE PRECLUDED FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN OR THE CONFIRMATION ORDER.**

G.     Gatekeeper Provision

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Debtors, the Disbursing Agent or the Exculpated Parties, without first (1)

32

4900-7463-4422 v5

requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against the Debtors, Disbursing Agent or Exculpated Party and is not a Claim that the Debtors released under this Plan, is subject to Exculpation or the Injunction contained in this Plan, which request must attach the complaint or petition proposed to be filed by the requesting party, and (2) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against the Debtors, the Disbursing Agent or the Exculpated Parties. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action; provided, however, that nothing in this Section VIII.G requires, precludes, and/or prohibits an Insurer to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law.

H.      Direct Insurance Claims

Nothing contained in the Plan shall impair or otherwise affect any right of a Holder of a Claim under applicable law, if any, to assert direct claims solely under any applicable insurance policy of the Debtors or solely against any applicable provider of such policies, if any.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      Conditions Precedent to the Effective Date

It is a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B:

1.      Confirmation and all conditions precedent thereto shall have occurred;

2.      The Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Chapter 11 Trustee in his sole discretion; and

3.      The final version of the Plan, including all schedules, supplements, and exhibits thereto, shall be in form and substance acceptable to the Chapter 11 Trustee in his sole discretion.

B.      Waiver of Conditions

Any or all of the conditions to Consummation set forth in Article IX.A may be waived by the Chapter 11 Trustee.

C.      Effect of Failure of Conditions

If Consummation of the Plan does not occur, the Plan shall be null and void in all

4900-7463-4422 v5

respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims, Causes of Action, or Interests; (2) prejudice in any manner the rights of the Chapter 11 Trustee to assert the rights of the Debtors, or the rights of any Holder, any Person, or any other Entity; or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, any Person, or any other Entity.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      Modification and Amendments

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Chapter 11 Trustee reserves the right, in his sole and exclusive discretion, without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  After the Confirmation Date and before substantial consummation of the Plan, the Chapter 11 Trustee may initiate proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and intent of the Plan.

After the Confirmation Date, the Chapter 11 Trustee or Disbursing Agent may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court; provided that such adjustments and modifications do not materially and adversely affect the treatment of Holders of Claims or Interests.

B.      Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      Revocation or Withdrawal of Plan

The Chapter 11 Trustee reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization.  If the Chapter 11 Trustee revokes or withdraw the Plan, or if Confirmation or Consummation does not occur, then, absent further order of the Bankruptcy Court: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Classes of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, any Person, or any other Entity; or (c) constitute an admission,

34

acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, any Person, or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, except as set forth in the Plan, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable, and to hear, determine and, if necessary, liquidate, any Claims against any of the Debtors arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Disbursing Agent amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

5.      ensure that distributions to Holders of Allowed Claims and Equity Interests, if any, are accomplished pursuant to the provisions of the Plan;

6.      adjudicate, decide, or resolve: (a) any motions, adversary proceedings, applications, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor, or the Estates that may be pending on the Effective Date or that, pursuant to the Plan, may be commenced after the Effective Date, including, but not limited to, the Causes of Action, and any Avoidance Cause of Action; (b) any and all matters related to Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan; and (c) any and all matters related to section 1141 of the Bankruptcy Code;

4900-7463-4422 v5

7.  enter and implement such orders as may be necessary or appropriate to construe, execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Confirmation Order, the Plan, or the Disclosure Statement;

8.  enter and enforce any order for the sale of property pursuant to sections 105, 363, 1123, or 1146(a) of the Bankruptcy Code;

9.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity or Person with the Consummation or enforcement of the Plan;

11.  hear and resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI;

13.  enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.  determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.  adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16.  consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan, the Disclosure Statement, or any Bankruptcy Court order, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

17.  determine requests for the payment of Claims against any of the Debtors entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.  hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Sale Order, any remanded proceedings, or any transactions or payments contemplated hereby or thereby, including disputes arising in connection with the implementation of the agreements, documents,

36

or instruments executed in connection with the Plan;

19.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, 511, and 1146 of the Bankruptcy Code;

20.    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Person or Entity, and resolve any cases, controversies, suits, or disputes that may arise in connection with any Person or Entity's rights arising from or obligations incurred in connection with the Plan;

21.    hear and determine any and all claims against the Chapter 11 Trustee and/or his professionals, including claims arising under the Barton Doctrine;

22.    hear and determine any other matter not inconsistent with the Bankruptcy Code;

23.    enter an order or final decree concluding or closing any of the Chapter 11 Cases; and

24.    hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan;

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, or the Disclosure Statement, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XI, the provisions of this Article XI shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against the Debtors that arose prior to the Effective Date.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    <u>Immediate Binding Effect</u>

Subject to this Article XII.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether their Claims or

37

Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors and each of their respective heirs executors, administrators, successors, and assigns.

### B.     Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### C.     Further Assurances

On or before the Effective Date, the Chapter 11 Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtors, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### D.     Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor or any other Entity with respect to the Plan or the Disclosure Statement, shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or other Entity before the Effective Date.

### E.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, receiver, trustee, successor, assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of such Entity.

### F.     Notices

Any pleading, notice, or other document required by the Plan or the Confirmation Order to be served or delivered shall be served by first-class or overnight mail:

(a)     Chapter 11 Trustee and Disbursing Agent:

William A. Homony, CIRA
8 Penn Center, Suite 950
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103

38

With a copy to:               Michael D. Vagnoni, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West, Suite 3400
1500 Market Street
Philadelphia, PA 19102
E-mail:        michael.vagnoni@obermayer.com; and

     (b)     Office of the U.S. Trustee at:

Andrew R. Vara
United States Trustee
Robert N.C. Nix Federal Building
900 Market Street, Suite 320
Philadelphia, PA 19107
Attention:    John Henry Schanne
E-mail:      john.schanne@usdoj.gov

G.      Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.      Cases

Upon the occurrence of the Effective Date, the Disbursing Agent shall be permitted to (a) close one of the Chapter 11 Cases as determined by the Disbursing Agent in his sole and exclusive discretion, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in such Chapter 11 Cases, and (b) change the name of the remaining Debtors and case caption of the remaining open Chapter 11 Cases as desired, in the Disbursing Agent's sole and exclusive discretion.

I.      Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed prior to the Confirmation Date.

[*Remainder of this page intentionally left blank.*]

39

4900-7463-4422 v5

J.      Deemed Acts

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party by virtue of the Plan and the Confirmation Order.


Dated: July 24, 2026                                    */s/ William A. Homony*
                                                        William A. Homony
                                                        Chapter 11 Trustee for the estates of
                                                        Stream TV Networks, Inc., and
                                                        Technovative Media, Inc.

4900-7463-4422 v5