# Exhibit A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into as of ~~July~~ August 3 __, 2026 by and among William A. Homony, in his capacity as Chapter 11 Trustee (the "Trustee") of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative," and collectively with Stream, the "Debtors") and Lewis Brisbois Bisgaard & Smith LLP ("LBBS") (the Trustee and LBBS are referred to collectively as the "Settling Parties" and individually as a "Settling Party"). SMC

## RECITALS

WHEREAS, on or about March 15, 2023 (the "Petition Date"), Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"), and the cases (the "Bankruptcy Cases") are being jointly administered under the caption *In re Stream TV Networks, Inc., et al.*, U.S.B.C. E.D. Pa. Case No. 23-10763 (DJB);

WHEREAS, William A. Homony is the duly appointed Chapter 11 Trustee of Debtors' bankruptcy estates;

WHEREAS, on April 3, 2023, Debtors filed an Application Pursuant to 11 U.S.C. § 327(a) of the Bankruptcy Code for Authority to Employ LBBS (the "Employment Application," D.I. 70). The Application was accompanied by a declaration from Attorney Raphael Zahralddin ("Zahralddin"), with respect to which supplemental declarations were filed by Zahralddin (collectively, the "Zahralddin Declarations");

WHEREAS, the Bankruptcy Court granted the Application and LBBS served as Debtors' counsel until on or about January 12, 2024, when the Bankruptcy Court removed Debtors' management and approved the Trustee's appointment;

WHEREAS, LBBS filed fee and expense reimbursement requests in connection with services it reports to have rendered to and on behalf of the Debtors, including the Sixth Request for Payment on Account for Compensation and Reimbursement of Expenses of Lewis Brisbois Bisgaard & Smith LLP, for the Periods December 1, 2023 through December 31, 2023 and January 1, 2024 through January 15, 2024 (D.I. 722), and the Final Application of LBBS for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period from March 15, 2023, through January 15, 2024 (D.I. 723) in the original amount of $2,977,958.10, filed on or about August 28, 2024 (collectively, the "Final Fee Application");

WHEREAS, on October 31, 2024 the Bankruptcy Court entered an Order (D.I. 779) approving the October 28, 2024 Stipulation (D.I. 773) between LBBS and the United States Bankruptcy Trustee (the "U.S. Trustee") which resolved the U.S. Trustee's informal objection to the Final Fee Application by reducing the amount sought in the Final Fee Application by the sum of $235,226.00;

WHEREAS, on or about November 18, 2024, the Trustee filed an Objection to the LBBS Final Fee Application (D.I. 808) (the "Trustee LBBS Fee Objection)" in which the Trustee

maintained that LBBS should be denied fees and expense reimbursement for the reasons detailed in the Trustee LBBS Fee Objection.

WHEREAS, on or about March 6, 2026 LBBS filed a Motion for Sanctions Pursuant to Fed. R. Bankr. P. 9011 and 28 U.S.C. § 1927 (the "Sanctions Motion," D.I. 1185), against the Trustee's counsel, Steven M. Coren, Esquire, Coren & Ress, P.C., Michael Vagnoni, Esquire, and Obermayer Rebmann Maxwell & Hippel LLP (collectively, "Trustee Counsel"), with respect to which Trustee Counsel objected (D.I. 1208 and 1209).

WHEREAS, the Parties conducted discovery in connection with the Final Fee Application, Trustee LBBS Fee Objection, Employment Application and Sanctions Motion;

WHEREAS, the Bankruptcy Court entered an Order denying the Sanctions Motion without prejudice on or about June 18, 2026 (D.I. 1251), and trial was set for August 10, 2026 in connection with the Final Fee Application and Trustee LBBS Fee Objection; and,

WHEREAS, the Settling Parties desire to compromise and settle any/all disputes among them on the following terms.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises aforesaid and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the Settling Parties hereby agree as follows:

1. Recitals. The recitals set forth above are incorporated herein, and the Settling Parties acknowledge that each recital is true and correct.

2. Effective Date. The term "Effective Date" shall mean the date on which an order entered by the Bankruptcy Court approving this Agreement (the "Approval Order") has become a final order.

