**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| **Stream TV Networks, Inc., *et al*.** | : | **Bankruptcy No. 23-10763 (DJB)** **(Jointly Administered)**[1] |
| **Debtors.** | : | |

**EXPEDITED MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER (I) GRANTING EXPEDITED CONSIDERATION AND SHORTENED TIME; (II) APPROVING A SETTLEMENT AGREEMENT WITH MATHU RAJAN AND VISUAL SEMICONDUCTOR, INC. PURSUANT TO FED. R. BANKR. P. 9019(a) AND 11 U.S.C. § 105(a); AND (III) GRANTING RELATED RELIEF**

William A. Homony (the "Trustee"), in his capacity as Chapter 11 trustee of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative" or when referred to with Stream, the "Debtors"), by and through his counsel, Coren & Ress, P.C., files this Expedited Motion for Entry of an Order (i) granting Expedited Consideration and Shortened Time pursuant to Local Rule of Bankruptcy Procedure 5070-1(g); (ii) Approving a Settlement Agreement (the "Settlement Agreement" or the "Agreement") with Mathu Rajan ("Rajan") and Visual Semiconductor, Inc. ("VSI") (Rajan, VSI and the Trustee may be generally referred to as a "Party" or collectively, as the "Parties") pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a); and (iii) Granting Related Relief (the "Motion"), and in support thereof, respectfully avers as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue is

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764. (D.I. 95).

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), and (O).

3. The statutory basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") and Rules 5070-1(g), 9014-1 and 9014-2(a)(12) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "L.B.R.").

## II. BACKGROUND

4. The factual and procedural background of these cases are well known to this Court, and to the extent not stated herein, the Trustee incorporates the Court's recitations in the Trustee Opinion (hereinafter defined).

### A. Procedural History and Trustee Appointment

5. On March 15, 2023 (the "Petition Date"), Debtors filed voluntary petitions for relief pursuant to Chapter 11 of the United States Bankruptcy Code.

6. Stream was involved in two (2) prior bankruptcy cases, the first being a Chapter 11 case initiated by Stream on February 24, 2021, and docketed *In re: Stream TV Networks, Inc.*, Bankr. D. Del. No. 21-10433-KBO (the "Delaware Voluntary Bankruptcy Case") and the second being an involuntary Chapter 7 case initiated on May 23, 2021, docketed *In re Stream TV Networks, Inc.*, Bankr. D. Del. 21-10848 (the "Delaware Involuntary Bankruptcy Case").

7. On January 5, 2024, this Court entered a Memorandum and Order which, among other things, appointed a Chapter 11 trustee (the "Trustee Order" and "Trustee Opinion") (D.I. 549 and 548, respectively).

8. The Trustee Order and Trustee Opinion contain findings concerning the Debtors' management, disclosures, and the relationships among Stream, VSI, and Rajan, which Rajan and VSI dispute and do not admit.

9. Mr. Rajan is experiencing significant medical issues and is undergoing continuing medical treatment, which have resulted in medical stays of pending litigation in the Eastern District of Pennsylvania.

10. Stream, VSI, and others entered into post-petition, and without Bankruptcy Court approval, (a) an August 12, 2023 Amendment to the NY Settlement Agreement (the "Amendment"), and (b) an August 14, 2023 Licensing Covenant (the "Licensing Covenant").

11. On January 9, 2024, the Office of the United States Trustee filed a Notice of Appointment of William A. Homony to serve as the Chapter 11 trustee (the "Appointment Date") as well as an Application for the Entry of an Order Approving the Appointment of the Trustee (the "Trustee Application") (D.I. 554 and 553 respectively).

12. On January 12, 2024, the Bankruptcy Court entered an Order granting the Trustee Application to appoint William A. Homony as the Trustee (D.I. 558).

13. The Trustee is the sole representative of Debtors' bankruptcy estates, has been vested with exclusive authority to manage Debtors' bankruptcy estates, and has the duties enumerated under the Bankruptcy Code, including, *inter alia*, to act for the benefit of all creditors and to maximize the value of Debtors' bankruptcy estate.

14. On or about December 9, 2024, the Bankruptcy Court entered an order (the "Sale Order") approving the sale of substantially all the Debtors' assets to SeeCubic, Inc. ("SeeCubic") pursuant to a court-approved Asset Purchase Agreement (the "SeeCubic APA").

15. VSI has appealed various Orders entered by the Bankruptcy Court, the following of which are pending (others have been dismissed): E.D. Pa. Nos. 24-6397, 24-6498, 24-6617, 25-751, and 25-6463 (collectively, the "Pending VSI Appeals").

16. VSI filed an administrative claim (the "VSI Admin Claim") against the Debtors, which it withdrew amid the hearing with respect thereto.

