# Exhibit D

# SHARING AND CARVE-OUT AGREEMENT

This Sharing and Carve-out Agreement (this "Agreement") is entered into as of May 6, 2024 by and between (a) William A. Homony, solely in his capacity as the Chapter 11 Trustee ("Trustee") of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("TMI" and, together with Stream, the "Debtors") and (b) (i) Hawk Investment Holdings, Ltd. ("Hawk"), in its capacity as Collateral Agent for the secured noteholders of SeeCubic, Inc. ("SCI") and (ii) all other individuals and entities individually who execute a Release Supplement annexed hereto (collectively, the "Interested Parties"). The Trustee and Hawk are referred to herein together as the "Parties" and each individually as a "Party" (unless the context indicates otherwise).

## RECITALS

**WHEREAS,** from 2011 through 2020, SLS Holdings VI, LLC ("SLS" and, together with Hawk, the "Secured Creditors") and Hawk lent Stream funds pursuant to a series of promissory notes, with respect to which Hawk has filed proof of Claim No. 6-1 on the Official Proof of Claim Docket in the Stream's case (the "Hawk Claim") asserting a claim secured by substantially all of the Debtors' property (the "Collateral");

**WHEREAS,** on March 15, 2023, the Debtors initiated the bankruptcy cases captioned as *In re Stream TV Networks, Inc*., Case No. 23-10763 (Bankr. E.D. Pa.) (the "Chapter 11 Cases"), before the United States Bankruptcy Court of the Eastern District of Pennsylvania (the "Bankruptcy Court"), under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS,** prior to the Petition Date, the Secured Creditors, the Debtors, and certain other entities were party to several pending litigation matters, including, but not limited to: (a) *Stream TV Networks, Inc. v. Stastney*, Case No. 22-00851-CJB (D. Del.) (the "District Court Action"), (b) *Hawk Investment Holdings Ltd. v. Stream TV Networks, Inc.*, C.A. 2022-0930-JTL (Del. Ch.) (the "225 Action"),

**WHEREAS,** after the Petition Date, the Debtors initiated the adversary proceeding against the Secured Creditors and other Interested Parties captioned as *Stream TV Networks, Inc. v. Stastney*, AP No. 23-00027-mdc (Bankr. E.D. Pa.) (the "Adversary Proceeding" and, together with the District Court Action, the 225 Action, and all other pending litigation matters to which the Parties are party to, the "Pending Litigation Matters");

**WHEREAS,** Hawk filed a motion with the Bankruptcy Court seeking relief from the automatic stay to conclude the 225 Action on March 20, 2023 [ECF No. 16] (the "Stay Relief Motion") and a motion to appoint a chapter 11 trustee on April 6, 2023 [EF No. 83] (the "Trustee Motion");

**WHEREAS,** on January 5, 2024, the Bankruptcy Court granted Hawk limited relief under the Stay Relief Motion and the Trustee Motion, appointing the Trustee in these Chapter 11 Cases and granting relief from the automatic stay to conclude the 225 Action;

**WHEREAS,** upon the Trustee's appointment, the Trustee engaged in extensive investigation, review, and analysis of the various Pending Litigation Matters, the Hawk Claim, the Debtors' need for funding, and other disputes and aspects of the relationship between the Secured Creditors and the Debtors;

**WHEREAS**, during the Trustee's investigation, on March 1, 2024, the Trustee filed an expedited motion to reinstate the automatic stay in connection with the 225 Action and on April 1, 2024, the Bankruptcy Court entered a consent order granting the Trustee's motion;

**WHEREAS,** the Trustee and Hawk have engaged in good faith negotiations in an attempt to resolve the several disputes between the Debtors, Hawk, SLS, SCI, and several other parties that have arisen over the course of the dealings of the several parties;

**WHEREAS,** the Trustee, Hawk, and the Interested Parties have reached an agreement to ensure the orderly disposition of the Collateral, funding of the Chapter 11 Cases, a recovery mechanism for unsecured creditors and the release of any and all claims, whether monetary or otherwise, between Hawk, SLS, SCI, the Debtors, and the Interested Parties;

