**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>STREAM TV NETWORKS, INC.<br><br>Debtor. | Chapter 11<br><br>Bankruptcy No.: 23-10763 (DJB)<br><br>(Jointly Administered)[1] |

**CERTIFICATE OF SERVICE RE**

| | |
|---|---|
| Docket No. 1291 | ORDER APPROVING DISCLOSURE STATEMENT, FIXING TIME FOR FILING ACCEPTANCES OR REJECTIONS OF THE PLAN, AND FIXING THE TIME FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN |
| Exhibit 1 | FIRST AMENDED JOINT PLAN OF LIQUIDATION OF STREAM TV NETWORKS, INC. AND TECHNOVATIVE MEDIA, INC. |
| Exhibit 2 | FIRST AMENDED DISCLOSURE STATEMENT ACCOMPANYING FIRST AMENDED JOINT PLAN OF LIQUIDATION OF STREAM TV NETWORKS, INC. AND TECHNOVATIVE MEDIA, INC. PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE |
| Exhibit 3 | NOTICE OF ENTRY OF ORDER APPROVING: (A) DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES; (B) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT CHAPTER 11 PLAN; AND (C) HEARING TO CONSIDER CONFIRMATION OF CHAPTER 11 PLAN AND (D) RELATED RELIEF |
| Exhibit 4 | BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF LIQUIDATION |

I, Bradford Daniel, state as follows:

[1] On Apil 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764. (D.I. 95)

1. I am over eighteen years of age and I believe the statements contained herein are true based on my personal knowledge. My business address is c/o BMC Group, Inc., 3732 West 120th Street, Hawthorne, California 90250.

2. On September 14, 2026, at the direction of Obermayer Rebmann Maxwell & Hippel LLP, counsel to the Chapter 11 Trustee, copies of the above referenced documents were served in the following manner on the parties listed on the attached Exhibit A via the modes of service indicated therein:

| | |
|---|---|
| Exhibit A | Re Docket No. 1291, Exhibit 1, Exhibit 2, and Exhibit 3, the Core/2002 Parties referenced in Service List Nos. 82789 and 82798. |
| Exhibit B | Re all the above documents, the Voting Creditor Parties referenced in Service List No. 82788. |
| Exhibit C | Re Docket No. 1291, Exhibit 1, Exhibit 2, and Exhibit 3, the Non-Voting Creditor Parties referenced in Service List No. 82802. |
| Exhibit D | Re Exhibit 3, the Additional Creditor Matrix Parties referenced in Service List No. 82803 and 82804. |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 17th day of September, 2026.

/s/ Bradford Daniel
Bradford Daniel

EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,[1]<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (DJB) |
| In re:<br><br>Technovative Media, Inc.,<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (DJB)<br><br>(Jointly Administered) |

**FIRST AMENDED JOINT PLAN OF LIQUIDATION OF
STREAM TV NETWORKS, LLC AND TECHNOVATIVE MEDIA, INC.**

**THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN IS SUBJECT TO CHANGE.**

[1] The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The Debtors' estates are Jointly Administered. However, the Debtors' estates have not been at the time of filing this Plan, substantively consolidated.

TABLE OF CONTENTS

ARTICLE I: DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ........ 1

A. Defined Terms ........ 1

B. Rules of Interpretation ........ 9

C. Computation of Time ........ 9

D. Governing Law ........ 9

E. Controlling Document ........ 10

ARTICLE II: ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS ........ 10

A. Administrative Claims ........ 10

B. Professional Compensation Claims ........ 10

C. Priority Tax Claims ........ 10

D. Statutory Fees ........ 11

ARTICLE III: CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........ 11

A. Classification of Claims and Interests ........ 11

B. Summary of Classification ........ 11

C. Treatment of Claims and Interests ........ 12

D. Voting of Claims ........ 14

E. No Substantive Consolidation ........ 14

F. Acceptance by Impaired Classes ........ 14

G. Consensual Confirmation ........ 15

H. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ........ 15

I. Controversy Concerning Impairment or Classification ........ 15

J. Intercompany Interests ........ 15

ARTICLE IV: MEANS FOR IMPLEMENTATION OF THE PLAN. ........ 15

A. Sources of Consideration for Plan Distributions ........ 15

B. Corporate Existence ........ 16

C. Vesting of Assets in the Reorganized Debtors ........ 16

D. Manager of the Reorganized Debtors ........ 16

E. Employment Obligations ........ 17

F. Exemption from Certain Taxes and Fees ........ 17

G. Preservation of Causes of Action ........ 17

H. Settlement of Claim against Technovative; Termination of Subordination Rights ........ 18

I. Corporate Existence ........ 18

ARTICLE V: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 19

A. Assumption and Rejection of Executory Contracts and Unexpired Leases ........ 19

B. Claims Based on Rejection of Executory Contracts or Unexpired Leases ........ 20

C. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ........ 20

D. Insurance Policies ........ 21

E. Indemnification Provisions ........ 21

F. Reservation of Rights ........ 21

G. Nonoccurrence of Effective Date ........ 21

ARTICLE VI: PROVISIONS GOVERNING DISTRIBUTIONS ........ 22

A. Timing and Calculation of Amounts to Be Distributed ........ 22

B. Disbursing Agent ........ 22

C. Delivery of Distributions and Undeliverable or Unclaimed Distributions ........ 23

D. Record Date of Distributions ........ 24

E. Special Rules for Distributions to Holders of Disputed Claims ........ 24

F. Minimum Distributions ........ 24

G. Undeliverable Distributions and Unclaimed Property ........ 24

H. Remainder Amounts After Distribution ........ 25

I. Manner of Payment ........ 25

J. Compliance with Tax Requirements ........ 25

K. No Post-petition or Default Interest on Claims ... 25

L. Allocations ... 26

M. Setoffs and Recoupment ... 26

N. Foreign Current Exchange Role ... 26

ARTICLE VII: PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ... 26

A. Resolution of Disputed Claims ... 26

B. Disallowance of Claims ... 28

C. Amendments to Proofs of Claim ... 29

D. No Distributions Pending Allowance ... 29

E. Disputed Claims Reserve ... 29

F. Distributions After Allowance ... 30

G. No Interest ... 30

ARTICLE VIII: DISCHARGE, RELEASE, INJUNCTION, AND RELATED PROVISIONS ... 30

A. No Discharge ... 30

B. Release of Liens ... 30

C. Regulatory Activities ... 31

D. Releases by the Debtors ... 31

E. Exculpation ... 31

F. Injunction ... 32

G. Gatekeeper Provision ... 32

H. Direct Insurance Claims ... 33

ARTICLE IX: CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ... 33

A. Conditions Precedent to the Effective Date ... 33

B. Waiver of Conditions ... 33

C. Effect of Failure of Conditions ... 33

ARTICLE X: MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ..... 34

A. Modification and Amendments ..... 34

B. Effect of Confirmation on Modifications ..... 34

C. Revocation or Withdrawal of Plan ..... 34

ARTICLE XI: RETENTION OF JURISDICTION. ..... 35

ARTICLE XII: MISCELLANEOUS PROVISIONS ..... 37

A. Immediate Binding Effect ..... 37

B. Substantial Consummation ..... 38

C. Further Assurances ..... 38

D. Reservation of Rights ..... 38

E. Successors and Assigns ..... 38

F. Notices ..... 38

G. Entire Agreement ..... 39

H. Cases ..... 39

I. Waiver or Estoppel ..... 39

J. Deemed Acts ..... 40

## INTRODUCTION

William A. Homony, the duly appointed Chapter 11 trustee (the "Chapter 11 Trustee") for the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative" and with Stream each a "Debtor" and collectively the "Debtors"), hereby proposes this first amended joint plan of liquidation under and pursuant to 11 U.S.C. 1123(b)(4) of the Bankruptcy Code, 11 U.S.C. Section 101 *et seq*. (the "Bankruptcy Code"). Therefore, the Plan constitutes a separate plan for each Debtor for the resolution of outstanding Claims and Interests. Capitalized terms used herein shall have the meanings set forth in Article I.A.

Holders of Claims and Interests may refer to the Disclosure Statement for a description of the Debtors' history, assets, and historical information, as well as a summary and description of the Plan. Each Debtor, by and through the Chapter 11 Trustee, is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS, AS APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A. Defined Terms

As used in the Plan, capitalized terms have the meanings ascribed to them below.

1. "Administrative Expense Claim" means any Claim incurred by the Estates (including since the Trustee's Appointment Date) on or after the Petition Date and before the Effective Date, for the costs and expenses of administration of the Estates pursuant to section 503(b), including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date, of preserving the Estates; and (b) Allowed Professional Compensation Claims.

2. "Administrative Claims Bar Date" means March 14, 2025, the deadline to assert an Administrative Expense Claim pursuant to section 503 of the Bankruptcy Code, established by the February 12, 2025 Order of the Bankruptcy Court [D.I. 948], and except with respect to Professional Compensation Claims, which shall be subject to the provisions of Article II.B hereof.

3. "Administrative Expense Claims Reserve" means, in the event there exists any potential Administrative Expense Claims that may exist or become allowed on or after the Effective Date, Cash to be separately accounted for by the Chapter 11 Trustee or the Disbursing Agent (as the case may be), in an amount sufficient to pay the Administrative Expense Claims at the time such payments are made in accordance with the provisions of the Plan, if and when such Administrative Expense Claims become Allowed Administrative Expense Claims.

4. "Affiliate" means, with respect to a specified Entity, any other Entity that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code.

5. "Allowed" means, with respect to any Claim or Interest, except to the extent the

Plan provides otherwise, any portion thereof (a) that is allowed under the Plan, by Final Order, or pursuant to a settlement, (b) that is evidenced by a Proof of Claim or Interest, as applicable, timely filed by the applicable Claims Bar Date or that is not required to be evidenced by a filed Proof of Claim or Interest, as applicable, under the Plan or a Final Order, or (c) that is scheduled by the Debtors as not disputed, contingent, or unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been timely filed; provided that with respect to a Claim or Interest described in clauses (b) and (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date. No Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.

6. “Appointment Date” means January 9, 2024, the date the Chapter 11 Trustee was appointed as Chapter 11 Trustee for each of the Debtors’ respective Estates by the office of the United States Trustee.

7. “Assets” means all of the property or interests owned or controlled by the Debtors, wherever situated, as that term is defined by section 541 of the Bankruptcy Code, and applicable case law.

8. “Avoidance Causes of Action” means any of the Debtors’ claims pursuant to sections 362, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) were commenced prior to the Effective Date.

9. “Bankruptcy Code” means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq*., as may be amended from time to time.

10. “Bankruptcy Court” means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

11. “Bankruptcy Rules” means the Federal Rules of Bankruptcy Procedure and Official Bankruptcy Forms, as amended, as promulgated under section 2075 of Title 28 of the United States Code, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court.

12. “Business Day” means any day, other than a Saturday, Sunday, or a legal holiday as defined in Bankruptcy Rule 9006(a).

13. “Cash” means the legal tender of the United States of America and equivalents thereof, including but not limited to bank deposits and checks.

14. “Causes of Action” means, without limitation, any Claim, claim for affirmative recovery, damage, remedy, cause of action, controversy, demand, right, rights of setoff, action, cross claim, counterclaim, recoupment, claim for breach of duty imposed by law or in equity, action, Lien, indemnity, contribution, reimbursement, guaranty, debt, suit, class action, third-

party claim, obligation, liability, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, direct or indirect, choate or inchoate, liquidated or unliquidated, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, under the Bankruptcy Code or applicable non-bankruptcy law, or pursuant to any other theory of law. Causes of Action also include: (a) all counterclaims, setoff under section 553 of the Bankruptcy Code or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) Avoidance Causes of Action; and (d) such claims and defenses including but not limited to fraud, mistake, duress, undue influence, breach of duty and usury and any other defenses set forth in section 558 of the Bankruptcy Code. Causes of Action include but are not limited to Claims against any Person or Entity, including but not limited to the Debtors' principal and shareholder Mathu Rajan, and Persons or Entities affiliated and/or controlled by Mathu Rajan including but not limited to VSI and VTI, the Debtors' officers and directors or managers, or board members, professionals, agents representatives or employees. For clarity, the definition of Causes of Action is not intended to limit (i) the Persons or Entities against which any Cause of Action may be asserted; or (ii) the nature of the Claims or Causes of Action retained or asserted.

15. "Chapter 11 Cases" means the jointly administered chapter 11 cases filed for the Debtors in the Bankruptcy Court and currently captioned: *In re Stream TV Networks, LLC,* Bankruptcy Number 23-10763 (DJB) and *In re: Technovative Media, Inc.,* Bankruptcy Number 23-10764 (DJB) with each a "Case".

16. "Claim" means any "claim," as that term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

17. "Claims Agent" means the Debtors' court-appointed Voting and Claims Agent, BMC Group ("BMC").

18. "Claims Bar Date" means May 24, 2023, or such other date established by the Plan or by order of the Bankruptcy Court by which Proofs of Claim must be filed with respect to Claims.

19. "Claims Objection Deadline" means the deadline for objecting to a Claim asserted against a Debtor, which shall be on the date that is the later of: (a) 180 days after the Effective Date, and (b) such other period of limitation as may be specifically fixed by the Chapter 11 Trustee, or by an order of the Bankruptcy Court for objecting to such Claims. The Claims Objection Deadline may be extended by the Chapter 11 Trustee, in his sole and exclusive discretion, for any reason, including but not limited to, for convenience.

20. "Claims Register" means the official register of Proofs of Claims against the Debtors maintained by the Claims Agent or as maintained by the Bankruptcy Court Clerk.

21. "Class" means a category of Claims or Interests classified together as set forth in Article III hereof pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

22. "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

23. "Confirmation Date" means the date upon entry of the Confirmation Order.

24. "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued by the Bankruptcy Court or the Chapter 11 Trustee from time to time.

25. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the transactions contemplated thereby, which shall be in form and substance acceptable to the Chapter 11 Trustee.

26. "Contract Rejection Claim" means a Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

27. "Contract Party" means a party with an acknowledged or court-determined, enforceable, and arm's-length contractual arrangement with a Debtor, which is not the subject of a claim or defense by the Trustee.

28. "Creditor" means the holder of a Claim against a Debtor.

29. "Cure Claim" means a Claim against any, either, or both Debtors based upon such Debtor's monetary default under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed or assumed and assigned by such Debtor or Reorganized Debtor, as applicable, pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

30. "Cure Notice" means a notice of a proposed amount of Cash, or consolidation to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include the amount of Cure Claim (if any) to be paid in connection therewith.

31. "Debtors" means, collectively: Stream TV Networks, Inc. and Technovative Media, Inc.

32. "Disallowed" means, with respect to any Claim, including but not limited to any Administrative Expense Claim, Priority Tax Claim, Priority Non-Priority Tax Claim, General Unsecured Claim or Interest or any portion thereof that (a) is disallowed, denied, dismissed, expunged or overruled under the Plan or pursuant to a Final Order of the Bankruptcy Court or any other court of competent jurisdiction or by a settlement; (b) is scheduled by the Debtors at zero dollars ($0.00) or as contingent, disputed, or unliquidated and as to which the Claims Bar Date has passed and no Proof of Claim was timely filed or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, or otherwise deemed timely filed under applicable law; or (c) is not scheduled by the Debtors and as to which the Claims Bar Date has passed and no Proof of Claim has been timely filed or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

33. "Disbursing Agent" means, with respect to each of the Debtors, William A. Homony.

34. "Disclosure Statement" means the disclosure statement (as it may be amended, supplemented, or modified from time to time) accompanying the Plan, including all exhibits and

schedules thereto and references therein, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, which shall be in form and substance acceptable to the Chapter 11 Trustee in his sole and exclusive discretion.

35. "Disputed Claim" means, with respect to any Claim that (a) is disputed under the Plan; or (b) as to which the Chapter 11 Trustee or the Disbursing Agent has filed a timely objection before the Claims Objection Deadline and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn, settled or determined by a Final Order.

36. "Disputed Claims Reserve" means, in the event there exists any Disputed Claims on or after the Effective Date, Cash to be set aside and separately accounted for by the Chapter 11 Trustee or the Disbursing Agent (as the case may be) pursuant to Article VII.E of the Plan, in an amount sufficient to pay the distributions to all Disputed Claims at the time such distributions are made in accordance with the provisions of the Plan, if such Disputed Claims become Allowed Claims.

37. "Distribution Record Date" shall occur on the Effective Date.

38. "Effective Date" means (a) the date that is the first Business Day on which all conditions to the occurrence of the Effective Date of the Plan have been satisfied or waived pursuant to Article IX, or (b) such later date as determined by the Chapter 11 Trustee. Within two (2) Business Days of the Effective Date, the Chapter 11 Trustee shall file a notice of the occurrence of the Effective Date, notifying parties in interest of the Effective Date and confirming that it has occurred.

39. "Entity" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

40. "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

41. "Estate" means, with respect to each Debtor, the individual estate created for each such Debtor in its Chapter 11 Case, and all property of the respective Debtors, pursuant to section 541 of the Bankruptcy Code.

42. "Exculpated Parties" means, collectively, and in each case in its capacity as such (a) the Chapter 11 Trustee (in his capacities as both the Chapter 11 Trustee and individually); and (b) the Chapter 11 Trustee's professionals and advisors, including but not limited to financial advisors, consultants, attorneys, special litigation counsel, accountants, investment bankers, and other professionals, and with respect to each, their respective agents, officers, owners, members, shareholders, and employees.

43. "Executory Contract" means a contract to which one or both of the Debtors is a party and that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

44. "Final Order" means an order, ruling, or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or by the clerk of such other court of competent jurisdiction on the docket of such court), which has not been reversed, stayed, modified, amended, or vacated, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay,

reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing has been timely taken or is pending; or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Bankruptcy Rules.

45. "General Unsecured Claim" means any Unsecured Claim of vendors, contract parties, or former employees not entitled to priority status under section 507 of the Bankruptcy Code, and any other Unsecured Claims, other than the Subordinated Claims and the Unsecured Deficiency Claim.

46. "Governmental Unit" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

47. "Hawk" shall mean Hawk Investment Holdings Ltd.

48. "Hawk Settlement" means the Trustee's settlement with the Debtors' Secured Creditors Hawk and SLS as approved by Order of the Bankruptcy Court dated June 6, 2024, under Federal Rule of Bankruptcy Procedure 9019 [D.I. 653].

49. "Holder" means an Entity holding a Claim or Interest, as applicable.

50. "Impaired" means, with respect to any Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

51. "Intercompany Claim" means any Claim held by a Debtor against another Debtor.

52. "Intercompany Interest" means an Interest held by a Debtor in an Affiliate.

53. "Interest" means any common stock, limited liability company membership interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

54. "Lien" means a lien as defined in section 101(37) of the Bankruptcy Code.

55. "Liquidation Expense Reserve" shall mean the amount of Cash to be separately accounted for by the Chapter 11 Trustee or the Disbursing Agent (as the case may be) from time to time, to adequately fund the liquidation of the Debtors' remaining assets, the wind up of the Debtors' business affairs, including the review and evaluation of Claims and the administration of the Plan and the Chapter 11 Cases on and after the Effective Date.

56. "M&E Claim" shall mean the Class 2b Claim of McCarter & English, LLP

number 4-1 on the Technovative official claims register in the amount of $2,550,256.65.

57. "M&E Settlement" shall mean the resolution of the M&E Claim as set forth in Article IV Section H of the Plan.

58. "Person" means a person as such term is defined in section 101(41) of the Bankruptcy Code.

59. "Petition Date" for each Debtor means March 15, 2023.

60. "Plan" means this Joint Chapter 11 Plan and all exhibits, supplements, appendices, and schedules hereto, as may be altered, amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof.

61. "Priority Tax Claim" means any Claim of a governmental unit of the type described in section 507(a)(8) of the Bankruptcy Code.

62. "Pro Rata" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of the total Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests, as applicable, in such Class.

63. "Professional" means the Chapter 11 Trustee, Obermayer Rebmann Maxwell & Hippel, LLP, Coren & Ress, P.C., SSG Advisors, LLC, Miller Coffey Tate LLP, Panitch Schwarze Belisario & Nadel LLP, Lewis Brisbois Bisgaard & Smith LLP, and BMC Group, Inc.

64. "Professional Compensation Claims" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

65. "Proof of Claim" means a written proof of claim asserting a Claim against either of the Debtors filed with the Bankruptcy Court or BMC pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002.

66. "Purchaser" means SeeCubic, Inc. ("SCI"), the purchaser of the Transferred Assets under the Stalking Horse APA, as approved by the Bankruptcy Court and set forth in the Sale Order.

67. "Rembrandt" means Rembrandt 3D Holdings, Ltd.

68. "Rembrandt Settlement" means the Trustee's settlement with Rembrandt dated March 4, 2026, and approved by order of the Bankruptcy Court, after notice and a hearing under Bankruptcy Rule 9019, dated April 14, 2026 [D.I. 1211].

69. "Reorganized Debtors" means each of the Debtors, on or after the Effective Date, even though the Debtors have not operated, and will not be operated by the Chapter 11 Trustee or the Disbursing Agent.

70. "Sale Order" means the Order entered December 4, 2024, by the Bankruptcy Court [D.I. 876] approving the sale of the Transferred Assets (as defined in the Stalking Horse APA and Sale Order) to the Purchaser.

71. "Schedule of Rejected Executory Contracts and Unexpired Leases" means the schedule (as may be amended) of the Debtors' Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be rejected by the Chapter 11 Trustee pursuant to the provisions of Article V of the Plan.

72. "Schedules" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors or the Chapter 11 Trustee pursuant to section 521 of the Bankruptcy Code, as may be amended, modified, or supplemented from time to time.

73. "Secured" means, with respect to a Claim, (a) secured by a Lien on property in which either of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the interest of the Holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) and any other applicable provision of the Bankruptcy Code, or (b) Allowed, pursuant to the Plan or a Final Order of the Bankruptcy Court, as a secured Claim.

74. "Secured Creditors" means the holder of a Secured Claim against either of the Debtors, including but not limited to Hawk and SLS Holdings VI, LLC ("SLS").

75. "Stalking Horse APA" means the Asset Purchase Agreement between the Debtors as Sellers and the Purchaser as amended or modified.

76. "Subordinated Claim" means any Claim against either Debtor that is subordinated under section 510 of the Bankruptcy Code, or by agreement or other applicable non-bankruptcy law.

77. "Transferred Assets" means all of the Assets of the Debtors purchased by the Purchaser as defined by the Stalking Horse APA as amended or modified.

78. "Unexpired Lease" means a lease to which one or both of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

79. "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

80. "Unsecured" means, with respect to a Claim, a Claim or any portion thereof that is not Secured.

81. "Unsecured Deficiency Claim" means the Unsecured deficiency Claim of the Secured Creditors which is a Subordinated Claim to all other General Unsecured Claims.

82. "Voting Record Date" means the voting record date established in the Order approving the Disclosure Statement.

83. "VSI" means Visual Semiconductor, Inc.

84. "VTI" means Visual Technology Innovations, Inc.

B. Rules of Interpretation

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule or exhibit, whether or not filed, having been filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof; (6) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) any effectuating provisions shall be interpreted by the Chapter 11 Trustee in a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) all references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (12) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (13) unless otherwise specified herein, whenever the words "include," "includes," or "including" are used in the Plan, they shall be deemed to be followed by the words "without limitation," whether or not they are in fact followed by those words or words of like import; (14) unless otherwise specified herein, references from or through any date mean from and including or through and including; and (15) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

C. Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If any payment, distribution, act, or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act, or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

D. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except

as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E. Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A. Administrative Expense Claims

Except with respect to Administrative Expense Claims that are Professional Compensation Claims incurred up through the Effective Date, and except to the extent that a Holder of an Allowed Administrative Expense Claim and the Chapter 11 Trustee agree to less favorable treatment for such Holder, each Holder of an Allowed Administrative Expense Claim, other than an Allowed Professional Compensation Claim, shall be paid, after the establishment and funding of the Liquidation Expense Reserve and Administrative Expense Claims Reserve, in full or Pro Rata, as applicable, from the Debtors' available Cash in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Administrative Expense Claim on he later of: (i) on or as soon as reasonably practicable after the Effective Date if such Administrative Expense Claim is Allowed as of the Effective Date; (ii) on or as soon as reasonably practicable after the date such Administrative Expense Claim is Allowed by Final Order; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court, as applicable.

B. Professional Compensation Claims

1. Final Fee Applications and Payment of Professional Compensation Claims

All final requests for payment of Professional Compensation Claims shall be filed no later than the day that is the first Business Day that is forty-five (45) calendar days after the Effective Date. Such requests shall be filed with the Bankruptcy Court and served upon the Disbursing Agent and his counsel. The Allowed amounts of such Professional Compensation Claims shall be determined by the Bankruptcy Court. The Allowed amount of Professional Compensation Claims owing to the Professionals, after taking into account any prior payments to and retainers held by such Professionals, shall be paid, after the establishment and funding of the Liquidation Expense Reserve and Administrative Expense Claims Reserve, in full or Pro Rata, as applicable, in Cash to such Professionals as soon as reasonably practicable following the date when such Professional Compensation Claims are Allowed by a Final Order.

C. Priority Tax Claims

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent

that a Holder of an Allowed Priority Tax Claim and the Chapter 11 Trustee or Disbursing Agent agree to less favorable treatment for such Holder, in exchange for and in full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, in the Chapter 11 Trustee's or Disbursing Agent's sole and exclusive discretion, one of the following treatments, after the establishment and funding of the Liquidation Expense Reserve and Administrative Expense Claims Reserve: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code, payable on or as soon as practicable following the Effective Date; or (2) such other treatment as may be agreed upon by such Holder and the Trustee or the Disbursing Agent, or otherwise determined by an order of the Bankruptcy Court.

D. Statutory Fees

All fees payable to the U.S. Trustee pursuant to section 1930 of Title 28 of the U.S. Code together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable (the "Statutory Fees") incurred prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Reorganized Debtors shall be liable to pay any and all Statutory Fees when due and payable. The Reorganized Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court UST Form 11-PCR reports when they become due. The Reorganized Debtors shall remain obligated to pay Statutory Fees to the U.S. Trustee until the earliest of the case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any administrative claim in the case and shall not be treated as providing any release under the Plan.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A. Classification of Claims and Interests

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. All Claims and Interests, except for Claims addressed in Article II of the Plan, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim against a Debtor is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

B. Summary of Classification

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes

shall be treated as set forth in Article III.C hereof.

This Plan under chapter 11 of the Bankruptcy Code proposes to pay creditors of Stream and Technovative from the Debtors' Assets pursuant to section 1123(b)(4) of the Bankruptcy Code.

This Plan provides for: ___0___ classes of secured claims;
___3___ classes of unsecured creditors; and
___1___ class of equity security holders.

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| **Class** | **Claim/Interest** | **Status** | **Voting Rights** |
|---|---|---|---|
| 1 | Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2a | General Unsecured Claims against Stream | Impaired | Entitled to Vote |
| 2b | General Unsecured Claim against Technovative | Impaired | Entitled to Vote |
| 3 | Subordinated Unsecured Claims against Stream | Impaired | Entitled to Vote |
| 4 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

C. Treatment of Claims and Interests

Subject to Article VII of the Plan, to the extent a Class contains Allowed Claims or Interests with respect to a particular Debtor, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Chapter 11 Trustee and the Holder of such Allowed Claim or Allowed Interest, as applicable.

1. Class 1 — Priority Claims

*(a)* *Classification:* Class 1 consists of all Priority Claims that are not tax Claims.

*(b)* *Treatment:* Except to the extent that a Holder of an Allowed Priority Claim and the Chapter 11 Trustee or Disbursing Agent agree to less favorable treatment for such Holder, each Holder of an Allowed Priority Claim shall receive payment in full on the Effective Date, in full and final

satisfaction, compromise, settlement, release, and discharge of such Claim.

(c) *Voting*. Class 1 is Unimpaired under the Plan. Each Holder of a Class 1 Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Class 1 Priority Claim is not entitled to vote to accept or reject the Plan.

2. Class 2a — General Unsecured Claims against Stream

(a) *Classification:* Class 2a consists of all Allowed General Unsecured Claims against Stream, including holders of Contract Rejection Claims, and are entitled to vote to accept or reject the Plan.

(b) *Treatment:* On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 2a General Unsecured Claim against Stream shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Claim, Pro Rata payment in cash up to the Allowed amount of each such Claim, but only after payment in full to all Administrative Expense Claims, Professional Compensation Claims, Priority Tax Claims, and Allowed Class 1 Priority Claims.

(c) *Voting:* Class 2a is Impaired under the Plan. Therefore, each Holder of an Allowed Class 2a General Unsecured Claim is entitled to vote to accept or reject the Plan.

3. Class 2b — General Unsecured Claim against Technovative

(a) *Classification:* Class 2b consists of the M&E Claim.

(b) *Treatment:* On the Effective Date, or as soon as reasonably practicable thereafter, McCarter & English, LLP shall be paid $50,000 in Cash on the Effective Date as payment in full and final satisfaction of the M&E Claim.

(c) *Voting:* Class 2b is Impaired under the Plan. Therefore, each Holder of an Allowed Class 2a General Unsecured Claim is entitled to vote to accept or reject the Plan.

4. Class 3 — Subordinated Unsecured Claims

(a) *Classification:* Class 3 consists of all Subordinated Unsecured Claims, whether subordinated by the Effective Date or not. To the extent these claims arise from damages occasioned in connection with a purchase of or sale of a security, they will be automatically subordinated. Included in Class 3 is any claim subordinated by order of the Bankruptcy Court under section 510 of the Bankruptcy Code relating to any inequitable conduct by any Person or Entity asserting a Claim against the Debtors and the subordinated Unsecured Deficiency Claim of the Secured Creditors.

(b) *Treatment:* On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Class 3 Allowed Subordinated Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Claim, Pro Rata payments in cash up to the Allowed amount of each such Claim, but only after payment in full to all Administrative Expense Claims, Professional Compensation Claims, Priority Tax Claims, Class 1 Priority Claims and Class 2a General Unsecured Claims.

(c) *Voting:* Class 3 is Impaired under the Plan. Therefore, each Holder of a Class 3 Subordinated Unsecured Claim is entitled to vote to accept or reject the Plan.

4. Class 4 — Equity Interests

(a) *Classification:* Class 6 consists of all Equity Interests in Stream and includes holders of all classes of shares in Stream.

(b) *Treatment:* Holders of Class 6 Equity Interests shall receive no recovery or distribution on account of such Equity Interests. On the Effective Date, all Equity Interests in Stream and the corresponding underlying securities evidencing such Claims or interest shall be canceled, released, extinguished, and discharged, and will be of no further force or effect.

(c) *Voting:* Class 6 is Impaired under the Plan. Each Holder of a Class 6 Equity Interest in Stream is conclusively presumed to have rejected the Plan pursuant to 1126(g) of the Bankruptcy Code. Therefore, each Holder of a Class 6 Equity Interest in Stream is not entitled to vote to accept or reject the Plan.

D. Voting of Claims

1. Each Holder of a Claim in an Impaired Class that is entitled to vote on the Plan as of the record date for voting on the Plan pursuant to this Article III shall be entitled to vote to accept or reject the Plan as provided in the Disclosure Statement [D.I. 1276] and the Order Approving the Disclosure Statement [D.I. 1291], or any other order of the Bankruptcy Court.

2. In order for its Ballot to count, the Holder of an Allowed Claim in Class 2a, 2b or 3 must (i) complete, date and properly execute the Ballot, and (ii) properly deliver the Ballot to the Claims Agent by First Class Mail to the following address: BMC Group, Attn: Stream TV Ballot Processing, PO Box 90100, Los Angeles, CA 90009, or via overnight courier, messenger or hand delivery to BMC Group, Attn: Stream TV Ballot Processing, 3732 West 120th Street, Hawthorne, CA 90250. Ballots may also submitted through the online voting portal maintained by the Claims Agent at https://ballots.bmcgroup.com/streamtv . To submit your Ballot via the Claims Agent's online portal, please visit https://ballots.bmcgroup.com/streamtv and follow the instructions.

E. No Substantive Consolidation

Although the Plan is presented as a joint plan of reorganization, the Plan does not provide for the substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for any reason. Except as expressly

provided herein, nothing in the Plan or the Disclosure Statement shall constitute or be deemed to constitute an admission that either or both of the Debtors is subject to or liable for any Claims against the other Debtor. A Claim against multiple Debtors will be treated as a separate Claim against each applicable Debtor's Estate for all purposes, including voting and distribution; provided, however, that no Claim will receive value in excess of one hundred percent (100.0%) of the Allowed amount of such Claim or Interest under the Plan for the Debtors.

F. Acceptance by Impaired Classes.

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if Holders of at least two-thirds in dollar amount and more than one-half in number of the Claims of such Class entitled to vote that actually vote on the Plan have voted to accept the Plan. Holders of Classes 2 (General Unsecured Claims) and 3 (Subordinated Unsecured Claims) are Impaired, and the votes of Holders of Claims in such Classes will be solicited. If a Class contains Holders of Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

G. Consensual Confirmation

The Plan shall be deemed a separate Chapter 11 plan for each Debtor. To the extent that there is no rejecting Class of Claims in the chapter 11 Plan of any Debtor, the Chapter 11 Trustee shall seek Confirmation of such Debtor's Plan pursuant to section 1129(a) of the Bankruptcy Code.

H. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Chapter 11 Trustee shall seek Confirmation of the Debtors' Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.

I. Controversy Concerning Impairment or Classification

If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests is Impaired or is properly classified under the Plan, the Bankruptcy Court shall, after notice and a hearing, resolve such controversy at the Confirmation Hearing.

J. Intercompany Interests

Intercompany Interests are being maintained to ensure the existing corporate structure of the Debtors. For the avoidance of doubt, any Interest in non-Debtor Affiliates owned by a Debtor shall continue to be owned by the applicable Reorganized Debtor, unless previously sold by the Chapter 11 Trustee pursuant to the Sale Order.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A. Sources of Consideration for Plan Distributions

The Trustee or the Disbursing Agent shall fund the distributions contemplated under the Plan, as applicable with: (1) Cash on hand; (2) the net proceeds of any recoveries on the Debtors' Causes of Action, including any Avoidance Cause of Action; (3) the proceeds of any claim for indemnification under the Stalking Horse APA and the Sale Order against the Purchaser; and (4) any other Assets of the Debtors discovered and later recovered by the Chapter 11 Trustee or the Disbursing Agent.

Each distribution and issuance referred to in Article III of the Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person or Entity receiving such distribution or issuance; provided that, to the extent that a term of the Plan or the Confirmation Order conflicts with the term of any such instruments or other documents, the terms of the Plan and/or the Confirmation Order shall govern.