3. Final Fee Award. In settlement of the Final Fee Application and Trustee LBBS Fee Objection, LBBS is granted an allowed final fee award in the amount of One Million Dollars ($1,000,000.00) (the "LBBS Allowed Claim").

4. Payment of LBBS Allowed Claim. The Trustee shall pay the LBBS Allowed Claim in full, within fifteen (15) days of the Effective Date.

5. Bankruptcy Court Approval. Promptly after all parties have executed this Agreement, the Trustee shall file a motion (the "9019 Motion") with the Bankruptcy Court requesting approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

6. Trustee/Debtors' Releases. On the Effective Date, except for the obligations under this Agreement, the Trustee (but only in his capacity as such), the Debtors, and the Debtors' estates shall, without further action, irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge LBBS, and its respective current and former parents, subsidiaries,

affiliates, members, directors, officers, managers, employees, attorneys, including Zahralddin (but only in their capacities as such), agents, insurers, and reinsurers (but only in their capacities as such), successors, or assigns, and its professional and agents (but only in their capacities as such) of and from any claim (as that term is defined in section 101(5) of the Bankruptcy Code), obligation, suit, judgment, damages, demand, debt, right (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liability (of every nature and description), allegations, demands, duties, or cause of action, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, under federal, state, local, statutory, common law, whether civil or criminal, or any other domestic or foreign law, rule, or regulation, that concern, arise out of refer, or relate in any way to, or are based upon any of the allegations, transactions, facts, matters, or subject matters, occurrences, representations, statements, or omissions alleged, involved, set forth, or referred to in or any arising out of or relating to the facts/matters set forth in the Final Fee Application, Trustee LBBS Fee Objection, Employment Application, Zahralddin Declarations and Sanctions Motion.

7. <u>LBBS Release</u>. On the Effective Date, except for the obligations under this Agreement, LBBS, on its own behalf and on behalf of Attorney Zahralddin (who has since left LBBS), shall, without further action, irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge the Trustee (in his individual and representative capacity), the Trustee's professionals and agents, including Trustee Counsel against whom the Sanctions Motion was filed (but only in their capacities as such), the Debtors, the Debtors' estates, and their respective spouses, heirs, parents, subsidiaries, affiliates, members, directors, officers, managers, employees, attorneys (but only in their capacities as such), agents (but only in their capacities as such), successors, or assigns, and their professionals and agents (but only in their capacities as such), of and from any claim (as that term is defined in section 101(5) of the Bankruptcy Code), obligation, suit, judgment, damages, demand, debt, right (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liability, or cause of action, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, statute, or otherwise, including without limitation claims or potential claims arising out of the facts/matters set forth in the Final Fee Application, Trustee LBBS Fee Objection, Employment Application, Zahralddin Declarations, Sanctions Motion and the Debtors' Bankruptcy Cases. LBBS agrees that it will not be permitted to file any further pleadings or motions in the Bankruptcy Cases, except to enforce its rights under this Agreement. LBBS shall irrevocably, unconditionally, fully, finally and forever waive and release all rights to object to the fees and expenses of the Trustee and the Trustee's professionals in the Debtors' Bankruptcy Cases, and to the Trustee's administration of the Debtors' Bankruptcy Cases. Notwithstanding the foregoing, Shadron Stastney, SeeCubic, Inc., SeeCubic, B.V., Robert Morton, Hawk Investment Holdings Limited, Mathu Rajan, Raja Rajan, Visual Semiconductor, Inc., Visual Technology Innovations, Inc. and their affiliates, agents, employees, officers, directors, representatives, predecessors, successors and assigns are hereby expressly excluded from the scope of LBBS's release and they shall have no right to invoke or benefit from LBBS's release in this Section 7.