17. Rajan and various individuals and entities related to, affiliated with or controlled by Rajan and/or VSI have claims currently identified in Stream's bankruptcy schedules (collectively, the "Rajan/VSI Related Claims") in the cumulative amount of $1,665,843.38, all of which the Trustee finds objectionable on one or more grounds and may challenge, including the following:

| **Sched.** | **Name** | **Amount** | **Description** |
|---|---|---|---|
| **47** | **Charles Robertson** | **$53,549.46** | **Goods services** |
| **48** | **Charles Robertson** | **$3,818.92** | **Wages** |
| **61** | **Daniel Rink** | **$2,004.27** | **Goods services** |
| **62** | **Daniel Rink** | **$2,070.57** | **wages** |
| **92** | **Innoventures Group LLC** | **$178,100.96** | **Goods services** |
| **110** | **Mathu Rajan** | **$5,325.57** | **Wages** |
| **111** | **Mathu Rajan** | **$185,354.47** | **Goods services** |
| **112** | **Mathu Rajan** | **$74,000.00** | **Goods services** |
| **114** | **Matt J. Lo** | **$120.46** | **Goods services** |
| **115** | **Matthew Lo** | **$7,128.63** | **Wages** |
| **116** | **Mediatainment, Inc.** | **$60,000.00** | **Goods services** |
| **117** | **Mediatainment, Inc.** | **$890,590.68** | **Money loaned** |

| | | | |
|---|---|---|---|
| **125** | **Nicole Marie Maneen** | **$1,400.27** | **Wages** |
| **132** | **Raja Rajan** | **$3,807.60** | **Wages** |
| **141** | **ST4M Electronics, Inc.** | **$143,448.99** | **Goods services** |
| **142** | **ST4M Electronics, Inc.** | **$10,313.46** | **Goods services** |
| **144** | **Stream TV International BV** | **$27,569.35** | **Goods Services** |
| **145** | **Suby Joseph** | **$2,158.50** | **Wages** |
| **146** | **Suby Joseph** | **$3,608.74** | **Wages** |
| **33** | **Amanda Von Ahnen** | **$1,544.12** | **Wages** |
| **137** | **Sara Leona Robertson** | **$1,527.57** | **Wages** |
| **172** | **Zeifang Hsu** | **$6,342.79** | **Wages** |
| **171** | **Zeifang Hsu** | **$2,058.00** | **Goods services** |

18. The individuals and entities identified in the table above and in the immediately preceding recital, other than Rajan and VSI, are referred to collectively as the "Third-Party Claimants"; and Mathu Rajan has been authorized to act as the legal agent and attorney-in-fact of each Third-Party Claimant for the limited purpose of executing the Settlement Agreement and consenting to the disallowance of such Third-Party Claimant's claim, and Rajan executed the Settlement Agreement both individually and in that representative capacity on behalf of each Third-Party Claimant.

**B. Trustee Settlement with Rajan and VSI**

19. On August 20, 2026, the Parties reached a settlement (the "Settlement"), which Settlement is embodied in the "Settlement Agreement" attached hereto as Exhibit A.

20. Taking into consideration the expense and uncertainty with respect to continued litigation, the Parties have agreed to compromise and settle all disputes between the Trustee and

the Debtors' estates on the one hand and Rajan and VSI on the other hand, without admission of liability or fault by any Party, and without conceding the strength or weakness of any claims or defenses.

21. The Settlement and Settlement Agreement are the product of robust arm's-length negotiation.

22. In the Trustee's business judgment, informed by the advice of special litigation counsel and bankruptcy counsel, the Settlement is in the best interests of the bankruptcy estates and Debtors' creditors, provides the best path forward for the bankruptcy estates and Debtors, and offers an opportunity to make a meaningful distribution to creditors.

23. In the Trustee's business judgment, the time is right for a full resolution of disputes with Rajan and VSI, and the Settlement for which Bankruptcy Court approval is sought substantially enhances payments to creditors as a result of eliminating future administrative expenses and potential claims against the Debtors.

24. The pertinent terms of the Settlement[2] are:

- Effective Date. The term "Effective Date" shall mean the date on which an order entered by the Bankruptcy Court approving the Settlement Agreement (the "Approval Order") has become a final order.

- Withdrawal of Pending VSI Appeals. Within five (5) days of the Effective Date, VSI shall terminate and withdraw the Pending VSI Appeals, with prejudice.

- Withdrawal of Rajan/VSI Related Claims. Upon the Effective Date, the Rajan/VSI Related Claims shall be deemed disallowed against Stream by virtue of the entry of the order approving the Agreement, without further order of the Bankruptcy Court.

- Disallowance of Third-Party Claimants' Claims. Mathu Rajan, individually and as duly authorized legal agent and attorney-in-fact for and on behalf of each

[2] In the event there is a discrepancy between the terms set forth in the Settlement Agreement and the summary of same contained in this Motion, the Settlement Agreement shall control.

of the Third-Party Claimants, executed the Settlement Agreement and bound such claimants to the disallowance provided in the Settlement Agreement.