**WHEREAS**, Parties now wish to fully and finally resolve these matters by mutual agreement;

**NOW, THEREFORE,** for and in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. Settlement Generally; Cooperation.

   a) The Trustee shall use his best efforts to consummate a sale of the Collateral under section 363 of the Bankruptcy Code as contemplated under this Agreement (any such sale, a "Sale"), which he shall endeavor to close (the "Closing") no later than August 2, 2024 (subject to further extension by written agreement of Hawk and the Trustee, the "Outside Closing Date"), in accordance with the provisions of the Agreement.

   b) The Parties and their attorneys, advisors and other agents and professionals, shall cooperate in good faith to support the Sale with the goal of maximizing the proceeds of the same. The Parties acknowledge the Sale will be only of the Debtors' interests in the Collateral, on an "as is where is" basis, without any warranty express or implied. The Parties hereby acknowledge and agree that such support shall include cooperating in providing requested diligence materials, if available, and reasonably responding to diligence inquiries in a timely manner consistent with this goal, as well as supporting (and not objecting to) the entry of an order approving this Agreement (the "9019 Order") and an

order (the "Bidding Procedures Order") establishing bidding procedures (the "Bidding Procedures") so long as such Bidding Procedures' terms are in accordance with this Agreement. The Parties acknowledge that the Trustee has limited access to records to provide all requested due diligence, but will use his best efforts to assist.

2. Treatment of Secured Creditors' Claims.

a) Upon the entry of the 9019 Order, the Hawk Claim shall be deemed an allowed Secured Claim, secured by the Collateral[1] as more fully set forth in Claim No. 6-1 and the supporting documentation, in the amount of $180 million, subject to increase as set forth below (such amount, the "Allowed Secured Claim"). The Trustee waives the right to object to any portion of the Allowed Secured Claim or to seek the conversion or subordination of such claim for so long as this provision remains valid and binding on the Parties.

b) The Allowed Secured Claim shall increase on a dollar-for-dollar basis for documented and evidenced amounts actually advanced to fund the operations of SeeCubic, B.V. ("SCBV") between the Trustee's appointment date and the sale Closing in accordance with Section 6 hereof, which advanced amounts shall not constitute administrative expenses of the Debtors' estates and shall only increase the Allowed Secured Claim as set forth herein.

c) Upon the entry of the 9019 Order, the proofs of claim of SLS Holdings VI, LLC [Claim No. 9 on the official claims docket of Stream and Claim No. 2 on the official claims docket of TMI] and the proofs of claim of SeeCubic, Inc. [Claim No. 14 on the official claims docket of Stream and Claim No. 3 on the official claims docket of TMI] shall be deemed withdrawn of record with no further order of the Bankruptcy Court necessary to effectuate such withdrawal.

3. Sale of Debtor's Assets. The Trustee shall pursue a Sale, subject to the following parameters:

a) The Trustee shall seek approval of the retention of an investment banker to market the Collateral.

b) The Trustee shall seek entry of the Bidding Procedures Order on an expedited basis to obtain approval thereof concurrently with the entry of the 9019 Order.

c) Subject to documentation satisfactory to Hawk (and drafted in consultation with Hawk), SCI shall serve as the stalking horse bidder for the Collateral, with such bid (the "Stalking Horse Bid") and Asset Purchase Agreement (the "Stalking Horse APA") attached to the Bidding Procedures.