On the Effective Date, the Disbursing Agent, or as soon thereafter in the sole discretion of the Disbursing Agent, shall make distributions to Holders of Allowed Claims in such Classes in accordance with the treatment set forth in the Plan for such Classes in accordance with the terms of this Plan.

B. Corporate Existence

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws, not to operate, but solely for purposes of winding down the respective Debtor estates.

C. Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Confirmation Order, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property (including all interests, rights, and privileges related thereto) in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan, including Interests held by the Debtors in any non-Debtor Affiliates not conveyed pursuant to the Sale Order, shall vest in the applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, encumbrances, or other interests, unless expressly provided otherwise by the Plan or Confirmation Order, subject to and in accordance with the Plan.

D. Manager of the Reorganized Debtors

As of the Effective Date, the Debtors will continue to not operate. The Disbursing Agent shall act as the sole representative of the Reorganized Debtors. All board and officer positions will be terminated by operation of the Plan and the Confirmation Order on the Effective Date without the need for further order of the Bankruptcy Court or any other court, or additional

corporate action.

E. Employment Obligations

All employment contracts of the Debtors, if any, shall be rejected as of the Effective Date by operation of the Plan and the Confirmation Order without the need for further order of the Bankruptcy Court or any other court.

F. Exemption from Certain Taxes and Fees

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax, document recording tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

G. Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain all Causes of Action and the Disbursing Agent, in his sole and exclusive discretion, may enforce any and all rights to commence and pursue, any and all Causes of Action, including any Claims or Causes of Action for Subordination under section 510 of the Bankruptcy Code, and the Avoidance Causes of Action whether arising before or after the Petition Date, and the Debtors' respective rights to commence, prosecute, or settle such Causes of Action shall be preserved and vested in the Disbursing Agent, notwithstanding the occurrence of the Effective Date. For the avoidance of doubt, the preservation of Causes of Action described in the preceding sentence includes, but is not limited to, the Debtors' rights, as applicable, to (1) assert any and all Causes of Action held by the Debtors whether specifically identified herein or not, any counterclaims, crossclaims, claims for contribution defenses, and similar claims in response to such or Causes of Action, (2) object to Administrative Expense Claims, including but not limited to the Chapter 11 Trustee's pending objection to Lewis Brisbois Bisgaard & Smith LLP final fee application request, (3) object to other Claims, and (4) subordinate Claims, other than the Causes of Action released by the Debtors.

The Disbursing Agent, on behalf of the Debtors and the Reorganized Debtors, expressly reserves all rights to prosecute any and all Causes of Action against any Entity or Person. Unless any Cause of Action against an Entity or Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Disbursing Agent expressly reserves all and shall retain the applicable Causes of Action, including the Avoidance Causes of Action for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The applicable Reorganized Debtor shall retain all Causes of Action and the Disbursing Agent, on behalf of the Reorganized Debtors shall have the sole and exclusive right, authority,

and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

H. Settlement of Claim against Technovative; Termination of Subordination Rights

1. Pursuant to section 1123 of the Bankruptcy Code and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims, Causes of Action, or controversies of McCarter & English, LLP as follows: (i) the Chapter 11 Trustee having reviewed and raised informal objections to the sole remaining Claim against Technovative consisting of the M&E Claim; and (ii) in exchange for the Chapter 11 Trustee refraining from filing formal objections to the M&E Claim, McCarter & English, LLP agrees to accept $50,000 in Cash on the Effective Date, or as soon as reasonably practicable hereafter, as payment in full and final satisfaction of the M&E Claim, and McCarter & English LLP shall have an Allowed Class 2a General Unsecured Claim against Stream in the amount of $2,809,902.63. This Plan shall be deemed a motion to approve the good-faith compromise and settlement of the M&E Settlement as set forth above, pursuant to section 1123 of the Bankruptcy Code and, with respect to the compromise and settlement embodied in the M&E Settlement, Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement embodied in the M&E Settlement and a finding that such compromise or settlement is: (i) in the best interest of the Debtors, the Reorganized Debtors, and their respective Estates and property, and of Holders of Claims or Equity Interests; (ii) fair, equitable, and reasonable; and (iii) does not fall below the lowest range of reasonableness.

2. Except as provided herein, the classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments under this Plan take into account or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b), or 510(c) of the Bankruptcy Code or otherwise, and any and all such rights against the Debtors and/or their Estates are terminated pursuant to this Plan. Pursuant to section 510 of the Bankruptcy Code, the Chapter 11 Trustee or the Disbursing Agent, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Equity Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

I. Corporate Existence

On and after the Effective Date, the Reorganized Debtors shall, in the Disbursing Agent's sole discretion, continue in existence for the sole purposes of completing the liquidation of the Debtors' remaining Assets. The Disbursing Agent, as the Reorganized Debtors' sole representative, shall be exclusively empowered to take any action with respect to: (a) resolving Disputed Claims; (b) making distributions on account of Allowed Claims as provided hereunder; (c) enforcing and prosecuting claims, interests, rights, and privileges including, but not limited to the Causes of Action, to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith; (d) filing appropriate tax returns; (e) complying with obligations under the Stalking Horse APA; and (f) administering the Plan in an efficient manner. The Disbursing Agent shall be deemed to be substituted as representative of the Reorganized Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending or later initiated in the Bankruptcy Court; and (b) all matters pending or

later initiated in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, without the need or requirement to file motions or substitutions of parties or counsel in each such matter.

1. Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects.

Except as otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, the Assets of the Debtors that were not transferred to the Purchaser pursuant to the Sale Order and the Stalking Horse APA, if any, shall vest in the applicable Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances, subject to and in accordance with the Plan.

2. Preservation of Causes of Action

Unless any Cause of Action against an Entity or Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, or sold pursuant to an asset purchase agreement, in accordance with section 1123(b) of the Bankruptcy Code, the Disbursing Agent on behalf of and as the sole representative of the Reorganized Debtors shall retain all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, which shall vest in the Reorganized Debtors pursuant to the terms of the Plan. Unless any such Cause of Action against an Entity or Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order or sold pursuant to an asset purchase agreement, the Debtors expressly reserve all such Causes of Action including the Avoidance Causes of Actions for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. **No Entity or Person may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Cause of Action against them as any indication that the Disbursing Agent, on behalf of the Debtors or the Reorganized Debtors, to any Cause of Action against them as any indication that the Disbursing Agent, on behalf of the Debtors or the Reorganized Debtors, will not pursue any and all available Causes of Action. The Disbursing Agent and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity.**

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. Assumption and Rejection of Executory Contracts and Unexpired Leases

Except as otherwise set forth herein, all Executory Contracts or Unexpired Leases will be deemed rejected as of the Effective Date, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed or rejected by the Debtors; or (2) are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases. The assumption or rejection of all executory contracts and unexpired leases in the Chapter 11 Cases or in the Plan shall be determined by the Chapter 11 Trustee in his sole discretion. Entry of the

Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assumptions and assignments, and the rejection of the Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

B. Claims Based on Rejection of Executory Contracts or Unexpired Leases

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Claims Agent and served on the Disbursing Agent and his counsel no later than thirty (30) calendar days after notice of such rejection is served on the applicable claimant. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time shall be automatically Disallowed and forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Disbursing Agent, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, including any Claims against any Debtor listed on the Schedules as unliquidated, contingent or disputed. Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as a Class 2a General Unsecured Claim against Stream and shall be treated in accordance with Article III of the Plan.

C. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any Cure Claims shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date or as soon as reasonably practicable thereafter, with such Cure Claim being $0.00 if no amount is listed in the Cure Notice, subject to the limitations described below, or on such other terms as the party to such Executory Contract or Unexpired Lease may otherwise agree.

At least fourteen (14) calendar days before the Confirmation Hearing, the Chapter 11 Trustee shall distribute, or cause to be distributed, Cure Notices and proposed amounts of Cure Claims to the applicable Executory Contract or Unexpired Lease counterparties. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served, and actually received by the Chapter 11 Trustee and his counsel at least seven (7) calendar days before the Confirmation Hearing. Any such objection to the assumption of an Executory Contract or Unexpired Lease shall be heard by the Bankruptcy Court on or before the Effective Date, unless a later date is agreed to between the Chapter 11 Trustee, on the one hand, and the counterparty to the Executory Contract or Unexpired Lease, on the other hand, or by order of the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount shall be deemed to have assented to such assumption and/or cure amount; provided, however, that, subject to Article X.A of the Plan, the Disbursing Agent, on behalf of the Reorganized Debtors, shall have the right to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases, as applicable, through and including forty-five (45) calendar days after the Effective Date.

The Chapter 11 Trustee and the Disbursing Agent reserve the right to reject any Executory Contract or Unexpired Lease in the resolution of any cure disputes. Notwithstanding anything to the contrary herein, if at any time the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Chapter 11 Trustee and the Disbursing Agent will have the right, at such time, to add such Executory Contract or Unexpired Lease to the Schedule of Rejected

Executory Contracts and Unexpired Leases, or reject it, in which case such Executory Contract or Unexpired Lease shall be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults, whether monetary or nonmonetary, including defaults of provisions restricting a change in control or any bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date of assumption for such Executory Contract or Unexpired Lease; provided that nothing herein shall prevent the Chapter 11 Trustee from (a) paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure Claim, or (b) settling any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed and cured shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D. Insurance Policies

All of the Debtors' insurance policies, and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Chapter 11 Trustee shall determine whether to assume any of the Debtors' prepetition insurance policies and any agreements, documents, and instruments related thereto.

E. Indemnification Provisions

Except as otherwise provided in the Plan, on and as of the Effective Date, any of the Debtors' indemnification obligations with respect to any contract or agreement that is the subject of or related to any litigation against the Debtors or Reorganized Debtors, as applicable, are hereby rejected by the Chapter 11 Trustee. For the avoidance of doubt, nothing herein shall in any way affect any indemnification in favor of the Debtors or the Chapter 11 Trustee or his Professionals including, but not limited to, the indemnification provisions in favor of the Chapter 11 Trustee and his professionals in the Stalking Horse APA and the Sale Order, and the Estates' obligations to provide indemnity to SSG Capital Advisors LLC under its contract and the Bankruptcy Court order providing for SSG's appointment and the Bankruptcy Court order directing the Chapter 11 Trustee to indemnify and reimburse SSG for all reasonable defense costs, fees and expenses [D.I. 1006].

F. Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan shall constitute an admission by the Chapter 11 Trustee or the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease, or that any Reorganized Debtor has any liability thereunder. If, prior to the Effective Date, there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Chapter 11 Trustee or the Disbursing Agent shall have forty-five (45) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

G. Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases, and this paragraph shall constitute a request for such extension pursuant to Bankruptcy Rule 9006(b).

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A. Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided in the Plan, on the Effective Date or as soon thereafter as the Disbursing Agent deems practicable, in his sole discretion, (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim), each Holder of an Allowed Claim shall be entitled to receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims (which will only be made if and when they become Allowed Claims) shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise expressly provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. The Disbursing Agent shall have no obligation to recognize any transfer of Claims against any Debtor or privately held Interests occurring on or after the Distribution Record Date.

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Disbursing Agent on the Effective Date or as soon as reasonably practicable thereafter to be determined in the Disbursing Agent's sole discretion. The Disbursing Agent shall not be required to give any bond, surety, or other security for the performance of the Disbursing Agent's duties unless otherwise ordered by the Bankruptcy Court.

B. Disbursing Agent

1. Appointment and Powers of the Disbursing Agent

The Disbursing Agent shall act for the Reorganized Debtors after the Effective Date in the same fiduciary capacity as applicable to the Debtors' officers and directors. The Chapter 11 Trustee who served in such capacity immediately before the Effective Date shall be replaced by the Disbursing Agent on the Effective Date. From and after the Effective Date, the Disbursing Agent shall be the sole representative of, and shall act for, the Reorganized Debtors. The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent him with respect to his responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent, in his sole discretion, to be necessary and proper to implement the provisions hereof.

2. Post-Effective Date Fees and Expenses

From and after the Effective Date, the Disbursing Agent shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Disbursing Agent and those professional persons employed by the Disbursing Agent incurred in connection with the implementation and consummation of the

Plan, the reconciliation of Claims, the prosecution of Causes of Action, or any other matters as to which such professionals are employed. The compensation payable to the Disbursing Agent shall be based upon the hourly rate of the Disbursing Agent and those professionals employed by the Disbursing Agent to effectuate the terms of this Plan. The Disbursing Agent's current hourly rate is $640. The Disbursing Agent has agreed to a reduced hourly rate in the amount of $500 for this engagement. Additionally, the Disbursing Agent shall seek a 10% discount from any professionals retained by the Disbursing Agent in discharging his duties under the Plan. Further, the Disbursing Agent will engage counsel on a contingent basis to pursue claims for indemnification under the Stalking Horse APA and the Sale Order against the Purchaser. The reasonable fees and expenses of the Disbursing Agent and any such professionals ("Disbursing Agent Expenses") shall be paid from the Assets of the Reorganized Debtors prior to any distributions to Holders of General Unsecured Claims, Holders of Subordinated Unsecured Claims and Holders of Equity Interests.

3. Limitations on Liability

The Disbursing Agent shall not incur liability to any Person by reason of the discharge of his duties set forth in this Plan except in the event a court of competent jurisdiction determines by Final Order actual fraud, gross negligence or willful misconduct, as determined by a Final Order of a court of competent jurisdiction.

4. Disbursing Agent Indemnification.

The Disbursing Agent and all professionals retained by the Disbursing Agent, each in their capacities as such, shall be deemed indemnified, except for actual fraud, willful misconduct, or gross negligence, determined by a Final Order of a court of competent jurisdiction, in all respects by the Debtors and the Estates. Notwithstanding anything to the contrary contained herein, the Disbursing Agent in his capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors or the Estates.

5. Transfer of Privilege/No Waiver

On the Effective Date, all of the Debtors' evidentiary privileges, including the attorney/client privilege, shall be deemed transferred to the Reorganized Debtors and Disbursing Agent. The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief. Upon such transfer, the Debtors and the Estates shall have no other further rights or obligations with respect thereto. Nothing herein shall be deemed a waiver of the Debtors' or the Estates' rights of privilege.

C. <u>Delivery of Distributions and Undeliverable or Unclaimed Distributions</u>

1. Delivery of Distributions

(a) Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims or Interests shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent: (i) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Disbursing Agent has been notified in writing of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; (iii) at the addresses reflected in the

Schedules if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address; or (iv) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Chapter 11 Trustee and/or Disbursing Agent shall not incur any liability whatsoever on account of any distributions under the Plan, except in the event of actual fraud, gross negligence, or willful misconduct, as determined by a Final Order of a court of competent jurisdiction.

D. Record Date of Distributions

As of the close of business on the Distribution Record Date, the various transfer registers for each Class of Claims as maintained by the Reorganized Debtors or the Claims Agent shall be deemed closed, and there shall be no further changes in the record Holders of any Claims. The Disbursing Agent shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date. In addition, with respect to payment of any cure amounts or disputes over any cure amounts, the Disbursing Agent shall have no obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Cure Claim.

E. Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the Disbursing Agent, on the one hand, and the Holder of a Disputed Claim, on the other hand, or as set forth in a Final Order, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all of the Disputed Claim has become an Allowed Claim by Final Order or has otherwise been resolved by settlement or Final Order.

F. Minimum Distributions

Notwithstanding any other provision of the Plan, no Cash payment valued at less than $100.00, in the reasonable discretion of the Disbursing Agent, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim. Such Allowed Claims to which this limitation applies shall be discharged and its Holder forever barred from asserting that Claim against the Debtors or their property.

G. Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) calendar days from the date of the distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors for redistribution by the Disbursing Agent at his sole discretion automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, state, or other jurisdiction escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred. The Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by

reviewing the Debtors' books and records and the Bankruptcy Court docket.

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) calendar days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly and in writing to the Disbursing Agent by the Holder of the relevant Allowed Claim within the ninety (90) calendar day period. After such date, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be automatically discharged and forever barred, and such funds shall revert to the Reorganized Debtors for redistribution by the Disbursing Agent at his sole discretion (notwithstanding any applicable federal, provincial, state or other jurisdiction escheat, abandoned, or unclaimed property laws to the contrary).

A distribution shall be deemed unclaimed if a Holder has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Disbursing Agent of an intent to accept a particular distribution; (c) responded to the Disbursing Agent's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

H. Remainder Amounts After Distribution

If at any time the Disbursing Agent determines that the expense of administering the Reorganized Debtors so as to make a final distribution to Holders of Allowed Claims is likely to exceed the value of the assets remaining in the Reorganized Debtors, the Disbursing Agent may (i) reserve any amount necessary to dissolve the Reorganized Debtors, and (ii) donate any remaining assets to a 501(c)(3) charity to be selected by the Disbursing Agent.

I. Manner of Payment

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check, wire transfer, automated clearing house, or as otherwise required or provided in applicable agreements.

J. Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Disbursing Agent shall ensure the Reorganized Debtors comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, retaining a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information, documentation, and certifications necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable or appropriate. All Persons or Entities holding Claims against any Debtor shall be required to provide any information necessary for the Disbursing Agent to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit. The Disbursing Agent reserves the right to allocate any distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment

of any tax obligations imposed by any Governmental Unit on account of such distribution.

K. No Post-petition or Default Interest on Claims

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, post-petition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim for purposes of distributions under the Plan.

L. Allocations

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remaining portion of such Allowed Claim, if any.

M. Setoffs and Recoupment

The Disbursing Agent may, but shall not be required to, setoff against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature whatsoever that the Debtors, as applicable, may have against the Holder of such Allowed Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law, to the extent that such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (pursuant to the Plan or otherwise); provided, however, that the failure of the Disbursing Agent to do so shall not constitute a waiver, abandonment, or release by the Debtors of any such Claim they may have against the Holder of such Claim.

N. Foreign Current Exchange Rate

As of the Effective Date, any Claim asserted in a currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate on the Petition Date, as quoted at 4:00 p.m. (prevailing Eastern Time), midrange spot rate of exchange for the applicable currency as published in the Wall Street Journal, National Edition, on the day after the Petition Date.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A. Resolution of Disputed Claims

1. Allowance of Claims

After the Effective Date, the Disbursing Agent and, with respect to each Class of Claims, shall have and retain any and all rights and defenses the Debtors had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim against any Debtor shall become an Allowed Claim unless and until such Claim is deemed

Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

2. Claims and Equity Interests Administration Responsibilities

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Disbursing Agent shall have the sole and exclusive authority to: (a) file, withdraw, or litigate to judgment objections to Claims against any of the Debtors; (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; (c) file, prosecute, litigate, compromise or settle any Cause of Action, including the Avoidance Causes of Action; and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. The Chapter 11 Trustee and Disbursing Agent shall have the right to amend the Debtors' Bankruptcy Schedules to modify or remove any scheduled claims that the Chapter 11 Trustee or Disbursing Agent believes are improper in any way or in which the Debtors and Reorganized Debtors may hold Causes of Action against as a means of setoff and/or recoupment, subject to any affected parties receiving notice of such amendment. Any party affected by any such amendment shall retain and reserve all rights to file a proof of claim, which shall be deemed timely if filed on or within thirty (30) days after notice of such amendment is served upon such party, and any such party who does not file a proof of claim on or within such thirty (30) day period shall be forever barred from asserting that Claim against the Debtors or their property. The Chapter 11 Trustee and Disbursing Agent reserve all rights to object to any such timely filed proof of claim.

3. Estimation of Claims

Before or after the Effective Date, the Chapter 11 Trustee or Disbursing Agent, may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any Disputed, contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions) subject to final Allowance, and the Chapter 11 Trustee or Disbursing Agent may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion

requesting the right to seek such reconsideration on or before fourteen (14) calendar days after the date on which such Claim is estimated. All of the aforementioned Claims, objections, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims against any of the Debtors may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

4. Adjustment to Claims Without Objection

Any duplicate Claim or Interest, any Claim against any Debtor that has been paid or satisfied, or any Claim against any Debtor that has been amended or superseded, canceled, or otherwise expunged (including pursuant to the Plan), may, in accordance with the Bankruptcy Code and Bankruptcy Rules, be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Disbursing Agent without the Disbursing Agent having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest, and without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent that the Trustee or Disbursing Agent amends or has amended the Debtors' Schedules, any person or entity whose rights are adversely effected by such an amendment shall have the later of (i) thirty (30) days from the Effective Date; or (ii) thirty (30) days after service of such amendment to file a proof of claim, after which time, the right to do so shall have conclusively terminated.

5. Deadline for Objection to Claims and Equity Interests

The Deadline to file any objections to Claims and Equity Interests, including Administrative Expense Claims that are not subject to a pending objection on the Effective Date, shall be one hundred eighty (180) days after the Effective Date (the "Claim and Interest Objection Bar Date"). The Disbursing Agent may seek one or more extensions of the Claim and Equity Interest Objection Bar Date from the Bankruptcy Court. The filing of a motion by the Disbursing Agent to extend the time to file an objection to a Claim or Equity Interest will automatically extend the date to which the Disbursing Agent must file objections to a filed Claim or Equity Interest until a Final Order is entered on any such motion.

6. Cancellation of Equity Interests

Except as otherwise set forth herein, on the Effective Date, all existing Equity Interests of each of the Debtors shall be retired, cancelled, extinguished and/or discharged in accordance with the terms of the Plan. Except as otherwise provided in the Plan, on the Effective Date: (1) the obligations of the Debtors under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest shall be cancelled as to the Debtors shall not have any continuing obligations thereunder, and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged.

B. Disallowance of Claims

Any Claims against any of the Debtors held by Persons or Entities from which property is recoverable under sections 542, 543, 547, 548, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors.

Except as provided herein or otherwise agreed to by the Disbursing Agent, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late filed Claim has been deemed timely filed by a Final Order.

C. Amendments to Proofs of Claim

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Proof of Claim or Interest may not be filed or amended without the prior authorization of the Bankruptcy Court or the Disbursing Agent and any such new or amended Proof of Claim filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court; provided, however, that the foregoing shall not apply to Administrative Expense Claims or Professional Compensation Claims.

D. No Distributions Pending Allowance

Notwithstanding anything to the contrary herein, if any portion of a Claim against any Debtor is Disputed, or if an objection to a Claim against any Debtor or portion thereof is filed as set forth in this Article VII, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

E. Disputed Claims Reserve

On or before the Effective Date, the Disbursing Agent shall establish one or more Disputed Claims Reserve for Disputed Claims, which Disputed Claim Reserves shall be administered by the Disbursing Agent. The Disbursing Agent shall reserve in cash, for distribution on account of each Disputed Claim, the distribution due on account of the full asserted amount (or such lesser amount as may be determined in the discretion of the Disbursing Agent, but, for the avoidance of doubt, the Disbursing Agent may seek estimation by the Bankruptcy Court to ascertain the amount to be reserved on account of any such Disputed Claim) with respect to each Disputed Claim as if such Disputed Claim were Allowed. The Disbursing

Agent will, in his sole discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, if and when any such Disputed Claim is resolved consistent herewith and becomes an Allowed Claim, and any such amount will be distributable in respect of such Disputed Claim as such amount would have been distributable had the Disputed Claim been Allowed as of the Effective Date. To the extent either or both Estates are required by applicable law to pay taxes on the taxable net income or gain allocable to Holders of Disputed Claims and if and when such Disputed Claims are ultimately Allowed, Holders whose Disputed Claims are determined to be Allowed will receive Distributions from the Disputed Claims Reserve net of the taxes that the Estate or Estates previously paid on their behalf.

F. Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made by the Disbursing Agent to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Allowed Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Allowed Claim, without any interest, dividends, or accruals to be paid on account of such Allowed Claim unless required under applicable bankruptcy law.

G. No Interest

Unless otherwise expressly provided by section 506(b) of the Bankruptcy Code or as specifically provided for herein or by order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on Claims against any of the Debtors, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim; provided, however, that nothing in this Article VII.G shall limit any rights of any Governmental Unit to interest under sections 503, 506(b), 1129(a)(9)(A) or 1129(a)(9)(C) of the Bankruptcy Code or as otherwise provided for under applicable law.

## ARTICLE VIII.
## DISCHARGE, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A. No Discharge

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against the Debtors.

B. Release of Liens

Except as otherwise specifically provided in the Plan or in prior Orders of the Bankruptcy

Court, on the closing Date of a sale of any Assets of the Debtors, all Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, discharged, and compromised, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, UCCs or other security interests against any property of the Estates shall revert to the Reorganized Debtors for liquidation and distribution by the Disbursing Agent, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

In addition, the Secured Creditors shall execute and deliver all documents reasonably requested by the Disbursing Agent or the Purchaser, as applicable, to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Trustee to terminate the lien, without the need to file UCC-3 termination statements or other jurisdiction equivalents.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release (1) to the extent that any Causes of Action against the Debtors are not released or discharged pursuant to the Plan, the Hawk Settlement, or the Rembrandt Settlement, any rights of the Trustee or the Disbursing Agent to assert any and all of the Debtors' counterclaims, crossclaims, claims for contribution, defenses, and similar claims in response to such Causes of Action, (2) any Causes of Action, including any Avoidance Cause of Action or Cause of Action for Indemnification from the Purchaser, (3) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed, and (4) any Cause of Action against a Holder of a Disputed Claim or the Holder of any Interest, as well as the Debtors' officers, directors, members, managers or shareholders.

C. <u>Regulatory Activities</u>

Notwithstanding anything to the contrary herein, nothing in the Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units or other governmental agencies.

D. <u>Releases by the Debtors</u>

Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan, for good and valuable consideration, including the service of the Exculpated Parties to facilitate the expeditious liquidation of the Debtors and the consummation of the transactions contemplated by this Plan, on the Effective Date, the Exculpated Parties are deemed forever released by the Debtors and their Estates, and each of their successors and assigns, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or their Estates would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the business or contractual arrangements between the Debtors and any of the Exculpated Parties, the negotiation, formulation or preparation of this Plan or related agreements, instruments or other documents (collectively, the "Debtors' Released Claims"), other than Debtors' Released Claims against an Exculpated Party arising out of the actual fraud, gross negligence, willful misconduct, or criminal liability, as determined by a Final Order of a court of competent jurisdiction, of any such Person or entity.

**E. Exculpation**

**Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party, as defined herein, shall have or incur any liability to any person or Entity for, and each Exculpated Party is hereby exculpated from, any Cause of Action, taking place between the Petition Date and the Effective Date of the Plan, related to any act or omission in connection with, relating to, or arising out of, the Debtors' restructuring and liquidation efforts, the Hawk Settlement, the pursuit or consummation of the sale of the Transferred Assets to the Purchaser, the Rembrandt Settlement, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or withdrawal or termination of the Disclosure Statement, the Plan, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.**

F. Injunction

**ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. THEREAFTER, FROM THE EFFECTIVE DATE FORWARD, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR TO THE EXTENT NECESSARY TO ENFORCE THE TERMS AND CONDITIONS OF THE PLAN, THE CONFIRMATION ORDER, OR A SEPARATE ORDER OF THE BANKRUPTCY COURT, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS WILL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE EXCULPATED PARTIES, THE PURCHASER (WITH THE EXCEPTION OF REMBRANDT SOLEY AS TO THE PURCHASER AND THE TRUSTEE IN CONNECTION WITH HIS INDEMNIFICATION RIGHTS UNDER THE STALKING HORSE APA AND SALE ORDER), THE DEBTORS, THEIR ESTATES, OR ANY OF THEIR PROPERTY ON ACCOUNT OF ANY SUCH CLAIM OR EQUITY INTEREST UNLESS ARISING OUT OF ACTUAL FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; AND (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE FROM SUCH ENTITIES, EXCEPT AS OTHERWISE SET FORTH IN THE PLAN AND UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, RIGHT OF SUBORGATION, OR RECOUPMENT.**

G. Gatekeeper Provision

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Debtors, the Disbursing Agent or the Exculpated Parties, without first (1) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against the Debtors, Disbursing Agent or Exculpated Party and is not a Claim that the Debtors released under this Plan, is subject to Exculpation or the Injunction contained in this Plan, which request must attach the complaint or petition proposed to be filed by the requesting party, and (2) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against the Debtors, the Disbursing Agent or the Exculpated Parties. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action; provided, however, that nothing in this Section VIII.G requires, precludes, and/or prohibits an Insurer to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law.

H. Direct Insurance Claims

Nothing contained in the Plan shall impair or otherwise affect any right of a Holder of a Claim under applicable law, if any, to assert direct claims solely under any applicable insurance policy of the Debtors or solely against any applicable provider of such policies, if any.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A. Conditions Precedent to the Effective Date

It is a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B:

1. Confirmation and all conditions precedent thereto shall have occurred;

2. The Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Chapter 11 Trustee in his sole discretion; and

3. The final version of the Plan, including all schedules, supplements, and exhibits thereto, shall be in form and substance acceptable to the Chapter 11 Trustee in his sole discretion.

B. Waiver of Conditions

Any or all of the conditions to Consummation set forth in Article IX.A may be waived by the Chapter 11 Trustee.

C. Effect of Failure of Conditions

If Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims, Causes of Action, or Interests; (2) prejudice in any manner the rights of the Chapter 11 Trustee to assert the rights of the Debtors, or the rights of any Holder, any Person, or any other Entity; or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, any Person, or any other Entity.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A. Modification and Amendments

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Chapter 11 Trustee reserves the right, in his sole and exclusive discretion, without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. After the Confirmation Date and before substantial consummation of the Plan, the Chapter 11 Trustee may initiate proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and intent of the Plan.

After the Confirmation Date, the Chapter 11 Trustee or Disbursing Agent may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court; provided that such adjustments and modifications do not materially and adversely affect the treatment of Holders of Claims or Interests.

B. Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C. Revocation or Withdrawal of Plan

The Chapter 11 Trustee reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization. If the Chapter 11 Trustee revokes or withdraw the Plan, or if Confirmation or Consummation does not occur, then, absent further order of the Bankruptcy Court: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Classes of Claims or Interests), assumption or rejection of Executory Contracts or

Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, any Person, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, any Person, or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, except as set forth in the Plan, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable, and to hear, determine and, if necessary, liquidate, any Claims against any of the Debtors arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Disbursing Agent amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4. grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

5. ensure that distributions to Holders of Allowed Claims and Equity Interests, if any, are accomplished pursuant to the provisions of the Plan;

6. adjudicate, decide, or resolve: (a) any motions, adversary proceedings, applications, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor, or the Estates that may be pending on the Effective Date or that, pursuant to the Plan, may be commenced after the Effective Date, including, but not limited to, the Causes of Action, and any Avoidance Cause of Action; (b) any and all matters related to

Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan; and (c) any and all matters related to section 1141 of the Bankruptcy Code;

7. enter and implement such orders as may be necessary or appropriate to construe, execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Confirmation Order, the Plan, or the Disclosure Statement;

8. enter and enforce any order for the sale of property pursuant to sections 105, 363, 1123, or 1146(a) of the Bankruptcy Code;

9. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity or Person with the Consummation or enforcement of the Plan;

11. hear and resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI;

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15. adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16. consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan, the Disclosure Statement, or any Bankruptcy Court order, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

17. determine requests for the payment of Claims against any of the Debtors entitled to priority pursuant to section 507 of the Bankruptcy Code;

18. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Sale Order, any remanded proceedings, or any transactions or payments contemplated hereby or thereby, including disputes arising in connection with the implementation of the agreements, documents, or instruments executed in connection with the Plan;

19. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, 511, and 1146 of the Bankruptcy Code;

20. enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Person or Entity, and resolve any cases, controversies, suits, or disputes that may arise in connection with any Person or Entity's rights arising from or obligations incurred in connection with the Plan;

21. hear and determine any and all claims against the Chapter 11 Trustee and/or his professionals, including claims arising under the Barton Doctrine;

22. hear and determine any other matter not inconsistent with the Bankruptcy Code;

23. enter an order or final decree concluding or closing any of the Chapter 11 Cases; and

24. hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan;

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, or the Disclosure Statement, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XI, the provisions of this Article XI shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against the Debtors that arose prior to the Effective Date.

## ARTICLE XII. MISCELLANEOUS PROVISIONS

A. <u>Immediate Binding Effect</u>

Subject to this Article XII.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors and each of their respective heirs executors, administrators, successors, and assigns.

B. Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

C. Further Assurances

On or before the Effective Date, the Chapter 11 Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

D. Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor or any other Entity with respect to the Plan or the Disclosure Statement, shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or other Entity before the Effective Date.

E. Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, receiver, trustee, successor, assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of such Entity.

F. Notices

Any pleading, notice, or other document required by the Plan or the Confirmation Order to be served or delivered shall be served by first-class or overnight mail:

(a) Chapter 11 Trustee and Disbursing Agent:

William A. Homony, CIRA
8 Penn Center, Suite 950
1628 John F. Kennedy Blvd.

Philadelphia, PA 19103

With a copy to: Michael D. Vagnoni, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West, Suite 3400
1500 Market Street
Philadelphia, PA 19102
E-mail: michael.vagnoni@obermayer.com ; and

(b) Office of the U.S. Trustee at:

Andrew R. Vara
United States Trustee
Robert N.C. Nix Federal Building
900 Market Street, Suite 320
Philadelphia, PA 19107
Attention: John Henry Schanne
E-mail: john.schanne@usdoj.gov

G. Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H. Cases

Upon the occurrence of the Effective Date, the Disbursing Agent shall be permitted to (a) close one of the Chapter 11 Cases as determined by the Disbursing Agent in his sole and exclusive discretion, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in such Chapter 11 Cases, and (b) change the name of the remaining Debtors and case caption of the remaining open Chapter 11 Cases as desired, in the Disbursing Agent's sole and exclusive discretion.

I. Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed prior to the Confirmation Date.

[*Remainder of this page intentionally left blank.*]

J. Deemed Acts

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party by virtue of the Plan and the Confirmation Order.

Dated: July 27, 2026

*/s/ William A. Homony*
William A. Homony
Chapter 11 Trustee for the estates of
Stream TV Networks, Inc., and
Technovative Media, Inc.

EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,[1]<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (DJB) |
| In re:<br><br>Technovative Media, Inc.,<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (DJB)<br><br>(Jointly Administered) |

**FIRST AMENDED DISCLOSURE STATEMENT ACCOMPANYING
FIRST AMENDED JOINT PLAN OF LIQUIDATION OF STREAM TV NETWORKS, INC. AND TECHNOVATIVE MEDIA, INC. PURSUANT TO
SECTION 1125 OF THE BANKRUPTCY CODE**

**THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL THE DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN AND THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE.**

**THE DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN IS OCTOBER 6, 2026, UNLESS EXTENDED.**

**THE RECORD DATE FOR DETERMINING WHICH HOLDERS OF CLAIMS MAY VOTE ON THE PLAN IS SEPTEMBER 14, 2026 (THE "VOTING RECORD DATE") UNLESS EXTENDED.**

[1] The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The Debtors' estates are Jointly Administered. However, the Debtors' estates have not been, as of the time of filing the Plan, substantively consolidated.