8. <u>Settling Party Representations</u>. Each Settling Party represents and warrants that: (a) such Settling Party and the signatory hereto has the power and authority to execute, deliver and perform this Agreement; (b) such Settling Party has taken all necessary actions to authorize the execution, delivery and performance of this Agreement; (c) this Agreement has been duly executed

and delivered by such Settling Party and constitutes the legal, valid, and binding obligations of such Settling Party, enforceable against it in accordance with their respective terms; (d) such Settling Party's execution, delivery, and performance of this Agreement does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of such Party and will not violate any applicable law, or any order or decree of any court or government instrumentality applicable to such Settling Party; and (e) such Settling Party has entered into this Agreement in reliance on its own independent investigation and analysis of the facts underlying the subject matter of this Agreement, and no representations, warranties, or promises of any kind have been made directly or indirectly to induce it to execute this Agreement other than those that are expressly set forth in this Agreement.

9. No Assignment. Each of the Settling Parties represents and warrants that it has not assigned or transferred any released matter or any right to consideration provided pursuant to this Agreement, the Parties shall have no right to assign this Agreement or any part thereof without the prior writer consent of the other Party, and any such purported assignment without prior written consent as aforesaid shall be null and void.

10. No Admission of Liability. This Agreement constitutes a compromise of the Settling Parties' disputes. Nothing contained herein shall constitute or be deemed an admission or concession by any Settling Party as to any matter or the validity of any claim or cause of action that has been or could be asserted in any of the claims that are settled herein. Except in a dispute seeking enforcement of this Agreement, nothing in this Agreement or any of its terms, or any negotiations or proceedings connected with this Agreement, or any documents or statements referred to therein, shall be admissible in evidence against any Settling Party in any litigation, matter, or proceeding between any of the Settling Parties.

11. Third Party Subpoenas or Information Requests. If a third party seeks information from or serves a subpoena on the Trustee concerning matters settled by this Agreement, the Trustee shall promptly provide notice of same to LBBS, subject to any restrictions that may exist under applicable law.

12. Voluntary Agreement. Each Settling Party acknowledges that it has read all the terms of this Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right, and enters into this Agreement voluntarily and without duress.

13. Joint Drafting. This Agreement shall be deemed to have been jointly drafted by the Settling Parties, and in construing or interpreting this Agreement, no provision shall be construed or interpreted for or against any Settling Party because such provision or any other provision of the Agreement was purportedly prepared or requested by such Settling Party.

14. Applicable Law. The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the Commonwealth of Pennsylvania, except to the extent inconsistent with federal law.

15. Jurisdiction. The Bankruptcy Court shall retain exclusive jurisdiction to enforce and interpret the provisions of this Agreement.

16. Attorneys' Fees, Costs and Expenses. Each of the Settling Parties agrees to bear its own costs and expenses, including attorneys' fees, arising out of the matters settled in this Agreement.

17. Successors and Assigns. This Agreement shall be binding on and inure to the benefit of the Parties and their respective agents, employees, affiliates, successors and assigns.

18. Modifications. Any time set forth herein may be extended by mutual written agreement of the Settling Parties, or their counsel, by e-mail stipulation. This Agreement may not otherwise be amended, changed, modified, superseded, or altered, and the terms and conditions may not be waived, except by a written instrument signed by each of the Settling Parties expressly stating that it is intended to amend, modify, supersede, or alter this Agreement.

19. Counterparts. This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement. Delivery of a signature page to this Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Agreement.

20. Entire Agreement. This document contains the entire Agreement between the Settling Parties concerning the subject matter of this Agreement and supersedes all prior agreements or negotiations of the Settling Parties, whether oral or in writing, with respect to the subject matter of this Agreement. Each Party acknowledges that no representations, inducements, promises or agreements, or otherwise, have been made by any party to this Agreement, or anyone acting on behalf of any party, and that any other alleged agreement, statement or promise not contained in this Agreement shall not be valid, biding or enforceable.

WHEREFORE, the Settling Parties have executed this Agreement as of the date first set forth above.

FOR THE TRUSTEE:

______________________________
William A. Homony, in his capacity as
Chapter 11 Trustee of the bankruptcy estates
of Stream TV Networks, Inc. and
Technovative Media, Inc.

FOR LBBS:

Lewis Brisbois Bisgaard & Smith LLP

/s/ Scott D. Cousins SMC
______________________________
By: Scott D. Cousins