- Releases. The Parties shall exchange mutual releases.

- Bankruptcy Court Approval. The Settlement is conditioned upon Bankruptcy Court approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

25. Through the Motion, the Trustee seeks the Court's approval of the Settlement and the Settlement Agreement.

## III. RELIEF REQUESTED

### A. The Settlement and Settlement Agreement Should be Approved

26. The Trustee respectfully requests entry of an Order approving the Settlement and Settlement Agreement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

27. Bankruptcy Rule 9019(a) provides that, "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement."

28. "The decision to approve or disapprove a settlement is within the sound discretion of the bankruptcy judge." *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Covenant Partners, L.P.*, 555 B.R. 490, 493 (Bankr. E.D. Pa. 2016) ("Approval of the settlement lies within the sound discretion of the Bankruptcy Court.").

29. "Settlements under Bankruptcy Rule 9019 are favored in bankruptcy as they avoid the expenses associated with litigating claims that can prove burdensome and expensive for the bankruptcy estate." *In re Legarde,* 654 B.R. 74, 84–85 (Bankr. E.D. Pa. 2023).

30. "In deciding whether to approve a settlement, the Court must determine whether the proposed settlement is in the best interests of the estate. The Third Circuit has held that this particular process of bankruptcy court approval requires the Court to assess and balance the value

of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* (citing *In re Martin*, 91 F.3d at 393). "Consistent with *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163–64, 20 L.Ed.2d 1 (1968), the Third Circuit recognizes four criteria a court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, along with the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors." *Covenant Partners*, 555 B.R. at 493 (citing *Martin*, 91 F.3d at 393). "When considering the relevant factors courts are admonished to avoid second-guessing the Trustee in the exercise of his or her business judgment, and instead endeavor to ascertain whether the terms of the proposed settlement fall below the lowest range of reasonableness." *Covenant Partners*, 555 B.R. at 493.

31. Here, the Settlement and Settlement Agreement fall well within the range of reasonableness for purposes of satisfying the Bankruptcy Rule 9019 criteria.

32. The disputes being settled by the Parties involve complex issues that would require the Trustee to expend substantial sums to prosecute and defend. The Settlement Agreement resolves these matters in a manner that, in the exercise of the Trustee's business judgment, is appropriate and beneficial to the bankruptcy estates.

33. VSI and Rajan have unsuccessfully opposed virtually every action taken by the Trustee to administer the Debtors' bankruptcy estates and continued to litigate with the Trustee following entry of the Sale Order. Part of the releases granted by Rajan and VSI to the Trustee, his professionals and the Debtors' bankruptcy estates is a waiver and release of all rights to object to the Trustee's administration of the Debtors' bankruptcy cases and/or the fees and expenses of

the Trustee, the Trustee's professionals and a promise not to file any legal claim, court case or demand against the Trustee, the Debtors or the Debtors' estates for any reason.

34. Faced with mounting administrative expenses and the complex, lengthy, and uncertain path forward in litigating the Parties' disputes, the Trustee has reasonably selected an option that minimizes additional administrative expenses and avoids the substantial additional expenses to be incurred with continuing a litigation-based approach to a resolution of the Parties' disputes – a path that is expensive and uncertain.

35. In addition, the Settlement Agreement will put a stop to Rajan and VSI's opposition to the Trustee's efforts to administer the Debtors' bankruptcy cases at a time when the bankruptcy cases are ripe for resolution and will further streamline the anticipated claim adjudication process and creditor distributions.

36. Accordingly, the *Martin* factors weigh heavily in favor of Settlement approval. The Trustee is not required to "conclusively establish that he would be successful at a trial on these issues. That would defeat the purpose of the settlement and eliminate any cost savings achieved by a compromise. All that he must do is establish to the reasonable satisfaction of [the Court] that, all things considered, it is prudent to eliminate the risks of litigation to achieve specific certainty though it might be considerably less (or more) than were the case fought to the bitter end." *In re Aloha Racing Found., Inc.*, 257 B.R. 83, 88 (Bankr. N.D. Ala. 2000) (quotation marks and citations omitted); *see also In re Nutraquest, Inc.*, 434 F.3d 639, 646 (3d Cir. 2006) (affirming the bankruptcy court's approval of a settlement of wrongful death claims brought against a bankrupt drug manufacturer's Chapter 11 estate even though there was allegedly no possibility that the claims could have been successfully prosecuted because balancing the expense, complexity, and delay of litigation with the benefits of fast resolution satisfied the *Martin* factors); *In re Teknek*,

*LLC*, 402 B.R. 257 (Bankr.N.D.III.2009) (though likelihood of success on the merits of claims was high, settlement agreement was approved to avoid increased costs of continuing litigation); *In re Legendary Field Exhibitions, LLC*, No. 19-50900-CAG, 2021 WL 4978373, at *8 (Bankr. W.D. Tex. Oct. 26, 2021) (approving a settlement which would "prevent defense costs from consuming most of what remains in the Estate" because "[t]he Estate has limited funds to pay creditors, and protracted litigation would create administrative claims that would substantially reduce, and maybe even consume the remaining Estate." (internal quotation marks omitted).