---

[1] For the avoidance of doubt, Collateral excludes any and all claims and cause of action against third-parties including but not limited to Chapter 5 claims and causes of action and any claims against the Debtors' directors and officer (collectively "Litigation Claims") and any resulting proceeds from said Litigation Claims.

d) Subject to documentation satisfactory to Hawk and the Trustee, the Stalking Horse Bid shall consist of a credit bid of the Allowed Secured Claim in the amount of $150 million. The Secured Creditors waive the right to seek or obtain a "breakup fee" or a "topping fee" or any other bid protections as part of the Stalking Horse Bid.

e) The Bidding Procedures shall specify that in order for a bid to constitute a "Qualifying Bid" such bid shall include:

i. A bid deposit in the amount of 10% of the proposed aggregate purchase price (the "Bid Deposit"), and

ii. Evidence satisfactory to the Trustee of its financial wherewithal to consummate a Sale in the amount of the proposed purchase price.

f) The Bidding Procedures shall specify that Qualifying Bids may include both cash and non-cash consideration, subject to the following conditions:

i. The cash component shall be no less than $120 million,

ii. The non-cash component of the bid shall be backed by a letter of credit or other security, over which Hawk shall have consultation rights as to the sufficiency and form of such security, and

iii. The Bid Deposit shall be 10% of the aggregate purchase price, including both the cash component and the non-cash component of the bid.

g) To the extent the Trustee receives any other Qualified Bids (exclusive of the Stalking Horse Bid which will be deemed a Qualified Bid), SCI may participate in the Auction. Any overbid submitted by SCI in excess of the Stalking Horse Bid at the Auction shall be in cash only. For the avoidance of doubt, SCI cannot utilize any of the remaining Allowed Secured Claim as part of any overbid; *however*, its overbid may include a credit bid up to $150 million.

4. Trustee Carve-Out.

a) With respect to any Sale that closes in accordance with the Section 3, the Secured Creditors shall carve out of the proceeds of the Collateral $7,500,000 plus 10% of every additional dollar by which the ultimate purchase price at the conclusion of the Auction, exceeds the Stalking Horse Bid up to the amount of the Allowed Secured Claim (the "Carve-Out").

b) SCI shall pay a portion of the Carve-Out (such portion, the "Carve-Out Advance") to the Trustee according to the following schedule:

i. $1,000,000.00 within two business days of the entry of the 9019 Order; and

ii. $1,500,000.00 within two business days of the entry of the Bidding Procedures Order.

c) The Trustee shall receive the balance of the Carve-Out (*i.e.*, the Carve-Out minus the Carve-Out Advance) at Closing:

i. In the event SCI is the successful bidder, by SCI in cash at Closing.

ii. In the event a third party is the successful bidder, from the cash proceeds of the purchase price.

d) The Bidding Procedures and Sale Order shall provide that in the event a third party is the successful bidder, the Secured Creditors shall receive the "Secured Creditor Distribution" within five (5) business days of the Closing of a Sale, which "Secured Creditor Distribution" shall equal the purchase price minus the Carve-Out. The Secured Creditor Distribution shall not exceed the amount of the Allowed Secured Claim.

e) Any sale proceeds in excess of the amount necessary to satisfy the Allowed Secured Claim in full (after giving effect to the Carve-Out) shall be retained by the Trustee.

5. Support of the Carve-Out. In support of the Carve-Out, the Parties further agree:

a) The Secured Creditors shall provide the Trustee with documentation regarding SCI's financial ability to fund the Carve-Out in the event the Stalking Horse Bid is the prevailing bid and sufficient to support any overbid.

b) The bankruptcy estates and/or any trustee or disbursing agent retain the right to object to claims against the bankruptcy estates other than the Allowed Secured Claim.

c) The Secured Creditors will be allowed a subordinate unsecured deficiency claim subordinated to all other general unsecured creditors (the "Deficiency Claim") to the extent that the Secured Creditor Distribution is not sufficient to satisfy the Allowed Secured Claim in full. The Secured Creditors' Deficiency Claim will be recognized as an impaired unsecured claim which the Secured Creditor shall be entitled to vote on confirmation of any Trustee Plan.

d) The Secured Creditors agree to support and not oppose any Plan filed by the Trustee and that on or before the deadline to do so, each shall submit a written acceptance of any Plan containing terms consistent with this Agreement, in the full value of the Allowed Secured Claim and/or Deficiency Claim.

e) Notwithstanding any provision herein to the contrary, the Trustee shall retain rights to the $1 million bond posted by or on behalf of the Debtors in the 225 Action.