THE DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAWS.

FOR YOUR VOTE TO BE COUNTED, THE MASTER BALLOT SUBMITTED ON YOUR BEHALF MUST BE ACTUALLY RECEIVED BY THE VOTING AND CLAIMS AGENT ON OR BEFORE THE VOTING DEADLINE.

**THE TRUSTEE IS PROVIDING, ON BEHALF OF THE DEBTORS, THE INFORMATION IN THIS DISCLOSURE STATEMENT TO HOLDERS OF CLAIMS AND INTERESTS FOR THE PURPOSE OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY CONSIDER ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING ALL ATTACHED EXHIBITS AND DOCUMENTS INCORPORATED INTO THIS DISCLOSURE STATEMENT, AS WELL AS THE RISK FACTORS DESCRIBED IN ARTICLE XV OF THIS DISCLOSURE STATEMENT.**

**THIS DISCLOSURE STATEMENT CONTAINS "FORWARD-LOOKING STATEMENTS." SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE TRUSTEE CONSIDERS ALL STATEMENTS REGARDING ANTICIPATED OR FUTURE MATTERS TO BE FORWARD-LOOKING STATEMENTS.**

**THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE PRESENTED IN SUCH FORWARD-LOOKING STATEMENTS. PLEASE REFER TO ARTICLE XV - CERTAIN RISK FACTORS TO BE CONSIDERED IN EVALUATING THIS DISCLOSURE STATEMENT.**

**NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE TRUSTEE URGES EACH HOLDER OF A CLAIM OR INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT OR THE PLAN.**

**THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES, AND CERTAIN DOCUMENTS**

**RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE OR THAT MAY BE FILED LATER WITH THE PLAN SUPPLEMENT. ALTHOUGH THE TRUSTEE BELIEVES THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY CONFLICT, INCONSISTENCY, OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN AND CONTROL FOR ALL PURPOSES. EXCEPT AS OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT AND/OR BOOKS AND RECORDS. THE PLAN SPONSOR DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.**

**FURTHERMORE, READERS ARE CAUTIONED NOT TO PLACE UNDUE RELIANCE ON THE FORWARD-LOOKING FINANCIAL INFORMATION. SUCH INFORMATION CONSTITUTES "FORWARD-LOOKING STATEMENTS," WHICH ARE SUBJECT TO THE RISKS AND UNCERTAINTIES AND CAUTIONARY STATEMENTS SET FORTH IN AND REFERENCED IN THE DISCUSSION OF FORWARD-LOOKING STATEMENTS ABOVE. SUCH FORWARD-LOOKING FINANCIAL INFORMATION HAS BEEN PREPARED BASED ON VARIOUS ASSUMPTIONS, WHICH ARE DESCRIBED IN MORE DETAIL THEREIN, AND TO THE EXTENT THAT ACTUAL FACTS AND CIRCUMSTANCES DIFFER FROM SUCH ASSUMPTIONS, ACTUAL RESULTS COULD DIFFER IN MATERIAL RESPECTS FROM THOSE SET FORTH THEREIN. THE PLAN SPONSOR UNDERTAKES NO DUTY TO UPDATE SUCH FORWARD-LOOKING FINANCIAL INFORMATION UNLESS REQUIRED TO DO SO BY APPLICABLE LAW.**

NONE OF THIS DISCLOSURE STATEMENT, THE PLAN, OR THE CONFIRMATION ORDER, WAIVES ANY RIGHTS OF THE DEBTORS WITH RESPECT TO THE HOLDERS OF CLAIMS OR INTERESTS PRIOR TO THE EFFECTIVE DATE.

THE EFFECTIVENESS OF THE PLAN IS SUBJECT TO CERTAIN MATERIAL CONDITIONS PRECEDENT DESCRIBED HEREIN AND SET FORTH IN ARTICLE IX OF THE PLAN. THERE IS NO ASSURANCE THAT THE PLAN WILL BE CONFIRMED, OR, IF CONFIRMED, THAT THE CONDITIONS REQUIRED TO BE SATISFIED FOR THE PLAN TO BECOME EFFECTIVE WILL BE SATISFIED (OR WAIVED).

TABLE OF CONTENTS

I. INTRODUCTION .......... 1

A. Overview .......... 1

B. Who Is Entitled to Vote on the Plan .......... 2

C. Summary of Claims and Treatment .......... 2

II. OVERVIEW OF THE DEBTORS .......... 3

A. Formation of the Debtors .......... 3

B. Secured Funding of the Debtors .......... 4

C. Omnibus Agreement and Associated Litigation .......... 5

D. The Transactions with Rembrandt .......... 6

III. THE DEBTORS' BANKRUPTCY CASES .......... 6

A. Prior to the Appointment of the Trustee .......... 6

B. After the Appointment of the Trustee .......... 10

C. The Hawk Settlement .......... 10

D. The Trustee's Sale of the Debtors' Assets .......... 11

E. The Litigation with VSI and Rembrandt .......... 12

F. The Rembrandt Settlement .......... 14

G. Lewis Brisbois Bisgaard & Smith LLP Fee Dispute .......... 15

IV. SUMMARY OF CHAPTER 11 PLAN .......... 16

A. Administrative Claims and Other Unclassified Claims .......... 16

B. Classification and Treatment of Claims and Interests .......... 18

C. Treatment of Claims and Interests .......... 19

V. Means for Implementation of the Plan .......... 23

VI. Treatment of Executory Contracts and Unexpired Leases .......... 27

VII. Provisions Governing Distributions .......... 29

A. Procedures for Resolving Contingent, Unliquidated, and Disputed Claims .......... 34

VIII. Discharge, Release, Injunction, and Related Provisions .......... 38

IX. Conditions Precedent to Consummation of the Plan .......... 41

X. Modification, Revocation, or Withdrawal of the Plan .......... 42
XI. Retention of Jurisdiction .......... 43
XII. Miscellaneous Provisions .......... 45
XIII. VALUATION OF THE DEBTORS .......... 48
XIV. TAX ISSUES .......... 49
XV. CERTAIN RISK FACTORS TO BE CONSIDERED .......... 51
A. Certain Restructuring Law Considerations .......... 51
XVI. SOLICITATION AND VOTING PROCEDURES .......... 52
A. Voting Instructions .......... 53
B. Voting Record Date .......... 53
C. Voting Deadline .......... 53
D. Ballots Not Counted .......... 53
XVII. CONFIRMATION OF PLAN .......... 53
A. Confirmation Hearing .......... 53
B. Objections to Confirmation .......... 53
C. Requirements for Confirmation of Plan .......... 55
XVIII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN .. 57
XIX. CONCLUSION AND RECOMMENDATION .......... 57

# I. INTRODUCTION

## A. Overview

William A. Homony is the Chapter 11 Trustee ("Trustee") of the bankruptcy estates of Stream TV Networks, Inc. ("Stream" or "Stream TV") and Technovative Media, Inc. ("Technovative" and with Stream each a "Debtor" and collectively the "Debtors"), as debtors in the above-captioned cases. On January 5, 2024, the Bankruptcy Court entered an Order [D.I. 549], among other things, appointing a Chapter 11 Trustee over the Debtors' bankruptcy cases and on January 9, 2024, the Office of the United States Trustee appointed the Trustee, as a result of which, Mathu Rajan ("Rajan") was removed as the person in control of the Debtors.

The Trustee, on behalf of the Debtors, is providing this First Amended Disclosure Statement and the accompanying materials (collectively, this "Disclosure Statement") to the Office of the United States Trustee and to all of the Debtors' known Creditors and Interest Holders pursuant to section 1125(b) of the Bankruptcy Code for the purpose of soliciting acceptances of the Debtors' First Amended Joint Plan of Liquidation (the "Plan"). The Plan has been filed with the Bankruptcy Court and the summaries of the Plan contained herein shall not be relied upon for any purpose other than to make a judgment with respect to, and determine how to vote on, the Plan. A copy of the Plan is attached hereto as **Exhibit "A."** All capitalized terms used within this Disclosure Statement that are not defined herein have the meanings set forth in the attached Plan.

The purpose of this Disclosure Statement is to provide Holders of Claims or Interests, who are entitled to vote on the Plan, with adequate information regarding the (i) Debtors' history, assets, and these Chapter 11 Cases, (ii) the Plan, (iii) information about the Bankruptcy Court approved sale of the Transferred Assets, (v) rights of interested parties pursuant to the Plan, and (vi) other information necessary to enable Holders entitled to vote on the Plan to make an informed judgment as to whether to vote to accept or reject, and how to make elections with respect to the Plan.

In the years preceding the Petition Date until the appointment of the Trustee (the "Appointment Date"), the Debtors were mired in an almost endless morass of litigation and appeals of the various prepetition litigations between the Debtors and their principal Secured Creditors, SLS and Hawk, relating to certain prepetition advances made by the Secured Creditors, the proper characterization of such advances, the Debtors' payment defaults, and the Secured Creditors exercise of their rights with respect to substantially all of the Debtors' assets. The disputes spanned numerous jurisdictions, from Delaware to the Netherlands. An impasse between the Debtors and the Secured Creditors, and shortcomings in Debtors' management who the Bankruptcy Court characterized as having conflicted interests and engaging in gamesmanship, and lack of candor which rose to the level of gross mismanagement, resulted in the Debtors' former management being stripped of power and the extraordinary step of appointing the Trustee as an impartial third-party to evaluate the Debtors assets, claims, and the Debtors' reorganizational prospects. A copy of the Bankruptcy Court's January 5, 2025, Opinion appointing the Trustee (the "Trustee Opinion") is attached hereto as **Exhibit "B"** and incorporated herein.

### B. Who Is Entitled to Vote on the Plan

Under the Bankruptcy Code, only holders of claims or interests in "impaired" classes are entitled to vote on the Plan (unless, for reasons discussed in more detail below, such holders are deemed to reject the plan pursuant to section 1126(g) of the Bankruptcy Code). Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" unless (i) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan, among other things, cures all existing defaults (other than defaults resulting from the occurrence of bankruptcy events) and reinstates the maturity of such claim or interest as it existed before the default.

There are three (3) classes of creditors entitled to vote on the Plan whose acceptances of the Plan are being solicited: (1) Class 2a: General Unsecured Claims against Stream; (2) Class 2b: General Unsecured Claim against Technovative; and (3) Class 3: Subordinated Unsecured Claims against Stream.

### C. Summary of Claims and Treatment

The table below summarizes: (i) the treatment of Claims and Interests under the Plan; (ii) which Classes are Impaired by the Plan; and (iii) which Classes are entitled to vote on the Plan. The table is qualified in its entirety by reference to the full text of the Plan. A more detailed summary of the terms and provisions of the Plan is provided in Article V of this Disclosure Statement. A detailed discussion of the analysis underlying the estimated recoveries, including the assumptions underlying such analysis, is provided in the Liquidation Analysis (as defined below) set forth in Article XVII of this Disclosure Statement and attached as **Exhibit "C"** attached hereto.

**FOR A COMPLETE DESCRIPTION OF THE DEBTORS' CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, REFERENCE SHOULD BE MADE TO THE PLAN.**

| **Class** | **Claimant Name** | **Treatment of Claims** | **Entitled to vote** |
|---|---|---|---|
| Class 1 | Priority Claims | Except to the extent that a Holder of an Allowed Priority Claim and the Trustee or Disbursing Agent agree to less favorable treatment for such Holder, each Holder of an Allowed Priority Claim shall receive payment in full on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of such Claim. | No |
| | General | On the Effective Date, or as soon as reasonably | Yes |

| | | | |
|---|---|---|---|
| Class 2a | Unsecured Claims against Stream | practicable thereafter, each Holder of an Class 2a General Unsecured Claim against Stream shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Claim, Pro Rata payment in cash up to the Allowed amount of each such Claim, but only after payment in full to all Administrative Expense Claims, Professional Compensation Claims, Priority Tax Claims, and Allowed Class 1 Priority Claims. | |
| Class 2b | General Unsecured Claim against Technovative | On the Effective Date, or as soon as reasonably practicable thereafter, McCarter & English, LLP shall be paid $50,000 in Cash on the Effective Date as payment in full and final satisfaction of the M&E Claim. | Yes |
| Class 3 | Subordinated Unsecured Claims | On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 3 Subordinated Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Claim, Pro Rata payment in cash up to the Allowed amount of each such Claim, but only after payment in full to all Administrative Expense Claims, Professional Compensation Claims, Priority Tax Claims, Class 1 Priority Claims, Class 2a General Unsecured Claims against Stream, and Class 2b General Unsecured Claim against Technovative. | Yes |
| Class 4 | Equity Interests | Holders of Class 4 Equity Interests shall receive no recovery or distribution on account of such Equity Interests. On the Effective Date, all Equity Interests in Stream and the corresponding underlying securities evidencing such Claims or interest shall be canceled, released, extinguished, and discharged, and will be of no further force or effect. | No |

## II. OVERVIEW OF THE DEBTORS

### A. Formation of the Debtors

In 2009, Stream was founded by Rajan and certain family members (together with Rajan, the "Rajans"), to develop and commercialize proprietary technology for viewing three-dimensional content without the need for 3D glasses or goggles ("Ultra-D"). Exhibit "B" at p. 3. Stream, in turn, created Technovative, a wholly owned subsidiary, as a holding company that directly or indirectly owned various subsidiaries responsible for research and development, ownership of intellectual property, holding licenses, and business development. *Id.* The technology developed by the Debtors was developed, in part, based on certain intellectual property, including a portfolio of glasses-free 3D patents licensed by a Debtor subsidiary from Koninklijke Philips Electronics ("Philips"). Prior to the commencement of the current bankruptcy cases, Stream allegedly entered into the NY Settlement Agreement (as defined below) with Rembrandt 3D Holding Ltd. ("Rembrandt"), which contained a technology license agreement to Stream (the "Rembrandt License"), which the Trustee challenged in a recently settled adversary proceeding before the Bankruptcy Court [Docket No. 25-00138-djb] in order to avoid the alleged Rembrandt settlement agreement and license. Neither the Phillips license nor the Rembrandt License was assumed or assigned in connection with the Trustee's sale of the Debtors' assets, as described in greater detail below.

For a complete overview of the Debtors, it is critical to understand the interrelationship between the Debtors, Visual Semiconductor, Inc. ("VSI"), and Visual Technology Innovations, Inc. ("VTI"). VTI, a Nevada corporation, was formed in January of 2021 for the sole purpose of funding Stream. Rajan is VTI's sole officer and director. In January of 2025, VTI filed its own Chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Nevada [docket no. 25-10024-abl]. VTI's bankruptcy case was dismissed on July 2, 2025 in connection with a creditor's motion. VSI was formed by Rajan in 2022 again as a vehicle to raise capital to fund Stream. Id. at p. 6. Rajan is VSI's founder and CEO. As set forth in greater detail below, VSI has played a large and volatile role in these bankruptcy cases.

### B. <u>Secured Funding of the Debtors</u>

From 2011 to 2020, Stream's senior secured creditor, SLS, loaned $6,000,000.00 to Stream through a series of promissory notes (the "SLS Notes") secured by a blanket lien on all of Stream's assets and the assets of its wholly-owned subsidiaries. *Id.* The security agreement between Stream and SLS authorized SLS to take control of Stream's assets to satisfy the SLS Notes in the event Stream defaulted on the loan documents. *Id.* Between 2011 and 2014, Shadron Stastney ("Stastney"), the principal of SLS, served as an outside director of Stream and rejoined the board as Vice Chairman in 2018 in a strategic role until his resignation in January 2020. *Id.* at p. 3-4.

From 2014 to 2020, Hawk loaned in excess of $50,000,000.00 to Stream through a series of junior notes (the "Hawk Notes", and together with the SLS Notes, the "Notes") secured by a blanket lien on all of Stream's assets. The security agreements between Stream and Hawk authorized Hawk to take control of Stream's assets to satisfy the Hawk Notes if Stream defaulted under the loan documents. *Id.* at p. 4. On or about January 29, 2018, Stream entered into conversion agreements with Hawk and SLS, whereby the parties agreed to terms pursuant to which Stream would be permitted to convert the outstanding portion of the Hawk and/or SLS Notes to Stream equity (the "Conversion Agreements"). *Id.*

### C. <u>Omnibus Agreement and Associated Litigation</u>

In March 2020, Stream had defaulted under the SLS and Hawk Notes and in May 2020, Stream, Hawk, SLS, and fifty-two (52) of its stockholders entered into an agreement pursuant to which Stream would transfer all of its assets to a newly formed entity, SeeCubic Inc. ("SeeCubic"), in exchange for which, SLS and Hawk would no longer pursue a foreclosure, and their claims under the Notes would be entirely extinguished (the "Omnibus Agreement"). *Id*. at p.4. Mr. Stastney, who was no longer Vice Chairman at Stream, formed SeeCubic as a Delaware corporation to acquire Stream's assets pursuant to the Omnibus Agreement. *Id*.

In September 2020, Stream filed suit against SeeCubic in the Delaware Chancery Court to challenge the Omnibus Agreement. Both Stream and SeeCubic subsequently moved for preliminary injunctions, with Stream seeking to prevent SeeCubic from taking any actions to enforce the Omnibus Agreement and SeeCubic seeking to compel Stream's compliance. *Id*. at p. 4 and 5. In December 2020, the Delaware Chancery Court granted SeeCubic's motion and barred Stream from failing to comply with the Omnibus Agreement. *Id*. In September 2021, the Delaware Chancery Court granted summary judgment in favor of SeeCubic (the "Summary Judgment Order"), declaring the Omnibus Agreement to be valid and entering a permanent injunction preventing Stream from interfering with the Omnibus Agreement. *Id*.

In November 2021, Stream filed an appeal of the Summary Judgment Order and alleged that the Delaware Chancery Court erred because Stream's certificate of incorporation required the approval of Stream's Class B stockholders before Stream could enter into the Omnibus Agreement. *Id*. In June 2022, the Delaware Supreme Court granted Stream's appeal and vacated the Summary Judgment Order and also found that Hawk was a secured creditor of Stream (i.e. that the secured debt had not been converted pursuant to the Conversion Agreements), that Stream had pledged all of its assets as security for the more than $50,000,000.00 Hawk lent to Stream, and that the Hawk Notes were executed in conjunction with security agreements authorizing Hawk to take control of Stream's assets to satisfy the Hawk Notes if Stream defaulted. *Id*.

The Delaware Supreme Court remanded the matter, and in September 2022, the Delaware Chancery Court ordered the parties to unwind the Omnibus Agreement but confirmed that Hawk's and SLS's rights remained intact. *Id*. at pp. 5-6. The Chancery Court went on to find that the Omnibus Agreement did not validly transfer legal title of Stream's assets to SeeCubic and that SeeCubic would be required to transfer the Technovative shares back to Stream. *Id*. at pp. 5-6.

On October 17, 2022, after ownership of the Technovative shares was transferred to Stream, in connection with the unwinding of the Omnibus Agreement, Hawk issued a proxy notice, in accordance with its rights under the Hawk Notes, to remove Mr. Rajan as the sole director of Technovative and replace him with Mr. Stastney. *Id*. at p. 6. At the same time, Hawk directed Stream to marshal Hawk's collateral in order to prepare for an Article 9 sale under the Uniform Commercial Code to satisfy the outstanding indebtedness. *Id*. at pp. 6-7. Stream

refused to comply because it alleged that it had converted Hawk's secured debt to equity in Stream pursuant to the Hawk Conversion Agreement. Id. at p. 7. In response, Hawk filed an action under § 225 of Title 8 of the Delaware Code (the "Section 225 Action") to resolve whether Hawk validly appointed Mr. Stastney as the sole director of Technovative and to resolve the conversion issue. *Id.*

On October 20, 2022, the Delaware Chancery Court appointed a receiver and shortly thereafter, Hawk moved for summary judgment in the Section 225 Action on the issue of whether Stream defaulted under the Hawk Notes. On November 29, 2022, the Delaware Chancery Court issued a decision finding that, "notwithstanding the Supreme Court Opinion's reversal of the legal determination that the Omnibus Agreement was valid, the underlying factual findings were undisturbed, such that Stream was collaterally estopped from challenging whether (1) the Notes are valid and binding obligations of Stream; (2) Stream is in default under the Notes; (3) Hawk may exercise the "Secured Creditor Rights" under the Notes, including issuance of the Proxy Notice; (4) as of November 10, 2021, the Hawk Notes had not been converted or satisfied; and (5) any conversion of the Hawk Notes must be supported by new money, which had not occurred as of November 10, 2021 (the "Collateral Estoppel Opinion")." *Id.* Trial in the Section 225 Action was scheduled to commence on March 23, 2023, but was stayed by the filing of the Debtors' instant bankruptcy petitions.

### D. <u>The Transactions with Rembrandt</u>

On May 23, 2021, Stream, Mr. Rajan, Mr. Rajan's brother Raja and Rembrandt executed a settlement agreement arising out of litigation instituted by Rembrandt against Stream and others in New York (the "NY Settlement Agreement"). Thereafter, on August 12, 2023, after the current bankruptcy case was filed and without Bankruptcy Court authority, Stream and Rembrandt agreed to amend the NY Settlement Agreement (the "Amendment"). The Amendment included, among other things, changes to the payments Stream was supposed to make to Rembrandt, and adding a clause detailing what would happen to the NY Settlement Agreement in the event that control of Stream changed hands.

Two (2) days later, on August 14, 2023, and also without the approval of the Bankruptcy Court, Rembrandt and Stream entered into a licensing covenant (the "Licensing Covenant" and, together with the NY Settlement Agreement and the Amendment, the "Rembrandt Agreements"). The Licensing Covenant purported to memorialize the grant of the license from Rembrandt to Stream, as alleged in the NY Settlement Agreement and the Amendment, and prevented the Stream subsidiaries from using any license purportedly granted to Stream.

## III. <u>THE DEBTORS' BANKRUPTCY CASES</u>

### A. <u>Prior to the Appointment of the Trustee</u>

This is Stream's third bankruptcy case. The first was a Chapter 11 case initiated by Stream on February 24, 2021, and docketed at In re: Stream TV Networks, Inc., Bankr. D. Del. No. 21-10433-KBO (the "Delaware Voluntary Bankruptcy Case"). The Delaware Bankruptcy Court dismissed the Delaware Voluntary Bankruptcy Case on May 17, 2021, as having been

filed in bad faith. *Id*. at p. 6.

Six (6) days later, on May 23, 2021, the same day the NY Settlement Agreement was signed, Rembrandt and two other purported creditors filed an involuntary Chapter 7 case, docketed at In re Stream TV Networks, Inc., Bankr. D. Del. 21-10848 (the "Delaware Involuntary Bankruptcy Case"). *Id*. The Delaware Bankruptcy Court again dismissed the filing as having been made in bad faith on June 20, 2021, and this time imposed a twelve-month bar on Stream from refiling for bankruptcy. *Id*.

The Debtors' current bankruptcy cases were commenced on March 15, 2023, on the eve of the trial of the Section 225 Action. In its January 5, 2024, Opinion, the Bankruptcy Court characterized the Debtors' bankruptcy cases as acrimonious, riddled with strife, marked by "expedited motion practice, emergency hearings, and drawn-out contested matters," and generally painted a picture of the Debtors' lack of progress and overlapping and simultaneous controversies with creditors. *Id*. at p. 2. What follows here is a truncated version of the major activity in the bankruptcy cases and the Bankruptcy Court opinion that ultimately removed Rajan from power and appointed the Trustee. However, for a lengthy summary of the details of the bankruptcy cases prior to the Trustee's appointment, the full January 5 Opinion, attached hereto as Exhibit "B," should be consulted.

Shortly after the Petition Date, on March 20, 2023, Hawk filed a Motion for relief from the automatic stay in order to proceed with the Section 225 Action to resolve the issue of who was the rightful director of Technovative and whether Hawk's secured debt had been converted to equity prior to the Petition Date. *Id*. at pp. 8-9. The Debtors opposed the Hawk motion for relief, and Rembrandt filed a joinder to the Debtors' objection. *Id.* at p. 9

On March 28, 2023, the Debtors filed an emergency motion seeking enforcement of the automatic stay and imposition of related sanctions against SeeCubic and the Debtors' research and development subsidiary in the Netherlands, SeeCubic BV ("SCBV"), as well as certain entities and individuals purportedly acting on their behalf, asserting that SeeCubic and SCBV were exercising possession and/or control over certain bonding equipment (the "Bonding Equipment") located at a warehouse in China that belonged to the Debtors, which the Debtors asserted was essential to their ability to receive client orders and commence production of their Ultra-D products. *Id*. at p. 10. The Debtors later amended and supplemented the stay violation motion to stop certain actions commenced in the Netherlands involving Debtor subsidiaries who had not filed for bankruptcy. *Id*. at pp. 10-11.

On April 6, 2023, Hawk filed a motion seeking either conversion or dismissal of the Debtors' bankruptcy cases pursuant to section 1112(b) of the Bankruptcy Code, or alternatively, the appointment of a chapter 11 trustee to administer the Debtors' bankruptcy cases pursuant to §1104(a) of the Bankruptcy Code. *Id*. at p. 12. Both the Debtors and Rembrandt opposed Hawk's motion to convert, dismiss, or appoint a Chapter 11 Trustee. *Id*.

Over the next four months, the Debtors filed several motions directed at selling shares of Stream or incurring debt, all of which were ultimately denied by the Bankruptcy Court: (1) a motion seeking authority to pay what were characterized as employee obligations for SCBV, and



4917-3693-3071 v1

to re-hire employees who left Stream after the Summary Judgment Order was entered and/or had been working for VSI [*Id*. at pp. 13-15]; (2) an expedited stock sale motion seeking authority to sell up to $10 million in unissued shares of Stream to VSI to fund the SCBV payroll obligations [*Id*. at pp. 15-16]; (3) an emergency financing motion seeking approval of debtor-in-possession financing from VSI to pay the SCBV payroll obligations which came due the day following the filing of the motion [*Id*. at pp. 16-17]; and (4) an amended stock sale motion which sought approval of a nonbinding term sheet with a company called Zhongsheng Group Holdings Ltd., which the Bankruptcy Court ultimately found was likely not real [*Id*. at pp. 18-19 and 32-38].

Commencing on June 26, 2023, the Court held trial on the motions over eight days, concluding on September 25, 2023, which included testimony from numerous witnesses and approximately 130 exhibits. In the midst of the trial, the Debtors filed an adversary proceeding against numerous defendants, including SeeCubic, Hawk, SLS and Stastney alleging that the defendants were attempting to interfere with Debtors' exercise of rights under the Conversion Agreements, the Debtors' recapitalization, the Debtors' ability to raise funds and sell products, and ultimately, the Debtors' successful reorganization. Nearly a month after the adversary proceeding was filed, the Debtors filed a Motion in the United States District Court for the Eastern District of Pennsylvania to withdraw the reference and after another delay of nearly a month, filed an emergency motion in the District Court for a temporary restraining order ("TRO") against the Defendants. The District Court denied the motion for a TRO, and the Debtors refiled the emergency motion for a TRO in the Bankruptcy Court. The District Court also denied the Debtors' motion to withdraw the reference. The Bankruptcy Court ultimately held several days of contested hearings on the TRO and ultimately entered an order granting a limited TRO on January 4, 2024 [*Id*. at pp. 20-21], which the Trustee settled as part of the Hawk Settlement described in greater detail below.

The day after the limited TRO was entered, the Bankruptcy Court issued the January 5 Opinion, and took the extraordinary step of appointing the Trustee and removing Debtors' former CEO, Mr. Rajan, for gross mismanagement, breach of fiduciary duty, and rampant self-dealing, stating:

> [T]hese cases have stalled at virtually every turn. The Court has expressed its concern with the cases' lack of progress and direction on multiple occasions. Furthermore, the evidence at Trial on the pending motions crystalized the Court's primary and urgent concern with the administration of the Debtors' cases to date, i.e., the plans, trustworthiness, and motivations of Mr. Rajan in his role as, for all intents and purposes, the singular figure in the Debtors' management. **There are many examples, large and small, that highlight (a) the Court's lack of faith in Mr. Rajan's ability or willingness to act consistent with the fiduciary duties the Debtors owe their creditors and the Court**, (b) the relatively directionless nature of these cases to date, and (c) the entrenched acrimony between the Debtors, Hawk, SLS, and SeeCubic that has permeated the cases and driven nearly all activity to date.
>
> …

Indicative of the Court's chief concern with the Debtors' proposal to obtain financing from VSI, Mr. Rajan was also purporting to testify on behalf of VSI. Although the Debtors ultimately withdrew Mr. Rajan as a representative of VSI when the Court questioned how that could be, Mr. Rajan's dual role was indicative of the Court's trouble with the Debtors' emergency financing proposal: the evidence at the hearing made clear to the Court that the proposal to have the Debtors incur $1 million in post-petition administrative debt to VSI was not only unnecessary given the availability of approximately €700,000 in funding directly from SeeCubic to non-debtor SCBV, but was also fatally flawed because Mr. Rajan was on both sides of the proposed transaction."

…

[Mr. Rajan] has administered [the Debtors'] estates with an eye towards what he personally wants to accomplish [via VSI] and disclose, rather than acting consistent with his obligations to the Court and the estates' creditors.

…

[T]he Court's trust in the Debtor's management [i.e., Mr. Rajan,] has deteriorated in light of transactions the Debtors have proposed either at the eleventh hour or under cover of more innocuous requests for relief that seem to benefit VSI without justification.

…

[Numerous] transactions [proposed by Mr. Rajan] have had the taint of benefit to VSI without clear benefit to the Debtors and their estates. Where Mr. Rajan stands on both sides of those transactions, they only add to the Court's conclusion that he has breached his fiduciary duties in proposing them without being able to articulate how they are a reasonable exercise of his business judgment."

…

The already-discussed transactions and requested relief that appear to be primarily for the benefit of VSI are reason enough to find that Mr. Rajan has engaged in gross mismanagement of the Debtor's estates.

…

Alarmingly, the interrelationship between VSI, Stream, and Mr. Rajan's overlapping interests and roles is so entrenched that Mr. Rajan's testimony at Trial was at times rendered unintelligible, or alternatively, intentionally deceptive, by his inability or unwillingness to draw distinctions between the entities and his roles with each.

…

> Mr. Rajan's conflicted interests, gamesmanship, and lack of candor to the Court and creditors rises to the level of gross mismanagement of the estates, even when viewed against the high standard of glaring and inexcusable badness.

*Id*. at pp. 31, 41-42, 45, 46, 51, 59, 61 (emphasis added).

**B. <u>After the Appointment of the Trustee</u>**

The Trustee has been acting as the Debtors' representative under Sections 704, 1104, and 1106 of the Bankruptcy Code since his appointment and almost immediately became aware that the Debtors' bankruptcy estates were saddled with approximately $3,000,000.00 in unpaid administrative expenses, were not operating in any capacity, had no current means of generating cash and with the Court having granted Hawk relief from the automatic stay to schedule the trial in the Section 225 Action, the Debtors faced the real possibility of losing their only assets. Left with only a small window to find a solution to the Debtors' financial issues, the Trustee sought to re-impose the automatic stay to permit him a short period to evaluate the best path forward for the Debtors' bankruptcy cases. The Bankruptcy Court entered a consent order [D.I. 612] modifying the January 5, 2024 Order and granting relief from the automatic stay to permit the Court of Chancery to set a trial date for the Section 225 Action of July 31, 2024, and to manage any pretrial matters necessary prior to the trial and otherwise allow the Hawk and the Debtors to take any other actions necessary to comply with the procedures and Orders of the Chancery Court.

**C. <u>The Hawk Settlement</u>**

The Trustee analyzed the prospect of continued, expensive, uncertain, challenging, and protracted litigation with the Secured Creditors, where millions of dollars had already been spent with no meaningful conclusion having been obtained. With no clear end in sight, no operations and no money in the Debtors' estates, the Trustee carefully weighed all options. Against the backdrop of administratively insolvent estates and wildly varying factual positions taken by the various stakeholders, many of which had already been wholly discredited in the Trustee Opinion, in an exercise of his sound business judgment, the Trustee determined that a resolution that ended continued litigation which could have deprived the estates of their only assets, made sense for all creditors.

Before entering into the Hawk Settlement, the Trustee expended significant time and resources entertaining other proposals, including a proposals by Mr. Rajan and VSI and Rembrandt, which the Trustee carefully considered and ultimately viewed as significantly less favorable, more risky, less likely to close, and which did not demonstrate the financial wherewithal to obtain a result that would have equaled or exceeded the carve out contained in the Hawk Settlement.

The Trustee viewed the litigation risks and expenses to the Debtors' bankruptcy estates inherent in the Section 225 Action and the adversary proceeding associated with the TRO, as described in detail above, as important factors to consider in attempting to resolve the Debtors' disputes with the Secured Creditors. Those negotiations resulted in the Hawk Settlement, which

created a short timeline to monetize the Debtors' assets and provide a recovery for creditors, something the Debtors had been unable to accomplish for over a decade. The Hawk Settlement resolved several disputes between the Secured Creditors and the Debtors' bankruptcy estates, putting in place a mechanism for the Debtors' assets to be exposed to a sale process, whereby the true value of the assets could be assessed by exposing them to the market, established a Stalking Horse Bid of $150,000,000, and providing for a carveout (the "Carveout") from the Sale proceeds in the amount of $7,500,000.00 in cash (ultimately increased to $8,000,000.00), plus 10% of each dollar in excess of the Stalking Horse Bid, as well as the rights to a $1,000,000.00 bond the Debtors posted in the 225 Action (the "Bond Proceeds").

The Court approved the Hawk Settlement on June 6, 2024 [D.I. 653], over the objections of both VSI and Rembrandt. VSI and Rembrandt appealed the entry of the order approving the Hawk Settlement. The Rembrandt appeal was withdrawn, but the VSI appeal remains pending and is stayed. The Hawk Settlement is attached hereto as **Exhibit "D"**. The Hawk Settlement is extensive, and creditors are encouraged to review it in its entirety.

## D. <u>The Trustee's Sale of the Debtors' Assets</u>

As contemplated by the Hawk Settlement, on September 30, 2024, the Trustee filed a sale motion (the "Sale Motion") with this Court seeking authorization and approval of the Stalking Horse APA and the bid procedures in connection with the sale of substantially all of the Debtors' assets on an "as is", "where is" basis, without any warranty of any kind, express or implied, to the stalking horse, which had been established as SeeCubic, Inc. by Hawk. The bid procedures outlined in the Sale Motion provided for a sale process for the Debtors' Assets, which were generally described as all of the Assets of Stream, as set forth in the Stream Debtor's Schedules of Assets and Liabilities [D.I. 52], and the equity interests of Technovative in certain downstream non-debtor subsidiaries: (i) Technology Holdings Delaware LLC; (ii) Media Holdings Co, LLC; and (iii) UltraD Ventures C.V. The Stalking Horse APA specifically excluded from the sale the Rembrandt License or any physical assets that contain Rembrandt intellectual property.