37. Simply stated, the Settlement substantially increases the monies available for other creditors, and halts the depletion of the funds in the Debtors' Estates for the benefit of all creditors.

38. Accordingly, the Trustee believes that the Settlement is in the best interests of the Debtors' estates and respectfully requests that it be approved by this Court.

**B. Request for Expedited Considertion Pursuant to Local Rule of Bankruptcy Procedure 5070-1(g)**

39. In accordance with L.B.R. 5070-1(f), and 9014-1, the Trustee seeks Expedited Consideration of the instant Motion and further requests approval of the request for expedited consideration pursuant to L.B.R. 9014-2(12).

40. Pursuant to L.B.R. 5070-1(f)(3), this request for expedited consideration may be stated as part of the Motion.

41. The Trustee respectfully submits that expedited consideration of the Motion is critical to permit the Motion to be heard on September 9, 2026 at the same time as the hearings on (i) the Trustee's motion to approve the Disclosure Statement (ECF 1258); and (ii) the Trustee's motion to approve compromise under Bankruptcy Rule 9019 with Lewis Brisbois Bisgaard & Smith LLP (ECF 1261) to save the Debtors' bankruptcy estates the added expense of an additional hearing on the Motion on a different date.

42. Conducting the hearing on the Motion on September 9, 2026 will result in twenty (20) days' notice of the hearing on the Motion to creditors, only one day short of the twenty-one (21) days' notice required by Bankruptcy Rule 2002.

43. Despite the parties' best efforts, filing the Motion in time to give twenty-one (21) days' notice was not possible given the timing of the execution of the Settlement Agreement which was finalized on the date of the filing of this Motion.

44. The Trustee further believes that, for the reasons set forth above, expedited consideration will not prejudice the Debtors or any of the Debtors' creditors or stakeholders when balanced against the cost savings to the Debtors' bankruptcy estates will experience associated with having a separate hearing on the Motion on a different day.

45. Local Bankruptcy Rule 5070(f)(1) requires that "[a] party who desires to obtain a hearing date earlier than the hearing date that would ordinarily be assigned under subdivision (a) of this rule or other expedited consideration, to the extent practicable, shall consult with all other interested parties to attempt to reach an agreement that an expedited hearing is appropriate and on the suggested hearing date or dates."

46. Counsel to the Trustee has contacted the office of the United States Trustee and counsel to Rajan and VSI as required by L.B.R. 5070-1(f)(1), both of whom have consented to the Motion being heard on an expedited basis on September 9, 2026. Counsel to the Trustee did not contact the Third-Party Claimants because the Trustee does not have e-mails, fax numbers or telephone numbers of the Third-Party Claimants, therefore it was not practicable to do so as allowed by L.B.R. 5070-1(f)(1). The Third-Party Claimants will however be served with a complete copy of the Motion, Notice of the Motion and the Order granting expedited consideration, if granted, as set forth below, at the addresses listed by the Debtors in their

Schedules of Assets and Liabilities. Further, Rajan, as the duly authorized legal agent and attorney-in-fact for and on behalf of each of the Third-Party Claimants, executed the Settlement Agreement and bound such claimants to the disallowance provided in the Settlement Agreement and therefore has the requisite authority to consent to the Trustee's request for expedited consideration of the Motion.

## IV. NOTICE

47. The Trustee's counsel has caused this Motion and Notice of Motion, Response Deadline, and Hearing Date to be served upon: (a) the Office of the United States Trustee, (b) Rajan, VSI and the Third-Party Claimants, (c) all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. The Trustee's counsel has also caused the Notice of Motion, Response Deadline, and Hearing Date to be served upon all the Debtors' creditors. Finally, if granted, the Trustee's counsel will cause the Order Granting Expedited Consideration to be served upon all of the aforementioned creditors the Debtors.

[*Remainder of this page intentionally left blank.*]

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court enter an Order: (i) granting the relief sought in the Motion; (ii) approving the Settlement Agreement and the Settlement contained therein; (iii) authorizing the Trustee to take any and all actions necessary to effectuate the terms of the Settlement Agreement; and (iv) granting such other and further relief it deems just and proper.

Dated: August 20, 2026

Respectfully submitted,

*/s/ Steven M. Coren*
Steven M. Coren, Esquire
COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 735-8700
scoren@kcr-law.com

*Special Counsel to the Trustee*