6. Funding of SCBV. Until and through the Outside Closing Date (as such may be extended with the consent of the Secured Creditors in their sole discretion), SCI shall continue to fund all costs and expenses of SCBV incurred in the ordinary course of business and consistent with SCBV's operations during the pendency of these Chapter 11 Cases (and including any employee claims arising therefrom); *provided, however,* immediately upon a breach of this Agreement by the Trustee, SCI shall no longer have any obligations to continue funding SCBV.

7. Releases. Effective as of the Closing of any Sale:

a) Each of (i) Hawk and (ii) SCI, on behalf of themselves and their respective partners, general partners, limited partners, affiliates, parents, subsidiaries, predecessors, successors, and all of the foregoing entities' current and former officers, directors, managers, managing directors, equity holders, investors, beneficiaries, employees, agents, attorneys, advisors, insurers and reinsurers, and (iii) separately and individually, any Interested Party signatory to the Release Supplement annexed hereto (collectively, the "Creditor Releasing Parties"), hereby release and discharge (i) the Trustee, (ii) the Debtors, and (iii) the Debtors' estates, and (iv) any attorneys, agents, and advisors retained by the Trustee in connection with these Chapter 11 Cases (all of the foregoing, the "Trustee Released Parties") from any and all claims, liabilities, demands, accounts, reckonings, or causes of action, whether known or unknown, matured or unmatured, domestic or foreign, arising from, relating to, or in connection with these Chapter 11 Cases, the various actions listed in Section 8 of this Agreement and the subject matter thereof, and the Secured Creditors' extension of credit to and/or investment in the Debtors' businesses, including efforts to enforce rights with respect to same, including but not limited to the Omnibus Agreement, dated as of May 6, 2020, and the ensuing litigation and related subject matter; *provided, however,* the Creditor Releasing Parties do not release or discharge the Trustee Released Parties from any claims, liabilities, demands, accounts, reckonings, or causes of action arising from, relating to, the Trustee Released Parties' obligations arising under this Agreement or the Stalking Horse APA and the other documents to be executed in connection therewith.

b) The Trustee, on behalf of (i) himself, (ii) the Debtors, (iii) the Debtors' estates and (iv) any attorneys, agents, and advisors retained by the Trustee in connection with these Chapter 11 Cases (collectively, the "Trustee Releasing Parties"), hereby release and discharge (i) Hawk and (ii) SCI, individually and their respective partners, general partners, limited partners, affiliates, parents, subsidiaries, predecessors, successors, and all of the foregoing entities' current and former officers, directors, managers, managing directors, equity-holders, investors, beneficiaries, employees, agents, attorneys, advisors, insurers and reinsurers, and (iii) separately and individually, any Interested Party signatory to the Release Supplement annexed hereto (all of the foregoing, the "Creditor Released Parties") from any and all claims, liabilities, demands, accounts, reckonings, or causes of action, whether known or unknown, matured or unmatured, domestic or foreign, arising from, relating to, or in connection with these Chapter 11 Cases, the various actions listed in Section 8 of this Agreement

and the subject matter thereof, and the Secured Creditors' extension of credit to and/or investment in the Debtors' businesses, including efforts to enforce rights with respect to same, including but not limited to the Omnibus Agreement, dated as of May 6, 2020, and the ensuing litigation and related subject matter; *provided, however,* the Trustee Releasing Parties do not release or discharge the Creditor Released Parties from any claims, liabilities, demands, accounts, reckonings, or causes of action arising from, relating to, the Creditor Released Parties' obligations arising under this Agreement or the Stalking Horse APA and the other documents to be executed in connection therewith.