The Court entered an order approving the Bidding Procedures on November 20, 2024 [D.I. 811] (the "Bidding Procedures Order"), finding them fair, reasonable, and appropriate under the circumstances to maximize the value of the Debtors' assets. The Bidding Procedures Order set a deadline of December 2, 2024, at 12:00 PM (EST) for all bids for the Debtors' assets (the "Bid Deadline") and set a date for the auction of the Debtors' assets.

The Trustee received no additional offers for the Debtors' assets by the Bid Deadline, and accordingly, the Trustee filed a Notice of No Bids and Auction Cancellation [D.I. 845] stating that no qualified bids were received by the bid deadline, and therefore that the auction was canceled with the stalking horse bid by SeeCubic declared the successful bid for the Debtors' assets. An evidentiary hearing on the Sale Motion took place on December 4, 2024, and the Bankruptcy Court entered the Sale Order on December 9, 2024, approving the sale of the Transferred Assets to See Cubic over the objections of VSI and Rembrandt.

The Bankruptcy Court supported the Sale Order with a written opinion entered on

January 8, 2025 (the "Sale Opinion"). The Sale Order also specifically excluded the Rembrandt License and any physical assets that contain Rembrandt intellectual property from the Transferred Assets. Under the APA and the Sale Order, SeeCubic has a duty to indemnify, defend, and hold harmless the Debtors and the Debtors' Estates, the Trustee and his Court-approved professionals, and certain related parties (the "Indemnified Parties") from any claims that any third-party intellectual property, including the Rembrandt License and any physical assets containing intellectual property of Rembrandt, was included in the assts sold pursuant to the Sale Order.

Once the Sale Order was entered, the Trustee and SeeCubic worked diligently to consummate the Sale in accordance with the Sale Order. On January 3, 2025, the Sale closed as evidenced by the Notice of Closing on Sale of Substantially All of the Assets of the Debtors filed on January 6, 2025 [D.I. 915]. The Trustee received the Carveout and Bond Proceeds in full following the Closing.

### E. <u>The Litigation with VSI and Rembrandt</u>

VSI and Rembrandt opposed virtually every action taken by the Trustee to administer the Debtors' estates and continued to litigate with the Trustee following entry of the Sale Order, through the following appeals, petitions, objections and motions:

- Objections of VSI and Rembrandt to the Application of the Trustee to Employ Capstone Capital Markets LLC as Investment Banker [D.I. 633 and 635 respectively];
- Objections of VSI and Rembrandt to the Motion of the Trustee to approve the Hawk Settlement [D.I. 642 and 643 respectively] (Overruled);
- Rembrandt's appeal of Hawk 9019 Order, docketed under E.D. Pa. No. 24-cv-2727 [D.I. 685];
- Motion of VSI to reconsider Order approving Hawk Settlement [D.I. 686] (Denied);
- Limited Objection of VSI to Application to Employ SSG Advisors, LLC [D.I. 717] (Withdrawn);
- Motion of VSI to Compel Deposition of Trustee [D.I. 728] (Denied);
- Objection of VSI and Rembrandt to the Sale Motion [D.I. 788 and 789 respectively] (Overruled);
- Objection of VSI and Rembrandt to the Sale of the Debtors' assets by the Trustee [D.I. 815 and 816 respectively] (Overruled);
- VSI's appeal of Hawk 9019 Order, docketed under E.D. Pa. No. 24-cv-6397

[D.I. 821];

- Rembrandt Motion for Sanctions for Violation of Temporary Restraining Order (Joined by VSI) [D.I. 824 and 828 respectively] (Denied);
- Motion to Reconsider November 14, 2024 order quashing subpoena seeking to depose Trustee [D.I. 826] (Denied);

- VSI's Plan and Disclosure Statement and Motion to Approve Disclosure Statement [D.I. 847, 848 and 857] (Voluntarily withdrawn at D.I. 905);

- *Rembrandt 3D Holding Ltd. v. William A. Homony, in His Capacity as Chapter 11 Trustee, Stream TV Networks, Inc. and Technovative Media, Inc., et al.*, 24-00142-djb, filed December 4, 2024, in the United States Bankruptcy Court for the Eastern District of Pennsylvania (Dismissed);

- VSI's appeal of Sale Order, docketed under E.D. Pa. No. 24-6498 [D.I. 861];

- Objection of Rembrandt to Trustee praecipe to file amended Sale Order (Joined by VSI) [D.I. 871 and 872 respectively];

- VSI and Rembrandt's Joint Emergency Petition for a Writ of Mandamus and Prohibition to the Bankruptcy Court filed in the United States District Court for the Eastern District of Pennsylvania 24-cv-06548-JMG filed December 9, 2024, in the United States District Court for the Eastern District of Pennsylvania (Denied);

- VSI and Rembrandt's joint appeal of Order Approving Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests docketed under E.D. Pa. No. 24-cv-6617 [D.I. 873 and amended at D.I. 877);

- *Rembrandt 3D Holding Ltd. v. Technovative Media, Inc., et al.*, 23-cv-00193-JLH, filed February 21, 2023, in the United States District Court for the District of Delaware (the "Delaware District Court Action");

- *Rembrandt 3D Holding Ltd. v. William A. Homony, in His Capacity as Chapter 11 Trustee, SSG Advisors, LLC, J. Scott Victor, Teresa C Kohl, Craig D. Warznak, Samuel P. Charlton, and Alexander D. Lamm*, 24-cv-06706-JMG, filed December 17, 2024, in the United States District Court for the Eastern District of Pennsylvania (Dismissed);

- Objection of VSI to Motion to Extend 9019 Deadlines [D.I. #891]

- VSI Motion to Stay Sale Order Pending Appeal [D.I. 898] (Joined by Rembrandt at D.I. 936) (Denied);

- VSI Application for Administrative Expenses [D.I. 966] (Voluntarily withdrawn after being fully briefed, two days of trials and the day before the trial was to continue at D.I. 1036];
- VSI's Objection to Trustee's Motion to Approve Compromise With Rembrandt [D.I. 1053] (Overruled in part);
- VSI's Appeal of Order Granting in Part and Denying in Part Motion to Approve Compromise With Rembrandt docketed under E.D. Pa. No. 25-cv-6463 [D.I. 1147];
- VSI's Objection to Trustee's Second Motion to Approve Compromise With Rembrandt [D.I. 1189] (Overruled); and
- VSI's Appeal of Order Granting Trustee's Second Motion to Approve Compromise With Rembrandt docketed under E.D. Pa. No. 26-2868 [D.I. 1220] (Dismissed).

Trustee was dismissed as a defendant in the Rembrandt Adversary Proceeding on April 15, 2025 [Rembrandt Adversary Proceeding Docket No. 8]. Additionally, on or about April 30, 2025, the Trustee commenced an adversary proceeding by filing a Complaint in the Bankruptcy Court against, among others, Rembrandt, captioned Homony v. Rembrandt 3d Holding Ltd., et al., Adv. No. 23-10763 (DJB), seeking, inter alia, avoidance of the obligations and transfers under the Rembrandt Agreements and objecting to the Rembrandt Claims (the "Trustee Adversary Proceeding").

**F. <u>The Rembrandt Settlement</u>**

Faced with asserted claims by Rembrandt against the Debtors' Estates in excess of $1.2 Billion, mounting administrative expenses and understanding the complex, lengthy, and uncertain path forward in litigating the multiple appeals, motions, objections and adversary proceedings outlined in section III D above, the Trustee elected to pursue, in his business judgment, an option that minimizes additional administrative expenses and avoids the substantial additional risks and expenses to be incurred with continuing a litigation-based approach to a resolution of the Appeals, the Rembrandt Actions, and Trustee Adversary Proceeding.

The Trustee negotiated and ultimately, on June 30, 2025, entered into a settlement with Rembrandt (the "2025 Settlement"). In accordance with the Stalking Horse APA and the Sale Order, the Trustee made a demand upon SeeCubic to defend and indemnify the Trustee and other indemnified parties in connection with the Appeals and the Rembrandt Actions; however SeeCubic responded in a manner that rejected the Trustee's demand. On July 15, 2025, the Trustee filed a Motion seeking the Bankruptcy Court's approval of the 2025 Settlement pursuant to Bankruptcy Rule 9019 and the enforcement of SeeCubic's indemnification obligations [D.I. #1040]. On October 31, 2025, the Bankruptcy Court entered an order granting the 9019 motion in part; the Bankruptcy Court approved the 2025 Settlement but declined to enforce SeeCubic's indemnification obligations [D.I. #1137]. An indemnification judgment was not entered against

SeeCubic, which was a condition precedent to the enforceability of the 2025 Settlement; therefore the 2025 Settlement was rendered ineffective and is null and void.

On February 18, 2026, Rembrandt, SeeCubic, the Trustee, and Hawk participated in a mediation before the Bankruptcy Court, which, while unsuccessful in achieving a global resolution among the Trustee, Rembrandt, SeeCubic, and Hawk, resulted in a tentative settlement between the Trustee and Rembrandt, subject to the negotiation of a formal settlement agreement and Bankruptcy Court approval. Taking into consideration the expense and uncertainty with respect to continued litigation of the adversary proceedings, the appeals, the Rembrandt proofs of claim and the adversary proceeding the Trustee filed against Rembrandt, the Trustee elected to compromise and settle all disputes between the Trustee and the Debtors' Estates, without admission of liability or fault by any Party, and without conceding the strength or weakness of any claims or defenses. The settlement (the "Settlement") between the Trustee and Rembrandt is the product of robust arm's-length negotiation and is embodied in a Settlement Agreement dated March 4, 2026 (the "Rembrandt Settlement Agreement," a copy of which is attached hereto as **Exhibit "E"**). The Settlement does not contain a provision requiring the enforcement of SeeCubic's indemnification obligations as a condition precedent. In the Trustee's business judgment, informed by the advice of special litigation counsel and intellectual property counsel, the continuing attorneys' fees and related litigation to defend against Rembrandt's adversary proceeding alone will substantially exceed the Settlement Payment of $375,000.00. Under the circumstances, the Trustee has determined that the Rembrandt Settlement Agreement provided the best path forward for the Debtors Estates and the Debtors and offers them the best opportunity to make a meaningful distribution to creditors.

On March 6, 2026, the Trustee filed a Motion seeking the Bankruptcy Court's approval of the Settlement pursuant to Bankruptcy Rule 9019 [D.I. 1183]. On April 14, 2026, the Bankruptcy Court entered an order granting the 9019 motion and approved the Settlement in full [D.I. 1211], which was further supported by the Court's oral opinion [D.I. 1210], over the objection of VSI. Pursuant to the terms of the Rembrandt Settlement Agreement, other than as set forth in the Rembrandt Settlement Agreement, all adversary proceedings, appeals, and actions of any nature have been dismissed with prejudice. The Rembrandt Settlement Agreement is extensive, and creditors are encouraged to review it in its entirety.

### G. Lewis Brisbois Bisgaard & Smith LLP Fee Dispute

On April 3, 2023, the Debtors filed a motion to approve employment and retention of Lewis Brisbois Bisgaard & Smith LLP ("LBBS") as general counsel to the Debtors. On May 3, 2023, after LBBS filed a supplemental declaration, the Bankruptcy Court entered an order granting the motion to employ LBBS. On January 5, 2024, the Bankruptcy Court entered the order appointing the Trustee and the Trustee Opinion. Almost nine months later, on August 28, 2024, LBBS filed the Final Application of LBBS for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period from March 15, 2023 through January 15, 2024 [D.I. 723] (the "Final Fee Application"), seeking final Court approval for $2,928,159.00 in professional services fees and $49,799.10 in expense reimbursement, net of prior voluntary reductions, for a total of $2,977,958.10.

Concerned with the Bankruptcy Court's findings in the Trustee Opinion, the Trustee reviewed the Final Fee Application carefully and further reviewed the Debtors' records turned over to him. On October 28, 2024, LBBS and the United States Trustee filed a stipulation [D.I. 773] resolving the U.S. Trustee's informal objection to the Final Fee Application through an agreed reduction of $235,226, capping the amount of fees for which LBBS was permitted to seek allowance [D.I. 779].

On November 20, 2024, the Trustee filed his Objection to the Fee Applications [D.I. 808] (the "Fee Objection"), seeking denial of the Final Fee Application in its entirety. The Objection details LBBS's sworn misrepresentations and omissions, failure to maintain disinterestedness, failure to ensure accurate and timely MOR filings, advancement of VSI's interests at the expense of the Debtors' estates, and the general unworthiness of compensation for services that were found by this Court to have been rendered primarily for the benefit of VSI, Rajan, and Rembrandt rather than the Debtors' creditors.

On March 6, 2026, over a year after the Fee Objection was filed, LBBS filed a motion for sanctions against the attorneys for the Trustee seeking to have the Fee Objection stricken and to impose attorneys' fees against the Trustee's counsel [D.I. 1185]. On April 8, 2026, the Trustee's counsel filed their objection to the motion for sanctions [D.I. 1208] and supplemental objection to the motion for sanctions [D.I. 1209], and on May 21, 2026, counsel to Hawk filed a submission in support of the Trustee's position and expressing serious concerns about the conduct of LBBS's conduct in the Debtors' bankruptcy cases.

LBBS filed a reply to the Trustee's objection on June 1, 2026. On June 18, 2026, the Bankruptcy Court denied the motion for sanctions. On July 15, 2026, the Trustee and LBBS held a settlement conference which resulted in the settlement, the terms of which are subject to Bankruptcy Court approval pursuant to Bankruptcy Rule 9019, whereby the Final Fee Application will be allowed at a reduced amount of $1,000,000.00 with full mutual releases, representing a reduction of almost $2 million.

## IV. SUMMARY OF CHAPTER 11 PLAN

THE FOLLOWING SUMMARIZES SOME OF THE SIGNIFICANT ELEMENTS OF THE PLAN. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED INFORMATION SET FORTH IN THE PLAN.

### A. Administrative Claims and Other Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

1. Administrative Claims

Except with respect to Administrative Expense Claims that are Professional

Compensation Claims incurred up through the Effective Date, and except to the extent that a Holder of an Allowed Administrative Expense Claim and the Chapter 11 Trustee agrees to less favorable treatment for such Holder, each Holder of an Allowed Administrative Expense Claim, other than an Allowed Professional Compensation Claim, shall be paid, after the establishment and funding of the Liquidation Expense Reserve and Administrative Expense Claims Reserve, in full or Pro Rata, as applicable, from the Debtors' available Cash in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Administrative Expense Claim on (a) the later of: (i) on or as soon as reasonably practicable after the Effective Date if such Administrative Expense Claim is Allowed as of the Effective Date; (ii) on or as soon as reasonably practicable after the date such Administrative Expense Claim is Allowed by Final Order; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court, as applicable.

2. Professional Compensation Claims

*a) Final Fee Applications and Payment of Professional Compensation Claims:*

All final requests for payment of Professional Compensation Claims shall be filed no later than the day that is the first Business Day that is forty-five (45) calendar days after the Effective Date. Such requests shall be filed with the Bankruptcy Court and served upon the Disbursing Agent and his counsel. The Allowed amounts of such Professional Compensation Claims shall be determined by the Bankruptcy Court. The Allowed amount of Professional Compensation Claims owing to the Professionals, after taking into account any prior payments to and retainers held by such Professionals, shall be paid, after the establishment and funding of the Liquidation Expense Reserve and Administrative Expense Claims Reserve, in full or *pro rata*, as applicable, in Cash to such Professionals as soon as reasonably practicable following the date when such Professional Compensation Claims are Allowed by a Final Order.

3. Priority Tax Claims

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Priority Tax Claim and the Chapter 11 Trustee or Disbursing Agent agree to less favorable treatment for such Holder, in exchange for and in full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, in the Chapter 11 Trustee's or Disbursing Agent's sole and exclusive discretion, one of the following treatments, after the establishment and funding of the Liquidation Expense Reserve and Administrative Expense Claims Reserve: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code, payable on or as soon as practicable following the Effective Date; or (2) such other treatment as may be agreed upon by such Holder and the Trustee or the Disbursing Agent, or otherwise determined by an order of the Bankruptcy Court.

4. Statutory Fees

All fees payable to the U.S. Trustee pursuant to section 1930 of Title 28 of the U.S. Code together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable (the "Statutory Fees") incurred prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Reorganized Debtors shall be liable to pay any and all Statutory Fees when due and payable. The Reorganized Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court UST Form 11-PCR reports when they become due. The Reorganized Debtors shall remain obligated to pay Statutory Fees to the U.S. Trustee until the earliest of the case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any administrative claim in the case and shall not be treated as providing any release under the Plan.

## B. Classification and Treatment of Claims and Interests

### 1. Classification of Claims and Interests

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. All Claims and Interests, except for Claims addressed in Article II of the Plan, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim against a Debtor is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

### 2. Summary of Classification

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.C of the Plan.

The Plan under chapter 11 of the Bankruptcy Code proposes to pay creditors of Stream and Technovative from the Debtors' Assets pursuant to section 1123(b)(4) of the Bankruptcy

Code.

The Plan provides for: 0 class of secured claims;
3 classes of unsecured creditors; and
1 class of equity security holders.

[*Remainder of this page intentionally left blank.*]

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| **Class** | **Claim/Interest** | **Status** | **Voting Rights** |
|---|---|---|---|
| 1 | Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2a | General Unsecured Claims against Stream | Impaired | Entitled to Vote |
| 2b | General Unsecured Claim against Technovative | Impaired | Entitled to Vote |
| 3 | Subordinated Unsecured Claims against Stream | Impaired | Entitled to Vote |
| 4 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**C. Treatment of Claims and Interests**

Subject to Article VII of the Plan, to the extent a Class contains Allowed Claims or Interests with respect to a particular Debtor, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Chapter 11 Trustee and the Holder of such Allowed Claim or Allowed Interest, as applicable.

1. Class 1— Priority Claims

*a) Classification:* Class 1 consists of all Priority Claims that are not tax

Claims.

b) *Treatment:* Except to the extent that a Holder of an Allowed Priority Claim and the Chapter 11 Trustee or Disbursing Agent agree to less favorable treatment for such Holder, each Holder of an Allowed Priority Claim shall receive payment in full on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of such Claim.

c) *Voting*· Class 1 is Unimpaired under the Plan. Each Holder of a Class 1 Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Class 1 Priority Claim is not entitled to vote to accept or reject the Plan.

2. Class 2a — General Unsecured Claims against Stream

a) *Classification:* Class 2a consists of all Allowed General Unsecured Claims against Stream, including holders of Contract Rejection Claims, and are entitled to vote to accept or reject the Plan.

b) *Treatment:* On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 2a General Unsecured Claim against Stream shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Claim, Pro Rata payment in cash up to the Allowed amount of each such Claim, but only after payment in full to all Administrative Expense Claims, Professional Compensation Claims, Priority Tax Claims, and Allowed Class 1 Priority Claims.

c) *Voting:* Class 2a is Impaired under the Plan. Therefore, each Holder of an Allowed Class 2a General Unsecured Claim is entitled to vote to accept or reject the Plan.

3. Class 2b — Unsecured Claim against Technovative

a) *Classification:* Class 2b consists of the M&E Claim.

b) *Treatment:* On the Effective Date, or as soon as reasonably practicable thereafter, McCarter & English, LLP shall be paid $50,000 in Cash as payment in full and final satisfaction of the M&E Claim.

c) *Voting:* Class 2b is Impaired under the Plan. Therefore, each Holder of an Allowed Class 2a General Unsecured Claim is entitled to vote to accept or reject the Plan.

4. Class 3 — Subordinated Unsecured Claims

a) *Classification:* Class 3 consists of all Subordinated Unsecured Claims, whether subordinated by the Effective Date or not. To the extent these claims arise from damages occasioned in connection with a purchase of or sale of a security, they will be automatically subordinated. Included

in Class 3 is any claim subordinated by order of the Bankruptcy Court under section 510 of the Bankruptcy Code relating to any inequitable conduct by any Person or Entity asserting a Claim against the Debtors and the subordinated Unsecured Deficiency Claim of the Secured Creditors.

b) *Treatment:* On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Class 3 Allowed Subordinated Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Claim, Pro Rata payments in cash up to the Allowed amount of each such Claim, but only after payment in full to all Administrative Expense Claims, Professional Compensation Claims, Priority Tax Claims, Class 1 Priority Claims and Class 2a General Unsecured Claims.

c) *Voting:* Class 3 is Impaired under the Plan. Therefore, each Holder of a Class 3 Subordinated Unsecured Claim is entitled to vote to accept or reject the Plan.

5. Class 4 - Equity Interests

a) *Classification:* Class 4 consists of all Equity Interests in Stream and includes holders of all classes of shares in Stream.

b) *Treatment:* Holders of Class 4 Equity Interests shall receive no recovery or distribution on account of such Equity Interests. On the Effective Date, all Equity Interests in Stream and the corresponding underlying securities evidencing such Claims or interest shall be canceled, released, extinguished, and discharged, and will be of no further force or effect.

c) *Voting:* Class 4 is Impaired under the Plan. Each Holder of a Class 4 Equity Interest in Stream is conclusively presumed to have rejected the Plan pursuant to 1126(g) of the Bankruptcy Code. Therefore, each Holder of a Class 4 Equity Interest in Stream is not entitled to vote to accept or reject the Plan.

6. Voting of Claims

Each Holder of a Claim in an Impaired Class that is entitled to vote on the Plan as of the record date for voting on the Plan pursuant to Article III of the Plan shall be entitled to vote to accept or reject the Plan as provided herein or any other order of the Bankruptcy Court. In order for its Ballot to count, the Holder of an Allowed Claim in Class 2a, 2b or 3 must (i) complete, date and properly execute the Ballot, and (ii) properly deliver the Ballot to the Claims Agent by First Class Mail to the following address: BMC Group, Attn: Stream TV Ballot Processing, PO Box 90100, Los Angeles, CA 90009 or via overnight courier, messenger or hand delivery to BMC Group, Attn: Stream TV Ballot Processing, 3732 West 120th Street, Hawthorne, CA 90250. Ballots may also submitted through the online voting portal maintained by the Claims Agent at https://ballots.bmcgroup.com/streamtv . To submit your Ballot via the Claims Agent's online portal, please visit https://ballots.bmcgroup.com/streamtv and follow the instructions.

7. No Substantive Consolidation

Although the Plan is presented as a joint plan of reorganization, the Plan does not provide for the substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for any reason. Except as expressly provided herein, nothing in the Plan or the Disclosure Statement shall constitute or be deemed to constitute an admission that either or both of the Debtors is subject to or liable for any Claims against the other Debtor. A Claim against multiple Debtors will be treated as a separate Claim against each applicable Debtor's Estate for all purposes, including voting and distribution; provided, however, that no Claim will receive value in excess of one hundred percent (100.0%) of the Allowed amount of such Claim or Interest under the Plans for all such Debtors.

8. Acceptance by Impaired Classes

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if Holders of at least two-thirds in dollar amount and more than one-half in number of the Claims of such Class entitled to vote that actually vote on the Plan have voted to accept the Plan. Holders of Classes 2a (General Unsecured Claims against Stream), 2b (Unsecured Claim against Technovative) and 3 (Subordinated Unsecured Claims) are Impaired, and the votes of Holders of Allowed Claims in such Classes will be solicited. If a Class contains Holders of Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

9. Consensual Confirmation

The Plan shall be deemed a separate Chapter 11 plan for each Debtor. To the extent that there is no rejecting Class of Claims in the chapter 11 plan of any Debtor, the Chapter 11 Trustee shall seek Confirmation of its plan pursuant to section 1129(a) of the Bankruptcy Code.

10. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Chapter 11 Trustee shall seek Confirmation of the Debtors' Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.

11. Controversy Concerning Impairment or Classification

If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests is Impaired or is properly classified under the Plan, the Bankruptcy Court shall, after notice and a hearing, resolve such controversy at the Confirmation Hearing.

12. Intercompany Interests

Intercompany Interests are being maintained to ensure the existing corporate structure of

the Debtors. For the avoidance of doubt, except as transferred pursuant to the Stalking Horse APA or the Sale Order, any Interest in non-Debtor Affiliates owned by a Debtor shall continue to be owned by the applicable Reorganized Debtor, unless previously sold by the Chapter 11 Trustee pursuant to the Sale Order.

## V. Means for Implementation of the Plan

### 1. Sources of Consideration for Plan Distributions

The Trustee or the Disbursing Agent shall fund the distributions contemplated under the Plan, as applicable with: (1) Cash on hand; (2) the net proceeds of any recoveries on the Debtors' Causes of Action, including any Avoidance Cause of Action; (3) the proceeds of any claim for indemnification under the Stalking Horse APA and the Sale Order against the Purchaser; and (4) any other Assets of the Debtors discovered and later recovered by the Chapter 11 Trustee or the Disbursing Agent.

Each distribution and issuance referred to in Article III of the Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person or Entity receiving such distribution or issuance; provided that, to the extent that a term of the Plan or the Confirmation Order conflicts with the term of any such instruments or other documents, the terms of the Plan and/or the Confirmation Order shall govern.

On the Effective Date, the Disbursing Agent, or as soon thereafter in the sole discretion of the Disbursing Agent, shall make distributions to Holders of Allowed Claims in such Classes in accordance with the treatment set forth in the Plan for such Classes in accordance with the terms of the Plan.

### 2. Vesting of Assets in the Debtors

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Confirmation Order, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property (including all interests, rights, and privileges related thereto) in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan, including Interests held by the Debtors in any non-Debtor Affiliates not conveyed pursuant to the Sale Order, shall vest in the applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, encumbrances, or other interests, unless expressly provided otherwise by the Plan or Confirmation Order, subject to and in accordance with the Plan.

### 3. Manager of the Reorganized Debtors

As of the Effective Date, the Debtors will continue to not operate. The Disbursing Agent shall act as the sole representative of the Reorganized Debtors. All board and officer positions will be terminated by operation of the Plan and the Confirmation Order on the Effective Date without the need for further order of the Bankruptcy Court or any other court, or additional

corporate action.

4. Employment Obligations

All employment contracts of the Debtors, if any, shall be rejected as of the Effective Date by operation of the Plan and the Confirmation Order without the need for further order of the Bankruptcy Court or any other court.

5. Exemption from Certain Taxes and Fees

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax, document recording tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

6. Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain all Causes of Action and the Disbursing Agent, in his sole and exclusive discretion, may enforce any and all rights to commence and pursue, any and all Causes of Action, including any Claims or Causes of Action for Subordination under section 510 of the Bankruptcy Code, and the Avoidance Causes of Action whether arising before or after the Petition Date, and the Debtors' respective rights to commence, prosecute, or settle such Causes of Action shall be preserved and vested in the Disbursing Agent, notwithstanding the occurrence of the Effective Date. For the avoidance of doubt, the preservation of Causes of Action described in the preceding sentence includes, but is not limited to, the Debtors' rights, as applicable, to (1) assert any and all Causes of Action held by the Debtors whether specifically identified herein or not, any counterclaims, crossclaims, claims for contribution defenses, and similar claims in response to such or Causes of Action, (2) object to Administrative Expense Claims, including but not limited to the Chapter 11 Trustee's pending objection to LBBS's final fee application request, (3) object to other Claims, and (4) subordinate Claims, other than the Causes of Action released by the Debtors.

The Disbursing Agent, on behalf of the Debtors and the Reorganized Debtors, expressly reserves all rights to prosecute any and all Causes of Action against any Entity or Person. Unless any Cause of Action against an Entity or Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Disbursing Agent expressly reserves all and shall retain the applicable Causes of Action, including the Avoidance Causes of Action for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim

preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The applicable Reorganized Debtor shall retain all Causes of Action and the Disbursing Agent, on behalf of the Reorganized Debtors shall have the sole and exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

7. Settlement of Claim against Technovative; Termination of Subordination Rights

Pursuant to section 1123 of the Bankruptcy Code and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims, Causes of Action, or controversies of McCarter & English, LLP as follows: (i) the Chapter 11 Trustee having reviewed and raised informal objections to the sole remaining Claim against Technovative consisting of the M&E Claim; and (ii) in exchange for the Chapter 11 Trustee refraining from filing formal objections to the M&E Claim, McCarter & English, LLP agrees to accept $50,000 in Cash on the Effective Date, or as soon as reasonably practicable hereafter, as payment in full and final satisfaction of the M&E Claim, and McCarter & English LLP shall have an Allowed Class 2a General Unsecured Claim against Stream in the amount of $2,809,902.63. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of the M&E Settlement as set forth above, pursuant to section 1123 of the Bankruptcy Code and, with respect to the compromise and settlement embodied in the M&E Settlement, Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement embodied in the M&E Settlement and a finding that such compromise or settlement is: (i) in the best interest of the Debtors, the Reorganized Debtors, and their respective Estates and property, and of Holders of Claims or Equity Interests; (ii) fair, equitable, and reasonable; and (iii) does not fall below the lowest range of reasonableness.

Except as provided herein, the classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b), or 510(c) of the Bankruptcy Code or otherwise, and any and all such rights against the Debtors and/or their Estates are terminated pursuant to the Plan. Pursuant to section 510 of the Bankruptcy Code, the Chapter 11 Trustee or the Disbursing Agent, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Equity Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

8. Corporate Existence

On and after the Effective Date, the Reorganized Debtors shall, in the Disbursing Agent's

sole discretion, continue in existence for the sole purposes of completing the liquidation of the Debtors' remaining Assets. The Disbursing Agent, as the Reorganized Debtors' sole representative, shall be exclusively empowered to take any action with respect to; (a) resolving Disputed Claims; (b) making distributions on account of Allowed Claims as provided hereunder; (c) enforcing and prosecuting claims, interests, rights, and privileges including, but not limited to the Causes of Action, to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith; (d) filing appropriate tax returns; (e) complying with obligations under the Stalking Horse APA; and (f) administering the Plan in an efficient manner. The Disbursing Agent shall be deemed to be substituted as representative of the Reorganized Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending or later initiated in the Bankruptcy Court and (b) all matters pending or later initiated in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, without the need or requirement to file motions or substitutions of parties or counsel in each such matter.

*a)* Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects.

Except as otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, the Assets of the Debtors that were not transferred to the Purchaser pursuant to the Sale Order and the Stalking Horse APA, if any, shall vest in the applicable Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances, subject to and in accordance with the Plan.

*b)* Preservation of Causes of Action

Unless any Cause of Action against an Entity or Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, or sold pursuant to an asset purchase agreement, in accordance with section 1123(b) of the Bankruptcy Code, the Disbursing Agent on behalf of and as the sole representative of the Reorganized Debtors shall retain all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, which shall vest in the Reorganized Debtors pursuant to the terms of the Plan. Unless any such Cause of Action against an Entity or Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order or sold pursuant to an asset purchase agreement, the Debtors expressly reserve all such Causes of Action including the Avoidance Causes of Actions for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. **No Entity or Person may rely on the absence of a specific reference in the Plan, or the Disclosure Statement, to any Cause of Action against them as any indication that the**

**Disbursing Agent, on behalf of the Debtors or the Reorganized Debtors, to any Cause of Action against them as any indication that the Disbursing Agent, on behalf of the Debtors or the Reorganized Debtors, will not pursue any and all available Causes of Action. The Disbursing Agent and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity.**

## VI. Treatment of Executory Contracts and Unexpired Leases

### 1. Assumption and Rejection of Executory Contracts and Unexpired Leases

Except as otherwise set forth herein, all Executory Contracts or Unexpired Leases will be deemed rejected as of the Effective Date, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed or rejected by the Debtors; (2) are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases. The assumption or rejection of all executory contracts and unexpired leases in the Chapter 11 Cases or in the Plan shall be determined by the Chapter 11 Trustee in his sole discretion. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assumptions and assignments, and the rejection of the Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### 2. Claims Based on Rejection of Executory Contracts or Unexpired Leases

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Claims Agent and served on the Disbursing Agent and his counsel no later than thirty (30) calendar days after notice of such rejection is served on the applicable claimant. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time shall be automatically Disallowed and forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Disbursing Agent, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, including any Claims against any Debtor listed on the Schedules as unliquidated, contingent or disputed. Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as a Class 2a General Unsecured Claim against Stream and shall be treated in accordance with Article III of the Plan.

### 3. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any Cure Claims shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date or as soon as reasonably practicable thereafter, with such Cure Claim being $0.00 if no amount is listed in the Cure Notice, subject to the limitations described below, or on such other terms as the party to such Executory Contract or Unexpired Lease may otherwise agree.

At least fourteen (14) calendar days before the Confirmation Hearing, the Chapter 11 Trustee shall distribute, or cause to be distributed, Cure Notices and proposed amounts of Cure Claims to the applicable Executory Contract or Unexpired Lease counterparties. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served, and actually received by the Chapter 11 Trustee and his counsel at least seven (7) calendar days before the Confirmation Hearing. Any such objection to the assumption of an Executory Contract or Unexpired Lease shall be heard by the Bankruptcy Court on or before the Effective Date, unless a later date is agreed to between the Chapter 11 Trustee, on the one hand, and the counterpart to the Executory Contract or Unexpired Lease, on the other hand, or by order of the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount shall be deemed to have assented to such assumption and/or cure amount; provided, however, that, subject to Article X.A of the Plan, the Disbursing Agent, on behalf of the Reorganized Debtors, shall have the right to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases, as applicable, through and including forty-five (45) calendar days after the Effective Date.

The Chapter 11 Trustee and the Disbursing Agent reserve the right to reject any Executory Contract or Unexpired Lease in the resolution of any cure disputes. Notwithstanding anything to the contrary herein, if at any time the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Chapter 11 Trustee and the Disbursing Agent, will have the right, at such time, to add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, or reject it, in which case such Executory Contract or Unexpired Lease shall be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults, whether monetary or nonmonetary, including defaults of provisions restricting a change in control or any bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date of assumption for such Executory Contract or Unexpired Lease; provided that nothing herein shall prevent the Chapter 11 Trustee from (a) paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure Claim or (b) settling any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed and cured shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

4. Insurance Policies

All of the Debtors' insurance policies, and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Chapter 11 Trustee shall determine whether to assume any of the Debtors' prepetition insurance policies and any agreements, documents, and instruments related thereto.