c) Entry of the 9019 Order shall constitute the Bankruptcy Court's approval of the releases included in this provision, which shall only become effective upon the Closing of any sale of the Collateral and receipt by the Trustee of the entire Carve-Out. The Bankruptcy Court's entry of the 9019 Order shall constitute the Bankruptcy Court's finding that the foregoing release is: (a) in exchange for the good and valuable consideration provided by the Creditor Released Parties; (b) a good faith settlement and compromise of the claims and causes of action released by the Trustee and Debtors' estates; (c) in the best interests of the Trustee, the Debtors, the Estates, and all holders of claims and interests against the estates in these Chapter 11 Cases; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Trustee and after due notice and opportunity for hearing; and (f) a bar to any of the Trustee, the Debtors, the post-effective date Debtors under any plan of reorganization (if any), or the Debtors' estates asserting any claim or cause of action hereby released.

d) Only those individuals and entities listed as named defendants in any of the Pending Litigation Matters may execute a Release Supplement to become an "Interested Party" if they so choose; *provided however*, contemporaneously with the execution of this Agreement, each of Shadron L. Stastney, Arthur Leonard Robert "Bob" Morton, Alastair Crawford, Patric Theune, SCBV, and SLS shall execute Release Supplements and without the fully executed Release Supplement from each of the individuals and entities set forth above, this Agreement shall be null and void and of no legal effect. To become effective, such individuals or entities must execute the Release Supplement and deliver it to the Trustee and Hawk on or before ten (10) days prior to the entry of the 9019 Order.

8. <u>Dismissal of Pending Litigation Matters</u>.

a) As of the date hereof, the Debtors are party to the Pending Litigation Matters, including but not limited to:

i. The 225 Action;

ii. The Adversary Proceeding;

iii. The District Court Action; and

iv. Any other pending litigation matters currently pending in any federal or state court (or analogous foreign jurisdiction), including, but not limited to, any actions pending in the Netherlands with respect to control of SCBV.

b) Upon the entry of the 9019 Order, the Pending Litigation Matters will be or will remain stayed indefinitely while the Parties pursue the consummation of the Sale.

c) On or within 14 calendar days of the Closing, the Trustee and/or Hawk as appropriate, shall obtain dismissal with prejudice of each of the Pending Litigation Matters.

9. Agreement Subject to Bankruptcy Court Approval. The Parties hereby agree and acknowledge that this Agreement remains subject to Bankruptcy Court approval under Federal Rule of Bankruptcy Procedure 9019, and this Agreement shall have no binding effect on any of the Parties until entry of an order approving it pursuant thereto (such an order, the "9019 Order").

10. Consent to Exclusive Jurisdiction of Bankruptcy Court. The Parties hereby agree that the Bankruptcy Court shall have exclusive jurisdiction to interpret and implement the terms of this Agreement.

11. Governing Law. This Agreement is to be governed by and construed in accordance with the laws of the State of Delaware without giving effect to the conflict of laws principles thereof.

12. Survival of Representations and Warranties. All representations and warranties made hereunder shall survive the Closing.

13. No Admissions. It is understood by the Parties that this Agreement constitutes a compromise of potential, unresolved, and disputed claims. This Agreement, and the negotiation thereof, shall in no way constitute, be construed as, or be evidence of an admission or concession of any violation of any statute or law; of any fault, liability, or wrongdoing; or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses asserted or that could have been asserted in the Action or in connection with the subject matter of this Agreement or the Action. This Agreement shall not be used, directly or indirectly, in any way, in litigation or other proceedings between the Parties, and this Agreement shall not be admissible as evidence in any legal proceeding between the Parties, other than in litigation or a proceeding to enforce the terms of this Agreement.

14. Remedies Cumulative. All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

15. Complete Agreement. The Parties hereby represent and warrant that no promise or inducement not contained herein has been offered to them, that this Agreement constitutes the entire agreement between them related to the subject matter hereof, and supersedes all prior agreements, oral, or written, among the Parties with respect thereto. The Parties further represent that this Agreement is executed without any reliance upon any statement or representation by the other, their respective agents, representatives, or attorneys not set forth herein.