5. Indemnification Provisions

Except as otherwise provided in the Plan, on and as of the Effective Date, any of the Debtors' indemnification obligations with respect to any contract or agreement that is the subject of or related to any litigation against the Debtors or Reorganized Debtors, as applicable, are hereby rejected by the Chapter 11 Trustee. For the avoidance of doubt, nothing herein shall in any way affect any indemnification in favor of the Debtors or the Chapter 11 Trustee or his Professionals including, but not limited to, the indemnification provisions in favor of the Chapter 11 Trustee and his professionals in the Stalking Horse APA and the Sale Order, and the Estates' obligations to provide indemnity to SSG Capital Advisors LLC under its contract and the Bankruptcy Court order providing for SSG's appointment and the Bankruptcy Court order directing the Chapter 11 Trustee to indemnify and reimburse SSG for all reasonable defense costs, fees and expenses [D.I. 1006].

6. Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan shall constitute an admission by the Chapter 11 Trustee or the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If, prior to the Effective Date, there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Chapter 11 Trustee or the Disbursing Agent shall have forty-five (45) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease nunc pro tunc to the Confirmation Date.

7. Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases, and this paragraph shall constitute a request for such extension pursuant to Bankruptcy Rule 9006(b).

## VII. Provisions Governing Distributions

1. Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided in the Plan, on the Effective Date or as soon thereafter as the Disbursing Agent deems practicable, in his sole discretion, (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim), each Holder of an Allowed Claim shall be entitled to receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims (which will only be made if and when they become Allowed Claims) shall be made pursuant to the provisions set

forth in Article VII of the Plan. Except as otherwise expressly provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. The Disbursing Agent shall have no obligation to recognize any transfer of Claims against any Debtor or privately held Interests occurring on or after the Distribution Record Date.

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Disbursing Agent on the Effective Date or as soon as reasonably practicable thereafter to be determined in the Disbursing Agent's sole discretion. The Disbursing Agent shall not be required to give any bond, surety, or other security for the performance of the Disbursing Agent's duties unless otherwise ordered by the Bankruptcy Court.

2. Disbursing Agent

*a) Appointment and Powers of the Disbursing Agent:* The Disbursing Agent shall act for the Reorganized Debtors after the Effective Date in the same fiduciary capacity as applicable to the Debtors' officers and directors. The Chapter 11 Trustee who served in such capacity immediately before the Effective Date shall be replaced by the Disbursing Agent on the Effective Date. From and after the Effective Date, the Disbursing Agent shall be the sole representative of, and shall act for, the Reorganized Debtors. The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent him with respect to his responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent, in his sole discretion, to be necessary and proper to implement the provisions hereof.

*b) Post-Effective Date Fees and Expenses:* From and after the Effective Date, the Disbursing Agent shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Disbursing Agent and those professional persons employed by the Disbursing Agent incurred in connection with the implementation and consummation of the Plan, the reconciliation of Claims, the prosecution of Causes of Action, or any other matters as to which such professionals are employed. The compensation payable to the Disbursing Agent shall be based upon the hourly rate of the Disbursing Agent and those professionals employed by the Disbursing Agent to effectuate the terms of the Plan. The Disbursing Agent's current hourly rate is $640. The Disbursing Agent has agreed to a reduced hourly rate in the amount of $500 for this engagement. Additionally, the Disbursing Agent shall seek a 10% discount from any professionals retained by the Disbursing Agent in discharging his duties under the Plan. Further, the Disbursing Agent will engage counsel on a contingent basis to pursue claims for indemnification under the Stalking Horse APA and the Sale Order against the Purchaser. The reasonable fees and expenses of the Disbursing Agent and any such professionals ("Disbursing Agent Expenses") shall be paid from the Assets

of the Reorganized Debtors prior to any distributions to Holders of General Unsecured Claims, Holders of Subordinated Unsecured Claims and Holders of Equity Interests.

*c) Limitations on Liability:* The Disbursing Agent shall not incur liability to any Person by reason of the discharge of his duties as set forth in the Plan, except in the event of actual fraud, gross negligence or willful misconduct determined by a Final Order of a court of competent jurisdiction.

*d) Disbursing Agent Indemnification:* The Disbursing Agent and all professionals retained by the Disbursing Agent, each in their capacities as such, shall be deemed indemnified, except for actual fraud, willful misconduct, or gross negligence, determined by a Final Order of a court of competent jurisdiction, in all respects by the Debtors and the Estates. Notwithstanding anything to the contrary contained herein, the Disbursing Agent in his capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors or the Estates.

*e) Transfer of Privilege/No Waiver:* On the Effective Date, all of the Debtors' evidentiary privileges, including the attorney/client privilege, shall be deemed transferred to the Reorganized Debtors and Disbursing Agent. The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief. Upon such transfer, the Debtors and the Estates shall have no other further rights or obligations with respect thereto. Nothing herein shall be deemed a waiver of the Debtors' or the Estates' rights of privilege.

3. Delivery of Distributions and Undeliverable or Unclaimed Distributions

*a) Delivery of Distributions:*

*(1) Delivery of Distributions in General:* Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims or Interests shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent: (i) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Disbursing Agent has been notified in writing of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address; or (iv) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Chapter 11 Trustee and/or Disbursing Agent shall not incur any liability whatsoever on account of any distributions under the Plan, except in the event of actual fraud, gross negligence, or willful misconduct, as determined by a Final Order of a court of competent jurisdiction.

*b) Record Date of Distributions:* As of the close of business on the Distribution Record Date, the various transfer registers for each Class of Claims as maintained by the Reorganized Debtors or the Claims Agent shall be deemed closed, and there shall be no further changes in the record Holders of any Claims. The Disbursing Agent shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date. In addition, with respect to payment of any cure amounts or disputes over any cure amounts, the Disbursing Agent shall have no obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Cure Claim.

*c) Special Rules for Distributions to Holders of Disputed Claims:* Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the Disbursing Agent, on the one hand, and the Holder of a Disputed Claim, on the other hand, or as set forth in a Final Order, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all of the Disputed Claim has become an Allowed Claim by Final Order or has otherwise been resolved by settlement or Final Order.

*d) Minimum Distributions:* Notwithstanding any other provision of the Plan, no Cash payment valued at less than $100.00, in the reasonable discretion of the Disbursing Agent, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim. Such Allowed Claims to which this limitation applies shall be discharged and its Holder forever barred from asserting that Claim against the Debtors or their property.

*e) Undeliverable Distributions and Unclaimed Property:* In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) calendar days from the date of the distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors for redistribution by the Disbursing Agent at his sole discretion automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, state, or other jurisdiction escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred. The Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court docket.

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) calendar days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly and in writing to the Disbursing Agent by the Holder of the relevant Allowed Claim within the ninety (90) calendar day period. After such date, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be automatically discharged and forever barred, and such funds shall revert to the Reorganized Debtors for redistribution by the Disbursing Agent at his sole discretion (notwithstanding any

applicable federal, provincial, state or other jurisdiction escheat, abandoned, or unclaimed property laws to the contrary).

A distribution shall be deemed unclaimed if a Holder has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Disbursing Agent of an intent to accept a particular distribution; (c) responded to the Disbursing Agent's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

*f) Remainder Amounts After Distribution:* If at any time the Disbursing Agent determines that the expense of administering the Reorganized Debtors so as to make a final distribution to Holders of Allowed Claims is likely to exceed the value of the assets remaining in the Reorganized Debtors, the Disbursing Agent may (i) reserve any amount necessary to dissolve the Reorganized Debtors and (ii) donate any remaining assets to a 501(c)(3) charity to be selected by the Disbursing Agent.

4. <u>Manner of Payment</u>

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check, wire transfer, automated clearing house, or as otherwise required or provided in applicable agreements.

5. <u>Compliance with Tax Requirements</u>

In connection with the Plan, to the extent applicable, the Disbursing Agent shall ensure the Reorganized Debtors comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, retaining a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information, documentation, and certifications necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable or appropriate. All Persons or Entities holding Claims against any Debtor shall be required to provide any information necessary for the Disbursing Agent to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit. The Disbursing Agent reserves the right to allocate any distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit on account of such distribution.

6. No Post-petition or Default Interest on Claims

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, post-petition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim for purposes of distributions under the Plan.

7. Allocations

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remaining portion of such Allowed Claim, if any.

8. Setoffs and Recoupment

The Disbursing Agent may, but shall not be required to, setoff against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature whatsoever that the Debtors, as applicable, may have against the Holder of such Allowed Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law, to the extent that such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (pursuant to the Plan or otherwise); provided, however, that the failure of the Disbursing Agent to do so shall not constitute a waiver, abandonment or release by the Debtors of any such Claim they may have against the Holder of such Claim.

9. Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in a currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate on the Petition Date, as quoted at 4:00 p.m. (prevailing Eastern Time), midrange spot rate of exchange for the applicable currency as published in the Wall Street Journal, National Edition, on the day after the Petition Date.

## A. Procedures for Resolving Contingent, Unliquidated, and Disputed Claims

1. Resolution of Disputed Claims

*a) Allowance of Claims:* After the Effective Date, the Disbursing Agent and, with respect to each Class of Claims, shall have and retain any and all rights and defenses the Debtors had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim against any Debtor shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

*b) Claims and Interests Administration Responsibilities:* Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Disbursing Agent shall have the sole and exclusive authority to: (a) file, withdraw, or litigate to judgment objections to Claims against any of the Debtors; (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; (c) file, prosecute, litigate, compromise or settle any Cause of Action, including the Avoidance Causes of Action; and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. The Chapter 11 Trustee and Disbursing Agent shall have the right to amend the Debtors' Bankruptcy Schedules to modify or remove any scheduled claims that the Chapter 11 Trustee or Disbursing Agent believes are improper in any way, or in which the Debtors and Reorganized Debtors may hold Causes of Action against as a means of setoff and/or recoupment, subject to any affected parties receiving notice of such amendment. Any party affected by any such amendment shall retain and reserve all rights to file a proof of claim, which shall be deemed timely if filed on or within thirty (30) days after notice of such amendment is served upon such party, and any such party who does not file a proof of claim on or within such thirty (30) day period shall be forever barred from asserting that Claim against the Debtors or their property. The Chapter 11 Trustee and Disbursing Agent reserve all rights to object to any such timely filed proof of claim.

*c) Estimation of Claims:* Before or after the Effective Date, the Chapter 11 Trustee or Disbursing Agent, may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any Disputed, contingent, or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions) subject to final Allowance, and the Chapter 11 Trustee or Disbursing Agent may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before fourteen (14) calendar days after the date on which such Claim is estimated. All of the aforementioned Claims, objections, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims against any of the Debtors may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

*d) Adjustment to Claims Without Objection:* Any duplicate Claim or Interest, any Claim against any Debtor that has been paid or satisfied, or any Claim against any Debtor that has been amended or superseded, canceled, or otherwise expunged (including pursuant to

the Plan), may, in accordance with the Bankruptcy Code and Bankruptcy Rules, be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Disbursing Agent without the Disbursing Agent having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent that the Trustee or Disbursing Agent amends or has amended the Debtors' Schedules, any person or entity whose rights are adversely effected by such an amendment shall have the later of (i) thirty (30) days from the Effective Date; or (ii) thirty (30) days after service of such amendment to file a proof of claim, after which time, the right to do so shall have conclusively terminated.

*e) Deadline for Objection to Claims and Equity Interests:* The Deadline to file any objections to Claims and Equity Interests, including Administrative Expense Claims that are not subject to a pending objection on the Effective Date, shall be one hundred and eighty (180) days after the Effective Date (the "Claim and Interest Objection Bar Date"). The Disbursing Agent may seek one or more extensions of the Claim and Equity Interest Objection Bar Date from the Bankruptcy Court. The filing of a motion by the Disbursing Agent to extend the time to file an objection to a Claim or Equity Interest will automatically extend the date to which the Disbursing Agent must file objections to a filed Claim or Equity Interest until a Final Order is entered on any such motion.

*f) Cancellation of Equity Interests:* Except as otherwise set forth in the Plan, on the Effective Date, all existing Equity Interests of each of the Debtors shall be retired, cancelled, extinguished and/or discharged in accordance with the terms of the Plan. Except as otherwise provided in the Plan, on the Effective Date: (1) the obligations of the Debtors under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest shall be cancelled as to the Debtors shall not have any continuing obligations thereunder, and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate, or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged.

2. <u>Disallowance of Claims</u>

Any Claims against any of the Debtors held by Persons or Entities from which property is recoverable under sections 542, 543, 547, 548, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors.

Except as provided herein or otherwise agreed to by the Disbursing Agent, any and all

Proofs of Claim filed after the applicable Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late filed Claim has been deemed timely filed by a Final Order.

3. Amendments to Proofs of Claim

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Proof of Claim or Interest may not be filed or amended without the prior authorization of the Bankruptcy Court or the Disbursing Agent. Any such new or amended Proof of Claim filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court; provided, however, that the foregoing shall not apply to Administrative Expense Claims or Professional Compensation Claims.

4. No Distributions Pending Allowance

Notwithstanding anything to the contrary herein, if any portion of a Claim against any Debtor is Disputed, or if an objection to a Claim against any Debtor or portion thereof is filed as set forth in this Article VII, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

5. Disputed Claim Reserve

On or before the Effective Date, the Disbursing Agent shall establish one or more Disputed Claims Reserve for Disputed Claims, which Disputed Claim Reserves shall be administered by the Disbursing Agent. The Disbursing Agent shall reserve in cash, for distribution on account of each Disputed Claim, the distribution due on account of the full asserted amount (or such lesser amount as may be determined in the discretion of the Disbursing Agent, but, for the avoidance of doubt, the Disbursing Agent may seek estimation by the Bankruptcy Court to ascertain the amount to be reserved on account of any such Disputed Claim) with respect to each Disputed Claim as if such Disputed Claim were Allowed. The Disbursing Agent will, in his sole discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, if and when any such Disputed Claim is resolved consistent herewith and becomes an Allowed Claim, and any such amount will be distributable in respect of such Disputed Claim as such amount would have been distributable had the Disputed Claim been Allowed as of the Effective Date. To the extent either or both Estates are required by applicable law to pay taxes on the taxable net income or gain allocable to Holders of Disputed Claims and if and when such Disputed Claims are ultimately Allowed, Holders whose Disputed Claims are determined to be Allowed will receive Distributions from the Disputed Claims Reserve net of the taxes that the Estate or Estates previously paid on their behalf.

6. Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made by the Disbursing Agent to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Allowed Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Allowed Claim, without any interest, dividends, or accruals to be paid on account of such Allowed Claim unless required under applicable bankruptcy law.

7. No Interest

Unless otherwise expressly provided by section 506(b) of the Bankruptcy Code or as specifically provided for herein or by order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on Claims against any of the Debtors, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim; provided, however, that nothing in Article VII.G of the Plan shall limit any rights of any Governmental Unit to interest under sections 503, 506(b), 1129(a)(9)(A) or 1129(a)(9)(C) of the Bankruptcy Code or as otherwise provided for under applicable law.

## VIII. Discharge, Release, Injunction, and Related Provisions

1. No Discharge

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against the Debtors.

2. Release of Liens

Except as otherwise specifically provided in the Plan or in prior Orders of the Bankruptcy Court, on the closing Date of a sale of any Assets of the Debtors, all Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, discharged, and compromised, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, UCCs or other security interests against any property of the Estates shall revert to the Reorganized Debtors for liquidation and distribution by the Disbursing Agent, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

In addition, the Secured Creditors shall execute and deliver all documents reasonably requested by the Disbursing Agent or the Purchaser, as applicable, to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Trustee to terminate the lien, without the need to file UCC-3 termination statements or other

jurisdiction equivalents.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release (1) to the extent that any Causes of Action against the Debtors are not released or discharged pursuant to the Plan, the Hawk Settlement, or the Rembrandt Settlement, any rights of the Trustee or the Disbursing Agent to assert any and all of the Debtors' counterclaims, crossclaims, claims for contribution, defenses, and similar claims in response to such Causes of Action, (2) any Causes of Action, including any Avoidance Cause of Action or Cause of Action for Indemnification from the Purchaser, (3) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed, (4) any Cause of Action against a Holder of a Disputed Claim or the Holder of any Interest, as well as the Debtors' officers, directors, members, managers or shareholders.

3. Regulatory Activities

Notwithstanding anything to the contrary in the Plan, nothing in the Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units or other governmental agencies.

4. Releases by the Debtors

Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Exculpated Parties to facilitate the expeditious liquidation of the Debtors and the consummation of the transactions contemplated by the Plan, on the Effective Date, the Exculpated Parties are deemed forever released by the Debtors and their Estates, and each of their successors and assigns, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or their Estates would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the business or contractual arrangements between the Debtors and any of the Exculpated Parties, the negotiation, formulation or preparation of the Plan or related agreements, instruments or other documents (collectively, the "Debtors' Released Claims"), other than Debtors' Released Claims against an Exculpated Party arising out of the actual fraud, gross negligence, willful misconduct, or criminal liability, as determined by a Final Order of a court of competent jurisdiction, of any such Person or entity.

**5. Exculpation**

**Except as otherwise specifically provided in the Plan or the Confirmation Order, no**

**Exculpated Party, as defined herein, shall have or incur any liability to any person or Entity for, and each Exculpated Party is hereby exculpated from, any Cause of Action, taking place between the Petition Date and the Effective Date of the Plan, related to any act or omission in connection with, relating to, or arising out of, the Debtors' restructuring and liquidation efforts, the Hawk Settlement, the pursuit or consummation of the sale of the Transferred Assets to the Purchaser, the Rembrandt Settlement, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or withdrawal or termination of the Disclosure Statement, the Plan, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.**

6. Injunction

ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR TO THE EXTENT NECESSARY TO ENFORCE THE TERMS AND CONDITIONS OF THE PLAN, THE CONFIRMATION ORDER, OR A SEPARATE ORDER OF THE BANKRUPTCY COURT, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS, WILL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE EXCULPATED PARTIES, THE PURCHASER (WITH THE EXCEPTION OF REMBRANDT SOLEY AS TO THE PURCHASER), THE DEBTORS, THEIR ESTATES, OR ANY OF THEIR PROPERTY ON ACCOUNT OF ANY SUCH CLAIM OR EQUITY INTEREST UNLESS ARISING OUT OF ACTUAL FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; AND (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE FROM SUCH ENTITIES, EXCEPT AS OTHERWISE SET FORTH IN THE PLAN AND UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, RIGHT OF SUBORGATION, OR RECOUPMENT.

7. Gatekeeper Provision

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise

support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Debtors, the Disbursing Agent or the Exculpated Parties, without first (1) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against the Debtors, Disbursing Agent or Exculpated Party, and is not a Claim that the Debtors released under the Plan, is subject to Exculpation or the Discharge Injunction contained in the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party and (2) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against any such the Debtors, the Disbursing Agent or the Exculpated Parties. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action; provided, however, that nothing in Section VIII.G of the Plan requires, precludes, and/or prohibits an Insurer to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law.

8. Direct Insurance Claims

Nothing contained in the Plan shall impair or otherwise affect any right of a Holder of a Claim under applicable law, if any, to assert direct claims solely under any applicable insurance policy of the Debtors or solely against any applicable provider of such policies, if any.

## IX. Conditions Precedent to Consummation of the Plan

1. Conditions Precedent to the Effective Date

It is a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.B of the Plan:

*a)* Confirmation and all conditions precedent thereto shall have occurred;

*b)* The Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Chapter 11 Trustee in his sole discretion.

*c)* The final version of the Plan, including all schedules, supplements, and exhibits thereto, shall be in form and substance acceptable to the Chapter 11 Trustee in his sole discretion.

2. Waiver of Conditions

Any or all of the conditions to Consummation set forth in Article IX.1 may be waived by

the Chapter 11 Trustee.

3. Effect of Failure of Conditions

If Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims, Causes of Action, or Interests; (2) prejudice in any manner the rights of the Chapter 11 Trustee to assert the rights of the Debtors, or the rights of any Holder, any Person, or any other Entity; or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, any Person, or any other Entity.

## X. Modification, Revocation, or Withdrawal of the Plan

1. Modification and Amendments

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Chapter 11 Trustee reserves the right, in his sole and exclusive discretion, without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. After the Confirmation Date and before substantial consummation of the Plan, the Chapter 11 Trustee may initiate proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and intent of the Plan.

After the Confirmation Date, the Chapter 11 Trustee or Disbursing Agent may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court; provided that such adjustments and modifications do not materially and adversely affect the treatment of Holders of Claims or Interests.

2. Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

3. Revocation or Withdrawal of Plan

The Chapter 11 Trustee reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization. If the Chapter 11 Trustee revokes or withdraw the Plan, or if Confirmation or Consummation does not occur, then, absent further order of the Bankruptcy Court: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Classes of Claims or Interests), assumption or rejection of Executory Contracts or

Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, any Person, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, any Person, or any other Entity.

## XI. <u>Retention of Jurisdiction</u>

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, except as set forth in the Plan, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable, and to hear, determine and, if necessary, liquidate, any Claims against any of the Debtors arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Disbursing Agent amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4. grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

5. ensure that distributions to Holders of Allowed Claims and Equity Interests, if any, are accomplished pursuant to the provisions of the Plan;

6. adjudicate, decide, or resolve: (a) any motions, adversary proceedings, applications, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor, or the Estates that may be pending on the Effective Date or that, pursuant to the Plan, may be commenced after the Effective Date, including, but not limited to, the Causes of Action, and any Avoidance Cause of Action; (b) any and all matters related to Causes of Action that may arise in connection with the Consummation, interpretation, or

enforcement of the Plan or any Entity's obligations incurred in connection with the Plan; and (c) any and all matters related to section 1141 of the Bankruptcy Code;

7. enter and implement such orders as may be necessary or appropriate to construe, execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Confirmation Order, the Plan, or the Disclosure Statement;

8. enter and enforce any order for the sale of property pursuant to sections 105, 363, 1123, or 1146(a) of the Bankruptcy Code;

9. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan, or any Entity's obligations incurred in connection with the Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity or Person with the Consummation or enforcement of the Plan;

11. hear and resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI;

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15. adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16. consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan, the Disclosure Statement, or any Bankruptcy Court order, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

17. determine requests for the payment of Claims against any of the Debtors entitled to priority pursuant to section 507 of the Bankruptcy Code;

18. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Sale Order, any remanded proceedings, or any transactions or payments contemplated hereby or thereby, including disputes arising in connection with the implementation of the agreements, documents, or instruments executed in connection with the Plan;

19. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, 511, and 1146 of the Bankruptcy Code

20. enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Person or Entity, and resolve any cases, controversies, suits, or disputes that may arise in connection with any Person or Entity's rights arising from or obligations incurred in connection with the Plan;

21. hear and determine any and all claims against the Chapter 11 Trustee and/or his professionals, including claims arising under the Barton Doctrine;

22. hear and determine any other matter not inconsistent with the Bankruptcy Code;

23. enter an order or final decree concluding or closing any of the Chapter 11 Cases; and

24. hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan.

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, or the Disclosure Statement, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XI, the provisions of this Article XI shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against the Debtors that arose prior to the Effective Date.

## XII. Miscellaneous Provisions

1. Immediate Binding Effect

Subject to Article XII.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors and each of their respective heirs executors, administrators, successors, and assigns.

2. Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

3. Further Assurances

On or before the Effective Date, the Chapter 11 Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

4. Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor or any other Entity with respect to the Plan or the Disclosure Statement, shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or other Entity before the Effective Date.

5. Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, receiver, trustee, successor, assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of such Entity.

6. Notices

Any pleading, notice, or other document required by the Plan or the Confirmation Order to be served or delivered shall be served by first-class or overnight mail:

Chapter 11 Trustee and Disbursing Agent:

(a) William A. Homony, CIRA
8 Penn Center, Suite 950
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103

With a copy to: Michael D. Vagnoni, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102; and

(b) Office of the U.S. Trustee at:
Andrew R. Vara
United States Trustee
Robert N.C. Nix Federal Building
900 Market Street, Suite 320
Philadelphia, PA 19107
Attention: John Henry Schanne
E-mail: john.schanne@usdoj.gov

7. Entire Agreement

Except as otherwise indicated, the Plan supersedes all other plans filed in the Debtors' bankruptcy cases and all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

8. Cases

Upon the occurrence of the Effective Date, the Disbursing Agent shall be permitted to (a) close one of the Chapter 11 Cases as determined by the Disbursing Agent in his sole and exclusive discretion, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in such Chapter 11 Cases, and (b) change the name of the remaining Debtors and case caption of the remaining open Chapter 11 Cases as desired, in the Disbursing Agent's sole and exclusive discretion.

9. Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made

with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, this Disclosure Statement, or papers filed prior to the Confirmation Date.

10. Deemed Acts

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party by virtue of the Plan and the Confirmation Order.

## XIII. VALUATION OF THE DEBTORS

Based upon the considerations set forth in detail in this Disclosure Statement, the Trustee entered into the Hawk Settlement and Appointed SSG as his investment banker. SSG worked closely with the Trustee and his professionals to become familiar with the Debtors' corporate and capital structure. Because the Debtors had not been operating for a substantial period of time and had been through two (2) previous bankruptcy proceedings, as well as years of litigation in the Delaware Chancery Court and Delaware Supreme Court, SSG relied on the review of substantial pre and post-petition litigation pleadings, and discussions with the management and engineering teams at the Debtor's subsidiary in the Netherlands to try to fully understand the asset picture for the Debtors and its subsidiaries, and to determine the assets for sale.

SSG began marketing the Debtors' assets in October of 2024 and because the Hawk Settlement provided for a credit bid in the amount of $150 million, that served as the floor for an alternate purchaser to submit a bid and participate in a sale process set forth in the bidding procedures, approved by the Bankruptcy Court. As part of this process, among other things, SSG drafted and circulated a "Teaser" containing relevant information about the Debtors, and also organized a virtual data room ("VDR"). SSG contacted approximately 550 prospective buyers around the world, including both operation and strategic targets, and took steps to enable such parties to conduct due diligence through the execution of non-disclosure agreements.

Two (2) parties executed the non-disclosure agreement required to access confidential information in the VDR. Those parties were VSI and Continental Advisory Services, LLC ("Continental") who VSI indicated was committed to investing in VSI's purchase of the Debtors' assets. Continental reviewed the VDR materials and participated in multiple calls and emails with SSG, as well as a call with SSG and the engineers at a Debtor subsidiary to discuss the opportunity. Subsequent to that discussion, Continental made it clear to SSG that they were not moving forward with an investment in VSI.

Continental never provided any indication that it or VSI was actually prepared to bid for the Debtors' assets. SSG was responsible for complying with the Court's directive to prepare a full list of assets available in the sale process, including intellectual property owned by the Debtors' subsidiaries, and to allow VSI and Rembrandt to add additional information to the list of assets. Thereafter, SSG again reached out to all of the potential buyers previously contacted, stating that the list of assets for sale had been filed on the Docket and was available for review. SSG also provided confirmation of the bid deadline and sale hearing dates. No party responded.

By exposing the Debtors' Assets to the market and based upon SSG's robust and extensive marketing and sale process, the Bankruptcy Court found that the sale process conducted by the Trustee resulted in the highest or otherwise best value for the Assets for the Debtors' Estates and the Stalking Horse APA constitutes the highest and best offer for the Assets.

## XIV. <u>TAX ISSUES</u>

THE TRUSTEE HAS NOT REQUESTED A RULING FROM THE IRS OR AN OPINION OF COUNSEL WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN. THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN MAY BE COMPLEX. ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE PLAN AND THE OWNERSHIP AND DISPOSITION OF PROCEEDS FROM CLAIMS INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR FOREIGN (NON-US) TAX LAWS AND OF ANY CHANGE IN APPLICABLE TAX LAWS. THE FOLLOWING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FOLLOWING DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND SHOULD NOT BE CONSTRUED AS LEGAL OR TAX ADVICE TO ANY CREDITOR, EQUITY INTEREST HOLDER OR OTHER PARTY IN INTEREST. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

THE CONFIRMATION AND EXECUTION OF THE PLAN MAY HAVE TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND EQUITY INTERESTS. THE TRUSTEE DOES NOT OFFER AN OPINION AS TO ANY FEDERAL, STATE, LOCAL OR OTHER TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND EQUITY INTERESTS AS A RESULT OF THE CONFIRMATION OF THE PLAN.

This discussion is provided for information purposes only. Legislative, judicial, or administrative changes or interpretations enacted or promulgated after the date hereof could alter or modify the analyses set forth below with respect to the United States federal income tax consequences of the Plan. Any such changes or interpretations may be retroactive and could significantly, and adversely, affect the United States federal income tax consequences of the Plan. To the extent that the following discussion relates to the consequences to Holders of Allowed Claims or Interests, it is limited to Holders that are United States persons within in the meaning of the United States Internal Revenue Code (the "IRC").

This discussion does not address all aspects of U.S. federal income taxation that may be relevant to a particular Holder in light of its particular facts and circumstances, or to certain types of Holders subject to special treatment under the IRC. Examples of Holders subject to special

treatment under the IRC are governmental entities and entities exercising governmental authority, foreign companies, persons who are not citizens or residents of the United States, banks and certain other financial institutions, broker-dealers, insurance companies, tax-exempt organizations, real estate investment trusts, small business investment companies, regulated investment companies, Holders that are or hold their Claims or Interests through a partnership or other pass-through entity, dealers in securities or foreign currency, persons that have a functional currency other than the U.S. dollar, and persons holding Claims that are a hedge against, or that are hedged against, currency risk or that are part of a straddle, constructive sale, or conversion transaction. This discussion assumes that Holders hold their Claims or Interests as capital assets for U.S. federal income tax purposes. Generally, a capital asset is property held for investment. This discussion does not address other U.S. federal taxes or the foreign, state, or local tax consequences of the Plan. Furthermore, this discussion generally does not address the U.S. federal income tax consequences to Holders that are unimpaired under the Plan.

The tax treatment of Holders of Claims or Interests and the character, amount and timing of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan may vary, depending upon the following factors, among others: (i) whether the Claim or portion thereof constitutes a Claim for principal or interest; (ii) the type of consideration received by the Holder in exchange for the Claim, and whether the Holder receives distributions under the Plan in more than one taxable year; (iii) whether the Holder is a citizen or resident of the United States for tax purposes, is otherwise subject to U.S. federal income tax on a net basis, or falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above; (iv) the manner in which the Holder acquired the Claim; (v) the length of time that the Claim has been held; (vi) whether the Claim was acquired at a discount; (vii) whether the Holder has taken a bad debt deduction or a worthless securities deduction with respect to the Claim or any portion thereof in the current or prior taxable years; (viii) whether the Holder has previously included in gross income accrued but unpaid interest with respect to the Claim; (ix) the method of tax accounting of the Holder; (x) whether the Claim is an installment obligation for federal income tax purposes; (xi) whether the Claim, and any instrument received in exchange therefor, is considered a "security" for U.S. federal income tax purposes; and (xii) whether the "market discount" rules apply to the Holder. Therefore, each Holder should consult such Holder's own tax advisor for tax advice with respect to that Holder's particular situation and circumstances, and the particular tax consequences to such Holder of the transactions contemplated by the Plan.

A significant amount of time may elapse between the date of the Disclosure Statement and the receipt of a final distribution under the Plan. Events occurring after the date of the Disclosure Statement, such as new or additional tax legislation, court decisions, or administrative changes, could affect the U.S. federal income tax consequences of the Plan and the transactions contemplated thereunder. No ruling has been or will be sought from the IRS with respect to any of the tax aspects of the Plan, and no opinion of counsel has been or will be obtained by the Trustee with respect thereto. No representations are being made regarding the particular tax consequences of the confirmation or implementation of the Plan as to any Holder of a Claim or Interest. This discussion is not binding upon the IRS or other taxing authorities. No assurance can be given that the IRS or another authority would not assert, or that a court would not sustain, a different position from any discussed herein.

## XV. CERTAIN RISK FACTORS TO BE CONSIDERED

Prior to voting to accept or reject the Plan, holders of Claims should read and carefully consider the risk factors set forth below, in addition to the information set forth in this Disclosure Statement and the attachments, exhibits, or documents incorporated by reference hereto. The factors below should not be regarded as the only risks associated with the Plan or its implementation.

### A. Certain Restructuring Law Considerations

1. Effect of Chapter 11 Cases. Although the Plan is intended to effectuate a liquidation of the Debtors through sale of the Debtors' Assets and the distribution of the proceeds, it is impossible to predict with certainty the outcome of the proceedings, or to assure parties in interest that the Plan will be confirmed.

2. The Trustee May Not Be Able to Confirm the Plan. Although the Trustee believes that the Plan will satisfy all requirements necessary for Confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications to the Plan will not be required for Confirmation, or that such modifications would not necessitate re-solicitation of votes. The Trustee can make no assurances that he will receive the requisite acceptances to confirm the Plan, and even if all voting Classes vote in favor of the Plan or the requirements for "cramdown" are met with respect to any Class that rejected the Plan, the Bankruptcy Court, which may exercise its substantial discretion as a court of equity, may choose not to confirm the Plan. If the Plan is not confirmed, it is unclear what distributions holders of Claims ultimately would receive on account of their Claims under a subsequent plan of liquidation.

3. Non-Consensual Confirmation. In the event that any Impaired Class of Claims does not accept or is deemed not to accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Trustee's request if at least one Impaired Class has accepted the Plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each Impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting Impaired Classes. While the Trustee believes that the Plan satisfies these requirements, should any Class reject the Plan, then these requirements must be satisfied with respect to such rejecting Classes.

4. Risk of Timing or Non-Occurrence of Effective Date. There can be no assurance as to the timing of the Effective Date. If the conditions precedent to the Effective Date set forth in the Plan do not occur or are not waived as set forth in Article IX of the Plan, then the Confirmation Order may be vacated, in which event no distributions would be made under the Plan, the Debtors and all Holders of Claims and Interests would be restored to the status quo ante as of the day immediately preceding the Confirmation Date, and the Debtors' obligations with respect to Claims and Interests would remain unchanged.

5. Conversion into Chapter 7 Cases. If no plan of liquidation can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interests of Holders of Claims, the Chapter 11 Cases may be converted to cases under Chapter 7, pursuant to which a Chapter 7 trustee would be appointed or elected to make a distribution to Holders of Claims in accordance with the priorities established by the Bankruptcy Code. See the Liquidation Analysis attached hereto as Exhibit "C", for a discussion of the effects that a Chapter 7 liquidation would have on the recoveries to Holders of Claims. Conversion would add substantial additional administrative expenses, which would reduce distributions to Holders of Claims under the Plan. The Trustee estimates at least an additional $570,000.00 of additional Chapter 7 administrative expenses if the Cases convert, which would result in an appreciable decrease in recoveries to holders of Claims. Further, the Trustee has negotiated a 10% discount of certain of his professionals' final request for fees, which is expressly conditioned upon confirmation of the Plan, providing a further benefit to creditors. See Exhibit "C".