16. Effect of Breach.

a) In the event a breach of this Agreement by either Party, the non-breaching Party shall be entitled to terminate this Agreement in its entirety in its sole discretion and this Agreement shall be null and void; *provided, however,* that any documented and evidenced amounts actually advanced to fund SCBV in accordance with Section 6 hereof shall survive such termination remain an Allowed Secured Claim that is not subject to conversion under the Hawk Conversion Agreement or SLS Conversion Agreement.

b) In the event this Agreement is terminated for any reason other than a breach by the Secured Creditors, (a) Section 2 of this Agreement shall remain in full force and effect, and the Secured Creditors shall have an Allowed Secured Claim as defined herein, and (b) the Carve-Out Advance shall be deemed an allowed administrative claim against the estate as of the date the Secured Creditors made the advance, subordinate to the allowed fees and expenses of the Chapter 11 Trustee and his retained professionals. .

c) In the event the Secured Creditors breach this Agreement, the Trustee shall be entitled to retain any portion of the Carve-Out previously received for the benefit of the Debtors' estates.

17. Amendment; Non-Waiver. This Agreement shall not be amended or modified except by a written amendment signed by each of the Parties, approved by the Bankruptcy Court, which writing expressly states that it is intended to be an amendment to or modification of this Agreement. No other writing, irrespective of its content, and no course of conduct will act as an amendment or modification of this Agreement. Any waiver by a Party of its rights hereunder shall be effective only if in writing, and no waiver shall be implied by a party's action(s) or inaction(s). No failure or delay on the part of any Party in the exercise of any right or privilege hereunder shall operate as a waiver thereof or of the exercise of any other right or privilege hereunder, nor shall any single or partial exercise of any such right or privilege preclude other or further exercise thereof or of any other right or privilege.

18. Successors and Assigns. The obligations and duties of the Parties under this Agreement may not be assigned or transferred absent written consent of each Party, unless specifically stated otherwise. This Agreement shall be binding upon the Parties and their respective affiliates, successors and assigns.

19. Severability. In the event that any provision of this Agreement should be held to be void, voidable, or unenforceable in a particular instance and such provision does not affect the

basis of the bargain of the Parties hereunder, such provision shall be severed in such instance, and the remaining portions hereof shall remain in full force and effect. Furthermore, in lieu of such severed provision, there shall be added automatically in any such instance as a part of this Agreement, a provision as similar to the severed provision as may be possible and be legal, binding, and enforceable.

20. Cooperation/Further Assurances. Subject to the other terms of this Agreement, the Parties and their attorneys, advisors, and other agents and professionals agree to cooperate in good faith to execute and deliver all other instruments and perform any acts, in addition to the matters herein specified, as may be appropriate or necessary from time to time, to effectuate and implement the terms of this Agreement. The Parties and their attorneys, advisors and other agents and professionals agree not to take any actions, either directly or indirectly through any other agent or party, reasonably calculated to frustrate implementation of this Agreement or otherwise impair the rights of any Party thereunder.

21. Multiple Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which constitute one and the same agreement. The signature pages from any counterpart may be appended to any other counterpart to assemble fully executed counterparts. Counterparts of this Settlement Agreement also may be exchanged via electronic mail or facsimile, and an electronic, photocopied, or .pdf version of any Party's authorized signature shall be deemed to be an original signature for all purposes.

22. Headings. The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

23. Interpretation and Rules of Construction. This Agreement is the product of negotiations among the Parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties were each represented by counsel during the negotiations, drafting, and execution of this Agreement.

*[Signature Pages to Follow]*

IN WITNESS WHEREOF, the parties hereto have caused this Sharing Agreement to be duly executed as of the date first written above.

WILLIAM A. HOMONY,
solely in his capacity as Chapter 11 Trustee
of the estates of Stream TV Networks, Inc. and
Technovative Media Inc.

By: [signature]

Printed Name: William A. Homony

Title: Chapter 11 Trustee

HAWK INVESTMENT HOLDINGS LIMITED,
a Guernsey holding company, as Collateral Agent

By: ______________________

Printed Name: ______________________

Title: ______________________

SEECUBIC, INC.,
a Delaware corporation, as Stalking Horse Bidder

By: ______________________

Printed Name: ______________________

Title: ______________________

*[Signature Page to Sharing Agreement]*

IN WITNESS WHEREOF, the parties hereto have caused this Sharing Agreement to be duly executed as of the date first written above.