6. The Allowed Amount of Claims May Differ from Current Estimates. There can be no assurance that the estimated Claim amounts set forth herein are correct, and the actual amount of Allowed Claims may differ from the estimates. The estimated amounts are subject to certain risks, uncertainties, and assumptions. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, the actual amount of Allowed Claims may vary from those estimated in this Disclosure Statement. Furthermore, although the Claims Bar Date has passed, the Bankruptcy Court may allow additional Claims to be filed.

7. Parties-in-Interest May Object to the Classification of Claims and Interests. Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Trustee believes that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Trustee created Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims or Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

## XVI. SOLICITATION AND VOTING PROCEDURES

The procedures and instructions for voting and/or making elections and related deadlines are set forth in the Order approving the Disclosure Statement [D.I. 1291]. Holders of Claims are urged to review the Order Approving Disclosure Statement incorporated herein by reference.

THE DISCUSSION OF THE SOLICITATION AND VOTING PROCESS SET FORTH IN THIS DISCLOSURE STATEMENT IS ONLY A SUMMARY. PLEASE REFER TO THE DISCLOSURE STATEMENT ORDER FOR A MORE COMPREHENSIVE DESCRIPTION OF THE PROCEDURES GOVERNING THE SOLICITATION, VOTING, AND TABULATION PROCESS. TO THE EXTENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE DISCLOSURE STATEMENT ORDER, THE DISCLOSURE STATEMENT ORDER GOVERNS.

### A. Voting Instructions

The Trustee will be providing Ballots and other materials, including, among other things, the Disclosure Statement Order (collectively, the "Solicitation Materials") to the Voting Holders.

### B. Voting Record Date

The Voting Record Date is September 14, 2026. The Voting Record Date is the record date for determining which entities are entitled to vote on the Plan and receive Solicitation Materials.

### C. Voting Deadline

The Voting Deadline is October 6, 2026. For a vote to count, each Holder of an Allowed Claim entitled to vote must properly complete, execute, and deliver its respective Ballot in accordance with the applicable instructions on the Ballot, to be actually received by the Claims Agent on or before the Voting Deadline.

### D. Ballots Not Counted

Any Ballot may not be counted toward Confirmation if, among other things, it: (i) partially rejects and partially accepts the Plan; (ii) both accepts and rejects the Plan; (iii) is delivered to anyone other than the Claims Agent; (iv) is sent by means other than mail or overnight delivery to the Claims Agent; (v) is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (vi) is cast by an Entity that does not hold a Claim in the Class specified in the Ballot; (vii) is submitted by a Holder not entitled to vote pursuant to the Plan; (viii) is unsigned; (ix) is not marked to accept or reject the Plan; and/or (x) is received after the Voting Deadline (unless otherwise ordered by the Bankruptcy Court).

## XVII. CONFIRMATION OF PLAN

### A. Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a confirmation hearing upon appropriate notice to all required parties. Notice of the Confirmation Hearing will be provided to all known creditors and interest holders or their representatives. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the continuation date made at the Confirmation Hearing, at any subsequent continued Confirmation Hearing, or pursuant to a notice filed on the docket for the Chapter 11 Cases. With authorization of the Bankruptcy Court, the Debtors have scheduled the Confirmation Hearing beginning on October 13, 2026, at 1:00 p.m., prevailing Eastern Time, to consider confirmation of the Plan.

### B. Objections to Confirmation

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to the confirmation of a plan. Any objection to confirmation of the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Local Rules for the Bankruptcy Court, and any orders of the Bankruptcy Court; (iii) set forth the name of the objector, and the nature and amount of Claims held or asserted by the objector against the Debtors' Estates; (iv) state, with particularity, the legal and factual basis for the objection; and (v) be filed with the Bankruptcy Court (contemporaneously with a proof of service) and served upon the following parties so as to be actually received on or before October 6, 2026:

(a) William A. Homony, CIRA
Chapter 11 Trustee
8 Penn Center, Suite 950
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103

With a copy to:

Michael D. Vagnoni, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West, Suite 3400
1500 Market Street
Philadelphia, PA 19102

and

Steven M. Coren, Esquire
Coren & Ress, P.C.
Two Commerce Square, Suite 3900
2001 Market street
Philadelphia, PA 19103; and

(b) Office of the U.S. Trustee at:
Andrew R. Vara
United States Trustee
Robert N.C. Nix Federal Building
900 Market Street, Suite 320
Philadelphia, PA 19107
Attention: John Henry Schanne

**Objections must also be served on those parties that have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002 and any other parties required to be served under the Bankruptcy Code.**

## C. **Requirements for Confirmation of Plan**

1. Requirements of Section 1129(a) of the Bankruptcy Code.

*a)* *General Requirements.* At the Confirmation Hearing, the Bankruptcy Court will determine whether the confirmation requirements specified in section 1129(a) of the Bankruptcy Code have been satisfied, including, without limitation, whether:

(1) the Plan complies with the applicable provisions of the Bankruptcy Code;

(2) the Trustee has complied with the applicable provisions of the Bankruptcy Code;

(3) the Plan has been proposed in good faith and not by any means forbidden by law;

(4) any payment made or promised by the Trustee for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by the Bankruptcy Court or are subject to approval of the Bankruptcy Court as reasonable;

(5) the Trustee on behalf of the Debtors has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a Disbursing Agent under the Plan, and such appointment is consistent with the interests of holders of Claims and Interests and with public policy;

(6) with respect to each Class of Claims or Interests, each Holder of an Impaired Claim has either accepted the Plan or will receive or retain under the Plan, on account of such Holder's Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount such Holder would receive or retain if the Debtors were liquidated on the Effective Date of the Plan under Chapter 7;

(7) except to the extent the Plan meets the requirements of section 1129(b) of the Bankruptcy Code (as discussed further below), each Class of Claims either accepted the Plan or is not Impaired under the Plan;

(8) except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that administrative expenses and priority Claims, other than Priority Tax Claims, will be paid in full on the Effective Date, and that Priority Tax Claims will receive either payment in full on the Effective Date or deferred cash payments over a period not exceeding five years after the Petition Date, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such Claims;

(9) at least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in

such Class;

(10) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors; and all fees payable under section 1930 of title 28, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

*b)* *Best Interests Test.* As noted above, with respect to each impaired class of claims and equity interests, confirmation of a plan requires that each such holder either (i) accept the plan, or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the value such holder would receive or retain if the debtors were liquidated under Chapter 7. This requirement is referred to as the "best interests test." The "best interests test" is modified with respect to any class of creditors that makes an 1111(b) Election. If the 1111(b) Election is made by a class, the test is satisfied if each holder of a claim in that class votes to accept the plan or receives property of a value on account of its claim, as of the effective date of a plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claim.

This test requires a court to determine what the holders of allowed claims and allowed equity interests in each impaired class would receive from a liquidation of the debtor's assets and properties in the context of a liquidation under Chapter 7. To determine if a plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the debtor's assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of claims and equity interests under the plan.

A hypothetical liquidation analysis (the "Liquidation Analysis") has been prepared by The Trustee's professionals solely for purposes of estimating proceeds available in a liquidation under Chapter 7 of the Debtors' Estates, which is attached hereto as **Exhibit "C"**. The Liquidation Analysis is based on a number of estimates and assumptions that are inherently subject to significant uncertainties and contingencies that are beyond the control of the Trustee, the Debtors, or a trustee under Chapter 7. Further, the actual amounts of claims against the Debtors' Estates could vary materially from the estimates set forth in the Liquidation Analysis, depending on, among other things, the claims asserted during Chapter 7. Accordingly, while the information contained in the Liquidation Analysis is necessarily presented with numerical specificity, the Trustee cannot assure you that the values assumed would be realized or the Claims estimates assumed would not change if the Debtors were in fact liquidated, nor can assurances be made that the Bankruptcy Court would accept this analysis or concur with these assumptions in making its determination under section 1129(a) of the Bankruptcy Code.

As set forth in detail in the Liquidation Analysis, the Trustee believes that the Plan will produce a greater recovery for the Holders of Claims than would be achieved in a Chapter 7 liquidation. Consequently, the Trustee believes that the Plan, which provides for the liquidation of the Debtors' Assets, will provide a substantially greater ultimate return to the Holders of

Claims than would a Chapter 7 liquidation.

*c)* *Feasibility.* Pursuant to section 1129(a)(11) of the Bankruptcy Code, among other things, the Bankruptcy Court must determine that confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtors or any successors to the Debtors under the Plan. The Trustee believes that the Plan satisfies this requirement because the Trustee has sold substantially all of the Debtors' Assets pursuant to the Sale Order and the Plan is not based upon continued operations, the Debtors' ability to raise capital, the ability to obtain warehousing, production or other space, to find employees or vendors, or obtain sales. Accordingly, the Trustee believes that the Plan is feasible.

2. Additional Requirements for Non-Consensual Confirmation. In the event that any Impaired Class of Claims or Interests does not accept or is deemed to reject the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Trustee if, as to each Impaired Class of Claims or Interests that has not accepted or is deemed to reject the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Classes of Claims or Interests, pursuant to section 1129(b) of the Bankruptcy Code. Both of these requirements are in addition to other requirements established by case law interpreting the statutory requirements.

The Trustee submits that if "cramdown" of the Plan pursuant to section 1129(b) of the Bankruptcy Code is required, the Plan is structured so that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement. The Trustee believes that the Plan and the treatment of all Classes of Claims or Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

## XVIII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Trustee has evaluated several alternatives to the Plan. After studying these alternatives, the Trustee has concluded that the Plan is the best option and will maximize recoveries to parties in interest. If the Plan is not confirmed and consummated, the alternatives to the Plan are (i) the preparation and presentation of an alternative plan of liquidation, or (ii) a liquidation under Chapter 7.

## XIX. CONCLUSION AND RECOMMENDATION

The Trustee, on account of the Debtors herein, believes the Plan is in the best interests of all stakeholders and urges the Holders of Voting Classes to vote in favor thereof.

Dated: July 27, 2026

*/s/ William A. Homony*
William A. Homony
Chapter 11 Trustee for the estates of
Stream TV Networks, Inc., and
Technovative Media, Inc.

EXHIBIT 3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:**<br><br>**Stream TV Networks, Inc.,**[1]<br><br>**Debtor.** | : | **Chapter 11**<br><br>**Bankruptcy No. 23-10763 (DJB)** |
| **In re:**<br><br>**Technovative Media, Inc.**<br><br>**Debtors.** | : | **Chapter 11**<br><br>**Bankruptcy No. 23-10764 (DJB)**<br>**(Jointly Administered)** |

**NOTICE OF ENTRY OF ORDER APPROVING: (A) DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES; (B) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT CHAPTER 11 PLAN; AND (C) HEARING TO CONSIDER CONFIRMATION OF CHAPTER 11 PLAN AND (D) RELATED RELIEF**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. Pursuant to an order dated September 9, 2026 [D.I. 1291], (the "Disclosure Statement Order"), the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court") has (a) approved the *First Amended Disclosure Statement Accompanying the First Amended Plan Pursuant to Section 1125 of the Bankruptcy Code* [Docket No. 1276], (as may thereafter amended, the "Disclosure Statement") filed by William A. Homony, the duly appointed Chapter 11 trustee (the "Chapter 11 Trustee") for the bankruptcy estates of Debtors, Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative" and with Stream each a "Debtor" and collectively the "Debtors") and (b) authorized the Chapter 11 Trustee to solicit votes to accept or reject *First Amended Joint Plan of Liquidation of Stream TV Networks, LLC and Technovative Media, Inc.*, dated August 27, 2026 [Docket No. 121275] (as may be amended, the "Plan").

2. The Disclosure Statement Order establishes September 14, 2026 as the Record Date for determining the holders of prepetition claims entitled to vote to accept or reject the Plan, and establishes October 6, 2026 as the Voting Deadline for submission of ballots to accept or reject the Plan (the "Ballots"). Holders of claims entitled to vote to accept or reject the Plan will receive the following materials: (a) this Notice, (b) a copy of the Disclosure Statement Order to which this Notice corresponds, (c) the Disclosure Statement, (d) the Plan, and (e) one or more Ballots

[1] The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The Debtors' estates are Jointly Administered (D.I. #81). However, the Debtors' estates have not been, at the time of filing this Plan, substantively consolidated.

(and return envelopes) to be used in voting to accept or reject the Plan (collectively, the "Solicitation Package"). Failure to follow the instructions set forth in the Ballot may disqualify that Ballot and the vote represented thereby.

3. The Plan proposes the following injunctive relief:

**ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. THEREAFTER, FROM THE EFFECTIVE DATE FORWARD, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR TO THE EXTENT NECESSARY TO ENFORCE THE TERMS AND CONDITIONS OF THE PLAN, THE CONFIRMATION ORDER, OR A SEPARATE ORDER OF THE BANKRUPTCY COURT, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS, WILL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE EXCULPATED PARTIES, THE PURCHASER (WITH THE EXCEPTION OF REMBRANDT SOLEY AS TO THE PURCHASER AND THE TRUSTEE IN CONNECTION WITH HIS INDEMNIFICATION RIGHTS UNDER THE STALKING HORSE APA AND SALE ORDER), THE DEBTORS, THEIR ESTATES, OR ANY OF THEIR PROPERTY ON ACCOUNT OF ANY SUCH CLAIM OR EQUITY INTEREST: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE FROM SUCH ENTITIES, EXCEPT AS OTHERWISE SET FORTH IN THE PLAN; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN, PROVIDED, HOWEVER, THAT SUCH ENTITIES WILL NOT BE PRECLUDED FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN OR THE CONFIRMATION ORDER.**

4. A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held at the United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix, Sr. Federal Courthouse, Courtroom 2, 900 Market Street, Philadelphia, PA 19107 on October 13, 2026 at 1:00 p.m., prevailing Eastern time. The Confirmation Hearing may be continued from time to time without further notice other than the announcement of the adjourned date at the Confirmation Hearing or any continued hearing.

5. Objections, if any, to the confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection; (d) be filed with the Court electronically; (e) be served on the following parties (the "Notice Parties") no later than October 6, 2026 (the "Objection Deadline"): (i) counsel the Chapter 11 Trustee, OBERMAYER

REBMANN MAXWELL & HIPPEL LLP, Centre Square West, 1500 Market Street, Suite 3400, Philadelphia, PA 1910 (Attn: Michael D. Vagnoni, Esq.) and COREN & RESS, P.C., Two Commerce Square, Suite 3900, 2001 Market Street, Philadelphia, PA 19103 (Attn: Steven M. Coren, Esq.); (ii) the Office of The United States Trustee, Eastern District of Pennsylvania, 900 Market Street, Suite 320, Philadelphia, Pennsylvania 19107 (Attn: John Schanne, Trial Attorney); and (v) all parties who have filed on the docket in this case a request for service of pleadings in the case pursuant to Bankruptcy Rule 2002.

6. If you do not have a Disclosure Statement or Plan, you may obtain a copy from the Chapter 11 Trustee's Claims Agent, BMC Group, by phone (888-909-0100), e-mail (streamtv@bmcgroup.com ), first class mail (BMC Group, Attn: StreamTV, P.O. Box 90100, Los Angeles, CA 90009), or messenger or hand delivery (BMC Group, Attn: StreamTV, 3732 West, 120th Street, Hawthorne, CA 90250). You can also obtain copies of any pleadings filed in these chapter 11 cases free of charge from the Claims Agent website at https://cases.creditorinfo.com/streamtv/documents .

7. If you have any questions regarding this Notice, please call the Claims Agent at 888-909-0100.

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED AS PROVIDED HEREIN, IT MAY NOT BE CONSIDERED AT THE HEARING.**

Dated: September 14, 2026

By: */s/ Michael D. Vagnoni*

Edmond M. George, Esquire
Michael D. Vagnoni, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3066
Facsimile: (215) 665-3165
E-mail: edmond.george@obermayer.com
michael.vagnoni@obermayer.com

*Counsel to William A. Homony, Chapter 11 Trustee*

EXHIBIT 4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:**<br><br>**Stream TV Networks, Inc.,**[1]<br><br>**Debtor.** | : | **Chapter 11**<br><br>**Bankruptcy No. 23-10763 (DJB)** |
| **In re:**<br><br>**Technovative Media, Inc.**<br><br>**Debtors.** | : | **Chapter 11**<br><br>**Bankruptcy No. 23-10764 (DJB)**<br>**(Jointly Administered)** |

**«PlanClass» («PlanClassDesc»)**
**Ballot for Accepting or Rejecting Joint Plan of Liquidation**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS *ACTUALLY RECEIVED* BY THE CLAIMS AGENT BY OCTOBER 6, 2026 (THE "VOTING DEADLINE"). YOU MUST FOLLOW THE DIRECTIONS HEREIN TO CAST YOUR VOTE.**

William A. Homony, the duly appointed Chapter 11 trustee (the "Chapter 11 Trustee") for the bankruptcy estates of Debtors, Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative" and with Stream each a "Debtor" and collectively the "Debtors"), filed a first amended joint plan of liquidation dated August 27, 2026, [D.I. 1275] (as may be further amended the "Plan") for the Debtors in this case. The Court has approved a disclosure statement with respect to the Plan (as amended, the "Disclosure Statement"). The Disclosure Statement and Plan provide information to assist you in deciding how to vote your ballot.

You are receiving this Ballot because you are a Holder of Claim(s) in «PlanClass» («PlanClassDesc») under the Plan as of September 14, 2026 (the "Voting Record Date"). Accordingly, you have the right to vote to accept or reject the Plan.

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT IN**

[1] The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The Debtors' estates are Jointly Administered (D.I. #81). However, the Debtors' estates have not been at the time of filing this Plan, substantively consolidated.

**ACCORDANCE WITH THE INSTRUCTIONS PROVIDED HEREIN. IN ORDER FOR YOUR VOTE TO COUNT, YOU MUST COMPLETE THIS BALLOT AND ENSURE THAT IT IS RECEIVED BY THE VOTING AGENT ON OR BEFORE THE VOTING DEADLINE, WHICH IS OCTOBER 6, 2026. IF YOUR BALLOT IS NOT RECEIVED BY THE VOTING DEADLINE, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE WILL NOT COUNT UNLESS THE VOTING DEADLINE IS EXTENDED IN THE SOLE DISCRETION OF THE TRUSTEE.**

If you do not have a Disclosure Statement or Plan, you may obtain a copy from the Chapter 11 Trustee's Claims Agent, BMC Group, by phone (888-909-0100), e-mail (streamtv@bmcgroup.com), first class mail (BMC Group, Attn: StreamTV, P.O. Box 90100, Los Angeles, CA 90009), or messenger or hand delivery (BMC Group, Attn: StreamTV, 3732 West, 120th Street, Hawthorne, CA 90250). You can also obtain copies of any pleadings filed in these chapter 11 cases free of charge from the Claims Agent website at https://cases.creditorinfo.com/streamtv/documents.

Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.

**You should review the Disclosure Statement and Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in «PlanClass» under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by the Claims Agent on or before October 6, 2026, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe that you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Claims Agent ***immediately*** at the telephone number or email address set forth above.

PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.

**Acceptance or Rejection of the Plan**

The undersigned, the holder of a «PlanClass» claim against Debtor, «CaseName», in the unpaid amount of
«VoteAmt»:
*Check one box only.*

☐ **Accepts the Plan**

☐ **Rejects the Plan**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Plan Proponents:

(a) that, as of the Voting Record Date, either: (i) the Entity is the Holder of the «PlanClass» Claim(s) being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the «PlanClass» Claim(s) being voted;

(b) that the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and Plan and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c) that the Entity has the power and authority to vote to accept or reject the Plan;

(d) that the Entity understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will be counted as an acceptance; and

(e) that the Entity understands that if it previously submitted a ballot for this «PlanClass» Claim(s), that this Ballot, to the extent it is timely received and properly executed, will supersede all such previously submitted Ballots, and all such previously submitted Ballots will not be counted; and that the Entity understands that if it previously submitted a Ballot for any other «PlanClass» Claim(s), that the vote to accept or reject the Plan on this Ballot, to the extent it is timely received and properly executed, will supersede all such votes on previously submitted Ballots, and all such previously submitted Ballots will be counted as either a vote to accept or a vote to reject the Plan solely as such vote is designated on this Ballot.

Dated: ____________________________________________

Signature: ____________________________________________

Print or type name: ________________________________________

Title (if corporation
or partnership): ________________________________________

Address: ________________________________________

________________________________________

________________________________________

**AS DESCRIBED BELOW, YOU MAY SUBMIT YOUR BALLOT ONLINE VIA THE CLAIMS AGENT'S E-BALLOT PLATFORM.**

**IF YOU WOULD LIKE TO RETURN A PAPER COPY OF THIS BALLOT BY FIRST CLASS MAIL (INSTEAD OF SUBMITTING YOUR BALLOT ONLINE), PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY BY FIRST CLASS MAIL TO:**

**BMC Group**
**Attn: Stream TV Ballot Processing**
**PO Box 90100**
**Los Angeles, CA 90009**

**IF YOU WOULD LIKE TO RETURN A PAPER COPY OF THIS BALLOT BY OVERNIGHT COURIER OR HAND DELIVERY (INSTEAD OF SUBMITTING YOUR BALLOT ONLINE), PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY BY OVERNIGHT COURIER OR HAND DELIVERY TO:**

**BMC Group**
**Attn: Stream TV Ballot Processing**
**3732 West 120th Street**
**Hawthorne, CA 90250**

| |
|---|
| THE CLAIMS AGENT MUST ***ACTUALLY RECEIVE*** THIS BALLOT ON OR BEFORE **OCTOBER 6, 2026** (IF THE VOTING DEADLINE IS NOT EXTENDED). |

**YOU MAY ALSO SUBMIT YOUR BALLOT ONLINE VIA THE VOTING AGENT'S E-BALLOT PLATFORM IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

To submit your Ballot via the Claims Agent's online portal, please visit https://ballots.bmcgroup.com/streamtv, and follow the instructions to submit your Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

Unique eBallot ID#: «UserName»

Unique eBallot Password: «Password»

The Claims Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each eBallot ID# is to be used solely for voting only those Claims described in your electronic Ballot. Please complete and submit an electronic Ballot for each eBallot ID# you receive, as applicable.

Creditors who cast a Ballot using the Voting Agent's online portal should NOT also submit a paper Ballot.

**If you have any questions, please contact the Voting Agent at: Telephone: (888) 909-0100 or, if calling from outside the United States or Canada, at (310) 321-5555; or emailing streamtv@bmcgroup.com.**

**BALLOTS SENT BY FACSIMILE, TELECOPY, OR E-MAIL WILL NOT BE ACCEPTED.**

«IM_Barcode_BMC»

«» «BarCode»

«MailLabels»

# Stream TV Networks

**Total number of parties: 365**

## Exhibit A - Stream TV Networks

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82798 | ADEPT CHIP SERVICE PRIVATE LTD., A. TIRUMALA KUMAR, SITE#86 1ST FLR LRDI LAYOUT KARTHIK, NAGAR, FVLARATHAHALLI OUTER RING, BENGALURU, 560037 INDIA | **US Mail (1st Class)** |
| 82789 | AKERMAN LLP, DONALD N. DAVID, (RE: VISUAL SEMICONDUCTOR, INC.), 1251 AVENUE OF THE AMERICAS, 37TH FLOOR, NEW YORK, NY, 10020, DONALD.DAVID@AKERMAN.COM | **E-mail** |
| 82789 | AKERMAN LLP, DONALD N. DAVID, (RE: VISUAL SEMICONDUCTOR, INC.), 1251 AVENUE OF THE AMERICAS, 37TH FLOOR, NEW YORK, NY, 10020, MARK.LICHTENSTEIN@AKERMAN.COM | **E-mail** |
| 82798 | AKERMAN LLP, DONALD N. DAVID, (RE: VISUAL SEMICONDUCTOR, INC.), 1251 AVENUE OF THE AMERICAS, 37TH FLOOR, NEW YORK, NY, 10020 | **US Mail (1st Class)** |
| 82789 | AKERMAN LLP, JOHN H. THOMPSON, (RE: VISUAL SEMICONDUCTOR, INC.), 750 NINTH STREET, N.W.,, SUITE 750, WASHINGTON, DC, 20001, JOHN.THOMPSON@AKERMAN.COM | **E-mail** |
| 82798 | AKERMAN LLP, JOHN H. THOMPSON, (RE: VISUAL SEMICONDUCTOR, INC.), 750 NINTH STREET, N.W.,, SUITE 750, WASHINGTON, DC, 20001 | **US Mail (1st Class)** |
| 82789 | AKERMAN, LLP, R. ADAM SWICK, (RE: VISUAL SEMICONDUCTOR, INC.), 500 W. 5TH STREET,, SUITE 1210, AUSTIN, TX, 78701, ADAM.SWICK@AKERMAN.COM | **E-mail** |
| 82798 | AKERMAN, LLP, R. ADAM SWICK, (RE: VISUAL SEMICONDUCTOR, INC.), 500 W. 5TH STREET,, SUITE 1210, AUSTIN, TX, 78701 | **US Mail (1st Class)** |
| 82789 | ARASAN CHIP SYSTEMS, INC., VINOD NICHANI, PRINCIPAL, 2150 NORTH FIRST, STREET, SUITE 240, SAN JOSE, CA, 95131, VINOD@NICHANILAWFIRM.COM | **E-mail** |
| 82789 | BALLARD SPAHR LLP, TMDALUZ;TMGRUGAN;EMVASSALLO;MAVESPR, (RE: SHADRON L. STASTNEY), 1735 MARKET STREET, 51ST FLOOR, PHILADELPHIA, PA, 19103-759, VESPERM@BALLARDSPAHR.COM | **E-mail** |
| 82789 | BALLARD SPAHR LLP, TMDALUZ;TMGRUGAN;EMVASSALLO;MAVESPR, (RE: SHADRON L. STASTNEY), 1735 MARKET STREET, 51ST FLOOR, PHILADELPHIA, PA, 19103-759, MCKEEVASSALLOE@BALLARDSPAHR.COM | **E-mail** |
| 82789 | BALLARD SPAHR LLP, TMDALUZ;TMGRUGAN;EMVASSALLO;MAVESPR, (RE: SHADRON L. STASTNEY), 1735 MARKET STREET, 51ST FLOOR, PHILADELPHIA, PA, 19103-759, GRUGANT@BALLARDSPAHR.COM | **E-mail** |
| 82789 | BALLARD SPAHR LLP, TMDALUZ;TMGRUGAN;EMVASSALLO;MAVESPR, (RE: SHADRON L. STASTNEY), 1735 MARKET STREET, 51ST FLOOR, PHILADELPHIA, PA, 19103-759, DALUZT@BALLARDSPAHR.COM | **E-mail** |
| 82798 | BALLARD SPAHR LLP, TMDALUZ;TMGRUGAN;EMVASSALLO;MAVESPR, (RE: SHADRON L. STASTNEY), 1735 MARKET STREET, 51ST FLOOR, PHILADELPHIA, PA, 19103-759 | **US Mail (1st Class)** |
| 82789 | BENESCH,FRIEDLANDER,COPLAN &ARONOFF, JAMES E. VON DER HEYDT, (RE: IMG MEDIA LMTD & TRANS WORLD INT`L), 127 PUBLIC SQUARE, SUITE 4900, CLEVELAND, OH, 44114-1284, JVONDERHEYDT@BENESCHLAW.COM | **E-mail** |
| 82798 | BENESCH,FRIEDLANDER,COPLAN &ARONOFF, JAMES E. VON DER HEYDT, (RE: IMG MEDIA LMTD & TRANS WORLD INT'L), 127 PUBLIC SQUARE, SUITE 4900, CLEVELAND, OH, 44114-1284 | **US Mail (1st Class)** |
| 82789 | BENESCH,FRIEDLANDER,COPLAN&ARONOFF, JENNIFER R. HOOVER, (RE: IMG MEDIA LMTD & TRANS WORLD INT`L), 1313 N. MARKET STREET, SUITE 1201, WILMINGTON, DE, 19801, JHOOVER@BENESCHLAW.COM | **E-mail** |
| 82798 | BENESCH,FRIEDLANDER,COPLAN&ARONOFF, JENNIFER R. HOOVER, (RE: IMG MEDIA LMTD & TRANS WORLD INT'L), 1313 N. MARKET STREET, SUITE 1201, WILMINGTON, DE, 19801 | **US Mail (1st Class)** |
| 82789 | BROWN & MICHAELS, PC, (RE: REMBRANDT 3D HOLDING LTD), 4TH FLOOR - M&T BANK BUILDING, 118 NORTH TIOGA STREET, ITHACA, NY, 14850, MICHAELS@BPMLEGAL.COM | **E-mail** |
| 82798 | BROWN & MICHAELS, PC, (RE: REMBRANDT 3D HOLDING LTD), 4TH FLOOR - M&T BANK BUILDING, 118 NORTH TIOGA STREET, ITHACA, NY, 14850 | **US Mail (1st Class)** |
| 82789 | CADENCE DESIGN SYSTEMS, INC., WENDY LUJAN-CAVIN, 2655 SEELY AVENUE, SAN JOSE, CA, 95134, WENDY@CADENCE.COM | **E-mail** |
| 82798 | CIPHER DEVELOPMENT PARTNERS, LLC, 1381 MCCARTHY BLVD, MILPITAS, CA, 95035 | **US Mail (1st Class)** |
| 82789 | COREN & RESS, P.C., ANDREW J. BELLI & STEVEN M. COREN, (RE: SPECIAL COUNSEL TO WILLIAM A HOMONY), TWO COMMERCE SQUARE, 2001 MARKET STREET, SUITE 3900, PHILADELPHIA, PA, 19103, ABELLI@KCR-LAW.COM | **E-mail** |

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82789 | COREN & RESS, P.C., ANDREW J. BELLI & STEVEN M. COREN, (RE: SPECIAL COUNSEL TO WILLIAM A HOMONY), TWO COMMERCE SQUARE, 2001 MARKET STREET, SUITE 3900, PHILADELPHIA, PA, 19103, SCOREN@KCR-LAW.COM | E-mail |
| 82798 | COREN & RESS, P.C., ANDREW J. BELLI & STEVEN M. COREN, (RE: SPECIAL COUNSEL TO WILLIAM A HOMONY), TWO COMMERCE SQUARE, 2001 MARKET STREET, SUITE 3900, PHILADELPHIA, PA, 19103 | US Mail (1st Class) |
| 82789 | COREN & RESS, P.C., STEVEN M. COREN, (RE: INNOVENTURES AND MEDIATAINMENT), 2001 MARKET STREET, TWO COMMERCE SQUARE, SUITE 3900, PHILADELPHIA, PA, 19103, SCOREN@KCR-LAW.COM | E-mail |
| 82798 | COREN & RESS, P.C., STEVEN M. COREN, (RE: INNOVENTURES AND MEDIATAINMENT), 2001 MARKET STREET, TWO COMMERCE SQUARE, SUITE 3900, PHILADELPHIA, PA, 19103 | US Mail (1st Class) |
| 82789 | COREN & RESS, PC, ANDREW J. BELLI, (RE: INNOVENTURES AND MEDIATAINMENT), 2001 MARKET STREET,, SUITE 3900, PHILADELPHIA, PA, 19103, ABELLI@KCR-LAW.COM | E-mail |
| 82798 | COREN & RESS, PC, ANDREW J. BELLI, (RE: INNOVENTURES AND MEDIATAINMENT), 2001 MARKET STREET,, SUITE 3900, PHILADELPHIA, PA, 19103 | US Mail (1st Class) |
| 82789 | DANIEL JOSEPH RINK, ESQUIRE, (RE: VISUAL SEMICONDUCTOR, INC.), 1017 E. 28TH STREET, HOUSTON, TX, 77009, DAN.RINK@VISUALSEMI.COM | E-mail |
| 82798 | DANIEL JOSEPH RINK, ESQUIRE, (RE: VISUAL SEMICONDUCTOR, INC.), 1017 E. 28TH STREET, HOUSTON, TX, 77009 | US Mail (1st Class) |
| 82798 | DELL FINANCIAL SERVICES, MAIL STOP-PS2DF-23, ONE DELL WAY, ROUND ROCK, TX, 78682 | US Mail (1st Class) |
| 82798 | DEPARTMENT OF LABOR & INDUSTRY, OFFICE OF CHIEF COUNSEL, 10THFL,LABOR&INDSTRY BLDG,651BOASST, HARRISBURG, PA, 17121-0751 | US Mail (1st Class) |
| 82798 | DEPARTMENT OF LABOR AND INDUSTRY, OFFICE OF CHIEF COUNSEL, 444 NORTH THIRD STREET, SUITE 200, PHILADELPHIA, PA, 19123 | US Mail (1st Class) |
| 82789 | DEVLIN LAW FIRM, LLC, ANDREW DEMARCO, (RE: REMBRANDT 3D HOLDING LTD.), 1526 GILPIN AVENUE, WILMINGTON, DE, 19806, ADEMARCO@DEVLINLAWFIRM.COM | E-mail |
| 82789 | DEVLIN LAW FIRM, LLC, ANDREW DEMARCO, (RE: REMBRANDT 3D HOLDING LTD.), 1526 GILPIN AVENUE, WILMINGTON, DE, 19806, DLFLITPARAS@DEVLINLAWFIRM.COM | E-mail |
| 82798 | DLA PIPER LLP(US), 6225 SMITH AVENUE, BALTIMORE, MD, 21209-3600 | US Mail (1st Class) |
| 82789 | DOJ-UST, KEVIN P CALLAHAN;JOHN HENRY SCHANNE, ROBERT N.C. NIX FEDERAL BUILDING, 900 MARKET STREET, SUITE 320, PHILADELPHIA, PA, 19107, USTPREGION03.PH.ECF@USDOJ.GOV | E-mail |
| 82789 | DOJ-UST, KEVIN P CALLAHAN;JOHN HENRY SCHANNE, ROBERT N.C. NIX FEDERAL BUILDING, 900 MARKET STREET, SUITE 320, PHILADELPHIA, PA, 19107, JOHN.SCHANNE@USDOJ.GOV | E-mail |
| 82798 | DOJ-UST, KEVIN P CALLAHAN;JOHN HENRY SCHANNE, ROBERT N.C. NIX FEDERAL BUILDING, 900 MARKET STREET, SUITE 320, PHILADELPHIA, PA, 19107 | US Mail (1st Class) |
| 82798 | HAWK INVESTMENT HOLDINGS LIMITED, NEWPORT HOUSE, 15, THE GRANGE, ST PETER PORT, GUERNSEY, GY1 2QL CHANNEL ISLANDS | US Mail (1st Class) |
| 82789 | HOLD JUMPER(SUZHOU)PACKING CO. LTD., DAVID LEE, NO. 1, XIANG STREET, HIGH-TECH DISTRICT SUZHOU, CHINA, SUZHOUSJG@163.COM | E-mail |
| 82789 | HOLD JUMPER(SUZHOU)PACKING CO. LTD., DAVID LEE, NO. 1, XIANG STREET, HIGH-TECH DISTRICT SUZHOU, CHINA, DAVID@HJ-PACKING.COM | E-mail |
| 82798 | HOLD JUMPER(SUZHOU)PACKING CO. LTD., DAVID LEE, NO. 1, XIANG STREET, HIGH-TECH DISTRICT SUZHOU, CHINA | US Mail (1st Class) |
| 82798 | IINUMA GAUGE MFG CO., LTD (JPY), 11400-327, HARAYAMA, TAMAGAWA CHINO-CITY, NAGANO, 391-0011 JAPAN | US Mail (1st Class) |
| 82789 | IMG MEDIA LTD, BUILDING 6, CHISWICK PARK, 566 CHISWICK HIGH ROAD, LONDON, ENGLAND, W4 5HR UNITED KINGDOM, MEDIA.AR@IMG.COM | E-mail |
| 82798 | IMG MEDIA LTD, BUILDING 6, CHISWICK PARK, 566 CHISWICK HIGH ROAD, LONDON, ENGLAND, W4 5HR UNITED KINGDOM | US Mail (1st Class) |
| 82789 | INNOVENTURES GROUP LLC, 1105 WILLIAM PENN DRIVE, BENSALEM, PA, 19020, INNOVENTURESGROUPLLC@GMAIL.COM | E-mail |
| 82798 | INNOVENTURES GROUP LLC, 1105 WILLIAM PENN DRIVE, BENSALEM, PA, 19020 | US Mail (1st Class) |
| 82798 | INTERNAL REVENUE SERVICE, CENTRALIZED INSOLVENCY OPERATION, PO BOX 7346, PHILADELPHIA, PA, 19101-7346 | US Mail (1st Class) |
| 82798 | JAMUNA TRAVELS, INC, REJI ABRAHAM, 6439 MARKET ST, UPPER DARBY, PA, 19082 | US Mail (1st Class) |