WILLIAM A. HOMONY,
solely in his capacity as Chapter 11 Trustee
of the estates of Stream TV Networks, Inc. and
Technovative Media Inc.

By: ______________________________

Printed Name: ______________________________

Title: ______________________________

HAWK INVESTMENT HOLDINGS LIMITED,
a Guernsey holding company, as Collateral Agent

By: [signature]
AUTHORISED SIGNATORIES

Printed Name: FOR: ALBANY DIRECTORS LIMITED

Title: DIRECTOR.

SEECUBIC, INC.,
a Delaware corporation, as Stalking Horse Bidder

By: ______________________________

Printed Name: ______________________________

Title: ______________________________

IN WITNESS WHEREOF, the parties hereto have caused this Sharing Agreement to be duly executed as of the date first written above.

WILLIAM A. HOMONY,
solely in his capacity as Chapter 11 Trustee
of the estates of Stream TV Networks, Inc. and
Technovative Media Inc.

By: ______________________________

Printed Name: ______________________________

Title: ______________________________

HAWK INVESTMENT HOLDINGS LIMITED,
a Guernsey holding company, as Collateral Agent

By: ______________________________

Printed Name: ______________________________

Title: ______________________________

SEECUBIC, INC.,
a Delaware corporation, as Stalking Horse Bidder

By: [signature]

Printed Name: Shad L. Stastney

Title: Chairman and CEO

# **Annex**

Release Supplement

This RELEASE SUPPLEMENT (the "Release Supplement") to the Sharing and Carve-Out Agreement, dated as of ______, 2024 (as may be amended, supplemented, restated, or otherwise modified from time to time, the "Sharing Agreement"), by and among (a) William A. Homony, solely in his capacity as the Chapter 11 Trustee of the bankruptcy estates of Stream TV Networks, Inc. and Technovative Media Inc., and (b) Hawk Investment Holdings, Ltd. and SeeCubic Inc., is executed and delivered by the party executing the signature page hereto (the "Interested Party") and shall be effective only upon the satisfaction of the conditions precedent as set forth in the Sharing Agreement. Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Sharing Agreement.

1. Agreement to Release. The Interested Party hereby affirmatively opts into the Sharing Agreement solely with respect to granting and obtaining the Releases, in its/his/her individual capacity and including the Interested Party's respective partners, general partners, limited partners, affiliates, parents, subsidiaries, predecessors, successors, and all of the foregoing entities' current and former officers, directors, managers, managing directors, equity holders, investors, beneficiaries, employees, agents, attorneys, advisors, insurers and reinsurers, as set forth in Section **[7]** of the Sharing Agreement, which is incorporated herein by reference in its entirety.

2. Representations and Warranties. The Interested Party hereby represents and warrants that it has full authority to enter into this Release Supplement and no material consent or approval of, or any registration or filing with, any other person or entity is required for it to do so.

3. Representation by Counsel. The Interested Party hereby acknowledges that it has been represented by counsel (or had the opportunity to and waived its right to do so) in connection with execution this Release Supplement and the releases contemplated hereby, and it is no relying on the statement or representation of any of the Parties to the Sharing Agreement (or their counsel) in exercising its/his/her right to execute this Release Supplement.

4. Reservation of Rights; Non-Consent to Jurisdiction. Nothing herein shall be deemed or construed as (a) a waiver or release of any claim or right by the Interested Party other than as expressly set forth herein and in Section **[7]** of the Sharing Agreement, (b) a consent by the Interested Party to the jurisdiction of any court within the United States or abroad, or (c) an election of remedies or choice of law.

IN WITNESS WHEREOF, the party signing below has caused this Release Supplement to the Sharing Agreement to be duly executed as of the date herein indicated.