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82789 | K&L GATES LLP, MARGARET WESTBROOK; AARON ROTHMAN, (RE: HAWK INVESTMENT HOLDINGS LTD), JONATHAN N. EDEL, 300 SOUTH TRYON STREET, SUITE 1000, CHARLOTTE, NC, 28202, MARGARET.WESTBROOK@KLGATES.COM | E-mail |
| 82789 | K&L GATES LLP, MARGARET WESTBROOK; AARON ROTHMAN, (RE: HAWK INVESTMENT HOLDINGS LTD), JONATHAN N. EDEL, 300 SOUTH TRYON STREET, SUITE 1000, CHARLOTTE, NC, 28202, AARON.ROTHMAN@KLGATES.COM | E-mail |
| 82789 | K&L GATES LLP, MARGARET WESTBROOK; AARON ROTHMAN, (RE: HAWK INVESTMENT HOLDINGS LTD), JONATHAN N. EDEL, 300 SOUTH TRYON STREET, SUITE 1000, CHARLOTTE, NC, 28202, JON.EDEL@KLGATES.COM | E-mail |
| 82798 | K&L GATES LLP, MARGARET WESTBROOK; AARON ROTHMAN, (RE: HAWK INVESTMENT HOLDINGS LTD), JONATHAN N. EDEL, 300 SOUTH TRYON STREET, SUITE 1000, CHARLOTTE, NC, 28202 | US Mail (1st Class) |
| 82789 | K&L GATES LLP, STEVEN L. CAPONI; MEGAN E. O'CONNOR, (RE: HAWK INVESTMENT HOLDINGS LTD.), 600 KING STREET, SUITE 901, WILMINGTON, DE, 19801, STEVEN.CAPONI@KLGATES.COM | E-mail |
| 82798 | K&L GATES LLP, STEVEN L. CAPONI; MEGAN E. O'CONNOR, (RE: HAWK INVESTMENT HOLDINGS LTD.), 600 KING STREET, SUITE 901, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82789 | K&L GATES LLP, THOMAS A. WARNS, (RE: HAWK INVESTMENT HOLDINGS LTD), 599 LEXINGTON AVENUE, NEW YORK, NY, 10022, TOM.WARNS@KLGATES.COM | E-mail |
| 82798 | K&L GATES LLP, THOMAS A. WARNS, (RE: HAWK INVESTMENT HOLDINGS LTD), 599 LEXINGTON AVENUE, NEW YORK, NY, 10022 | US Mail (1st Class) |
| 82789 | KURTZMAN \| STEADY, LLC, JEFFREY KURTZMAN, ESQUIRE, (RE: SSG ADVISORS, LLC), 101 N. WASHINGTON AVENUE,, SUITE 4A, MARGATE, NJ, 08403, KURTZMAN@KURTZMANSTEADY.COM | E-mail |
| 82798 | KURTZMAN \| STEADY, LLC, JEFFREY KURTZMAN, ESQUIRE, (RE: SSG ADVISORS, LLC), 101 N. WASHINGTON AVENUE,, SUITE 4A, MARGATE, NJ, 08403 | US Mail (1st Class) |
| 82798 | LARSON AND ZIRZOW, LLC, MATTHEW C. ZIRZOW, (RE: VISUAL TECHNOLOGY INNOVATIONS, INC.), 850 E. BONNEVILLE AVE., LAS VEGAS, NV, 89101 | US Mail (1st Class) |
| 82798 | LAW OFFICE OF MICHAEL SCHWARTZ, MICHAEL SETH SCHWARTZ, (RE: MATHU RAJAN), 707 LAKESIDE OFFICE PARK, SOUTHAMPTON, PA, 18966 | US Mail (1st Class) |
| 82789 | LEIF M. CLARK CONSULTING, PLLC, LEIF M. CLARK, (RE: VISUAL SEMICONDUCTOR), 1105 BONNER, HOUSTON, TX, 77007, LMCLARK@LEIFMCLARK.COM | E-mail |
| 82798 | LEIF M. CLARK CONSULTING, PLLC, LEIF M. CLARK, (RE: VISUAL SEMICONDUCTOR), 1105 BONNER, HOUSTON, TX, 77007 | US Mail (1st Class) |
| 82789 | LEWIS BRISBOIS BISGAARD & SMITH LLP, BENNETT G. FISHER & JANN PIGG, 24 GREENWAY PLAZA, SUITE 1400, HOUSTON, TX, 77046, BENNETT.FISHER@LEWISBRISBOIS.COM | E-mail |
| 82789 | LEWIS BRISBOIS BISGAARD & SMITH LLP, BENNETT G. FISHER & JANN PIGG, 24 GREENWAY PLAZA, SUITE 1400, HOUSTON, TX, 77046, JANN.PIGG@LEWISBRISBOIS.COM | E-mail |
| 82798 | LEWIS BRISBOIS BISGAARD & SMITH LLP, BENNETT G. FISHER & JANN PIGG, 24 GREENWAY PLAZA, SUITE 1400, HOUSTON, TX, 77046 | US Mail (1st Class) |
| 82789 | LEWIS BRISBOIS BISGAARD & SMITH LLP, JONATHAN PREZIOSI, (RE: LEWIS BRISBOIS BISGAARD & SMITH LLP), ONE RIVERFRONT PLAZA, SUITE 800, NEWARK, NJ, 07102, JONATHAN.PREZIOSI@LEWISBRISBOIS.COM | E-mail |
| 82798 | LEWIS BRISBOIS BISGAARD & SMITH LLP, JONATHAN PREZIOSI, (RE: LEWIS BRISBOIS BISGAARD & SMITH LLP), ONE RIVERFRONT PLAZA, SUITE 800, NEWARK, NJ, 07102 | US Mail (1st Class) |
| 82789 | LEWIS BRISBOIS BISGAARD & SMITH LLP, RAFAEL X. ZAHRALDDIN-ARAVENA, 550 E. SWEDESFORD ROAD, SUITE 270, WAYNE, PA, 19087, RAFAEL.ZAHRALDDIN@LEWISBRISBOIS.COM | E-mail |
| 82798 | LEWIS BRISBOIS BISGAARD & SMITH LLP, RAFAEL X. ZAHRALDDIN-ARAVENA, 550 E. SWEDESFORD ROAD, SUITE 270, WAYNE, PA, 19087 | US Mail (1st Class) |
| 82789 | LEWIS BRISBOIS BISGAARD & SMITH LLP, SEAN M. BRENNECKE, 500 DELAWARE AVENUE, SUITE 700, WILMINGTON, DE, 19801, SEAN.BRENNECKE@LEWISBRISBOIS.COM | E-mail |
| 82798 | LEWIS BRISBOIS BISGAARD & SMITH LLP, SEAN M. BRENNECKE, 500 DELAWARE AVENUE, SUITE 700, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82789 | LEWIS BRISBOIS BISGAARD & SMITH,LLP, SCOTT D. COUSINS, 500 DELAWARE AVENUE,, SUITE 700, WILMINGTON, DE, 19801, SCOTT.COUSINS@LEWISBRISBOIS.COM | E-mail |
| 82798 | LEWIS BRISBOIS BISGAARD & SMITH,LLP, SCOTT D. COUSINS, 500 DELAWARE AVENUE,, SUITE 700, WILMINGTON, DE, 19801 | US Mail (1st Class) |

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82798 | MAK ROUGHLEY, APT 11, OLD COURT HOUSE, LA RUE A DON GROUVILLE, JERSEY, JE39FS CHANNEL ISLANDS | US Mail (1st Class) |
| 82789 | MARCUM LLP, ILYSSA K. BLUM, CPA, ONE SE THIRD AVE,, SUITE 1100, MIAMI, FL, 33131, ILYSSA.BLUM@MARCUMLLP.COM | E-mail |
| 82798 | MARCUM LLP, ILYSSA K. BLUM, CPA, ONE SE THIRD AVE,, SUITE 1100, MIAMI, FL, 33131 | US Mail (1st Class) |
| 82798 | MATHU RAJAN, 1615 EASTFORD AVE, DUARTE, CA, 91010-2823 | US Mail (1st Class) |
| 82798 | MATREX EXHIBITS, INC., JONATHAN ANISZEWSKI, 301 S. CHURCH ST., ADDISON, IL, 60101 | US Mail (1st Class) |
| 82789 | MILLER COFFEY TATE LLP, MATTHEW R. TOMLIN; WILLIAM A HOMONY, (RE: CH 11 TRUSTEE), 1628 JOHN F. KENNEDY BLVD, STE 950, PHILADELPHIA, PA, 19103, BHOMONY@MCTLLP.COM | E-mail |
| 82789 | MILLER COFFEY TATE LLP, MATTHEW R. TOMLIN; WILLIAM A HOMONY, (RE: CH 11 TRUSTEE), 1628 JOHN F. KENNEDY BLVD, STE 950, PHILADELPHIA, PA, 19103, MTOMLIN@MCTLLP.COM | E-mail |
| 82798 | MILLER COFFEY TATE LLP, MATTHEW R. TOMLIN; WILLIAM A HOMONY, (RE: CH 11 TRUSTEE), 1628 JOHN F. KENNEDY BLVD, STE 950, PHILADELPHIA, PA, 19103 | US Mail (1st Class) |
| 82789 | OBERMAYER REBMANN MAXWELL&HIPPELLLP, M VAGNONI;K SHERONAS;W SALDUTTI, (RE: CH 11 TRUSTEE), CENTRE SQUARE WEST, 1500 MARKET ST, SUITE 3400, PHILADELPHIA, PA, 19102-2101, MICHAEL.VAGNONI@OBERMAYER.COM | E-mail |
| 82789 | OBERMAYER REBMANN MAXWELL&HIPPELLLP, M VAGNONI;K SHERONAS;W SALDUTTI, (RE: CH 11 TRUSTEE), CENTRE SQUARE WEST, 1500 MARKET ST, SUITE 3400, PHILADELPHIA, PA, 19102-2101, KELSEY.SHERONAS@OBERMAYER.COM | E-mail |
| 82789 | OBERMAYER REBMANN MAXWELL&HIPPELLLP, M VAGNONI;K SHERONAS;W SALDUTTI, (RE: CH 11 TRUSTEE), CENTRE SQUARE WEST, 1500 MARKET ST, SUITE 3400, PHILADELPHIA, PA, 19102-2101, WILLIAM.SALDUTTI@OBERMAYER.COM | E-mail |
| 82798 | OBERMAYER REBMANN MAXWELL&HIPPELLLP, M VAGNONI;K SHERONAS;W SALDUTTI, (RE: CH 11 TRUSTEE), CENTRE SQUARE WEST, 1500 MARKET ST, SUITE 3400, PHILADELPHIA, PA, 19102-2101 | US Mail (1st Class) |
| 82789 | OBERMAYER REBMANNMAXWELL&HIPPEL,LLP, EDMOND M. GEORGE;MICHAEL D. VAGNONI, (RE: INNOVENTURES AND MEDIATAINMENT), CENTRE SQUARE WEST, 1500 MARKET STREET, SUITE 3400, PHILADELPHIA, PA, 19102, EDMOND.GEORGE@OBERMAYER.COM | E-mail |
| 82789 | OBERMAYER REBMANNMAXWELL&HIPPEL,LLP, EDMOND M. GEORGE;MICHAEL D. VAGNONI, (RE: INNOVENTURES AND MEDIATAINMENT), CENTRE SQUARE WEST, 1500 MARKET STREET, SUITE 3400, PHILADELPHIA, PA, 19102, MICHAEL.VAGNONI@OBERMAYER.COM | E-mail |
| 82798 | OBERMAYER REBMANNMAXWELL&HIPPEL,LLP, EDMOND M. GEORGE;MICHAEL D. VAGNONI, (RE: INNOVENTURES AND MEDIATAINMENT), CENTRE SQUARE WEST, 1500 MARKET STREET, SUITE 3400, PHILADELPHIA, PA, 19102 | US Mail (1st Class) |
| 82789 | PEGATRON CORPORATION, SAL LU, 5F., NO. 76, LIGONG, ST., BEITOU DISTRICT, TAIPEI CITY, 112 TAIWAN, SAL_LU@PEGATRONCORP.COM | E-mail |
| 82789 | PENNSYLVANIA DEPT OF LABOR, OFC OF UNEMPLOYMENT COMP TAX SRVCS, CLLCTONS SPT UNT 651 BOAS ST RM 925, HARRISBURG, PA, 17121, RA-LI-BETO-BANKREADING@STATE.PA.US | E-mail |
| 82798 | PENNSYLVANIA DEPT OF LABOR, OFC OF UNEMPLOYMENT COMP TAX SRVCS, CLLCTONS SPT UNT 651 BOAS ST RM 925, HARRISBURG, PA, 17121 | US Mail (1st Class) |
| 82798 | PENNSYLVANIA DEPT OF REVENUE, BANKRUPTCY DIVISION, DEPT 280946, HARRISBURG, PA, 17128-0946 | US Mail (1st Class) |
| 82798 | PHILADELPHIA DEPARTMENT OF REVENUE, MUNICIPAL SERVICES BUILDING, 1401 JOHN F. KENNEDY BLVD., PHILADELPHIA, PA, 19102 | US Mail (1st Class) |
| 82789 | RAJA RAJAN, 5215 BISHOP VIEW CIRCLE, CHERRY HILL, NJ, 08002, RAJA@ADVISORY-CAPITAL-SOLUTIONS.COM | E-mail |
| 82798 | RAJA RAJAN, 5215 BISHOP VIEW CIRCLE, CHERRY HILL, NJ, 08002 | US Mail (1st Class) |
| 82789 | REMBRANDT 3D HOLDING LTD., STEPHEN BLUMENTHAL, 128 BULL HILL ROAD, NEWFIELD, NY, 14867, STEPHEN3D@MAC.COM | E-mail |
| 82798 | REMBRANDT 3D HOLDING LTD., STEPHEN BLUMENTHAL, 128 BULL HILL ROAD, NEWFIELD, NY, 14867 | US Mail (1st Class) |
| 82789 | ROBINSON & COLE LLP, D L WRIGHT;K M FIX;R M MESSINA, (RE: SLS HOLDINGS VI, LLC), 1650 MARKET STREET, SUITE 3030, PHILADELPHIA, PA, 19103, RMESSINA@RC.COM | E-mail |
| 82789 | ROBINSON & COLE LLP, D L WRIGHT;K M FIX;R M MESSINA, (RE: SLS HOLDINGS VI, LLC), 1650 MARKET STREET, SUITE 3030, PHILADELPHIA, PA, 19103, DWRIGHT@RC.COM | E-mail |
| 82789 | ROBINSON & COLE LLP, D L WRIGHT;K M FIX;R M MESSINA, (RE: SLS HOLDINGS VI, LLC), 1650 MARKET STREET, SUITE 3030, PHILADELPHIA, PA, 19103, KFIX@RC.COM | E-mail |

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82798 | ROBINSON & COLE LLP, D L WRIGHT;K M FIX;R M MESSINA, (RE: SLS HOLDINGS VI, LLC), 1650 MARKET STREET, SUITE 3030, PHILADELPHIA, PA, 19103 | US Mail (1st Class) |
| 82789 | SECURITIES & EXCHANGE COMMISSION, NICHOLAS P. GRIPPO, REGIONAL DIR, ONE PENN CENTER, 1617 JOHN F. KENNEDY BLVD, STE 520, PHILADELPHIA, PA, 19103, PHILADELPHIA@SEC.GOV | E-mail |
| 82798 | SECURITIES & EXCHANGE COMMISSION, NICHOLAS P. GRIPPO, REGIONAL DIR, ONE PENN CENTER, 1617 JOHN F. KENNEDY BLVD, STE 520, PHILADELPHIA, PA, 19103 | US Mail (1st Class) |
| 82798 | SKADDEN,ARPS,SLATE,MEAGHER&FLOM LLP, ALYSSA RUSSELL, ESQUIRE, (RE: SEECUBIC, INC.), 320 SOUTH CANAL STREET, CHICAGO, IL, 60606-5707 | US Mail (1st Class) |
| 82789 | SKADDEN,ARPS,SLATE,MEAGHER&FLOM LLP, EBEN P. COLBY; MARLEY ANN BRUMME, (RE: SEECUBIC, INC), 500 BOYLSTON STREET, 23RD FLOOR, BOSTON, MA, 02116, EBEN.COLBY@SKADDEN.COM | E-mail |
| 82789 | SKADDEN,ARPS,SLATE,MEAGHER&FLOM LLP, EBEN P. COLBY; MARLEY ANN BRUMME, (RE: SEECUBIC, INC), 500 BOYLSTON STREET, 23RD FLOOR, BOSTON, MA, 02116, MARLEY.BRUMME@SKADDEN.COM | E-mail |
| 82798 | SKADDEN,ARPS,SLATE,MEAGHER&FLOM LLP, EBEN P. COLBY; MARLEY ANN BRUMME, (RE: SEECUBIC, INC), 500 BOYLSTON STREET, 23RD FLOOR, BOSTON, MA, 02116 | US Mail (1st Class) |
| 82789 | SKADDEN,ARPS,SLATE,MEAGHER&FLOM LLP, JAMES J MAZZA JR; JUSTIN M WINERMAN, (RE: SEECUBIC, INC), REBECCA L. RITCHIE, 155 N. WACKER DRIVE, CHICAGO, IL, 60606-1720, JAMES.MAZZA@SKADDEN.COM | E-mail |
| 82789 | SKADDEN,ARPS,SLATE,MEAGHER&FLOM LLP, JAMES J MAZZA JR; JUSTIN M WINERMAN, (RE: SEECUBIC, INC), REBECCA L. RITCHIE, 155 N. WACKER DRIVE, CHICAGO, IL, 60606-1720, JUSTIN.WINERMAN@SKADDEN.COM | E-mail |
| 82798 | SKADDEN,ARPS,SLATE,MEAGHER&FLOM LLP, JAMES J MAZZA JR; JUSTIN M WINERMAN, (RE: SEECUBIC, INC), REBECCA L. RITCHIE, 155 N. WACKER DRIVE, CHICAGO, IL, 60606-1720 | US Mail (1st Class) |
| 82789 | SKADDEN,ARPS,SLATE,MEAGHER&FLOM LLP, JOSEPH O. LARKIN, ESQ., (RE: SEECUBIC, INC), ONE RODNEY SQUARE, 920 N. KING ST, WILMINGTON, DE, 19801, JOSEPH.LARKIN@SKADDEN.COM | E-mail |
| 82798 | SKADDEN,ARPS,SLATE,MEAGHER&FLOM LLP, JOSEPH O. LARKIN, ESQ., (RE: SEECUBIC, INC), ONE RODNEY SQUARE, 920 N. KING ST, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82798 | SLS HOLDINGS VI, LLC, 392 TAYLOR MILLS ROAD, MARLBORO, NJ, 07746 | US Mail (1st Class) |
| 82789 | ST4M ELECTRONICS, INC., WANGLING, BEIJING OFFICE RM 1102, BLDG 313, HUI ZHONG BEI LI, CHAOYANG DISTRICT, BEIJING, CHINA, MATTJJLO@GMAIL.COM | E-mail |
| 82798 | ST4M ELECTRONICS, INC., WANGLING, BEIJING OFFICE RM 1102, BLDG 313, HUI ZHONG BEI LI, CHAOYANG DISTRICT, BEIJING, CHINA | US Mail (1st Class) |
| 82789 | STARK & STARK, PC, JOSEPH H. LEMKIN, (RE: VISUAL SEMICONDUCTOR, INC.), 100 AMERICAN METRO BLVD., HAMILTON, NJ, 08619, MKIZNER@STARK-STARK.COM | E-mail |
| 82798 | STARK & STARK, PC, JOSEPH H. LEMKIN, (RE: VISUAL SEMICONDUCTOR, INC.), 100 AMERICAN METRO BLVD., HAMILTON, NJ, 08619 | US Mail (1st Class) |
| 82798 | STATE OF CA EMPLOYMENT DEV DEPT, PO BOX 826880, DICO, MIC 29DICO, MIC 29, SACRAMENTO, CA, 94280 | US Mail (1st Class) |
| 82789 | THE CITY OF PHILADELPHIA, PAMELA ELCHERT THURMOND, (RE: CITY OF PA & WATER REVENUE BUREAU), MUNICIPAL SERVICES BUILDING, 1401 JFK BOULEVARD, 5TH FLOOR, PHILADELPHIA, PA, 19102-1595, PAMELA.THURMOND@PHILA.GOV | E-mail |
| 82798 | THE CITY OF PHILADELPHIA, PAMELA ELCHERT THURMOND, (RE: CITY OF PA & WATER REVENUE BUREAU), MUNICIPAL SERVICES BUILDING, 1401 JFK BOULEVARD, 5TH FLOOR, PHILADELPHIA, PA, 19102-1595 | US Mail (1st Class) |
| 82789 | TRANS WORLD INTERNATIONAL, LLC, 200 FIFTH AVE, 7TH FLOOR, NEW YORK, NY, 10010, MEDIAAR@IMG.COM | E-mail |
| 82798 | TRANS WORLD INTERNATIONAL, LLC, 200 FIFTH AVE, 7TH FLOOR, NEW YORK, NY, 10010 | US Mail (1st Class) |
| 82789 | TRIPLE CROWN CONSULTING, LLC, 10814 JOLLYVILLE RD,, SUITE 100, AUSTIN, TX, 78759-0000, AR@TRIPLECO.COM | E-mail |
| 82789 | US COMPLIANCE SERVICES LLC, 199 NORTH WOODBURY, ROAD SUITE # 103, PITMAN, NJ, 08071, MMASSIMI@DHGLOBALTAX.COM | E-mail |
| 82789 | VAYIKRA CAPITAL LLC, 1 FARMSTEAD ROAD, SHORT HILLS, NJ, 07078, PHIL@DARIVOFF.NET | E-mail |
| 82798 | VISUAL TECHNOLOGY INNOVATIONS, INC., 1105 WILLIAM PENN DR., BENSALEM, PA, 19020 | US Mail (1st Class) |
| 82798 | WILSON SONSINI GOODRICH & ROSATI PC, ERIN R. FAY;CATHERINE C. LYONS, (RE: COUNSEL FOR IAN R. LISTON), 222 DELAWARE AVENUE, SUITE 800, WILMINGTON, DE, 19801 | US Mail (1st Class) |

**Svc Lst Name and Address of Served Party** **Mode of Service**

**Subtotal for this group: 130**

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82788 | 3DETROIT FILM CO. LLC, 2385 N PINE CENTER ST, WEST BLOOMFIELD, MI, 48323 | US Mail (1st Class) |
| 82788 | ABU DHABI INVESTMENT COUNCIL, PO BOX 61999, ABU DHABI, UNITED ARAB EMIRATES | US Mail (1st Class) |
| 82788 | AC LORDI, 1801 MARKET ST STE 1700, PHILADELPHIA, PA, 19103-1634 | US Mail (1st Class) |
| 82788 | ADEPT CHIP SERVICE PRIVATE LIMITED, SITE NO.86, 1ST FLOOR, LRDI LAYOUT, KARTHIKNAGAR,FVLARATHAHALLI OUTERRING RD, BENGALURU, 560037 INDIA | US Mail (1st Class) |
| 82788 | ADRIAN & ROTH PERSONALBERATUNG GMBH, TENGSTRAßE 45, MUNCHEN, 80796 GERMANY | US Mail (1st Class) |
| 82788 | ADVANCED IMAGING SOCIETY, 16027 VENTURA BLULEVARD, SUITE #301, ENCINO, CA, 91436 | US Mail (1st Class) |
| 82788 | ALBANY DIRECTORS LIMITED, (RE: HAWK INVESTMENT HOLDINGS LTD., AS COLLATERAL, ROSCO MAUNDER, PO BOX 232, NEWPORT HOUSE, 15 THE GRANGE, ST PETER PORT, GUERENSEY, GY1 4LA CHANNEL ISLANDS | US Mail (1st Class) |
| 82788 | ALLIANCE INTERNATIONAL LAW OFFICES, 7F -1, NO.58, SEC. 3, ZHONGSHAN N RD, ZHONGSHAN DIST., TAIPEI CITY, 10452 TAIWAN, REPUBLIC OF | US Mail (1st Class) |
| 82788 | ALVARTE TECHNOLOGY LLP, S NO29, PL52, OFFICE #201, BHAMA EMRALD, SATARA ROAD, DHANKAWADI, PUNE, MAHARASHTRA, 411043 | US Mail (1st Class) |
| 82788 | AON RISK SERVICES, INC. OF NEW YORK, 111 WALL STREET, NEW YORK, NY, 10043 | US Mail (1st Class) |
| 82788 | ARASAN CHIP SYSTEMS, INC., VINOD NICHANI, PRINCIPAL, 2150 N 1ST ST # 403, SAN JOSE, CA, 95131-2020 | US Mail (1st Class) |
| 82788 | ARIA RESORT-CASINO AT CTYCNTR, 4882 FRANK SINATRA DR, LAS VEGAS, NV, 89158 | US Mail (1st Class) |
| 82788 | AVNET EM, 2211 SOUTH 47TH STREET, PHOENIX, AZ, 85034 | US Mail (1st Class) |
| 82788 | AY COMMERCIAL LAW OFFICES C/O EY LEGAL, 9F, NO. 333, SEC. 1, KEELUNG ROAD, TAIPEI CITY, 11012 TAIWAN, REPUBLIC OF | US Mail (1st Class) |
| 82788 | BDO USA, LLP, 1801 MARKET ST STE 1200, PHILADELPHIA, PA, 19103-1601 | US Mail (1st Class) |
| 82788 | BLUE OCEAN PARTNERS, 100 QUEENS RD, CENTRAL, HONG KONG, CHINA | US Mail (1st Class) |
| 82788 | BRADFORD CAPITAL HOLDINGS, LP, (TRANSFEROR: JAMUNA TRAVELS, INC.), ATTN: BRIAN BRAGER, C/O BRADFORD CAPITAL MANAGEMENT, LLC, PO BOX 4353, CLIFTON, NJ, 07012 | US Mail (1st Class) |
| 82788 | BUBBLE COMMUNICATIONS, EAST SIDE COMPLEX - ROOM 555, PINEWD STUDIOS PINEWD RD BUCKINGHAMSHIRE, IVER HEATH, SL0 0NH UNITED KINGDOM | US Mail (1st Class) |
| 82788 | BUCHANAN INGERSOLL & ROONEY PC, 919 NORTH MARKET STREET, SUITE 1500, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82788 | CADENCE DESIGN SYSTEMS, INC., 2655 SEELY AVENUE, SAN JOSE, CA, 95134 | US Mail (1st Class) |
| 82788 | CALIFORNIA FRANCHISE TAX BOARD, BANKRUPTCY SECTION, MS: A-340, PO BOX 2952, SACRAMENTO, CA, 95812-2952 | US Mail (1st Class) |
| 82788 | CAPITAL ONE, PO BOX 71083, CHARLOTTE, NC, 28272-1083 | US Mail (1st Class) |
| 82788 | CAPITAL ONE-5, PO BOX 71083, CHARLOTTE, NC, 28272-1083 | US Mail (1st Class) |
| 82788 | CCH INCORPORATED (WOLTERS KLUWER), PO BOX 4307, CAROL STREAM, IN, 60197-4307 | US Mail (1st Class) |
| 82788 | CHE WEI CHANG, 327 CAMPHOR AVENUE, SAN JOSE, CA, 95131 | US Mail (1st Class) |
| 82788 | CIPHER DEVELOPMENT PARTNERS LLC, 1381 MCCARTHY BLVD, MILPITAS, CA, 95035 | US Mail (1st Class) |
| 82788 | CITI CARDS, PO BOX 9001037, LOUISVILLE, KY, 40290-1037 | US Mail (1st Class) |
| 82788 | CITTONE DEMERS & ARNERI LLP, 11 BROADWAY, SUITE 615, NEW YORK, NY, 10040 | US Mail (1st Class) |
| 82788 | CNA INSURANCE, PO BOX 790094, ST LOUIS, MO, 63179-0094 | US Mail (1st Class) |
| 82788 | CONCUR TECHNOLOGIES, INC., 62157 COLLECTIONS CENTER DRIVE, CHICAGO, IL, 60693 | US Mail (1st Class) |
| 82788 | CONFERENCE TECHNOLOGIES, INC., 11653 ADIE ROAD, MARYLAND HEIGHTS, MO, 63043 | US Mail (1st Class) |
| 82788 | CORAL VISION LTD, EASTON HOUSE, MANOR WAY, OXSHOTT, KT22 0HU UNITED KINGDOM | US Mail (1st Class) |
| 82788 | CORPORATE FILINGS, LLC, 30 NORTH GOULD STREET, SUITE 70001, SHERIDAN, WY, 82801 | US Mail (1st Class) |
| 82788 | COUSINS LAW, BRANDYWINE PLAZA WEST, 1521 CONCORD PIKE, SUITE 301, WILMINGTON, DE, 19803 | US Mail (1st Class) |
| 82788 | COVERALL NORTH AMERICA, INC., 2955 MOMENTUM PLACE, CHICAGO, IL, 60689 | US Mail (1st Class) |
| 82788 | CRYSLINK TECHNOLOGIES CO., LTD, COMPUTER VILLAGE, IKEJA, LAGOS, OTTA, NIGERIA | US Mail (1st Class) |
| 82788 | CT LIEN SOLUTIONS, PO BOX 301133, DALLAS, TX, 75303-1133 | US Mail (1st Class) |