***Signature Block for Individuals:***

Signature: L. M. Morton

Printed Name: ARTHUR LEONARD ROBERT MORTON

Date: 2nd May 2024

***Signature Block for Entities:***

Entity Name: ________________

Jurisdiction: ________________

Signature: ________________

Name: ________________

Title: ________________

Date: ________________

IN WITNESS WHEREOF, the party signing below has caused this Release Supplement to the Sharing Agreement to be duly executed as of the date herein indicated.

***Signature Block for Individuals:***

Signature: ______________________

Printed Name: Alsstair Crawford

Date: May 2 2024

***Signature Block for Entities:***

Entity Name: ______________________

Jurisdiction: ______________________

Signature: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

IN WITNESS WHEREOF, the party signing below has caused this Release Supplement to the Sharing Agreement to be duly executed as of the date herein indicated.

***Signature Block for Individuals:***

Signature: ______________________

Printed Name: Asaf Gola

Date: 5/02/24

***Signature Block for Entities:***

Entity Name: ______________________

Jurisdiction: ______________________

Signature: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

IN WITNESS WHEREOF, the party signing below has caused this Release Supplement to the Sharing Agreement to be duly executed as of the date herein indicated.

***Signature Block for Individuals:***

Signature: ______________________

Printed Name: KEVIN JOHN GOLLOP

Date: 05-02-2024.

***Signature Block for Entities:***

Entity Name: ______________________

Jurisdiction: ______________________

Signature: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

IN WITNESS WHEREOF, the party signing below has caused this Release Supplement to the Sharing Agreement to be duly executed as of the date herein indicated.

***Signature Block for Individuals:***

Signature: ______________________________

Printed Name: Patrick Miles

Date: 2nd May 2024

***Signature Block for Entities:***

Entity Name: ______________________________

Jurisdiction: ______________________________

Signature: ______________________________

Name: ______________________________

Title: ______________________________

Date: ______________________________

IN WITNESS WHEREOF, the party signing below has caused this Release Supplement to the Sharing Agreement to be duly executed as of the date herein indicated.

***Signature Block for Individuals:***

Signature: ______________________

Printed Name: ______________________

Date: ______________________

***Signature Block for Entities:***

Entity Name: SeeCubic BV

Jurisdiction: Netherlands

Signature: [signature]

Name: Shad L. Stastney

Title: Director A

Date: 30 April 2024

IN WITNESS WHEREOF, the party signing below has caused this Release Supplement to the Sharing Agreement to be duly executed as of the date herein indicated.

***Signature Block for Individuals:***

Signature: ______________________

Printed Name: Shad L. Stastney

Date: April 30, 2024

***Signature Block for Entities:***

Entity Name: ______________________

Jurisdiction: ______________________

Signature: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

IN WITNESS WHEREOF, the party signing below has caused this Release Supplement to the Sharing Agreement to be duly executed as of the date herein indicated.

***Signature Block for Individuals:***

Signature: ________________________________

Printed Name: ________________________________

Date: ________________________________

***Signature Block for Entities:***

Entity Name: SLS Holdings VI, LLC

Jurisdiction: Delaware

Signature: [signature]

Name: Shad L. Stastney

Title: Managing Member

Date: April 30, 2024

IN WITNESS WHEREOF, the party signing below has caused this Release Supplement to the Sharing Agreement to be duly executed as of the date herein indicated.

***Signature Block for Individuals:***

Signature: ______________________

Printed Name: Patric Theune

Date: 1 May 2024

***Signature Block for Entities:***

Entity Name: ______________________

Jurisdiction: ______________________

Signature: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

IN WITNESS WHEREOF, the party signing below has caused this Release Supplement to the Sharing Agreement to be duly executed as of the date herein indicated.

***Signature Block for Individuals:***

Signature: ________________________

Printed Name: KRZYSZTOF KABACINSKI

Date: MAY 02, 2024

***Signature Block for Entities:***

Entity Name: ________________________

Jurisdiction: ________________________

Signature: ________________________

Name: ________________________

Title: ________________________

Date: ________________________