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82788 | DEVLIN LAW FIRM, LLC, (RE: REMBRANDT 3D HOLDING, LTD), ANDREW DEMARCO, 1526 GILPIN AVENUE, WILMINGTON, DE, 19806 | US Mail (1st Class) |
| 82788 | DEZAN SHIRA & ASSOCIATES, SUITE EF06, EAST TOWER, TWIN TOWERS, B12, JIAN GUO MEN WAI AVENUE, BEIJING, 100022 CHINA | US Mail (1st Class) |
| 82788 | DIGITAL CONTENT PROTECTION LLC, 3855 SW 153RD DRIVE, BEAVERTON, OR, 97006 | US Mail (1st Class) |
| 82788 | DLA PIPER LLP(US), 650 S EXETER ST STE 1100, BALTIMORE, MD, 21202-4576 | US Mail (1st Class) |
| 82788 | DUNNER LAW PLLC, 3243 P STREET, N W, WASHINGTON, DC, 20007 | US Mail (1st Class) |
| 82788 | ELLIOTT GREENLEAF, 1105 NORTH MARKET STREET, 17TH FLOOR, WILMINGTON, DE, 19801-1216 | US Mail (1st Class) |
| 82788 | EMA DESIGN AUTOMATION, 225 PARK TECH DR, ROCHESTER, NY, 14623 | US Mail (1st Class) |
| 82788 | EME ENTERPRISE INC., 3470 DEPOT RD, HAYWARD, CA, 94545-2714 | US Mail (1st Class) |
| 82788 | ENDEAVOR, (RE: IMG MEDIA, LTD.), JOHN COOPER, VICE PRESIDENT, C/O ISABELLE MERCIER, 200 5TH AVE., NEW YORK, NY, 10010 | US Mail (1st Class) |
| 82788 | ENDEAVOR, (RE: TRANS WORLD INTERNATIONAL, LLC), JOHN COOPER, VICE PRESIDENT, C/O ISABELLE MERCIER, 200 5TH AVE., NEW YORK, NY, 10010 | US Mail (1st Class) |
| 82788 | ERIC SINGER, 200 E 71ST STR, NEW YORK, NY, 10021 | US Mail (1st Class) |
| 82788 | ESPN INC MISCELLANEOUS, PO BOX 732527, DALLAS, TX, 75373-2527 | US Mail (1st Class) |
| 82788 | FARRUKH SHAH KAHN, 1564 KOOSER ROAD, SAN JOSE, CA, 95118 | US Mail (1st Class) |
| 82788 | FENG TSANG CORPORATION - TWN, 1F, NO. 1, ALLEY 50, LANE 737, SEC. 1, NEI HU ROAD, TAIPEI, TAIWAN, REPUBLIC OF | US Mail (1st Class) |
| 82788 | FENG TSANG CORPORATION - TWN, 1F, NO. 1, ALLEY 50, LANE 737, SEC. 1, NEI HU ROAD, TAIPEI, TAIWAN, REPUBLIC OF | US Mail (1st Class) |
| 82788 | FHP CONSULTANTS LTD, GODDARD'S GREEN BARN, GODDARD'S GREEN ROAD, BENENDEN, KENT, TN17 4AR UNITED KINGDOM | US Mail (1st Class) |
| 82788 | FIRST SENTINEL ADVISORY LIMITED, OFFICE SUITE 12A, 55 PARK LANE, LONDON, W1K 1QG UNITED KINGDOM | US Mail (1st Class) |
| 82788 | FORNAX ASSOCIATES LTD., 70C 16 BUCKHOLD RD, LONDON, SW18 4FY UNITED KINGDOM | US Mail (1st Class) |
| 82788 | FREWIN & CLOSE LTD., 18 OAKLEY STREET, LONDON, SW3 5NT UNITED KINGDOM | US Mail (1st Class) |
| 82788 | FTI CONSULTING (CHINA) LIMITED, UNIT 2101-04, CENTRAL PLAZA, 227 HUANGPI (N) ROAD, SHANGHAI, 200003 CHINA | US Mail (1st Class) |
| 82788 | FULL FRONTAL GROUP FZ LLE, UNIT P12, RIMAL THE WALK, JBR, PO BOX 487177, DUBAI, UNITED ARAB EMIRATES | US Mail (1st Class) |
| 82788 | GLOBAL TAX MANAGEMENT, INC., DENNIS JOHNSON, 656 E. SWEDESFORD ROAD, SUITE 200, WAYNE, PA, 19087 | US Mail (1st Class) |
| 82788 | HAWK INVESTMENT HOLDINGS LTD., AS COLLATERAL AGENT, AARON S. ROTHMAN, AS COLLATERAL AGENT, 300 S. TRYON ST., STE. 1000, CHARLOTTE, NC, 28202 | US Mail (1st Class) |
| 82788 | HDMI, 550 S WINCHESTER BLVD, SUITE 515, SAN JOSE, CA, 95128 | US Mail (1st Class) |
| 82788 | HOANG NGUYEN, 359 DALE DRIVE, SAN JOSE, CA, 95127 | US Mail (1st Class) |
| 82788 | HOLD JUMPER (SUZHOU) PACKING CO. LTD., NO. 1, XIANG STREET, HIGH-TECH DISTRICT, SUZHOU, CHINA | US Mail (1st Class) |
| 82788 | HOWELL INTERNATIONAL TRADE FAIR LTD, 5A-601 HOUXIANDAICHENG,NO.16 BAIZIWAN RD, CHAOYANG DISTRICT, BEIJING, CHINA | US Mail (1st Class) |
| 82788 | HSBC BANK USA, N.A., 140 BROADWAY, SUITE 5020, NEW YORK, NY, 10005 | US Mail (1st Class) |
| 82788 | HUDSON VALUATION GROUP LLC, ONE GLENLAKE PARKWAY, SUITE #700, ATLANTA, GA, 30328 | US Mail (1st Class) |
| 82788 | IINUMA GAUGE MANUFACTURING CO. LTD (JPY), 11400-327 HARAYAMA,, TAMAGAWA, CHINO-CITY, NAGANO, 391-0011 JAPAN | US Mail (1st Class) |
| 82788 | IMG MEDIA, LTD., JENNIFER R. HOOVER, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, 1313 N. MARKET ST., STE 1201, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82788 | INFOCOMM INTERNATIONAL, 11242 WAPLES MILL RD, SUITE 200, FAIRFAX, VA, 22030 | US Mail (1st Class) |
| 82788 | ITAYA MISA (TWD), 1F, NO. 1, ALLEY 50, LANE 737, SEC. 1, NEI HU ROAD, TAIPEI, TAIWAN, REPUBLIC OF | US Mail (1st Class) |
| 82788 | IZON, 2005 TREE FORK LANE, SUITE 109, LONGWOOD, FL, 32750 | US Mail (1st Class) |

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82788 | JIH-CHUN YEH, 4F NO. LN232 ZHIXIANG 1ST ST, ZHONGLI DIST, TAOYUAN CITY, 320 CHINA | US Mail (1st Class) |
| 82788 | KAREN S DONOVAN, 393 MYSTIC ST, ARLINGTON, MA, 02474 | US Mail (1st Class) |
| 82788 | KAUSHIK BANERJEE, 105 PROVIDENCE PL, PLEASANT HILL, CA, 94523 | US Mail (1st Class) |
| 82788 | KAUSHIK BANERJEE, 105 PROVIDENCE PL, PLEASANT HILL, CA, 94523 | US Mail (1st Class) |
| 82788 | KENNETH W CARROLL, 8379 SWEET BRIAR COURT, LIBERTY TOWNSHIP, OH, 45044 | US Mail (1st Class) |
| 82788 | KEVIN CABOT, 11 RUE PAUL LANGEVIN, SAINT OUEN, 93400 FRANCE | US Mail (1st Class) |
| 82788 | KLEINWORT BENSON (GBP), 14 ST. GEORGE STREET, LONDON, W1S 1FE UNITED KINGDOM | US Mail (1st Class) |
| 82788 | LAW OFFICES OF YOUNG K PARK, 2009 CHESTNUT STREET, PHILADELPHIA, PA, 19103 | US Mail (1st Class) |
| 82788 | LEE AND KO, HANJIN BULIDING, 63 NAMDAEMUN-RO, JUNG-GU, SEOUL, 04532 SOUTH KOREA | US Mail (1st Class) |
| 82788 | LEO RILEY, 225 AQUA LANE, DELRAN, NJ, 08075 | US Mail (1st Class) |
| 82788 | LEO RILEY, 225 AQUA LANE, DELRAN, NJ, 08075 | US Mail (1st Class) |
| 82788 | LUIJKS ADVIES B V, VINKENKADE 41 R 3, VINKEVEEN, 3645 AP NETHERLANDS | US Mail (1st Class) |
| 82788 | LUONG D NGUYEN, 2801 CAMINO DEL REY, SAN JOSE, CA, 95132 | US Mail (1st Class) |
| 82788 | MARCUM LLP, JOHN HELLER, 201 EAST LAS OLAS BOULEVARD, 21ST FLOOR, FT LAUDERDALE, FL, 33301 | US Mail (1st Class) |
| 82788 | MATREX EXHIBITS INC., HUCK BOUMA PC: ATTN: ERIC J MALNAR, 1755 SOUTH NAPERVILLE, WHEATON, IL, 60189 | US Mail (1st Class) |
| 82788 | MCCARTER & ENGLISH, LLP, JOSEPH LUBERTAZZI, JR., FOUR GATEWAY CENTER, 100 MULBERRY STREET, NEWARK, NJ, 07102 | US Mail (1st Class) |
| 82788 | MCCARTER & ENGLISH, LLP, JOSEPH LUBERTAZZI, JR., FOUR GATEWAY CENTER, 100 MULBERRY STREET, NEWARK, NJ, 07102 | US Mail (1st Class) |
| 82788 | MENTOR GRAPHICS CORPORATION, 8005 SW BOECKMAN RD, WILSONVILLE, OR, 97070-7777 | US Mail (1st Class) |
| 82788 | MODULAR MOBILE GMBH, HANSAALLEE 201, DUSSELDORF, D-450549 GERMANY | US Mail (1st Class) |
| 82788 | MOTIVIT, 2880 ZANKER RD , SUITE 203, SAN JOSE, CA, 95134 | US Mail (1st Class) |
| 82788 | MR AARON LAMKIN, 793A EAST FOOTHILL BLVD #43, SAN LUIS OBISPO, CA, 93405 | US Mail (1st Class) |
| 82788 | MTL SHIPPING & INVESTMENT LTD, MARK WALPOLE, MTL SHPNG & INVSTMNT LTD, HILLSIDE, CROCKNORTH ROAD, EAST HORSLEY, SURREY, KT24 5TF UNITED KINGDOM | US Mail (1st Class) |
| 82788 | MUNI MOHAN, 2728 116TH AVE NE, MINNEAPOLIS, MN, 55449-6010 | US Mail (1st Class) |
| 82788 | MUNI MOHAN, 2728 116TH AVE NE, MINNEAPOLIS, MN, 55449-6010 | US Mail (1st Class) |
| 82788 | MWL INTERNATIONAL LTD, DAVID WALPOLE, 1 PAPER MEWS, 330 HIGH STREET, DORKING, SURREY, RH4 2TU UNITED KINGDOM | US Mail (1st Class) |
| 82788 | OPEN SALES SOLUTIONS, LLC, 548 MARKET STREET,, SUITE 11745, SAN FRANCISCO, CA, 94104 | US Mail (1st Class) |
| 82788 | PACTRON, 3000 PATRICK HENRY DR, SANTA CLARA, CA, 95054-1814 | US Mail (1st Class) |
| 82788 | PEGATRON CORPORATION, 5F , NO. 76, LIGONG ST., BEITOU DISTRICT, TAIPEI CITY, 112 TAIWAN, REPUBLIC OF | US Mail (1st Class) |
| 82788 | PENN PARK INVESTMENTS LLC, Y WAN LEE, C/O LAW OFFICES OF YOUNG K PARK, PO BOX 2195, PHILADELPHIA, PA, 19103-0195 | US Mail (1st Class) |
| 82788 | POLSINELLI PC, 222 DELAWARE AVENUE, SUITE 1101, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82788 | PORTER DIGITAL SIGNAGE, JEFFREY S PORTER, 241 N CALDWELL CIRCLE, DOWNINGTON, PA, 19335 | US Mail (1st Class) |
| 82788 | PR NESWIRE ASSOCIATION, LLC, G PO BOX 5897, NEW YORK, NY, 10087-5897 | US Mail (1st Class) |
| 82788 | REMBRANDT 3D HOLDING, LTD, ANDREW DEMARCO, ESQ., DEVLIN LAW FIRM, LLC, 1526 GILPIN AVENUE, WILMINGTON, DE, 19806 | US Mail (1st Class) |
| 82788 | REMBRANDT 3D HOLDINGS LTD, (RE: REMBRANDT 3D HOLDING, LTD), STEPHEN K. BLUMENTHAL, 128 BULL HILL ROAD, NEWFIELD, NY, 14867 | US Mail (1st Class) |
| 82788 | RL SYSTEMS, OLD POST OFFICE COTTAGE, POST OFFICE RD, INKPEN,, BERKSHIRE, RG17 9PY UNITED KINGDOM | US Mail (1st Class) |
| 82788 | ROBERT HALF MANAGEMENT SERVICES, 12400 COLLECTIONS CENTER DRIVE, CHICAGO, IL, 60693 | US Mail (1st Class) |
| 82788 | ROBERT S FRENCH REVOCABLE TRUST 2018, 1712 KIMBERLY DR, SUNNYVALE, CA, 94087 | US Mail (1st Class) |
| 82788 | SALAZAR LAW, 2000 PONCE DE LEON BOULEVARD, PENTHOUSE, CORAL GABLES, FL, 33134 | US Mail (1st Class) |

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82788 | SEECUBIC B V, PARK FORUM 1033 & 1035, EINDHOVEN, 5657 HJ NETHERLANDS | US Mail (1st Class) |
| 82788 | SIEMENS INDUSTRY SOFTWARE INC., 8005 SW BOECKMAN ROAD, WILSONVILLE, OR, 97070-8005 | US Mail (1st Class) |
| 82788 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, (RE: SEECUBIC B V), EBEN P. COLBY; MARLEY ANN BRUMME, 500 BOYLSTON STREET, BOSTON, MA, 02116 | US Mail (1st Class) |
| 82788 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, (RE: SEECUBIC B V), JOSEPH O. LARKIN, ESQ., ONE RODNEY SQUARE, 920 N. KING STREET, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82788 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, (RE: SEECUBIC B V), JAMES J. MAZZA, JR;JUSTIN M. WINERMAN, REBECCA L. RITCHIE, 155 N. WACKER DRIVE, CHICAGO, IL, 60606-1720 | US Mail (1st Class) |
| 82788 | SKC HAAS DISPLAY FILMS CO., 460,CHONHEUNG-RI,SONGGO-UB, CHUNGCHONGNAM-DO, CHONAN-CITY, 330-836 SOUTH KOREA | US Mail (1st Class) |
| 82788 | SPECIAL COUNSEL, DEPT. CH 14305, PALATINE, IL, 60055-4305 | US Mail (1st Class) |
| 82788 | STOIT GROEP B V, VESTDIJK 23, EINDHOVEN, 5611 CA NETHERLANDS | US Mail (1st Class) |
| 82788 | SUZHOU INDSTRIAL EQUIPMNT INSTLATION GRP, NO. 3, CAIXIANG ROAD, SUZHOU, JIANGSU, CHINA | US Mail (1st Class) |
| 82788 | SYNOPSYS, 675 ALMANOR AVE STE 101, SUNNYVALE, CA, 94085-2925 | US Mail (1st Class) |
| 82788 | TD BANK, N A, PO BOX 16027, LEWISTON, ME, 04243-9513 | US Mail (1st Class) |
| 82788 | THREE D HOLOGRAMS PVT LTD., 307 KILFIRE HOUSE, C-17 DALIA INDUSTRIAL AREA, NEW LINK ROAD, ANDHERI-WEST, MUMBAI, MAHARASHTRA, 400053 INDIA | US Mail (1st Class) |
| 82788 | TRANS WORLD INTERNATIONAL, LLC, C/O J. HOOVER, BENESCH FRIEDLANDER COPLAN & ARONOFF LLP, 1313 N. MARKET ST., STE. 1201, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82788 | TRIPLE CROWN CONSULTING, LLC, 10814 JOLLYVILLE RD, SUITE 100, AUSTIN, TX, 78759 | US Mail (1st Class) |
| 82788 | UHAUL MOVING AND STORAGE OF CINNAMINSON, 201 US HIGHWAY 130 S, CINNAMINSON, NJ, 08077 | US Mail (1st Class) |
| 82788 | US COMPLIANCE SERVICES LLC, 199 NORTH WOODBURY ROAD SUITE # 103, PITMAN, NJ, 08071 | US Mail (1st Class) |
| 82788 | VAYIKRA CAPITAL LLC, 1 FARMSTEAD RD, SHORT HILLS, NJ, 07078 | US Mail (1st Class) |
| 82788 | VIA LICENSING CORPORATION, 1275 MARKET STREET, SAN FRANCISCO, CA, 94103-1410 | US Mail (1st Class) |
| 82788 | VIKAS KSHETRAPAL, 2287 ASHBOURNE DR, SAN RAMON, CA, 94583 | US Mail (1st Class) |
| 82788 | VIKAS KSHETRAPAL, 2287 ASHBOURNE DR, SAN RAMON, CA, 94583 | US Mail (1st Class) |
| 82788 | VISUAL APEX, INC, 7950 NE DAY ROAD W,, SUITE B, BAINBRIDGE ISLAND, WA, 98110 | US Mail (1st Class) |
| 82788 | WAH WOO TAN, 243 SUMMERWIND DRIVE, MILPITAS, CA, 95035 | US Mail (1st Class) |
| 82788 | WALSH C H B INC, 189 SUNRISE HIGHWAY, SUITE# 302, ROCKVILLE CENTRE, NY, 11570 | US Mail (1st Class) |
| 82788 | WEIDA FREIGHT SYSTEM (HONG KONG) CO., LTD TAIWAN BRANCH FLAT, 402, 4/F , YEE KUK INDUSTRIAL CENTRE, 555 YEE KUK STREET, CHEUNG SHA WAN, KOWLOON, HONG KONG | US Mail (1st Class) |
| 82788 | WHARTON CAPITAL PARTNERS, 5720 LAGORCE DRIVE, MIAMI BEACH, FL, 33140 | US Mail (1st Class) |
| 82788 | WILINE NETWORKS INC., PO BOX 102150, PASADENA, CA, 91189-2150 | US Mail (1st Class) |
| 82788 | WILLIAM HENNESSEY, 436 LEE PLACE, EXTON, PA, 19341 | US Mail (1st Class) |
| 82788 | WOLTERS KLUWER, (RE: CT LIEN SOLUTIONS), BRIAN BARTHOLOMEW, 28 LIBERTY STREET 42ND FLOOR, NEW YORK, NY, 10005 | US Mail (1st Class) |
| 82788 | ZACH LEHMAN, 1440 S STANLEY AVE, LOS ANGELES, CA, 90019 | US Mail (1st Class) |
| 82788 | ZACH LEHMAN, 1440 S STANLEY AVE, LOS ANGELES, CA, 90019 | US Mail (1st Class) |
| 82788 | ZYGINTAS PAPARTIS (EUR), SARMOS G 7-2,, VILNIUS, 04126 LITHUANIA | US Mail (1st Class) |

**Subtotal for this group: 140**

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82802 | CITY OF PHILADELPHIA LAW DEPT, TAX & REVENUE UNIT, 1401 JFK BLVD, 5TH FLOOR, PHILADELPHIA, PA, 19102 | **US Mail (1st Class)** |
| 82802 | DELL FINANCIAL SERVICES, MAIL STOP-PS2DF-23, ONE DELL WAY, ROUND ROCK, TX, 78682 | **US Mail (1st Class)** |
| 82802 | DEMARTINO AND ASSOCIATES LLC, 875 UNION AVE., BOULDER, CO, 80304 | **US Mail (1st Class)** |
| 82802 | IAN R LISTON ESQ, AS RECEIVER PENDENTE LITE, 222 DELAWARE AVE, STE 800, WILMINGTON, DE, 19801 | **US Mail (1st Class)** |
| 82802 | WAI MING CHIU, 1111 OAKFIELD DR STE 115 PMB 8, BRANDON, FL, 33511-4948 | **US Mail (1st Class)** |
| 82802 | WILSON SONSINI GOODRICH & ROSATI, P.C., 222 DELAWARE AVE, STE 800, WILMINGTON, DE, 19801 | **US Mail (1st Class)** |

**Subtotal for this group: 6**

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82803 | 1AAASTREAM TV NETWORKS, INC., 209 CHESTNUT STREET, 3RD FLOOR, PHILADELPHIA, PA, 19103 | US Mail (1st Class) |
| 82803 | 1AAATECHNOVATIVE MEDIA, INC., 2009 CHESTNUT STREET, 3RD FLOOR, PHILADELPHIA, PA, 19103 | US Mail (1st Class) |
| 82803 | AMANDA VON AHNEN, 105 EDWARDS RUN ROAD, MOUNT ROYAL, NJ, 08061 | US Mail (1st Class) |
| 82803 | ARMSTRONG TEASDALE LLP, ATT: RESTRUCTURING GROUP, 400 PARK AVE., 12TH FLOOR, NEW YORK, NY, 10022 | US Mail (1st Class) |
| 82803 | ARMSTRONG TEASDALE LLP, ATT: RESTRUCTURING GROUP, 2 LOGAN SQ STE 710, PHILADELPHIA, PA, 19103-2765 | US Mail (1st Class) |
| 82803 | ARMSTRONG TEASDALE LLP, ATT: RESTRUCTURING GROUP, 1717 PENNSYLVANIA AVENUE NW, SUITE 400, WASHINGTON, DC, 20006 | US Mail (1st Class) |
| 82803 | ARMSTRONG TEASDALE LLP, ATT: RESTRUCTURING GROUP, 1007 NORTH MARKET STREET, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82803 | BMC GROUP, INC., 600 FIRST AVENUE, SEATTLE, WA, 98104 | US Mail (1st Class) |
| 82804 | BOE, NO. 668 RD XINZHAN, GENERAL PILOT ZONE, HEIFEI, ANHUI, 230012 CHINA | US Mail (1st Class) |
| 82803 | BOUSTEAD SECURITIES, 6 VENTURE STREET, SUITE 395, IRVINE, CA, 92618 | US Mail (1st Class) |
| 82804 | BRAUW BLACKSTONE WESTBROEK N.V., ATT: R.G. KLOPPENBURG; E.R. MEERDINK, RE: SHADRON L. STASTNEY, CLAUDE DEBUSSYLAAN 80, PO BOX 75084, AMSTERDAM, 1070 AB NETHERLANDS | US Mail (1st Class) |
| 82803 | BROWN & MICHAELS, PC, (RE: REMRANDT 3D HOLDINGS LTD.), CHRISTOPHER A. MICHAELS, 4TH FLOOR - M&T BANK BUILDING, 118 NORTH TIOGA STREET, ITHACA, NY, 14850 | US Mail (1st Class) |
| 82803 | CALIFORNIA DEPT OF TAX AND FEE AM, ACCOUNT INFO. GROUP, MIC 29, PO BOX 942879, SACRAMENTO, CA, 94279-0029 | US Mail (1st Class) |
| 82803 | CHARLES ROBERTSON, 9339 WOODLEY AVE, NORTH HILLS, CA, 91343 | US Mail (1st Class) |
| 82803 | CHARLES ROBERTSON, 10 VIA VISIONE, UNIT 201, HENDERSON, NV, 89011 | US Mail (1st Class) |
| 82804 | CHE WEI CHANG, NO.50, ALY. 63, LN517, SEC. 1, RENHE RD, DAXI DIST, TAOYUAN CITY, 335 TAIWAN, REPUBLIC OF | US Mail (1st Class) |
| 82803 | CORE TECHNOLOGY LLC, PO BOX 799, GLOUCESTER, VA, 23061 | US Mail (1st Class) |
| 82803 | COREN & RESS, P.C., STEVEN M. COREN, TWO COMMERCE SQUARE,, 2001 MARKET STREET, SUITE 3900, PHILADELPHIA, PA, 19103 | US Mail (1st Class) |
| 82803 | DANIEL J RINK, 1017 E 28TH STREET, HOUSTON, TX, 77009 | US Mail (1st Class) |
| 82803 | DELAWARE SECRETARY OF STATE, DIVISION OF CORPORATIONS, FRANCHISE TAX, PO BOX 898, DOVER, DE, 19903 | US Mail (1st Class) |
| 82803 | DELL FINANCIAL SERVICES, ONE DELL WAY, ROUND ROCK, TX, 78682 | US Mail (1st Class) |
| 82803 | DILWORTH PAXSON LLP, 1500 MARKET STREET, SUITE 3500E, PHILADELPHIA, PA, 19102 | US Mail (1st Class) |
| 82803 | ENG LAW FIRM, CHI ENG, 269 LEXINGTON AVE, 2ND FLOOR, NEW YORK, NY, 10017 | US Mail (1st Class) |
| 82803 | FERRY JOSEPH P.A., JOHN D MCLAUGHLIN JR, ATTY AT LAW, 1521 CONCORD PIKE SUITE 202, WILMINGTON, DE, 19803 | US Mail (1st Class) |
| 82803 | GAME 7 STAFFING, 31 NAVASOTA ST UNIT 250, AUSTIN, TX, 78702-0102 | US Mail (1st Class) |
| 82803 | GLOBAL TAX MANAGEMENT, 656 E SWEDESFORD RD , SUITE 200, WAYNE, PA, 19087 | US Mail (1st Class) |
| 82803 | GOOGLE PURCHASE ORDERS, 1600 AMPHITHEATRE PARKWAY, MOUNTAIN VIEW, CA, 94043 | US Mail (1st Class) |
| 82803 | IMG MEDIA, LTD., ISABELLE MERCER, VP & COUNSEL, ENDEAVOR, 200 5TH AVE., NEW YORK, NY, 10010 | US Mail (1st Class) |
| 82803 | INNOVENTURES GROUP LLC, 1615 EASTFORD AVE, DUARTE, CA, 91010-2823 | US Mail (1st Class) |
| 82803 | INTERNAL REVENUE SERVICE, CENTRALIZED INSOLVENCY OPERATION, PO BOX 7346, PHILADELPHIA, PA, 19101-7346 | US Mail (1st Class) |
| 82803 | INTERNAL REVENUE SERVICE, CENTRALIZED INSOLVENCY OPERATION, 2970 MARKET ST., MAIL STOP 5 Q30 133, PHILADELPHIA, PA, 19104-5016 | US Mail (1st Class) |
| 82803 | INTERNAL REVENUE SERVICE, 600 ARCH STREET, PHILADELPHIA, PA, 19106-1611 | US Mail (1st Class) |
| 82803 | INTERNAL REVENUE SERVICE, JULIA CARLONE, BANKRUPTCY SPECIALIST, 600 ARCH STREET, PHILADELPHIA, PA, 19106-1611 | US Mail (1st Class) |
| 82803 | IQH3D, 6800 SW 40TH STREET, SUITE 298, MIAMI, FL, 33155 | US Mail (1st Class) |
| 82804 | JINSHENG, 12/F SANTOI BUILDING, 137-139 CONNAUGHT ROAD, CENTRAL HONG KONG, CHINA | US Mail (1st Class) |

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82803 | JOVEAI, 48511 WARM SPRINGS BLVD STE 211, FREMONT, CA, 94539-7746 | US Mail (1st Class) |
| 82803 | K & L GATES LLP, (RE: HAWK INVESTMENT HOLDINGS LIMITED), STEVEN L. CAPONI; MEGAN E. O'CONNOR, 600 KING STREET, SUITE 901, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82803 | K & L GATES LLP, (RE: HAWK INVESTMENT HOLDINGS LIMITED), MARGARET R. WESTBROOK; AARON S. ROTHMAN, JONATHAN N. EDEL, 300 SOUTH TRYON STREET, SUITE 1000, CHARLOTTE, NC, 28202 | US Mail (1st Class) |
| 82803 | K&L GATES LLP, (RE: HAWK INVESTMENT HOLDINGS LIMITED), THOMAS A. WARNS, 599 LEXINGTON AVENUE, NEW YORK, NY, 10022 | US Mail (1st Class) |
| 82803 | LARSON AND ZIRZOW, LLC, MATTHEW C. ZIRZOW, 850 E. BONNEVILLE AVE., LAS VEGAS, NV, 89101 | US Mail (1st Class) |
| 82803 | LARSON AND ZIRZOW, LLC, (RE: VISUAL TECHNOLOGY INNOVATIONS, INC.), MATTHEW C. ZIRZOW, 850 E. BONNEVILLE AVE., LAS VEGAS, NV, 89101 | US Mail (1st Class) |
| 82803 | LEWIS BRISBOIS BISGAARD & SMITH, LLP, 500 DELAWARE AVENUE, SUITE 700, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82803 | MATHU RAJAN, 1615 EASTFORD AVE, DUARTE, CA, 91010-2823 | US Mail (1st Class) |
| 82803 | MATHU RAJAN, C/O MICHAEL SETH SCHWARTZ, LAW OFFICE OF MICHAEL SCHWARTZ, 707 LAKESIDE OFFICE PARK, SOUTHAMPTON, PA, 18966 | US Mail (1st Class) |
| 82803 | MATHU RAJAN, 1105 WILLIAM PENN DRIVE, BENSALEM, PA, 19020 | US Mail (1st Class) |
| 82803 | MATREX EXHIBITS INC., 301 S. CHURCH STREET, ADDISON, IL, 60101 | US Mail (1st Class) |
| 82803 | MATTHEW LO, 7322 CARTER AVE, NEWARK, CA, 94560 | US Mail (1st Class) |
| 82803 | MCCARTER & ENGLISH, LLP, 405 NORTH KING STREET, WILMINGTON, DE, 19801 | US Mail (1st Class) |
| 82803 | MEDIATAINMENT, INC, 1105 WILLIAM PENN DRIVE, BENSALEM, PA, 19020 | US Mail (1st Class) |
| 82803 | MEDIATAINMENT, INC, 1615 EASTFORD AVE, DUARTE, CA, 91010-2823 | US Mail (1st Class) |
| 82803 | MEDIATAINMENT, INC (VENDOR WORK), 1105 WILLIAM PENN DRIVE, BENSALEM, PA, 19020 | US Mail (1st Class) |
| 82803 | NEVADA DEPT. OF EMPLOYMENT, TRAINING & REHABILITATION, 500 E. THIRD STREET, CARSON CITY, NV, 89713 | US Mail (1st Class) |
| 82803 | NEW JERSEY DIVISION OF TAXATION, COMPLIANCE & ENFORCEMENT - BANKRUPTCY, 50 BARRACK STREET, 9TH FLOOR, PO BOX 245, TRENTON, NJ, 08695-0267 | US Mail (1st Class) |
| 82803 | NICHANI LAW FIRM, 84 W SANTA CLARA ST STE 700, SAN JOSE, CA, 95113-1809 | US Mail (1st Class) |
| 82803 | NICOLE MARIE MANEEN, 2394 BARBEREE DRIVE, CRESTVIEW, FL, 32536 | US Mail (1st Class) |
| 82803 | PENNSYLVANIA DEPT OF LABOR, OFFICE OF UNEMPLOYMENT COMP TAX SRVCS, COLLECTIONS SUPPORT UNIT, 651 BOAS ST., ROOM 925, HARRISBURG, PA, 17121 | US Mail (1st Class) |
| 82803 | PENNSYLVANIA DEPT OF REVENUE, BANKRUPTCY DIVISION, DEPT 280946, HARRISBURG, PA, 17128-0946 | US Mail (1st Class) |
| 82803 | PENNSYLVANIA DEPT OF REVENUE, PO BOX 280905, HARRISBURG, PA, 17128-0905 | US Mail (1st Class) |
| 82803 | PHILADELPHIA DEPARTMENT OF REVENUE, MUNICIPAL SERVICES BUILDING, 1401 JOHN F. KENNEDY BLVD., PHILADELPHIA, PA, 19102 | US Mail (1st Class) |
| 82803 | RAJA RAJAN, 5215 BISHOP VIEW CIRCLE, CHERRY HILL, NJ, 08002 | US Mail (1st Class) |
| 82804 | ROSCO MAUNDER, PO BOX 232, NEWPORT HOUSE, 15 THE GRANGE, ST PETER PORT, GY1 4LA GUERNSEY | US Mail (1st Class) |
| 82804 | RUFFENA CAPITAL LTD, PORTMAN HOUSE, 2 PORTMAN STREET, LONDON, W1H 6DU UNITED KINGDOM | US Mail (1st Class) |
| 82803 | SARA LEONA ROBERTSON, 1900 TOMAHAWK DRIVE, HENDERSON, NV, 89074 | US Mail (1st Class) |
| 82803 | SEECUBIC INC, 667 MADISON AVE, FLOORS 4 & 5, NEW YORK, NY, 10055 | US Mail (1st Class) |
| 82803 | SEECUBIC INC, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, 500 BOYLSTON ST, BOSTON, MA, 02116 | US Mail (1st Class) |
| 82803 | SEECUBIC INC., 251 LITTLE FALLS DRIVE, WILMINGTON, DE, 19808 | US Mail (1st Class) |
| 82803 | SEECUBIC INC., SHADRON STASTNEY, CEO, 667 MADISON AVE., FLOORS 4 & 5, NEW YORK, NY, 10055 | US Mail (1st Class) |
| 82803 | SEECUBIC INC., (RE: SEECUBIC INC), SHADRON STASTNEY, CEO, 667 MADISON AVE., FLOORS 4 & 5, NEW YORK, NY, 10055 | US Mail (1st Class) |
| 82803 | SLS HOLDINGS VI, LLC, BRITTANY S. OGDEN, QUARLES & BRADY LLP, 33 EAST MAIN STREET,, SUITE 900, MADISON, WI, 53703 | US Mail (1st Class) |
| 82803 | STATE OF CALIFORNIA EMP DEV DEPT, PO BOX 826880, UIPCD, MIC 40, SACRAMENTO, CA, 94280 | US Mail (1st Class) |
| 82803 | STATE OF CALIFORNIA EMPLOYMENT DEV DEPT, PO BOX 826880, DICO, MIC 29, SACRAMENTO, CA, 94280 | US Mail (1st Class) |

| Svc Lst | Name and Address of Served Party | Mode of Service |
|---|---|---|
| 82803 | STATE OF FLORIDA, DEPT. OF REVENUE, ATTN: MARK HAMILTON, P.O. BOX 6668, TALLAHASSEE, FL, 32314-6668 | US Mail (1st Class) |
| 82804 | STREAM TV INTERNATIONAL B V, PARK FORUM 1033 & 1035, EINDHOVEN, 5657 HJ NETHERLANDS | US Mail (1st Class) |
| 82803 | SUBY JOSEPH, 48 COLLEEN CIRCLE, DOWNINGTOWN, PA, 19335 | US Mail (1st Class) |
| 82803 | TECHNICAL LINK, 8461 LAKE WORTH ROAD, SUITE 225, LAKE WORTH, FL, 33467 | US Mail (1st Class) |
| 82803 | TEXAS WORKFORCE COMMISSION, P.O. BOX 149037, AUSTIN, TX, 78714-9037 | US Mail (1st Class) |
| 82803 | THOMAS JUNG HO PARK, 175 BUCKELEW AVE, BLDG 2-6, JAMESBURG, NJ, 08831 | US Mail (1st Class) |
| 82803 | TRANS WORLD INTERNATIONAL, LLC, ISABELLE MERCIER, VP & COUNSEL, ENDEAVOR, 200 5TH AVE., NEW YORK, NY, 10010 | US Mail (1st Class) |
| 82803 | U.S. SMALL BUSINESS ADMINISTRATION, 409 3RD STREET, SW, WASHINGTON, DC, 204116 | US Mail (1st Class) |
| 82803 | US LEGAL SUPPORT, INC., PO BOX 4772, HOUSTON, TX, 77210-4772 | US Mail (1st Class) |
| 82803 | VISUAL SEMICONDUCTOR, INC, R. ADAM SWICK, AKERMAN LLP, 500 W., 5TH STREET, SUITE 1210, AUSTIN, TX, 78701 | US Mail (1st Class) |
| 82803 | VISUAL SEMICONDUCTOR, INC, MATHU RAJAN, 1615 EASTFORD AVE, DUARTE, CA, 91010-2823 | US Mail (1st Class) |
| 82803 | VISUAL TECHNOLOGY INNOVATIONS, INC., 1105 WILLIAM PENN DR., BENSALEM, PA, 19020 | US Mail (1st Class) |
| 82803 | WAI MING CHIU, 1111 OAKFIELD DR STE 115 PMB 8, BRANDON, FL, 33511-4948 | US Mail (1st Class) |
| 82804 | YEH, JIH-CHUN (CNY), 1F, NO. 1, ALLEY 50, LANE 737, SEC. 1, NEI HU ROAD, TAIPEI, TAIWAN, REPUBLIC OF | US Mail (1st Class) |
| 82803 | YKP LAW, 2009 CHESTNUT STREET, PHILADELPHIA, PA, 19103 | US Mail (1st Class) |
| 82804 | YTH, 3/F HENG SHAN CENTRE, 145 QUEEN`S ROAD, WAN CHAI, HONG KONG, CHINA | US Mail (1st Class) |
| 82803 | ZEIFANG HSU, 101 BLAISDELL WAY, FREMONT, CA, 94536 | US Mail (1st Class) |
| 82804 | ZHONG LUN LAW FIRM, LEVEL 10 & 11, TWO IFC, 8 CENTURY AVENUE, PUDONG NEW AREA, SHANGHAI, 20021 CHINA | US Mail (1st Class) |

**Subtotal for this group: 89**